# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|       ) | |
|       Plaintiff, ) | |
|       ) | |
| vs. ) | Case No. 14-CV-704-JHP-TLW |
|       ) | |
| (1) OSAGE WIND, LLC; ) | |
| (2) ENEL KANSAS, LLC; and ) | |
| (3) ENEL GREEN POWER NORTH ) | |
|    AMERICA, INC., ) | |
|       ) | |
|       Defendants. ) | |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

NORMAN, WOHLGEMUTH,
CHANDLER, JETER, BARNETT & RAY
Joel L. Wohlgemuth, OBA #9811
Ryan A. Ray, OBA # 22281
401 S. Boston Ave. Ste. 2900
Tulsa, Oklahoma 74103
Telephone: (918) 583-7571
JLW@nwcjlaw.com
RAR@nwcjlaw.com

MODRALL, SPERLING, ROEHL,
HARRIS & SISK, P.A.
Lynn H. Slade
William C. Scott
Post Office Box 2168
Albuquerque, New Mexico 87103
Telephone: (505) 848-1800
Lynn.Slade@modrall.com
Bill.Scott@modrall.com

*Attorneys for Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc.*

## TABLE OF CONTENTS

                                                    **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ..................................................................................................... 1

II.     THE MATERIAL FACTS ARE UNDISPUTED............................................................ 2

III.    THE RESPONSE IGNORES THE OSAGE ACT'S LANGUAGE AND PURPOSE ..................................................................................................................... 3

IV.    THE UNITED STATES IMPROPERLY EXPANDS THE REGULATIONS................... 5

        A. Work of Any Nature" Is Limited to Work Related to Mining ......................... 5

        B. Part 214 and Part 211 Are Consistent With and Reflect Relevant Common Law .......... 7

        C. There Is No "de minimis" Exception to Tribal and BIA Approval................. 8

V.     RES JUDICATA BARS THE UNITED STATES' CLAIMS ............................................ 9

VI.    CONCLUSION....................................................................................................... 10

## TABLE OF AUTHORITIES

Page

**CASE LAW**

*Cayuga Indian Nation of N.Y. v. Pataki*,
    413 F.3d 266 (2d Cir. 2005) .................................................................................. 9, 10
*Equal Emp't Opportunity Comm'n v. U.S. Steel*,
    921 F.2d 489 (3rd Cir. 1990) ........................................................................................ 9
*Faith United Methodist Church & Cemetery of Terra Alta v. Morgan*,
    745 S.E.2d 461 (W. Va. 2013) ..................................................................................... 7
*Green v. Mansour*,
    474 U.S. 64 (1985) ..................................................................................................... 10
*In re Freeman*,
    30 F.3d 1459 (Fed. Cir. 1994) ................................................................................... 10
*Laguna Hermosa Corp. v. United States*,
    671 F.3d 1284 (Fed. Cir. 2012) ................................................................................. 10
*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ....................................................................................... 9
*Millsap v. Andrus*,
    717 F.2d 1326 (10th Cir. 1983) ............................................................................... 4, 5
*Quapaw Tribe of Okla. v. Blue Tee Corp.*,
    653 F. Supp. 2d 1166 (N.D. Okla. 2009) ..................................................................... 9
*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ................................................................................................... 10

**STATUTES**

Osage Allotment Act, Act of June 28, 1906, ch. 3572, 34 Stat. 539 ..................................... *passim*

**REGULATIONS**

25 C.F.R. Part 211 ........................................................................................................... 2, 6, 7, 8
25 C.F.R. § 211.3 ............................................................................................................. 2, 6, 7, 8
25 C.F.R. Part 214 .................................................................................................................. *passim*
25 C.F.R. § 214.2 .......................................................................................................................... 6
25 C.F.R. § 214.7 ................................................................................................................ 2, 5, 6

**RULES**

Fed. R. Civ. P. 56 .......................................................................................................................... 3

**SECONDARY SOURCES**

Eugene O. Kuntz,
    *Law Relating to Oil and Gas in Wyoming*, 3 Wyo. L.J. 107 (1948) ............................ 7

I.      INTRODUCTION.

The United States' Response to Defendants' Motion to Dismiss or For Summary Judgment ("Response" or "Resp.") [Doc. 29] does not refute the fundamental principle established in the Motion [Doc. 26]: Osage Wind is not engaged in the business of mineral development, and consequently its construction activities do not constitute "mining" requiring a lease under 25 C.F.R. Part 214. The Response fails to provide this Court with any legal or practical guidance regarding what constitutes "mining" or "use of" or "harm to" the mineral estate requiring a lease.[1] Instead, the United States' interpretation of the 25 C.F.R. Part 214 and 211 Regulations unreasonably burdens a surface owner's ability to excavate for surface use, contrary to the Osage Allotment Act's, Act of June 28, 1906, ch. 3572, 34 Stat. 539, ("Osage Act") intent. In so doing, the United States seeks to improperly transform mining regulations to imbue the Bureau of Indian Affairs ("BIA") and the Osage Nation ("Nation") with jurisdiction over development requiring excavation in Osage County completely unrelated to mining. The United States pursues that purpose here to advance the Nation's steadfast desire to "tear down" Osage Wind's towers.[2]

The United States' interpretation of the Part 214 Regulations, that "work of any nature" that causes any mineral to be seized, altered, or moved requires a lease, fails to address the full text of the Regulations addressing "mining" and conflicts with the Osage Act's intent to promote surface development. Hoping to mask that its theory, contrary to the Osage Act, enables the

---

[1] Contrary to the United States' assertions, *see* Resp. at 1, 2, Defendants have not "flouted" or ignored the Regulations. Defendants advanced an appropriate alternative position, and received no response until this litigation was filed, a fact which the United States does not dispute. *See* Reply in Support of Partial Summary Judgment, 2-3 [Doc. 30] ("U.S. Reply").

[2] The United States suggests that it does not seek to "raz[e]" the Project, Resp. at 1, despite the First Amended Complaint's request, Prayer, ¶ 5 [Doc. 20], that Defendants be ordered to remove "structures or materials" and its assertion of a tribal or United States "veto." Resp. at 8.

1

Nation or BIA to veto all surface activity that may move or disturb minerals, the Response contends that the 5,000 cubic yard threshold in 25 C.F.R. § 211.3's definition of "mining" limits the veto to construction disturbing volumes above that level.  First, the United States cannot square that suggestion with its contention that "work of any nature" that may move or disturb the mineral constituents of the land, whether or not it can be described as "mining," requires a lease.  The United States' theory ignores every indication in Part 214, and the "mining" definition in Section 211.3, that "mining" as used throughout the Regulations means mineral development and not surface construction.

Second, even for work below the proffered 5,000 cubic yard threshold, Part 211 specifically requires the party intending to engage in such work to apply to the Nation for a permit issued by BIA.  Under the United States' "work of any nature" argument, a permit that the Nation could deny "for good, bad, or no reason," Resp. at 8, would be required for any construction excavation of "de minimis" volumes under the unambiguous terms definition of "Lease" and "Permit" in Section 211.3.  Congress, in enacting the Osage Act in 1906, and the drafters of 25 C.F.R. § 214.7 in 1919, intended regulations governing "mining" to cover only that activity; they did not intend to grant the Nation or the BIA an unqualified veto over any surface activities that move or disturb mineral material.

## II.   THE MATERIAL FACTS ARE UNDISPUTED.

The material facts are undisputed.  Osage Wind's activities are undertaken pursuant to leases of approximately 8,400 acres of privately owned fee surface estate lands, no portion of which is held in trust or subject to restriction against alienation.  It is undisputed, for purposes of

the Motion, that the excavated materials are not put to use other than refilling the holes, and that no excavated materials are used for concrete or are sold or used elsewhere for any purpose.[3]

### III. THE RESPONSE IGNORES THE OSAGE ACT'S LANGUAGE AND PURPOSE.

The United States fails to refute the language of the Osage Act that authorizes the use of the surface estate for "any other purpose not specifically provided for" in the Act and specifically mandates the surface owner "shall have the right to manage [and] control . . . his or her lands the same as any citizen of the United States." Motion at 6-8, 14 (citing Osage Act, § 7, § 2, 7th)). Congress' intent in passing the Osage Act, which specifically contemplated development of the surface estate, is of paramount importance to the question before the Court, *i.e.*, the correctness of the United States' interpretation of the Osage Act and its implementing regulations.

The United States never addresses Defendants' showing that the Osage Act's language authorizes use of the surface for "any other purpose not otherwise specifically provided for herein . . . ." Osage Act, § 7 (cited Motion at 7). Rather, without citing any limiting language in the Act, the United States attempts to "freeze" development to activities the Osage Act references only when defining the preference for selecting allotment lands (to members "having houses, orchards, barns or plowed land"), or because the Act labelled certain specially restricted selections, not pertinent here, "homesteads." Resp. at 5 (quoting Osage Act, § 2, 2nd). These provisions reflect no intent to prospectively limit use of the surface estate. Rather the Osage Act, consistent with allotment era policies, intended to allow future development of the surface "for any other purpose" and to give to the surface estate owner the same rights to develop his or her land "as any citizen of the United States." *See* Motion at 13-16.

---

[3] These facts were not properly controverted, and are thus undisputed. Fed. R. Civ. P. 56(e)(2).

The United States' cited examples of surface uses demonstrate the inconsistency of its position. Under the United States' theory, a surface owner of a 160-acre parcel could be required to obtain a lease because excavation of a basement or foundation for a house, barns, silos, windmills, installation of related subsurface infrastructure, and plowing a field for commercial production, would constitute "work of any nature," because it would require "making use of the subsurface rock (by unearthing it, removing it, altering it, and either replacing or wasting it)," likely in excess of 5,000 cubic yards, even though clearly unrelated to mining and specifically contemplated by the Osage Act. Resp. at 7. Contrary to the United States' assertions, even if these activities fell below 5,000 cubic yards, the landowner would have to obtain a permit. *See* Section IV(C), *infra*.

The Osage Act does not support the United States' effort to limit the uses of surface land in Osage County to "uses actually occurring at the time the [Osage Act] was passed." Resp. at 5. Nothing in the Osage Act distinguishes between small- and large-scale surface uses, and the only statutory language contemplates a surface estate flexible enough to adapt to changing economic conditions. The United States seeks to warp a mineral reservation and mining regulations to vest the Nation and its trustee, BIA, with land use powers contrary to every indication of Congress' intent in 1906. The Tenth Circuit rejected a similar argument in *Millsap v. Andrus*, finding "no significance in the specific enumeration" of specific minerals that "were being mined in the surrounding areas at the time the Act was passed" and concluded that such enumeration "does not mean that Congress intended 'other minerals' to include only minerals of a similar nature and quality." 717 F.2d 1326, 1329 n.5 (10th Cir. 1983). Just as *Millsap* rejected an overly restrictive reading of "other minerals," the Court should reject the United States' confining and anachronistic reading of "any other purpose" in the Osage Act. The United States provides no

4

evidence that Congress intended to limit development to land uses prevalent in 1906, and the United States' interpretation is inconsistent with the reality that many other types of land uses have occurred in the last century in Osage County without a lease or permit from the BIA.[4]

The portions of the Osage Act the United States cites confirm Congress intended to reserve to the Nation the "benefit" from leasing of the mineral estate, not simply dollars for every pound of mineral in place that might be "invaded" or "upheaved" or "altered" by surface construction. *See* Resp. at 6 (citing Osage Act § 4(2)-(4)). The United States cannot escape that the only practical interpretation of the Osage Act is to reserve regulatory authority over commercial development of minerals to the Nation, with BIA oversight, while allowing excavation unrelated to mining incident to on-site surface construction without tribal or BIA approval.[5]

## IV. THE UNITED STATES IMPROPERLY EXPANDS THE REGULATIONS.

### A. "Work of Any Nature" Is Limited to Work Related to Mining.

The United States contends the phrase "work of any nature" in Section 214.7 is "the heart of the instant dispute," Resp. at 4, and then gives that phrase an unheralded interpretation without citation to a single court or administrative decision in support. In so doing, the United States fails to provide the Court with a reasoned definition or any limiting principle. Instead, it offers an overly broad, impractical reading, while attempting to distinguish the construction of a wind farm from "the building of the many houses, ranches, commercial businesses, water towers and

---

[4] Defendants do not challenge *Millsap*'s holding, *cf.* Resp. at 9; it is simply inapplicable here. Defendants do not argue that their surface interests authorize them to *mine* limestone, which is the argument *Millsap* rejected as having "little persuasive value." *Millsap*, 717 F.2d at 1329 n.6.

[5] Defendants cited no cases regarding "farming and ranching activities of homesteaders." Resp. at 7. The cases Defendants cited, Motion at 14-17, demonstrate the fundamental proposition that a surface owner is entitled to develop its estate, and that excavation incident to surface use is not mining because it is not undertaken in the "business of mineral development."

5

sports fields already existing in Osage County"—none of which, on the record before the Court, required a lease or permit from the BIA prior to construction. Resp. at 10. The United States fails to anchor this all-encompassing interpretation in the text or context of Section 214.7, which leads it to overlook that Section's and the Regulations' intent.

The United States incorrectly accuses Defendants of asking the Court to disregard the phrase "work of any nature." *Compare* Resp. at 7, *with* Motion at 10-11 (arguing "work of any nature" must be interpreted as work related to *mining*). The United States declines to address Section 214.7's text, which provides "[n]o mining or work of any nature will be permitted . . . *until a lease covering such tract shall have been approved.*" (Emphasis added). The title to that section underscores the plain language that "work of any nature" is limited to work related to mining. *See id.* (title reading "[o]peration not permitted until lease approved . . ."). 25 C.F.R. § 214.2 authorizes leases ("[l]eases of minerals other than oil and gas may be negotiated with the tribal council."). Section 214.7, then, pertains only to the *timing* of "operations": mining or "work of any nature" pertaining to the mining, such as pre-mining exploration, preparation and related construction, cannot occur until a lease is approved.[6]

While the United States faults Defendants for referencing Part 211 to assist in interpreting "work of any nature," Resp. at 7, it acknowledges that "Section 214 does not contain a definitional section and so the Section 211 definitions inform the operation of Section 214." Resp. at 10. The text of Section 214.7, underscored by its title, demonstrates that it does not define the activities for which a lease is required but when a lease must be in place *when one is required*. Interpreting Section 214.7 in this manner—with Section 211.3's definition of "mining"—gives meaning to all regulatory terms and comports with the intent of the Osage Act.

---

[6] The plain meaning of "work of any nature" is not limited to work that disturbs the subsurface, but likely was intended to mean mining-related surface exploration and construction.

6

### B. Part 214 and Part 211 Are Consistent With and Reflect Relevant Common Law.

While acknowledging that "Congress did not intend to confine the uses of the surface estate," the United States argues Congress intended to ensure that use of the surface estate "did not infringe on the tribal interest in the underlying mineral estate." Resp. at 6. The United States fails to offer a practical measure of when a surface use infringes on the tribal interest in the mineral estate and instead invites this Court to accept the broad proposition that any surface activity that disturbs any "minerals" requires BIA and Nation approval.

The language of the Regulations, as well as the Osage Act's intent, establish the proper measure of whether a surface use infringes on the mineral estate—when the potential lessee proposes to engage in "mining," defined as the "business of mineral development." 25 C.F.R. § 211.3. As the United States concedes, Osage Wind has not marketed or sold minerals or otherwise engaged in the business of mineral development; consequently, it is not required to obtain a lease. The United States criticizes Defendants' analogy to statutes and regulations that define mining by reference to commercial use. But the Court does not need to read additional terms into the Regulations to read "mining" in Part 214 and "business of mineral development" in Section 211.3 as contemplating developing and using minerals as an end in itself, *e.g.*, for commercial purposes, not as lawful surface construction.

Contrary to the United States' assertion, Resp. at 10-12, analogous state and common law interpretations reflect the relationship between surface and mineral estates the Regulations recognize. The United States' interpretation ignores that surface and mineral estates have a reciprocal relationship. *See* Eugene O. Kuntz, *Law Relating to Oil and Gas in Wyoming*, 3 Wyo. L.J. 107, 113 (1948) ("[T]he surface and mineral estates are not only mutually dominant, but are also mutually servient estates."); *see also Faith United Methodist Church & Cemetery of Terra*

7

*Alta v. Morgan*, 745 S.E.2d 461, 479 n.101, 480-81 (W. Va. 2013) (compiling cases and holding "surface" "generally means the exposed area of land, improvements on the land, and any part of the underground actually used by a surface owner as an adjunct to surface use"). Viewed in this light, Osage Wind's activities are not "mining" or the "business of mineral development;" they are surface uses. The United States has yet to provide the Court with authority supporting its unique reading of Part 214, *i.e.*, that BIA and Nation approval be obtained prior to any surface use that requires a shovel.

### C. There Is No "de minimis" Exception to Tribal and BIA Approval.

The Response advances an untenable argument intended to rebut that the consequence of its "work of any nature" theory is to require a permit threatening tribal or BIA veto for any surface excavation the Nation opposes. It tries to invoke what it terms a "de minimis" exception of 5,000 cubic yards in Part 211's definition of "mining" to construct an arguable floor below the volumes requiring a "lease." It then contends the exception does not apply here because Osage Wind has allegedly excavated more than the 5,000 cubic yard limit, and "the issue before the court does not involve the permitting process, as referenced by Defendants, but rather the Secretary's approval of a lease." Resp. at 10.[7] But the United States fails to recognize that Section 211.3 defines "Lease" as "*any contract* . . . that authorizes . . . extraction of, or removal of any minerals" and "Permit" as "*any contract* issued by the superintendent . . . to conduct . . . removal of less than 5,000 cubic yards per year of common varieties." (Emphasis added). Consequently, a "Lease" is either a lease or permit, as applicable, but both require Nation and BIA approval. The United States cannot invoke a purported 5,000 cubic yard "exception" to avoid the implication of its current theory on construction in Osage County and, accordingly, on

---

[7]The United States' litigation position, that a "permit" is not at issue, cannot be reconciled with the BIA's pre-litigation assertion that Osage Wind was required to obtain a "Sandy Soil Permit."

8

the intent of the Osage Act. Defendants' arguments are not "irrelevant, red-herring diversions." Resp. at 10. Rather, the United States' "work of any nature" theory, because it untethers the definition of "mining" from common understandings of the term, leads to the untenable conclusion that, regardless of purpose or the amount excavated, any work that "invade[s], upheave[s], and utilize[s] the mineral estate," is subject to BIA and Nation approval, either as a lease or a permit.

## V.   RES JUDICATA BARS THE UNITED STATES' CLAIMS.

The United States' argument that res judicata is inapplicable to the United States fails. First, the United States' sovereignty does not necessarily immunize it from equitable defenses, including res judicata. *See Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 278 (2d Cir. 2005), *cert. denied* 547 U.S. 1128 (2006)[8] (laches); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006) (United States precluded from bringing a representative claim when private plaintiff previously pursued the same interests); *Equal Emp't Opportunity Comm'n v. U.S. Steel*, 921 F.2d 489, 494 (3rd Cir. 1990) (res judicata applies against the EEOC when it "seeks private benefits for an individual" who has litigated the same issue). The United States threatened to initiate the Prior Litigation against Defendants, filed the current litigation at the Nation's request, and seeks to advance claims solely for the Nation's benefit. It is thus subject to res judicata.

Second, this case and the Prior Litigation are concerned solely with the Nation's mineral estate in Osage County. As the United States has argued, this dispute is a "unique . . . special circumstance" and "[t]he application and holding in this case would apply only" to the Nation and Osage County. Resp. at 9 n.1. The Osage Act, § 3, confirms this limitation:  the Act

---

[8] Contrary to the U.S. Reply at 10 n.6, in *Quapaw Tribe of Okla. v. Blue Tee Corp.*, 653 F. Supp. 2d 1166, 1192 (N.D. Okla. 2009), the Northern District of Oklahoma held only that *Cayuga Indian Nation* was inapplicable to the defense of lack of standing asserted in that case.

reserved the mineral estate, and management thereof, to the Nation; BIA acts with respect to property interests of a single beneficiary, it is not enforcing public rights shared by others. *Cf. Cayuga Indian Nation*, 413 F.3d at 279 (United States barred from enforcing a private interest by intervening in a land dispossession case). The cases the United States cites, Resp. at 14-15, concern sovereign interests, not private rights, and are thus inapplicable. Third, contrary to the United States' assertion, Resp. at 15-16, the control test for determining whether parties are in privity, and to which the laboring oar[9] analysis is applicable, is not the sole analysis for finding that a prior judgment binds a non-party. *See Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008).

Fourth, the United States' argument that res judicata does not apply because different regulations are at issue in this case, Resp. at 16-19, ignores the transactional test for determining the identity of claims. While the Nation did not seek a declaration that the Wind Farm construction violated Part 214, it could have, which is what is required for purposes of res judicata.[10] *See* Motion at 18. The United States is now barred from litigating this question as proxy for the Nation. Even if res judicata does not strictly apply, the Court can, and should, consider the equities, which support dismissal. *See Green v. Mansour*, 474 U.S. 64, 72 (1985).

## VI. CONCLUSION

The Court should grant Defendants' Motion to Dismiss or for Summary Judgment.

Respectfully submitted,

*(signature page follows)*

---

[9] Defendants reserve the right to reassert this defense if discovery establishes that the United States did, in fact, wield the laboring oar in the Prior Litigation.

[10] *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284 (Fed. Cir. 2012), and *In re Freeman*, 30 F.3d 1459 (Fed. Cir. 1994), cited Resp. at 19, are inapplicable as they address the doctrine of issue preclusion, which, unlike res judicata, requires a claim actually have been asserted and decided.

NORMAN, WOHLGEMUTH, CHANDLER, JETER, BARNETT & RAY

By: *s/Ryan A. Ray*
   Joel L. Wohlgemuth, OBA #9811
   Ryan A. Ray, OBA # 22281
  401 S. Boston Ave.
  Tulsa, Oklahoma 74103
  Telephone: (918) 583-7571
  E-mail: RAR@nwcjlaw.com

and

MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.

Lynn H. Slade
William C. Scott
Post Office Box 2168
500 Fourth Street, N.W., Suite 1000
Albuquerque, New Mexico 87103-2168
Telephone: (505) 848-1800
Lynn.Slade@modrall.com
Bill.Scott@modrall.com

*ATTORNEYS FOR DEFENDANTS OSAGE WIND, LLC, ENEL KANSAS, LLC and ENEL GREEN POWER NORTH AMERICA, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2015, I electronically transmitted the attached **DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT** to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, OK  74119
(918) 382-2700
Cathy.mcclanahan@usdoj.ok
*Attorney for the United States of America*

The following non-ECF registrants have been served by First Class United States mail:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK  74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*

*s/Ryan A. Ray*
Ryan A. Ray

*Y:\dox\client\85910\0001\PLEADING\W2358187.DOC*