IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-JHP-TLW |
| | ) | |
| (1) OSAGE WIND, LLC; | ) | |
| (2) ENEL KANSAS, LLC; and | ) | |
| (3) ENEL GREEN POWER NORTH | ) | |
|   AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
MOTION TO INTERVENE FOR PURPOSES OF APPEAL [DOC. 46]**

Defendants, Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively, "Osage Wind"), respectfully respond in opposition to the Motion to Intervene for Purposes of Appeal, filed by the Osage Minerals Council (the "OMC") [Dkt. #46] (the "Motion").

### INTRODUCTION

The Motion should be denied as untimely (*see* Section I, *infra*); the Motion should be denied as futile (*see* Section II, *infra*); and, alternatively, the Motion should be denied because the Notice of Appeal divested this Court of jurisdiction to entertain the Motion in the first instance (*see* Section III, *infra*). The OMC did not timely act to seek intervention. It could have done so at any time during the pendency of this case. It certainly could have done so at any time during the sixty (60) days from this Court's entry of final judgment until the deadline to file an appeal. Instead of acting timely, it waited until less than five (5) hours before the deadline for *parties* to file a notice of appeal to seek leave to become a party.

The decision by the United States not to appeal is an insufficient basis to allow the OMC intervention at this late stage of the proceedings because (i) the OMC's motion to intervene is not timely, (ii) permitting OMC's intervention now would prejudice Osage Wind and require an unwarranted use of judicial resources, and (iii) intervention would be futile because Osage Wind's *res judicata* defense unequivocally applies to the OMC. The OMC's failure to act diligently to intervene—prior or subsequent to—this Court's decision on the merits is fatal to its quest to intervene. And the OMC's immediate filing of a notice of appeal divests this Court of jurisdiction to grant intervention.

Simply put, the OMC's motion is untimely and futile. If the Court concludes it has jurisdiction, it should **deny** the Motion.

## BACKGROUND FACTS

1. In 2011, the OMC brought an action to enjoin the construction of the wind-energy facility at issue in this case, which was dismissed with prejudice, constituting a final judgment on the merits. *See Osage Nation acting through the Osage Minerals Council v. Wind Capital Group, LLC, et al.*, No. 11-CV-00643-GKF-PJC (N.D. Okla. Oct. 18, 2011) (hereinafter, the "Prior Litigation"). The OMC initially appealed this decision, but subsequently dismissed its appeal. It is undisputed that the Prior Litigation resulted in a final judgment on the merits. [Dkt. #44, 5 n.2].

2. On November 21, 2014, Plaintiff, the United States of America (the "United States"), in its capacity as trustee of the Osage minerals estate (and, by extension, the OMC, a tribal entity whose purpose is to oversee the same tribal minerals estate) and for the purpose of enforcing federal law, initiated the current action. This action by the United States was initiated at the request of the OMC. [Dkt. #2, ¶ 29]. Thus, the OMC has been fully aware of this case, and communicating with the United States about it, for well over a year.

3. On September 30, 2015, after extensive briefing and argument before the Court, the Court granted Osage Wind's Motion for Summary Judgment [Dkt. # 26], issuing a nineteen-page Opinion and Order, and entering Judgment accordingly. [Dkt. # 44, Dkt. #45].

4. In its Opinion and Order, this Court denied Osage Wind's argument that the Prior Litigation brought by the OMC precluded the United States from bringing the same claims, finding the requirement that there be an identity of parties was not satisfied. This, the Court concluded, was because of the "settled law that when the United States is acting on behalf of an Indian tribe, the United States cannot be bound by a prior action brought by the tribe in which the United States did not participate." [*Id.* at 6].

5. Late on the last day on which the United States (or Osage Wind) could appeal this Court's decision, the OMC filed the Motion, seeking to intervene in the District Court for purposes of appealing the Court's decision. [Dkt. #46]. Minutes later, despite the fact that the Court had not yet ruled on the Motion, the OMC filed a "Notice of Appeal."

### ARGUMENT AND AUTHORITIES

Although this Court lacks jurisdiction to entertain the Motion due to the OMC's filing of a Notice of Appeal (*see* Section III, *infra*), should the Court reach the merits of the Motion, it should decide it was untimely filed and futile. The OMC's Motion is untimely, as it was filed far too late. The Motion is also futile, as the Prior Litigation is *res judicata* against the OMC. The OMC should not be given a second (or third or fourth) chance to challenge this wind-energy facility when it lost an earlier litigation for the same purpose and failed to act in a timely manner in this case.

### I.  THE MOTION TO INTERVENE SHOULD BE DENIED AS UNTIMELY

The OMC did not timely seek intervention, and intervention should accordingly be denied. In accordance with FED. R. CIV. P. 24(a)(2), a nonparty may intervene as a matter of right only if the following are satisfied: "(1) the [motion] is timely, (2) the [movant] claims an interest relating

3

to the property or transaction which is the subject of the action, (3) the [movant's] interest may be impaired or impeded, and (4) the [movant's] interest is not adequately represented by existing parties." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1231 (10th Cir. 2010) (internal quotation marks and citations omitted). Likewise, permissive intervention requires the motion to intervene be timely. FED. R. CIV. P. 24(b).

In determining the timeliness of a motion to intervene, the Tenth Circuit recognizes three particularly important factors: "[(1)] the length of time since the [movant] knew of [its] interests in the case; [(2)] prejudice to the existing parties; [and (3)] prejudice to the [movant]." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (citing *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)). Whether the motion is timely should be determined "in light of all of the circumstances." *Id.*

### A. The OMC Has Known of Its Interests in this Proceeding Since at least 2011, and Has Known of the Need to Take Steps to Pursue an Appeal Since September 30, 2015.

The Tenth Circuit measures delay "from when the movant was on notice that its interests may not be protected by a party already in the case." *Tyson Foods*, 619 F.3d at 1232 (finding undue delay when the Cherokee Nation had been aware of the litigation "even before suit was filed," as evidenced by a letter written by the Chief of the Cherokee Nation to the Oklahoma Attorney General referencing the "proposed litigation."). "When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention." *Id.* at 1232 (quoting 7C CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1916, at 539–40 (3d ed. 2007)). The purpose of requiring a post-judgment motion to intervene be timely is because "[o]therwise a proposed intervenor might simply wait and see if the trial's outcome leaves intervention desirable with its

4

attendant risk of undoing what the trial court has already done." *S. Utah Wilderness All. v. Kempthorne*, 525 F.3d 966, 971 (10th Cir. 2008) (internal quotation marks and citations omitted).

The OMC bases the timeliness of the Motion on the unsupported assertion that "[u]nder well-established Tenth Circuit case law, post-judgment intervention for purposes of appeal is timely if made within the time period for filing an appeal." [Dkt. #46 at 3]. The OMC also contends that it did not previously intervene because it believed that the United States was adequately representing its interests, but "[s]ince the Court's decision," the United States has not acted to appeal the Court's judgment. [*Id.*]. These assertions are insufficient to demonstrate that the OMC did not "unduly delay" moving to intervene. *Tyson*, 619 F.3d at 1232; *Abeyta v. City of Albuquerque*, 644 F.3d 792, 797 (10th Cir. 2011) (nonparty not allowed to appeal unless "the nonparty has a unique interest in the litigation *and becomes involved in the resolution of that interest in a timely fashion both at the district court level and on appeal*." (emphasis added.)). In *Kempthorne*, the Tenth Circuit held untimely a motion to intervene by a non-party that was filed after the losing party before the district court decided not to appeal. 525 F.3d at 971. After noting that a proposed intervenor, whose interests were purportedly represented by a party to the litigation, cannot simply "wait and see" what the outcome is before prevailing, *Kepmthorne* stated, "[u]nfortunately for Movants, this is precisely what they appear to have done given their acknowledgment that they felt compelled to intervene *only after* realizing the BLM might not file post-judgment motions or pursue an appeal from the district court's judgment." *Id.* The district court's denial of the motion to intervene was affirmed, because there was "nothing in the record to suggest the BLM did not adequately represent [the putative intervenor's] interests in its defense of SUWA's lawsuit or that BLM's interests are now adverse to Movants'." *Id.*

5

That the OMC failed to timely act to protect its interests is highlighted by the crystal-clear record that the OMC has known of its purported interests in opposing this wind-energy facility since 2011, including filing its own prior federal lawsuit against the very same wind-energy facility, which it ultimately lost.[1]  And the OMC knew of the present action since 2014 and regularly communicated with the United States about it both before and after the case was filed.[2] Other than the fact that the United States did not appeal the Court's judgment, there is nothing to suggest that the interests of the OMC and the United States are adverse or that the United States did not represent the OMC's interests.

### B. Osage Wind Will Be Prejudiced by Allowing the OMC to Intervene at this Late Stage, as the OMC's Presence as a Party Causes Osage Wind's **Res Judicata** Defense to be in a Significantly Different Posture.

Permitting intervention at this extremely late stage would be prejudicial to both Osage Wind and the judicial process.  As discussed in more detail below, allowing intervention of the OMC at this stage would require the Court to consider Osage Wind's *res judicata* defense against the OMC, after the Court has already disposed of the entire case on the merits.  The Tenth Circuit requires motions to intervene to be timely pursued as "a guard against prejudicing the original parties by the failure to apply sooner." *Kempthorne*, 525 F.3d at 971, n. 6 (citation omitted). In reviewing whether parties would be prejudiced, the court analyzes the prejudice caused by the movant's delay. *Tyson Foods*, 619 F.3d at 1236 (citation omitted). That is, the court determines

---

[1] It also bears noting that, in 2014, the OMC and Osage Nation filed two cases in Oklahoma State Court also challenging the very same wind-energy project under Oklahoma's zoning statutes. (*See* Dkt. # 26, at 22 n.3).

[2] In fact, soon *after* the United States filed its complaint in this case, on December 15, 2014, the Osage Nation filed suit against the same parties who prevailed here in Osage Nation Tribal Court demanding removal of wind towers, on theories similar to those the United States advanced here. *See The Osage Nation v. Osage Wind, LLC, et al.,* No. Civ-2014-10, Osage Nation Tribal Court. The Osage Nation has not taken action to prosecute that case, perhaps choosing to await the outcome of the present case.

whether the "last-minute delay would create prejudice—prejudice that would not have resulted from an earlier intervention." *Id.* For example, in *Tyson Foods*, the Court recognized the existing parties would be prejudiced in that intervention would cause a delay of the trial, would require the insertion of causes of action that were previously dismissed, and the "resuscitation of numerous motions pertaining to those causes of action . . . ." *Id.*

Here, the OMC seeks to intervene for the purpose of appealing the District Court's decision because the United States has declined to do so. The OMC waited to seek intervention until the last few hours before the deadline to appeal the Court's decision. In extensive briefing before the Court, Osage Wind asserted that the Prior Litigation, in which a final judgment was entered against OMC, was *res judicata* to the issues raised by the United States. [Dkt. # 17, at 18-21; Dkt. # 26, at 18-25, Dkt. # 33, at 9-10]. The Court, in holding that the United States' claims were not barred by *res judicata*, concluded that "when the United States is acting on behalf of an Indian tribe, the United States cannot be bound by a prior action brought by the tribe in which the United States did not participate." [Dkt. # 44, at 6]. Osage Wind would be prejudiced by having to engage in additional briefing and argument on the *res judicata* defense as applied against the OMC, and other potential defenses against the OMC.

In addition to prejudice to Osage Wind, judicial economy will be conserved by denying the Motion. The Tenth Circuit has held the "interests of judicial economy restrain" a non-party from intervening on a second appeal, as "she cannot now enter the scene and request us to start over." *Abeyta*, 664 F.3d at 797. Re-litigating, at a minimum, the *res judicata* issue (an effort that would be, as discussed below, futile) would be an unwarranted use of the Court's and parties' time and resources.

7

### C. Any Prejudice to the OMC Is Vitiated by the Fact that It Participated in this Action, and Commenced Its Own Prior Proceeding as to the Wind-Energy Facility at Issue.

Any alleged prejudice to the OMC is not a sufficient basis to grant intervention. The only prejudice to the OMC will be that the Court's decision will be final. Perhaps that might ordinarily be prejudicial to a party who otherwise did not participate in the case or resolution of the underlying dispute. But the OMC did both here. First, it previously brought its own case challenging the legality of the wind-energy facility at issue in this case. The manner of construction of the project was known then, and the regulations at issue in this case had been on the books for decades at the time. If the OMC itself had such a quarrel with the project, the Prior Litigation was the place to assert it. Second, as counsel for the United States advised the Court at the February 24, 2015 status and scheduling conference, the OMC and/or the Osage Nation requested this case to be filed, and it has been involved throughout.[3] As the Osage Nation, of which the OMC is a subsidiary entity, filed its own Complaint in Tribal Court on the same grounds as the Government's Complaint here—now nearly two years ago—there is no reason the OMC could not have earlier sought intervention. *See Tyson Foods*, 619 F.3d at 1238 ("In any event, the possibility of prejudice is more speculative than real. The [putative intervenor] has consistently stated that it would rely on the [party's] efforts to prove the claims against Tyson."). The OMC should not be relieved of the consequences of its "wait and see" decision to ride the United States' coat tails, simply because the result of that decision is not to its liking.

---

[3] Just as one example, the Court may recall counsel for the United States informing the Court at the Scheduling Conference in this matter that the United States would have to consult the OMC and/or the Osage Nation about any potential settlement or other major decision in the case, which presumably occurred.

8

**II.     THE MOTION TO INTERVENE IS FUTILE.**

In addition to being untimely, the Motion is futile because any claim by the OMC against Osage Wind is barred by *res judicata* based on the Prior Litigation. *See Educ. Credit Mgmt. Corp. v. Bradco, Inc.*, No. CIV.A. 07-2418-DJW, 2008 WL 2066993, at *4 n.28 (D. Kan. May 14, 2008) (collecting cases in which a motion to intervene is denied as futile); *cf. Abeyta*, 664 F.3d at 797 n.5 (stating that, even if a nonparty could invoke the Tenth Circuit's appellate jurisdiction, it would affirm the underlying order under the law-of-the-case doctrine). "Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in the prior action." *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002) (quotation marks and citation omitted). Three elements must be satisfied to apply *res judicata*: "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Id.* at 504 (quotation marks, citation, and brackets omitted). As the Court has ruled, the Prior Litigation was a final judgment on the merits. *See* Fact 1, *supra*. The OMC was the plaintiff in the Prior Litigation. *See id.* And, while the Prior Litigation did not challenge the wind farm under the same regulatory schemes the Court has considered in this matter, the OMC *could have raised* those issues, and thus each element of *res judicata* is satisfied. *See Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006) (stating a claim is considered part of the same transaction for purposes of *res judicata* when it fails to raise "*new and independent* claims, not part of the previous transaction, based on the new facts") (emphasis in original). Because, in the Prior Litigation, the OMC could have challenged the wind project under the regulatory schemes raised by the United States in the litigation of this action and rejected by

9

this Court, any claim alleged by the OMC against Osage Wind here would have been barred by *res judicata.*

### III. THIS COURT LACKS JURISDICTION TO DECIDE THE MOTION.

An alternative reason to deny the Motion is the fact that the Court lost jurisdiction to grant intervention when the OMC filed its notice of appeal. As a general rule:

> [A] federal district court and a court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).

The divestiture of this Court's jurisdiction by the filing of the Notice of Appeal was immediate. *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1264 (10th Cir. 2006) ("This appeal immediately divested the district court of jurisdiction, except over collateral matters."). A ruling by the Court on non-collateral matters would be "null and void." *Garcia v. Burlington N. R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987). The Motion is not a collateral matter, as it seeks to intervene in this case to challenge the Court's rulings on the merits. *See also Drywall Tapers & Painters of Greater N.Y. v. Nastasi & Assocs.*, 488 F.3d 88, 94 (2d Cir. 2007) (affirming the district court's denial of a motion to intervene filed after a non-party filed a notice of appeal); *Roe v. Town of Highland*, 909 F.2d 1097 (7th Cir. 1990) (notice of appeal divested trial court of jurisdiction to rule on motion to intervene); *Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) (recognizing a notice of appeal divests the trial court of jurisdiction to consider a motion to intervene).

Although the Notice of Appeal filed by the OMC is improper because the OMC is not a "party" to this action, such filing divested this Court of jurisdiction to entertain the Motion. *See Griggs*, 459 U.S. at 58. The Motion is not a collateral matter to the appeal, but directly addresses

the merits of the Court's Opinion and Order.  The filing of the OMC's Notice of Appeal divested this Court of jurisdiction to decide the matter. Accordingly, the Motion should be denied.

## CONCLUSION

For the foregoing reasons, Osage Wind respectfully requests this Court **deny** the OMC's Motion to Intervene for Purposes of Appeal. [Dkt. # 46].

Respectfully submitted,

/s/ Ryan A. Ray\_\_\_\_
**Joel L. Wohlgemuth,** OBA # 9811
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER JETER BARNETT & RAY, P.C.**
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade
William C. Scott
Deana M. Bennett
MODRALL, SPERLING, ROEHL,
    HARRIS & SISK, P.A**
Post Office Box 2168
500 Fourth Street, N.W., Suite 1000
Albuquerque, New Mexico  87103-2168
Telephone: (505) 848-1800

**ATTORNEYS FOR DEFENDANTS OSAGE WIND, LLC, ENEL KANSAS, LLC, AND ENEL GREEN POWER NORTH AMERICA, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2015, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Martha L. King, Esq.
Cathryn Dawn McClanahan, Esq.

The following non-ECF registrants have been served by First Class United States mail:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK  74145
(918) 669-7730
Charles.babst@sol.doi.gov

/s/ Ryan A. Ray
**Ryan A. Ray**