# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>(1) OSAGE WIND, LLC;<br>(2) ENEL KANSAS, LLC; and<br>(3) ENEL GREEN POWER<br>  NORTH AMERICA, INC.,<br><br>    Defendants. | Case No. 14-CV-704-GKF-JFJ |

## MOTION TO SUBSTITUTE SECOND
## AMENDED COMPLAINT (EXHIBIT A to DKT. 98)

Plaintiff, the United States of America, by and through R. Trent Shores, United States Attorney for the Northern District of Oklahoma, and Cathryn D. McClanahan, Assistant United States Attorney, for its Motion to Substitute Second Amended Complaint against the above-named defendants, alleges as follows:

1. The Court granted the Plaintiff until January 10, 2020 to amend its first Amended Complaint that was filed on December 12, 2019 (Dkt. 20).

2. Plaintiff filed its Motion for Leave to File Second Amended Complaint on December 16, 2019 (Dkt. 98) with its proposed Second Amended Complaint attached as Exhibit "A".

3. Although Plaintiff is confident that the previously submitted Second Amended Complaint was sufficient and adequate in every respect, Defendants' Response in Opposition to the Second Amended Complaint (Dkt. 101) raises concerns that can easily be addressed through substitution of a corrected Second Amended Complaint.

4. The new, corrected Second Amended Complaint (attached hereto as Exhibit "A") differs from the previously submitted Second Amended Complaint in the following respects:

      a.  Revise the title to "Second Amended Complaint for Declaratory Judgment, Damages and Equitable Relief".

      b.  Additional paragraphs 33, 34 and 35 at page 7.

      c.  Additional paragraph 53 at page 10.

      d.  Additional paragraph 63 at page 11.

      e.  Lastly, changes to paragraph 10 at pages 13-14.

5.  The United States requests this substitution (and leave to amend its complaint) for the purpose of advancing the litigation through the damages phase, as discussed at the December 11, 2019 status conference. In this respect, Plaintiff's request to file an Amended Complaint is quite dissimilar to Defendants' bizarrely timed "Answer" (Dkt. 99, filed December 31, 2019). Despite the mandate returned by the Tenth Circuit, Defendants seem intent on injecting new defenses and arguments, never made before, to render the entirety of the previous four years of litigation nothing more than a moot intellectual exercise by the U. S. Court of Appeals and the United States Supreme Court.

**WHEREFORE**, the United States respectfully requests that this Court allow Plaintiff to substitute the Second Amended Complaint which was attached in the Motion for Leave to File Second Amended Complaint on December 16, 2019, with the corrected version attached hereto as Exhibit "A".

Respectfully submitted,

UNITED STATES OF AMERICA

R. TRENT SHORES
United States Attorney

_____
CATHRYN D. McCLANAHAN, OBA No. 14853
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
T: 918-382-2700
cathy.mcclanahan@usdoj.gov

Of Counsel:
Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor's Office
7906 East 33rd Street
Tulsa, Oklahoma 74145
T: 918-669-7730
charles.babst@sol.doi.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of January, 2020, I electronically transmitted the foregoing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ryan A. Ray
Joel L. Wohlgemuth
rar@nwcjlaw.com
jlw@nwcjlaw.com

-and-

Lynn H. Slade
Sarah S. Stevenson
Deana M. Bennett
Spencer L. Edelman
lynn.slade@modrall.com
sarah.stevenson@modrall.com
deana.bennett@modrall.com
spencer.edelman@modrall.com
*Counsel for Defendants*

David McCullough
dmccullough@dsda.com

Jeffrey S. Rasmussen
jrasmussen@ndnlaw.com

-and-

Wilson Pipestem
Mary Kathryn Nagle
Abi L. Fain
afain@pipestemlaw.com
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
*Counsel for Intervenors, Osage Minerals Council*

s/*Michelle Hammock*
Michelle Hammock
Paralegal Specialist

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) UNITED STATES OF AMERICA,           )<br>                                                                    )<br>           Plaintiff,                                     )<br>                                                                    )<br>           v.                                                     )           Case No. 14-CV-704-GKF-JFJ<br>                                                                    )<br>(1) OSAGE WIND, LLC;                              )<br>(2) ENEL KANSAS, LLC; and                    )<br>(3) ENEL GREEN POWER                          )<br>     NORTH AMERICA, INC.,                      )<br>                                                                    )<br>           Defendants.                                 )| |

**SECOND AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT, DAMAGES AND EQUITABLE RELIEF**

Plaintiff, the United States of America, by and through R. Trent Shores, United States Attorney for the Northern District of Oklahoma, and Cathryn D. McClanahan, Assistant United States Attorney, for its Second Amended Complaint against the above-named defendants, alleges as follows:

**NATURE OF THE ACTION**

1.   In this civil action, the United States sought a declaratory judgment that the excavation activities of Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively "Defendants") in Osage County, Oklahoma, were unlawful because Defendants failed to obtain all requisite federal regulatory approvals and failed to enter into appropriate leases approved by the Secretary of the Interior ("the Secretary").

2.   Defendants conducted unauthorized mineral excavation activities in connection with the construction of a wind energy project in Osage County, Oklahoma. The project consists of 84 wind turbines and associated infrastructure. Defendants excavated and constructed foundations for the wind turbines, as well as trenches for cables. Defendants excavated numerous

Exhibit A

pits measuring approximately 60 feet in diameter and 10 feet deep. As part of this process, Defendants excavated sand, soil of various types, and rock encountered in place. Defendants crushed some of these extracted materials and used them to reinforce the concrete turbine foundations and for associated infrastructure. Decision from Circuit Court, Dkt. # 78.

3. The United States sought a declaratory judgment that the activities of Defendants in Osage County, Oklahoma, were unlawful and that Defendants were obligated to obtain the requisite federal regulatory approvals and to enter into appropriate leases approved by the Secretary. The United States Court of Appeals for the Tenth Circuit has agreed with the interpretation as set forth by Plaintiff. Decision from Circuit Court, Dkt # 78.

## PARTIES

4. The Osage Nation ("Osage Nation") is a federally recognized Indian tribe. The United States is authorized to bring lawsuits on behalf of trust Indian beneficiaries pursuant to 25 U.S.C. § 175. The United States is further authorized to litigate this case in order to fulfill its fiduciary responsibility to protect trust Indian resources. *See United States v. Colvard*, 89 F. 2d 312 (4th Cir. 1937). Further, as trustee, the United States is charged with the administration, protection, and management of the estate. *See* Act of June 28, 1906 § 3, 34 Stat. 539, 543-44, amended in relevant part by Act of Mar. 2, 1929, 45 Stat. 1478 (extending restricted trust status of mineral estate to 1959); Act of June 24, 1938, 52 Stat. 1034 (extending restricted trust status of the mineral estate to 1983); Act of Oct. 21, 1978, 92 Stat. 1660 (extending restricted trust status of minerals estate in perpetuity). In furtherance of those trust responsibilities, the Bureau of Indian Affairs ("BIA") has promulgated and administers regulations governing activities affecting the Osage minerals estate. The United States brings this lawsuit in its capacity as trustee of the Osage minerals estate, as well as to enforce compliance with federal law.

5. Defendant Osage Wind, LLC, is a Delaware limited liability company and has its headquarters at 717 Kihekah Avenue, Pawhuska, Oklahoma 74056. It is 100% owned by Enel Kansas, LLC. Corporate Disclosure Statement, Dkt. # 7.

6. Defendant Enel Kansas, LLC, is a Delaware limited liability company and has its headquarters at Southlake Technology Park, 16105 West 113th Street, Suite 105, Lenexa, Kansas 66219. It is 100% owned by Enel Green Power North America, Inc. Corporate Disclosure Statement, Dkt. # 7.

7. Defendant Enel Green Power North America, Inc. is incorporated under the laws of Delaware and has its headquarters at One Tech Drive, Suite 220, Andover, Massachusetts 01810. Corporate Disclosure Statement, Dkt. # 7.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. §§ 1345, which provides that the district courts shall have original jurisdiction in all civil actions commenced by the United States or any agency thereof. *McCarty v. Hollis*, 120 F. 2d 540 (10th Cir. 1941). Defendants have admitted jurisdiction in this matter. Joint Status Report, Dkt. # 34.

9. Venue is proper in this district under 28 U.S.C. § 1391(b), inasmuch as the property at issue is located in Osage County, Oklahoma. 28 U.S.C. § 1661(b). Defendants have admitted venue in this matter. Joint Status Report, Dkt. # 34.

## FACTS

**The Osage Nation and the Osage Mineral Estate**

10. The Osage Nation is a federally recognized Indian tribe. The Osage Reservation was originally established through the Act of June 5, 1872, ch. 310, 17 Stat. 228 (An Act to Confirm to the Great and Little Osage Indians a Reservation in Indian Territory).

11. In 1906, Congress enacted the Osage Allotment Act, which severed the mineral estate from the surface estate of Osage Reservation and placed the mineral estate in trust for the tribe. *See* Act of June 28, 1906, ch. 3572, 34 Stat. 539. The surface estate was allotted to individual members of the Osage Nation for the purpose of homesteading. *Id.* at §2. Congress regarded the surface estate as suitable for farming and grazing. S. Rep. No. 59-4210, 59th Congress (1906) (Division of the Lands and Funds of Osage Indians, Oklahoma) at 2.

12. Congress, in the Osage Allotment Act, specifically reserved "oil, gas, coal, or other minerals covered by the lands" to the Osage Tribe. Osage Allotment Act at §3. In severing the mineral estate from the surface estate, Congress did not contemplate uses of the surface estate which would interfere with the mineral estate beyond those normally associated with homesteading, farming, and grazing.

13. The Osage Minerals Council is an independent agency within the Osage Nation established by Article XV of the Osage Nation Constitution. Among the responsibilities of the Osage Minerals Council is the negotiation of leases for the development and extraction of minerals from the Osage mineral estate.

14. The BIA and its Osage Agency in Pawhuska, Oklahoma, administer many of the United States' trust duties related to the Osage mineral estate.

**Defendants' Mining Activities**

15. Defendants constructed a wind energy project consisting of between 84 turbines, underground collection lines, an overhead transmission line, two permanent meteorological towers, and a network of access roads.

16. Immediately below the surface, the mineral estate contains limestone, sandy soil (sand and gravel), and other minerals belonging to the Osage Nation.

17. The installation of the wind energy project's turbines and foundations required substantial excavation of the subsurface estate belonging to the Osage Nation, which is held in trust by the United States and regulated by the BIA.

18. The foundations for the wind turbines are made from reinforced concrete, in a conical shape with a base diameter of approximately 60 feet, buried to a depth of approximately 10 feet in the subsurface estate.

19. For each of the turbines, Defendants dug pits measuring more than 60 feet wide and 30 feet deep and excavating limestone, sandy soil and other minerals from the subsurface estate. Rock from the excavations came out in pieces of varying size and shape.

20. Defendants utilized rock crushers to crush the materials.

21. Once a foundation for the turbine was poured and had cured, the crushed rock, sand and soil from the excavation were pushed back into the excavated site as backfill.

22. The erection of the turbines involved excavation and use by Defendants of well over 60,000 cubic yards of whatever minerals or materials Defendants may have found in place.

**The Defendants' Activities Require Prior Approvals**

23. Generally, the development of Indian tribal solid mineral resources is governed by federal regulations found at 25 C.F.R. § 211. There are specific regulations applicable to non-oil and gas mining (commonly referred to as hard minerals) on the Osage Mineral Reserve as set forth in 25 C.F.R. § 214.[1]

24. Pursuant to 25 C.F.R. § 214.7, "No mining or work of any nature will be permitted upon any tract of land until a lease covering such tract shall have been approved by the Secretary

---

[1] This Second Amended Complaint does not concern or make any allegations that concern government approval over oil and gas development or exploring, severing, capturing or producing oil and gas. In fact, oil and gas exploration is specifically excepted from Part 214.

of the Interior and delivered to the lessee." Defendants are performing (or did perform) mining or work of any nature and such actions are not (and were never) authorized.

25. Additionally, "Leases of minerals other than oil and gas may be negotiated with the tribal council after permission to do so has been obtained from the officer in charge [the superintendent of the Osage Indian Agency]." 25 C.F.R. § 214.2.

26. According to 25 C.F.R. § 211.3, "mining" is "the science, technique, and business of mineral development including, but not limited to: opencast work, underground work, and in-situ leaching directed to severance and treatment of minerals; Provided, when sand, gravel, pumice, cinders, granite, building stone, limestone, clay or silt is the subject mineral, an enterprise is considered 'mining' only if the extraction of such mineral exceeds 5,000 cubic yards in any given year."

### Notice to the Defendants Regarding Unauthorized Activities

27. Osage Agency Superintendent Robin Phillips wrote to Defendant Enel Green Power North America, Inc. on October 9, 2014, and demanded that the subject activities cease until an appropriate permit or lease for the excavation and use of minerals from the Osage Mineral Reserve was approved by the Osage Nation and the BIA.

28. On October 29, 2014, the Osage Mineral Council approved Resolution 3-25, requesting the assistance of the United States to protect the Osage Mineral Reserve from unauthorized commercial use.

29. Defendants never sought and expressly refused to seek appropriate authorization.

30. According to Defendant, excavation started for the Osage Wind project on November 18, 2014. Response in Support of Motion, Dkt. # 27 at Exhibit A.

6

31. This litigation was initially filed on November 21, 2014, bringing the unlawfulness of the excavation activities to Defendant's full attention.

32. Nonetheless, excavation continued in earnest until completed, according to Defendant, on December 15, 2014. Response in Support of Motion, Dkt. # 27 at Exhibit A.

33. By their unlawful invasion and conversion of the Osage mineral estate, Defendants have caused irreparable harm. The ongoing injury to the estate is severe, irreparable and unlawful, outweighing the harm Defendants may suffer if relief is granted to the Plaintiff. Public interests would be vindicated – not adversely affected – by injunctive relief in this matter.

34. By their unlawful invasion and conversion of the Osage mineral estate, Defendants have enjoyed unjust enrichment to the detriment of the Osage mineral estate. But for the unjustifiable invasion and exploitation of the Osage mineral estate, such enrichment would not have benefitted Defendants. Remedies at law are inadequate to fully address the harm caused by Defendants' activity.

35. Although Defendants unlawfully avoided any lease relationship, they wrongly seized the mineral estate and created records regarding the destruction, conversion and profiteering concerning the mineral estate. The destruction and conversion of the mineral estate was finally complete after the filing of the instant litigation, wherein an accounting is sought. A full accounting is warranted as no other adequate remedy at law exists.

## COUNT I

### DECLARATION REGARDING THE APPLICABILITY
### AND VIOLATION OF 25 C.F.R. § 211

36. The United States realleges and incorporates the preceding paragraphs.

37. The Defendants have engaged in unauthorized mining and excavation in the subsurface lands of the Osage mineral estate without first obtaining a lease approved by the Secretary.

38. 25 C.F.R. § 211 sets forth the regulations that are generally applicable to the leasing of tribal lands for mineral development. Although these regulations specifically carve out from their coverage certain sets of regulations for specified Indian tribes (*see* 25 C.F.R. § 211.1(e)), no such carve out is made for the Osage Nation. Thus, by their terms, the regulations in § 211 are applicable to the mining and extraction of solid minerals from the subsurface lands of the Osage mineral estate.

39. 25 C.F.R. § 211.48 explicitly prohibits "exploration, drilling, or mining operations on Indian land" without obtaining from the Secretary (a) "written approval of a mineral lease or permit" and (b) "after a lease or permit is approved, written permission before any operations are started on the leased premises."

40. 25 C.F.R. § 211.3 defines "Indian Land" as "any lands owned by any individual Indian . . . or other tribal group which owns land or interests in the land, the title to which is held in trust by the United States or is subject to a restriction against alienation imposed by the United States." In the case of the Osage Nation, the Indian lands are the subsurface mineral estate which was reserved by Congress for the benefit of the Tribe.

41. 25 C.F.R. § 211.3 defines "mining" as "the science, technique, and business of mineral development." Further, that section provides that "mining" includes but is not limited to "opencast work, underground work, and in-situ leaching." When the subject mineral is sand, gravel, pumice, cinders, granite, building stone, limestone, clay or silt, extraction is only "mining" if it exceeds "5,000 cubic yards in any given year."

42. Defendants have extracted significantly more than 5,000 cubic yards of sand, gravel, pumice, cinders, granite, building stone, limestone, clay or silt this year. Therefore, they

8

are engaged in "mining" under the definition set forth in the Code of Federal Regulations, as interpreted by the U. S. Court of Appeals. Decision from Circuit Court, Dkt. # 78.

43. According to the U. S. Court of Appeals (Dkt. # 78), the Defendants have exploited the subsurface Osage mineral estate by excavating, extracting, severing, converting, and crushing minerals without obtaining a proper lease, permit or approval as required by federal law.

44. By reason of the U. S. Court of Appeals decision in this matter (Dkt. # 78) and now as law of the case, this Court should declare judgment that Defendants' activities required compliance with 25 C.F.R. § 211 and that the express terms of that section have been violated by Defendants.

## COUNT II

### DECLARATION REGARDING THE APPLICABILITY AND VIOLATION OF 25 C.F.R. § 214

45. The United States realleges and incorporates by reference the preceding paragraphs.

46. The regulations applicable to mining on Osage reservation lands provide that "[n]o mining or work of any nature will be permitted upon any tract of land until a lease covering such tract shall have been approved by the Secretary of the Interior and delivered to the lessee." 25 C.F.R. § 214.7. Here, according to the Tenth Circuit, the Defendants have violated the regulations because they engaged in mining or other work without having first obtained an appropriate lease and prior approvals. Decision from Circuit Court, Dkt. # 78 at p. 26.

47. "Leases of minerals other than oil and gas may be negotiated with the tribal council after permission to do so has been obtained from the officer in charge [the Superintendent of the Osage Agency]." 25 C.F.R. § 214.2. Defendants failed to obtain an approved lease regarding the mining or other work performed on the Osage mineral reserve.

48. By reason of the U. S. Court of Appeals decision in this matter (Dkt. # 78) and now as law of the case, this Court should declare that Defendants' activities required compliance with 25 C.F.R. § 214 and that the express terms of that section have been violated by Defendants.

## COUNT III

## TRESPASS

49. The United States realleges and incorporates by reference the preceding paragraphs.

50. Defendants were never authorized to extract minerals from the Osage mineral reserve. Defendants never entered into a lease or had a lease approved by the Secretary to extract, excavate or make use of minerals.

51. Defendants were prohibited from extracting and excavating minerals pursuant to 25 C.F.R. § 211 or pursuant to 25 C.F.R. § 214. Decision from Circuit Court, Dkt. # 78.

52. Defendants willfully and intentionally and in bad faith entered and disrupted the Osage mineral estate and excavated minerals therefrom.

53. By their illegal activity, Defendants have caused irreparable injury to the Osage mineral estate.

54. Defendants knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214.

55. By conducting unauthorized and unapproved mining or work related to minerals, as contemplated by 25 C.F.R. § 211 or 25 C.F.R. § 214, Defendants trespassed on the Osage mineral estate, in violation of law and, in doing so, caused damages.

56. Defendants are co-trespassers and are jointly and severally liable for all damages that resulted from the trespass.

## COUNT IV

### CONTINUING TRESPASS

57. The United States realleges and incorporates by reference the preceding paragraphs.

58. Defendants were never authorized to extract minerals from the Osage mineral reserve. Defendants did not enter into a lease or have a lease approved by the Secretary to extract, excavate or make use of minerals.

59. Defendants were prohibited from invading, extracting and excavating minerals pursuant to 25 C.F.R. § 211 or pursuant to 25 C.F.R. § 214. Decision from Circuit Court, Dkt. # 78.

60. Defendants entered and disrupted the Osage mineral estate and excavated minerals therefrom, in a manner constituting continuing trespass.

61. Defendants knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214.

62. By placement of the turbine foundation and other materials, Defendants trespassed on the Osage mineral estate, in violation of law and, in doing so, caused damage to the estate. The insertion and placement of materials or structures in the mineral estate is a continuing trespass and diminishes the estate or diminishes the use and enjoyment of the mineral estate.

63. By their ongoing, unlawful activity, Defendants have caused irreparable injury to the mineral estate.

64. Defendants are co-trespassers and are jointly and severally liable for all damages that resulted from the continuing trespass.

## COUNT V

### CONVERSION

65. The United States realleges and incorporates by reference the preceding paragraphs.

66. The Osage Allotment Act severed the mineral estate from the surface estate of Osage Reservation and placed the mineral estate in trust for the tribe. As trustee, the United States is charged with the administration, protection, and management of the estate.

67. According to the U. S. Court of Appeals, Defendants were prohibited from extracting and excavating minerals pursuant to 25 C.F.R. § 211 or pursuant to 25 C.F.R. § 214. Decision from Circuit Court, Dkt. # 78.

68. Defendants willfully and intentionally and in bad faith entered and disrupted the Osage mineral estate and excavated minerals therefrom.

69. Defendants knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214.

70. By conducting unauthorized and unapproved mining or work related to minerals, as contemplated by 25 C.F.R. § 211 or 25 C.F.R. § 214, Defendants converted property belonging to the Osage mineral estate and, in doing so, caused damages.

71. Defendants are jointly and severally liable for all damages that resulted from the conversion.

## PRAYER FOR RELIEF

**WHEREFORE**, the United States respectfully requests that this Court:

1. Enter a declaratory judgment under 25 U.S.C. § 2218 (confirming the law of the case established by the U. S. Court of Appeals) that Defendants are in violation of 25 C.F.R. § 211 and that mining and excavation activities undertaken by Defendants were and are subject to the regulations set out at 25 C.F.R. § 211. Decision from Circuit Court, Dkt. # 78.

2. Enter a declaratory judgment under 25 U.S.C. § 2218 (confirming the law of the case established by the U. S. Court of Appeals) that Defendants are in violation of 25 C.F.R. § 214

and that mining and excavation activities and work of any nature undertaken by Defendants were and are subject to the regulations set out at 25 C.F.R. § 214. Decision from Circuit Court, Dkt. # 78.

3. Enter a judgment assessing damages or providing any appropriate remedy, as determined, to the Osage mineral estate for unlawful or unauthorized mining, excavation or other work, as set out in the federal regulations.

4. Enter a judgment finding Defendants jointly and severally liable for any remedy, including damages, in an amount to be proven, resulting from the trespass, continuing trespass, and conversion.

5. Enter a judgment requiring Defendants to account or provide accounting for any and all excavation, mining and other work as set out in the federal regulations.

6. Enter a judgment requiring Defendants to account or provide accounting for any revenue attributable to the Osage Wind wind farm operation.

7. Upon accounting (as sought above), enter a judgment in favor of Plaintiff disgorging all revenues resulting from the unlawful wind farm operation.

8. Upon accounting (as sought above), enter a judgment in favor of Plaintiff to address the unjust enrichment resulting from the unlawful wind farm operation.

9. Enter a judgment awarding damages, with interest, to the Plaintiff for trespass, conversion, and bad faith trespass and conversion to the extent allowed under the law, plus any applicable multipliers, additions, penalties and accruals to date of judgment.

10. Enter appropriate permanent injunctive relief, including enjoining Defendants from further excavation, mining, continuing trespass, or other work that irreparably harms or otherwise

affects the Osage mineral reserve and including ejectment, unless an authorized lease has been approved by the Secretary.

11. Award such other and further relief, including all legal remedies and all equitable remedies which may be available to the Plaintiff, as the Court determines to be just and proper.

Respectfully submitted,

UNITED STATES OF AMERICA

R. TRENT SHORES
United States Attorney

_____
CATHRYN D. McCLANAHAN, OBA No. 14853
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
T: 918-382-2700
cathy.mcclanahan@usdoj.gov

Of Counsel:
Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor's Office
7906 East 33rd Street
Tulsa, Oklahoma 74145
T: 918-669-7730
charles.babst@sol.doi.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on the \_\_\_\_ day of _____, \_\_\_\_\_, I electronically transmitted the foregoing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ryan A. Ray
Joel L. Wohlgemuth
rar@nwcjlaw.com
jlw@nwcjlaw.com

-and-

Lynn H. Slade
Sarah S. Stevenson
Deana M. Bennett
Spencer L. Edelman
lynn.slade@modrall.com
sarah.stevenson@modrall.com
deana.bennett@modrall.com
spencer.edelman@modrall.com
*Counsel for Defendants*

David McCullough
dmccullough@dsda.com

Jeffrey S. Rasmussen
jrasmussen@ndnlaw.com

-and-

Wilson Pipestem
Mary Kathryn Nagle
Abi L. Fain
afain@pipestemlaw.com
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
*Counsel for Intervenors, Osage Minerals Council*

_____
Michelle Hammock
Paralegal Specialist