**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS, OSAGE WIND, LLC, ENEL KANSAS, LLC, AND
ENEL GREEN POWER NORTH AMERICA, INC.'S REPLY IN SUPPORT
OF MOTION TO QUASH AND/OR MOTION FOR PROTECTIVE
<u>ORDER AS TO SUBPOENAS DUCES TECUM</u>**

Defendants, Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC ("Enel Kansas"), and Enel Green Power North America, Inc. ("Enel"), respectfully submit this Reply Brief in further support of their Motion to Quash and/or Motion for Protective Order as to Subpoenas Duces Tecum (Dkt. # 106) (the "Motion").

**I.   THE DEFENDANTS HAVE STANDING.**

The United States first claims that the Motion "should be dismissed for an utter failure to even address, much less establish, standing." (Dkt. # 115, at 3). As a preliminary matter, this is incorrect. The Motion clearly alleged that the Defendants are:

> affected by both the Hooper Subpoena and the AECI Subpoena as [at least Osage Wind's] commercial information, of which it takes measures to protect the confidentiality (including entering into agreements with AECI and Hooper requiring that the information be maintained as confidential), would be produced to a third party if the Hooper Subpoena and the AECI Subpoena were complied with fully.

(Motion, at 4-5, ¶ 11).  That is sufficient to confer standing.  *See, e.g.*, *Peel Payments, LLC v. First Data Corp.*, No. CIV-16-0425-HE, 2016 WL 9049569, at *1 (W.D. Okla. Dec. 2, 2016) (concluding that a party "clearly has a personal right in the information such that it has standing" where the subpoena sought production from a third party of "client lists with current pricing, pricing relative to [the party's] services, all correspondence to and from [the party] regarding the contractual agreement between [the party] and [the non-party] and any contractual negotiations between the two.").  This AECI Subpoena and the Hooper Subpoena seek very similar information, and the Defendants have standing as to the Motion.

Moreover, even if the Defendants did not have standing to seek to *quash* the Subpoenas, they still would have standing to seek a protective order under Rule 26, which the Motion does in the alternative.  *See, e.g.*, *In re REMEC, Inc. Sec. Litig.*, No. 04cv1948 JLS, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) ("A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." (emphasis added)); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, No. 8:06CV458, 2009 WL 1562851, at *3 (D. Neb. June 1, 2009) ("A party does have standing to move for a protective order if a third-party subpoena seeks irrelevant information." (citing *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005)).  Since the Hooper Subpoena and the AECI Subpoena seek communications with the Defendants and information about Osage Wind's Project and its financial performance, the Defendants may at least seek a protective order, which should be granted at least until the Court

determines whether the United States will be permitted to remain a plaintiff and/or amend its complaint.[1]

**II.     THE OKLAHOMA WIND ENERGY DEVELOPMENT ACT DOES NOT ESTABLISH THE SCOPE OF DISCOVERY, NOR WOULD IT REQUIRE PRODUCTION OF THE INFORMATION SOUGHT BY THE SUBPOENAS IN ANY EVENT.**

The United States contends that "[t]he Subpoena directed at AECI seeks information that the Oklahoma Legislature has found to be germane." (Dkt. # 115, at 14). As a threshold matter, it is the Federal Rules of Civil Procedure, rather than any state statute, which governs discoverability of information in this case. *See, e.g.*, *Pruett v. Erickson Air-Crane Co.*, 183 F.R.D. 248, 251 (D.Or. 1998); *Mason v. United States,* 486 F. Supp. 2d 621, 625 (W.D.Tex. 2007); *Pantages v. Cardinal Health 200, Inc.*, 2009 WL 1011048 (M.D. Fla. Apr.15, 2009); *Hilderman v. Enea TekSci, Inc.*, No. 05CV 1049 BTM(AJB), 2010 WL 143440, at *3 (S.D. Cal. Jan. 8, 2010); *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949 (E.D. Cal. Jan. 29, 2007). The Court should not look to Oklahoma statutes, which do not relate to discovery in civil litigation in any event, to determine the scope of discovery in this case which is not based upon diversity jurisdiction, but federal law.

Even if the Oklahoma Wind Energy Development Act (the "Act") had some applicability to the scope of discovery in this case, which it does not, it still would not counsel the extremely broad discovery sought by the AECI Subpoena (or the Hooper Subpoena). *First*, the United States' position in this regard is premised upon the contention that the Project's mere existence is unlawful, something the Tenth Circuit clearly rejected. The Tenth Circuit concluded that only certain of Osage Wind's activities constituted "mining"—namely, its "sort[ing] and then

---

[1] *See* FED. R. CIV. P. 26(c)(1)(A) & (B) (providing that the Court may either forbid discovery entirely or determine the timing at which it will be made).

- 3 -

crush[ing] the minerals and us[ing] them as backfill to support its wind turbine structures." *Id.* at 1090. The Tenth Circuit rejected the assertion that merely breaking the ground or the Project's mere presence was unlawful:

> **We agree with Osage Wind, however, that merely encountering or incidentally disrupting mineral materials would not trigger § 211.3's definition.** In other words, "the simple removal of dirt does not constitute mining." 53A Am. Jur. 2d Mines and Minerals § 14. There is simply no sense in which the word "mineral development" means only the removal of dirt without some further manipulation, commercialization, or offsite relocation of it. The problem here is that Osage Wind did not merely dig holes in the ground—it went further. It *sorted* the rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as structural support for each wind turbine. The ultimate question is whether ***this operation*** constitutes "mineral development" as we have conceptualized the term. We hold that it does.

*Id.* at 1091 (first and final emphases added). In other words, it was *only because* Osage Wind had "*sorted* the rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as structural support for each wind turbine" that Osage Wind's activities constituted mining in violation of federal law. As to the present issue, the Tenth Circuit's analysis means that Osage Wind did not need a lease for the Project more generally, but in order to sort rocks, crush rocks, and exploit the crush rock for foundations.

*Second*, the Act only permits inspection of certain records as to a *landowner* (not a mineral owner) "who is paid based on the amount of electrical energy produced from the conversion of wind energy." 17 *Okla. Stat.* § 160.17(A). There is no such agreement between any of the parties to this case, and § 160.17 is accordingly inapplicable by its terms. Moreover, the applicable regulations clearly do not contemplate a lease based upon electrical production. Rather, 25 C.F.R. § 214.10(d) provides that, as applicable here, "[f]or substances other than gold, silver, copper, lead, zinc, coal, and asphaltum the lessee shall pay quarterly a royalty of 10 percent of the value at the nearest shipping point of all ores, metals, or minerals marketed."

*Third*, even if § 160.17 did apply, which it does not, it would only permit the inspection of records to allow a landowner to "confirm[] the accuracy of any payments made to the landowner within the past twenty-four (24) months," 17 *Okla. Stat.* § 160.17(A), not the unlimited "[a]ny and all documents . . . that relate to the Osage Wind wind farm project in Osage County" which the AECI Subpoena seeks.

In short, the Act does not set the scope of discovery in federal court (either in general or as applied to this case), and it would not countenance the discovery at issue even if it did.

### III. THE UNITED STATES DOES NOT REMAIN A PROPER PLAINTIFF.

The United States suggests that because there "is one interest and one claim at issue here" (Dkt. # 115, at 6), that it should remain a plaintiff because the OMC successfully appealed, though it indisputably did not. This suggestion fails. "It is the generally accepted rule in civil cases that where less than all of the several co-parties appeal from an adverse judgment, a reversal as to the parties appealing does not necessitate or justify a reversal as to the parties not appealing." *Nat'l Ass'n of Broadcasters v. FCC*, 554 F.2d 1118, 1124 (D.C. 1976). It is this principle of law, reaffirmed by and fully consistent with *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981), that forecloses continued United States party status on remand. It is true that neither of these cases involve the United States acting as a trustee-plaintiff on behalf of an Indian tribe. But the United States offers no reason why the principles of law articulated there would not apply to those facts.

What is clear beyond any doubt is that *both* the United States *and* the OMC cannot simultaneously be plaintiffs. As explained in *Ricke v. Armco Inc.*, 92 F.3d 720, 724 (8th Cir. 1996), it is only when the trustee cannot or will not prosecute a claim that a beneficiary may be able to do so in his own stead. The United States cannot continue to prosecute any claims in this

case because it did not appeal Judge Payne's summary judgment decision.[2]  Accordingly, it is foreclosed from pursuing the discovery at issue, at least until the Court decides the issue of its party status, which is now expressly before the Court by way of the Defendants' Motion for Judgment on the Pleadings (Dkt. # 119).

**IV.   DISCOVERY IS PROPERLY LIMITED BY THE TENTH CIRCUIT'S OPINION.**

Because the United States says that "remedies were not on appeal," (Dkt. # 115, at 6), it accordingly claims that it may pursue discovery related to broad equitable relief aimed at capturing the Project's entire revenues.  It disregards, however, it is appropriate for a district court following an appellate remand, to limit the scope of discovery to conform with the Tenth Circuit Opinion during "further proceedings consistent with this Opinion," *Osage Wind, LLC*, 871 F.3d at at 1093. *Tholke v. Unisys Corp.*, 335 F. App'x 105, 107 (2d Cir. 2009); *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06CV433-HSO-RHW, 2017 WL 2901698, at *4 (S.D. Miss. Apr. 12, 2017).

The Tenth Circuit Opinion contemplates relief limited to money damages for volumes of minerals removed by actions constituting "mining" as defined by the Opinion. *See Osage Wind, LLC*, 871 F.3d at 1083-84 ("the United States withdrew its request for an injunction and filed an amended complaint ***for damages*** based on the alleged unauthorized extraction of reserved minerals." (emphasis added); *id.* at 1091 (concluding that "merely encountering or incidentally disrupting mineral materials"—in any amount—would not constitute mining; but rather it was only "mining" because of the entire "operation/" of "*sort[ing]* the rocks, *crush[ing]* the rocks into smaller pieces, and then *exploit[ing]* the crushed rocks as structural support for each wind turbine"

---

[2] This likely means that the OMC may prosecute *some* claims in this case; though it may not pursue claims or remedies inconsistent with the Tenth Circuit's Opinion, nor inject new issues into the case, as explained in the Defendants' Response to the OMC's Motion to Intervene (Dkt. # 118).

that amounted to mining). *Id.* at 1090. There is no fair reading of the Tenth Circuit's Opinion that would countenance the allegation that its reference to "operation" meant the entire Project, as opposed to the operation of rock crushing that it specifically described.

Since the Tenth Circuit only concluded that the construction-related operation of sorting, crushing, and exploiting the crushed rocks was unlawful, discovery aimed at the Project more generally or at aspects of construction not related to this "operation" (such as the activities of the Hooper Corporation) are not reasonably calculated to lead to the discovery of admissible evidence as to this case at this point or proportional to the needs of the case at this time.[3]

### V. THE DEFENDANTS ARE NOT SEEKING TO RELITIGATE THE TENTH CIRCUIT OPINION OR ENGAGE IN DISCOVERY ON MATTERS ALREADY DECIDED.

The United States also wrongly claims that "[i]t is not the time for the parties to discover information about rock crushing and sorting for the purpose of debating mining issues . . . ." (Dkt. # 115, at 9). The claim misses the mark. Of course, the Tenth Circuit did delineate certain activities that constituted mining—i.e., the entire "operation" of "*sort[ing]* the rocks, *crush[ing]* the rocks into smaller pieces, and then *exploit[ing]* the crushed rocks as structural support for each wind turbine." The proper scope of discovery at this juncture is to determine the quantities of material subject to that "operation," other actions involved in performing the operation, and the value of minerals crushed and re-used. The Defendants do not object to such discovery and did

---

[3] The United States wrongly contends that because the Tenth Circuit concluded that the *de minimis* exception of 25 C.F.R. § 211.3 did not mean that the turbine foundation volumes could not be aggregated, that this means that the Hooper Corporation's activities (which were not sorting, crushing, or exploiting rock) were also unlawful. Not so. The *de minims* exception of § 211.3 merely provides that mining under a certain amount is outside the regulations' reach. It does not mean that activity which is not mining may be aggregated either with other activity not constituting "mining" so defined, or even with other "mining" not falling within the scope of the First Amended Complaint

not object to two other subpoenas duces tecum issued by the United States that seemed to have some relation to that operation. The United States, though, takes issue as follows:

> Defendants seek to block relevant discovery that can (1) identify the use of minerals as part of the excavation work, (2) account for how much they profited (and are profiting) off the minerals they excavated, (3) allow Plaintiff to make an argument for a permanent injunction, with all necessary considerations, and (4) pinpoint the location of the mineral estate that remained (not otherwise repurposed within or outside the windfarm).

(Dkt. # 115, at 9).  The United States does not explain how the Hooper Subpoena or the AECI Subpoena could possibly fit within the first and fourth categories, and they would not.  The second and fourth categories are not proper because (i) equitable remedies are not properly available in this case (*see* Dkt. # 116, at 18-23), and (ii) even if those remedies were somehow proper, the *Project*'s revenues are not the proper metric when only a small part of construction was unlawful.[4]

The United States later claims that there are four (4) questions that need to be answered, namely:

- "What types of minerals were removed?"  (Dkt. # 115, at 10).

    Though this question is overbroad (to the extent that it encompasses minerals that were not sorted, crushed, and exploited for support), neither the Hooper Subpoena nor the AECI Subpoena would answer it,

- "How was the material removed?" (Dkt. # 115, at 10).

---

[4] That the value of minerals "mined" is the maximum reasonable damage follows from the Opinion, as it holds a lease or permit required *only* because Osage Wind did not "merely encounter[] or incidentally disrupt[] mineral materials," but "sort[ed]," "crushed," and "used" them for support. Though no guidance to that effect existed anywhere prior to the Opinion, had Osage Wind been aware of that ruling, it could simply have acquired required volumes commercially for its construction needs. The United States now seeks a massive windfall specifically because neither it nor OMC provided timely notice of this current contention.

>If this question reaches only minerals that were sorted, crushed, and exploited for support, it is proper. But the reach is broader, and it is improper to that extent (and in particular as to the Hooper Subpoena). The AECI Subpoena could not possibly answer this question.

- "What are the costs and benefits associated with the Osage Wind project?" (Dkt. # 115, at 10).

   >This question seeks no discoverable information and is not reasonably calculated to lead to the discovery of admissible evidence as to the claims and defenses that are properly before the Court at this time. (*See, e.g.*, Dkt. # 116, at 16-23; Dkt. # 118, at 16-22).

- "How much did the commercialization of the mineral estate benefit the defendants?" (Dkt. # 115, at 10).

   >It is unclear what the United States means by "commercialization of the mineral estate." The Tenth Circuit explained that it meant "commercialize" in this context to be "the sale of minerals." *Osage Wind, LLC*, 871 F.3d at 1089. This is clearly a value-based analysis, consistent with 25 C.F.R. § 214.10(d)'s value-based royalty determination. It does not contemplate reaching the entire value of the Project or the entire financial benefit to Defendants, given that "mined" minerals constituted only a part of minerals removed. The Project is not unlawful in and of itself, and consideration of such information would result in a massive departure from the payments contemplated by the federal regulations in this situation or the economic cost Osage Wind could have avoided if it had prior notice of the standard declared in the Tenth Circuit's Opinion.

**CONCLUSION**

The Defendants' Motion to Quash and/or Motion for Protective Order as to Subpoenas Duces Tecum (Dkt. # 106) should be granted or the Court should order, at least, the discovery at issue be deferred until the Court rules on the pending motions to amend, to intervene, and for judgment on the pleadings in accordance with FED. R. CIV. P. 26(c)(1)(B).

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER JETER BARNETT & RAY, P.C.**
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**
**Sarah M. Stevenson**
MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS, OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Abi Laura Fain
David McCullough
Jeffrey S Rasmussen
Mary Kathryn Nagle
Wilson Kirk Pipestem

The following non-ECF registrants have been served by First Class United States mail:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145

/s/Ryan A. Ray
**Ryan A. Ray**