**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-CV-704-GKF-JFJ |
| ) | |
| OSAGE WIND, LLC; ) | |
| ENEL KANSAS, LLC; and ) | |
| ENEL GREEN POWER NORTH ) | |
| AMERICA, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS OSAGE WIND, LLC, ENEL KANSAS, LLC, AND
ENEL GREEN POWER NORTH AMERICA, INC.'S REPLY TO RESPONSE OF
UNITED STATES TO MOTION FOR JUDGMENT ON THE PLEADINGS ON THE
UNITED STATES' FIRST AMENDED COMPLAINT (Dkt. # 128)**

| | |
|---|---|
| Ryan A. Ray, OBA #22281 | Lynn H. Slade, *admitted pro hac vice* |
| NORMAN WOHLGEMUTH CHANDLER | Sarah M. Stevenson, *admitted pro hac vice* |
| JETER BARNETT & RAY, P.C. | MODRALL, SPERLING, ROEHL, |
| 2900 Mid-Continent Tower | HARRIS & SISK, P.A. |
| 401 South Boston Avenue | Post Office Box 2168 |
| Tulsa, OK 74103 | Albuquerque, NM 87103-2168 |
| 918-583-7571 | 505-848-1800 |
| 918-584-7846 (facsimile) | 505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: March 6, 2020**

Defendants, Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC ("Enel Kansas"), and Enel Green Power North America, Inc. ("Enel") (collectively, "Defendants"), respectfully submit this Reply to the Response of the United States ("Response") (Dkt. # 128) to Defendants' Motion for Judgment on the Pleadings on the United States First Amended Complaint (Dkt. # 119). The United States' Response fails to demonstrate (1) a substantive, valid excuse allowing it to prosecute claims given the indisputable effect of its decision not to appeal, (2) any basis to question the propriety of Rule 12(c) judgment on the pleadings precluding it from prosecuting the claims of the First Amended Complaint after it declined to appeal, or (3) any equitable considerations barring Defendants from asserting the inescapable consequence of the United States' decision not to appeal. If the action can proceed, it is due solely to the appeal the Osage Minerals Council ("OMC") prosecuted, and only the OMC can now muster standing to proceed.[1] The United States did not timely appeal from the September 30, 2015, final judgment entered against it (Dkt. # 44), as required by FED. R. APP. P. 4, and its failure to do so precludes its current participation in this case by virtue of the res judicata effect of that judgment.

I.  **THE UNITED STATES' RESPONSE FAILS TO DEFLECT THE EFFECT OF ITS FAILURE TO TIMELY APPEAL**

For reasons that are evident, the United States' Response develops detailed procedural distinctions between cases Defendants advance and the record here, but fails to identify *rationales* arising from the distinctions that relieve the United States of the unquestioned legal effect of its failure to appeal. Crucially, the Response fails to cite a single case affirmatively

---

[1] *See* Defendants' Response in Opposition to the Osage Minerals Council's ("OMC's") Motion to Intervene (Dkt. # 118) at 22 ("If intervention is granted, it should be granted only if the United States is dismissed as a party and it should be limited to the claims in the Complaint in Intervention that are neither barred by the Tenth Circuit's opinion nor futile.").

supporting the United States could decline to appeal and then join the litigation after a successful remand mounted by another entity.

The United States tries to procedurally distinguish *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394 (1981), because it extended strict *res judicata rules* to parties who, rather than appeal from the federal court's final judgment against them to the federal court of appeals, as other co-parties did, sought to avoid the judgment by filing essentially the same case in state court. *Id.* at 396. It is the United States, not the Defendants, who is "confused" by *Moitie.* There is no suggestion in *Moitie,* that, if the non-appealing party there had simply sat on the sidelines after judgment entered, as the United States did here, rather than seek to proceed in state court, it could avoid the *res judicata* effect of the judgment. To the contrary, the doctrine applies with greatest force to a party who declined to appeal the very judgment he later seeks to avoid and then simply to rejoin its co-parties in the action on remand. *Moitie*, underscoring the weight of the doctrine, reversed a Ninth Circuit decision holding considerations of "simple justice" warranted a *res judicata exception* for collateral actions, holding, "[t]here is simply no principle of law or equity which sanctions the rejection by a federal court of the salutary principles of *res judicata.*" 452 U.S. at 401 (internal quotations and citations omitted). To the contrary, "[p]ublic policy dictates there be an end of litigation . . . " *Id.* (internal quotations omitted). *Moitie* has been understood as requiring strict adherence to *res judicata* principles, not as some narrow application of an arcane doctrine limited to "collateral attacks," but to protect the finality of all judgments against efforts of any party to avoid them. *See Piazza v. Aponte Roque,* 909 F.2d 35, 38 (1st Cir. 1990)*,*

The United States mounts another detailed procedural attempt to obfuscate the significance of *res judicata* in addressing *National Association of Broadcasters v. Federal*

*Communications Commission*, 554 F.2d 1118 (D.C. Cir. 1976) ("*NAB*"), an administrative law appeal which pre-dated *Moitie*, but neglects to mention the D.C. Circuit's express rationale for the result: "Since the FCC led petitioners to believe that more timely action on their part was unnecessary, the prior possibility of an application to the Fifth Circuit on remand cannot bar the present suit." The D.C. Circuit reiterated that rationale for the *NAB* decision in barring later claims when no such administrative inducement not to appeal was present. In *PanAmSat Corporation v. Federal Communications Commission*, 370 F.3d 1168, 1172 (D.C. Cir. 2004), the court rejected PanAm's reliance on *NAB* stating:

> PanAmSat's reference to the outcome of *National Association of Broadcasters v. FCC*, 554 F.2d 1118 (D.C.Cir.1976) ("*NAB*") is misplaced. NAB permitted broadcasters to sue the FCC for refunds after a Supreme Court decision invalidated certain aspects of the fee schedule, despite their failure to appeal an earlier Fifth Circuit decision upholding the fees. But this court made clear that the holding permitting refunds in that particular case was an exception to the general rule that those who do not challenge fee assessments waive their right to a refund:
>
>> [A]ll of the petitioners now before us could have appeared before the Fifth Circuit upon remand of the NCTA case from the Supreme Court to request that the court of appeals consider its decision in Clay Broadcasting regarding the entire 1970 fee schedule, but did not do so. Absent extenuating circumstances, we would normally be inclined to hold that they had thereby waived any further challenge to the fees they were contesting in that action. Id. at 1127 (emphasis added).
>
> In NAB, we clearly identified those extenuating circumstances: [reciting: "the FCC led petitioners to believe more timely action on their part was unnecessary."]
>
> In that case, the affected parties, unlike PanAmSat, were misled by the Commission to believe that the Commission would act on refunds on its own. And, in NAB, the court found that the fee regime, unlike the one at issue here, required regulated parties "to protest a fee assessment only after payment." Id. Those circumstances are not present here. Absent such circumstances, the normal rule applies: PanAmSat was required to raise a timely challenge to the disputed orders assessing fees in order to be able to claim a partial refund of fees it paid pursuant to those orders.

The United States can advance no such inducement for its decision not to appeal here. *See Ackerman v. United States*, 343 U.S. 193, 198 (1950) ("Petitioner cannot be relieved of such a choice [not to appeal] because hindsight seems to indicate . . . his decision not to appeal was probably wrong. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."). As the OMC apparently recognized, absent last minute action on their part,[2] Judge Payne's judgment would be final as to the United States, and its trust beneficiary. The United States advances no basis for avoiding that effect on its continued party status here.

The Response draws another false distinction as to *United States v. Lumbermens Mutual Casualty Co., Inc.*, 917 F.2d 654 (1st Cir. 1990). The Response's contention "the judgment against [Lumbermans] was not at issue," is belied by the text: the court held Lumbermens' "failure to cross-appeal makes it inappropriate for us to modify the judgment against it notwithstanding the fact that the judgment was based on a legal error." Instead, choosing to quote *Lumbermans* as stating "precedent exists" for a different ruling, Response at 5, which apparently reference *older* precedent, the United States overlooks *Lumbermans* followed that quotation with reference to the First Circuit's more "recent" case, which applied a "strict view" in reliance on the Supreme Court's "strictness" in *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 318, (1988) (failure to identify one of the plaintiffs in multi-plaintiff action precludes omitted plaintiff from participating on remand after reversal on appeal), and *Moitie*, 452 U.S. at

---

[2] The OMC filed its notice of appeal at 7:25 p.m. on November 30, 2015, the sixtieth day after entry of judgment. (Dkt. # 49).

399, n. 4. *Lumbermans,* 917 F. 2d at 663[3]; *see also United States v. Tippett*, 975 F. 2d 713, 719 (10th Cir. 1992) (following *Moitie*).

The Response cites no authority supporting a party in the position of the United States, making the litigation decision it must be held to have made, can continue to stand as plaintiff following a remand from an appellate decision obtained by appeal of another entity, and Defendants' research indicates there simply is.no such material authority. Dismissal under Federal Rule of Civil Procedure 12(c) is required.

## II. THE UNITED STATES' RESPONSE CONFUSES *WHETHER* THE COMPLAINT STATES A CLAIM WITH THE QUESTION *WHICH LITIGANT* CAN ADVANCE THE CLAIM. RULE 12(C) IS THE PROCEDURALLY CORRECT MOTION TO DISMISS THE UNITES STATES AS PLAINTIFF IN THIS ACTION.

The United States fails to recognize that the Tenth Circuit's conclusion OMC could advance the claim it alone prosecuted on appeal in no way addressed or implied the United States, which had abandoned its claims by not appealing, could somehow stand as plaintiff on remand. The present motion does not argue the First Amended Complaint, if prosecuted by OMC, does not state a claim, though Defendants strenuously object to the breadth of claims OMC now seeks to inject in its proposed complaint in intervention.[4] However, on its face, given

---

[3] The Response's dissembling procedural digressions about *United States v. Rogan*, 2012 WL 1107836 (N.D. Ill. Mar. 29, 2012), and *Piazza v. Aponte Roque*, 909 F.2d 35 (1st Cir. 1990), are equally unrelated to the rationales for the cases. *See Rogan*, WL 1107836, *3-4 ("[Law firm], as a non-appealing party, cannot benefit from the [the] successful appeal. Therefore, to the extent [law firm] seeks attorneys' fees from the remaining funds—the funds at issue in the Second Turnover Order—it failed to appeal the Second Turnover Order and has thereby waived any claim to attorneys' fees from these funds.); *Piazza*, 909 F.2d at 38 (relying on the Supreme Court's rule applicable when "there are multiple co-defendants, one of whom has successfully appealed an erroneous ruling and others who have failed to appeal altogether: . . . [t]he Supreme Court summed up the doctrine of res judicata in a sentence: A final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action") (quotation marks and citations omitted).

[4] *See* note 1, *supra*.

the contents of the pleadings in the Court's judicially noticeable files in this case reflecting the United States did not timely appeal, *the United States* cannot prevail under any set of facts that can be presented under the First Amended Complaint. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

The Response cites no authority supporting the Motion is not properly presented under Rule 12(c). The only temporal limitation of a Rule 12(c) motion is it be brought "early enough not to delay trial," *see* Fed. R. Civ. P. 12(c); *Hughes v. Z, Inc.,* 2006 WL 290576, at *1 (W.D. Okla. Feb. 6, 2006). Delay under Rule 12(c) is not a concern here, where a trial has yet to be scheduled. The only procedural limitation is the motion be based "on the pleadings." Fed. R. Civ. P. 12(c). The Motion satisfies that standard as it relies only on the pleadings and orders and the docket in this case: the entry of summary judgment (Dkt. # 44), the absence of a timely-filed notice of appeal by the United States, and the First Amended Complaint (Dkt. # 20). Accordingly, under the Rule 12(b)(6) standards applicable under Rule 12(c), dismissal of the United States' claims under the First Amended Complaint is required.

### III. NEITHER WAIVER NOR ANY EQUITABLE PRINCIPLE COUNSELS DENYING JUDGMENT ON THE PLEADINGS.

The Response fails to support that equitable considerations counsel denying dismissal. First, it tries to equate Defendants' addressing arguments of OMC on appeal and the law of the case effect of the Tenth Circuit decision on the breadth of claims OMC may advance with acquiescence in the United States' continued status as party plaintiff. Second, it argues Defendants unreasonably delayed filing the current Rule 12(c) Motion. Both are transparent efforts to avoid the effect of its litigation decision not to appeal.

The Defendants' statement on appeal that the Tenth Circuit's decision permitting OMC's intervention "allows the OMC to step into the shoes of the United States," Response, Dkt. # 128

at 8, in no way implied the United States could still occupy them *too*, and a suggestion the United States be invited to file an amicus curiae brief on the petition for certiorari, *see id.*, cannot be viewed as a substantive concession.

Even farther-fetched is the contention Defendants have waived a Rule 12(c) motion by not asserting it earlier. *See id.* at 9-10 (given "a complaint filed years ago -- . . . this case has been considered and decided by the Tenth Circuit and elevated to the Tenth Circuit with a remand to this Court. . . ."). Since the United States did not indicate in any way it intended continued plaintiff status after remand until the December 11, 2019 Scheduling Conference, at the Scheduling Conference Defendants timely made plain then and there they contend the United States' continued participation is barred by its failure to appeal. (Dkt. # 100 at 12-14). Accordingly, the United States cannot contend lack of notice of this position supports waiver. Defendants' participation in discovery as the Court ordered, Dkt. # 100 at 21-26, while registering repeatedly the same objections to the United States' participation in every related pleading, in no way could support reasonable reliance giving rise to waiver or estoppel.

More curiously, in the same pages, the United States *complains* that Defendants made the same argument, that failure to appeal bars continued United States participation, in essentially every pleading Defendants filed since the Scheduling Conference. *See id.* at 9 ("Defendants' novel theory has been advanced in Defendants' Motion to Quasc (Dkt. 106), Defendants' Response to Plaintiff's Motion for Leave to File Substituted Second Amended Complaint (Dkt. 116), and Defendants' Response to Plaintiff's Motion to Strike Answer to First Amended Complaint (Dkt. 117)."). The United States' meagre participation in discovery was not induced by lack of knowledge of the contention this Motion advances. Further, the exchange of discovery between the existing parties demonstrates Defendants' position that the United States is an

improper party has in no way "hindered progress," Response p. 2, of this litigation. Defendants' filed the present Motion promptly after the United States' continued conduct demonstrated it intended continued participation.[5]

In its customary fashion, the Response cites no authority affirmatively holding procedural waiver in any circumstance, and the *language* it quotes from *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487, n. 6 (2008), addressed an issue raised "13 months after the Phase III verdict." Notwithstanding that seemingly egregious delay, the Court affirmed a Ninth Circuit decision declining to hold waiver by procedural delay. Here, the record reflects Defendants' initial assertions the United States had abandoned its party status by not appealing within minutes after it first announced its intention to remain as plaintiff, then repeated in a string of pleadings. Defendants did not consciously and voluntarily relinquish a known right, as waiver requires under standards the Response declines to mention. As stated in *American Trucking* , "there can be no finding of waiver here. Waiver is the conscious and voluntary relinquishment of a known right. . . . The relinquishing person must be aware of what he is relinquishing." (citations omitted).

## Conclusion

Casually brandishing the "f-word" ("frivolous"), the Response fails to advance a scintilla of authority arguably justifying its effort to remain a party after an obviously intentional decision

---

[5] In *American Trucking Associations, Inc. v. New York State Thruway Auth.*, 238 F. Supp. 3d 527, 539 (S.D.N.Y. 2017), *aff'd,* 886 F.3d 238 (2d Cir. 2018), the court held a Rule 12(c) motion timely despite the court had previously entered partial summary judgment on a related claim, stating, "Nothing in Rule 12(c) or Rule 12(h)(2) precludes the making of a motion pursuant to those rules, even at this advanced (but far from terminal) point in the litigation." *See also Valentine Props. Assocs., L.P. v. U.S.. Dep't of Hous. & Urban Dev.*, 785 F.Supp.2d 357, 370 (S.D.N.Y. 2011) ("Plaintiffs contend that Defendants waived their failure to state a claim arguements . . by virtue of Defendants not presenting them in their prior Rule 12(b)(6) motion. However, it is permissible for Defendants to first raise such claims on a Rule 12(c) motion for judgment on the pleadings, as they have here.").

not to appeal, which it must have contemplated would terminate the litigation entirely, and certainly as to it. The final judgement entered September 15, 2015 is *res judicata* as to the United States. It cannot avail itself of a reversal of that judgment as an excuse to further participate in this action.[6] The United States' claims against the Defendants are finally barred, and it may not proceed further.

The United States cannot continue as a plaintiff in this case as it failed to appeal a judgment entered in this case against it that is now final as to it as a matter of law. The Court should enter judgment on the pleadings dismissing with prejudice all pleadings in the action by the United States under Fed. R. Civ. P. 12(c).

Respectfully submitted,

/s/ Lynn H. Slade

**Lynn H. Slade**
**Sarah M. Stevenson**
MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

-and-

**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER JETER BARNETT & RAY, P.C.**
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103

---

[6] The United States' proposed Second Amended Complaint, if leave to file it were granted is barred equally. It still arises from the common nucleus of operative facts, hence the same "cause of action" underlying the First Amended Complaint. *See Petromanagement Corp. v. Acme-Thomas Joint Venture,* 835 F.2d 1329, 1335 (10th Cir. 1988).

        918-583-7571
        918-584-7846 (facsimile)

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

## CERTIFICATE OF SERVICE

      I hereby certify that on March 6, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk will transmit a notice of electronic filing to the following ECF registrants:

Nolan Fields IV
Cathryn D. McClanahan
David McCullough
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
Jeffrey S. Rasmussen

The following non-ECF registrants have been served via email and First Class U.S. Mail.

Charles R. Babst, Jr.
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor's Office
7906 East 33rd Street
Tulsa, Oklahoma 74145
charles.babst@sol.doi.gov

                //s/Lynn H. Slade
                **Lynn H. Slade**