IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 14-CV-704-GKF-JFJ |
| OSAGE WIND, LLC, et al., | ) ) ) |
| Defendants. | ) |

**THE UNITED STATES' MOTION FOR RECONSIDERATION
OF THE COURT'S APRIL 14, 2020, ORDER (DKT. 139)**

COMES NOW Plaintiff, the United States of America, by and through R. Trent Shores, United States Attorney for the Northern District of Oklahoma, and Cathryn D. McClanahan and Nolan M. Fields IV, Assistant United States Attorneys, and moves the Court for reconsideration of its April 14, 2020, Order (Dkt. 139).

## BACKGROUND

1. In 2015, the Osage Minerals Council ("OMC") moved to intervene in this matter for purposes of appeal (Dkt. 46) at the same time that it filed a Notice of Appeal (Dkt. 49). The District Court denied the OMC's motion to intervene for lack of jurisdiction due to the then pending appeal. Dkt. 69.

2. The OMC's subsequent appeal (Dkt. 72) of the Minute Order denying their Motion to Intervene was denied by the Tenth Circuit as moot because it held that the OMC was a proper party to the initial appeal without having intervened below (Dkt. 78 at 2-3).

3. The OMC was allowed to prosecute the appeal of the District Court Judgment (Dkt. 45) at the Tenth Circuit. The Tenth Circuit, understanding that the OMC

was not a party to the underlying litigation and had been denied intervention, remanded the matter, holding:

> First, because OMC is an appropriate party to the merits appeal, thereby making it unnecessary to decide whether it properly intervened below, we DISMISS as moot OMC's appeal from the denial of intervention, Appeal No. 16-5022. Second, because Osage Wind was required to procure a lease under 25 C.F.R. § 214.7, we REVERSE the district court's order granting summary judgment, Appeal No. 15-5121, and REMAND for further proceedings consistent with this opinion.

Dkt. 78 at 26-27.

4. Following remand, and subsequent to a District Court Status and Scheduling Conference (Dkt. 96), the United States filed a Motion for Leave to File a Second Amended Complaint (Dkt. 98). The Court granted the United States' motion by Minute Order on April 13, 2020. Dkt. 137.

5. On January 31, 2020, Defendants submitted a Motion for Judgment on the Pleadings (Dkt. 119), requesting that the Court "dismiss all claims by the United States of America, stating as grounds that the United States did not file a timely notice of appeal from the September 30, 2015, summary judgment entered in favor of the Defendants." Dkt. 119 at 1. The Court denied Defendants' motion by Minute Order on April 13, 2020. Dkt. 138.

6. Reversing course, on April 14, 2020, the Court entered an Order denying the United States' motion "upon reconsideration *sua sponte* . . . as the United States did not appeal Judge Payne's Judgment . . . ." Dkt. 139. The Order went on to state that the United States "is barred from proceeding further in this case. Intervenor Osage Minerals Council appealed the Judgment and obtained a reversal by the Tenth Circuit Court of Appeals, and

2

it alone may proceed as party plaintiff in this action." *Id*. However, the Order did not dismiss or terminate the United States as a party and apparently has left the First Amended Complaint (Dkt. 20) intact. The United States respectfully requests that the Court reconsider its April 14, 2020, Order and, in specific, the language that "bar[s]" the United States from proceeding in this matter.

## ARGUMENT

**I.     Recent Supreme Court authority compels this Court to allow the United States to continue participating in this litigation, despite not having appealed an adverse District Court decision.**

The disposition of this case should mirror a recent Supreme Court decision regarding governmental non-appeal and non-parties choosing to appeal. In *Food Marketing Inst. v. Argus Leader Media*, 139 S.Ct. 2356 (2019), Argus sought certain SNAP data information from the United States. The United States contended the information was protected commercial information that was covered by a FOIA exemption. The District Court disagreed and ordered that the information be produced. A grocery trade group immediately moved to intervene and sought appeal, even though the United States did not appeal. Ultimately, the Supreme Court agreed that the information should not be produced and reversed and remanded the action. Following remand, the United States was not barred from proceeding in the District Court. In fact, the United States submitted a motion, response and proposed order to the District Court. Judgment was finally entered in favor of the United States, which had never appealed, on April 1, 2020. *Argus Leader Media v. U.S. Dept. of Agriculture*, No. 11-CV-4121, 2020 WL 1557295 (S. Dak. April 1, 2020).

Similarly, in *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002)[1] a group of plaintiffs challenged the U.S. Forest Service's "Roadless Rule," contending it violated statutory law. Environmental groups intervened, but the District Court granted the plaintiffs' motions against implementation of the rule. The United States chose not to appeal this invalidation of its rule. Intervenors did appeal. Assessing the merits, the Ninth Circuit found that the District Court had abused its discretion in granting a preliminary injunction against implementing the rule. On remand, the United States, despite its decision not to appeal, was not barred from proceeding. In fact, it participated in a joint status report to the District Court and, ultimately, joined a stipulation of dismissal. *Kootenai Tribe of Idaho v. Glickman,* No. 01-CV-10 (D. Idaho).

In *Duke Energy*, the United States appealed a District Court ruling related – similar to the matter at hand – to the defendants' failure to secure necessary permitting under the Clean Air Act and Clean Air Amendments. Several parties, including Environmental Defense, intervened in the case on the side of the United States. The Fourth Circuit, despite the United States' arguments, affirmed the District Court in *United States v. Duke Energy Corp.*, 411 F.3d 539 (4th Cir. 2005) ("*Duke Energy II* "). The United States did not appeal the Fourth Circuit's *Duke Energy II* ruling, but Appellant-Intervenor Environmental

---

[1] While the intervenors were allowed to participate in *Kootenai* under permissive intervention, the Court noted that generally the "federal defendant" rule would only allow the United States to stand as a defendant in a NEPA/APA case. *Kootenai Tribe of Idaho*, 313 F.3d at 1109. That line of cases was later abrogated. *See Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1180 (9th Cir. 2011) ("We now abandon the 'federal defendant' rule."). In any event, *Kootenai* demonstrates that non-appeal by the United States does not bar the Government from further litigation participation.

Defense did. The Supreme Court disagreed with the Fourth Circuit's analysis of the statutory issue and remanded the action to the Fourth Circuit for proceedings consistent with its opinion. *Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561 (2007). The Fourth Circuit, in turn, vacated its opinion and remanded the action to the District Court, where years of litigation ensued, with the United States' full participation. *See United States v. Duke Energy Corp*, No. 00-CV-1262 (Mid. N. Car.). Neither Circuit Court nor Supreme Court precedent endorses barring the United States from proceeding in underlying litigation for failure to appeal a District Court decision that was later successfully appealed by an intervenor-appellant.

II. **Resolution of the case, as the Tenth Circuit contemplated, will require a lease or sale under 25 C.F.R § 214.7, necessitating the United States' participation.**

The Tenth Circuit concluded that "Osage Wind's excavation work here constituted 'mining' under § 211.3, thereby requiring Osage Wind to secure a federally approved lease from OMC under § 214.7." Dkt. 78 at 24-25. As this Court recently noted, "The remaining issues in this case involve the relief due to the Osage Mineral Estate[.]" Dkt. 138. It is not unreasonable to assume that this relief must involve either a lease or sale of the mineral estate. Such a lease or sale would require the United States' participation.

Indeed, the regulations at 25 C.F.R. § 214 are replete with references to the "officer in charge," the Superintendent of the Bureau of Indian Affairs Osage Agency, and specific aspects of that official's federal trust responsibilities. For instance, the regulation at 25 C.F.R. § 214.2 requires that the Superintendent grant permission to any entity wishing to negotiate a non-oil and gas minerals lease with the OMC, the administrative body of the

5

Osage Nation with the authority to approve mineral leases. Any lease and all associated information must be filed with the Superintendent for review by the appropriate federal officials. 25 C.F.R. § 214.2. The regulations at 25 C.F.R. §§ 214.3 - 214.5 require the filing of corporate information, the acquisition of bond, and any other information required by the Superintendent for review of the proposed lease. Beyond being required to be involved in these activities, "[t]he United States, as a sovereign, has a unique interest in the application and interpretation of its own laws and regulations." *Shields v. Spencer Wilkinson, Jr.*, No. 12-CV-160, 2013 WL 11320222 *4 (D. N. Dak. Nov. 26, 2013).

As shown, the United States has an essential role to play in any contemplated resolution of the extant claims in this case. Consequently, it is impracticable, if not impossible, to "bar[]" the United States from proceeding in this matter.

### III. The Court's "bar[]" threatens the United States' ability to fulfill its trust responsibilities.

The Court allowed the OMC to file its Complaint in Intervention. Dkt. 136. Within that Complaint (Dkt. 140 at 3), the OMC confirmed:

> Plaintiff United States is authorized to litigate this case in order to fulfill its fiduciary responsibility to protect tribal trust assets. *See United States v. Colvard*, 89 F.2d 312 (4th Cir. 1937) . . . Thus, as trustee, the United States is charged with the administration, protection, and management of the Osage Mineral Estate, at issue in this action. [citations omitted] In furtherance of those trust responsibilities, the Bureau of Indian Affairs [] has promulgated and administers regulations governing activities affecting the Osage Minerals Estate. The United States brings this lawsuit in its capacity as trustee of the Osage Mineral Estate, as well as to enforce compliance with federal law.

As this Court is aware, the trust relationship between the United States and the Osage Nation is the source of weighty responsibilities. Not only did the Tenth Circuit

6

envision a remand in which the OMC was not an intervening party, it was aware that the trust responsibility required the United States to continue prosecuting its litigation in the District Court. Dkt. 78 at 7 ("the United States, as trustee for the mineral estate" was relied upon to "litigate the case on behalf of the tribe").

At the very least, the "bar[]" imposed by this Court threatens to set this litigation back for months. Unfortunately, Defendants have not evinced a desire to cooperate in a fair and reasonable transition from one mineral estate representative to another. Prior to entry of the Order (Dkt. 139), the United States agreed to an extension of time until Monday, April 20, 2020, for Defendants to produce critical documents. Not only were those documents withheld, within hours of the Court's Order, Defendants removed all discovery documents previously available via its online portal to the United States. On April 20, 2020, the United States received correspondence from Defendants' counsel stating that

> Section 9 of the Stipulated Protective Order governs destruction or return of materials after final resolution of the litigation. As the United States has been barred from proceeding further in this case because it did not appeal the September 30, 2015 judgment against it, *see* Order [dkt. # 139], the Order requires the United States to return or destroy all materials marked confidential by defendants or considered confidential by agreement between counsel. Please inform me within five business days whether the United States will return or destroy all confidential documents within the time period set in the Stipulated Protective Order . . . .

Letter from Sarah M. Stevenson to Counsel for the United States, attached as Exhibit 1. Defense counsel's representation notwithstanding, it is clear from their own reference to the Stipulated Protective Order (Dkt. 108), that return or destruction of the subject discovery materials has not been triggered. Obviously, this litigation has not reached a "final resolution." Moreover, the Protective Order provides for return or destruction of materials within *60 days after* the "final resolution." *Id*. at 10. Defendants' rushed and arbitrary

7

deadline to destroy crucial and voluminous documentation obtained over a number of months does not evince a desire to participate in an orderly transfer of plaintiffs. Such measures can only delay and impede prosecution of this litigation.

The OMC can certainly reconstruct the discovery exchanged over the last four months - issue duplicative third-party subpoenas; respond to Defendants' objections; enter into its own protective order; duplicate the United States' discovery requests and seek the voluminous documentation[2] already obtained (with difficulty) by the United States from Defendants; locate and retain expensive experts; and coordinate with multiple experts, defense counsel and wind farm employees for a second site visit. There can be no doubt that extensive resources and time will be expended and replicated in this endeavor, only to place the OMC on par with the information obtained and reviewed by the United States.

**IV.     The cases cited in the Order are inapposite to the facts of this case.**

The two cases cited by the Court in its Order, respectfully, have no bearing on this matter. In this case, one plaintiff (the United States) initiated the action. This one plaintiff litigated in the District Court. In every case that Defendants cited in support of their argument that the United States must be dismissed – including the two cited by the Court in its Order – **co-parties** made different decisions regarding taking an appeal. In the published decisions Defendants cite, the Courts have decided that co-parties or third-parties may not benefit from another party's decision to appeal. Dkt. 119. Here, one plaintiff filed

---

[2] This documentation numbers nearly 15,000 pages and totals approximately 7.5 gigabytes of data. This does not include the volumes of information received in response to third-party subpoenas to multiple firms associated with Defendants' mining activities.

8

the Complaint and litigated its claims. The OMC never intervened (and was, in fact, denied intervention) but was allowed to pursue appeal based on the very unique situation existing here. As discussed below, it is clear the Tenth Circuit did not contemplate that the District Court would apply inapposite First Circuit law to oust the United States from this litigation.

In *United States v. Lumbermens Mut. Cas. Co., Inc.*, 917 F.2d 654 (1st Cir. 1990), a fire destroyed a house owned by the Veterans Administration ("VA"). The VA sued the prior owner's insurer. *Id.* at 655. Lumbermens ("LMC") claimed that, because the VA was not a named insured, it could not recover. *Id*. LMC also brought third-party actions against its insurance agent, Ossipee Insurance Agency, Inc. ("Ossipee"), and a plumber who allegedly started the fire. *Id*.

The District Court ordered that the policy be reformed to substitute the VA for the named insured and awarded damages. *Id*. The court also held that Ossipee and the plumber were jointly and severally liable to LMC in its third-party actions. *Id.* at 655-56. **Only Ossipee appealed**. *Id.* at 656. On appeal, the First Circuit reversed the third-party judgment against Ossipee (the only claim before it). *Id*. Because the judgment against LMC was not at issue, the Court did not reverse the main judgment against LMC but noted, "To be sure, precedent exists in support of relief for a non-appealing defendant in LMC's position." *Id.* at 662. Only one party (Ossipee) decided to appeal. The result obtained by appellee-party Ossipee applied to it only and did not support any relief for LMC or the plumber.

Notably, *Lumbermens* discusses at length the decision in *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734 (5th Cir. 1980), in which "the Fifth Circuit held that, where a third-party defendant's liability is derivative of the defendant's liability to plaintiff, the

9

vacating of the judgment against the third-party defendant based on error in the main case requires vacating the judgment against the main defendant as well, even though that defendant did not appeal." *Lumbermens*, 917 F.2d at 662. While *Lumbermens* ultimately rejected *Kicklighter*, in *Daniels v. Gilbreath*, 668 F.2d 477 (10th Cir. 1982), the Tenth Circuit took a position consistent with *Kicklighter*, stating "a non-appealing party could benefit from an appellate decision . . . ." *Daniels*, 668 F.2d at 480 (citing *Kicklighter* with approval). In *Daniels*, the Tenth Circuit had a decision point, as the First Circuit did in *Lumbermens*, to either adopt or reject *Kicklighter*. The First Circuit rejected it and took a restrictive point of view. The Tenth Circuit went the opposite direction. It is hard to imagine that the Tenth Circuit's decision in the instant matter was meant to reverse course.

The second case cited in the Court's April 14, 2020, Order, *Piazza v. Aponte Roque*, 909 F.2d 35 (1st Cir. 1990), also has no procedural analogy to this case. In *Piazza*, the District Court entered judgment for the plaintiffs against several defendants. *Id*. at 36. Only one party-defendant timely filed a successful appeal. *Id*. The First Circuit, considering a second appeal filed by those defendants who had not previously appealed, found that those who did not participate in the timely appeal were not entitled to take an appeal after the judgment had become final. *Id.* at 39. Critical in *Piazza* was the operation of Federal Rule of Appellate Procedure 4(a). *Id*. at 38-39. *Piazza*, like *Lumbermens*, had to do with the decisions of some **parties** to appeal and others not to appeal.

*Lumbermen* and *Piazza* bear no similarity to the instant case. Here, one party plaintiff (the United States) filed and litigated the action to the point of (adverse) judgment. The OMC then attempted, unsuccessfully, to intervene. The Tenth Circuit found that

unusual circumstances existed here that enabled the OMC to pursue an appeal as a **non-party**. The Tenth Circuit remanded the case to this Court to determine damages between the existing parties, all the while deeming the OMC's bid to intervene as "moot."

This Court's summary "bar" of the United States from proceeding also fails to consider the unique status of the one party that initiated this litigation – the federal government. As discussed above, the United States holds the Mineral Estate at issue in trust and is bound by statute and regulation to participate in sale or leasing activity. The litigation before this Court is focused on unique regulations that speak to the conduct of the United States. Just as a remand in a FOIA case (such as *Food Marketing Inst.*) or a specific Forest Service regulatory interpretation case (such as *Kootenai Tribe of Idaho*) require the United States' participation upon remand, so too does this litigation. Just as in those cases – where an outsider to the original litigation took up the cause of the United States and ultimately prevailed, allowing the United States to continue litigating – this Court should not bar further participation of the United States.

V. **The Court's "bar[]" of the United States is inconsistent with the Tenth Circuit's intent and decision to allow non-party OMC's appeal but to decline to allow to intervention.**

The Tenth Circuit remanded this matter to this Court for proceedings consistent with its opinion. At that time, the Tenth Circuit fully acknowledged and declined to change the fact that the OMC was not a party. Clearly, the Tenth Circuit anticipated that the parties to the lawsuit would be present before the District Court as it executed the remand. The Circuit Court would certainly not have reversed and remanded had it anticipated that no party plaintiff would be present absent the District Court allowing the OMC to intervene.

11

Otherwise, the Circuit Court would have itself reversed the District Court's denial of intervention and instituted the OMC as a party plaintiff.

Indeed, the line of cases the Tenth Circuit specifically relied upon to allow a non-party (the OMC) to appeal demonstrates that the three-judge panel never intended the result of the United States being "barred" from proceeding in the District Court. In the first case cited by the Tenth Circuit, *Devlin v. Scardelletti*, 536 U.S. 1 (2002), a retiree (Devlin) was denied intervention when he sought to challenge a class action settlement related to his retirement plan. The Supreme Court held that the non-party, nonnamed class member could bring the appeal without being granted intervention. It reversed the Fourth Circuit's judgment and remanded the case to proceed in a manner consistent with this finding.

The Fourth Circuit took the Supreme Court's remand instruction and did not "bar" any parties. Instead, it considered the merits of nonparty–appellant Devlin's challenges to the District Court's approval of the settlement in question and ultimately rejected these challenges. *Scardelletti v. Debarr*, 43 F. App'x 525 (4th Cir. 2002). There was no "bar" to the class members who had not appealed when the matter returned to the Fourth Circuit. Rather, the settlement the non-appellants had previously reached was upheld.

Likewise, in the second case cited in the Tenth Circuit's Osage Wind decision, *Plain v. Murphy Family Farms*, 296 F.3d 975 (10th Cir. 2002), the non-party children of a decedent were allowed to make an appeal after their motion to intervene had been denied. The non-party children's arguments were rejected on appeal. Thereafter, the non-appealing beneficiaries of the will were not barred from further participation in the underlying litigation. *Plain v. Murphy Family Farms*, No. 00-CV-770-WEA (W.D. Okla.). The

original decision favoring the non-appealing party was allowed to stand as affirmed by the Circuit Court. Neither *Devlin* nor *Plain* supports a bar to further participation for non-appealing party plaintiffs.

## CONCLUSION

The United States respectfully moves the Court to reconsider its April 14, 2020, Order (Dkt. 139), and its language barring the United States from proceeding in this matter.

Respectfully submitted,

UNITED STATES OF AMERICA

R. TRENT SHORES
United States Attorney

s/Cathryn D. McClanahan
Cathryn D. McClanahan, OBA No. 14853
Nolan M. Fields IV, OBA No. 31550
Assistant United States Attorneys
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
T: 918-382-2700
cathy.mcclanahan@usdoj.gov
nolan.fields@usdoj.gov

Of Counsel:
Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor's Office
7906 East 33rd Street
Tulsa, Oklahoma 74145
T: 918-669-7902
charles.babst@sol.doi.gov