**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| THE OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS OSAGE WIND, LLC, ENEL KANSAS, LLC, AND
ENEL GREEN POWER NORTH AMERICA, INC.'S PARTIAL MOTION TO DISMISS
THE OSAGE MINERALS COUNCIL'S COMPLAINT IN INTERVENTION**

---

| | |
|---|---|
| Ryan A. Ray, OBA #22281<br>NORMAN WOHLGEMUTH CHANDLER<br>JETER BARNETT & RAY, P.C.<br>2900 Mid-Continent Tower<br>401 South Boston Avenue<br>Tulsa, OK 74103<br>918-583-7571<br>918-584-7846 (facsimile) | Lynn H. Slade, *admitted pro hac vice*<br>Sarah M. Stevenson, *admitted pro hac vice*<br>MODRALL, SPERLING, ROEHL,<br>HARRIS & SISK, P.A.<br>Post Office Box 2168<br>Albuquerque, NM 87103-2168<br>505-848-1800<br>505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: May 6, 2020**

TABLE OF CONTENTS

INTRODUCTORY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ........................................................................................................2

Land in Osage County ........................................................................................................2

History of Osage Wind's Wind-Energy Project ................................................................3

The OMC's State-Court Litigation Seeking to Enjoin the Project .....................................4

Subsequent Proceedings and the Tenth Circuit's Decision ...............................................8

The OMC's Complaint in Intervention .............................................................................10

ARGUMENT AND AUTHORITIES ...........................................................................................12

I.      GOVERNING STANDARDS. ..................................................................................12

II.     TO THE EXTENT IT SEEKS TO ASSERT ANY REMEDY OTHER THAN MONEY
        DAMAGES FOR THE ROCK THAT WAS "SORTED," "CRUSHED," AND
        "EXPLOITED. . . AS STRUCTURAL SUPPORT," THE COMPLAINT IN INTERVENTION
        IS BARRED BY THE LAW OF THE CASE DOCTRINE. ...........................................13

III.    EQUITABLE RELIEF AGAINST THE PROJECT IS BARRED BY THE DOCTRINES OF
        REX JUDICATA AND COLLATERAL ESTOPPEL, ARISING FROM THE STATE CASE. ..........15

        A. The OMC is Collaterally Estopped by the State Case from Seeking an
           Injunction Against, or Ejectment of, the Project. ....................................16

        B. Res Judicata Arising from the State Case Also Bars Injunctive Relief
           (Including Ejectment). ...............................................................................17

IV.     THE COMPLAINT IN INTERVENTION FAILS TO PLEAD SUFFICIENT FACTS
        PLAUSIBLY DEMONSTRATING POSSIBLE ENTITLEMENT TO EQUITABLE RELIEF. .........18

        A. The OMC Does Not Plead Sufficient Facts Demonstrating Plausible
           Entitlement to a Permanent Injunction. ...................................................18

           1. There is No Plausibly Pleaded Irreparable Injury. ..............................19

           2. As a Matter of Law, the OMC has an Adequate Remedy at Law ...........21

        B. The OMC Does Not Plead Sufficient Facts Demonstrating Entitlement
           to an Accounting. ......................................................................................22

***C. The OMC Does Not Plead Sufficient Facts Demonstrating Entitlement in Disgorgement.*** ...........................................................................................................23

**V.    BECAUSE THE COMPLAINT IN INTERVENTION DOES NOT (AND CANNOT) PLAUSIBLY ALLEGE THAT THE CONDUCT THE TENTH CIRCUIT FOUND TO BE UNLAWFUL IS ONGOING, THE CLAIM FOR "CONTINUING TRESPASS" FAILS.** ................24

**CONCLUSION** ...................................................................................................................25

TABLE OF AUTHORITIES

**Cases**

*Adams v. Kinder-Morgan, Inc.*
    340 F.3d 1083 (10th Cir. 2003) ...................................................................16

*Allen v. Town of Colcord*
    874 F. Supp. 2d 1276 (N.D. Okla. 2012) .........................................................12

*Anderson Living Tr. v. ConocoPhillips Co., LLC*
    952 F. Supp. 2d 979 (D.N.M. 2013) ...............................................................19

*Arizona v. California*
    460 U.S. 605 (1983)........................................................................................14

*Bell Atlantic v. Twombly*
    550 U.S. 544 (2007)...........................................................................12, 18, 22

*Boyer v. Cline*
    No. 85-1562-C, 1989 WL 9338 (D. Kan. Jan. 17, 1989)...................................22

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*
    861 F.3d 1081 (10th Cir. 2017) ......................................................................14

*Casa Blanca DE Punta Mita v. Rayment*
    No. 19-CV-00188-GKF-JFJ, 2020 U.S. Dist. LEXIS 31481
    (N.D. Okla. Jan. 30, 2020) ..............................................................................17

*Chieftain Royalty Co. v. Dominion Oklahoma Texas Expl. & Prod., Inc.*
    No. CIV-11-344-R, 2011 WL 9527717 (W.D. Okla. July 14, 2011) ................22

*Dairy Queen, Inc. v. Wood*
    369 U.S. 469 (1962)........................................................................................22

*Dalkita, Inc. v. Distilling Craft, LLC*
    356 F. Supp. 3d 1125 (D. Colo. 2018).............................................................19

*Davilla v. Enable Midstream Partners, L.P.*
    247 F. Supp. 3d 1233 (W.D. Okla. 2017) ........................................................24

*Davilla v. Enable Midstream Partners L.P.*
    913 F.3d 959 (10th Cir. 2019) ...................................................................22, 24

*Dilworth v. Fortier*
    1964 OK 112, 405 P.2d 38...............................................................................20

*Dougherty v. McKee*
　　No. 16-5052, 2017 WL 2332591 (D.C. Cir. Feb. 2, 2017)................................18

*eBay Inc. v. MercExchange, L.L.C.*
　　547 U.S. 388 (206)........................................................................................19

*Edwards v. Lachman*
　　1974 OK 58, 534 P.2d 670............................................................................20

*The Estate of Lockett by & through Lockette v. Fallin*
　　841 F.3d 1098 (10th Cir. 2016) ...................................................................12

*Fairlawn Cemetery Ass'n v. First Presbyterian Church*
　　1972 OK 66, 496 P.2d 1185......................................................................24, 25

*Fish v. Kobach*
　　840 F.3d 710 (10th Cir. 2016) .....................................................................19

*Godlewski v. Affiliated Computers Servs., Inc.*
　　210 F.R.D. 571 (E.D. Va. 2002) .....................................................................1

*Grynberg v. Koch Gateway Pipeline Co.*
　　290 F.3d 1276 (10th Cir. 2004) ....................................................................3

*Hedges v. Anastasio*
　　No. 09-CV-793-FHM, 2010 WL 5158557 (N.D. Okla. Dec. 14, 2010)...........18

*Hitch Enterprises, Inc. v. Cimarex Energy Co.*
　　859 F. Supp. 1249 (W.D. Okla. 2012)..........................................................23

*Horton v. Bank of Am., N.A.*
　　189 F. Supp. 3d 1286 (N.D. Okla. 2016).......................................................24

*Howell Petroleum Corp. v. Leban Oil Corp.*
　　976 F.2d 614 (10th Cir. 1992) .....................................................................22

*Huffman v. Saul Holdings Ltd. P'ship*
　　262 F.3d 1128 (10th Cir. 2001) ...................................................................14

*I.P.I.C., GSP, S.L. v. Ruhrpumpen, Inc.*
　　No. 08-CV-0510-CVE-PJC, 2008 WL 5122697 (N.D. Okla. Dec. 4, 2008) ...................22

*Jicarilla Apache Tribe v. Andrus*
　　687 F.2d 1324 (10th Cir. 1982) ...................................................................20

*Jones v. Lewis*
    957 F.2d 260 (6th Cir. 1992) ........................................................................14

*Jorgensen v. Fed. Home Loan Mortg. Corp.*
    No. 2:12-CV-00236-RWS, 2013 WL 3802498 (N.D. Ga. July 19, 2013) .......................18

*Khalik v. United Air Lines*
    671 F.3d 1188 (10th Cir. 2012) ...................................................................13

*Krug v. Helmerich & Payne, Inc.*
    2013 OK 104, 320 P.3d 1012....................................................................23, 24

*Lane v. Simon,*
    495 F.3d 1182 (10th Cir. 2007) ...................................................................13

*Margaret Blair Tr. v. Blair*
    2016 OK CIV APP 47, 378 P.3d 65 .............................................................23

*Mason v. Texaco, Inc.*
    948 F.2d 1546 (10th Cir. 1991) ...................................................................14

*McIlravy v. Kerr-McGee Coal Corp.*
    204 F.3d 1031 (10th Cir. 2000) ...................................................................14

*Monsanto Co. v. Geertson Seed Farms*
    561 U.S. 139 (2010)..................................................................................19

*Next Level Communs. L.P. v. DSC Communs. Corp.*
    179 F.3d 244 (5th Cir. 1999) ......................................................................16

*Nichols v. Danley*
    266 F. Supp. 2d 1310 (D.N.M. 2003) ............................................................13

*Oneida Tribe of Indians v. AGB Props.*
    02-CV-233, 2002 U.S. Dist. LEXIS 16538 (N.D.N.Y. Sep. 5, 2002)..............................16

*Osage Nation v. Bd. of Comm'rs,*
    2017 OK 34, 394 P.3d 1224..........................................................................6

*Osage Nation v. Irby*
    597 F.3d 1117 (10th Cir. 2010) ...................................................................2, 3

*Osage Nation ex rel. Osage Minerals Council v. Wind Capital Grp., LLC*
    No. 11-CV-643-GKF-PJC, 2011 WL 6371384 (N.D. Okla. Dec. 20, 2011) ....................4

*In re Packaged Seafood Prod. Antitrust Litig.*
    No. 15-MD-2670 JLS (MDD), 2017 WL 2332591 (D.C. Cir. Feb. 2, 2017)...................18

*Park Lake Resources Ltd. Liability Co. v. United States Dept. of Agriculture*
    378 F.3d 1132 (10th Cir. 2004) ........................................................................16

*Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*
    358 F.3d 694 (10th Cir. 2004) ..........................................................................14

*Quarles v. Little River Energy Co.*
    No. 00-CV-913-GKF-PJC, 2008 WL 185715 (N.D. Okla. Jan. 18, 2008)......................23

*RoDa Drilling Co. v. Siegal*
    552 F.3d 1203 (10th Cir. 2009) ........................................................................19

*Roe v. Cheyenne Mt. Conference Resort*
    124 F.3d 1221 (10th Cir. 1997) ........................................................................19

*Rupp v. Omaha Indian Tribe*
    45 F. 3d 1241 (8th Cir. 1995) ..........................................................................20

*Schafer v. Centerpoint Energy Oklahoma Gas*
    No. 17-CV-365-GKF-FHM, 2018 WL 10140171 (N.D. Okla. May 21, 2018) ...............24

*Schrier v. Univ. of Colo.*
    427 F.3d 1253 (10th Cir. 2005) ........................................................................19

*SEC v. Gordon*
    822 F. Supp. 2d 1144 (N.D. Okla. 2011) ............................................................16

*Sierra Club, Inc. v. Bostick*
    539 F. App'x 885 (10th Cir. 2013) ...................................................................19

*SizeWise Rentals, Inc. v. Mediq/PRN Life Support Servs.*
    No. 00-351, 2000 U.S. App. LEXIS 11859 (10th Cir. May 26, 2000)...........................21

*St. Louis Baptist Temple, Inc. v. F.D.I.C.*
    605 F.2d 1169 (10th Cir. 1979) ........................................................................13

*Stanley v. Gallegos*
    No. CV 11-1108 BDW/JHR, 2018 WL 3801247 (D.N.M. Aug. 9, 2018) ......................22

*Tilton v. Capital Cities/ABC*
    827 F. Supp. 674 (N.D. Okla. 1993)..................................................................21

*United States v. Bell*
    5F.3d 64 (4th Cir. 1993) .................................................................................14

*United States v. Hess*
    194 F.3d 1164 (10th Cir. 1999) ...................................................................24

*United States v. Osage Wind, LLC*
    871 F.3d 1078 (10th Cir. 2017) ............................................................. Passim

*Ute Indian Tribe v. Utah*
    114 F.3d 1513 (10th Cir. 1997) ...................................................................14

*Vaughn v. Countrywide Home Loans, Inc.*
    No. CIV-09-CV-357-JL, 2009 WL 4726635 (D.N.H. Dec. 1, 2009)...............................18

*Village of Logan v. U.S. Dep't of Interior*
    577 Fed. App'x 760 (10th Cir. 2014) ...........................................................19

*Westside Mothers v. Olszewski*
    454 F.3d 532 (6th Cir. 2006) ......................................................................14

*Wyandotte Nation v. City of Kansas City*
    200 F. Supp. 2d 1279 (D. Kan. 2002)...........................................................20

## **Constitutional Provisions**

Okla. Const., art. XVII, § 8...........................................................................2

## **Statutes**

Osage Nation Act of June 5, 1872, ch. 310, 17 Stat. 228 ...............................................2

Osage Act of June 28, 1906, ch 3572, 34 Stat. 539 .....................................................2

## **Federal Regulations**

25 C.F.R. § 211.3 ...................................................................................8, 9

25 C.F.R. § 214.7 ..................................................................................8, 20

**<u>Court Rules</u>**

Fed. R. App. P. 4 ................................................................................................8

Fed. R. Civ. P. 12 ........................................................................................12, 13

**<u>Other Authorities</u>**

53A Am. Jur. 2d Mines and Minerals § 14 ...................................................9

Defendants, Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively, the "Defendants"), hereby move to partially dismiss the Complaint in Intervention filed by the Osage Minerals Council (the "OMC") in accordance with FED. R. CIV. P. 12(b)(6).[1]  In support, the Defendants state as follows:

### INTRODUCTORY STATEMENT

On April 13, 2020, the Court entered an Order granting the OMC's Motion to Intervene. (Dkt. # 136).  The Court's Order, in its entirety, stated "the Motion to Intervene of the Osage Minerals Council is granted. The Complaint in Intervention shall be filed by April 15, 2020."  (*Id.*). In opposition to the OMC's Motion to Intervene, the Defendants had raised six arguments in opposition to intervention (Dkt. # 118, at 7-22), only one of which related to the futility of the Complaint in Intervention.  (*See id.* at 18-22).  The Court's Order did not analyze the FED. R. CIV. P. 12(b)(6) issues or make any findings on those issues.  (*See* Dkt. # 136).

The Defendants, therefore, proceed with this Motion, and wish to make clear that they are *not* challenging:

- Either of the OMC's declaratory-judgment claims, except to the extent inconsistent with *United States v. Osage Wind, LLC*, 871 F.3d 1078 (10th Cir. 2017) (the "Tenth Circuit's Opinion"); or

- The OMC's trespass or conversion claims, except as inconsistent with the Tenth Circuit's Opinion.

This Motion *does* challenge the OMC's ability to:

---

[1] Because the Defendants are seeking dismissal of part of the Complaint in Intervention, they are not required to file an Answer or other responsive pleading with respect to the other claims until this Motion is resolved. *See* FED. R. CIV. P. 12(A)(4); *Godlewski v. Affiliated Computers Servs., Inc.*, 210 F.R.D. 571, 572 (E.D.Va. 2002); *Finnegan v. University of Rochester Medical Center*, 180 F.R.D. 247, 249 (W.D.N.Y. 1998).

- Pursue any equitable remedy in this case;

- Pursue a *continuing* trespass claim; and

- Pursue certain allegations inconsistent with the Tenth Circuit's Opinion.

Those claims and allegations are barred because (i) they are not permissible under the Tenth Circuit's Opinion; (ii) prior litigation filed by the OMC in the District Court of Osage County (after Project construction began) precludes those remedies here; and/or (iii) the OMC does not plausibly plead facts to justify the pursuit of such claims and allegations as a matter of law.

## FACTUAL BACKGROUND

### *Land in Osage County*

The Tenth Circuit's decision in this case summarizes land rights in Osage County:

> Congress established an Indian reservation for the Osage Nation in 1872, Act of June 5, 1872, ch. 310, 17 Stat. 228, and Oklahoma thereafter incorporated the Osage-occupied territory as Osage County, Okla. Const., art. XVII, § 8. In 1906, Congress *severed* the Osage mineral estate in Osage County from the surface estate. Act of June 28, 1906 (Osage Act), ch. 3572, 34 Stat. 539, §§ 2-3. The Osage Act parceled out the surface estate to individual tribe members—a distribution practice known as "allotment"—and made these allotted lands freely alienable. *Id.* § 2. The Act also ensured that the property owners could use the land for "farming, grazing, or any other purpose not otherwise" prohibited by the Osage Act. *Id.* § 7.
>
> The mineral estate beneath those lands, however, was not allotted to individual members of the tribe. *Id.* § 3. Rather, the mineral estate was reserved for the benefit of the Osage Nation. *Id.* The United States was established as legal trustee for the mineral estate while the Osage Nation retained beneficial ownership. *See, e.g.*, *Osage Nation v. Irby*, 597 F.3d 1117, 1120 (10th Cir. 2010). The Act further empowered the Osage Nation to issue leases for "all oil, gas, and other minerals" in the reserved mineral estate. Osage Act, 34 Stat. 539, § 3. Those leases required the approval of the U.S. Department of Interior (DOI) and were subject to further regulation by DOI rulemaking. *Id.*

*United States v. Osage Wind, LLC*, 871 F.3d 1078, 1082 (10th Cir. 2017).  Further, the Tenth Circuit Court of Appeals has directly held that "the Osage reservation has been disestablished by

Congress." *Osage Nation v. Irby*, 597 F.3d 1117, 1127 (10th Cir. 2010). Any allegation or suggestion that such a reservation continues to exist is contrary to law. *See also* Dkt. # 151, 7-9.

### History of Osage Wind's Wind-Energy Project

Osage Wind, at all times, made the Osage Nation (the "Nation"), the Osage Minerals Council ("OMC"), and the United States Bureau of Indian Affairs (the "BIA"), fully aware of its plans to construct a wind-energy project in Osage County (the "Project"). Beginning in 2008, the Project's initial developer, Wind Capital Group ("WCG"), and later Osage Wind, engaged the OMC, the Nation, the BIA, and the United States Department of the Interior regarding a proposal to develop the Project in Osage County. (Dkt. # 17-2, at 3-4, 21-25).[2] In 2010, Osage Wind leased approximately 8,400 acres of privately owned fee surface estate in Osage County to develop the Project. (Dkt. # 17-1, at 3).[3]

The Project plans identified 84 turbine sites and 10 alternate sites. (Dkt. # 17-1, at 3). On April 15, 2011, Osage Wind met with representatives of the OMC and provided the OMC with copies of the proposed site plans for the Project for review and comment. (Dkt. # 17-2, at 4, 22). In September 2011, the BIA raised a concern that the Project could interfere with oil and gas production in Osage County, and, in a meeting to discuss the BIA's concern that occurred on October 7, 2011, WCG provided representatives of the BIA, the OMC, and the Nation with copies

---

[2] As the OMC previously noted in this case, its intervention has allowed it to "stand in the shoes of the United States." (Dkt. # 60, at 5). To the degree the referenced materials were submitted as to the United States, they are properly considered against the OMC as well, since it "stand[s] in the shoes of the United States" and because communications with the BIA and the DOI, its trustee, are part and parcel of the OMC's theory. (*See* Dkt. # 140, at ¶ 42). And it is clear that a court may take judicial notice, on a motion to dismiss, of information contained in prior court files. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004).

[3] None of the leased surface estate was held in trust by the United States for the Osage Nation, in trust for the benefit of an enrolled member of the Osage Nation, or subject to restriction by the United States against alienation. (*Id.*).

of the detailed site plans. (*Id.* at 5-6, 23). These plans showed the placement of each turbine and the total footprint of the Project. (*Id.* at 7). The OMC and the Nation then filed a lawsuit in this Court, "generally predicated on the allegation the [Project] [would] unlawfully interfere with its rights to develop the Osage Mineral Estate." *Osage Nation ex rel. Osage Minerals Council v. Wind Capital Grp., LLC*, No. 11-CV-643-GKF-PJC, 2011 WL 6371384, at *2 (N.D. Okla. Dec. 20, 2011) (the "Prior Federal Litigation").

It was not until October 10, 2013, when, for the first time, the OMC suggested that the Project "may be" subject to federal regulation under 25 C.F.R. Parts 211 and 214. (Dkt. # 17-2. at 7-8, 39-41).  On October 28, 2013, WCG responded to the OMC, copying Interior Department officials and BIA Osage Agency Superintendent Phillips, disputing the contention that the BIA could regulate the Project under Parts 211 and 214 and that a lease or permit was required for surface construction because Osage Wind "will not remove or sell any materials from the Project site," (*Id.* at 8, 42, 43).  Neither the OMC nor any Interior Department or BIA recipient responded. (*Id.* at 8).

Project construction began on October 25, 2013. (Dkt. # 17-1, at 4). The BIA was made aware in November 2013 that Osage Wind had started Project construction, (Dkt. # 28-3, at 3), and was reminded of WCG's October 28, 2013 letter advising OMC no lease or permit was required because Osage Wind "will not remove or sell any materials from the Project site." (Dkt. # 17-2, at 7-8).

### The OMC's State-Court Litigation Seeking to Enjoin the Project

In the interim, the OMC commenced litigation in the District Court of Osage County, styled *Osage Nation and Osage Minerals Council v. Osage County Board of County Commissioners, et al.*, District Court of Osage County Case No. CV-2014-41 (the "State Case").  The OMC's Petition

was filed on June 25, 2014 (copy attached as Exhibit A, without exhibits thereto).  The State Case

Petition, which was filed *after* the OMC and the BIA were aware construction had commenced

and OMC had contended Parts 211 and 214 "may be" at issue, alleged as follows:

- "Located below the entirety of the proposed Osage Wind Energy site lies the Osage

    Mineral Estate. The Osage Mineral Estate consists of oil and gas and solid minerals,

    including, but not limited to, sand, gravel, limestone and other solid minerals. The

    United States holds the Osage Mineral Estate in trust for the benefit of the Osage

    Nation."  (Exh. A, at ¶ 16, pp. 6-7).

- Paragraph 55 of the State Court Petition sought "a permanent injunction against the

    Defendants [including Osage Wind, LLC], enjoining and restraining the Defendants

    from . . . using the property **and the subsurface mineral estate** for a Wind Energy

    Facility."  (Emphasis added; *see also* Exh. A, at ¶ 5, Count IV Demand for Relief on p.

    17; Prayer for Relief, ¶ d, pp. 19-20).

The District Court of Osage County dismissed the State Court Petition on several grounds, the first

of which was that "the Osage Minerals Council's claims in [the State Court Case] are barred by

the doctrine of laches."  (October 23, 2014 Journal Entry of Judgment, at 3, ¶ 1, copy attached as

Exhibit B).  The Court explained that the OMC "waited for nearly three (3) years to seek to raise

those challenges, and, in the interim and as established by the face of the [State Court] Petition . . .

, Osage Wind began work on the wind energy project at issue . . . ."  (*Id.*).[4]

---

[4] The OMC did not appeal, and the District Court of Osage County's Judgment accordingly became
final as to the OMC.  The Osage Nation did, however, appeal.  Of note, the Oklahoma Supreme
Court affirmed the dismissal of the Osage Nation's claims for equitable relief against the Project,
concluding that "Plaintiffs brought their action almost three years after a permit was issued by the
governmental agency authorizing the location of the project and after construction had commenced
on a utility scale construction project. Plaintiff had knowledge of the scale and location of the
project during that three-year period. We affirm the District Court's order dismissing plaintiff's

### *Turbine Foundation Work and Related Communications*

Turbine excavation work began on September 10, 2014.[5]   (Dkt. # 17-1, at 5).  The BIA waited until (1) one year after it was aware construction had begun and two years after it learned of Osage Wind's position that no lease or permit was required because it "will not remove or sell any materials from the Project site," and (2) over a month after excavation began, to mention, in an October 9, 2014 letter from Osage Agency Superintendent Robin Phillips, that a "Sandy Soils Permit" may be required of Osage Wind.  (*See* Dkt, #4-3; Dkt. # 17-1, at 4 (stating construction began on October 25, 2013, and foundation excavation work on September 10, 2014)).  Superintendent Phillips' October 9, 2014 letter makes no mention of a lease, but instead focuses only on the "Sandy Soils Permit," a term which appears nowhere in Part 211 or 214 or any other published BIA source. (*See* Dkt. # 4-3).

In response to the October 9, 2014 letter, Lynn H. Slade, counsel for Defendants, sent emails to Field Solicitor Alan R. Woodcock on October 20, 2014, and Superintendent Phillips on October 21, 2014, attaching a legal memorandum explaining why Osage Wind believed it was not required to have a lease or permit, and, again, requesting a meeting with the BIA *and the OMC.* (Dkt. # 28-1, at 2, 3, 8-9).  Similar communications occurred on October 20, 2014 when Jeff Riles of Enel met with BIA Regional Director Robert Impson, and provided further information about excavation activities, and offered to respond to any further questions and to schedule a field trip to view operations.   (Dkt. # 28-2, at 1-2).   The BIA did not, in response to Mr. Slade's communications to Field Solicitor Woodcock and Superintendent Phillips, in the conversation with

---

petition against Osage Wind upon application of laches." *Osage Nation v. Bd. of Comm'rs*, 2017 OK 34, ¶ 43, 394 P.3d 1224, 1239.  The Supreme Court further made clear that this conclusion was entirely independent of the Prior Federal Litigation in this Court. *Id.* at ¶ 50, 394 P.3d at 1242.

[5] Of note, this was *before* the entry of the judgment in the State Case.

Mr. Impson, or in response to Mr. Riles' follow-up letter or phone calls, assert a lease or "Sandy Soil Permit" was required or request that construction cease.  (*Id.* at 2).[6]

The excavated hole for each of the turbine foundations measured approximately 10 feet deep and 50 to 60 feet in diameter.  (Dkt. # 17-1, at 3, 5; Dkt. # 27-1, at 3).  Materials excavated included sand, soil, and rock in various sizes. (*Id.*).  After Osage Wind dug the holes, it poured foundations, with concrete mixed and prepared using exclusively purchased materials. (Dkt. # 17-1, at 5-7).  When the foundations had cured, Osage Wind returned the sand, soil, and pieces of rock smaller than three feet that had been crushed on site to a size of three inches or less to the hole from which it had been excavated. (*Id.* at 5).  Rock-crushing activities were conducted only for filling in the holes around the turbine foundations. (Dkt. # 27-1, at 5).  Rock pieces larger than three feet were stacked and remain stockpiled adjacent to the site of the foundation hole from which they were removed.  (Dkt. # 17-1, at 5).  Crushing rocks in place and returning them to the hole from which they were removed is a standard and customary construction practice. (*Id.*).  No sand, soil, or rock was used for any purpose other than to return it to the hole from which it came or to stack it adjacent to the excavation site.  (*Id.* at 6).

Turbine excavation work was completed by November 21, 2014 (Dkt. # 140, ¶ 49), the date the United States filed its Complaint in this case. (Dkt. # 2).  Commercial operation of the Project commenced by May 2, 2015. (Dkt. # 41). The total surface footprint of the Project's facilities is approximately 1.5% of the 8,400 acres leased, or 126 acres. (Dkt. # 17-1, at 3).

---

[6] Between October 20 and November 10, 2014, the Defendants' counsel continued to inquire of the BIA about its position, and expressed Osage Wind's willingness to meet with the BIA and/or Osage Nation or OMC representatives to discuss the matter further. (Dkt. # 28-1, at 2-3).  Similar communications ensued in the weeks thereafter, without the BIA or OMC advising that construction should cease, until the United States filed the litigation and served the Defendants with process.  (*See id.*).

### *Subsequent Proceedings and the Tenth Circuit's Decision*

On September 30, 2015, Judge Payne granted summary judgment in favor of the Defendants.  (Dkt. # 44).  The OMC alone filed a notice of appeal challenging Judge Payne's Summary Judgment decision on the last day for the United States to appeal in accordance with the deadline of FED. R. APP. P. 4, and it also sought to intervene in this Court for the limited purpose of appeal.  (*See* Dkt. # 46, at 3 ("As such, this Court should grant intervention *for purposes of appeal*." (emphasis added); Dkt. # 49).

The Tenth Circuit Court of Appeals, in an Opinion authored by Judge Ebel, reversed Judge Payne's grant of summary judgment.

The Tenth Circuit's core holding was as follows:

> This case presents the question whether a large-scale excavation project—which involved **the excavation, modification, and use** of rock and soil during the installation of wind turbines—constituted "mining" under the pertinent federal regulations that address mineral development on Indian land. When an entity engages in "mining" of minerals owned by the Osage Nation, a federally approved lease must be obtained from the tribe. 25 C.F.R. § 214.7. The Bureau of Indian Affairs (BIA) has defined "mining" as the "science, technique, and business of mineral development[.]" 25 C.F.R. § 211.3. We hold that the term "mineral development" has a broad meaning. While it includes commercial mineral extractions and offsite relocations, which are not at issue here, it also encompasses **action upon the extracted minerals** for the purpose of exploiting the minerals themselves on site.

*United States v. Osage Wind, LLC*, 871 F.3d 1078, 1081 (10th Cir. 2017) (emphasis added).  The Tenth Circuit made a critical observation about the case's procedural posture before it:  "After discovering that Osage Wind had completed excavation in late November 2014, the United States **withdrew its request for an injunction** and filed an amended complaint **for damages** based on the alleged unauthorized extraction of reserved minerals."  *Id.* at 1083-84 (emphasis added).

The Tenth Circuit concluded that only certain of Osage Wind's activities constituted "mining"—namely, its "sort[ing] and then crush[ing] the minerals and us[ing] them as backfill to

support its wind turbine structures." *Id.* at 1090. The Tenth Circuit rejected the assertion that

solely breaking the ground or the Project's mere presence was unlawful:

> **We agree with Osage Wind, however, that merely encountering or incidentally disrupting mineral materials would not trigger § 211.3's definition.** In other words, "the simple removal of dirt does not constitute mining." 53A Am. Jur. 2d Mines and Minerals § 14. There is simply no sense in which the word "mineral development" means only the removal of dirt without some further manipulation, commercialization, or offsite relocation of it. The problem here is that Osage Wind did not merely dig holes in the ground—it went further. It *sorted* the rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as structural support for each wind turbine. The ultimate question is whether ***this operation*** constitutes "mineral development" as we have conceptualized the term. We hold that it does.

*Id.* at 1091 (first and final emphases added). In other words, it was *only because* Osage Wind had

"*sorted* the rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as

structural support for each wind turbine" that Osage Wind's activities constituted "mining." **The**

**Court did not find the mere presence of the Project to be unlawful**.

The Tenth Circuit also noted that "***[i]t might be reasonable*** to adopt the construction

favored by Osage Wind, which sets as the definitional boundary the commercialization of the

minerals." *Id.* (emphasis added). After all, Judge Payne agreed. But the Tenth Circuit rejected it,

based upon the "Indian canon of construction," which provides that "ambiguity in laws designed

to favor the Indians ought 'to be liberally construed' in the Indians' favor." *Id.* at 1090. Any

suggestion, though, that Osage Wind's activities constituted some sort of willful bad faith cannot

be squared with the Tenth Circuit's Opinion, which was expressly answering a previously

unanswered question and one it found to have an ambiguous answer based upon then-existing law.

Lest any doubt remain in what activities the Tenth Circuit was, and was not, determining

to be unlawful, it made that clear when it harmonized its decision with the Osage Allotment Act.

The Court noted that the Osage Allotment Act granted "expansive authority" "to surface-estate

owners to use and develop their land." *Id.* at 1092.  And the Court made clear that "merely encountering or disrupting the mineral estate does not trigger the definition of 'mining' under 25 C.F.R. § 211.3. If the minerals are not being shipped offsite or commercialized,[7] then they must be ***acted upon*** for the purpose of exploiting the minerals themselves." *Id.* at 1092 (emphasis added).

The Tenth Circuit, in closing, remanded the case to this Court "for further proceedings *consistent with this Opinion*." (*Id.* at 1093, emphasis added).  The Defendants sought certiorari at the United States Supreme Court, which declined to hear the case on January 7, 2019.

### The OMC's Complaint in Intervention

The Defendants do not challenge the OMC's ability to litigate its claims for declaratory relief and to pursue money damages for trespass and/or conversion (albeit only consistent with the Tenth Circuit's Opinion).  The Defendants do, however, challenge the following portions of the Complaint in Intervention:

- The OMC correctly acknowledges that "[b]y November 21, 2014 . . . Defendants had completed their excavation of the Osage Mineral Estate." (Dkt. # 140, at ¶ 49).  Yet, in Paragraphs 60, 61, 103, and 104, the OMC alleges that mere presence of the Project is a continuing trespass.  These allegations (and any other portion of the Complaint in Intervention that can be read similarly) cannot be squared with the Tenth Circuit's Opinion, which specifically found that it was *only* the entire process of "*sort*[ing]. . . .*crush*[ing] . . . [and] then *exploit*[ing] the rocks that rendered its activities "mining."

- The OMC alleges in Paragraphs 49, 50, 92, 94, 110, 112, and 123 that Osage Wind's activities were done "willfully and intentionally and in bad faith."  There are no factual allegations that would support this conclusory statement.  Osage Wind believed, in

---

[7] The Court made clear that it meant "commercialize" to be "the sale of minerals." *Id.* at 1089.

good faith, based upon a detailed legal analysis, that neither a lease nor permit were required; it advised the United States and the OMC of this conclusion in response to any suggestion a lease or permit may be required; the United States and the OMC delayed substantially in asserting to the contrary (until after construction and excavation had commenced); and the United States did not file suit (which it did at the OMC's request) until, as the OMC alleges, excavation was completed.  Judge Payne agreed with the Defendants' position.  The Tenth Circuit found that the regulations were ambiguous and the Defendants' interpretation was reasonable, only rejecting it through application of the Indian canon of construction.  There is no factual basis pleaded in the Complaint in Intervention (nor that exists) for alleging a right to a remedy based on allegations that Osage Wind was acting in intentional bad faith.

- The Complaint in Intervention seeks equitable remedies that cannot be squared with the Tenth Circuit's Opinion and its well-pleaded facts:

  o The OMC seeks to pursue remedies "sounding in equity, including disgorgement of profits."  (Dkt. # 140, at ¶ 118; *see also id.* at ¶ 119 ("any other equitable remedy"); *id.* at ¶ 125 ("all equitable remedies").

  o The OMC alleges entitlement to an accounting of "all revenue attributable to the Osage Wind wind farm operation."  (Dkt. # 140, at ¶ 120).

  o As a purported part of its accounting claim, the OMC seeks "a judgment in favor of [the OMC] disgorging all revenues resulting from the unlawful wind farm operation."  (*Id.* at ¶ 121).

o   Also as a purported part of its accounting claim, the OMC seeks "a judgment in favor of Plaintiff to address the unjust enrichment resulting from the unlawful wind farm operation." (*Id.* at ¶ 122).

o   The OMC alleges that its trespass and conversion claims include the element of bad faith (*id.* at ¶ 123), which, as noted above, is not supported by the allegations of the Complaint in Intervention or the actual facts, and beyond money damages seeks recovery of "applicable multipliers, additions, penalties and accruals to date of judgment." (*Id.*).

o   The OMC seeks injunctive relief against "continuing trespass [and] other work that concerns the Osage Mineral Estate, including but not limited to ejectment" (*id.* at ¶ 124; *see also id.* at ¶¶ 60-61, 94, 104, 112, 114, 119).

## ARGUMENT AND AUTHORITIES

### I.   GOVERNING STANDARD.

To avoid dismissal under FED. R. CIV. P. 12(b)(6), "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," but a complaint must "contain enough facts to state a claim for relief that is plausible on its face." *Allen v. Town of Colcord*, 874 F. Supp. 2d 1276, 1282 (N.D. Okla. 2012) (citation and quotation omitted). "Mere labels and conclusions and a formulaic recitation of the elements of a cause of action are insufficient." *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quotation marks and citations omitted). "Accordingly, in examining a complaint under Rule 12(b)(6), [the Court] will disregard conclusory statements and look only to whether

the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Dismissal is therefore appropriate where the complaint fails to allege "facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quotation omitted).

Issue and claim preclusion may be raised in a FED. R. CIV. P. 12(b)(6) motion. *Nichols v. Danley*, 266 F. Supp. 2d 1310, 1312 (D.N.M. 2003). And in deciding such a motion, federal courts may take notice of proceedings in other courts, both within and outside of the federal judicial system. *St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979).

**II.    TO THE EXTENT IT SEEKS TO ASSERT ANY REMEDY OTHER THAN MONEY DAMAGES FOR THE ROCK THAT WAS "SORTED," "CRUSHED," AND "EXPLOITED . . . AS STRUCTURAL SUPPORT," THE COMPLAINT IN INTERVENTION IS BARRED BY THE LAW OF THE CASE DOCTRINE.**

The Tenth Circuit's Opinion contemplates relief limited to money damages for volumes of minerals removed by actions constituting "mining" as defined by the Opinion. *See Osage Wind, LLC*, 871 F.3d at 1083-84 ("the United States withdrew its request for an injunction and filed an amended complaint ***for damages*** based on the alleged unauthorized extraction of reserved minerals.") (emphasis added); *id.* at 1091 (concluding that "merely encountering or incidentally disrupting mineral materials"—in any amount—would not constitute mining; but rather it was only "mining" because of the entire "operation" of "*sort[ing]* the rocks, *crush[ing]* the rocks into smaller pieces, and then *exploit[ing]* the crushed rocks as structural support for each wind turbine" that amounted to mining). There is no fair reading of the Tenth Circuit's Opinion that would countenance the allegation that its reference to "operation" meant the entire Project, as opposed to the operation of rock crushing that it specifically described.

"[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case." *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034-35 (10th Cir. 2000). "The 'law of the case' doctrine requires every court to follow the decisions of courts that are *higher* in the judicial hierarchy." *Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 711 (10th Cir. 2004) (emphasis in original). The "law of the case doctrine was understandably crafted with the course of ordinary litigation in mind." *Arizona v. California*, 460 U.S. 605, 618-19 (1983). Accordingly, "[a]n appellate court decision on a particular issue, unless vacated or set aside, governs the issue during all later stages of the litigation in the district court and thereafter on any further appeal." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1099 (10th Cir. 2017).

In addition, an "important corollary" to the law-of-the-case doctrine, known as the mandate rule, provides that "a district court must comply strictly with the mandate rendered by the reviewing court." *Ute Indian Tribe v. Utah*, 114 F.3d 1513, 1520-21 (10th Cir. 1997); *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir. 2001); *see also Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991). "Thus, when [a court of appeals] remands for further proceedings, a district court must, except in rare circumstances, 'implement both the letter and spirit of the ... mandate, taking into account [its] opinion and the circumstances it embraces.'" *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993); *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). "When the reviewing court, in its mandate, prescribes that a court shall proceed in accordance with the opinion of the reviewing court or that a court shall proceed for the reasons given in the opinion, that pronouncement operates to incorporate the opinion into the mandate." *Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir. 1992).

- 14 -

Here, the Tenth Circuit clearly expressed that it was considering claims "*for damages*" and not any kind of claims for (i) injunctive relief, (ii) accounting, (iii) disgorgement, (iv) unjust enrichment, or (v) any other equitable remedy of any kind.  And that makes sense as the Tenth Circuit merely found that the entire "operation" of "*sort[ing]* the rocks, *crush[ing]* the rocks into smaller pieces, and then *exploit[ing]* the crushed rocks as structural support for each wind turbine" amounted to activity requiring a lease under applicable law.  An accounting of the entire revenues of the Project, disgorgement of such revenues, ejectment of the Project, or an injunction against its operation was not what the Tenth Circuit contemplated, nor would it be appropriate remedial relief for the actual activity the Tenth Circuit found unlawful.  Rather, it contemplates a straightforward determination of the money damages at issue, which should be limited to the value of the rock that was sorted, crushed, and exploited into structural support.  Efforts to expand the case into a larger challenge to the entire Project and to seek punitive remedies are not consistent with the Tenth Circuit's clear finding that "merely encountering or incidentally disrupting mineral materials"—in any amount—would not constitute mining or its statement that only money damages remain at issue.  This Court must not permit such a marked deviation from the Tenth Circuit's Opinion and mandate, and the OMC's Complaint in Intervention must be dismissed to the extent inconsistent with the Tenth Circuit's Opinion.

## III.   EQUITABLE RELIEF AGAINST THE PROJECT IS BARRED BY THE DOCTRINES OF *RES JUDICATA* AND COLLATERAL ESTOPPEL, ARISING FROM THE STATE CASE.

The Tenth Circuit found that the Prior Federal Litigation in this Court in 2011 was not *res judicata*. *Osage Wind*, 871 F.3d at 1086-87.  The Court based this conclusion on its finding that— *in 2011*—construction had not commenced, and its scope was not known.  *Id.* at 1087.  Thus, found the Court, Osage Wind could not "show that the claim reasonably could have been raised in the prior lawsuit."  *Id.*  But things were different in 2014, when the OMC filed the State Case.

### A.  The OMC is Collaterally Estopped by the State Case from Seeking an Injunction Against, or Ejectment of, the Project.

"Issue preclusion or collateral estoppel prevents relitigation of issues that were decided in a previous case . . . ."  *SEC v. Gordon*, 822 F. Supp. 2d 1144, 1153 (N.D. Okla. 2011). "Issue preclusion bars relitigation of an issue, even if the issue 'arises when the party is pursuing or defending against a different claim.'" *SEC v. Gordon*, 822 F. Supp. 2d 1144, 1153 (N.D. Okla. 2011) (quoting *Park Lake Resources Ltd. Liability Co. v. United States Dept. of Agriculture*, 378 F.3d 1132, 1136 (10th Cir. 2004)).  The party raising issue preclusion must prove four elements:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1093 (10th Cir. 2003).  The denial of a request for permanent injunctive relief in one proceeding is an "issue" for purposes of issue preclusion. *Next Level Communs. L.P. v. DSC Communs. Corp.*, 179 F.3d 244, 255 (5th Cir. 1999).  The same is true of a request for the remedy of ejectment by an Indian Tribe against private persons. *Oneida Tribe of Indians v. AGB Props.*, 02-CV-233 (LEK/DRH) (Lead Case), 2002 U.S. Dist. LEXIS 16538, at *22 (N.D.N.Y. Sep. 5, 2002).

Applying these principles, the question of whether the OMC may pursue (i) an injunction against the Project's operation, (ii) an injunction against the Project's "presence" in Osage County, or (iii) ejectment of the Project, is easy to answer.  The OMC, in the State Case, sought an injunction against the Project's operations and presence in land overlaying the Osage Mineral Estate.  (*See* Exh. A, at ¶ 55; *see also id.* at ¶ 5, Count IV Demand for Relief on p. 17; Prayer for Relief, ¶ d, pp. 19-20).  The District Court of Osage County directly decided that the OMC was not entitled to such an injunction on several grounds, including that the OMC "waited for nearly

- 16 -

three (3) years to seek to raise those challenges, and, in the interim and as established by the face

of the [State Court] Petition . . . , Osage Wind began work on the wind energy project at issue

. . . ." (*Id.*). That finding was made in a journal entry of judgment that on its face stated that it

"this constitutes a final judgment in accordance with" Oklahoma law. (Exh. B, at 5).[8] And the

OMC had a full and fair opportunity to litigate the issue of injunctive relief, as it filed a lengthy

and detail response to Osage Wind's motion to dismiss and participated in a hearing before the

District Court. (*See id.* at 2). The doctrine of issue preclusion—or collateral estoppel—therefore

bars the OMC from seeking injunctive relief against the Project's operations or existence,

including the related remedy of ejectment.

### B. Res Judicata Arising from the State Case Also Bars Injunctive Relief (Including Ejectment).

"The doctrine of res judicata, or claim preclusion, operates to bar the relitigation of issues

by the parties or their privies which were or could have been litigated in an action which resulted

in a final judgment on the merits." *Casa Blanca DE Punta Mita v. Rayment*, No. 19-CV-00188-

GKF-JFJ, 2020 U.S. Dist. LEXIS 31481, at *14 (N.D. Okla. Jan. 30, 2020). The issue of whether

the OMC was entitled to enjoin the Project's operations was, in fact, litigated by the OMC in the

State Case. The judgment in the state case was not based upon some purely technical pleading

defect, but rather was decided on the merits in that the OMC had waited to challenge the Project

until it knew that construction had commenced. And the District Court of Osage County was a

court of competent jurisdiction—it being a court of general jurisdiction with personal jurisdiction

---

[8] Though the Judgment in the State Case is, standing alone, final as to the OMC because it did not
appeal, the Oklahoma Supreme Court affirmed the finding that the request for injunctive relief
failed against the Osage Nation (which should be considered a privy of the OMC, *see* Dkt. # 140,
at ¶¶ 1, 11, 12) on the grounds that it waited to bring its quest for injunctive relief (identical to the
OMC's) until it knew that construction on the Project had commenced. *See supra* n.2.

over all parties.  Moreover, while the Tenth Circuit found commencement of Project construction to be new facts that precluded a finding that the Prior Federal Litigation in *this Court* was res judicata, the same is not true of the State Case.  The face of the Judgment there expressly finds that the OMC knew Project construction was underway, and in fact the Judgment was not entered until after turbine excavation work was underway.  *Res judicata* accordingly applies as well.

## IV.  THE COMPLAINT IN INTERVENTION FAILS TO PLEAD SUFFICIENT FACTS PLAUSIBLY DEMONSTRATING POSSIBLE ENTITLEMENT TO EQUITABLE RELIEF.

An entitlement to equitable relief is subject to *Twombly*'s strictures.  *Hedges v. Anastasio*, No. 09-CV-793-FHM, 2010 WL 5158557, at *2 (N.D. Okla. Dec. 14, 2010); *Jorgensen v. Fed. Home Loan Mortg. Corp.*, No. 2:12-CV-00236-RWS, 2013 WL 3802498, at *3 (N.D. Ga. July 19, 2013); *Vaughn v. Countrywide Home Loans, Inc.*, No. CIV. 09-CV-357-JL, 2009 WL 4726635, at *2 (D.N.H. Dec. 1, 2009); *In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2017 WL 35571, at *13 (S.D. Cal. Jan. 3, 2017) ("Accordingly, the Court concludes that no Plaintiff has adequately alleged an entitlement to injunctive relief."); *Dougherty v. McKee*, No. 16-5052, 2017 WL 2332591, at *1 (D.C. Cir. Feb. 2, 2017) ("Any claims for injunctive relief were properly dismissed as well for failure to state a claim upon which relief can be granted" and citing *Twombly*).  Because the OMC's Complaint in Intervention does not plausibly plead necessary elements for injunctive relief, requests for such relief should be dismissed.

### A.  The OMC Does Not Plead Sufficient Facts Demonstrating Plausible Entitlement to a Permanent Injunction.

"[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). The failure on any one factor is fatal. *Dalkita, Inc. v. Distilling Craft, LLC*, 356 F. Supp. 3d 1125, 1141 (D. Colo. 2018) (citing *Village of Logan v. U.S. Dep't of Interior*, 577 Fed. App'x 760, 766 (10th Cir. 2014) and *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013)). Moreover, especially in the context of a permanent injunction, "[t]he most important factor for the district court to consider is whether the facts indicate a danger of future violations . . . ." *Roe v. Cheyenne Mt. Conference Resort*, 124 F.3d 1221, 1230 (10th Cir. 1997).

### 1. There is No Plausibly Pleaded Irreparable Injury

Injunctions do not remedy past harms. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005). In order to demonstrate irreparable harm, "a plaintiff must demonstrate 'a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages.'" *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)); *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1059 (D.N.M. 2013) (in a case involving alleged improper taking of minerals in alleged violation of that permitted by an oil and gas lease (i.e., a taking for which there allegedly was no lease, finding that "[t]he Court also dismisses the Plaintiffs' claim for injunctive relief, because the Plaintiffs have alleged that the Defendants' conduct will cause them only monetary harm, a harm that is not irreparable."). Here, the precise amount of rock that was "sorted," "crushed," and "exploited . . . as structural support" is knowable (and known) and can be calculated with precision, and there is no plausible allegation that the Defendants are engaged in the specific

conduct that the Tenth Circuit found to be "mining" or that they threaten to do so in the future.[9] Its value can be determined by reference to market sources.  It is not impossible or even difficult to quantify the money damages that will compensate for the wrong found by the Tenth Circuit. There is, therefore, no irreparable harm plausibly pleaded.

Perhaps recognizing the infirmity of its position, the OMC alleges that a "threat[]" to its "ability . . . to exercise its inherent sovereign authority over the Osage Mineral Estate" is an irreparable injury in and of itself.  (Dkt. # 140, at ¶ 60).  Apparently, under the OMC's theory, any alleged impairment of its "sovereignty" axiomatically cannot be "compensated by money damages."  (*See id.*). The OMC is simply incorrect that the equitable powers of this Court in this case are immune from, and unaffected by, federal courts' equitable jurisprudence. The Tenth Circuit has succinctly stated the applicable principle and its application:

> The equitable nature of this suit is of paramount importance. When Congress leaves to the federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights. If Congress had intended to make a drastic departure from the traditions of equity practice, an unequivocal statement of that purpose would have been made. An appeal to the equity jurisdiction of the federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.

*Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1333 (10th Cir. 1982) (internal quotations and citations omitted); *see also Wyandotte Nation v. City of Kansas City*, 200 F. Supp. 2d. 1279, 1284 (D. Kan. 2002); *Rupp v. Omaha Indian Tribe*, 45 F. 3d 1241, 1245 (8th Cir. 1995).

---

[9] It now appears that both the United States and the OMC believe that this case should be resolved by a judicially imposed lease in accordance with 25 C.F.R. § 214.7.  (*See* Dkt. # 141, at 5-6; Dkt. # 147, at 9-11).  Neither of them expressly sought that relief in any pleading proper filed in this case.  And it is not clear by what authority such relief could be imposed.  For example, in the analogous context of oil and gas operations, if a lessor takes minerals without a lease, the remedy is not to impose a lease, but to require the payment of the value of the taken minerals. *See, e.g.*, *Edwards v. Lachman*, 1974 OK 58, ¶ 17, 534 P.2d 670, 674; *Dilworth v. Fortier*, 1964 OK 112, ¶ 27, 405 P.2d 38, 45.  All that notwithstanding, the pursuit of such a theory is flatly inconsistent with any notion that the Project should be enjoined or removed entirely.

Applying traditional federal equitable principles, the Tenth Circuit affirmed the exercise of discretion by the District Court for the District of New Mexico, which had found a violation of the tribal oil and gas leasing regulations.  But equitable principles required withholding equitable lease cancellation: "[i]n light of the virtual impossibility of putting these parties back in status quo after years of exploration and development, we do not think the district court abused its equitable discretion in refusing to grant outright cancellation." *Andrus*, 687 F.2d at 1333.  Thus, it is simply not the case that an alleged infringement of the OMC's "sovereignty" is a *per se* irreparable injury. Since the injury at issue is of the kind that is traditionally and fully compensated by money damages, there is no irreparable injury in this case.

   2.  *As a Matter of Law, the OMC has an Adequate Remedy at Law.*

   ""Where there is a full, complete, and adequate remedy at law through recovery of calculable money damages, the injury is not irreparable and equity will not apply the extraordinary remedy of injunction." *SizeWise Rentals, Inc. v. Mediq/PRN Life Support Servs.*, No. 00-3051, 2000 U.S. App. LEXIS 11859, at *13-14 (10th Cir. May 26, 2000); *Tilton v. Capital Cities/ABC*, 827 F. Supp. 674, 682 (N.D. Okla. 1993) ("[M]oney damages are an adequate remedy at law."). Here, the presence of the Project is not unlawful, and the only reason that any of the Defendants were found to have engaged in conduct that ran afoul of the applicable regulations is only because of Osage Wind's entire "operation" of "*sort[ing]* the rocks, *crush[ing]* the rocks into smaller pieces, and then *exploit[ing]* the crushed rocks as structural support for each wind turbine" that amounted to mining.  *See Osage Wind, LLC*, 871 F.3d at 1091 (concluding that "merely encountering or incidentally disrupting mineral materials"—in any amount—would not constitute mining).  The amount of rock subject to that operation—and its value—are readily ascertainable. Especially since the Tenth Circuit found that other construction activities were *not* mining (and

did not find that the Project's mere presence was mining or required a lease), the injury arising from that conduct is fully compensable by money damages.[10]

### B. The OMC Does Not Plead Sufficient Facts Demonstrating Entitlement to an Accounting.

"A claim for an equitable accounting is sufficient if it alleges '(1) a confidential relationship; (2) the defendant had control over another's property and records concerning the property; (3) after a demand for an accounting defendant did not account or return the property; and (4) there was no adequate remedy at law.'" *I.P.I.C., GSP, S.L. v. Ruhrpumpen, Inc.*, No. 08–CV–0510–CVE–PJC, 2008 WL 5122697, at \*4 (N.D. Okla. Dec. 4, 2008) (quoting *Howell Petroleum Corp. v. Leban Oil Corp.*, 976 F.2d 614, 620 (10th Cir. 1992));[11] *see also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) ("The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, as we pointed out in *Beacon Theatres*, the absence of an adequate remedy at law."). "In addition, a plaintiff must show that a balance is due in order to establish a right to an accounting." *Chieftain Royalty Co. v. Dominion Oklahoma Texas Expl. & Prod., Inc.*, No. CIV-11-344-R, 2011 WL 9527717, at \*6 (W.D. Okla. July 14, 2011). A claim for conversion provides an adequate remedy at law, *Boyer v. Cline*, No. 85-1562-C, 1989 WL 9338, at \*1 (D. Kan. Jan. 17, 1989), as does a claim for trespass, *Stanley v. Gallegos*, No. CV 11-1108 GBW/JHR, 2018 WL 3801247, at \*12 (D.N.M. Aug. 9, 2018) ("The

---

[10] To the extent the OMC is attempting to declare the presence of the Project is an irreparable injury, this is precisely the kind of conclusory declaration *Twombly* forbids. As explained above, the mere presence of the Project is not unlawful under the Tenth Circuit's Opinion, and it cannot amount to an irreparable injury.

[11] These decisions apply Oklahoma law. This is consistent with Tenth Circuit precedent. *See, e.g.*, *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 965 (10th Cir. 2019) ("Because we lack a federal body of trespass law to protect the Allottees' federal property interests, we must borrow state law to the extent it comports with federal policy."). *Davilla* went on to apply Oklahoma law since that is where the subject property was located. The Defendants follow that course here.

availability of an adequate remedy at law [in the form of a trespass claim] forecloses equitable relief."). This Court so found in *Quarles v. Little River Energy Co.*, No. 00-CV-913-GKF-PJC, 2008 WL 185715, at *1 (N.D. Okla. Jan. 18, 2008).

The Complaint in Intervention pleads no facts that support any of the elements of an accounting. Most principally, the OMC has an adequate remedy at law in the form of money damages. The Complaint in Intervention asserts trespass and conversion claims, and money damages premised on the value of minerals "mined"—consistent with the Tenth Circuit's Opinion—are available for those claims. There is no confidential relationship between the OMC and any of the Defendants, and the OMC has never made, and does not allege it made, a demand for an accounting or for the return of property. The OMC accordingly fails to plead sufficient facts demonstrating plausible entitlement to an accounting, and that claim should be dismissed.[12]

### C. The OMC Does Not Plead Sufficient Facts Demonstrating Entitlement to Disgorgement.

The OMC's attempt to pursue disgorgement also fails. Under Oklahoma law, "[d]isgorgement is . . . an equitable remedy." *Hitch Enterprises, Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1258 (W.D. Okla. 2012). In Oklahoma, "[t]he long-standing rule [ ] is that a plaintiff may not pursue an equitable remedy when the plaintiff has an adequate remedy at law." *Krug v. Helmerich & Payne, Inc.*, 2013 OK 104, ¶ 34, 320 P.3d 1012, 1022. In *Krug*, the Oklahoma Supreme Court reversed a $119,522,750.00 disgorgement award because "a plaintiff may not pursue an equitable remedy when the plaintiff has an adequate remedy at law." *Id.* at

---

[12] To the extent that the OMC is attempting to pursue an accounting at law—which is "is a court's enforcement of a *legal duty to account* created by contract and fiduciary status," *Margaret Blair Tr. v. Blair*, 2016 OK CIV APP 47, ¶ 17, 378 P.3d 65, 72—such an effort is impermissible for an even more elementary reason: there is no contract or fiduciary relationship between the parties that would give rise to such a duty, and clearly none is pleaded (nor could it be).

¶ 43, 320 P.3d at 1023.  In *Schafer v. Centerpoint Energy Oklahoma Gas*, No. 17-CV-365-GKF-FHM, 2018 WL 10140171, at \*5 (N.D. Okla. May 21, 2018), this Court applied this principle and found that a plaintiff's claims for, among other things, trespass provided an adequate remedy at law that precluded a claim for disgorgement.  Even if it were not precluded by the Tenth Circuit's decision (and it is), disgorgement still would be unavailable here as a matter of law because money damages are adequate to remedy any conversion or trespass.[13]

The Defendants believe that the OMC may claim that *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959 (10th Cir. 2019), supports the remedy of disgorgement.  Not so.  The Tenth Circuit's decision in *Davilla* does not mention the remedy of disgorgement—not once, nor does the *Davilla* district court's decision which was reversed.  *See generally Davilla v. Enable Midstream Partners, L.P.*, 247 F. Supp. 3d 1233 (W.D. Okla. 2017).  Ironically enough, the Tenth Circuit reversed the district court for failing to engage in "a full weighing of the equities" prior to issuing an injunction ordering a pipeline company to remove a pipeline from land allotted to individual tribal members in Oklahoma by Congress.  913 F.3d at 971.  But suffice it to say, nothing in *Davilla* counsels disgorgement in this case.

## V.   BECAUSE THE COMPLAINT IN INTERVENTION DOES NOT (AND CANNOT) PLAUSIBLY ALLEGE THAT THE CONDUCT THE TENTH CIRCUIT FOUND TO BE UNLAWFUL IS ONGOING, THE CLAIM FOR "CONTINUING TRESPASS" FAILS.

A claim for continuing trespass—as its name implies—"involves a continuing or repeated injury."  *United States v. Hess*, 194 F.3d 1164, 1176 (10th Cir. 1999); *see also Fairlawn Cemetery*

---

[13] To the extent the OMC is attempting to pursue a separate claim for unjust enrichment, which is not readily apparent, it too would fail because the OMC does not plead any of the elements of a claim for unjust enrichment, *see Horton v. Bank of Am., N.A.*, 189 F. Supp. 3d 1286, 1289-1290 (N.D. Okla. 2016), including most principally lack of an adequate remedy at law.  This Court, in *Horton*, dismissed such a claim due to **the availability** of a legal claim for money damages, which forecloses any assertion that the issue cannot be resolved in the current procedural posture.

*Ass'n v. First Presbyterian Church*, 1972 OK 66, ¶ 15, 496 P.2d 1185, 1187 (continuing trespass requires conduct that "has continued . . . [and] appears will continue"). The only conduct of any Defendant that can possibly amount to a trespass of any variant is Osage Wind's entire "operation" of "*sort[ing]* the rocks, *crush[ing]* the rocks into smaller pieces, and then *exploit[ing]* the crushed rocks as structural support for each wind turbine" that amounted to mining. *See Osage Wind, LLC*, 871 F.3d at 1091. But that "operation" is not continuing, and the Complaint in Intervention does not plausibly plead any facts suggesting that it is (nor could it). Any theory of continuing wrong of any kind can only be based upon the theory that the Project's mere presence is unlawful— something that the Tenth Circuit rejected. Thus, there can be no claim on continuing trespass in this case, and that claim should be dismissed.

CONCLUSION

The OMC's Complaint in Intervention seeks to expand the remedial relief at issue in this case dramatically beyond the narrow damages remedy specifically contemplated by the Tenth Circuit's Opinion (and subsequent mandate). Further, the Complaint in Intervention's attempts to invoke the Court's equitable jurisdiction are all impermissible, because (i) the OMC has already sought to enjoin the Project's existence in the State Case and the Court there rejected its efforts to enjoin the Project or prohibit its presence, (ii) the injury at issue is not irreparable, and (iii) the damages remedy contemplated by the Tenth Circuit is in any event an adequate remedy at law. Finally, there can be no claim for continuing trespass because the only conduct that the Tenth Circuit found to be unlawful is not continuing and the OMC does not plead that it is.

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER
JETER BARNETT & RAY, P.C.**
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade** (admitted *pro hac vice*)
**Sarah M. Stevenson** (admitted *pro hac vice*)
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Abi Laura Fain
David McCullough
Jeffrey S Rasmussen
Mary Kathryn Nagle
Wilson Kirk Pipestem

The following non-ECF registrants have been served by First Class United States mail:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*

/s/ Ryan A. Ray

**Ryan A. Ray**