**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| OSAGE MINERALS COUNCIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-704-GKF-JFJ |
| | ) |
| (1) OSAGE WIND, LLC; | ) |
| (2) ENEL KANSAS, LLC; and | ) |
| (3) ENEL GREEN POWER NORTH AMERICA, INC., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS OSAGE WIND, LLC, ENEL KANSAS, LLC, AND ENEL GREEN POWER NORTH AMERICA, INC.'S MOTION TO STRIKE ALLEGATIONS IN OSAGE MINERALS COUNCIL'S COMPLAINT IN INTERVENTION (Dkt. # 140)**

Defendants Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively, for purposes of this motion, "Defendants"), respectfully submit this Motion to Strike Allegations in Plaintiff Osage Minerals Council's ("OMC") Complaint in Intervention (Dkt. # 140) (the "Complaint"). The Complaint contains several allegations that bear no connection to the facts or issues properly before the Court, are contrary to established Tenth Circuit case law, and misidentify or mislead the reader as to the current parties to this case. In addition to their immateriality, these allegations will prejudice Defendants by giving rise to burdensome and needless discovery and motion practice that would not meaningfully advance this litigation. Accordingly, for the reasons stated below, under Federal Rule of Civil Procedure 12(f), the Court should strike the allegations of Paragraphs 10 (in part), 19-21, 62, 69-73, and 105 from the OMC's Complaint, along with any reference to the "Osage Reservation," ordering that it be replaced with "Osage County."

## ARGUMENT AND AUTHORITIES

**I. GOVERNING STANDARD**

Federal Rule of Civil Procedure 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Immaterial" matters are those which have "no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material." *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 978 (N.D. Okla. 2017) (quoting 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1382 (3d. ed. 2004)). "Impertinent" matters are "statements that do not pertain, and are not necessary, to the issues in question." 5C Wright & Miller, *supra*, § 1382. "[T]here is considerable overlap between the concepts of "impertinent" and "immaterial" matter." *Id*. "Scandalous" matters include "any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003).

Although expressly provided for in Rule 12(f), it is not uncommon for a reported decisions to recite that motions to strike are generally disfavored. *See, e.g.*, *SFF-TIR, LLC*, 250 F. Supp. 3d at 977-78. Nevertheless, the court will grant a motion to strike if (1) "the challenged allegations have no possible relation or logical connection to the subject matter of the controversy" and (2) the challenged allegations "may cause some form of significant prejudice to one or more of the parties to the action." *Kirby v. Tulsa Cmty. Coll.*, Case No. 17-CV-00224-TCK-FHM, 2018 WL 2436407, at *1 (N.D. Okla. May 30, 2018). Importantly, in this analysis, "[p]rejudice includes the increased time and expense required to conduct discovery or prepare for trial on an irrelevant contention." *Id*. In addition, the Court may exercise its "considerable discretion" to grant a motion

to strike "regardless of whether the moving party has demonstrated that the allegations contained in the pleading violate Rule 12(f)." *Id.* As set forth below, this Court should strike allegations of the OMC's Complaint (Dkt. # 140) which bear no connection to the subject matter of this case and, if not stricken, will inevitably lead to burdensome, costly, and unproductive discovery and motion practice.

**II. THE OMC'S ALLEGATIONS DIRECTED AT NON-PARTY ENTITIES ARE IMMATERIAL AND IMPERTINENT AND WILL PREJUDICE DEFENDANTS, AND THE COURT, BY LEADING TO COSTLY, UNPRODUCTIVE DISCOVERY AND MOTION PRACTICE.**

The OMC's Complaint contains numerous allegations directed at corporate entities that have no connection to the Osage Wind wind energy development ("Project") that is the subject of this case. Specifically, the Complaint references "Enel Green Power International, BV," "Enel Green Power, SpA," "Enel SpA," "Enel Green Power International, BVA," "The Enel Group," and "their subsidiaries in other countries." Complaint, ¶¶ 19-21, 73. The OMC does not allege any of these entities were involved in the construction of the Project, the planning for such construction, or the alleged excavation of minerals from the "Osage Mineral Estate." Instead, the OMC, first, notes three such unrelated, uninvolved entities are "publicly-traded Italian corporation[s]," Complaint, ¶¶ 19-21, and, then, more troubling,

> Enel Green Power SpA, Enel Green Power International, BVA, and their subsidiaries in other countries have exhibited a pattern of extracting resources from Indigenous communities without their consent, especially in Central and South America. Indigenous communities affected by Enel's wind development in their regions—such as the Isthmus of Tehuantepec—have raised complaints similar to those raised by the OMC and BIA in the current action. Specifically, international Indigenous communities have issued complaints against **Defendants** Enel Green Power SpA, Enel Green Power International, BVA, and their subsidiaries, concerning their lack of formal consultation processes, illegal land leasing contracts, and environmental impacts on construction and operation phases.

3

Complaint, ¶ 21 (emphasis added).[1]

The allegations in Paragraphs 19- 21, and 69-73 regarding entities that have no relationship to the Project, and were not named as defendants by the OMC (or its predecessor plaintiff, the United States), should be stricken.

First, the allegations directed at the unrelated Enel entities referenced in Paragraphs 19-21 are immaterial and impertinent, because the entities bear no relationship to the subject matter of this case: the Project near Burbank, Oklahoma. Indeed, the OMC does not attempt to assert that these entities were involved in the planning or construction of the Project. Instead, the OMC makes the murky allegation that the unrelated entities have "exhibited a pattern of extracting resources from Indigenous communities without their consent." Complaint, ¶ 21. Courts have granted motions to strike in cases involving similar allegations of unrelated historical misconduct or that resulted in litigation. *See, e.g.*, *Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.*, 657 F. Supp. 136 (E.D.N.Y. 1987). In *Rieter's Beer Distributors*, for example, an antitrust claim was filed against a brewing company via a complaint that included allegations about the company's previous litigation. *Id*. at 145 (complaint alleged that brewing company had "been the subject of considerable other litigation revealing a pattern of disregard for the antitrust laws."). Recognizing that such allegations of historical misconduct and other litigations had "no bearing on the issues in dispute" and that they were prejudicial to the brewing company, the court struck the allegations, *id*. at 144., concluding, "plaintiff has not sufficiently connected these past cases,

---

[1] The OMC has disclaimed any intention, by Paragraph 21's reference to "Defendants Enel Green Power SpA, Enel Green Power International, BVA," to name them as parties defendant: "Defendants are . . . mistaken in their contention that the OMC has attempted to add new parties to the action. . . . Defendants cannot be so ignorant as to think . . . [the reference to related entities] renders them named defendants in the action." OMC Reply in Support of Motion to Intervene, Dkt. # 127 at 7.

4

or the factual settings therein, to the present action to render the references thereto relevant and immune from a motion to strike." *Id*. at 145. This reasoning has supported granting motions to strike in numerous cases. *See, e.g.*, *MC1 Healthcare, Inc. v. United Health Group, Inc.*, No. 3:17-CV-01909 (KAD), 2019 WL 2015949, at *11 (D. Conn. May 7, 2019) ("[T]he . . . [previous unrelated] litigation is irrelevant to this proceeding. As such, its only intended effect can be to prejudice United and therefore it is stricken."); *Brown v. ABM Industries, Inc.*, No. 15 C 6729, 2015 WL 7731946, at *6 (N.D. Ill. Dec. 1, 2015) ("In contrast, Plaintiff's allegations regarding the minutiae of similar lawsuits against ABM Industries and its subsidiaries are 'unnecessary clutter.'"), *quoting Heller Fin., Inc. v. Midwhey Powde*r, 883 F.2d 1286, 1294 (7th Cir. 1989) (if "motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay" litigation); *see also Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994) ("Superfluous historical allegations are a proper subject of a motion to strike."). Striking these allegations is even more critical here, because not only are the allegations about unrelated past acts, they are about unrelated past acts of non-parties to this litigation (that are alleged to have occurred years ago in another nation).

Second, if all such allegations against the unrelated entities are not stricken, then the parties will need to engage in discovery regarding the allegations. Facts related to those allegations would not be material to this litigation and will prejudice Defendants in burden and cost—in a case in which it already appears defendant Osage Wind, LLC's production may reach 30,000 documents. For example, the OMC has alleged that the unrelated entities "have exhibited a pattern of extracting resources from Indigenous communities without their consent, especially in Central and South America." Complaint, ¶ 21. For the OMC to substantiate this allegation—or for Defendants to refute it—could potentially require depositions, subpoenas, and other discovery measures directed

5

to non-parties in Italy, Mexico, and other countries, and could inject issues of the interpretation and application of international law (of perhaps multiple countries) into this litigation.[2] The costs associated with conducting such discovery and preparing a defense to these allegations constitutes prejudice that outweighs any possible materiality of the allegations, and weigh in favor of granting a motion to strike. *See Kirby*, 2018 WL 2436407, at *1. And, most importantly, none of these complicated and costly consequences of the OMC's allegations would influence the OMC's ability to support its stated causes of action or Defendants' ability to defend themselves.

Third, painting with the same broad brush, the Complaint makes allegations about Defendants'—and their affiliates—financial information that bear no relationship to the claims in this case. Those allegations include the 2015 *projected* revenue for the Project, Complaint ¶ 69; 2017 projected revenue according to a local school district relating to the Project *and* a "Mustang Run," a separate wind energy development project allegedly held by TradeWind Energy, another non-party to this case, Complaint, ¶ 70; allegations regarding the tax consequences of tax reforms enacted into law under President Trump, Complaint, ¶ 71; allegations regarding defendant Enel Green Power North America's total Oklahoma projects, Complaint, ¶ 72; and allegations regarding revenue for the undefined "Enel Group" in the United States and Canada, Complaint, ¶ 73. Allegations regarding financial projections or results from unrelated activities, and activities conducted by non-parties, are plainly not material to the claims framed by the Complaint. Even if, contrary to Defendants' contentions presented by its Motion to Dismiss the Osage Minerals Council's Complaint in Intervention, *See* Dkt. # 150 at 22-25, Project financial performance were material to claims under the Tenth Circuit's Opinion for damage for excavation, crushing, and use

---

[2] To the extent the OMC contends discovery on these allegations will not be required, then this contention only supports Defendants' argument that these allegations are immaterial and impertinent in this case.

of minerals, the allegation of Paragraph 69 regarding *projected* 2015 revenue from the Osage Wind project is too far afield from claims even arguably framed by the Complaint

The Court should strike the OMC's allegations in Paragraphs 19, 20, and 21 regarding the unrelated Enel entities, and the allegations of and Paragraphs 69-73, to spare the parties, and the Court, from burdensome and needless discovery and motion practice and to remove prejudicial and immaterial accusations from the case.

### III. THE COURT SHOULD STRIKE ALLEGATIONS OF AN OSAGE "RESERVATION."

The Complaint repeatedly alleges its claims pertain to the "Osage Reservation," which it equates to Osage County, Oklahoma, the pre-1906 territorial boundaries of the Osage Nation. *See* Complaint, ¶¶ 2, 3, 5, 9, 23, 24, 26, and 27.[3] Exhibit 1, attached, identifies the specific text Defendants request the Court strike on each cited page. The Court should strike the words "Osage Reservation" wherever it appears in the Complaint and order it be replaced by the words "Osage County,"[4] for three reasons: (1) the Tenth Circuit decision in *Osage Nation v. Irby*, 597 F.3d 1117, 1123-1125, 1127 (10th Cir. 2010), *cert. denied*, 564 U.S. 1046 (2011) ("*Irby*"), squarely and conclusively determined, as a result of the Osage Allotment Act, ch. 3572, 34 Stat. 539 (1906), and the Oklahoma Enabling Act, ch. 3335, 34 Stat. 267 (1906)**,** the former Osage Reservation was "disestablished by Congress;" (2) the OMC, a constituent agency of the Osage Nation, the plaintiff-appellant in *Irby,* is barred by the collateral estoppel effect of *Irby* from asserting Osage

---

[3] As the Complaint refers alternatively, and repeatedly, to the "Osage Mineral Estate," *see e.g.,* Complaint, *passim, e.g.* ¶¶ 3, 10-12, the reference to "Osage Reservation" plainly asserts Osage County continues to enjoy the status of an Indian "reservation." It does not.

[4] The Complaint recognizes the alleged "Reservation" is "contiguous with Osage County, Oklahoma." Complaint, ¶ 27.

7

County remains a "reservation" of the Osage Nation, and (3) judicial economy counsels against allowing OMC to inject a false, previously determined, issue into this litigation.

### A. *Irby* squarely determined the Osage "Reservation" was disestablished.

The Osage Nation claimed in *Irby* income of tribal members "who are employed and reside" in Osage County "are exempt from paying state income tax." *Irby*, 597. F.3d at 1120. Under applicable Supreme Court precedent, "[t]he pivotal issue . . . [was] whether the Nation's reservation has been disestablished." *Id.* The Tenth Circuit's review of the Osage Allotment Act, and Oklahoma Enabling Act, together with surrounding circumstances and subsequent history, compelled affirmance of Judge Payne's decision, *see* 597 F. Supp. 2d 1250, that the Osage Nation was disestablished.

### B. Collateral estoppel forecloses OMC's advancing issues determined adversely to the Osage Nation in *Irby*.

The OMC is collaterally estopped from contending the conduct involved occurred within the Osage "Reservation." Collateral estoppel bars the contention here because *Irby* determined the Osage Reservation was disestablished as of 1906 and "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, *or in privity with a party*, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000), (quoting *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation,* 975 F.2d 683, 687 (10th Cir.1992)) (emphasis added, citations omitted).

Each of these conditions unquestionably apply: (1) *Irby* decided the identical issue, whether the Osage "Reservation" continues to exist; (2) *Irby* was fully adjudicated, before Judge Payne and in the Tenth Circuit; (3) OMC undisputedly is in privity with the Osage Nation. *See* Complaint ¶¶

1, 11, 12; and (4) continued reservation status was an essential, indeed "the pivotal" element of the *Irby* litigation the Osage Nation filed to defeat State of Oklahoma taxation of its members. *Irby,* 597. F.3d at 1120.

      **C.**    **It would waste this Court's, and the Parties', resources to re-litigate the issue.**

The State and the Nation devoted substantial resources over a two-year period, including marshalling testimony of expert witnesses, Osage County officials, and tribal officials to inform Judge Payne and the Tenth Circuit of the history and law applicable. For whatever reason the OMC seeks to assert continued reservation status here, the day in court for that issue, for the Nation and its constituent agencies, has come and gone. The Court should strike the words "Osage Reservation" in the Complaint and replace them with "Osage County."

**IV.    THE OMC'S ALLEGATIONS REGARDING PUBLIC HARMS ASSOCIATED WITH WIND ENERGY GENERATION ARE IMMATERIAL AND WILL PREJUDICE DEFENDANTS.**

The OMC's Complaint also alleges, generically, that "serious harm[s]" are associated with wind energy generation, and that "wind farms . . . may produce enough transient voltages to sufficiently increase the rates of cancer, diabetes, heart disease, and attention-deficit disorder." Complaint, ¶¶ 62, 105.  This allegation, which the OMC purportedly makes to illustrate that "[c]ompliance with federal law serves the public interest," *id.*, should be stricken because it is immaterial and inflammatory.  The allegation is immaterial because generic alleged health risks of wind energy generation have no possible bearing on the appropriate remedies for the "sort[ing]," "crush[ing]," and "exloit[ing] [of] the crushed rocks" at issue here. *See United States v. Osage Wind, LLC*, 871 F.3d 1078, 1090 (10th Cir. 2017) (Dkt # 78 at 23-24). *See* Dkt. # 150 at 18-25, 25. Neither the United States' First Amended Complaint (or its previously proposed Second Amended Complaint) nor the Tenth Circuit's Opinion reference any such considerations, and they are simply not material to the damage and remedial issues framed by the law of the case on remand.

Thus, it has "no essential or important relationship" to the OMC's claims in this case. *SFF-TIR, LLC*, 250 F.Supp.3d at 978. Further, the mere allegation that the Project could cause serious medical issues, such as cancer and diabetes, is highly inflammatory and would unquestionably lead to extensive, and expensive, discovery, retention of expert witnesses, and motion practice over a non-issue.

The OMC's effort to paint these allegations as material to "public interest" considerations applicable to equitable relief does not withstand scrutiny because they bear no relationship to the extraction, crushing, and re-use of mineral material involved here. The OMC has been aware of the Project since when it was in planning stages, 2011 at the latest. If public health were a concern it could and should have been addressed at much earlier stages, such as *The Osage Nation and Osage Minerals Council v. the Osage County Board of County Commissioners, et al.*, District Court of Osage County Case No. CV-2014-41 (the "State Case"), a case in which the OMC (and the Nation) sought to enjoin the Project's construction and prevent its alleged invasion of the Osage Mineral Estate. (*See* Dkt. # 150, at 16-18).[5] Such hypothetical effects bear no materiality to the present, post-extraction, post-construction action, and are merely inflammatory at this stage, seeking only to inject extraneous issues to inflame prejudice.[6] They are a proper subject of a

---

[5] As the Defendants have there set forth, the State Case is entirely preclusive of the OMC's ability to seek an injunction against the Project's operations or "presence," both of which it sought to prevent in the State Case and the court denied on the merits. Though the OMC did not appeal, the Nation did, and the Oklahoma Supreme Court affirmed the dismissal of all claims asserted in the State Case. *Osage Nation v. Bd. of Comm'rs*, 2017 OK 34, ¶ 43, 394 P.3d 1224, 1239.

[6] Moreover, the United States Department of Energy has, upon conducting its own extensive study and citing detailed studies of other governmental agencies, concluded that "[t]here is no statistically significant evidence of human health impacts from wind turbines." United States Department of Energy, Wind Energy Technologies Office, *Wind Energy Benefits Slideshow*, at Slide 4, *available at* https://windexchange.energy.gov/slideshows (Wind Energy Impacts Slideshow) (last visited May 6, 2020).

motion to strike. *See Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 68 (E.D.N.Y. 2011) (striking allegations that "serve[] no purpose other than to inflame the reader"). Accordingly, the Court should strike Paragraphs 62 and 105 of the Complaint.

V. **THE OMC'S REFERENCE TO A PARTY NO LONGER IN THIS CASE SHOULD BE STRICKEN.**

Finally, Paragraph 10 of the Complaint contains two sentences that have no continuing materiality to the case: the OMC asserts that "Plaintiff United States is authorized to litigate this case in order to fulfill its fiduciary responsibility to protect tribal assets," And, at the end of the same paragraph, "[t]he United States brings this lawsuit in its capacity as trustee of the Osage Mineral Estate, as well as to enforce compliance with federal law."[7] Unless the Court, over the Defendants' authority-supported objections, *see* Dkt. # 148, grants the United States' Motion for Reconsideration, Dkt. # 141, the identified sentences should be stricken because the United States is no longer a party to this action. *See* Order Denying United States' Motion for Leave to File a Second Amended Complaint (Dkt. # 139). Thus, allegations regarding "Plaintiff United States" are both factually incorrect and immaterial to the remaining issues in dispute. *See Roberts v. Sony Corp.*, No. 2:04-CV-673 TS, 2006 WL 213706, at *4 (D. Utah Jan. 27, 2006) ("Paragraphs 47 and 48 are immaterial since they address Defendants which are no longer parties to this action."). This Court should therefore strike the quoted allegations of Paragraph 10 of the Complaint.

## CONCLUSION

The OMC's Complaint in Intervention seeks to inject into this litigation allegations that are immaterial and impertinent, contrary to established Tenth Circuit law, and inaccurate with respect to the current parties in this case. Those allegations will prejudice Defendants by giving

---

[7] Defendants recognize other allegations included within Paragraph 10 are arguably material to the allegations of Counts I and II of the Complaint.

11

rise to burdensome and needless discovery and motion practice and unnecessarily burden the Court with the motions necessary to address the resulting challenges. To avoid this unnecessary prejudice, Defendants respectfully request the Court, pursuant to FED. R. CIV. P. 12(f), strike Paragraphs 10 (in part), 19-21, 62, 69-73, and 105 from the OMC's Complaint, along with any reference to the "Osage Reservation," ordering that it be replaced with "Osage County."

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER**
**JETER BARNETT & RAY, P.C.**
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade** (admitted *pro hac vice*)
**Sarah M. Stevenson** (admitted *pro hac vice*)
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

## CERTIFICATE OF SERVICE

      I hereby certify that on May 6, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Abi Laura Fain
David McCullough
Jeffrey S Rasmussen
Mary Kathryn Nagle
Wilson Kirk Pipestem


The following non-ECF registrants have been served by First Class United States mail:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


      /s/ Ryan A. Ray
      **Ryan A. Ray**