**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| (2) OSAGE MINERALS COUNCIL | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (1) OSAGE WIND, LLC; | ) | |
| (2) ENEL KANSAS, LLC; and | ) | |
| (3) ENEL GREEN POWER | ) | |
| NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**OSAGE MINERALS COUNCIL'S OPPOSITION TO DEFENDANTS' PARTIAL
MOTION TO DISMISS THE OSAGE MINERALS COUNCIL'S
<u>COMPLAINT IN INTERVENTION</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii-iv

ARGUMENT ......................................................................................................................1

I.   INTRODUCTION ...........................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...............................................................2

III. STANDARD OF REVIEW AND GOVERNING LAW ..........................................................6

IV.  ARGUMENT ...............................................................................................................9

    a.   The Tenth Circuit's Opinion Does Not Limit The OMC's Recovery ...............................9

    b.   The OMC's Requests For Equitable Relief Are Not Barred By Res Judicata or Collateral Estoppel ...............................................................................................................11

    c.   The OMC's Complaint In Intervention Pleads Facts Sufficient To Demonstrate Irreparably Injury And The Absence Of An Adequate Remedy At Law ........................15

    d.   The OMC's Complaint In Intervention Pleads Facts Sufficient To Establish Entitlement To An Accounting ...................................................................................................17

    e.   The OMC's Complaint In Intervention Pleads Facts Sufficient To Establish Entitlement To A Disgorgement Of Defendants' Profits ....................................................................19

    f.   The OMC's Complaint In Intervention Pleads Facts Sufficient To Establish A Claim For Continuing Trespass .................................................................................................20

    g.   Defendants Acted In Bad Faith ....................................................................................24

V.   CONCLUSION ...........................................................................................................25

TABLE OF AUTHORITIES

<u>**Cases**</u>

*Bell Atl. Corp. v. Twombly,*
        550 U.S. 544, 555 (2007)..................................................................................3, 6, 7

*Burke v. Glanz*
        292 F. Supp. 3d 1235, 1244 (N.D. Okla. 2017) ........................................... 3-6

*Cell Energy, LLC v. Devon Energy Production Comp., L.P.*
        No. 16-188 GJF/LAM, 2016 WL 9408580 (D.N.M. 2016) ...........................18

*County of Oneida v. Oneida Indian Nation*
        470 U.S. 226 (1985)..............................................................................................8

*Dairy Queen, Inc. v. Wood*
        369 U.S. 469 (1962) ...................................................................................... 17-18

*Davilla v. Enable Midstream Partners L.P*
        913 F.3d 959  (10th Cir. 2019)  ....................................................7, 8, 19, 21

*D.C. v. U.S. Dep't of Agric.*
        No. CV 20-119 (BAH), 2020 WL 1236657 (D.D.C. Mar. 13, 2020) .............22

*Dutton v. City of Midwest City*
        2015 OK 51, ¶ 40, 353 P.3d 532, 551 ..............................................................19

*Guaranty Trust Co. of N.Y. v. York*
        326 U.S. 99, 105 (1945) .....................................................................................20

*Hibben v. Okla. ex rel. Dep't of Veterans Affairs*
        No. 16-cv-111-TLW, 2017 WL 1239146 (N.D. Okla. Mar. 31, 2017) .............6

*Jicarilla Apache Tribe v. Andrus*
        687 F.2d 1324 (10th Cir. 1982)  .................................................................7, 16

*Krug v. Helmerich & Payne, Inc*
        2013 OK 104, 320 P.3d 1012, *as corrected* (Feb. 24, 2014)...........................19

*Lexington Ins. Co. v. Precision Drilling Co., L.P.*
        951 F.3d 1185 (10th Cir. 2020)  .......................................................................11

*Marsh v. Brooks*
        49 U.S. 223 (1850)................................................................................................8

*McKinney v. Gannett Co.*
        817 F.2d 659 (10th Cir. 1987)  ...........................................................................7

*Okla. ex rel. Wilson v. Blankenship*
    447 F.2d 687 (10th Cir. 1971) ...................................................................................13

*Olson v. Nelnet, Inc.*
    392 F. Supp. 3d. 1006 (D. Neb. 2019) .......................................................................18

*Osage Nation v. Bd. of Commissioners of Osage Cty.*
    2017 OK 34, 394 P.3d 1224 ...................................................................................... 3-4

*Prairie Band of Potawatomi Indians v. Pierce*
    253 F.3d 1234 (10th Cir. 2001) .......................................................................16, 17, 22

*Roberts v. Sears, Roebuck & Co.*
    573 F.2d 976 (7th Cir. 1978) .....................................................................................18

*Robertson v. Maney*
    1946 OK 59, 166 P.2d 106 .........................................................................................19

*Schafer, Tr. of Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v.*
*Centerpoint Energy Oklahoma Gas,*
    No. 17-CV-365-GKF-FHM, 2018 WL 10140171, at *1 (N.D. Okla. May 21,
    2018)*, appeal dismissed*, 770 F. App'x 915 *(10th Cir. 2019)* ......................... 20

*Seneca-Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson*
    874 F.2d 709 (10th Cir. 1989) .......................................................................15, 16, 21, 22

*Stephenson Oil Co. v. Citgo Petrol. Corp.*
    No. 08-CV-380-TCK-TLW, 2010 WL 2998604, (N.D. Okla. July 28, 2010) ..................6

*Thompson v. United States*
    308 F.2d 628 (9th Cir.1962) .......................................................................................23

*United States v. Botefuhr*
    309 F.3d 1263 (10th Cir. 2002) ...................................................................12, 13, 14, 15

*United States v. Hess*
    194 F.3d 1164 (10th Cir. 1999) .................................................................................23

*United States v. Johnson*
    921 F.3d 991 (11th Cir. 2019) ...................................................................................10

*United States v. Osage Wind, LLC*
    871 F.3d 1078 (10th Cir. 2017) .............................................2, 3, 9, 10, 11, 12, 13, 17, 20

*United States v. Pend Oreille Pub. Util. Dist. No. 1*
    28 F.3d 1544 (9th Cir. 1994) ..................................................................................8, 20

*United States v. Santa Fe Pacific R.R.*
    314 U.S. 339 (1941) ....................................................................................................8

*United States v. Southern Pacific Transp. Co.*
    543 F.2d 676 (9th Cir. 1976) ........................................................................8

*United States v. Torlaw Realty, Inc.*
    483 F. Supp. 2d 967 (C.D. Cal. 2007), *aff'd*, 348 F. App'x 213 (9th Cir. 2009) ..........8, 20

*United States v. West*
    646 F.3d 745 (10th Cir. 2011) .....................................................................11

*Valley View Angus Ranch, Inc. v. Duke Energy Field Services, Inc*
    497 F.3d 1096 (10th Cir. 2007) ...................................................................12

*Wilkes v. Wyoming Dep't of Emp't Div. of Labor Standards*
    314 F.3d 501 (10th Cir. 2002) .....................................................................12

*Wyandotte Nation v. Sebelius*
    443 F.3d 1247 (10th Cir. 2006) ............................................................... 16-17

*Yingst v. Hudson Ins. Co.*
    No. 10-CV-0115-CVE-TLW, 2010 WL 2106407 (N.D. Okla. May 25, 2010) ............. 6-7

## **Statutes**

Act of June 28, 1906, ch. 3572, § 3, 34 Stat. 539 .......................................................16

## **Federal Regulations**

25 C.F.R. § 211.3 ...................................................................................2, 5, 10, 14, 24

25 C.F.R. § 214.7 .....................................................2, 3, 4, 5, 10, 11, 13, 14, 15, 24

## **Court Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................6

iv

Intervenor-Plaintiff Osage Minerals Council ("OMC") hereby responds to Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc.'s (collectively, "Defendants") Motion to Dismiss the Osage Mineral Council's Complaint in Intervention.

## I.    INTRODUCTION

The OMC is an independent agency of the Osage Nation. As such, it exercises authorities as both an inherent sovereign and as the trust beneficiary of the Osage Mineral Estate in a federally-established and unique Osage trust. From both sources of authority—inherent sovereignty and trust beneficiary—the OMC at its discretion can say no to any entity that seeks to mine Osage minerals. The OMC can decide not to do business with an entity for economic reasons, such as disagreement on the value of a lease for minerals, or because the proposed activity is in an area within the Osage Reservation that could interfere with other minerals mining activity or opportunities, or for non-economic reasons, such as the entity has a history of unsavory practices or harm to bald and golden eagles. When Defendants deceptively and illegally took Osage trust property—minerals held in federal trust—without a lease from the OMC and with full knowledge that the United States and OMC viewed such activity as unlawful, it took the rights of the OMC to exercise its sovereign and trust authorities, and Defendants put its entire project at risk. Defendants now demand a highly unjust and legally meritless outcome in the remedies phase of this litigation that posits the OMC should only receive the value of the rock the Defendants converted for ongoing use in industrial wind energy facilities—a remedy that would irreparably harm the OMC and encourage other unscrupulous entities to take Osage minerals first and accept a slap on the hand later.

Defendants' motion is predicated on the notion that certain issues the Tenth Circuit already decided (res judicata) should now be relitigated, while other issues that the Tenth Circuit never even considered (equitable remedies) cannot be litigated at all. The Tenth Circuit has already concluded that the OMC's participation in prior litigations does not preclude their participation in the case at hand—since these cases were filed *before* Defendants commenced their large scale excavation of the Osage Mineral Estate in September 2014, and therefore did not challenge Defendants' failure to obtain a permit to mine under 25 C.F.R. § 214.7. There is no need to relitigate this issue.

There is a need, however, to litigate the issue of remedies. The Tenth Circuit did not limit the scope of this Court's review on remand, and there is no authority in the Tenth Circuit that limits the ability of this Court to award injunctive or equitable relief to remedy Defendants' ongoing and continuing trespass on the Osage Mineral Estate. For the reasons discussed in greater detail below, Defendants' motion should be denied in its entirety.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case is now before the Court on remand from the Tenth Circuit Court of Appeals. In *United States v. Osage Wind, LLC*, 871 F.3d 1078 (10th Cir. 2017), the Tenth Circuit reached three conclusions, stating: (1) "[w]e first hold that OMC has adequately appealed the underlying merits decision, even though it did not formally join the proceedings below," *id.* at 1084; (2) "[w]e then conclude that Osage Wind has not established its res judicata burden of showing that OMC could have raised the instant claim in its earlier 2011 lawsuit regarding oil-and-gas interference," *id.*; and (3) "[f]inally, on the merits, we determine that Osage Wind's excavation activities constituted 'mining' under § 211.3, so a federally approved lease was required under § 214.7." *Id.* The Tenth Circuit explained that "because Osage Wind was required to procure a

2

lease under 25 C.F.R. § 214.7, we REVERSE the district court's order granting summary judgment . . . and REMAND for further proceedings consistent with this opinion." *Id.* at 1093. The Court did not discuss, let alone adjudicate, the issue of damages. *See id.*

Following remand back to the District Court, on January 10, 2020, the OMC filed its Motion to Intervene. The Court granted the OMC's motion by Minute Order on April 13, 2020. Dkt. 136. Twenty-three days later, on May 6, Defendants filed the instant Motion to Dismiss, Dkt. 150, seeking to preclude the OMC from any and all recovery for their unlawful conduct on the Osage Mineral Estate save for the remedy of "declaratory relief" and what Defendants describe as "money damages for trespass and/or conversion (albeit only consistent with the Tenth Circuit's Opinion)." Defs.' Mot. Dis. 10.

Defendants' legal analysis suffers from numerous ambiguities and deficiencies—a discussion that will follow in greater detail below—but suffice it to say that many of the factual allegations in Defendants' Motion are erroneous, baseless, and ultimately, irrelevant given that at this stage in the proceedings, "[t]he Court must accept all the well-pleaded factual allegations of the complaint as true . . . ." *Burke v. Glanz*, 292 F. Supp. 3d 1235, 1244 (N.D. Okla. 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That being said, the OMC will take the opportunity to clarify a few points raised in Defendants' Motion.

First, in an attempt to resurrect the res judicata argument that Defendants lost in the Tenth Circuit, Defendants, once again, argue that the OMC's involvement in prior litigations precludes their prosecution of its claims in this case.[1] In their Motion to Dismiss, Defendants assert that the

---

[1] When this case was before the Tenth Circuit in 2017, Defendants specifically invoked the State Case, *Osage Nation v. Bd. of Commissioners of Osage Cty.*, 2017 OK 34, 394 P.3d 1224, at that time to support its res judicata arguments. *See* Appellees' Suppl. Authority, *United States v. Osage Wind, LLC*, Case No. 16-5022 (10th Cir. May 5, 2017), Dkt. 01019805266.

OMC's involvement in *Osage Nation v. Board of Commissioners of Osage County*, 2017 OK 34, 394 P.3d 1224 (the "State Case") precludes the OMC's participation in the current case because the State Case "was filed *after* the OMC and the BIA were aware construction had commenced . . ." Defs.' Mot. to Dismiss 5; *see also id.* (noting that the State Case was filed in June 2014).

According to the Tenth Circuit, however, the relevant date for determining the application of res judicata is not the commencement of overall construction, but instead, is the commencement of Defendants' turbine excavation work. In this regard, Defendants' discussion of the facts relevant to their Motion are highly misleading. For instance, Defendants take the position that "[p]roject construction began on October 25, 2013," Defs.' Mot. to Dismiss 4, and regardless of whether that is true or not, the relevant fact is that Defendants did not commence their large-scale excavation of the 84 wind turbines until September of 2014. Intervenor-Pl. Compl. ¶ 45 ("In October 2013, the Defendants initiated site preparation and new road construction, and *by September 2014, began excavation work* for the 84 wind turbines, underground collection lines, an overhead transmission line, two permanent meteorological towers, and a network of access roads.") (emphasis added).

The date of *when* turbine excavation began is the relevant date since, as the Tenth Circuit previously determined, Osage Wind cannot demonstrate "the instant claim [under 25 C.F.R. § 214.7] would have been ripe … *before turbine excavation work began*." *Osage Wind, LLC*, 871 F.3d at 1087 (emphasis added). According to the Tenth Circuit, therefore, the commencement of excavation on the 84 wind turbines—September 2014—constitutes the operative date when the OMC could have, or should have, known that Defendants' excavation without a lease would violate 25 C.F.R. § 214.7. *See id.*; *see also* Intervenor-Pl. Compl. ¶ 45.

And the State Case that Defendants now claim bars the OMC from litigating its claims in this action was filed in June 2014 (*see* Dkt. 150-1), three months "before turbine excavation work began." *Osage Wind, LLC*, 871 F.3d at 1087. For reasons discussed in greater detail below, the State Case in no way precludes the OMC from litigating its current claims—not just because the Tenth Circuit concluded that the OMC's claims under 25 C.F.R. § 211.3 and 25 C.F.R. § 214.7 were not ripe until *after* the excavation work began in September 2014—but also because the State Case deals exclusively with Osage County zoning laws, and thus the claims do not relate in any shape or form to the claims brought here.

To be sure, less than one month after Defendants began this excavation work, "[o]n October 9, 2014, the Superintendent of the Osage Agency, Robin Phillips, wrote to Defendant Enel Green Power North America, Inc., and demanded that the subject activities cease until an appropriate permit or lease for the excavation and use of minerals from the Osage Mineral Estate was approved by the Osage Minerals Council and the BIA." Intervenor-Pl. Compl. ¶ 46. Also, within a month and before the end of October, the OMC took swift action. On October 29, 2014, "the Osage Minerals Council approved Resolution 3-25, requesting the assistance of the United States to protect the Osage Mineral Estate" against Defendants' unlawful conduct. *Id.* at ¶ 47. However, "[i]nstead of abiding the BIA Superintendent's instructions in the October 9, 2014 letter and obtaining a lease, Defendants rushed to commence and complete their construction and excavation." *Id.* at ¶ 49. "By November 21, 2014—just six weeks after the BIA Superintendent told Defendants their actions were unlawful—Defendants had completed their excavation of the Osage Mineral Estate." *Id.*

### III.   STANDARD OF REVIEW AND GOVERNING LAW

This Court reviews a motion to dismiss under Fed. R. Civ. P. 12(b)(6) by "determin[ing] whether the plaintiff has stated a claim upon which relief may be granted." *Stephenson Oil Co. v. Citgo Petrol. Corp.*, No. 08-CV-380-TCK-TLW, 2010 WL 2998604, at *11 (N.D. Okla. July 28, 2010). To "survive a Rule 12(b)(6) motion to dismiss, a plaintiff must 'nudge [ ] [his] claims across the line from conceivable to *plausible.*'" *Id*. (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (emphasis added). However, "[a]sking for plausible grounds…does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Burke v. Glanz*, 292 F. Supp. 3d 1235, 1244 (N.D. Okla. 2017) (quoting *Twombly*, 550 U.S. at 556.).

Thus, at the dismissal stage, "[t]he Court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to claimant." *Burke*, 292 F. Supp. 3d at 1244 (citing *Twombly*, 550 U.S. at 555). To be sure, when reviewing a 12(b)6) motion, courts are "not bound to accept as true a legal conclusion couched as a factual allegation," but, still "must accept plaintiff's factual allegations as true, even if doubtful in fact." *Hibben v. Okla. ex rel. Dep't of Veterans Affairs*, No. 16-cv-111-TLW, 2017 WL 1239146, at *6 (N.D. Okla. Mar. 31, 2017) (internal citations and quotation marks omitted). Here, Defendants may "may re-urge [their] argument[s] in a motion for summary judgment after plaintiff has an opportunity to conduct discovery," but where the OMC has shown "'enough to raise a right to relief above the speculative level,'" Defendants' motion to dismiss under Rule 12(b)(6) should be denied. *Yingst v. Hudson Ins. Co.,* No. 10-CV-

0115-CVE-TLW, 2010 WL 2106407, at *6, 11 (N.D. Okla. May 25, 2010) (quoting *Twombly*, 550 U.S. at 555).

Furthermore, the consideration of whether to award the OMC equitable remedies rests squarely within the sound discretion of this Court. *See McKinney v. Gannett Co.,* 817 F.2d 659, 670 (10th Cir. 1987) (concluding that the "application of equitable doctrines rests in the sound discretion of the district court."). Consequently, "absent a showing of abuse of discretion, the district court's exercise thereof will not be disturbed on appeal." *Id.*; *see also Jicarilla Apache Tribe v. Andrus,* 687 F.2d 1324, 1333 (10th Cir. 1982) (holding that "[a]n appeal to the equity jurisdiction of the federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity."); *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 974 (10th Cir. 2019) ("[W]e must remand the decision to the district court to weigh the equities in the first instance.").

That is, "[f]ederal district courts have the power to order injunctive relief when equity so requires." *Davilla*, 913 F.3d at 971. Whether the OMC is entitled to permanent injunctive relief, as well as other forms of equitable relief, constitutes a question governed by federal common law, not state law. *See id.* (reversing district court's decision to *not* apply federal common law, and stating that "[b]y failing to apply the federal courts' traditional equity jurisprudence to its remedy analysis, the court below committed an error of law and thus abused its equitable discretion."). Except for the OMC's claim for trespass,[2] the remainder of the claims and requested remedies are governed by federal common law.

_____

[2] The *Davilla* Court concluded that the District Court was correct to apply Oklahoma law to the trespass claim, since no federal common law governing the claim of trespass exists and the Oklahoma law on trespass did not conflict with federal policy. *See Davilla*, 913 F.3d at 972 ("We therefore conclude that the district court erred in failing to apply the federal permanent-injunction standard even though it properly applied Oklahoma trespass law."). The Tenth Circuit

Accordingly, in an action for trespass on Osage trust property, such as this, "[t]he Court may order any equitable relief it determines appropriate…to address the harm which Defendants caused to Plaintiff." *United States v. Torlaw Realty, Inc.*, 483 F. Supp. 2d 967, 974 (C.D. Cal. 2007), *aff'd*, 348 F. App'x 213 (9th Cir. 2009). Contrary to Defendant's assertion that the mere availability of legal remedies precludes the OMC from seeking any and all equitable remedies, "[t]he Supreme Court has recognized a *variety* of federal common law causes of action to protect Indian lands from trespass, including actions for ejectment, accounting of profits and damages." *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1549 n.8 (9th Cir. 1994) (emphasis added).[3] Thus nothing precludes this Court, or any federal court, from awarding both monetary damages *and* equitable relief for trespass to Indian lands in order to "reimburse the Tribe for the most profitable use of its land." *Id*. at 1551.

Thus, with the authority to issue permanent injunctive relief resting squarely within this Court's authority, this Court "should take into account (1) whether an injunction is necessary to prevent irreparable harm, (2) whether the threatened injury outweighs the harm that the injunction may cause to the enjoined party, and (3) whether the injunction would adversely affect the public interest." *Davilla*, 913 F.3d at 973 (internal citations and quotation marks omitted).

---

further explained that while state law may apply in the absence of federal common law to determine the requisite elements to establish the underlying claim, state law could not be used in the same manner to determine the applicability of equitable remedies. *See id.* ("[T]he practice of borrowing state rules of decision does not apply with equal force to determining appropriate remedies, especially equitable remedies, as it does to defining actionable rights."). Accordingly, in this case, Oklahoma law governs the OMC's claim for trespass, and federal common law governs the remainder of the OMC's claims, as well as all requests for equitable relief.

[3] Citing *Marsh v. Brooks*, 49 U.S. 223, 232 (1850) (action for ejectment); *United States v. Santa Fe Pacific R.R.*, 314 U.S. 339, 359 (1941) (action for accounting); *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 233-36 (1985) (action for damages); *United States v. Southern Pacific Transp. Co.*, 543 F.2d 676, 682-84 (9th Cir. 1976) (action for damages).

## IV.   ARGUMENT

### a.   The Tenth Circuit's Opinion Does Not Limit The OMC's Recovery.

In their Motion to Dismiss, Defendants boldly declare that the OMC must be barred from seeking any equitable remedy because "the Tenth Circuit clearly expressed that it was considering claims 'for damages' and not any kind of claims for (i) injunctive relief, (ii) accounting, (iii) disgorgement, (iv) unjust enrichment, or (v) any other equitable remedy of any kind." Defs.' Mot. to Dismiss 15 (quoting *U.S. v. Osage Wind, LLC,* 871 F.3d 1078 (10th Cir. 2017)). A review of the Tenth Circuit's decision reveals the misleading nature of Defendants' assertions. Nowhere in the Court's opinion did the Tenth Circuit mention, discuss, adjudicate, or consider whether the OMC could seek an equitable remedy for Defendants' unlawful conduct. *See Osage Wind, LLC*, 871 F.3d 1078. In fact, the words describing the sorts of remedies Defendants claim the Tenth Circuit forbade appear *nowhere* in the Court's opinion. *See id.* (no mention of the words "injunctive relief," "accounting," "disgorgement," "unjust enrichment," or "equitable remedy of any kind.").

Defendants, in their own words, told the Tenth Circuit the appeal concerned "[w]hether the district court correctly ruled that surface construction requiring incidental removal and replacement of subsurface materials on fee-owned lands in Osage County is not mining subject to the regulatory jurisdiction of the United States Department of the Interior's Bureau of Indian Affairs or the OMC." Appellees' Br. 3, *United States v. Osage Wind, LLC*, Case No. 16-5022 (10th Cir. June 16, 2016), Dkt. 01019639458. Defendants certainly did not frame the issues on appeal as relating to damages or equitable relief, and nothing in Defendants' briefs refers to, mentions, or asserts that the OMC is not entitled to recover in equity. The Tenth Circuit did not rule on damages because the issue was not before it. None of the parties briefed or argued it.

Having completely failed to litigate it, Defendants cannot now claim somehow the Tenth Circuit adjudicated it.[4]

Ultimately, the Tenth Circuit announced the following legally binding conclusions: (1) "[w]e first hold that OMC has adequately appealed the underlying merits decision, even though it did not formally join the proceedings below," *Osage Wind, LLC*, 871 F.3d at 1084; (2) "[w]e then conclude that Osage Wind has not established its res judicata burden of showing that OMC could have raised the instant claim in its earlier 2011 lawsuit regarding oil-and-gas interference," *id.*; and (3) "[f]inally, on the merits, we determine that Osage Wind's excavation activities constituted 'mining' under § 211.3, so a federally approved lease was required under § 214.7." *Id.* This is what the Tenth Circuit decided. Nothing less. Nothing more.

The Tenth Circuit's ruling did not contemplate the full extent of Defendants' illegal activities, only that their activities did, in fact, constitute mining and subsequent mineral development, and thus required a permit under 25 C.F.R. § 214.7. Defendants rely on quotations taken out of context to claim that somehow the Tenth Circuit's decision relates *only* to "the operation of rock crushing that [the Court] specifically described." Defs.' Mot. to Dismiss 13.

_____

[4] Defendants point to the fact that the Tenth Circuit used the word "for damages" in its opinion as the basis for concluding that the Tenth Circuit held the OMC is not entitled to equitable relief. *See* Defs.' Mot. to Dismiss 15. The words "for damages," however, do not transform the opinion into a holding or precedent barring equitable relief. The Tenth Circuit used these words to lay out the procedural background for the case—something appellate courts often do since understanding the procedural posture of the case is helpful in adjudicating the actual legal question before the Court. The Tenth Circuit's recitation of the factual background of the case in no way constitutes a holding or precedent precluding the OMC from seeking an equitable remedy for Defendants' unlawful conduct. That is, an Appellate Court's recitation of the facts and procedural background in a case does not constitute the legal holding of the Court. *See, e.g., U.S. v. Johnson,* 921 F.3d 991, 1003 (11th Cir. 2019) (concluding "the reasoning of our decision generates a principle of law, the application of which extends beyond the factual circumstances of this appeal.").

There is no reason, however, to use anything other than the Tenth Circuit's own words to discern the meaning of the Tenth Circuit's words. Although it is true that, in conducting its analysis, the Tenth Circuit noted that Defendants "*sorted* the rocks, *crushed* the rocks into smaller pieces*, and then *exploited* the crushed rocks as structural support for each wind turbine," *Osage Wind, LLC*, 871 F.3d at 1091, the Court announced its ultimate conclusion in stating that "because Osage Wind was required to procure a lease under 25 C.F.R. § 214.7, we REVERSE the district court's order granting summary judgment… and REMAND for further proceedings consistent with this opinion." *Id.* at 1093.

District Courts routinely adjudicate the issue of damages when an order granting summary judgment is reversed and remanded from the Tenth Circuit. In fact, "the scope of the mandate on remand in the Tenth Circuit is carved out by exclusion: unless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard." *Lexington Ins. Co. v. Precision Drilling Co., L.P.,* 951 F.3d 1185, 1192 (10th Cir. 2020); *see also U.S. v. West*, 646 F.3d 745, 749 (10th Cir. 2011) (concluding that "the district court is to look to the mandate for any limitations on the scope of the remand and, in the absence of such limitations, exercise discretion in determining the appropriate scope."). If the Tenth Circuit had truly intended to limit the ability of this Court to issue injunctive or equitable relief on remand, the Tenth Circuit would have said so.

The issue of damages and whether equitable relief is appropriate, therefore, remains firmly within the discretion of this Court.

### b. The OMC's Requests For Equitable Relief Are Not Barred By Res Judicata or Collateral Estoppel.

Truly, if res judicata applies at all at this point in the case, it applies to bar Defendants from re-litigating the res judicata arguments they previously made, and lost, before the Tenth

Circuit. *See Osage Wind, LLC*, 871 F.3d at 1087 (concluding that "res judicata does not apply to OMC's instant claim" in the current litigation). This issue has been litigated, and Defendants cannot evoke the doctrine of res judicata to re-litigate "issues that were or could have been raised in the prior action," or on appeal in this action, for that matter. *Id.* at 1086 (quoting *Wilkes v. Wyoming Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002)).

To be sure, Defendants already had a full and fair opportunity to assert that the State Case precludes the OMC from bringing its claims for relief in this current action, and Defendants gave it their best shot. When this case was before the Tenth Circuit in 2017, Defendants specifically invoked the State Case to support their res judicata arguments. *See* Appellees' Suppl. Authority, *United States v. Osage Wind, LLC*, Case No. 16-5022 (10th Cir. May 5, 2017), Dkt. 01019805266. In response to the argument that the OMC's involvement in prior litigation bars the OMC from bringing its current claims for relief, the Tenth Circuit rejected Defendants' res judicata claims, finding in favor of the OMC. *See Osage Wind, LLC*, 871 F.3d at 1087. Thus, Defendants are now estopped from relying on the State Case to revive their claims of estoppel/issue preclusion. *See U.S. v. Botefuhr*, 309 F.3d 1263, 1282 (10th Cir. 2002) (concluding that issue preclusion/collateral estoppel applies when "the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.").

Equally unfounded is Defendants' claim that "[r]es [j]udicata [a]rising from the State Case [a]lso [b]ars [i]njunctive [r]elief ([i]ncluding [e]jectment)." Defs.' Mot. to Dismiss 17. "Generally, claim preclusion applies where the parties *and the two causes of action are the same*." *Valley View Angus Ranch, Inc. v. Duke Energy Field Services, Inc*., 497 F.3d 1096, 1100 (10th Cir. 2007) (internal citations and quotations omitted) (emphasis added). Here, the causes of action in the two lawsuits could not be more different. The State Case was entirely predicated on

an issue of county zoning law, brought against the Board of Commissioners of Osage County, Oklahoma, as well as the Board of Adjustment of Osage County, Oklahoma, seeking a determination of "the validity and constitutionality of Section 6.5.2 of the Zoning Ordinance of Osage County and the authority of the Board of Adjustment to approve or grant" a permit under the same. *See* Dkt. 150-1at ¶ 5. In contrast, the current litigation involves a determination by this Court of the proper remedy for Defendants' failure "to procure a lease under 25 C.F.R. § 214.7," a federal regulation pertaining to a federal, not state or county, law. *Osage Wind, LLC*, 871 F.3d at 1093.

Accordingly, the current juxtaposition of the State Case presents the typical scenario where an earlier state court action does *not* bar a subsequent federal court action, as the subsequent federal court action presents "new factual as well as legal issues" not raised in the earlier state court action. *Okla. ex rel. Wilson v. Blankenship*, 447 F.2d 687, 694 (10th Cir. 1971). Because the OMC's current claims for relief are based on the evidence that Defendants' excavation of the Osage Mineral Estate would require such a lease, and this evidence was not available until September 2014—after the prior litigations had been filed and substantively litigated—it is clear that the current action constitutes "a distinct cause of action based on different evidence," and therefore "is not barred by the doctrine of res judicata." *Id.*

As to collateral estoppel, Defendants have not met their burden of establishing each of the four requisite elements necessary to establish estoppel. *See Botefuhr*, 309 F.3d 1263 (listing the four elements as "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity

to litigate the issue in the prior action.") (internal quotations and citations omitted). The OMC concedes that element three is satisfied here—the OMC is the identical party in both the state case and the current litigation. As to the remaining three elements, however, Defendants wholly fail to meet their burden.

First, Defendants cannot show that "the issue previously decided is identical with the one presented in the action in question." *Id.* As the Tenth Circuit previously concluded, in the current case, the OMC seeks relief for a claim that the "wind farm would violate 25 C.F.R. § 214.7, *Osage Wind, LLC*, 871 F.3d at 1087, and that is not the same issue as whether Section 6.5.2 of the Zoning Ordinance is valid and/or constitutional and the Board of Adjustment has the requisite authority to grant a permit under the same. *See* Dkt. 150-1 at ¶ 5. As the Tenth Circuit previously concluded, the later claim under 25 C.F.R. § 214.7 was not discoverable until "turbine excavation work began," *Osage Wind, LLC*, 871 F.3d at 1087, and that work began in September 2014 (Intervenor-Pl. Compl. ¶ 45)—after the State Case was filed, and one month before the State Case concluded. The two issues are not identical.

Second, Defendants cannot show that "the prior action has been fully adjudicated on the merits." *Botefuhr*, 309 F.3d at 1282. Neither the Osage County Court, nor the Oklahoma Supreme Court, adjudicated—or even considered—whether Defendants' excavation of the Osage Mineral Estate, without a lease, would violate 25 C.F.R. § 214.7. Thus, it cannot be said that the State Case "fully adjudicated" this issue on the merits, and collateral estoppel does not apply.[5]

---

[5] Even if the Osage County Court had chosen to adjudicate the "issue" of injunctive relief as a remedy—it did not—the relief now requested by the OMC is not identical to the relief sought in the State Case and has never been adjudicated on the merits. Nowhere in the OMC's state court petition or in the state court order is there mention of 25 C.F.R. §§ 211.3 and 214.7 or mining of any kind, and the injunctive relief now sought was not available to the OMC at that time because Defendants had not yet intruded on the OMC's sovereign right to self-govern.

Finally, Defendants cannot show that the OMC "had a full and fair opportunity to litigate the issue in the prior action." *Botefuhr*, 309 F.3d at 1282. The OMC has never before had the opportunity to litigate whether the Defendants' illegal mining violated 25 C.F.R. § 214.7, and the OMC has never had, until now, the opportunity to litigate whether Defendants' purposeful disregard for the OMC's sovereign right to self-govern the Osage Mineral Estate warrants the imposition of injunctive and/or other equitable relief to address Defendants' continuing trespass.

The question of what relief should be awarded to remedy what the Tenth Circuit found was an unlawful violation of 25 C.F.R. § 214.7, and neither the doctrine of res judicata, nor collateral estoppel, can save Defendants from the consequences of their unlawful actions.

### c. The OMC's Complaint In Intervention Pleads Facts Sufficient To Demonstrate Irreparably Injury And The Absence Of An Adequate Remedy At Law.

The OMC's Complaint in Intervention pleads facts sufficient to demonstrate that, absent the imposition of permanent injunctive relief, the OMC will continue to be irreparably harmed. Indeed, as the OMC's Complaint in Intervention demonstrates, no adequate remedy at law exists to afford sufficient relief for Defendants' ongoing, unlawful conduct. The OMC's sovereign right to say *no* cannot be monetized. Nor can it be characterized as somehow equivalent to the market value of crushed rock. Until the OMC's sovereign right to govern the Osage Mineral Estate is fully restored, the OMC will continue to be irreparably harmed.

Defendants are wrong to assert that "[t]here is . . . no irreparable harm plausibly pleaded." Defs.' Mot. to Dismiss 20. Under federal common law, "significant interference with [a Tribe's] self-government" constitutes irreparable harm warranting the imposition of injunctive relief. *Seneca-Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson*, 874 F.2d 709, 716 (10th Cir. 1989) (awarding injunctive relief because "[w]ithout the preliminary

injunction, the Tribes would face the prospect of significant interference with their self-government."); *see also Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250–51 (10th Cir. 2001)  (concluding that "the district court did not abuse its discretion in determining that, without the preliminary injunction, the tribe would suffer irreparable harm[,]" since defendants' conduct posed "the prospect of significant interference with [tribal] self-government.") (internal citations and quotation marks deleted); *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255-56 (10th Cir. 2006) ("We have repeatedly stated that such an invasion of tribal sovereignty can constitute irreparable injury.").

Here, Defendants' ongoing operation of their unlawful wind farm substantially interferes with the OMC's sovereign right to self-govern. Federal and Osage law grant the OMC the right to self-govern the Osage Mineral Estate, including granting or denying the lease Defendants need to render the operation of their wind farm lawful. *See* Act of June 28, 1906, ch. 3572, § 3, 34 Stat. 539; *see also* Intervenor-Pl. Compl. ¶ 42. In this regard, Defendants' reliance on the fact that the Tenth Circuit denied injunctive relief in *Jicarilla Apache Tribe v. Andrus* is entirely misplaced. *See* Defs.' Mot. to Dismiss 20-21 (citing 687 F.2d 1324, 1333 (10th Cir. 1982)). In *Andrus*, the Tribe's right to self-govern was not at stake. *See* 687 F.2d 1324. In that case, the Tribe filed suit "claiming that the [Department of Interior] Secretary failed to comply with his regulation, 25 CFR § 171.3, when advertising four sales of oil and gas leases. . . ." *Id.* at 1328. The Secretary of Interior's failure to comply with his own agency regulations does not implicate the sovereign right of a Tribe to self-govern, and accordingly, the Tenth Circuit's decision in *Andrus* does nothing to eradicate the Tenth Circuit's clear line of authority that "an invasion of tribal sovereignty can constitute irreparable injury." *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255-56 (10th Cir. 2006); *see also Seneca-Cayuga Tribe of Oklahoma*, 874 F.2d at 716

(awarding injunctive relief because "the injunction promotes the paramount federal policy" of supporting "strong self-government"). Here, Defendants' invasion of the OMC's sovereignty and right to self-govern the Osage Mineral Estate constitutes an irreparable harm warranting the imposition of injunctive relief.

Second, for the ongoing harm caused by Defendants' actions, there can be no adequate remedy at law. As the Tenth Circuit has previously recognized, "harm to tribal self-government [is] not easily subject to valuation." *Prairie Band of Potawatomi Indians*, 253 F.3d at 1251. It is impossible to monetize the value of the OMC's sovereign right to self-govern and deny or grant leases to mine the Osage Mineral Estate. Defendants do not cite a single case or authority concluding that courts *can* monetize harm to tribal self-government. There are none. Instead, the OMC has no adequate remedy at law for Defendants' ongoing "significant interference with [tribal] self-government," as the injury to the OMC cannot "be adequately compensated for in the form of monetary damages." *Id.*

The OMC, therefore, has pleaded sufficient facts to demonstrate irreparable harm and the absence of an adequate remedy at law. Monetary remedies will not restore the OMC's "right to demand a lease for [the] use[] of its minerals." *Osage Wind, LLC*, 871 F.3d at 1092.

### d. The OMC's Complaint In Intervention Pleads Facts Sufficient To Establish Entitlement To An Accounting.

Defendants' assertion that the OMC has not adequately pleaded a claim for accounting likewise fails, as the Complaint in Intervention more than satisfies the standard set out by the Supreme Court. The Supreme Court has determined that, in order to sustain an equitable claim for accounting under federal common law, "the plaintiff must be able to show that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) (internal quotation marks

and citations omitted). That is, "[t]he necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law."). *Id.* As discussed above, The Complaint in Intervention more than satisfies this standard, as the monetary value of the OMC' sovereign right to have refused consent and prohibit excavation of the Osage Mineral Estate cannot be easily ascertained, and there is no clear number or dollar amount that Defendants owe as a result of their unlawful conduct.

Defendants challenge the ability of the OMC to sustain such a remedy on the basis that "there is no contract or fiduciary relationship between the parties." Defs.' Mot. to Dismiss 23 n.12. The applicable governing standard, however, merely requires demonstrating the existence of a "confidential relationship"—not a contract. Notably, Defendants' Motion points to no authority stating that a "confidential relationship" does not exist between a sovereign tribal government and the entity that has confiscated, stolen, or taken the sovereign's trust property held in trust. *See Roberts v. Sears, Roebuck & Co.*, 573 F.2d 976, 983 (7th Cir. 1978) ("[T]here are no hard and fast rules for determining whether a confidential relationship exists."). The absence of a contract, therefore, does not exonerate Defendants of what they owe to the OMC for illegally mining the Osage Mineral Estate.[6]

The OMC, therefore, has met its burden of demonstrating the requisite "absence of an adequate remedy at law" to sustain the equitable remedy of accounting under federal common law. *Dairy Queen, Inc.*, 369 U.S. at 478.

---

[6] Defendants confuse accounting at law with the equitable remedy of accounting. An accounting at law "involves a contract, either expressed or implied." *Olson v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1021 (D. Neb. 2019). In contrast, the equitable remedy of accounting is "applied when a plaintiff has shown a need for an accounting because some money is owed and the plaintiff can obtain no adequate remedy at law." *Cell Energy, LLC v. Devon Energy Production Comp., L.P.,* No. 16-188 GJF/LAM, 2016 WL 9408580 (D.N.M. 2016).

**e. The OMC's Complaint In Intervention Pleads Facts Sufficient To Establish Entitlement To A Disgorgement Of Defendants' Profits.**

Contrary to Defendants' claims, the OMC has pleaded facts sufficient to entitle the OMC to the equitable remedy of disgorgement. Defendants erroneously base their assertion that disgorgement is not available on the Oklahoma Supreme Court's ruling in *Krug v. Helmerich & Payne, Inc.*, wherein the Court held that "a plaintiff may not pursue an equitable remedy when the plaintiff has an adequate remedy at law." Defs.' Mot. to Dismiss 23. (quoting *Krug*, 2013 OK 104, ¶ 34, 320 P.3d 1012, 1022 *as corrected* (Feb. 24, 2014)). Defendants' reliance on *Krug* is misplaced for two reasons. First, as discussed above, the OMC does *not* have an adequate remedy at law.[7] *See supra* IV(c).

Second, as discussed in the Standard of Review and Governing Law section above, the Tenth Circuit has concluded that Oklahoma law does *not* replace federal common law when it comes to a federal court's adjudication of equitable remedies. *See Davilla,* 913 F.3d at 972 (holding that "the practice of borrowing state rules of decision does not apply with equal force to determining appropriate remedies. . . ."). The Oklahoma Supreme Court's decision in *Krug*, therefore, does not bar this Court from imposing the equitable remedy of disgorgement of profits, or any other form of permanent injunctive relief this Court determines to be appropriate. *See id*.

---

[7] Even if Oklahoma law did control, it would not preclude the availability of an equitable remedy for Defendants' unlawful conduct. Oklahoma courts only impose a barrier to equitable relief "where the plaintiff has a *plain*, *speedy* and *adequate* remedy at law" such that equity need "not intervene in his behalf." *Krug*, 2013 OK 104, ¶ 34, 320 P.3d 1012, 1022 (quoting *Robertson v. Maney*, 1946 OK 59, ¶ 7, 166 P.2d 106, 108). The Oklahoma Supreme Court has interpreted the adequacy of a remedy at law in a civil proceeding to be "whether a [party] is provided with *a clear and certain opportunity* for obtaining *complete relief at law*." *Dutton v. City of Midwest City*, 2015 OK 51, ¶ 40, 353 P.3d 532, 551. Here, the remedy Defendants suggest—merely paying the OMC some arbitrarily assigned market value for the crushed rock—will not even come close to the "complete relief" contemplated by the Oklahoma Supreme Court, and accordingly, the court's decision in *Krug* does not prohibit the provision of equitable relief.

19

(concluding that "a federal court may afford an equitable remedy for a substantive right recognized by a State even though a state court cannot give it.") (quoting *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945)).

Instead, in an action for trespass on Osage trust property such as this, "[t]he Court may order any equitable relief it determines appropriate…to address the harm which Defendants caused to Plaintiff." *Torlaw Realty, Inc.*, 483 F. Supp. 2d at 974; *see also Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d at 1549 n.8 ("The Supreme Court has recognized a *variety* of federal common law causes of action to protect Indian lands from trespass, including actions for ejectment, accounting of profits and damages.") (emphasis added).[8]

Nothing in Defendants' Motion to Dismiss warrants precluding the OMC from seeking to disgorge Defendants of their unlawful profits.

> **f.   The OMC's Complaint In Intervention Pleads Facts Sufficient To Establish A Claim For Continuing Trespass.**

There can be no question that Defendants' continued operation of the wind farm, and utilization of the sandstone, gravel, and crushed rock illegally mined from the Osage Mineral

---

[8] Defendants cite to *Schafer v. Centerpoint Energy Oklahoma Gas* as an instance in which "this Court applied this principle and found that . . . trespass provided an adequate remedy at law that precluded a claim for disgorgement." Defs.' Mot. to Dismiss 24. (citing *Schafer, Tr. of Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v. Centerpoint Energy Oklahoma Gas*, No. 17-CV-365-GKF-FHM, 2018 WL 10140171, at *1 (N.D. Okla. May 21, 2018), *appeal dismissed*, 770 F. App'x 915 (10th Cir. 2019)). In *Schafer*, however, this Court dealt with claims of disgorgement and trespass on lands which this court found "ceased to qualify as Indian country" because they had been allotted, and "therefore, Oklahoma law, not federal common law, "govern[ed] whether [plaintiff] is entitled to equitable relief after that point in time." *Id*. Here, it is without dispute that the Osage Mineral Estate has not been allotted. Intervenor-Pl. Compl. ¶ 35; *see also Osage Wind, LLC*, 871 F.3d at 1082 (concluding that "the mineral estate was reserved for the benefit of the Osage Nation."). The Court's decision in *Schafer*, therefore, does not apply.

Estate therein, constitutes a "continuing trespass" that warrants this Court's imposition of

permanent injunctive relief. Under the Tenth Circuit's guiding precedent:

> [A] federal district court's decision to permanently enjoin a continuing trespass on
> [tribal lands] should take into account (1) whether an injunction is necessary to
> prevent 'irreparable harm,' (2) whether 'the threatened injury outweighs the harm
> that the injunction may cause' to the enjoined party, and (3) whether the injunction
> would 'adversely affect the public interest.'

*Davilla*, 913 F.3d at 973 (internal citations omitted). Defendants' motion fails to discuss,

challenge, or even address these three governing elements, nor do Defendants mention any

reason why they believe the OMC's Complaint in Intervention has not met them. Accordingly, to

the extent that Defendants seek to challenge the OMC's claim for continuing trespass, their

motion should be denied.

To be sure, the OMC's Complaint in Intervention sufficiently pleads facts and allegations

to meet each of the three requisite elements. First, as discussed above, the OMC's Complaint in

Intervention pleads facts sufficient to demonstrate irreparable injury. *See supra* IV(c).  As to the

second element, Defendants do not assert that the threatened injury to them outweighs the harm

the OMC will continue to experience absent permanent, injunctive relief. Nor could they. Any

economic harm that could come to Defendants should the OMC be awarded ejectment is

drastically outweighed by the harm imposed by the ongoing operation of an illegal wind farm

that extinguishes the ability of the OMC to exercise its sovereign, self-government authority over

the Osage Mineral Estate. Such harm to a tribal government is often sufficient to demonstrate the

requisite balance of the harms tips in favor of the Tribe, and against the entity whose conduct

impedes on the federal policy of supporting and promoting tribal self-government. *See Seneca-*

*Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson*, 874 F.2d 709, 716 (10th Cir. 1989)

(awarding injunctive relief since, "[w]ithout the preliminary injunction, the Tribes would face the

prospect of significant interference with their self-government."). The balance of equities certainly further tips in the OMC's favor since Defendants willfully and intentionally trespassed on the Osage Mineral Estate, "despite clear orders to cease activities until an appropriate permit or lease was approved by the OMC and BIA." Intervenor-Pl. Compl. ¶ 50.

 Finally, as the Tenth Circuit has previously concluded, injunctive relief that restores and affirms the authority of a tribal government to self-govern supports the public interest because it "promotes the paramount federal policy that Indians develop . . . strong self-government." *Seneca-Cayuga Tribe of Oklahoma*, 874 F.2d at 716; *see also Prairie Band of Potawatomi Indians*, 253 F.3d at 1253 ("this court's case law suggests that tribal self-government may be a matter of public interest" that supports injunctive relief). The public interest is also served in this instance since federal courts have determined that compliance with federal laws supports the public interest, *see, e.g., D.C. v. U.S. Dep't of Agric.*, No. CV 20-119 (BAH), 2020 WL 1236657, at *31 (D.D.C. Mar. 13, 2020) ("The public does have an interest in the executive branch's 'effectuating statutes enacted' by Congress."), and here, injunctive relief is the only remedy that would end Defendants' ongoing and active violations of 25 C.F.R. § 211 and/or 25 C.F.R. § 214. *See* Intervenor-Pl. Compl. ¶ 104.

Defendants cursorily attack the OMC's claim for continuing trespass, asserting "there can be no claim on continuing trespass in this case," because "[a]ny theory of continuing wrong of any kind can only be based upon the theory that the Project's mere presence is unlawful—something that the Tenth Circuit rejected." Defs.' Mot. to Dismiss 25. The OMC's claim for continuing trespass, however, is not premised on "mere presence" and therefore, cannot be reduced to such a simple, and erroneous statement. Instead, the OMC's claim for continuing trespass is premised on Defendants *continued* use of resources illegally mined from the Osage

Mineral Estate—to which the OMC claims title. *See, e.g.,* Intervenor-Pl. Compl. ¶ 114 ("So long as the Osage Wind Projects continue in operation, Defendants will continue their unlawful use and possession of excavated minerals from the Osage Mineral Estate.").

And to be sure, nothing in the Tenth Circuit's decision discussed the legal standard for pleading "continuing trespass," a standard that even a cursory review of the Tenth Circuit's guiding precedent makes clear the OMC has fully met. For instance, in the very same case that Defendants quote, *United States v. Hess*, the Tenth Circuit made clear that, in that case, Defendants' "gravel extractions over the years constitute a continuing trespass" because the gravel, at the time of removal, was legally "titled in the government," the United States. *United States v. Hess*, 194 F.3d 1164, 1176 (10th Cir. 1999); *see also* Defs.' Mot. to Dismiss 24 (quoting *Hess,* 194 F.3d at 1176)). Here, at the time of extraction, the minerals were titled to the Osage Nation, as a sovereign tribal government, and accordingly, Defendants' continued unlawful use of the Osage Nation's trust property from the Osage Mineral Estate constitutes a continuing trespass. *See also Thompson v. United States*, 308 F.2d 628, 633 (9th Cir.1962) (holding, without analysis, that removal of minerals constitutes a continuing trespass, especially where the facts "reveal a continuing trespass after notice to desist").

The OMC, and the United States, repeatedly warned Defendants that their planned—and then their executed—extraction of minerals from the Osage Mineral Estate without the requisite permit violated federal law and the OMC's sovereign authority as a tribal government. Defendants have, repeatedly and to this day, refused to comply and maintain their unlawful trespass on the Osage Mineral Estate. Accordingly, the OMC is entitled to a permanent injunction.

**g.   Defendants Acted In Bad Faith.**

Finally, Defendants assert that "[t]here are no factual allegations that would support" the "conclusory statement" that Defendants acted "'willfully and intentionally and in bad faith.'" Defs.' Mot. to Dismiss 10 (quoting Intervenor-Pl. Compl. ¶¶ 49, 50, 92, 94, 110, 112, and 123). A cursory review of the Complaint in Intervention, however, reveals numerous allegations that support the conclusion that Defendants proceeded with their large-scale excavation of the Osage Mineral Estate in bad faith.

For instance, the Complaint in Intervention notes that as of October 9, 2014, Defendants had received a written demand from the Superintendent of the Osage Agency, Robin Phillips, demanding that Defendants halt their mining "until an appropriate permit or lease for the excavation and use of minerals from the Osage Mineral Estate was approved by the Osage Minerals Council and the BIA." Intervenor-Pl. Compl. ¶ 46. However, "[i]nstead of abiding the BIA Superintendent's instructions in the October 9, 2014 letter and obtaining a lease, Defendants rushed to commence and complete their construction and excavation." *Id.* at ¶ 49. "By November 21, 2014— just six weeks after the BIA Superintendent told Defendants their actions were unlawful— Defendants had completed their excavation of the Osage Mineral Estate." *Id.*

Defendants maintain this constituted "good faith" conduct because their decision to mine without a permit was "based upon a detailed legal analysis, that neither a lease nor permit were required." Defs.' Mot. to Dismiss 11. Defendants, of course, were wrong. *See Osage Wind, LLC*, 871 F.3d at 1084 ("Osage Wind's excavation activities constituted 'mining' under § 211.3, so a federally approved lease was required under § 214.7."). And to be sure, their "detailed legal analysis" does not vitiate the bad faith nature of their actions. Defendants did not, and do not, own the Osage Mineral Estate. Federal law does not give Defendants the right to determine if

and when a lease is lawfully required to mine the Osage Mineral Estate. Instead, federal law requires Defendants to turn to the OMC for that determination. Their statement that they were justified in circumventing the OMC's sovereign right to grant or deny the required permit because of their own "detailed legal analysis" only underscores the unlawful arrogance that forms the foundation of their ongoing bad faith conduct.[9]

There can be no question that, in rushing to complete their excavation of the Osage Mineral Estate without a lease or permit from the OMC, Defendants acted in bad faith.

## V.   CONCLUSION

For the aforementioned reasons, the OMC requests that the Court deny Defendants' Motion to Dismiss the OMC's Complaint in Intervention.

Respectfully submitted,

s/ Mary Kathryn Nagle
Mary Kathryn Nagle, OBA No. 33712
Wilson Pipestem, OBA No. 16877
Abi Fain, OBA No. 31370
Pipestem Law, P.C.
320 S. Boston Ave., #1705
Tulsa, Oklahoma 74103
918-936-4705 (Office)
wkpipestem@pipestemlaw.com
mknagle@pipestemlaw.com
afain@pipestemlaw.com

*Counsel for Intervenor-Plaintiff*
*Osage Minerals Council*

---

[9] Defendants may be able to recover any losses resulting from this case against the authors of the erroneous legal opinion that Defendants appear to have relied upon to take Osage trust property.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2020, I electronically transmitted the foregoing to the

Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing

to the following ECF registrants:


Ryan A. Ray
Joel L. Wohlgemuth
rar@nwcjlaw.com
jlw@nwcjlaw.com

-and-

Lynn H. Slade
Sarah S. Stevenson
Deana M. Bennett
Spencer L. Edelman
lynn.slade@modrall.com
sarah.stevenson@modrall.com
deana.bennett@modrall.com
spencer.edelman@modrall.com
*Counsel for Defendants*

Cathryn Dawn McClanahan
cathy.mcclanahan@usdoj.gov

*Counsel for Plaintiff, United States*

David McCullough
dmccullough@dsda.com

Jeffrey S. Rasmussen
jrasmussen@ndnlaw.com

-and-

Wilson Pipestem
Mary Kathryn Nagle
Abi L. Fain
afain@pipestemlaw.com
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
*Counsel for Intervenor-Plaintiff,
Osage Minerals Council*


/s/ Mary Kathryn Nagle