**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE OSAGE MINERALS COUNCIL, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 14-CV-704-GKF-JFJ |
| OSAGE WIND, LLC; ENEL KANSAS, LLC; and ENEL GREEN POWER NORTH AMERICA, INC., | ) ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS OSAGE WIND, LLC, ENEL KANSAS, LLC, AND ENEL GREEN POWER NORTH AMERICA, INC.'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE ALLEGATIONS IN THE OSAGE MINERALS COUNCIL'S COMPLAINT IN INTERVENTION (Dkt. # 151)**

| | |
|---|---|
| Ryan A. Ray, OBA #22281<br>NORMAN WOHLGEMUTH CHANDLER<br>JETER BARNETT & RAY, P.C.<br>2900 Mid-Continent Tower<br>401 South Boston Avenue<br>Tulsa, OK 74103<br>918-583-7571<br>918-584-7846 (facsimile) | Lynn H. Slade, *admitted pro hac vice*<br>Sarah M. Stevenson, *admitted pro hac vice*<br>MODRALL, SPERLING, ROEHL,<br>HARRIS & SISK, P.A.<br>Post Office Box 2168<br>Albuquerque, NM 87103-2168<br>505-848-1800<br>505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS, OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

**Dated: June 10, 2020**

Defendants Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively, for purposes of this reply, "Defendants"), submit this Reply in support of Motion to Strike Allegations in Plaintiff Osage Minerals Council's ("OMC") Complaint in Intervention (Dkt. # 151) ("Motion"). The OMC's Opposition to Defendants' Motion to Strike Allegations in Osage Minerals Complaint in Intervention (Dkt. # 157) ("Response") fails to articulate why the challenged allegations in its Complaint in Intervention (Dkt. # 140) ("Complaint") are not immaterial and prejudicial. As more fully described below, the OMC cites inapplicable case law and relies on vague and conclusory assertions that the challenged allegations are material and not prejudicial. Thus, even under the high standard established for motions to strike under Federal Rule of Civil Procedure 12(f), the Court should grant Defendants' motion and strike the allegations of Paragraphs 19-21, 62, 69-73, and 105 from the OMC's Complaint, along with any reference to the "Osage Reservation."

## ARGUMENT AND AUTHORITIES

**I. THE OMC'S RELIANCE ON INSURANCE BAD FAITH CASES IS MISPLACED, AND THE OMC'S ALLEGATIONS DIRECTED AT NON-PARTY ENTITIES SHOULD BE STRICKEN AS IMMATERIAL AND PREJUDICIAL.**

The Response fails to controvert that allegations of a pattern of conduct involving alleged non-party affiliates of Defendants is immaterial and prejudicial for two reasons: its reliance on a string of insurance bad faith cases presents patterns of repeated conduct bearing no similarity to those alleged here, and the alleged actions of non-party entities in other countries neither satisfies the requirements of Federal Rule of Evidence 406, nor inform the Court regarding the actions here.

The OMC contends its allegations directed at non-party entities regarding conduct unrelated to the Osage Wind wind energy development project (the "Project") are relevant to show a "pattern" of bad faith conduct as permitted in Oklahoma law. (Dkt. # 157 at 5). In support of this

contention, the OMC relies on five cases from that are all distinguishable from this case for the same reason: they all are insurance bad faith cases. (*See* Dkt. # 157, at 5-6, citing *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFL, 2018 WL 279348, at *6 (N.D. Okla. Jan. 3, 2018); *Vining v. Enter. Fin. Group*, 148 F.3d 1206, 1218 (10th Cir. 1998); *Metzger v. Am. Fid. Assur. Co.*, No. CIV-05-1387-M, 2007 WL 4342082, at *1 (W.D. Okla. Dec. 7, 2007); *Jones v. Farmers Ins. Co.*, No. CIV-11-159-R, 2012 WL 12863976, at *2-3 (W.D. Okla. Feb. 29, 2012); *Providence Church v. Guideone Ins.*, CIV-06-1201-d, 2008 WL 11338501, at *4 (W.D. Okla. Jan. 18, 2008)).[1] These cases are inapplicable as *insurance bad faith* is not at issue. "[T]he Oklahoma Supreme Court has at all times limited the *Christian* tort [of bad faith] to insurance contracts." *Lewis v. Aetna U.S. Healthcare, Inc.*, 78 F. Supp. 2d 1202, 1209 (N.D. Okla. 1999); *McGregor v. Nat'l Steak Processors, Inc.*, No. 11-CV-0570-CVE-TLW, 2012 WL 314059 (N.D. Okla. Feb. 1, 2012) ("[T]he Oklahoma Supreme Court has steadfastly limited [such a bad-faith tort claim] to insurance contracts, even when presented with the opportunity to expand the tort to other contexts.").

A closer look at the cases the OMC relied on reveals why they do not support the OMC's argument that allegations directed at non-party entities are relevant in this case. In *Reibert*, the plaintiffs submitted an insurance claim to CSAA after their home was damaged in a storm. 2018 WL 279348, at *1. CSAA investigated the claim by retaining an independent adjuster and a ladder assist company, who concluded there was no wind or hail damage to the plaintiffs' home, and CSAA denied the plaintiff's claim. *Id.* The plaintiffs brought an insurance bad faith claim against CSAA, and moved to compel evidence of previous claims CSAA denied after retaining *the same independent adjuster and ladder assist company*. *Id.* at *2. It is against this backdrop that *Reibert*

---

[1] Under Oklahoma law, a tort claim for insurance bad faith may be brought against an insurer that engages in "unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy." *Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000).

stated—as quoted by the OMC—previous claim denials are relevant to "a 'pattern' theory of bad-faith conduct, which is generally permitted under Oklahoma law." *Id.* at *6 (citing *Vining*, 148 F.3d at 1218). In *Vining*, an insurer was alleged to have "engaged in a pervasive, consistent pattern of abusive rescissions" of insurance policies. *Vining*, 148 F.3d at 1218; *see also Providence Church, Inc.*, 2008 WL 11338501 at *6 (the insurer's denial of similar claims in the past was relevant to bad faith claims); *Jones*, 2012 WL 12863976, at *2 (same).

*Metzger* further reveals why the insurance bad faith "pattern theory" does not apply in this case. The plaintiff in *Metzger* brought an insurance bad faith claim against her insurer, AFA, and AFA filed a motion in limine to exclude evidence regarding its handling of claims made by policyholders outside the state of Oklahoma. 2007 WL 4342082, at *1. The *Metzger* court denied AFA's motion, reasoning, "[i]*n a bad faith insurance case*, evidence of a defendant's treatment of other insureds is relevant and admissible pursuant to Federal Rule of Evidence 406 (habit) to prove the insurer engaged in a pervasive, consistent, and habitual pattern to underpay claims in bad faith." *Id*. (emphasis added).

The OMC invites this Court to stretch the "pattern theory" of proving *insurance bad faith* to this case, solely because the OMC has generally alleged that Defendants and other non-party "Enel" entities have acted in "bad faith" with respect to indigenous communities in Latin America. The fact the OMC points the court to no authority indicating the "pattern theory" applies to allegations against non-parties in this case, beyond the insurance bad faith context, is telling.

Rule of Evidence 406 further illustrates the flaws in the OMC's attempt to inject the alleged conduct of non-party entities in other countries into this case under the guise of "pattern" evidence. Rule 406 provides, "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with

3

the habit or routine practice." "A routine practice is the rough analog of a 'habit' in the context of an organization." *Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 705 F. Supp. 2d 1265, 1269 (D.N.M. 2010). Courts have described habits as "semi-automatic" and "reflexive behavior." *Id.*; *Perrin v. Anderson*, 784 F.2d 1040, 1046 (10th Cir. 1986). Thus, for conduct to qualify as a "routine practice" under Rule 406, it must be "reasonably regular and uniform." *United States v. Oldbear*, 568 F.3d 814, 822 (10th Cir. 2009). The Tenth Circuit has held that illegal acts, such as embezzlement or extortion, categorically cannot constitute admissible evidence under Rule 406, and that even five instances of certain conduct is not sufficiently numerous or consistent to render the conduct habitual or routine. *See Oldbear*, 568 F.3d at 822; *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987).

Based on this authority, the OMC cannot rely on Rule 406 to support the materiality of allegations directed at non-party entities in other countries. The pattern alleged by the OMC—that the non-party entities "have exhibited a pattern of extracting resources from Indigenous communities without their consent," Complaint, ¶ 21, which Defendants adamantly deny—is hardly a "routine practice," such as usual computer procedures or screening processes. *See Guidance Endodontics*, 705 F. Supp. 2d at 1269. Extracting resources from Indigenous communities cannot be argued to be "semi-automatic" or "reflexive," like taking two stairs at a time. *See id.* Because the OMC alleges conduct by non-party entities that is far too involved and complex to constitute a habit or a routine practice, Rule 406 does not justify the denial of Defendants' motion to strike the allegations of Paragraphs 19-21 of the Complaint.

The Response does not refute the propriety of Defendants' reliance on *Reiter's Beer Distribs., Inc. v. Christian Schmidt Brewing Co.*, 657 F. Supp. 136 (E.D.N.Y. 1987). In *Reiter's*, the plaintiff filed an antitrust claim, which included an allegation the defendant had "been the

4

subject of considerable other litigation revealing a *pattern* of disregard for the antitrust laws." *Id.* at 145 (emphasis added). The defendant moved to strike this allegation, and the court granted the motion, reasoning that it was "improper and irrelevant," and the "plaintiff has not sufficiently connected these past cases, or the factual settings therein, to the present action to render references thereto relevant and immune from a motion to strike." *Id.* Here, the OMC's Complaint alleges "Enel Green Power SpA, Enel Green Power International, BVA, and their subsidiaries in other countries have exhibited a *pattern* of extracting resources from Indigenous communities without their consent[.]" Complaint, ¶ 21 (emphasis added). The OMC claims *Reiter's* is inapplicable in this case because the OMC's Complaint does not include "allegations that relate to the history of litigation in the wind farm industry in general, nor has the OMC pleaded any information related to Defendants' prior lawsuits." Response at 5.[2]

The OMC's strained attempt to draw a distinction between this case and *Reiter's* is unpersuasive, because *Reiter's* did not hinge on the fact that the challenged allegations referenced prior lawsuits. Rather, *Reiter's* struck the challenged allegations because the plaintiff had not "sufficiently connected these past cases, *or the factual settings therein*, to the present action to render the references . . . immune from a motion to strike." 657 F. Supp. at 145 (emphasis added). The court's reference to "the factual settings therein" demonstrates that *Reiter's* applies more

---

[2] The OMC's effort to bring international law into this case, and into the Court's consideration of the motion to strike non-party allegations, should be rejected. The Motion seeks to strike allegations regarding the actions *of non-parties to this proceeding*, and the OMC's footnoted reference to published reports falls so far short of a proper foundation under Rule 604 to be laughable: one cited report references "Enel" only once, not any of the named OMC affiliates, as having acquired as of the 2011 publication date a 25% interest in one project of one of seven companies discussed, Dkt. # 157 at 4, n.2 at 6; the other report also mentions "Enel," and no affiliates, among one of at least nine named companies, *id.* at 4, n. 1 at 4, and neither mentions any specific conduct of "Enel." The Court need not decide whether a principle of international law applies to determine what remains at issue in the case: The remedy for the regulatory violation found by the Tenth Circuit.

5

broadly than just to allegations about prior lawsuits. *Reiter's* instructs a court may strike an irrelevant allegation in a complaint if the allegation describes a historical "factual setting" that bears no connection to the present action. The Court should strike the OMC's allegations related to historical factual settings involving indigenous communities in other countries and non-party entities which bear no connection to the Project.

**II.    DEFENDANTS' ARGUMENT REGARDING THE LEGAL STATUS OF OSAGE COUNTY—WHICH THE OMC CONCEDES—IS NOT A "TIME WASTER."**

The OMC, while apparently conceding it mischaracterized the legal status of Osage County, contends it is Defendants who are "wasting the Court's time." (Dkt. # 157, at 8, 9). Defendants are not "seeking to transform the current case into a litigation concerning reservation disestablishment." *Id*. at 9. Defendants fully accept "the mineral estate was reserved for the benefit of the Osage Nation." *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1082 (10th Cir. 2017). But, Defendants seek to prevent the OMC from, below the radar, projecting the implication an Osage Reservation continues to exist and, more importantly, to counter any suggestion a mineral reservation or the Nation's legal status supports regulatory authorities in any respect similar to those of an Indian "Reservation" under federal law.

The Response misrepresents the pleadings on this point, which *distinguish* between the "Osage Reservation" and the "Osage Mineral Estate," implying the former is a geographic reference to Indian reservation "boundaries" and the latter describes the mineral "reservation." In the Complaint, the OMC alleges, "Defendants conducted unauthorized mineral excavation activities in connection with the construction of industrial wind energy facilities on the *Osage Reservation*. As a part of this project, Defendants dug into and took minerals from the *Osage Mineral Estate*." Complaint, ¶ 3 (emphasis added). Repeatedly, the Complaint refers to the "Osage Reservation" in a geographic sense. *See id.* ¶ 9 ("[T]he property at issue is located on the Osage

6

Reservation[.]"); *id.* ¶ 24 (alleging, after being asked to remove from Kansas, "[t]he leadership of the Osage Nation at that time sent Wa-ti-an-ka and other men to *what is now the Osage Reservation* to look at this land"); *id.* ¶ 25 ("[T]he Osage Nation purchased *the current Osage Reservation* in fee simple from the Cherokee Nation."); *id.* ¶ 35 ("The surface estate of the *Osage Reservation* is subservient to the *Osage Mineral Estate*.") (emphases added).

The OMC cannot excuse misrepresenting the legal status and history of the Nation's lands by contending its repeated and misleading use of a federal Indian law term of art has no meaning.[3] The time to eliminate inaccuracy and ambiguity on the status of the lands at issue is at the onset. The Court should strike these references that are, at best, "immaterial," having "no essential or important relationship to the claim for relief . . . ." *See SSF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 978 (N.D. Okla. 2017).

### III. THE OMC CITES NO CASE LAW TO SUPPORT ITS ALLEGATIONS REGARDING FINANCIAL INFORMATION RELATED NEITHER TO THE PROJECT NOR ANY SPECIFIC DEFENDANT.

Even accounting for the breadth of the relief the OMC seeks in its Complaint, which Defendants challenge, the OMC's allegations regarding Defendants' and their non-party affiliates' financial information should be stricken for immateriality. As a preliminary matter, the Response fails to cite any authority to demonstrate why the Complaint's unfocused financial allegations are material in this litigation. The OMC relies on *Morgan v. Ramsey*, No. 11-CV-451-TCK-PJC, 2012

---

[3] Nor does "the terminology Defendants prefer to use in referring to the surface estate remain[] wholly irrelevant." (Dkt. # 157, at 9). To the contrary, the rights of Osage Winds' surface owner lessors were intended in 1906 to be within "a 'former reservation' under state jurisdiction." *Osage Nation v. Irby*, 597 F.3d 1117, 1126 (2010). The only federal or tribal law applicable here pertains to the correlative rights of surface owners under the Osage Allotment Act, Act of June 28, 1906, ch. 3572, 34 Stat. 539, § 3, and the Osage Nation's reserved mineral interests under applicable statutes and regulations.

7

WL 12837281 (N.D. Okla. Oct. 26, 2012), for the proposition a defendant's financial condition is relevant for assessing an amount of punitive damages. *See* Response at 8. Assuming *arguendo* *Morgan* applies to this case and punitive damages are in play, *Morgan* does not support the materiality of the financial condition of *non-parties*, such as "The Enel Group," however that "Group" may be defined, Complaint, ¶ 73; "projected revenue," Complaint, ¶ 69;[4] combined tax revenue received from the Project and another, unrelated project, Complaint, ¶ 70; a Defendant's total 2017 deferred taxes, Complaint, ¶ 71; or a Defendant's total number of wind farms, MW capacity, and investment since 2012, Complaint, ¶ 72. Moreover, with respect to the OMC's allegations about *projected* revenue from the Project in 2015 and 2017, Complaint, ¶¶ 68-69, the OMC's Response blithely concludes that this information "will remain relevant to the Court's consideration or the proper remedy for Defendants' unlawful conduct. And, information need not be admissible to be discoverable." (Dkt. # 157, at 7). The OMC forgets the Motion pertains to a complaint, not a discovery request, and its allegations must pertain to admissible matter. As it notes, the parties can address discoverability at the appropriate time. The Court should exercise its discretion under Rule 12(f) to strike the financial information referenced in Paragraphs 69-73 of the Complaint.

### III. DEFENDANTS HAVE DEMONSTRATED WHY THE OMC'S ALLEGATIONS ABOUT PUBLIC HEALTH IMPACTS ARE IMMATERIAL AND PREJUDICIAL.

The OMC argues its allegations about "public health concerns" associated with the Project should not be stricken because they "are not prejudicial and are material," but this argument fails on both counts. First, the OMC supports its argument with numerous citations to articles about the

---

[4] The OMC fails to acknowledge the obvious point that projected revenue is useless information even if the OMC were entitled to disgorgement of actual profits from the Project—which Defendants vehemently deny.

8

health effects that wind farms allegedly inflict upon surrounding communities. (Dkt. # 157, at 10-12). The OMC contends that, because of these alleged health effects, "the OMC had the lawful authority and right to decline to issue Defendants a permit under 25 C.F.R. § 214.7[.]" (Dkt. # 157, at 12). But the OMC could not have employed the mining regulations to prevent development based on health effects, because Osage Wind could purchase needed materials, rather than "mine." At this point in this litigation, however, the question of whether Osage Wind was required to procure a lease[5] under 25 C.F.R. § 214.7 is not at issue—the Tenth Circuit has already resolved that question in the affirmative, remanding to this Court to assess damages. *See Osage Wind LLC*, 871 F.3d at 1093.

Possibly recognizing that only remedies-related issues remain before the Court, the OMC makes the vague assertion that the alleged health concerns are somehow material to show harm to the OMC in the operation of an "unlawful wind farm." (Dkt. # 157, at 12). The OMC makes no attempt to identify the precise remedy listed in its Complaint to which these allegations are material. In the Motion, Defendants met their burden of demonstrating why allegations about alleged health effects are immaterial, and the OMC cannot overcome Defendants' arguments and authorities with a conclusory assertion that the allegations are material.

Further, contrary to the OMC's argument that Defendants have not "articulated any cognizable prejudice" that will arise from its allegations regarding public health concerns, the Motion identified several forms of prejudice. (Dkt. # 157, at 9). Allegations about public health concerns will "lead to extensive, and expensive, discovery, retention of expert witnesses, and

---

[5] While the OMC refers to a "permit," 25 C.F.R. § 214.7 plainly refers to a "lease." This confusion as to what form of authorization was required has been prevalent in the case, and continues despite the Tenth Circuit's conclusion it was a lease that was required before any crushing and reuse of rock occurred.

9

motion practice over a non-issue," and these allegations "serve[] no purpose other than to inflame the reader."[6] (Dkt. # 151, at 10-11). Prejudice for purposes of a motion to strike includes "the increased time and expense required to conduct discovery or prepare for trial on an irrelevant contention." (*Id.* at 2, citing *Kirby v. Tulsa Cmty. Coll.,* Case no. 17-CV-00224-TCK-FHM, 2018 WL 2436407, at *1 (N.D. Okla. May 30, 2018)). The Response only reinforces the notion that extensive discovery, expert testimony, and motion practice will follow if the OMC is permitted to inject the alleged health issues into this case. By striking the OMC's litany of possible public health effects, the Court can streamline the issues and spare Defendants from prejudice in the form of discovery, motion practice, and retaining expert witnesses on an irrelevant subject. Accordingly, the Court should grant Defendants' Motion to Strike the OMC's allegations about alleged public health concerns of the Project.

### IV. DEFENDANTS WITHDRAW THEIR MOTION AS TO REFERENCE TO THE UNITED STATES.

Finally, since the Court reinstated the United States after the Motion was filed, Defendants withdraw their request for the Court to strike the references to the United States in Paragraph 10 of the Complaint. As the United States was *not* a party at the time of filing the Motion, the OMC's assertion this argument was "frivolous" should be disregarded. (Dkt. # 157, at 13).

### CONCLUSION

For the reasons set forth above and in Defendant's Motion, Defendants respectfully request that this Court strike Paragraphs 19-21, 62, 69-73, and 105 from the OMC's Complaint, and order that any reference to "Osage Reservation" be replaced with "Osage County."

---

[6] The allegations are also misplaced since, as this Court found, "The land in the Wind Farm area is largely unoccupied, as shown in the photos of the area admitted into evidence. . . . The land is currently used for grazing livestock, with some existing oil and gas production facilities." *Osage Mineral Council v. Wind Capital Group*, No. 4:11-cv-00643-GFK-PJC, Dkt. # 36 at 3, Findings of Fact, ¶ 11.

10

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER**
**JETER BARNETT & RAY, P.C.**
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade** (admitted *pro hac vice*)
**Sarah M. Stevenson** (admitted *pro hac vice*)
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS,**
**OSAGE WIND, LLC, ENEL KANSAS, LLC**
**AND ENEL GREEN POWER NORTH**
**AMERICA, INC.**

## CERTIFICATE OF SERVICE

      I hereby certify that on June 10, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Abi Laura Fain
David McCullough
Jeffrey S Rasmussen
Mary Kathryn Nagle
Wilson Kirk Pipestem

The following non-ECF registrants have been served by First Class United States mail:

Charles R. Babst, Jr.<br>
Attorney-Advisor<br>
United States Department of the Interior<br>
Office of the Solicitor<br>
Tulsa Field Solicitor Office<br>
7906 East 33rd Street<br>
Tulsa, OK 74145<br>
(918) 669-7730<br>
Charles.babst@sol.doi.gov<br>
*Attorney for the United States of America*

/s/ Ryan A. Ray  
**Ryan A. Ray**