IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) |
| Plaintiff, | )<br>)<br>) |
| and | )<br>) |
| OSAGE MINERALS COUNCIL, | )<br>)<br>) |
| Intervenor-Plaintiff, | )<br>)<br>) |
| v. | ) Case No. 14-CV-704-GKF-JFJ<br>) |
| OSAGE WIND, LLC,<br>ENEL KANSAS, LLC, and<br>ENEL GREEN POWER<br>NORTH AMERICA, INC., | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**OPINION AND ORDER**

This matter comes before the court on the Motion for Leave to File a Second Amended Complaint [Doc. 98] of plaintiff the United States of America and the Partial Motion to Dismiss Osage Minerals Council's Complaint in Intervention [Doc. 150] of defendants Osage Wind, LLC; Enel Kansas, LLC; and Enel Green Power North America, Inc. (collectively, Osage Wind). Additionally, the court provides clarification as to its April 13, 2020 Minute Order granting the Motion to Intervene of Osage Minerals Council (OMC). For the reasons set forth below, the Motion for Leave to File a Second Amended Complaint of the United States is denied, and defendants' Partial Motion to Dismiss the Complaint in Intervention is granted in part and denied in part.

**Background**

This case, filed in 2014, presented the question of whether a large-scale excavation project undertaken by Osage Wind during the installation of eighty-four (84) wind turbines in Osage County, Oklahoma constituted "mining" under regulations governing development of minerals in the Osage Mineral Estate and therefore required a lease approved by the Secretary of Interior. [Doc. 2; Doc. 20]. The U.S. District Judge James H. Payne said "no," and, on September 30, 2015, entered Judgment in favor of Osage Wind. [Doc. 44; Doc. 45]. The United States, as trustee of the Osage Mineral Estate, did not appeal the district court's Judgment, but the OMC, acting on behalf of the Osage Nation, appealed.

In a September 18, 2017 Decision, the Tenth Circuit reversed the district court, and held that, pursuant to 25 C.F.R. § 214, defendants' "extraction, sorting, crushing, and use of minerals as part of its excavation work constituted 'mineral development,' thereby requiring a federally approved lease which Osage Wind failed to obtain." [Doc. 78, p. 3; *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1081-82 (10th Cir. 2017)]. The Circuit remanded the case to the district court for further proceedings consistent with the Decision. [Doc. 78, pp. 26-27]. On October 24, 2019, the Court Clerk randomly reassigned the case to the undersigned. [Doc. 89]. The court then permitted OMC to intervene in the remanded proceedings. [Doc. 140]. Osage Wind has filed a motion challenging the United States's request to file a Second Amended Complaint, as well as two motions directed to OMC's Complaint in Intervention.

**Procedural History**

The United States filed the original pleading in this matter, titled "Complaint for Declaratory Judgment and Preliminary and Permanent Injunction," while Osage Wind's excavation activities related to the Osage County wind farm were ongoing. The United States

sought a declaratory judgment that 25 C.F.R. §§ 211, 214 applied such that Osage Wind's activities required a lease approved under federal law, as well as preliminary and permanent injunctive relief to halt excavation, digging, and earth moving activities. [Doc. 2]. The original Complaint also sought "a judgment assessing damages, as determined, to the Osage mineral estate for unlawful or unauthorized mining and excavation." [Doc. 2, p 9]. Eleven days after filing the Complaint, on December 2, 2014, the United States filed the Motion for Preliminary Injunction to enjoin Osage Wind from any further excavation of the Osage Mineral Estate and to halt placement of the wind turbine bases in Osage County. [Doc. 4]. However, upon receiving information that, as of November 28, 2014, Osage Wind had completed excavation of all 84 foundations, the United States withdrew its motion for preliminary injunction. [Doc. 19].

That same day, the United States filed the First Amended Complaint for Declaratory Judgment and Damages. [Doc. 20]. The First Amended Complaint included five counts: (1) declaration regarding the applicability and violation of 25 C.F.R. § 211; (2) declaration regarding the applicability and violation of 25 C.F.R. § 214; (3) trespass; (4) continuing trespass; and (5) conversion. [Doc. 20]. The "Prayer for Relief" requested the following:

(1) a declaratory judgment under 25 U.S.C. § 2218 that defendants are in violation of 25 C.F.R. § 211 and that mining and excavation activities undertaken by defendants were and are subject to the regulations set out at 25 C.F.R. § 211;

(2) a declaratory judgment under 25 C.F.R. § 2218 that defendants are in violation of 25 C.F.R. § 214 and that mining and excavation activities and work of any nature undertaken by defendants were and are subject to the regulations set out at 25 C.F.R. § 214;

(3) a judgment assessing damages to the Osage Mineral Estate for unlawful or unauthorized mining, excavation, or other work, as set out in the federal regulations;

(4) a judgment finding defendants jointly and severally liable for damages resulting from trespass and conversion;

3

(5) a judgment finding defendants responsible for ongoing and continuing trespass and an order that structures or materials placed, without authorization, in the Mineral Estate must be removed;

(6) a judgment requiring defendants to account or provide accounting for any and all excavation, mining, and other work, as set out in the federal regulations;

(7) a judgment awarding damages, with interest, for trespass, conversion, and continuing trespass to the extent allowed under the law, plus any applicable multipliers, additions, penalties, and accruals to date of judgment;

(8) permanent injunctive relief, including enjoining defendants from any excavation, mining, or other work that concerns the Osage Mineral Estate, unless an authorized lease has been approved by the Secretary; and

(9) any other relief the Court determines to be just and proper.

[Doc. 20, pp. 12-13].

Shortly thereafter, on December 19, 2014, the United States filed a Motion for Partial Summary Judgment as to Counts I and II of the Amended Complaint [Doc. 24], and Osage Wind filed a Motion to Dismiss or for Summary Judgment. [Doc. 26]. Briefing on the motions closed on February 2, 2015. [Doc. 33]. On July 14, 2015, Osage Wind filed a Notice to the Court, advising that "construction of the Osage Wind Farm has been completed and that Wind Farm has commenced commercial operation." [Doc. 41, p. 1]. The United States moved to strike the Notice, but made no other filings prior to September 30, 2015, when Judge Payne granted defendants' motion for summary judgment and entered judgment in Osage Wind's favor. [Doc. 44; Doc. 45].

On November 30, 2015, OMC moved pursuant to Federal Rule of Civil Procedure 24 to intervene for purposes of appeal. [Doc. 46]. Therein, OMC stated that it had not previously sought to intervene because "it appeared that the United States adequately represented its interests," but that the situation had changed based upon the United States's failure to act in an expeditious manner to appeal or defend its interpretation of the regulations at issue. [Doc. 46, p. 3]. That same

day, OMC appealed the September 30 Judgment to the Tenth Circuit Court of Appeals. [Doc. 49]. On February 22, 2016, Judge Payne denied OMC's Motion to Intervene "for lack of jurisdiction due to the pending appeal." [Doc. 69].

On September 18, 2017, the Tenth Circuit issued its Decision reversing the Judgment of the district court, and remanding the matter for further proceedings. [Doc. 78]. In the Decision, the Tenth Circuit first concluded that OMC could properly prosecute the appeal, even though it had not successfully intervened in the district court proceedings. [Doc. 78, pp. 2-3, 13]. The Tenth Circuit reasoned that OMC had a "unique interest" in pursing the underlying merits case on appeal because the Osage Nation owned the beneficial interest in the Osage Mineral Estate. The Circuit further noted OMC had not previously intervened because, until the United States failed to appeal the Judgment, the United States had adequately represented OMC's interest. [*Id.* at pp. 12-13].

With respect to the merits, the Tenth Circuit held that "Osage Wind's extraction, sorting, crushing, and use of minerals as part of its excavation work constituted 'mineral development,' thereby requiring a federally approved lease which Osage Wind failed to obtain." [Doc. 78, p. 3]. Thus, the Court of Appeals reversed the district court's grant of summary judgment in Osage Wind's favor. [*Id.* at pp. 26-27]. Osage Wind filed a petition for *writ of certiorari,* which the U.S. Supreme Court denied on January 7, 2019. [Doc. 87].

Thereafter, the Tenth Circuit issued the Mandate remanding the case to the district court for further proceedings consistent with its Decision. [Doc. 88]. No party made any further filings until after reassignment of the case to the undersigned on October 24, 2019. This court conducted a Status Conference on December 11, 2019, which was attended by the United States, OMC, and Osage Wind. [Doc. 96]. During the status conference, a discussion arose regarding the nature and scope of remedies sought in the First Amended Complaint, including whether the United States

5

previously sought equitable relief and, if so, whether the case on remand from the Tenth Circuit was one for monetary damages. *See generally* [Doc. 100].

Five days after the Status Conference, on December 16, 2019, the United States moved to file a Second Amended Complaint in order to "conform with the Circuit Court decision in this case . . . and to clarify other matters, as discussed at the recent Joint Status hearing." [Doc. 98, p. 2].[1] The proposed Second Amended Complaint includes additional factual allegations that Osage Wind acted willfully, intentionally, and in bad faith and that the Osage Mineral Estate sustained irreparable harm as a result. The proposed Second Amended Complaint also includes additional remedies in the "Prayer for Relief" section, specifically: an accounting as to "any revenue attributable to the Osage Wind wind farm operation," disgorgement of all revenues resulting from the unlawful wind farm operation, a judgment to address the unjust enrichment resulting from the wind farm operation, judgment for bad faith trespass and conversion, and injunctive relief "enjoining Defendants from any further excavation, mining, *continuing trespass,* or other work *that irreparably harms* or otherwise affects the Osage mineral reserve and *including ejectment*, unless an authorized lease has been approved by the Secretary." [Doc. 103, pp. 17-18].

Defendants oppose the request, in part, based on the contention that the prior final Judgment, which the United States did not appeal, bars the United States from pursuing any further litigation. [Doc. 116, p. 22]. The court has rejected this argument, and the United States remains as plaintiff, in its role as trustee of the Osage Mineral Estate. [Doc. 153]. The merits of Osage

---

[1] Osage Wind initially responded in opposition on January 6, 2020. [Doc. 101]. Thereafter, the United States filed a Motion to Substitute Second Amended Complaint (Exhibit A to Dkt. 98) [Doc. 103], to address concerns raised by defendants in the response brief. The court granted the request [Doc. 105], and defendants filed a response in opposition reflective of the new proposed Second Amended Complaint on January 27, 2020. [Doc. 116].

Wind's remaining arguments in opposition to the United States's Motion to File Second Amended Complaint are ripe for the court's determination. [Doc. 153, p. 3].

Osage Wind specifically objects to the following proposed amendments: (1) revision to footnote 1 to reflect that only "governmental approval" over oil and gas development was not at issue; (2) the addition of factual allegations of irreparable harm so as to support injunctive relief, that Osage Wind has enjoyed unjust enrichment, and that a full accounting is warranted; (3) allegations in paragraph 52 and 68 that Osage Wind's activities were done "willfully and intentionally and in bad faith"; (4) allegations in paragraphs 53 and 63 that an "irreparable injury to the Mineral Estate" occurred; and (5) revisions to the "Prayer for Relief."

While the United States's motion to amend remained pending, OMC moved to intervene. [Doc. 104]. The court granted the motion, and ordered OMC to file its Complaint in Intervention by April 15, 2020. [Doc. 136]. OMC timely filed its Complaint in Intervention, which included the same five counts as the Amended Complaint and proposed Second Amended Complaint. [Doc. 140]. Additionally, the Complaint in Intervention seeks remedies substantially similar to those sought in the proposed Second Amended Complaint.[2] *Cf.* [Doc. 140, pp. 22-23; Doc. 103, pp. 16-17].

---

[2] The "Prayer for Relief" in the Complaint in Intervention includes additional language, not included in the proposed Second Amended Complaint's "Prayer for Relief." The additional language is indicated in italics: "Enter a judgment assessing damages or providing any appropriate remedy—*whether monetary or sounding in equity, including disgorgement of profits*—as determined, to the Osage Mineral Estate for unlawful or unauthorized mining, excavation or other work, as set out in the federal regulations"; "Enter a judgment finding Defendants jointly and severally liable for any remedy, including *monetary* damages in an amount to be proven, *ejectment or any other equitable remedy the Court finds appropriate*, resulting from the trespass, continuing trespass, and conversion"; and "Enter appropriate permanent injunctive relief, enjoining Defendants from any further excavation, mining, continuing trespass, or other work that concerns the Osage Mineral Estate, including *but not limited to* ejectment—until or unless the requisite leases are approved by the Secretary *and the OMC*." [Doc. 140, pp. 22-23].

Osage Wind moved to partially dismiss the Complaint in Intervention, primarily challenging OMC's ability to pursue equitable remedies and a continuing trespass claim. [Doc. 150]. OMC responded in opposition [Doc. 158], and defendants filed a reply. [Doc. 159]. Thus, the partial motion to dismiss is ripe for the court's determination.

### Law of the Case Analysis

In both its response in opposition to the Motion to File Second Amended Complaint and in the Partial Motion to Dismiss the Complaint in Intervention, Osage Wind argues that any remedy other than money damages for the rock that was "sorted," "crushed," and "exploited . . . as structural support" is barred by the law of the case doctrine. [Doc. 116, pp. 24-26; Doc. 150, pp. 22-24]. "The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 (10th Cir. 2000) (quoting *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991)). The doctrine "is not an inexorable command, but is to be applied with good sense." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1101 (10th Cir. 2017) (quoting *Monsisvais,* 946 F.2d at 117).

Osage Wind argues "[t]he Tenth Circuit Opinion contemplates relief limited to money damages for volumes of materials removed by actions constituting 'mining' as defined by the Opinion." [Doc. 116, p. 24]. The court separately considers, first, whether the law of the case doctrine limits the available relief to money damages, and, second, the scope of "mining" contemplated by the Tenth Circuit decision.

With respect to whether the Tenth Circuit decision limits the United States/OMC to monetary damages, the court concludes that it does not. Osage Winds points to the Tenth Circuit's statement that "the United States withdrew its request for an injunction and filed an amended

8

*complaint for damages* based on the alleged unauthorized extraction of reserved minerals" as precluding any remedy other than money damage. [Doc. 78, p. 7]. However, the statement appears in the section of the Decision titled "Factual Background," rather than the "Discussion" section which includes the court's analysis and determination of the legal issues presented. It is fundamental to application of the law of the case doctrine that the higher court must actually *decide* a legal issue—*i.e.*, the rule of law. Here, the Tenth Circuit did not decide that the United States's First Amended Complaint was limited to a complaint for damages. The damages sought by the United States were not explicitly before the court. Nor would it make "good sense" to apply the doctrine to limit the available relief because the First Amended Complaint expressly sought a judgment "requiring Defendants to account or provide an accounting for any and all excavation, mining, and other work" and a permanent injunction prohibiting Osage Wind from excavation, mining, or other work that concerns the Osage Mineral Estate, unless Osage Wind obtains the requisite lease. [Doc. 20]. Thus, the law of the case doctrine does not limit the United States/OMC to money damages.[3]

Insofar as Osage Wind contends the law of the case doctrine otherwise limits the available damages to the "operation of rock crushing," the majority of Osage Wind's argument is rendered moot by the court's conclusions herein. To the extent Osage Wind's argument is not rendered moot, application of the law of the case doctrine to potential claims for relief is more appropriate

---

[3] For the same reasons, the mandate rule does not apply to limit the available relief to money damages. The "mandate rule" is "[a]n 'important corollary' to the law of the case doctrine" and "provides that a district court must comply strictly with the mandate rendered by the reviewing court." *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir. 2001) (quoting *Ute Indian Tribe v. Utah*, 114 F.3d 1513, 1520-21 (10th Cir. 1997)). The Tenth Circuit remanded this case to the district court "for further proceedings consistent with [its] opinion." [Doc. 78, pp. 26-27]. For the reasons set forth above, the Tenth Circuit expressed no opinions regarding the forms of relief available and therefore the Tenth Circuit's mandate does not preclude relief beyond money damages.

for determination at a later stage of the litigation based upon separate motions, briefs, and evidence directed to the issue.

### Motion to File Second Amended Complaint Analysis

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading once as a matter of course within twenty-one (21) days of service or, if the pleading is one to which a responsive pleading is required, within 21 days of service of the responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Upon request, the court should freely grant leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, denial of leave to amend is appropriate in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182 (1962). "'[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court.'" *Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir. 2006) (alteration in original) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).

Osage Wind challenges the motion to amend as untimely. It is well-established that "undue delay" may justify denying a motion to amend. *See Foman*, 371 U.S. at 182. To determine whether delay is "undue," the Tenth Circuit has directed the court to "focus[]primarily on the reasons for the delay." *Minter,* 451 F.3d at 1206. "[D]enial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Id.* (quoting *Frank v. U.S. West,* 3 F.3d 1357, 1365-66 (10th Cir. 1993)).

In its motion to amend, the United States offers no explanation as to why it did not previously seek leave to amend to include allegations of intentional, willful, and bad faith conduct or to modify its "Prayer for Relief" to seek an accounting of revenue attributable to the wind farm, disgorgement, or unjust enrichment. [Doc. 98]. The reply again offers little in the way of explanation and states only that the motion was timely pursuant to the Scheduling Order entered by this court. [Doc. 121]. However, timeliness for purposes of Fed. R. Civ. P. 16 and undue delay under Fed. R. Civ. P. 15 are distinct inquiries. *See generally Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014).

Here, Osage Wind notified the United States and the court on July 14, 2015 that the wind farm had commenced commercial operation. [Doc. 41]. Thus, the United States knew the facts under which it seeks an accounting of revenue, disgorgement, and unjust enrichment on that date. Yet, the United States did not ask leave to amend to seek revenue derived from the operation during the two-and-a-half month period prior to Judge Payne's Judgment. Nor did the United States seek leave to amend—or take any action—in the six months after issuance of the Mandate and prior to transfer of the case to this court. The United States offers no adequate explanation for its delay Moreover, the United States points to no new evidence justifying amendment to include allegations of bad faith, intentional, or willful misconduct. The relevant conduct occurred over five years ago—presumably, the United States could have asserted bad faith or willful misconduct at that time. For these reasons, denial of leave to amend is warranted.

Denial of leave to amend is also justified when allowance of the requested amendment would cause undue prejudice to the opposing party. *See Foman*, 371 U.S. at 182. The Tenth Circuit has characterized prejudice as the "most important" factor in deciding a motion to amend the pleadings under Rule 15. *Minter,* 451 F.3d at 1207. Prejudice exists "when the amendment

11

unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id.* at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* (collecting cases).

Here, the new theories of relief in the proposed Second Amended Complaint do not relate to the mining, excavation, and other work that is the subject of the First Amended Complaint, but rather to the revenues generated by the wind farm operation *as a whole*. The new theories raise significant new legal and factual issues.[4] Moreover, the requested amendments will require expensive and extensive additional discovery, resulting in further delay of what has already been protracted litigation. Thus, allowance of leave would result in undue prejudice to Osage Wind, and the requested relief is therefore properly denied.

"Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint 'a moving target.'" *Minter*, 451 F.3d at 1206 (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998)). Despite knowing that the wind farm commenced commercial operation in July of 2015, the United States took no action to seek relief in the form of revenues generated by the wind farm operation prior to Judge Payne's entry of Judgment. Now, five years after initiating this case and only after the OMC obtained a favorable

---

[4] The United States argues that the request for an "accounting for any and all excavation, mining or other work" and "permanent injunctive relief" against any excavation, mining, or other work" in the First Amended Complaint adequately pled or "preserved" its request for an accounting of revenues, disgorgement, and unjust enrichment. However, the requests were explicitly limited to "excavation, mining, and other work," and included no references to revenues or the wind farm operation as a whole. Federal Rule of Civil Procedure 8 requires a pleading to contain "a demand for the relief sought." Fed. R. Civ. P. 8(a)(3). The First Amended Complaint includes nothing from which the court, or Osage Wind, could reasonably infer that the United States sought an accounting, disgorgement, or unjust enrichment related to revenues generated by the wind farm operation.

ruling from the Tenth Circuit Court of Appeals, the United States seeks leave to make its "prayer for relief" a "moving target" by adding a litany of additional forms of relief and substantially increasing the potential liability of Osage Wind. Under the circumstances, the court cannot conclude that justice requires the requested amendments.[5] The Motion to File a Second Amended Complaint of the United States is denied.[6]

### Partial Motion to Dismiss the Complaint in Intervention

The court next considers OMC's Complaint in Intervention. In the partial motion to dismiss, Osage Wind does not challenge OMC's ability to litigate the claims for declaratory relief and to pursue money damages for trespass and/or conversion (consistent with the Tenth Circuit's opinion). However, Osage Wind does ask the court to dismiss OMC's claim for continuing trespass; allegations that Osage Wind acted willfully, intentionally, and in bad faith; and certain equitable remedies, specifically disgorgement of profits, an accounting of "all revenue attributable to the Osage Wind wind farm operation," disgorgement of all revenues resulting from the wind farm operation, unjust enrichment, and injunctive relief against continuing trespass and other work that concerns the Osage Mineral Estate, including ejectment. [Doc. 150, pp. 20-21].

Prior to considering the merits of the partial motion to dismiss, however, the court clarifies its April 13, 2020 Minute Order granting OMC's motion to intervene. [Doc. 136]. OMC sought

---

[5] The court notes that Osage Wind did not object to proposed amendments in the first twenty-two paragraphs of the proposed pleading. However, based on the court's review, the requested amendments are unnecessary, as the court will apply the law of the case, regardless of whether it is referenced in the operative pleading.

[6] Based on its review of the First Amended Complaint, the court is satisfied that the requested remedies are adequately pled. Further, the United States is entitled to plead relief in the alternative and therefore the demand for damages does not preclude the request for equitable relief at this stage of the litigation. Fed. R. Civ. P. 8(a)(3); *see also Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1258 (W.D. Okla. 2012) ("[W]hile the plaintiffs will not be permitted to receive double recovery, . . . they will be permitted to pursue these alternative theories of recovery and seek both legal and equitable relief at this stage.");

intervention as a matter of right pursuant to Fed. R. Civ. P. 24(a) and permissive intervention pursuant to Fed. R. Civ. P. 24(b).

Pursuant to Federal Rule of Civil Procedure 24(a), "a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cty. v. United States*, 928 F.3d 877, 889 (10th Cir. 2019) (citing *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017)). The Tenth Circuit "has historically taken a liberal approach to intervention and thus favors the granting of motions to intervene." *Id.* at 890. As recognized by the Tenth Circuit, OMC possesses a particularized and significant interest in the litigation as the owner of the beneficial interest in the Mineral Estate, which could be impaired by this litigation. [Doc. 78, p. 12]. Further, based on the United States's previous decision not to appeal the Judgment of September 30, 2015, it is possible that the interests of OMC and the United States will diverge. *See WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009) ("T[h]e possibility of divergence of interest need not be great in order to satisfy the burden of the applicants."). Thus, OMC is entitled to intervention as a matter of right under Rule 24(a).

However, as recognized by the Advisory Committee to the Federal Rules of Civil Procedure and the Tenth Circuit, "[a]n intervention of right under [Rule 24(a)] may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." *San Juan Cty v. United States*, 503 F.3d 1163, 1189 (10th Cir. 2007) (quoting advisory committee notes to 1966 amendments ). Here, efficiency in the conduct of the proceedings requires that the remedies sought by OMC be limited to those sought by the United States in its First Amended Complaint. As discussed above, permitting the United

States to pursue revenues from the wind farm operation as a whole, at this stage of the litigation, would require extensive and expensive discovery and unduly prejudice Osage Wind. The same prejudice and inefficiencies would result if *OMC* were allowed to pursue those remedies.[7] Thus, although the court has granted OMC's motion to intervene, the intervention is restricted to seek only those remedies sought by the United States in the First Amended Complaint.[8]

Because the court restricts OMC's remedies to those sought by the United States in the First Amended Complaint, Osage Wind's request to dismiss OMC's allegations of intentional, willful, or bad faith conduct and certain equitable relief—specifically disgorgement of profits, an accounting of "all revenue attributable to the Osage Wind wind farm operation," and unjust enrichment—is granted.

With respect to the continuing trespass claim and related request for removal of the structures or materials placed, as discussed above, at this stage of the litigation, the court declined to dismiss the government's claim based on the law of the case doctrine. The court likewise declines to dismiss OMC's continuing trespass claim and related relief at this time. Rather, the court will direct the parties to specifically and separately brief the continuing trespass claim and request for removal of materials and structures placed at a later date, to be set under separate order. Such briefing shall include Osage Wind's contention that OMC's claim is barred by the doctrine of *res judicata*.

---

[7] Further, the court notes that OMC permitted the United States to represent its interests prior to its failure to pursue an appeal of the September 30, 2015 Judgment. As previously stated, the United States did not seek relief related to revenue generated from the wind farm operation prior to the Judgment, despite having knowledge that the wind farm began commercial operation in July of 2015.

[8] Insofar as OMC also seeks permissive intervention, the same restrictions would apply because, in exercising its discretion to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

This matter is set for Status and Scheduling Conference on Wednesday, July 15, 2020 at 9:30 a.m. If a court reporter is requested, counsel is directed to notify Karen Perkins, Courtroom Deputy, no later than July 8, 2020.

## Conclusion

WHEREFORE, the Motion for Leave to File a Second Amended Complaint [Doc. 98] of plaintiff the United States of America is denied. The Partial Motion to Dismiss the Osage Minerals Council's Complaint in Intervention [Doc. 150] of defendants Osage Wind, LLC; Enel Kansas, LLC; and Enel Green Power North America, Inc. is granted in part and denied in part.

The United States and OMC are limited to the relief requested in the First Amended Complaint. The parties are directed to provide the court separate briefing directed to the request that the court "[e]nter a judgment finding Defendants are responsible for an ongoing and continuing trespass and an order that structures or material placed, without authorization, in the mineral estate must be removed" at a later date to be set by the court.

IT IS SO ORDERED this 1st day of July, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE