IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | No. 14-CV-704-GKF-JFJ |
| ) | |
| OSAGE WIND, LLC, et al., ) | |
| ) | |
| Defendant(s). ) | |

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE

**BEFORE THE HONORABLE GREGORY K. FRIZZELL**

UNITED STATES DISTRICT JUDGE

JULY 15, 2020

*REPORTED BY:    BRIAN P. NEIL, RMR-CRR*
*United States Court Reporter*

A P P E A R A N C E S

**Cathryn D. McClanahan and Nolan Fields,** Assistant United States Attorneys, 110 West 7th Street, Suite 300, Tulsa, Oklahoma, 74119, attorneys on behalf of the Plaintiff;

**Charles R. Babst, Jr.,** Attorney, Department of Interior, 7906 East 33rd Street, Suite 1000, Tulsa, Oklahoma, 74145, attorney on behalf of the Plaintiff;

**Ryan A. Ray,** Attorney at Law, Norman, Wohlgemuth, Chandler, Jeter, Barnett & Ray, 401 South Boston Avenue, Suite 2900, Tulsa, Oklahoma, 74103, attorney on behalf of the Defendants;

**Lynn H. Slade and Sarah Stevenson,** Attorneys at Law, Modrall, Sperling, Roehl, Harris & Sisk, P.O. Box 2168, Albuquerque, New Mexico, 87103, attorneys on behalf of the Defendants;

**Wilson Pipestem, Abi Fain, Mary K. Nagle,** Attorneys at Law, Pipestem Law, 320 South Boston Avenue, Suite 1705, Tulsa, Oklahoma, 74103, attorneys on behalf of the Intervenor.

|   |   |
|---|---|
| 1 | Wednesday, July 15, 2020 |
| 2 | * * * * * |

3  **DEPUTY COURT CLERK:** This is Case No. 14-CV-704-GKF-JFJ, United States of America v. Osage Wind, et al. Counsel, please state your appearances for the record.

**MR. PIPESTEM:** Your Honor, this is Wilson Pipestem from Pipestem Law on behalf of the Osage Minerals Council, and with me is Mary Kathryn Nagle, Abi Fain, and Zoe Latham.

**MS. MCCLANAHAN:** United States is represented by Catherine McClanahan and Nolan Fields with client Charles Babst also present.

**MR. RAY:** And good morning, Your Honor. On behalf of all defendants, Ryan Ray, and I have co-counsel on the line with me, Lynn Slade and Sarah Stevenson.

**THE COURT:** Good morning, counsel. This is judge Frizzell. Let me start off by saying that the gist of the July 1st orders was that we are going to try the claims that are framed by the first amended complaint and to try the remedies sought by the United States in that first amended complaint.

In that regard, the United States alleged in the first amended complaint that defendants knew, or should have known, that they were required to comply with the express provisions of 25 CFR 211 or 25 CFR 214. It was not, and is not, the court's intent to bar discovery and to bar any dispute with

1  regard to the issue of innocent trespasser versus bad faith
2  trespasser which, in my view, is an issue of the measure of
3  damages for trespass; in other words, whether the defendants,
4  while legally wrongdoers, acted in the honest belief that their
5  conduct was lawful; or on the other hand, whether the defendant
6  acted with culpable negligence or a willful disregard of the
7  rights of others.  We will issue a short order clarifying that
8  position later today.
9      It would appear to me that you all have agreed to the
10 lion's share of what should be pretrial deadlines and let me
11 just get directly to that.  You all have agreed to an exchange
12 of preliminary witness and exhibit lists on September 4th of
13 2020.  You've agreed that the plaintiff's expert witness
14 reports are due on September 18th of 2020, that the
15 intervenor's expert reports are due on or before October 2nd of
16 2020.
17     With respect to the defendants' reports, I'm going to
18 set that deadline for October 30th of 2020.  As for discovery
19 cutoff, it would seem to me that with the real restrictions
20 that have been imposed by COVID that the discovery cutoff
21 should be December 18th of 2020, which would logically kick the
22 date for dispositive motions to January of 2021.  My suggestion
23 is, because the first of the year is always kind of a difficult
24 time, we would either set the 15th or the 22nd as a deadline
25 for dispositive motions.

| | |
|---|---|
| 1 | Is there any preference there?  Mr. Ray? |
| 2 | **MR. RAY:**  Your Honor, either would be fine.  I think |
| 3 | the court's correct, it would probably make sense to have that |
| 4 | about 30 days after the close of discovery.  I know that's been |
| 5 | my experience in other cases.  And so we certainly think that |
| 6 | would be appropriate but have no particular preference with |
| 7 | either one. |
| 8 | **THE COURT:**  All right.  Well, because we have |
| 9 | Christmas and New Year's -- Mr. Pipestem, any preference there? |
| 10 | **MR. PIPESTEM:**  No, Your Honor.  I think we're -- |
| 11 | Mary Kathryn, do you have any thought on that? |
| 12 | Your Honor, do you mind if I defer to her? |
| 13 | **THE COURT:**  Oh, of course. |
| 14 | **MS. NAGLE:**  No.  I think we're fine with that |
| 15 | schedule, Your Honor. |
| 16 | **THE COURT:**  All right.  Well, let's just set -- and |
| 17 | any problem with that, Ms. McClanahan. |
| 18 | **MS. MCCLANAHAN:**  No, Your Honor. |
| 19 | **THE COURT:**  All right.  We will set January 22nd, |
| 20 | which is a Friday, as a deadline for dispositive motions.  And |
| 21 | my thought is, because this is going to be tried to the court, |
| 22 | we will not set a trial date until we've ruled on dispositive |
| 23 | motions.  The reason for that is non-jury trials are more |
| 24 | easily set; in other words, we can more flexibly set a trial |
| 25 | date for a nonjury trial and I'd like to get these summary |

1  judgment motions resolved prior to going into a nonjury trial.

2  It's also my thought -- although we discussed the issue
3  that we believe needed to be briefed before trial, it's my
4  thought -- and I'll ask each of you, beginning with
5  Ms. McClanahan, for your thoughts here -- but we outlined in
6  the orders that we believed that briefing would be necessary
7  with the issues of continuing trespass, ejectment, and res
8  judicata.  And because you all have agreed essentially to this
9  schedule leading up to summary judgment motions, it would seem
10 to us that we just see what issues are raised on summary
11 judgment, and then to the extent that those issues are not
12 addressed in the motions for summary judgment, then I would
13 just direct you to file trial briefs with regard to those
14 issues.

15 Any thoughts on that, Ms. McClanahan?

16 **MS. MCCLANAHAN:**  I think that does make sense.  So
17 instead of having some piecemeal briefing here early, you're
18 just saying that everything would be included in that January
19 date?

20 **THE COURT:**  Well, I mean, to the extent -- you all,
21 frankly, will know the case better than I and so you'll be
22 informing me of your views as to the facts and the law in those
23 summary judgment motions.  And then to the extent that any of
24 those issues have not been wrestled with in the cross-motions
25 for summary judgment, then I would simply direct you to file

1  trial briefs on the issues that I believe I would need to be
2  fully educated prior to the nonjury trial.
3          **MS. MCCLANAHAN:**  I think that makes perfect sense.
4          **THE COURT:**  Mr. Slade and Mr. Ray?
5          **MR. RAY:**  Your Honor, Ryan Ray here.  I believe that
6  makes sense as well.  The one thing I would raise for
7  discussion or to get the court's view is, the joint status
8  report, I think, could be read that some, or maybe all of us,
9  contemplate multiple summary judgment motions.  I'm at least
10 aware, Your Honor, of the local rule of there only being one,
11 and so would just respectfully request clarity from the court
12 as to whether more than one motion for summary judgment is
13 contemplated by the court's directives in the order.
14         **THE COURT:**  I think we'll cross that bridge when we
15 get to it.  I think discovery may well clarify facts and issues
16 for you.  To the extent that you believe at the time, as we run
17 up on that January date, that more than one motion for summary
18 judgment needs to be filed by a party, then simply file that
19 motion seeking to file multiple motions for summary.  It's a
20 rare occurrence when that happens, but we'll just judge it on
21 the merits as we approach that January day.  How's that?
22         **MR. RAY:**  Understood, Your Honor.  Makes perfect
23 sense.  With that clarification, I believe that the manner the
24 court has outlined proceeding makes perfect sense.
25         **THE COURT:**  Ms. Nagle, Mr. Pipestem?

1   MR. PIPESTEM:  Your Honor, we have no objection to
2   that.  That makes sense to us.
3   THE COURT:  Let me just ask Mr. Ray, because
4   defendants had stated that they may wish to submit a motion for
5   summary judgment regarding equitable defenses, including
6   laches, that struck me as an interesting proposition.  Because
7   typically I've always thought that equitable defenses are not
8   necessarily amenable to summary judgment given that they are a
9   weighing of equities.  Your thoughts?
10   MR. RAY:  And perhaps that may be, Your Honor.  It
11   depends on how facts develop in discovery.  I think that's
12   something that may, as we proceed, be pursued that way.  It may
13   be pursued, as the court says, by way of trial briefs as they
14   develop.
15   THE COURT:  I don't want to prejudge it, but it
16   would seem to me that that would make most sense, to address
17   those equitable issues in a trial brief.
18   What else ought we address?  Ms. McClanahan?
19   MS. MCCLANAHAN:  There are a couple things that come
20   to mind, Your Honor.  One thing that the parties are kind of at
21   an impasse about also is the meaning of some language from your
22   earlier orders, they were minute orders, docket 135 and docket
23   138.  When you denied the United States' motion to strike Osage
24   Wind's answer, you added this sentence:  "Issues determined by
25   the Tenth Circuit are law of the case and affirmative defenses

1   going to those issues shall not be considered on remand."  And
2   then docket 138, a sentence that reads:  "The remaining issues
3   in this case involve the relief due to the Osage Mineral
4   Estate."

5   So kind of like the good faith/bad faith, this has
6   given us some heartburn as we try and work our way through
7   discovery issues.  The defendants have asked for literally tens
8   of thousands of pages of e-mails and communications about
9   things like the United States or the Solicitor's Office or the
10  local installation up in Pawhuska talking to the OMC about
11  things as far back as 2010 and 2011, I assume, to try to shore
12  up some kind of an equitable defense.

13  That has presented an incredible hardship for us so far
14  as to trying just to get those documents processed, culled out,
15  and things like that.  We've objected to that discovery based
16  on the language of docket 135 and to a lesser extent, I guess,
17  the docket 138 language, understanding that affirmative
18  defenses are not being -- or are not allowed at this point in
19  the litigation and that we are moving to the relief due to the
20  Osage Mineral Estate.

21  THE COURT:  Well, frankly, Ms. McClanahan, you're
22  hitting me cold here and I don't have No. 135 or No. 138 in
23  front of me.

24  You know, as I pointed out with regard to the measure
25  of damages for trespass, this innocent trespasser versus bad

1  faith trespasser issue, sometimes the court will use language
2  in an order for one purpose without realizing that it may be
3  read to foreclose legitimate discovery in connection with
4  another.
5      So as I sit here right now, I can't advise you with
6  regard to the meaning of 135 and 138 as it -- as it impacts
7  discovery.  I apologize but I don't think there's any way I can
8  do that here just on the fly.
9      **MS. MCCLANAHAN:**  I understand, Your Honor.  And this
10 may be something that just has to bubble up through Judge Jayne
11 as a discovery dispute.
12     The only other issue that I thought might be addressed
13 today was the statement in the joint status report where the
14 parties are kind of struggling with how to approach a
15 settlement.  So my thoughts -- and they were only on the part
16 of the United States -- was that, you know, it seems
17 appropriate to appoint a settlement judge at this point.  I
18 don't know if a formal settlement conference where everyone is
19 called in is even feasible, but it may not be advisable in this
20 kind of a case either.
21     I was thinking, you know, someone like a John Tucker or
22 somebody like that, who knows complex litigation very well,
23 could start the ball rolling maybe by talking to sides on the
24 phone or start looking at the procedural history before we make
25 a decision about a formal conference.

1       THE COURT:  All right.  Any objection from anyone if
2  I just start the ball rolling with regard to that?  I know
3  there have been some problems with some mediators.  As you
4  might suspect, we have some individuals in our adjunct
5  settlement program who are unafraid of sitting down with both
6  sides; others have said that they will not do so.  I could make
7  inquiry as to whether or not Mr. Tucker would be interested in
8  talking to all sides by telephone.
9       Any objection to that, Mr. Ray?
10      MR. RAY:  No, Your Honor.  I think as we put in the
11 status report, there's not ever been a settlement conference in
12 this case and we're ready to have one or to engage in any level
13 of discussions.  I, frankly, participated in a mediation about
14 a month ago in which every participant was in a different
15 location and we did it on a remote platform.
16      So we're flexible, Your Honor, and would like to and
17 think it is the appropriate time to have a settlement
18 conference in this case or some kind of discussions.
19      THE COURT:  Ms. Nagle, Mr. Pipestem, any thoughts?
20      MR. PIPESTEM:  Your Honor, the Osage Minerals
21 Council would participate in that.  We just worry that
22 discovery where it is the timing may not be right.  We had this
23 discussion with counsel -- opposing counsel and we decided we'd
24 probably get down the line a little bit further before these
25 discussions could be fruitful but we would not oppose getting

1  the ball rolling.
2       **THE COURT:**  Yeah.  I fully understand that and you
3  can simply convey that to Mr. Tucker or whoever else is
4  appointed.
5       So that's a great idea, Ms. McClanahan.  Anything else,
6  Ms. McClanahan?
7       **MS. MCCLANAHAN:**  Let me check with Mr. Fields.  I
8  don't think we have anything else on our punch list for today.
9  Thank you, Your Honor.
10      **THE COURT:**  All right.  Thank you.  Mr. Ray,
11 anything else on your punch list?
12      **MR. RAY:**  Your Honor, just very briefly.  I would
13 just -- if the court is looking into this issue at all that
14 Ms. McClanahan raised, I would just respectfully invite the
15 court to footnote 3 in the joint status report.  Our position
16 is, Your Honor, if the Tenth Circuit determined the question,
17 then certainly those issues are no longer in the case.  But to
18 say that there are no defenses of any kind that can be pursued,
19 especially equitable defenses, we, Your Honor, would just
20 respectfully submit that that is incorrect.  So I just would
21 like to add that clarification.
22      And with that, Your Honor, I don't believe that the
23 defendants have anything else unless Mr. Slade or Ms. Stevenson
24 has something to add that I'm not thinking of.
25      **MR. SLADE:**  Your Honor, this is Lynn Slade.  Nothing

1    further from me.

2    **THE COURT:** Thank you, sir.  Ms. Nagle or
3    Mr. Pipestem?

4    **MS. NAGLE:** Hi, this is Ms. Nagle.  I'm not sure --
5    Wilson, are you going to be sharing anything?

6    **MR. PIPESTEM:** Well, I know we need to raise the
7    issue of possibly filing an amended complaint.  Maybe you can
8    address that.

9    **MS. NAGLE:** Sure.  So, Your Honor, you know, as you
10   know, we filed our amended complaint and intervention pursuant
11   to your July 1st order.  But hearing what you had to say today
12   during this conference, you know, specifically with regards to
13   the fact that you did not intend to -- what I'm interpreting as
14   a statement that you did not intend to preclude plaintiffs from
15   making allegations or seeking discovery on claims that
16   defendants' trespass was committed in bad faith or knowingly
17   and intentionally, and certainly that is a claim that OMC feels
18   that it has rightfully raised in this action.

19            I don't know if you've seen but there's sort of still a
20   little bit of a remnant dispute in the joint status report
21   between the amended complaint we did end up filing where the
22   OMC did strike any reference to language such as "bad faith."
23   We did keep language in the complaint referencing "knowingly
24   and intentionally" and very much felt that was in line with the
25   United States' first amended complaint; specifically, paragraph

1   49.

2           But, you know, I think just hearing what you had to say
3   today, one concern I have for OMC is, you know, we don't want
4   to lose our right to allege and seek remedies for a bad faith
5   trespass.  If we're all under the understanding that that's
6   very much encompassed and included in the United States' first
7   amended complaint and that's the operative complaint, then
8   we're probably fine.  But I'm wondering if the OMC needs to
9   further amend its complaint to get that language with regards
10  to the bad faith trespass back in there.  Because we did take
11  that out under a misunderstanding that that was what we needed
12  to do to comply with Your Honor's July 1st order.

13          **THE COURT:**  Well, my view -- this is Judge
14  Frizzell -- my view is that this issue is part and parcel of a
15  trespass issue with regard to the mining or recovery of oil and
16  gas in the state of Oklahoma.

17          These cases -- I've focused -- or I've read these
18  Oklahoma Supreme Court cases and they're really fascinating,
19  *Dilworth* and *Edwards v. Lachman,* L-a-c-h-m-a-n, and I think
20  it's just inherent that the measure of damages for trespass
21  when a party comes in and takes mineral interests.  We haven't
22  even discussed another issue of whether the trespasser
23  conferred benefits upon the rightful owner of the oil and gas
24  rights which is another interesting twist.

25          One of the interesting issues here is whether that rule

1   is really intended to focus on oil and gas production.  Because
2   in that context, we can all understand how the production of
3   oil and gas can actually benefit the rightful owner.  But I
4   think there's probably an issue here as to whether or not the
5   mining of this limestone actually benefited the rightful owner
6   of that mineral estate.
7        But the issue that's really before the court, or will
8   be before the court, is whether or not the trespasser here is
9   innocent or is not, or is a bad faith trespasser, and whether
10  the trespasser is entitled to his mining costs.  I think it's
11  just part and parcel of a trespass claim in this context.  So I
12  don't think it's necessary to amend frankly.
13       And it's also interesting how the Oklahoma Supreme
14  Court has said that to deny the trespasser the offset of the
15  mining cost is equivalent to punitive damages, which is
16  something that you really don't see in other contexts.
17       So in short, I don't think you need amend.  I think
18  it's just all inherent in the issues that have already been
19  framed in the first amended complaint.
20            **MS. NAGLE:**  Thank you, Your Honor.  That's very
21  helpful.
22            **THE COURT:**  All right.  Mr. Pipestem, anything else?
23            **MR. PIPESTEM:**  Yes, Your Honor.  There's one other
24  issue we need to raise.  As you're aware, the -- or I'm sure
25  you're aware -- the U.S. Supreme Court made a decision in

1       *McGirt* related to the Muscogee (Creek) Nation reservation --

2                **THE COURT:**  What's that case?  I've never heard of
3       it.

4                **MR. PIPESTEM:**  Well, you can Google that when it's
5       all over the place.  So --

6                **THE COURT:**  I'm definitely kidding.

7                **MR. PIPESTEM:**  I know you're kidding.  So the
8       decision in *McGirt*, we have not fully analyzed whether that
9       case would have some direct bearing on this case.

10               **THE COURT:**  Right.

11               **MR. PIPESTEM:**  So we don't have an answer for you on
12      whether that is definitely an issue that will need to be
13      raised, but we wanted to just identify it as one for the court
14      that could be important to this case.  We have not gotten
15      direction yet from our client because of the newness of the
16      case.

17               But to the extent that the rationale of *McGirt* could
18      have a direct bearing on the *Irby* case and the authority of the
19      Osage Nation to exercise jurisdiction on a business who comes
20      onto the Osage reservation and enters into what would need to
21      be a consensual agreement with the Osage Nation through its
22      Minerals Council, we have not thought through all those
23      implications but we just wanted to identify it for the court as
24      an issue that we may want to raise at some point in the case.

25               **THE COURT:**  Well, this is Judge Frizzell.  I

1  anticipated that.  But how do you get around *Irby* being a final
2  decision of the Tenth Circuit?  By the way, did you try to
3  appeal *Irby* to the Supreme Court?
4              MR. PIPESTEM:  Yeah.  Cert was denied in *Irby*.  I
5  was not counsel in that case but certainly was involved, you
6  know, keeping an eye on it as counsel for the Osage Nation on
7  another case at the same time.  So, again, we have not thought
8  through exactly the implications on the Osage Nation.
9              Certainly we've looked at the case and what the Tenth
10 Circuit said and analyzed in *Solem v. Bartlett* and some of the
11 other cases.  And so, again, we don't have an answer to that at
12 this point.  But rather than raise it at a later point when the
13 court was -- where we hadn't said anything about it to the
14 other parties, we thought we would just identify it as an issue
15 today.
16             THE COURT:  Thank you very much.  Is there anything
17 else that anyone would like to raise at this point?  All right.
18 Being none, thank you all very much and we are adjourned.
19 Thank you.
20             *(The proceedings were concluded)*
21
22
23
24
25

C E R T I F I C A T E

I, Brian P. Neil, a Certified Court Reporter for the Northern District of Oklahoma, do hereby certify that the foregoing is a true and accurate transcription of my stenographic notes and is a true record of the proceedings held in above-captioned case.

I further certify that I am not employed by or related to any party to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

In witness whereof, I have hereunto set my hand this 20th day of July 2020.

s/ Brian P. Neil
_____
*Brian P. Neil, RMR-CRR*
*United States Court Reporter*