**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **OSAGE MINERALS COUNCIL,** | ) | |
| | ) | |
| **Intervenor-Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-CV-704-GKF-JFJ** |
| | ) | |
| **OSAGE WIND, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**THE UNITED STATES' MOTION TO COMPEL DISCOVERY**

TABLE OF CONTENTS

I.     **BACKGROUND**……………………………………………………….... 1

    A. Litigation Background…………………………………………………… 1

    B. Discovery Background…………………………………………………… 2

II.    **LEGAL STANDARD**……..……………………………………………….. 3

    A. Attorney-client Privilege………………………………………………..... 3

    B. Work-product Privilege………………………………………………... 4

III.    **THE DOCUMENTS ARE CRITICAL TO DETERMINING A REMEDY**…………………………………………………………… 5

    A. Defendants' state of mind as they invaded the Osage Mineral Estate is now independently relevant because, as the Court has found, the good or bad faith of the trespassers (Defendants) is a live issue in this case…………………. 6

    B. According to the sword and shield doctrine, because Defendants have relied on a "detailed legal analysis," full discovery on that issue is justified...…….. 8

    C. The United States seeks a permanent injunction that may require the Court to balance equities………………………………………………………… 11

IV.    **DEFENDANTS ARE UNABLE TO ESTABLISH ATTORNEY-CLIENT PRIVILEGE**………………………………………………………... 13

    A. There is a presumption against in-house counsel…..………………….......... 13

    B. Attorney-client privilege applies to communications, not facts...................... 14

    C. Privilege does not apply to communications with in-house counsel when they concern business decisions rather than legal advice………………………... 15

V.    **ANY POTENTIAL ATTORNEY-CLIENT PRIVILEGE IS WAIVED**….. 17

    A. Defendants' privilege log is inadequate. It does not provide a reasonable reviewer enough information to understand the basis for any privilege.……. 17

    B. Defendants intend to rely on the "detailed legal analysis" advice of counsel, and so privilege is waived...…………………………………………… 19

TABLE OF CONTENTS (CONTINUED)

**VI.    DEFENDANTS CANNOT ESTABLISH WORK-PRODUCT PRIVILEGE**....…………………………………………………….. 20

A.   Most of the documents designated as attorney work product were prepared in the course of business rather than in anticipation of litigation……………... 20

B.   Many documents were not even prepared by counsel and cannot otherwise qualify as attorney work product...…………...…………………………. 23

C.   This case is uniquely situated so that protection of these materials would not advance the usual goal of the work product doctrine………..……………… 24

D.   Almost all documents claimed to be work product privileged are actually fact work product……..…………………………………………………………… 25

**VII.   CONCLUSION** ………………………………………………………… 25

TABLE OF AUTHORITIES

<u>**Cases**</u>

*Acctg. Principals, Inc. v. Manpower, Inc.*
　　No. 07-CV-636-TCK-PJC, 2009 WL 2252123 (N.D. Okla. July 28, 2009)…… 16

*Adams v. Gateway, Inc*.
　　No. 02-CV-106, 2003 WL 23787856 (D. Utah Dec. 30, 2003)………........ 4-5, 24

*Aspex Eyewear, Inc. v. E'lite Optik, Inc*.
　　276 F.Supp.2d 1084 (D. Nev. 2003)……………………………………………… 19

*Davilla v. Enable Midstream Partners L.P.*
　　913 F.3d 959 (10th Cir. 2019)…………………………………………………. 11-12

*Dilworth v. Fortier*
　　405 P.2d 38, (Okla. 1964)……………………………………………………….. 6-7

*Empire Bank v. Dumond*
　　No. 13-CV-388-CVE-PJC, 2014 WL 12910485 (N.D. Okla. May 14, 2014)…. 24

*Employers Reinsurance Corp. v. Clarendon Nat'l Ins. Co*.
　　213 F.R.D. 422 (D. Kan. 2003)………………………………………………… 18

*Feldman v. Pioneer Petroleum, Inc*.
　　87 F.R.D. 86 (W.D. Okla. 1980)………………………………………………… 5

*Frontier Refining, Inc. v. Gorman-Rupp Co., Inc*.
　　136 F.3d 695 (10th Cir. 1998)………………………………………………… 10, 20

*Hayes v. SmithKlineBeecham Corp*.
　　No. 07-CV-682-CVE-SAJ, 2008 WL 11381397
　　(N.D. Okla. Dec. 19, 2008)………………………………………………….. 15-17, 21

*Hearn v. Rhay*
　　68 F.R.D. 574 (E.D. Wash. 1975)……………………………………………… 10

*Hickman v. Taylor*
　　329 U.S. 495 (1947)………………………………………………………........... 5

*In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*
　　133 F.R.D. 515 (N.D.Ill. 1990)………………………………………………… 17

iii

TABLE OF AUTHORITIES (CONTINUED)

*In re Com. Fin. Services, Inc.*
247 B.R. 828 (Bankr. N.D. Okla. 2000)……………………………….. 3-4, 19-20

*In re Qwest Commun. Intern. Inc.*
450 F.3d 1179 (10th Cir. 2006)……………………………………………… 25

*In re Sealed Case*
676 F.2d 793 (D.C. Cir. 1982)……………………………………………….. 24

*In re Vioxx Prods. Liab. Litig.*
501 F.Supp.2d 789 (E.D. La. 2007)………………………….............. 15-16

*Kincaid v. Wells Fargo Securities, LLC*
No. 10-CV-808-JHP-PJC, 2012 WL 712111 (N.D. Okla. March 1, 2012)… 15, 23

*Kitchen v. Herbert*
755 F.3d 1193 (10th Cir. 2014)……………………………………………… 12

*Ledgin v. Blue Cross & Blue Shield*
166 F.R.D. 496 (D.Kan. 1996)……………………………………………… 21

*Lindley v. Life Investors Ins. Co. of America*
267 F.R.D. 382 (N.D. Okla. 2010)............................................. 4-5, 13, 16, 21-23

*Maint. Enterprises, Inc. v. Dyno Nobel, Inc.*
No. 08-CV-170-B, 2009 WL 10670683 (D. Wyo. Nov. 13, 2009)…………..... 18

*Marten v. Yellow Freight System, Inc.*
1998 WL 13244 (D.Kan. Jan.6, 1998)……………………………………… 16

*Motley v. Marathon Oil Co.*
71 F.3d 1547 (10th Cir. 1995)………………………………………….... 14, 23

*Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*
230 F.R.D. 398, 411 (D.Md. 2005)..……………………………………… 16-17

*New Comm. Wireless Servs., Inc. v. SprintCom, Inc.*
287 F.3d 1 (1st Cir. 2002)..……………………………………………… 12

TABLE OF AUTHORITIES (CONTINUED)

*Pandeosingh v. Am. Med. Response, Inc.*
     No. 14-CV-01792-PAB-KMT, 2014 WL 5488415
     (D. Colo. Oct. 30, 2014)……………………………………………………….. 16

*Pinstripe, Inc. v. Manpower, Inc.*
     No. 07-CV-620-GKF-PJC, 2009 WL 2252137
     (N.D. Okla. July 28, 2009)........................................................................ 22-23

*Ponca Tribe of Indians of Okla. v. Continental Carbon Co.*
     No. CIV-05-445, 2008 WL 4372802 (W.D. Okla. Sept. 18, 2008) ………. 15-16

*Rossi v. Blue Cross and Blue Shield of Greater New York*
     540 N.E.2d 703 (1989)……………………………………………………… 13

*Safeway Inc. v. CESC Plaza Ltd. Partn.*
     261 F. Supp. 2d 439 (E.D. Va. 2003)……………………………….......... 12

*Sinclair Oil Corp. v. Texaco, Inc.*
     208 F.R.D. 329 (N.D. Okla. 2002)…………………………………………… 17, 25

*Sw. Stainless, LP v. Sappington*
     582 F.3d 1176 (10th Cir. 2009)……………........................................... 12

*United States v. Copar Pumice Co., Inc.*
     No. CIV 09-1201, 2012 WL 12898786 (D.N.M. April 23, 2012)................. 10-11

*United States v. Johnston*
     146 F.3d 785 (10th Cir. 1998)……………………………………………. 14

*United States v. Kapnison*
     743 F.2d 1450 (10th Cir. 1984)………………………………….............. 4

*United States v. Nixon*
     418 U.S. 683 (1974)……………………………………………………….4

*United States ex rel. Fago v. M & T Mortgage Corp.*
     238 F.R.D. 3 (D.D.C. 2006)……………………………………………..... 21

*Upjohn Co. v. United States*
     449 U.S. 383 (1981)……………………………………………............... 14

TABLE OF AUTHORITIES (CONTINUED)

*Western Resources, Inc. v. Union Pacific Railroad Co.*
No. 00-2043-CM, 2002 WL 181494 (D. Kan. Jan. 31, 2002)…………............... 4

**Statutes**

Act of June 28, 1906, ch. 3572, 34 Stat. 539 (Osage Allotment Act)…………………..7

**Federal Regulations**

25 C.F.R. § 211……………………………………………………………………… 6

25 C.F.R. § 211.3…………………………………………………………………… 7

25 C.F.R. § 214……………………………………………………………………… 6

25 C.F.R. § 214.7…………………………………………………………………… 7

**Court Rules**

Fed.R.Civ.P. 26………………………………………………………….. 5, 18

Fed.R.Civ.P. 33………………………………………………………….. 25

Local Civil Court Rule 26.4………………………………………………………... 18

**Other Authorities**

Edna S. Epstein, The Attorney–Client Privilege and the Work–Product Doctrine
(American Bar Assoc. 5th ed. 2007)……………………………………………….. 4, 21

James Moore, Moore's Federal Practice § 26.70(6)(a) (3d. ed. 2006)……………….. 24

Restatement (Second) of Torts § 929 (Am. Law Inst. 1979)………………………….. 8

Restatement (Second) of Torts § 941 (Am. Law Inst. 1979)…………………......... 12

Wright, Miller and Marcus, 8 Federal Practice and Procedure: Civil § 2024.....……... 5

COMES NOW Plaintiff, the United States of America, by and through R. Trent Shores, United States Attorney for the Northern District of Oklahoma, and Cathryn D. McClanahan and Nolan M. Fields IV, Assistant United States Attorneys, and requests of the Court an order to compel discovery from Defendants.

## I.     BACKGROUND.

### A.     *Litigation Background.*

Since Defendants finished extensively excavating the Osage Mineral Estate (OME), the United States has consistently lodged claims for trespass, continuing trespass and conversion in addition to two claims for declaratory judgment on the relevant regulations' interpretation. Dkts. 20, 161. The Tenth Circuit conclusively established the proper regulatory interpretation and found that Defendants were required to obtain a lease before undertaking massive excavation of the OME. Dkt. 78.

The parties' attention now turns to the damages owed for this years-long wrongful and continuing trespass and conversion. Dkt. 138 ("The remaining issues in this case involve the relief due to the Osage Mineral Estate"). This Court also determined that

> the First Amended Complaint expressly sought a judgment 'requiring Defendants to account or provide an accounting for any and all excavation, mining, and other work' and a permanent injunction prohibiting Osage Wind from excavation, mining, or other work that concerns the [OME], unless Osage Wind obtains the requisite lease. [Doc. 20]. Thus, the law of the case doctrine does not limit the United States/OMC to money damages.

Dkt. 161 at 9. Consequently, "the court will direct the parties to specifically and separately brief the continuing trespass claim and request for removal of materials and structures placed at a later date . . . ." *Id.* at 15. According to the Court's Second Amended

Scheduling Order, discovery will close on December 18, 2020, and the Court will entertain motions for summary judgment filed by January 22, 2021. Dkt. 172.

### B.     *Discovery Background.*

To date, the United States has issued three sets of discovery to Defendants. Immediately following the Court's status and scheduling conference following the Tenth Circuit's reversal and remand (and subsequent denial of certiorari by the U.S. Supreme Court), the United States issued its first set of discovery to Defendants on Dec. 13, 2019. On Jan. 24, 2020, the United States issued its second set of discovery to Defendant Osage Wind, LLC ("Osage Wind"). On March 6, 2020, the United States issued its second set of discovery to Defendants Enel Kansas, LLC ("Enel Kansas") and Enel Green Power North America ("EGPNA"), along with its third set of discovery to Osage Wind.

Addressing the three sets of discovery issued to Defendants by the United States, Osage Wind's responses are current through its sixth supplemental responses to the United States' first set of discovery and its second supplemental responses to the United States' second and third sets of discovery. Meanwhile, Defendant EGPNA has responded with three supplemental responses to the United States' first set of discovery and with one response to the United States' second set of discovery. Finally, Defendant Enel Kansas has made one response to each of the first and second sets of discovery issued by the United States.

Contemporaneous with its discovery responses, production and supplementation, Defendant Osage Wind submitted its first Privilege Log on Jan. 13, 2020 (attached as Exhibit 1), followed by updates on Feb. 7th (attached as Exhibit 2), May 21st (attached

as Exhibit 3) and June 2nd (attached as Exhibit 4). On June 12, 2020, the United States sent a deficiency letter to Defendants (attached as Exhibit 5) outlining a host of defects in Defendant Osage Wind's privilege logs and inquiring into the absence of any privilege logs from Co-defendants EGPNA and Enel Kansas.  On June 29, Defendants responded to the United States' June 12th letter (attached as Exhibit 6), provided an Amended and Supplemental Privilege Log (attached as Exhibit 7) and explained that this single document jointly addressed any privileged communications from all Defendants, as they have been represented by common counsel identified in an Addendum attached thereto.

On July 2nd, Defendants supplemented their responses in their June 29th letter, and submitted a Second Amended and Supplemental Privilege Log (attached as Exhibit 8) revising its attached Addendum to provide additional information of counsel in attempt to shore up the privileges now asserted.  Finally, on July 28th, the day before the previously-scheduled meet and confer, Defendants provided a Third Amended and Supplemental Privilege Log (attached as Exhibit 9), asserting privileges for nonparties to the instant action.  The parties participated in a meet and confer on July 29, 2020, which failed to resolve issues regarding the privileges raised by Defendants and their failure to produce highly relevant documents that directly implicate the intent of their trespassing.

## II.    LEGAL STANDARD.

### A.    *Attorney-client Privilege.*

"The purposes of the attorney-client privilege are (1) to encourage clients to communicate candidly and in confidence with their attorneys in order to obtain *legal advice* and (2) to foster the mutual loyalty and trust between attorney and client that is

fundamental to the success of the *adversarial process*." *In re Com. Fin. Services, Inc.*, 247 B.R. 828, 845 (Bankr. N.D. Okla. 2000) (emphasis added). If Defendants intend to shield otherwise discoverable material by claiming attorney-client privilege, they must show, for each document, the following elements:

> (1) A communication; (2) that was intended to be confidential, and **either**; (3) from one seeking legal advice or assistance, and; (4) to one reasonably believed to be an attorney at law, **or** (3) from an attorney; (4) giving requested legal advice or assistance; (5) which reveals a prior confidential communication from the client.

*Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 392 (N.D. Okla. 2010) (citation omitted) (emphasis added for clarity). Further, Defendants "then must establish that the privilege has not been waived." *Id.* (citing *Western Resources, Inc. v. Union Pacific Railroad Co.*, No. 00-2043-CM, 2002 WL 181494, at *4 (D. Kan. Jan. 31, 2002) (Because lack of waiver is generally considered an element of the privilege, the proponent of the privilege also has the burden to establish lack of waiver.); Edna S. Epstein, The Attorney–Client Privilege and the Work–Product Doctrine 1176 (American Bar Assoc. 5th ed. 2007)). Because all privileges are "in derogation of the search for truth," they are narrowly construed. *United States v. Kapnison*, 743 F.2d 1450, 1456 (10th Cir. 1984) (citing *United States v. Nixon*, 418 U.S. 683 (1974)).

### B.    *Work-product Privilege.*

After the United States pointed out that documents listed in various privilege logs were discoverable, Defendants issued an amended privilege log and a newly-discovery blanket claim of work product privilege for many documents. The attorney work product doctrine protects "an attorney's subjective analysis and substantive efforts in, or in

4

anticipation of, litigation from use by the adverse party." *Adams v. Gateway, Inc*., No. 02-CV-106, 2003 WL 23787856, at *8 (D. Utah Dec. 30, 2003). The attorney work-product doctrine protects from discovery of "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Hickman v. Taylor,* 329 U.S. 495, 510 (1947); *see also* Fed.R.Civ.P. 26(b)(3).

> A party seeking work product immunity under Rule 26(b)(3) must establish that the materials are (1) "documents and tangible things;" (2) "prepared in anticipation of litigation or for trial;" (3) "by or for another party or by or for that other party's representative."

*Lindley*, 267 F.R.D. at 393 (quoting *Feldman v. Pioneer Petroleum, Inc*. 87 F.R.D. 86, 88 (W.D. Okla. 1980) (quoting 8 Wright, Miller and Marcus, Federal Practice and Procedure: Civil § 2024 at 196–197)). Pursuant to Rule 26(b)(3), the United States could overcome work-product privilege if it establishes a "substantial need" for the materials and an inability "without undue hardship [to] obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

## III.    THE DOCUMENTS ARE CRITICAL TO DETERMINING A REMEDY.

The subject documents are unquestionably relevant. Defendants conceded as much by producing a privilege log in response to discovery requests. Moreover, there is a "substantial need for the materials to prepare [the United States'] case [for damages] and [Plaintiff] cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3)(A)(ii). The information establishing Defendants' purported good faith or innocent state of mind is, by its nature, exclusively within

Defendants' hands.

For example, Defendants have alleged that "Osage Wind believed, in good faith, based upon a detailed legal analysis, that neither a lease nor permit were required, and the United States delayed substantially in asserting to the contrary (until after construction and excavation had commenced)." Dkt. 116 at 19; *see also* Memorandum from Lynn Slade to Alan Woodcock, attached as Exhibit 10. The United States disagrees with the statement, but it demonstrates Defendants' purported belief regarding a lease or permit, as well as their professed lack of any knowledge a lease would be required. This representation should be tested by the evidence, and the evidence is in Defendants' exclusive possession. Moreover, if, as Defendants state, they were convinced there was no need for lease (based on their own analysis and the United States' silence), Defendants did not anticipate litigation until after excavation began and documents generated before that time could not have been created in anticipation of litigation.

> **A.      Defendants' state of mind as they invaded the Osage Mineral Estate is now independently relevant because, as the Court has found, the good or bad faith of the trespassers (Defendants) is a live issue in this case.**

This Court has recently clarified that:

> The measure of damages for the trespass claim included in the First Amended Complaint necessarily requires consideration of defendants' alleged knowledge or "bad faith." *See* [Doc. 20]; *see also Dilworth v. Fortier*, 405 P.2d 38, 45 (Okla. 1964). Moreover, the United States preserved the issue of whether Osage Wind qualified as an "innocent trespasser" by alleging that "[d]efendants knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214." [Doc. 20, ¶¶ 49, 56, 63].

Dkt. 171 at 3. Moreover, Defendants' current shielding of documents listed on the

privilege log is at odds with their contention that Oklahoma law provides the measure of damages in this case. In support, they have pointed to one case in particular. Dkts. 150 at 29, 159 at 8.

In *Dilworth v. Fortier*, 405 P.2d 38 (Okla. 1964), the Oklahoma Supreme Court considered a mineral lease with a convoluted title history in the context of a trespass action. There, the trespasser had obtained a lease, but not with all affected mineral estate owners. To determine the damages due under a trespass claim, the Court discusses at length the "good faith" of the lessee (the trespasser). Indeed, the attorney who advised the trespasser had testified before the trial court. The trespasser's "good faith" was critical to determining whether the "reasonable cost of production" could be deducted from damages. *Id*. at 49.

In the matter at hand, it is undisputed that the Osage Nation owns the OME and is entitled to its possession. Dkt. 99 at 2-3 ("The Defendants admit that in 1906, Congress enacted the Osage Allotment Act, which severed the mineral estate from the surface estate of Osage Reservation and placed the mineral estate in trust for the tribe."). The Court and parties have benefit of the Tenth Circuit's final decision that provides the law of the case. Those findings unarguably establish trespass: "Osage Wind's excavation work here constituted 'mining' under § 211.3, thereby requiring Osage Wind to secure a federally approved lease from OMC under § 214.7." Dkt. 78 at 24-25. As they must, Defendants admit "that the Tenth Circuit Court of Appeals determined certain actions of Osage Wind constituted 'mineral development' for which a federally approved lease was

required, and no such lease was issued prior to the excavation and construction activities." Dkt. 99 at 4.

Whether or not Defendants are innocent trespassers is highly relevant and will be evidenced by the documents they shield as privileged. If Defendants knew their actions may constitute trespass and yet proceeded, they proceeded at their own risk. "[I]f the defendant is a wilful [sic] trespasser, the owner is entitled to recover from him the value of any profits made by the entry." Restatement (Second) of Torts § 929 (Am. Law Inst. 1979).

**B.** ***According to the sword and shield doctrine, because Defendants have relied on a "detailed legal analysis," full discovery on that issue is justified.***

Defendants continue to advance frivolous theories to eliminate liability altogether (Dkt. 101 at 22-23; Dkt. 116 at 22-24; Dkt. 119 at 3-6; Dkt. 120 at 5-6; Dkt. 129) while deriding any claim that their trespass could conceivably be considered willful (Dkt. 116 at 19, no factual basis "exists" to allege bad faith). They assume that damages will be calculated (if at all) based on a good faith trespass (Dkt. 159 at 5, 7-9, damages will be measured by fair market value of minerals "less the expense of extracting them"). They rely on a "detailed legal analysis" (Dkts. 116 at 19 and 150 at 19-20) as proof they would not owe the more onerous "willful" or "bad faith" measure of damages.

However, this "detailed legal analysis" appears to consist solely of a memorandum sent by defense counsel Lynn H. Slade to the United States after completion of the drafts, internal memoranda, and consultations with in-house counsel etc. listed on Defendants' privilege log. Defendants' Third Amended and Supplemental Privilege Log as Annotated

by the United States,[1] attached as Exhibit 11, Nos. 48, 59.

The United States need not accept Defendants' bare contention that no further analysis exists beyond Mr. Slade's position paper. Indeed, the privilege log indicates that Defendants were not fully confident in their position as at least two other iterations of Mr. Slade's memorandum were drafted and circulated. *See* Exhibit 11, Nos. 78, 82, 5906. Moreover, in the months prior to the memorandum, there was a flurry of activity as business decisions were made regarding excavation. *See* Exhibit 11, Nos. 45, 78, 82, 5906, 89, 90, 92, 94, 111, 108, 112, 114, 122, 128, 145, 150, 165, 222, 214.

Defendants want to offer Mr. Slade's final, self-serving memorandum as proof positive that a detailed legal analysis makes their claim of good faith irrefutable.[2] Despite Defendants' e-mail redactions, their position is clear – it was simply too expensive – in rejecting the Nation's and federal government's repeated demands to halt construction without the federally-required lease:

> we are continuing operations notwithstanding the Superintendent's letter **due to extreme economic costs**, that we did so with respect for the Superintendent and the Nation, but the client has relied on the conclusion in our memo that no lease or permit is required.

*Id.* (emphasis added). "[A] litigant cannot use the work product doctrine as both a sword

---

[1]   Documents citing to this exhibit will be identified without their stamp/descriptor or leading zeros when referencing their left-most column (No.) within the Annotated Privilege Log.

[2]   *See, e.g*., OSAGE WIND PRIV-000157-164, attached as Exhibit 12, wherein Defendants provide cherry-picked sections of e-mails purporting to prove good faith, while redacting elements that apparently are less propitious. Defendants willingly produce part of their self-serving recitation of fact to prove good faith. These are the same curated facts urged as support for laches or unclean hands defenses. The United States is entitled to a full accounting of these facts.

and a shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998).

Similarly, in *United States v. Copar Pumice Co., Inc.*, the Magistrate Judge considered whether federal or state privilege law should apply to an attorney advice discovery dispute in the context of an illegal mining operation matter. The Magistrate found that, because this was not a diversity-based claim, federal law applied. *United States v. Copar Pumice Co., Inc.*, CIV 09-1201, 2012 WL 12898786, *4 (D.N.M. April 23, 2012). The *Copar* defendants refused to produce documents to the United States on the basis of attorney-client privilege and argued that the good-faith defense and waiver of privilege was limited to a narrow issue. *Id.* at *3-4. The Magistrate relied on *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) to supply the privilege waiver elements:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Copar Pumice Co., Inc.*, 2012 WL 12898786 at * 4 (citing *Hearn*, 68 F.R.D. at 581). Considering these elements, the Magistrate Judge in *Copar* found waiver of attorney-client privilege had occurred. *Id.*

Defendants in the present case have asserted privilege in a manner that directly impacts the assessment of damages. Specifically, Defendants contend that, though their actions may have been illegal, they were taken in good faith and were based on their legal counsel's advice that they were acting legally at all times. This satisfies the first *Hearn*

10

element. Defendants' affirmative reliance on "detailed legal analysis" puts defense counsel's particular advice at issue. This satisfies the second *Hearn* element. Finally, denying the United States access to Defendants' attorney's advice on this issue deprives the United States of information necessary to counter Defendants' diminution of the damages due. This satisfies the third and final *Hearn* element. Therefore, under the federal common law articulated in *Hearn*, Defendants have waived the attorney-client privilege concerning "all legal advice provided to Defendants regarding the legality of the mining, transportation, processing, marketing, trade, gift or sale of [the minerals] at or taken from [the OME]." *Copar Pumice Co., Inc.,* 2012 WL 12898786 at * 3 (relevant language added).

### C.   The United States seeks a permanent injunction that may require the Court to balance equities.

As the Court has found, "the law of the case doctrine does not limit the United States/OMC to money damages" and "the court will direct the parties to specifically and separately brief the continuing trespass claim and request for removal of materials and structures [.]" Dkt. 161 at 9, 15. The documents the United States seeks are necessary to meet the briefing burden and adequately address all the permanent injunction elements.

Recently, in *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959 (10th Cir. 2019), the Tenth Circuit considered a case involving a continuing trespass to Indian property. Unlike Defendants in this case, the trespassers in *Davilla* had entered the Indian property with a lease to place a pipeline but failed to secure a renewal after the term of lease expired. Applying the Oklahoma standard that remedies a continuing trespass with

11

a permanent injunction (ejectment), the District Court ordered the pipeline removed. On appeal, the Tenth Circuit found that state law would ordinarily be borrowed, but the peculiar circumstances of a nationwide system of right-of-ways required uniform federal standards.[3] *Davilla*, 913 F.3d at 972. Consequently, the United States may be required to brief these three elements:

> (1) whether an injunction is necessary to prevent "irreparable harm," (2) whether "the threatened injury outweighs the harm that the injunction may cause" to the enjoined party, and (3) whether the injunction would "adversely affect the public interest."

*Davilla*, 913 F.3d at 973 (quoting *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014) (quoting *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009)). Further, the Tenth Circuit specifically noted that "[i]njunctive relief is, by its very nature, fact-sensitive and case-specific." *Davilla*, 913 F.3d at 974 (quoting *New Comm. Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 13 (1st Cir. 2002)).

As to "the balancing of the equities," the deliberation "typically includes consideration of other traditional equitable factors [.]" *Safeway Inc. v. CESC Plaza Ltd. Partn.*, 261 F. Supp. 2d 439, 472 (E.D. Va. 2003). The factors may include the parties' innocence or culpability and the presence or absence of bad faith or ill motive. *Id*. As the Restatement teaches: "The defendant's good or bad faith is often important in an appraisal of his responsibility." Restatement (Second) of Torts § 941(b) (Am. Law Inst. 1979).

---

[3]   The instant case does not, of course, implicate a nationwide system or concern for uniformity. The regulation that applied to the OME and Defendants' obligation to secure a lease applied only to Osage County and cannot be applied to any other state or reserved mineral interest. Oklahoma law may well provide the appropriate standard in this case.

Defendants acknowledged the United States insisted their excavation activities cease well before suit was filed. *See, e.g.,* OSAGE WIND PRIV-000122, attached as Exhibit 13 ("BIA wanted us to stop work until we got a permit."). Yet, they carried on their destruction of the OME. Any fair consideration of the equities would require further development of evidence regarding Defendants' good faith.

## IV.   DEFENDANTS ARE UNABLE TO ESTABLISH ATTORNEY-CLIENT PRIVILEGE.

### A.    *There is a presumption against in-house counsel.*

An overwhelming number of the documents Defendants are withholding only involve communications with in-house counsel (and other non-attorney employees of Defendants'). This Court has recognized that "if in-house counsel is involved, the presumption is that the attorney's input is more likely business than legal in nature" and "heightened" scrutiny is appropriate for such privilege claims. *Lindley*, 267 F.R.D. at 389. "In that the privilege obstructs the truth-finding process and its scope is limited to that which is necessary to achieve its purpose, the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure." *Id.* (quoting *Rossi v. Blue Cross and Blue Shield of Greater New York*, 540 N.E.2d 703, 705 (1989)).

Many documents on Defendants' (most current) Third Amended and Supplemental Privilege Log only include one or two in-house attorneys in a distribution list, yet are withheld as privileged. *See* Exhibit 11, Nos. 1, 26, 5555, 89, 92, 94, 112, 128, 150. Defendants carry a heightened burden to withhold these highly relevant documents.

**B.      *Attorney-client privilege applies to communications, not facts.***

It is well-settled that attorney-client privilege protects only communications and not the underlying facts. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). Defendants' attempts to shield portions of a contract with a third party are blatant examples of improperly applying privilege to facts. The Tenth Circuit has made clear that "the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995). Rather, the "communication between a lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). Although Defendants took advantage of amending their privilege log to claim nearly every item was "advice of counsel," the documents' original descriptions, creation dates, and senders/recipients belie these late, self-serving privilege claims.

For instance, the first two documents listed (Nos. 1, 26) were initially represented to the United States as documents with unknown senders and recipients and described as "Osage Wind-IEA Contract Exhibit Tasks Spreadsheet." Exhibit 1. This contract had already been provided to the United States. After the United States objected to the scanty information and the obviously erroneous privilege claim, Defendants attempted to fortify their claim by discovering the sender (Stephen Lajoie) and the recipient (Mike Tierney, esq. and unspecified "distribution"). Exhibit 11, Nos. 1, 26. This is a thin attempt to demonstrate privilege and shield the documents. Defendants also clarified in updated descriptions that these documents are a "spreadsheet" that was "seeking the advice of

counsel, **and others**" *Id*. (emphasis added). Mike Tierney is an attorney employed by Enel Green Power North America, but a spreadsheet regarding contract provisions with "notes on status of tasks" is an unprivileged business issue. *Id*. Moreover, Defendants conspicuously fail to identify the specific "distribution" recipients and whether they are third parties. Merely including Mr. Tierney as a "recipient" (after recognizing the United States has a meritorious argument that the documents were not privileged) does not overcome Defendants' heavy burden.

### C.   Privilege does not apply to communications with in-house counsel when they concern business decisions rather than legal advice.

Regarding in-house counsel, "[c]orporate counsel are often called upon to perform tasks that go beyond the traditional tasks performed by lawyers." *Hayes v. SmithKlineBeecham Corp*., No. 07-CV-682-CVE-SAJ, 2008 WL 11381397 at *6 (N.D. Okla. Dec. 19, 2008). In this District, it is recognized that courts "have relied on two rebuttable presumptions[:] (1) if outside counsel is involved, the confidential communication is presumed to be a request for and the provision of legal advice; and (2) if in-house counsel is involved, the presumption is that the attorney's input is more likely business than legal in nature." *Kincaid v. Wells Fargo Securities, LLC*, No. 10-CV-808-JHP-PJC, 2012 WL 712111 at *2 (N.D. Okla. March 1, 2012) (internal citation omitted). "When sending an e-mail to a mixed group of legal and non-legal personnel, it is presumed that the primary purpose of the communication is not obtaining or dispensing legal advice." *Hayes*, 2008 WL 11381397 at *4 (citing *Ponca Tribe of Indians of Okla. v. Continental Carbon Co.*, No. CIV-05-445, 2008 WL 4372802, at *3 (W.D. Okla. Sept.

18, 2008); *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 789, 805–06) (E.D. La. 2007)).

Here, a number of e-mails were created by a non-lawyer employee of Defendants and were addressed to a laundry list of recipients, only one of whom is an in-house attorney. *See* Exhibit 11, Nos. 1, 26, 5555, 89, 92, 94, 112, 114, 128, 150. Still more e-mails were authored by a non-lawyer and addressed to a "mixed group of legal and non-legal personnel." *Hayes*, 2008 WL 11381397 at *4; *see* Exhibit 11, Nos. 90, 122, 145, 157. The descriptions of these documents, such as "regarding construction activities" or "regarding excavation" often indicate the communications are business and not legal in nature. *Id.*, Nos. 157 & 165. "Just because an email is copied to in-house counsel does not render the document subject to privilege." *Pandeosingh v. Am. Med. Response, Inc.*, No. 14-CV-01792-PAB-KMT, 2014 WL 5488415, at *2 (D. Colo. Oct. 30, 2014).

This Court has made clear that, when a party seeks to shield relevant information by claim of either work product or attorney-client privilege, "the issue is . . . whether the 'primary motivating purpose' behind the creation of the [document], was to aid in possible future litigation (attorney work product) or to provide legal—as opposed to business—advice (attorney-client privilege)." *Lindley*, 267 F.R.D. at 400 (citing *Acctg. Principals, Inc. v. Manpower, Inc.*, No. 07-CV-636-TCK-PJC, 2009 WL 2252123, at *7 (N.D. Okla. July 28, 2009) ("The test for work-product protection turns on the *primary purpose* for which the documents were created.") (emphasis in original) (citing *Marten v. Yellow Freight System, Inc.,* 1998 WL 13244 at *10 (D.Kan. Jan. 6, 1998))); *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B,* 230 F.R.D. 398, 411 (D.Md.2005) ("A related inquiry [to whether the primary purpose of the client's

communication with the lawyer is to obtain legal advice] is whether the advice sought and given is in the nature of business, as opposed to legal."). The subject e-mails were "prepared for both legal and non-legal review [and are] not privileged." *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 519 (N.D.Ill. 1990).

## V.   ANY POTENTIAL ATTORNEY-CLIENT PRIVILEGE WAS WAIVED.

### A.   *Defendants' privilege log is inadequate. It does not provide a reasonable reviewer enough information to understand the basis for any privilege.*

"The party asserting the attorney-client privilege bears the burden of proving that the privilege applies to documents withheld from production." *Hayes*, 2008 WL 11381397 at *2 (citing *Sinclair Oil Corp. v. Texaco, Inc*., 208 F.R.D. 329, 331 (N.D. Okla. 2002)). Likewise, regarding the work product privilege, the party seeking to withhold the otherwise relevant document from discovery bears the burden of proof.

Here, Defendants have failed to provide the necessary information to preserve any privilege and have waived the right to assert privilege. In various instances, their privilege logs fail to identify senders and recipients (instead marking the table with "N/A"), provide no description of the document or its contents, and include "titles" that give no hint as to the privileged nature of the document. *See* Exhibit 1, Nos. 1, 26, 71. The United States gave Defendants a chance to supplement their original, deficient privilege log, but the amended log barely provides any additional information and does not sustain the heavy burden to justify withholding these critical documents. *See* Exhibit 11. The current log at places leaves information blank (No. 78) and at others identifies the sender/recipient as simply "Not identified" (No. 71), "distribution" (Nos. 1, 26) or "and

others" (Nos. 92, 94, 145, 165). Exhibit 11. There is no way to determine if documents were distributed outside Defendants' organization and no way to test the claims of privilege. As local Civil Court Rule 26.4(a) mandates,

> In accordance with Fed. R. Civ. P. 26(b), when a claim of privilege or work product protection is asserted in response to a discovery request for documents, the party asserting the privilege or protection shall provide the following information with respect to each document in the form of a privilege log: the type of document; the general subject matter of the document; the date of the document; ***the author of the document, whether or not the author is a lawyer; each recipient of the document;*** and the privilege asserted.

(emphasis added). "The law is well-settled that when a party fails to make the required showing as to why a document is privileged, either by not producing a privilege log or by providing an inadequate one, the Court may deem the privilege waived." *Maint. Enterprises, Inc. v. Dyno Nobel, Inc.*, No. 08-CV-170-B, 2009 WL 10670683, at \*7 (D. Wyo. Nov. 13, 2009) (citing *Employers Reinsurance Corp. v. Clarendon Nat'l Ins. Co.*, 213 F.R.D. 422, 428 (D. Kan. 2003)).

In response to Defendants' deficient privilege logs, the United States sent a detailed letter identifying the numerous deficiencies. *See* Exhibit 5. Seventeen days later, Defendants responded with a letter (*see* Exhibit 6) and a slightly amended privilege log (*see* Exhibit 7). Additional correspondence, supplemental production by Defendants and slightly amended privilege logs followed for another month, culminating in the meet and confer on July 29, 2020, concerning the latest iteration of the privilege log. The United States has made more than a good faith effort to resolve this dispute without judicial intervention, but these efforts have been unavailing.

**B.      Defendants intend to rely on the "detailed legal analysis" advice of counsel, and so privilege is waived.**

The advice of counsel Defendants rely on appears to bear on the applicability (or inapplicability) of the subject regulations regarding leasing. Dkts. 116 at 19, 150 at 19-20. As the Court has found, this issue has been resolved and will not be revisited. Dkts. 135, 171 at 2. However, the issues of willfulness or bad faith remain highly relevant to the damage calculation.

As discussed above, Defendants point to a single, self-serving iteration of the analysis (Mr. Slade's memorandum) to affirmatively establish good faith. Defendants, naturally, seek to deny the United States' attempt to verify their "detailed legal analysis" and to obtain relevant discovery regarding the "good faith" of reliance on the so-called analysis. To the extent Defendants intend to rely on advice of counsel as a defense, they have waived privilege with respect to that advice. *Aspex Eyewear, Inc. v. E'lite Optik, Inc.*, 276 F.Supp.2d 1084, 1092 (D. Nev. 2003) ("Fundamental fairness compels the conclusion that a litigant may not use reliance on advice of counsel to support a claim or defense as a sword in litigation, and also deprive the opposing party the opportunity to test the legitimacy of that claim by asserting the attorney-client privilege or work-product doctrine as a shield.")

Under certain circumstances, disclosure of some privileged attorney-client communications may waive privilege of other communications regarding the same subject. *In re Com. Fin. Services, Inc.*, 247 B.R. at 847-848. This doctrine of subject matter waiver is necessarily narrowly construed and should only be used to promote

fairness. *Id.* at 848. The Tenth Circuit has held that litigants, such as Osage Wind, should not be able to selectively use portions of an otherwise privileged "detailed legal analysis," while depriving the United States of any means to test Defendants' characterizations. *Frontier Refining, Inc.,* 136 F.3d at 704 ("a litigant cannot use the work product document as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion").

This is exactly what Defendants have done. According to Defendants' pleadings, *supra*, any claim of bad faith must fail because Defendants secured a detailed legal analysis that gave them the go-ahead for their excavations of the OME. Review of Defendants' privilege logs shows that the so-called "legal analysis" apparently began months (or years) before this litigation was filed in November of 2014. The United States should not be forced to take Defendants' word that this analysis was detailed and supportive of their plan.

As Defendants apparently intend to pursue some theory of laches, estoppel and waiver, or unclean hands based on a hinted failure to "timely" insist on compliance with the Code of Federal Regulations, the United States is entitled to discover what Defendants knew about their obligations before a lawsuit was filed.

## VI.   DEFENDANTS CANNOT ESTABLISH WORK-PRODUCT PRIVILEGE.

### A.   *Most of the documents designated as attorney work product were prepared in the course of business rather than in anticipation of litigation.*

Defendants' privilege logs wrongly include many documents not prepared by a lawyer and also include documents clearly not prepared in anticipation of litigation.

> The party asserting work product protection must demonstrate by specific and competent evidence that each document was created in anticipation of litigation. [] Mere assertions by the party resisting discovery that the documents were created in anticipation of litigation are insufficient proof that the doctrine applies to the documents. [] The primary motivating purpose behind the creation of a document determines whether a document was prepared in anticipation of litigation. [] "Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine." [] Generally, the threat of litigation must be "real and imminent" before it is anticipated. []

*Hayes*, 2008 WL 11381397 at *6 (internal citations omitted). The work-product privilege almost always depends on "a showing that there was a reasonable threat of litigation and that the threat was the motivation for creating the document(s) in question." *Lindley*, 267 F.R.D. at 394 (quoting *Epstein*, *supra*, at 825; *United States ex rel. Fago v. M & T Mortgage Corp.*, 238 F.R.D. 3, 6 (D.D.C. 2006) ("'In anticipation of litigation' contains two related, but nevertheless distinct, concepts. One is temporal. The other is motivational.")). "Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine. The inchoate possibility, or even likely chance of litigation, does not give rise to work product." *Lindley*, 267 F.R.D. at 394 (quoting *Ledgin v. Blue Cross & Blue Shield*, 166 F.R.D. 496, 498 (D.Kan. 1996) (citations omitted)).

Defendants have been inconsistent regarding anticipation of this litigation. They contend that detailed legal analysis led to a firm conclusion and so Defendants did not expect or anticipate any litigation – were surprised, in fact, when it was filed - yet they claim work product privilege for documents produced in anticipation of litigation during the same pre-suit period. *See* Dkt. 116. Defendants and their counsel aver that, prior to

the filing of this action, they never received any communication advising that the Bureau of Indian Affairs (BIA) disagreed with the conclusion that no lease or permit was needed. Dkt. 17 at 11-12; Dkt. 28 at 9 ("Osage Wind had no reason to believe anything other than that the BIA did not dispute Osage Wind's analysis.") Such a statement makes it difficult to believe Defendants were anticipating litigation throughout 2014 and as far back as 2013. However, now that Defendants' pre-suit behavior and decision-making process is relevant and even critical to Plaintiffs' recovery, Defendants want to shield information going back months and years before litigation was filed.

For work product privilege to apply, Defendants must establish the fundamental element of "anticipation of litigation." *Lindley,* 267 F.R.D. at 393. Either their confidence in the "detailed legal analysis" and the Department of the Interior's purported response ***did*** give Defendants comfort that the excavation would not be litigated or it did ***not***. Defendants cannot have it both ways.

The Amended Privilege Logs, at best, reveal a company grappling with a business issue and perhaps trying to resolve a "business dispute" (rather than imminent litigation). As this Court noted, in a case brought by Defendants' counsel:

> [Defendant] must establish that documents involving [Defendant's Global Procurement Ombudsman, who participated in parts of Defendant's investigation] were created primarily for litigation purposes. The Ombudsman's involvement indicates a separate business purpose was the motivation. It is clear that "dual purpose" documents may not qualify for work-product protection. Documents will receive work product protection only if one of the purposes for creating the document is litigation motivated, "provided that the documents would not have been prepared in substantially identical form even had there been no litigation purpose." [] Where documents are created or information is acquired for business purposes other than litigation, the documents or information may not be protected. []

> If there is a business purpose separate and apart from litigation that caused the documents to be created, work product protection will not apply.

*Pinstripe, Inc. v. Manpower, Inc.*, No. 07-CV-620-GKF-PJC, 2009 WL 2252137, at *7 (N.D. Okla. July 28, 2009) (internal citations omitted). The Court must determine the "*primary purpose*" for which Defendants created the e-mails and documents at issue. *Lindley*, 267 F.R.D. at 400 (emphasis in original). Defendants most assuredly would have had business decisions to make regarding excavation, rock usage, and task lists in the normal course of installing a wind farm.

### B.     Many documents were not even prepared by counsel and cannot otherwise qualify as attorney work product.

In their haste to claim a blanket work product privilege, documents created by Defendants' non-attorney personnel were included in their logs. *See* Exhibit 11, Nos. 90, 92, 94, 111, 112, 114, 122, 128, 145, 150, 157. The recipient list for all these documents includes in-house counsel as well as other of Defendants' employees. However, the documents squarely fit within the Tenth Circuit's admonition: "the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Motley*, 71 F.3d at 1550-51.

This court has made clear that the party claiming work product privilege must show that "the document was prepared at the request of counsel" or "even with the knowledge of counsel." *Kincaid*, 2012 WL 712111 at *4. Otherwise, "[i]t could easily be concluded that this is a document created in the ordinary course of business." *Id*. Here, Defendants rely merely on the fact that in-house counsel is included in the laundry list of recipients receiving the e-mail, with no indication counsel requested such or followed up.

C.     *This case is uniquely situated so that protection of these materials would not advance the usual goal of the work product doctrine.*

"Courts need not allow a claim of privilege when the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege." *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982). This Court has noted that the "goal" of the attorney work product privilege is to protect "an attorney's subjective analysis and substantive efforts in, or in anticipation of, litigation from use by the adverse party." *Empire Bank v. Dumond*, No. 13-CV-388-CVE-PJC, 2014 WL 12910485, at *2 (N.D. Okla. May 14, 2014) (quoting *Adams*, 2003 WL 23787856 at *8). "Unlike the attorney-client privilege, which is designed to protect the client's confidences, the work product doctrine is designed to protect the adversary process." James Moore, Moore's Federal Practice § 26.70(6)(a), at 26–226 (3d. ed. 2006).

This case is uniquely situated. The materials sought are highly relevant, but there is no danger of their disclosure undermining Defendants' litigation strategy. The information bears greatly on the remedy that should be had, but the underlying merits of the claim and the law of the case are decided. While the privilege logs include many documents regarding the excavation activities, use of minerals, and need for permission to excavate, those issues are determined. Defendants' communications with counsel will not reveal current litigation strategy or advantage the United States with respect to any attorney's strategy or theory.

D. *Almost all documents claimed to be work product privileged are actually fact work product.*

The Tenth Circuit has recognized that there are two different types of work product privileges. Essentially, opinion work product is the mental impressions of the attorney, including his conclusions and legal theories prepared in anticipation of litigation. *Sinclair Oil Corp.*, 208 F.R.D. at 333-34. Fact work product, which include the types of document Defendants have logged, are facts and do not necessarily implicate counsel's legal theories or opinions. *In re Qwest Commun. Intern. Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) ("Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances."). For example, multiple withheld documents are sent from non-attorney employees and describe "reporting" without any indication that they are litigation-anticipatory legal opinions written by counsel rather than simply business reports regarding excavation and construction activities. *See, e.g.*, Exhibit 11, Nos. 92, 114.

## VII. CONCLUSION

Therefore, in consideration of Defendants' failure to make complete responses, the United States respectfully requests that Defendants (1) be found, in accordance with Fed. R. Civ. P. 33(b)(4), to have waived any objections to the discovery requests, (2) be compelled to fully respond to the discovery immediately, and (3) be ordered to pay all costs and expenses associated with the late discovery of any additional documents later revealed.

Respectfully submitted,

UNITED STATES OF AMERICA

R. TRENT SHORES
United States Attorney

s/ Nolan M. Fields IV
Cathryn D. McClanahan, OBA No. 14853
Nolan M. Fields IV, OBA No. 31550
Assistant United States Attorneys
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
T: 918-382-2700
cathy.mcclanahan@usdoj.gov
nolan.fields@usdoj.gov

Of Counsel:
Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor's Office
7906 East 33rd Street
Tulsa, Oklahoma 74145
T: 918-669-7902
charles.babst@sol.doi.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of August, 2020, I electronically transmitted the foregoing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ryan A. Ray
Joel L. Wohlgemuth
rar@nwcjlaw.com
jlw@nwcjlaw.com

-and-

Lynn H. Slade
Sarah S. Stevenson
Deana M. Bennett
Spencer L. Edelman
lynn.slade@modrall.com
sarah.stevenson@modrall.com
deana.bennett@modrall.com
spencer.edelman@modrall.com
*Counsel for Defendants*

David McCullough
dmccullough@dsda.com

Jeffrey S. Rasmussen
jrasmussen@ndnlaw.com

-and-

Wilson Pipestem
Mary Kathryn Nagle
Abi L. Fain
afain@pipestemlaw.com
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
*Counsel for Intervenor-Plaintiff,*
*Osage Minerals Council*

s/Nolan M. Fields IV
Nolan M. Fields IV