**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| THE OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT, OSAGE WIND, LLC'S FIRST MOTION
TO COMPEL AGAINST THE UNITED STATES**

| | |
|---|---|
| Ryan A. Ray, OBA #22281<br>NORMAN WOHLGEMUTH CHANDLER<br>JETER BARNETT & RAY, P.C.<br>3200 Mid-Continent Tower<br>401 South Boston Avenue<br>Tulsa, OK 74103<br>918-583-7571<br>918-584-7846 (facsimile) | Lynn H. Slade, *admitted pro hac vice*<br>Sarah M. Stevenson, *admitted pro hac vice*<br>MODRALL, SPERLING, ROEHL,<br>HARRIS & SISK, P.A.<br>Post Office Box 2168<br>Albuquerque, NM 87103-2168<br>505-848-1800<br>505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: August 12, 2020**

TABLE OF CONTENTS

BACKGROUND.................................................................................................................1

PROCEDURAL ISSUES IN THIS CASE ...........................................................................5

DISPUTED DISCOVERY ISSUES ...................................................................................10

CERTIFICATION OF CONFERENCE ..............................................................................14

ARGUMENT AND AUTHORITIES ...........................................................................14

I.    THE SCOPE OF DISCOVERY AND THE DEFINITION OF RELEVANCE
      DURING DISCOVERY.......................................................................................14

II.   JUDGE FRIZZELL REJECTED THE ENTIRE PREMISE OF THE UNITED STATES'
      POSITION..........................................................................................................17

III.  THE UNITED STATES WAIVED ANY RELEVANCE OBJECTION. ........................19

IV.   ANY BURDEN OBJECTION THAT THE UNITED STATES MAY NOW ATTEMPT TO
      ASSERT WOULD FAIL.......................................................................................21

      CONCLUSION AND REQUESTED RELIEF............................................................22

### TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alfwear, Inc. v. Kulkote LLC*
    No. 2:19-cv-00027-CW-JCB, 2020 U.S. Dist. LEXIS 129573
    (D. Utah July 21, 2020)...................................................................................................16

*Am. Power Chassis v. Gary Jones & Jones & Sons Chassis*
    No. 13-4134-KHV, 2017 U.S. Dist. LEXIS 232073 (D. Kan. Jan. 26, 2017)...................19

*Armstrong v. Conseco Senior Health Ins. Co.*
    No. 07-CV-659-JHP-PJC, 2009 U.S. Dist. LEXIS 142996
    (N.D. Okla. Feb. 24, 2009) ............................................................................................21

*B.H. v. Gold Fields Mining Corp.*
    No. 04-CV-0564-CVE-PJC, 2006 WL 3757809 (N.D. Okla. Dec. 19, 2006) .................15

*Burke v. New York City Police Dep't*
    115 F.R.D. 220 (S.D.N.Y. 1987) ..............................................................................15, 16

*Centurion Indus., Inc. v. Warren Steurer & Assocs.*
    665 F.2d 323 (10th Cir. 1981) .........................................................................................15

*Cohlmia v. Ardent Health Servs., LLC*
    No. 05-CV-384-GKF-PJC, 2008 U.S. Dist. LEXIS 92831
    (N.D. Okla. Nov. 14, 2008) ............................................................................................15

*Davilla v. Enable Midstream Partners L.P.*
    913 F.3d 959 (10th Cir. 2019) .........................................................................................18

*Deghand v. Wal-Mart Stores, Inc.*
    904 F. Supp. 1218 (D. Kan. 1995)...................................................................................19

*Ensminger v. Credit Law Ctr.*
    No. 19-2147-JWL, 2020 U.S. Dist. LEXIS 77787 (D. Kan. May 4, 2020).....................22

*Fragrancenet.Com, Inc. v. Fragrancex.Com, Inc.*
    No. CV 06-2225 (JFB) (AKT), 2007 U.S. Dist. LEXIS 110755
    (E.D.N.Y. Aug. 28, 2007)...............................................................................................21

*Hickman v. Taylor*
    329 U.S. 495 (1974)........................................................................................................15

*Josephs. v. Harris Corp.*
    677 F.2d 985 (3d Cir. 1982)............................................................................................15

*Kasner v. Reynolds*
    1954 OK 56, 268 P.2d 864....................................................................................18

*Mae Pendleton v. Bd. of Cty. Comm'rs for Okla. Cty.*
    No. CIV-18-707-G, 2020 U.S. Dist. LEXIS 41264 (W.D. Okla. Mar. 10, 2020) ............16

*Manning v. General Motors*
    247 F.R.D. 646 (D. Kan 2007)..................................................................................21, 22

*Mustang Run Wind Project, LLC v. Osage Cty. Bd. of Adjustment*
    2016 OK 113, 387 P.3d 333..........................................................................................3

*Osage Nation v. Bd. of Comm'rs*
    2017 OK 34, 394 P.3d 1224...................................................................................3, 4, 5

*Osage Nation ex rel. Osage Minerals Council v. Wind Capital Grp., LLC*
    No. 11-CV-643-GKF-PJC, 2011 WL 6371384 (N.D. Okla. Dec. 20, 2011) ......................2

*Perez v. El Tequila LLC*
    No. 12-CV-588-JED-PJC, 2014 U.S. Dist. LEXIS 149372
    (N.D. Okla. Oct. 20, 2014)..........................................................................................14

*Price v. Leflore Cty. Det. Ctr. Pub. Tr.*
    No. 13-CV-402-JHP, 2014 U.S. Dist. LEXIS 100125 (E.D. Okla. July 23, 2014)...........20

*Reibert v. CSAA Fire & Cas. Ins. Co.*
    No. 17-CV-350-CVE-JFJ, 2018 U.S. Dist. LEXIS 860 (N.D. Okla. Jan. 3, 2018)...........16

*Rich v. Martin Marietta Corp.*
    522 F.2d 333 (10th Cir. 1975) ...................................................................................16

*Roseberg v. Johns-Manville Corp.*
    85 F.R.D. 292 (E.D. Pa. 1980)...............................................................................15, 16

*Smith v. Ford Motor Co.*
    626 F.2d 784 (10th Cir. 1980) ...................................................................................15

*Snowden v. Connaught Lab*
    137 F.R.D. 325 (D. Kan. 1991)...................................................................................15

*Starlight Int'l, Inc. v. Herlihy*
    181 F.R.D. 494 (D. Kan. 1998)...................................................................................19

*United States v. Childs*
    No. CR-09-146-D, 2018 U.S. Dist. LEXIS 20058, 2018 WL 775018
    (W.D. Okla. Feb. 7, 2018) .........................................................................................16

*United States ex rel. Shamesh v. CA, Inc.*
    314 F.R.D. 1 (D.D.C. 2016) ......................................................16

*United States v. Osage Wind, LLC*
    871 F.3d 1078 (10th Cir. 2017) ..............................................6, 7


**<u>Federal Regulations</u>**

25 C.F.R. § 211 .................................................................... Passim

25 C.F.R. § 214 .................................................................... Passim

25 C.F.R. § 411 ...........................................................................2

25 C.F.R. § 414 ...........................................................................2


**<u>Court Rules</u>**

Fed. R. Civ. P. 12 ........................................................................5

Fed. R. Civ. P. 26 .................................................................14, 16

Fed. R. Civ. P. 33 ......................................................................19

Fed. R. Civ. P. 34 ......................................................................19

Fed. R. Civ. P. 37 ..................................................................1, 14

Fed. R. Civ. P. 56 ........................................................................5

LCvR 37 ..........................................................................1, 10, 14

iv

In accordance with FED. R. CIV. P. 37(a)(3)(B)(iii) and (iv) and LCvR 37.1, Defendant, Osage Wind, LLC ("Osage Wind"), respectfully requests that the Court enter an Order requiring the Plaintiff, the United States of America (the "United States"), to respond to interrogatories and requests for production regarding communications between and among the United States (and various agencies and representatives thereof) and Intervenor-Plaintiff, the Osage Minerals Council (the "OMC") and/or the Osage Nation (the "Nation") related to the wind-energy project that is the subject of this litigation.   The information and communications sought are relevant—especially under the discovery standard of relevance—to a number of defenses that the Defendants[1] have asserted to the tort claims and remedial relief sought by both the United States and the OMC.

## BACKGROUND

1.     This litigation was filed on November 21, 2014 by the United States "in its capacity as trustee of the Osage minerals estate, as well as to enforce compliance with federal law."  (Dkt. # 2, at ¶ 4).

2.      The subject matter of this litigation generally relates to the Osage Wind wind-energy project located in Osage County, Oklahoma (the "Project").  (*See* Dkt. # 20, at ¶ 15).

3.     The Project was first conceived by Wind Capital Group ("WCG") in 2008.  Since that time, WCG and Osage Wind have engaged and attempted to engage in communications with the OMC, the Nation, the United States Bureau of Indian Affairs (the "BIA"), and the United States Department of the Interior ("Interior") regarding all issues associated with the Project.  (Dkt. # 17-2, at 3-4, 21-25).

---

[1] "Defendants" is defined to be Osage Wind and its corporate affiliated entities and co-defendants, Enel Green Power North America, Inc. and Enel Kansas, LLC.

4.      Since that time, the OMC and the Nation have been stridently opposed to the Project on numerous grounds.  In 2011, the OMC and the Nation filed a lawsuit in this Court, "generally predicated on the allegation the [Project] [would] unlawfully interfere with its rights to develop the Osage Mineral Estate."  *Osage Nation ex rel. Osage Minerals Council v. Wind Capital Grp., LLC*, No. 11-CV-643-GKF-PJC, 2011 WL 6371384, at *2 (N.D. Okla. Dec. 20, 2011) (the "Prior Federal Litigation").

5.      In 2012, the BIA and the OMC continued to focus on concerns that the Project would affect oil and gas operations in Osage County. (Dkt. # 17-2, at 7-8).  It was not until October 10, 2013, when, for the first time, the OMC suggested that the Project "may be" subject to federal regulation requiring a "federal permit or lease."[2] (*Id.* at 7-8, 39-41).  On October 28, 2013, WCG responded to the OMC, copying BIA officials, disputing the contention that a BIA lease or permit was required for surface construction because the "Project will not remove or sell any minerals from the Project site." (*Id.* at 8, 42, 43).  The OMC did not respond to this letter. (*Id.* at 8).

6.      Project construction began on October 25, 2013, consisting primarily of site preparation and road construction. (Dkt. # 17-1, at 4). The BIA was aware in November 2013 that Osage Wind had started Project construction. (Dkt. # 28-3, at 3).  BIA was further aware in November 2013 that the Nation contended its excavation "may be subject to" lease or permit requirements, and that Osage Wind had responded that no lease or permit was required because Osage Wind "will not remove or sell any minerals from the Project site."  (Dkt. # 17-2, at 7-8).

7.      On April 25, 2014, the Nation and the OMC filed with the Osage County Board of Adjustment a "Petition to the Board of Adjustment to Rescind the Wind Capital Energy Project

---

[2] Interestingly, that letter cited regulations other than those ultimately relied upon by the Tenth Circuit Court of Appeals.  (*See* Dkt. # 17-2, at 39 (citing 25 C.F.R. §§ **4**11 and **4**14)).

Variance and Prohibit Construction at the Project Site until the Board Properly Authorizes the Project."[3]  (Copy attached as Exhibit A).

8.      "On May 8, 2014, the Board . . . denied the Nation's petition to rescind Osage Wind's conditional use permit."  *Osage Nation v. Bd. of Comm'rs*, 2017 OK 34, ¶ 5, 394 P.3d 1224, 1249 (Gurich, J., concurring in part and dissenting in part).

9.      The Nation and the OMC appealed that denial to the District Court of Osage County in May 2014 in *In the Matter of the Osage Nation and the Osage Minerals Council*, District Court of Osage County Case No. CV-2014-36 (the "Zoning Appeal").  *Id.* at ¶ 8, 394 P.3d at 1230 (majority opinion).

10.     During the pendency of the Zoning Appeal, the Nation and the OMC commenced *separate* litigation in the District Court of Osage County, styled *Osage Nation and Osage Minerals Council v. Osage County Board of County Commissioners, et al.*, District Court of Osage County Case No. CV-2014-41 (the "State Declaratory Case").  The OMC's Petition was filed on June 25, 2014 (copy attached as Exhibit B).  The State Declaratory Case Petition, which was filed *after the*

---

[3] "A zoning variance and a special permit granted by a local government entity are historic procedures designed to (1) act as a safety valve when applying a zoning regulation to 'prevent governmental restrictions from operating in such a manner that the burden on an individual landowner amounts to a taking,' and (2) adjust application of ordinances impacting upon an owner's proposed use of property unforeseen when ordinances were created."  *Mustang Run Wind Project, LLC v. Osage Cty. Bd. of Adjustment*, 2016 OK 113, ¶ 9, 387 P.3d 333, 338.  "On April 4, 2011, the Osage County Board of Commissioners adopted the Ordinance, allowing the construction and operation of wind energy facilities in Osage County."  *Osage Nation v. Bd. of Comm'rs*, 2017 OK 34, ¶ 2, 394 P.3d 1224, 1248 (Gurich, J., concurring in part and dissenting in part).  In accordance therewith, "On July 7, 2011, Osage Wind submitted an "Application for Conditional Use or Variance" to the Osage County Board of Adjustment, seeking a conditional use permit for the construction and installation of a wind energy facility in Osage County.  The Board held a hearing on Osage Wind's application for the permit on August 11, 2011. ***Certain representatives of the Nation appeared at the hearing and testified against the approval of the permit***. The Board granted Osage Wind's Application for Conditional Use or Variance, and no appeal of the Board's decision was made by any party, including the Nation."  *Id.* (emphasis in original).

OMC and the BIA were aware construction had commenced and OMC had a federal lease or permit "may be" at issue, alleged as follows:

- "Located below the entirety of the proposed Osage Wind Energy site lies the Osage Mineral Estate. The Osage Mineral Estate consists of oil and gas and solid minerals, including, but not limited to, sand, gravel, limestone and other solid minerals. The United States holds the Osage Mineral Estate in trust for the benefit of the Osage Nation."  (Exh. B, at ¶ 16, pp. 6-7).

- Paragraph 55 of the State Court Petition sought "a permanent injunction against the Defendants [including Osage Wind, LLC], enjoining and restraining the Defendants from . . . using the property **and the subsurface mineral estate** for a Wind Energy Facility."  (Emphasis added; *see also* Exh. B, at ¶ 5, Count IV Demand for Relief on p. 17; Prayer for Relief, ¶ d, pp. 19-20).

The District Court of Osage County dismissed the State Declaratory Case Petition on several grounds, the first of which was that "the Osage Minerals Council's claims in [the State Court Case] are barred by the doctrine of laches."  (October 23, 2014 Journal Entry of Judgment, at 3, ¶ 1, copy attached as Exhibit C).  The Court explained that the OMC "waited for nearly three (3) years to seek to raise those challenges, and, in the interim and as established by the face of the [State Court] Petition . . . , Osage Wind began work on the wind energy project at issue . . . ."  (*Id.*).[4]

---

[4] The OMC did not appeal, and the District Court of Osage County's Judgment accordingly became final as to the OMC.  The Nation did, however, appeal.  Of note, the Oklahoma Supreme Court affirmed the dismissal of the Nation's claims for equitable relief against the Project, concluding that "Plaintiffs brought their action almost three years after a permit was issued by the governmental agency authorizing the location of the project and after construction had commenced on a utility scale construction project. Plaintiff had knowledge of the scale and location of the project during that three-year period. We affirm the District Court's order dismissing plaintiff's petition against Osage Wind upon application of laches."  *Osage Nation v. Bd. of Comm'rs*, 2017

11.     The District Court of Osage County dismissed the Zoning Appeal on a number of similar grounds.  (Exh. C, at ¶ 5).  In addition, the Court found that the Zoning Appeal was barred by the statute of limitations.  (*Id.*).

12.     Only *after* those efforts were unsuccessful (and the OMC chose not to appeal the findings in the Zoning Appeal and the State Declaratory Case) did the OMC pass a resolution requesting the United States to file this case.  (Dkt. # 20, at ¶ 29).

13.     During the Prior Federal Litigation, the Zoning Appeal (and underlying proceedings), and the State Declaratory Case, the OMC (and the Nation) asserted numerous and ever-changing theories that all had a common ground—prohibiting the Project's existence.  This was consistent with the OMC's statements to WCG and Osage Wind as early as 2008 and 2009 to the effect that if Osage Wind was not going to make substantial monetary payments to the OMC that exceeded what the OMC would obtain from oil and gas production in the area, then the OMC's answer to the Project's existence would be "no."

### PROCEDURAL ISSUES IN THIS CASE

14.     On September 30, 2015, Judge Payne granted summary judgment in favor of the Defendants.[5]  (Dkt. # 44).  The OMC alone filed a notice of appeal challenging Judge Payne's Summary Judgment decision on the last day for the United States to appeal in accordance with the deadline of FED. R. APP. P. 4, and it also sought to intervene in this Court for the limited purpose of appeal.  (*See* Dkt. # 46, at 3 ("As such, this Court should grant intervention for purposes of appeal."); Dkt. # 49).

---

OK 34, ¶ 43, 394 P.3d 1224, 1239.  The Supreme Court further made clear that this conclusion was entirely independent of the Prior Federal Litigation in this Court.  *Id.* at ¶ 50, 394 P.3d at 1242.

[5] On December 29, 2014, the Defendants filed a dispositive motion that was alternatively asserted under FED. R. CIV. P. 12(b)(6) and/or FED. R. CIV. P. 56 in lieu of filing an answer.

15.    The Tenth Circuit Court of Appeals, in an Opinion authored by Judge Ebel, reversed Judge Payne's grant of summary judgment.

16.    The Tenth Circuit's core holding was as follows:

> This case presents the question whether a large-scale excavation project—which involved **the excavation, modification, and use** of rock and soil during the installation of wind turbines—constituted "mining" under the pertinent federal regulations that address mineral development on Indian land. When an entity engages in "mining" of minerals owned by the Osage Nation, a federally approved lease must be obtained from the tribe. 25 C.F.R. § 214.7. The Bureau of Indian Affairs (BIA) has defined "mining" as the "science, technique, and business of mineral development[.]" 25 C.F.R. § 211.3. We hold that the term "mineral development" has a broad meaning. While it includes commercial mineral extractions and offsite relocations, which are not at issue here, it also encompasses **action upon the extracted minerals** for the purpose of exploiting the minerals themselves on site.

*United States v. Osage Wind, LLC*, 871 F.3d 1078, 1081 (10th Cir. 2017) (emphasis added).

17.    The Tenth Circuit concluded that only certain of Osage Wind's activities constituted "mining"—namely, its "sort[ing] and then crush[ing] the minerals and us[ing] them as backfill to support its wind turbine structures." *Id.* at 1090. The Tenth Circuit rejected the assertion that solely breaking the ground or the Project's mere presence was unlawful:

> **We agree with Osage Wind, however, that merely encountering or incidentally disrupting mineral materials would not trigger § 211.3's definition.** In other words, "the simple removal of dirt does not constitute mining." 53A Am. Jur. 2d Mines and Minerals § 14. There is simply no sense in which the word "mineral development" means only the removal of dirt without some further manipulation, commercialization, or offsite relocation of it. The problem here is that Osage Wind did not merely dig holes in the ground—it went further. It *sorted* the rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as structural support for each wind turbine. The ultimate question is whether **this operation** constitutes "mineral development" as we have conceptualized the term. We hold that it does.

*Id.* at 1091 (first and final emphases added). In other words, it was *only because* Osage Wind had "*sorted* the rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as structural support for each wind turbine" that Osage Wind's activities constituted mining in

- 6 -

violation of federal law.  **The Court did not find the mere presence of the Project to be unlawful**.

18.     The Tenth Circuit also noted that "*[i]t might be reasonable* to adopt the construction favored by Osage Wind, which sets as the definitional boundary the commercialization of the minerals." *Id.* (emphasis added).  After all, Judge Payne agreed with Defendants' position.   But the Tenth Circuit rejected it, based upon the Indian canon of construction, which provides that "ambiguity in laws designed to favor the Indians ought 'to be liberally construed' in the Indians' favor."  *Id.* at 1090.  Any suggestion that Osage Wind's activities constituted some sort of willful bad faith cannot be squared with the Tenth Circuit's Opinion, which was expressly answering a previously unanswered question and one it found to have an ambiguous answer based upon then-existing law.

19.     Lest any doubt remain as to what activities the Tenth Circuit was, and was not, determining to be unlawful, the Tenth Circuit made that clear when it harmonized its decision with the Osage Allotment Act.   The Court noted that the Osage Allotment Act granted "expansive authority" "to surface-estate owners to use and develop their land."  *Id.* at 1092.  And the Court made clear that "merely encountering or disrupting the mineral estate does not trigger the definition of 'mining' under 25 C.F.R. § 211.3. If the minerals are not being shipped offsite or commercialized,[6] then they must be ***acted upon*** for the purpose of exploiting the minerals themselves." *Id.* at 1092 (emphasis added).

20.     The Defendants sought certiorari at the United States Supreme Court, which declined to hear the case on January 7, 2019.

---

[6] Earlier in its Opinion, the Court made clear that it meant "commercialize" to be "the sale of minerals." *Id.* at 1089.

21.     The Tenth Circuit entered mandate on April 25, 2019.

22.     No party took any action in the case until Judge Frizzell set a status conference on December 11, 2019.

23.     Within twenty (20) days, the Defendants filed their answer to the United States' First Amended Complaint.  (Dkt. # 99).  The Defendants asserted the following defenses, among others:

- Estoppel;

- Laches; and

- Waiver.

(Dkt. # 99, at 12).[7]

24.     The essential factual basis of these defenses is that the OMC and the Nation have been on a multi-year quest to oppose the Project on any conceivable grounds, have engaged in ever-shifting theories to further that end, and sought the assistance of the United States as a final means to that end when all previously asserted means failed in numerous fora (including this Court).  Further, the existing discovery record in the case demonstrates that, prior to the Tenth Circuit's ruling, it was unclear whether a lease or a permit is required under the applicable regulations, and in either event whether the requirement has ever previously been applied, or is fairly and even-handedly applied, in all circumstances in Osage County.  Beyond that, the United States (including, but not limited to, the BIA and Interior) failed to clearly and timely articulate the theories now at issue despite numerous attempts to do so over many years.

---

[7] The Defendants have also asserted similar defenses against the OMC's First Amended Complaint in Intervention.  (Dkt. # 174, at 15-16).  They also have defenses against the OMC based upon the preclusive effect of the Zoning Appeal and/or the State Declaratory Case.  (*Id.* at 15, ¶¶ 9-10).

25. Moreover, Parts 211 and 214—which the Tenth Circuit found applied—do not contemplate the expansive relief that the Plaintiffs are seeking.  The Tenth Circuit's Opinion did not decide that either Plaintiff was entitled to any specific remedial relief.  And the Tenth Circuit also did not decide that any Defendant had committed a trespass, a continuing trespass, or conversion.  The United States had not sought summary judgment on any such claims or on any remedy at the time of Judge Payne's decision that was appealed. Indeed, the United States had recognized that "the central legal issue"—which was the applicability of the regulations at issue in its declaratory judgment claims—should be decided before anything else occurred in the case. (Dkt. # 34, at 3).

26. The United States moved to strike the Defendants' answer to the First Amended Complaint on the grounds that it was untimely and that the Tenth Circuit's Opinion precluded *any* affirmative defenses in this case.  (Dkt. # 102; Dkt. # 123, at 7 (accusing the Defendants of attempting to assert—purportedly improperly—"a panoply of complete, affirmative defenses. . . . This overt gamesmanship is outrageous. Rather than turning the attention of the parties and the Court to the damages phase of this litigation, Defendants want a second bite at the apple to try to escape liability – even though it has already been determined.").

27. The Court denied the motion to strike on April 13, 2020.  (Dkt. # 135).  In the Order, the Court stated that "issues determined by the Tenth Circuit are law-of-the-case and affirmative defenses going to those issues shall not be considered on remand."  (*Id.*).

28. In the recently-filed Joint Status Report, the United States asserted that "[p]ursuant to the Court's April 13, 2020 Minute Order (Dkt. # 135), 'issues determined by the Tenth Circuit are law-of-the-case and affirmative defenses going to those issues shall not be considered on remand.' Plaintiffs' and Intervenor-Plaintiff's communications do not detail the damages or

remedies which will be awarded by Defendants, but only support Defendants' development of affirmative defenses that the Court is not considering."  (Dkt. # 166, at 6).

29.     The import and meaning of Dkt. # 135 were discussed by the Court and parties at a July 15, 2020 status conference.  (Dkt. # 173, at 8-10, 12).

30.     Later that same day, the Court entered an Order stating, in pertinent part, as follows:

The United States interprets the April 13 Minute Orders to preclude the assertion of any and all affirmative defenses. However, the Minute Orders should not be interpreted so broadly. The court intended to convey that it would apply the law-of-the-case as articulated by the Tenth Circuit, and not revisit issues determined by the Circuit. The court did not intend to limit the assertion of affirmative defenses beyond those directed to the applicability of 25 C.F.R. §§ 211, 214.

(Dkt. # 171, at 2).

## DISPUTED DISCOVERY ISSUES

31.     On January 2, 2020, Osage Wind served interrogatories and requests for Production on the United States.  (Defendant, Osage Wind, LLC's First Interrogatories and Requests for Production to Plaintiff, the United States of America, copy attached as Exhibit D).

32.     The United States responded on February 3, 2020.  (Plaintiff United States of America's Responses to Defendant Osage Wind, LLC's First Set of Interrogatories and Requests for Production, copy attached as Exhibit E).

33.     There are three (3) interrogatories and three (3) requests for production at issue in this Motion.  In accordance with LCvR 37.2(d), those are set forth verbatim as follows:

Interrogatory No. 5: Describe all communications between you and/or the Bureau of Indian Affairs and the Osage Minerals Council regarding the wind farm described in paragraph 2 of your First Amended Complaint from January 1, 2010, to the present.

Answer No. 5: The First Amended Complaint, at paragraph 2 (Dkt. 20 at p. 1 -2) does not describe or even refer to "communications." Plaintiff objects to the interrogatory as vague, as the First Amended Complaint does not describe or even refer to "communications" throughout, despite the specific language of the

interrogatory directing the reader to such language in the filed document. Other objections may exist and are not waived, but the Plaintiff is incapable of further response at this time due to this underlying, fatal flaw to the interrogatory, as drafted.

Interrogatory No. 6: Describe all communications between you and/or the Bureau of Indian Affairs and the Osage Nation regarding the wind farm described in paragraph 2 of your First Amended Complaint from January 1, 2010, to the present.

Answer No. 6: The First Amended Complaint, at paragraph 2 (Dkt. 20 at p. l-2) does not describe or even refer to "communications." Plaintiff objects to the interrogatory as vague, as the First Amended Complaint does not describe or even refer to "communications" throughout, despite the specific language of this interrogatory directing the reader to such language in the filed document. Other objections may exist and are not waived, but the Plaintiff is incapable of further response at this time due to this underlying, fatal flaw to the interrogatory, as drafted.

Interrogatory No.7: Describe all communications between you and/or the Bureau of Indian Affairs and any agency of the United States of America regarding the wind farm described in paragraph 2 of your First Amended Complaint from January 1,2010, to the present.

Answer No. 7: The First Amended Complaint, at paragraph 2 (Dkt. 20 at p. 1 -2) does not describe or even refer to "communications." Plaintiff objects to the interrogatory as vague, as the First Amended Complaint does not describe or even refer to "communications" throughout, despite the specific language of this interrogatory directing the reader to such language in the filed document. Other objections may exist and are not waived, but the Plaintiff is incapable of further response at this time due to this underlying, fatal flaw to the interrogatory, as drafted.

\*\*\*

Request for Production No. 4: Provide copies of all correspondence between you and/or the Bureau of Indian Affairs and the Osage Minerals Council regarding the wind farm described in paragraph 2 of your First Amended Complaint from January l, 2010, to the present.

Response No. 4: The First Amended Complaint. at paragraph 2 (Dkt. 20 at p. l-2) does not describe or even refer to "correspondence." Plaintiff objects to the request as vague, as the First Amended Complaint does not describe or even refer to "correspondence" throughout, despite the language of this request. Other objections may exist and are not waived, but the Plaintiff is incapable of further response at this time due to this underlying, fatal flaw to the request, as drafted.

Request for Production No. 5: Provide copies of all correspondence between you and/or the Bureau of Indian Affairs and the Osage Nation regarding the wind farm described in paragraph 2 of your First Amended Complaint from January 1, 2010, to the present.

Response No. 5: The First Amended Complaint, at paragraph 2 (Dkt. 20 at p. 1-2) does not describe or even refer to "correspondence." Plaintiff objects to the request as vague, as the First Amended Complaint does not describe or even refer to "correspondence" throughout, despite the language of this request. Other objections may exist and are not waived, but the Plaintiff is incapable of further response at this time due to this underlying, fatal flaw to the request, as drafted.

Request for Production No. 6: Provide copies of all correspondence between and among you and/or the Bureau of Indian Affairs and any agency of the United States regarding the wind farm described in paragraph 2 of your First Amended Complaint from January 1, 2010, to the present.

Response No. 6: The First Amended Complaint, at paragraph 2 (Dkt. 20 at p. 1-2) does not describe or even refer to "correspondence." Plaintiff objects to the request as vague, as the First Amended Complaint does not describe or even refer to "correspondence" throughout, despite the language of this request. Other objections may exist and are not waived, but the Plaintiff is incapable of further response at this time due to this underlying, fatal flaw to the request, as drafted.

(Exh. E, at 5-6, 12-13).

34.    Osage Wind took issue with the United States' interpretation of the foregoing discovery requests by letter dated February 26, 2020.  (Copy attached as Exhibit F).

35.    On March 6, 2020, the United States responded and explained that, in light of the February 26 letter, "[t]he BIA is diligently working on locating responsive communications. The United States expects to supplement its production as soon as counsel receives and completes its review of the responsive communications" or substantially similar words as to Osage Wind's Interrogatory Nos. 5, 6, and 7 and Osage Wind's Requests for Production 4, 5, and 6.  (*See* March 6, 2020 Letter from Nolan M. Fields, IV, at 2-3, copy attached as Exhibit G).

36.     On May 21, 2020, Osage Wind inquired of the status of the supplements promised in the March 6 letter.  (*See* May 21, 2020 Letter from Lynn H. Slade, at 2, copy attached as Exhibit H).

37.     On May 29, 2020, the United States responded and advised:

While the U.S. intended to supplement the above items once counsel had received and completed its review of the communications sought, it was "barred from proceeding further in this case" by the Court's Order on April 14, 2020. (Dkt. 139.) The Court reconsidered its previous action and "restored [the U.S.] as plaintiff, in its role as trustee of the Osage Mineral Estate" through its Opinion and Order dated May 7, 2020. (Dkt. 153.)

Considering the Court has recently ruled that the "issues determined by the Tenth Circuit are law-of-the-case and affirmative defenses going to those issues shall not be considered on remand[,]" the U.S. now objects to the seven categories of communications and correspondence identified above [which included the three interrogatories and three requests for production at issue] as not relevant to the proceedings on remand. Minute Order, Dkt. 135, April 13, 2020.

(*See* May 29, 2020 Letter from Nolan M. Fields, IV, at 2, copy attached as Exhibit I).

38.     Osage Wind disputed the propriety of the positions taken in the May 29, 2020 letter on June 10, 2020.  (*See* June 10, 2020 Letter from Lynn H. Slade, at 2, copy attached as Exhibit J).

39.     In response, the United States claimed that "[t]he United States has not declined to answer any interrogatories and has not withheld any documents related to these seven particular discovery items."  (*See* June 18, 2020 Letter from Nolan M. Fields, IV, at 1, copy attached as Exhibit K).  The United States further explained that, for its relevance objection to these discovery requests, the United States "is relying on the law-of-the-case, a direct quotation from an Order issued by the District Court judge, stemming from a recent event in the case."  (*Id.* at 2).

40.     On June 23, 2020, Osage Wind pointed out that the United States had not, in fact, answered any of these discovery requests, but instead objected to all requests on the grounds of relevance.  (*See* June 23, 2020 E-mail from Lynn H. Slade, at 1, copy attached as Exhibit L).

41.     That same day, the United States made clear that:

> the United States ***did not*** identify or produce any responsive documents. As noted in my June 18th letter, the United States' duty to supplement regarding these seven particular discovery items was relieved by the Court's Minute Order issued April 13, 2020 (Dkt. 135). Commensurate with the Court's Order, the United States is not presently reviewing or identifying documents responsive to the above discovery items.

(*See* June 23, 2020 E-mail from Nolan M. Fields, IV, at 1, copy attached as Exhibit M, emphasis added).

### CERTIFICATION OF CONFERENCE

In accordance with Fed. R. Civ. P. 37(a)(2)(A) and LCvR. 37.1, Osage Wind advises the Court that its counsel, Ryan A. Ray and Lynn H. Slade, conferred in good faith with counsel for the United States, Cathy McClanahan and Nolan M. Fields, IV, via telephone on July 29, 2020, but has been unable to resolve these discovery issues.

## ARGUMENT AND AUTHORITIES

### I.    THE SCOPE OF DISCOVERY AND THE DEFINITION OF RELEVANCE DURING DISCOVERY.

FED. R. CIV. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim ***or defense*** and proportional to the needs of the case . . . ."  (emphasis added).  "Liberal discovery rules provide parties with the fullest possible knowledge of the operative facts of the case before trial to reduce surprise and ensure that cases are decided on the merits."  *Perez v. El Tequila LLC*, No. 12-CV-588-JED-PJC, 2014 U.S. Dist. LEXIS 149372, at *15 (N.D. Okla. Oct. 20, 2014).

- 14 -

"The Federal Rules of Civil Procedure are designed to allow liberal pretrial discovery 'to make the task of the trier of fact more manageable by means of an orderly presentation of complex issues of fact.'" *B.H. v. Gold Fields Mining Corp.*, No. 04-CV-0564-CVE-PJC, 2006 WL 3757809, *3 (N.D. Okla. Dec. 19, 2006) (quoting *Smith v. Ford Motor Co.*, 626 F.2d 784, 797 (10th Cir. 1980)). Accordingly, it is well established that pretrial discovery is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *see also Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 326 (10th Cir. 1981) (explaining that "relevancy is construed more broadly during discovery than at trial").

Objections stating that requests are overly broad and burdensome are meritless *absent factual support*. *Cohlmia v. Ardent Health Servs., LLC*, No. 05-CV-384-GKF-PJC, 2008 U.S. Dist. LEXIS 92831, at *9 (N.D. Okla. Nov. 14, 2008) ("A party resisting discovery on the ground that the requests are overly broad has the burden of supporting its objection, unless the request is overly broad on its face."); *see also Snowden v. Connaught Lab*, 137 F.R.D. 325, 332 (D. Kan. 1991) ("burden is on the party objecting to show that responding to the discovery is unduly burdensome"); *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987) (burden is on objecting party to establish irrelevancy). Where courts have considered conclusory objections like those asserted here, the boilerplate objections have been denied. *See Roseberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980) (court overruled defendant's objections which repeatedly asserted objections of "overly broad, burdensome, and irrelevant").

In fact, a simple, unsupported assertion that a discovery request is "burdensome" has been ruled to be neither an answer nor an objection, and may constitute a waiver of any legitimate objection. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). In asserting a burdensome objection, the United States must prove that any such burden is unreasonable when balanced

- 15 -

against Osage Wind's need for the information being sought.  *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975).  The United States has made no showing of *any* burden, nor has it even attempted to do so.  Nor can the United States overcome the broad construction afforded relevance at the discovery stage of this proceeding, especially based upon an interpretation of an Order that the Judge who issued it has since rejected.

"Following the 2015 Amendment [to Fed. R. Civ. P. 26], 'relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.'" *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 U.S. Dist. LEXIS 860, at *6 (N.D. Okla. Jan. 3, 2018) (quoting *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016).  "'[R]elevance' in the discovery context does not necessarily have the same meaning as 'relevance' for purposes of admissibility at trial." *Mae Pendleton v. Bd. of Cty. Comm'rs for Okla. Cty.*, No. CIV-18-707-G, 2020 U.S. Dist. LEXIS 41264, at *3-4 (W.D. Okla. Mar. 10, 2020).  "'[R]elevance' has been broadly defined to include 'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Alfwear, Inc. v. Kulkote, LLC*, No. 2:19-cv-00027-CW-JCB, 2020 U.S. Dist. LEXIS 129573, at *3 (D. Utah July 21, 2020)  (quoting *United States v. Childs*, No. CR-09-146-D, 2018 U.S. Dist. LEXIS 20058, 2018 WL 775018, at *3 (W.D. Okla. Feb. 7, 2018) (citations omitted)).

Since the United States raises principally a relevance objection, it bears the burden of establishing that the requested documents are not relevant under the governing standard, *Burke*, 115 F.R.D. at 224, and it must provide the Court with specific factual assertions to support their relevance objections.  *Roseberg*, 85 F.R.D. at 296-97.  As with its other objections, the United States has not supplied adequate factual support for its disingenuous relevance objections.

The purpose of the liberal discovery rules is to ensure that the basic issues or facts are disclosed to the fullest extent practicable. With these general principles in mind, the United States' responses to Osage Wind's three (3) interrogatories and three (3) requests for production at issue are clearly deficient.

## II.     JUDGE FRIZZELL REJECTED THE ENTIRE PREMISE OF THE UNITED STATES' POSITION.

The United States' most recent iteration of its position on the interrogatories and requests for production at issue in this Motion was described in the July 13, 2020 Joint Status Report:

> Pursuant to the Court's April 13, 2020 Minute Order (Dkt. 135), "issues determined by the Tenth Circuit are law-of-the-case and affirmative defenses going to those issues shall not be considered on remand." Plaintiffs' and Intervenor-Plaintiff's communications do not detail the damages or remedies which will be awarded by Defendants, but only support Defendants' development of affirmative defenses that the Court is not considering. Accordingly, the United States resists Defendants' continued pursuit of these communications . . . .

(Dkt. # 166, at 6).  A similar position was expressed by the United States during the July 15, 2020 status conference.   (Dkt. # 173, at 8-10).  Judge Frizzell explained in response:

> Well, frankly, Ms. McClanahan, you're hitting me cold here and I don't have No. 135 or No. 138 in front of me.
>
> You know, . . .  sometimes the court will use language in an order for one purpose without realizing that it may be read to foreclose legitimate discovery in connection with another.

(*Id.* at 9-10).  But the Court indicated his intent to enter a subsequent clarifying order, which in fact occurred and stated, in pertinent part, as follows:

> The United States interprets the April 13 Minute Orders to preclude the assertion of any and all affirmative defenses. However, the Minute Orders should not be interpreted so broadly. The court intended to convey that it would apply the law-of-the-case as articulated by the Tenth Circuit, and not revisit issues determined by the Circuit. ***The court did not intend to limit the assertion of affirmative defenses beyond those directed to the applicability of 25 C.F.R. §§ 211, 214.***

(Dkt. # 171, at 2, emphasis added).

- 17 -

None of the Defendants' affirmative defenses—such as waiver, estoppel, laches, or preclusion (res judicata and collateral estoppel) are asserted at the present time to claim that Parts 211 or 214 of Title 25 of the CFRs do not apply in this case.  But those defenses do go to remedy, especially since the United States seeks, as remedial relief, "an order that structures or materials placed, without authorization, in the mineral estate must be removed."  (Dkt. # 20, at 12, ¶ 5).  The United States also seeks "permanent injunctive relief" against the Project's operation.  (*Id.* at 13, ¶ 8).

Since the United States (including BIA and Interior) was on notice of the Project's planned operations for years (as was the OMC), communications among them regarding the Project, the bases for challenging it, and the development of the theories espoused in this litigation are certainly relevant under the discovery theory of relevance.  This is particularly so since an injunction of the kind the United States seeks cannot be entered without "a full weighing of the equities."  *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 971 (10th Cir. 2019).[8]  Communications between and among the United States (and various agencies and representatives thereof) and the OMC and/or the Nation about the Project are accordingly relevant to numerous still-pending issues in the litigation, as specifically framed by Judge Frizzell.  This is particularly the case so that it can be discovered whether the theory adopted by the Tenth Circuit was the theory on which the

---

[8] The knowledge of the OMC and the United States is critical to this question.  For the reasons set forth in greater detail in Dkt. # 159, at 1-2, Oklahoma law is incorporated for these purposes.  And under Oklahoma law, "[w]here the landowner is aware of . . . an encroachment at a time when it can be removed at small cost, he will not be allowed a mandatory injunction decreeing removal at a later time when the cost of removal would be comparatively great, as where plaintiff stands by and makes no objection until the greater part of the work has been completed, and is endeavoring only to secure the amount of damage occasioned to his property before the work was completed."  *Kasner v. Reynolds*, 1954 OK 56, ¶ 26, 268 P.2d 864, 867.  Thus, the OMC's and the United States' knowledge about the Project—which will necessarily be reflected in communications about the Project—is essential to the fair adjudication of the sought remedies.

United States' and the OMC's pre-suit communications were based—or whether they were based upon a broader theory that was specifically rejected by the Tenth Circuit.

## III.    THE UNITED STATES WAIVED ANY RELEVANCE OBJECTION.

The United States' February 3, 2020 responses to the interrogatories and requests for production at issue did not include relevance objections.  (Exh. F, at 5-6, 12-13).   "The Federal Rules of Civil Procedure provide that a party responding to discovery requests shall do so within thirty days after being served with the requests. If a responding party fails to lodge timely objections to discovery requests, those objections are deemed waived unless the court excuses the failure for good cause." *Am. Power Chassis v. Gary Jones & Jones & Sons Chassis*, No. 13-4134-KHV, 2017 U.S. Dist. LEXIS 232073, at *12 (D. Kan. Jan. 26, 2017) (internal footnotes omitted); FED. R. CIV. P. 33(b)(4) ("Any ground not stated in a timely objection [to an interrogatory] is waived unless the court, for good cause, excuses the failure."); *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D. Kan. 1998) ("Rule 33(b)(4) makes no distinction by type of objection. In the absence of good cause to excuse a failure to timely object, all objections not timely asserted are waived. The same principles apply to requests for production under Rule 34.").

> The 'good cause' standard primarily considers the diligence of the party . . . The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines. "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." The lack of prejudice to the nonmovant does not show "good cause."

*Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) (citations omitted). The United States cannot meet this standard, especially since its initial objections were premised upon a violation of the established principle that a responding party must adopt a "reasonable and common sense interpretation" of interrogatories and requests for production.  *Price v. Leflore Cty.*

- 19 -

*Det. Ctr. Pub. Tr.*, No. 13-CV-402-JHP, 2014 U.S. Dist. LEXIS 100125, at *9 (E.D. Okla. July 23, 2014).

But even if the United States did not *initially* waive its relevance objections, it certainly did on March 6, 2020 when its counsel stated, as to all of the requests at issue in this Motion, "[t]he BIA is diligently working on locating responsive communications [or correspondence]. The United States expects to supplement its production as soon as counsel receives and completes its review of the responsive communications [or correspondence]." (Exh. H, at 2-3). At that point, the United States indisputably understood what was being requested (and by any objective measure should have earlier) and agreed to provide responsive information and documents without objection.

The Defendants anticipate that the United States will assert that the Court's subsequent entry of Dkt. # 135 and Dkt. # 138 breathed new life into the United States' ability to assert objections. Not so. As Judge Frizzell observed during the July 15 status conference "sometimes the court will use language in an order for one purpose without realizing that it may be read to foreclose legitimate discovery in connection with another." (Dkt. # 173, at 10). And the Court later that day made clear that neither of those orders had the effect that the United States claimed:

> The United States interprets the April 13 Minute Orders to preclude the assertion of any and all affirmative defenses. However, the Minute Orders should not be interpreted so broadly. The court intended to convey that it would apply the law-of-the-case as articulated by the Tenth Circuit, and not revisit issues determined by the Circuit. ***The court did not intend to limit the assertion of affirmative defenses beyond those directed to the applicability of 25 C.F.R. §§ 211, 214.***

(Dkt. # 171, at 2, emphasis added).[9]

---

[9] Both Dkt. # 135 and Dkt. # 138—on which the United States has relied—were minutes orders entered on April 13, 2020.

Nor does the Court's entry of Dkt. # 139 and Dkt. # 153 effect the analysis.  In conjunction with those Orders, the Court never entered an additional final judgment against the United States. And the United States claimed a principal reason the Court needed to reconsider the initial Order was its need to participate in discovery.  (*See* Dkt. # 152, at 9).  But "[d]iscovery is a two-way street."  *Fragrancenet.Com, Inc. v. Fragrancex.Com, Inc.*, No. CV 06-2225 (JFB) (AKT), 2007 U.S. Dist. LEXIS 110755, at \*8 (E.D.N.Y. Aug. 28, 2007).  So the United States' being restored as a plaintiff means not only that it can receive discovery from the Defendants, but that it must provide discovery consistent with the Federal Rules as well.  Any assertion to the contrary is not accurate or in accord with the orders that Judge Frizzell entered.

## IV.   ANY BURDEN OBJECTION THAT THE UNITED STATES MAY NOW ATTEMPT TO ASSERT WOULD FAIL.

Statements made by the United States in the recent Joint Status Report and recent correspondence leads Osage Wind to believe that the United States may claim that providing responsive information and documents will be burdensome.  As a preliminary matter, for the reasons set forth in Part III, *supra*, any such objection has been waived (and even more so than relevance, since burden has *never* been raised, except perhaps in the most oblique and nebulous way).

Even if burden has been timely asserted, "[w]hen a party opposes discovery on the grounds of burdensomeness, that party must establish that the hardship would be 'undue and disproportionate to the benefits [the requesting party] would gain from the document production.'" *Armstrong v. Conseco Senior Health Ins. Co.*, No. 07-CV-659-JHP-PJC, 2009 U.S. Dist. LEXIS 142996, at \*6 (N.D. Okla. Feb. 24, 2009) (quoting *Manning v. General Motors*, 247 F.R.D. 646, 654 (D. Kan 2007)).  "Discovery will be allowed unless the hardship imposed on the interrogated party is unreasonable compared to the benefits to be secured from the discovery."  *Ensminger v.*

*Credit Law Ctr.*, No. 19-2147-JWL, 2020 U.S. Dist. LEXIS 77787, at *11 (D. Kan. May 4, 2020). And as the Court explained in *Manning*, "the Court is not persuaded that reviewing even hundreds of files for relevant documents and subsequent legal review by counsel of those relevant documents would cause great labor, great expense, considerable hardship or the possibility of injury . . . ." *Manning*, 247 F.R.D. at 654.

When analyzing the issue, the Court must be cognizant that the United States is seeking an injunction prohibiting the operation of and/or requiring the removal of a wind energy project that has been operational for more than five (5) years and which was constructed at a cost of more than nine figures. Requiring the United States to produce communications about the Project at issue with the other co-plaintiff and during the time period that the Project was under development and consideration may require some burden. But participating in discovery is an ordinary burden on being involved in litigation.[10]  And a party asserting such an objection "has the burden to support this objection and to show not only 'undue burden or expense,' but also to show that the burden or expense is unreasonable in light of the benefits to be secured from the discovery." *Manning*, 247 F.R.D. at 654.  This the United States has not done and cannot do.

### CONCLUSION AND REQUESTED RELIEF

Osage Wind asks the Court to compel the United States to provide what should be fundamental information in this case:  Internal communications about the Project at issue and communications with the OMC and/or the Osage Nation about the same Project.  These requests are time limited to a period of time *after* Osage Wind and its predecessors first met with the United

---

[10] Indeed, the United States' March 6, 2020 letter (Exh. G, at 2-3) indicating that it had begun the process of reviewing and producing responsive documents—without any suggestion of *any* associated burden—is indicative that there is no undue burden of the magnitude required to foreclose discovery, especially in a case of this magnitude.

States, the OMC, and the Nation about the Project and *after* the OMC and the Nation had asserted that they would do everything in their power to stop the Project by whatever means necessary. These materials are critically important—and certainly meet the discovery standard of relevance—to a number of defense that Osage Wind (and the other Defendants) have asserted to the tort claims and monetary and equitable relief sought by both Plaintiffs.  Judge Frizzell has made clear that none of his recent orders foreclosed defenses that go to those issues, which have never been decided by the Tenth Circuit or otherwise.  Especially since the United States seeks equitable relief to prohibit the operation of and/or require the removal of the Project (which was constructed years ago at massive expense), the discovery is not unduly burdensome or disproportional to the United States' claims and sought remedies and it must be provided.

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER
JETER BARNETT & RAY, P.C.**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade
Sarah M. Stevenson**
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Abi Laura Fain
Nolan Fields IV
Cathryn D. McClanahan
David McCullough
Mary Kathryn Nagle
Wilson Kirk Pipestem
Jeffrey S. Rasmussen

The following non-ECF registrants have been served by First Class United States mail:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*

*/s/ Ryan A. Ray*
Ryan A. Ray