# EXHIBIT A



**IAN A. SHAVITZ**
+1 202.887.4590/fax: +1 202.887.4288
ishavitz@akingump.com

April 25, 2014

Mandy Laird, Clerk
Pawhuska-Osage County Board of Adjustment
628 Kihekah Ave.
Pawhuska, OK  74056

Ms. Laird,

    I am writing on behalf of my clients, the Osage Nation and Osage Minerals Council (collectively, the "Osage Nation"), to submit the enclosed "*Petition to the Board of Adjustment to rescind the Wind Capital Energy Project Variance and Prohibit Construction at the Project Site until the Board Properly Authorizes the Project*" to the Pawhuska-Osage County Board of Adjustment.

    The Osage Nation requests that the enclosed Petition be added to the agenda of the May 8, 2014 Board of Adjustment meeting, and that a representative of the Osage Nation be provided the opportunity to address the Board in support of the enclosed Petition.

    Thank you and please feel free to call me with any questions.

Sincerely

Ian A. Shavitz



# Petition to the Board of Adjustment to Rescind the Wind Capital Energy Project Variance and Prohibit Construction at the Project Site until the Board Properly Authorizes the Project

*April 25, 2014*

The Osage Nation, a federally-recognized Indian tribe, and the Osage Minerals Council petition the Pawhuska-Osage County Board of Adjustment to rescind Osage Wind, LLC's (Wind Capital)[1] variance granted by the Board on August 11, 2011 for the Osage Wind Energy Facility Project.

## SUMMARY OF THE PETITION

The Pawhuska-Osage County Board of Adjustment (Board) should rescind Wind Capital's variance and prohibit construction at the Project site until the Board properly authorizes the Osage Wind Energy Facility Project (Project). Action by the Board of Adjustment is necessary for several reasons.

First, the Board of Adjustment failed to issue Wind Capital the proper type of approval required to develop a wind energy facility in Osage County. The Osage County Wind Energy Ordinance expressly requires a developer to secure a "conditional use permit" before constructing a wind energy project. The Board of Adjustment, however, issued Wind Capital a "variance" for its project. Conditional use permits and variances are two completely different land use authorizations—each serves a different purpose; each has its own distinct set of procedures; and each has different criteria that a project must meet before the Board may grant the authorization.

Second, the Board lacks authority to issue a conditional use permit for a wind energy facility in Osage County, despite what is stated in the Wind Ordinance. The Pawhuska-Osage County Zoning Ordinance, which governs land uses within Osage County, does not identify a wind energy facility as a permissible use in Osage County. The Zoning Ordinance prohibits the Board from issuing a conditional use permit for a use that is not otherwise permissible in Osage County.

Third, Osage County's Wind Energy Ordinance does not provide the Board with authority to issue a conditional use permit; in fact, the Wind Ordinance expressly recognizes that a conditional use permit is *prerequisite to* developing a Wind Energy Facility in Osage County, confirming that the Wind Ordinance is *not a source of authority for* issuing a conditional use permit.

---

[1] The Application was submitted by Wind Capital Group, the parent corporation of Wind Capital LLC. This petition will refer to Wind Capital as the developer.



Fourth, the Project's variance cannot properly authorize development of the Project. As stated, the Wind Ordinance identifies a conditional use permit – rather than a variance – as the prerequisite for the Project. Further, even if a variance were the proper Board approval, the Board lacks authority to issue a variance for a wind energy project, as this land use is not permissible under the Zoning Ordinance. Finally, even if the Board had authority to issue a variance here, the variance would be improper because the Project site fails to meet the Zoning Ordinance's strict variance standards and the Board failed to make the findings required by the Zoning Ordinance.

Given that the Board issued an incorrect and flawed approval for the Project, and that Osage County law fails to provide the Board with authority to issue a conditional use permit for a wind energy facility, Petitioners requests that the Board rescind Wind Capital's variance and prohibit construction at the Project site until the Board properly authorizes the Project in accordance with County law.

**I.     BACKGROUND**

a.  Factual Background

On July 7, 2011, Wind Capital submitted its "Application for Conditional Use or Variance" to allow for the construction of the Wind Capital Energy Project (Application). The Application was assigned "Conditional Use Application Number 2012-1", and was noticed for a public hearing on August 11, 2011. Wind Capital placed public hearing notices in the Pawhuska Journal-Capital, on signs at the Project site, and in mailings sent to landowners. Each notice stated that Wind Capital had applied for a conditional use permit.

The Board held its public hearing on Wind Capital's Application at the Board's August 11, 2011 meeting. At the outset of the meeting, Board member Mike Render identified the hearing as a "hearing on the conditional use permit, 2012-01, related to Wind Capital LLC."[2] Immediately following the public hearing portion of the meeting, the Board voted unanimously to grant Wind Capital a variance based upon Wind Capital's Application for a Conditional Use Permit.[3] The Board failed to explain why it issued a variance, rather than the conditional use permit for which Wind Capital had applied.

b.  Legal Background

The development of a Wind Energy Facility in Osage County is governed by two separate and distinct Osage County ordinances: (i) the Osage County Wind Energy Ordinance (Wind Ordinance) and (ii) the Pawhuska-Osage County Planning Area Zoning Ordinance (Zoning Ordinance).

---

[2] August 2011 Hearing Tr., p. 3, lns. 23-25.
[3] *Id.* at 50, ln.4.



### i. Wind Ordinance

The Wind Ordinance establishes "minimum requirements and regulations for the *placement, construction, and modification of Wind Energy Facilities and related equipment*" in Osage County.[4] Accordingly, the Wind Ordinance dictates design standards, sighting conditions, property maintenance, and roadway-related issues associated with wind energy facilities. In this respect, the Wind Ordinance is analogous to a Building Code in that it dictates the standards required when constructing a wind energy facility; it does not authorize the construction of a wind energy facility in a specific location.

Section 3.4 of the Wind Ordinance identifies the land use "permit" a developer is required to obtain before constructing a wind project, stating:

> A Wind energy facility may be constructed as provided in this ordinance after first obtaining a permit from the Pawhuska-Osage County Board of Adjustment. Conditional Use Permit Applications for wind energy facilities shall be based on anticipated total rated nameplate capacity of the proposed project. A permit fee ("Conditional Use Permit Fee") shall be due upon approval of the Conditional Use Permit.

Thus, Section 3.4 does not authorize the Board to issue a conditional use permit for a proposed project, but instead, requires an applicant to secure a conditional use permit as a *prerequisite to* proceeding with a project according to the design requirements included in the Wind Ordinance.

### ii. Zoning Ordinance

The Zoning Ordinance governs permitted land uses within Osage County. Section 1.4 of the Zoning Ordinance states that "no land shall be used and no building, structure, or improvement shall be made, erected, [or] constructed . . . for any purpose or in any manner except in conformity with the regulations contained herein." In other words, if a specific land use is not expressly authorized as a permitted use in the Zoning Ordinance, then that land use is not permitted in Osage County.

If the Zoning Ordinance does not permit a project's proposed land use "as a use of right" in a district, a project may only proceed if the project qualifies for either a conditional use permit or a variance. These are two very different approvals, each with its own distinct substantive standards and procedural requirements, and each listed separately in the Zoning Ordinance:[5]

- <u>Conditional Use Permit</u>. Before a project qualifies for a conditional use permit within a given zoning district, the Zoning Ordinance must expressly identify the project's

---

[4] Wind Ordinance, § 1.0 (emphasis added).
[5] *Compare* Zoning Ordinance, § 6.5.2 *with id.* § 6.5.3.



proposed land use as a permitted land use subject to conditions, and the Board must impose the conditions included in the Zoning Ordinance as part of the approval.

- <u>Variance</u>. A project qualifies for a variance, on the other hand, not because the Zoning Ordinance identifies the project's land use as permissible subject to certain conditions, but because the land itself has certain extraordinary features and characteristics such that strict application of the Zoning Ordinance upon the land would place an extreme hardship on the property owner.

Regardless of whether the Board issues a conditional use permit or variance, however, the intended land use for which an authorization is sought must be a permitted use in the Zoning Ordinance.[6]

## II. THE BOARD FAILED TO ISSUE A CONDITIONAL USE PERMIT FOR THE PROJECT

As noted above, the Wind Ordinance requires the Board of Adjustment to issue a conditional use permit before a Wind Energy Facility may be built in Osage County.[7] The Board, however, has never issued a conditional use permit for the Project, either at or following the August 11, 2011 meeting. Rather, the Board issued a variance at the August 11, 2011 meeting. For this reason alone, the Board must prohibit construction activities at the project site, as the Project has not been authorized under the Zoning Ordinance and fails to meet the prerequisite for development included in Section 3.4 of the Wind Ordinance.

The Board cannot simply "fix" this situation by allowing the Project to proceed with the variance or simply re-labeling the variance it granted as a conditional use permit. First, as noted above, conditional use permits and variances are two completely different land use authorizations—each serves a different purpose; each has its own distinct set of procedures; and each has different criteria that a project must meet before the Board may grant the authorization. Second, the plain language of the Wind Ordinance expressly requires a conditional use permit, and not a variance, as a prerequisite to developing a wind energy project.

## III. THE BOARD LACKS AUTHORITY TO ISSUE A CONDITIONAL USE PERMIT OR VARIANCE FOR A WIND ENERGY PROJECT IN OSAGE COUNTY

a. <u>The Board Lacks Authority to Issue a Conditional Use Permit for a Wind Energy Project in Osage County.</u>

The Board also lacks authority to issue a conditional use permit for a Wind Energy Facility in Osage County. The Project is to be located in an Agricultural District. Article 2 of the Zoning Ordinance contains a Permitted Use Table that identifies the land uses that are

---

[6] *See* Zoning Ordinance, §§ 6.5.2 & 6.5.3.
[7] Wind Ordinance § 3.4.



permitted "as a use of right" within an Agricultural District and those for which the Board can issue a conditional use permit. The Board may only issue a conditional use permit for a proposed use within a zoning district if the permitted use table for that District identifies the use as one that is "permitted subject to the granting of a conditional use permit."[8] The Agricultural District Permitted Use Table neither lists a Wind Energy Facility as an allowable use in an Agricultural District nor includes a use category broad enough to encompass a Wind Energy Facility. Thus, developing a Wind Energy Facility is not permitted subject to the granting of a conditional use permit in an Agricultural District.

Article 3 of the Zoning Ordinance confirms that a conditional use permit was not available for the Project. Article 3, titled "Use Conditions," identifies the categories of uses that the Board may authorize with a conditional use permit and the specific conditions that the Board must impose in connection with each such use.[9] A Wind Energy Facility is not a use listed in Article 3, thus confirming that a conditional use permit was not available for the Project.

  b. <u>The Wind Energy Ordinance does not Provide the Board with Authority to Issue a Conditional Use Permit</u>.

The Board seemingly attempted to rely upon Wind Ordinance Section 3.4 as the source for the Board's authority to issue a conditional use permit or variance for the Project. As stated above, however, Section 3.4 does *not authorize* the Board to issue a conditional use permit for a proposed project. Instead, Section 3.4 *requires* an applicant to secure a conditional use permit *as a prerequisite* to proceeding with a project according to the design requirements included in the Wind Ordinance. Only the Zoning Ordinance can authorize the Board to issue a conditional use permit for certain land uses.

The Wind Ordinance fails to provide the Board with authority to issue a conditional use permit here, in no small part, because the Wind Ordinance does not amend the Zoning Ordinance to add wind energy facilities as a permitted land use in Osage County. This is crucial given that the Zoning Ordinance trumps all other "regulations, ordinances, orders, resolutions, or parts thereof in conflict with" the Zoning Ordinance, insofar as those other laws purport to authorize or regulate permitted land uses.[10] Thus, even if the intention of the Wind Ordinance was to authorize a wind energy facility as a permitted land use, the Wind Ordinance failed to do this, and the Zoning Ordinance prohibits this. Accordingly, the Board had no authority to issue a conditional use permit for the Project.

---

[8] Zoning Ordinance, § 1.7.1.

[9] *See generally*, Zoning Ordinance, Article 3. The uses identified in Article 3 include: Accessory Buildings; Bed and Breakfast Inns; Accessory Commercial Uses in Multi-Family Residential and Office Districts; Animals; Dwelling Groups; Home Occupations; Mining Activities and Related Services; Mobile Home Parks; Non-Residential Uses in Residential Districts; Off-Street Loading; Off-Street Parking; Scrap Metal Facilities; Solid Waste Disposal; Signs; Advertising Signs; Townhouse Development; and Sexually Oriented Businesses.

[10] Zoning Ordinance, § 9.2.



c. <u>The Board Lacked Authority to Issue a Variance for the Wind Capital Project.</u>

As stated above, a conditional use permit – rather than a variance – is required before a wind energy facility can be developed. But even if a variance could be used to authorize a wind energy facility, the Board lacked authority to issue a variance to Wind Capital as well. The Zoning Ordinance defines a variance as:

> An adjustment in the application of the specific provisions of [the Zoning Ordinance] to a particular piece of property which property, because of special circumstances applicable to it, is deprived of privileges commonly enjoyed by other properties in the same vicinity and zoning district and which adjustment remedies disparity in privileges.[11]

The Board's authority to "adjust the application of the specific provisions" of the Zoning Ordinance through a variance is not without limits. Section 6.5.3 of the Zoning Ordinance states "[u]nder no circumstances shall the Board grant a variance to allow a use not permissible under the terms of these regulations in the district involved . . . ." Similarly, Section 1.4 of the Zoning Ordinance states that "no land shall be used and no building, structure, or improvement shall be made, erected, [or] constructed . . . for any purpose or in any manner *except in conformity with the regulations contained herein.*"[12] Thus, a use must be permitted under the Zoning Ordinance before the Board has authority to issue a variance for such use. Again, the Zoning Ordinance does not include a Wind Energy Facility as a permissible use, and thus does not provide the Board with the requisite authority.

(i) <u>The Wind Capital Project fails to meet the strict requirements for a variance.</u>

Even if the Wind Ordinance identified a variance as a prerequisite for developing wind energy projects, and if the Board had authority to grant a variance for such a project, the Board must find that the project meets very strict requirements in order to issue a variance. These requirements are set forth as follows in Zoning Ordinance Section 6.5.3(1):

- <u>Site Characteristics</u>. The project site must exhibit "special conditions and circumstances," including "exceptional narrowness, shallowness, shape, topography, or other extraordinary or exceptional situation or condition of a specific piece of property," which are "peculiar to the land involved."[13]

- <u>No Fault of Applicant</u>. The project site's "special conditions and circumstances," cannot result from an applicant's actions.

---

[11] Zoning Ordinance, § 8.2.
[12] Zoning Ordinance, § 1.4 (emphasis added).
[13] Zoning Ordinance, § 6.5.3.



- Deprivation of Rights. The Zoning Ordinance "deprive[s] that applicant of rights commonly enjoyed by other properties in the same district . . . ."

- Special Privileges. Applicant cannot receive any "special privilege that is denied by the [Zoning Ordinance] to other lands . . . in the same district."

Wind Capital fails to meet each of these strict requirements.

First, the Application did not address, much less demonstrate, any of the above requirements. The Board should have denied the Application for this reason alone.

Second, the Project site does not contain any of the site characteristics that the Zoning Ordinance requires for a variance. The Project site is precisely the same as the tens of thousands of acres of agricultural and ranching lands surrounding it. Without such site characteristics, there are no characteristics that could be the fault of the applicant.

Third, the Zoning Ordinance does not deprive the Applicant of rights commonly enjoyed by other properties in the same district. Other properties in the same district -- and the properties that make up the Project site – can be used (and are used) for agriculture and ranching, which are allowable uses in Agricultural Districts.

Fourth, by granting a variance, the Board essentially gave Wind Capital a special privilege that is denied by the Zoning Ordinance to other lands in the same district. Wind Capital simply wants to develop leased land in a manner that is not otherwise allowed by local zoning laws. This falls far short of the very high bar that the Zoning Ordinance sets for the Board to properly issue a variance, and, accordingly, gave Wind Capital an unjust privilege.

    (ii)  The Board failed to make the findings required by the Zoning Ordinance for a variance.

The Zoning Ordinance prohibits the Board from issuing a variance unless and until it makes the following findings: (i) that the representations in the application responding to the requirements of Paragraph 6.5.3 are valid (which include the requirements in Part III.c.(i) above); (ii) that the reasons set forth in the Application justify the granting of the variance, and that the variance is the minimum variance that will make possible the reasonable use of the land, building, or structure; and (iii) that granting the variance "will be in harmony with the general purpose and intent of [the Zoning Ordinance], and will not be injurious to the neighborhood, or otherwise detrimental to the public welfare."[14]

The Board, however, made none of these findings, either on the record at the August 11, 2011 hearing or in any subsequent decision document. This is not surprising given that Wind Capital's Application failed to address, much less demonstrate, any of the requirements of

---

[14] *Id.*



section 6.5.3. In the absence of such information in the Application, the Board could not have made any such findings.

Of note, the Board completely failed to make findings regarding the most significant requirement from an environmental and adjacent landowner perspective; namely, whether granting a variance "will be in harmony with the general purpose and intent of [the Zoning Ordinance], and will not be injurious to the neighborhood, or otherwise detrimental to the public welfare." Numerous speakers at the Public Hearing commented on these issues. For example:

- Mr. Ford Drummond commented on the drop in property values due to the turbines' adverse effects on Osage County's viewshed.

- Mr. Mike Fuhr, State Director for the Oklahoma Nature Conservancy, noted the potential adverse effects on both the Tallgrass Prairie and the greater prairie chicken.

- Mr. Chris White, Executive Director for Governmental Affairs for the Osage Nation, mentioned the adverse effects that placement of the wind energy facility would have on the Osage Nation's mineral estate, including oil and gas resources.

Locating a massive wind project on thousands of acres of land in Osage County, within unfragmented prairie, within the habitat and range of protected species, and in a location that would impact tribal cultural resources and existing oil and gas operations, clearly falls short of the Zoning Ordinance standards.

## REQUESTED RELIEF

As demonstrated in this Petition, the Board of Adjustment failed to issue the required conditional use permit for the Project, and lacked the authority to issue a variance for the Project. In these circumstances where such good cause exists, the Board has the authority and the obligation to reconsider its Osage Wind Project decision, rescind Wind Capital's variance and prohibit construction at the Project site until the Board properly authorizes the Project.[15]

Respectfully Submitted:

Ian Shavitz
Counsel to the Osage Nation

---

[15] See Rathkopfs *The Law of Zoning and Planning*, at § 32:5; 101A *Corpus Juris Secundum, Zoning and Land Planning* § 249.