**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| THE OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' FIRST MOTION TO COMPEL
AGAINST THE OSAGE MINERALS COUNCIL**

| | |
|---|---|
| Ryan A. Ray, OBA #22281 | Lynn H. Slade, *admitted pro hac vice* |
| NORMAN WOHLGEMUTH CHANDLER | Sarah M. Stevenson, *admitted pro hac vice* |
| JETER BARNETT & RAY, P.C. | MODRALL, SPERLING, ROEHL, |
| 3200 Mid-Continent Tower | HARRIS & SISK, P.A. |
| 401 South Boston Avenue | Post Office Box 2168 |
| Tulsa, OK 74103 | Albuquerque, NM 87103-2168 |
| 918-583-7571 | 505-848-1800 |
| 918-584-7846 (facsimile) | 505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: August 18, 2020**

TABLE OF CONTENTS

BACKGROUND .................................................................................................................1

DISPUTED DISCOVERY ISSUES .......................................................................................3

CERTIFICATION OF CONFERENCE ..................................................................................6

ARGUMENT AND AUTHORITIES .....................................................................................7

I.   THE FEDERAL RULES' REQUIREMENTS REGARDING DISCLOSURE OF
     DAMAGES. .........................................................................................................7

     A.  Initial Disclosures ......................................................................................7

     B.  Interrogatories ..........................................................................................12

II.  THE OMC'S POSITIONS ON PROVIDING DETAIL ABOUT ITS DAMAGES FAIL. ..............13

III. THE COURT SHOULD FIND THAT THE OMC'S ASSERTION OF "EXECUTIVE
     PRIVILEGE" IS IMPROPER AND THAT SUCH A PRIVILEGE IS INAPPLICABLE IN
     THIS CASE. ........................................................................................................18

     A.  The Cited Provision of the Osage Nation Code Does Not
         Create an Evidentiary Privilege. ...............................................................19

     B.  Common Law Does not Afford any Executive Privilege to the
         OMC or the Nation. ..................................................................................20

     C.  Even if the Executive Privilege Applied, the OMC Has Not
         Properly Invoked It. ..................................................................................23

     D.  The Court Should In Any Event Find the Executive Privilege
         Does Not Apply to Communications About the Project. ............................23

     CONCLUSION  ..............................................................................................24

TABLE OF AUTHORITIES

<u>**Cases**</u>

*Allstate Ins. Co. v. Nassiri*
   No. 2:08-cv-369, 2010 U.S. Dist. LEXIS 138220, 2010 WL 5248111
   (D. Nev. Dec. 16, 2010) ................................................................................................16

*Am. Commerce Ins. Co. v. Harris*
   No. CIV-07-423-SPS, 2008 U.S. Dist. LEXIS 60845 (E.D. Okla. Aug. 8, 2008) ...........19

*Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport*
   596 F3d 357 (6th Cir. 2010) ...........................................................................................8

*Bullard v. Roadway Exp.*
   3 Fed. Appx. 418 (6th Cir. 2001) .....................................................................................9

*Burrow v. Forjas Taurus S.A.*
   No. 16-21606-Civ-TORRES, 2017 WL 2620067 (S.D. Fla. June 16, 2017) ..................22

*Campbell v. CSAA Fire & Cas. Inc. Co.*
   No. CV-19-739-R, 2020 WL 3244010 (W.D. Okla. June 15, 2020) ........................8, 9, 10

*Cheney v. U.S. District Court*
   542 U.S. 367 (2004) ........................................................................................................20

*City & Cty. of San Francisco v. Tutor-Saliba Corp.*
   218 F.R.D. 219 (N.D. Cal. 2003) .................................................................................9, 10

*Davis v. Littell*
   398 F.2d 83 (9th Cir. 1968) ............................................................................................20

*Design Strategy, Inc. v. Davis*
   469 F.3d 284 (2d Cir. 2006) .............................................................................................8

*Dynegy Marketing and Trade v. Multiut Corp.*
   648 F.3d 406 (78th Cir. 2011) .........................................................................................8

*First Nat. Bank of Chicago v. Ackerley Commc'ns, Inc.*
   No. 94 CIVIL 7539(KTD), 2001 WL 15693, 2001 U.S. Dist. LEXIS
   20895(S.D.N.Y. Jan. 8, 2001), *aff'd* 28 Fed. Appx. 61 (2d Cir. 2002) ........................9, 10

*Fish v. Kobach*
   No. 16-2105-JAR_JPO, 2017 U.S. Dist. LEXIS 72051 (D. Kan. May 10, 2017) ......20, 21

*Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*
    2007 WL 273949 (E. D. Cal. Jan. 29, 2007) ....................................................20

*Griffin Indus., Inc. v. Rest. Techs., Inc.*
    No. 3:06CV-444-R, 2008 WL 11357862 (W.D. Ky. Dec. 18, 2008)................................8

*HCG Platinum, LLC v. Preferred Prod. Placement Corp.*
    873 F.3d 1191 (10th Cir. 2017) ..................................................................11

*Hertz v. LuzenacAm., Inc.*
    No. CIVA04CV1961LTBCBS, 2006 WL 994431 (D. Colo. Apr. 13, 2006) .................10

*Hesco Parts, LLC v. Ford Motor Co.*
    No. 3:02-CV-736-S, 2007 U.S. Dist. LEXIS 61397, 2007 WL 3407255
    (W.D. Ky. Aug. 20, 1007) ..........................................................................17

*Hilderman v. Enea TekSci, Inc.*
    No. 05CV 1049 BTM(AJB), 2010 WL 143440 (S.D. Cal. Jan. 8, 2010)....................19, 20

*Hinsdale v. City of Liberal*
    Case No. 96-1249-FGT, 1997 U.S. Dist. LEXIS 13779 (D. Kan. Aug. 27, 1997) .....23, 24

*Honeywell Int'l Inc. v. Furuno Elec. Co.*
    No. 09-CV-3601 MJD/TNL, 2013 U.S. Dist. LEXIS 76929, 2013 WL 2385224
    (D. Minn. 30 May 2013) ..........................................................................12, 17

*In re Grand Jury Investigation*
    918 F.2d 374 (3d Cir. 1990)..........................................................................20

*Jackson v. UA Theatre Circuit, Inc.*
    278 F.R.D. 586 (D. Nev. 2011)......................................................................18

*Kleiner v. Burns*
    2000 WL 19094 (D. Kan.2000) ....................................................................10

*Lazy S. Ranch Properties, LLC v. Valero Energy Corporation, et al.*
    No. 19-CV-425-RAW (E.D. Okla. June 15, 2020)........................................9, 10

*Lintz v. American General Finance, Inc.*
    1999 WL 619045 (D. Kan. 1999) ..................................................................11

*Lopez v. City of New York*
    No. 11-CV-2607 (CBA)(RER), 2012 WL 2250713, 2012 U.S. Dist. LEXIS
    83611 (E.D.N.Y. June 15, 2012) ..............................................................11, 12

*Mason v. United States*
    486 F. Supp. 2d 621 (W.D. Tex. 2007)............................................................19

*Mawby v. United States*
    999 F.2d 1252 (8th Cir. 1993) ........................................................................11

*Max Impact, LLC v. Sherwood Grp., Inc.*
    No. 09 Civ. 902(JGK)(HBP), 2014 WL 902649, 2014 U.S. Dist. LEXIS 30011
    (S.D.N.Y. Mar. 7, 2014) ............................................................................9, 10

*Miccosukee Tribe of Indians of Florida v. U.S.*
    No. 12-cv-22638-UU, 2013 WL 7728831 (S.D. Fla. Feb. 11, 2013) ................21

*Mikulec v. Town of Cheektowaga*
    302 F.R.D. 25 (W.D.N.Y. 2014)..........................................................9, 10, 11

*Nyanjom v. Hawker Beechcraft, Inc.*
    No. 12-1461-JAR_KGG, 2014 U.S. Dist. LEXIS 70094 (D. Kan. May 22, 2014) ..........12

*Osage Nation ex rel. Osage Minerals Council v. Wind Capital Grp., LLC*
    No. 11-CV-643-GKF-PJC, 2011 WL 6371384 (N.D. Okla. Dec. 20, 2011) ..............14, 15

*Pantages v. Cardinal Health 200, Inc.*
    2009 WL 1011048 (M.D. Fla. Apr. 15, 2009)..................................................19

*Paycom Payroll, LLC v. Richison*
    No. CIV-09-488-W, 2011 WL 13112251 (W.D. Okla. June 8, 2011) ..............11

*Pine Ridge Recycling v. Butts County*
    889 F.Supp. 1526 (M.D.Ga.1995) ..................................................................10

*Pre-Paid Legal Servs. v. Harrell*
    No. CIV-06-019-JHP, 2007 U.S. Dist. LEXIS 40789 (E.D. Okla. May 30, 2007).....12, 13

*Pruett v. Erickson Air-Crane Co.*
    183 F.R.D. 248 (D.Or. 1998) .........................................................................19

*Radtke v. Caschetta*
    822 F.3d 571 (D.C. Cir. 2016).......................................................................10

*Redland Soccer Club v. Dep't of the Army*
    55 F.3d 827 (3d Cir. 1995)............................................................................21

*Roberts v. Ground Handling, Inc.*
    No. 04-cv-4955, 2007 WL 275382 (S.D.N.Y. Sept. 20, 2007) ........................11

*Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*
    145 F.R.D. 92 (S.D. Iowa 1992) ..................................................................10

*Smith v. Fed. Trade Com.*
    403 F. Supp. 1000 (D. Del. 1975) ...............................................................23

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*
    482 U.S. 522 (1987) ....................................................................................22

*SPH Am., LLC v. Research in Motion, Ltd.*
    No. 13CV2320 CAB (KSC), 2016 U.S. Dist. LEXIS 171616, 2016 WL 6305414
    (S.D. Cal. 16 Aug. 2016) ............................................................................12

*United States v. Bridger-Riley*
    No. 14-CV-654-JHP-FHM, 2015 U.S. Dist. LEXIS 95996
    (N.D. Okla. July 23, 2015) ..........................................................................12

*United States ex rel. Tyson v. Amerigroup Ill., Inc.*
    230 F.R.D. 538 (N.D. Ill. 2005) ..................................................................12

*United States v. Billie*
    611 Fed. Appx. 608 (11th Cir. 2015) ...........................................................22

*United States v. Farley*
    11 F.3d 1385 (7th Cir. 1993) .......................................................................21

*United States v. Nixon*
    418 U.S. 683 (1974) ...............................................................................20, 21

*United States v. Osage Wind, LLC*
    871 F.3d 1078 (10th Cir. 2017) ...................................................................18

*United States v. Pend Oreille Pub. Util. Dist.*
    *No. 1*, 28 F.3d 1544 (9th Cir. 1994) .................................................6, 14, 16

*United States v. Reynolds*
    345 U.S. 1 (1953) ........................................................................................23

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*
    Nos. 12 Civ. 681 1(CM)(*JCF), 13 Civ. 1580(CM)(JCF), 2013 WL 5495542,
    2013 U.S. Dist. LEXIS 143398 (S.D.N.Y. Oct. 3, 2013) ..............................9, 16

*U.S. v. Rempel*
    2001 WL 1572190 (D.Alaska 2001) ...............................................................9

*Windom v. FM Industries, Inc.*
  2003 WL 21939033 (D. Neb. 2003) .............................................................10

*Winfield v. Wal-Mart Stores, Inc.*
  No. 2:14-cv-01034 MMD-CWH, 2016 U.S. Dist. LEXIS 36998
  (D. Nev. Mar. 22, 2016).............................................................................11, 17

**Constitutional Provisions**

Osage Nation Constitution, Art. VII .............................................................23

**Statutes**

Osage Nation Code, tit. 15 § 8–104................................................................4, 5, 19

**Court Rules**

FED. R. CIV. P. 26...................................................................................... Passim

FED. R. CIV. P. 30..........................................................................................19

FED. R. CIV. P. 33....................................................................................12, 13

FED. R. CIV. P. 34........................................................................................3, 7

FED. R. CIV. P. 37.....................................................................................1, 6, 11

FED. R. EVID. 501.........................................................................................20

LCvR 37........................................................................................................1, 6

**Other Authorities**

8A FED. PRAC. & PROC. CIV. § 2053 (3d ed.) ..................................................8

FED. R. CIV. P. – RULES AND COMMENTARY (Rules 1-49), p. 701..................8

FEDERAL CIVIL RULES HANDBOOK (2019), p. 765 ........................................8

MOORE'S FEDERAL PRACTICE, CIVIL § 26.2 (2003).......................................10

In accordance with FED. R. CIV. P. 37(a)(3)(A), FED. R. CIV. P. (a)(3)(B)(iii) and (iv) and LCvR 37.1, Defendants, Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC ("Enel Kansas"), and Enel Green Power North America, Inc. ("EGPNA"), respectfully request that the Court enter an Order requiring the Intervenor–Plaintiff, the Osage Minerals Council (the "OMC") (i) to provide detail as to its damages theory (or theories) against the Defendants, and (ii) to produce the documents it has withheld as purportedly subject to an executive privilege not cognizable in this Court (and not claim such a privilege in the future in this action).

### BACKGROUND

The essential background of this matter is summarized in the Osage Wind's pending First Motion to Compel Against the United States, and the Defendants respectfully invite the Court to examine that brief to the extent such background is needed to adjudicate this Motion.  (*See* Dkt. # 177, at ¶¶ 1-25).

In addition to that background, following remand from the Tenth Circuit, this Court granted the OMC leave to intervene on April 13, 2020.  (Dkt. # 136).  The OMC filed its Complaint in Intervention ("CIR") on April 15, 2020.  (Dkt. # 140).  In response, the Defendants filed a partial motion to dismiss the CIR (Dkt. # 150) and a motion to strike certain allegations of the CIR (Dkt. # 151).

Judge Frizzell granted those motions in part and denied them in part and as to the OMC found as follows:

> Prior to considering the merits of the partial motion to dismiss, however, the court clarifies its April 13, 2020 Minute Order granting OMC's motion to intervene. [Doc. 136].
>
> ***
>
> Here, efficiency in the conduct of the proceedings requires that the remedies sought by OMC be limited to those sought by the United States in its First Amended

> Complaint. As discussed above, permitting the United States to pursue revenues from the wind farm operation as a whole, at this stage of the litigation, would require extensive and expensive discovery and unduly prejudice Osage Wind. The same prejudice and inefficiencies would result if OMC were allowed to pursue those remedies.  Thus, although the court has granted OMC's motion to intervene, **the intervention is restricted to seek only those remedies sought by the United States in the First Amended Complaint**.

(Dkt. # 161, at 13-15, emphasis added; *see also* Dkt. # 162 (striking "(1) allegations regarding non-parties to the litigation, (2) allegations directed to revenue of the Osage Wind Project as a whole and other financial information, [and] (3) allegations regarding public harms allegedly associated with wind energy")).  As a result of the latter Order, the OMC filed an Amended Complaint in Intervention.  (Dkt. # 164) (the "ACIR").

On April 14, 2020, Judge Frizzell found that the U.S. "is barred from proceeding further in this case."  (Dkt. # 139).   Thereafter, the OMC and the Defendants' counsel held a FED. R. CIV. P. 26(f) on April 21, 2020, and a follow-up conference was held on April 30, 2020.  During those conferences, the parties agreed that the OMC would provide initial disclosures by May 12, 2020.

In its ACIR, the OMC alleges that:

- "Defendants trespassed on the Osage Mineral Estate, in violation of law and, in doing so, caused damages."  (Dkt. # 164, at ¶ 86).

- It is entitled to "a judgment assessing damages or providing any appropriate remedy—whether monetary or sounding in equity—as determined, to the Osage Mineral Estate for unlawful or unauthorized mining, excavation, or other work . . . ."  (*Id.* at ¶ 98).[1]

- It is entitled to "a judgment awarding damages, with interest, to the [OMC] for trespass to the extent allowed under the law . . . ."  (*Id.* at ¶ 100).

---

[1] The OMC asserts that all Defendants are jointly and severally liable for such alleged damages and monetary relief.   (*See, e.g.*, *id.* at ¶ 99).

### DISPUTED DISCOVERY ISSUES

The OMC served its initial disclosures on May 12, 2020 as agreed.  (Copy attached as

Exhibit A).  For the section of its initial disclosures detailing its "[c]omputation of damages," the

OMC stated as follows:

> As a result of the court granting the OMC's motion to intervene on April 13, 2020,
> the OMC is in the initial stages of computing each category of remedies, and the
> documents or other evidentiary material on which each computation is based that
> must be available for inspection and copying required under Rule 34 are still being
> identified.  Accordingly, the OMC will supplement this disclosure with
> computations of damages, along with documents and/or evidentiary support for
> these computations, as they become available.

(Exh. A, at 2-3).

On April 23, 2020, the Defendants served Interrogatories and Requests for Production on

the OMC.  (Copy attached as Exhibit B).  The OMC responded to those discovery requests on June

2, 2020.  (Copy attached as Exhibit C).  As it relates to damages, and in response to Defendants'

Interrogatory No. 12, the OMC responded as follows:

> **Interrogatory No. 12:** Identify and describe in detail all damages or injuries you
> claim the Osage Minerals Council has sustained as a result of the actions of
> Defendants complained of in your Complaint including without limitation:
>
> > (a) the dollar amount(s) of any compensatory damages you claim, and (i)
> > the factual bases that support your claims, and (ii) how such damages were
> > or will be calculated;
> >
> > (b) the dollar amount(s) of any other monetary relief of any kind (including,
> > but not limited to, any disgorgement or other monetary equitable relief) you
> > claim, and (i) the factual bases that support your claims, and (ii) how such
> > monetary relief was or will be calculated; and,
> >
> > (c) any nonmonetary equitable relief you claim, (including, but not limited
> > to the specific terms of any permanent injunctive or other equitable relief
> > you may claim).
>
> **Response No. 13:** Subject to the General Objections and without waiving the same,
> Intervenor-Plaintiff responds that the documents that Intervenor-Plaintiff needs to
> calculate with accuracy the damages in this matter are in the possession, control

3

and custody of the Defendants, and Defendants have yet to produce them. In addition to monetary damages, Intervenor-Plaintiff is entitled to equitable relief, including but not limited to ejectment, an accounting, a permanent injunction, and/or disgorgement of Defendants' profits from the wind farm, as well as any other form of relief the Court deems just.

(Exh. C, at 10-11).  Plainly, this response includes no computation of damages, or even any

description of how the OMC's alleged damages will be calculated.

As it relates to the issue of executive privilege, the OMC's responses include the following:

**Interrogatory No. 6:** Identify all Communications between you and the Osage Nation regarding the Osage Wind Project from January 1, 2010, to the present.

**Response No. 6:** Intervenor-Plaintiff objects to this Interrogatory as it is overly broad, vague, and not reasonably calculated to lead to the discovery of admissible evidence. Intervenor-Plaintiff further objects to the extent such information is protected by attorney-client privilege, the work product immunity doctrine, or both. Finally, Intervenor-Plaintiff objects to the Request as it seeks the production of Communications with the Osage Nation that are protected by executive privilege and the Osage Nation Code, tit. 15 ch. 8 § 8–104 (a)(5, 11). Subject to the General Objections and without waiving the same, Intervenor-Plaintiff responds that it will identify all relevant, non-privileged Communications that are discovered after undertaking a reasonable search of the documents within Intervenor-Plaintiff's possession.

\*\*\*

**Request No. 2:** Produce all Communications between you and the Osage Nation regarding the Osage Wind Project from January 1, 2010, to the present.

**Response No. 2:** Plaintiff-Intervenor objects to this Request to the extent that it seeks Communications reflecting attorney-work product or containing attorney-client privileged communications. Finally, Intervenor-Plaintiff objects to the Request as it seeks the production of Communications with the Osage Nation that are protected by executive privilege and the Osage Nation Code, tit. 15 ch. 7 § 8–104 (a)(4)(B)(5, 11).

\*\*\*

**Request No. 13:** Produce all Communications between you and the Osage Nation regarding the authority of the Osage Minerals Council over the leasing or permitting of minerals in Osage County from January 1, 2001 to the present.

**Response No. 13:** Intervenor-Plaintiff objects to this Request as it calls for discovery on a legal conclusion, not subject to factual analysis. Intervenor-Plaintiff further objects to the extent that Defendants seek information or communications that contain privileged attorney work product or reflect privileged attorney-client communication. Finally, Intervenor-Plaintiff objects to the Request as it seeks the production of Communications with the Osage Nation that are protected by executive privilege and the Osage Nation Code, tit. 15 ch. 7 § 8–104 (a)(4)(B)(5, 11).

**Request No. 14:** Produce all Communications between you and the Osage Nation concerning the current litigation.

**Response No. 14:** Intervenor-Plaintiff objects to this Request as it is overly broad, vague, and not reasonably calculated to lead to the discovery of admissible evidence. Intervenor-Plaintiff further objects to the extent such communications that are protected by attorney-client privilege, the work product immunity doctrine, or both. Finally, Intervenor-Plaintiff objects to the Request as it seeks the production of Communications with the Osage Nation that are protected by executive privilege and the Osage Nation Code, tit. 15 ch. 7 § 8–104 (a)(4)(B)(5, 11).

(Exh. C, at 6-7, 13, 18-19).  The OMC's privilege log identifies two documents as being withheld under this "executive privilege."  (*See id.* at 28).

On July 2, 2020, counsel for the Defendants wrote to counsel for the OMC via e-mail regarding the status of the OMC's discovery obligations.[2]  (July 2, 2020 E-mail from Lynn Slade, copy attached as Exhibit D).  The OMC responded on July 6, 2020 indicating continuing logistical delays due to the July 4th holiday and the ongoing pandemic.  (July 6, 2020 E-mail from Mary Kathryn Nagle, copy attached as Exhibit E).  On July 24, 2020, counsel for the Defendants wrote to counsel for the OMC explaining the issues with the failure to compute or describe damages and the improper assertion of executive privilege.  (July 24, 2020 Letter from Lynn Slade to Mary Kathryn Nagle, copy attached as Exhibit F).

---

[2] Earlier in June, counsel for the OMC indicated that complications arising from the COVID-19 pandemic had delayed the OMC's ability to fully respond to discovery.  As of the filing of this Motion, the OMC has produced sixty hundred fifty two (652) pages of documents.

**CERTIFICATION OF CONFERENCE**

In accordance with FED. R. CIV. P. 37(a)(2)(A) and LCvR. 37.1, Osage Wind advises the Court that its counsel, Ryan A. Ray and Lynn H. Slade, conferred in good faith with counsel for the OMC, Wilson Pipestem and Mary Kathryn Nagle, via telephone on July 29, 2020.

During that call, the OMC's counsel expressed a desire to review the issues discussed, and which are at issue in this Motion, in further detail.  The Defendants' counsel sent a follow-up letter regarding the issues on August 11, 2020.  (August 11, 2020 Letter from Lynn Slade to Mary Kathryn Nagle, copy attached as Exhibit G).   The OMC's counsel responded on August 12, 2020 and stated:

- "[T]he OMC maintains its assertion of the executive privilege."  (August 12, 2020 Letter from Mary Kathryn Nagle to Lynn Slade, copy attached as Exhibit H, at 1).

- As for the issue of damages, the OMC stated:

> As discussed during our July 29th meet and confer, the OMC has repeatedly shared its theory of damages in this case with Defendants. *See, e.g.,* Dkt. 166, 3 ("In addition to equitable relief in the form of a permanent injunction and ejectment/removal, the OMC is also entitled to compensation for damages in an amount that will cover the financial harm to the Osage Mineral Estate, and Osage headright holders, from the obstruction to oil and gas drilling on the Estate caused by Defendants' ongoing trespass. To date, Defendants have not obtained the permits the Tenth Circuit stated they must obtain, and they continue to operate their wind farm unlawfully on the Osage Mineral Estate."); Dkt. 158, 8 (noting that the OMC seeks "monetary damages and equitable relief for trespass to Indian lands in order to '"reimburse the Tribe for the most profitable use of its land."'") (quoting *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1551 (9th Cir. 1994)). Intervenor-Plaintiff's theory of damages is no mystery and there is certainly, at this point, no suspense as to what remedies the OMC will pursue. To the extent that Defendants seek an exact dollar figure as to what the OMC might be able to recover in terms of monetary damages, such information is within the scope of expert reports and will be disclosed in due time, in accordance with the Court's scheduling

6

Order. *See* Dkt. 172 (ordering that Intervenor-Plaintiff serve expert reports on October 2, 2020).  (*Id.* at 2-3).

Accordingly, the parties' discussions have resulted in impasse, necessitating court involvement.

## ARGUMENT AND AUTHORITIES

I.    THE FEDERAL RULES' REQUIREMENTS REGARDING DISCLOSURE OF DAMAGES.

### A.  *Initial Disclosures.*

FED. R. CIV. P. 26(a)(l)(A)(iii) states:

(a) *Required* Disclosures.

(1) Initial Disclosure.

(A) In General. Except as exempted by Rule 26(a)(l)(B) or as otherwise stipulated or ordered by the Court, a party must, without awaiting a discovery request, provide to the other parties:

* * *

(iii) *A computation of each category of damages claimed by the disclosing party - who must also make available for inspection and copying as under Rule 34 the documents or other evidentia1y material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.*

As explained in WRIGHT & MILLER,

The third type of disclosure is prescribed by Rule 26(a)(l)(A)(iii), which directs any party claiming damages or other monetary relief to provide a computation of those damages or other relief and make available all unprivileged documents on which such computation is based. The Second Circuit has explained the meaning of this requirement:

[B]y its very terms, Rule 26(a) requires more than providing-without any explanation-undifferentiated financial statements; it requires a "computation," supported by documents. The need for computation and supporting documents is especially necessary in a case like this, where the damages claim is for lost profits from a project of a type with which the plaintiff had little-to-no prior experience. [Plaintiff's] "simple arithmetic" calculation is wholly inadequate as a measure of damages, given that it is

7

> undisputed that, in order to perform on the project [plaintiff] would have had to establish an entirely new computer lab and hire all new personnel in the space of two weeks.

§ 2053 Initial Disclosure, 8A FED. PRAC. & PROC. CIV. § 2053 (3d ed.) (internal citations omitted) (quoting *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 295 (2d Cir. 2006)). *See also* FED. R. CIV. P. - RULES AND COMMENTARY (Rules 1-49), p. 701 ("Any party claiming damages must provide a computation of each category of damages claimed and must make available any discoverable materials upon which those calculations are based.") (citing, among others, *Dynegy Marketing & Trade v. Multiut Corp.,* 648 F.3d 506, 514 (7th Cir. 2011) (excluding undisclosed damages declaration); *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport,* 596 F3d 357, 367-69 (6th Cir. 2010) (excluding damages claim as a sanction of failing to provide basis for damages either in the initial disclosures or in response to discovery requests); FEDERAL CIVIL RULES HANDBOOK (2019), p. 765 ("Each party must provide a computation of any category of damages claimed by that party."); *Griffin Indus., Inc. v. Rest. Techs., Inc.,* No. 3:06CV-444-R, 2008 WL 11357862, at *6 (W.D. Ky. Dec. 18, 2008) (plaintiff "was in plain violation of Rule 26(a) and (e) when it delayed until . . . the final day before [defendant]'s expert witness designation was due, to finally reveal its damages calculations.").

Recently, both the Western and Eastern Districts of Oklahoma likewise found that Rule 26 requires more than a general statement of damages. In *Campbell v. CSAA Fire & Cas. Ins. Co.,* No. CV-19-739-R, 2020 WL 3244010, at *1 (W.D. Okla. June 15, 2020), the Western District determined that "[i]n a party's Rule 26(a)(l )(A)(iii) disclosure must state the types of damages that the party seeks, must contain a specific computation of each category, and must include documents to support the computations" and that "[t]he plaintiff cannot shift to the defendant the burden of attempting to determine the amount of the plaintiffs alleged damages." The *Campbell*

8

court ordered the plaintiff to provide "the categories of damages he seeks with ***corresponding dollar figures*** and citations to documents and other evidentiary material on which the entire computation is based." *Campbell,* No. CV-19-739-R, 2020 WL 3244010, at *3, (citing FED. R. CIV. P. 26(a)(l)(A)(iii)) (emphasis added). In *Lazy S Ranch Properties, LLC, v. Valero Energy Corporation, et. al.,* No. 19-CV-425-RAW, at 2 (E.D. Okla. June 15, 2020) (copy attached as Exhibit I), the Eastern District stated that the plaintiff "should be able to provide an estimated computation of each category of the damages claimed." The Eastern District stated that in order satisfy the purposes of Rule 26, "the plaintiff should provide more than a lump sum statement of the damages allegedly sustained." *Id.* (quoting *City & Cty. of San Francisco v. Tutor-Saliba Corp.,* 218 F.R.D. 219, 221 (N.D. Cal. 2003)).

While there is no hard and fast rule as to exactly what is contemplated regarding details required to be provided by the OMC, it must be a meaningful disclosure that provides the Defendants with the opportunity to fully evaluate the OMC's claims.

> "While the rule does not indicate the level of specificity that is required to disclose a 'computation' properly, courts examining this issue have held that Rule 26(a)(l)(A)(iii) 'requires more than merely setting forth the figure demanded.'" *Max Impact, LLC v. Sherwood Grp., Inc.,* No. 09 Civ. 902(JGK)(HBP), 2014 WL 902649, at *6, 2014 U.S. Dist. LEXIS 30011, at *15 (S.D.N.Y. Mar. 7, 2014) (quoting *First Nat. Bank of Chicago v. Ackerley Commc'ns, Inc.,* No. 94 CIVIL 7539(KTD), 2001 WL 15693, at *6 n. 6, 2001 U.S. Dist. LEXIS 20895, at *18 n. 6 (S.D.N.Y. Jan. 8, 2001), affd, 28 Fed. Appx. 61 (2d Cir. 2002)). "Rule 26(a)(l) contemplates an estimate of damages and 'some analysis.'" *US. Bank Nat'l Ass'n v. PHL Variable Ins. Co.,* Nos. 12 Civ. 681 l(CM)(JCF), 13 Civ. 1580(CM)(JCF), 2013 WL 5495542, at *5, 2013 U.S. Dist. LEXIS 143398, at *17 (S.D.N.Y. Oct. 3, 2013) (citation omitted).

*Mikulec v. Town of Cheektowaga,* 302 F.R.D. 25, 29 (W.D.N.Y. 2014). Similarly,

> the "computation" of damages required by Rule 26(a)(l)(C) contemplates ***some analysis***; for instance, in a claim for lost wages, there should be some information relating to hours worked and pay rate. *See Bullard v. Roadway Exp.,* 3 Fed. Appx. 418, 420 (6th Cir.2001) (unpublished). *See also US. v. Rempel,* 2001 WL 1572190 (D.Alaska 2001) at *2 (government required to disclose computation of tax

> liability, the functional equivalent of damages calculation in a tort case); *First Nat. Bank of Chicago v. Ackerley Communications, Inc.*, 2001 WL 15693 at *6, n. 6 (S.D.N.Y.2001) (calculation of damages requires more than merely setting forth figure demanded); *Kleiner v. Burns*, 2000 WL 19094 70 at *2 (D .Kan.2000) (defendant is generally entitled to a "specific computation" of damages). On the other hand, disclosing a precise figure for damages without a method of calculation may be sufficient in cases where other evidence is developed *e.g.* in the context of a preliminary hearing, and it is appropriate to defer further specification to *e.g.* development of expert testimony. *Pine Ridge Recycling v. Butts County,* 889 F.Supp. 1526, 1527 (M.D.Ga.1995); Moore's Federal Practice, Civil § 26.2 (2003).

*City & Cty. of San Francisco v. Tutor-Saliba Corp.,* 218 F.R.D. 219,221 (N.D. Cal. 2003).

The initial disclosures are intended to "accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives." FED. R. CIV. P. 26, Comments to 1993 Amendment.

> Rule 26(a)(1) disclosures are designed to accelerate the exchange of basic information, to "help focus the discovery that is needed, and facilitate preparation for trial or settlement." *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a). Initial disclosures should provide the parties "with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement." *Windom v. FM Industries, Inc.,* 2003 WL 21939033 *2 (D.Neb.2003) (quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.,* 145 F.R.D. 92, 94 (S.D. Iowa 1992)).

*Hertzv. LuzenacAm., Inc.*, No. CIVA04CV1961LTBCBS, 2006 WL 994431, at *5-6 (D. Colo. Apr. 13, 2006); *see also Campbell*, 2020 WL 3244010, at *2 (acknowledging that the requirements of Rule 26 work to prohibit a shifting of burden to the defendant in attempting to determine the amount of damages claimed); *Lazy S. Ranch, LLC*, No. 19-CV-425-RA W, at 2, (noting the purpose of Rule 26 to "accelerate the exchange of basic information that is needed in most cases to prepare for trial or make an informed decision about settlement") (internal quotations omitted); *Radtke v. Caschetta,* 822 F.3d 571, 575 (D.C. Cir. 2016) (noting the district's appreciation of "the important role Rule 26 plays by mandating early disclosure of damages, thereby enabling the

opposing party to decide whether to settle before expending immense resources."); *Mikulec v. Town of Cheektowaga,* 302 F.R.D. 25, 29 (W.D.N.Y. 2014) ("The purpose of Rule 26 disclosures "is to avoid surprise or trial by ambush."); *Lopez v. City of New York,* No. 11-CV-2607 (CBA)(RER), 2012 WL 2250713, at *1 (E.D.N.Y. June 15, 2012); *see also Mawby v. United States,* 999 F.2d 1252, 1254 (8th Cir. 1993) ("We have said that the purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice. The rules are meant to [e]nsure that . . . parties can obtain mutual knowledge of all the relevant facts gathered by both parties." (internal quotations and citations omitted)).

The OMC is not excused from complying with its initial disclosure obligations due to a failure to fully investigate the case. *Winfield v. Wal-Mart Stores, Inc.,* No. 214 CV 01034 MMDCWH, 2016 WL 1169450, at *3 (D. Nev. Mar. 22, 2016). Rather, parties must "make a reasonable inquiry into the facts of the case . . . . one that is reasonable under the circumstances, focusing on the facts that are alleged with particularity in the pleadings." *Lintz v. American General Finance, Inc.,* No. Civ.A. 98-2213-JWL, 1999 WL 619045, *3 (D. Kan. 1999).

Federal Rule of Civil Procedure 37(c)(1) addresses a party's failure to disclose or supplement initial disclosures, providing that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.,* 873 F.3d 1191, 1200 (10th Cir. 2017). Failure to disclose the measure of damages alone is sufficient to preclude such evidence at trial. *Roberts v. Ground Handling, Inc.,* No. 04-cv-4955, 2007 WL 2753862, at *4 (S.D.N.Y. Sept. 20, 2007). The Defendants *presently* are not requesting such drastic measures. In *Paycom Payroll, LLC v. Richison,* No. CIV-09-488-W, 2011 WL 13112251, at *5 (W.D. Okla.

June 8, 2011), Judge West noted that "Rule 37 permits the Court in its discretion to order the payment of reasonable expenses, including legal fees, caused by the failure of a party to provide certain initial disclosures as required by Rule 26(a), F.R.Civ.P., or to provide supplemental disclosures as required by Rule 26(e), supra, to complete or correct a previous incomplete or inaccurate response to a request for production." Defendants request such relief with this Motion.

### B. *Interrogatories.*

In the same vein, "[c]ontention interrogatories that seek damage theory and methodology information from a plaintiff almost invariably will comport with the requirements of Rules 26(b)(1) and 33(c) of the Federal Rules of Civil Procedure, seeking as they do, information about an inherent element of the claim."[3] *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 230 F.R.D. 538, 544 (N.D. Ill. 2005); *SPH Am., LLC v. Research in Motion, Ltd.*, No. 13CV2320 CAB (KSC), 2016 WL 6305414, at *4 (S.D. Cal. Aug. 16, 2016) (rejecting plaintiff's argument that it was unable to respond to interrogatory concerning damages as premature in part because "[u]nder plaintiff's theory, any contention interrogatories seeking information on damages would be rendered almost useless as they would not require responses until the eve of the close of discovery"); *Honeywell Int'l Inc. v. Furuno Elec. Co.*, No. 09-CV-3601 MJD/TNL, 2013 WL 2385224, at *4 (D. Minn. May 30, 2013); *Nyanjom v. Hawker Beechcraft, Inc.*, No. 12-1461-JAR-KGG, 2014 WL 2135997, at *4 (D. Kan. May 22, 2014) (ordering the Plaintiff, as to a damages interrogatory, "to provide any [damages] calculations he may have. Plaintiff is instructed that the failure to calculate his damages may make it impossible for him to prove such damages at trial.");

---

[3] This Court recognized the propriety of contention interrogatories—at least that do not seek "identif[ication of] *all* persons with knowledge or *all* facts or *all* documents in a complicated case"—in *United States v. Bridger-Riley*, No. 14-CV-654-JHP-FHM, 2015 U.S. Dist. LEXIS 95996, at *5 & n.4 (N.D. Okla. July 23, 2015) (emphasis in original).

*Pre-Paid Legal Servs. v. Harrell*, No. CIV-06-019-JHP, 2007 U.S. Dist. LEXIS 40789, at *7 (E.D. Okla. May 30, 2007) (noting prior "order[] to supplement [the plaintiffs'] interrogatories in regard to the [defendants'] request for specific damage calculations, theories, and underlying documentation").

Accordingly, whether viewed under its initial disclosure obligations under FED. R. CIV. P. 26(a)(l)(A)(iii) or its interrogatory response obligations under FED. R. CIV. P. 33(b), the result is the same: the OMC may not simply provide a general statement of its damages: it must instead provide specific damages calculations, theories, and underlying documentation.

## II. THE OMC'S POSITIONS ON PROVIDING DETAIL ABOUT ITS DAMAGES FAIL.

The Defendants below set forth (1) each reason that the OMC has recently proffered for why it believes it does not need to make a further damages disclosure at this time and (2) explain why those assertions are factually and/or legally incorrect.

**The ACIR provides the necessary detail.[4]** As set forth on pages 3 and 4, *supra*, the ACIR certainly pleads that the OMC alleges that is entitled to damages. What the ACIR does not explain is what the OMC's *theory* of damages are, how it calculates those damages (or how it would calculate those damages), or what additional information is purportedly needed to arrive at a damages calculation. All this information is required to be provided, whether under FED. R. CIV. P. 26(a)(l)(A)(iii) or FED. R. CIV. P. 33(b), and the Court should order the OMC to do so.

**The OMC's recent briefing provides the necessary detail.[5]** To support this allegation, the OMC relies upon two statements from recent filings: (i) the OMC's statement in the July 15,

---

[4] This theory, or substantive words to that effect, was relied upon by the OMC's counsel during the July 29, 2020 meet and confer.

[5] This theory was articulated in the OMC's August 12, 2020 letter, and it referenced statements in the OMC's portion of the July 13, 2020 Joint Status Report (Dkt. # 166, at 3) and the OMC's

2020 Joint Status Report that "the OMC is also entitled to compensation for damages in an amount that will cover the financial harm to the Osage Mineral Estate, and Osage headright holders, from the obstruction to oil and gas drilling on the Estate caused by Defendants' ongoing trespass;" (Dkt. # 166, at 3);[6] and (ii) the OMC's statement in its May 27, 2020 Response to the Defendants' Partial Motion to Dismiss stating that the OMC seeks "both monetary damages and equitable relief for trespass to Indian lands in order to 'reimburse the Tribe for the most profitable use of its land.'" (quoting *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1551 (9th Cir. 1994)). **Neither of these statements says anything about how either category of damages was allegedly suffered or is (or will be calculated).** The first statement about alleged "obstruction to oil and gas drilling" is asserted notwithstanding this Court's prior findings that:

> 21. The court finds no evidence that the Wind Farm's surface use would prevent reasonable access to, and use of, the surface estate by oil and gas lessees. However, in the event an actual conflict occurs, the court finds that it can and should be resolved by the parties in accordance with their respective obligations under federal and state law. In the event a situation arises in which the defendants cannot accommodate an oil and gas lessee's request, the oil and gas industry has the ability. . . to work around conflicts by modest adjustments in the form of directional drilling or moving the oil and gas wells slightly. . . . If a modest adjustment proves to be impossible, the lessee may seek redress of the specific dispute in a court of appropriate jurisdiction.

---

Response to the Defendants' Partial Motion to Dismiss the OMC's Complaint in Intervention (Dkt. # 158, at 8).

[6] Previously, when the Defendants raised the argument that Case No. 11-CV-643-GKF-PJC precluded the pursuit of alleged damage from interference with oil and gas operations (Dkt. # 118, at 21-22), the OMC replied indicating that it was not pursuing such a theory.  (Dkt. # 127, at 9 n.4).  Moreover, the United States' First Amended Complaint contains no allegation even remotely implicating alleged interference to oil and gas drilling, and, in fact, states that "***The instant Amended Complaint does not concern or make any allegations that concern oil and gas development or exploring, severing, capturing or producing oil and gas***."  (Dkt. # 20, at 5 n.1, emphasis added).  Thus, the attempt to pursue this theory is clearly barred by Judge Frizzell's finding that "efficiency in the conduct of the proceedings requires that the remedies sought by OMC be ***limited to those sought by the United States in its First Amended Complaint***."  (Dkt. # 161, at 14, emphasis added).

14

22. Each permanent turbine site will be 70 feet by 70 feet. During construction, there will also be a 40 foot by 80 foot temporary pad from which the turbine will be erected. Access to the turbine construction site can be staged from any direction—including the direction opposite the well site. A drilling rig would need roughly 100 feet from the edge of a drilling site to the wellhead, and from there drilling activities can typically be staged from any direction. In the event the location of a particular drill site is closer than these distances allow, a modest adjustment to the drilling schedule or location may solve the conflict.

23. The Court also finds that if a well location is selected within close proximity to a turbine center, or directly on a Wind Farm road or transmission line . . . mineral lessees will likely be able to make modest adjustments to the well location. With the types of wells to be drilled, the currently available drilling technology, and the nature of the geological formations being targeted, a modest adjustment to provide the necessary setback from a turbine, or to move off a road or underground transmission line, could likely be reasonably accomplished by the mineral lessees. The Court finds that such adjustments are well within the capabilities of the mineral lessees and that such adjustments are routinely made in the oil and gas industry. In the event an actual, non-speculative, conflict develops that prevents a lessee from obtaining reasonable access to the surface estate, the law provides recourse.

24. The Court further finds that the economics of the planned drilling program indicate that [the lessee] will likely make necessary adjustments rather than forego development. . . . [T]he wells are sufficiently promising that the additional expense associated with adjusting the location will not be prohibitive.

25. As to the oil and gas infrastructure such as flow lines, water lines, and tank batteries, the Court finds that any impact from the Wind Farm will be minimal. To the extent such infrastructure is buried, it will be at different depths than the underground collection lines. [The lessee] can readily bore under Wind Farm roads if needed. And if a desired flow line or water line happens to intersect a turbine location, only a minor adjustment is necessary to circumnavigate the 16 foot diameter of the foundation at the four foot subsurface level. . . . [T]he surface impediments in the area, even with the additional Wind Farm facilities, are fewer than what oil and gas companies normally encounter in their operations. . . . [L]aying subsurface lines in and around the Wind Farm's collector lines will not present a significant obstacle to the lessees. . . . [W]ind farms and oil and gas operations can and do co-exist in close proximity to each other, including in Oklahoma. . . .

*Osage Nation v. Wind Capital Grp., Ltd. Liab. Co.*, No. 11-CV-643-GKF-PJC, 2011 WL 6371384, at *4-5 (N.D. Okla. Dec. 20, 2011).  The Defendants assert that these findings are preclusive of the ability to pursue damages in this action for alleged "obstruction to oil and gas drilling."  But

even if that were not the case, the OMC has not indicated—in any manner—how it does or will compute such damages. And the "reimburse the Tribe for the most profitable use of its land" theory is even worse. First, the theory was espoused by the OMC as a basis for it to pursue claims for accounting and disgorgement, which Judge Frizzell has found that it may not do.[7] (Dkt. # 161, at 15 ("Osage Wind's request to dismiss OMC's allegations of intentional, willful, or bad faith conduct and certain equitable relief—specifically disgorgement of profits, an accounting of 'all revenue attributable to the Osage Wind wind farm operation,' and unjust enrichment—is granted."). Second, and more fundamentally for purposes of this Motion, the OMC has never explained what this "reimbursement" theory would look like, how it could possibly be calculated in its view, or what information would be necessary to make such a calculation. All of this is required for the Defendants to be able to meaningfully challenge this theory in discovery and to be able to retain one or more expert witnesses to refute it on the merits.

**The OMC's expert report(s) will provide the necessary detail.[8]** The text of FED. R. CIV. P. 26(a)(1)(E) rejects the notion of indefinitely deferring disclosing the mandatory damages computation: "A party is not excused from making its disclosures because it has not fully investigated the case . . . ." Further, there is no "exception to Rule 26(a)(1) in cases in which damages will be proved by experts: the disclosing party still has the responsibility to provide each category of required disclosures based on the information it has at the time, and to supplement those disclosures as more information is gained." *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2013 WL 5495542, at *3 (S.D.N.Y. Oct. 3, 2013); *Allstate Ins. Co. v. Nassiri*, No. 2:08-cv-369, 2010 WL 5248111, at *4 (D. Nev. Dec. 16, 2010) ("While the precise method of calculation need

---

[7] And in any event, *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544 (9th Cir. 1994), is inapplicable in this case for the reasons set forth in Dkt. # 159, at 1-2.

[8] This theory was articulated in the OMC's August 12, 2020 letter.

not be disclosed if it is properly the subject of future expert testimony, this does not relieve the plaintiff from providing reasonably available information concerning its damages computation."); *Hesco Parts, LLC v. Ford Motor Co.*, No. 3:02-CV-736-S, 2007 WL 2407255, at *2 (W.D. Ky. Aug. 20, 2007) ("[A]lthough the defendants are not entitled to early disclosure of the plaintiff's expert report, the plaintiff's initial disclosures should provide its executives' assessment of damages in light of the information available to them in sufficient detail so as to inform the defendants of the contours of their potential exposure.").  In *Honeywell Int'l, Inc. v. Furuno Elec. Co.*, No. 09-cv-3601 (MJD/TNL), 2013 WL 2385224, at *4-5 (D. Minn. May 30, 2013), the Court rejected the contention by a party that it could simply defer answering an interrogatory seeking disclosure of its damages theory pending the provision an expert reports.  In so doing, the Court specifically noted that the plaintiff "was already required to provide similar information as part of its initial disclosures under Rule 26(a)."  *Id.* at *4-5; *see also Winfield v. Wal-Mart Stores, Inc.*, No. 2:14-cv-01034-MMD-CWH, 2016 WL 1169450, at *3 (D. Nev. Mar. 22, 2016) ("[F]uture expert analysis does not relieve a plaintiff of the obligation to inquire and report the information reasonably available to her at the initial disclosure deadline.").  The problem here is that the OMC's initial disclosures and interrogatory response on damages provide ***literally no information*** about how it views its theory of damages or how it will be calculated.  While perhaps an expert report could result in supplementation, the Defendants are entitled right now to an articulation of the OMC's damages theory and what facts and information on which it will be based to allow them to meaningfully litigate that theory throughout discovery.

**The Defendants have the information needed.**[9]  As an initial matter, this theory is simply wrong.  The Defendants believe that the measure of damages must be tied to the value of the rock

---

[9] This theory was articulated in the OMC's August 12, 2020 letter.

that was "*sorted*," "*crushed*," and "*exploited* . . . as structural support for each wind turbine." *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1091 (10th Cir. 2017).[10]   It is clear that the OMC disagrees; but it is entirely unclear what additional amount the OMC contends it is entitled to and how it will be calculated (even though the OMC has filed pleadings claiming that it has been damaged).   And in any event, "[t]he plaintiff cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages."   *Jackson v. UA Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011).   The OMC must, at a minimum, describe what its damages theories are in some level of detail (including at least the manner in which they are or will be calculated), so that the Defendants may reasonably be about the process of engaging in discovery efforts to rebut them.   This is especially so since the Defendants will have only about two months of discovery after the OMC discloses any expert reports.

III.   **THE COURT SHOULD FIND THAT THE OMC'S ASSERTION OF "EXECUTIVE PRIVILEGE" IS IMPROPER AND THAT SUCH A PRIVILEGE IS INAPPLICABLE IN THIS CASE.**

One of the Defendants' key theories of defense is that the arguments advanced in this litigation were advanced too late in time and were, in fact, part of the OMC's and Osage Nation's (the "Nation") years-long quest to veto the Project on any conceivable grounds, giving rise to a number of equitable defenses that particularly apply to the sought injunction against the Project's existence.   To that end, communications between and among the OMC and the Nation demonstrating these facts are essential.   The OMC has objected to providing such communications on the basis of an "executive privilege" it claims is created by Osage Nation Code, tit. 15 ch. 8 § 8–104 (a)(5, 11), and the OMC has currently withheld two documents on this basis.   But the issue is of far greater import, because numerous OMC members will be subject to deposition in this case

---

[10] The Defendants have produced all known information in their possession, custody, and control about that issue.

(and about these precise communications).  And "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege . . . ."  Fed. R. Civ. P. 30(c)(2).  Thus, the question of whether this purported privilege applies in this case is of significant import, and should be decided by the Court as early as possible and in a definitive way.

### A.  The Cited Provision of the Osage Nation Code Does Not Create an Evidentiary Privilege.

As a preliminary matter, Osage Nation Code, tit. 15 ch. 8 § 8–104 (a)(5, 11) does not, in any event, provide a privilege from discovery or testimony.  It is part of the Osage Nation's Open Records Act.  (*See* Osage Nation Code, tit. 15 ch. 8, copy attached as Exhibit J).  The Eastern District of Oklahoma considered a very similar claim based upon the similarly worded Oklahoma Open Records Act in *Am. Commerce Ins. Co. v. Harris*, No. CIV-07-423-SPS, 2008 WL 3456848 (E.D. Okla. Aug. 8, 2008).  There, the Oklahoma Insurance Department sought to preclude discovery of a file that Oklahoma statutory law provided "shall be confidential and shall not be subject to the Oklahoma Open Records Act."  *Id.* at *1.  The Court, however, concluded that "while the file clearly is confidential, i. e., protected from disclosure to the public upon request, . . . *it is not protected from discovery by any evidentiary privilege*."  *Id.* (emphasis added).  The cited provision of the Osage Nation Code is indistinguishable from the Oklahoma Open Records Act provisions at issue in *Harris*, and this Court should similarly find that the statute confers no privilege in federal discovery., And, since the records are only "confidential" and not privileged, general concerns about confidentiality of documents may be addressed by the Amended Stipulated Protective Order (Dkt. # 146).[11]

---

[11] It is the Federal Rules of Civil Procedure, rather than any statute of a state or tribal government, which governs discoverability of information in this case.  *See, e.g., Pruett v. Erickson Air-Crane Co.*, 183 F.R.D. 248, 251 (D.Or. 1998); *Mason v. United States,* 486 F. Supp. 2d 621, 625 (W.D.Tex. 2007); *Pantages v. Cardinal Health 200, Inc*., No. 5:08-cv-116-Oc-10GRJ, 2009 WL

**B. *Common Law Does not Afford any Executive Privilege to the OMC or the Nation.***

While it is not clear, the OMC may claim that an "executive privilege" arising from common law also protects its communications with the Nation. Not so. Privilege is governed by FED. R. EVID. 501, which provides:

> The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise:
>
> the United States Constitution;
>
> a federal statute; or
>
> rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

The last provision "incorporates the doctrine" of *Erie*. *In re Grand Jury Investigation*, 918 F.2d 374, 379 n.6 (3d Cir. 1990). Since jurisdiction in this case is not based upon diversity, *Erie*— and thus that clause—are inapplicable. Moreover, no provision of the United States Constitution, a federal statute, or a rule prescribed by the United States Supreme Court provides executive privilege to the OMC and/or the Nation. The question thus is whether federal common law does.

Federal common law does recognize an executive privilege.[12]  *Cheney v. U.S. District Court*, 542 U.S. 367, 382-89 (2004); *United States v. Nixon*, 418 U.S. 683, 705 (1974). The privilege so recognized does not extend beyond communications by, with, or at the direction of

---

1011048 (M.D. Fla. Apr.15, 2009); *Hilderman v. Enea TekSci, Inc.*, No. 05CV 1049 BTM(AJB), 2010 WL 143440, at *3 (S.D. Cal. Jan. 8, 2010); *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, CIV. NO. S-06-0533 GEB GGH, 2007 WL 273949 (E.D. Cal. Jan. 29, 2007).

[12] This privilege is an evidentiary privilege, when it applies and would thus provide a basis to withhold and decline to answer discovery. The privilege discussed in *Davis v. Littell*, 398 F.2d 83, 84 (9th Cir. 1968)—on which the OMC has recently relied—is a privilege from liability for defamation, *not* an evidentiary privilege.

the President of the United States.  *See, e.g.*, *Fish v. Kobach*, No. 16-2105-JAR-JPO, 2017 WL 1929010, at *5 (D. Kan. May 10, 2017) ("By its terms, *Nixon* does not extend the privilege to presidents-elect.").[13]

Courts analyzing the question of whether the privilege applies to a Native American tribe have answered in the negative based upon this rationale.  In *Miccosukee Tribe of Indians of Florida v. U.S.*, No. 12-cv-22638-UU, 2013 WL 7728831, at *9 (S.D. Fla. Feb. 11, 2013), a Tribe cited executive privilege in resisting the United States' efforts to discover communications between the Chairman of the General Council of the Tribe and his advisors.  The court rejected the Tribe's claim of executive privilege on three grounds.  First, "the Tribe provides no legal authority for the proposition that the executives of Indian tribes enjoy the same executive privileges as the President, and the Court has located no such authority after a diligent search." *Id*.  Second, the Tribe's attempt to invoke the executive privilege "wholly ignores the constitutional framework that delineates the powers of the three federal branches of the government and affords the President of the United States the prerogatives that form the basis of the President's executive privilege." *Id*. at *9.  "In short, the Supreme Court's precedents on executive privilege offer no suggestion that the Court's analysis of Presidential privilege is intended to apply to other executives of sovereign bodies.  To the contrary, the Supreme Court has advised that '[e]xecutive privilege is an extraordinary assertion of power not to be lightly invoked.'" *Id*. (quoting *Nixon*, 433 U.S. at 48).  Third, the court held that even if the Tribe were entitled to the same executive privileges as

---

[13] There is a separate deliberative process privilege under federal law.  But the OMC did not assert that privilege in any manner, and its potential applicability has been waived as result. Moreover, that privilege "does not protect 'communications made subsequent to an agency decision.'" *Redland Soccer Club v. Dep't of the Army*, 55 F.3d 827, 854 (3d Cir. 1995) (quoting *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993)).  The Defendants' discovery requests at issue in this Motion are time limited to a period of time after the OMC and the Nation had made the decision to oppose the Project and had publicly communicated that opposition.

the President, it would compel production of the documents requested by the United States, "[i]n light of the public's clear interest in enforcing federal tax laws[.]"  *Id*. at *10.

*United States v. Billie*, 611 Fed. Appx. 608, 609 (11th Cir. 2015), is a related proceeding involving the IRS' investigation into whether the Miccosukee Tribe had distributed more than $300 million in casino revenue without complying with reporting and withholding requirements.  The IRS issued an administrative summons against Colley Billie, the Chairman of the General Council of the Tribe, seeking both the production of documents and the Chairman's appearance for questioning.  *See id*.  The United States initiated an action in federal court to enforce the summons, and the Tribe's General Council subsequently passed a resolution denying authority for the release of records.  *Id*. at 610.  The Chairman cited the Tribe's newly-passed resolution as a reason for not producing the requested documents.  *Id*.  *Billie* framed the issue as follows: "[w]hether tethered specifically to the blocking resolution or asserted more generally as a type of immunity inherent in tribal sovereignty, the question on appeal asks simply whose laws are superior and therefore controlling: those of the United States or those of the Tribe."  *Id*. at 611.  In holding that the United States' laws are superior, *Billie* relied on *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 544 (1987), in which the Supreme Court held that a French statute which blocked the production of certain records did not "deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."  *See also supra* note 12.  *Billie* has been summarized by courts as "citing *Aerospitale* when analyzing the district court's authority to order a party under its jurisdiction to produce documents, though the party alleges that the order would violate Native American tribal law."  *Burrow v. Forjas Taurus S.A.*, No. 16-21606-Civ-TORRES, 2017 WL 2620067, at *3 (S.D. Fla. June 16, 2017).

The Court should accordingly follow these authorities and find that there is no executive privilege arising under tribal law that permits the OMC to withhold otherwise discoverable documents in this case.[14]

### C. Even if the Executive Privilege Applied, The OMC Has Not Properly Invoked It.

To properly invoke the executive privilege, "the privilege must be claimed by the head of the applicable agency after actual personal consideration by that officer." *Smith v. Fed. Trade Com.*, 403 F. Supp. 1000, 1016 (D. Del. 1975) (citing *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953)). Here, there is no indication that the OMC has followed this process with respect to the documents it has withheld (or not searched for) based upon its purported claim of executive privilege. It appears the claim was made only by counsel, which is not sufficient.

### D. The Court Should In Any Event Find the Executive Privilege Does Not Apply to Communications About the Project.

Even if it otherwise applied, and it does not, the Court should still find that the Defendants may obtain discovery—whether through the interrogatories and requests for production at issue in this Motion or through deposition inquiry—of communications between and among the OMC and the Nation about the Project and their opposition to it. The executive privilege is a "qualified privilege and can be overcome if the party seeking discovery shows sufficient need for the otherwise privileged material, with the court required to balance the litigant's need for the disclosure against the government's need for secrecy." *Hinsdale v. City of Liberal*, Case No. 96-

---

[14] It bears noting that the OMC is not even part of the executive branch of the Osage Nation. The Executive Branch of the Nation is established by Article VII of the Osage Nation Constitution, which prescribes a number of different offices and departments. The OMC, however, is a separate agency, established under a different provision of the Osage Nation Constitution. Communications involving the OMC—as do all documents and information at issue in this Motion—necessarily do not involve the Nation's chief executive or his close advisors in a privileged and confidential manner.

1249-FGT, 1997 WL 557314, at *1 (D. Kan. Aug. 27, 1997).  Here, the Defendants critically need to obtain the OMC's internal communications (and communications with the Nation) to demonstrate the manner and context in which the theories espoused in this case came to be to demonstrate numerous of their defenses, as well as to present relevant equitable considerations when the Court weighs the equities as it must to consider both Plaintiffs' requests for injunctive relief.  The evidence is not available elsewhere, and is years old in any event (not bearing on any current confidential governmental efforts).

CONCLUSION

The OMC chose to intervene as a plaintiff in this case.  That means that it is subject to the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  Those Rules require it to provide a computation of damages and to produce evidentiary material showing how those computations were determined.  The OMC has made only the vaguest and broadest descriptions of its damages (and even those were in court filings, not discovery responses).  The OMC must do more, even if an expert will ultimately testify about some aspects of its damage claims.  And no executive privilege applies under federal law to the OMC's communications about the Project at issue in this case.  The executive privilege that can apply to the federal executive branch has not been properly invoked by the OMC in any event and should not foreclose communications about the Project even if it could apply generally.

The Court should order the OMC to provide detail and computations of its damages and find that no executive privilege applies in this case.

Respectfully submitted,

/s/ Ryan A. Ray

**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER
JETER BARNETT & RAY, P.C.**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**
**Sarah M. Stevenson**
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Abi Laura Fain
Nolan Fields IV
Cathryn D. McClanahan
David McCullough
Mary Kathryn Nagle
Wilson Kirk Pipestem
Jeffrey S. Rasmussen

The following non-ECF registrants have been served by First Class United States mail:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*

*/s/ Ryan A. Ray*
Ryan A. Ray