# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| THE OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO THE UNITED STATES' MOTION TO COMPEL DISCOVERY

| | |
|---|---|
| Ryan A. Ray, OBA #22281<br>NORMAN WOHLGEMUTH CHANDLER<br>JETER BARNETT & RAY, P.C.<br>3200 Mid-Continent Tower<br>401 South Boston Avenue<br>Tulsa, OK 74103<br>918-583-7571<br>918-584-7846 (facsimile) | Lynn H. Slade, *admitted pro hac vice*<br>Sarah M. Stevenson, *admitted pro hac vice*<br>MODRALL, SPERLING, ROEHL,<br>HARRIS & SISK, P.A.<br>Post Office Box 2168<br>Albuquerque, NM 87103-2168<br>505-848-1800<br>505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: September 1, 2020**

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................3

ARGUMENT AND AUTHORITIES ................................................................................5

I.      WHEN COMMUNICATIONS ARE SUBJECT TO THE ATTORNEY-CLIENT
        PRIVILEGE. ...........................................................................................................5

II.     WHEN COMMUNICATIONS ARE SUBJECT TO THE ATTORNEY-WORK-PRODUCT
        DOCTRINE. ............................................................................................................7

III.    IMPLIED WAIVER IS INAPPLICABLE IN THIS CASE. ...........................................10

        A.  The Standard for Assessing Implied Waiver. ..........................................10

            1.  The Defendants Have Not Put Privileged Information at Issue. .....................11

            2.  Application of the Privilege Will Not Deprive the United States of
                Vital Information. .................................................................................14

        B.  Relevance, Even Purported "Critical" Relevance, is Not an
            Exception to the Attorney-Client Privilege. ................................................15

        C.  The Requirement to Balance the Equities Does Not Result in a
            Waiver of the Attorney-Client Privilege. ....................................................18

IV.     THE ATTORNEY-CLIENT PRIVILEGE APPLIES TO COMMUNICATIONS WITH THE
        ENEL LEGAL DEPARTMENT. .................................................................................19

V.      COMMUNICATIONS WITH WCG REPRESENTATIVES AND COUNSEL AND
        TRADEWIND REPRESENTATIVES AND COUNSEL ARE SUBJECT TO THE
        COMMON-INTEREST PRIVILEGE AND THE WORK PRODUCT DOCTRINE. ...............21

        A.  The Communications are Protected by the Common-Interest
            Privilege. ..............................................................................................10

        B.  The Communications are Protected by the Work-Product
            Doctrine. ...............................................................................................22

VI.     THE TRUE STATEMENT THAT THE ATTORNEY-CLIENT PRIVILEGE DOES NOT
        PROTECT FACTS IS A RED HERRING HERE. ..........................................................23

**VII.**     **IF THE COURT HAS ANY QUESTION REGARDING THE PRIVILEGED OR WORK PRODUCT STATUS OF ANY DOCUMENT, IT SHOULD EXAMINE THEM *IN CAMERA*.** .........24

**CONCLUSION** .........................................................................................................................25

TABLE OF AUTHORITIES

<u>**Cases**</u>

*AIU Ins. Co. v. Tig Ins. Co.*
    2008 U.S. Dist. LEXIS 96693 (S.D.N.Y. Nov. 25, 2008) ................................................. 18

*Allendale Mut. Ins. Co. v. Bull Data Sys.*
    152 F.R.D. 132 (N.D. Ill. 199) ........................................................................................ 9

*Ambrose v. City of White Plains*
    2011 U.S. Dist. LEXIS 172178 (S.D.N.Y. Sep. 30, 2011) ............................................... 15

*Ames v. Black Entm't TV*
    98 Civ. 0226 (LMM)(AJP), 1998 U.S. Dist. LEXIS 18053
    (S.D.N.Y. Nov. 17, 1998) ............................................................................................. 20

*Am. Optical Corp. v. Medtronic Inc.*
    56 F.R.D. 426 (D. Mass. 1972) ..................................................................................... 8

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*
    90 Civ. 7811 (AGS)(JCF), 1994 U.S. Dist. LEXIS 13216, 1994 WL 510043
    (S.D.N.Y. Sept. 16, 1994) ............................................................................................. 18

*Aull v. Cavalcade Pension Plan*
    185 F.R.D. 618 (D. Colo. 1998) .................................................................................... 11

*Banco Do Brasil, S.A. v. 275 Wash. St. Corp.*
    No. 09-11343-NMG, 2011 U.S. Dist. LEXIS 82185 (D. Mass. July 27, 2011) ............... 12

*Berry Plastics Corp. v. Intertape Polymer Corp.*
    No. 3:10-cv-00076-RLY-WGH, 2015 U.S. Dist. LEXIS 87697
    (S.D. Ind. July 7, 2015) ................................................................................................ 16

*Bishop Rink Holdings, LLC v. CIMCO Refrigeration, Inc.*
    No. 12-2715-JAR-KGG, 2013 U.S. Dist. LEXIS 112257 (D. Kan. Aug. 9, 2013) .......... 23

*Breneisen v. Motorola, Inc.*
    No. 02 C 50509, 2003 U.S. Dist. LEXIS 11485 (N.D. Ill. July 3, 2003) ........................ 20

*Burlington Indus. v. Exxon Corp.*
    65 F.R.D. 26 (D. Md. 1974) .......................................................................................... 8

*Cage v. Harper*
    No. 17-CV-7621, 2019 U.S. Dist. LEXIS 217983 (N.D. Ill. Dec. 19, 2019) .................. 15

*Cardtoons, L.C. v. Major League Baseball Ass'n*
  199 F.R.D. 677 (N.D. Okla. 2001) ...........................................................................11, 16

*Chamberlain Grp. v. Interlogix, Inc.*
  No. 01 C 6157, 2002 U.S. Dis. LEXIS 5468 (N.D. Ill. Mar. 26, 2002) ...........................16

*City of Philadelphia, Pa. v. Westinghouse Elec. Corp.*
  205 F. Supp. 830 (E.D. Pa. 1962) ....................................................................................23

*Crispin Co. v. Petrotub-S.A.*
  CIV-05-159-C, 2006 WL 2472878 (W.D. Okla. Aug. 24, 2006)......................................22

*Columbia Cmty. Credit Union v. Chi. Title Ins. Co.*
  No. C09-5290RJB, 2009 U.S. Dist. LEXIS 141078 (W.D. Wash. Dec. 22, 2009)...........12

*Connell v. Bernstein-Macaulay, Inc.*
  407 F. Supp. 420 (S.D.N.Y. 1976)....................................................................................11

*Dansko Holdings, Inc. v. Ben. Tr. Co.*
  No. 160324, 2017 U.S. Dist. LEXIS 192230 (E.D. Pa. Nov. 21, 2017).............................8

*Davilla v. Enable Midstream Partners L.P.*
  913 F.3d 959 (10th Cir. 2019) ..........................................................................................18

*Dilworth v. Fortier*
  1964 OK 112, 405 P.2d 38..................................................................................................15

*Dixie Mill Supply Co. v. Cont'l Cas. Co.*
  168 F.R.D. 554 (E.D. La. 1996)........................................................................................17

*Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*
  326 U.D. App. D.C. 332, 124 F.3d 1304 (1997) ..............................................................10

*D.M. v. Wesley Med. Ctr. LLC*
  No. 2:18-CV-02158-KHV-KGG, 2019 U.S. Dist. LEXIS 160886
  (D. Kan. Sep. 19, 2019) ....................................................................................................21

*ECDC Envtl., L.C. v. N.Y. Marine & Gen. Ins. Co.*
  1998 U.S. Dist. LEXIS 8808 (S.D.N.Y. June 4, 1998) ...............................................22, 23

*Empire Bank v. Dumond*
  No. 13-CV-388-CVE-PJC, 2014 U.S. Dist. LEXIS 201988
  (N.D. Okla. May 14, 2014)..................................................................................................4

*Fisher v. United States*
  425 U.S. 391 (1976)..............................................................................................................5

*Frontier Ref. v. Gorman-Rupp Co.*
    136 F.3d 695 (10th Cir. 1998) ............................................................................11, 14, 17

*Genentech, Inc. v. Insmed, Inc.*
    236 F.R.D. 466 (N.D. Cal. 2006) ......................................................................................18

*Grand Jury Proceedings v. United States*
    156 F.3d 1038 (10th Cir. 1998) ........................................................................................22

*Hearn v. Rhay*
    68 F.R.D. 574 (E.D. Wash. 1975)........................................................................10, 11, 14

*Herd v. Asarco Inc.*
    No. 01-CV-891-H (M), 2002 U.S. Dist. LEXIS 28090 (N.D. Okla. Apr. 26, 2002) ....6, 13

*Hickman v. Taylor*
    320 U.S. 495 (1947)............................................................................................................7

*Hunt v. Blackburn*
    128 U.S. 464 (1888)............................................................................................................5

*In re Grand Jury Proceedings*
    219 F.3d 175 (2d Cir. 2000)..............................................................................................12

*In re Grand Jury Subpoena Dated November 8, 1979*
    622 F.2d 933 (6th Cir. 1980) ..............................................................................................7

*In re Kaiser Steel Corp.*
    84 B.R. 202 (Bankr. D. Colo. 1988) .................................................................................23

*In Re LTV Sec. Litig.*
    89 F.R.D. 595 (N.D. Tex. 1981) .........................................................................................9

*In re OM Securities Litigation*
    226 F.R.D. 579 (N.D. Ohio 2005) ....................................................................................21

*In re Perrigo Co.*
    128 F.3d 430 (6th Cir. 1997) ..............................................................................................6

*In re Qwest Communs. Int'l*
    450 F.3d 1179 (10th Cir. 2006) ..........................................................................................9

*In re Schlumberger Tech. Corp.*
    No. 20-30236, 2020 U.S. App. LEXIS 17776 (5th Cir. June 4, 2020)..............................12

*John Doe Co. v. United States*
350 F.3d 299 (2d Cir. 2003)............................................................................13

*Kincaid v. Wells Fargo Sec., LLC*
No. 10-CV-808-JHP-PJC, 2012 U.S. Dist. LEXIS 27041
(N.D. Okla. Mar. 1, 2012)..............................................................................8

*Kirby v. O'Dens*
No. 14-CV-388-GKF-PJC, 2015 U.S. Dist. LEXIS 180283
(N.D. Okla. June 25, 2015).............................................................................25

*Laser Indus. v. Reliant Techs.*
167 F.R.D. 417 (N.D. Cal. 1996).....................................................................19

*Lassiter v. Hidalgo Med. Servs.*
No. 17-cv-0850 JCH/SMV, 2018 U.S. Dist. LEXIS 64972
(D.N.M. Apr. 18, 2018) ..................................................................................9

*Lindley v. Life Inv'rs Ins. Co. of Am.*
No. 08-CV-0379-CVE-PJC, 2010 U.S. Dist. LEXIS 41798
(N.D. Okla. Apr. 28, 2010) .................................................................. Passim

*Martin v. Giordano*
No. 11-CV-4507 (ARR), 2016 U.S. Dist. LEXIS 59940 (E.D.N.Y. May 4, 2016) ..........12

*Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*
227 F.R.D. 382 (W.D. Pa. 2005) ......................................................................18

*Mine Safety Appliances Co. v. N. River Ins. Co.*
73 F. Supp. 3d 544 (W.D. Pa. 2014)..................................................................17

*Mobley v. Am. Home Assurance*
No. CIV-11-1293-C, 2012 U.S. Dist. LEXIS 193771 (W.D. Okla. June 5, 2012).............6

*Motley v. Marathon Oil Co.*
71 F.3d 1547 (10th Cir. 1995) .........................................................................12

*Murata Mfg. Co. v. Bel Fuse, Inc.*
No. 03 C 2934, 2007 U.S. Dist. LEXIS 17224 (N.D. Ill. Mar. 8, 2007) ..........................13

*NLRB v Sears, Roebuck & Co.*
421 U.S. 132 (1974)........................................................................................6

*North River Ins. Co. v. Columbia Cas. Co.*
1995 U.S. Dist. LEXIS 53 (S.D.N.Y. January 5, 1995) ....................................................22

*P&G v. S.C. Johnson & Son, Inc.*
   Civil Action No. 9:08-CV-143, 2009 U.S. Dist. LEXIS 137552
   (E.D. Tex. May 13, 2009) ............................................................................16

*Paramount Communs. v. Donaghy*
   858 F. Supp. 391 (S.D.N.Y. 1994)................................................................14

*Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*
   952 F. Supp. 679 (W.D. Mich. 1996) ...........................................................21

*Pinnacle Packaging Co. v. Constantia Flexible GmbH*
   No. 12-CV-537-JED-TLW, 2016 U.S. Dist. LEXIS 16144
   (N.D. Okla. Feb. 10, 2016) ...........................................................................24

*Pinstripe, Inc. v. Manpower, Inc.*
   No. 07-CV-620-GKF-PJC, 2009 U.S. Dist. LEXIS 66430
   (N.D. Okla. July 28, 2009)..............................................................................9

*Pritchard v. Cty. of Erie (In re Cty. of Erie)*
   546 F.3d 222 (2d Cir. 2008)..........................................................................12

*RCHFU, LLC v. Marriott Vacations Worldwide Corp.*
   Civil Action No. 16-cv-1301-PAB-GPG, 2018 U.S. Dist. LEXIS 198355
   (D. Colo. May 22, 2018) .................................................................................6

*ResCap Liquidation Tr. Mortg. Purchase Litig. v. HSBC Mortg. Corp. (USA) (In re Residential Capital, LLC)*
   536 B.R.132 (Bankr. S.D.N.Y. 2015) ...........................................................18

*Rhone-Poulenc Rorer v. Home Indem. Co.*
   32 F.3d 851 (3d Cir. 1994)............................................................................17

*Rodgers v. United States Steel Corp.*
   No. 71-793, 1975 U.D. Dist. LEXIS 12775 (W.D. Pa. Apr. 20, 1975) .............8

*Ross v. City of Memphis*
   423 F.3d 596 (6th Cir. 2005) ........................................................................17

*Ross v. Univ. of Tulsa*
   No. 14-CV-484-TCK-PJC, 2015 U.S. Dist. LEXIS 195043
   (N.D. Okla. Apr. 24, 2015) ...........................................................................25

*Roth v. Aon Corp.*
   254 F.R.D 538 (N.D. Ill. 2009) .......................................................................6

*Sanchez v. Matta*
 229 F.R.D. 649 (D.N.M. 2004)................................................................8

*Sellman v. Amex Assurance Co.*
 No. 05-CV-545-TCK-PJC, 2006 U.S. Dist. LEXIS 105870
 (N.D. Okla. June 30, 2006) ....................................................................24

*Shamis v. Ambassador Factors Corp.*
 34 F. Supp. 2d 879 (S.D.N.Y. 1999)......................................................21

*Sinclair Oil Corp. v. Texaco, Inc.*
 208 F.R.D. 329 (N.D. Okla. 2002)..........................................................10

*SmithKline Beecham Corp. v. Apotex Corp.*
 Nos. 99-CV-4304, 2005 U.S. Dist. LEXIS 22228 (E.D. Pa. Sep./ 28, 2005)...................12

*Sprint Communs. Co., L.P. v. Comcast Cable Communs., LLC*
 No. 11-2684-JWL, 2015 U.S. Dist. LEXIS 189635 (D. Kan. Apr. 16, 2015).............16, 17

*Standard Chartered Bank, PLC v. Ayala Int'l Holdings (U.S.), Inc.*
 111 F.R.D. 76 (S.D.N.Y. 1986) ..............................................................24

*Swidler & Berlin v. United States*
 524 U.S. 399 (1998)...........................................................................5, 17

*Trammel v. United States*
 445 U.S. 40 (1980)................................................................................5

*Tribune Co. v. Purcigliotti*
 93 Civ. 7222, 1998 U.S. Dist. LEXIS 5155 (S.D.N.Y. Apr. 14, 1998)............................10

*Tribune Co. v. Purcigliotti*
 93 Civ. 7222, (LAP)(THK), 1997 U.S. Dist. LEXIS 228 (S.D.N.Y. Jan. 10, 1997)...14, 15

*Truman v. City of Orem*
 362 F. Supp. 3d 1121 (D. Utah 2019)..........................................................17

*United States v. Am. Tel. & Tel. Co.*
 642 F.2d 1285 (D.C. Cir. 1980) ...............................................................23

*United States v. Ary*
 518 F.3d 775 (10th Cir. 2008) ..................................................................5

*United States v. Capitol Serv., Inc.*
 89 F.R.D. 578 (E.D. Wis. 1981) ...............................................................7

*United States v. Copar Pumice Co., Inc.*
    CIV-09-1201, 2012 WL 12898786 (D.N.M. April 23, 2012) ...........................................11

*United States v. Davis*
    636 F.2d 1028 (5th Cir. 1981) ........................................................................................8

*United States v. Leggett & Platt*
    542 F.2d 655 (6th Cir. 1976) ......................................................................................7, 8

*United States v. Lipshy*
    492 F. Supp. 35 (N.D. Tex. 1979) ..................................................................................7

*United States v. Ohio Edison Co.*
    No. C2-99-1181, 2002 U.S. Dist. LEXIS 14290 (S.D. Ohio July 11, 2002).....................16

*United States v. Salerno*
    505 U.S. 317 (1992).....................................................................................................16

*United States v. Schwimmer*
    892 F.2d 237 (2d Cir. 1989).........................................................................................22

*United States v. Zolin*
    491 U.S. 554 (1989)..........................................................................................16, 18, 19

*United States ex rel. Baker v. Cmty. Health Sys., Inc.*
    No. 05-279 WJ/ACT, 2012 U.S. Dist. LEXIS 191017 (D.N.M. July 25, 2012) ..............21

*Upjohn Co. v. United States*
    449 U.S. 383 (1981)......................................................................................................5, 6

*XYZ Corp. v. United States (In re Keeper of the Records)*
    348 F.3d 16 (1st Cir. 2003).............................................................................................14

## **Court Rules**

Fed. R. Civ. P. 26.......................................................................................................................7

LCvR 7.......................................................................................................................................5

LCvR 37.....................................................................................................................................4

## **Other Authorities**

2 EDNA SELNA EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORD PRODUCT
DOCTRINE, at 915 (5th ed. 2007)........................................................................... Passim

Defendants, Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC ("Enel Kansas"), and Enel Green Power North America, Inc. ("EGPNA"), respectfully submit this Response to the United States' Motion to Compel Discovery (Dkt. # 175) (the "Motion").

**INTRODUCTION**

The Motion fundamentally misunderstands the applicable privilege doctrines and their purposes. This Response (1) outlines the purposes and applications of the attorney-client privilege and work product rules and doctrines, *see* Points I & II, VI, *infra,* and turns then to (2) addressing the argument on which the Motion—most principally—is founded: that because the Defendants have stated in dismissal and amendment briefing that "Osage Wind believed, in good faith, based upon a detailed legal analysis, that neither a lease nor permit were required," (*see, e.g.*, Dkt. # 116, at 19), based upon their counsel's position paper sent to counsel for the United States (their adversary), Motion at 6, they have impliedly waived the attorney-client privilege and work-product protection as to *all* documents on the Defendants' Privilege Log. *See* Part III, *infra*. This assertion fails because the Defendants have not pleaded an advice-of-counsel defense. The "detailed legal analysis" reference is not to a privileged document or privileged advice. The reference is solely to an October 20, 2014 memorandum from Lynn Slade (outside counsel for the Defendants) to Alan Woodcock (Field Solicitor for the United States Bureau of Indian Affairs in Tulsa, Oklahoma) and to Robin Phillips, Superintendent of the Osage Agency, BIA.. (Dkt. # 17-4, at 2-10; Dkt. # 28-1) (the "Slade Memorandum").[1] Such pre-suit communications are common

---

[1] All United States' and Defendants' references to a "detailed legal analysis" pertain only to the Slade Memorandum. (Dkt. # 101, at 4, 11; Dkt. # 116, at 4-5, 11; Dkt. # 150, at 6-7, 10-11). No other "legal analysis" was mentioned, nor has any other been cited. The United States acknowledges this to be the case. (Motion, at 8 ("this 'detailed legal analysis' appears to consist solely of a memorandum sent by defense counsel Lynn H. Slade to the United States . . . .")).

between parties and their counsel, and if their sending resulted in a waiver of the attorney-client privilege and the work product doctrine, then such waiver would apply in a great many cases.

The United States has the Slade Memorandum.  It has had the Slade Memorandum since October 20, 2014.  The Slade Memorandum has been filed in this litigation on the public docket since December 10, 2014.  Thus, the United States currently has the ability (and has for years) to test fully whether any of Defendants' witnesses was relying on the Slade Memorandum and to what extent in taking any relevant act or omission in this case.

Beyond that, the United States claims that no work product protection can apply because if the Defendants believed that no lease or permit was required, they could not have possibly anticipated litigation.  (*See, e.g.*, Motion, at 6).  This simply ignores reality.  Most parties before this Court believe in the correctness of their position.  And many parties reasonably anticipate litigation, even while believing themselves to be absolutely right—factually and legally.  But here more specifically, the Defendants had ample reasons to anticipate litigation brought by or on at the behest of the Osage Minerals Council (the "OMC") and/or the Osage Nation (the "Nation"), as they (i) had been involved in such litigation (including in this Court), since 2011 advancing opposition to the Osage Wind wind-energy project located in Osage County, Oklahoma (the "Project"), (ii) were involved in two pending lawsuits with the OMC in 2014 challenging the Project, and (iii) had faced opposition from the OMC at numerous regulatory proceedings relating to the Project.[2]  There was ample basis for the Defendants to anticipate further litigation involving the Project throughout 2013 and 2014.

---

[2] Similarly, the Defendants were entitled to receive attorney-client communications and work product of the entities that owned Osage Wind's membership interests prior to Enel Kansas acquiring them in September of 2014.

2

Moreover, the United States misunderstands the exchange of privileged communications in a modern integrated, corporate entity of substantial size. *See* Parts IV and V, *infra*. EGPNA has an organized legal department (the "Enel Legal Department"), the principal purpose of which is to render legal advice to EGPNA and all of its United States-based subsidiaries and affiliates— including Enel Kansas and Osage Wind. It is not a situation in which an "in-house lawyer" fills multiple roles, including business roles. And the law is clear that business people within a group of corporate affiliates can engage in confidential discussions with inside and outside counsel and can share facts needed for the attorneys to advise them and provided opinions about potential litigation. Applicable law does not preclude the involvement of business people in such necessary confidential communications, including about factual matters. If it did, neither protection would have much meaning, since lawyers must almost always learn the applicable facts from the client to consider in their advice.

The Defendants' claims of attorney-client privilege and work product are proper and have not been impliedly waived. If the Court has any question, it should review the documents *in camera* (as is frequently done in this Court). But in any event, the Motion should be **denied**.

### FACTUAL BACKGROUND

The Declaration of Megan J. Beauregard, General Counsel and Vice President of Legal and Corporate Affairs for EGPNA, attached as Exhibit A, supports this Response. It establishes:

- The Enel Legal Department provides legal advice, and support to litigation-related matters to EGPNA and all of its United States-based subsidiaries and affiliated entities, and it is a separately organized department for that purpose. It does not make general business decisions. (Exh. A, at ¶¶ 2-4).

- The Project had been subject to ongoing legal challenges—including in several different courts—for many years. Such challenges had principally been brought by or at the behest of the OMC or the Nation. The Enel Legal Department worked collaboratively with the prior owners of Osage Wind in responding to, and coordinating the defense of, such ongoing litigation. Those parties all had an identical legal interest

in defeating those efforts and ensuring the Project was not subject to a successful legal challenge in any forum.  (*Id.* at ¶¶ 6-25, 32-33).

- Inside and outside counsel were involved in advising business people at EGPNA, Enel Kansas, and Osage Wind throughout 2014 due to Enel Kansas's pending acquisition of Osage Wind, the numerous ongoing pieces of litigation, threatened litigation, and anticipated litigation relating to the Project, and specifically responding to the October 9, 2014 letter from BIA Superintendent, Robin Phillips.  (*Id.* at ¶¶ 26-28).

- Business people had been specifically advised to include counsel on communications about the Project because of the numerous ongoing pieces of litigation, threatened litigation, and anticipated litigation relating to the Project, and the need for counsel to be fully informed about all relevant facts related to such efforts to properly advise regarding pending legal issues.  Coordination with the prior owners of Osage Wind was necessary and occurred for similar reasons.  Such communications, however, were required to be kept strictly confidential and limited to those actually working on the Project and/or with applicable prior knowledge about it.  (*Id.* at  ¶¶ 29-31).

- The Enel Legal Department was closely involved with responding to the October 9, 2014 letter from BIA Superintendent, Robin Phillips, selecting the outside counsel who would do so, and ensuring that counsel was supplied with the necessary factual information to do so.  (*Id.* at ¶¶ 34-36).

Further, the United States raises various complaints about the several supplemental versions of the Defendants' privilege log, and claims some nefarious intent in the ongoing revisions.  (Motion, at 14-15, 17-18).  But this ignores the reality that the Defendants have made more than ten (10) document productions, totaling 21,349 pages.[3]  Thus, naturally, the review and identification of privileged documents has been an ongoing process.  And some of the Defendants' later supplemental privilege logs have been submitted to specifically be responsive to issues raised by the United States as part of the ongoing discussion consistent with LCvR 37.1.[4]

---

[3] Defendants continue to abide by their duties to supplement discovery responses, and this may necessarily require serving an additional or amended privilege log as that process continues.

[4] In any event, authorities from this Court find much later assertions of privilege or work product to be sufficient.  *Empire Bank v. Dumond*, No. 13-CV-388-CVE-PJC, 2014 U.S. Dist. LEXIS 201988, at *10 (N.D. Okla. May 14, 2014) ("Plaintiff may have inadvertently failed to list work product as a claimed privilege on the log listing communications between participating banks;

4

Also, the United States has submitted an Exhibit to the Motion, which is purportedly, a "comprehensive accounting of the [alleged] deficiencies," (Dkt. # 183, at 10) in the current version of the Defendants' privilege log.[5]  The Defendants' response to that chart is attached as Exhibit B.

## ARGUMENT AND AUTHORITIES

### I.   WHEN COMMUNICATIONS ARE SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *United States v. Ary*, 518 F.3d 775, 782 (10th Cir. 2008).  Deeply rooted in public policy, it remains one of the most carefully guarded privileges, not to be diminished. *See Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).

Its purpose is to encourage full and frank communication between attorneys and clients and thus promote broader public interests in the observance of law and administration of justice. *Upjohn*, 449 U.S. at 389; *Trammel v. United States*, 445 U.S. 40, 51 (1980) (noting the importance for lawyers "to know *all* that relates to the client's" situation to render proper advice));[6] *Fisher v. United States*, 425 U.S. 391, 403 (1976).  It "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure."  *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).

---

however, work-product protection was clearly asserted in Plaintiff's Response brief. Under the circumstances, Empire has not waived its assertion of work product protection.").

[5] The chart is eighteen (18) pages in length and contains substantial argument, much of which was never subject of the parties' meet and confer, and which, if considered, causes the United States' brief to substantially exceed the limitations of LCvR 7.2(c).  But rather than filing a motion to strike (as the United States has frequently done in this case, Dkt. # 39, 42, 102), the Defendants are responding and the Court may either consider those charts as appropriate or not.  Further, the Defendants have served a Fourth Amended and Supplemental Privilege Log, attached as Exh. C.

[6] Unless otherwise noted, all emphases are added and internal quotations and citations omitted.

"Under federal common law, the essential elements of the attorney-client privilege are the following: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived." *Mobley v. Am. Home Assurance*, No. CIV-11-1293-C, 2012 U.S. Dist. LEXIS 193771, at *2 (W.D. Okla. June 5, 2012).[7]

"The attorney-client privilege applies to 'in-house' counsel just as it would another attorney." *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, Civil Action No. 16-cv-1301-PAB-GPG, 2018 U.S. Dist. LEXIS 198355, at *16 (D. Colo. May 22, 2018) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1974)); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) (the attorney-client privilege "applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation." (citing *Upjohn*, 449 U.S. at 401).

Further, the attorney-client privilege applies to drafts of documents, even those always intended for third-party dissemination.  As Judge McCarthy has noted:

> The drafting process is often the type of communication at the core of the attorney-client privilege. It often involves deciding what positions to assert and what information should or should not be revealed along with the reasons for these decisions.

*Herd v. Asarco Inc.*, No. 01-CV-891-H (M), 2002 U.S. Dist. LEXIS 28090, at *7 (N.D. Okla. Apr. 26, 2002); *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009).

---

[7] Of note, anticipating litigation is *not* an element of the attorney-client privilege.

The Defendants bear the burden to establish that the documents withheld are protected by the attorney-client privilege and/or the work-product doctrine.  *Lindley v. Life Inv'rs Ins. Co. of Am.*, 267 F.R.D. 382, 388 (N.D. Okla. 2010).  But as Judge Eagan found in the same case on appeal of Judge Cleary's decision "[o]nce the work-product or attorney-client privilege is established, the party seeking to overcome the assertion of a valid privilege bears the burden to show that the privilege has been waived."  *Lindley v. Life Inv'rs Ins. Co. of Am.*, No. 08-CV-0379-CVE-PJC, 2010 U.S. Dist. LEXIS 41798, at *23 (N.D. Okla. Apr. 28, 2010).  Thus, the United States bears the burden of establishing all variants of implied waiver it alleges.

## II.   WHEN COMMUNICATIONS ARE SUBJECT TO THE ATTORNEY-WORK-PRODUCT DOCTRINE.

The work-product doctrine, which is embodied in Rule 26 of the Federal Rules of Civil Procedure, extends immunity to the content of documents or things prepared by a party or the party's representative, or the party's attorney or his or her agent, in the course of preparation for possible litigation. *See, e.g*, *Hickman v. Taylor*, 320 U.S. 495, 512 (1947); *United States v. Lipshy*, 492 F. Supp. 35, 44 (N.D. Tex. 1979); FED. R. CIV. P. 26(b)(3).

As for "anticipation of litigation," "the work product privilege extends to documents prepared in anticipation of *any* litigation, not just the instant litigation."  *United States v. Capitol Serv., Inc.*, 89 F.R.D. 578, 585 (E.D. Wis. 1981); *In re Grand Jury Subpoena Dated November 8, 1979*, 622 F.2d 933, 935 (6th Cir. 1980) ("The privilege extends necessarily to the work product compiled in previous, terminated litigation.");[8] *United States v. Leggett & Platt*, 542 F.2d 655, 660

---

[8] The fact that the work-product doctrine applies to *terminated* litigation refutes the United States' argument that, because the Tenth Circuit has found that the relevant regulations apply in this case and that certain of Osage Wind's activities constituted mining thereunder, work product has ceased to apply.  (Motion, at 24).  Work product protection is not waived just because one disputed legal issue of many has been decided.

(6th Cir. 1976) ("[T]he work product doctrine applies to work produced in anticipation of other litigation . . . .").

Moreover, "[t]he work product doctrine applies to material prepared when litigation is merely a contingency." *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 42 (D. Md. 1974).  An attorney's research into potential litigation theories is protected.  For example, in *Am. Optical Corp. v. Medtronic, Inc.*, 56 F.R.D. 426, 431 (D. Mass. 1972), the Court concluded that documents prepared by an attorney commissioned to study the validity of a patent prior to a licensing agreement being reached were appropriately protected under the work-product doctrine.  *See also Rodgers v. United States Steel Corp.*, No. 71-793., 1975 U.S. Dist. LEXIS 12775, at *3 (W.D. Pa. Apr. 20, 1975) (holding that materials concerning validation of defendant's personnel procedures, which were prepared after the enactment of Title VII of the Civil Rights Act of 1964, were prepared in anticipation of litigation, although not prepared for the instant suit).

And "[l]itigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Lindley v. Life Inv'rs Ins. Co. of Am.*, 267 F.R.D. 382, 394 (N.D. Okla 2010) (quoting *Sanchez v. Matta*, 229 F.R.D. 649, 655 (D.N.M. 2004); *Kincaid v. Wells Fargo Sec., LLC*, No. 10-CV-808-JHP-PJC, 2012 U.S. Dist. LEXIS 27041, at *8 (N.D. Okla. Mar. 1, 2012) *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981). "[I]nvestigations by regulatory agencies provide reasonable grounds to anticipate litigation." *Dansko Holdings, Inc. v. Ben. Tr. Co.*, No. 16-324, 2017 U.S. Dist. LEXIS 192230, at *22 (E.D. Pa. Nov. 21, 2017).[9]

---

[9] The site visits of the BIA to the Project construction site in September of 2014 (*see* Dkt. # 4, at 4) are an investigation by a regulatory agency.

A necessary corollary to the principle that work-product protection attaches to research regarding the potential for litigation arising from or following a proposed transaction is that "[n]on-lawyer employees may exchange or collaborate on work product without waiving the work product privilege, so long as the work product will eventually assist in litigation."  2 EDNA SELNA EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, at 915 (5th ed. 2007) (citing *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 152 F.R.D. 132, 136 (N.D. Ill. 1993)); *In Re LTV Sec. Litig.*, 89 F.R.D. 595, 612 (N.D. Tex. 1981) ("[T]he concept of work product is not confined to information or materials gathered by an attorney."); *Lassiter v. Hidalgo Med. Servs.*, No. 17-cv-0850 JCH/SMV, 2018 U.S. Dist. LEXIS 64972, at *8 n.1 (D.N.M. Apr. 18, 2018).   And *Pinstripe, Inc. v. Manpower, Inc.*, No. 07-CV-620-GKF-PJC, 2009 U.S. Dist. LEXIS 66430 (N.D. Okla. July 28, 2009)—cited in the Motion, at 22-23—is not to the contrary.   Indeed, the Court there recognized that "non-lawyer status does not, without more, preclude [an employee's] work from qualifying as attorney work product."  *Id.* at *20.   It was only because the communications there were created as part of "a routine Ombudsman investigation," which the Court found "would have occurred – and at least some of the Ombudsman documents would have been created – even had there been no perceived threat of litigation on IBM's part," that the documents were not protected. *Id.* at *25.   There is nothing analogous here, and the Enel Legal Department and outside counsel were advising at all pertinent times for actual, threatened, and potential litigation, not resolving a business dispute through a business means.  (Exh. A, at ¶¶ 25-26, 29-31).

"Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances."  *In re Qwest Communs. Int'l*, 450 F.3d 1179, 1186 (10th Cir. 2006). "Ordinary work product generally refers to materials that are gathered at the request of an attorney

in anticipation of litigation. This type of work product receives less protection than opinion work product. Opinion work product is, basically, the mental impressions of the attorney." *Sinclair Oil Corp. v. Texaco, Inc.*, 208 F.R.D. 329, 334 (N.D. Okla. 2002). "Opinion work product . . . is virtually undiscoverable." *Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 326 U.S. App. D.C. 332, 124 F.3d 1304, 1307 (1997). And as to ordinary work product, "where an alternative means exist[s] at getting the work product information sought—whether by interviews, depositions, subpoenas for the depositions or documents of third parties, generally substantial need will be found wanting." 2 EPSTEIN, *supra*, at 923-24; *Tribune Co. v. Purcigliotti*, 93 Civ. 7222, 1998 U.S. Dist. LEXIS 5155, at *24 (S.D.N.Y. Apr. 14, 1998) ("'Substantial need' cannot be shown where persons with equivalent information are available for deposition.").

## III.   IMPLIED WAIVER IS INAPPLICABLE IN THIS CASE.

### A.  The Standard for Assessing Implied Waiver.

The United States claims that the Defendants have impliedly waived the attorney-client privilege by pointing to the fact that their counsel submitted a position paper to the BIA Field Solicitor prior to the United States' filing suit (which was submitted in response to the BIA Superintendent's October 9, 2014 letter demanding that Project construction cease and to which no one with the United States Government responded prior to filing this action). (*See* Motion, at 8-10). The United States claims that this is justified under the test set forth in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).[10] (*See id.* at 10).

---

[10]   Under the *Hearn* test, each of the following three conditions must exist to find waiver:

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to [its] defense.

10

But the Tenth Circuit has not expressly adopted the *Hearn* test. *Lindley v. Life Inv'rs Ins. Co. of Am.*, No. 08-CV-0379-CVE-PJC, 2010 U.S. Dist. LEXIS 41798, at *24 (N.D. Okla. Apr. 28, 2010). And "[s]ome courts have expressed that the *Hearn* test is too broad and opens up too many privileged communications to discovery, and have added an additional element that a party must actually rely on privileged advice from counsel before the doctrine of 'at issue' waiver applies or have outright rejected the *Hearn* test." *Id.* at *23-24. This Court should follow those authorities here. But even if *Hearn* applied, it is not satisfied here.

    1.   <u>The Defendants Have Not Put Privileged Information At Issue.</u>

It is important to note that the Defendants have not asserted a defense of reliance on advice of counsel in response to either the United States' First Amended Complaint or the OMC's First Amended Complaint in Intervention.[11] (Dkt. # 99, at 12-13; Dkt. # 174, at 14-16). Thus, in accordance with FED. R. CIV. P. 8(c)(1), an advice-of-counsel defense has been waived.[12] A defense of good faith does not implicate all of counsel's underlying advice. *Cardtoons, L.C. v. Major League Baseball Ass'n*, 199 F.R.D. 677, 682 (N.D. Okla. 2001) ("Courts addressing whether a waiver occurs because a party asserts good faith when the opposing party has the burden of establishing bad faith have found no waiver based on this argument."); *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 630 (D. Colo. 1998) ("Similarly, the fact that Defendant Carlene Stewart

---

*Frontier Ref. v. Gorman-Rupp Co.*, 136 F.3d 695, 701 (10th Cir. 1998).

[11] *Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420, 422 (S.D.N.Y. 1976) ("The actual holding in [*Hearn*] is not in point because the party there asserting the privilege had expressly relied upon the advice of counsel as a defense to the plaintiff's action."). That is the case here. The Defendants are not relying on an advice of counsel defense, and are not seeking to use *privileged* documents for any purpose.

[12] That distinguishes this case from *United States v. Copar Pumice Co., Inc.*, CIV 09-1201, 2012 WL 12898786, *4 (D.N.M. April 23, 2012) (cited in the Motion, at 10). There, the defendant had asserted a reliance on advice of counsel defense. The Defendants have not asserted such a defense in this case.

has stated in deposition testimony that the Plan Committee relied on advice of counsel in denying Mr. Aull's claim does not establish an at issue waiver as to this advice. This statement alone does not indicate that the Defendants have taken affirmative action to place the advice of the Plan Committee's counsel at issue."); *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1552 (10th Cir. 1995) (no implied waiver of privilege found even though counsel had advised regarding, and been involved in, the decisions of how to implement a reduction in force claimed to be pretextual in the litigation); *SmithKline Beecham Corp. v. Apotex Corp.*, Nos. 99-CV-4304, 2005 U.S. Dist. LEXIS 22228, at *12-13 (E.D. Pa. Sep. 28, 2005); *Columbia Cmty. Credit Union v. Chi. Title Ins. Co.*, No. C09-5290RJB, 2009 U.S. Dist. LEXIS 141078, at *8 (W.D. Wash. Dec. 22, 2009) ("Chicago Title has not put the information protected by the attorney-client privilege at issue by making it relevant to the case, merely by asserting that it acted in good faith and conducted a reasonable investigation."); *Banco Do Brasil, S.A. v. 275 Wash. St. Corp.*, No. 09-11343-NMG, 2011 U.S. Dist. LEXIS 82185, at *8 (D. Mass. July 27, 2011) ("The mere fact that the Bank believes that it acted in good faith under its lease agreement, ***and that its counsel was involved in the process***, does not constitute a waiver of the attorney-client privilege."); *Martin v. Giordano*, No. 11-CV-4507 (ARR), 2016 U.S. Dist. LEXIS 59940 (E.D.N.Y. May 4, 2016).

The "sword and shield doctrine"—on which the United States relies (Motion, at 9-10) only applies where a party "partially disclose[s] ***privileged*** communications or affirmatively rel[ies] on ***privileged*** communications to support its claim or defense and then shield[s] the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000); *Pritchard v. Cty. of Erie (In re Cty. of Erie)*, 546 F.3d 222 (2d Cir. 2008) ("[A] party must rely on privileged advice from his counsel to make his claim or defense."); *In re Schlumberger Tech. Corp.*, No. 20-30236, 2020 U.S. App. LEXIS 17776 (5th Cir. June 4, 2020)

("While privileged communications may have some bearing on STC's beliefs about its compliance, STC has not 'rel[ied] on attorney-*client* communications' to establish its good-faith defense."); *Murata Mfg. Co. v. Bel Fuse, Inc.*, No. 03 C 2934, 2007 U.S. Dist. LEXIS 17224, at *9 (N.D. Ill. Mar. 8, 2007) (disclosing "non-privileged communications cannot waive a privilege as to other communications that are protected by the attorney client privilege.").   Here, the Slade Memorandum was never a privileged document, but was always intended to be submitted to a third party—Alan Woodcock (which, in fact, occurred).[13] (*See* Exh. A, at ¶¶ 34-36).

The submission of a position paper by counsel to an adversary is not the same as relying on *privileged* communications.  The point is made amply by *John Doe Co. v. United States*, 350 F.3d 299 (2d Cir. 2003).  A grand jury investigation took place concerning, among other questions, whether John Doe Co.'s ("Doe"), a facilities provider, role in the firearms transactions of third parties to whom it provided facilities for a time required that it possess a firearms license. *Id.*

> When Doe learned of the investigation, its attorneys submitted a 46–page letter to the United States Attorney's office (the "Letter") asserting an intention "to promote an expeditious resolution" of the investigation. The main messages of the Letter were that Doe had proceeded in the good faith belief that its actions in connection with firearms transactions were in conformity with law, that it had consulted ATF personnel "to ensure that it was acting in compliance with" the pertinent laws and was repeatedly advised that its operations were lawful and proper, and that the ATF's Senior Counsel and other ATF officials had confirmed that Doe did not need to obtain a license to conduct its operations. The Letter asserted that Doe had never received "any contrary suggestion from any government agency."

*Id.* After receiving the Letter, the government issued a grand jury subpoena for notes taken by Doe attorneys during meetings with ATF and during interviews with Doe employees relating to the substance of ATF's representations to Doe. *Id.* After Doe objected on the grounds the notes

---

[13] Drafts do remain privileged under *Herd v. Asarco Inc.*, No. 01-CV-891-H (M), 2002 U.S. Dist. LEXIS 28090, at *7 (N.D. Okla. Apr. 26, 2002).

constituted protected attorney work-product, the government filed a motion to compel their production, which the district court granted, and Doe appealed. *Id.*

The Second Circuit reversed, and in doing so noted that "Doe has made its assertions only to its adversary, which is free to ignore them and cannot have its position compromised by virtue of the fact that Doe has made the assertions without relinquishing its privilege." *Id.* at 306. The court continued: "Doe did not place the matter *at issue*, so as to cause forfeiture of privileges by reason of unfairness, merely by stating its claim to opposing counsel." *Id.* (emphasis in original); *see also XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 24 (1st Cir. 2003) ("When an attorney participates in an extrajudicial meeting or negotiation, his participation alone does not justify implying a broad subject matter waiver of the attorney-client privilege.").

That simply makes good sense, too. A client often has an attorney submit the client's position, supported by facts and law (which necessarily include the attorney's views thereon) in pre-litigation communications. If doing so operated to waive the attorney-client privilege, then at-issue waiver would apply in a great many cases.

       2. <u>Application of the Privilege Will Not Deprive the United States of Vital Information.</u>

In addition to the *Hearn* requirement that the information be substantively "vital" to the case of the party seeking the information defense, the word "vital" also connotes that the information is available *only* from a <u>privileged</u> source. *See Frontier Refining, Inc.*, 136 F.3d at 701 (finding the word "vital" in the *Hearn* test to necessarily imply that the information is available from no other source); *Paramount Communs. v. Donaghy*, 858 F. Supp. 391, 396 (S.D.N.Y. 1994) ("the privileged communications were not the only available means by which the plaintiff could learn what the defendant knew, since this could be asked of the defendant."); *Tribune Co. v. Purcigliotti*, 93 Civ. 7222 (LAP)(THK), 1997 U.S. Dist. LEXIS 228, at *32-33 (S.D.N.Y. Jan. 10,

1997) (a party "may be required to disclose *its* thoughts and knowledge, whether or not those were acquired in whole or in part from conversations with its attorneys. It is not required to disclose what was said between client and counsel." (emphasis in original)). The rationale of these cases applies here, as well. The United States has the Slade Memorandum, and has had it for nearly six (6) years. It was never a privileged document, and was always intended to be provided to the Defendants' adversary. (*See* Exh. A, at ¶¶ 34-36). The United States is free to question any Defendant witness about whether the Defendants, in fact, relied upon the Slade Memorandum and to explore the reasonableness of such reliance, to the extent that the applicable witness has knowledge of these matters. So, the United States may explore fully the validity of any defense based upon the Slade Memorandum because it is not being, and has never been, withheld.[14]

### B. Relevance, Even Purported "Critical" Relevance, is Not an Exception to the Attorney-Client Privilege.

Because the United States claims that (apparently every single document on Defendants' privilege log) is "critical to determining a remedy" and "unquestionably relevant," this means—

---

[14] A defense based upon the sending and timing of the Slade Memorandum, and the lack of a timely response thereto, in no way mandates that *prior* advice be used or produced. "Defendants may defend themselves and their conduct in court without waiving the privilege; a waiver would result only if they raise an advice-of-counsel defense, which they have not done." *Ambrose v. City of White Plains*, 2011 U.S. Dist. LEXIS 172178 (S.D.N.Y. Sep. 30, 2011); *Cage v. Harper*, No. 17-CV-7621, 2019 U.S. Dist. LEXIS 217983 (N.D. Ill. Dec. 19, 2019) ("Moreover, Defendants can seek to establish through non-privileged communications and actions these affirmative defenses; nothing about these defenses mandates that advice of counsel be used to prove them."). For the same reason, the Defendants' position is not "inconsistent" with their reliance on the measure-of-damages rule set forth in *Dilworth v. Fortier*, 1964 OK 112, 405 P.2d 38, as the Motion incorrectly claims at pages 6-7. While an attorney did testify in *Dilworth*, nothing therein indicates that attorney testimony is *mandatory* to prove lack of bad faith. And the attorney's testimony there was likely required since the defendant there was claiming reliance on "oral views" from the attorney, which likely could not have been otherwise established given the hearsay rule. Here, the only document the Defendants are claiming is relevant to the issue of bad faith is in writing and the United States has had it for years.

according to the United States—that it is entitled to discovery of *all* privileged communications. (Motion, at 5-8).

But "[r]elevancy is not the test for an implicit waiver of attorney-client privilege." *Chamberlain Grp. v. Interlogix, Inc.*, No. 01 C 6157, 2002 U.S. Dist. LEXIS 5468, at *8 (N.D. Ill. Mar. 26, 2002); *Berry Plastics Corp. v. Intertape Polymer Corp.*, No. 3:10-cv-00076-RLY-WGH, 2015 U.S. Dist. LEXIS 87697, at *6 (S.D. Ind. July 7, 2015) ("A party does not impliedly waive privilege merely by raising a particular claim or defense that makes privileged communications relevant."); *P&G v. S.C. Johnson & Son, Inc.*, Civil Action No. 9:08-CV-143, 2009 U.S. Dist. LEXIS 137552, at *7 (E.D. Tex. May 13, 2009) ("[T]he mere fact that an opinion of counsel is relevant to SCJ's claim of equitable estoppel does not mean that the attorney-client privilege is waived."); *United States v. Ohio Edison Co.*, No. C2-99-1181, 2002 U.S. Dist. LEXIS 14290, at *16 (S.D. Ohio July 11, 2002) ("Relevancy is not the test for an implicit waiver of attorney-client privilege.") (citing *United States v. Zolin*, 491 U.S. 554, 562-63 (1989)).  Magistrate Judge Joyner described it well:

> Plaintiff has the burden to establish Defendant's intent. It may be easier for Plaintiff to prove Plaintiff's case by having access to documents which are otherwise protected by attorney client or work product privileges. This is often true.  The Court will not compel discovery of privileged documents simply to permit a party to more easily prove the elements of his cause of action.

*Cardtoons, L.C. v. Major League Baseball Ass'n*, 199 F.R.D. 677, 681-82 (N.D. Okla. 2001) (no implied waiver of privilege even though the letter claimed to be tortious was sent based upon, among other things, reviewing and considering counsel's advice and work product related thereto); *United States v. Salerno*, 505 U.S. 317, 323 (1992) (holding party does "not forfeit [a privilege] merely by taking a position that the evidence might contradict"); *Sprint Communs. Co., L.P. v. Comcast Cable Communs., LLC*, No. 11-2684-JWL, 2015 U.S. Dist. LEXIS 189635, at *24 (D.

16

Kan. Apr. 16, 2015) ("[U]nder the law of the Tenth Circuit and this district, the fact that privileged communication may be relevant to an element of an affirmative defense is insufficient to support a finding of waiver.").

Nor does the United States' more specific claim that the documents could go to show the Defendants' state of mind dictate waiver. (Motion, at 6 ("Defendants' state of mind as they invaded the Osage Mineral Estate is now independently relevant" and arguing that the privileged documents will show it)). "***A party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action.***" *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994);[15] *Mine Safety Appliances Co. v. N. River Ins. Co.*, 73 F. Supp. 3d 544, 572 (W.D. Pa. 2014); *Dixie Mill Supply Co. v. Cont'l Cas. Co.*, 168 F.R.D. 554, 558 (E.D. La. 1996) ("The mere fact that a claim of bad faith (***or its affirmative defense of good faith***) or other claim or defense based on a party's state of mind is involved does not waive the attorney-client privilege.").

> Even where a party's state of knowledge is particularly at issue, such as in a case involving claims of laches or justifiable reliance, waiver of the privilege should not

---

[15] In *Truman v. City of Orem*, 362 F. Supp. 3d 1121, 1131 (D. Utah 2019), a sister district court in this circuit noted that, in *Frontier Ref. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998), the Tenth Circuit had "identified three approaches to determine whether a litigant waived the attorney-client privilege." The *Truman* court noted that the "third" approach was that set forth in *Rhone-Poulenc*. 362 F. Supp. 3d at 1131. In predicting the Tenth Circuit would now follow that approach the Court explained:

> Perhaps most importantly, the Supreme Court stated: "Balancing ex post the importance of the information against client interests, . . ., introduces substantial uncertainty into the privilege's application. For just that reason, we have rejected use of a balancing test in defining the contours of the privilege." *Swidler & Berlin v. United States*, 524 U.S. 399, 409, 118 S. Ct. 2081, 141 L. Ed. 2d 379 (1998); *see also Ross v. City of Memphis*, 423 F.3d 596, 604 n.4 (6th Cir. 2005) (noting "*Swidler & Berlin*'s rationale is also fatal to the reasoning of *Hearn*"). For these reasons, the Court thinks the Tenth Circuit would likely adopt this third approach.

For similar reasons, this Court should follow suit and follow *Rhone-Poulenc*.

> be implied because the relevant question is not what legal advice was given or what information was conveyed to counsel, but what facts the party knew and when. Invasion of the attorney-client privilege is not necessary; rather, the discovering party should simply inquire directly of the other party as to its knowledge of relevant facts, which must be disclosed.

*AIU Ins. Co. v. Tig Ins. Co.*, 2008 U.S. Dist. LEXIS 96693, at *16 (S.D.N.Y. Nov. 25, 2008)

(quoting *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 90 Civ. 7811 (AGS)(JCF), 1994

U.S. Dist. LEXIS 13216, 1994 WL 510043 at *12 (S.D.N.Y. Sept. 16, 1994)).

### C.  The Requirement to Balance the Equities Does Not Result in a Waiver of the Attorney-Client Privilege.

The United States correctly notes that an injunction of the kind it seeks cannot issue without

a "a full weighing of the equities." *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 971

(10th Cir. 2019).[16] (*See* Motion, at 11-13).  That reality, even to the extent it requires examination

of the Defendants' state of mind, does not dictate the waiver of the attorney-client privilege.

> '[A]t issue' waiver occurs only when the party has asserted a claim or defense that he intends to prove *by use of the privileged materials*. That a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself 'at issue' in the lawsuit; if that were the case, a privilege would have little effect.

*ResCap Liquidation Tr. Mortg. Purchase Litig. v. HSBC Mortg. Corp. (USA) (In re Residential

Capital, LLC)*, 536 B.R. 132, 147 (Bankr. S.D.N.Y. 2015).  "[A]bsent an articulated reliance on

counsel advice in order to defend an allegation of inequitable conduct, there is no waiver of

attorney-client privilege." *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*,

227 F.R.D. 382, 396 (W.D. Pa. 2005). *Martin* reasoned that under a lower standard, a party could

abrogate attorney-client privilege by merely denying inequitable conduct. *Id.*; *see also Genentech,

Inc. v. Insmed, Inc.*, 236 F.R.D. 466, 470 (N.D. Cal. 2006) ("Nor did [*United States v.*] *Zolin*[, 491

---

[16] Among other things, that means that "the sheer right to exclude simply cannot begin and end the equitable analysis."  *Id.* at 974.

U.S. 554, 556 (1989)] establish an inequitable conduct exception to the attorney-client privilege. Inequitable conduct is not the same as fraud."); *Laser Indus. v. Reliant Techs.*, 167 F.R.D. 417, 446 (N.D. Cal. 1996).[17]  That the United States must prove that an injunction would be equitable and that the Defendants deny that an injunction would be equitable for a number of reasons (including the United States' lack of adequate and timely response to a detailed position paper from their counsel before filing suit) does not compel a waiver of privilege here.

## IV.  THE ATTORNEY-CLIENT PRIVILEGE APPLIES TO COMMUNICATIONS WITH THE ENEL LEGAL DEPARTMENT.

Because the United States claims that "[t]here is a presumption against in-house counsel," (Motion, at 13), it presumes that communications sent or received by members of the Enel Legal Department must be produced.  There are several flaws with this position.  *First*, the United States claims that *Lindley v. Life Inv'rs Ins. Co. of Am.*, 267 F.R.D. 382 (N.D. Okla. 2010) provides support for its position.  (Motion, at 13).  Closer examination belies that conclusion.  In *Lindley*, Judge Cleary stated that "[i]n making its determination herein, the Court has not applied the presumptions regarding the status of the attorney (whether in-house or outside counsel)."  *Id.* at 391.  "Rather, the Court considers the status of the attorney is one of many factors in determining whether the communication at issue was made for the purpose of seeking or providing legal advice."  *Id.*  And the Court explained that "the Court considers the status of the attorney, the nature of the advice given, the context, content and purpose of the communication, in determining whether the communication is for the purpose of seeking or providing legal advice."  *Id.*  Applying this—the actual analysis from *Lindley*—to the facts of this case dictates that the communications

---

[17] *See also id.* at 446 ("Courts are less likely to find waiver when the statements alleged to constitute waiver do not purport to disclose the contents of a specific communication.").  That is the case here.  The Defendants have not purported to disclose any prior attorney-client communications in the Slade Memorandum.

with the Enel Legal Department, made during 2013 and 2014, when numerous legal challenges to the Project were both pending and being threatened, justifies fully the conclusion that the communications were made for the purpose of seeking or providing legal advice.

Further, the United States has omitted a very important portion of the *Lindley* Court's discussion of presumptions.

> Many courts have relied on **two rebuttable** presumptions (though often not stated expressly) regarding the role of the lawyer in determining the nature of the advice: (1) if outside counsel is involved, the confidential communication is presumed to be a request for and the provision of "legal advice"; and (2) if in-house counsel is involved, the presumption is that the attorney's input is more likely business than legal in nature.

*Lindley*, 267 F.R.D. at 389. Thus, both presumptions (to the extent they apply, which Judge Cleary expressly declined to do in *Lindley*) are rebuttable. And, since the majority of the communications on the Defendants' privilege log involve outside counsel as well, the presumptions are at best a wash here. The better course is to apply the actual analysis that Judge Cleary employed in *Lindley* and find that the unique circumstances present here during 2013 and 2014 (*see*, Exh. A, at ¶¶ 15-36) warrant a finding of privilege and rebut the presumption in *Lindley* in any event.

Moreover, the nature of the Enel Legal Department (Exh. A, at ¶ 4) distinguishes it from a company where an in-house lawyer fills business roles. Indeed, in the situation present in the Enel Legal Department, courts have recognized that an opposite presumption to that claimed by the United States applies: "Generally, there is a presumption that a lawyer in the legal department of the corporation is giving legal advice, and an opposite presumption for a lawyer who works on the business or management side." *Breneisen v. Motorola, Inc.*, No. 02 C 50509, 2003 U.S. Dist. LEXIS 11485, at *10 (N.D. Ill. July 3, 2003); *Ames v. Black Entm't TV*, 98 Civ. 0226 (LMM)(AJP), 1998 U.S. Dist. LEXIS 18053, at *20 (S.D.N.Y. Nov. 17, 1998); 1 EPSTEIN, *supra*, at 205 ("[A]

rebuttable presumption has now arisen that an attorney employed in the legal department of a corporation is employed to provide legal advice . . . .").

And the Court also recognized in *Lindley* that "[w]here . . . the legal and business purposes of the communication are inextricably intertwined, the entire communication is privileged only if the legal purpose outweighs the business purpose." 267 F.R.D. at 392; *United States ex rel. Baker v. Cmty. Health Sys., Inc*, No. 05-279 WJ/ACT, 2012 U.S. Dist. LEXIS 191017, at *13 (D.N.M. July 25, 2012); *In re OM Securities Litigation*, 226 F.R.D. 579, 587 (N.D. Ohio 2005) ("documents prepared for the purpose of obtaining or rendering legal advice are protected even though the documents also reflect or include business issues."); *Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 685-86 (W.D. Mich. 1996) ("[L]egal and business consideration may frequently be inextricably intertwined when legal advice is rendered in the corporate context, but the fact that business considerations are weighed in the rendering of legal advice will not vitiate the attorney-client privilege.").

## V.   COMMUNICATIONS WITH WCG REPRESENTATIVES AND COUNSEL AND TRADEWIND REPRESENTATIVES AND COUNSEL ARE SUBJECT TO THE COMMON-INTEREST PRIVILEGE AND THE WORK PRODUCT DOCTRINE.

### A.   The Communications are Protected by the Common-Interest Privilege.

"[T]he common interest doctrine . . . affords two parties with a common legal interest a safe harbor in which they can openly share privileged information without risking the wider dissemination of that information." *D.M. v. Wesley Med. Ctr. LLC*, No. 2:18-CV-02158-KHV-KGG, 2019 U.S. Dist. LEXIS 160886, at *6-7 (D. Kan. Sep. 19, 2019). "[T]he 'common interest' rule can apply where parties are represented by separate counsel that engage in a common legal enterprise." *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999). Such an enterprise exists when the parties "demonstrate actual cooperation toward a common legal

goal." *Id.* (quoting *North River Ins. Co. v. Columbia Cas. Co.*, 1995 U.S. Dist. LEXIS 53, *11 (S.D.N.Y. January 5, 1995)).  And "it is . . . unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply."  *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989).

To establish the applicability of the common-interest doctrine to a particular communication, the party claiming the common-interest doctrine must establish that "(1) the documents were made in the course of a joint-defense effort; and (2) the documents were designed to further that effort."  *Crispin Co. v. Petrotub-S.A.*, CIV-05-159-C, 2006 WL 2472878, at *2 (W.D. Okla. Aug. 24, 2006) (quoting *Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1042-43 (10th Cir. 1998)).

Osage Wind was always the entity that would own the Project.  The Project had been subject to various legal challenges (formal litigation and administrative proceedings) dating to 2011.  (Exh. A, at ¶¶ 15-24).  Most were brought by, or on behalf of, the Nation and/or the OMC, as was this case (Dkt. # 20, at ¶ 29).  Wind Capital Group, LLC ("WCG"), TradeWind Energy, Inc. ("TradeWind"), and the Defendants had an identical interest in defeating these efforts and sharing information generated prior to the acquisitions by TradeWind and Enel Kansas of Osage Wind's membership interests (as all were contractually bound to do).  (Exh. A, at ¶¶ 12-14).

### B.  The Communications are Protected by the Work-Product Doctrine.

As for the work-product doctrine, even less is required.  For there, even a common business interest is sufficient.  2 EPSTEIN, *supra*, at 1038-39.  Indeed, provision of materials protected by the attorney-work-product doctrine "results in a waiver of the protection afforded by that doctrine only when the disclosure is to an adversary or materially increases the likelihood of disclosure to an adversary."  *ECDC Envtl., L.C. v. N.Y. Marine & Gen. Ins. Co.*, 1998 U.S. Dist. LEXIS 8808,

at *12 (S.D.N.Y. June 4, 1998); *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts."); *In re Kaiser Steel Corp.*, 84 B.R. 202, 205 (Bankr. D. Colo. 1988).

It is beyond doubt that Osage Wind, Enel Kansas, EGPNA, TradeWind, and WCG had this kind of common interest.  They had all been involved in litigation with the OMC (and the Nation) regarding the Project.[18]  And provision of a communication or document to any of them by any others cannot possibly be said to be increasing the likelihood of such documents falling into the hands of the United States or the OMC.

## VI.   THE TRUE STATEMENT THAT THE ATTORNEY-CLIENT PRIVILEGE DOES NOT PROTECT FACTS IS A RED HERRING HERE.

The United States rightly notes that "[t]t is well-settled that attorney-client privilege protects only communications and not the underlying facts."  (Motion, at 14).  But the Defendants are not withholding facts.  They are withholding *communications* with their attorneys about facts, a critical distinction the United States fails to appreciate.  Correctly understood:

> A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact  within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Bishop Rink Holdings, LLC v. CIMCO Refrigeration, Inc.*, No. 12-2715-JAR-KGG, 2013 U.S. Dist. LEXIS 112257, at *8-9 (D. Kan. Aug. 9, 2013) (quoting *City of Philadelphia, Pa. v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962)); 1 EPSTEIN, *supra*, at 88 (The attorney-client privilege "does not mean that the facts are not discoverable directly from the client

---

[18] The Final Judgment did not enter in the State Declaratory Case until October 23, 2014, more than a month *after* Enel Kansas acquired the membership interests in Osage Wind.

or from means *other than through the actual communications—whether written or oral—to the attorney*.").  Indeed, as one court noted, "[w]hat is relevant to the counterclaims here is not what counsel said to Ayala or Ayala said to counsel, but what Ayala knew or should reasonably have been expected to know prior to acquiring the Behring stock."  *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.), Inc.*, 111 F.R.D. 76, 81 (S.D.N.Y. 1986) (no implied waiver of privilege, even where party's knowledge on an issue attorneys had advised it on was disputed).

So properly understood, of course no party may avoid a fact by disclosing it to its attorney.  But a party's confidential communication to an attorney does not become discoverable simply because it relays factual information.  Otherwise, the attorney-client privilege would mean very little.  The United States is free to question Defendants' witnesses about their understanding of any fact, whether chronological or their understanding of contractual provisions.  But the United States may not discover confidential communications with counsel seeking or receiving legal advice, even if factual information is contained in them.

## VII.    IF THE COURT HAS ANY QUESTION REGARDING THE PRIVILEGED OR WORK PRODUCT STATUS OF ANY DOCUMENT, IT SHOULD EXAMINE THEM *IN CAMERA*.

Should the Court have any question about the privileged status of any document on the Defendants' privilege log, the Defendants respectfully submit that it should conduct an *in camera* review of any such documents about which it has question.  *Sellman v. Amex Assurance Co.*, No. 05-CV-545-TCK-PJC, 2006 U.S. Dist. LEXIS 105870, at *4 (N.D. Okla. June 30, 2006) (noting that "it may be appropriate for the trial court to conduct an in camera review of documents for which attorney-client privilege or work-product protection is claimed.").  Other Magistrate Judges of this Court have conducted *in camera* reviews of documents to determine privilege in several cases.  *See, e.g.*, *Pinnacle Packaging Co. v. Constantia Flexibles GmbH*, No. 12-CV-537-JED-TLW, 2016 U.S. Dist. LEXIS 16144, at *30 (N.D. Okla. Feb. 10, 2016); *Kirby v. O'Dens*, No. 14-

CV-388-GKF-PJC, 2015 U.S. Dist. LEXIS 180283, at *7 (N.D. Okla. June 25, 2015); *Ross v. Univ. of Tulsa*, No. 14-CV-484-TCK-PJC, 2015 U.S. Dist. LEXIS 195043, at *8 (N.D. Okla. Apr. 24, 2015).  Indeed, both Judge Eagan and Judge Cleary conducted *in camera* reviews in the *Lindley* case on which both parties have relied.  Especially since the documents here are less than two hundred (200) pages, the task would not be particularly burdensome and it would further be appropriate given the United States' speculative claims about the documents' content.

## CONCLUSION

The submission of a pre-suit position paper to opposing counsel is not an implied waiver of the attorney-client privilege (or the work-product doctrine), even where a party's knowledge on that subject is at issue.  And a party's belief in the correctness of its position, which happens in most cases, also does not impliedly waive the attorney-client privilege (or work-product protection).  That only occurs when a party *selectively* choses to use *privileged* communications with its counsel, which the Defendants are not doing in this case.

Further, a large company with a dedicated legal department (that serves it and its subsidiaries) may have business employees seek legal advice (including providing necessary factual information to facilitate that advice) from attorneys in that legal department, as well as outside counsel.  This is especially true as to a project that had been subject to numerous legal challenges for years, including then-ongoing challenges.  And the new owners of a corporate entity may interface with the prior owners and their counsel regarding matters of common interest, especially including ongoing litigation and threatened litigation.

If the Court has any questions, it can and should examine the relatively few documents at issue *in camera*.  But either way, correct application of the legal principles discussed in this Response dictates that the United States' Motion to Compel discovery should be **denied.**

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER JETER BARNETT & RAY, P.C.**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**
**Sarah M. Stevenson**
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Abi Laura Fain
Nolan Fields IV
Cathryn D. McClanahan
David McCullough
Mary Kathryn Nagle
Wilson Kirk Pipestem
Jeffrey S. Rasmussen

The following non-ECF registrants have been served by First Class United States mail:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*

*/s/ Ryan A. Ray*
Ryan A. Ray