# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| THE OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' RESPONSE TO THE OSAGE MINERALS COUNCIL'S MOTION TO COMPEL DISCOVERY

---

| | |
|---|---|
| Ryan A. Ray, OBA #22281 | Lynn H. Slade, *admitted pro hac vice* |
| NORMAN WOHLGEMUTH CHANDLER | Sarah M. Stevenson, *admitted pro hac vice* |
| JETER BARNETT & RAY, P.C. | MODRALL, SPERLING, ROEHL, |
| 3200 Mid-Continent Tower | HARRIS & SISK, P.A. |
| 401 South Boston Avenue | Post Office Box 2168 |
| Tulsa, OK 74103 | Albuquerque, NM 87103-2168 |
| 918-583-7571 | 505-848-1800 |
| 918-584-7846 (facsimile) | 505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: September 10, 2020**

# TABLE OF CONTENTS

Table of Contents ..................................................................................................................... i

Table of Authorities .............................................................................................................. ii

Introduction ........................................................................................................................... 1

Factual Background .............................................................................................................. 5

ARGUMENT AND AUTHORITIES ................................................................................... 6

   I.    Defendants Have Not Withheld Documents or Failed to Properly Log Privileged
Communications Pertinent to EGPNA, Enel Kansas or TradeWind Energy ............................ 6

      A.   The Motion Fails to Show Defendants Did Not Produce Discoverable Documents. ...... 6

      B.   The OMC's Requests for Separate Production and Privilege Logs from EGPNA and
Enel Kansas Ignore the Structure and Functioning of the Defendants and the Enel Legal
Department. ................................................................................................................................ 10

      C.   Defendants' Supplementation of Their Privilege Log is Consistent with the Local Rules.
……………………..…………………………………………………………………...12

   II.   The Attorney-Client Privilege Applies to Communications with the Enel Legal
Department. .............................................................................................................................. 13

   III.   Communications with TradeWind Representatives and Counsel are Subject to the
Common-Interest Privilege and the Work Product Doctrine. .................................................. 13

   IV.   Implied Waiver Is Inapplicable in this Case. .............................................................. 13

      A.   The Standard for Assessing Implied Waiver ................................................................ 13

      B.   The Defendants Have Not Put Privileged Information At Issue. ................................... 14

   V.   If The Court Has Any Question Regarding the Privileged or Work Product Status of any
Document, It Should Examine Them *In Camera* ................................................................... 18

Conclusion ............................................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Ambrose v. City of White Plains*
    2011 U.S. Dist. LEXIS 172178 (S.D.N.Y. Sep. 30, 2011)……………..……………...…16

*Cage v. Harper*
    No. 17- CV-7621, 2019 U.S. Dist. LEXIS 217983
    (N.D. Ill. Dec. 19, 2019)……………………………………………………………16

*Cardtoons, L.C. v. Major League Baseball Association*
    199 F.R.D. 677 (N.D. Okla. 2001)…………………………………………….……13

*Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*
    297 F.R.D. 495 (W.D. Okla. 2014)…………………………………………...….…17

*Dilworth v. Fortier*
    1964 OK 112, 405 P.2d 38…………………………………………………….Passim

*Empire Bank v. Dumond*
    No. 13-CV-388-CVE-PJC, 2014 U.S. Dist. LEXIS 201988
    (N.D. Okla. May 14, 2014)…………………………………………………..12, 13

*F.D.I.C. v. Renda*, 126 F.R.D. 70, 72 (D. Kan. 1989), *aff'd sub nom.,*
    *F.D.I.C. v. Daily*, 973 F.2d 1525 (10th Cir.1992)……………….………...…………11

*Fragrancenet.Com, Inc. v. Fragrancex.Com, Inc.*
    No. CV 06-2225 (JFB) (AKT), 2007 U.S. Dist. LEXIS 110755
    (E.D.N.Y. Aug. 28, 2007)…………………………………………………..9, 10

*Frontier Ref. v. Gorman-Rupp Co.*
    136 F.3d 695 (10th Cir. 1998)……………………………………………...14

*Green v. Suzlon Wind Energy Corp.*
    No. CIV-10-1391-R, 2011 WL 13177733
    (W.D. Okla. Oct. 27, 2011)……………………………………………………12

*Hearn v. Rhay*
    68 F.R.D. 574 (E.D. Wash. 1975)……………………………………………..14

*In re Qwest Commc'ns Int'l Inc.*
    450 F.3d 1179 (10th Cir. 2006)……………………….………………………15

*Kirby v. O'Dens*
No. 14-CV-388-GKF-PJC, 2015 U.S. Dist. LEXIS 180283
(N.D. Okla. June 25, 2015)……………………………………………………18

*Lindley v. Life Inv'rs Ins. Co. of Am.*
No. 08-CV-0379-CVE-PJC, 2010 WL 1741407
(N.D. Okla. Apr. 28, 2010)…………………………………………………..14, 18

*Pinnacle Packaging Co. v. Constantia Flexibles GmbH*
No. 12-CV-537-JED-TLW, 2016 U.S. Dist. LEXIS 16144
(N.D. Okla. Feb. 10, 2016)…………………………………………………18

*Plate, LLC v. Elite Tactical Systems, LLC*
2020 WL 5209303 (E.D.Tenn. 2020)………………………………………16

*Ross v. Univ. of Tulsa*
No. 14-CV-484-TCK-PJC, 2015 U.S. Dist. LEXIS 195043
(N.D. Okla. Apr. 24, 2015)…………………………………………………18

*Sellman v. Amex Assurance Co.*
No. 05-CV-545-TCK-PJC, 2006 U.S. Dist. LEXIS 105870
(N.D. Okla. June 30, 2006)…………………………………………………18

*Seneca Ins. Co. v. W. Claims, Inc.*
774 F.3d 1272 (10th Cir. 2014)………………………………………...………...15

*Stanecki v. Turning Point Capital, Inc.*
No. 12-cv-02812-MSK-KLM,
2013 U.S. Dist. LEXIS 67717 (D. Colo. May 13, 2013)…………………………...………10

*Truman v. City of Orem*
362 F. Supp. 3d 1121 (D. Utah 2019)…………………………………………..15, 16

*United Food & Commercial Workers Union v. Chesapeake Energy Corp.*
No. CIV-09-1114-D, 2012 WL 2370637
(W.D. Okla. June 22, 2012)…………………………………………………16, 17

*Upjohn Co. v. United States*
449 U.S. 383 (1981)……………………………..……………………………15

**<u>Court Rules</u>**

Fed. R. Civ. P. 26…………………………………………………………………….....8

Fed. R. Evid. 501…………………………………………………………………...…15

LCvR 7.2…..………………………………………………………………………….6

LCvR 26.4….………………………………………………………………………12

LCvR 37.1….……………………………………………………………………...12

Defendants, Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC ("Enel Kansas"), and Enel Green Power North America, Inc. ("EGPNA") (collectively, "Defendants"), respectfully submit this Response to the Osage Minerals Council's ("OMC") Motion to Compel Discovery (Dkt. # 183) (the "Motion").

## INTRODUCTION

The Motion has three main arguments, each of which fails. First, while not challenging the sufficiency of Osage Wind's production of documents pertaining to the construction and excavation, the Motion argues Defendants have failed to produce documents of Enel Kansas and EGPNA and pertaining to Defendants' predecessor, TradeWind Energy, Inc. ("TWE"), despite that Defendants produced all documents that their diligent search located of the likely sources of responsive documents pertaining to the excavation for tower foundations. *See* Motion, Point III.A. Second, piggy-backing on the United States' objections to Defendants' privilege log (Dkt. # 175, Ex. 11), the Motion challenges the same details of Defendants' privilege log which Defendants have answered in response to the United States' motion to compel, *see* Dkt. # 186, and also contends Defendants were required to provide *separate* privilege logs from EGPNA and Enel Kansas, despite that all three Defendants are represented by the same in-house and outside counsel. *See* Motion, Point III.B. Third, again rehashing arguments of the United States, the OMC claims privilege has been waived as to any and all documents because Defendants' counsel sent a position paper to counsel for the Department of the Interior. *See* Motion, Point III.C.

The OMC's quest to receive separate production and privilege logs from EGPNA and Enel Kansas fails to grasp the structure of the Defendants' business organizations and actions pertaining to the Osage Wind wind energy project (the "Project"). There are no separate documents held by the individual Defendants pertaining to Project excavation and the remedies applicable for

crushing and use of minerals, and no separate counsel to prepare separate privilege logs, because all in-house legal services were handled by the Enel Legal Department, and all outside counsel represented the company and its entities and reported to the Enel Legal Department. The production by Osage Wind produces all such documents, and no documents pertaining to the crushing and re-use of minerals, or any other documents, were withheld from production based on the legal separateness of EGPNA or Enel Kansas. Where relevant, the responses of EGPNA or Enel Kansas reference documents produced by Osage Wind, which is entirely appropriate, rather than re-producing the exact same documents again. With more than 20,000 documents produced to date in response to the hundreds of discovery requests by the United States and OMC, responding in this manner is more efficient than producing the same document or set of documents two or three times.

The Motion also fails to establish Defendants have waived the attorney-client privilege as to any communications listed on their privilege log. The Motion's primary assertion is that, because Defendants advanced an attorney's position paper to counsel for the United States and have stated in briefing that "Osage Wind believed, in good faith, based upon a detailed legal analysis, that neither a lease nor permit were required," and they have impliedly waived the attorney-client privilege and work-product protection as to *all* documents on Defendants' Privilege Log. *See* Motion at 6. This assertion fails because Defendants have not *pleaded* an advice-of-counsel defense. Rather, in support of their pleaded equitable defenses, Defendants pointed to the lack of response to a pre-suit communication, the "detailed legal analysis" from their counsel to counsel for the United States (their adversary), *not* confidential advice provided to Defendants by their counsel. Such pre-suit communications are common between parties, and if they, or

referencing them in litigation, resulted in a waiver of the attorney-client privilege and work product protection, such a waiver would apply in a great many cases.

The "detailed legal analysis" reference is not to a privileged document or privileged advice. The reference is solely to an October 20, 2014 memorandum from Lynn Slade (outside counsel for the Defendants) to Alan Woodcock (Field Solicitor for the United States Bureau of Indian Affairs ("BIA") in Tulsa, Oklahoma) and to Robin Phillips, Superintendent of the Osage Agency, BIA (Dkt. # 17-4, at 2-10; Dkt. # 28-1) (the "Slade Memorandum").[1] The OMC has the Slade Memorandum, and has had it, or access to it, for close to six years. Thus, the OMC currently has the ability to test fully whether any witness for Defendants was relying on the Slade Memorandum and to what extent in taking any relevant act or omission in this case. Defendants have denied the OMC's contentions they trespassed "willfully and in bad faith," and have asserted in their Answer to the OMC's Complaint in Intervention Osage Wind "believed in good faith that its conduct was not illegal and there was not clear law to the contrary prior to the Tenth Circuit's decision in this case." (Dkt. # 174, Defenses and Affirmative Defenses, ¶ 17). But Defendants have not asserted and do not assert an affirmative defense of reliance on advice of counsel. And, Defendants' stating in briefs they relied in good faith on advice of counsel did not insert an affirmative defense of advice of counsel that could effect waiver. There is no waiver of privilege with respect to the subject matter of the Slade Memorandum.

Though the OMC does not specifically challenge work product protection OMC gave Defendants every reason to anticipated litigation brought by or on at the behest of the OMC and/or the Osage Nation (the "Nation"). *See, e.g.*, Motion at 6. Defendants or their predecessors (i) had

---

[1] All OMC references to a "detailed legal analysis" reference only the Slade Memorandum. (Dkt. # 101, at 4, 11; Dkt. # 116, at 4-5, 11; Dkt. # 150, at 6-7, 10-11, *cited,* Dkt. # 116, at 19). Neither the United States nor the OMC, nor Defendants briefing, references any other "legal analysis."

been involved in such litigation (including in this Court), since 2011 involving the Project, (ii) were involved in two pending lawsuits with the OMC in 2014 challenging the Project, and (iii) had faced opposition from the OMC at numerous regulatory proceedings relating to the Project.[2] There were ample bases for the Defendants to anticipate further litigation involving the Project throughout 2013 and 2014.

Moreover, the OMC misunderstands the exchange of privileged communications in a substantial contemporary, integrated, corporate entity. EGPNA has an organized legal department (the "Enel Legal Department"), the principal purpose of which is to render legal advice to EGPNA and all of its United States-based subsidiaries and affiliates—including Enel Kansas and Osage Wind. It is not a situation in which an "in-house lawyer" fills multiple roles, including business roles. And the law is clear that business people within a group of corporate affiliates can engage in confidential discussions with in-house and outside counsel and can share facts needed for the attorneys to advise them and provide opinions about potential litigation. Applicable law does not preclude the involvement of business people in such necessary confidential communications, including about factual matters. If it did, neither protection would have much meaning, since lawyers must almost always learn the applicable facts to apply from the client.

Defendants' claims of attorney-client privilege and work product protection are proper and have not been impliedly waived. If the Court has any question, it should review the documents *in camera* (as is frequently done in this Court). But in any event, the Motion should be denied.

---

[2] Similarly, Defendants were entitled to receive attorney-client communications and work product of the entities that owned Osage Wind's membership interests prior to Enel Kansas acquiring them in September of 2014 and are entitled to protect them from disclosure here.

Defendants incorporate in full their response to the United States' motion to compel (Dkt. # 186) ("Response to U.S. Motion").[3]

## FACTUAL BACKGROUND

For a detailed factual background, Defendants refer the Court to pages 1-4 of the Response to U.S. Motion, and to the First Declaration of Megan J. Beauregard, General Counsel and Vice President of Legal and Corporate Affairs for EGPNA, attached thereto as Exhibit A ("First Beauregard Declaration"). Among other things, the First Beauregard Declaration establishes:

- The Enel Legal Department provides legal advice and support to litigation-related matters to EGPNA and all of its United States-based subsidiaries and affiliated entities, and it is a separately organized department for that purpose. It does not make general business decisions. (Ex. A, at ¶¶ 2-4).

- The Project had been subject to ongoing legal challenges—including in several different courts—for many years. Such challenges had principally been brought by or at the behest of the OMC or the Nation. The Enel Legal Department worked collaboratively with the prior owners of Osage Wind in responding to, and coordinating the defense of, such ongoing litigation. Those parties all had an identical legal interest in defeating those efforts and ensuring the Project was not subject to a successful legal challenge in any forum. (Id. at ¶¶ 6-25, 31-32).

- Inhouse and outside counsel were involved in advising business people at EGPNA, Enel Kansas, and Osage Wind throughout 2014 due to Enel Kansas's pending acquisition of Osage Wind, the numerous ongoing pieces of litigation, threatened litigation, and anticipated litigation relating to the Project, and specifically responding to the October 9, 2014 letter from BIA Superintendent, Robin Phillips. (Id. at ¶¶ 26-28).

- Business people had been specifically advised to include counsel on communications about the Project because of the numerous ongoing pieces of litigation, threatened litigation, and anticipated litigation relating to the Project, and the need for counsel to be fully informed about all relevant facts related to such efforts to properly advise regarding pending legal issues. Coordination with the prior owners of Osage Wind was necessary and occurred for similar reasons. Such communications, however, were required to be kept strictly confidential outside those actually working on the Project and with applicable prior knowledge about it. (Id. at ¶¶ 29-30).

---

[3] The OMC's Motion notes Defendants have promised to produce documents but have not yet done so. *See* Motion at 9, n.6 and 20, n.9. Defendants concurrently are preparing a supplemental document production and the referenced documents will be part of this production.

- The Enel Legal Department was closely involved with responding to the October 9, 2014 letter from BIA Superintendent, Robin Phillips, selecting the outside counsel who would do so, and ensuring that counsel was supplied with the necessary factual information to do so. (*Id.* at ¶¶ 33-34).

Attached hereto is the Second Declaration of Megan J. Beauregard, Exhibit A ("Second Beauregard Declaration"). The Second Beauregard Declaration establishes Defendants searched for, compiled, and produced all documents related to development, construction, including excavation, and operation of the Project without regard to the company for which an employee creating, communicating concerning, or having custody of the document worked. *See* Second Beauregard Declaration, ¶¶ 12, 13. No documents were withheld solely because a document was deemed related to, or in possession of, EGPNA, Enel Kansas, or their predecessors in interest. *Id.* ¶ 13.

The OMC has incorporated by reference the United States' Exhibit 11 to its Motion to Compel, a table the United States represented to be a "comprehensive accounting of the [alleged] deficiencies," (Dkt. # 183, at 10) in which the United States added comments and arguments to a new column in the then-current version of Defendants' privilege log.[4] Defendants' response to that chart is attached as Exhibit B to the Response to U.S. Motion, and incorporated in this Response.

## ARGUMENT AND AUTHORITIES

**I.   DEFENDANTS HAVE NOT WITHHELD DOCUMENTS OR FAILED TO PROPERLY LOG PRIVILEGED COMMUNICATIONS PERTINENT TO EGPNA, ENEL KANSAS OR TRADEWIND ENERGY.**

### A.   The Motion Fails to Show Defendants Did Not Produce Discoverable Documents.

---

[4] The chart is eighteen (18) pages in length and contains substantial argument, much of which was never subject of the parties' meet and confer, and which, if considered, causes the OMC's brief to substantially exceed the limitations of LCvR 7.2(c). As they did in the Response to U.S. Motion, Defendants are responding, including by submission of Exhibit B to the Response to the U.S. Motion, and the Court may either consider those charts as appropriate or not.

The OMC's Motion does not attempt to demonstrate Defendants have failed to produce documents pertaining to the excavation, crushing, and re-use of minerals as required by the Tenth Circuit's decision in this case. The Motion contends Defendants failed to produce pertinent documents in response to Requests for Production to Osage Wind Nos. 10, 31, 34, 36, 38, 40, and 50, Requests for Production to Enel Kansas Nos. 10, 29, 31, 32, 34, 36, 38, 40, and 48-51, and Requests for Production to EGPNA Nos. 28, 31, 33, 35, 37, and 47. *See* Motion at 2. However, none of these Requests pertain directly to any part of the "operation" that the Tenth Circuit found to be "mining" that is the subject of this case on remand. Indeed, all but two, Requests to Enel Kansas Nos. 31 and 40, pertain to "Trade Wind Capital," Wind Capital Group ("WCG"), or "Apollo Global Management." *See* Motion, Exs. A, B, C. "Trade Wind Capital" is not an entity with any relationship to any of the Defendants. The OMC has clarified it intends to refer to TWE, a predecessor in interest in the Project to Defendants. (Defendants responded to the OMC's discovery requests interpreting the requests with this presumption.) TWE transferred any interest in the Project to Defendants before excavation began, and was subsequently purchased by Enel Kansas, though not until 2019, well after excavation and Project construction were both complete. From September 2014 to 2019, TWE had no ownership in the Project, nor was TWE owned or controlled by any of the Defendants. *See* Second Beauregard Declaration, ¶ 8.

None of TWE, WCG, or Apollo Global Management are parties to this litigation, and none of the requests for production of documents related to or from these entities seek information material to the appropriate remedy for the excavation, crushing, and re-use of crushed minerals for tower foundations, which is the *only* activity that the Tenth Circuit found to have required a lease. The Motion fails to demonstrate how these requests satisfy even Rule 26's broad standard of relevance for discovery purposes, which is intended to "focus on the actual claims and defenses

involved in the action." FED. R. CIV. P. 26, Advisory Committee Notes, 2000 Amendments, sub. (b)(1).

While Osage Wind produced "documents, records, contracts, and agreements entered into by [Trade Wind Capital] regarding the Osage Wind Project" in response to Request for Production No. 10, *see* Motion, Ex. A at 8,[5] documents pertaining to TWE's "income earned," *id.* at 11, Request No. 31, "statements of financial position," *id.* Request No. 34, "balance sheets," *id.* Request No. 36, "statements of cash flows," *id.* Request No. 38, "general ledger in native form," *id.* Request No. 40, and "acquisition of the Osage Wind Project from Wind Capital Group," *id.* at 13, Request No. 50, have no logical relevance to the proper damages for excavation, crushing, and re-use of minerals. OMC repeats the same request in its discovery requests to EGPNA and Enel Kansas. The OMC's objections to EPGNA's discovery responses, and the majority of Enel Kansas' discovery responses, are to these requests seeking financial information of TWE or other entities. *See* Motion Exs. B, C.

Defendants quite properly objected to these requests "as seeking documents that are not relevant to the claims in the case and not reasonably calculated to lead to the discovery of admissible evidence. The Request seeks documents beyond the scope of, and not relevant to, the remedies properly sought in the OMC's Complaint in Intervention." *See, e.g.*, Motion Ex. G at 19,

---

[5] The Motion advances Request No. 10 to Osage Wind, requesting "documents, records, contracts, and agreements TradeWind entered into regarding Osage Wind," as supporting the reasonableness of its request for TWE-related documents, *see* Motion at 8, but ignores that Osage Wind produced one document in response to it (OSAGE WIND-0014736-50), *See* Osage Wind Response to OMC First Request, attached as Exhibit B to this Response. Enel Kansas produced three documents in response to it (OSAGE WIND-021119-222, OSAGE WIND-021240-47, and OSAGE WIND-021248-320), *see* Enel Kansas Response to OMC First Response, attached as Exhibit C to this Response,  and that all but three of the OMC's Requests it identifies as inadequately responded to pertain exclusively to financial documents of TWE or of other non-party entities. Neither the Motion nor OMC's communications in meet and confer supplied a rationale for the discoverability of such information.

EGPNA objection to Request No. 29 With respect to requests for TWE financial data beginning in 2011, Defendants objected, "[i]n addition, even if such remedies are deemed proper, any documentation of TradeWind Energy's income or financial status prior to the date commercial operations commenced is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 18-19, EGPNA objection to Request No. 28.  Defendants interposed similar or identical objections to requests for financial information concerning TWE and other non-party entities.

That broad financial information, particularly of non-entities, is not properly within the scope of discovery as established by Judge Frizzell's July 1, 2020 Orders in this case. *See* (Dkt. # 161, at 12) ("Here, the new theories of relief in the proposed Second Amended Complaint do not relate to the mining, excavation, and other work that is this subject of the First Amended Complaint, but rather to the revenues generated by the windfarm operation *as a whole.. . .* Moreover, the requested amendments will require expensive and extensive additional discovery, resulting in further delay of what has already been protracted litigation."); *id.* at 13 ("[T]he United States seeks leave to make its 'prayer for relief' a 'moving target' by adding a litany of additional forms of relief and substantially increasing the potential liability of Osage Wind."); *id.* at 14-15; (Dkt. # 163, at 5) ("The allegations included in paragraphs 69-72 are immaterial and impertinent to the claims for relief in this action. Paragraph 73 relates to a non-party to the litigation, The Enel Group, and is not specific to the Osage Wind Project.").[6] The requested financial information is not relevant, and Defendants' objections should be upheld.

---

[6] For its part, the United States, at least, acknowledges that the "prospects [of broader discovery] diminished considerably after July 1, 2020, when the court denied entry of the broader Second Amended Complaint, opting for the narrower, less discovery-intensive First Amended Complaint. *See* (Dkt. # 161, at 12) (the court seeks to avoid expensive and extensive additional discovery, contributing to further protracted litigation)."  (Dkt. # 187, at 16).  Of course, "[d]iscovery is a

**B. The OMC's Requests for Separate Production and Privilege Logs from EGPNA and Enel Kansas Ignore the Structure and Functioning of the Defendants and the Enel Legal Department.**

The OMC's contention that Defendants have not produced documents or failed to properly log privileged communications reflects a complete misunderstanding of Defendants' businesses and, accordingly, of the propriety of their productions, responses, and privilege log. EGPNA and Enel Kansas have not tried to "hide behind Osage Wind's productions," Motion at 15, instead, Defendants have produced all documents pertinent to the excavation and re-use of minerals and have logged all privileged documents they have identified to date.[7] Counsel did not selectively produce only Osage Wind documents, rather, they produced all documents pertaining to the development and construction of the Project in the responses of Osage Wind to the Requests with specific exceptions for documents produced by EGPNA and Enel Kansas. *See* Second Beauregard Declaration, ¶ 12. Defendants did not exclude documents based on the company affiliation of the author or custodian. *See id.* ¶ 13. OMC is simply wrong that Defendants' defenses of corporate separateness led their counsel to any failure to search for, and produce, responsive documents.

---

two-way street." *Fragrancenet.Com, Inc. v. Fragrancex.Com, Inc.*, No. CV 06-2225 (JFB) (AKT), 2007 U.S. Dist. LEXIS 110755, at *8 (E.D.N.Y. Aug. 28, 20070: *Stanecki v. Turning Point Capital, Inc.*, Civil Action No. 12-cv-02812-MSK-KLM, 2013 U.S. Dist. LEXIS 67717, at *8 (D. Colo. May 13, 2013).

[7] OMC is simply incorrect that Osage Wind "is the only Defendant to produce documents and a privilege log," particularly as it inconsistently references Defendants "common privilege log." (Dkt. # 183, at 17 & n.7). EGPNA and Enel Kansas expressly incorporated Osage Wind's discovery responses in numerous of their responses and, for Defendants' Amended and Supplemental Privilege Log (to United States), served June 29, 2020, Defendants' First Supplemental Privilege Log (to OMC), served July 22, 2020, and Defendants' Second Supplemental Privilege Log (to OMC), served July 28, 2020, attached as Exhibit D to this Response, among others served on the United States, and also upon OMC, all were served expressly on behalf of all three named Defendants. That they are represented by common counsel, and not separate counsel for separate Defendants, is stated in the privilege logs, including the Addendum attached to each log, *see* Exhibit D, identifying all counsel, their employment and clients, and in the First Beauregard Declaration, ¶¶ 9-13, 26-30.

Motion at 17. While Defendants' interposed objections to certain discovery directed to EGPNA, Enel Kansas, and relating to TWE, the discovery responses cross-referenced production of Osage Wind, making clear that all documents pertinent to the excavation, crushing, and re-use of minerals were being produced. *See* Motion Ex. G, EGPNA Responses to OMC's Requests Nos. 1-5, 7-16, 18-22, 27, 29, 43, 46, 48-49, and 51-56. In fact, the documents the OMC cites to support EGPNA's role in the Project, and many others from among the over 20,000 documents Defendants have produced, were EGPNA-produced documents. *See* Motion at 4.

While the OMC faults Defendants for stating all three of the Defendants do not maintain separate copies of documents, *see* Motion at 3, this is a simple fact and not a manufactured excuse to avoid producing three times an already voluminous production. *Citing F.D.I.C... v. Renda*, 126 F.R.D. 70, 72 (D. Kan. 1989), *aff'd sub nom. F.D.I.C. v. Daily*, 973 F.2d 1525 (10th Cir. 1992), the OMC suggests Defendants did not produce separate documents and logs for separate Defendants out of consideration of cost or convenience. *See* Motion at 15. That is not the case. While employees of EGPNA were involved in supporting the Project, all personnel involved in development of the Project functioned as a unitary team. Only a single document production by Osage Wind, the Project entity, properly would reflect the management of the Project.

And, because all counsel representing any Defendant were employed as part of a common legal team, under the management of the Enel Legal Department, *see* First Beauregard Declaration, ¶¶ 9-13, 30-33, all privileged communications were logged in a single privilege log, with counsel representing all three Defendants, and their predecessors in interest Wind Capital Group and TWE, identified on the Addendum to Second Amended and Supplemental Privilege Log to OMC attached as Exhibit D to this Response. The Motion's request for supplementation by EGPNA and

Enel Kansas, including where those Defendants expressly referenced the production by Osage Wind, should be rejected.

The OMC further objects to the privilege log because non-attorney job titles are not included. *See* Motion at 7 n.5 and 19. Supplying this information is not required. LCvR 26.4(a) requires an individual who is an attorney to be so identified. *See also Green v. Suzlon Wind Energy Corp.*, No. CIV-10-1391-R, 2011 WL 13177733, at *1 (W.D. Okla. Oct. 27, 2011) ("[A] a privilege log is adequate if it identifies with particularity the documents withheld, including the date of creation, author, title or caption, addressee and each recipient, and general nature or purpose of creation.") (quotation marks and citations omitted). As the OMC's motion indicates, by reference to other documents, the OMC has been able to determine additional information about individuals listed in the privilege log. There is no need to impose on Defendants a burden not required by the Federal Rules of Civil Procedure or this Court's directly-on-point Local Rule.

### C. Defendants supplementation of their privilege log is consistent with the Local Rules.

The OMC raises various complaints about Defendants' supplementation of the privilege log, and claims some nefarious intent in the ongoing revisions. *See* Motion at 14-15, 17-18. This ignores the reality that the Defendants have made more than ten (10) document productions, totaling 21,349 pages to date. Thus, the review and identification of privileged documents has been an ongoing process, and Defendants have supplemented the privilege log to specifically be responsive to issues raised by the Plaintiffs as part of the ongoing discussion consistent with LCvR 37.1.

In any event, authorities from this Court find much later assertions of privilege or work product to be sufficient to avoid waiver. *See Empire Bank v. Dumond*, No. 13-CV-388-CVE-PJC, 2014 U.S. Dist. LEXIS 201988, at *10 (N.D. Okla. May 14, 2014) ("Plaintiff may have

inadvertently failed to list work product as a claimed privilege on the log listing communications between participating banks; however, work-product protection was clearly asserted in Plaintiff's Response brief. Under the circumstances, Empire has not waived its assertion of work product protection."). Indeed, in *Cardtoons, L.C. v. Major League Baseball Association*, 199 F.R.D. 677, 679 (N.D. Okla. 2001), the party resisting discovery had not even submitted *any* privilege log by the time of the initial hearing on the motion to compel, and the Court still ultimately sustained privilege.

## II.   THE ATTORNEY-CLIENT PRIVILEGE APPLIES TO COMMUNICATIONS WITH THE ENEL LEGAL DEPARTMENT.

Because the OMC claims defendants improperly asserted attorney-client privilege to business advice from in-house counsel, *see* Motion at 19, it presumes that communications sent or received by members of the Enel Legal Department must be produced. In response, Defendants incorporate by reference Points I ("When Communications are Subject to the Attorney-Client Privilege" and II ("When Communications are Subject to the Attorney-Work-Product Doctrine") of their Response to the United States Motion to Compel, (Dkt. # 186, at 5-10).

## III.  COMMUNICATIONS WITH TRADEWIND REPRESENTATIVES AND COUNSEL ARE SUBJECT TO THE COMMON-INTEREST PRIVILEGE AND THE WORK PRODUCT DOCTRINE.

Defendants incorporate by reference Point V of their Response to the United States Motion to Compel, (Dkt. # 186, at 21-23).

## IV.   IMPLIED WAIVER IS INAPPLICABLE IN THIS CASE.

### A.  The Standard for Assessing Implied Waiver.

The OMC claims that Defendants have impliedly waived the attorney-client privilege by pointing to the fact that their counsel submitted a position paper to the BIA Field Solicitor prior to filing suit (which was submitted in response to the BIA Superintendent's October 9, 2014 letter

demanding that Project construction cease and to which no one with the United States Government responded prior to filing this action). *See* Motion, at 10-15. The OMC claims waiver is justified under the test set forth in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).[8] *See id.* at 21.

But the Tenth Circuit has not expressly adopted the *Hearn* test. *Lindley v. Life Inv'rs Ins. Co. of Am.*, No. 08-CV-0379-CVE-PJC, 2010 WL 1741407, at *7 (N.D. Okla. Apr. 28, 2010). And "[s]ome courts have expressed that the *Hearn* test is too broad and opens up too many privileged communications to discovery, and have added an additional element that a party must actually rely on privileged advice from counsel before the doctrine of 'at issue' waiver applies or have outright rejected the *Hearn* test." *Id.* at *7. This Court should follow those authorities here. But even if *Hearn* applied, it is not satisfied here. Defendants incorporate by reference Point III of their Response to the United States Motion to Compel, (Dkt. # 186, at 21-23), explaining why the *Hearn* test is inapplicable.

**B.   The Defendants Have Not Put Privileged Information At Issue.**

The OMC misses a fundamental distinction between a defense of good faith and a defense of reliance upon the advice of counsel. Defendants have not asserted an affirmative defense of reliance on advice of counsel in response to either the United States' First Amended Complaint or the OMC's First Amended Complaint in Intervention.

---

[8]Under the *Hearn* test, each of the following three conditions must exist to find waiver:

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to [its] defense.

*Frontier Ref. v. Gorman-Rupp Co.*, 136 F.3d 695, 701 (10th Cir. 1998).

The Motion places significant reliance on *Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1276-78 (10th Cir. 2014), a diversity action in which "the parties agree[d] Oklahoma courts would apply" the *Hearn* test, to the insurer's communications with its counsel, who provided the advice on which the insurer asserted it relied in agreeing to the settlement forming the basis for the insurer's action against its claims agent.  *See id.* at 1278 ("Here, Seneca not only sued Western Claims, it expressly relied on 'advice of counsel' as a reason—if not the primary reason—for settling the Route 66 lawsuit for $1mllion."). However, *Seneca* does not predict either how the Tenth Circuit would resolve the Oklahoma law issue to which counsel there agreed, or address how a federal court exercising the federal question jurisdiction invoked here would rule.

But, as noted by *Truman v. City of Orem*, "Federal Rule of Evidence 501 provides that privileges in federal-question cases generally are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" 362 F. Supp. 3d 1121, 1127 (D. Utah 2019), *citing In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006) (quoting Fed. R. Evid. 501)). *City of Oren* recognized the purpose of the privilege, " . . . to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id*. (*quoting Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). There, the District of Utah District Court held Mr. Truman had not waived privilege by advancing the contention he had learned from his counsel the City had withheld exculpatory evidence in a prior prosecution, because other sources of the information were available to counsel for the City for such underlying

facts. His counsel's opinions and other work product remained protected. *City of Orem*, 363 F. Supp. 3d at ** 18-21.[9]

Under any standard, however, it is apparent the OMC is overreaching in its effort to construe Defendants' actions as a waiver of the attorney-client or attorney work product privileges. In *Plate, LLC v. Elite Tactical Systems, LLC* "Plaintiffs acknowledge[d] that Defendants did not specifically assert an advice of counsel defense but maintain[ed] that they ha[d] 'significantly and regularly injected the advice of their legal counsel into the substantive merits of th[e] lawsuit'" by incorporating portions of a declaration of counsel into their motion for preliminary injunction "as well as through Defendants' assertions in their counterclaims and affirmative defenses." No. 3:18-CV-265-CLC-HBG, 2020 WL 5209303, at *3 (E.D.Tenn. Sept. 1, 2020). The alleged advice of counsel was a letter submitted in response to a letter from the opposing party, and the court did not find citation to the letter "places the advice of counsel at issue sufficient to waive attorney-client privilege." *Id.* at *8. In holding there had been no waiver, the court highlighted the fact that an advice of counsel defense had not been asserted, and it saw "no benefit in holding the defendant to a defense it d[id] not intend to assert at trial.*" Id.* at *10.   Similarly, in *United Food &*

_____

[9] A defense based upon the sending and timing of the Slade Memorandum, and the lack of a timely response thereto, in no way mandates that prior advice be used or produced. "Defendants may defend themselves and their conduct in court without waiving the privilege; a waiver would result only if they raise an advice-of-counsel defense, which they have not done." *Ambrose v. City of White Plains*, 2011 U.S. Dist. LEXIS 172178 (S.D.N.Y. Sep. 30, 2011); *Cage v. Harper*, No. 17-CV-7621, 2019 U.S. Dist. LEXIS 217983 (N.D. Ill. Dec. 19, 2019) ("Moreover, Defendants can seek to establish through non-privileged communications and actions these affirmative defenses; nothing about these defenses mandates that advice of counsel be used to prove them."). For the same reason, the OMC's reliance on *Dilworth v. Fortier*, 1964 OK 112, 405 P.2d 38, which the Motion invokes at page 18, is incorrect. While an attorney did testify in *Dilworth*, nothing therein indicates that attorney testimony is mandatory to prove lack of bad faith. And the attorney's testimony there was likely required since the defendant there was claiming reliance on "oral views" from the attorney, which likely could not have been otherwise established given the hearsay rule. Here, the only document the Defendants are claiming is relevant to the issue of bad faith is in writing and the OMC has had it for years.

*Commercial Workers Union v. Chesapeake Energy Corp.*, the party claiming privilege had asserted a due diligence defense, a defense, the court noted, that "does not require that they rely on communications with counsel to demonstrate that they acted with due diligence in connection with the [offer]. Instead, they must show that their actions, not those of counsel, demonstrate the reasonableness of their investigation." No. CIV-09-1114-D, 2012 WL 2370637, at *9 (W.D. Okla. June 22, 2012). *United Food* concluded no waiver of the attorney-client privilege occurred because reliance on the advice of counsel was not asserted "in a manner that has been recognized by courts as waiving the attorney-client privilege." *Id; see also Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*, 297 F.R.D. 495, 499 (W.D. Okla. 2014) ("Defendants have not taken any affirmative step in this litigation that would make the substance of its attorney's previous advice relevant in the case . . . ."). Here, Defendants have not asserted an advice of counsel defense, and identification of a legal memorandum provided to the United States did not waive any privilege held by Defendants.

The Motion, and the authority on which it relies, do not support a waiver of privilege because Defendants advanced the Slade Memorandum on issues of equitable defense and asserted an affirmative defense of good faith, *but not* of reliance on advice of counsel, Those actions did not, and should not be construed to, waive privilege as to communications of and with counsel regarding threatened litigation. As established in the Response to U.S. Motion at 11-19, and incorporated herein, Defendants did not waive their attorney-client privilege or work product protection by advancing a position paper from their counsel to a prospective opposing party in threatened litigation. Construing that submission as a wavier would contravene the core purpose of the attorney-client privilege, to encourage frank and informed advice of counsel, and discourage efforts to resolve disputes in advance of litigation, and to settle pending lawsuits.

17

**V.    IF THE COURT HAS ANY QUESTION REGARDING THE PRIVILEGED OR WORK PRODUCT STATUS OF ANY DOCUMENT, IT SHOULD EXAMINE THEM *IN CAMERA*.**

Should the Court have any question about the privileged status of any document on the Defendants' privilege log, the Defendants respectfully submit that it should conduct an *in camera* review of any such documents about which it has question. *Sellman v. Amex Assurance Co.*, No. 05-CV-545-TCK-PJC, 2006 U.S. Dist. LEXIS 105870, at *4 (N.D. Okla. June 30, 2006) (noting that "it may be appropriate for the trial court to conduct an in camera review of documents for which attorney-client privilege or work-product protection is claimed."). Other Magistrate Judges of this Court have conducted *in camera* reviews of documents to determine privilege in several cases. *See, e.g.*, *Pinnacle Packaging Co. v. Constantia Flexibles GmbH*, No. 12-CV-537-JED-TLW, 2016 U.S. Dist. LEXIS 16144, at *30 (N.D. Okla. Feb. 10, 2016); *Kirby v. O'Dens*, No. 14-CV-388-GKF-PJC, 2015 U.S. Dist. LEXIS 180283, at *7 (N.D. Okla. June 25, 2015); *Ross v. Univ. of Tulsa*, No. 14-CV-484-TCK-PJC, 2015 U.S. Dist. LEXIS 195043, at *8 (N.D. Okla. Apr. 24, 2015). Indeed, both Judge Eagan and Judge Cleary conducted *in camera* reviews in the *Lindley* case on which both parties have relied. Especially since the documents here are less than two hundred (200) pages, the task would not be particularly burdensome and it would further be appropriate given the OMC's speculative claims about the documents' content.

## CONCLUSION

The OMC's objections to Defendants' discovery responses are simply a desire to ignore the realities of litigation with a large company and its subsidiaries and engage in a fishing expedition for financial information, including of non-entities, over a decade. Defendants' objections to the OMC's discovery requests should be upheld, and the OMC's arguments about the privilege log and waiver of applicable privileges should be soundly rejected. If the Court has

any question about the validity of the assertion of attorney-client privilege or work product privilege, it should conduct an in camera review of documents on Defendants' privilege log. In any event, the OMC's motion should be denied.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER JETER BARNETT & RAY, P.C.**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**
**Sarah M. Stevenson**
MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS, OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Abi Laura Fain
Nolan Fields IV
Cathryn D. McClanahan
David McCullough

Mary Kathryn Nagle
Wilson Kirk Pipestem
Jeffrey S. Rasmussen


The following non-ECF registrants have been served by First Class United States mail:

<div align="center">

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*

</div>


*/s/ Ryan A. Ray*
Ryan A. Ray