**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, and ) <br> THE OSAGE MINERALS COUNCIL, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> OSAGE WIND, LLC; ) <br> ENEL KANSAS, LLC; and ) <br> ENEL GREEN POWER NORTH ) <br> AMERICA, INC., ) <br> ) <br> Defendants. ) | Case No. 14-CV-704-GKF-JFJ |

**DEFENDANT, OSAGE WIND, LLC'S REPLY BRIEF IN FURTHER SUPPORT OF ITS
FIRST MOTION TO COMPEL AGAINST THE UNITED STATES**

| | |
|---|---|
| Ryan A. Ray, OBA #22281 <br> NORMAN WOHLGEMUTH, ET AL. <br> 3200 Mid-Continent Tower <br> 401 South Boston Avenue <br> Tulsa, OK 74103 <br> 918-583-7571 <br> 918-584-7846 (facsimile) | Lynn H. Slade, *admitted pro hac vice* <br> Sarah M. Stevenson, *admitted pro hac vice* <br> MODRALL, SPERLING, ROEHL, <br> HARRIS & SISK, P.A. <br> Post Office Box 2168 <br> Albuquerque, NM 87103-2168 <br> 505-848-1800 <br> 505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: September 16, 2020**

Defendant, Osage Wind, LLC ("Osage Wind"), respectfully submits this Reply in support of its First Motion to Compel Against the United States (Dkt. # 177) (the "Motion").

## INTRODUCTION

The Motion presents three basic questions, the answers to which should be straightforward under the applicable law as applied to this case:

1. Did *United States v. Osage Wind, LLC*, 871 F.3d 1078 (10th Cir. 2017) (the "Tenth Circuit's Opinion") or any Order entered in 2020 by Judge Frizzell establish that the only remaining issue in this case is the Defendants' intent and that the United States (or the OMC) are automatically, by virtue of the Tenth Circuit's Opinion, entitled to injunctive relief (including ejectment)—or any measure of damages beyond the value of the rock subject to the "operation" of "*sort[ing]* the rocks, *crush[ing]* the rocks into smaller pieces, and then *exploit[ing]* the crushed rocks as structural support for each wind turbine"? *Osage Wind*, 871 F.3d at 1091. The plain language of those decisions belies the United States' contentions regarding the purportedly limited, or apparently non-existent, scope of discovery as to it and the OMC.

2. Is the conduct of the United States and Intervenor–Plaintiff the Osage Minerals Council (the "OMC") still at issue in this case, especially given both the United States' and the OMC's continued pursuit of the remedies of ejectment of, and a permanent injunction against, the existence and operation of the Osage Wind wind-energy project located in Osage County, Oklahoma (the "Project")—thus extending the case far beyond a "damages phase"? The answer is easily yes, given the elements the Court must examine in deciding whether to grant such extraordinary injunctive relief, and the equitable defenses to that relief that the Defendants have asserted. Quite simply, the conduct of a plaintiff seeking a permanent injunction is implicitly at

issue in a proceeding determining whether such an injunction will issue (at least as to the subject matter of the injunction, which the United States has chosen to frame as the entire Project).

      3.      If its conduct is in issue, does the United States have a duty to place a reasonable construction on the subject requests and identify the most likely custodians of responsive documents **all of which are limited to the subject matter of the Project in this case and *after* the date on which Osage Wind first began communicating with the United States and the OMC about the Project and necessary permits and approvals for it**? The United States has such a duty, and it may not avoid it by asserting disfavored and unenforceable general objections.

Once the Court answers those questions, it is manifest that the United States cannot avoid discovery altogether, and must provide discovery regarding communications that it has had—both internally and with the OMC and the Osage Nation (the "Nation") regarding the Project. Among other things, that discovery will go directly to showing the manner in which the theory ultimately accepted by the Tenth Circuit—which was *different* from that proposed by the United States in its filings in this litigation prior to appeal—was consistently and even-handedly applied and conceived or whether it was developed *post hoc*, after numerous other challenges to the Project had failed and years after the United States and the OMC were told precisely where and how the Project would be built (and after which there were numerous interactions and requests for interactions among the parties regarding the Project). The Motion seeks that kind of information, which is clearly discoverable by any objective standard, and the United States' protestations cannot possibly permit it to avoid this discovery entirely.

The Motion should accordingly be **granted**, and the United States ordered to conduct a reasonable search for information and documents responsive to the six (6) discovery items at issue in the Motion—and produce to Osage Wind the results of that effort.

**ARGUMENT AND AUTHORITIES**

I. **THE NECESSARY ANALYSIS TO DETERMINE THE UNITED STATES' AND THE OMC'S REQUESTS FOR INJUNCTIVE RELIEF.**

The United States claims that the discovery requests at issue in the Motion "may have been relevant were the United States and the Osage Nation on trial; however, these communications have no relevance to the stage of litigation at hand." (The United States' Response in Opposition to Defendant Osage Wind, LLC's First Motion to Compel Against the United States (Dkt. # 187), at 15 (the "Response")). But this assertion fails to appreciate that the conduct of the United States and the OMC *will be* relevant if trial proceeds on the claims of either for permanent injunction and/or ejectment, which both parties continue to seek as expressly permitted by Judge Frizzell.

A district court may not enter an injunction requiring removal of property from federally protected Native American land interests without engaging in "a full weighing of the equities." *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 971 (10th Cir. 2019). As the *Davilla* Court noted, Oklahoma courts in some instances "have declined to enter an injunction when the trespass was unintentional and when the landowner' delays objection." *Id.*; *Slocum v. Phillips Petroleum Co.*, 1983 OK 112, ¶ 24, 678 P.2d 716, 720 ("Although Phillips may have been negligent in constructing its pipeline on owner's property and committed a trespass, Phillips' trespass was unintentional. Owner's use of his property has not been substantially affected and his damages are fairly compensable. The cost of removing the pipeline would be substantial and cause a hardship and it would be unconscionable to require Phillips to remove the pipeline."); *Kasner v. Reynolds*, 1954 OK 56, ¶ 26, 268 P.2d 864, 867.

Indeed, the Court must "consider[] the balance of hardships between the plaintiff and defendant, [and thus determine that] a remedy in equity is warranted." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943,

976 (N.D. Iowa 2006) ("the balance of harm analysis examines the harm of granting or denying the injunction upon *both* of the parties to the dispute and upon other interested parties, including the public." (emphasis added)).  And the *Restatement (Second) of Torts* recognizes that the Court should consider (i) "any unreasonable delay by the plaintiff in bringing suit," and (ii) "any related misconduct on the part of the plaintiff" in deciding whether to grant an injunction.  RESTATEMENT (SECOND) OF TORTS, § 936(1).[1]  The benefit of the sought discovery is, therefore, straightforward—the communications will allow Osage Wind and the other Defendants to present evidence to meet these principles.  As those principles apply here, they necessarily require consideration of the extent of the United States' and the OMC's knowledge of the Project, whether they had sufficient facts at their disposal such that they knew or should have known of the inevitability of the same alleged "encroachment" about which they now complain in this case, and whether they had communications between and among each other regarding these issues during the period of time after which they had such knowledge having been directly provided it by Osage Wind and its prior owners.[2]  Accordingly, any assertion by the United States that its conduct and knowledge (as well as that of the OMC and the Nation) are not at issue fails necessarily by its (and the OMC's) continued pursuit of injunctive relief.[3]

---

[1] The United States relies upon the *Restatement* when convenient to its position.  (*See* Dkt. # 175, at 8, 12).

[2] Among other things, those facts could easily (and will likely) demonstrate that, while the regulations still apply to these facts as a matter of law, the unique facts of *this* case fall far short of dictating an injunction (including an ejectment).

[3] In context of alleged trespass on to land owned by an Indian Tribe, ejectment is a form of injunctive relief.  *Cayuga Indian Nation v. Cuomo*, 80-CV-930, 80-CV-960, 1999 U.S. Dist. LEXIS 10579, at *76 (N.D.N.Y. June 30, 1999); *United States v. Imperial Irrigation Dist.*, 799 F. Supp. 1052, 1068 (S.D. Cal. 1992).

**II. NEITHER THE TENTH CIRCUIT'S OPINION, NOR ANY RECENT ORDER BY JUDGE FRIZZELL, EXCLUDES THE CONDUCT OF THE UNITED STATES, THE OMC, OR THE NATION FROM CONSIDERATION.**

The United States also complains that discovery of its internal communications regarding the Project and communications with the OMC and/or the Nation about the Project are in "direct, irreconcilable conflict with the law-of-the-case." (Response, at 16). When the case was before the Tenth Circuit, the United States (then the only plaintiff) had not sought summary judgment on trespass, continuing trespass, or conversion or on any remedy.[4] And Judge Frizzell has decided that the Tenth Circuit simply did not decide any question of remedy, because those issues were not before it. (Dkt. # 161, at 8-9).

Discovery of the United States' internal communications regarding the Project and communications with the OMC and/or the Nation about the Project are discoverable because the Tenth Circuit did not accept all of the theories advanced by the United States and the OMC.[5]

Indeed, the Tenth Circuit rejected the assertion that merely breaking the ground or the Project's presence subsurface—theories which appear to continue to underlie the requests for injunctive relief (including ejectment)—was unlawful:

> **We agree with Osage Wind, however, that merely encountering or incidentally disrupting mineral materials would not trigger § 211.3's**

---

[4] Indeed, the United States had recognized that "the central legal issue"—which was the applicability of the regulations at issue in its declaratory judgment claims—should be decided before anything else occurred in the case. (Dkt. # 34, at 3).

[5] Originally in this Court, the United States had espoused that Defendants' activities amounted to "performing 'work of any nature' significantly impacting the Osage Mineral Reserve," which the United States apparently contended violated Part 214 irrespective of whether the activities amounted to "mining." (Dkt. # 24, at 6-7). The Tenth Circuit noted the OMC did not raise that argument on appeal. *Osage Wind*, 871 F.3d at 1082 n.2. Thus, given the United States' inaction and the OMC's waiver, that contention is no longer at issue. Further, the Tenth Circuit also rejected the contention that the *de minimis* exception of 25 C.F.R. § 211.3 "establishes a separate definition" of mining, apparently premised upon the size of the Project. Instead, the Tenth Circuit found that "[t]he inclusion of the de minimis exception does not negate the need initially to satisfy the threshold definition of mining." *Osage Wind*, 871 F.3d at 1089.

> **definition.** In other words, "the simple removal of dirt does not constitute mining." 53A Am. Jur. 2d Mines and Minerals § 14. **There is simply no sense in which the word "mineral development" means only the removal of dirt** without some further manipulation, commercialization, or offsite relocation of it. The problem here is that Osage Wind did not merely dig holes in the ground—it went further. It *sorted* the rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as structural support for each wind turbine. The ultimate question is whether *this operation* constitutes "mineral development" as we have conceptualized the term. We hold that it does.

*Id.* at 1091 (bolding added, italics in original). Osage Wind is entitled to discovery to show whether the United States (and/or the OMC and Nation) timely put Osage Wind on notice of the theory the Tenth Circuit ultimately adopted or whether their position evolved over time to one the United States never raised before filing suit.[6]

The United States does make one thing clear: its position is that its "duty to supplement regarding these seven particular discovery items [including the six at issue in the Motion] was relieved by the Court's Minute Order issued April 13, 2020 (Dkt. 135)." (Response, at 11; *id.* at Exh. 1, at 5-13 (asserting as to each of the disputed requests "Plaintiff now objects to these communications as not relevant to the proceedings on remand. Minute Order, Dkt. 135, April 13, 2020. The issues decided by the Tenth Circuit are not subject to affirmative defense [*sic*] at this point in the litigation."). But the issues decided by the Tenth Circuit were limited expressly to whether the regulations required a lease or permit under the facts presented, and the Court did *not* decide questions of remedy. (*See* Dkt. # 161, at 8-9). As established above and in the Motion, the requests are all relevant to the requests for injunctive relief (including ejectment). But Judge Frizzell very clearly rejected the United States' interpretation of the effect of Dkt. # 135:

> The United States interprets the April 13 Minute Orders to preclude the assertion of any and all affirmative defenses. However, the Minute Orders should not be interpreted so broadly. The court intended to convey that it would apply the law-of-the-case as articulated by the Tenth Circuit, and not revisit issues determined by

---

[6] For an explanation of why no such veto right existed, *see* Dkt. # 159, at 4-7.

> the Circuit. The court did not intend to limit the assertion of affirmative defenses beyond those directed to the applicability of 25 C.F.R. §§ 211, 214.

(Dkt. # 171, at 2).[7] Thus, this Court finds itself in the unique position of a party's asserted relevance objection having been presented to, and directly rejected by, the assigned District Judge. This issue is the fundamental issue presented by the Motion, and the United States has never, in any correspondence, supplemental response, or conversation with counsel for Osage Wind indicated any willingness to compromise on this issue, the July 15 Order notwithstanding.

Suffice it to say, nothing that Judge Frizzell or the Tenth Circuit has decided precludes discovery into communications that bear directly on the Defendants' defenses to equitable relief, including waiver, estoppel, laches, and inequitable conduct by the United States and/or the OMC.

### III. THE DISCOVERY REQUESTS AT ISSUE ARE NOT A FISHING EXPEDITION, AND THE UNITED STATES HAS AN OBLIGATION TO REASONABLY CONSTRUE THE REQUESTS AND CONDUCT A REASONABLE SEARCH FOR RESPONSIVE INFORMATION.

Osage Wind has no quarrel with the shopworn proposition that "[d]iscovery ... is not intended to be a fishing expedition . . . ." *Chinowth & Cohen v. Cornerstone Home Lending*, No. 15-CV-555-JED-PJC, 2016 U.S. Dist. LEXIS 200537, at *3 (N.D. Okla. Aug. 5, 2016). "[R]ather[, it] is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" *Id.* Osage Wind (and the other Defendants) have at least a modicum of support for the proposition that the United States, the OMC, and the Nation would have been communicating about the Project and the approvals needed for it during (and in fact longer than) the time limits on the requests at issue, *because Osage Wind had been meeting with those parties about these issues since 2008*. (Dkt. # 17-2, at 3-4, 7-8, 21-25, 39-43).[8]

---

[7] Earlier the same day, the essential bases of the Response had been summarized to, and discussed with, Judge Frizzell. (Dkt. # 173, at 8-10, 12).

[8] *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 U.S. Dist. LEXIS 860 (N.D. Okla. Jan. 3, 2018), one of the few actual authorities discussed in the Response, is not to the

Moreover, "[a] party responding to discovery requests 'should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories." *Bosh v. Cherokee Cty. Governmental Bldg. Auth.*, No. 11-CV-376-JHP, 2013 U.S. Dist. LEXIS 166100, at *12 (E.D. Okla. Nov. 22, 2013). Further:

> To adequately respond to a request for production, the respondent must "conduct a reasonable search for responsive documents." Parties, along with their employees and attorneys, have a duty to act "competently, diligently, and ethically" with respect to discharging discovery obligations. This requires a joint effort "to identify all employees likely to have been authors, recipients or custodians of documents" responsive to the requests for production. Parties "jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents." A party does not "meet its discovery obligations by sticking its head in the sand and refusing to look for [documents]."

*Robinson v. City of Ark. City*, No. 10-1431-JAR-GLR, 2012 U.S. Dist. LEXIS 23806, at *14 (D. Kan. Feb. 24, 2012) (internal footnotes omitted).[9] As these principles apply in this case, they mean that the United States could not simply assert that it is comprised of hundreds of agencies and

---

contrary. *Reibert* involved an attempt to obtain "discovery regarding [the defendant's] inspection of the roofs of hundreds of other insureds." *Id.* at *12. And even though this was the case, the Court *granted* most of the relief sought by the Plaintiff there. Here, all of the communications at issue relate to the Project, not any other person or matter, and they are time limited to less than the period that the record in this case shows the parties were communicating about the Project and the approvals needed for it, which distinguishes this case from *Cohlmia v. Ardent Health Servs., LLC*, No. 05-CV-384-GKF-PJC, 2008 U.S. Dist. LEXIS 92831 (N.D. Okla. Nov. 14, 2008), where the plaintiff sought information about financial condition of parties and discovery of complaint and peer review of numerous other physicians over ten years without any explanation of relevance to the case. Osage Wind is willing to discuss at the hearing any reasonable limits the Court deems appropriate. But the United States has not, since April, been willing to consider *any* production of these communications.

[9] While the United States claims "the Department of Interior has flagged approximately 266,969 pages of communications and documents potentially responsive to subject discovery items," Response, at 22, there is no indication that this flagging was the product of a reasonable construction of the discovery requests or a reasonable identification of likely custodians of responsive information and documents.

millions of employees.[10] There is no possible way in which all of those employees reasonably could have been communicating about the Project,[11] especially with the OMC and/or the Nation.

And, consistent with FED. R. CIV. P. 26's provisions on proportionality, considerations of burden are not viewed in a vacuum, as explained in *Reibert*. The United States and the OMC seek injunctive relief that would require removal of an 87-tower wind energy project, on which hundreds of millions of dollars were spent, which provides electricity to much of Northeast Oklahoma, which employs numerous local employees, and which provides sustaining tax revenue to schools in Osage County. Those remedies would cause massive expense if granted. And only the United States (and to a degree, the OMC and the Nation) has these communications, which are vital to the Defendants' equitable defenses, consistent with the authority set forth above. Were this case only about money damages for the rock subject to the operation found improper by the Tenth Circuit, perhaps the United States would have a point. But it is much, much broader at present, at the United States' demand.[12] With such a demand, however, comes discovery obligations. And it also should not be lost on the Court that the litigant claiming burden (the United States Government) has greater resources than perhaps any other litigant.

---

[10] The Defendants clarified this to the United States six months ago. (*See* Dkt. # 177-6, at 3-4).

[11] As the United States points out when favorable to its position of the moment, the subject regulations do not apply in the manner they do in this case (with the overlay of the Osage Allotment Act) anywhere else in the United States. (Dkt. # 175, at 12 n.3). Thus, the employees of the United States involved in communicating about the Project, especially with the OMC or the Nation, should be relatively few, and easily identifiable by counsel for the United States.

[12] *Armstrong v. Conseco Senior Health Ins. Co.*, No. 07-CV-659-JHP-PJC, 2009 U.S. Dist. LEXIS 142996 (N.D. Okla. Feb. 24, 2009), on the other hand, involved insurance claims of a few thousand dollars. Plainly, the burden versus benefit analysis is much different here than there, given the issues at stake. And even there, the Court did order production of a limited amount of information to be produced (half originally sought), despite the burden claims. And as noted there, "an unwieldy record-keeping system, which requires heavy expenditures in money and time to produce relevant records, is simply not an adequate excuse." *Id.* at *10. That principle should apply with even greater force to the United States Government.

### IV. THE UNITED STATES' GENERAL AND INCORPORATED OBJECTIONS DO NOT PRECLUDE THE SOUGHT DISCOVERY.

One need only make a cursory review of the United States' responses to the disputed discovery items, made within the thirty-day period, to see that the individual requests were not opposed on the grounds set forth in the Response. Osage Wind's position is that this waived any such objections, especially since the interpretation supplied by the United States to those requests did not comport with the duty to construe them reasonably, as set forth in *Bosh* and other similar authority.[13] But the United States claims that its General Objection No. 6, and its subsequent reference to "not waiv[ing] any of its previously lodged objections" kept undue burden alive. Response, at 7-8, 22. This Court, however, "has held that a litany of general objections is insufficient to meet the responding party's burden in substantiating its objections to discovery." *Howard v. Segway, Inc.*, No. 11-CV-688-GKF-PJC, 2013 U.S. Dist. LEXIS 31402, at *7 (N.D. Okla. Mar. 7, 2013). Thus, this invocation of a previous general objection, which did not apply to any particular request, was not sufficient to keep undue burden alive.

### CONCLUSION AND REQUESTED RELIEF

For the reasons set forth above, and in the Motion, the Court should enter an Order requiring the United States to conduct a reasonable search for, and to produce, internal communications about the Project and communications with the OMC and/or the Nation about the same Project. That information is fundamental, relevant, and proportional to the equitable claims and defenses still at issue and must be produced.

---

[13] Further, as explained in the Motion, Osage Wind contends that an additional waiver occurred on March 6, 2020, when counsel for the United States agreed to produce the information and documents. (Dkt. # 177, at 21-22).

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, ET AL.**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**
**Sarah M. Stevenson**
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Abi Laura Fain
Nolan Fields IV
Cathryn D. McClanahan
David McCullough
Mary Kathryn Nagle
Wilson Kirk Pipestem
Jeffrey S. Rasmussen

The following non-ECF registrants have been served by First Class United States mail:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


*/s/ Ryan A. Ray*
Ryan A. Ray