# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| THE OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL AGAINST THE OSAGE MINERALS COUNCIL

| | |
|---|---|
| Ryan A. Ray, OBA #22281<br>NORMAN WOHLGEMUTH CHANDLER<br>JETER BARNETT & RAY, P.C.<br>3200 Mid-Continent Tower<br>401 South Boston Avenue<br>Tulsa, OK 74103<br>918-583-7571<br>918-584-7846 (facsimile) | Lynn H. Slade, *admitted pro hac vice*<br>Sarah M. Stevenson, *admitted pro hac vice*<br>MODRALL, SPERLING, ROEHL,<br>HARRIS & SISK, P.A.<br>Post Office Box 2168<br>Albuquerque, NM 87103-2168<br>505-848-1800<br>505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: September 22, 2020**

Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively, "Defendants") submit this reply in support of their Motion to Compel the Osage Mineral Council (Dkt. # 179) ("Motion") to respond to arguments made by the Osage Mineral Council ("OMC") in its response to the Motion (Dkt. # 188) ("Response").

## INTRODUCTION

In its Response, the OMC correctly identifies what remains in this case: the "Court's consideration of the proper award of damages . . . ." Response at 2. Rather than respond to the arguments in the Motion, the Response seeks to relitigate previous rulings on the remedies the OMC may pursue in this litigation and the extent of the Tenth Circuit Court of Appeals' ruling that specific, limited actions by Defendants constitute mining. The OMC's initial disclosures and responses to Defendants' discovery requests are insufficient, and the fact the OMC's expert disclosure deadline will occur prior to the hearing on the Motion does not excuse the OMC's failure to comply with the Federal Rules of Civil Procedure. And the OMC's efforts to assert an "executive privilege" to communications between the OMC and the executive branch of the Osage Nation are devoid of support and should be rejected. The Motion should be granted in full.

## ARGUMENT AND AUTHORITIES

### I.     The OMC cannot recover damages for lost oil and gas revenue.

Despite Judge Frizzell's ruling the OMC is limited to pursuing the claims in the United States' First Amended Complaint, *see* Dkt. 171, at 3, the OMC uses its response as an improper effort to resuscitate its claims for interference in the oil and gas estate. *See* Response at 11-17. The OMC—like the United States in briefing on the motion to compel against it—returns to language in the Tenth Circuit's opinion ruling in favor of the OMC on the question of whether the lease

1

requirement of 25 C.F.R. § 214.7[1] applies to certain activities that took place during turbine-foundation excavation for the Project. The Tenth Circuit rejected the argument that the 2011 case barred relitigation of application of 25 C.F.R. § 214.7 to that question, as crushing an reusing rock had not occurred and was not certain to occur (since there were other potential methods of obtaining backfill, such as purchasing it on the open market). *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1087 (10th Cir. 2017). When the case was before the Tenth Circuit, the United States (then the only plaintiff) had not sought summary judgment on trespass, continuing trespass, or conversion or on any remedy. And Judge Frizzell has decided that the Tenth Circuit simply did not decide any question of remedy, because those issues were not before it. Dkt. # 161, at 8-9.

What is certain is that the question of whether the Project's subsurface placement in its location would interfere with the OMC's development of its oil and gas estate *has* been litigated to a final decision *in this Court*. *See Osage Nation ex rel. Osage Minerals Council v. Wind Capital Grp., LLC*, No. 11-CV-643-GKF-PJC, 2011 WL 6371384, at *9 (N.D. Okla. Dec. 20, 2011) ("2011 Litigation") ("The Tribe has not shown this court the presence of a specific impediment that unreasonably interferes with its use of the surface for oil and gas operations and marketing."); *id.* at *1 (referencing a map depicting the layout of the Project, and stating, "The turbine foundations will be made from reinforced concrete, with each foundation initially being 16 feet in diameter down to four feet below the surface, then expanding in a conical shape with a maximum diameter of 50 feet, to a depth of 10 feet."). While the OMC did not raise 25 C.F.R. § 214.7 in the 2011 Litigation—and the Tenth Circuit held they were not barred from raising that claim in this

---

[1] "No mining . . . will be permitted. . . until a lease . . . shall have been approved by the Secretary . . . ."

case—it *did* raise, and resolve, the question of interference with the oil and gas estate based on the existence of the foundations.

Further, the OMC's interpretation of footnote 1 of the United States' First Amended Complaint ("The instant Amended Complaint does not concern or make any allegations that concern oil and gas development . . . .") is almost laughable. *See* Response at 15-16. The First Amended Complaint does not "concern oil and gas development." This language cannot be cabined to mean only that the Section 214 regulations do not address oil and gas development. *See* Response at 16. The plain reading of the First Amended Complaint is that the United States does not seek damages for interference with the oil and gas estate—and thus the OMC is not able to pursue such damages either. *See* Dkt. # 161, at 15 ("Thus, although the court has granted OMC's motion to intervene, the intervention is restricted to seek ***only those remedies*** sought by the United States in the First Amended Complaint." (emphasis added); Dkt. # 171, at 3 ("The court's July 1 Orders were intended to frame the claims and relief at issue by limiting the United States *and the OMC* to the allegations and demands of the First Amended Complaint." (emphasis added)).

*Marmon Coal Co. v. Director, Office of Workers' Compensation Programs*, 726 F.3d 387 (3d Cir. 2013), cited Response at 12-13, is not to the contrary. In *Marmon Coal*, a subsequent claim was not barred by res judicata where "the material facts alleged in each suit were different, and the witnesses and documentation required to prove the material facts were also different," due to a change in elements of the claim, allowed the plaintiff to seek a remedy that previously had been rejected. *Id.* at 395. While the claim under 25 C.F.R. § 214.7 was not decided in the 2011 Litigation, all facts necessary to determine whether the Project would interfere with the OMC's oil and gas estate were, in fact, presented to this Court at that time—and were rejected by it on the substantive merits. Those facts remain the same. Allowing the oil and gas interference claims to

be part of the discovery in this litigation would result in the "prejudice and inefficiencies," and would also "require extensive and expensive discovery," that Judge Frizzell identified and relied upon when limiting the claims and remedies in this case to those identified in the United States' First Amended Complaint. *See* Opinion and Order, Dkt. # 161, at 16.

The OMC's discussion of *United States v. Pend Oreille Public Utility District No. 1*, 28 F.3d 1544 (9th Cir. 1994), does not support its position that damages for interference with the oil and gas estate may be awarded in this case. *See* Response at 14-15. *Pend Oreille* is factually distinct because there had been no prior ruling on the merits in another case (thus triggering preclusion doctrines, such as res judicata and collateral estoppel), as there is in this case. While the Ninth Circuit ruled the Tribe must be reimbursed "for the most profitable use of its land," 28 F.3d at 1551, that ruling pertained to the use of the specific lands held in trust inundated by a reservoir project; that ruling can extend only to the minerals used in "mining," the only trust resources subject to this proceeding. Whether or not it affects the measure of damages for the minerals "mined," even assuming oil and gas development *were* the most profitable use of the Osage Mineral Estate, in the 2011 Litigation Judge Frizzell has ruled the Project does not interfere with the OMC's development of its oil and gas interests. *See generally Osage Nation v. Wind Capital Grp., LLC*, NO. 11-CV-643-GKF-PJC, 2011 WL 6371384 (N.D. Okla. Dec. 20, 2011). *Pend Oreille*'s broad statement as to damages simply is inapplicable here.

Judge Frizzell has ruled the OMC cannot pursue claims of damage to its oil and gas estate in this litigation (because those damages are not sought in the United States' First Amended Complaint), and previously has ruled the Project does not interfere in the OMC's development of its oil and gas estate. The OMC's ultimate remedy in this case has not been decided, but it will not be damages or equitable relief related to the oil and gas estate.

II.     **The OMC must supplement its initial disclosures and responses to Defendants'**
        **discovery requests.**

The OMC argues that it does not need to supplement its initial disclosures to describe with

particularity the type and amount of damages it claims because its expert witness report disclosure

deadline occurs shortly after briefing closes on the Motion and because of language the OMC

included in the joint status report. *See* Response at 7-8. Neither of these facts excuse the OMC's

compliance with Rule 26.

On May 12, 2020, the OMC served its initial disclosures, stating it was unable to provide

information required under Rule 26(1)(A)(iii), but "will supplement this disclosure with

computations of damages . . . as they become available." *See* Motion at 3. In the Response, almost

four months later, the OMC now claims Defendants need only wait a few more days, until October

2, to obtain the information the OMC was required to provide in May. Response at 9. While the

close of discovery is not until December 18, 2020, given the OMC's failure to promptly respond

to discovery requests, Defendants—even if they serve discovery within days of receipt of the

OMC's expert reports about damages—may not receive responsive documents until close to the

end of the discovery period.[2] The OMC is in violation of its duties under Rule 26. *See Griffin*

*Indus., Inc. v. Rest. Techs., Inc.*, No. 3:06CV-444-R, 2008 WL 11357862, at *6 (W.D. Ky. Dec.

18, 2008) (concluding part violated Rule 26 by waiting until "the final day before [its] expert

witness designation was due, to finally reveal its damages calculations").

Similarly, the OMC must respond to the discovery requests seeking information about the

OMC's claimed damages. While the Motion cites multiple authorities, the OMC focuses on *U.S.*

*ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538 (N.D. Ill. 2005). In *Tyson*, the party

---

[2] The lack of timeliness thus affects the remaining deadlines in the Scheduling Order and may
necessitate a continuance.

objecting to the contention interrogatory was a defendant who had not settled on a damage theory. *Id.* at 545. "Unlike a plaintiff's damage theory, which is necessarily in the case, a defendant's potential or tentative counter-damage theory that has not been selected and may never be, would not seem to qualify." *Id. Tyson* supports Defendants' contention that the OMC, the plaintiff-in-intervention, must respond to contention interrogatories regarding the OMC's claimed damages.

## III.   The executive privilege is unavailable to the OMC to protect communications responsive to Defendants' discovery requests.

"Executive privilege" may not be invoked by the OMC to avoid producing documents in response to Defendants' discovery requests, or to otherwise decline to provide information in discovery, such as in depositions. Defendants have sought communications that may be relevant to the OMC's knowledge about the Project and the remedies the OMC currently is seeking. The OMC tries to brush aside the executive privilege issue by stating it has been claimed for only five documents. Response at 18. But this ignores that the OMC has not responded in full to Defendants' discovery requests, so it is quite possible the OMC will assert the executive privilege over additional documents pertaining to communications between the OMC and the Nation. And it also ignores that witnesses from both the OMC and the Nation are listed as witnesses by the parties in their Preliminary Witness and Exhibit Lists, and will be subject to deposition testimony and trial testimony.[3]  Thus, the issue of whether the "executive privilege" applies is a significant issue that will frame the remainder of discovery and needs to be resolved by the Court as soon as possible.

---

[3] For the reasons explained in Osage Wind's Reply in Support of its First Motion to Compel against the United States (Dkt. # 191, at 3-7), the conduct of, and communications between and among, the United States, the OMC, and the Osage Nation remain at issue and are of critical importance given the equitable relief that both plaintiffs continue to pursue and the Defendants' defenses to that relief.

The "executive privilege" the OMC appears to invoke is one asserted to protect communications of the leadership of the OMC and the Nation. *See* Response at 17. But the case upon which the OMC relies does not address an executive communication privilege; it addresses a privilege from liability, and as the OMC points out, this case does not seek to hold the OMC liable for anything. *See id.* at 2. *Davis v. Littell*, 398 F.2d 83 (9th Cir. 1968), is construed far too broadly by the Response. *See* Response at 19. *Davis*'s holding is a recognition of a privilege from liability for defamation. Indeed, the United States Supreme Court cases the Response cites, at 22, are libel cases. *See Barr v. Matteo*, 360 U.S. 564 (1959) (discussing background and policy of absolute privilege to libel claims); *Spalding v. Vilas*, 161 U.S. 483, 498 (1896) ("In exercising the functions of his office, the head of an executive department, keeping within the limits of his authority, should not be under an apprehension that the motives that control his official conduct may at any time become the subject of inquiry in a civil suit for damages."). The OMC cites no case applying *Davis* as erecting a documentary or testimonial privilege in the context of a discovery dispute. *Cf. Grand Canyon Skywalk Dev., LLC v. Cieslak*, No. 2:13-CV-00596-JAD, 2015 WL 3551305, at *9 (D. Nev. June 5, 2015), *objections overruled,* No. 215CV00663JADGWF, 2016 WL 890921 (D. Nev. Mar. 7, 2016) (holding that while a non-party "might otherwise be immune from a suit for damages based on tribal sovereign immunity, the doctrine does not protect or excuse it from compliance with the subpoena"); *United States v. Juvenile Male 1*, 431 F. Supp. 2d 1012, 1016 (D. Ariz. 2006) ("Even the President of the United States must comply with a federal subpoena. It would be strange indeed if a federal subpoena were operative against the greater sovereign and its officers but not the lesser." (citation omitted)).  Since there is no libel claim (or other claim seeking to impose liability on the OMC based upon

statements made by its executives) in this case, those authorities have no application or bearing here.

The OMC also misses in its attempt to distinguish a case cited in the Motion, *Miccosukee Tribe of Indians of Fla. v. United States*, No. 12-CV-22638-UU, 2013 WL 7728831 (S.D. Fla. Feb. 11, 2013) ("*Muscogee Tribe*"). What the OMC represents as the *holding* of *Miccosukee Tribe* is actually a parenthetical quotation from a different case, in the section of *Miccosukee Tribe* discussing an asserted deliberative process privilege. *See id.* at *8 (citing *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1459 (9th Cir. 1994) "('[T]ribal sovereignty does not extend to prevent the federal government from exercising its superior sovereign powers')). The relevant holding, "the Supreme Court's precedents on executive privilege offer no suggestion that the Court's analysis of Presidential privilege is intended to apply to other executives of sovereign bodies," *id.* at * 9, has nothing to do with the party against whom the privilege is asserted, and everything to do with the federal district court not recognizing a claim of executive privilege by a Tribe.

Even if the OMC properly invoked the executive privilege, that privilege is not absolute and is overcome by Defendants' need for important evidence here. *See* Motion at 23-24. The OMC argues the requested communications are unnecessary in this case, because of the Tenth Circuit's language about ripeness. *See* Response at 17-18. In considering claims for equitable relief, the Court must "consider[] the balance of hardships between the plaintiff and defendant, [and thus determine that] a remedy in equity is warranted." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The *Restatement (Second) of Torts* recognizes that the Court should consider (i) "any unreasonable delay by the plaintiff in bringing suit," and (ii) "any related misconduct on the part of the plaintiff" in deciding whether to grant an injunction. RESTATEMENT (SECOND) OF TORTS, § 936(1). The benefit of the sought discovery is straightforward—it will allow Defendants

to present evidence to meet these principles. As those principles apply here, they necessarily require consideration of the extent of the OMC's knowledge of the Project, whether it had sufficient facts at its disposal such that it knew or should have known of the alleged "encroachment" about which it complains in this case, and whether it had communications between and among each other regarding these issues after Osage Wind and its prior owners provided them with facts necessary to understand these issues. Any assertion by the OMC that its conduct and knowledge are not at issue fails necessarily by its continued pursuit of injunctive relief, and the Tenth Circuit's rejection of a preclusion defense to the assertion of a claim under 25 C.F.R. § 214.7 does not relieve the OMC from providing information pertinent to the equitable balancing necessary to address its claims for equitable relief.

With respect to the OMC's claim of executive privilege under the Nation's laws, the OMC does not respond to Defendants' showing that the cited Osage Nation Code provisions are only part of the Nation's statutory public records act, which is not limited to "executives," *see* O.N.C. Tit. 15, ch. 8, allowing "the public" to request and receive records, *id.* § 8-107(B), and makes no reference to disclosure in litigation. The portion of the Nation's Code on which the OMC relies for the executive privilege is substantively similar to Oklahoma's Open Records Act, and thus Defendants' reliance on *American Commerce Insurance Co. v. Harris*, No. CIV-07-423-SPS, 2008 WL 3456848 (E.D. Okla. Aug. 8, 2008) is reasonable (given that it applies a substantively identical statute) and should inform the Court's rejection of the OMC's asserted executive privilege from disclosing documents requested in discovery.

## CONCLUSION

The Motion should be granted in full. The OMC's efforts to reinstate claims of damage to the oil and gas estate must be rejected, and the OMC's initial disclosures and discovery responses

must be supplemented, including with documents over which the OMC has asserted an executive privilege.

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER
JETER BARNETT & RAY, P.C.**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade
Sarah M. Stevenson**
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Abi Laura Fain
Nolan Fields IV
Cathryn D. McClanahan

David McCullough
Mary Kathryn Nagle
Wilson Kirk Pipestem
Jeffrey S. Rasmussen


The following non-ECF registrants have been served by First Class United States mail:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


*/s/ Ryan A. Ray*
Ryan A. Ray