# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| and | ) |
| OSAGE MINERALS COUNCIL, | ) |
| Intervenor-Plaintiff, | ) |
| v. | ) Case No. 14-CV-704-GKF-JFJ |
| OSAGE WIND, LLC;<br>ENEL KANSAS, LLC; and<br>ENEL GREEN POWER NORTH AMERICA, INC., | ) |
| Defendants. | ) |

**THE UNITED STATES' NOTICE OF DEFENDANTS' SUBMISSION OF THE EXPERT WITNESS REPORT OF KIMBERLEE CENTERA, WHICH DIRECTLY RELATES TO THE UNITED STATES' PENDING MOTION TO COMPEL DISCOVERY (Dkt. 175)**

COMES NOW Plaintiff, the United States of America, by and through R. Trent Shores, United States Attorney for the Northern District of Oklahoma, and Cathryn D. McClanahan and Nolan Fields, Assistant United States Attorneys, and notifies this Court of Defendants' Expert Report submitted by Kimberlee Centera, which bears directly on the United States' pending Motion to Compel Discovery (Dkt. 175) ("Motion").

The United States' Motion focuses on certain documents identified in Defendants' Third Amended and Supplemental Privilege Log ("Third Privilege Log"). While the Motion remains pending, Defendants submitted an Expert Report from Kimberlee Centera, a risk management consultant for renewable energy projects. *See* Exhibit 1 (attached sans Appendix B). The United States requests this report be considered due to its direct relation to the subject documents and the arguments presented by Defendants to this Court regarding the Motion.

If these documents (withheld from the United States due to "privilege") were shared with Ms. Centera to form her opinions, the United States should also receive them.[1] If Ms. Centera did not review all of these documents (unredacted), Defendants are attempting to use her to describe how a "knowledgeable and experienced wind developer" (*Id.* at 4) would have acted under these circumstances, as opposed to Defendants' actual actions at issue. If the latter is true, Defendants are using Ms. Centera as a willfully blind expert and employing her as a sword and a shield for their own actions.

1. The United States filed its Motion on August 11, 2020, seeking approximately 31 documents described in Defendants' Third Privilege Log. Dkt. 175.

2. Defendants filed their Response to the Motion on September 1, 2020 (Dkt. 186), and the United States filed its Reply on September 15, 2020 (Dkt. 190).

3. On September 24, 2020, Defendants e-mailed the parties their Fifth Amended and Supplemental Privilege Log ("Fifth Privilege Log"), identifying 68 additional documents that mirrored the subject matter areas at issue in the United States' Motion.

4. On October 1, 2020, the United States filed a Notice of the Fifth Privilege Log and its relation to the pending Motion. Dkt. 195.

5. On October 2, 2020, Defendants filed a Response to the Notice, stating they did not oppose inclusion of the 68 additional documents at the October 7th motion hearing. Dkt. 196.

6. On October 7, 2020, the parties had a telephonic hearing before this Court and presented argument on the pending motions to compel.

7. In that hearing, Defendants repeatedly argued they had not made an implied waiver related to their privileged communications. The Court followed up on this point:

---

[1] The United States intends to propound discovery requests for these items shortly.

> 7  **THE COURT: And you don't intend to bring an attorney**
> 8  **or someone else to trial to make some assertions about what**
> 9  **occurred here outside the scope of the memo that was made**
> 10  **public; is that correct?** I think -- I can't remember the case
> 11  where the attorney testified. *Dilworth*, maybe? But are you –
> 12  **is that in any way what is happening here?**
> 13  **MR. RAY: So, on *Dil-* -- no, Your Honor.** In the
> 14  Dilworth case, what I believe happened is, is it was back in
> 15  the '20s and I believe this attorney had actually given an oral
> 16  title opinion to one of the parties of this case and so – and
> 17  it was that oral title opinion that was the basis for the good
> 18  faith defense. **We're different here, Your Honor, in that we're**
> 19  **not relying on a privileged and confidential discussion.**

Transcript of October 7, 2020, Motion Hearing. Dkt. 198 at 10. (emphasis added).

8. The Court specifically asked if Defendants "intended to bring an attorney or someone else to trial to make some assertation about what occurred here," and, apart from the Slade Memo discussed in the Motion, they denied it. By orchestrating Ms. Centera's expert opinions, Defendants directly contradict their representations to the Court.

9. Ms. Centera summarizes her expert opinion as follows:

> I have been asked to provide expert opinion and response to two questions. First, whether a knowledgeable and experienced wind developer would have reasonably anticipated that a lease from the mineral owner would be required prior to construction of the project? Second, if a wind energy developer was clearly apprised prior to construction commencing that a mining lease was required to engage in ordinary turbine foundation excavation for a wind energy project, would the developer have practical and effective alternative to using minerals so "mined" from the mineral estate in the construction of foundations for the Project?

Exh. 1 at 4.

10. In response to Defendants' first question, Ms. Centera explains:

> I have reviewed the six (6) surface leases and the project background. Upon this review, it is clear that while the mineral interest is well established, **there is no evidence to conclude that the project site would need to enter into a mineral**

3

> **lease.** When evaluating title curative documents in preparation for debt and equity financing, **I and wind developers seek to address any potential issues that may arise with regard to vested ownership rights at the project site.** This often includes the contemplation of agreements and waivers that may be requested by a third party financer, investor or title insurance provider. . . . I have assessed the supporting documentation provided by Osage Wind and all such evidence would support a finding that reasonable diligence would not have led a knowledgeable wind developer to anticipate the need for a mineral lease prior to construction on the Osage Wind project.

*Id*. at 5 (emphasis added).

11. For Ms. Centera to find there was no evidence to conclude a mineral lease was needed for the Project, she may have been willfully left in the dark by Defendants and not presented with all the correspondence among the parties outlining the necessity of a mineral lease nor the communications and documents identified by Defendants in their Third and Fifth Privilege Logs.

12. Responding to Defendants' second question, Ms. Centera states the following:

> When reviewing the documents provided herein, I have considered the mineral estate interest in light of the entire project design, **as a reasonable and knowledgeable wind developer would do.** The effects of a mineral lease, on sight acquisition, lender diligence concerns and ultimately project financing are paramount. **If a wind developer had been clearly apprised of the necessity of a mineral lease, they certainly would have considered other more practical options.**

Exh. 1 at 5-6 (emphasis added).

13. Here, instead of analyzing Defendants' actions, she is describing what a "reasonable and knowledgeable wind developer would do." If Ms. Centera was not provided all the unredacted privileged communications and documents at issue, she has only received a curated, limited view of the situation. If she was provided the documents,[2] not only is privilege waived by this

---

[2] Ms. Centera states in her report that "I have reviewed and relied upon the documents and information received as listed in Appendix A. I also relied upon independent research as specifically referenced herein and contained in its files." Exh. 1 at 6. What the "independent research" that is "contained in its files" may have entailed is left to conjecture.

4

disclosure, Ms. Centera is also giving precisely the type of opinion Defendants assured the Court that they would not bring.

14.     If an objective standard is allowed, it cannot be measured until one views the universe of documents that the hypothetical developer reviewed – attorneys' opinions, communications between legal and business decision makers, etc. The questions Defendants posed to Ms. Centera call into question the privileged communications and documents pending before Magistrate Jayne.

For the above-stated reasons, the United States respectfully requests that this Court consider the manner in which Defendants are attempting to wield the expert opinions of Kimberlee Centera as both a sword and shield, providing necessary context for ruling on the United States' pending Motion to Compel (Dkt. 175).

Respectfully submitted,

UNITED STATES OF AMERICA

R. TRENT SHORES
United States Attorney

s/Cathryn D. McClanahan
Cathryn D. McClanahan, OBA No. 14853
Nolan M. Fields IV, OBA No. 31550
Assistant United States Attorneys
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
T: 918-382-2700
cathy.mcclanahan@usdoj.gov
nolan.fields@usdoj.gov

Of Counsel:
Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor's Office
7906 East 33rd Street
Tulsa, Oklahoma 74145
T: 918-669-7902
charles.babst@sol.doi.gov