**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)  UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| (2) OSAGE MINERALS COUNCIL, | ) | Case No. l4-CV-704-GKF-JFJ |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (1) OSAGE WIND, LLC; | ) | |
| (2) ENEL KANSAS, LLC; and | ) | |
| (3) ENEL GREEN POWER | ) | |
| NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**INTERVENOR PLAINTIFF OSAGE MINERALS COUNCIL'S MOTION FOR
JUDGMENT ON THE PLEADINGS
AND BRIEF IN SUPPORT THEREOF**

Intervenor-Plaintiff Osage Minerals Council ("the OMC"), by its undersigned counsel of record, submits this motion in accordance with Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP"), seeking judgment on the pleadings with regards to certain affirmative defenses asserted by Defendants Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC ("Enel Kansas") and Enel Green Power North America, Inc. ("EGPNA" and collectively "Defendants").

## Table of Contents

TABLE OF CONTENTS ..........................................................................................ii

TABLE OF AUTHORITIES.................................................................................. iii

INTRODUCTION .................................................................................................1

STANDARD OF REVIEW ....................................................................................2

ARGUMENT.........................................................................................................3

    A.  Defendant's Wind Farm Constitutes a Continuing Trespass on the Osage Mineral Estate 4

    B.  The Osage Mineral Estate is a Federal Trust Asset............................................5

    C.  Defendants' Affirmative Defenses Are Creatures of State, Not Federal, Law ..................6

    D.  Defendants' Oklahoma-based Affirmative Defenses Cannot Be Incorporated Because They Conflict With Federal Law And Policy....................................................7

        1.  Incorporation of Oklahoma-based affirmative defenses is inconsistent with federal law and policy governing the administration of Indian trust property ...................8

        2.  Congress has dictated the prerequisites necessary to obtain the right to enter the Osage Minerals Estate by statute.........................................................11

CONCLUSION ...................................................................................................16

CERTIFICATE OF SERVICE............................................................................18

**Table of Authorities**

<u>**Cases**</u>

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ..................................................................................................3

*California ex rel. State Lands Comm'n v. United States*
    457 U.S. 273 (1982) ..................................................................................................6

*Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York*
    278 F. Supp. 313 (N.D.N.Y. 2003) ........................................................................6–7

*Cato v. U.S.*
    70 F.3d 1103 (9th Cir. 1995) ...................................................................................6

*Cayuga Indian Nation of New York, by Patterson v. Cuomo*
    565 F. Supp. 1297 (N.D.N.Y. 1983) .......................................................................6

*Cherokee Nation v. Hitchcock*
    187 U.S. 294 (1902) ................................................................................................15

*County of Oneida v. Oneida Indian Nation*
    470 U.S. 226 (1985) ................................................................................................11

*Davilla v. Enable Midstream Partners, L.P.*
    913 F.2d 959 (10th Cir. 2019) .....................................................................4–5, 7–9, 16

*Green v. Pershing L.L.C.*
    2012 WL 5199625, 12-CV-0296 (N.D. Okla., Oct. 22, 2012) .............................3

*Grondal v. Mill Bay Members Ass'n, Inc.*
    ___ F.3d___, 2020 WL 3892462 (E.D. Wash. July 9, 2020) ........................8, 11

*Kamen v. Kemper Fin. Servs., Inc.*
    500 U.S. 90 (1991) .................................................................................................7–8

*Michigan v. Bay Mills Indian Cmty.*
    572 U.S. 782 (2014) ................................................................................................14

*Mock v. T.G. & Y. Stores Co.*
    971 F.2d 522 (10th Cir. 1992) .............................................................................2–3

*Osage Nation v. United States*
    57 Fed. Cl. 392 (2003) .........................................................................................5, 12

*Osage Tribe of Indians of Okla. v. United States*
    81 Fed. Cl. 392 (2008)........................................................................5, 11–12

*Progressive Northern Insurance Company v. Escoto*
    2020 WL 5821965, No. 19-cv-00269 (N.D. Okla., Sept. 30, 2020) ...................................3

*Schafer, Tr. of Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v.*
    *Centerpoint Energy Oklahoma Gas*
    No. 17-CV-365-GKF-FHM, 2018 WL 10140171 (N.D. Okla., May 21, 1992) ...............8

*Seneca Nation of Indians, Tonawanda Bank of Seneca Indians v. New York*
    No. 93-CV-688A, 1994 WL 688262 (W.D.N.Y. Oct. 28, 1994) ...................................7–9

*State of New Mexico v. Aamodt*
    537 F.2d 1102 (10th Cir. 1976) .........................................................................15

*Swim v. Bergland*
    696 F.2d 712 (9th Cir. 1983) ..............................................................................8

*United States v. Ahtanum Irr. Dist.*
    236 F.2d 321 (9th Cir. 1956) .............................................................................15

*United States v. Jicarilla Apache Nation*
    564 U.S. 162 (2011) .........................................................................................15

*United States v. Lara*
    541 U.S. 193 (2004) .........................................................................................14

*United States v. Milner*
    538 F.3d 1174 (9th Cir. 2009) ......................................................................10–11

*United States v. Osage Wind, L.L.C.*
    871 F.3d 1078 (10th Cir. 2017) ..................................................................4–5, 12–13

*United States v. Pend Oreille Pub. Util. Dis. No. 1*
    28 F. 3d 1544 (9th Cir. 1994) ............................................................................10

## **Statutes**

Act of Mar. 2, 1929 ....................................................................................1, 14

Act of Apr. 18, 1912 ......................................................................................14

Act of Oct. 21, 1978 .....................................................................................13

Act of Dec. 3, 2004.......................................................................................16

Osage Allotment Act ...........................................................................................................5, 12–14

**Court Rules**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................2

Fed. R. Civ. P. 12(c) ..............................................................................................................2

**Federal Regulations**

25 C.F.R. § 214.7 .................................................................................................................13

25 C.F.R. § 224.30 ...........................................................................................................5, 11

25 C.F.R. § 226.9(a) ..........................................................................................................5–6

84 FR 69602 (Dec. 18, 2019) ................................................................................................5

I.      INTRODUCTION

The Osage Minerals Council ("OMC") brings this Motion for Judgment on the Pleadings,

seeking judgment on certain affirmative defenses asserted by Defendants Osage Wind, LLC

("Osage Wind"), Enel Kansas, LLC ("Enel Kansas") and Enel Green Power North America, Inc.

("EGPNA," and collectively "Defendants"). In response to the Osage Minerals Council's First

Amended Complaint in Intervention (Dkt. 164), Defendants raised a series of equitable

affirmative defenses that are not cognizable under federal law, but rather, sound in Oklahoma

law alone. Specifically, Defendants' Answer asserts the Oklahoma-based affirmative defenses of

estoppel, laches, waiver, doctrine of unclean hands, and *in pari delicto*. Dkt. 174 at 15–16.

Because the Osage Mineral Estate is a trust asset, Oklahoma law cannot usurp the rights and

benefits the OMC receives as a trust beneficiary unless this Court determines that incorporating

Defendants' Oklahoma-based affirmative defenses is consistent with federal law and policy. It is

not.

In 1906, Congress made clear that the Osage Mineral Estate is governed by federal law,

and *not* Oklahoma law (a conclusion that would be absurd since Oklahoma had not yet come into

existence). Congress has also unequivocally stated that the framework for administering the

Osage Mineral Estate is intended to serve the best interests of the Osage Nation—*not* Oklahoma,

private landowners, or private corporations like Defendants. *See e.g.,* Act of Mar. 2, 1929, Pub.

L. No. 70-919, 45 Stat. 1478, 1479. Federal law and policy, as well as the specific statutes passed

by Congress governing the Osage Mineral Estate, speak directly to the federal policy goal of

supporting tribal self-sufficiency and strong tribal government. These federal policies cannot be

squared with the incorporation of state law affirmative defenses that would excuse Defendants'

trespass on the Osage Mineral Estate based on Defendants' assertions that the OMC (or the

United States) somehow did not tell Defendants to obey the law soon enough. Congress has

created *no* exceptions to compliance with the 1906 Act, and Congress' considered judgment in this matter must be upheld.

The law that Defendants violated was created to protect the Osage Mineral Estate as an Indian trust asset, over which the United States acts as a trustee. Incorporating Oklahoma-based affirmative defenses to excuse Defendants' unlawful conduct, in this instance, would directly violate federal law and policy because it would preclude the United States from effectuating its duties as trustee in pursuing the protection of an Indian trust asset. Even more troublesome, such an incorporation of Oklahoma law would encourage other bad actors to follow Defendant's example: violate federal law now, and then rely on Oklahoma law later to argue your own violation was somehow not your fault.

Federal law does not recognize such exceptions with regards to a trespass on the Osage Mineral Estate in statute, regulation, or in caselaw, and consequently, and because Defendants' affirmative defenses of estoppel, laches, waiver, doctrine of unclean hands, and *in pari delicto* directly contradict the federal law that governs the administration of the Osage Mineral Estate, these affirmative defenses must be dismissed as a matter of law.

## II.     STANDARD OF REVIEW

"A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is treated as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992); *see also* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). Rule 12(c) motions, therefore, "are evaluated under the same standard that governs Rule 12(b)(6) motions to dismiss." *Mock,* 971 F.2d at 528.

"The Court will grant a motion for judgment on the pleadings if the factual allegations in the complaint fail to 'state a claim to relief that is plausible on its face,' or if an issue of law is

dispositive." *Progressive Northern Insurance Company v. Escoto*, 2020 WL 5821965, No. 19-cv-00269, *2 (N.D. Okla., Sept. 30, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Consequently, if Defendants seek to avoid judgment on the pleadings at this stage in the proceedings, they must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [Defendants] carr[y] the burden of proof." *Mock,* 971 F.2d at 528 (internal quotations and citations omitted); *see also id.* at 529 (courts grant Rule 12(c) motions "only when it appears that the [nonmoving party] can prove no set of facts in support of the claims that would entitle the [nonmoving party] to relief.") (internal quotations and citations omitted).

Ultimately, a motion for judgment on the pleadings will be properly granted where "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Green v. Pershing, L.L.C.*, 2012 WL 5199625, 12-CV-0296, *2 (N.D. Okla., Oct. 22, 2012) (internal quotations and citations omitted).

### III.   ARGUMENT

As discussed in greater detail below, judgment on pleadings is warranted here since there is no dispute of material fact with regards to the following: (1) Defendants have trespassed on the Osage Mineral Estate; (2) the Osage Mineral Estate is a federal trust asset; (3) Defendants' affirmative defenses of estoppel, laches, waiver, doctrine of unclean hands, and *in pari delicto* sound in Oklahoma—not federal—law; and (4) incorporating these Oklahoma-based affirmative defenses would directly contradict federal law and policy, specifically the federal statutes Congress has passed governing the administration of the Osage Mineral Estate. Accordingly, the OMC is entitled to judgment on the pleadings as a matter of law.

## A. Defendants' Wind Farm Constitutes a Continuing Trespass on the Osage Mineral Estate

There is no question that Defendants have committed—and continue to commit—a trespass on the Osage Mineral Estate. The Tenth Circuit Court of Appeals has ruled that Defendants' "extraction, sorting, crushing, and use of minerals as part of its excavation work constituted 'mineral development,' thereby requiring a federally approved lease which Osage Wind failed to obtain." *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1081–82 (10th Cir. 2017); *see also id*. at 1084 ("[W]e determine that Osage Wind's excavation activities constituted 'mining' under § 211.3, so a federally approved lease was required under § 214.7.").

Following the Tenth Circuit's determination that Defendants unlawfully intruded on the Osage Mineral Estate, this Court has acknowledged that the issue for adjudication in the District Court is "[t]he measure of damages for the trespass claim." Dkt. 171 at 3; *see also* Dkt. 173 at 14:15–16 (acknowledging that what remains is "a trespass issue with regard to the mining"). Accordingly, the Court is now considering "the measure of damages for trespass when a party comes in and takes mineral interests" from the Osage Mineral Estate. Dkt. 173 at 14:20–21. Time and time again, this Court has reiterated that at this point in the proceedings, "the issue that's really before the court, or will be before the court, is whether or not the trespasser here is innocent or is not, or is a bad faith trespasser, and whether the trespasser is entitled to his mining costs." *Id.* at 15:07–10.

The parties and Court agree: a trespass has occurred. Now, following remand from the Tenth Circuit, the question that remains is one of remedy. In other words, how will Defendants' violation of federal law and intrusion on the Osage Mineral Estate be addressed? Defendants apparently agree, admitting that the Tenth Circuit's decision in *Davilla v. Enable Midstream Partners, L.P.*, 913 F.3d 959 (10th Cir. 2019) controls the Court's consideration of the proper

4

remedy, because *Davilla* "involved Native American owned lands and it involved an alleged trespass into them." Oct. 7, 2020 Tr. 49:15–20. That is precisely the case here.

### B.  The Osage Mineral Estate is a Federal Trust Asset

Like *Davilla*, the present case presents the Court with the task of implementing the correct remedy for a trespass that took place, and continues to take place, on Indian trust property. The Osage Mineral Estate is undeniably an Indian trust asset governed and protected by federal law. *See Osage Tribe of Indians of Okla. v. United States*, 81 Fed. Cl. 340, 345 (2008) (The Osage Nation is "the beneficiary of the Osage mineral estate and tribal trust fund account created by the 1906 Act."); *Osage Nation v. United States*, 57 Fed. Cl. 392, 395 (2003) ("Section four of the 1906 Act creates a trust fund for the Tribe and obliges the United States to hold mineral royalties in trust . . . .") (citing 34 Stat. 539, 544 §§4(1) and 4(2)); *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1086 (10th Cir. 2017) (The Osage Nation "owns the beneficial interest in the mineral estate at issue.").

Not only is it clear that the Mineral Estate constitutes Indian trust property, federal regulations actually define this trust asset as "tribal land." *See* 25 C.F.R. § 224.30. The general provisions of the Tribal Energy Resource Agreements Under the Indian Tribal Energy Development and Self Determination Act (TERA) provide:

> *Tribal land* means any land or interests in land owned by a Tribe or Tribes, title to which is held in trust by the United States, or is subject to a restriction against alienation under the laws of the United States. For the purposes of this part, Tribal land includes land taken into trust or subject to restrictions on alienation under the laws of the United States after the effective date of the agreement.

*Id*. In the agency's comments to the final TERA rule, the BIA clarified that "the definition of 'Tribal land' includes the Osage minerals estate in its reference to 'interests in land.'" 84 FR 69602. Additionally, the Osage Minerals Leasing statute, 25 CFR § 226, repeatedly uses "land" throughout to refer to the Osage Mineral Estate. *See, e.g.*, 25 CFR § 226.9(a) ("That the

Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when in his judgment, such action may be necessary or proper *for the protection of the natural resources of the leased land and the interests of the Osage Tribe*.") (emphasis added).

Accordingly, Defendants' trespass on the Osage Mineral Estate constitutes a trespass on a trust asset "where title rests with or was derived from the Federal Government," and as a result, the OMC's trespass claim "*is to be determined by federal law*"—to the exclusion of Oklahoma law. *California ex rel. State Lands Comm'n v. United States*, 457 U.S. 273, 283 (1982) (emphasis added).

### C.  Defendants' Affirmative Defenses Are Creatures of State, Not Federal, Law

Next, it is important to note that Defendants' affirmative defenses of estoppel, laches, waiver, doctrine of unclean hands, and *in pari delicto* are not cognizable under federal law. Instead, they are purely creatures of Oklahoma law.

In their Answer to the OMC's First Amended Complaint, Defendants assert that "the relief sought by the First Amended CIR is barred by the doctrine of estoppel . . . [and] the doctrine of laches." Dkt. 174 at 15. Defendants further assert that "[t]he relief sought by the First Amended CIR is barred by the doctrine of waiver." *Id*. These state law affirmative defenses, however, violate the "well-established rule that a suit by the United States as trustee on behalf of an Indian Tribe is not subject to state delay-based defenses." *Cato v. U.S.,* 70 F.3d 1103, 1108 (9th Cir. 1995). Federal courts have routinely held that estoppel and laches, specifically, are "defenses based upon state law" and as such, are "unavailable to [ ] defendants" under federal law. *Cayuga Indian Nation of New York, by Patterson v. Cuomo*, 565 F. Supp. 1297, 1301 (N.D.N.Y. 1983). The same is true for waiver. *See, e.g., Canadian St. Regis Band of Mohawk*

*Indians ex rel. Francis v. New York*, 278 F. Supp. 2d 313, 342 (N.D.N.Y. 2003) (concluding that the affirmative defense of waiver is a "delay-based defense[] [and is therefore] state law based," and ultimately, that "traditional state law defenses such as accord and satisfaction, unclean hands, and *waiver* [do not] have any bearing upon [an Indian] land claim action.") (emphasis added).

Defendants' assertion that "[p]art or all of the OMC's claims are barred by the doctrine of unclean hands" is likewise flawed. Dkt. 174 at 16. Again, courts routinely recognize that in claims regarding Indian trust property and/or lands, the affirmative defense of unclean hands is a creature of state, not federal, law. *See, e.g., Canadian St. Regis Band of Mohawk Indians*, 278 F. Supp. 2d at 342 (concluding that the defense of "unclean hands" constitutes a "traditional state law defense[]" that does not exist under federal law); *Seneca Nation of Indians, Tonawanda Bank of Seneca Indians v. New York,* No. 93-CV-688A, 1994 WL 688262, at *1 (W.D.N.Y. Oct. 28, 1994) (dismissing "[t]he *state law* defense[] . . . [of] unclean hands . . . because Indian land claims [are] exclusively a matter of federal law.") (internal quotations and citations omitted) (emphasis added).[1]

Defendants' equitable affirmative defenses sound in state, not federal, law.

### D.  Defendants' Oklahoma-based Affirmative Defenses Cannot Be Incorporated Because They Conflict With Federal Law And Policy

Unfortunately for Defendants, "federal courts should only incorporate state rule of decision into federal claims to the extent those rules *are consistent with federal law and policy*." *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 967 (10th Cir. 2019) (citing *Kamen v.*

---

[1] The same, of course, is true for Defendants' affirmative defense of *in pari delicto*, which like unclean hands, relies on the argument that the United States or the OMC have somehow done something wrong that thereby excuses Defendants' trespass on federal Indian trust property. *See* Dkt. 174 at 16 (asserting that "the OMC's claims are barred by the doctrine of *in pari delicto*.").

*Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991)) (emphasis added). Here, the state law that Defendants seek to rely on and incorporate directly contradicts governing federal law and policy. Defendants' affirmative defenses of estoppel, laches, waiver, doctrine of unclean hands, and *in pari delicto* (*see* Dkt. 174 at 15–16) are *not* consistent with federal law and policy, and consequently, the OMC is entitled to judgment on these pleadings as a matter of law.

1. **Incorporation of Oklahoma-based affirmative defenses is inconsistent with federal law and policy governing the administration of Indian trust property**

It is well-settled law that estoppel, laches, and other equitable defenses that may apply as a matter of state law are inconsistent with federal policy regarding enforcement of Indian possessory interests in land or trust assets where the United States serves as trustee. *See, e.g., Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 967–68 (10th Cir. 2019) (state law not incorporated where doing so would "effectively rob[] Indian allottees and the government of meaningful control over alienation."); *Swim v. Bergland*, 696 F.2d 712, 718 (9th Cir. 1983) (laches and estoppel "not available to defeat" grazing rights granted in treaty with Tribal Nation); *Grondal v. Mill Bay Members Ass'n, Inc.*, ___ F.3d ___, 2020 WL 3892462, at *26–27 (E.D. Wash. July 9, 2020) (no state property law defenses to trespass where lease had expired); *Schafer, Tr. of Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v. Centerpoint Energy Oklahoma Gas*, No. 17-CV-365-GKF-FHM, 2018 WL 10140171, at *8 (N.D. Okla. May 21, 2018) ("[C]ourts have analyzed the applicability of these defenses [waiver, estoppel, laches, and unclean hands] in the context of tribal lands and have consistently rejected them because they rely on the principle that a party's conduct can validate Indian land transactions even if those transactions were not approved by the United States."); *Seneca Nation of Indians, Tonawanda Bank of Seneca Indians v. New York*, No. 93-CV-688A, 1994 WL 688262, at *1 (W.D.N.Y. Oct. 24, 1994) (striking the state law defenses of accord, satisfaction, unclean hands,

estoppel, laches, and waiver because their assertion would "contravene established policy pertaining to Indians' ability to enforce their property rights"). *Davilla v. Enable Midstream Partners, L.P.* and *United States v. Milner* are especially illustrative of this point.

In *Davilla*, the Tenth Circuit recognized that federal law, not Oklahoma law, governs a claim for trespass on federal Indian trust property. *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 965 (10th Cir. 2019). The Indian trust assets at issue in *Davilla* were Kiowa allotments, specifically an easement running over a strip of the individual Kiowa allotments for which the federally-approved lease had expired and the producer gas company neither sought approval from the Bureau of Indian Affairs ("BIA") to keep the pipeline in the ground, nor removed the pipeline. *Id*. at 963–64. The defendant had obtained consent from five of the thirty-seven individual allotees affected and on that basis argued that it was entitled to the affirmative defense of consent under Oklahoma law. *Id*. at 966 (internal citations and quotations omitted).

The Tenth Circuit declined to incorporate Oklahoma law to excuse the trespass, explaining that the prerequisites for lawful entry onto Kiowa allotment land are dictated by federal statute, not state law. *Id*. at 967 ("When it comes to maintaining a pipeline over Indian allotted land, however, Congress has dictated the prerequisites of a right to enter by statute."). Specifically, the defendant "ha[d] no legal right to keep a structure on the [Indian lands at issue] unless and until it secure[d] a right-of-way for that purpose from the Secretary of the Interior." *Id.* The Court went even further, holding that the Court "would not incorporate such a rule into the Allotees' *federal* right of action" because "federal courts should only incorporate state rules of decision into federal claims to the extent those rules are consistent with federal law and policy" and allowing the consent defense would  "frustrate federal Indian land policy." *Id*. at 967–68 (emphasis in original).

Similarly, in *Milner*, the Ninth Circuit considered actions for trespass and violations of the Rivers and Harbors Appropriation Act ("RHA") and the Clean Water Act ("CWA") brought by the United States on behalf of the Lummi Nation against a group of waterfront homeowners whose shore defense structures intersected the Lummi Nation's "ambulatory tideland property boundary." *United States v. Milner,* 583 F.3d 1174, 1180 (9th Cir. 2009). The Lummi Indian Reservation was established by the 1855 Treaty of Point Elliott, and later, expanded to include the tidelands of the relevant area by executive order. *Id*. The United States had "continuously [] held the tidelands in trust for the Lummi Nation, pursuant to President Grant's [1873] executive order." *Id*. at 1181.

The Army Corps of Engineers and the United States Attorney for the Western District of Washington "sent letters to the homeowners demanding removal of their defense structures [which sat within the Lummi tidelands] or alternatively that the Homeowners enter into agreements to lease the tidelands." *Id*. When the homeowners failed to remove the structures, the United States brought suit alleging trespass, among other federal statutory claims, and the Lummi Nation intervened as the beneficial owner of the tidelands. *Id*. In *Milner*, the District Court found the homeowners liable for trespass and imposed an injunction under the RHA; the Homeowners appealed, challenging the lower court ruling on the trespass and statutory claims, as well as the provision of injunctive relief. *Id*. at 1182.

In affirming the District Court's finding on the trespass claim, the Ninth Circuit held that "*[f]ederal common law governs an action for trespass on Indian lands*." *Id*. at 1182 (citing *United States v. Pend Oreille Pub. Util. Dis. No. 1*, 28 F.3d 1544, 1549 n.8 (9th Cir. 1994) (emphasis added). The Ninth Circuit determined that Congress had specifically recognized the

oceanfront boundary as a trust property of the Lummi Indian Nation and that, under federal law, "the Homeowners [were] liable for trespass." *Milner*, 583 F.3d at 1191.

Here, Defendants should not be rewarded for what amounts to a strategy of asking for forgiveness under state law, rather than for permission under the federal law that controls. It is notable that federal courts have declined to incorporate state law defenses even where trespassers have previously had authority to enter Indian land. *Davilla*, discussed in detail above is one instance. Another is *Grondal v. v. Mill Bay Members Ass'n, Inc.*, ___ F.3d ___, 2020 WL 3892462 (E.D. Wash. July 9, 2020). There the United States District Court, Eastern District of Washington, considered whether individuals who had purchased camping memberships for recreational use could remain after the seller's master lease had expired. In holding that state property law defenses were not applicable to the United States' counterclaim for trespass, the Court found both that the property was an Indian trust asset and that "[b]ecause Indian land claims are exclusively a matter of federal law, state property laws are preempted," state statutes of limitation, adverse possession doctrines, and other state-law based defenses such as estoppel and laches "are similarly preempted." *Id*. at *26 (citing *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 241 (1985)).

## 2. Congress has dictated the prerequisites necessary to obtain the right to enter the Osage Minerals Estate by statute

Like the trust lands in *Davilla, Milner, and Grondal*, the Osage Mineral Estate is undeniably an Indian trust asset governed and protected by federal law according to the plain language of the 1906 Osage Allotment Act ("1906 Act"), federal regulations, and even federal court rulings. *See e.g.,* Act of Mar. 2, 1929, Pub. L. No. 70-919, 45 Stat. 1478, 1479; *see also* 84 FR 69602, 69603 (December 18, 2019) ("the definition of 'Tribal land' [under 25 C.F.R. § 224.30] includes the Osage minerals estate in its reference to 'interests in land.'"); *Osage Tribe of*

*Indians of Okla. v. United States*, 81 Fed. Cl. 340, 345 (2008) (The Osage Nation is "the beneficiary of the Osage mineral estate and tribal trust fund account created by the 1906 Act."); *Osage Nation v. United States*, 57 Fed. Cl. 392, 395 (2003) ("Section four of the 1906 Act creates a trust fund for the Tribe and obliges the United States to hold mineral royalties in trust . . . .") (citing Osage Allotment Act, Pub. L. No. 62-125, 34 Stat. 539, 544 §§4(1) and 4(2)) (1906); *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1086 (10th Cir. 2017) (The Osage Nation "owns the beneficial interest in the mineral estate at issue.").

Defendants' Oklahoma-based affirmative defenses directly contradict the laws Congress has passed to govern the management and administration of the Osage Mineral Estate. The 1906 Act's long legislative history unambiguously demonstrates that federal policy regarding the Osage Mineral Estate affords the Osage Nation—acting through the OMC—and the United States federal government exclusive authority over the management of the Mineral Estate, including the determination of who may mine the Estate, if, when, and to what extent and at what price. *See* Osage Allotment Act, Pub. L. No. 62-125, 34 Stat. 539, as amended. Nothing in the 1906 Act affords Oklahoma the right or the authority to create exceptions where mining *without* the United States and/or the OMC's approval would be lawful, or even excused by affirmative defenses. *Id.*

Congress established joint federal and tribal management of the Osage Mineral Estate when it first separated the subsurface mineral estate from the approximately 1.47-million-acre surface estate of the Osage Reservation and placed the Mineral Estate in trust for the Tribe in the 1906 Act. *See* Osage Allotment Act, Pub. L. No. 62-125, 34 Stat. 539. While the surface estate was allotted to individual members of the Osage Nation for the purpose of homesteading (*id*. at § 2), "oil, gas, coal, or other minerals covered by the lands" were specifically reserved to the Osage

Nation and held in trust by the United States. *Id*. at § 3. "Leases for all oil, gas, and other minerals" were and are to be made by the Osage Nation with the approval of the Secretary of the Interior. *Id*. at § 2.

Congress' purpose in creating this federal framework for management of the Osage Mineral Estate was simple: Congress intended for mining to take place on the Estate "in such quantities and *at such times as may be deemed for the best interest of the Osage Tribe of Indians*." Act of Mar. 2, 1929, Pub. L. No. 70-919, 45 Stat. 1478, 1479 (emphasis added). Thus, Congress assigned management of the Osage Mineral Estate to the Osage Nation and the United States to benefit the Osage Nation—*not* the State of Oklahoma, *not* private surface landowners, and certainly not private corporations such as Defendants.

Congress re-visited its 1906 federal framework again in 1978, when Congress amended the 1906 Act to clarify that the Osage Nation would maintain ownership over the Mineral Estate "in perpetuity." Act of Oct. 21, 1978, Pub. L. No. 95-496, § 2(a), 92 Stat. 1660, 1660. And in furtherance of its responsibility to manage the Osage Mineral Estate in the best interest of the Osage Nation, the Department of the Interior has since promulgated regulations to address the regulatory process that governs leasing and mining of the Mineral Estate, including 25 CFR § 214.7—which the Tenth Circuit concluded Defendants have violated. *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1081–82 (10th Cir. 2017).[2]

---

[2] It should also be noted that the Tenth Circuit has already considered, and dismissed, Defendants' equitable affirmative defense of laches. *See United States v. Osage Wind, LLC,* 871 F.3d 1078, 1087 (10th Cir. 2017) ("We decline to dispose of the case on the equitable doctrine of laches. The United States commenced this action within three months after turbine excavation work began, which is not an unreasonable amount of time to wait before filing suit."). Thus, even if this Court were to conclude that the incorporation of state law affirmative defenses is appropriate, Defendants should not be permitted to pursue their affirmative defense of laches, as that defense was squarely declined by the Tenth Circuit.

Had Congress intended for state law to be incorporated into the 1906 Act, Congress would have done so. For example, although the 1906 Act was enacted before the State of Oklahoma was founded, Congress knew how to make allowances for the development and application of state law going forward, and could have done so here, had Congress so desired. For instance, in the 1906 Act itself, Congress provided that "the laws of the Territory of Oklahoma, or of the State in which said reservation may be hereinafter incorporated" would govern most inheritance situations for Osage Nation citizens. Osage Allotment Act, Pub. L. No. 59-320, § 6, 34 Stat. 539, 545. Similarly, after statehood, Congress amended the 1906 Act to incorporate "the laws of the State of Oklahoma" for competency determinations for Osage Nation citizens. Act of Apr. 18, 1912, Pub. L. No. 62-125, § 3, 37 Stat. 86, 86. However, despite having enacted multiple amendments that specifically address the Osage Mineral Estate, Congress has, for 114 years, repeatedly declined to incorporate Oklahoma law into provisions governing the Osage Mineral Estate. *See, e.g.,* Act of Mar. 2, 1929, Pub. L. No. 70-919, 45 Stat. 1478, 1479; Act of Oct. 21, 1978, Pub. L. No. 95-496, § 2(a), 92 Stat. 1660, 1660. It should go without saying that incorporating state law where Congress has repeatedly declined to do so would be in contravention not only of federal policy generally, but also of Congress's specific intentions for the Osage Mineral Estate.

And in this instance, Congress' intentions are paramount, since it is Congress—and not the Oklahoma courts—that maintains exclusive authority to legislate with respect to Indian Tribes. *See Michigan v. Bay Mills Indian Cmty*., 572 U.S. 782, 788 (2014) (The Supreme Court has "consistently described [Congress's authority] as 'plenary and exclusive' to 'legislate [with] respect to Indian tribes.'") (quoting *United States v. Lara*, 541 U.S. 193, 200 (2004)). This exclusive authority is at its height when the matter concerns the federal government's duties as

trustee since, as the Supreme Court has explained, "[t]he Government, of course, is not a private trustee," and as a result, "[t]he trust obligations of the United States to the Indian tribes are established and governed by statute." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165, 173–74 (2011).

Accordingly, federal courts do not permit state law to displace Congress' considered statutory judgment. "This is especially so because the Government has often structured the trust relationship to pursue its own policy goals." *Id.* at 175. Accordingly, the "management of the trust is a sovereign function subject to the plenary authority of Congress"—to the exclusion of state courts and the common law they create. *Id.*; *Cherokee Nation v. Hitchcock*, 187 U.S. 294, 308 (1902) ("The power existing in Congress to administer upon and guard the tribal property, and the power being political and administrative in its nature, the manner of its exercise is a question within the province of the legislative branch to determine, and is not one for the courts").

Federal courts, therefore, routinely dismiss, as a matter of law, affirmative defenses raised to exculpate those who trespass on Indian trust property and/or lands over which the United States maintains its status as trustee. *See, e.g., State of New Mexico v. Aamodt*, 537 F.2d 1102, 1110 (10th Cir. 1976) ("Estoppel does not run against the United States when it acts as trustee for an Indian tribe"); *see also United States v. Ahtanum Irr. Dist.*, 236 F.2d 321, 334 (9th Cir. 1956) (explaining that defenses of laches or estoppel were not available against the Government when the Government acted as trustee for an Indian Tribe). Here, the United States is acting as a trustee for the OMC, and incorporating Defendants' equitable affirmative defenses directly contradicts the federal law and policy governing the United States' trust duties and

obligations owed to the Osage Nation. On this basis alone, Defendants' equitable affirmative defenses must be dismissed.

Ultimately, Defendants' trespass on the Osage Mineral Estate must be treated like any other trespass on Indian lands and/or tribal trust property. Not doing so would undercut one of Congress' primary goals in the area of federal Indian law and policy, tribal self-sufficiency and strong tribal government. *See* Act of Dec. 3, 2004, Pub. L. No. 108-431, § 1(a)(5), 118 Stat. 2609, 2609 ("A principle goal of Federal Indian policy is to promote tribal self-sufficiency and strong tribal government."). Tribal governments are not "strong" when bad actors are permitted to violate tribal law and tribal sovereignty by asserting equitable defenses that neither federal nor tribal law allow. Both federal and tribal law required Defendants to obtain a lease. Defendants chose not to. Allowing Defendants to assert Oklahoma-based affirmative defenses here would incentivize other bad actors to violate Osage and federal law now, and then argue Oklahoma-based affirmative defenses later. To allow Defendants to escape the consequences of their actions through reliance on state law would, undoubtedly, cause great damage to the Osage Nation's self-sufficiency and strength as a tribal government.

Allowing Defendants to assert Oklahoma-based affirmative defenses directly contradicts Congress' law and policy governing the Osage Mineral Estate, and accordingly, judgment should be granted as a matter of law in the OMC's favor.

## IV.    CONCLUSION

There is no question that the Osage Minerals Estate constitutes federal Indian trust property, and in this instance, "Congress has dictated the prerequisites of a right to enter by statute." *Davilla*, 913 F3d at 967. There is also no question that Defendants violated that right when they refused to get the lease that federal law required. Defendants' trespass on the Osage Mineral Estate thus constitutes a trespass on a trust asset where title rests with or was derived

16

from the Federal Government, and as a result, the OMC's trespass claim *is to be determined by federal law*—to the exclusion of Oklahoma law. For the reasons stated above, the OMC respectfully requests that the Court grant its motion for judgment on the pleadings and dismiss the Defendants' affirmative defenses of estoppel, laches, waiver, doctrine of unclean hands, and *in pari delicto*.

Respectfully submitted,

s/ Mary Kathryn Nagle
Mary Kathryn Nagle, OBA No. 33712
Wilson Pipestem, OBA No. 16877
Abi Fain, OBA No. 31370
Pipestem Law, P.C.
320 S. Boston Ave., #1705
Tulsa, Oklahoma 74103
918-936-4705 (Office)
wkpipestem@pipestemlaw.com
mknagle@pipestemlaw.com
afain@pipestemlaw.com
*Counsel for Intervenor-Plaintiff*
*Osage Minerals Council*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2020, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ryan A. Ray
Joel L. Wohlgemuth
rar@nwcjlaw.com
jlw@nwcjlaw.com

-and-

Lynn H. Slade
Sarah S. Stevenson
Deana M. Bennett
Spencer L. Edelman
lynn.slade@modrall.com
sarah.stevenson@modrall.com
deana.bennett@modrall.com
spencer.edelman@modrall.com
*Counsel for Defendants*

David McCullough
dmccullough@dsda.com

Jeffrey S. Rasmussen
jrasmussen@ndnlaw.com

-and-

Wilson Pipestem
Mary Kathryn Nagle
Abi L. Fain
afain@pipestemlaw.com
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
*Counsel for Intervenor-Plaintiff,*
*Osage Minerals Council*

Cathryn Dawn McClanahan
cathy.mcclanahan@usdoj.gov

*Counsel for Plaintiff, United States*

/s/ Mary Kathryn Nagle

18