# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| THE OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' RESPONSE TO THE OSAGE MINERALS COUNCIL'S MOTION FOR JUDGMENT ON THE PLEADINGS (Dkt. # 204)

---

| | |
|---|---|
| Ryan A. Ray, OBA #22281 | Lynn H. Slade, *admitted pro hac vice* |
| NORMAN WOHLGEMUTH CHANDLER | Sarah M. Stevenson, *admitted pro hac vice* |
| JETER BARNETT & RAY, P.C. | MODRALL, SPERLING, ROEHL, |
| 3200 Mid-Continent Tower | HARRIS & SISK, P.A. |
| 401 South Boston Avenue | Post Office Box 2168 |
| Tulsa, OK 74103 | Albuquerque, NM 87103-2168 |
| 918-583-7571 | 505-848-1800 |
| 918-584-7846 (facsimile) | 505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: December 4, 2020**

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................... ii

Introduction ........................................................................................................................ 1

Background ......................................................................................................................... 3

Argument ............................................................................................................................ 8

    I.    Governing Standard ................................................................................................ 8

    II.   Whether Federal Law or Borrowed Oklahoma State Law Applies to the Defendants' Equitable Defenses, the Defenses are Equally Viable. ............. 9

        A.  *State Law, Which Is Presumptively Incorporated in Federal Common Law, Applies to Defendants' Affirmative Defenses.* ............................................................... 9

            i.    Borrowing Oklahoma state law will not frustrate specific federal interests ............... 11

            ii.   There is no need for a nationally uniform body of law .......................................... 13

        B.  *Equitable Affirmative Defenses Apply to Questions of Determining and Fashioning Remedies, Even In Cases Where They Are Unavailable on the Question of Liability* .................................................................................................. 15

        C.  *Dismissal of Defendants' Affirmative Defenses Also Is Unwarranted Under Federal Law.* ................................................................................................................. 20

Conclusion ....................................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*California ex rel. State Lands Comm'n v. United States*
    457 U.S. 273 (1982) …………………………………………………………..10

*Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York*
    278 F. Supp. 2d 313 (N.D.N.Y. 2003)………....……………………………………..18

*Cato v. U.S.*
    70 F.3d 1103 (9th Cir. 1995),……………………….……………………...18

*Cayuga Indian Nation of N.Y. v. Cuomo*
    565 F. Supp. 1297 (N.D.N.Y. 1983)……………………………………………18, 19

*Cayuga Indian Nation of N.Y.  v. Cuomo*
    771 F. Supp. 19 (N.D.N.Y. 1991)…………………………………………………15, 16

*Cayuga Indian Nation of N.Y. v. Cuomo*
    Nos. 80-CV-930, 80-CV-960, 1999 WL 509442
    (N.D.N.Y. July 1, 1999)……………………………………………...16, 20, 22, 23

*Cayuga Indian Nation of N.Y. v. Pataki*
    413 F.3d 266 (2nd Cir. 2005)……………………………………………....17

*City of Sherrill v. Oneida Indian Nation*
    544 U.S. 197 (2005)……………………….…………………………3, 17, 18, 20, 22

*County of Oneida v. Oneida Indian Nation of New York*
    470 U.S. 226 (1985)…………………………………………...………..15, 18

*Davilla v. Enable Midstream Partners L.P.*
    913 F.3d 959 (10th Cir. 2019)…………………………………...…10, 14, 15

*Dilworth v. Fortier*
    405 P.2d 38 (Okla. 1964)……………………………………………..…………11

*Grondal v. Mill Bay Members Ass'n*
    No. 2:09-CV-18 RMP, 2020 WL 3892462
    (E.D. Wash. July 9, 2020)………………………………………………….….…20

*Grynberg v. Koch Gateway Pipeline Co.*
    390 F.3d 1276 (10th Cir. 2004)……………………………………………..7

ii

*Hecht Co. v. Bowles*
  321 U.S. 321 (1944)……………………………………..…………………………………22

*Huddleston v. John Christner Trucking, LLC*
  No. 17-CV-549-GKF-FHM, 2018 WL 6259220 (N.D. Okla. Nov. 30, 2018)……………8

*Jicarilla Apache Tribe v. Andrus*
  687 F.2d 1342 (10th Cir. 1982)…………………………………………….....9, 20, 21, 22

*Kamen v. Kemper Fin. Servs.*
  500 U.S. 90 (1991)…………………………..…………………………………………..10

*Lemon v. Kurtzman*
  411 U.S. 192 (1973)…………………….…………………………………………….22

*Mock v. T.G. & Y. Stores Co.*
  971 F.2d 522 (10th Cir. 1992)…………………………………………..………8

*O'Melveny & Myers v. F.D.I.C.*
  512 U.S. 79 (1994)………………………………………………………………10

*Oneida Indian Nation of New York v. County of Oneida*
  617 F.3d 114 (2nd Cir. 2010)……………………………………………….…17, 18

*Oneida Indian Nation of New York. v. New York*
  691 F.2d 1070 (2d Cir. 1982)………………………………………………...…18

*Oneida Indian Nation of New York v. New York*
  194 F. Supp. 2d 104 (N.D.N.Y. 2002)………………………….…………… 19, 20, 22

*Pace v. Swerdlow*
  519 F.3d 1067 (10th Cir. 2008)………………………………………………..…7

*Schafer, Trustee of Wane Penn Schafer Separate Property Trust v. Centerpoint Energy Okla. Gas*
  No. 17-CV-365-GKF-FHM, 2018 WL 10140171
  (N.D. Okla. May 21, 2018)………………………………………..……12, 19

*Seneca Nation of Indians, Tonawanda Bank of Seneca Indians v. New York*
  No. 93-CV-688A, 1994 WL 688262
  (W.D.N.Y. Oct. 28, 1994)……………………….…………………………….18

*United States v. Imperial Irrigation Dist.*
  799 F. Supp. 1052 (S.D. Cal. 1992)………………………………………….16, 22

iii

*United States v. Kimbell Foods, Inc.*
    440 U.S. 715 (1979)……………………….…...........................2, 10, 11, 12, 13, 15

*United States v. Milner*
    583 F.3d 1174 (9th Cir. 2009)…………………………………………...……13

*United States v. Osage Wind, LLC*
    871 F.3d 1078 (10th Cir. 2017)……………...……………………...……1, 2, 4, 5, 8, 16

*United States v. Turley*
    878 F.3d 953 (10th Cir. 2017)…………………………………………………...10

*Wilson v. Omaha Indian Tribe*
    442 U.S. 653 (1979)…………………………………………………….……...11, 12

*Weinberger v. Romero-Barcelo*
    456 U.S. 305 (1982)…………………………………………………………..21

## Statutes and Regulations

25 C.F.R. § 211 (2020)……………………………………………….*passim*

25 C.F.R. § 214 (2020)……………………………………………….*passim*

25 U.S.C. § 323 (1948)………………………………………………………..14

## Court Rules

Fed. R. Civ. P. 12…………………………………………………………..7, 8

Fed. R. Civ. P. 56…………………………………………………………...8

Defendants, Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC ("Enel Kansas"), and Enel Green Power North America, Inc. ("EGPNA") (collectively, "Defendants"), respectfully submit this Response to the Osage Minerals Council's ("OMC") Motion for Judgment on the Pleadings (Dkt. # 204) (the "Motion"). The Motion should be denied.

## INTRODUCTION

The Tenth Circuit Court of Appeals held that it was a violation of federal regulations for the applicable Defendants to have engaged in the "extraction, sorting, crushing, and use of minerals as part of its excavation work" without first obtaining a lease under 25 C.F.R. Part 214. *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1081-82 (10th Cir. 2017).[1] As the OMC recognizes in the Motion, the sole issue before the Court now is the measure of damages owed by Defendants. *See* Motion at 4; *see also* Dkt. # 138 ("The remaining issues in this case involve the relief due to the Osage Mineral Estate."). The Motion seeks judgment on five affirmative defenses, arguing they are inapplicable state-law based defenses.[2] The OMC contends Defendants' affirmative defenses of laches, estoppel, waiver, unclean hands, and *in pari delicto* "are not cognizable under federal law, but rather, sound in Oklahoma law alone." Motion at 1. The OMC seeks judgment on these affirmative defenses because the Osage Mineral Estate is "governed by federal law" and "[i]ncorporating Oklahoma-based affirmative defenses . . . would directly violate federal law and

---

[1] Defendants strongly disagree with the OMC's statement that it—and the Court—agree any trespass is ongoing. *See* Motion at 4.  For a more detailed explanation of why this is so, *see* Dkt. # 150, at 24-25; Dkt. # 159, at 8 n.11.

[2] The Motion declines to address this Court's Order that "Motions directed to the pleadings in this matter are concluded, and the court intends to expeditiously move this nearly six-year old case forward." Order, Dkt. # 162, at 7. The OMC filed the current motion over three months after Defendants restated the defenses, which had similarly been asserted in their answer to the United States' First Amended Complaint in 2019, in their answer to the Complaint in Intervention on July 28, 2020. Dkt. 174 at 15-16.

policy[.]" *Id.* at 2. The OMC's arguments substantively fail, and its Motion should be denied for three primary reasons.

*First*, while the Osage Mineral Estate is a trust asset governed by federal law, this Court may nevertheless borrow existing bodies of Oklahoma state law. In fact, federal courts presumptively borrow state law unless a need exists for federal uniformity or unless borrowing state law would frustrate "specific federal interests." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979). In this action, Defendants and the United States agree that no need for federal uniformity exists, because the federal regulations at issue only apply to the Osage Nation's mineral estate. *See* United States in its Motion to Compel Discovery, Dkt. # 175, at 12 n.3. Further, the OMC's generalized claims that borrowing Oklahoma law would harm tribal self-sufficiency are unconvincing, in light of the fact that state law has been oft borrowed by courts in analogous cases. It should also not be lost in this analysis that the OMC has previously advocated in this litigation borrowing Oklahoma law concepts when the OMC presumably believed Oklahoma law was favorable.

*Second*, the OMC's Motion ignores a line of directly applicable cases holding that certain affirmative defenses, while unavailable as to *liability* in Indian land claim cases, are available as to *remedies*. In this case, the Tenth Circuit has resolved the principal liability issues arising from the meaning of the federal regulations before it and only remedies issues remain.[3] *See* Dkt. # 138.

---

[3] While the Tenth Circuit certainly did decide that the entire "operation" of "*sort[ing]* the rocks, *crush[ing]* the rocks into smaller pieces, and then *exploit[ing]* the crushed rocks as structural support for each wind turbine" constituted mining and required a lease under Part 214 of Title 25 of the Code of Federal Regulations, *Osage Wind*, 871 F.3d at 1091, the Tenth Circuit did *not* decide any other issues of liability, including whether the Project's presence is tortious. For example, the Court specifically concluded that "merely encountering or incidentally disrupting mineral materials would not trigger § 211.3's definition." *Id.* Thus, to the extent that either Plaintiff is contending that the Tenth Circuit determined liability for any question other than the specific

To fashion any potential remedies, this Court is free to consider Defendants' equitable affirmative defenses, and the OMC's cited authority ruling out certain defenses as to liability is inapposite, since the Court is not considering any liability issue as to whether the Defendants' activities violate the federal regulations at issue.

*Third*, even if this Court decides not to borrow Oklahoma state law on the issue, Defendants' affirmative defenses remain viable. Because the OMC and the United States have sought equitable relief against Defendants, this Court's full equitable jurisdiction is in play. Numerous cases, including *City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197 (2005), have held that standards of federal equity practice—which necessarily include traditional, equitable defenses— can apply to bar or limit tribes' requests for relief. Accordingly, even if the OMC were able to rebut the presumption in favor of borrowing state law, its rebuttal would not *a fortiori* support dismissal of Defendants' affirmative defenses, because the defenses are equally cognizable under federal law.

## BACKGROUND

On September 30, 2015, Judge Payne granted summary judgment in favor of Defendants, and denied the United States' motion for partial summary judgment on two claims for declaratory judgment asserted by the United States: (1) a declaration regarding the applicability and violation of 25 C.F.R. part 211 as to Defendants' construction of the Osage Wind project (the "Project"); and (2) a declaration regarding the applicability and violation of 25 C.F.R. part 214 as to Defendants' construction of the Project. *See* Opinion & Order, Dkt. # 44. The Tenth Circuit reversed Judge Payne's grant of summary judgment, holding as follows:

---

operation found to be mining, *those* liability questions have not been decided in the Plaintiffs' favor.

> This case presents the question whether a large-scale excavation project—which involved the ***excavation, modification, and use*** of rock and soil during the installation of wind turbines—constituted "mining" under the pertinent federal regulations that address mineral development on Indian land. When an entity engages in "mining" of minerals owned by the Osage Nation, a federally approved lease must be obtained by the tribe. 25 C.F.R. § 214.7. The Bureau of Indian Affairs (BIA) has defined "mining" as the "science, technique, and business of mineral development[.]" 25 C.F.R. § 211.3. We hold that the term "mineral development" has a broad meaning. While it includes commercial mineral extractions and offsite relocations, which are not at issue here, it also encompasses ***action upon the extracted minerals*** for the purpose of exploiting the minerals themselves on site.

*Osage Wind*, 871 F.3d at 1081 (emphasis added). The Tenth Circuit rejected the assertion that

solely breaking the ground or the Project's mere presence was unlawful:

> **We agree with Osage Wind, however, that merely encountering or incidentally disrupting mineral materials would not trigger § 211.3's definition.** In other words, "the simple removal of dirt does not constitute mining." 53A Am. Jur. 2d Mines and Minerals § 14. There is simply no sense in which the word "mineral development" means only the removal of dirt without some further manipulation, commercialization, or offsite relocation of it. The problem here is that Osage Wind did not merely dig holes in the ground—it went further. It *sorted* the rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as structural support for each wind turbine. The ultimate question is whether ***this operation*** constitutes "mineral development" as we have conceptualized the term. We hold that it does.

*Id.* at 1091 (first and final emphasis added). In other words, it was *only because* Osage Wind had

"*sorted* the rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as

structural support for each wind turbine" that Osage Wind's activities constituted "mining." **The**

**Court did not find the mere presence of the Project to be unlawful, and it is not**.

The upshot of the Tenth Circuit's opinion was a reversal of Judge Payne's granting of

summary judgment for Defendants, *see id.* at 1081, and an effective granting of the United States'

Motion for Partial Summary Judgment as to Counts I and II of the United States' Amended

Complaint, Dkt. # 24. Crucially, for the purposes of this Response, the Tenth Circuit's opinion

was limited to Defendants' *liability* on Counts I and II of the United States' First Amended Complaint (seeking declaratory judgment as to the applicability and violation of 25 C.F.R. parts 211 and 214 as to Defendants' construction of the Project). *Id*. at 1084 ("on the merits, we determine that Osage Wind's excavation activities constituted 'mining' under § 211.3, so a federally approved lease was required under § 214.7."). The Tenth Circuit did not, and had no procedural basis to, address—much less decide—the appropriate *remedy* that would flow from its decision on liability as to whether the applicable regulations had been violated. *Id*. at 1093 (reversing and remanding for further proceedings); *see also* Motion at 4 ("[F]ollowing remand from the Tenth Circuit, the question that remains is one of remedy.").

The Tenth Circuit's Opinion also did not address the applicability of Defendants' affirmative defenses to the remaining remedies questions in this case—including, specifically, the remedy of ejectment (or any equivalent equitable remedy). The OMC suggests "the Tenth Circuit has already considered, and dismissed, Defendants' equitable affirmative defense of laches." Motion at 13 n.2. In truth, the Tenth Circuit did not paint with such a broad brush. The Tenth Circuit "decline[d] to dispose of the case on the equitable doctrine of laches" *Osage Wind*, 871 F.3d at 1087 n.6,—meaning the doctrine did not prevent declaratory relief on whether the Defendants' activities as described violated the applicable regulations—but it did not rule out laches as a defense on remedies questions. In fact, the Tenth Circuit could not have reached the applicability of laches as a remedies defense because the parties' summary judgment motions only presented issues of applicability of regulations governing the mineral estate to the construction of the Project. *See generally* United States' Motion for Partial Summary Judgment as to Counts I and II of the Amended Complaint, Dkt. # 24; Defendants' Motion to Dismiss or for Summary

Judgment and Opening Brief in Support, Dkt. # 26.[4] Since the Tenth Circuit could not have resolved issues not raised on appeal, Defendants' laches defense, and their other defenses, remain viable for this Court's consideration on the remaining remedial issues in this case.

Specifically, the affirmative defenses challenged in the OMC's Motion are laches, estoppel, waiver, unclean hands, and *in pari delicto*. Motion at 1; *see also* Defendants' Answer to Osage Minerals Council's First Amended Complaint in Intervention, Dkt. # 174, Defenses ¶¶ 2-4, 13, 16; Defendants' Answer to First Amended Complaint, Dkt. # 99, Defenses ¶¶ 2-4 (estoppel, laches, and waiver). Defendants first raised the affirmative defenses at issue in the OMC's Motion on December 31, 2019, as to the United States' First Amended Complaint, Dkt. # 99 at 12-13, and then in its Answer to the OMC's First Amended Complaint, Dkt. # 174 at 15-16. Defendants did not specify in their Answers to the United States' Complaints or the OMC's Complaints whether they raised these affirmative defenses under federal law or Oklahoma state law.

The five affirmative defenses challenged in the Motion are persuasively supported in fact, based on delay and fundamental inequity. The OMC, and the Osage Nation, have been fully informed Defendants' and their predecessors' construction plans, leading to their filing of litigation challenging alleged interference with the Osage Mineral Estate in 2011. In the testimony and exhibits in that previous litigation in this Court, the OMC learned the full field configuration of the Project and the expected dimensions of every foundation structure. *See* Plaintiff's Trial Exh. 14, and Defendants' Trial Exhs 1 and 26, *Osage Nation, acting through the Osage Minerals Council v. Wind Capital Group, LLC, Osage Wind, LLC, WC Investment Management, LLC,*

---

[4] The United States had recognized that "the central legal issue"—the applicability of the regulations at issue in its declaratory judgment claims—should be decided before anything else occurred in the case. (Dkt. # 34, at 3). Thus, whether laches applies to the equitable remedy of an injunction requiring removal of the Project was not before the Tenth Circuit, as it had not been decided by Judge Payne. or presented to either Court by any party

United States District Court for the Northern District of Oklahoma, Case No. 11-CV-643-GKF-PJC, attached as **Exhibit A** to this Response.[5] After losing that case and declining to prosecute an appeal, as Project planning progressed, while filing litigation in state courts challenging the Project on numerous grounds other than the mining regulations at issue, it took no action, in response to being advised on October 28, 2013 that the Project would "not sell or remove any minerals from the Project site." *See* Letter, David Boyce, CEO, Wind Capital Group, to Andrew Yates, October 28, 2013 to Andrew Yates, Chairman, Osage Minerals Council, Dkt. # 17-2, at 42. In fact, the OMC *never* responded to Defendants or their predecessors to clearly refute based upon existing legal authority (or analysis) that no lease or permit was required if the Project did not sell or remove minerals from the Project site, *at any time*, before the United States' filing of this suit. While the United States asserted a demand on October 9, 2014 (not accompanied by legal analysis of any kind) and followed up with further information on October 15, 2014, it likewise never responded, prior to filing suit, to detailed responses explaining why no lease or permit was required under the regulations the United States cited in its communications. *See* Email October 20, 2014, Lynn H. Slade to Alan Woodcock, Department of the Interior, and email October 21, 2014, Lynn H. Slade to BIA Superintendent Robin Phillips, and memorandum to each of them dated October 20, 2014, and subsequent emails to Mr. Woodcock dated October 22 and October 31, 2020. Dkt. # 28-1, at 5-28.

Simply put, the OMC and its trustee, knowing the substantial commitments of Defendants and their predecessors to the Project, declined to respond to repeated demonstrations no lease or

---

[5] Even in considering a Fed. R. Civ. P. 12(b)(6) motion, the Court may take judicial notice of documents contained in prior court files. *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (in deciding a motion to dismiss "[t]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record.").

permit was required and requests to be advised of any contrary view.[6] The Tenth Circuit noted that the Defendants' position was not unreasonable, *Osage Wind*, 871 F.3d at 1091 ("[i]t might be reasonable to adopt the construction favored by Osage Wind, which sets as the definitional boundary the commercialization of the minerals"), and indeed, Judge Payne had adopted it. The affirmative defenses challenged in the Motion primarily address the OMC's request for ejectment, based on the OMC's delay in seeking ejectment and a pattern of conduct that offends any notion of fair dealing, thereby precluding the punitive and financially devastating remedy of Project ejectment.

## ARGUMENT

### I.   GOVERNING STANDARD

The OMC incorrectly attempts to expand the burden on Defendants in responding to the Motion. The OMC relies on *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528-29 (10th Cir. 1992). *See* Motion at 3. The portion of *Mock* upon which the OMC relies, however, sets out the burden on a non-moving party in responding to a motion for summary judgment under FED. R. CIV. P. 56. In responding to the Motion filed under FED. R. CIV. P. 12(c), *Mock* provides the court accepts "all well-pleaded allegations in the complaint as true." 971 F.2d at 529. Defendants' burden is to demonstrate its affirmative defenses should not be dismissed as a matter of law. *See Huddleston v. John Christner Trucking, LLC*, No. 17-CV-549-GKF-FHM, 2018 WL 6259220, at *10 (N.D. Okla. Nov. 30, 2018) (denying Rule 12(c) motion because moving party did not establish state law

---

[6] Further, if more than just the crushing of rock—such as the subsurface presence of the turbine foundations, for example—was unlawful under any theory, then the United States, as trustee of the Osage Mineral Estate, should not have withdrawn its request for preliminary injunction, as it was not moot. *See* Dkt. # 19. Its doing so is demonstrative of the logical and legal infirmity of the position that the entire Project must be removed.

claims were preempted). Indeed, the OMC does not challenge any factual assertions in Defendants' answer, instead seeking dismissal of the challenged affirmative defenses as a matter of law.

## II.     WHETHER FEDERAL LAW OR BORROWED OKLAHOMA STATE LAW APPLIES TO THE DEFENDANTS' EQUITABLE DEFENSES, THE DEFENSES ARE EQUALLY VIABLE.

The primary issue raised in the OMC's Motion is whether federal law or Oklahoma law applies to Defendants' affirmative defenses of laches, estoppel, waiver, unclean hands, and *in pari delicto*. The OMC contends that federal law governs the entirety of this action because the object of its trespass claim—the Osage Mineral Estate—is a federal trust asset. *See* Motion at 3. Ignoring that Defendants previously have argued federal equitable principles bar the OMC's claims,[7] and claiming Defendants' affirmative defenses are solely creatures of state law, the OMC argues the "defenses must be dismissed as a matter of law." *Id*. at 2. There are several errors in the OMC's argument, but three flaws predominate. First, state law is presumptively incorporated into federal common law, and the OMC has not provided a sufficient rebuttal of that presumption. Second, precedential authority, including that cited by the OMC, provides that certain affirmative defenses are unavailable as to questions of liability, but not as to the questions of remedies that remain in this action. Third, even when federal law is applied to Defendants' affirmative defenses, the defenses remain viable because the OMC and the United States seek to invoke this Court's equity jurisdiction for the equitable remedy of ejectment, which "opens the door" to the assertion of equitable defenses under federal law.

### A.   State Law, Which Is Presumptively Incorporated in Federal Common Law, Applies to Defendants' Affirmative Defenses.

---

[7] *See* Defendants' Motion to Dismiss Osage Minerals Council's Complaint in Intervention, Dkt. # 150 at 20-21, *citing Jicarilla Apache Tribe v. Andrus,* 687 F.2d 1342 (10th Cir. 1982).

The Motion stresses that the Osage Mineral Estate is a "trust asset where title rests with or was derived from the Federal Government, and as a result, the OMC's trespass claim *is to be determined by federal law*." Motion at 5 (internal quotation marks and citation omitted) (emphasis in original). As the Supreme Court has noted, "knowing whether 'federal law governs' . . . does not much advance the ball," because federal law may borrow and incorporate state-law rules. *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 85 (1994). In fact, "there is a 'presumption that state law should be incorporated into federal common law.'" *United States v. Turley*, 878 F.3d 953, 956 (10th Cir. 2017) (quoting *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 98 (1991)); *see also California ex rel. State Lands Comm'n v. United States*, 457 U.S. 273, 283 (1982)[8] ("Controversies governed by federal law do not inevitably require resort to uniform federal rules. It may be determined as a matter of choice of law that, although federal law should govern a given question, state law should be borrowed and applied as the federal rule for deciding the substantive legal issue at hand." (citations omitted)); *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 971 (10th Cir. 2019) ("Generally, federal courts adopt state law even when the dispute is governed exclusively be federal [common] law." (internal quotation marks and citation omitted)). In determining whether to override the presumption in favor of borrowing state law rules, "federal courts should consider (1) 'whether application of state law would frustrate specific federal interests, (2) whether there is a 'need for a nationally uniform body of law,' and (3) other considerations such as whether 'application of a federal rule would disrupt commercial relationships predicated on state law.'" *Davilla*, 913 F.3d at 972 (quoting *Kimbell Foods*, 440 U.S. at 728). Here, the OMC has not provided a sound justification for this Court to depart from the

---

[8] Cited Motion at 6.

presumptive borrowing of Oklahoma state law, as the Tenth Circuit and the Supreme Court have frequently done in analogous circumstances.[9]

### i. Borrowing Oklahoma state law will not frustrate specific federal interests.

With respect to the first *Kimbell Foods* factor—the frustration of specific federal interests—the OMC argues that "Defendants' Oklahoma-based affirmative defenses" frustrate the federal government's interest in the management and administration of the Osage Mineral Estate. Motion at 12, 16. The OMC's argument is unconvincing, however, because the Motion fails to explain how specific federal interests will be frustrated if Defendants advance equitable affirmative defenses under Oklahoma state law, when the same equitable affirmative defenses are also available to Defendants under federal common law.[10] In other words, since courts applying both Oklahoma state law and federal common law will consider Defendants' equitable affirmative defenses, the OMC cannot convincingly assert that the federal government's interest in the management and administration of the Osage Mineral Estate will be frustrated if Defendants' defenses also sound in Oklahoma state law. The OMC's argument regarding the federal interest in promoting "tribal self-sufficiency and strong tribal government" is weakened by the fact that the Supreme Court has "borrowed state law in Indian cases before." *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 674 (1979).

---

[9] The Court has already relied upon Oklahoma law on the question of remedy. *See* Dkt. # 171 at 3 (citing *Dilworth v. Fortier*, 405 P.2d 38, 45 (Okla. 1964)). These principles of Oklahoma law were discussed in detail by this Court at the July 15 status conference and by Judge Jayne at the October 7, 2020 hearing on the parties' motions to compel without objection by the OMC or even suggestion that they were inapplicable for any reason.

[10] The availability of Defendants' equitable affirmative defenses under federal common law is explained more fully in Section II.C.

In *Wilson*, the Omaha Indian Tribe and the United States sued to quiet title to land affected by movements of the Missouri River on the Nebraska-Iowa border. *Id*. at 656; *id*. at 671 ("The issue here is whether the Tribe is no longer entitled to possession of an area that in the past was concededly part of the reservation as originally established. That question . . . is a matter for the federal law to decide."). Although "the Indians' right to the property depend[ed] on federal law," *Wilson* nevertheless applied the *Kimbell Foods* factors to hold that federal law would borrow an existing body of state law to resolve the quiet title dispute. *See id*. at 672-74; *see also Schafer, Tr. of Wane Penn Schafer Separate Prop. Tr. v. Centerpoint Energy Okla. Gas*, No. 17-CV-365-GKF-FHM, 2018 WL 10140171, at *5 (N.D. Okla. May 21, 2018) ("[W]here federal common law governs a cause of action for trespass on Indian land, state law may be borrowed and applied as the federal rule for deciding the substantive legal issue at hand."). *Wilson* highlighted that, under *Kimbell Foods*, federal law should only apply upon a showing of "concrete evidence that adopting state law would adversely affect [federal interests]." *Id*. at 673 (alteration in original). In addition, *Wilson* reasoned that borrowing state law was not necessarily injurious to tribal possessory interests:

> Furthermore, given equitable application of state law, there is little likelihood of injury to federal trust responsibilities or to tribal possessory interests. On some occasions, Indian tribes may lose some land because of the application of a particular state rule of accretion and avulsion, but it is as likely on other occasions that the tribe will stand to gain. The same would be the case under a federal rule, including the rule that the Court of Appeals announced in this case. The United States fears a hostile and unfavorable treatment at the hands of state law, but, as we have said, the legal issues are federal and the federal courts will have jurisdiction to hear them. Adequate means are thus available to insure fair treatment of tribal and federal interests.

*Id*. at 673-74. The OMC has failed to point to any *Wilson*-required "concrete evidence" that borrowing of state law would adversely affect specific federal interests. The OMC's generalized

pleas about harms to tribal self-sufficiency and strong tribal government do not overcome the presumption that federal law should borrow from existing bodies of state law.

*United States v. Milner*, which the OMC emphasizes, *see* Motion at 10-11, cites *Wilson* and acknowledges that "[c]ontroversies governed by federal law do not inevitably require resort to federal uniform rules" and it may be appropriate to borrow state law. 583 F.3d 1174, 1182 (9th Cir. 2009). In *Milner*, the United States, as trustee on behalf of the Lummi Nation, sued homeowners for common law trespass, and violation of the Rivers and Harbors Appropriation Act (RHA) and Clean Water Act (CWA). *Id*. at 1180. Stating that "federal common law governs an action for trespass on Indian lands," *Milner* held that the homeowners were liable for common law trespass. *Id*. at 1182, 1191. But *Milner* provides little assistance to the OMC's argument in favor of applying federal law as to remedies in this action. *Milner* stated that, based on its facts, it did not need to decide whether to apply federal law or borrow Washington state law. *Id*. at 1191 n.6 ("While it is clear that the federal common law of trespass applies here, it is less clear whether the common enemy doctrine . . . should be decided based on a uniform federal common law or borrowed Washington state law. . . . Nevertheless, we need not decide the issue, because we conclude that the common enemy doctrine is inapplicable regardless of whether [a Washington case] provides the federal rule of decision."). The OMC's misplaced reliance on *Milner* is emblematic of the main problem with its Motion. Knowing whether an action, such as an action for trespass on Indian lands, is governed by federal law is *not* dispositive, because federal courts *still* presumptively borrow state law in such actions, subject to the factors set out in *Kimbell Foods*.

        ii.     **There is no need for a nationally uniform body of law.**

With respect to the second *Kimbell Foods* factor—whether a nationally uniform body of law is needed—the OMC does not take a position in the Motion. In any event, because this factor

was determinative in *Davilla*, upon which both parties rely, Defendants will explain why a nationally uniform body of law is unnecessary to resolve the claims and defenses in this action.

In *Davilla*, the plaintiffs were roughly three-dozen individual Native American allottees who filed a trespass claim against a company ("Enable") that owned a natural gas pipeline crossing the allotted land. *Id*. at 962. The company originally had an easement for the pipeline with a term of twenty years, but it failed to renew the easement and continued to operate the pipeline after twenty years passed. *Id*. at 964. Importantly, at the outset of the easement, it was approved by the Secretary of the Interior, as required by 25 U.S.C. § 323. In deciding whether to apply federal equitable rules or borrow Oklahoma equitable rules, *Davilla* noted that a uniform national standard was necessary because "Congress provided a way for the Secretary of the Interior to approve easements 'over and across any lands . . . held in trust by the United States for individual Indians or Indian tribes[.]'" *Id*. (quoting 25 U.S.C. § 323). "This uniform standard is necessary because the Secretary has undoubtedly approved easements over and across Indian land in multiple states." *Id*. Without a uniform national standard, "an easement holder in Oklahoma and one in Kansas could be subject to differing permanent injunction standards despite both receiving an easement from the Secretary of the Interior pursuant to the same federal program." *Id*.

These concerns in *Davilla* that militated in favor of federal law are simply absent in this action, as explained by the United States in its Motion to Compel Discovery, Dkt. # 175: "The instant case does not, of course, implicate a nationwide system or concern for uniformity. The regulation that applied to the OMC and Defendants' obligation to secure a lease applied only to Osage County and cannot be applied to any other state or reserved mineral interest." Defendants and the United States are in agreement that "Oklahoma law may well provide the appropriate standard in this case." *Id*. The OMC has provided no sufficient justification to override the

14

presumption, stated in *Davilla* and *Kimbell Foods*, that federal law should borrow Oklahoma state law to fashion a remedy for Defendants not obtaining a lease or permit under 25 CFR § 214.7.[11]

### B. Equitable Affirmative Defenses Apply to Questions of Determining and Fashioning Remedies, Even In Cases Where They Are Unavailable on the Question of Liability.

The OMC argues that "[i]t is well-settled law that estoppel, laches, and other equitable defenses that may apply as a matter of state law are inconsistent with federal policy regarding enforcement of Indian possessory interests in land or trust assets where the United States serves as trustee." Motion at 8. In advancing this purportedly "well-settled" rule of law, the OMC misses a key distinction pronounced in the case law that distinguishes this matter from the cases cited in the Motion: Defendants' affirmative defenses can apply to bar or limit *remedies*, even if they are not applicable as to *liability*. Since only remedies questions are still pending in this litigation, the liability-remedies distinction drawn in the cases cited below is dispositive of the OMC's Motion.

In *Cayuga Indian Nation of New York v. Cuomo*, 771 F. Supp. 19 (N.D.N.Y. 1991) ("*Cayuga VI*"), the court granted a tribe's motion for partial summary judgment *on liability* in an action where the tribe sought a declaration of its ownership of a tract of land. Like the OMC here, the Cayugas relied upon *County of Oneida v. Oneida Indian Nation of New York*, 470 U.S. 226 (1985), to argue that "any and all defenses of the defendants, including their affirmative defense of laches, are insufficient as a matter of law to avoid liability," *id*. at 20-21. *Cayuga VI* held, in

---

[11] Inconsistently, the OMC's Opposition to Defendants' Motion to Strike Allegations in Osage Minerals Council's Complaint in Intervention, Dkt. #157, contended that Oklahoma law permitted it to pursue a "pattern" theory of proving Defendants' alleged bad faith conduct. *Id*. at 5-8, and it served written discovery responses stating its "position that federal common law and Oklahoma law permit the OMC to pursue equitable and monetary relief simultaneously as remedies for Defendants' unlawful conduct." Intervenor-Plaintiff Osage Minerals Council's Second Amended and Supplemental Responses and Objections to Defendants' First Interrogatories and Requests for Production (Supplemental Response to Interrogatory No. 12, at p. 4). *See* **Exhibit B**, attached to this Response**.**

accordance with *County of Oneida* and the Cayugas' argument, that "the defense of laches is unavailable to the defendants herein." *Cayuga VI*, 771 F. Supp. at 23. Importantly, however, at the subsequent remedies stage of the *Cayuga* litigation, the defendants moved *in limine* to bar ejectment as a remedy for the Cayugas, based on various equitable factors, including laches and the doctrine of unclean hands. *See Cayuga Indian Nation of N.Y. v. Cuomo*, Nos. 80-CV-930, 80-CV-960, 1999 WL 509442, at *3 (N.D.N.Y. July 1, 1999) ("*Cayuga X*"). *Cayuga X*'s analysis was guided by the Restatement (Second) of Torts' equitable factors for determining the appropriateness of an injunction against a trespass:

> (1) The nature of the interest to be protected;
> (2) The relative adequacy of injunctive and other remedies available to the plaintiff;
> (3) *Any unreasonable delay of the plaintiff in initiation the action*;
> (4) *Any related misconduct on the part of the plaintiff*;
> (5) The relative hardship of the parties if the injunction is granted or denied;
> (6) The interests of third parties and the public; and
> (7) The practicability of framing and enforcing the injunction.

*Cayuga X*, 1999 WL 509442, at *19 (citing *United States v. Imperial Irrigation Dist.*, 799 F. Supp. 1052, 1068 (S.D. Cal. 1992)) (emphasis added). Two of these factors considered in the remedies phase of *Cayuga X*—factors (3) and (4) above—are akin to Defendants' defenses of laches, unclean hands, and *in pari delicto*. Thus, under *Cayuga X*, the Court should consider Defendants' equitable affirmative defenses in the ongoing remedies phase of this case, even if, as in *Cayuga VI*, such defenses may not have been available on issues of liability.[12]

---

[12] As discussed above, the Tenth Circuit's footnoted statement, "We decline to dispose of the case on the equitable doctrine of laches," *Osage Wind*, 871 F.3d at 1087 n.6, could only have pertained to the applicability of the doctrine to the requested declaratory judgment on the merits of regulation interpretation. It does not suggest equitable defenses not apply to determining and fashioning appropriate remedies.

After *Cayuga VI* and *Cayuga X* were decided, the Supreme Court decided *City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197 (2005), which, according to the Second Circuit, "dramatically altered the legal landscape" regarding Indian land claims. *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 273 (2nd Cir. 2005) ("*Pataki*"). In *City of Sherrill*, the land at issue was set aside as a reservation in the late 18th century, then sold off by the tribe, before being reacquired by members of the tribe in the 1990s. 544 U.S. at 202. The Court held the tribe could not revive its ancient sovereignty over the subject land, because "standards of federal Indian law and federal equity practice preclude the Tribe from rekindling embers of sovereignty that long ago grew cold." *Id*. at 214 (internal quotation marks omitted). The Second Circuit in *Pataki* interpreted *City of Sherrill* to stand for the proposition that "these equitable defenses [such as laches, acquiescence, and impossibility] apply to 'disruptive' Indian land claims more generally." 413 F.3d at 274. "Disruptive" claims are those which have "disruptiveness . . . inherent in the claim itself," such as those asking the court to overturn years of settled land ownership. *See id.* at 275. Much like the present action, *Pataki* involved applicability of equitable defenses, specifically with regard to the ejectment remedy sought, also in issue here. *Pataki* held that the tribe's claim for ejectment was barred by laches, because "after *Sherrill*, equitable defenses apply to possessory land claims… ." *Id.* at 276. And, just five years after *City of Sherrill* and *Pataki*, *Oneida Indian Nation of New York v. County of Oneida*, bolstered these two earlier cases, stating, "[a]lthough the United States is traditionally not subject to delay-based equitable defenses under most circumstances…[*Pataki*] expressly concluded that the United States *is* subject to such defenses

under certain circumstances…(*i.e.*, a lengthy delay in asserting the relevant cause of action…)." 617 F.3d 114, 129 (2nd. Cir. 2010) (emphasis original).[13]

OMC's citations to C*anadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York*, 278 F. Supp. 2d 313, 342 (N.D.N.Y. 2003), Motion at 6-7, do not survive analysis under the liability versus remedy distinction and *City of Sherrill*. In *Canadian St. Regis*, the court granted the tribe's motion to strike the laches defense *as to liability*, but denied it "to the extent that defense can be read as pertaining to remedies." *Id.* at 333, 363. The court drew the same distinction as to estoppel. *Id.* at 340, 363. *Canadian St. Regis,* decided prior to *City of Sherrill*, relied on the district court and Second Circuit opinions in *City of Sherrill*, discounting "the possibility (and a meager one at that) of a change in law" on review, *id.* at 331, then relied on the, subsequently reversed, district court opinion in *City of Sherrill* in rejecting the State's waiver and unclean hands defenses. *Id.* at 338, 342. *Canadian St. Regis* provides no guidance in this remedial phase of the case.

The OMC's Motion relies on other cases pre-dating *City of Sherrill* in which courts held that affirmative defenses were unavailable *as to liability. See, e.g.*, *County of Oneida*, 470 U.S. at 241, 253 n.27 (holding that state-law based defenses are preempted in possessory claims, but "express[ing] no opinion" on "whether equitable considerations should limit the relief available"); *Seneca Nation of Indians, Tonawanda Bank of Seneca Indians v. New York*, No. 93-CV-688A, 1994 WL 688262, at *1 (W.D.N.Y. Oct. 28, 1994) (relying on *County of Oneida* to grant a motion to strike affirmative defenses); *Cayuga Indian Nation of N.Y. v. Cuomo*, 565 F. Supp. 1297, 1301

---

[13] The OMC cited *Cato v. U.S.*, 70 F.3d 1103, 1108 (9th Cir. 1995), for the proposition that "a suit by the United States as trustee on behalf of an Indian Tribe is not subject to state delay-based defenses." Motion at 6. *Cato* was merely describing a party's citation to *Oneida Indian Nation of N.Y. v. New York*, 691 F.2d 1070, 1083–84 (2d Cir. 1982), and *Cato* rejected the application of *Oneida* to the question in that case (whether the United States could be sued for damages caused by slavery). *Cato*, 70 F.3d at 1108. *Cato* is simply inapplicable here.

(N.D.N.Y. 1983) ("*Cayuga II*") (holding that affirmative defenses "based upon state law such as adverse possession, statutes of limitation, laches, or estoppel by sale are unavailable," before *Cayuga X* barred ejectment based on equitable considerations). These cases do not contradict *Cayuga X*'s holding that equitable affirmative defenses are relevant to the determining and fashioning of remedies, even if they are unavailable as defenses to liability.

      *Schafer*, oft-discussed in this litigation, warrants further discussion here. In *Schafer*, the defendant, CenterPoint Energy Oklahoma Gas ("CenterPoint"), operated a natural gas pipeline that crossed property held in the plaintiff's ("Schafer") trust. 2018 WL 10140171, at *2. Schafer inherited the property from his father, who was an original allottee under the Osage Allotment Act. *Id*. Because CenterPoint did not have a written easement for the pipeline to cross the property, Schafer brought claims for trespass, nuisance, and unjust enrichment against CenterPoint. *Id*. at *1. CenterPoint asserted the affirmative defenses of waiver, estoppel, laches, unclean hands, and statute of limitation. *Id*. at *8. Schafer filed a "motion for partial summary judgment **on liability**," arguing that CenterPoint's "affirmative defenses do not apply under federal common law." *Id*. (emphasis added). The Court, relying on *Oneida Indian Nation of New York v. New York*, 194 F. Supp. 2d 104, 122-126 (N.D.N.Y. 2002), granted a partial summary judgment motion on CenterPoint's affirmative defenses with respect to the portion of Schafer's claim arising under federal common law. *Id*. *Schafer*, which does not purport to make a sweeping declaration that affirmative defenses are unavailable as to liability *and* remedies, is consistent with the authorities presented herein that draw the liability-remedies distinction. In fact, the primary case *Schafer* relied upon, *Oneida Indian Nation of New York*, held, qualifiedly, that certain equitable affirmative defenses were "unavailable to Defendants, *at least for purposes of determining Defendants' liability*." 194 F. Supp. 2d at 122 (emphasis added).

The OMC's reliance on *Grondal v. Mill Bay Members Ass'n*, No. 2:09-CV-18 RMP, 2020 WL 3892462 (E.D. Wash. July 9, 2020), also is misplaced because *Grondal* relies upon the same inapposite, pre-*City of Sherrill* authority as the OMC. *Grondal*, which granted a tribe's request for ejectment despite the assertion of equitable affirmative defenses, cited *County of Oneida* for the proposition that "state-law based defenses to possessory claims, such as estoppel and laches, are similarly preempted." *Id*. at *26. As discussed herein, *County of Oneida* specifically "express[ed] no opinion" as to "whether equitable considerations should limit the relief available" to the Oneida Indians. 470 U.S. at 241 n.27. *Cayuga X* and *City of Sherrill*, which were decided after *County of Oneida*, altered the analysis about the applicability of equitable affirmative defenses in possessory claims. *See City of Sherril*, 544 U.S. at 214 (applying "federal equity practice" in possessory land claim); *Cayuga X*, 1999 WL 509442, at *3 (barring ejectment as a remedy to the Cayugas based on equitable considerations, including laches and doctrine of unclean hands). Accordingly, this Court should assign minimal—if any—weight to the holding of *Grondal*, which is the subject of a pending appeal. *Grondal v. United States*, No. 20-35694 (9th Cir. Aug. 10, 2020).

## C.  *Dismissal of Defendants' Affirmative Defenses Also Is Unwarranted Under Federal Law.*

The result would be no different if this Court were to conclude that federal law applies to Defendants' affirmative defenses. The defenses would still be viable. By seeking equitable relief in this action, the OMC has invoked the full equitable jurisdiction of this Court, including its ability to consider the availability of equitable defenses.

*Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1342 (10th Cir. 1982), is instructive as to federal courts' consideration of equitable affirmative defenses when equitable relief is sought in an action affecting trust resources. In *Jicarilla Apache Tribe*, a tribe sued to cancel numerous oil and gas leases, and the district court held the Bureau of Indian Affairs ("BIA") had violated leasing

regulations in its conduct of a lease sale and violated the National Environmental Policy Act ("NEPA") by not preparing an Environmental Impact Statement ("EIS").[14] The district court declined to cancel the leases, instead ordering adjusted bonus to be paid, and held the doctrines of laches and unclean hands barred the NEPA claim for an order requiring preparation of an EIS. *See Jicarilla Apache Tribe v. Andrus*, 546 F. Supp. 569, 583 (D.N.M. 1980).The Tenth Circuit affirmed this holding, concluding that "the district judge did not err in holding that the Tribe's NEPA claim was barred by the laches and unclean hand doctrines." *See id.* at 1340. In so holding, the court stated,

> The equitable nature of this suit is of paramount importance. When Congress leaves to the federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights. If Congress had intended to make a drastic departure from the traditions of equity practice, an unequivocal statement of that purpose would have been made. An appeal to the equity jurisdiction of the federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity. We should not lightly assume that Congress has intended to depart from established (equitable) principles.

*Id.* at 1330 (citations omitted).

*Jicarilla Apache Tribe*, in turn, relied on cases establishing the principle that entry of federal equitable relief is never mandatory, but remains grounded in flexible principles, *citing Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."); and *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30, (1944)

---

[14] Recognizing the applicability of federal law to equitable defenses, though deeming it inapplicable to the case in its posture on appeal, the Tenth Circuit cited *Jicarilla Apache Tribe v. Andrus* in its footnote rejecting Defendant's alternative ground for affirmance under the laches defense. 871 F.3d at 1087 n.6. Laches and other equitable defenses apply fully here because the equitable issues concern only remedies, including requests for ejectment.

("The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims."). To the same effect, *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) counsels "[i]n equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests . . . ." The Motion fails to support its claim this Court is compelled to ignore *Jicarilla Apache Tribe* and this authority, must decline to utilize the totality of its equitable jurisdiction, and should foreclose Defendants from the opportunity to present evidence supporting their equitable defenses.

Numerous federal courts have allowed equitable defenses in cases involving tribes' claims pertaining to lands or resources. *See, e.g.*, *City of Sherrill*, 544 U.S. at 213-14 (holding "standards of federal Indian law and federal equity practice" barred a tribe from reviving its sovereignty over land it sold and later reacquired); *Oneida Indian Nation of N.Y. State v. Cty. of Oneida, N.Y.*, 199 F.R.D. 61, 91 (N.D.N.Y. 2000) (holding "standards of federal Indian law and federal equity practice" along with "reasons of fairness and equity" barred a tribe from seeking ejectment as a remedy in a land claim action); *Imperial Irrigation Dist.*, 799 F. Supp. at 1068 (considering equitable factors in declining a tribe's request for injunctive relief, noting "there is precedent for applying equitable factors and thereby limiting relief otherwise available for Indian claims"); *Cayuga Indian Nation of N.Y. v. Cuomo*, Nos. 80-cv-930, 80-cv-960, 1999 WL 509442, at *19-29 (N.D.N.Y. July 1, 1999) (applying the *Imperial Irrigation* equitable factors to deny a tribe's request for ejectment). Based on these authorities, Defendants' affirmative defenses of laches,

estoppel, waiver, doctrine of unclean hands, and *in pari delicto* remain viable in this case, even if Oklahoma state law is not borrowed for the remaining remedies questions.

## CONCLUSION

The OMC's Motion fails to establish any reason for the Court to dismiss Defendants' affirmative defenses of laches, estoppel, waiver, unclean hands, and *in pari delicto*. The Motion should be denied in full.

Respectfully submitted,

/s/ Ryan A. Ray

**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH CHANDLER
JETER BARNETT & RAY, P.C.**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade
Sarah M. Stevenson
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.**
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2020, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
David McCullough
Jeffrey S. Rasmussen

The following non-ECF registrants have been served by email:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


*/s/ Ryan A. Ray*
Ryan A. Ray