# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| (2) OSAGE MINERALS COUNCIL, | ) | Case No. l4-CV-704-GKF-JFJ |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (1) OSAGE WIND, LLC; | ) | |
| (2) ENEL KANSAS, LLC; and | ) | |
| (3) ENEL GREEN POWER | ) | |
| NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**INTERVENOR PLAINTIFF OSAGE MINERALS COUNCIL'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Intervenor-Plaintiff Osage Minerals Council ("the OMC") submits this reply brief in support of its motion seeking judgment on the pleadings ("Motion") with regard to certain affirmative defenses asserted by Defendants Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC ("Enel Kansas") and Enel Green Power North America, Inc. ("EGPNA" and collectively "Defendants").

## I.  INTRODUCTION

Under the Tenth Circuit's decision in *Davilla*, as well as this Court's decision in *Schafer*, state law affirmative defenses cannot be incorporated when doing so would violate federal policy interests concerning Indian trust assets. As discussed in greater detail below and in the OMC's Motion (Dkt. 204), numerous federal courts have concluded that it violates federal policy to deny an Indian beneficiary recovery for trespass on an Indian trust asset. This is especially true here, where Congress has created a unique congressional framework that governs the administration of the Osage Mineral Estate. Under *Davilla* and this Court's decision in *Schafer*, Defendants' Oklahoma-based affirmative defenses of estoppel, laches, waiver, doctrine of unclean hands, and *in pari delicto* should be dismissed as a matter of law.

## II.  BACKGROUND

It is first necessary to address a few of the inaccuracies and misrepresentations in Defendants' Response to the OMC's Motion. First, it is clear that the Tenth Circuit has dismissed Defendants' affirmative defense of laches. *See United States v. Osage Wind, LLC*, 871 F.3d 1078, 1087 (10th Cir. 2017). Defendants, however, state that "[t]he Tenth Circuit did not, and had no procedural basis to, address—much less decide—the appropriate *remedy* that would flow from its decision on liability[,]" and thus the Tenth Circuit "did not rule out laches as a defense on remedies questions." Defs.' Response to Osage Minerals Council's Mot. J. Pleadings, Dkt. 205 ("Response") at 5 (emphasis in original). Defendants' statement that the Tenth Circuit

1

did not opine on remedies is in direct conflict with the position they have consistently taken since losing in the Tenth Circuit in three years ago. *See, e.g.,* Dkt. 161 at 9; Dkt. 116 at 18, 20–23; Dkt. 118 at 4, 16–18; Dkt. 120 at 6; Dkt. 134 at 1–2; Dkt 150 at 13 (asserting that the Tenth Circuit adjudicated remedies and concluded the OMC cannot recover equitable remedies and is instead limited "to money damages for volumes of minerals removed by actions constituting 'mining' as defined by the Opinion.").

Next, Defendants insist that the OMC's Motion should be denied because "the OMC and its trustee . . . declined to respond to repeated demonstrations no lease or permit was required and requests to be advised of any contrary view." Response at 7–8. This assertion, however, is not relevant to the analysis this Court will undertake pursuant to *Davilla*—wherein the Court must consider whether incorporating Oklahoma-based affirmative defenses will undermine federal interests related to Congress's creation of the Osage Mineral Estate. The fact that Defendants believe they are likely to succeed on the merits of their defense does not establish that the defense will not contradict the federal interests at play. *See Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 967 (10th Cir. 2019). Defendants have offered no rhyme or reason as to how incorporating Oklahoma-based affirmative defenses would *not* undermine these important federal interests, and even if they could, their characterization of the facts is false.[1]

---

[1] Although the Court need not consider any of the exhibits cited by the parties to grant the OMC's Motion, it is not true to say that Defendants were not "advised of any contrary view" from October 2013 until November 2014. *See, e.g.,* Dkt. 183-4 at 3 (communication from September 2014 showing that EGPNA knew its subcontractor "was contacted today by Ray Whiteshield of the Bureau of Indian Affairs" who asked if EGPNA had "filed for a permit with the minerals council for [EGPNA's] crushing operation . . . ."); Dkt. 195, Ex. 2 at 27, OSAGE WIND PRIV-000362 (Defendants' privilege log entry detailing a November 19, 2013 "email to counsel and manager reporting on *discussion with Charles Hurlburt of BIA*") (emphasis added); *id.* at 6, OSAGE WIND PRIV-000092-93 (Defendants' privilege log entry detailing a September 30, 2014 email "reporting to counsel and others regarding use of rocks to fill in the holes for turbine foundations and *contact with BIA re: same*") (emphasis added); *id.* at 30, OSAGE WIND PRIV-000591-597 (Defendants' privilege log entry, dated October 13, 2014, detailing the "forwarding [of] emails . . . concerning communications with counsel for Department of Interior"). Defendants were repeatedly informed of contrary views. They chose not to listen.

2

The fact remains that the Defendants trespassed on an Indian trust asset without getting the lease required by federal law. Under those circumstances, federal law requires dismissal of Defendants' asserted state-law affirmative defenses.[2]

### III.  ARGUMENT

#### A. Allowing Defendants To Incorporate State Law Affirmative Defenses Will Violate Federal Interests Governing the Osage Mineral Estate

Defendants brazenly state that the OMC's "Motion fails to explain how specific federal interests will be frustrated if Defendants advance equitable affirmative defenses under Oklahoma state law." Response at 11. But even a cursory review of the OMC's Motion reveals this not the case. As the OMC's Motion thoroughly explains, the Osage Mineral Estate is an Indian trust asset. Dkt. 204 at 5–6. Defendants do not dispute this. And as the OMC's Motion explains, Defendants have trespassed on this Indian trust asset. Dkt. 204 at 4. Defendants do not dispute this. The OMC's Motion further explains that the Osage Mineral Estate was created by congressional statute (*id.* at 11) and Congress has explicitly detailed the federal policy interests the United States maintains in administering this trust, as Trustee, for the benefit of the OMC, the trust beneficiary. Dkt. 204 at 16; *see also Osage Tribe of Indians of Okla. v. United States*, 81 Fed. Cl. 340, 345 (2008) (The Osage Nation is "the beneficiary of the Osage mineral estate and

---

[2] Defendants claim that "[t]he Court has already relied upon Oklahoma law on the question of remedy." Response at 11, n.9 (citing Dkt. No. 171 at 3). This is not true. It is clear from both the order and hearing transcript that this Court cited *Dilworth v. Fortier*, 405 P.2d 38 (Okla. 1964) regarding its potential impact on *damages*, not the availability of remedies generally. *See* Dkt. 171 at 3. Defendants also assert that the Court has previously discussed the application of Oklahoma law without any objection from the parties. *See* Response at 11, n. 9. The OMC's Motion, however, is not the first time the Court has heard the claim that state-based affirmative defenses are precluded in this action. *See e.g.,* Dkt. 198 at 32:15–41:8 and 43:7–10 (discussing the import of *Schafer, Tr. of Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v. Centerpoint Energy Oklahoma Gas*, No. 17-CV-365-GKF-FHM, 2018 WL 10140171, (N.D. Okla. May 21, 2018); Dkt. 198 at 52:3–10 (discussing *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959 (10th Cir. 2019)).

3

tribal trust fund account created by the 1906 [Osage Allotment] Act.") ("1906 Act"). Defendants do not dispute the creation of the 1906 Act.

The federal policy interests are clear: Congress intended for mining to take place on the Estate "in such quantities and at such times as may be deemed for the *best interest of the Osage Tribe of Indians*." Act of Mar. 2, 1929, Pub. L. No. 70-919, 45 Stat. 1478, 1479 (emphasis added). Congress has passed multiple amendments specifically addressing the Osage Mineral Estate over the last 114 years, and repeatedly declined to incorporate Oklahoma law into the provisions governing the Osage Mineral Estate. *See, e.g.*, *id.*; Act of Oct. 21, 1978, Pub. L. No. 95-496, § 2(a), 92 Stat. 1660, 1660. Even when amending the Osage Allotment Act of 1906 to incorporate "the laws of the State of Oklahoma" following statehood, Congress was specific about when and how Oklahoma laws should apply. *See* Act of Apr. 18, 1912, Pub. L. No. 62-125, § 3, 37 Stat. 86, 86; Act of Mar. 13, 1921, § 5, 41 Stat. 1249. Congress has never provided for Oklahoma's defenses of laches, unclean hands, estoppel, or any others to bar the Osage Nation or the OMC from recovery for trespass on the Osage Mineral Estate.

Defendants offer no response. Defendants have no evidence or argument to support their position that incorporating their asserted Oklahoma-based affirmative defenses will serve "the best interest of the Osage Tribe of Indians," as Congress has directed. *Id.* Instead, it is clear that Defendants' proffered affirmative defenses "rely on the principle that a party's conduct can validate Indian land transactions even if those transactions were not approved by the United States," and for that reason, they directly contradict the federal policy interests at stake and must be dismissed. *Schafer, Tr. of Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v. Centerpoint Energy Oklahoma Gas*, No. 17-CV-365-GKF-FHM, 2018 WL 10140171, *8 (N.D. Okla. May 21, 2018).

With no policy to support their position, Defendants instead turn to convoluted characterizations of authority that, when thoroughly examined, only support the OMC's Motion. For instance, Defendants claim that "the Supreme Court has 'borrowed state law in Indian cases before.'" Response at 11 (quoting *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 674 (1979)). This is a colorful mischaracterization of *Wilson*, as the Supreme Court in *Wilson* borrowed state law with regard to the rightful *possession* of riparian land following avulsion and accretion—an entirely different issue than trespass on an Indian trust asset where the question of actual possession is not in question. *See Wilson,* 442 U.S. at 653. Notably, *Wilson* did not address a congressional statute that placed the asset or land at issue in trust for the Tribal Nation who brought suit. *See id.* at 656. By contrast, in this case, Congress has passed a statute that explicitly places the Osage Mineral Estate in trust for the benefit of the Osage Nation, not Defendants or their corporate interests. *See* Osage Allotment Act, Pub. L. No. 62-125, 34 Stat. 539 (1906). The fact that the *Wilson* Court concluded federal interests would not be compromised, in that litigation, is far from dispositive here.[3]

Finally, Defendants make no attempt to argue that *Davilla* does not control here. As the OMC's Motion makes clear, in *Davilla*, the Tenth Circuit concluded that state law affirmative defenses could not excuse the defendant's trespass on an Indian trust asset because "Congress has dictated the prerequisites of a right to enter by statute[,]" and thus, the defendant "ha[d] no legal right to keep a structure on the [Indian lands at issue] unless and until it secure[d] a right-

---

[3] In an attempt to distract from the relevant matters at hand, Defendants point out that *Milner* "cites *Wilson*," and then claim that the OMC's reliance on *Milner* is "misplaced" because "federal courts still presumptively borrow state law in such actions, subject to the factors set out in *Kimbell Foods*." Response at 13. Any reliance on *Milner* is neither here nor there, since both *Davilla* and *Kimbell Foods* support the conclusion that state law affirmative defenses cannot be incorporated where doing so would violate the clear federal interests Congress has identified in creating the Osage Mineral Estate. *Davilla*, 913 F.3d at 967 ("[F]ederal courts should only incorporate state rule of decision into federal claims to the extent those rules are consistent with federal law and policy.").

of-way for that purpose from the Secretary of the Interior." *Davilla*, 913 F.3d at 967. The same is true here. Congress has made clear that a prerequisite to mining the Osage Mineral Estate is obtaining a lease from both the United States and the OMC. Despite numerous communications telling them they should, Defendants chose not to.

Allowing Defendants to use these Oklahoma-based affirmative defenses would incentivize other bad actors to violate the clear federal framework Congress put in place *now*, and then argue Oklahoma-based affirmative defenses *later*, after they have violated federal law. Under *Davilla*'s guiding precedent, this undoubtedly constitutes frustration of federal interests and compels the granting of the OMC's Motion.[4]

### B. Defendants' Liability/Remedy Distinction Is a False Dichotomy

Next, Defendants aver that their "affirmative defenses can apply to bar or limit *remedies*, even if they are not applicable as to *liability*." Response at 15 (emphasis in original). This is beside the point. Under *Davilla*, if Defendants' state-based affirmative defenses violate federal interests—and they do—then they cannot be incorporated. End of story. And under *Davilla*, there is a presumption *against* incorporating state law defenses in the context of *remedies* because "State law cannot define the remedies which a federal court must give" concerning trespass on an Indian trust asset. *Davilla,* 913 F.3d at 972 (citation omitted). Accordingly, "the practice of borrowing state rules of decision *does not apply* with equal force to determining appropriate remedies." *Id.* at 973 (emphasis added). On this, Defendants are wrong.

---

[4] Defendants claim that the OMC's Motion must be denied because the OMC previously relied on Oklahoma law in opposition to Defendants' Motion to Strike. *See* Response at 15, n. 11. Here Defendants miss the forest for the trees. *Davilla* does not preclude the incorporation of Oklahoma law wholesale; instead, *Davilla* only precludes the incorporation of Oklahoma where it violates federal interests. Thus, the OMC is not arguing that Oklahoma law has *no* role to play in this litigation; the OMC is merely moving to exclude the state-based affirmative defenses that, if incorporated, would undermine the federal interests at play in the administration of the Osage Mineral Estate.

Defendants, however, go out of their way to argue that under *Cayuga Indian Nation of New York v. Cuomo* and *City of Sherrill v. Oneida Indian Nation*, state law should bar the OMC from obtaining an adequate remedy for Defendants' trespass on the Osage Mineral Estate. *See* Response at 15–19 (discussing, respectively, 771 F. Supp. 19 (N.D.N.Y. 1991) and 544 U.S. 197 (2005)). Neither *Cayuga Indian Nation* nor *City of Sherill*, however, are applicable, as they relate to claims of possession for lands that fell out of tribal possession hundreds of years ago. For instance, the dispute in *City of Sherrill* related to lands that "were last possessed by the Oneidas as a tribal entity in 1805." 544 U.S. at 202. And in *Cayuga Indian Nation*, the Tribe sought "an award of fair rental value for the almost two hundred years during which they have been out of possession of the subject land." 771 F. Supp. at 20. In these cases, the Supreme Court has allowed for stated-based equitable affirmative defenses in instances where the Tribe "long ago relinquished the reins of government" to property in dispute. *City of Sherill*, 544 U.S. at 203.

That is not the case here. The OMC has *never* relinquished the "reins of government" over the Osage Mineral Estate. And in the 114 years since Congress passed the 1906 Act, no part of the Mineral Estate has ever fallen out of trust; instead, Congress has repeatedly acted to preserve the Mineral Estate in trust for the Osage Nation. *See, e.g.,* Act of Mar. 2, 1929, Pub. L. No. 70-919, 45 Stat. 1478, 1479; Act of Oct. 21, 1978, Pub. L. No. 95-496, § 2(a), 92 Stat. 1660, 1660. Whereas the *City of Sherrill* Court concluded that "two centuries of New York's exercise of regulatory jurisdiction" compelled the incorporation of a state-based laches defense against the Tribe's land claim, *City of Sherrill*, 544 U.S. at 216, here there has not been a single year of Oklahoma regulatory jurisdiction over the Osage Mineral Estate, let alone two hundred. The OMC need not "revive [its] ancient [tribal] sovereignty over the subject land . . . [or] rekindle[e] embers of sovereignty that long ago grew cold." Response at 17 (quoting *City of Sherrill*, 544

7

U.S. at 214). The OMC's sovereignty over the Osage Mineral Estate is not "ancient." It has not grown cold. It has remained a reality for 114 years straight, a reality that Defendants cannot use state law to erase.[5]

Furthermore, Defendants assert that this Court in *Schafer* adhered to Defendants' liability/remedy distinction, and thus did not adjudicate the question of remedies. *See* Response at 19 (citing *Schafer,* 2018 WL 10140171). Of course, just seven months ago, Defendants told this Court that *Schafer did* address remedies, claiming that *Schafer* held that "trespass provided an adequate *remedy* at law that precluded [the OMC's] claim for disgorgement." Dkt. 150 at 24. Defendants' contradictory statements are not the product of an earnest analysis of the relevant precedents and authorities in this case; instead, they constitute a pattern of mischaracterizations of this Court's and the Tenth Circuit's holdings.[6]

### C. *Kimbell Foods* and *Davilla* Do Not Require the Demonstration of a Need for Uniformity Where Incorporation of State Law Frustrates Federal Interests

Finally, Defendants assert that "the second *Kimbell* Foods factor[,] whether a nationally uniform body of law is needed[,] . . . was determinative in *Davilla*," and therefore, the OMC's motion must be dismissed for failure to demonstrate the need for uniformity with regard to the Osage Mineral Estate's administration across the entire United States. *See* Response at 13–14. On this, Defendants are decidedly wrong.

---

[5] Furthermore, *City of Sherrill* and *Cayuga Indian Nation* are based on violations of the Non-Intercourse Act, which has no application here. *See* Pub. L. No. 1-33, § 4, 1 Stat. 137, 138 (1970). Defendants violated the 1906 Act in the fall of 2014, and the United States filed suit within months, not two hundred years as was the case in *City of Sherrill* and *Cayuga Indian Nation*.

[6] Defendants likewise attempt to cast aspersions on *Grondal v. Mill Bay Members Ass'n*, claiming that "*Grondal* relies upon the same inapposite, pre-*City of Sherrill* authority as the OMC." Response at 20 (citing, No. 2:09-CV-18 RMP, 2020 WL 3892462 (E.D. Wash. July 9, 2020)). Defendants, again, are wrong. *Grondal*, like *Davilla*, deals with an expired lease on Indian trust property that remained in the possession of the Tribal Nation in the case. *Grondall*, 2020 WL 3892462 at *2–3. Nothing in *City of Sherrill* affects the District Court's analysis in *Grondal* as the Confederated Tribes of the Colville Reservation was not attempting to resurrect land claims from two hundred years ago. *See id.*

8

The Supreme Court's decision in *Kimbell Foods* makes clear that the two relevant factors—whether the incorporation of state law conflicts with federal interests and/or whether there is a need for uniformity—each, individually, preclude the application of state law to claims that sound in federal law. More specifically, the Supreme Court has instructed lower courts that conflicts with federal interests are to be considered separate and "*[a]part from* considerations of uniformity," and thus even where there is no need for uniformity, federal courts "must also determine whether application of state law would frustrate specific objectives of the federal programs." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979) (emphasis added). If the incorporation of state law would frustrate those objectives, then the Court "must fashion special rules solicitous of those federal interests," regardless of a need for uniformity. *Id.*

Defendants then argue that the "concerns in *Davilla* that militated in favor of federal law are simply absent in this action." Response at 14. A simple review of the decision, however reveals that the concerns in *Davilla* are very much present here. First, the Tenth Circuit noted that state law could not be incorporated to govern the presence of "a pipeline over Indian allotted land [because] Congress has dictated the prerequisites of a right to enter *by statute*." *Davilla*, 913 F.3d at 967 (emphasis added). Likewise, here, "Congress severed the Osage mineral estate in Osage County from the surface estate," *Osage Wind, LLC,* 871 F.3d at 1082, and consequently, the presence of Defendants' wind farm is governed by a statute, specifically, the 1906 Act.

In *Davilla*, the Tenth Circuit was concerned that the defendant "ha[d] no legal right to keep a structure on the [Indian lands at issue] unless and until it secure[d] a right-of-way for that purpose from the Secretary of the Interior." *Davilla*, 913 F.3d at 967. Likewise, here, Defendants have no right to continue their ongoing trespass without the approval of the Bureau of Indian Affairs (and the OMC). *Osage Wind, LLC*, 871 F.3d at 1093 ("Osage Wind was required to

9

procure a lease" from the United States and the OMC). And finally, the *Davilla* Court noted that it could not incorporate state law because doing so would "effectively rob[] Indian allottees and the government of meaningful control over alienation." *Davilla*, 913 F.3d at 967–68. Likewise, here, the incorporation of Oklahoma's affirmative defenses would effectively rob the OMC and the federal government of meaningful control over the taking of an Indian trust asset: the Osage Mineral Estate. Defendants' attempt to divorce the present case from *Davilla* fails.

Finally, the Tenth Circuit's decision in *Jicarilla Apache Tribe v. Andrus* in no way supports Defendants' assertion that equitable relief is an available defense to the OMC's claims in this litigation. *See* Response at 20–21 (citing 687 F.2d 1342 (10th Cir. 1982)). The 1906 Act "creates a trust fund for the Tribe and obliges the United States to hold mineral royalties in trust" for the Tribe. *Osage Nation v. United States*, 57 Fed. Cl. 392, 395 (2003). In contrast, the National Environmental Protection Act ("NEPA"), the law at issue in *Andrus*, creates no Indian trust asset and evinces no federal interests implicating the United States's duties to the OMC as Trustee. While "the defense of laches is available in environmental litigation," *Andrus*, 687 F.2d at 1337, this is not environmental litigation. This is litigation to protect an Indian trust asset, and thus, the state-based affirmative defense of laches is unavailable. *See Schafer*, 2018 WL 10140171 at *8 (dismissing state law affirmative defense of laches in the context of trespass on an Indian trust asset because laches relies "on the principle that a party's conduct can validate Indian land transactions even if those transactions were not approved by the United States.").

### IV.  CONCLUSION

For the aforementioned reasons, the OMC's Motion for Judgment on the Pleadings, Dkt. 204, should be granted.

Respectfully submitted,

s/ Mary Kathryn Nagle
Mary Kathryn Nagle, OBA No. 33712
Wilson Pipestem, OBA No. 16877
Abi Fain, OBA No. 31370
Pipestem Law, P.C.
320 S. Boston Ave., #1705
Tulsa, Oklahoma 74103
918-936-4705 (Office)
wkpipestem@pipestemlaw.com
mknagle@pipestemlaw.com
afain@pipestemlaw.com
*Counsel for Intervenor-Plaintiff*
*Osage Minerals Council*

## CERTIFICATE OF SERVICE

      I hereby certify that on December 18, 2020, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Ryan A. Ray<br>Joel L. Wohlgemuth<br>rar@nwcjlaw.com<br>jlw@nwcjlaw.com<br><br>-and-<br><br>Lynn H. Slade<br>Sarah S. Stevenson<br>Deana M. Bennett<br>Spencer L. Edelman<br>lynn.slade@modrall.com<br>sarah.stevenson@modrall.com<br>deana.bennett@modrall.com<br>spencer.edelman@modrall.com<br>*Counsel for Defendants* | David McCullough<br>dmccullough@dsda.com<br><br>Jeffrey S. Rasmussen<br>jrasmussen@ndnlaw.com<br><br>-and-<br><br>Wilson Pipestem<br>Mary Kathryn Nagle<br>Abi L. Fain<br>afain@pipestemlaw.com<br>mknagle@pipestemlaw.com<br>wkpipestem@pipestemlaw.com<br>*Counsel for Intervenor-Plaintiff,*<br>*Osage Minerals Council* |

Cathryn Dawn McClanahan
cathy.mcclanahan@usdoj.gov

*Counsel for Plaintiff, United States*

                                                    /s/ Mary Kathryn Nagle