IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| v. | ) | |
| | ) | |
| OSAGE WIND, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Before the Court are outstanding issues presented by United States' Motion to Compel Discovery (ECF No. 175) and Intervenor Plaintiff Osage Minerals Council's Motion to Compel Production of Documents (ECF No. 183).

I.    Background

By Opinion and Order dated January 16, 2021 ("1/16/21 Order") (ECF No. 210), the Court held that Defendants waived privilege for all challenged entries on the FAPL "concerning the limited subject matter of the 'at issue' detailed legal analysis and advice relied on by Defendants – namely, analysis and advice regarding whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations." ECF No. 210 at 17.[1]  The Court explained the waiver "does not extend to all privileged entries that may be relevant to subjective good faith; the waiver extends to the legal analysis and advice placed at issue." *Id.*  The Court compelled production of documents where the FAPL provided adequate information for the Court to conclude the documents fell within the scope of the waiver.  *Id.* at 18.  The Court

---

[1] This Order incorporates the 1/16/21 Order by reference and uses the same abbreviated terms defined therein.

compelled both attorney-client communications and work product falling within the scope of the waiver. *See id.* at 17 & n. 8, 9.

The Court ordered in camera submission of the remaining documents for the purpose of determining: (1) whether they fall within the scope of the waiver; and (2) if not, whether they qualify for any of the privileges asserted by Defendants on the FAPL.  Defendants submitted the documents in camera by the required deadline, including a numbered index.[2]

## II.     Legal Standards

For the reasons explained in the 1/16/21 Order, the Court applies federal privilege law in this federal question action.  *See* ECF No. 210 at 8 & n.5.  For most challenged entries remaining at issue, Defendants assert both the attorney-client privilege and work product doctrine.  For some challenged entries remaining at issue, Defendants also assert the "common interest rule."

### A.     Attorney-Client Privilege

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law," and "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (internal quotations omitted).  "The privilege serves the client's need for legal advice, but it also serves the attorney's need to receive complete information in order to give the proper advice." *Id.* "[A] critical component of the privilege is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in

---

[2] Based on a good-faith interpretation of the Court's Opinion and Order, Defendants determined that Osage Wind Priv 89 and 363-365 fell within the scope of the waiver.  Defendants also determined that Osage Wind 555-578 and 464-574 were not privileged.  Defendants will produce these documents along with other documents compelled by the 1/16/20 Order and this Order.

confidence." *Id.* (internal quotation omitted).  Generally, the attorney-client privilege and other privileges should be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (internal quotations omitted).  Further, although the protection shields privileged communications, it does not protect the underlying facts contained within those communications. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981).

A lawyer's mere involvement in a communication does not render the communication privileged. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010).  Instead, the communication must be related to legal strategy or advice sought by the client. *Id.  See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 674 (D. Kan. 2005) (stating that a communication "must be a confidential communication involving the requesting or giving of legal advice" to be protected).  The privilege extends to the client's communications with in-house counsel as well as outside attorneys, but the privilege "does not apply where the legal advice is merely incidental to business advice." *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 674.  Instead, "[l]egal advice must predominate for the communication to be protected." *Id.* at 675.

### B.    Work Product Doctrine

"At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).  "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995).

The work product doctrine is governed by Federal Rule of Civil Procedure 26(b)(3)(A). The rule provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, or agent)." Fed. R. Civ. P. 26(b)(3)(A). But work product materials may be discovered if: (1) they are otherwise discoverable under Rule 26(b)(1), *i.e.*, relevant and proportional to the needs of the case; and (2) "the requesting party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i) and (ii). If the Court orders discovery of protected work product, it still must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* Therefore, Rule 26(b)(3)'s protections draw a distinction between (1) "ordinary work product," which is discoverable upon a showing of need and undue hardship; and (2) "opinion work product," which "receives heightened or special protection." *Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 393 (N.D. Okla. 2010).

"Establishing work-product protection often depends on a showing that there was a reasonable threat of litigation and that the motivation for creating the document in question was that threat." *Accounting Principals, Inc. v. Manpower, Inc.*, No. 07-CV-636-TCK-PJC, 2009 WL 2252123, at *4 (N.D. Okla. July 28, 2009). Although litigation need not be imminent for a document to be protected, the primary motivation for creating the document must be to aid in future litigation. *See id.* In making this determination, a "key inquiry" is whether the document would have been created regardless of whether litigation was threatened or imminent. *Id.* Where the document is prepared by a non-lawyer, a relevant consideration is whether the non-lawyer consulted with attorneys in its preparation. *Id.* If documents are generated or assembled in the

ordinary course of business or for other non-litigation purposes, they are generally discoverable. *See Lindley*, 267 F.R.D. at 394.

### C.    Common Interest Doctrine

"The common-interest doctrine is an exception to [privilege] waiver that may protect information and documents shared outside of the attorney-client relationship." *Lawson v. Spirit AeroSystems, Inc.*, 410 F. Supp. 3d 1195, 1209 (D. Kan. 2019).  The doctrine "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party." *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 705 (10th Cir. 1998); *see also In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006) (explaining that common interest rule applies where the "disclosure advances the representation of the party and the attorney's preparation of the case").

To benefit from the common interest rule, the party asserting privilege generally must show: "(1) the documents were made in the course of a joint-defense effort; and (2) the documents were designed to further that effort." *In re Grand Jury Proceedings*, 156 F.3d 1038, 1042-43 (10th Cir. 1998).  Courts have explained that "no written agreement is required," and that an agreement "may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation." *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012).  Further, there need not be formal litigation in progress for the common interest doctrine to take effect.  *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989) (stating that "it is . . . unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply").  *See generally* Restatement (Third) Of The Law Governing Lawyers, § 76 (2000) (explaining that rule "permits persons who have common interests to coordinate their positions

without destroying the privileged status of their communications with their lawyers" and that it "relaxes the requirement of confidentiality . . . by widening circle of persons to whom client may disclose privileged communications").

III.   **Analysis**

    A.   **Global Rulings**

        1.   **Work Product - Other Actual or Threatened Litigation Regarding the Project**

Dating at least back to 2011, the Project was the subject of various actual and threatened litigation regarding the Project in federal court, state court, and before administrative agencies. Beauregard Declaration, ECF No. 186-1 at ¶¶ 15-24 and attached legal documents.  Defendants Osage Wind and the Enel Legal Department were involved in defending litigation challenging the Project, brought by OMC or the Osage Nation, throughout 2013 and 2014.  *Id.* at ¶ 25.

The Court finds that work-product protection extends to documents created in anticipation of any litigation regarding the Project during relevant times, not just the instant litigation. Therefore, Defendants may assert privilege for work product related to this specific litigation or other types of legal challenges to the Project, regardless of whether that litigation has terminated. *See Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (explaining that "[a] majority of courts have held that the [work product] privilege endures after termination of the proceedings for which the documents were created, especially if the old and new matters are related"); *In re Grand Jury Subpoena Dated November 8, 1979*, 622 F.2d 933, 935 (6th Cir. 1980) ("The privilege extends necessarily to the work product compiled in previous, terminated litigation.").  This ruling applies to Index # 8, 10, 11, 12.[3]

---

[3] The Court makes no finding as to whether Defendants anticipated the instant litigation at the time of these communications in 2013.  Such a finding is not necessary for the Court's privilege rulings, and Defendants do not assert any privilege on that basis.

2.   **Legal Advice/Work Product - Prior Owners of Osage Wind (Common Interest Rule)**[4]

The Enel Legal Department possesses materials provided to it by TradeWind and WCG, prior owners of Osage Wind.  Beauregard Declaration, ECF No. 186-1 at ¶ 5 (explaining that Enel Legal Department had records "related to Osage Wind, including records provided by the prior owners of Osage Wind - [WCG] and [TradeWind]"); *see also* ¶¶ 6-10 (describing Osage Wind ownership history as WCG (2008 to 8/22/13); TradeWind (8/22/13 to 9/17/14); Enel Kansas (9/17/14 to present).[5]   Under the operative agreements of transfer, "both WCG and TradeWind had duties to work with the new owner(s) of Osage Wind to provide necessary information and cooperate to facilitate the Project."  *Id.* at ¶ 12.  Part of that cooperation included "the provision of legal information and legal advice from outside counsel to TradeWind and Osage Wind, Steve Willman and Darren Neil, and the General Counsel to WCG and Osage Wind, George Knapp." *Id.* at ¶ 13.  This information and legal advice was shared with "EGPNA and Enel Kansas with the understanding and expectation that it remained privileged and confidential."  *Id.* at ¶ 13.

Beauregard also explained that, in deciding whether to acquire Osage Wind, the Enel Legal Department engaged outside counsel, "including outside counsel that had previously been advising WCG, TradeWind, and Osage Wind on similar issues." ECF No. 186-1 at ¶¶ 26-28.  "In particular outside counsel for Osage Wind and TradeWind, including Steve Willman and Darren Neil [of Douthit firm] and Lynn Slade, Bill Scott, Walter Stern, and Sarah Stevenson [of Modrall Sperling] were frequently consulted throughout 2013 and 2014 to provide legal advice and actual and

---

[4] Plaintiffs did not address the "common interest" doctrine in their reply briefs, and this issue was not extensively briefed by either party.  The Court offers the following factual basis and explanation for its application.

[5] EGPNA was a party to the purchase agreement whereby Enel Kansas acquired TradeWind's interest in Osage Wind.  ECF No. 186-1 at ¶ 10.

7

potential litigation strategy regarding all matters associated with the Project." *Id.* ¶ 27.[6] Further, members of the Enel Legal Department "were involved in communications throughout 2014 related to the Project for the purposes of providing legal advice and actual and potential litigation strategy themselves regarding all matters associated with the Project, and to interface with outside counsel." *Id.* at ¶ 28.

Considering the overall circumstances surrounding Osage Wind and its ownership history, the Court finds that the common interest rule applies to permit Defendants to assert privilege and avoid any disclosure waiver. Osage Wind was always the entity that would own the Project. Legal advice and related communications/work product given to prior owners of Osage Wind remains privileged in this litigation. Further, the Project was subject to various legal challenges during relevant times, and the Enel Legal Department and EGPNA shared common legal interests in defending all challenges to the Project at relevant times. Based on these facts, the Court agrees with Defendants that they "had an identical interest in defeating these efforts and sharing information generated prior to the acquisitions by TradeWind and Enel Kansas of Osage Wind's membership interests (as all were contractually bound to do)." ECF No. 186 at 22-23. Defendants have adequately shown that certain privileged materials addressed below were made in the course of "joint defense efforts" between relevant entities in defending the Project. *See In re Grand Jury Proceedings*, 156 F.3d at 1043.[7] Defendants have also shown they came into possession of certain privileged materials, either at the time of their creation or upon acquisition of Osage Wind, based

---

[6] The Third Amended Privilege Log states that Modrall Sperling was retained by TradeWind "with respect to disputes with Osage Nation" on or around August 5, 2013. *See* ECF No. 175-1 at 108. TradeWind acquired Osage Wind on August 22, 2013.

[7] Defendants have not presented evidence of a formal "joint defense agreement" between the entities during this time frame. But as explained above, it is not necessary that there be a formal agreement or formal litigation in progress for the doctrine to take effect. *Gonzalez*, 669 F.3d at 979; *Schwimmer,* 892 F.2d at 244.

on their fully aligned legal interests in defending the Project and ensuring its compliance with legal and regulatory requirements.  Disclosure to Enel Kansas/EGPNA did not increase the likelihood of disclosure to Plaintiffs or other potential adversaries.  Therefore, so long as the underlying documents are themselves privileged, the Court concludes that: (1) Defendants may assert privilege for these documents in their possession; and (2) Defendants' receipt of the documents does not result in waiver.  The Court's ruling on the common interest rule applies to Index # 8, 9, 10, 11, 12, 13, and 16.

### B. Specific Rulings

For each entry, the Court addresses: (1) whether the documents fall within the scope of the "at issue" waiver; and (2) if not, whether they qualify as privileged.

### OSAGE WIND PRIV 1-25, 26-44 (Index # 1, 2)[8]

Waiver – The content of the spreadsheets does not pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.[9]

Privilege – Beauregard represented the Enel Legal Department utilized these spreadsheets to facilitate legal advice between attorneys and designated business people, to decide terms to be included in agreements for the Project, and how to implement those terms once decided.  *See* ECF No. 186-1 at ¶ 29.  She further stated they were kept "strictly confidential within the company" and not shared with counterparts to the agreements.  *Id.*  This is consistent with the Court's review. These spreadsheets are internal, confidential documents used for the primary purpose of obtaining legal advice during contract negotiations with IEA.

---

[8] These numbers refer to the index provided to the Court with the in-camera submission.

[9] Some content of the spreadsheets did not print properly and was illegible.  Based on the rest of the content, it is unlikely any content falls within the scope of the waiver.  If there is content that pertains to the legal advice placed at issue, Defendants are ordered to produce it in good faith.

<u>Ruling</u> – Documents may be withheld.

## **OSAGE WIND PRIV 54-58, 66-70 (Index # 3, 4)**

<u>Waiver</u> – No portion of these memos pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.

<u>Privilege</u> – These are identical memos from Slade (Osage Wind-EGPNA outside counsel)[10] to Champagne (Defendants' General Counsel) dated November 18, 2014, providing legal advice regarding jurisdiction of Osage tribal court over Osage Wind. The memos are privileged attorney-client communications and attorney work product.

<u>Ruling</u> – Documents may be withheld.

## **OSAGE WIND PRIV 108-110 (Index # 6)**

<u>Waiver</u> – The questions and answers in these email communications do not pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.

<u>Privilege</u> – This email string is not fully described on the FAPL. This is an email string forwarded by non-lawyer Price (EGPNA employee) to Tierney (Defendants' in-house counsel) on October 17, 2014, with attachments, which were not submitted for review. The forward is a privileged attorney-client communication between Price and in-house counsel, as Tierney had requested the information for the purpose of giving legal advice. The other forwarded emails are described on the FAPL. They are communications between Tierney and Scott (Osage Wind-EGPNA outside counsel) on October 16, 2014. Scott requested information from EGPNA employees regarding

---

[10] For ease of reference, the Court refers to Slade and Scott (of the Modrall Sperling firm) as Osage Wind outside counsel throughout the Order. If Modrall Sperling was retained by TradeWind at the time of the alleged communication/creation of work product, the Court refers to the client as Osage Wind-TradeWind. If the firm was retained by Enel Kansas/EGPNA, the Court refers to the client as Osage Wind-EGPNA. Based on the Courts rulings on the common interest between EGPNA and TradeWind, the precise retention dates are not crucial to any of the Court's privilege rulings.

status and costs associated with halting the Project. The emails constitute privileged attorney-client communications, made for the purpose of allowing outside counsel to provide legal advice sought by the client.

Ruling – Documents may be withheld.

**OSAGE WIND PRIV 111 (Index #5)**

Waiver – The content of these hand-written notes by Moskluk (EGPNA employee), which consists of cost calculations, do not pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.

Privilege – The notes do not qualify for the attorney-client privilege. The notes are referenced in the email exchange described above (Osage Wind Priv 108-110), and the calculations in the notes correspond with information provided to Scott in the email communication. But there is no indication the notes themselves were attached to the email or otherwise transmitted to counsel in the form of a communication.

The notes do qualify as ordinary work product. Defendants have shown: (1) they reasonably anticipated the instant litigation at least by October 16, 2014;[11] (2) the notes were created in response to Scott's inquiry on or around October 16, 2014; (3) the primary purpose for creating the notes was to assist counsel in formulating legal strategies and advice related to anticipated litigation; and (4) Moskaluk did not create the notes in the ordinary course of business and would not have had reason to create the notes but for Scotts' request. Plaintiffs have not shown that they are "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). The content, which consists of factual cost

---

[11] Defendants argue they reasonably anticipated this litigation at least by September 2014, when the Bureau of Indian Affairs conducted a site visit to the Project. This lawsuit was filed about one month after the above-described request from Scott. Defendants have made an adequate showing they reasonably anticipated litigation by the date of creation of the notes.

information, is discoverable through other means, such as the deposition testimony of Moskaluk. Plaintiffs have not shown this deponent is unavailable or that they will otherwise be unable to obtain these facts without undue hardship.

Ruling – The notes may be withheld.

**OSAGE WIND PRIV 382-393 (Index #7)**

Waiver – The email communications and attachment do not pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.

Privilege – The email communications dated August 7, 2013, are from Slade (Osage Wind-TradeWind outside counsel), to Neil (Osage Wind-TradeWind outside counsel), and between Neil and TradeWind employees. They are for the purpose of facilitating advice of counsel as to specific issues related to the Project. The emails qualify as privileged attorney-client communications made for the purpose of facilitating legal advice from outside counsel to TradeWind. The common interest rule applies.

The attachment is a signed, submitted application to the Fish and Wildlife Service and is not privileged.

Ruling – This set of documents shall be produced in limited form, with everything redacted except: (1) the to, from, and date lines of the emails; and (2) the attachment.

**OSAGE WIND PRIV 694-696 (Index # 8)**

Waiver – The content of this email communication and attached memo do not pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations. A portion of the memo from Slade generally inquires about the location of the Project and the potential need for "federal approval," but the Court finds the inquiry by outside counsel too general to fall within the scope of the waiver.

Privilege – This email communication and memo dated August 8, 2013, from Slade (Osage Wind-TradeWind outside counsel) to Neil (Osage Wind-TradeWind outside counsel) requests specific information from TradeWind for purposes of a due diligence analysis regarding the Project.  This is a privileged communication made for the purpose of facilitating the giving of legal advice to TradeWind by Slade.  The memo attachment also qualifies as attorney work product by Slade. The common interest rule applies.[12]

Ruling – Documents may be withheld.

## OSAGE WIND PRIV 575 (Index # 9)

Waiver – This email communication does not pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.

Privilege – This email communication dated August 12, 2013, from Slade (Osage Wind-TradeWind outside counsel) to Willman (Osage Wind-TradeWind outside counsel).  This is a privileged communication made for the purpose of facilitating the giving of legal advice to TradeWind by Slade.  The common interest rule applies.

Ruling – Document may be withheld.

## OSAGE WIND PRIV 682-693 (Index # 10)

Waiver – This email communication and attached memo do not pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.  Although there is some discussion in the memo of potential claims related to the "mineral estate," the analysis relates only to oil and gas production.  Although there is some discussion of "regulatory/licensing claims," there is no discussion related to "mining," related to

---

[12] These are communications between co-counsel for Osage Wind-TradeWind.  Privilege may attach to inter-attorney communications that include "legal advice or confidential information received from the client."  *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 481 (E.D. Pa. 2005).

the specific federal regulations at issue in this litigation, or related to the legal advice and analysis placed at issue by Defendants.

Privilege – This consists of a transmittal email communication dated August 14, 2013, from Scott (Osage Wind-TradeWind outside counsel) to Neil (Osage Wind-TradeWind outside counsel). It attaches a memo from Slade and Scott to Neil dated August 14, 2013, regarding Osage Nation's potential claims to block the Project. These documents are privileged legal advice from outside counsel to TradeWind and attorney work product. The common interest rule applies.

Ruling – The documents may be withheld from production.

**OSAGE WIND PRIV 453-459, 662-667 (Index #11, 12)**

Waiver – This email communication and attached memo do not pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations. Although there is some discussion in the memo of potential "regulatory/licensing claims," there is no discussion related to "mining," related to the specific federal regulations at issue in this litigation, or related to the legal advice and analysis placed at issue by Defendants.

Privilege – Number 11 consists of a transmittal email dated September 17, 2013, from Slade (Osage Wind-TradeWind outside counsel), to Jennifer Dean (TradeWind non-lawyer),[13] Joan Heredia (EGPNA non-lawyer), Craig (Osage Wind-TradeWind outside counsel); and Scott (Osage Wind-TradeWind outside counsel). It attaches a legal memo to Dean and Craig from Slade and Scott dated September 10, 2013. Number 12 consists of a transmittal email dated September 23, 2013, from Slade to the same recipients as #11. It attaches a legal memo to Dean and Craig from Slade and Scott dated September 23, 2013. These documents are privileged legal advice from

---

[13] Dean is listed by Beauregard as a EGPNA employee. ECF No. 186-1 at ¶ 31. Dean has a TradeWind email address at the time of this communication, and she appears to be a TradeWind employee at the time of this communication.

outside counsel to TradeWind and EGPNA, and attorney work product of TradeWind's outside counsel.  The common interest rule applies.[14]

<u>Ruling</u> – Documents may be withheld from production.

## OSAGE WIND PRIV 443-436 (Index # 13)

<u>Waiver</u> – Although the "subject" lines reference matters within the scope of the waiver, the content of the emails does not actually pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.

<u>Privilege</u> – This is an email from Neil (Osage Wind-TradeWind outside counsel) to Slade and Scott (Osage Wind-Trade outside counsel), dated October 13, 2013, requesting advice on an attached draft common interest agreement between WCG/Osage Wind and TradeWind.  The draft for which comments are sought was sent to TradeWind by Knapp (WCG's General Counsel).  This is a privileged communication made for the purpose of facilitating the giving of legal advice to TradeWind by Slade and Scott.  The common interest rule applies.

<u>Ruling</u> – The documents may be withheld.

## OSAGE WIND PRIV 363-365 (Index #14)

<u>Waiver</u> – The email communication and draft letter directly pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.   These documents shall be produced in their entirety.

## OSAGE WIND PRIV 585 (Index #15)

<u>Waiver</u> – This email communication pertains to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.  This document shall be produced in its entirety.

---

[14] The common interest rule is not asserted on the FAPL for #12.  This appears to be a mistake, as # 11 and 12 are identical in sender/recipients and content.

**OSAGE WIND PRIV 463 (Index # 16)**

<u>Waiver</u> – This email does not pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.

<u>Privilege</u> – This email communication from Neil (Osage Wind-TradeWind outside counsel) to Slade and Scott (Osage Wind-TradeWind outside counsel), Worten (outside counsel for TradeWind and Defendants), Ray, and Wohlgemuth (outside counsel for Defendants), dated May 7, 2014, is a privileged communication forwarding materials between various retained counsel for the Project.  The common interest rule applies.

<u>Ruling</u> – The document may be withheld from production.

**OSAGE WIND PRIV 674-678 (Index # 17)**

<u>Waiver</u> – Portions of this email string, which were drafted by Joan Heredia in response to Slade's request for information, pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations and must be produced.

<u>Privilege</u> – This is a lengthy string of email communications, dated November 20 and 21, 2014, originated by Slade (Osage Wind-EGPNA outside counsel) to Defendants' employees and TradeWind employees requesting factual information for the purpose of providing legal advice regarding litigation.  It qualifies as a privileged attorney-client communication.

<u>Ruling</u> – This set of documents shall be produced in limited form, with everything redacted except: (1) the to, from, and date lines of the emails; and (2) the content of Heredia's response beginning "Steve (and Lynn)" on the bottom of 674 and ending with "under construction" on the next page.

**OSAGE WIND PRIV 367-377 (Index #18)**

<u>Waiver</u> – This email communication does not pertain to the issue of whether excavation for the Project constitutes mining and therefore required a lease or permit under the relevant regulations.

16

Privilege – This email communication between Defendants' outside counsel, Ray and Slade, dated November 21, 2014, regarding the Complaint filed in this case qualifies as a privileged communication between counsel made for the purpose of defending litigation. The email attaches the publicly filed Complaint printed from CM/ECF, without any attorney comments on the document, which is not privileged.

Ruling – This set of documents shall be produced in limited form, with everything redacted excerpt: (1) the to, from, and date lines of the emails; and (2) the attachment.

## IV. Conclusion

The Court Orders as follows:

1.      As to all outstanding issues in United States' Motion to Compel Discovery (ECF No. 175), the motion is GRANTED in part and DENIED in part as set forth in this Order.

2.      As to all outstanding issues in Intervenor Plaintiff Osage Minerals Council's Motion to Compel Production of Documents (ECF No. 183), the motion is GRANTED in part and DENIED in part as set forth in this Order.

3.      Defendants shall produce the documents compelled by this Order and the 1/16/21 Order no later than sixteen days from the date of this Order.

4.      Any party may file an objection to this Order and/or the 1/16/21 Order pursuant to Federal Rule of Civil Procedure 72(a) within fourteen days of the date of this Order.

5.      Defendants' production obligation will be stayed pending resolution of any objection that is filed, unless any party seeks other relief.

**SO ORDERED** this 13th day of February, 2021.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**