**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| THE OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' PARTIAL OBJECTIONS TO MAGISTRATE JUDGE'S
OPINIONS AND ORDERS [Dkt. #210 and #214]**

| | |
|---|---|
| Ryan A. Ray, OBA #22281<br>NORMAN WOHLGEMUTH CHANDLER<br>JETER BARNETT & RAY, P.C.<br>3200 Mid-Continent Tower<br>401 South Boston Avenue<br>Tulsa, OK 74103<br>918-583-7571<br>918-584-7846 (facsimile) | Lynn H. Slade, *admitted pro hac vice*<br>Sarah M. Stevenson, *admitted pro hac vice*<br>MODRALL, SPERLING, ROEHL,<br>HARRIS & SISK, P.A.<br>Post Office Box 2168<br>Albuquerque, NM 87103-2168<br>505-848-1800<br>505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: March 8, 2021**

**Table of Contents**

Table of Authorities…………………………………………...…………………………………iii

I.     BACKGROUND ………………………………………………...……………...…………1

II.    LEGAL STANDARD…………………………………………...……………………………4

III.   LEGAL ARGUMENT…………………………………...……………………………………5

      A.   *The authorities relied on in the January Order do not support the conclusion that the analysis conducted for claims of permanent injunction and ejectment are forward-looking only.* ……………………………………………….…………………5

      B.   *Additional precedent demonstrates the error in the January Order's ruling.* ………8

      C.   *The Affirmative Defense Order did not make any rulings on the evidence that will be considered in the balancing of equities on the United States' and the OMC's claims for relief.* ……………………………………...…………………………………11

      D.   *The January Order misinterprets the Affirmative Defense Order and Federal law applicable to fashioning remedies, including as to injuries to Native American trust lands.* ……………………………………...…………………………………14

      E.   *If Defendants' objections to the January Order are overruled, the Court must apply the "forward-looking ruling to evidence that may be presented by any party.* …………18

IV.   CONCLUSION…………………………………………………………………...18

ii

**Table of Authorities**

**Cases**

*Allred v. Chynoweth*
    990 F.2d 527 (10th Cir. 1993) …………………………………...…….....……13

*Amoco Prod. Co. v. Vill. of Gambell, AK*
    480 U.S. 531 (1987) …………………………………………...…………………6

*Carman v. Fox Film Corp.*
    269 F. 928 (2d Cir. 1920) …………………………………………………………12

*Cayuga Indian Nation of N.Y. v. Cuomo*
    Nos. 80-CV-930, 80-CV-960, 1999 WL 509442
    N.D.N.Y. July 1, 1999 ……………………………………….....……………16

*Cayuga Indian Nation of New York v. Cuomo*
    771 F.Supp. 19 (N.D.N.Y. 1991) …………………………………..…….....……16

*Davilla v. Enable Midstream Partners L.P.*
    913 F.3d 959 (10th Cir. 2019)……………………………..…....… ……………1, 5, 18

*De Punta Mita v. Rayment*
    No. 19-CV-00188-GKF-JFJ, 2020 WL 838303
    (N.D. Okla. Jan. 30, 2020)…………………………………………………………14

*eBay Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006) ……………………………………….….…………………..5

*First Union Mortg. Corp. v. Smith*
    229 F.3d 992 (10th Cir. 200) …………………………………………........…….6

*Florece v. Jose Pepper's Rests.*
    No. 20-2339-TC-ADM, 2021 U.S. Dist. LEXIS 19352
    D. Kan. Feb. 2, 2021……………………………………….…………………12

*Ford v. Buffalo Eagle Colliery Co.*
    122 F.2d 555 (4th Cir. 1941) ……………………………………...………….12

*Frontier Ref., Inc. v. Gorman-Rupp Co.*
    136 F.3d 695 (10th Cir. 1998) ……………………………………...………….4

*In re Grand Jury Subpoenas*
    144 F.3d 653, 658 (10th Cir. 1998) ……………………………………………….4

*Interbake Foods, LLC v. Tomasiello*
    461 F.Supp.2d 943 (N.D. Iowa 2006) ………………………………………...…5

*Jicarilla Apache Tribe v. Andrus*
    687 F.2d 1324 (10th Cir. 1982) ………………………………………...…………16, 17

*Keystone Driller Co. v. Gen Excavator Co.*
    290 U.S. 240 (1933) ………………………………………...……….……………9

*Koon v. United States*
    518 U.S. 81 (1996) ……………………………………………………….……………..4

*Kunneman Properties LLC v. Marathon Oil Co.*
    No. 17-CV-00456-GKF-JFJ, 2021 WL 141234
    N.D. Okla. Jan. 14, 2021……………………………………………..…………4

*MercExchange, LLC v. eBay, Inc.*
    500 F.Supp.2d 556 (E.D. Va. 2007) …………………………………...……7

*New York Football Giants, Inc. v. Los Angeles Chargers Football Club, Inc.*
    291 F.2d 471 (5th Cir. 1961) ……………………………...……………………………12

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*
    389 F.3d 973 (10th Cir. 2004) ……………………………………..…………13

*Ohio Oil Co. v. Sharp*
    135 F.2d 303 (10th Cir. 1943) ……………………………………………...…………9

*Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.*
    324 U.S. 806 (1945) …………………………………………...…………………10, 11

*Satsky v. Paramount Commc'ns Inc.*
    7 F.3d 1464 (10th Cir. 1993) ………………………………………....…………14

*United States v. Lankford*
    955 F.2d 1545 (11th Cir. 1992) ………………………….……………....…………18

*United States v. Osage Wind, LLC,*
    871 F.3d 1078 (10th Cir. 2017) …….……….…………………….....5, 15

*Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v. Centerpoint Energy Okla. Gas*
    No. 17-CV-365-GKF-FHM, 2018 WL 10140171
    N.D. Okla. May 21, 2018……………………………………………...………………16

*Weinberger v. Romero-Barcelo*
    456 U.S. 305 (1982) …………………………………………...…………….………6

*Williams v. Beemiller Inc.*,
    527 F.3d 259 (2d Cir. 2008) …………………………………...…………………6

*Williams v. Sprint/United Mgmt. Co.*
    238 F.R.D. 633 (D. Kan. 2006) ……………………………….……..…………4

## Statutes and Regulations

25 U.S.C. § 636…………………………………………...…………………………………1

25 C.F.R. § 211 (2020)………………………………………………………………..10

25 C.F.R. § 214 (2020)………………………………………………………………..10

## Court Rules

Fed. R. Civ. P. 72 …………………………………………………………………...1, 4

## Other Authorities

CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3069, at 355 (2d ed. 1997) ………………………………………….……..…4, 12

FELIX S. COHEN, COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, § 15.08[4] ………..…………16

MCCLINTOCK, EQUITY, 2d ed. 1948, § 26……………………………………………...……12

Defendants, Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A), object in part to Magistrate Judge Jayne's January 16, 2021 Opinion and Order (Dkt. # 210) ("January Order") and February 13, 2021 Opinion and Order (Dkt. # 210) ("February Order"). Defendants object to the January Order's rulings on the motion to compel against the United States (Dkt. # 177) and the motion to compel against the Osage Minerals Council ("OMC") (Dkt. # 179), and specifically on the following grounds: (1) The January Order is contrary to law in construing this Court's Order and Opinion (Dkt. # 207) ("Affirmative Defense Order") and concluding the balancing of equities under *Davilla v. Enable Midstream Partners, L.P.*, 913 F.3d 959, 973 (10th Cir. 2019), categorically excludes "backward-looking" evidence and on this ground concluded discovery sought from the United States and the OMC by Osage Wind is not relevant; and (2) the January Order applied the foregoing relevancy ruling to excuse the OMC from supplementing its responses to four discovery requests, when the OMC had not asserted a relevancy objection to all four requests. These portions of the January Order are contrary to law and must be set aside by the Court. Defendants do not object to any other portion of the January Order or to the February Order, and on March 1, 2021, served on the United States and the OMC copies of all documents Judge Jayne ruled were subject to a limited waiver of the attorney-client privilege and work product protections.

## I.    BACKGROUND

The January Order summarizes the history of this lawsuit and the four motions to compel considered by Magistrate Judge Jayne, including Osage Wind's motions to compel against the United States (Dkt. # 177) and the OMC (Dkt. # 179). As summarized in the January Order, at 21-25, Osage Wind challenged the objections of the United States to interrogatories 5, 6, and 7 and

1

requests for production 4, 5, and 6. These discovery requests seek communications by and between the United States, the OMC, and/or the Osage Nation about the Osage Wind wind energy project ("Project") that is the subject of this litigation. The United States objected to these discovery requests on a number of grounds, but Magistrate Judge Jayne upheld its objections based on relevance. Osage Wind challenged the objections of the OMC to interrogatory 6 and requests for production 2, 13, and 14 based on executive privilege. The OMC asserted a relevancy objection only to interrogatory 6 and request for production 14; it did not assert a relevancy objection to requests for production 13 and 14.

To analyze and resolve the relevance objections asserted by the United States, the January Order discusses and construes this Court's Affirmative Defense Order. In the Affirmative Defense Order, the Court ruled Defendants could not assert affirmative, equitable defenses pleaded in its answers, specifically waiver, laches, estoppel, unclean hands, and *in pari dilecto*. Dkt. # 207 at 11. Based on the Affirmative Defense Order, the January Order concludes the discovery Osage Wind seeks from the United States is not relevant to the extent Osage Wind seeks it for purposes of affirmative defenses. January Order at 22.

The January Order goes further, however, and denies Osage Wind's motion to compel information sought from the United States that may be relevant to the equitable balancing that is required by binding precedent with respect to the equitable relief sought by the United States and the OMC.[1] January Order at 22-23. The January Order recites the balancing test adopted by the Tenth Circuit in *Davilla v. Enable Midstream Partners, L.P.*, 913 F.3d 959, 973 (10th Cir. 2019), and concludes this Court will apply the *Davilla* test if and when it considers the equitable balancing

---

[1] The requested evidence may also be relevant to whether Defendants acted in good faith in crushing and reusing excavated materials without a lease from the OMC.

that is required by binding precedent with respect to the injunctive relief. January Order at 23. Where the January Order commits a clear error of law, however, is in making a ruling on the type of evidence that this Court may consider when conducting the *Davilla* balancing test. The January Order states, "[t]he 'balancing of equities' under *Davilla* does not include any backward-looking considerations of past conduct or knowledge." January Order at 23.[2] According to the January Order, because Defendants did not "link" the past knowledge or conduct of the United States (or the OMC or the Nation) to present equitable considerations, January Order at 23, the discovery sought by Defendants is not relevant to *Davilla* balancing of equities. With respect to the Affirmative Defense Order, the January Order framed it as concluding "equitable considerations premised on the delay or misconduct of the Osage Nation would frustrate federal Indian land policy" and "delay or misconduct of the Osage Nation, including the United States as trustee for the Osage minerals estate, will play no role in the equitable analysis." January Order at 24. As discussed herein, this is an incorrect application of federal common law applicable to permanent injunctions, including *Davilla* itself, as well as the Court's Affirmative Defense Order, and the ruling should be reversed and Osage Wind's motion to compel against the United States granted.

The January Order then applied the same relevancy ruling to uphold the OMC's objections to certain discovery requests—despite the fact the OMC had not asserted a relevancy objection to two of the discovery requests. January Order at 25. With respect to the motion to compel against the OMC, the January Order only considered whether two documents listed on the OMC's privilege log were properly withheld, and ruled that they were properly withheld due to relevancy, *not* due to executive privilege, the asserted reason for their inclusion on the privilege log. The

---

[2] Magistrate Judge Jayne did not specify from what date or event prior evidence would be deemed "backward-looking."

Magistrate Judge's denial of Osage Wind's motion to compel against the OMC should be reversed for the same reasons.

## II.   LEGAL STANDARD

This Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). "The clearly erroneous standard applies to factual findings . . . and requires that the district court affirm unless it is left with the 'definite and firm conviction that a mistake has been committed.'" *Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 637-38 (D. Kan. 2006), *subsequent determination*, 464 F. Supp. 2d 1100, *reconsideration denied*, 2007 WL 315826 (internal citation omitted) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)). "By contrast, the 'contrary to law' standard permits 'plenary review as to matters of law.'" *Id.* (quoting CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3069, at 355 (2d ed. 1997)).

This Court reviews the Magistrate Judge's factual rulings "for clear error and purely legal questions de novo." *In re Grand Jury Subpoenas*, 144 F.3d 653, 658 (10th Cir. 1998); *Kunneman Properties LLC v. Marathon Oil Co.*, No. 17-CV-00456-GKF-JFJ, 2021 WL 141234, at *1 (N.D. Okla. Jan. 14, 2021). Even were the Court to apply some discretionary analysis to the Magistrate Judge's ruling, a court "by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996); *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699, 702 (10th Cir. 1998) (reviewing "purely legal questions" de novo and reversing as an abuse of discretion an attorney-client privilege ruling that was "based on an error of law").[3] The January

---

[3] It must be that this Court can review *de novo* what the Court meant in the Affirmative Defense Order.

Order makes an error of law in concluding any "backward-looking" communications or documents are not relevant to the claims and defenses remaining in these proceedings, and review of this legal error is de novo.

## III. LEGAL ARGUMENT

### A. The authorities relied on in the January Order do not support the conclusion that the analysis conducted for claims of permanent injunction and ejectment are forward-looking only.

In concluding any communications made prior to the determination of whether a permanent injunction or ejectment are not relevant to the *Davilla* balancing test, the January Order relied on *Davilla*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), and *Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 976 (N.D. Iowa 2006). As described in the January Order,

> *Davilla* articulated three factors for a district court to consider in deciding whether to enjoin a continuing trespass[4] on tribal land: (1) whether an injunction is necessary to prevent 'irreparable harm,' (2) whether 'the threatened injury outweighs the harm that the injunction may cause' to the enjoined party, and (3) whether the injunction would 'adversely affect the public interest.'"

January Order at 22-23 (quoting *Davilla*, 913 F.3d at 973). Neither *Davilla*, *eBay*, nor *Interbake Foods* supports the conclusion the *Davilla* factors prohibit consideration by this Court of "backward-looking" evidence, or evidence of the United States' or the OMC's actions or words prior to the initiation of this lawsuit or the consideration of evidence relevant to the equities.

---

[4] Defendants dispute the Project constitutes a continuing trespass on the OMC's mineral estate pursuant to the Tenth Circuit Court of Appeals' opinion in *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1091 (10th Cir. 2017). Rather, the Tenth Circuit concluded only that certain activities that took place in 2014 constituted mining and it was *those activities* (and *only* those activities) that required a lease. Since those activities are indisputably not continuing, there is no continuing trespass.

Indeed, these cases require, or at a minimum permit, the introduction of evidence of the parties' past and future actions.

In *Davilla*, the Tenth Circuit Court of Appeals held the district court abused its discretion and committed reversible error by granting an injunction "on the basis of liability alone," contrary to a "well-developed body of law regarding equitable remedies." 913 F.3d at 973 (citing *eBay*, 547 U.S. at 391; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 541-42 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)). *Davilla* reversed the district court's grant of a permanent injunction because the district court had only considered the merits, and not the equities. *Id.* at 974. Significantly, while the *Davilla* district court "observed 'some courts have declined to enter an injunction when the trespass was unintentional *and when the landowner' delays objection*," it did not weigh these equities before granting the injunction. *Id.* at 971 (emphasis added) (citation omitted). By reversing on this point, *Davilla* indicated the district court erred by *not* considering actions that occurred in the past—specifically including failing to timely assert that a structure's presence was in derogation of tribal allottees' property rights— in considering whether equitable relief was proper. This indicates the January Order erred in ruling the equitable analysis conducted when determining whether to enter a preliminary injunction cannot include any "backward-looking" evidence.[5]

---

[5] Since the evidence regarding these matters is uniquely within the control of the United States and the OMC (and the Defendants have no other way to obtain it), the January Order had the effect of granting partial summary judgment to the United States and the OMC on a vital part of the equitable balancing analysis without compliance with 28 U.S.C. § 636(c). *See, e.g.*, *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 996 (10th Cir. 2000) ("Thus, the magistrate judge here had authority to recommend [a functionally dispositive order], but he did not have authority to order it himself. When Smith objected to the magistrate judge's order through his motion for reconsideration, the district court was obligated to make a de novo determination of the basis for the order."); *Williams v. Beemiller Inc.*, 527 F.3d 259, 265 (2d Cir. 2008) (holding that a magistrate judge may not make an order that is "functionally equivalent to an order of dismissal").

*eBay* articulated the four familiar injunction factors, but did not apply them, reversing so the district court could do so in the first instance. 547 U.S. at 394. On remand, the district court considered factual developments after the first trial. *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 561 (E.D. Va. 2007). This included a plaintiff's decision to obtain a license and attempt to avoid litigation after the initial injunction request was denied. Balancing the factors, while not looking at specific past acts, the district court determined that "forced royalties are an imperfect solution" but one that was "the most equitable." *Id.* at 585. The court stated, "considering the patent's impact on the public, the public's interest in a strong patent system, *and the position of the litigants and their prior actions*, the court finds that although the public health and welfare is plainly not at issue, the public interest nevertheless favors damages at law rather than an injunction." *Id.* at 586 (emphasis added); *id.* at 587 (stating the plaintiff had "repeatedly" engaged in certain action similar to that at issue in the lawsuit). *eBay* plainly contradicts the proposition that only forward-looking evidence may be considered by a court on a claim for permanent equitable relief. *See also Amoco Prod. Co.*, 480 U.S. at 545 ("And on the other side of the balance of harms was the fact that the oil company petitioners *had committed* approximately $70 million to exploration to be conducted during the summer of 1985 which they would have lost without chance of recovery had exploration been enjoined.") (emphasis added); *Weinberger*, 456 U.S. at 312 ("Where plaintiff and defendant present competing claims of injury, the traditional function of equity has been to arrive at a nice adjustment and reconciliation between the competing claims. In such cases, the court balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree

7

to the necessities of the particular case. Flexibility rather than rigidity has distinguished it.")

(quotation marks and citations omitted).

In *Interbake Foods*, the court considered whether an allegedly stolen trade secret could be

used in the future and whether plaintiff's potential future injury if the trade secret was used was

irreparable (it was). 461 F. Supp. 2d at 976. In considering the balance of harms, the court stated,

> To determine what must be weighed, the court finds that courts of this circuit have
> looked at the threat to each of the parties' rights that would result from granting or
> denying the injunction. Also, the potential economic harm to each of the parties and
> to interested third parties of either granting or denying the injunction is relevant.
> *Another consideration in the balance of harms calculus is whether the defendant
> has already voluntarily taken remedial action.* Where the non-movant has taken
> such action, the balance of harms is readjusted, because the potential for economic
> or other harm to the movant has been eliminated. *Similarly, present harm as the
> result of past misconduct is not sufficient to justify the injury to the non-movant of
> granting a preliminary injunction requiring some additional corrective action,
> because such relief goes beyond the purpose of a preliminary injunction.*

*Id.* at 977 (citations omitted, emphasis added). In looking at whether the court could preliminary

enjoin an individual's continued employment with the current employer, *Interbake Foods*

considered the facts that (1) no non-compete agreement was entered between the individual and

the prior employer; (2) the individual had moved his family to take a job with his current employer.

*Id.* These facts are based on past acts and inactions, and cannot be described as "forward-looking

only."

The cases relied on by the Magistrate Judge in the January Order do not support the

conclusion that "backward-looking" evidence is not relevant to the *Davilla* analysis, and such a

conclusion is contrary to law.

### B. Additional precedent demonstrates the error in the January Order's ruling.

Other relevant case law also leads to the conclusion the January Order erred in ruling the

equitable analysis is forward-looking only. Many cases affirm the principle that a party seeking an

equitable remedy must demonstrate the equities favor that remedy, including the actions of the

plaintiff (prior to the litigation and prior to the time of trial). *See Weinberger*, 456 U.S. at 312; *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933) ("The equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abetter of iniquity.") (quotation marks and citations omitted).

The Tenth Circuit has affirmed that a party cannot obtain equitable relief if it has engaged in inequitable conduct. *Ohio Oil Co. v. Sharp* dealt with a trespass by Ohio Oil, and whether the trespasser was innocent or not. 135 F.2d 303, 308 (10th Cir. 1943) ("It is well settled that one who invades or trespasses upon the property rights of another, while acting in the good faith and honest belief that he had the lawful and legal right to do so, is regarded as an innocent trespasser and liable only for the actual damages sustained."). Because Ohio Oil was found to be a good faith trespasser, its "good faith conduct, although said to be an actionable wrong, is not unconscionable or sufficiently culpable to repel it from a court of equity." *Id.* at 309. In reviewing the past actions of the parties, the Tenth Circuit confirmed past misconduct may be considered, but it "is confined to misconduct in relation to or in all events connected with the matter in litigation so that it *in some manner affects the equitable relations of the parties to the suit*. It does not extend to misconduct which is unconnected with the matter in litigation, and with which the party who asserts the maxim as a defense to his wrong has no concern." *Id.* at 307 (emphasis added, citations omitted).

The Defendants seek documents from the United States and the OMC relevant to the acts and inactions of the plaintiffs with respect to the matter in litigation, including (but not limited to) (1) their knowledge of excavation and construction plans for the Project from 2011[6] forward, (2)

---

[6] In the testimony and exhibits in the 2011 Prior Litigation in this Court, the OMC learned the full field configuration of the Project and the expected below-ground dimensions of every foundation structure. *See* Plaintiff's Trial Exh. 14 and Defendants' Trial Exhs. 1 and 26, *Osage Nation, acting*

given their knowledge of the very substantial investments Defendants and their predecessors ("Osage Wind") contemplated, their consideration of Defendants' and their predecessors' request for an explanation as to why a mining permit may be necessary, including whether to controvert Osage Wind's October 28. 2013 explanation why no mining lease would be required,[7] and contemplation of legal theories to assert in prior state court litigations (including litigation commenced after Project construction had commenced). (*See* Dkt. # 150, at 4-5, 14-18; Dkt. # 154, at 9-10). Discovery on these issues is critical to addressing the balancing of equities here, as this Court has concluded that Defendants' "good faith" is in issue on the determination of damages. *See* Dkt. # 171, at 3 (the United States raised "the issue of whether Osage Wind qualified as an 'innocent trespasser' by alleging that '[d]efendants knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214.'").

The Plaintiffs' conduct and communications are material given that the need for a lease was sufficiently uncertain that Judge Payne entered summary judgment in favor of Defendants and the United States declined to appeal. Plaintiffs' own conduct reflects the lease requirement was by no means clear, as the BIA repeatedly explained to Osage Wind it required a "sandy soil permit" and never mentioned the theories advanced in the Tenth Circuit.[8] *See Precision Instrument Mfg.*

---

*through the Osage Minerals Council v. Wind Capital Group, LLC*, United States District Court for the Northern District of Oklahoma, Case No. 11-CV-643-GKF-PJC, attached as Exhibit A to Defendants' Response to OMC's Motion for Judgment on the Pleadings, Dkt. # 204 in this case.

[7] *See* Letter, David Boyce, CEO, Wind Capital Group, to Andrew Yates, October 28, 2013 to Andrew Yates, Chairman, Osage Minerals Council, Dkt. # 17-2, at 42.

[8] Superintendent Phillips' October 9, 2014 letter to Osage Wind, Dkt. # 20, ¶ 28, did not mention a mineral lease; instead, the letter and all subsequent BIA pre-suit communications claimed to require a "Sandy Soil Permit," a term not mentioned in any published regulation (including all regulations relied upon by the Tenth Circuit). The Tenth Circuit characterized the Sandy Soil Permit as an "informal agency position," noting Judge Payne' conclusion the asserted "Sandy Soil Lease negotiations did not show a BIA policy that such a lease was required." 871 F.3d at 1087-

*Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945) ("[W]hile equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.") (quotation marks and citations omitted). In *Precision Instrument*, the Supreme Court concluded the party seeking the injunction (Automotive) "has not displayed that standard of conduct requisite to the maintenance of this suit in equity"—even though the actions of the other parties "may have been more reprehensible." *Id.* at 819 ("Automotive knew of and suspected the perjury and failed to act so as to uproot it and destroy its effects. Instead, Automotive acted affirmatively to magnify and increase those effects. Such inequitable conduct impregnated Automotive's entire cause of action and justified dismissal by resort to the unclean hands doctrine.").

The Court must consider evidence of the United States and the OMC's past actions and inactions, including communications, to determine if they are entitled to obtain equitable relief. The January Order was wrong as a matter of law in ruling such communications are not relevant to the pending claims for equitable relief.

### C. The Affirmative Defense Order did not make any rulings on the evidence that will be considered in the balancing of equities on the United States' and the OMC's claims for relief.

The Affirmative Defense Order disallowed five equitable affirmative defenses asserted by Defendants. Defendants do not seek reconsideration of that order at this juncture (although Defendants do not waive any right to appeal the Affirmative Defense Order). The Affirmative Defense Order, however, made no rulings with respect to the evidence that could be considered when and if the Court reaches the claims for equitable relief asserted by the OMC and the United

---

1088, and n. 7. The United States' States' (and the OMC's) responsibility for this mis-information is material to Defendant's good faith and the balancing of the equities as between the parties.

States.[9] Under the Court's equity jurisdiction, it must consider the past acts of all parties in determining whether equitable relief is appropriate.

The court's equity jurisdiction requires application of the "clean hands" doctrine even though the Court has stricken the affirmative defense. "[T]he bar of the clean-hands maxim is not employed for the punishment of wrongdoers; rather, it is introduced to protect the court of equity and the party defendant from having the powers of the court used in bringing about an inequitable result in the particular litigation before it." *Ford v. Buffalo Eagle Colliery Co.*, 122 F.2d 555, 563 (4th Cir. 1941). "*[A]any willful act in regard to the matter in litigation, which would be condemned and pronounced wrongful by honest and fair-minded men, will be sufficient to make the hands of the applicant unclean.* Both courts and text-writers have repeatedly spoken upon this subject in no uncertain language." *Carmen v. Fox Film Corp.*, 269 F. 928, 931 (2d Cir. 1920) (emphasis added). "'[T]he court may note the inequitable conduct of its own motion if it has not been pleaded by a party, and the defense cannot be waived by a party.'" WRIGHT & MILLER, 11A FED. PRAC. & PROC. CIV. § 2946 n.4 (3d ed.) (quoting MCCLINTOCK, EQUITY, 2d ed. 1948, § 26, at 60); *see New York Football Giants, Inc. v. Los Angeles Chargers Football Club, Inc.*, 291 F.2d 471, 474 (5th Cir. 1961) ("We think no party has the right thus to create problems by its devious and deceitful conduct and then approach a court of equity with a plea that the pretended status which it has foisted on the public be ignored and its rights be declared as if it had acted in good faith throughout.").

---

[9] And at the discovery stage, "[r]elevance is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Florece v. Jose Pepper's Rests.*, No. 20-2339-TC-ADM, 2021 U.S. Dist. LEXIS 19352, at *5 (D. Kan. Feb. 2, 2021). Of course, proportionality is in play as well; but here that must be considered in light of the fact that the equitable remedy of removal would cost the Defendants nearly $300,000,000.00.

Similarly, while delay-based affirmative defenses were excluded by the Court, delay in asserting claims or advising of material contentions must be considered by the Court in the *Davilla* analysis. "Plaintiffs, especially, have the burden of complaining of injuries promptly, before defendants come to rely on the status quo. '[E]quity aids the vigilant, not those who slumber on their rights.'" *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1017 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006) (quoting *Allred v. Chynoweth,* 990 F.2d 527, 536 n. 6 (10th Cir.1993)). The Supreme Court highlighted that delay-based concerns are a necessary and fundamental part of the equitable analysis: "[W]hen a plaintiff is complaining of irreparable injury from a long-established state of affairs, a court may naturally ask why, if the injury is so pressing as to warrant preliminary relief, the plaintiff waited so long before bringing a claim." *Id.*; *see Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244 (1933) ("'It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands. He must be frank and fair with the court, nothing about the case under consideration should be guarded, but everything that tends to a full and fair determination of the matters in controversy should be placed before the court.'") (quoting Story's Equity Jurisprudence (14th Ed.) § 98). The January Order erred as a matter of law in concluding the exclusion of affirmative defenses was controlling as to the evidence that is relevant to the balancing of equities.

In addition, the Court has indicated it will rule on Defendants' remaining preclusion-based defenses in the future. *See* Opinion and Order (Dkt. # 161) (July 1, 2020) at 15 (indicating a separate briefing schedule will be set on the issue of whether the OMC's claims are barred due to

the preclusive effect of various state court actions); OMC Motion to Compel (Dkt. # 183) (Aug. 20, 2020) at 23 (stating "res judicata" is a "live issue[] in this case"). Whether the OMC was aware of or considered bringing the same claims they bring here is relevant to Defendants' pending defenses exclusive of those barred by the Affirmative Defense Order. *See Satsky v. Paramount Comm'ns, Inc.*, 7 F.3d 1464, 1467 (10th Cir. 1993) ("Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in the prior action.") (quotation marks and citations omitted; emphasis added); *De Punta Mita v. Rayment*, No. 19-CV-00188-GKF-JFJ, 2020 WL 838303, at *5 (N.D. Okla. Jan. 30, 2020) (stating similar factors under Oklahoma law). By ruling "backward-looking" evidence irrelevant to the equitable claims based on the Affirmative Defense Order, the January Order ignored that such evidence may be relevant to other claims, defenses, and the balancing of equities, that remain.

**D. The January Order misinterprets the Affirmative Defense Order and Federal law applicable to fashioning remedies, including as to injuries to Native American trust lands.**

Defendants respectfully submit Magistrate Judge Jayne misinterpreted this Court's Affirmative Defense Order as to federal common law applicable to fashioning remedies in federal law-based actions, including as to Native American trust lands. Defendants read the Affirmative Defense Order as premised on three core precepts: the law of the case doctrine, pertinent here as to the Court of Appeals' rejection of the affirmative defense of laches, *see* Dkt. # 207, p. 4-5, 8 n.4, the general inapplicability of state law affirmative defenses to bar claims against tribes pertaining to Native American trust lands, *Id.* at 8-9, and reluctance to extend equitable affirmative defenses to federal and tribal land claims. *Id.* at 10-11. But, the Affirmative Defense Order, by its own terms, is just that and not more: an order addressing whether the enumerated affirmative

defenses bar claims or remedies. Whether or not those rulings were correct,[10] Magistrate Judge Jayne erred in holding they require barring Defendants from *all discovery* into conduct of the United States or the OMC affecting whether, under *federal* equitable jurisprudence, in light of the conduct of all parties, the extreme remedies the plaintiffs request are unjust and unreasonable under the circumstances.

Defendants respectively submit this Court made no such ruling. Rather, it addressed motions pertaining to affirmative defenses and nothing more.[11] First, this Court's law of the case ruling, granting the OMC's motion for judgment on the pleadings (as to certain affirmative defenses), rested upon the Tenth Circuit's rejection of Defendants' contention the regulatory interpretation the United States requested as to interpretation of the asserted regulations (as advanced on appeal by the OMC) was wholly barred by the equitable defenses of laches. The Court of Appeals held: "We decline to *dispose of the case* on the equitable doctrine of laches. Dkt. # 207 at 4, quoting *United States v. Osage Wind, LLC,* 871 F.3d 1078, 1087 n.6 (10th Cir. 2017) (emphasis added). Therefore, as to whether delay barred presentation of the merits of its claims, this Court concluded, "OMC is entitled to judgment on the pleadings as to laches." *Id.* at 5.

This Court's Affirmative Defense Order granted judgment on the pleadings as to enumerated affirmative defenses: it did not address, much less affirmatively exclude, categories of evidence.[12] Second, the Affirmative Defense Order declined to adopt state law affirmative

---

[10] Defendants expressly reserve all objections to the Affirmative Defense Order.

[11] "By its nature, an affirmative defense 'does not negate the elements of a plaintiff's claim, but instead precludes liability even if all the elements of a plaintiff's claim are proven.'" *Purzel Video GmbH v. Smoak*, 11 F.Supp.3d 1020, 1031 (D. Colo. 2014) (citations and quotations omitted); *see also United States v. Baker*, 523 F.3d 1141, 1143 (10th Cir. 2008).

[12] The Defendants had no notice that categorical exclusion of evidence would be at issue in the OMC's Motion for Judgment on the pleadings, and thus no opportunity to be heard on the issue.

defenses as a bar to the OMC's claims, relying primarily on *Davilla*, 913 F.3d at 969, and concluded that "[b]ecause Indian land claims are 'exclusively a matter of federal law,' state property laws are preempted." Dkt. # 207, at 7-8, *quoting* Felix S. Cohen, Cohen's Handbook of Federal Indian Law, § 15.08[4], at 1049 (Nell Jessup Newton, et al. eds. 2012), and citing *Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v. Centerpoint Energy Okla. Gas*, No. 17-CV-365-GKF-FHM, 2018 WL 10140171, at *8 (N.D. Okla. May 21, 2018). Consequently, in granting the OMC's motion for judgment on the pleadings, "the court decline[d] to incorporate Oklahoma state law defenses." *Id.*

The Court further rejected state law affirmative defenses to determine remedies, stating to do so would "frustrate federal Indian policy." *Id.* at 8. But this Court immediately qualified its ruling in addressing *Cayuga Indian Nation of N.Y. v. Cuomo,* Nos. 80-CV-930, 80-CV-960, 1999 WL 509442 (N.D.N.Y. July 1, 1999) ("*Cayuga X*"), as to which this Court observed, the "[*Cayuga X*] court was not considering affirmative defenses. Instead, the court was considering the equitable factors articulated in the Restatement (Second) of Torts to determine the appropriateness of an injunction against trespass." Dkt. # 207, at 9 (citation omitted). Conversely, for purposes of the OMC's motion for judgment on the pleading, this Court stated it "places greater significance on the Northern District of New York's prior grant of judgment as a matter of law *as to the affirmative defense of laches. See Cayuga Indian Nation of New York v. Cuomo*, 771 F. Supp. 19, 24 (N.D.N.Y. 1991) (emphasis added).

This Court's discussion of federal equitable doctrines similarly rejected application of equitable affirmative defenses "as a complete bar," Addressing *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982), in which the Tenth Circuit addressed the district court's holding the BIA had issued oil and gas leases of tribal lands without providing notice to interested bidders as required by federal regulations, adversely affecting tribal interests in optimal bonuses, this Court recognized,

"[w]ith respect to the notice claims, the trial court concluded that the defendants failed to establish the equitable defenses *as a complete bar*." Dkt. # 207 at 11. In fact, the Tenth Circuit affirmed the district court's determination not to cancel the numerous leases, but, due to equitable considerations, awarded the Jicarilla Apache Tribe an adjusted bonus reflecting the compensation the evidence indicated the Tribe would have received if the BIA had complied with federal regulations. *Andrus*, 687. F.2d at 1334-1336. While the Affirmative Defense Order concluded a federal equitable defense of laches "is foreclosed here," citing the Tenth Circuit's holding in this case, this Court's holdings were limited to foreclosing "the equitable defenses of estoppel, laches, waiver, unclean hands, and *in pari delicto*." Dkt. # 207 at 11.

This Court's citation to *Andrus*' notice violation remedy and *Cayuga X*, both sanctioning consideration of equitable considerations cognizable under a laches defense, reflect Magistrate Judge Jayne stretched the Affirmative Defense Order beyond the bounds this Court intended.[13] This Court did not foreclose consideration of all possible evidence that might otherwise have been material in support of such defenses in determining the proper remedies in this case, especially where consideration of such evidence is necessarily required by governing federal law. *See supra*, Point III.A.

The Court should reverse the January Order to the extent it sets a metric for the entire case that forecloses consideration of "any backward-looking considerations of past conduct or

---

[13] The Affirmative Defense Order incorrectly described *Andrus* as affirming "the district court [holding] the [Tribe's] NEPA claim was not barred by laches and unclean hands." Dkt. # 207, at 11. To the contrary, the Tenth Circuit held, "In sum, we conclude that the district judge did not err in holding that the Tribe's NEPA claim was barred by the laches and unclean hands doctrines." *Andrus*, 687. F.2d at 1340. *Andrus* remains the law of the Tenth Circuit authorizing laches to bar tribal claims to exclude nonmembers from activities on tribal trust lands.

knowledge." January Order at 23. The Court will require such evidence when it addresses issue pertaining to the balancing of equities required under *Davilla* and the good faith of the parties.

**E.   If Defendants' objections to the January Order are overruled, the Court must apply the "forward-looking" ruling to evidence that may be presented by any party.**

While Defendants have not objected to portions of the January Order or the February Order and the rulings that Defendants waived the attorney-client privilege with respect to correspondence related to a legal memorandum upon which Defendants relied, if the Court overrules the objections presented herein, it must also limit the United States and the OMC to "forward-looking" evidence when considering the *Davilla* factors. The same standard must be applied to both parties. *See United States v. Parker*, 447 F.2d 826, 831-32 (7th Cir. 1971) ("It was error to give the prosecutor enough latitude to develop his fraud referral contention while applying a narrower standard of relevance to appellant's attempt to make a fair response to that contention."); *United States v. Lankford*, 955 F.2d 1545, 1552 (11th Cir. 1992).

CONCLUSION

The Court should enter an Order reversing the January Order as contrary to law to the extent that it construed the Affirmative Defense Order as finding that the balancing of equities under *Davilla v. Enable Midstream Partners, L.P.*, 913 F.3d 959, 973 (10th Cir. 2019), categorically excludes "backward-looking" evidence and, on this ground, concluded discovery Osage Wind sought from the United States and the OMC was not relevant and, further, in applying that conclusion to requests to the OMC that were never opposed on relevance grounds. Those conclusions were contrary to law and should be reversed on *de novo* review, and the denials of the Defendants' motions to compel as to both the United States and the OMC should be revisited accordingly.

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**
**Sarah M. Stevenson**
**MODRALL, SPERLING, ROEHL, HARRIS**
**& SISK, P.A.**
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS,**
**OSAGE WIND, LLC, ENEL KANSAS, LLC**
**AND ENEL GREEN POWER NORTH**
**AMERICA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2021, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
David McCullough
Jeffrey S. Rasmussen

The following non-ECF registrants have been served by U.S. Mail:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


*/s/ Ryan A. Ray*
Ryan A. Ray