IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| and | ) |
| OSAGE MINERALS COUNCIL, | ) |
| Intervenor-Plaintiff, | ) |
| v. | ) Case No. 14-CV-704-GKF-JFJ |
| OSAGE WIND, LLC,<br>ENEL KANSAS, LLC, and<br>ENEL GREEN POWER<br>NORTH AMERICA, INC., | ) |
| Defendants. | ) |

## AMENDED OPINION AND ORDER[1]

This matter comes before the court on the Motion for Judgment on the Pleadings [Doc. 204] of intervenor-plaintiff Osage Minerals Council (OMC). For the reasons set forth below, the motion is granted.

---

[1] The court's January 11, 2021 Opinion and Order [Doc. 207] included a typographical error in Section D. below. Specifically, in its discussion of the Tenth Circuit's decision in *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982), the court stated: "However, the district court held the NEPA claim was *not* barred by laches and unclean hands." [Doc. 207, p. 11 (emphasis added)]. This Order amends the January 11 Opinion and Order to correct the typographical error and accurately reflect that the district court held that the NEPA claim *was* barred by laches and unclean hands. No other amendments to the January 11, 2021 Opinion and Order have been made.

**Background and Procedural History**

This case, filed in 2014, presented the question of whether a large-scale excavation project undertaken by Osage Wind[2] during the installation of eighty-four (84) wind turbines in Osage County, Oklahoma constituted "mining" under regulations governing development of minerals in the Osage Mineral Estate and therefore required a lease approved by the Secretary of Interior. [Doc. 2; Doc. 20]. United States District Judge James H. Payne said "no," and, on September 30, 2015, entered Judgment in favor of Osage Wind. [Doc. 44; Doc. 45]. The United States, as trustee of the Osage Mineral Estate, did not appeal the district court's Judgment, but the OMC, acting on behalf of the Osage Nation, appealed.

In a September 18, 2017 Decision, the Tenth Circuit reversed the district court, and held that, pursuant to 25 C.F.R. § 214, defendants' "extraction, sorting, crushing, and use of minerals as part of its excavation work constituted 'mineral development,' thereby requiring a federally approved lease which Osage Wind failed to obtain." [Doc. 78, p. 3; *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1081-82 (10th Cir. 2017)]. The Circuit remanded the case to the district court for further proceedings consistent with the Decision. [Doc. 78, pp. 26-27]. On October 24, 2019, the Court Clerk randomly reassigned the case to the undersigned. [Doc. 89]. The court then permitted OMC to intervene in the remanded proceedings. [Doc. 140].

On July 1, 2020, this court issued an Opinion and Order limiting the United States and OMC to the relief requested in the Amended Complaint filed by the United States on December 12, 2014. [Doc. 161]. Thereafter, OMC filed the Amended Complaint in Intervention. [Doc. 164]. In the Answer to OMC's Amended Complaint in Intervention, Osage Wind asserted seventeen (17) separate affirmative defenses. [Doc. 174].

---

[2] For ease of reference, the court refers to defendants Osage Wind, LLC; Enel Kansas, LLC; and Enel Green Power North America, Inc., collectively, as "Osage Wind."

OMC now seeks judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) relative to five of Osage Wind's affirmative defenses: (1) estoppel, (2) laches, (3) waiver, (4) unclean hands, and (5) *in pari delicto*. [Doc. 204]. Osage Wind responded in opposition [Doc. 205], and OMC filed a reply [Doc. 206]. Thus, the motion is ripe for the court's determination.

## Motion for Judgment on the Pleadings Standard

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "A motion for judgment on the pleadings 'should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)). The Tenth Circuit treats a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556. The court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Colony Ins. Co.*, 698 F.3d at 1228.

## Analysis

As previously stated, OMC seeks judgment on the pleadings as to Osage Wind's affirmative defenses of estoppel, laches, waiver, unclean hands, and *in pari delicto*. The court first considers laches.

### A. Laches

As this court has previously recognized, "issues determined by the Tenth Circuit are law-of-the-case." [Doc. 135; Doc. 171]. Although Judge Payne did not reach Osage Wind's laches affirmative defense in the September 30, 2015 Order, in the briefing to the Tenth Circuit, Osage Wind noted that the Circuit "has long held that it may affirm a district court's judgment on any basis supported by the record, even if it requires ruling on arguments not reached by the district court." Thus, defendants argued "[t]he record would permit [the Circuit] to affirm on the basis of laches as well, as the OMC delayed in bringing this challenge for years after it had all the knowledge it needed to file suit." Brief of the Appellees, *United States v. Osage Wind, LLC*, No. 16-5022 (10th Cir. June 16, 2016), Doc. No. 01019639458. In the Decision, the Tenth Circuit stated as follows:

> Osage Wind also invites us to affirm on the ground that OMC's instant claim is barred by the laches doctrine—which gives courts discretion to reject stale claims brought after unreasonable delay. *See Jicarilla Apache Tribe v. Andrus,* 687 F.2d 1324, 1337 (10th Cir. 1982) (explaining that the laches doctrine is "vigorously enforced in cases involving mineral properties"). We decline to dispose of the case on the equitable doctrine of laches. The United States commenced this action within three months after turbine excavation work began, which is not an unreasonable amount of time to wait before filing suit.

*United States v. Osage Wind*, *LLC,* 871 F.3d 1078, 1087 n.6 (10th Cir. 2017).

"The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 (10th Cir. 2000) (quoting *United States*

*v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991)). Here, the Tenth Circuit has decided the issue of laches. Specifically, the Tenth Circuit concluded that the United States commenced this action within a reasonable time and therefore declined to dispose of this action based on laches. Pursuant to the law of the case doctrine, this decision governs in subsequent stages of this litigation. Thus, on this basis, OMC is entitled to judgment on the pleadings as to laches.

    B.    *State Law Defenses*

As for the remainder of Osage Wind's affirmative defenses, courts have consistently recognized that tribes, as well as the United States while acting as a trustee on behalf of Indian tribes, are not subject to "state delay-based defenses." *Oneida Indian Nation of N.Y. v. New York*, 691 F.2d 1070, 1084 (2d Cir. 1982). These defenses include laches, estoppel, and waiver. *Oneida Indian Nation of N.Y.*, 691 F.2d at 1084 (laches); *Grondal v. Mill Bay Members Ass'n, Inc.*, 471 F. Supp. 3d 1095, 1128-29 (E.D. Wash. 2020), *appeal filed, Grondal v. United States,* No. 20-34694 (9th Cir. Aug. 7, 2020); *Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York*, 278 F. Supp. 2d 313, 338-40 (N.D.N.Y. 2003) (estoppel); *Cayuga Indian Nation of New York v. Cuomo*, 565 F. Supp. 1297, 1301 (N.D.N.Y. 1983) (laches and estoppel); *Schafer, Trustee of Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v. Centerpoint Energy Okla. Gas*, No. 17-CV-365-GKF-FHM, 2018 WL 10140171, at *8 (N.D. Okla. May 21, 2018) (laches, estoppel, waiver); *Seneca Nation of Indians v. New York,* No. 93-CV-688A, 1994 WL 688262, at *2 (W.D.N.Y. Oct. 28, 1994); *see also State of New Mexico v. Aamodt,* 537 F.2d 1102, 1110 (10th Cir. 1976) ("Estoppel does not run against the United States when it acts as trustee for an Indian tribe."); *United States v. Ahtanum Irrigation Dist.,* 236 F.2d 321, 334 (9th Cir. 1956) ("No defense of laches or estoppel is available to the defendants here for the Government as trustee for the Indian

5

Tribe, is not subject to those defenses."); *But see City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197 (2005) (invoking laches).

Nor are Indian land claims subject to state-law affirmative defenses based on the tribe's own conduct, including waiver, unclean hands, or *in pari delicto*.[3] *See Canadian St. Regis Band of Mohawk Indians ex rel. Francis*, 278 F. Supp. 2d at 342-43 (unclean hands and waiver); *Seneca Nation of Indians*, 1994 WL 688262, at *1; *Schafer*, 2018 WL 10140171, at *8. In this regard, courts "rely[] on the strong policy in favor of vindication of . . . Indian claims." *Canadian St. Regis Band of Mohawk Indians ex rel. Francis*, 278 F. Supp. 2d at 342 (quoting *Schaghticoke Tribe of Indians v. Kent Sch. Corp.*, 423 F. Supp. 780, 783-85 (D. Conn. 1976)); *see also Seneca Nation of Indians*, 1994 WL 688262, at *2 ("[T]he application of the state law-based defense[] of . . . unclean hands would contravene established policy pertaining to Indians' ability to enforce their property rights.").

Nevertheless, Osage Wind argues that Oklahoma law is presumptively incorporated and application of same would not frustrate specific federal interests. This argument fails.

The U.S. Supreme Court "ha[s] indicated that federal courts should 'incorporat[e] [state law] as the federal rule of decision,' unless 'application of [the particular] state law [in question] would frustrate specific objectives of the federal programs.'" *Kamen v. Kemper Fin. Servs., Inc.*,

---

[3] Although neither party directs the court to any case specifically discussing the *in pari delicto* affirmative defense, the U.S. Supreme Court has recognized: "The equitable defense of in pari delicto, which literally means, 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct. Traditionally, the defense was limited to situations where the plaintiff bore at least substantially equal responsibility for his injury, and where the parties' culpability arose out of the same illegal act. Contemporary courts have expanded the defense's application to situations more closely analogous to those encompassed by the 'unclean hands' doctrine, where the plaintiff has participated in some of the same sort of wrongdoing as the defendant." *Pinter v. Dahl,* 486 U.S. 622, 632 (1988) (internal quotations and citations omitted). Thus, because the defense is analogous to the unclean hands doctrine, the same analysis applies.

500 U.S. 90, 98 (1991) (alternations in original) (quoting *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979)); *see also Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 969 (10th Cir. 2019) ("[W]e incorporate Oklahoma law into this federal claim so long as it does not frustrate federal policy.").[4]

It is well-established that "the tribes are subject to plenary control by Congress." *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2030 (2014) (citing *United States v. Lara,* 541 U.S. 193, 200 (2004)). Specifically, "Indian land claims [are] exclusively a matter of federal law." *Oneida Cnty. v. Oneida Indian Nation of N.Y.*, 470 U.S. 226, 241 (1985) (citing *Oneida Indian Nation v. Cnty. of Oneida*, 414 U.S. 661 (1974)). To that end, Congress has reserved the "oil, gas, coal, or other minerals" in the Osage Mineral Estate for the Osage Nation, and leases for such minerals shall be approved by the Secretary of Interior. Pub. L. No. 62-125, 34 Stat. 539, 543 (1906). The Secretary of Interior, in turn, has promulgated regulations to govern leases of the Osage land and Mineral Estate, including 25 C.F.R. § 214.7 which states that "[n]o mining or work of any nature will be permitted upon any tract of land until a lease covering such tract shall have been approved by the Secretary of the Interior and delivered to the lessee." Congress has dictated that such leases be "for the best interest of the Osage Tribe of Indians." Pub. L. No. 70-919, 45 Stat. 1478, 1479 (1929).

*Davilla* is instructive. As in that case, "Congress has dictated the prerequisites of a right to enter [for mining work] by statute." *Davilla*, 913 F.3d at 967. As recognized by the Tenth

---

[4] Insofar as Osage Wind contends that the court must apply the presumption of incorporation of state law unless it is established both (1) application of state law would frustrate specific federal interests, and (2) the need for a nationally uniform body of law, it is clear that one consideration may be dispositive. *See Kimbell Foods, Inc.,* 440 U.S. at 728 (emphasis added) ("*Apart from considerations of uniformity,* we must also determine whether application of state law would frustrate specific objectives of the federal programs."); *Davilla*, 913 F.3d at 972 (relying solely on the need for nationwide legal standards)

Circuit, Osage Wind's excavation work required it "to secure a federally approved lease from OMC under § 214.7." *Osage Wind, LLC*, 871 F.3d at 1092. Permitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy. *Davilla*, 913 F.3d at 967-68; *see also Grondal,* 471 F. Supp. 3d at 1129 (quoting Felix S. Cohen, *Cohen's Handbook of Federal Indian Law*, § 15.08[4], at 1049 (Nell Jessup Newton et al. eds. 2012)) ("Because Indian land claims are 'exclusively a matter of federal law,' state property laws are preempted."); *Schafer*, 2018 WL 10140171, at *8. Thus, the court declines to incorporate Oklahoma state law defenses.[5]

C.  *Defense as to Damages*

Osage Wind next contends that, even if the state-law affirmative defenses are insufficient as a matter of law to prevent liability, the defenses may apply to bar or limit the available remedies. However, as recognized by the Tenth Circuit in *Davilla*:

> [O]ur jurisprudence distinguishes between matters of right and matters of remedy. The Supreme Court has concluded that "State law cannot define the remedies which a federal court must give" and that "a federal court may afford an equitable remedy for a substantive right recognized by a State even though a state court cannot give it." *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 105, 65 S.Ct. 1464, 89 L.3d. 2079 (1945). Thus, the practice of borrowing state rules of decision does not apply with equal force to determining appropriate remedies, especially equitable remedies, as it does to defining actionable rights.

*Davilla*, 913 F.3d at 972-73. Accordingly, the court does not presume incorporation of state law as to remedies. Further, for the reasons discussed above, incorporation of state law remedies would frustrate federal Indian policy.

---

[5] Further, the court notes that, to the extent premised on unreasonable delay in bringing litigation, the four affirmative defenses other than laches are also precluded based on the law of the case doctrine. *Osage Wind, LLC,* 871 F.3d at 1087 n.6 ("The United States commenced this action within three months after turbine excavation work began, which is not an unreasonable amount of time to wait before filing suit.").

Osage Wind directs the court to the Northern District of New York's decision in *Cayuga Indian Nation of N.Y. v. Cuomo*, Nos. 80-CV-930, 80-CV-960, 1999 WL 509442 (N.D.N.Y. July 1, 1999) ("*Cayuga X*") as indicating that the court may consider the affirmative defenses of laches, unclean hands, and *in pari delicto* only during the remedies phase of this litigation. *See* [Doc. 205, p. 21]. However, in *Cayuga X,* the court was not considering affirmative defenses. Instead, the court was considering the equitable factors articulated in the Restatement (Second) of Torts to determine the appropriateness of an injunction against trespass. *Id.* at *19. The court acknowledges the similarity of those factors to some of the affirmative defenses at issue, but places greater significance on the Northern District of New York's prior grant of judgment as a matter of law as to the affirmative defense of laches.[6] *See Cayuga Indian Nation of New York v. Cuomo,* 771 F. Supp. 19, 24 (N.D.N.Y. 1991).

Nor is the court persuaded that *City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197 (2005) and *Cayuga Indian Nation of New York v. Pataki*, 413 F.3d 266, 273 (2d Cir. 2005), require a different result. In *City of Sherrill*, the U.S. Supreme Court evoked the doctrine of laches, acquiescence, and impossibility with respect to the Oneida Indian Nation of New York's land claims. *City of Sherrill,* 544 U.S. at 221. However, in that case, the tribe sought to "resist[] payment of property taxes" to the City of Sherrill relative to property originally within the Oneida's reservation, but had last been possessed by the Oneidas as a tribal entity in 1805. *Id.* at 202. The Court characterized the Tribe's claims as seeking "to regain ancient sovereignty over land" long lost to a non-Indian population, and noted that "[t]he wrongs of which OIN complains in this action

---

[6] The court further notes that it is not clear at this stage of the litigation that it would be obligated to apply the Restatement (Second) of Torts factors to determine the propriety of injunctive relief. *See Davilla*, 913 F.3d at 969 (emphasis in original) (assuming that Oklahoma follows the Restatement (Second) of Torts but noting that the Oklahoma Supreme Court has only "'quoted [the Second Restatement] with approval,' rather than *adopting* it").

9

occurred during the early years of the Republic"—over two centuries before. *Id.* at 215-17. Similarly, in *Pataki,* the Second Circuit Court of Appeals considered "land claims of historic vintage—the wrongs alleged occurred over two hundred years ago." *Pataki*, 413 F.3d at 267. Based on the relevant facts, the Second Circuit stated: "[T]he import of *Sherrill* is that 'disruptive,' forward-looking claims, a category exemplified by possessory land claims, are subject to equitable defenses, including laches." *Pataki,* 413 F.3d at 277.

Here, OMC does not seek to vindicate "land claims of historic vintage." Rather, OMC has consistently exercised its sovereignty over the Mineral Estate. Nor are the claims "disruptive" as contemplated by *City of Sherrill*. OMC does not seek ejectment of "tens of thousands of landowners*,*" *Pataki,* 413 F.3d at 275, and the claims would not "disrupt[] the governance" of Osage County, the Northern District, or Oklahoma. *City of Sherrill,* 544 U.S. at 202. Thus, *City of Sherrill* and *Pataki* are not determinative.[7]

D. *Federal Law Defenses*

Finally, Osage Wind contends that dismissal is unwarranted because the defenses are viable under federal law.

Osage Wind primarily relies on the Tenth Circuit's decision in *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982). However, in the Tenth Circuit's previous decision in this case, the panel specifically cited to *Andrus* and **declined** to dispose of the case on the equitable doctrine of laches. Thus, as discussed above, it is law of the case that assertion of laches and any

---

[7] For similar reasons, the court declines to adopt the liability versus remedy distinction articulated by the Northern District of New York in *Canadian St. Regis Band of Mohawk Indians* as to the laches and estoppel affirmative defenses. In that case, the court also considered land claims premised on events that transpired two hundred years ago. As previously stated, it is law of the case that litigation was initiated within a reasonable time. Further, the court notes that, although the New York court suggested evidence tied to laches and estoppel may be relevant at the remedy stage, the court prohibited discovery as to the defenses. 278 F. Supp. 2d at 340.

other affirmative defense premised on unreasonable delay are precluded. *See Osage Wind, LLC,* 871 F.3d at 1087 n.6 ("The United States commenced this action within three months after turbine excavation work began, which is not an unreasonable amount of time to wait before filing suit.").

Further, *Andrus* does not support assertion of the four remaining affirmative defenses. In *Andrus*, the tribe brought claims for violations of the federal regulation imposing notice procedures the United States must follow when offering oil and gas leases for sale on behalf of Indian tribes (25 U.S.C. § 171.3), as well as failure to comply with the National Environmental Policy Act (NEPA). *Andrus,* 687 F.2d at 1328. With respect to the notice claims, the trial court concluded that the defendants failed to establish the equitable defenses as a complete bar. However, the district court held the NEPA claim was barred by laches and unclean hands. In its decision affirming the trial court on these issues, the Tenth Circuit noted "the concerns addressed by NEPA do not relate to rights of Indians per se, and NEPA instead advances substantive goals for the nation as a whole by 'essentially procedural' requirements." *Id.* at 1340 n.11.

Finally, Osage Wind's citation to cases outside of the tribal land claim context that recognize this court's general equitable jurisdiction are not persuasive. As discussed above, cases regarding Indian land rights implicate specific federal concerns not recognized in other cases invoking the court's equitable jurisdiction. Although courts have applied the equitable defense of laches in some limited circumstances, the defense is foreclosed here. *See Osage Wind, LLC,* 871 F.3d at 1087 n.6. Even if it were not foreclosed, for the reasons discussed above, under these facts, it would not apply. *Cf. City of Sherrill,* 544 U.S. 197 (2005); *Pataki*, 413 F.3d 266.

For the foregoing reasons, Osage Wind is precluded from asserting the equitable defenses of estoppel, laches, waiver, unclean hands, and *in pari delicto,* and the OMC's motion for judgment on the pleadings is granted.

**Conclusion**

WHEREFORE, Intervenor-Plaintiff Osage Minerals Council's Motion for Judgment on the Pleadings [Doc. 204] is granted.

IT IS SO ORDERED this 9th day of March, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE