IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE OSAGE MINERALS COUNCIL,   )<br>  )<br>  )<br>Plaintiffs,   )<br>  )<br>vs.   )<br>  )<br>OSAGE WIND, LLC;   )<br>ENEL KANSAS, LLC; and   )<br>ENEL GREEN POWER NORTH   )<br>AMERICA, INC.,   )<br>  )<br>Defendants.   ) | Case No. 14-CV-704-GKF-JFJ |

**DEFENDANTS' REPLY TO INTERVENOR PLAINTIFF OSAGE MINERALS COUNCIL'S RESPONSE TO DEFENDANTS' PARTIAL OBJECTIONS TO MAGISTRATE JUDGE'S OPINIONS AND ORDERS [Dkt. # 223] AND THE UNITED STATES' RESPONSE TO DEFENDANTS' PARTIAL OBJECTIONS TO MAGISTRATE JUDGE'S OPINIONS AND ORDERS [Dkt. # 224]**

| | |
|---|---|
| Ryan A. Ray, OBA #22281<br>NORMAN WOHLGEMUTH, LLP<br>3200 Mid-Continent Tower<br>401 South Boston Avenue<br>Tulsa, OK 74103<br>918-583-7571<br>918-584-7846 (facsimile) | Lynn H. Slade, *admitted pro hac vice*<br>Sarah M. Stevenson, *admitted pro hac vice*<br>MODRALL, SPERLING, ROEHL,<br>HARRIS & SISK, P.A.<br>Post Office Box 2168<br>Albuquerque, NM 87103-2168<br>505-848-1800<br>505-848-9710 (facsimile) |

**ATTORNEYS FOR DEFENDANTS, OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

**Dated: March 29, 2021**

Defendants, Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively, "Defendants"), respectfully submit this reply in support of their Partial Objections to Magistrate Judge's Opinions and Orders [Dkt. # 218] ("Objections"), specifically Magistrate Judge Jayne's January 16, 2021 Opinion and Order (Dkt. # 210) ("January Order"), and in response to Intervenor Plaintiff Osage Minerals Council's ("OMC") Response to Defendants' Partial Objections to Magistrate Judge's Opinions and Orders [Dkt. # 223] ("OMC Response") and the United States Response to Defendants' Partial Objections to Magistrate Judge's Opinions and Orders [Dkt. # 224] ("US Response").

As explained in greater detail below, the United States and the OMC fail to grasp that traditional *federal* equitable jurisprudence governs the issuance of equitable remedies (ejectment specifically), including as to claims under federal law pertaining to Indian trust lands, and those *federal* principles require reversal of Magistrate Judge Jayne's Opinion and Order shielding pertinent documents from discovery solely because they pertain to "backward looking" conduct, which is also relevant to the Defendants' good faith necessarily informed by the positions of the Plaintiffs as to what was required here and why it was required.

## ARGUMENT AND AUTHORITIES

I. **A *DE NOVO* STANDARD OF REVIEW APPLIES TO ERRORS OF LAW MADE IN THE JANUARY ORDER.**

As the OMC recognizes, this Court should reverse the Magistrate Judge's January Order if it is contrary to law, and this Court conducts such review *de novo*. OMC Response at 9. When considering questions of law, however, this Court's *de novo* review does not require deference to the Magistrate Judge's legal rulings. *See, e.g.*, *Koon v. United States*, 518 U.S. 81, 100 (1996) (a court "by definition abuses its discretion when it makes an error of law"). The questions presented in the Objections are primarily of a legal nature (e.g., the evidence appropriate to a weighing of

1

the equities in this case and the necessary effects on the scope of discovery as a result), and should be reviewed *de novo*.

II. *DAVILLA* REQUIRES THE COURT TO FULLY CONSIDER THE EQUITIES AND APPLY TRADITIONAL FEDERAL EQUITY JURISPRUDENCE WHEN DOING SO.

As the United States states, "The principles of equity **are** the test for an injunction." U.S. Response at 7 n.5 (emphasis in original). Yet both the United States and the OMC encourage this Court to ignore the equities and decide, because the Project was constructed without a lease from the OMC, it must be removed. This is the exact mistake the district court in *Davilla* made. *See Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959 (10th Cir. 2019). The Tenth Circuit stressed that "the sheer right to exclude simply cannot begin and end the equitable analysis," and that the district court should have considered "the relative costs and benefits of . . . removing the pipeline." *Id*. at 974. This Court can avoid repeating the error of the *Davilla* district court by recognizing that a weighing of the equities remains in play, and that such balancing *includes* the "backward-looking" evidence sought by Defendants in discovery and barred by the Magistrate Judge.

The United States and OMC fault Defendants for relying on cases outside the Indian land claims context. *See* U.S. Response at 7 n.4, 8; OMC Response at 13-18.[1] First, any contention Defendants relied only on cases not addressing Indian lands is flatly false. As this Court recognized [Dkt. # 207, at 9], *Cayuga Indian Nation of N.Y. v. Cuomo*, Nos. 80-CV-930, 80-CV-960, 1999 WL 509442 at16 *22 (N.D.N.Y. July 1, 1999) ("*Cayuga X*"), *cited*, Objections [Dkt. # 219, at 16], emphatically required balancing of equitable factors identified in RESTATEMENT (SECOND) OF

---

[1] *Davilla* itself—in analogous circumstances—flatly rejects the proposition that there is some unique body of law that applies to the remedy of ejectment (which is injunctive relief) in the Indian trust property context: "[w]e therefore conclude that the district court erred in failing to apply the federal permanent-injunction standard . . . ." 913 F.3d at 972.

2

TORTS, § 936(a)-(g), in rejecting the Cayuga Nation's sole requested remedy of ejectment, *citing*. *United States v. Imperial Irrigation Dist.*, 799 F. Supp. 1052, 1068 (S. D. Cal. 1992), which also relied on RESTATEMENT (SECOND) § 936(a)-(g). This Court's Affirmative Defense Order [Dkt. # 207, at 9], recognized *Cayuga X* had drawn the distinction between its prior dismissal of affirmative defenses of laches, unclean hands, or others, to bar a defense to the merits entirely—and its considering evidence and factors pertinent to such a defense in equitable balancing to fashion federal equitable remedies.[2] The *Cayuga X* court, on the ejectment remedy, considered evidence of delay otherwise supporting a laches affirmative defense, noting the RESTATEMENT expressly references temporal factors (even if the same facts could be considered as to the affirmative defense of laches) as among those pertinent to considering delay, among its seven factors, in fashioning remedies for trespass to land. *Cauuga X*, 1999 WL 509442 at *25 ("'The reasonableness of the delay is tested by asking ***what should have been expected of one in the plaintiff's position as the menace to his interests from the defendant's conduct developed***.'") (quoting RESTATEMENT § 936, cmt. b (emphasis added)). Although "'prompt action following reasonably explained delay may be especially necessary[,] . . . *protests, complaints and negotiations looking toward a settlement of the controversy*, go far to explain the reasonableness of the delay.'" *Id*. (quoting RESTATEMENT § 936, cmt. b (emphasis added)). Similarly, *Brooks v. Nez Perce County., Idaho* drew the distinction this Court recognized was drawn by *Cayuga X*, rejecting laches to bar completely a claim pertaining to Indian lands, but delay remained pertinent to determine remedy for trespass. 670 F.2d 835, 837 (9th Cir. 1982) ("We conclude that laches

---

[2] Such a distinction flows directly from the text of *Davilla*—"our jurisprudence distinguishes between matters of right and matters of remedy." 913 F.3d at 972.

3

does not bar the government's claim for damages. . . . Lack of diligence by the government in exercising its role as trustee may be weighed by the district court in calculating damages.").

The RESTATEMENT "delay" factor makes pertinent the communications between the Plaintiffs to perhaps explain why, despite their knowledge of Defendants' very substantial investments ongoing and progressing since the 2011 litigation in this Court, the United States did not assert a lease was required under Section 214.7 until October, 2014. The OMC learned the size and depth of each excavation and the number of planned excavations entirely in 2011 (and perhaps earlier), and Defendants advised the OMC and the United States on October 28, 2013 of its conclusion no lease was required because "[t]he Project will not remove or sell any minerals from the Project site." *See* Dkt. # 17-2, at 42-43. Nonetheless, neither the OMC nor the United States responded to that letter or the later "Slade Memorandum," much less initiate "the protests, complaints and negotiations looking toward a settlement of the controversy" material under the RESTATEMENT, or otherwise advise Defendants a Section 214 lease was required until Defendants had made irreversible commitments to the Project and were approaching substantial completion of excavations. To whatever degree Defendants "should have known" a lease or permit was required,[3] Plaintiffs share any applicable fault. Discovery as to the communications that may shed light on Plaintiffs' knowledge and applicable responsibility is necessary to fundamental fairness in a case seeking removal of economically very significant assets and providing support for Osage County schools and workers in an environmentally responsible manner.

---

[3] The Tenth Circuit noted that its conclusion of what constituted "mining" here "does not fit nicely with traditional notions of 'mining' as that term is commonly understood." *Osage Wind*, 871 F.3d at 1092. It is for this reason—among others—that the onus should have been squarely on the United States and the OMC to explain not only that a lease or permit was required, but why this was so in these unique circumstances—never before adopted by any Court construing the applicable regulations. The failure to do so, and any communications about the matter, are relevant evidence to the claims and the Defendants' defenses to them.

4

The contention equitable considerations simply do not apply to cases involving tribal trust lands, *see* U.S. Response at 8 ("Indian land claims are unique."), OMC Response at 17, has no basis in law. *See Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1333 (10th Cir. 1982) ("The equitable nature of this suit is of paramount importance. 'When Congress leaves to the federal courts the formulation of remedial (details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights.'") (*quoting Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946)).[4] Both Plaintiffs rely substantially on *Davilla*, which itself relied on non-Indian law cases to set forth "the standard federal courts apply when granting or denying a permanent injunction." 913 F.3d at 973, citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (patent litigation); *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 541-42 (1987) (federal land oil and gas leases); *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) (Navy training operations).

The Tenth Circuit in *Davilla* did not cite to or establish an injunction standard that applies only to Indian lands; it "applied a well-developed federal common law standard for issuing a permanent injunction that will fulfill the distinct need for nationwide legal standards called for in this case." *Davilla*, 913 F.3d at 973 (internal quotation marks and citations omitted); *see also Schafer, Tr. of Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v. Centerpoint Energy Oklahoma Gas*, No. 17-CV-365-GKF-FHM, 2018 WL 10140171, at *8 (N.D. Okla. May 21, 2018) (relying on a non-Indian law case when addressing the standard for a permanent injunction, citing *Crandall v. City & Cty. of Denver, Colo.*, 594 F.3d 1231, 1235-36 (10th Cir.

---

[4] The United States ignores *Andrus*, which unquestionably applied general equitable principles to reject cancelling oil and gas leases on tribal trust lands, after concluding the leases were issued in violation of federal statutes and regulations, and the OMC cavalierly dismisses the Tenth Circuit's decision, ignoring the *principle* it reflects, distinguishing the *facts* the Tenth Circuit considered in denying lease cancellation, and ignoring its NEPA holding entirely. *See* Dkt. # 223, at 22.

5

2010) (RCRA suit related to Denver International Airport)). As established in the Objections, this federal standard is not limited to "forward-looking" evidence. *See* Objections at 7-8.

Further, the OMC argues that Defendants' cited authority regarding the relevance of plaintiffs' actions in an equity analysis is inapplicable because the cited cases do not "involve[] a trespass on Indian trust property." OMC Response at 17. Again, this argument rests on the notion that courts deciding Indian law cases cannot apply legal standards and principles established by cases in other contexts. *Davilla* illustrates that the Tenth Circuit rejects this notion, because it cited non-Indian law cases when it remanded to the district court for a balancing of the equities. 913 F.3d at 974 (citing *eBay*, 547 U.S at 392-93; *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014); *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009)). Accordingly, this Court should rely upon the authority cited in the Objections, which instructs that balancing the equities includes a consideration of the Plaintiffs'—not just Defendants'—conduct. *See* Objections at 13.

The OMC goes to great lengths in its Response to distinguish the equitable considerations at issue in the cases cited in Defendants' Objections from the equitable considerations in this case. *See* OMC Response 13-18. This is a concession that equitable considerations remain in issue here—the OMC simply disagrees with *which* equitable considerations remain. An equitable analysis is inherently fact-specific. *See Davilla*, 913 F.3d at 974 ("Injunctive relief is, by its very nature, fact-sensitive and case-specific.") (quotation marks and citations omitted). Accordingly, neither Plaintiff has established that it was proper for the Magistrate Judge to ignore federal common law on permanent injunctions and apply a new standard that would apply only to the Osage Mineral Estate.

6

**III.   DESPITE THE OMC'S CLAIMS TO THE CONTRARY, THE MAGISTRATE JUDGE'S ORDER BARS DEFENDANTS FROM DISCOVERY APPLICABLE TO THEIR EXISTING DEFENSES TO CLAIMS FOR DAMAGES AND EQUITABLE RELIEF.**

The OMC misstates the Tenth Circuit opinion as it relates to the preclusive effect of the OMC's prior *state* court litigation. In its Response, the OMC claims that Defendants "grasp for res judicata," which is "unavailing as the Tenth Circuit's reasoning above controls." OMC Response at 19. In fact, the Tenth Circuit's holding on res judicata is inapplicable to Defendants' argument that regarding "the preclusive effect of various *state court* actions." *See* Objections at 13-14 (emphasis added). The Tenth Circuit's reasoning, as quoted by the OMC, that "res judicata does not apply to [the] OMC's instant claim," OMC Response at 19 (quoting *Osage Wind*, 871 F.3d at 1087 n.5), plainly applies to the OMC's 2011 *federal court* lawsuit—which was the only preclusion issue raised in the appellate briefing (or that had been raised during the summary judgment proceedings on appeal). *See Osage Wind*, 871 F.3d at 1086. The Tenth Circuit held that the 2011 *federal court* lawsuit had no preclusive effect, but the preclusive effect of previous *state court* actions is a "live issue[] in this case," as the OMC acknowledged in its Motion to Compel.[5] Intervenor Plaintiff Osage Minerals Council's Motion to Compel Production of Documents and Brief in Support Thereof, Dkt. # 183, at 18. The OMC's misstatement of the Tenth Circuit's opinion is material here because the Magistrate Judge's Order barring discovery of "backward-looking" evidence ignores the relevance of such evidence to Defendants' "live" preclusion defense—which is plainly based upon the later state court litigation, which sought the remedy of

---

[5] Prior to issuance of the Tenth Circuit's opinion, Defendants' counsel advised the Clerk of the Court of the Oklahoma Supreme Court's decision in *Osage Nation v. Bd. of Comm'rs of Osage Cty*, 2017 OK 34, 392 P.3d 1294, pursuant to Fed. R. App. P. 28(j). The Defendants did not, however, contend that the state court litigation was *preclusive* of any issue in this case, and no court has ever even considered that issue, much less decided it.  Importantly, the Tenth Circuit made no mention of the state court litigation in its opinion. *See Osage Wind*, 871 F.3d 1078.

7

ejectment based upon the theory that the Project was or would be intruding on the Osage Mineral Estate *after* construction began. (*See* Dkt. # 150, at 4-5, 15-18 and Exh. A thereto, Dkt. # 159, at 9-10). For example, the past communications sought by Defendants could reveal whether the United States, the Osage Nation, and/or the OMC discussed (or were aware of) their claims and/or theories in this action during the pendency of the previous state court cases. This Court should adhere to the actual res judicata ruling issued by the Tenth Circuit, which requires reversal of the Magistrate Judge's bar of discovery relevant to Defendants' distinct preclusion defenses based on prior state court litigation.[6]

As Defendants argued in their Objections, at 9-10, by limiting the ability of Defendants to obtain discovery from the United States and the OMC about their knowledge, understanding, and actions during the periods *before and during* the construction of the Project, Magistrate Judge Jayne effectively foreclosed inquiry into responsibilities of Plaintiffs for not timely advising they claimed a lease or permit was required (as well as their conclusions about the *basis* for such a conclusion—and related debate and communications).[7] Neither Plaintiff, however, has explained why Defendants should not be entitled to discovery that may be relevant to the determination as

---

[6] The United States' contention that the "harm" caused by Defendants was rendering the mineral estate "inaccessible to its owners," U.S. Response at 8, has no basis in the Tenth Circuit's opinion. The Tenth Circuit did not find the mere presence of the Project to be unlawful, it concluded that the "operation" of sorting, crushing, and exploiting the crushed rocks as structural support for each wind turbine constituted mining. *Osage Wind*, 871, F.3d at 1091. If rendering the mineral estate "inaccessible" were the definition of mining, then a multitude of buildings and other structures (conceivably, all buildings and other structures) in Osage County would require a lease from the OMC. And such a theory cannot be squared with the Tenth Circuit's conclusion that it was "the sorting and crushing of minerals" that constituted mining, thus avoiding the myriad of problems with construing broader activity to be mining. *See id.* at 1092.

[7] At a minimum, the Defendants should be entitled to explore whether the United States and OMC agreed on the rationale for a lease or permit and at what point they did so. They now claim that it is so clear that the Defendants could not possibly have thought otherwise in good faith—which is a contention that should be subject to potential impeachment as the sought discovery may do.

to whether they acted in good faith in proceeding without a lease—which is a recognized limitation on the remedy of money damages in this context (which both plaintiffs expressly continue to seek). *See Ohio Oil Co. v. Sharp*, 135 F.2d 303, 308 (10th Cir. 1943) ("It is well settled that one who invades or trespasses upon the property rights of another, while acting in the good faith and honest belief that he had the legal right to do so, is regarded as an innocent trespasser and liable only for the actual damages sustained."). This Court concluded in a previous ruling that Defendants' good faith is in issue on the determination of damages. Dkt. # 171, at 3. Since Defendants' good faith (as it relates to damages) remains a live issue before the Court, the Magistrate Judge erred in barring "backward-looking" discovery relevant to Defendants' good faith (necessarily informed by the timeliness and precision with which the theory that prevailed in this litigation was communicated to the Defendants). The Magistrate Judge's Order should be reversed on this basis, and the Court should reject the United States' and the OMC's insinuations that ejectment is the primary remedy remaining in this case.

IV. **THE MAGISTRATE JUDGE'S ORDER EXCUSED THE OMC FROM RESPONDING TO TWO DISCOVERY REQUESTS FOR "IRRELEVANT" DOCUMENTS WHEN THE OMC HAD NOT ASSERTED RELEVANCY OBJECTIONS.**

As noted in Defendants' Objections, Osage Wind challenged the OMC's responses to Interrogatory No. 6, and Requests for Production Nos. 2, 13, and 14. Objections at 2. The OMC asserted a relevancy objection to Interrogatory No. 6 and Request for Production No. 14, but it did *not* assert a relevancy objection to Requests for Production Nos. 2 and 13.[8] The Magistrate Judge's Order, however, applies its relevancy ruling to excuse the OMC from responding to Requests for Production Nos. 2 and 13—giving the OMC the benefit of an objection it never raised. In its

---

[8] Defendants' Objection mistakenly identified these discovery requests as Request for Production Nos. 13 and 14, rather than Nos. 2 and 13. *See* Objections at 2.

9

Response, the OMC claims that Defendants' "characterization . . . is incorrect" because "it is clear that the OMC was asserting that the internal OMC communications that Defendants sought were nothing more than an irrelevant fishing expedition." OMC Response at 15 n. 10. In support of attacking the Defendants' "characterization," however, the OMC cited its objection to Interrogatory No. 6, where it *did* assert a relevancy objection. The OMC *did not* object to the relevancy of Requests for Production Nos. 2 and 13, which sought communications it had with the Osage Nation regarding the Osage Wind Project and the OMC's authority over leasing or permitting of minerals in Osage County. The Magistrate Judge erred in applying a relevancy ruling to excuse the OMC from responding to Requests for Production Nos. 2 and 13.

**V.  CONCLUSION.**

The Court should enter an Order reversing the January Order as contrary to law, and the denials of the Defendants' motions to compel as to both the United States and the OMC should be revisited accordingly.

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**
**Sarah M. Stevenson**
**MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.**
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**ATTORNEYS FOR DEFENDANTS, OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

11

## **CERTIFICATE OF SERVICE**

       I hereby certify that on March 29, 2021, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Stuart P. Ashworth
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
David McCullough
Jeffrey S. Rasmussen

The following non-ECF registrants have been served by email:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


/s/ Ryan A. Ray
Ryan A. Ray