IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| and | ) |
| OSAGE MINERALS COUNCIL, | ) |
| Intervenor-Plaintiff, | ) |
| v. | ) Case No. 14-CV-704-GKF-JFJ |
| OSAGE WIND, LLC, ENEL KANSAS, LLC, and ENEL GREEN POWER NORTH AMERICA, INC., | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter comes before the court on the Partial Objections to Magistrate Judge's Opinions and Orders [Doc. 218] of defendants Osage Wind, LLC; Enel Kansas, LLC; and Enel Green Power North America, Inc.[1]  For the reasons set forth below, the Objection is overruled and Osage Wind's request that this court reverse portions of the Magistrate Judge's Opinions and Orders at [Doc. 210] and [Doc. 214] is denied.

**Background and Procedural History**

This case, filed in 2014, presented the question of whether a large-scale excavation project undertaken by Osage Wind during the installation of eighty-four (84) wind turbines in Osage

---

[1] For ease of reference, the court refers to defendants Osage Wind, LLC; Enel Kansas, LLC; and Enel Green Power North America, Inc., collectively, as "Osage Wind."

County, Oklahoma constituted "mining" under regulations governing development of minerals in the Osage Mineral Estate and therefore required a lease approved by the Secretary of Interior. [Doc. 2; Doc. 20]. United States District Judge James H. Payne said "no," and, on September 30, 2015, entered Judgment in favor of Osage Wind. [Doc. 44; Doc. 45]. The United States, as trustee of the Osage Mineral Estate, did not appeal the district court's Judgment, but the Osage Minerals Council (OMC), acting on behalf of the Osage Nation, appealed.

In a September 18, 2017 Decision, the Tenth Circuit reversed the district court, and held that, pursuant to 25 C.F.R. § 214, defendants' "extraction, sorting, crushing, and use of minerals as part of its excavation work constituted 'mineral development,' thereby requiring a federally approved lease which Osage Wind failed to obtain." [Doc. 78, p. 3; *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1081-82 (10th Cir. 2017)]. The Circuit remanded the case to the district court for further proceedings consistent with the Decision. [Doc. 78, pp. 26-27]. On October 24, 2019, the Court Clerk randomly reassigned the case to the undersigned. [Doc. 89]. The court then permitted OMC to intervene in the remanded proceedings. [Doc. 136].

On July 1, 2020, this court issued an Opinion and Order limiting the United States and OMC to the relief requested in the Amended Complaint filed by the United States on December 12, 2014. [Doc. 161]; *see also* [Doc. 20]. Thereafter, OMC filed an Amended Complaint in Intervention. [Doc. 164]. In the Answer to OMC's Amended Complaint in Intervention, Osage Wind asserted seventeen separate defenses. [Doc. 174].

On August 12, 2020, Osage Wind filed a motion to compel against the United States, seeking answers to three interrogatories (Interrogatories 5, 6, and 7) and responses to three requests for production (Requests for Production 4, 5, and 6) included in Osage Wind's First Interrogatories and Requests for Production. [Doc. 177]. The interrogatories and requests for production at issue

generally sought information and documents regarding the United States' and/or Bureau of Indian Affairs' communications with the OMC, Osage Nation, and other agencies regarding the wind turbine project. *See generally* [Doc. 177-4]. The United States asserted relevancy objections to the discovery requests. *See generally* [Doc. 187-1].

Osage Wind then filed a motion to compel against the Osage Minerals Council. [Doc. 179]. The motion sought, among other things, communications between the OMC and the Osage Nation concerning this litigation. [*Id.* at p. 12].

The parties fully briefed the motions to compel, and U.S. Magistrate Judge Jodi F. Jayne held a hearing on the motions, as well as two other pending discovery motions, on October 7, 2020. [Doc. 197]. At the conclusion of the hearing, the Magistrate Judge took the motions under advisement.

While the discovery motions were pending, on November 13, 2020, the OMC sought judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) relative to five of Osage Wind's affirmative defenses: (1) estoppel, (2) laches, (3) waiver, (4) unclean hands, and (5) *in pari delicto*. [Doc. 204]. On January 11, 2021, the court granted the OMC's motion and precluded Osage Wind from asserting the equitable defenses of estoppel, laches, waiver, unclean hands, and *in pari delicto*.[2] [Doc. 207].

Thereafter, on January 16, 2021, the Magistrate Judge issued an Opinion and Order regarding the pending discovery motions, including Osage Wind's First Motion to Compel Against the United States, as well as against the OMC ("Discovery Order"). [Doc. 210]. The Magistrate Judge stated that the "discovery rulings reflect the district judge's recent preclusion" of the estoppel, laches, waiver, unclean hands, and *in pari delicto* affirmative defenses. [Doc. 210, p. 3].

---

[2] For ease of reference, the court refers to the January 11, 2021 Opinion and Order as the "Affirmative Defense Order."

In light of the preclusion of the equitable defenses, the Magistrate Judge framed the dispositive issue as "whether the requested discovery is relevant to the potential remedies of ejectment of, and a permanent injunction against, the existence and operation of the Project." [Doc. 210, p. 22].

Looking first to the applicable test, the Magistrate Judge observed that, in the Affirmative Defense Order, this court indicated it would apply the "balancing of equities" test articulated by the Tenth Circuit in *Davilla v. Enable Midstream Partners, L.P.*, 913 F.3d 959 (10th Cir. 2019), to the claims for permanent injunction and easement, and opined that such test "does not include any backward-looking considerations of past conduct or knowledge." [Doc. 210, p. 23]. Rather, the Magistrate Judge characterized the *Davilla* test as "focus[ing] on the present balance of harms to the parties and the public." [*Id.*]. Because the requested discovery related to Osage Wind's activities prior to the litigation and defendants "[did] not attempt to link their discovery requests to any present equitable concerns," Magistrate Judge Jayne concluded the requested discovery was irrelevant to the issues remaining in this litigation. [Doc. 210, pp. 21-25]. Thus, the Magistrate Judge denied Osage Wind's motions to compel. [*Id.*].[3]

Pursuant to Fed. R. Civ. P. 72(a), Osage Wind now seeks review of the Discovery Order as to the rulings on its motions to compel against the United States [Doc. 177] and the OMC [Doc. 179], respectively. Both the government and the OMC responded in opposition [Doc. 223; Doc. 224], and Osage Wind filed a reply [Doc. 225]. The Objections are therefore ripe for the court's determination.

---

[3] On March 9, 2021, the court amended the Affirmative Defense Order solely to correct a typographical error therein. *See* [Doc. 219]. Because the Discovery Order and the instant briefing cite to the January 11, 2021 Opinion and Order in the briefing and the March 9 amendment did not substantively alter the court's analysis, the court will also refer to the January 11, 2021 Opinion and Order—the Affirmative Defense Order—unless specifically noted.

4

**Standard**

Subject to certain exceptions, "[a] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court[.]" 28 U.S.C. § 636(b)(1)(A). A party may seek review by the district judge of a magistrate's judge order by filing an objection within fourteen (14) days of being served with a copy of the decision. Fed. R. Civ. P. 72(a). "Rulings by Magistrate Judges that fall within this general grant of authority are reviewed under a 'clearly erroneous or contrary to law' standard." *Jama v. City & Cnty. of Denver*, 304 F.R.D. 289, 294 (D. Colo. 2014); *see also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). "The clearly erroneous standard applies to factual findings . . . and requires that the district court affirm unless it is left with the 'definite and firm conviction that a mistake has been committed.'" *Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 637-38 (D. Kan. 2006), *subsequent determination,* 464 F. Supp. 2d 1100, *reconsideration denied*, 2007 WL 315826 (internal citation omitted) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)). "By contrast, the 'contrary to law' standard permits 'plenary review as to matters of law.'" *Id.* (quoting Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3069, at 355 (2d ed. 1997)).

**Analysis**

Osage Wind objects to the Discovery Order on two general grounds. First, Osage Wind argues the Discovery Order is contrary to law because it improperly construes *Davilla* to exclude "backward-looking" evidence from the balancing of equities. Second, Osage Wind contends that the Magistrate Judge erred in applying the relevancy ruling based on *Davilla* to excuse OMC from

5

supplementing its discovery requests because OMC allegedly did not assert a relevancy objection. The court separately considers each objection.

### A. Exclusion of "Backward-Looking" Evidence

As previously stated, the Magistrate Judge reasoned that the "balancing of equities" inquiry articulated in *Davilla* "does not include any backward-looking considerations of past conduct or knowledge," but, instead, "focuses on the present balance of harms to the parties and the public." [Doc. 210, p. 23]. Osage Wind contends this is contrary to law.

#### 1. *Davilla* and Other Authorities Cited by the Magistrate Judge

In *Davilla*, the Tenth Circuit considered whether a district court applied an incorrect legal standard to grant a permanent injunction requiring defendant Enable Midstream Partners L.P. to remove a pipeline that remained in operation after the expiration of Enable's easement rights to real property held in trust for the benefit of certain Indian allottees. *Davilla,* 913 F.3d at 964, 971. In granting the injunction, the district court relied primarily on Oklahoma law for the general principle that "equity will restrain [a continuing] trespass," and did not weigh the equities. *Id.* at 971. The Tenth Circuit held that the district court erred in failing to apply the federal permanent injunction standard, concluding "a federal district court's decision to permanently enjoin a continuing trespass on allotted land should take into account (1) whether an injunction is necessary to prevent 'irreparable harm,' (2) whether 'the threatened injury outweighs the harm that the injunction may cause' to the enjoined party, and (3) whether the injunction would 'adversely affect the public interest.'" *Id.* at 973 (quoting *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014)).

In the Objection, Osage Wind emphasizes the Tenth Circuit's description of the district court decision, which it characterized as follows: "Though it observed 'some courts have declined to enter an injunction when the trespass was unintentional *and when the landowner' delays*

*objection*, it did not think such issues at play in this case. Thus, with no further weighing of the equities, the court ordered Enable to remove the pipeline." *Id.* at 971 (internal citation omitted) (emphasis added). Osage Wind argues that, "[b]y reversing on this point, *Davilla* indicated the district court erred by *not* considering actions that occurred in the past—specifically including failing to timely assert that a structure's presence was in derogation of tribal allottees' property rights—in considering whether equitable relief was proper." [Doc. 218, p. 11 (emphasis in original)]. The court is not persuaded.

First, Osage Wind's argument is premised on the Tenth Circuit's description or summary of the district court's decision—not the court's holding. Further, looking to the district court opinion in *Davilla*, the court first explicitly stated: "Courts that have addressed whether a permanent injunction should be entered in relation to a continuing trespass do not conduct a separate analysis of the four factors a court typically considers when determining whether a permanent injunction should be entered." *Davilla v. Enable Midstream Partners, L.P.*, CIV-15-1262 (W.D. Okla. Mar. 28, 2017), Doc. 56 at p. 8. Rather, the court cited five cases for the general principle that "courts typically enter a permanent injunction when there is a continuing trespass," but noted two Oklahoma decisions in which the courts declined to enter an injunction "when the trespass was unintentional and when the landowner stands by and makes no objection until the greater part of the work has been completed." [*Id.* at pp. 8-9]. Thus, the district court's reference to a non-objecting landowner was not in the context of a balancing of the equities, as the district court had explicitly declined to apply a four-factor test and instead imposed the injunction based solely on liability. [*Id.*]; *see also Davilla,* 913 F.3d at 973 ("Accordingly, by ordering Enable to remove the pipeline on the basis of liability alone, the district court legally erred and thus abused its discretion."). Thus, the court is not persuaded that the Tenth Circuit's summary of the lower

7

court decision was intended to convey that the district court "erred by not considering actions that occurred in the past."[4]

Instead, the Tenth Circuit explicitly required consideration of the following factors in cases of continuing trespass to Indian land: "(1) whether an injunction is necessary to prevent 'irreparable harm,' (2) whether 'the threatened injury outweighs the harm that the injunction may cause' to the enjoined party, and (3) whether the injunction would 'adversely affect the public interest.'" *Davilla,* 913 F.3d at 973 (quoting *Kitchen*, 755 F.3d at 1208). The factors reflect the prospective nature of injunctive relief, *see generally Estate of Schultz v. Brown*, — F. App'x —, 2021 WL 650853, at *2 (10th Cir. Feb. 19, 2021) (unpublished), and focus on the future effect of the requested relief. Thus, in *Davilla*, the court emphasized the importance of "knowing the relative costs and benefits of [defendant] removing the pipeline, either as they pertain to these parties or the public at large." *Davilla,* 913 F.3d at 974. Likewise, in this case, the court will consider the relative costs and benefits of removal, both as to the parties hereto and the public at large.[5]

In addition to criticizing the interpretation of *Davilla*, Osage Wind contends that the Magistrate Judge erred in her reading of the U.S. Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). In *eBay, Inc.,* the Court reiterated, "[a]ccording to

---

[4] In fact, applying the erroneous standard, the district court *did* consider the plaintiff's past conduct in objecting to defendants' continuing trespass. *Davilla v. Enable Midstream Partners, L.P.*, CIV-15-1262 (W.D. Okla. Mar. 28, 2017), Doc. 56 at p. 9.

[5] Insofar as Osage Wind argues that the requested discovery is relevant to the equitable factors articulated in the RESTATEMENT (SECOND) OF TORTS § 936, Osage Wind has not demonstrated that the test applies in this case, either with respect to an ejectment remedy or permanent injunction. *See* [Doc. 191, p. 5 n.3 (conceding that, in the context of alleged trespass on Indian land, ejectment is a form of injunctive relief); Doc. 209, p. 2 n.1]. Further, in the Affirmative Defense Order—in the context of cases cited by the parties in the relevant briefing—the court did not signal it would apply the RESTATEMENT test. Rather, it footnoted that it was not clear that the court would be obligated to apply the RESTATEMENT. [Doc. 207, p. 9, n.6 (quoting *Davilla*, 913 F.3d at 969)].

8

well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief," specifically to demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391.

In *Davilla*, the Tenth Circuit "acknowledge[d] that our circuit's articulation of the rule differs slightly from that of the Supreme Court in *eBay*," but concluded "the two articulations capture the same considerations in any event." *Davilla*, 913 F.3d at 973 n.9. Significantly, Osage Wind does not direct the court to anything in the Supreme Court's *eBay* decision requiring consideration of "backward-looking" evidence. *See* [Doc. 218, p. 12]. Rather, Osage Wind relies on *the district court's* (the Eastern District of Virginia) interpretation of the factors on remand. [*Id.*]. Respectfully, that district court's decision is neither precedential nor persuasive as it did not relate to trespass to Indian land.[6] Further, the district court discussed the parties' prior behavior in the context of "unclean hands," a defense unavailable to Osage Wind in this action. *See MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 588-89 (E.D. Va. 2007).

---

[6] Additionally, the court notes that, in *eBay*, the Supreme Court cited *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) and *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987), to articulate the four factors. In those cases, the Court stated a district court must "balance[] the conveniences of the parties and *possible* injuries to them according as they *may be affected* by the granting or withholding of the injunction," *Weinberger,* 456 U.S. at 312 (emphasis added), and "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co.*, 480 U.S. at 542. These decisions also suggest that the court should look only to prospective considerations. However, the court need not decide whether the permanent injunction inquiry is *always* limited to forward-looking evidence, as *Davilla* is dispositive of the issue under these facts.

2. Additional Authorities Cited by Osage Wind

In addition to arguing that the cases relied on by the Magistrate Judge do not preclude the relevance of "backward-looking" evidence, Osage Wind asserts that "[o]ther relevant case law" also suggests that the Magistrate Judge erred in ruling the equitable analysis in this case is not backward-looking. *See* [Doc. 218, pp. 13-18]. Osage Wind first directs the court to *Weinberger, Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933), *Ohio Oil Co. v. Sharp,* 135 F.2d 303 (10th Cir. 1943), and *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806 (1945). These cases are not persuasive as they do not relate to Indian land claims. In the specific context of Indian land claims, the undersigned has previously written that permitting third-parties to avoid liability for violation of the stringent leasing requirements of 25 C.F.R. § 214.7 by pointing to the Osage Nation's own conduct would frustrate federal Indian law policy. *See* [Doc. 207, pp. 7-8]. Accordingly, recitations of the general principles of equity—that do not contend with the strong federal policy in favor of vindicating Indian law claims—do not persuade the court that it must consider the United States and OMC's past conduct to determine the propriety of equitable relief.[7]

Osage Wind points the court to decisions of the Fourth, Second, and Fifth Circuits, dating to 1941, 1920, and 1961, respectively, to argue that the court's equity jurisdiction specifically *requires* application of the "clean hands doctrine" "even though the Court has stricken the affirmative defense." [Doc. 218, p. 17]. This court previously dismissed Osage Wind's delay-based defenses, including unclean hands, reasoning the equitable defenses were inapplicable under

---

[7] *Keystone Driller Co.* and *Precision Instrument Manufacturing Co.* were decided in the context of patent law. It is firmly established in patent law jurisprudence that "a person sued for infringement may challenge the validity of the patent on various grounds, including fraudulent procurement." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 176 (1965) (citing *Keystone Driller Co.* and *Precision Instrument Manufacturing Co.*).

10

the factual circumstances. [Doc. 207; Doc. 219]. For the same reasons, the court is not persuaded that "clean hands" and other backward looking variants of the affirmative defense of unclean hands are relevant to determine the availability of equitable relief here, in the context of a tribal land claim. *See* Opinion and Order at Doc. 207, pp. 6-8. Thus, application of the "clean hands doctrine" is not required. *See CGC Holding Co. v. Hutchens*, 974 F.3d 1201, 1214 (10th Cir. 2020) (internal citation omitted) (quoting *Houston Oilers, Inc. v. Neely,* 361 F.2d 36, 42 (10th Cir. 1966)) ("[T]he [unclean hands] doctrine 'does not exclude all wrongdoers from a court of equity nor should it be applied in every case where the conduct of a party may be considered unconscionable or inequitable.' And district courts have discretion in deciding whether to apply the unclean hands doctrine.").

For all of these reasons, the court concludes the Magistrate Judge's interpretation of *Davilla* and general equitable principles was not contrary to law.

        3.        Relevance to Affirmative Defense of Res Judicata

Regardless of the equitable defenses precluded in the Affirmative Defense Order, Osage Wind contends that the requested discovery is relevant to its affirmative defense of res judicata (a/k/a claim preclusion).

As an initial matter, it does not appear that the relevance of the discovery to res judicata was sufficiently raised and argued before the Magistrate Judge. Osage Wind's motion to compel against the United States refers to res judicata only once [Doc. 177, p. 23], and res judicata was specifically referenced only once during the motion hearing and, then, by the OMC rather than Osage Wind.[8] [Doc. 198, p. 46]. "[P]erfunctory complaints [that] fail to frame and develop an issue [are not] sufficient to invoke appellate review." *Femedeer v. Haun*, 227 F.3d 1244, 1255

---

[8] The court notes defense counsel generally referred to "defenses based on timing and consistency of position." [Doc. 198, p. 34].

(10th Cir. 2000) (quoting *Murrell v. Shalala,* 43 F.3d 1388, 1389 n.2 (10th Cir. 1994)). For this reason, the Magistrate Judge's denial of the requested discovery was not contrary to law, although res judicata remains a "live issue" in this litigation.[9]

Additionally, Osage Wind fails to tie the requested discovery to any principles of law underlying res judicata/claim preclusion. Federal courts must give a state court judgment the same preclusive effect as would its originating state." *Campbell v. City of Spencer*, 777 F.3d 1073, 1077-78 (10th Cir. 2014) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984)). Thus, the court must look to Oklahoma law.

Osage Wind argues that, because Oklahoma law applies claim preclusion principles to "bar the relitigation of issues by the parties or their privies which were *or could have been litigated* in an action," communications illustrating the United States and OMC's knowledge of potential claims prior to this litigation is relevant. *Carris v. John R. Thomas & Assocs., P.C.*, 896 P.2d 522, 527 (Okla. 1995) (emphasis added). To determine the application of res judicata/claim preclusion, Oklahoma courts are "not limited to the mere formal judgment," but may also look to "pleadings, verdict or findings." *Hine v. Bd. of Cnty. Comm'rs of McClain Cnty.,* 108 P.2d 112, 116 (Okla. 1940). "The scope and meaning of the judgment is often determined by the pleadings." *Id.* Thus, although the court may look beyond the judgment entered in any prior state-court proceedings, it appears that the relevant inquiry is limited to court filings and proceedings. Osage Wind has not shown that the inquiry extends to internal communications amongst the parties and third-parties. For this additional reason, Osage Wind fails to demonstrate the relevance of the requested discovery to its res judicata/claim preclusion affirmative defense.

---

[9] Likewise, the court does not consider the potential relevance of the requested discovery to Osage Wind's good faith in proceeding without a lease, as Osage Wind raised this argument for the first time in its reply in support of its Objection. *See* [Doc. 225, p. 10].

12

4.      Argument that "Forward Looking" Ruling Must Apply to All Evidence

Finally, with respect to "forward looking" evidence, Osage Wind argues that, "if the Court overrules the objections . . . it must also limit the United States and the OMC to 'forward-looking' evidence when considering the *Davilla* factors." [Doc. 218, p. 23]. Osage Wind's argument is vague and unmoored to any specific factual or legal context, and the court is therefore unable to assess the merits of the argument as applied to other, unspecified evidence. Thus, Osage Wind's argument does not merit reversal of portions of the Magistrate Judge's Opinions and Orders. And any objections to specific discovery requests, or any motions *in limine* as to specific evidence, will be addressed in due course.

B.     *Relevancy Objection as Applied to OMC*

Osage Wind also contends that the Magistrate Judge erred by applying the *Davilla* relevancy analysis to its discovery requests to the OMC, "when the OMC had not asserted a relevancy objection." [Doc. 218, p. 6]. However, Osage Wind failed to brief the issue in its Objection and therefore "may not assign as error" the alleged defect. Rather, the issue is fully argued only in the reply brief before this court. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections."); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").

Even if Osage Wind had sufficiently briefed the objection in the first instance, the court has conducted a *de novo* review of the OMC's discovery responses, and concludes that OMC sufficiently asserted a relevance objection to the requested discovery. The court interprets OMC's Responses to Defendants' First Set of Interrogatories and Requests for Production to include the relevance objection. *See generally* [Doc. 179-3]. Moreover, the undersigned did not issue the

13

Affirmative Defense Order until January 11, 2021. [Doc. 207]. Within two days, OMC joined in support of a Notice filed by the United States that articulated an objection to relevancy in light of that Order. [Doc. 208]. Accordingly, the court concludes that OMC sufficiently asserted a relevancy objection, and the Magistrate Judge committed no error in this regard.

## Conclusion

WHEREFORE, the Partial Objections to Magistrate Judge's Opinions and Orders [Doc. 218] of defendants Osage Wind, LLC; Enel Kansas, LLC; and Enel Green Power North America, Inc. are overruled, and Osage Wind's request that this court revisit reverse portions of the Magistrate Judge's Opinions and Orders at [Doc. 210] and [Doc. 214] is denied.

IT IS SO ORDERED this 21st day of May, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE