**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)  UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| (2) OSAGE MINERALS COUNCIL, | ) | Case No. l4-CV-704-GKF-JFJ |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (1) OSAGE WIND, LLC; | ) | |
| (2) ENEL KANSAS, LLC; and | ) | |
| (3) ENEL GREEN POWER | ) | |
| NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**INTERVENOR PLAINTIFF OSAGE MINERALS COUNCIL'S OPPOSITION TO
DEFENDANTS' MOTION TO RECONSIDER OPINION AND ORDER GRANTING
OSAGE MINERALS COUNCIL'S MOTION FOR JUDGMENT ON THE PLEADINGS
[DKT. # 207, AMENDED BY DKT. # 219] AND OPINION AND ORDER DENYING
DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S OPINIONS AND
ORDERS [DKT. # 210 AND # 214]**

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION ...........................................................................................................1

PROCEDURAL BACKGROUND ...................................................................................2

    a. The Court's January 11, 2021 Opinion And Order ("Affirmative Defenses Order") .........2

    b. The Court's May 21, 2021 Opinion And Order ("Objections Order") ..............................4

STANDARD OF REVIEW ..............................................................................................7

ARGUMENT.....................................................................................................................9

    a. This Court Has Correctly, And Repeatedly, Applied *Davilla* ..............................................9

        i. The Court Correctly Applied *Davilla* in Issuing the Affirmative Defenses Order .9

        ii. The Court Correctly Applied *Davilla* in Issuing the Objections Order.................12

    b. Defendants' Delay-Based Affirmative Defenses Were Properly Dismissed ...................14

    c. This Court Did Not "Misapply" The Law Of The Case Doctrine....................................22

CONCLUSION ................................................................................................................25

CERTIFICATE OF SERVICE.........................................................................................27

### TABLE OF AUTHORITIES

**Cases**

*Arnold v. Navika Cap. Grp., LLC.*
   No. 14-CV-378-GKF-FHM, 2015 WL 12990468 (N.D. Okla. July 1, 2015) .............. 1, 8

*Brooks v. Nez Perce County.*
   670 F.2d 835 (9th Cir. 1982) ........................................................................19

*Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. N.Y.*
   No. 80-CV-930, 1999 WL 509442 (N.D.N.Y. July 1, 1999) ....................................19, 22

*Cayuga Indian Nation of N.Y. v. Cuomo*
   413 F.3d 266 (2nd Cir. 2005) .................................................................17, 22

*Cayuga Indian Nation of N.Y. v. Pataki*
   413 F.3d 266 (2nd Cir. 2005) ........................................................................17

*City of Sherrill v. Oneida Indian Nation*
   544 U.S. 197 (2005) ................................................................................ 16-18

*Davila v. Enable Midstream Partners L.P.*
   913 F.3d 959 (10th Cir. 2019) ...................................................................*passim*

*eBay Inc. v. MercExchange, L.L.C.*
   547 U.S. 388 (2006) ........................................................................ 7, 10-12

*Grondal v. Mill Bay Members Ass'n Inc.*
   471 F. Supp. 3d 1095 (E.D. Wash. 2020) .................................................10, 22

*Jicarilla Apache Tribe v. Andrus*
   687 F.2d 1324 (10th Cir. 1982) .................................................................4, 15, 18

*Kamen v. Kemper Fin. Servs., Inc.*
   500 U.S. 90 (1991) ......................................................................................22

*Kruskal v. Martinez*
   429 F. Supp. 3d 1026 (D.N.M. 2019) ................................................................ 8

*McIlravy v. Kerr-McGee Coal Corp.*
   204 F.3d 1031 (10th Cir. 2000) ........................................................................3

*MercExchange, L.L.C. v. eBay, Inc.*
   500 F. Supp. 2d 556 (E.D. Va. 2007) .............................................................11

*Meuers L. Firm, P.L. v. Reasosr's, LLC*

No. 16-CV-208-GKF-JFJ, 2020 WL 8717106 (N.D. Okla. Sept. 17, 2020) .................... 7

*Oneida Cnty. v. Oneida Indian Nation of N.Y.*
470 U.S. 226 (1985) .........................................................................................10

*Oneida Indian Nation v. Cnty. of Oneida*
414 U.S. 661 (1974) ..........................................................................................22

*Oneida Indian Nation of N.Y. v. New York*
691 F.2d 1070 (2d Cir. 1982) .....................................................................3, 22

*Schafer, Trustee of Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v.*
*Centerpoint Energy Okla. Gas*
No. 17-CV-365-GKF-FHM, 2018 WL 10140171 (N.D. Okla. May 21, 2018)...............22

*Seneca Nation of Indians v. New York*
No. 93-CV-688A, 1994 WL 688262 (W.D.N.Y. Oct. 28, 1994) ..................................4, 22

*SFF-TIR, LLC v. Stephenson*
264 F. Supp. 3d 1148, 1221 (N.D. Okla. 2017) .......................................................... 8, 24

*Shinnecock Indian Nation v. N.Y.*
No. 05-CV-2887, 2006 WL 3501099 (E.D. N.Y. 2006) .....................................................17

*State of New Mexico v. Aamodt*
537 F.2d 1102 (10th Cir. 1976) ...............................................................................4

*United States v. Osage Wind, LLC*
871 F.3d 1078 (10th Cir. 2017) ...............................................................................*passim*

*Voelkel v. General Motors Corp.*
846 F.Supp. 1482 (D.Kan.), *aff'd*, 43 F.3d 1484 (10th Cir.1994) ........................ 7, 16, 19

**Statutes**

Pub. L. No. 70-919, 45 Stat. 1478 (1929) .........................................................9, 16, 25

**Court Rules**

Fed. R. Civ. P. 54(b).............................................................................................7, 19

**Federal Regulations**

29 C.F.R. § 214...................................................................................................9

Plaintiff-Intervenor the Osage Minerals Council ("OMC") hereby files its Opposition to the Motion to Reconsider Opinion and Order Granting Osage Minerals' Council's Motion for Judgment on the Pleadings, Dkt. 219, and Opinion and Order Denying Defendants' Objections to Magistrate Judge's Opinions and Orders, Dkt. 226 (the "Motion"), filed by Defendants Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively, "Defendants").

## I.   INTRODUCTION

Defendants' motion to reconsider does nothing more than repackage and regurgitate precisely the same arguments they have made before. They offer no new law, no new facts, and no explanation for how this Court's previous decisions are wrong or unjust. And although Defendants are dissatisfied with this Court's prior rulings, that dissatisfaction does not vest them with an automatic right to reconsideration.

To justify a motion for reconsideration, Defendants must show "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [and/or] (3) the need to correct clear error or prevent manifest injustice." *Arnold v. Navika Cap. Grp., LLC*, No. 14-CV-378-GKF-FHM, 2015 WL 12990468, at *1 (N.D. Okla. July 1, 2015) (internal quotations omitted). Defendants have not cited to any new intervening change in the law that strips the Osage Nation of its inherent sovereignty over the Osage Mineral Estate. Defendants offer no new evidence to support their claim that this Court's prior decisions are erroneous. Defendants cite to the deposition of their expert Kimberlee Centera, but, as described in greater detail below, the testimony they have asked the Court to consider only demonstrates that she has no expertise or knowledge of the unique facts of this case. Centera's testimony does nothing to support Defendants' far-fetched notion that communications from the United States and the OMC prior

to this litigation are at all relevant to the factors the Court must now apply, in considering the OMC's request for permanent injunctive relief.

Last, but not least, Defendants cannot demonstrate any injustice, let alone a "manifest" injustice. The Tenth Circuit has decided that Defendants violated federal laws requiring them to have a lease from the OMC approved by the United States. Their argument that a trespassing wind industrial energy facility allegedly serves the public interest because it pays for schools and creates renewable energy is appropriate for a *Davilla* weighing of the equities argument on summary judgment, not in a motion for reconsideration of prior rulings at this stage of the case. These public interest arguments do not constitute a "manifest injustice."

Defendants have repeatedly refused to accept legal mandates from federal and Osage authorities—including this Court. Under the Federal Rules of Civil Procedure, however, a motion for reconsideration requires more than a simple refusal to accept the law as stated. Accordingly, Defendants' Motion must be dismissed.

I.   **PROCEDURAL BACKGROUND**

a.   **The Court's January 11, 2021 Opinion And Order ("Affirmative Defenses Order")**

On January 11, 2021, this Court granted the OMC's Motion for Judgment on the Pleadings. *See* Dkt. 219. In granting the OMC's Motion, the Court ruled that, as a matter of law, Defendants could not raise certain affirmative defenses against Plaintiffs' claims that Defendants trespassed on the Osage Mineral Estate when they illegally mined the Estate without the required lease. *See generally* Dkt. 219. As a result, Defendants' affirmative defenses of estoppel, laches, waiver, unclean hands, and *in pari delicto* have been dismissed, as a matter of law. *See id.* at 11.

In granting the OMC's Motion for Judgment on the Pleadings, the Court first addressed the law of the case as to laches, holding that the "OMC [was] entitled to judgement on the

pleadings *as to laches*" since the Tenth Circuit previously concluded "that the United States commenced this action within a reasonable time and therefore declined to dispose of this action based on laches." *Id*. at 5 (emphasis added). That is, the Affirmative Defenses Order adopted the Tenth Circuit's laches determination as "'a rule of law[] that [] should continue to govern the same issue[] in subsequent stages in the same case.'" *Id.* at 4 (quoting *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 (10th Cir. 2000)).

With regards to the remaining affirmative defenses of estoppel, waiver, unclean hands, and *in pari delicto*, the Court first looked to the Tenth Circuit's decision in *Davilla v. Enable Midstream Partners L.P.*, noting that federal courts only "incorporate Oklahoma law into [a] federal claim so long as it does not frustrate federal policy." *Id.* at 6–7 (quoting *Davilla*, 913 F.3d 959, 969 (10th Cir. 2019)). The Court underscored that "[p]ermitting third-parties to avoid [] stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy," since it was "Congress [that] dictated the prerequisites" for mining the Osage Mineral Estate. *Id.* at 7–8; *see Davilla*, 913 F.3d at 967-68. Accordingly, under the Tenth Circuit's analysis in *Davilla*, Defendants' state law based affirmative defenses could not be asserted against the OMC's claims that Defendants trespassed on the Osage Mineral Estate. *See id.*

This Court's decision was further bolstered by the fact that Defendants trespassed on property held in trust by the United States, for the benefit of a Tribal Nation—the Osage Nation. *See id.* at 5 (noting that "courts have consistently recognized that tribes, as well as the United States while acting as a trustee on behalf of Indian tribes, are not subject to 'state delay-based defenses.'") (quoting *Oneida Indian Nation of N.Y. v. New York*, 691 F.2d 1070, 1084 (2d Cir. 1982)); *see also, e.g., id.* ("Estoppel does not run against the United States when it acts as trustee

for an Indian tribe.") (quoting *State of New Mexico v. Aamodt*, 537 F.2d 1102, 1110 (10th Cir. 1976); *id.* at 6 ("[T]he application of the state law-based defense[] of . . . unclean hands would contravene established policy pertaining to Indians' ability to enforce their property rights.") (quoting *Seneca Nation of Indians*, No. 93-CV-688A, 1994 WL 688262, *1 (W.D.N.Y. Oct. 28, 1994)).

Finally, this Court rejected Defendants' argument that their state-based affirmative defenses were also viable under federal law, and specifically, pursuant to the Tenth Circuit's decision in *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982). Dkt. 219, 10. This Court determined that the facts and applicable laws in *Andrus*, namely, compliance with the National Environmental Policy Act—a law that "do[es] not relate to right of Indians per se, . . . [but] instead advances substantive goals for the nation as a whole"—were distinguishable from the present case dealing with federal law specific to the Osage Nation. *Id.* at 11 (quoting *Andrus*, 687 F.2d at 1340, n.11).

Defendants did not seek reconsideration of the Affirmative Defenses Order immediately, and instead waited over five months to request this Court to reconsider its January 11, 2021 decision.

**b. The Court's May 21, 2021 Opinion And Order ("Objections Order")**

Following this Court's January 11, 2021 decision, the Magistrate Judge issued rulings on four separate motions to compel. *See* Dkt. 210. On January 16, 2021, the Magistrate Judge issued an Order granting Plaintiffs' motions to compel Defendants' production of documents related to a "detailed legal analysis" that Defendants had put at issue by arguing that Defendants' trespass on the Osage Mineral Estate was committed in good faith reliance on a particular "detailed legal analysis" generated by Defendants' counsel. *See* Dkt. 175; Dkt. 183. The Magistrate Judge

concluded that "Defendants have injected the 'detailed legal analysis,' as a whole, into the litigation for the factfinder's consideration by relying on the attorneys' conclusions and analysis to prove an innocent state of mind," Dkt. 210, 13, and as a result, the Magistrate Judge ordered production of documents concerning the same. *See id.* at 25–26.

In the same Order, the Magistrate Judge denied Defendants' motions to compel Plaintiffs' production of documents that Defendants claimed were relevant to their affirmative defenses of estoppel, laches, waiver, etc. *See* Dkt. 177; Dkt. 179. Specifically, Defendants sought the production of internal communications from the OMC and United States from 2011 to 2014, for the purpose of demonstrating that both had failed to timely notify Defendants of the legal requirement to obtain a lease. *See* Dkt 177, ¶¶ 23–24; Dkt. 179, 18. Defendants noted they had "asserted the following defenses . . . [e]stoppel; [l]aches; and [w]aiver" against the United States, *id.* at ¶ 23 (citing Dkt. 99, 12), and explained that "[t]he essential factual basis of these defenses is that . . . . the United States (including, but not limited to, the BIA and Interior) failed to clearly and timely articulate the theories now at issue." *Id.* at ¶ 24.

To analyze Defendants' motions to compel, the Magistrate Judge considered "whether the requested discovery is relevant to the potential remedies of ejectment of, and a permanent injunction against, the existence and operation of the Project" under the three-factor *Davilla* test that this Court has indicated governs claims for equitable relief in this case. Dkt. 210, 22. The Magistrate Judge concluded that the requested discovery concerning the United States' and the OMC's past conduct was *not* relevant to the *Davilla* factors, as those factors "focus[] on the present balance of harms to the parties and the public." *Id.* at 23; *see also id.* (concluding that the "balancing of the equities under *Davilla* does not include any backward-looking considerations of past conduct or knowledge."). Accordingly, the Magistrate Judge determined that the

backward-looking communications Defendants sought were irrelevant to the issues remaining in the litigation.

On March 8, Defendants filed their Partial Objection to the Magistrate Judge's Discovery Order—and not this Court's January 11, 2021 Affirmative Defenses Order—challenging the portions of the Magistrate Judge's Order that denied discovery of "backward-looking" evidence under the balancing of equities articulated in *Davilla*. Dkt. 218 ("Partial Objection"). The OMC filed a brief in opposition. Dkt. 223.

On May 21, 2021, this Court issued its Opinion and Order rejecting the arguments Defendants asserted in their Partial Objection to the Magistrate Judge's Discovery Order. Dkt. 226 (the "Objections Order"). First, this Court clarified that Defendants' analysis of *Davilla* mischaracterized the holding in the case. Dkt. 226, 7. Defendants argued that the Tenth Circuit "indicated the [*Davilla*] district court erred by *not* considering actions that occurred in the past," Dkt. 218, 6, because—as Defendants put it—the Tenth Circuit allegedly concluded that "some courts have declined to enter an injunction when the trespass was unintentional and when the landowner delays' objection,' [but] did not weigh these equities before granting injunction." Dkt. 218, 6. This Court rejected Defendants' interpretation of *Davilla* outright, noting that the *Davilla* "district court's reference to a non-objecting landowner was not in the context of a balancing of the equities," and thus the Tenth Circuit's reversal does not constitute precedent supporting the notion that an alleged delay in an Indian landowner's objection is at all relevant to the Court's balancing of the equities. Dkt. 226, 7. Instead, this Court noted that:

> [T]he Tenth Circuit explicitly required consideration of the following factors in cases of continuing trespass to Indian land: (1) whether an injunction is necessary to prevent "irreparable harm," (2) whether "the threatened injury outweighs the harm that the injunction may cause" to the enjoined party, and (3) whether the injunction would "adversely affect the public interest."

*Id.* at 8 (quoting *Davilla,* 913 F.3d at 973). This Court further found that these "factors reflect the prospective nature of injunctive relief." *Id*. at 8 (citations omitted).

This Court also rejected Defendants' contention that the Magistrate Judge had erred when she failed to interpret *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), as supporting Defendants' argument that backward-looking evidence regarding the OMC's and the United States' alleged delay would be relevant to the balancing of the equities test under *Davilla*. This Court noted that Defendants' reliance on *eBay* and other patent law cases was misplaced, "as they do not relate to Indian land claims." *Id.* at 9–10. Referencing the Affirmative Defenses Order, this Court stated that "recitations of the general principles of equity—that do not contend with the strong federal policy in favor of vindicating Indian law claims—do not persuade the court that it must consider the United States and OMC's past conduct to determine the propriety of equitable relief." *Id.* at 10.[1]

On June 14, 2021, Defendants, for the first time since January 11, 2021, requested this Court to reconsider its order granting the OMC's Motion for Judgment on the Pleadings (the "Affirmative Defenses Order"), as well as this Court's Opinion and Order that denied Defendants' Objections to the Magistrate Judge's Opinions and Orders (the "Objections Order"). For the reasons articulated in greater detail below, the Defendants' Motion should be denied.

## II.   STANDARD OF REVIEW

Although Federal Rule of Civil Procedure 54(b) affords this Court discretion to revisit an order or decision "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties," FED. R. CIV. P. 54(b), "[a] motion to reconsider is not a second chance for

---

[1] This Court also concluded that "Osage Wind fails to demonstrate the relevance of the requested discovery to its res judicata/claim preclusion affirmative defense." Dkt. 226, 12.

the losing party to make his strongest case or to dress up arguments that previously failed." *Voelkel v. General Motors Corp.*, 846 F.Supp. 1482, 1483 (D.Kan.), *aff'd*, 43 F.3d 1484 (10th Cir.1994). Indeed, "reconsideration is an extraordinary remedy, and can only be provided when the court has misapprehended the facts, a party's position, or the law." *Arnold v. Navika Capital Group, LLC*, 14-CV-378-GKF-FHM, 2015 WL 12990468, at *1 (N.D. Okla. July 1, 2015) (internal quotations and citations omitted). Accordingly, "[s]pecific grounds for reconsideration include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (internal quotations omitted).

Moreover, "[u]nlike the motion that produced the prior ruling, a motion to reconsider is not—and is not supposed to be—a fair fight procedurally. The deck is stacked against a movant for reconsideration." *Meuers L. Firm, P.L. v. Reasor's, LLC*, No. 16-CV-208-GKF-JFJ, 2020 WL 8717106, at *3 (N.D. Okla. Sept. 17, 2020) (quoting *SFF-TIR, LLC v. Stephenson*, 264 F. Supp. 3d 1148, 1221 (N.D. Okla. 2017)). Accordingly, "[t]he court analyzes motions to reconsider by picking up where it left off in the prior ruling—not by starting anew." *Kruskal v. Martinez*, 429 F. Supp. 3d 1012, 1026 (D.N.M. 2019). Thus, movants for reconsideration "carry the full burden of production: they must persuade the Court, using only the evidence and argument they put before it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research." *SFF-TIR, LLC*, 264 F. Supp. 3d at 1221.

Although Defendants want a second chance at arguments already lost, guiding Tenth Circuit precedent commands that they demonstrate new law, new facts, or some clear error or manifest injustice. *See Arnold*, 2015 WL 12990468, at *1. Here, Defendants have not, and

cannot. Defendants have done nothing more than regurgitate the same erroneous arguments that this Court has previously thoroughly considered and dismissed. As such, their Motion should be dismissed.

III.   ARGUMENT

   a.   **This Court Has Correctly, And Repeatedly, Applied *Davilla***

      i.   The Court Correctly Applied *Davilla* in Issuing the Affirmative Defenses Order

Defendants baldly assert that this Court, in dismissing Defendants' delay-based affirmative defenses as a matter of law, "[m]isread *Davilla*" because "*Davilla* did not in any way indicate it foreclosed consideration of inequitable pre-litigation conduct of plaintiffs." Defs. Mot. 8. If this sounds familiar, that is because it is. Defendants have repeatedly insisted that "*Davilla* [does not] prohibit consideration by this Court of 'backward-looking' evidence, or evidence of the United States' or the OMC's actions or words prior to the initiation of this lawsuit or the consideration of evidence relevant to the equities." Dkt. 218, 5.

In response to this very same argument, when it was previously made, this Court considered *Davilla*'s proscription that federal courts may '"incorporate Oklahoma law into this federal claim so long as it does not frustrate federal policy."' Dkt. 219, 7 (quoting *Davilla,* 913 F.3d at 969). And because Defendants' delay-based affirmative defenses all sound in Oklahoma law, this Court found that "*Davilla* is instructive. As in that case, 'Congress has dictated the prerequisites of a right to enter [for mining work] by statute."' *Id.* (quoting *Davilla*, 913 F.3d at 967). The right to enter the Osage Mineral Estate for mining purposes is by lease, and lease alone, and "Congress has dictated that such leases be 'for the best interest of the Osage Tribe of Indians."' *Id.* (quoting Pub. L. No. 70-919, 45 Stat. 1478, 1479 (1929)). Accordingly, the Tenth Circuit Court of Appeals concluded that "Osage Wind's excavation work required it 'to secure a

federally approved lease from OMC under § 214.7.'" *Id.* at 8 (quoting *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1092 (10th Cir. 2017)).

And, as this Court found, "[p]ermitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy." *Id.* (citing *Davilla*, 913 F.3d at 967-68). Thus, under *Davilla*, this Court is not permitted to incorporate Oklahoma law based affirmative defenses to defeat the OMC's claim of trespass on Indian trust property because doing so would violate the clear mandate Congress has provided for mining on the Osage Mineral Estate.[2] In asking for reconsideration of this conclusion, Defendants have not cited to any intervening legislation to indicate that Congress has changed its mind with regards to how the United States, as trustee, is to administer the Osage Mineral Estate. Nor have Defendants pointed to a new line of authority from the Tenth Circuit permitting Defendants to mine the Osage Mineral Estate without a lease.

Instead, Defendants assert that this Court should read *Davilla* through the lens of non-Indian law cases, specifically, patent cases. *See, e.g.,* Defs Mot. 9 (asserting that *Davilla* "cite[d] with approval [] the decision in *eBay*, 547 U.S. at 391, in which the Supreme Court, far from decreeing some unique patent-derived rule, brought the 'patent injunction' test in line with the injunction test used elsewhere in federal jurisprudence . . . ."). This argument, too, is a cut and paste from the past. Just a few months ago, Defendants argued that "*Davilla . . .* cited non-

_____

[2] In evaluating the statutory protections afforded to the Osage Mineral Estate, including whether state-law affirmative defenses may shield a trespasser of the Estate from liability, this Court examined a robust body of Indian land cases, beyond *Davilla*, to conclude that state-law affirmative defenses are inapplicable to a trespass on an Indian trust asset. *See, e.g.,* Dkt. 219, 7 (quoting *Oneida Cnty. v. Oneida Indian Nation of N.Y.*, 470 U.S. 226, 241 (1985)) ("Indian land claims [are] exclusively a matter of federal law."); *id*. at 8 (quoting *Grondal v. Mill Bay Members Ass'n, Inc.*, 471 F. Supp. 3d 1095, 1129 (E.D. Wash. 2020)) ("Because Indian land claims are 'exclusively a matter of federal law,' state property laws are preempted.").

Indian law cases when it remanded to the district court for a balancing of equities," Dkt. 225, 6, and therefore, this Court should "consider[] the Plaintiffs'—not just Defendants'—conduct." *Id.*

This Court's prior dismissal of this same argument applies here as well. The last time Defendants asserted that the Supreme Court's patent jurisprudence should trump the Tenth Circuit's Indian law jurisprudence in this case, this Court held:

> Finally, Osage Wind's citation to cases outside of the tribal land claim context that recognize this court's general equitable jurisdiction are not persuasive. As discussed above, cases regarding Indian land rights implicate specific federal concerns not recognized in other cases invoking the court's equitable jurisdiction. Although courts have applied the equitable defense of laches in some limited circumstances, the defense is foreclosed here.

Dkt. 219, 11. None of the patent cases Defendants cite offer a novel or new reason for this Court to depart from *Davilla*'s holding.

For instance, Defendants reiterate their position that "*MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 561 (E.D. Va. 2007), demonstrates the unquestioned relevance of pre-litigation conduct under generally applicable federal equitable doctrines, including under the 'public interest' element in the four (or three) factor federal injunction test." Defs Mot. 9. Neither the Eastern District of Virginia's decision, nor the decision of the Supreme Court, however, are relevant to the present case. In *eBay*, the United States Supreme Court considered an appeal where the owner of a patent for a method of conducting on-line sales sued auction website operators for infringement and sought equitable relief. *See* 547 U.S. 388. The Supreme Court concluded that neither the Court of Appeals, nor the district court, had correctly applied the traditional federal framework for adjudicating the provision of equitable relief. *See id.* at 394. The lower courts' failure to apply the correct framework was all the more egregious since it was clear, in the Patent Act, that Congress did not intend for district courts to take "such a departure." *Id.* at 391–92 ("Nothing in the Patent Act indicates that Congress intended such a departure.").

11

The Supreme Court in *eBay*, however, did not consider whether state law can supplant a federal claim for trespass on Indian trust property, nor did the *eBay* Court hold that an Indian trust property owner's "past" conduct could be used to preclude him from obtaining injunctive relief for a trespass to his property. *See id.* The *eBay* Court's interpretation of federal policy concerning the Patent Act has no relevance to this Court's determination that Congress did not intend for Defendants to be able to mine the Osage Mineral Estate without a lease, and therefore, Defendants' assertions about the United States and the OMC's past "delay based conduct" is irrelevant to this Court's consideration of equitable relief. *See* Dkt. 226, 9 (this Court previously dismissed Defendants' reliance on the district court's decision in *eBay*, stating: "Respectfully, that district court's decision is neither precedential nor persuasive as it did not relate to trespass to Indian land.").

Defendants have offered no new arguments to explain how this Court "misread *Davilla*" in issuing the Affirmative Defenses Order, and nothing in their motion supports the conclusion that state law affirmative defenses should be incorporated here to excuse Defendants' trespass on the Osage Mineral Estate.

          ii.   The Court Correctly Applied *Davilla* in Issuing the Objections Order

In asking this Court to reconsider its Objections Order, Defendants argue that "[t]he Objections Order . . . overlooks statutory and federal policy parallels between federal patent and Indian law statutes and policies." Dkt. 229, 10. This argument is six months stale. Defendants have already argued before this Court that the Magistrate Judge's January 16 Order failed to consider that "*eBay* plainly contradicts the proposition that only forward-looking evidence may be considered by a court on a claim for permanent equitable relief." Dkt. 218, 7. Again, as discussed above, this Court has already reminded Defendants that their characterization of *eBay*

as demonstrating "the unquestioned relevance of pre-litigation conduct under generally applicable federal equitable doctrines," Dkt. 229, 9, is "neither precedential nor persuasive as it did not relate to trespass to Indian land." Dkt. 226, 9. As this Court has already concluded, "recitations of the general principles of equity—that do not contend with the strong federal policy in favor of vindicating Indian law claims—do not persuade the court that it must consider the United States and OMC's past conduct to determine the propriety of equitable relief." Dkt. 226, 10.

In issuing the Objections Order, this Court properly applied the three factor *Davilla* test, stipulating that a district court's decision to permanently enjoin a continuing trespass on Indian trust property should take into account:

> (1) whether an injunction is necessary to prevent 'irreparable harm,' (2) whether 'the threatened injury outweighs the harm that the injunction may cause' to the enjoined party, and (3) whether the injunction would 'adversely affect the public interest.'

*Davilla*, 913 F.3d at 973 (internal quotations omitted). As this Court pointed out in its Objections Order, this is not an optional test, it is an "explicit[] require[ment]." Dkt. 226, 8. The Court did not err in finding that on the facts presented in this case, *Davilla* is dispositive as to whether only forward-looking evidence may be considered under the injunction test because Defendants have never offered any reason *why* the OMC's or United States' past conduct could possibly be relevant to this three-factor test regarding what might result should injunctive relief be issued *going forward*.[3]

---

[3] The Court fully considered Defendants' non-Indian law authorities and concluded that "[t]hese decisions also suggest that the court should look only to prospective considerations. However, the court need not decide whether the permanent injunction inquiry is *always* limited to forward-looking evidence, as *Davilla* is dispositive of the issue under these facts." Dkt. 226, n.6.

Finally, Defendants attempt to make a "public interest" argument that could perhaps fit within the third *Davilla* factor, asserting that "the public interest requires more prompt, forthright, and clear, articulation of the basis for a claim" as to why Defendants are required to have a lease to mine on the Osage Mineral Estate. Dkt. 229, 11. However, it is hard to imagine a clearer articulation of this claim than the decision from the Tenth Circuit Court of Appeals. In 2017, the Tenth Circuit issued a decision articulating the reasons why the Defendants' "excavation work . . . requir[ed] [them] to secure a federally approved lease from OMC under § 214.7." *Osage Wind*, *LLC*, 871 F.3d at 1092. Defendants' refusal to accept the Tenth Circuit's explanation of why they are required to obtain a lease in no way supports the conclusion that this Court erred in interpreting and applying *Davilla*.

Absent a novel *legal* argument that the Court misread *Davilla* in issuing the Objections Order, Defendants argue that the wind farm project "provides important environmental benefits and supports important public services and education in Osage County." Dkt. 229, 11. While the OMC disputes both of these assertions, the OMC does not dispute that these arguments will be relevant when this Court considers summary judgment motions concerning the OMC's request for permanent injunctive relief as a remedy to trespass on tribal trust property. The fact that the Defendants offer a preview of facts and arguments for summary judgment in no way demonstrates that this Court erred in its previous rulings concerning discovery and Defendants' inapplicable affirmative defenses. This Court has correctly applied the Tenth Circuit's decision in *Davilla*.

### b.  Defendants' Delay-Based Affirmative Defenses Were Properly Dismissed

Defendants further contend that, in the Court's decision to reject all five of their state law affirmative defenses, the Court overlooked "that Defendants asserted [that] the affirmative

defenses are appropriate to inform decisions as to remedy *either* by incorporation of state law or independently under the federal courts' traditional equity jurisprudence." Defs. Mot. 12. To support their argument that the Court must reconsider its previous ruling on this issue of law, Defendants do not point to any new facts, intervening law, or court decisions. Nor do they explain how the Court's Affirmative Defenses Order constitutes a manifest injustice. Instead, they merely repeat the same flawed arguments, hoping that somehow this time, the same arguments will cause the Court to arrive at a different outcome. They should not.

First, Defendants turn to a case they briefed before, *Andrus*, to make the argument that "the Tenth Circuit affirmed the district court's acceptance of the companies' laches defenses to NEPA claims . . . . upon a showing of inequitable tribal landowner or federal trustee conduct." Defs Mot., 12–13 (citing *Andrus*, 687 F.2d 1324). This is not a new argument. Defendants made this exact same argument just seven months ago. *See, e.g.,* Dkt. 205, 20 (Defendants arguing that *Andrus* "is instructive as to federal courts' consideration of equitable affirmative defenses when equitable relief is sought in an action affecting trust resources."). Nothing in Defendants' Motion demonstrates they are entitled to another bite at the apple.

Defendants' flawed interpretation of *Andrus* should be rejected for the same reasons it was rejected before. As this Court noted in its Affirmative Defenses Order, "in the Tenth Circuit's previous decision in this case, the panel specifically cited to *Andrus* and declined to dispose of the case on the equitable doctrine of laches." Dkt. 219, 10. Because of the Tenth Circuit's 2017 decision on the matter, any "assertion of laches and any other affirmative defenses premised on unreasonable delay are precluded." *Id*. at 10-11. Moreover, this Court correctly found that the Tenth Circuit specifically noted "the concerns addressed by NEPA do not relate to rights of Indians per se" but instead "advance[] substantive goals for the nation as a whole by

15

'essentially procedural' requirements." Dkt. 219, 11 (quoting *Andrus*, 687 F.2d at 1340 n.11). That is, the current case does not concern the prerogatives of Congress in passing uniform, national environmental protection regulations. Instead, this case involves a trespass on Indian trust property that violates Congress's mandate "that such leases be 'for the best interest of the Osage Tribe of Indians.'" Dkt. 219, 7 (quoting Pub. L. No. 70-919, 45 Stat. 1478, 1479 (1929)).

Next, Defendants attempt to resuscitate their prior reliance on *City of Sherrill*, asserting the Supreme Court's decision "preclude[s] the Tribe from rekindling embers of sovereignty that long ago grew cold,'" and therefore, somehow, "principles of federal equity jurisprudence" command discovery into the OMC's past conduct to discern whether the OMC engaged in "inequitable conduct." Defs. Mot., 13-14 (quoting *City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197, 214 (2005)). If this sounds familiar, it is. Defendants previously argued they should be able to assert their state law based delay affirmative defenses against the OMC based on the argument that, in *City of Sherill*, the Supreme Court "held the tribe could not revive its ancient sovereignty over the subject land, because 'standards of federal Indian law and federal equity practice preclude the Tribe from rekindling embers of sovereignty that long ago grew cold.'" Dkt. 205, 17 (quoting 544 U.S. at 202). Defendants' attempt to re-assert the exact same argument fails, first and foremost, because "[a] motion to reconsider is not a second chance for the losing party . . . to dress up arguments that previously failed." *Voelkel*, 846 F.Supp. at 1483.

As the Court has clearly and correctly explained, the principles espoused in *City of Sherrill* are not determinative in this case because the OMC has consistently exercised sovereignty over the Osage Mineral Estate, and thus, is not seeking "to vindicate 'land claims of historic vintage.'" Dkt. 219, 10 (internal citation omitted). As this Court noted in its Affirmative Defenses Order, the property at issue in *City of Sherrill* "had last been possessed by the Oneidas

as a tribal entity in 1805." *Id.* at 9 (citing *City of Sherill*, 544 U.S. at 202). Here, in contrast, the

Osage Nation still, to this day, owns the Osage Mineral Estate; the Osage Nation has never lost

possession, and certainly is not asking to restore anything from 1805. *See* Dkt. 219, 9–10.

Nothing in this case requires "rekindling embers of sovereignty that long ago grew cold," Defs.

Mot. 13–14 (quoting *City of Sherill*, 544 U.S. at 214). Defendants have refused to accept,

acknowledge, and respect the Osage Nation's sovereignty. But that does not mean the OMC was

without the sovereign authority to issue a lease to Defendants to mine the Osage Mineral Estate.

Undeterred by the governing standard of review for a motion to reconsider, Defendants

also attempt to repackage their previous arguments regarding the interplay between *City of*

*Sherill* and the Second Circuit's decision in *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d

266 (2nd Cir. 2005). *Cf.* Defs Mot. 14 *with* Dkt. 205, 17. Defendants then argue that *Shinnecock*

*Indian Nation v. N.Y.* "deduced from *Sherrill* and *Pataki*" the holding that "equitable defenses

apply to disruptive Indian land claims, such as possessory land claims, and are not limited to

claims seeking a revival of sovereignty . . . ." Defs. Mot. 14 (quoting *Shinnecock Indian Nation*

*v. N.Y.*, No. 05-CV-2887, 2006 WL 3501099, * 4 (E.D. N.Y 2006)). Although Defendants did

not previously cite the Eastern District of New York's decision in *Shinnecock Indian Nation* in

any of their prior briefs, the legal principle they are attempting to argue is precisely the same.

They are once again making the point that "after *Sherrill*, equitable defenses apply to possessory

land claims . . ." Dkt. 205, 17 (quoting *Pataki*, 413 F.3d at 276), especially where a Tribal Nation

is "asking the court to overturn years of settled land ownership." *Id.* This argument was wrong

when Defendants first made it in December of 2020, and it is wrong now in July of 2021.[4] The

---

[4] This Court rightly found the claims in this case are not "disruptive" as contemplated in *City of Sherrill*, *Pataki*, and, by extension, *Shinnecock*. As the Court correctly stated, *City of Sherrill* and *Pataki* are not determinative because the "OMC does not seek ejectment of 'tens of thousands of landowners[]' .

OMC is not asking the Court to overturn years of settled land ownership. No one is arguing—nor could anyone legitimately argue—that the Osage Nation does not *presently own* the Osage Mineral Estate. Defendants are mistaken in their interpretation *City of Sherill* and its progeny—at best—and purposefully misconstruing this particular line of precedent, at worst.

Furthermore, Defendants' reference to the caselaw they previously cited in opposing the OMC's Motion for Judgment on the Pleadings continues to fail to establish any legally relevant distinction between liabilities and remedies with regards to Defendants' now dismissed affirmative defenses. *See* Defs. Mot. 15.[5] Although Defendants note that the Northern District of New York "relied upon the liability versus remedy distinction" in *Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. N.Y* to deny a motion to strike the affirmative defense of laches "to the extent that defense can be read as pertaining to remedies," Defs. Mot. 15 (quoting 278 F. Supp. 2d 313, 342 (N.D.N.Y. 2003)), this point is far from new. Defendants offered the exact same point and quoted the exact same language in December of 2020. *See* Dkt. 205, 18 (quoting *Canadian St. Regis Band of Mohawk Indians*, 278 F. Supp. 2d at 342). This Court dismissed this point as irrelevant to the issues in this case, noting:

> [T]he court declines to adopt the liability versus remedy distinction articulated by the Northern District of New York in *Canadian St. Regis Band of Mohawk Indians* as to the laches and estoppel affirmative defenses. In that case, the court also considered land claims premised on events that transpired two hundred years

---

. . and the claims would not 'disrupt[] the governance' of Osage County, the Northern District, or Oklahoma." Dkt. 219, 10 (quoting *Pataki*, 413 F.3d at 275) (quoting *City of Sherrill*, 544 U.S. at 202).

[5] Defendants, once again, assert their previously made *Andrus* argument. *See* Defs. Mot. 15. As was the case previously, Defendants, fail to recognize that NEPA, the law at issue in *Andrus*, creates no Indian trust asset and therefore does not implicate the United States' duties to the OMC as trustee. Because of this, and as explained above, the Court has determined *Andrus* is not persuasive in this case because "the concerns addressed by NEPA do not relate to rights of Indians per se" and "cases regarding Indian land rights implicate specific federal concerns not recognized in other cases invoking the court's equitable jurisdiction." Dkt. 219, 11 (quoting *Andrus*, 687 F.2d at 1340, n.11). In regurgitating *Andrus* once again, Defendants offer no new or novel explanation for how or why the Tenth Circuit's interpretation of Congress's prerogatives under NEPA should take precedent over Congress's prerogatives in passing the Osage Allotment Act and assigning ownership of the Osage Mineral Estate to the Osage Nation.

ago. As previously stated, it is law of the case that litigation was initiated within a reasonable time.

Dkt. 219, n.7. Nothing in Defendants' Motion demonstrates, or even suggests, that the Court's prior conclusion was legally or factually erroneous, and Defendants have not identified anything that comes close to the requisite manifest injustice that warrants reconsideration under Fed. R. Civ. P. 54(b).

Defendants also repeat their arguments with regards to the Northern District of New York's decision in *Cayuga X. Cf.* Dkt. 229, 15–16, *with* Dkt. 205, 16 (citing *Cayuga Indian Nation of New York v. Cuomo*, No. 80-CV-930, 199 WL 509442 (N.D.N.Y. July 1, 1999). Again, Defendants offer nothing new that warrants reconsideration. As this Court previously noted, the District Court in *Cayuga X* "was not considering affirmative defenses. Instead, the court was considering the equitable factors articulated in the Restatement (Second) of Torts to determine the appropriateness of an injunction against trespass." Dkt. 219, 9. And a District Court case from the Northern District of New York concerning the Restatement (Second) of Torts has no bearing on how this Court will apply the balancing of the equities, as articulated by the Tenth Circuit in *Davilla*.[6]

Defendants have still not demonstrated *why* their requested discovery is relevant to the balancing of equities analysis under *Davilla*. The closest they come in their Motion is asserting

---

[6] Defendants also repeat, practically verbatim, their arguments with regards to the Ninth Circuit's decision in *Brooks v. Nez Perce County. Cf.* Defs. Mot. 16 ("Similarly, *Brooks v. Nez Perce Cty*. drew the distinction drawn by *Cayuga X*, rejecting laches to bar completely a claim pertaining to Indian lands, but delay remained pertinent to determine remedy for trespass—including as to monetary damages.") (citing 670 F.2d 835, 837 (9th Cir. 1982)), *with* Dkt. 225, 3-4 ("Similarly, *Brooks v. Nez Perce County., Idaho* drew the distinction this Court recognized was drawn by *Cayuga X*, rejecting laches to bar completely a claim pertaining to Indian lands, but delay remained pertinent to determine remedy for trespass.") (citing 670 F.2d 835, 837 (9th Cir. 1982)). Again, "[a] motion to reconsider is not a second chance for the losing party to make his strongest case or to dress up arguments that previously failed." *Voelkel*, 846 F.Supp. at 1483. Defendants' attempt to get a second bite at the apple, therefore, should be denied.

that the requested backward-looking communications "are confirmed to be relevant here by the United States' and OMC's seeking deposition testimony about pre-suit communication authored by representatives of the [Plaintiffs]," citing to the deposition of Defendants' expert, Kimberlee Centera ("Centera"). Defs. Mot. 16. The fact that the United States and the OMC asked Centera questions regarding these sorts of communications, however, is no indication that the communications themselves are relevant.

Defendants' expert, Centera, issued an expert report asserting that the report of the United States and OMC's expert, Steven Hazel ("Hazel"), is erroneous, specifically attacking Hazel's conclusion that the OMC is entitled to damages equal to the amount Defendants have been willing to pay the surface landowners on the wind farm project. Dkt. 200-1, 4. Centera concluded that the OMC is not entitled to recover the damages identified in Hazel's report because "[i]f a wind developer had been *clearly apprised* of the necessity of a mineral lease, they certainly would have considered other more practical options," *id*. at 6 (emphasis added), and thus, in that scenario and according to Centera, Defendants would have avoided taking minerals from the Osage Mineral Estate altogether.

Although the OMC is well aware that Centera's assumption that Defendants were not "clearly apprised" of the need to obtain a mining lease from the OMC is a flawed, false, and self-serving assumption, the OMC is entitled to ask Centera questions about the assumptions she made in her expert report. The excerpts Defendants rely on in their Motion to Reconsider demonstrate nothing more than counsel's effective work in deducting that Centera does not have any actual knowledge, or expertise, to opine that Defendants were not actually "clearly apprised" of the need to obtain a mining permit for their mining activities on the Osage Mineral Estate, and as a result, her expert report is without any legitimate basis or factual support. *See, e.g.,* Dkt.

229-1, 85:20-24, (OMC's counsel asks Centera "In your expert opinion, would this constitute a situation where defendants were, quote, unquote, *clearly apprised* that a lease would be necessary prior to or continuing to excavate minerals?") (emphasis added). Defendants conveniently omit the sections of Centera's testimony where she admits that she concluded that Defendants were not "clearly apprised" of the need to get a permit from the Osage Nation without actually reviewing the documents Defendants had before them at that time indicating that a permit *was* required.[7]

Centera's conclusions are irrelevant, and furthermore, her conclusions are not based on any actual expertise or a review of the unique facts or circumstances of this particular case. Centera's attempt, as an expert, to opine that Defendants were somehow never "clearly apprised"

---

[7] Specifically, when confronted with communications demonstrating that Defendants were aware "clearly apprised" of the need to acquire a lease as early as October 2013, Centera admitted she had simply not seen those documents and was not aware of their existence:

> Q. In your expert opinion, when *defendants were emailing each other memos in October of 2013 stating that the Osage tribe had told defendants a lease was required*, would that have been a moment when they should have asked for more information about obtaining a lease?

> THE WITNESS: *I can't say because I wasn't there at the time, and I'm not sure . . . .*

> Q. [W]ere defendants -- have they ever been *apprised* of the need to get a lease for the mining of the Osage mineral estate?

> THE WITNESS: Were they -- clear -- well, I think certainly that the Tenth Circuit opinion -- right? -- is that they needed to go back. So at that point, we had clarity, so I think certainly at that point. *But I think, you know, that letter that you just showed -- I'm not familiar with this memo, so I really can't comment on that.*

Ex. A, 86:14–22, 87:6–22 (emphasis added).

of the need to obtain a permit in no way transforms the pre-litigation communications of the OMC or the United States into relevant discovery.

### c.   This Court Did Not "Misapply" The Law Of The Case Doctrine

Finally, Defendants also assert that this Court misapplied the law of the case doctrine in dismissing Defendants' affirmative defenses of estoppel, laches, unclean hands, waiver, laches, and *in pari delicto*. *See* Defs. Mot. 5. To make this argument, Defendants assert that "[t]his Court significantly extended the reach of the Tenth Circuit's footnote" to conclude that federal Indian law does not allow the incorporation of state law based affirmative defenses to bar a Tribal Nation's recovery for trespass on the Nation's trust property. Defs. Mot. 6. Defendants mischaracterize the Court's reliance on the Tenth Circuit's opinion.[8]

This Court's discussion of the Tenth Circuit's decision consists of a single page and is limited to the dismissal of Defendants' affirmative defense of laches; this Court's discussion of the law of the case doctrine does not, as Defendants erroneously suggest, extend to estoppel, unclean hands, waiver, or *in pari delicto*.[9] *See* Dkt. 219, 4–5. Specifically, this Court noted that "the Tenth Circuit concluded that the United States commenced this action within a reasonable

---

[8] Defendants correctly point out three "exceptionally narrow" grounds for departure from the law of the case doctrine, Defs, Mot. 6, but they fail to demonstrate that any of those grounds apply here.

[9] The Court's Affirmative Defenses Order is firmly grounded a robust line of precedents supporting the dismissal of Defendants' affirmative defenses. *See,* Dkt. 219, 5–7, *Oneida Indian Nation v. Cnty. of Oneida,* 414 U.S. 661 (1974); *Davilla,* 913 F.3d 959; *Oneida Indian Nation of N.Y. v. New York,* 691 F.2d 1070, 1084 (2d Cir. 1982); *Grondal v. Mill Bay Members Ass'n, Inc.*, 471 F. Supp. 3d 1095, 1128–29 (E.D. Wash. 2020); *Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York,* 278 F. Supp. 2d 313, 338–40 (N.D.N.Y. 2003); *Cayuga Indian Nation of New York v. Cuomo,* 565 F. Supp. 1297, 1301 (N.D.N.Y. 1983); *Schafer, Trustee of Wayne Penn Schafer Separate Prop. Tr. Established Oct. 5, 1982 v. Centerpoint Energy Okla. Gas,* No. 17-CV-365-GKF-FHM, 2018 WL 10140171, at *8 (N.D. Okla. May 21, 2018); *Seneca Nation of Indians v. New York,* No. 93-CV-688A, 1994 WL 688262, at *2 (W.D.N.Y. Oct. 28, 1994); *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 98 (1991). It is obvious from this Court's opinions citing the foregoing cases (and *not* citing the Tenth Circuit's opinion, except with respect to laches, or this Court's minute order of April 13, 2020, Dkt. 135) that this Court did, in fact, rely on said cases. Defendants' arguments regarding extension of the Tenth Circuit's footnote are, therefore, inapplicable and irrelevant.

time and therefore declined to dispose of this action based on laches." Dkt. 219. Because the

Tenth Circuit had already considered and rejected Defendants' arguments that their affirmative

defense of laches commands dismissal of Plaintiffs' claims, this Court found that the "OMC is

entitled to judgment on the pleadings as to laches." Dkt. 219, 5. It is hard to imagine how this

could be construed as a "misapplication" of the Tenth Circuit's decision, and it is even more

difficult to see this as an "extension" of the Tenth Circuit's decision since this Court limited its

application of the law of the case doctrine to Defendants' affirmative defense of laches.[10]

Next, Defendants assert that "the Court has ample discretion to rule otherwise" and

should in this instance because "the issue is not whether delay barred the United States and/or the

OMC from securing interpretation of applicable regulations, *but what remedies flow from the

violation found*." Defs. Mot. 6 (emphasis added). This argument, however, is not new. With

respect to their argument that liability is different from remedy, Defendants have already made,

and the Court has already considered and directly rejected this argument—not once, not twice,

but *three times*. *See e.g.,* Dkt. 219, 8–10 (noting that "Osage Wind [] contends that, even if the

state-law affirmative defenses are insufficient as a matter of law to prevent liability, the defenses

may apply to bar or limit the available remedies[,]" and rejecting Osage Wind's argument

because "the practice of borrowing state rules of decision does not apply with equal force to

determining appropriate remedies, especially equitable remedies, as it does to defining actionable

rights.") (quoting *Davilla*, 913 F.3d at 972–73); Dkt. 205, 2-3 (Defendants arguing that "the

---

[10] Although this Court did not apply the law of the case doctrine to outright dismiss Defendants' state law based affirmative defenses (aside from laches), this Court did note that "to the extent [Defendants' other affirmative defenses are] premised on unreasonable delay in bringing litigation, the four affirmative defenses other than laches are also precluded based on the law of the case doctrine." Dkt. 219, 8 n.5. This is because the Tenth Circuit concluded that, as a matter of law, "[t]he United States commenced this action within three months after turbine excavation work began, which is not an unreasonable amount of time to wait before filing suit." *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1087 n.6 (10th Cir. 2017).

OMC's Motion ignores a line of directly applicable cases holding that certain affirmative defenses, while unavailable as to liability in Indian land claim cases, are available as to remedies."), Dkt. 205, 15 (Defendants arguing that "[s]ince only remedies questions are still pending in this litigation, the liability-remedies distinction drawn in the cases cited below is dispositive of the OMC's Motion.").

This Court has also considered and rejected Defendants' argument that "[e]quity demands consideration of such delay to inform" Defendants of the requirement to get a lease. Defs. Mot. 7. *See, e.g.,* Dkt 226, 10–11 (the Court was not persuaded "that it must consider the United States and OMC's past conduct *to determine the propriety of equitable relief*" or that "backward looking variants of the affirmative defense of unclean hands are *relevant to determine the availability of equitable relief here, in the context of a tribal land claim*") (emphasis added)); Dkt. 218, at 11–14 (Defendants arguing that the Affirmative Defense Order did not rule on what evidence could be considered in determining whether equitable relief is appropriate and that the "clean hands" doctrine must be considered in determining remedy even though stricken from being considered in determining liability), 17–18 (Defendants asserting the same liability versus remedy argument—that the Court did not foreclose consideration of backward looking evidence "in determining the proper remedies in this case" and that the Court will require such evidence when it addresses appropriate remedies). Defendants' argument that their liability versus remedy distinction deserves reconsideration, therefore, violates the most basic precept that "[a] motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *SFF-TIR, LLC*, 264 F. Supp. 3d at 1222.

In asking this Court to reconsider an argument that the Court has already previously dismissed *three* times now, Defendants do not suggest there has been an intervening change in

the controlling law, nor do they refer to new evidence previously unavailable. Instead, Defendants make bald assertions that maintaining adherence to the *Davilla* Court's instruction that "[s]tate law cannot define the remedies which a federal court must give" Dkt. 219, 8 (quoting *Davilla*, 913 F.3d at 972-73), would "work a manifest injustice." Defs. Mot. 7. Blanket assertions of "manifest injustice," however, do not suffice.

Defendants' only explanation of what could amount to a "manifest injustice" is nothing more than a regurgitation of Defendants' delay-based affirmative defenses relying on what they stubbornly continue to insist is the "unfairness of Plaintiffs' conduct in failing to clearly advise why a lease is required . . ." Defs. Mot. 8. Even if the OMC had failed to inform Defendants why a lease was required—to be sure, Defendants' own documents demonstrate the OMC did—the Tenth Circuit has made clear that Defendants' attempt to shift the blame from Defendants to the OMC for Defendants' own actions has no place here in this Court's consideration of Defendants' trespass on Indian trust property. *See, e.g.,* Dkt. 219, 8 ("Permitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy.") (citing *Davilla*, 913 F.3d at 967–68).

Quite the opposite, it would be a "manifest injustice" to contravene Congress's clear intent that mining on the Osage Mineral Estate take place "in such quantities and at such times as may be deemed for the *best interest* of the *Osage Tribe of Indians*." Act of Mar. 2, 1929, Pub. L. No. 70-919, 45 Stat. 1478, 1479 (emphasis added). The Osage Mineral Estate was created for the Osage Nation's benefit, not Defendants, and upholding the law Congress created and passed does not constitutes a "manifest injustice" warranting reconsideration of this Court's Affirmative Defenses Order.

## IV.   CONCLUSION

For the aforementioned reasons, Defendants' Motion should be dismissed.

Respectfully submitted,

s/ Mary Kathryn Nagle
Mary Kathryn Nagle, OBA No. 33712
Wilson Pipestem, OBA No. 16877
Abi Fain, OBA No. 31370
Pipestem and Nagle Law, P.C.
320 S. Boston Ave., #1705
Tulsa, Oklahoma 74103
918-936-4705 (Office)
wkpipestem@pipestemlaw.com
mknagle@pipestemlaw.com
afain@pipestemlaw.com
*Counsel for Intervenor-Plaintiff*
*Osage Minerals Council*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2021, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ryan A. Ray
Joel L. Wohlgemuth
rar@nwcjlaw.com
jlw@nwcjlaw.com

-and-

Lynn H. Slade
Sarah S. Stevenson
Deana M. Bennett
Spencer L. Edelman
lynn.slade@modrall.com
sarah.stevenson@modrall.com
deana.bennett@modrall.com
spencer.edelman@modrall.com
*Counsel for Defendants*

David McCullough
dmccullough@dsda.com

Jeffrey S. Rasmussen
jrasmussen@ndnlaw.com

-and-

Wilson Pipestem
Mary Kathryn Nagle
Abi L. Fain
afain@pipestemlaw.com
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
*Counsel for Intervenor-Plaintiff,*
*Osage Minerals Council*

Cathryn Dawn McClanahan
cathy.mcclanahan@usdoj.gov

*Counsel for Plaintiff, United States*

<u>/s/ Mary Kathryn Nagle</u>

27