# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE OSAGE MINERALS COUNCIL, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 14-CV-704-GKF-JFJ ) |
| OSAGE WIND, LLC; ENEL KANSAS, LLC; and ENEL GREEN POWER NORTH AMERICA, INC., | ) ) ) ) ) |
| Defendants. | ) |

## DEFENDANTS' REPLY TO RESPONSE OF OSAGE MINERALS COUNCIL TO DEFENDANTS' MOTION TO RECONSIDER

Ryan A. Ray, OBA #22281
NORMAN WOHLGEMUTH, LLP
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

Lynn H. Slade, *admitted pro hac vice*
Sarah M. Stevenson, *admitted pro hac vice*
MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

Thomas J. McCormack, *admitted pro hac vice*
Robert Kirby, *admitted pro hac vice*
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
Robin D. Ball (Los Angeles Office), *admitted pro hac vice*
Robert D. Comer (Denver Office), *admitted pro hac vice*
NORTON ROSE FULBRIGHT US LLP

**ATTORNEYS FOR DEFENDANTS, OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

**Dated: July 16, 2021**

.

Defendants, Enel Green Power North America, Inc., Enel Kansas, LLC, and Osage Wind, LLC ("Defendants"), submit this Reply ("Reply") to the Plaintiff-in-Intervention's Opposition to the Motion to Reconsider Opinion and Order Granting Osage Minerals' Council's ("OMC's") Motion for Judgment on the Pleadings, Dkt. 219 ("Affirmative Defense Order"), and Opinion and Order Denying Defendants' Objections to Magistrate Judge's Opinions and Orders, Dkt. 226 (Dkt. 235) ("Objections Order") ("Motion").

### I.     Introduction.

The Court should reconsider and reverse or revise its Affirmative Defense Order, and Objections Order. The OMC's Response fails to support the Court's Opinion and Order granting the OMC's Motion for Judgment on the Pleadings, Dkt. 207, and its Opinion and Order denying Defendants' Partial Objections to Magistrate Judge's Opinion and Orders. Dkt. 226. The OMC's Response misreads *Davilla*, misunderstands other Tenth Circuit, United States Supreme Court, and other Circuits' authority on equitable defenses to claims in equity, and fails to address the Motion's challenge to the Court's discretionary application of the law of the case doctrine.

### II.    Standard of Review.

The OMC's Response cites unexceptional authority that does not controvert that the arguments in the Motion and below, respectfully, warrant this court taking a fresh look at the important issues presented in this case. *See SFF-TIR, LLC v. Stephenson*, 264 F. Supp. 3d 1148, 1215 (N.D. Okla. 2017) ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.") (citations omitted).

### III.   *Davilla* does not compel foreclosure of "backward looking evidence."

*Davilla* does not support the OMC's outlandish argument, Dkt. 234, 10-11, 13-18, that, no matter how egregious and inequitable a plaintiff's pre-litigation conduct, a federal court must don

the blinders and focus exclusively on the prospective balancing required under the three-, *see Davilla v. Enable Midstream Partners, L.P.*, 913 F.3d 959, 972 (10th Cir. 2019), or four-, *see eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006), factor test for a permanent injunction. The OMC ignores that *Davilla* made clear "[f]ederal courts have the power to order injunctive relief *when equity so requires.*" *Id.* (emphasis added). *Davilla* held the district court did not need to borrow state remedial law "because the federal judiciary already has a well-developed *body of law* regarding equitable remedies to guide judicial discretion." *Id.* at 973 (emphasis added). Upon rejecting the district court's reflexive injunction issuance based "on liability alone," the Tenth Circuit held the decision to enjoin a continuing trespass "should take into account" the three-factor analysis in cited Tenth Circuit cases. *Id.* at 973-974. Significantly, it *did not* prescribe a federal court take into account "exclusively" those factors, and it chastised the district court because it "made no mention of the appropriate equitable considerations." *Id.*

*Davilla* in no way expressly or impliedly requires federal court injunction issuance consider *only* the three (or four) factor injunction standard and ignore the rest of the entire body of federal equitable jurisprudence governing a federal court's exercise of its remedial powers, and the concomitant limitations inhering in its sitting as the contemporary Chancellor in equity.[1] To the contrary, *Davilla* mentioned without a hint of criticism that the district court "observed 'some courts have declined to enter an injunction when the trespass was unintentional and when the landowner delays objection,' it did not think such issues at play in this case." *Id.* at 971. The OMC

---

[1] *See Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity. . . . The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity distinguishes it.") (citations omitted). The Court's rigid, prospective-only, interpretation of *Davilla* is the antithesis of this prescription.

.

errs, and this Court's interpretations of *Davilla* errs, in failing to recognize the three- or four-factor test is the contemporary distillation of a what amounts to a prima facie case for permanent injunction issuance but, just as a plaintiff may make its case but still be barred by defenses, that threshold does not foreclose recognized federal equitable defenses—and equitable factors reflected in equitable defenses—affecting discretionary issuance of equitable relief. On that point, the Tenth Circuit's teaching is plain and instructive:

> The equitable nature of this suit is of paramount importance. When Congress leaves to the federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights." *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946). If Congress had intended to make a drastic departure from the traditions of equity practice, an unequivocal statement of that purpose would have been made.

*Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1333 (10th Cir. 1982). *Davilla* plainly requires the three- or four- factor test be applied before issuance of a permanent injunction, but, it in no way requires it be applied to the exclusion of the developed body of federal law governing the issuance of equitable relief, including those principles embodied in equitable defenses. The Court's interpretation of *Davilla* in the challenged Orders has precisely that effect.

    **IV.**   **OMC's Response does not support foreclosure of all discovery and evidence regarding delay.**

        **a.** **The OMC ignores the Tenth Circuit has specifically affirmed applying laches and related equitable considerations to limit remedies under Tribal leases issued in violation of federal oil and gas leasing regulations.**

The OMC, like the Affirmative Defense Order and Objections Order, incorrectly ignores Defendants' specific briefing and tries to dispatch *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 as only a NEPA case. It is not. As Defendants have emphasized, *Andrus* did not only apply laches to reject NEPA claims, as they have repeatedly briefed, *see* Dkt. 218, 21-22:

> ". . . the Tenth Circuit addressed the district court's holding the BIA had issued oil and gas leases of tribal lands without providing notice to interested bidders as required by federal

3

.

> regulations, adversely affecting tribal interests . . . [T]the Tenth Circuit affirmed the district court's determination not to *cancel* the numerous leases, but, *due to equitable considerations* arising from the Jicarilla Apache Tribe's inconsistent and inequitable conduct, *awarded an adjusted bonus* reflecting the compensation the evidence indicated the Tribe would have received if the BIA had complied with federal regulations."

citing *Andrus*, 687. F.2d at 1334-1336 (emphasis in original); *see also*, Dkt. 229, 17 (same). The OMC, contending "the facts and applicable laws in *Andrus*, namely, compliance with the National Environmental Policy Act—a law that 'do[es] not relate to right of Indians per se, . . . [but] instead advances substantive goals for the nation as a whole,'" Dkt. 234, 8, totally misses the major salient holding of *Andrus* applicable to this case. *Andrus* teaches unequivocally that equitable considerations can and should apply to companies accessing tribal mineral interests without a valid federally mandated, BIA-approved lease. The issue *Andrus*' lease publication/cancellation holding presents is not whether to deny *any* remedy for the violation found, but what considerations apply to determining the *appropriate* remedy given the conduct of the parties: The Court's comment, quoted by the OMC, "[p]ermitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy," Dkt. 234, 14, over looks that permanent injunction is not the only remedial device available to a federal court to support federal Indian policy requiring federal action to authorize access to Tribal minerals. Though prospective standards reflected in the *Davilla* three-part test address prospective balancing of equities, *Andrus* teaches that the culpability of a Tribe, the federal agency, and the third party trespasser leading up to or related to the trespass also warrant consideration to fashion a remedy fair and appropriate under the circumstances. Federal courts' remedial doctrines do not pose an all or nothing dichotomy.

      **b. The OMC ignores that Defendants, while they also referenced state law, advanced federal equitable defenses and consideration of federal equitable defense factors in determining remedies under federal equitable doctrines.**

.

The OMC repeatedly contends the Court has properly dismissed Defendants' five "state law" affirmative defenses of laches, estoppel, unclean hands, and *in pari delicto*, Dkt. 234, 18, 22, but nowhere recognizes the affirmative defenses, and consideration of equitable factors affecting remedies in actions under federal law, are independently applicable under federal law, without incorporation of state law. The Tenth Circuit's *Davilla* decision recognizes the federal equitable doctrinal basis for its decision, *see* 913 F.3d at 973 ("a well-developed [federal] *body of law* regarding equitable remedies"), as does *Andrus*. *See* 687 F.2d at 1333 ("An appeal to the equity jurisdiction of the federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity."). The Supreme Court, *see City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197 (2005), and federal Courts of Appeals and district courts following *City of Sherrill* have applied equitable defenses to Tribal land claims, and equitable considerations related to equitable defenses in fashioning relief for Tribal land claims, without consideration of state law equitable doctrines. *See Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 267–68 (2d Cir. 2005), cert. denied, 547 U.S. 1128 (2006), and *Shinnecock Indian Nation v. N.Y.*, No. 05-CV-2887 (TCP), 2006 WL 3501099 (E.D.N.Y. Nov. 28, 2006), *aff'd*, 628 F.App'x 54 (2d Cir. 2015). While *Sherrill* is recognized as significant, federal courts also recognize the long tradition of federal equitable jurisprudence preceding *Sherrill* has similar effect. *See Cayuga Indian Nation of N.Y. v. Cuomo,* Nos. 80-CV-930, 80-CV-960, 1999 WL 509442 (N.D.N.Y. July 1, 1999) ("*Cayuga X*").

The OMC attempts to draw factual distinctions between the cited cases and this case based on the specific time periods of delay involved, or contends the principles don't apply because this case does not involve a dispute over the whether the Osage Nation has long owned the underlying mineral estate. Dkt. 234, 21, 22. It disregards that the cases reflect a common understanding that federal equitable doctrines apply to federal or Tribal claims pertaining to Tribal lands or minerals,

5

.

including lands held in trust by the United States. The decisions do not carve out from federal equitable jurisprudence some exception either for federal or tribal claims regarding Indian lands *or* for the specific fact patterns presented in the cases cited. Instead, the cases apply general principles of federal equity jurisprudence, and do not purport to limit those principles to the specific facts before them. The OMC's Response fails to support denying Defendants discovery to ascertain the Plaintiffs' conduct, knowledge, and intent in declining to advise Osage Wind that they objected to the planned excavation and on what grounds—to be addressed under the federal equitable principles the cases recognize, and ultimately to present that defense at trial to this Court.

The OMC, and this Court's Affirmative Defense Order and Objections Order, misread federal law in presuming Tribal land claims are, and Defendants' defenses here fall within, a unique category somehow immunized from federal equitable jurisprudence.

    **c. The OMC ignores the distinction between equitable affirmative defenses and consideration of equitable defense-related factors in determining remedies.**

The OMC, and this Court, appear to presume that, if the five affirmative defenses are properly excluded, there is no remaining basis for consideration of "backward looking" inequitable conduct of Plaintiffs and, therefore, no discovery, or ultimately evidence, as to such conduct is appropriate. That is not the law. Even when affirmative defenses have been stricken or are rejected as absolute bars to recovery, factors pertinent to the stricken or rejected defenses have been held appropriate for fashioning remedies. *Compare Cayuga Indian Nation of New York v. Cuomo,* 771 F. Supp. 19, 24 (N.D.N.Y. 1991) (declining to dismiss case on laches or other equitable defenses), with the court's later decision in *Cayuga X,* 1999 WL 509442 at *22-*28 (declining to order ejectment after considering "related misconduct" of all parties preceding the litigation, relative hardships, and the public interest); *see also Brooks v. Nez Perce Cty., Idaho,* 670 F.2d 835 (9th

.

Cir. 1982) ("We conclude that laches does not bar the government's claim for damages. . . . [But,] [l]ack of diligence by the government in exercising its role as trustee may be weighed by the district court in calculating damages.") (emphasis added); *United States v. Imperial Irrigation Dist.*, 799 F. Supp. 1052, 1068 (S.D. Cal. 1992) (considering equitable factors in declining a tribe's request for injunctive relief, noting "there is precedent for applying equitable factors and thereby limiting relief otherwise available for Indian claims"); *Grondal v. United States*, No: 2:09-CV-18-RMP, 2021 WL 1962563, slip. op. at *10 (E.D. Wash. May 17, 2021), *appeal docketed*, No. 21-35507 (9th Cir. Jun. 28, 2021) ("Although laches cannot bar the government's claim for damages, a lack of diligence by the government in exercising its role as trustee may be weighed by the district court in calculating damages.").

The OMC overlooks that Defendants have "demonstrated why their requested discovery is relevant to the balancing of equities analysis under *Davilla*," Dkt. 235, 23, though Defendants strenuously contend the Court's limitation of discovery and evidence to prospective matters is unsupportable. However, *Davilla* itself requires consideration of the public interest, and the ability to understand and demonstrate Plaintiffs' pre-suit knowledge and communications concerning the Project directly affect the public's interest in the clean electricity generated, tax revenues provided, support for schools and community services the Osage Wind Project provides, and many others. But, looking backward, the public interest inheres in preventing a publicly beneficial project from being subjected to making very substantial expenditures toward project completion, while the Osage Nation and the Osage Mineral Council, with full knowledge if Defendants' commitments and of the scope of planned excavations, failed to advise Osage Wind clearly and timely—in fact, until the last minute, at all—of the need for a mineral permit (or lease) and the basis for such a claim, resulting in substantial economic waste, and prospectively the loss of tax dollars, jobs, and

7

.

community supports that might have been averted had there been adequate notice. The public interest required the United States, and the Nation and OMC, not just Osage Wind, to exercise diligence commensurate with the magnitude of the prejudice they now week to inflict.

But, federal equitable principles mandate an equitable balancing between and among the interests of the federal, Tribal, and private parties, as well. The discovery denied by the Objections Order, underlain as it is by the Affirmative Defense Order, includes documents and communications of the United States and the OMC, and between the two Plaintiffs, relevant to the acts and inactions of the Plaintiffs with respect to the matters resulting in this litigation, including (but not limited to) (1) their knowledge of excavation and construction plans for the Project from 2011, when the foundation plans and a map of all planned facilities and tower sites were exhibits at trial in this Court, forward; (2) given their knowledge of the likely excavations and the very substantial investments Osage Wind and other Defendants and their predecessors, Wind Capital Group and Trade Wind Energy were making and contemplated, why the United States and the OMC did not earlier advise a mining permit (or lease) was required and the reasons for such a requirement or, at least, why, for over eleven critical months, they did not controvert Wind Capital Group's October 28, 2013 letter to Chairman Andrew Yates of the OMC stating no mining permit of lease is required because the Project "will not remove or sell any minerals from the Project site"; and (3) their contemplation of legal analyses and guidelines prior to filing of this litigation underlying the several other litigations brought by the OMC and the Nation. Discovery is critical to addressing the balancing of equities here, as this Court has held Defendants' "good faith" is in issue on the determination of damages. *See* Dkt. # 171, at 3. Indeed, this discovery is pertinent to the Plaintiffs' contentions Defendants "knew or should have known" a lease or permit was required, particularly given that Plaintiffs declined to timely provide notice and whatever

8

.

information *they* had. That discovery is all the more pertinent as the United States, though it castigates Defendants' legal decisions, declined to appeal the adverse judgment Judge Payne entered in this case.

The challenged Orders threaten to allow Plaintiffs searching inquiry into Defendants' and their predecessors' pre-suit actions and communications, while affording Defendants no such opportunity with respect to Plaintiffs. The Court should reconsider the challenged Orders under the full panoply of equitable powers residing in this Court.

**V.  The OMC fails to support applying law of the case to "substantially different" factual settings, equitable defenses, and equitable remedial considerations never before, and never addressed by the Tenth Circuit.**

The OMC Response wholly fails to address Defendants' fundamental objection to the Court's law of the case ruling, that the Court has extended the Court's footnote reference pertaining to an argument in a footnote in an appellate brief, advanced without any supporting record, to bar *in toto* one affirmative defense and bar four others "to the extent premised on unreasonable delay." Dkt. 207, 4, 8 n.5. That slim foundation would, on its own, compel rejection of law of the case even as to the laches defense; however, the Tenth Circuit's footnote reinforces the narrow breadth of its holding as to the "laches doctrine, which gives courts discretion to reject stale claims brought after unreasonable delay, *see Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1337 (10th Cir. 1982)." The court stated, "[t]he United States commenced this action within three months after turbine excavation work began, which is not an unreasonable amount of time to wait before filing suit." *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1087 n.6 (10th Cir. 2017). However, as Defendants made clear in their petition for rehearing after receiving the Tenth Circuit opinion, they never intended a three-month period to define laches; instead referencing time periods dating from four years before suit was filed. *See* Appellees' Petition for Panel Rehearing and/or Request for

9

.

En Banc Determination at 9-10, *United States v. Osage Wind, LLC*, 871 F.3d 1078 (10th Cir. 2017) (No. 15-5121).

Finally, the Response does not controvert that the Tenth Circuit only addressed whether laches could bar *interpretation of the regulations* at issue on appeal, and expressly reserved for remand the issues *concerning remedy*, which, like the applicable laches timeframe, are "substantially different" from the issues presented here, within the meaning of *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998) (exception to law of the case "when the evidence in a subsequent trial is substantially different"). Laches was only before the Tenth Circuit via a footnote without record cite on an issue that is no longer at issue here. Law of the case should not apply.

VI. **Conclusion**

For the foregoing reasons, the Court should revise or reverse its Opinion and Order granting the OMC's Motion for Judgment on the Pleadings, Dkt. 207, and its Opinion and Order denying Defendants' Partial Objections to Magistrate Judge's Opinion and Orders. Dkt. 226, to hold: the OMC's Motion for Judgment on the Pleadings, Dkt. 207, is denied, and the Court grants the objections set forth in Defendants' Partial Objections to Magistrate Judge's Opinion and Orders, Dkt. 226.

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

.

**Lynn H. Slade**
**Sarah M. Stevenson**
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**Thomas J. McCormack**, *admitted pro hac vice*
**Robert Kirby**, *admitted pro hac vice*
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY  10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
**Robin D. Ball** (Los Angeles Office),
*admitted pro hac vice*
**Robert D. Comer** (Denver Office),
*admitted pro hac vice*
NORTON ROSE FULBRIGHT US LLP

**ATTORNEYS FOR DEFENDANTS, OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

.

# CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2021, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Stuart P. Ashworth
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
David McCullough
Jeffrey S. Rasmussen

The following non-ECF registrants have been served by email:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


/s/ Ryan A. Ray
Ryan A. Ray