# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA, and )
THE OSAGE MINERALS COUNCIL, )
                                        )
            Plaintiffs, )
                                        )
vs. )         Case No. 14-CV-704-GKF-JFJ
                                        )
OSAGE WIND, LLC; )
ENEL KANSAS, LLC; and )
ENEL GREEN POWER NORTH )
AMERICA, INC., )
                                        )
            Defendants. )

## DEFENDANTS' REPLY TO RESPONSE OF UNITED STATES TO DEFENDANTS' MOTION FOR RECONSIDERATION

Ryan A. Ray, OBA #22281
NORMAN WOHLGEMUTH, LLP
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

Lynn H. Slade, *admitted pro hac vice*
Sarah M. Stevenson, *admitted pro hac vice*
MODRALL, SPERLING, ROEHL,
HARRIS & SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

Thomas J. McCormack, *admitted pro hac vice*
Robert Kirby, *admitted pro hac vice*
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

Of Counsel:
Robin D. Ball (Los Angeles Office), *admitted pro hac vice*
Robert D. Comer (Denver Office), *admitted pro hac vice*
NORTON ROSE FULBRIGHT US LLP

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: July 19, 2021**

Defendants submit this Reply ("Reply") to the Plaintiff United States' Response to Defendants Motion to Reconsider (Dkt. 234) ("Response") and in support of its Motion to Reconsider Opinion and Order granting the United States' Motion for Judgment on the Pleadings, Dkt. 207 ("Affirmative Defense Order"), and its Opinion and Order denying Defendants' Partial Objections to Magistrate Judge's Opinion and Orders, Dkt. 226 ("Objections Order") ("Motion").

### I. Introduction.

The Court should reconsider and reverse or revise its Affirmative Defense Order and Objections Order. The United States' Response fails to show the Motion is untimely, nor does it support the Affirmative Defense Order's striking of Defendants' affirmative defenses of laches, estoppel, unclean hands, and *in pari dilecto*, and foreclosing their application to fashioning an appropriate remedy, either based on law of the case or the conclusion the defenses are inapplicable to federal or tribal claims for permanent injunctive relief pertaining to Tribal lands.

### II. The Motion for Reconsideration is Timely.

Defendants did not earlier challenge the Affirmative Defense Order because it did not indicate it foreclosed all "backward looking evidence." To the contrary, it expressly distinguished cases Defendants cited allowing equitable considerations to affect appropriate remedies from those addressing equitable affirmative defenses as bars. Dkt. 207, at 8-9. Defendants did not know until shortly thereafter, on January 16, 2021, Dkt. 210, when Magistrate Judge Jayne denied Defendants' motion to compel, that the Court's order might be interpreted to bar not just affirmative defenses denying all affirmative relief, but all "backward looking evidence" of the United States and OMC conduct for any purpose pertaining to remedies, particularly as to the extreme remedy of Project

ejectment.[1] Thereafter, Defendants timely filed Objections to the Order, which this Court denied by Order entered May 21, 2021. Defendants timely filed the present Motion to Reconsider thereafter, on June 14, 2021. Dkt. # 229. Until the Objections Order was entered, Defendants reasonably believed discovery motions and the submission of objections to this Court would lead to consideration of evidence of Plaintiffs' inequitable conduct prior to the United States' filing of its complaint in November, 2014.

The United States misunderstands two critical points in its challenge to the timeliness of the Motion: First, Defendants reasonably believed Magistrate Judge Jayne had misread the Court's Affirmative Defense Order in extending it from dismissing enumerated affirmative defenses to barring *any* discovery into "backward looking evidence" of Plaintiffs' inequitable conduct that may lead to evidence admissible to defend against both Plaintiffs' claims for trespass damages and for permanent injunctive relief. Second, Defendants timely filed Objections to the Magistrate Judge's Order, properly giving this Court the procedurally appropriate opportunity to correct what they believed is a misreading of the Affirmative Defense Order. An earlier motion for reconsideration of the Affirmative Defenses Order would not have been timely, and sufficient time remains in the discovery period to allow all parties to supplement discovery responses and schedule additional depositions if the Motion is granted now.

---

[1] That Defendants recognized Plaintiffs might consider all "backward looking evidence" objectionable *after* Magistrate Judge Jayne's January 16, 2021 Order, on January 20, 2021, *see* Dkt. 235-1, or following March 19, 2021, *see* Dkt. 235-2, does not controvert that the appropriate next step was for Defendants to file their Partial Objections to Magistrate Judge Jayne's Order with this Court on March 8, 2021, Dkt. 218. This Court never indicated it would exclude all "backward looking evidence" until its May 21, 2021 Order denying those objections.

2

### A. The United States Fails to Controvert That This Court Has Ample Discretion to Reconsider Its Law of the Case Rulings.

The Response simply declines to address the authority,[2] cited in the Motion, recognizing the discretion of a district court to reconsider any pre-judgment order under Rule 54(b). *See* Motion at 4-5 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."); *Pikas v. Williams Cos.*, 822 F. Supp. 2d 1163, 1165 (N.D. Okla. 2011)). The Response contends incorrectly that *SFF-TIR, LLC v. Stephenson*, 264 F. Supp. 3d 1148, 1215 (N.D. Okla. 2017) (cited Motion, 5), concluded a "motion to reconsider simply is not appropriate" to "reargue an issue previously addressed by the court," completely ignoring *SFF-TIR*'s subsequent statement: "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[3] At least two of those criteria apply here: misapprehension of the facts and controlling law, and misapprehension of a party's position also appears to be a factor.

The Response is equally off base in contending Defendants "claim manifest injustice as the sole basis for their motion." Response, 5, n.1. The Response tries to controvert manifest injustice by seeking to discredit the testimony of Defendants' expert Kimberlee Centera, contending her opinion can be disregarded, and that Defendants should have recognized a need for a lease or permit whether or not the United States clearly advised Defendants of such a requirement (and despite the District Court's initial ruling in Defendants' favor). But such factual disputes do not support completely foreclosing all such evidence, *see* Response, Dkt. 235 at 22, n.3, 14, based on

---

[2] The United States' own Motion for Reconsideration, Dkt. 141, declined entirely to address the applicable standard of review or to articulate grounds for reconsidering a prior order.

[3] Judge Cleary's opinion in *Life Investors Ins. Co. of America*, Nos. 08–CV–0379–CVE–PJC, 09–CV– 0429–CVE–PJC, 2010 WL 2541704, at *1 (N.D. Okla. June 18, 2010), cited Response, 5, concerned a request for a renewed privilege review of documents previously reviewed.

3

arguments which truly concern at most the weight such evidence should have. While Defendants would suffer great prejudice if all "backward looking evidence" of Plaintiffs' conduct were foreclosed from discovery and trial, the Motion shows the Affirmative Defense Order and Objections Order misapply federal law that renders inequitable conduct, including pre-suit conduct pertaining to the Project, material to addressing remedies for claims of unauthorized use of the Osage Mineral Estate.

**B.     The United States' Response Fails to Support the Law of the Case Ruling.**

The Tenth Circuit addressed laches in a footnote, in response to a footnote statement in Defendants' appellate brief on the merits. *See* Motion, Dkt. 229, 10 & n.7.  The Response ignores this fact, and in defending the law of the case ruling, points to statements in a single paragraph of Defendants' response to the United States' preliminary injunction motion (a motion the United States withdrew before it was ruled on, after the United States learned turbine foundation excavation had been completed), and a statement in yet another footnote that only described a State court decision in "one of a series of actions instituted by the Nation." Response, Dkt. 235, 11. citing Tenth Circuit Jt. App., 46, 54. Defendants' Motion is correct as to the record concerning laches on appeal, Dkt. 229, at 10, n.7: Defendants never presented a laches affirmative defense for decision on the merits to Judge Payne, and the record contains no indication Judge Payne ever considered a delay-based defense. The Motion's statements regarding the record before the Tenth Circuit on laches were entirely accurate.

The Response next refers to statements Defendants made *after issuance* of the Tenth Circuit opinion in Defendants' Petition for Rehearing or for Rehearing En Banc and in a citation of supplemental authority filed while the rehearing petition was pending, both submitted to support the petition for rehearing. Response, Dkt. 235, 10-11 & Exhibit 3. Rehearing was denied without

4

opinion or further briefing. Nor does the Response controvert that the Tenth Circuit only addressed whether laches could bar *interpretation of the regulations* at issue on appeal, and expressly reserved for remand the issues *concerning remedy*, which are "substantially different," within the meaning of *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998) (exception to law of the case "when the evidence in a subsequent trial is substantially different"). Laches was only before the Tenth Circuit via a footnote without even a record citation.

### C. The United States injects extraneous matters into the law of the case issues.

The Response next seeks to extend the Tenth Circuit footnote reference to laches to cover a host of matters that were never before the Court of Appeals, contending the issues before the Court now—the *remedy* to be imposed for Defendants' failure to secure a 25 C.F.R. § 214.7 lease for the "sorting and crushing of minerals for the purpose of backfilling and stabilization," *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1092 (10th Cir. 2017) – are not "substantially different" from those before the Tenth Circuit – the question whether a lease was required to authorize "mining." *id.* at 1082. Dkt. 235 at 13-14. The Response grounds this contention in the outlandish argument that Defendants' appellate brief footnote sought "dismissal of the case in whole (remedies and all)" on laches grounds, without any reference to any argument Defendants made to the Tenth Circuit relating to remedies. *Id.* at 13. It then argues from facts disclosed in discovery, including research memoranda of Defendants' counsel, emails that were not part of the record before Judge Payne or the Tenth Circuit, and, again, Defendants' statements in rehearing proceedings briefing. *Id.* Defendants cannot discern whether these statements are intended to support the Court's law of the case ruling or simply to argue the merits of issues on which Defendants' discovery has been foreclosed. However, they in no way support foreclosing defenses under law of the case or controvert Defendants' arguments the United States and the OMC failed

5

to timely apprise Defendants of any contention a lease or permit was required, nor do they support denying Defendants discovery and opportunity for trial evidence on "backward looking evidence."

Attacking "Defendants' self-serving twist on the laches defense," Dkt. 235 at 14, the United States advances an incomprehensible argument on law of the case, suggesting Defendants have revised the arguments made to the Tenth Circuit pertaining to the laches defense, contending Defendants claimed laches based on the period before excavation and now contend for a longer period. But Defendants *never* claimed in the Tenth Circuit laches should be based on the time between initiation of excavation and filing of suit: the Court of Appeals made that decision on its own, and Defendant's Petition for Rehearing, filed promptly after receiving the opinion advised of time periods indicating delay dating to 2011. *See* Appellees' Petition for Panel Rehearing and/or Request for En Banc Determination at 14-15, *United States v. Osage Wind, LLC*, No. 15-5121 at 9-10.

Diverting from law of the case issues, the Response extracts excerpts from the massive discovery record, injecting documents containing privileged discussion of mineral issues totally immaterial to law of the case, and recognizing Osage Wind made repeated efforts to adapt excavation to changing information about the geology and its regard for Osage Nation minerals. *See* Exhibits 4- 7. While immaterial here, the Response recognizes (correctly) that Osage Wind "did not believe a lease was required because they were not going to sell or remove minerals." Dkt. 235, 16. In fact, Osage Wind so advised the United States and the OMC repeatedly for over a year, but the United States and the OMC did not respond. The Response's factual recitation in fact supports the Motion and makes a compelling case for the need for discovery into, and the opportunity to present at trial, the Plaintiffs' actions and communications resulting in the failure to advise of the reason a lease or permit was required.

The Response states, "for at least a year before suit was filed, Defendants held fast to their legal position as to mining *despite Plaintiff and the OMC's objections*." While it is accurate that Osage Wind plainly advised the United States and the OMC during the period stated of their "legal position," that no mining lease or permit was required if they did not sell minerals or remove them from the site of excavation, it is grossly false to state that, over that period they did so "despite Plaintiff [United States] and the OMC's objections." Defendants received no objections from either Plaintiff grounded in minerals following the 2011 litigation until well into the excavations for the Project, less than two months before suit was filed, and never received a single response to its repeated statements of its "legal position" before suit was filed.[4]

The Response's contentions underscore the Tenth Circuit's conclusion the laches defense does not bar this action because "the United States commenced this action within three months after turbine excavation began" addressed a situation "substantially different" from that presented by the equitable issues before this Court with respect to remedies and the effect of Magistrate Judge Jayne's order, supporting the need to reconsider the law of the case ruling. The Court should correct its application of law of the case to the Tenth Circuit opinion to limit it to the specific timeframe reflected in the appellate decision and to address clear errors of law, identified below.

### III. The Response fails to address the import of the authority the Motion advances on the foreclosure of affirmative defenses and "backward looking evidence."

The Response argues the Motion should be denied for advancing "well-worn" authority, but, like the Affirmative Defense Order and Objections Order, simply does not address the critical teachings of the cases Defendants cite.

---

[4] The Response has the temerity to assert, "[c]ertainly, by the time the United States brought suit and filed a detailed motion for legal and injunctive relief, the theory was fully and completely explained." Dkt. 235, at 17. But, by that date, excavation was substantially complete—and Osage Wind had irretrievably committed substantial resources.

7

A.     **The Response fails to rebut application of *Jicarilla Apache Tribe v. Andrus*:**

Like the Affirmative Defense Order and the Objections Order, the Response addresses only *Andrus*'s NEPA holding and ignores its additional holding applying laches considerations to reject the Tribe's demand for lease cancellation when the Bureau of Indian Affairs ("BIA") leased hundreds of thousands of acres of the Tribe's lands for oil and gas mining.[5] *See* Dkt. 235, 17. In *Andrus,* the district court held, and the Tenth Circuit affirmed, that notice of the lease sales had been published in violation of the applicable BIA leasing regulations, 25 CFR §§ 171.3, 171.8, 171.9, counterparts to the 25 CFR parts 211 and 214 regulations applicable to oil and gas leasing of Tribal lands. Consequently, the several companies were mining oil and gas without valid, statutorily authorized leases issued in compliance with federal, tribally-protective regulations, which required BIA to publish legal notice before issuing the leases. *See Andrus*, 687 F.2d at 1331.

The Tenth Circuit, in terms that apply directly to this action, declined to issue the equitable remedy of cancellation of the numerous leases, as demanded by the Tribe:

> The equitable nature of this suit is of paramount importance. . . . An appeal to the equity jurisdiction of the federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity. We should not lightly assume that Congress has intended to depart from established (equitable) principles."

*Id.* at 1333 (quotation marks and citations omitted). Significantly, the Supreme Court in *eBay, Inc. v. MercExchange, LLC*, spoke in strikingly similar terms. 547 U.S. 388, 391-392 (2006) ("These familiar [equitable] principles apply with equal force to disputes arising under the Patent Act. As this Court has long recognized, a major departure from the long tradition of federal courts' equity

---

[5] The Response's discussion of *Andrus* does recognize legal uncertainty, at least equivalent to that applicable here, as a factor affecting equitable remedies: "[T]he law was unclear as to applicability of NEPA to the approval of lease sales by the BIA" until three years before suit was filed, so laches only became applicable when an appellate decision clarified NEPA applied. Dkt. 235, 17, *quoting Andrus*, 687 F.2d at 1338.

8

practice should not be lightly implied.") (quotation marks and citations omitted).[6] The Court should reconsider the Objections Order to the extent it forecloses consideration of backward looking equitable factors to determine whether Project ejectment of money damages are the appropriate remedy.

> **B.    The Response fails to distinguish cases applying equitable principles to tribal land claims.**

The Response advances superficial distinctions of *City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197 (2005); *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266 (2d Cir. 2005); and *Shinnecock Indian Nation v. N.Y.*, No. 05-CV-2887 TCP, 2006 WL 3501099 (E.D.N.Y. Nov. 28, 2006), focusing only on the time periods involved in the cases but ignoring the equitable analysis present in each case. The Response overlooks that *City of Sherrill* rested on "*standards of federal Indian law and federal equity practice*," 544 U.S. at 214, noting that "[t]he principle that the passage of time can preclude relief has deep roots in our law. . . . It is well established that laches, a doctrine focused on one side's inaction and the other's legitimate reliance, may bar long-dormant claims for equitable relief." *Id*. at 217 (emphasis added); *see also* Dkt. 229, 18-19.

What is pertinent to this case in *Cayuga Indian Nation of N.Y.* and *Shinnecock Indian Nation* is not the number of years of delay in each case or the incorrect rationale for distinction advanced by the Response. Rather, both cases hold the *City of Sherrill* doctrine is applicable to legal claims for damage, and well as equitable injunctive relief, and "*is not limited to claims seeking a revival of sovereignty.*" *See Shinnecock Indian Nation*, 2006 WL 3501099, * 4 (emphasis added). Laches is an available defense under *Andrus* and *City of Sherrill*, and should apply to bar

---

[6] Any concern bankruptcy cases are inapplicable is unfounded: the bankruptcy patentees in *eBay*, like Tribes' rights in trust lands, enjoy statutory protections subject to federal equitable doctrines.

9

equitable relief upon reconsideration of whether the Court's law of the case ruling should extend from a declaratory judgment for interpretation of the regulations to remedy.

The Response ignores entirely the cases holding that, even if laches and other equitable defenses are not a complete bar to a claim or remedy, factors pertinent to such defenses may be considered in fashioning appropriate remedies. *See* Dkt. 229, 15-19, *citing Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. N.Y.*, 278 F. Supp. 2d 313, 342 (N.D.N.Y. 2003); *Cayuga Indian Nation of N.Y. v. Cuomo,* Nos. 80-CV-930, 80-CV-960, 1999 WL 509442 (N.D.N.Y. July 1, 1999) ("*Cayuga X*") (Asking, "*what should have been expected of one in the plaintiff's position as the menace to his interests from the defendant's conduct developed*" and why the plaintiff declined to pursue "*protests, complaints and negotiations.*'") (emphasis added). The Tenth Circuit ruled only that "the "laches doctrine, which gives courts discretion to reject stale claims brought after unreasonable delay," *cititng Andrus*, 687 F.2d at 1337," did not bar the argument that 25 C.F.R. Part 214 is inapplicable to the Project, remanding for remedy. Its ruling should be limited and not expanded to bar all equitable defenses. *Cf. United States v. Titties*, 852 F.3d 1257, 1273 (10th Cir. 2017) (stating *rulings* of the Tenth Circuit are binding precedent, but dicta is not).

### IV. Defendants have not ignored federal policies underlying Indian estates and trust obligations.

Defendants have at no time ignored the trust nature of the Osage Mineral Estate or the role of the United States in managing it. It responded to all communications from the OMC or the United States, though they did not respond in turn. The cases cited above address the trust nature of the Osage mineral estate and demonstrate that neither that status under federal law nor any federal statute, exempts the issues here from federal equitable doctrines in a case in federal court.

10

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)


-and-

**Lynn H. Slade**
**Sarah M. Stevenson**
**MODRALL, SPERLING, ROEHL, HARRIS**
**& SISK, P.A.**
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**Thomas J. McCormack**, *admitted pro hac vice*
**Robert Kirby**, *admitted pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, NY  10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
**Robin D. Ball** (Los Angeles Office), *admitted pro hac vice*
**Robert D. Comer** (Denver Office), *admitted pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**

**ATTORNEYS FOR DEFENDANTS, OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 19, 2021, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Stuart P. Ashworth
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
David McCullough
Jeffrey S. Rasmussen

The following non-ECF registrants have been served by email:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


/s/ Ryan A. Ray
Ryan A. Ray