## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA, and ) 
THE OSAGE MINERALS COUNCIL, ) 
                     ) 
       Plaintiffs, ) 
                     ) 
vs. )     Case No. 14-CV-704-GKF-JFJ 
                     ) 
OSAGE WIND, LLC; ) 
ENEL KANSAS, LLC; and ) 
ENEL GREEN POWER NORTH ) 
AMERICA, INC., ) 
                     ) 
       Defendants. )

---

## DEFENDANTS OSAGE WIND, LLC AND ENEL KANSAS, LLC'S SECOND MOTION TO COMPEL AGAINST THE OSAGE MINERALS COUNCIL

---

Ryan A. Ray, OBA #22281
NORMAN WOHLGEMUTH, LLP
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

Lynn H. Slade, *pro hac vice*
Sarah M. Stevenson, *pro hac vice*
Dominic A. Martinez, *pro hac vice*
MODRALL, SPERLING, ROEHL,
HARRIS & SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

Thomas J. McCormack, *pro hac vice*
Robert Kirby, *pro hac vice*
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
Robin D. Ball (Los Angeles Office), *pro hac vice*
Robert D. Comer (Denver Office), *pro hac vice*
NORTON ROSE FULBRIGHT US LLP

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

**Dated: August 19, 2021**

# TABLE OF CONTENTS

BACKGROUND…………………………………………………………………................1

PROCEDURAL ISSUES IN THIS CASE……………………………………………………...1

DISPUTED DISCOVERY ISSUES…………………………………………………………4

CERTIFICATION OF CONFERENCE………………………………………………………..8

ARGUMENT AND AUTHORITIES……………………………………………………………9

I.  THE SCOPE OF DISCOVERY AND DEFINITION OF DISCOVERY RELEVANCE ARE BROAD………………………………………….………………………………9

II.  THE COURT SHOULD COMPEL THE REQUESTED DISCOVERY BECAUSE THE OMC HAS NOT ABANDONED ITS CLAIM THAT DEFENDANTS ACTED IN BAD FAITH WHEN THEY ENGAGED IN ACTIVITIES THE TENTH CIRCUIT CONCLUDED REQUIRED A MINING LEASE………………………………………12

III.  THE OMC'S EXTENSIVE DISCOVERY EFFORTS REGARDING DEFENDANTS' ALLEGED BAD FAITH, WHILE SIMULTANEOUSLY STYMIEING DEFENDNATS' DISCOVERY ON THE SAME TOPICS SUPPORTS COMPELLING DEFENDANTS' DISCOVERY………………………………………………………………………14

IV.  THE COURT SHOULD REQUIRE THE OMC TO IDENTIFY SPECIFIC DOCUMENTS IN ITS DISCOVERY RESPONSES………………..…………………………………………………..16

CONCLUSION AND REQUESTED RELIEF………………………………………………..18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfwear, Inc. v. Kulkote, LLC*
    No. 2:19-cv-00027-CW-JCB, 2020 U.S. Dist. LEXIS 129573 (D. Utah July
    21, 2020) ........................................................................................................................11

*B.H. v. Gold Fields Mining Corp.*
    No. 04-CV-0564-CVE-PJC, 2006 WL 3757809 (N.D. Okla. Dec. 19, 2006) ........................9

*Burke v. New York City Police Dep't*
    115 F.R.D. 220, 224 (S.D.N.Y. 1987) .............................................................................10, 12

*Centurion Indus., Inc. v. Warren Steurer & Assocs.*
    665 F.2d 323, 326 (10th Cir. 1981) ......................................................................................10

*Cohlmia v. Ardent Health Servs., LLC*
    No. 05-CV-384-GKF-PJC, 2008 U.S. Dist. LEXIS 92831 (N.D. Okla. Nov.
    14, 2008) ...............................................................................................................................10

*Davilla v. Enable Midstream Partners, L.P.*
    913 F.3d 959 (10th Cir. 2019) ........................................................................................3, 4, 9

*FrangranceNet.com, Inc. v. FragranceX.com, Inc.*
    No. CV 06-22, 25 (JFB) (AKT) 2007 WL 9710244 (E.D.N.Y. Aug. 28, 2007)....................15

*Hickman v. Taylor*
    329 U.S. 495 (1947).............................................................................................................10

*Josephs v. Harris Corp.*
    677 F.2d 985, 992 (3d Cir. 1982)........................................................................................10

*Mae Pendleton v. Bd. of Cty. Comm'rs for Okla. Cty.*
    No. CIV-18-707-G, 2020 U.S. Dist. LEXIS 41264 (W.D. Okla. Mar. 10,
    2020) .....................................................................................................................................11

*Perez v. El Tequila LLC*
    No. 12-CV-588-JED-PJC, 2014 U.S. Dist. LEXIS 149372 (N.D. Okla. Oct.
    20, 2014) ...............................................................................................................................10

*Reibert v. CSAA Fire & Cas. Ins. Co.*
    No. 17-CV-350-CVE-JFJ, 2018 U.S. Dist. LEXIS 860, (N.D. Okla. Jan. 3,
    2018) .....................................................................................................................................11

*Rich v. Martin Marietta Corp.*
    522 F.2d 333, 343 (10th Cir. 1975) ...........................................................................10

*Roseberg v. Johns-Manville Corp.*
    85 F.R.D. 292, 296-97 (E.D. Pa. 1980) .............................................................10, 12

*Smith v. Ford Motor Co.*
    626 F.2d 784, 797 (10th Cir. 1980) .............................................................................9

*Snowden v. Connaught Lab*
    137 F.R.D. 325, 332 (D. Kan. 1991)...........................................................................10

*United States ex rel. Shamesh v. CA, Inc.*
    314 F.R.D. 1, 8 (D.D.C. 2016)....................................................................................11

*United States v. Childs*
    No. CR-09-146-D, 2018 U.S. Dist. LEXIS 20058, 2018 WL 775018 (W.D.
    Okla. Feb. 7, 2018) ......................................................................................................11

*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*
    No. 05-2192-JWL-DJW, 2007 WL 1531846 (D. Kan. May 25, 2007)...................15

**Court Rules**

Fed. R. Civ. P. 26............................................................................................................9

Fed. R. Civ. P. 33(d)(1)……………………………………………………………...17

Fed. R. Civ. P. 34(b)(2)(E)(i)……………………………………………...................17

Fed. R. Civ. P. 37(a)(2)(A) ............................................................................................8

Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv)..............................................................................1

LCvR 37.1....................................................................................................................1, 8

In accordance with FED. R. CIV. P. 37(a)(3)(B)(iii) and (iv) and LCvR 37.1, Defendants, Osage Wind, LLC ("Osage Wind") and Enel Kansas, LLC ("Enel Kansas"), respectfully request that the Court enter an Order requiring the Intervenor-Plaintiff, the Osage Minerals Council ("OMC"), to respond to interrogatories and requests for production from Osage Wind.  The subject discovery requests pertain to an issue that the Court has expressly stated is still at issue in this litigation: whether Osage Wind qualified as an "innocent trespasser" in its construction and excavation activities for the Osage Wind wind energy project (the "Project"), including whether Defendants "knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214."  Order (Dkt. # 171).  The information sought is relevant—especially under the discovery standard of relevance—to the claims by Plaintiff the United States of America (the "United States"), and the OMC, for damages and permanent injunctive relief for trespass, conversion, and other claims made in the United States' First Amended Complaint, Dkt. # 20 and the OMC's First Amended Intervenor Complaint, Dkt. # 164.

## BACKGROUND

Movants adopt and incorporate herein the "Background section," and any accompanying exhibits, of Defendant Osage Wind, LLC's First Motion to Compel the United States, Dkt. # 177 (Aug. 12, 2020), and Defendants' First Motion to Compel Against the Osage Minerals Council, Dkt. # 179 (Aug. 18, 2020).

## PROCEDURAL ISSUES IN THIS CASE

Movants adopt and incorporate herein paragraphs 14 through 30 of the "Procedural Issues in this Case" section, and any accompanying exhibits, of Defendant Osage Wind, LLC's First Motion to Compel the United States, Dkt. # 177 (Aug. 12, 2020). In addition, Movants assert the following relevant facts:

1.      Defendants filed their Answer to the United States' First Amended Complaint.  Dkt. # 99.

2.      The United States moved to strike the Defendants' answer to the First Amended Complaint on the grounds that it was untimely and that the Tenth Circuit's Opinion precluded *any* affirmative defenses in this case.  Dkt. # 102.

3.      The Court denied the motion to strike on April 13, 2020.  Dkt. # 135.  In the Order, the Court stated that "issues determined by the Tenth Circuit are law-of-the-case and affirmative defenses going to those issues shall not be considered on remand."  *Id.*

4.      The OMC filed its Complaint in Intervention. Dkt. # 136. Defendants filed a partial motion to dismiss the OMC's Complaint in Intervention, Dkt. # 150, and a motion to strike certain allegations in the OMC's Complaint in Intervention, Dkt. # 151.

5.      The Court granted in part the partial motion to dismiss on July 1, 2020. Dkt. # 161. In that Order, the Court "restrict[ed] OMC's remedies to those sought by the United States in the First Amended Complaint" and dismissed "OMC's allegations of intentional, willful, or bad faith conduct and certain equitable relief," including disgorgement of profits, accounting of all revenue, and unjust enrichment. *Id.*

6.      The Court also granted in part the motion to strike on July 1, 2020. Dkt. # 162. In that Order, the Court struck allegations of "bad faith conduct" of Defendants and of third parties, allegations of financial information, and allegations of health harms caused by the Project from the OMC's Complaint in Intervention. *Id.*

7.      The Court subsequently ordered that "[D]efendants' alleged bad faith remains at issue in this lawsuit to the extent tied to Osage Wind's alleged status as an 'innocent trespasser.'" Dkt. # 171.

8.     The OMC filed its First Amended Complaint in Intervention, Dkt. # 164, to which Defendants filed their Answer, Dkt. # 174.

9.     The OMC filed a Motion for Judgment on the Pleadings. Dkt. # 204. In the Motion for Judgment on the Pleadings, the OMC sought judgment on Defendants' affirmative defenses of estoppel, laches, waiver, unclean hands, and *in pari delicto*. *Id.*

10.     The Court granted the Motion for Judgment on the Pleadings. Dkt. # 207. With respect to laches, the Court concluded the Tenth Circuit's ruling on laches was law of the case. *Id.* The Court concluded the other defenses challenged were state-law based and thus inapplicable to the claims by the United States and the OMC. *Id.*

11.     Since late 2019, the parties have exchanged written discovery, and a total of four motions to compel were filed in late 2020: Osage Wind's First Motion to Compel against the United States, Dkt. # 177; Defendants' First Motion to Compel against the OMC, Dkt. # 179; United States' Motion to Compel, Dkt. # 175; and the OMC's Motion to Compel, Dkt. # 183. Each of these motions were referred to Magistrate Judge Jayne. Dkt. # 178; Dkt. # 180; Dkt. # 185.

12.     Two Orders were issued with respect to the various motions to compel, Dkt. # 210 and Dkt. # 214. The first, issued January 16, 2021, ruled on a number of issues, including whether Defendants had waived privilege for a limited number of communications. Defendants sought communications between and among the United States and the OMC and/or the Osage Nation related to the Project. The Court concluded the requested discovery was not relevant to Plaintiffs' claims for permanent injunction and ejectment, concluding "the 'balancing of equities' under *Davilla* does not include any backward-looking considerations of past conduct or knowledge." Dkt. # 210 at 23. *Citing, Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959 (10th Cir.

2019). The Court did not address whether such evidence could be pertinent to determining appropriate damage remedies.

13.     Defendants filed partial objections to Judge Jayne's Orders, specifically objecting to the ruling on relevancy under *Davilla*. Dkt. # 226.

14.     The Court denied the objections by order dated May 21, 2021. Dkt. # 226. The Court upheld the conclusion that, applicable to permanent injunctive relief,  *Davilla*

> explicitly required consideration of the following factors in cases of continuing trespass to Indian land: (1) whether an injunction is necessary to prevent irreparable harm, (2) whether the threatened injury outweighs the harm that the injunction may cause to the enjoined party, and (3) whether the injunction would adversely affect the public interest. The factors reflect the prospective nature of injunctive relief, and focus on the future effect of the requested relief. . . . [I]n this case, the court will consider the relative costs and benefits of removal, both as to the parties hereto and the public at large.

Dkt. # 226 at 8 (quotation marks and citations omitted).  The Court did not address whether *Davilla* applied to determining appropriate damage remedies. *Id.* at 6-11.

15.     Defendants have sought reconsideration of the Court's order denying Defendants' objections and the Court's orders on affirmative defenses. Dkt. # 229. The motion to reconsider has been fully briefed and is pending before the Court.

**DISPUTED DISCOVERY ISSUES**

The responses from the OMC to Osage Wind's Second Interrogatories and Requests for Production, served July 28, 2021, are the subject of this Motion. A copy of those responses are attached hereto as Exhibit A. The specifically disputed discovery responses are as follows:

> **Interrogatory No. 16:**  Identify all instances since 2010 in which You asserted in formal litigation or in correspondence that a Person had extracted or used limestone or other hard minerals in Osage County without the proper lease or permit authorizing such extraction or use.

> **Response to Interrogatory No. 16:**  The OMC objects to this Interrogatory on the grounds that it is overly broad as it seeks information that is not relevant to any

- 4 -

party's claims or defense and that it seeks privileged information. The OMC further objects to this Interrogatory as vague and ambiguous in its use of the term "Person," which Osage Wind has not defined in its Requests, and overbroad and unduly burdensome with respect to the defined term "You," which purports to include all of the following: "current or former officers, agents, employees, attorneys, subsidiaries, divisions, affiliates, committees, boards, or other related business entities, and each partnership, limited liability company, joint venture, corporation or other entity to which [the OMC] is a party, as well as the present and former directors, officers, members, partners, agents, contractors, consultants, and employees of such entities, and representatives of all of the foregoing, and any other person acting or purporting to act on behalf of any of the foregoing, and, where the context permits, [the OMC's] counsel and any consultants, experts, investigators, agents, attorneys, or other persons acting on [the OMC's] behalf."

Finally, the OMC objects to this Interrogatory as vexatious, harassing, and overly burdensome to the extent it seeks to relitigate the merits of this case. *See United States v. Osage Wind, LLC*, 871 F.3d 1078, 1092 (10th Cir. 2017) (requiring Defendants "to secure a federally approved lease from OMC under § 214.7"). The OMC further objects to and does not answer Interrogatory No. 16 on the grounds that it is specifically barred by the Court's Opinions and Orders of January 11, 2021 (Dkt. 207), January 16, 2021 (Dkt. 210) and May 21, 2021 (Dkt. 226). The Tenth Circuit has concluded that Defendants mined the Osage Minerals Estate without the requisite permit required under federal law, and Interrogatory No. 16 in no way seeks information relevant to this Court's adjudication of the proper remedy for Defendants' unlawful conduct.

**Interrogatory No. 17:**  Identify the amount of royalty income You have received pursuant to leases issued pursuant to 25 C.F.R. Part 214 and/or "Sandy Soil Permits" from November 24, 2014 to the date of Your response to this Interrogatory.

**Response to Interrogatory No. 17:**  The OMC objects to this Interrogatory on the grounds it is overly broad, unduly burdensome, and duplicative of information already sought from the OMC. Among other deficiencies, this Interrogatory misconstrues the relationship between the OMC as the representative body of the Osage Nation as trust beneficiary of the Osage Mineral Estate, the United States as trustee of the Osage Mineral Estate and proceeds derived from the Osage Mineral Estate, and the headright holders (Osage and non-Osage) that own rights to receive quarterly distributions from the United States of minerals proceeds from various sources. The OMC receives up to $1 million annually for its administrative expenses from the federal trust account established for the trust beneficiary. As a result of this Osage trust system, all payments from Osage minerals production in accordance with 25 C.F.R. Part 214 are made to the United States and not the OMC. As a result and in combination with the definition of "You," the plain language of this Interrogatory requests that the OMC obtain royalty information from "current or former officers, agents, employees, attorneys, subsidiaries, divisions, affiliates,

committees, boards, or other related business entities, and each partnership, limited liability company, joint venture, corporation or other entity to which [the OMC] is a party, as well as the present and former directors, officers, members, partners, agents, contractors, consultants, and employees of such entities, and representatives of all of the foregoing, and any other person acting or purporting to act on behalf of any of the foregoing, and, where the context permits, [the OMC's] counsel and any consultants, experts, investigators, agents, attorneys, or other persons acting on [the OMC's] behalf" who may be an OMC shareholder.

The OMC further objects to this Interrogatory to the extent it is duplicative of prior interrogatories and requests for production. Without waiving the foregoing objections or the General Objections listed above, the OMC refers Defendants to its responses to Enel Green Power North America, Inc.'s Interrogatory No. 12 and Request for Production No. 12. The OMC further refers Defendants to responsive documents related to Part 214 permits or leases identified and produced through Plaintiff United States of America's Supplemental Responses to Defendant, Osage Wind, LLC's First Set of Interrogatories and Requests for Production at Interrogatory No. 8, Request Nos. 7 & 8.

**Interrogatory No. 20:**  Identify all proposed mineral leases under 25 C.F.R. Part 214 the OMC has approved the lease terms defining compensation for the OMC were not based on the value or volume of minerals mined and sold.

**Response to Interrogatory No. 20:**  The OMC objects to this Interrogatory on the grounds that it is incomprehensible, vague, and not likely to lead to the discovery of admissible evidence in this litigation. Similarly, to the extent this Interrogatory intends to request information regarding "approved" mineral leases, the OMC objects on the grounds that the interrogatory is duplicative of information already sought from the OMC and overly broad, unduly burdensome, and unlikely to lead to evidence relevant to a party's claims or defenses because it is not limited in time. Finally, the OMC notes that defendants have lost their argument that their excavation and use of minerals from the Osage Mineral Estate did not constitute mining under the law simply because they never sold them. The Tenth Circuit rejected this argument. *See United States v. Osage Wind, LLC*, 871 F.3d 1071, 1089 (10th Cir. 2017) ("While the definition of mining certainly includes commercial mineral extractions and even offsite relocation of minerals, the district court's limitation of "mineral development" to those contexts is overly restrictive. The text of § 211.3 does not indicate that mining is confined to commercializing extracted minerals or relocating them offsite—instead it refers merely to the "science, technique, and business of mineral development." § 211.3. Finding no support in the § 211.3's text itself, Osage Wind attempts to buttress its preferred narrowing construction by reference to other provisions that contemplate the sale of minerals. We are not persuaded.").  The OMC will not entertain the idea of re-litigating this losing argument in the form of an Interrogatory.

Without waiving the foregoing objections and while incorporating the General Objections identified above, the OMC refers Defendants to its Responses to Enel Green Power North America, Inc.'s Interrogatory Nos. 13-15 and Request for Production Nos. 13-15.

**Interrogatory No. 21:**  Identify all proposed or approved mineral leases under 25 C.F.R. Part 214 when the mineral lease contained terms defining compensation for the OMC identical or substantially similar to the compensation terms of any surface leases issued to the same lease applicant for the same geographic area.

**Response to Interrogatory No. 21:**  The OMC objects to this Interrogatory on the grounds the request is overly broad, unduly burdensome, and unlikely to lead to evidence relevant to any party's claim or defense. To the extent Osage Wind seeks information regarding approved mineral leases for the Osage Mineral Estate, and without waiving the foregoing objections or the General Objections identified above, the OMC refers Defendant to its Responses to Enel Green Power North America, Inc.'s Interrogatory Nos. 13-15 and Request for Production Nos. 13-15.

**Interrogatory No. 24:**  Identify, including by bates numbers if already produced, all leases under 25 C.F.R. Part 214 for excavation related to a road or building construction project, from 2011 to the present, in which minerals excavated were not sold or moved to locations other than the site of the original excavation.

**Response to Interrogatory No. 24:**  The OMC objects to this Interrogatory on the grounds that it is unlikely to lead to the discovery of evidence relevant to a party's claims or defenses because it seeks information related to claims already argued before and decided by the Tenth Circuit. *See United States v. Osage Wind, LLC*, 871 F.3d 1078, 1089 (10th Cir. 2017) ("While the definition of mining certainly includes commercial mineral extractions and even offsite relocation of minerals, the district court's limitation of "mineral development" to those contexts is overly restrictive. The text of § 211.3 does not indicate that mining is confined to commercializing extracted minerals and relocating them offsite—instead it refers merely to the "science, technique, and business of mineral development." § 211.3. Finding no support in the § 211.3's text itself, Osage Wind attempts to buttress its preferred narrowing construction by reference to other provisions that contemplate the sale of minerals. We are not persuaded."). The OMC will not entertain the idea of re-litigating this argument in the form of an Interrogatory.

**Request for Production No. 41:**  Produce, or identify by bates numbers if already produced, all inquiries, correspondence, requests, or applications you have received for a lease under 25 C.F.R. Part 214 for excavation related to a road or building construction project, from 2011 to the present.

**Response to Request for Production No. 41:**  The OMC objects to this Request as overbroad and unduly burdensome with respect to the defined term "You," which purports to include all of the following: "current or former officers, agents,

employees, attorneys, subsidiaries, divisions, affiliates, committees, boards, or other related business entities, and each partnership, limited liability company, joint venture, corporation or other entity to which [the OMC] is a party, as well as the present and former directors, officers, members, partners, agents, contractors, consultants, and employees of such entities, and representatives of all of the foregoing, and any other person acting or purporting to act on behalf of any of the foregoing, and, where the context permits, [the OMC's] counsel and any consultants, experts, investigators, agents, attorneys, or other persons acting on [the OMC's] behalf."  Furthermore, "construction projects" are not at issue in this litigation. The Tenth Circuit did not conclude tha all construction projects trigger 25 C.F.R. Part 214; but rather, the Tenth Circuit concluded that the fact that Defendants were using the minerals they took form the Osage Mineral Estate to stabilize the foundations for their turbines triggered 25 C.F.R. Part 214. As such, documetns related to "construction projects" writ large have no bearing on the Court's adjudication of the proper remedy in this matter.

Without waiving the foregoing objections or the General Objections identified above, and to the extent the Request appears to be seeking approved leases under 25 C.F.R. § 214, the OMC refers Osage Wind to Plaintiff United States of America's Supplemental Responses to Defendant, Osage Wind, LLC's First Set of Interrogatories and Request for Production at Interrogatory No. 8, Request Nos. 7 & 8 and produces the following:

OMC-000776-782
OMC-000787-794
OMC-000796-800
OMC-000806-807
OMC-000808-810
OMC-000811-815
OMC-000816-819
OMC-000820-821
OMC-000822-824
OMC-000825-830
OMC-000831-836
OMC-000837
OMC-000838

### CERTIFICATION OF CONFERENCE

In accordance with Fed. R. Civ. P. 37(a)(2)(A) and LCvR. 37.1, Osage Wind advises the

Court that its counsel, Ryan A. Ray, Robin D. Ball, Lynn H. Slade, Sarah M. Stevenson, and

Dominic A. Martinez., conferred in good faith with counsel for the OMC, Wilson Pipestem and

Abi Fain, via telephone on August 16, 2021, but has been unable to resolve these discovery issues. The Court's involvement is therefore necessary to reach a resolution on the issues set forth herein.

**ARGUMENT AND AUTHORITIES**

This Motion presents critical issues determining whether Defendants are foreclosed from presenting a full defense to the remedial claims asserted in this case. Under the broad relevancy standards of FED. R. CIV. P. 26, *see* Point I, *infra*, the Court should reject the OMC's effort to foreclose discovery into its actions and procedures directly relating to the regulatory setting in which the OMC claims Defendants acted in "bad faith" in excavating minerals without a 25 C.F.R. Part 214 mining lease because they "knew or should have known" such a lease was required. *See* Point II, *infra.* The Court should also reject the OMC's effort to foreclose discovery into its actions and policies that bear on the permanent injunction test under *Davilla v. Enable Midstream Partners, L.P.*, 913 F.3d 959 (10th Cir. 2019) – and to prevent consideration of the Plaintiffs' prior leasing actions in determining proper damages. *See* Point III, *infra.* The Court should compel the requested discovery because neither the prior rulings in this case nor the standards applicable under the Federal Rules support the OMC's efforts to broadly curtail discovery.

I.   **THE SCOPE OF DISCOVERY AND DEFINITION OF DISCOVERY RELEVANCE ARE BROAD.**

FED. R. CIV. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  "The Federal Rules of Civil Procedure are designed to allow liberal pretrial discovery 'to make the task of the trier of fact more manageable by means of an orderly presentation of complex issues of fact.'" *B.H. v. Gold Fields Mining Corp.*, No. 04-CV-0564-CVE-PJC, 2006 WL 3757809, *3 (N.D. Okla. Dec. 19, 2006) (quoting *Smith v. Ford Motor Co.*, 626 F.2d 784, 797 (10th Cir. 1980)).  Accordingly, it is well established that pretrial discovery is

"accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *see also Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 326 (10th Cir. 1981) (explaining that "relevancy is construed more broadly during discovery than at trial"). "Liberal discovery rules provide parties with the fullest possible knowledge of the operative facts of the case before trial to reduce surprise and ensure that cases are decided on the merits." *Perez v. El Tequila LLC*, No. 12-CV-588-JED-PJC, 2014 U.S. Dist. LEXIS 149372, at *15 (N.D. Okla. Oct. 20, 2014).

Objections stating that requests are overly broad and burdensome are meritless *absent factual support*. *Cohlmia v. Ardent Health Servs., LLC*, No. 05-CV-384-GKF-PJC, 2008 U.S. Dist. LEXIS 92831, at *9 (N.D. Okla. Nov. 14, 2008) ("A party resisting discovery on the ground that the requests are overly broad has the burden of supporting its objection, unless the request is overly broad on its face."); *see also Snowden v. Connaught Lab*, 137 F.R.D. 325, 332 (D. Kan. 1991) ("burden is on the party objecting to show that responding to the discovery is unduly burdensome"); *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987) (burden is on objecting party to establish irrelevancy). Courts have overruled boilerplate objections like those asserted here. *See Roseberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980) (court overruled defendant's objections which repeatedly asserted objections of "overly broad, burdensome, and irrelevant").

In fact, a simple, unsupported assertion that a discovery request is "burdensome" has been ruled to be neither an answer nor an objection, and may constitute a waiver of any legitimate objection. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). In asserting a "burdensome" objection, the OMC must prove that any such burden is unreasonable when balanced against Osage Wind's need for the information being sought. *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975). The OMC has made no showing of *any* burden, nor has it even attempted to do

so. In addition, while the OMC's "overbroad and unduly burdensome" objection to Interrogatory No. 16 was initially based, in part, on Osage Wind's definition of the term "You," Osage Wind has agreed to narrow that definition substantially to only include the OMC as an entity. *See* Exhibit B, letter, Lynn H. Slade to Mary Kathryn Nagle, August 6, 2021.

"Following the 2015 Amendment [to Fed. R. Civ. P. 26], 'relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.'" *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 U.S. Dist. LEXIS 860, at *6 (N.D. Okla. Jan. 3, 2018) (quoting *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016). "'[R]elevance' in the discovery context does not necessarily have the same meaning as 'relevance' for purposes of admissibility at trial." *Mae Pendleton v. Bd. of Cty. Comm'rs for Okla. Cty.*, No. CIV-18-707-G, 2020 U.S. Dist. LEXIS 41264, at *3-4 (W.D. Okla. Mar. 10, 2020). "'[R]elevance' has been broadly defined to include 'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Alfwear, Inc. v. Kulkote, LLC*, No. 2:19-cv-00027-CW-JCB, 2020 U.S. Dist. LEXIS 129573, at *3 (D. Utah July 21, 2020) (quoting *United States v. Childs*, No. CR-09-146-D, 2018 U.S. Dist. LEXIS 20058, 2018 WL 775018, at *3 (W.D. Okla. Feb. 7, 2018) (citations omitted)).

The OMC raises a relevance objection to Interrogatory No. 16 ("Interrogatory No. 16 in no way seeks information relevant to this Court's adjudication of the proper remedy") and No. 24 ("it is unlikely to lead to the discovery of evidence relevant to a party's claims or defenses because it seeks information related to claims already argued before and decided by the Tenth Circuit."). As a result, the OMC bears the burden of establishing that the requested documents are not relevant under the governing standard, *Burke*, 115 F.R.D. at 224, and it must provide the Court with specific

factual assertions to support their relevance objections.  *Roseberg*, 85 F.R.D. at 296-97.  As with

its other objections, the OMC has not supplied adequate factual support for it meritless relevance

objections.

The purpose of the liberal discovery rules is to ensure that the basic issues or facts are

disclosed to the fullest extent practicable. With these general principles in mind, the OMC's

responses to Osage Wind's Second Interrogatories and Requests for Production at issue are

deficient.

**II.    THE COURT SHOULD COMPEL THE REQUESTED DISCOVERY BECAUSE THE OMC HAS NOT ABANDONED ITS CLAIM THAT DEFENDANTS ACTED IN BAD FAITH WHEN THEY ENGAGED IN ACTIVITIES THE TENTH CIRCUIT CONCLUDED REQUIRED A MINING LEASE.**

The OMC's First Amended Complaint in Intervention alleges that Defendants "willfully

and intentionally enter[ed] and disrupt[ed] the Osage Mineral Estate" and "knew or should have

known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25

C.F.R. § 214." Dkt. #164, ¶¶ 84-85, 92.  While the Court struck the OMC's allegations of "bad

faith conduct" of Defendants and of third parties, *see* Dkt. # 162, the Court subsequently clarified

that "[D]efendants' alleged bad faith remains at issue in this lawsuit to the extent tied to Osage

Wind's alleged status as an 'innocent trespasser.'" Dkt. # 171.  Both Plaintiffs have repeatedly

acknowledged the ongoing relevance of Defendants' alleged bad faith. *See, e.g.*, Intervenor

Plaintiff Osage Minerals Council's Motion for Judgment on the Pleadings and Brief in Support

Thereof, Dkt. # 204 ("[t]ime and time again, this Court has reiterated that at this point in the

proceedings, 'the issue that's really before the court, or will be before the court, is whether or not

the trespasser here is innocent or is not, or is a bad faith trespasser[.]'"); Transcript of October 7,

2020 Motion Hearing, relevant portions attached hereto as Exhibit C, at 73:25 – 74:5 (Counsel for

OMC: "Judge Frizzell stated in his July 15th order that we are entitled to go after any discovery

that relates to their state of mind, good faith vs. bad faith, they're maintaining they're a good faith trespasser. So it's not just about what rocks are crushed and how."); The United States' Notice of the Court's Preclusion of Defendants' Equitable, Affirmative Defenses, Dkt. # 208, ¶ 8. ("Notably, the issue of Defendants' bad faith remains pertinent to damages and remedies, despite the preclusion of Defendants' equitable defenses by the Court."). In accordance with this Court's July 15, 2020 Order (Dkt. # 171), Plaintiffs and Defendants agree that whether Defendants acted in bad faith remains a live issue that was not addressed or resolved by the Tenth Circuit.

Given this claim, the OMC's resistance to Osage Wind's discovery requests, which directly pertain to Defendants' alleged bad faith, is without merit. In response to both Interrogatory Nos. 16 and 24, the OMC claims that Osage Wind seeks to relitigate issues decided by the Tenth Circuit. *See* Exhibit A ("the OMC objects to this Interrogatory [No. 16] as vexatious, harassing, and overly burdensome to the extent it seeks to relitigate the merits of this case."); *id*. ("The OMC will not entertain the idea of re-litigating this argument in the form of an Interrogatory."). The OMC's objections ignore the relevance of the requested information to the issue of Defendants' bad faith, which undisputedly remains before this Court. Interrogatory No. 16 seeks information on instances in which the OMC asserted in litigation or correspondence that minerals were extracted in Osage County without a lease or permit, and Interrogatory No. 24 seeks leases for road and building construction projects in which excavated minerals were not sold or relocated from the site of their original excavation. *See* Exhibit A. Osage Wind does not seek this information to argue that a lease was not required for its construction and excavation activities for the Project. Rather, Osage Wind seeks this information to illustrate and support its good faith belief that a lease or permit was not required for its specific construction and excavation activities because no information indicated a lease or permit was required in similar situations. Upholding the OMC's

objections to these Interrogatories would deprive Defendants of the opportunity to present a complete defense to Plaintiffs' allegation that it committed trespass against the Osage Minerals Estate in bad faith.

### III.   THE OMC'S EXTENSIVE DISCOVERY EFFORTS REGARDING DEFENDANTS' ALLEGED BAD FAITH, WHILE SIMULTANEOUSLY STYMIEING DEFENDANTS' DISCOVERY ON THE SAME TOPICS SUPPORTS COMPELLING DEFENDANTS' DISCOVERY.

The relevance of Osage Wind's discovery requests to the OMC is further illustrated by the OMC's and the United States' deposition questioning to date in this case. The Plaintiffs have deposed witnesses, including Defendants' employees, *extensively* regarding Defendants' previous knowledge and notice of whether a mining lease was required for the Project—the very subject the OMC now considers irrelevant. *See* Deposition of Joan Heredia, relevant portions attached hereto as Exhibit D, at 44:13-16 (Counsel for OMC: "So was there ever a project for Enel where the governmental authority said a lease or permit is necessary where the company disagreed and said we are not going to seek that permit?"); Deposition of Bill Moskaluk, relevant portions attached hereto as Exhibit E, at 157:23-158:1 (Counsel for OMC: "Do you recall whether the Bureau of Indian Affairs ever communicated to EGPNA that crushing minerals on the Osage Wind farm would require a lease or permit?"); Deposition of Craig Mazurowski, relevant portions attached hereto as Exhibit F, at 134:20-23 ("Was it your understanding that mining on the Osage Wind farm project was acceptable so long as it was not transported away from the location where it was mined?"); Deposition of Aaron Weigel, relevant portions attached hereto as Exhibit G, at 69:9-12 (Counsel for OMC: When did you personally reach the conclusion that the construction activities and excavation . . . of the Osage mineral estate did not constitute mining?"); Deposition of Michael Storch, relevant portions attached as Exhibit H, at 132: 14-18 (Counsel for OMC: "[W]as there ever a point in time, at any point in this process, when you personally believed that

perhaps a permit might be required or you weren't sure whether a permit from the Osage Nation would be required?").

Plaintiffs have dedicated hours of deposition time to questions regarding Defendants' pre-construction and -excavation knowledge of whether a mining lease was required for the Project, presumably to find support for their claims of bad faith and that Defendants "knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214." To mount a defense to Plaintiffs' allegations, Defendants must be able to conduct discovery on the same topics explored by Plaintiffs. *Compare* Mazurowski Dep. (Exh. F) at 134:20-23 ("Was it your understanding that mining on the Osage Wind farm project was acceptable so long as it was not transported away from the location where it was mined?") *with* Exhibit A (Interrogatory No. 24: "Identify . . . all leases under 25 C.F.R. Part 214 for excavation related to a road or building construction project . . . in which minerals excavated were not sold or moved to locations other than the site of the original excavation.").

The OMC's extensive discovery exploring whether Defendants "knew or should have known" that a mineral lease was required not only demonstrates the relevance of Interrogatory Nos. 16 and 24—it also opens the door to Interrogatory Nos. 16 and 24. *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192-JWL-DJW, 2007 WL 1531846, at *5 (D. Kan. May 25, 2007) ("By raising a defense, a party opens the door to the discovery concerning that defense.") *aff'd*, 244 F.R.D. 638 (D. Kan. 2007); *FrangranceNet.com, Inc. v. FragranceX.com, Inc.*, No. CV 06-22, 25 (JFB) (AKT) 2007 WL 9710244 at *3 (E.D.N.Y. Aug. 28, 2007) ("Discovery is a two-way street. Therefore, if Defendant seeks Plaintiff's corporate books and records, it is only fair that Defendant also be required to make its books and records available absent a compelling reason to the contrary.") (internal citations omitted). By asserting that Defendants knew or should have

known that a mineral lease was required, the OMC has opened the door to discovery and evidence establishing that Defendants did not know, and, based on pre-excavation facts, should not have known a lease was required, and therefore could have believed as much in good faith.

In addition, information pertaining to prior leases or remedies demanded for failure to secure a pre-mining lease requested in Osage Wind's Interrogatories Nos. 20, 21, and 24, and related requests to produce, including Request No. 41, also will be pertinent to determining the appropriate damage remedy, addressing a dispute between two opposing mining engineering experts on that subject. *See* Deposition of John Pfahl, relevant portions attached hereto as Exhibit I, at 27:11-24 (relying on royalty rate provided in mineral lease of quarry on Osage Mineral Estate to calculate value of excavated limestone); *id*. at 28:21-25 (acknowledging reliance on royalty rates provided in prior leases); *id*. at 35:12-17 (same); Deposition of Robert Freas, relevant portions attached hereto as Exhibit J, at 68:17-69:3 (relying on purchase order values, rather than values provided in prior leases, to determine royalty rate). The Court should compel answers and responses to permit a full and fair presentation of the issues subject to remand.

## IV.   THE COURT SHOULD DIRECT OMC TO IDENTIFY SPECIFIC DOCUMENTS IN ITS DISCOVERY RESPONSES.

In its responses to Osage Wind's Interrogatory Nos. 17, 20, and 21, and Osage Wind's Requests for Production No. 41, the OMC refers Osage Wind to documents previously produced in response to various discovery requests. The OMC does not, however, refer to the *specific* documents produced (by Bates number or otherwise), leaving Defendants to guess as to which documents may be responsive. The OMC should be compelled to identify the specific documents that are responsive to each specific discovery request.

Federal Rule of Civil Procedure 34 requires a party responding to a request for production to "organize and label [documents] to respond to the categories in the request." FED. R. CIV. P.

34(b)(2)(E)(i). Rule 33 provides that if an answer to Interrogatory refers the requesting party to produced records, it must "specify the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." FED. R. CIV. P. 33(d)(1).  The OMC's responses to Osage Wind's Interrogatory Nos. 17, 20, and 21, and Osage Wind's Request for Production No. 41 fall short of the standards set forth in FED. R. CIV. P. 33 and 34.  Due to the OMC's general references to documents previously produced in response to prior discovery requests, it is difficult for Defendants' to identify the precise documents the OMC claims are responsive to the discovery requests at issue.

Defendants require additional specificity to determine which of the previously produced documents the OMC believes are responsive to Osage Wind's discovery requests cited herein. *See Kevin Hogg v. Petroquest Energy, LLC*, No. CIV-16-463-RAW, 2021 WL 3334742, at *2 (E.D. Okla. Aug. 2, 2021) ("While Defendants may specify documents instead of providing a narrative response to an interrogatory, they must still identify the responsive documents in a manner whereby Plaintiff can locate the responsive information, especially when the number of documents produced is extensive. Here, WSGP merely refers to documents produced in response to Plaintiff's document requests. This answer does not adequately identify the responsive documents for Plaintiff. In the supplemental responses, the documents must be identified with more specificity by Defendants, be it by bates stamp number or some other sort of identification."); *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, No. CIV 08-1101 JB/RLP, 2009 WL 2460756, at *8 (D.N.M. July 31, 2009) (requiring previously produced documents to be identified by Bates number). Defendants request the Court order the OMC to supplement its responses to Osage Wind's Interrogatory Nos. 17, 20, and 21, and Osage Wind's Request for Production No. 41 to identify particular responsive documents by Bates number.

## CONCLUSION AND REQUESTED RELIEF

For the reasons explained above, Osage Wind asks the Court to compel the OMC to provide complete responses to Osage Wind's Interrogatory Nos. 16, 17, 20, 21, and 24, and Osage Wind's Request for Production No. 41.

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**, *pro hac vice*
**Sarah M. Stevenson**, *pro hac vice*
**Dominic A. Martinez**, *pro hac vice*
**MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.**
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**Thomas J. McCormack**, *pro hac vice*
**Robert Kirby**, *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
**Robin D. Ball** (Los Angeles Office), *pro hac vice*
**Robert D. Comer** (Denver Office), *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

- 18 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2021, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Stuart P. Ashworth
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
David McCullough
Jeffrey S. Rasmussen

The following non-ECF registrants have been served by email:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


*/s/ Ryan A. Ray*
Ryan A. Ray