**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| THE OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' THIRD MOTION**
**TO COMPEL AGAINST THE OSAGE MINERALS COUNCIL**

---

Ryan A. Ray, OBA #22281
NORMAN WOHLGEMUTH, LLP
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

Lynn H. Slade, *pro hac vice*
Sarah M. Stevenson, *pro hac vice*
Dominic A. Martinez, *pro hac vice*
MODRALL, SPERLING, ROEHL,
HARRIS & SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

Thomas J. McCormack, *pro hac vice*
Robert Kirby, *pro hac vice*
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
Robin D. Ball (Los Angeles Office), *pro hac vice*
Robert D. Comer (Denver Office), *pro hac vice*
NORTON ROSE FULBRIGHT US LLP

**ATTORNEYS FOR DEFENDANTS,**
**OSAGE WIND, LLC, ENEL KANSAS, LLC**
**AND ENEL GREEN POWER NORTH**
**AMERICA, INC.**

Dated: August 19, 2021

TABLE OF CONTENTS

BACKGROUND ............................................................................................................1

PROCEDURAL ISSUES IN THIS CASE ...................................................................2

DISPUTED DISCOVERY ISSUES ............................................................................2

    I.    OBJECTIONS ON RELEVANCE GROUNDS ............................................. 2

    II.   OBJECTIONS ON PRIVILEGE GROUNDS ................................................ 6

CERTIFICATION OF CONFERENCE .....................................................................11

ARGUMENT AND AUTHORITIES .........................................................................11

    I.    THE OMC IMPROPERLY INSTRUCTED CHAIRMAN WALLER NOT TO
    ANSWER QUESTIONS ON RELEVANCE GROUNDS ............................... 11

    II.   THE OMC IMPROPERLY INSTRUCTED CHAIRMAN WALLER NOT TO
    ANSWER QUESTIONS ON ATTORNEY-CLIENT PRIVILEGE GROUNDS ................... 18

    III.   THE OMC IMPROPERLY INSTRUCTED CHAIRMAN WALLER NOT TO
    ANSWER QUESTIONS ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS ......... 22

CONCLUSION AND REQUESTED RELIEF ...........................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re CCA Recordings 2255 Litig. v. United States*
    337 F.R.D. 310 (D. Kan. 2020)..............................................................................20

*CGC Holding Co. LLC v. Hutchens*
    No. 11-cv-01012-RBJ-KLM, 2016 WL 11691829 (D. Colo. Apr. 28, 2016)........18

*Cherokee Nation v. Salazar*
    986 F. Supp. 2d 1239 (N.D. Okla. 2013)...........................................................22, 23

*Ctr. for Biological Diversity v. Norton*
    336 F. Supp. 2d 1155 (D.N.M. 2004) ...................................................................22

*D.J. Simmons, Inc. v. Broaddus*
    No. CIV 99-1105 2000 WL 36739814 (D.N.M. June 21, 2000)............................11

*Davilla v. Enable Midstream Partners, L.P.*
    913 F.3d 959 (10th Cir. 2019) ............................................................12, 13, 15, 16

*In re Foster*
    188 F.3d 1259 (10th Cir. 1999) ............................................................................19

*FrangranceNet.com, Inc. v. FragranceX.com, Inc.*
    No. CV 06-22, 25 (JFB) (AKT) 2007 WL 9710244 (E.D.N.Y. Aug. 28, 2007) ...................17

*Hinsdale v. City of Liberal, Kan.*
    961 F. Supp. 1490 (D. Kan.), *aff'd*, 981 F. Supp. 1378 (D. Kan. 1997).................21

*Linnebur v. United Tel. Ass'n*
    No. 10-1379-RDR 2012 WL 1183073 (D. Kan. Apr. 9, 2012) ..............................20

*MacNamara v. City of New York*
    No. 04 Civ. 9612(KMK)(JCF) 2007 WL 755401 (S.D.N.Y. Mar. 14, 2007),
    *adhered to on reconsideration*, 2007 WL 3196295 (S.D.N.Y. Oct. 30, 2007) .......23

*New Jersey v. Sprint Corp.*
    258 F.R.D. 421 (D. Kan. 2009).................................................................19, 20, 21

*Resol. Tr. Corp. v. Dabney*
    73 F.3d 262 (10th Cir. 1995) ................................................................................11

*Roe v. Cath. Health Initiatives Colo.*
    281 F.R.D. 632 (D. Colo. 2012) ...........................................................................19

*S.E.C. v. Kovzan*
    2013 WL 647300 No. 11-2017-JWL (D. Kan. Feb. 21, 2013)................................23

*Saunders v. City of Chicago*
    No. 12 C 9158, 2015 WL 4765424 (N.D. Ill. Aug. 12, 2015)................................24

*Stewart v. Dep't of Interior*
    554 F.3d 1236 (10th Cir. 2009) ................................................................22

*Strand v. Usana Health Sciences, Inc.*
    No. 2:17-cv-00925-HCN-JCB, 2021 WL 3055608 (D. Utah July 20, 2021) ........................21

*Trentadue v. Integrity Comm.*
    501 F.3d 1215 (10th Cir. 2007) ................................................................22

*Trujillo v. Town of Taos*
    No. Civ. 08-0661 2009 WL 10700041 (D.N.M. Jan. 15, 2009) ............................................20

*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*
    No. 05-2192-JWL-DJW, 2007 WL 1531846 (D. Kan. May 25, 2007)................................17

*United States v. Johnston*
    146 F.3d 785 (10th Cir. 1998) ................................................................19

*Upjohn Co. v. United States*
    449 U.S. 383 (1981)................................................................20


**Court Rules and Federal Regulations**

Fed. R. Civ. P. 30(c)(2)...........................................................................11, 12, 18

Fed. R. Civ. P. 37(a)(1).............................................................................1, 11

Fed. R. Civ. P. 37(a)(3)(B)(i)............................................................................1

Fed. R. Civ. P. 26(b)(5)(A).............................................................................19

LCvR 37.1.....................................................................................1, 11

25 C.F.R. § 211.....................................................................................1, 13

25 C.F.R. § 214.................................................................................1, 13, 15

iv

In accordance with Fed. R. Civ. P. 37(a)(3)(B)(i) and LCvR 37.1, Defendants, Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively "Defendants" or "Osage Wind") respectfully request that the Court enter an Order requiring the Intervenor-Plaintiff, the Osage Minerals Council ("OMC"), to reopen the deposition of OMC Chairman Everett Waller for a period of three hours and directing the OMC's counsel not to give instructions not to answer on improper grounds.

During Chairman Waller's August 5, 2021 deposition, the OMC's counsel improperly instructed the deponent not answer numerous deposition questions, including blanket instructions not to answer any questions implicating events prior to the commencement of this action and on unsupportable grounds of attorney-client and deliberative process privilege, including highly relevant questions regarding remedies and whether "[d]efendants knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214." Dkt. # 171 at 3. Counsel for the OMC's instructions not to answer were improper because they were asserted on grounds of "relevance" and a misguided belief that the Court had already barred any discovery concerning events pre-dating the filing of the Complaint on November 21, 2014, and also included numerous invocations of both the attorney-client privilege and deliberative process privilege with regard to mere factual questions and without proper foundation.

### BACKGROUND

Defendants adopt and incorporate herein the "Background section," and any accompanying exhibits, of Defendant Osage Wind, LLC's First Motion to Compel the United States, Dkt. # 177 (Aug. 12, 2020), and Defendants' First Motion to Compel Against the Osage Minerals Council, Dkt. # 179 (Aug. 18, 2020).

### PROCEDURAL ISSUES IN THIS CASE

Defendants adopt and incorporate herein paragraphs 14 through 30 of the "Procedural Issues in this Case" section, and any accompanying exhibits, of Defendant Osage Wind, LLC's First Motion to Compel the United States, Dkt. # 177 (Aug. 12, 2020), and paragraphs 1 through 15 of Defendants Osage Wind, LLC's and Enel Kansas LLC's Second Motion to Compel Against the Osage Minerals Council, Dkt. # 261 (Aug. 19, 2021).

### DISPUTED DISCOVERY ISSUES

The deposition of Everett Waller on August 5, 2021, is the subject of this motion. Defendants' counsel Thomas McCormack deposed Chairman Waller, the OMC's counsel Wilson Pipestem represented the deponent and Stuart Ashworth represented the United States. A copy of relevant excerpts from the deposition transcript ("Tr.") is attached hereto as Exhibit A. The objections are categorized by whether they improperly instruct Chairman Waller not to answer on grounds of relevance or privilege. The specifically disputed instructions not to answer are as follows ("Q" refers to Mr. McCormack and "A" refers to Chairman Waller):

### I.   OBJECTIONS ON RELEVANCE GROUNDS

**Tr. 76:11-22**

**Q:** You recognize that, and I know that we walked through this earlier today, and I was appreciative of your patience with me, that your knowledge of what's been going on at the OMC really goes back to 2010 before you were actually on the council, and you know there was a lawsuit brought by the OMC to try to stop the development of the wind farm on the theory that it would interfere with the development of oil and gas, right?

**Mr. Pipestem:** Objection. I'm instructing the witness not to answer. This involves facts pre-existing the filing of this lawsuit, so I'm instructing the witness not to answer.

**Tr. 90:6-17**

**Q:** So to the extent you've had conversations with the Osage Minerals Council prior to the filing of this lawsuit on the subject of whether or not Osage Minerals Council should generally oppose the development of renewable energy projects such as wind farms anywhere in Osage County, please tell me what those communications are?

**Mr. Pipestem:** Objection. For the reasons I stated earlier, the Court has ruled that information regarding communications prior to the filing of this lawsuit are irrelevant and, therefore, based on that court order, I'm instructing the witness not to answer.

## Tr. 110:12-111:22

**Q:** I'm going to ask the question again. Did you understand in 2010 when you were working on behalf of the chief at that time that one of your jobs was to inform the chief so that he could properly exercise his authority constitutionally under Article 15?

**Mr. Pipestem:** Objection. I'm instructing the witness not to answer the question for the reasons I've given before.

**Q:** Okay, I want to get that on the record. Is your view that anything that happened before the date of this Complaint is off-limits for this witness?

**Mr. Pipestem:** I'll let you interpret the Court's order any way you want to. I think your interpretation is wrong.

**Q:** I'm not asking that. I'm asking what your instruction is so that I don't waste a lot of time in this deposition. If your view is that anything that happened prior to the date of the lawsuit, November 2014, is not something I can ask about, then please state that on the record so I understand exactly where you're coming from.

**Mr. Pipestem:** I have restated it over and over and over again. I don't know how much more clear I can be about it. I have stated that over and over again.

**Q: O**kay, I got it. So you're saying that this witness will not be allowed to answer any questions having to do with any subject matter prior to the date of this lawsuit in November of 2014?

**Mr. Pipestem:** Related to this lawsuit, that's right. You asked him questions about—a number of questions about his educational background, his employment history. Of course I allowed those questions. But consistent with the Court's orders, you are not permitted to ask irrelevant questions when there is a court order that has determined that that's the case.

## Tr. 137:17-138:4

**Q:** Well, let me ask you this. I know, again and again, we can walk through all these minutes because I've seen them, but we know that in 2013 when the first communications were made with my client about—

**A:** Yes

**Q:** —whether or not there was a mineral element to this, that the BIA struggled with whether there actually was and said that they were struggling with whether there was. Do you remember that part of this?

3

**Mr. Pipestem:**  Objection. I'm instructing the witness not to answer the question. It involves a— you cited something in 2013 prior to bringing this litigation. I'm instructing the witness not to answer.

**Tr. 138:8-139:7**

**Q:**  And that is in 2013 you understood that the BIA wasn't sure whether or not there was a minerals component to what the wind farm was doing. Is that fair from your observations of what was going on at that time?

**Mr. Pipestem:**  Again, I'm going to instruct the witness not to answer.  I'm objecting not only on the basis of—well, the Court has ordered that that information is not relevant to this case.  So again, I'm instructing Chairman Waller not to answer the question.

**Q:**  And I'm going to make my record clear, too.  I'm talking about my client's good faith, and you have been doing an immense amount of discovery on that subject matter.  That goes—and our regulatory person was inquired about everything that went back to 2011 because that goes to my client's good faith, and I'm entitled to inquire about my client's good faith.  I'm not doing anything about any alleged bad faith.  I'm asking Mr. Waller, who was familiar with all the issues at the time, whether or not there was a struggle even within the BIA in 2013 as to whether or not mineral rights would be implicated by this wind farm.  Is that a fair question?

**Mr. Pipestem:**  Objection.  I'm instructing the witness not to answer for the reasons of irrelevance based on the Court's order.

**Tr. 139:11-24**

**Q:**  I know that there are—there are minutes in which the BIA Superintendent Phillips comes and discusses these issues.  Do you remember that issue, that is, whether or not the BIA was having difficulty deciding whether or not there was a mineral element to this wind farm?

**Mr. Pipestem:**  Objection.  For the reasons stated before, I'm instructing the witness not to answer the question.

**Q:**  Do you understand why my client might have in good faith concluded that there was not a mineral element to the building of this facility?

**Mr. Pipestem:**  Objection.  For the same reasons stated, I'm instructing the witness not to answer.

**Tr. 140:4-141:11**

**Q:**  Do you understand why it is my client might have in good faith believed that there was not a mineral consequence to the development of the wind farm on the 8400 acres?

**Mr. Pipestem:**  For the reason stated repeatedly in this deposition, I'm instructing the witness not to answer the question.

4

**Q:**  Was there a doubt in your mind, Mr. Waller, at any time in the 2013-2014 period as to whether or not there was a mineral aspect to the project that my client was engaged in on the 8400 acres?

**Mr. Pipestem:**  Objection.  For the reasons stated, I'm instructing the witness not to answer the question.

**Q:**  Did you have discussions with other members of the Osage Minerals Council in the 2013-2014 period as to whether or not there was indeed a minerals element to the construction project that Osage Wind was building on the 8400 acres?

**Mr. Pipestem:**  Objection.  I'm instructing the witness not to answer the question on the basis of relevance as determined by the Court and because of privilege.

**Q:**  Well, it's now 2021 and we're here talking about this lawsuit, and on any basis between 2014, the date that the lawsuit began. and today, have you at least considered the prospect that my client was acting in good faith when it concluded it did not have a mineral element to the construction of the wind farm on the 8400 acres?

**Mr. Pipestem:**  For the reasons stated, I'm objecting on the basis of relevance as determined by the Court.  I'm instructing the witness not to answer.

**Tr. 144:11-146:5**

**Q:**  Welcome back, Mr. Waller.  Just quickly, and I have spoken to counsel for the OMC in the break, and the next section of this deposition was intending to walk through relevant OMC minutes and events that led up to the dispute and then ultimately resulted in a lawsuit filed on November 21, 2014, which is the lawsuit that we're in currently. In light of the—in light of the position taken by counsel for the OMC that he is not going to allow any questions on these subject matters to be answered in the timeframe prior to November 21, 2014, I said that I would simply preserve my objection to that instruction and pick up on November 21, 2014, with a full reservation of rights, so that's what I'm going to do.  Counsel, I'm happy to have any additional statements you may wish to make on the record at this point.

**Mr. Pipestem:**  Okay. Yes, I'm going to instruct the witness not to answer on any matters deemed irrelevant by the Court. I'm also going to instruct the witness not to answer any questions that would violate the attorney-client privilege or any other privilege, including the common interest privilege with the United States.  What I would recommend is that if you want to ask each question because I may have objections to the question based on form, the government may have objections based on the question for other reasons. But if we need to get that on the record and you want do that, certainly we're glad to do that.

**Q:**  Okay, thank you, Counsel. To me I think it was just important to understand that I had intended to ask this witness as the chairman of the Osage Minerals Council and as someone who this morning I was able to demonstrate was familiar with the processes of the Osage Minerals Council from 2010 forward, I was planned ask him a series of questions relevant to that timeframe, but we've all agreed that I'm not going to get any answers today. And so I appreciate, Counsel, your statement, and I understand that if you have additional objections you'll make them. But again I'll just say for the record I reserve my rights relative to all the instructions that stopped my inquiry

from anything that happened prior to November 21, 2014. With that, let's set sail on this next section.

**Tr. 151:15-20**

**Q:** Did you have a conversation with Raymond Redcorn or anybody else from the principal chief's office about this letter?

**Mr. Pipestem:** Objection. I'm going to instruct the witness not to answer on the basis of privilege, relevance.

**Tr. 199:9-200:3**

**Q:** One thing I wanted to say before we proceeded to this section is that I have spoken to Mr. Pipestem about an issue that he and I have been talking about throughout the day, which is I have a series of questions that relate to leases and sandy soil permits and waivers that cover a variety of periods of time, including a period of time before November 21, 2014. Mr. Pipestem has advised me that if I were to ask any questions about those subject matters prior to November 21, 2014, he would instruct the witness not to answer those questions for the reasons that he has stated previously on the record today. I have told him that I don't agree with that, that I object to it, and I reserve my rights relative to it. But to save us the gymnastics of having that fight on the record, I will agree to proceed on a period of time that is post November 21, 2014 so as to avoid a case-by-case instruction while reserving all my rights. Mr. Pipestem, anything you want to add to that?

**Mr. Pipestem:** No.

## II.    OBJECTIONS ON PRIVILEGE GROUNDS

**Tr. 88:11-19**

**Q:** Let me ask this question. You said that you were – you had a directive. What was the directive that you discussed with members of the Osage Minerals Council?

**Mr. Pipestem:** Objection. To the extent that it involves privileged communications between Minerals Council members, possibly and likely with legal counsel present, I'm instructing the witness not to answer the question.

**Tr. 92:21-93:5**

**Q:** All right. Did you have any conversations with other members of the Osage Minerals Council on that subject matter after December 1, 2014?

**A**: Not without being our —

**Mr. Pipestem:** Objection. I'm instructing the witness not to answer that question to the extent that legal counsel may have been present or there may have been discussion of legal strategy in that conversation between Minerals Counsel. So on that basis, I'm instructing the witness not to answer to preserve privilege.

6

**Tr. 140:18-141:1**

**Q:** Did you have discussions with other members of the Osage Minerals Council in the 2013-2014 period as to whether or not there was indeed a minerals element to the construction project that Osage Wind was building on the 8400 acres?

**Mr. Pipestem:** Objection. I'm instructing the witness not to answer the question on the basis of relevance as determined by the Court and because of privilege.

**Tr. 151:15-20**

**Q:** Did you have a conversation with Raymond Redcorn or anybody else from the principal chief's office about this letter?

**Mr. Pipestem:** Objection. I'm going to instruct the witness not to answer on the basis of privilege, relevance.

**Tr. 160:19-161:5**

**Q:** All right. You see that you write back and you say we received your letter, and then you say "The Osage Minerals Council is not interested in meeting with representatives of Enel at this time." Do you see that?

**A:** Yes.

**Q:** Why not?

**A:** I take direction—

**Mr. Pipestem:** Objection. The basis for that is subject to attorney-client privilege. Communications between attorney and the client, the Minerals Council at the time, went into litigation strategy. So I'm instructing the witness not to answer the question.

**Tr. 162:3-12**

**Q:** All right. Independent of your counsel without regard to anything your counsel may have said to you, if that's possible, did you personally decide that this was not a good time to have a conversation with the folks at Enel?

**Mr. Pipestem:** Objection. That is a—the Chairman Everett Waller serves as the chairman of the Osage Minerals Council, so his thoughts and deliberations are subject to – this is all in preparation for litigation, so I'm instructing the witness not to answer.

**Tr. 162:18-163:3**

**Q:** Independent of your counsel and in your personal capacity, did you have a reaction to whether or not this was a good time to be speaking to Enel?

**Mr. Pipestem:**  Objection.  For the reasons I stated before this is subject to privilege, and so I'm instructing the witness not to answer the question.

**Q:**  Did you have any thoughts independent of your counsel?

**Mr. Pipestem:**  Objection for the same reasons I stated.

**Tr. 164:16-165:8**

**Q:**  Anyway, since I can't ask you about your personal opinions that you derived from your own thinking and not your lawyer's, let me move on to something else. You say in the next sentence, "In addition, your letter was addressed to Chief Geoffrey Standing Bear and Assistant Chief Raymond Redcorn.  Any future correspondence regarding proposed wind energy projects in Osage County should be directed to Osage Minerals Council only."  Why did you tell them that?

**A**:  I'm in—

**Mr. Pipestem:**  Objection.  I'm instructing the witness not to answer the question.  This document was written and signed by Chairman Waller in his capacity as chairman of the Osage Minerals Council.  The basis for this communication is subject to a deliberative privilege and the discussion among Minerals Council members, so I'm instructing him not to answer question.

**Tr. 167:7-20**

**Q:**  I asked you pretty simply, Mr. Waller, why you had told him that any future correspondence regarding the proposed wind energy projects in Osage County should be directed to the Osage Minerals Council only, asking why you told them that.  I'm going to ask you that again, except I think I'm going to draw an objection you're not allowed to answer that question. Is that right, Counsel?

**Mr. Pipestem:**  That's correct for the reasons I stated before.

**Mr. McCormack:**  The reason is because you think that's privilege, correct?

**Mr. Pipestem:**  Yes, the deliberation that went into this letter, it's privilege.  Yes, it is.

**Tr. 168:23-169:6**

**Q:**  Well, at this time the Osage Minerals Council was not in the case, correct?

**Mr. Pipestem:** Objection. Calls for a legal conclusion. And I'm going to instruct the witness not to answer the question.  Relations between the United States as trustee and the Minerals Council as the trust beneficiary of the Osage Nation when it comes to the Osage Mineral Estate are privileged. So the state of the Osage Minerals Council's place in this is—

**Tr. 169:19-170:9**

**Q:**  All right.  Why did you advise Enel that they should only deal with the Osage Minerals Council relative to the subject matter on a go-forward basis?

8

**Mr. Pipestem:** Objection. I'm instructing the witness not to answer because that question gets to matters of privilege as counsel – as attorney-client and deliberative privilege. I'm instructing him not to answer.

**Q:** Did you speak to your counsel, yes or no, on the subject matter of whether or not Enel should communicate only with the Osage Minerals Council on a go-forward basis relative to the wind farm?

**Mr. Pipestem:** Objection. You're asking him specifically a question about what he communicated with legal counsel, so I'm instructing him not to answer the question.

## Tr. 179:7-15

**Q:** All right. And what do you recall Mr. Cheshewalla saying to you either at this Osage Minerals Council meeting or at any other time with regard the prospect of potentially addressing the consequence of wind farms being here to stay?

**Mr. Pipestem:** Objection. Those communications were part of deliberation between Minerals Council and legal counsel in the midst of litigation in federal court. I'm instructing the witness not to answer.

## Tr. 181:9-182:6

**Q:** Okay. At any time after this, do you recall having a conversation with Mr. Cheshewalla or Mr. Redcorn on the issue of whether or not the Osage Minerals Council should consider options for renewable energy on a go-forward basis?

**Mr. Pipestem:** Objection. That question calls for discussions that happened in the context of litigation, including the attorney-client privilege. I'm instructing the witness not to answer the question.

**Q:** I'm not talking about anything having to do with Enel case. I'm talking specifically about whether at any point in time, Mr. Waller, you recall having a conversation with Mr. Cheshewalla or Mr. Redcorn with regard to the generalized topic of whether or not renewable energy should be something that the Osage Minerals Council should look into as a prospect for future consideration or development?

**Mr. Pipestem:** Objection. I'm instructing the witness not to answer that question. It calls for issues associated directly with this litigation, so that's covered by attorney-client privilege and deliberation of an elected body called the Osage Minerals Council.

## Tr. 183:11-184:1

**Q:** Did you have a conversation at any time with Mr. Cheshewalla or Mr. Redcorn in this timeframe, 2015 or anytime thereafter, on the general subject matter of whether or not it made sense for the Osage Minerals Council to look into the prospect of renewable energy taking place somewhere on the Osage Mineral Estate?

**A:** For any company, not just yours?

**Q:** Yes, sir, especially not mine.

**A:** No, you're the one we were having to deal with thinking.

**Q:** Understand, but the answer is yes, anytime?

**Mr. Pipestem:** I'm instructing the witness not the answer to the extent that any answer involves communications related to Enel or any affiliated companies.

<u>**Tr. 184:4-11**</u>

**Q:** Okay. So you had conversations about the prospect of renewable energy in Osage County in executive session; is that right?

**A:** I said that when I started talking.

**Q:** What was the nature of those conversations?

**Mr. Pipestem:** Objection. I'm instructing the witness not to answer about the deliberations with legal counsel.

<u>**Tr. 186:17-187:14**</u>

**Q:** Okay, with your councilmen. In the conversations that you had with Mr. Cheshewalla and Mr. Redcorn, did those take place after this meeting of 2015 or at any other time beyond this 2015 meeting?

**Mr. Pipestem:** Objection. You're asking him to make statements about conversations that he just said were privileged as a part of executive session of the Osage Minerals Council.

**Q:** Okay, you're saying that if they had a conversation about the future of renewable power in Osage County in an executive session you're going to instruct him not to answer whether it involved litigation or not, correct?

**Mr. Pipestem:** In this circumstance that involves litigation, the future of wind energy, yes, is related to this lawsuit.

<u>**Tr. 189:21-190:3**</u>

**Q:** All right. "Councilman Yates states that he is firmly against the wind industry and he is against any kind of negotiating with them." Do you see that?

**A:** Yes, I did.

**Q:** That was a position he consistently held?

**Mr. Pipestem:**   Objection.   Calls for communications that were part of this litigation, and so I'm instructing the witness not to answer the question.

### CERTIFICATION OF CONFERENCE

In accordance with Fed. R. Civ. P. 37(a)(1) and LCvR. 37.1, Defendants advise the Court that their counsel, Thomas McCormack, conferred in good faith with counsel for the OMC, Wilson Pipestem, via telephone on August 16, 2021, but has been unable to resolve these discovery issues. The Court's involvement is therefore necessary to reach a resolution on the issues set forth herein.

### ARGUMENT AND AUTHORITIES

## I.   THE OMC IMPROPERLY INSTRUCTED CHAIRMAN WALLER NOT TO ANSWER QUESTIONS ON RELEVANCE GROUNDS

Counsel for the OMC improperly instructed Chairman Waller not to answer any question concerning any events pre-dating the filing of this action—November 21, 2014—because in the view of the OMC "the Court has ruled that testimony irrelevant."   This position misinterprets both the Federal Rules and the Court's orders.

Except in the narrow set of circumstances specified in Fed. R. Civ. P. 30(c)(2), an objection to a deposition question is "noted on the record, but the examination still proceeds; the testimony is taken subject to any objection."   Fed. R. Civ. P. 30(c)(2).   Accordingly, "[i]t is inappropriate to instruct a witness not to answer a question on the basis of relevance."   *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); *see also D.J. Simmons, Inc. v. Broaddus*, No. CIV 99-1105 JP/LFG, 2000 WL 36739814 at *8 (D.N.M. June 21, 2000) ("[I]t is improper for counsel to instruct a deponent not to answer except in the limited circumstances set forth in F.R.Civ.P. 30(b)(1); the fact that the testimony goes to arguably irrelevant matters is not one of those circumstances.").

Despite this clear law, counsel for the OMC instructed Chairman Waller to not answer deposition questions because they purportedly implicated events occurring before the commencement of this action, and are, in the OMC's view, therefore irrelevant.   Although Fed. R.

11

Civ. P. 30(c)(2) allows counsel to instruct a witness not to answer a question "to enforce a limitation ordered by the court," no such order bars the deposition questions that the OMC's counsel instructed Chairman Waller not to answer.  None of the Court's prior decisions regarding certain affirmative defenses and discovery requests imposed a categorical bar on discovery concerning events prior to November 21, 2014.  Instead, the Court addressed only the specific questions presented by the motions then before the Court:[1]

- The Court on January 11, 2021 (later amended on March 9, 2021) held that Osage Wind is precluded from asserting the equitable defenses of estoppel, laches, waiver, unclean hands, and *in pari delicto*.  Dkt. # 219 at 11.

- On January 16, 2021, Magistrate Judge Jayne denied Osage Wind's motions to compel certain interrogatories and document requests from both the United States and the OMC on the grounds that they sought discovery related to the dismissed affirmative defenses. Dkt. # 210.

- On May 21, 2021, the Court denied Osage Wind's Partial Objections to Magistrate Judge Jayne's decision (the "May 21 Order").  The Court made several rulings:

  - The Court determined that the permanent injunction test articulated in *Davilla v. Enable Midstream Partners*, L.P., 913 F.3d 959 (10th Cir. 2019) is "prospective" and that the Court was not persuaded that "it must consider the United States and the OMC's past conduct to determine the propriety of equitable relief."  Dkt. # 226 at 10.

_____

[1] Defendants' currently have a Motion to Reconsider pending before the Court regarding certain of those decisions.  Dkt. #229.  But as explained in this motion, even if Defendants' motion were to be denied, those decisions do not authorize the OMC's instructions to Chairman Waller not to answer any questions regarding pre-suit conduct.

    o  The Court affirmed Magistrate Judge Jayne's decision denying Osage Wind's motions to compel certain document requests and interrogatories from the United States and the OMC on grounds that they concerned pre-litigation conduct and were therefore not relevant for a permanent injunction analysis under *Davilla*. Dkt # 226 at 10.[2] The documents requests at issue included, for example, requests for "communications between and among the United States and the OMC and/or the Osage Nation related to the [wind farm.]" Dkt. # 210 at 21.

None of these decisions addressed deposition testimony or purported to authorize the OMC's counsel to block any question on any subject matter so long as it concerned events prior to November 21, 2014.

The OMC's expansive reading of the Court's decisions is incorrect and would foreclose relevant discovery. The Court concluded that the "measure of damages for the trespass claim included in the First Amended Complaint necessarily requires consideration of defendants' alleged knowledge or bad faith" and whether "[d]efendants knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214." Dkt. # 171 at 3 (internal quotation marks omitted). Understanding the OMC's views and understanding of the scope of mining—generally and as specifically applied to the Project—and the related processes put in place to oversee and regulate all such mining in Osage County is at minimum relevant to whether third parties—specifically including, but not necessarily limited to—the Defendants "knew or should have known" that the excavation activities undertaken in the fall of 2014 (or other, similar activities) constituted mining. The fact that the Tenth Circuit later

---

[2] The Court did not suggest *Davilla* limited inquiry regarding other remedies, including damages, to prospective conduct occurring after filing of suit, and the case addresses only permanent injunctive relief. *Davilla*, 913 F.3d at 969-974.

concluded that the Defendants' activities *did* constitute mining does *not* establish that the Defendants *should have known* that the on-site excavation activities constituted mining.

And in the May 21 Order, the Court noted that it did "not consider the potential relevance of the *requested discovery* to Osage Wind's good faith in proceeding without a lease, as Osage Wind raised this argument for the first time in its reply in support of its Objection." Dkt. #226 at n. 9 (emphasis added). The "requested discovery" there was not specific deposition testimony, and, in any event, the Court did not decide the discoverability of pre-litigation conduct entirely, and specifically not as to bad faith and the measure of damages. Discovery regarding Osage Wind's good faith and the factual background from which Osage Wind's lack of bad faith arose (including any lack of clarity about the scope of mining and the processes in place to obtain approvals for mining), including deposition testimony, is relevant to the remaining issues in this case. *See* Dkt. # 171 ("Thus, defendants' alleged bad faith remains at issue in this lawsuit to the extent tied to Osage Wind's alleged status as an 'innocent trespasser.'"). But as evidenced by the below example, the OMC's position completely foreclosed such vital discovery:

> **Q:** And that is in 2013 you understood that the BIA wasn't sure whether or not there was a minerals component to what the wind farm was doing. Is that fair from your observations of what was going on at that time?
>
> **Mr. Pipestem:** Again, I'm going to instruct the witness not to answer. I object not only on the basis that's what the Court has ordered that that information is not relevant to this case. So again, I'm instructing Chairman Waller not to answer the question.
>
> **Q:** And I'm going to make my record clear, too. I'm talking about my client's good faith, and you have been doing and immense amount of discovery on that subject matter, and those would be in our regulatory person was inquired about everything that went back to 2011 because that goes to my client's good faith, and I'm entitled to inquire about my client's good faith. I'm not doing anything about any alleged bad faith. I'm asking Mr. Waller, who was familiar with all the issues at the time, whether or not there was a struggle even within the BIA in 2013 as to whether or not mineral rights would be implicated by this wind farm. Is that a fair question?
>
> **Mr. Pipestem:** Objection. I'm instructing the witness not to answer for the reasons of irrelevance based on the Court's order. Tr. 138:8-139:7.

Given that the OMC would not allow any questions regarding Defendants' good faith, *see* Tr. 138:8-143:24, Defendants had no choice but to preserve their rights:

> **Q:** Just quickly, and I have spoken to counsel for the OMC in the break, and the next section of this deposition was intending to walk through relevant OMC minutes and events that led up to the dispute and then ultimately resulted in a lawsuit filed on November 21, 2014, which is the lawsuit that we're in currently. In light of the—in light of the position taken by counsel for the OMC that he is not going to allow any questions on these subject matters to be answered in the timeframe prior to November 21, 2014, I said that I would simply preserve my objection to that instruction and pick up on November 21, 2014, with a full reservation of rights, so that's what I'm going to do.  Counsel, I'm happy to have any additional statements you may wish to make on the record at this point.

> **Mr. Pipestem:** Okay. Yes, I'm going to instruct the witness not to answer on any matters deemed irrelevant by the Court. I'm also going to instruct the witness not to answer any questions that would violate the attorney-client privilege or any other privilege, including the common interest privilege with the United States.  What I would recommend is that if you want to ask each question because I may have objections to the question based on form, the government may have objections based on the question for other reasons. But if we need to get that on the record and you want do that, certainly we're glad to do that.

> **Q:** Okay, thank you, Counsel. To me I think it was just important to understand that I had intended to ask this witness as the chairman of the Osage Minerals Council and as someone who this morning I was able to demonstrate was familiar with the processes of the Osage Minerals Council from 2010 forward, I was planned ask him a series of questions relevant to that timeframe, but we've all agreed that I'm not going to get any answers today. And so I appreciate, Counsel, your statement, and I understand that if you have additional objections you'll make them. But again I'll just say for the record I reserve my rights relative to all the instructions that stopped my inquiry from anything that happened prior to November 21, 2014.  Tr. 144:11-146:6.

In addition, understanding what remedies the OMC has sought in other cases where alleged mining occurred without first obtaining a lease pursuant to 25 C.F.R. § 214, and the circumstances in which the OMC has granted waivers concerning that lease requirement, are important considerations in any equitable analysis.  The May 21 Order notes that "in *Davilla*, the court emphasized the importance of 'knowing the relative costs and benefits of [defendant] removing the pipeline, either as they pertain to these parties or the public at large.'"  *Id.* at 8 (quoting *Davilla*, 913 F.3d at 974).  Testimony concerning remedies sought or waived by the OMC and the consequences thereof in analogous circumstances—both before and after November 21, 2014—is

highly relevant to understanding these "relative costs and benefits." *Id.* at 8; *see also Davilla*, 913 F.3d at 973 (noting one factor under the Davilla test is whether "an injunction is necessary to prevent 'irreparable harm'"). Moreover, testimony concerning the royalty rates and other terms under which the OMC has entered into such leases is relevant to the calculation of damages, as is whether there is a known and accepted methodology for valuing harms exactly like (or even similar to) that at issue here. Such matters are at issue in the parties' expert reports and were the subject of deposition testimony by the parties' experts. But despite the import of these topics, Defendants were informed by OMC counsel that Chairman Waller would not answer *any* questions regarding "leases and sandy soil permits and waivers" before November 21, 2014, and were forced to enter another objection on the record to preserve their rights:

> **Q:** One thing I wanted to say before we proceeded to this section is that I have spoken to Mr. Pipestem about an issue that he and I have been talking about throughout the day, which is I have a series of questions that relate to leases and sandy soil permits and waivers that cover a variety of periods of time, including a period of time before November 21, 2014. Mr. Pipestem has advised me that if I were to ask any questions about those subject matters prior to November 21, 2014, he would instruct the witness not to answer those questions for the reasons that he has stated previously on the record today. I have told him that I don't agree with that, that I object to it, and I reserve my rights relative to it. But to save us the gymnastics of having that fight on the record, I will agree to proceed on a period of time that is post November 21, 2014 so as to avoid a case-by-case instruction while reserving all my rights. Mr. Pipestem, anything you want to add to that?

> **Mr. Pipestem:** No. Tr. 199:9-200:3.

It is important to note that while the OMC refused to allow Chairman Waller to answer questions regarding *any* activity that predates the Complaint (even though, as in most cases, almost everything relevant to this case happened prior to that date), and to that end, the OMC has repeatedly questioned Defendants' witnesses regarding events and circumstances during that timeframe in an apparent attempt to demonstrate that Defendants acted as a "bad-faith" trespasser.[3]

---

[3] *See* Deposition of Joan Heredia, relevant portions attached hereto as Exhibit B, at 44:13-16 (Counsel for OMC: "So was there ever a project for Enel where the governmental authority said a

Defendants did not object to these questions on relevance grounds or instruct the witness not to answer them.  The OMC has also argued to the Court that such information is relevant.  *See, e.g.*, Intervenor Plaintiff Osage Minerals Council's Motion for Judgment on the Pleadings and Brief in Support Thereof, Dkt. # 204, at 4 ("Time and time again, this Court has reiterated that at this point in the proceedings, 'the issue that's really before the court, or will be before the court, is whether or not the trespasser here is innocent or is not, or is a bad faith trespasser[.]'").

In effect, the OMC's position is that it can ask questions about whether Defendants acted in bad faith, but it is improper for Defendants to gather any rebuttal evidence.  This is contrary to basic principles governing discovery.  *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192-JWL-DJW, 2007 WL 1531846, at *5 (D. Kan. May 25, 2007) ("By raising a defense, a party opens the door to the discovery concerning that defense.") *aff'd*, 244 F.R.D. 638 (D. Kan. 2007); *FrangranceNet.com, Inc. v. FragranceX.com, Inc.*, No. CV 06-22, 25 (JFB) (AKT) 2007 WL 9710244 at *3 (E.D.N.Y. Aug. 28, 2007) ("Discovery is a two-way street. Therefore, if Defendant seeks Plaintiff's corporate books and records, it is only fair that Defendant also be required to make its books and records available absent a compelling reason to the contrary.") (internal citations omitted).

---

lease or permit is necessary where the company disagreed and said we are not going to seek that permit?"); Deposition of Bill Moskaluk, relevant portions attached hereto as Exhibit C, at 157:23-158:1 (Counsel for OMC: "Do you recall whether the Bureau of Indian Affairs ever communicated to EGPNA that crushing minerals on the Osage Wind farm would require a lease or permit?"); Deposition of Craig Mazurowski, relevant portions attached hereto as Exhibit D, at 134:20-23 ("Was it your understanding that mining on the Osage Wind farm project was acceptable so long as it was not transported away from the location where it was mined?"); Deposition of Aaron Weigel, relevant portions attached hereto as Exhibit E, at 69:9-12 (Counsel for OMC: When did you personally reach the conclusion that the construction activities and excavation . . . of the Osage mineral estate did not constitute mining?"); Deposition of Michael Storch, relevant portions attached as Exhibit F, at 132: 14-18 (Counsel for OMC: "[W]as there ever a point in time, at any point in this process, when you personally believed that perhaps a permit might be required or you weren't sure whether a permit from the Osage Nation would be required?").

In the absence of any Court order limiting deposition testimony, OMC's efforts to prevent pre-suit discovery relied on its unilateral determination that the testimony was not relevant. This is not a proper basis on which to prevent a witness from answering a deposition question. The case of *CGC Holding Co. LLC v. Hutchens* is instructive. No. 11-cv-01012-RBJ-KLM, 2016 WL 11691829 (D. Colo. Apr. 28, 2016). Counsel for the defendants instructed a witness to not answer questions regarding an entity that had been disallowed as a defendant. *Id*. at *1. After holding that disallowance of a defendant in that action did not equate to an order imposing a limitation on discovery, the court ordered the deposition reopened because, as the court put it, "it has long been established that instructing a witness not to answer a deposition question on the grounds of relevance is simply not permitted." *Id.* at *2. The same relief is warranted here.

## II.    THE OMC IMPROPERLY INSTRUCTED CHAIRMAN WALLER NOT TO ANSWER QUESTIONS ON ATTORNEY-CLIENT PRIVILEGE GROUNDS

OMC's counsel improperly instructed Chairman Waller to not answer questions without having properly established that those questions called for testimony protected by the attorney-client privilege, including as to questions concerning basic facts (e.g., the who, what, when, where of communications) that could not possibly be privileged.

An attorney may instruct a deponent not to answer when necessary to preserve a privilege, including the attorney-client privilege. Fed. R. Civ. P. 30(c)(2). Under federal common law,[4] the attorney-client privilege arises where:

> (1) legal advice of any kind is sought;  (2) from a professional legal advisor in his capacity as such;  (3) the communications relating to that purpose;  (4) made in confidence;  (5) by the client;  (6) are at his instance permanently protected;  (7) from disclosure by himself or by the legal advisor;  (8) unless the protection is waived.

---

[4] This Court determined that "federal common law . . . governs the privilege issues presented" in this action.  Dkt. # 210 at 8.

*Roe v. Cath. Health Initiatives Colo.*, 281 F.R.D. 632, 636 (D. Colo. 2012).  The party seeking to invoke the attorney-client privilege bears the burden of establishing its applicability and the lack of waiver of any privilege.  *In re Foster,* 188 F.3d 1259, 1264 (10th Cir. 1999).  A party who claims privilege as a basis for withholding otherwise discoverable information must "describe the nature of the . . . communications . . . not . . . disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."  Fed. R. Civ. P. 26(b)(5)(A).

OMC's counsel repeatedly invoked the attorney-client privilege and instructed Chairman Waller not to answer questions in the absence of any foundation showing that the answers to those questions implicated that privilege.  Indeed, OMC's counsel instructed Chairman Waller not to answer based merely on the hypothetical possibility that counsel may have been present during a meeting or conversation.  *See, e.g.*, Tr. at 88:15-19 ("Objection. To the extent that it involves privileged communications between Minerals Council members *possibly and likely with legal counsel present*, I'm instructing the witness not to answer the question."); Tr. at 92:25-93:5 ("Objection. I'm instructing the witness not to answer that question to the extent that legal counsel *may have been present* or there *may have been discussion of legal strategy* in that conversation between Minerals Counsel. So on that basis, I'm instructing the witness not to answer to preserve privilege.") (emphasis added).

Even if an attorney were present, which OMC's counsel did not establish, "the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege."  *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) (internal quotations omitted) ; *see also New Jersey v. Sprint Corp*., 258 F.R.D. 421, 444 (D. Kan. 2009) (re-opening deposition where defense counsel improperly instructed

19

witness not to answer questions solely due to attorney's presence at meeting in question).  Further, by going beyond reminding Chairman Waller not to divulge privileged communications when he answered certain questions, and instead making blanket instructions not to answer, OMC's counsel improperly curtailed discovery.   "Blanket claims of attorney-client privilege or work-product protection do not satisfy the objecting party's burden of proof."  *Linnebur v. United Tel. Ass'n*, No. 10-1379-RDR, 2012 WL 1183073, at *3 (D. Kan. Apr. 9, 2012); *see generally Trujillo v. Town of Taos*, No. Civ. 08-0661 ACT/RLP, 2009 WL 10700041 (D.N.M. Jan. 15, 2009) (holding that "blanket assertions of attorney-client privilege" based on the mere presence of the town's attorney at executive sessions of the Town Council were "improper").   Absent any foundation showing that an attorney was present, or that the subject of the question implicated legal advice— yet still instructing Chairman Waller not to answer questions in their entirety—OMC's counsel failed to meet its burden to invoke attorney-client privilege as a basis to stop deposition questioning.

Moreover, throughout the deposition, OMC's counsel instructed Chairman Waller not to answer questions that only sought underlying facts, which are not protected by attorney-client privilege.  It is black-letter law that "the protection of the attorney-client privilege extends only to *communications* and not to facts."  *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (emphasis in original).  Importantly, "the subject matter of meetings with an attorney, the persons present, the location of meetings, or the persons arranging meetings are not protected by attorney-client privilege." *Sprint Corp.*, 258 F.R.D. at 444; *see also In re CCA Recordings 2255 Litig. v. United States*, 337 F.R.D. 310, 326 (D. Kan. 2020) (holding "general topics of attorney-client discussions or ultimate legal conclusions of counsel" are not subject to attorney-client privilege). Here, much of the information sought by Defendants' counsel and barred by OMC's counsel was

20

unambiguously of similar factual nature, such as whether certain meetings occurred or particular topics were discussed. *See, e.g.,* Tr. 92:21-23 ("Q: All right. Did you have any conversations with other members of the Osage Minerals Council on that subject matter after December 1, 2014?"); Tr. 181:9-13 ("Q: Okay. At any time after this, do you recall having a conversation with Mr. Cheshewalla or Mr. Redcorn on the issue of whether or not the Osage Minerals Council should consider options for renewable energy on a go-forward basis?"). These factual inquiries do not necessitate that a witness divulge legal advice, and therefore it was improper to instruct Chairman Waller not to answer them. *See Strand v. Usana Health Sciences, Inc*., No. 2:17-cv-00925-HCN-JCB, 2021 WL 3055608, at *5 (D. Utah July 20, 2021) (allowing re-deposition by written questions because, "[g]iven the well-established rule that the privilege protects communications rather than historical facts or events . . . the court [found] [Defendant's] invocation of privilege during the depositions improper").

Indeed, denying Defendants' counsel answers to basic fact questions is one reason why the OMC could not establish the foundation necessary to show that the questioning of Chairman Waller implicated privileged communications. To establish that communications implicate legal advice, "[a] witness is required to answer questions relevant to the existence, extent, or waiver of the privilege, such as who made a communication, to whom it has been disclosed, and its general subject matter." *Sprint Corp.*, 258 F.R.D. at 444; *Hinsdale v. City of Liberal, Kan*., 961 F. Supp. 1490, 1494 (D. Kan.) (granting motion to compel discovery because "the party seeking to assert the privilege must show that the particular communication was part of a request for advice or part of the advice"), *aff'd*, 981 F. Supp. 1378 (D. Kan. 1997). By preventing Chairman Waller from answering such questions, the OMC's counsel made it impossible to demonstrate that any of the communications at issue were protected by the attorney-client privilege (if any were).

21

### III.   THE OMC IMPROPERLY INSTRUCTED CHAIRMAN WALLER NOT TO ANSWER QUESTIONS ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS

None of OMC's counsel's invocations of deliberative process privilege were a permissible basis on which to instruct Chairman Waller not to answer deposition questions.  The deliberative process privilege protects "[a]dvisory opinions, recommendations, and deliberations that reflect how government decisions are made." [5]  *Stewart v. Dep't of Interior*, 554 F.3d 1236, 1239 (10th Cir. 2009).  To qualify for protection under the deliberative process privilege, the party seeking to invoke the privilege "bears the burden of proving that the document at issue is both predecisional and deliberative."  *Cherokee Nation v. Salazar*, 986 F. Supp. 2d 1239, 1245 (N.D. Okla. 2013).  A document is predecisional if it is "prepared in order to assist an agency decisionmaker in arriving at his decision."  *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1231 (10th Cir. 2007).  The deliberative process privilege is construed narrowly, and the government has the burden of demonstrating "precise and certain reasons for preserving confidentiality of the materials at issue."  *Ctr. for Biological Diversity v. Norton*, 336 F. Supp. 2d 1155, 1159 (D.N.M. 2004).  Even when the deliberative process privilege is properly asserted, it is not absolute; the court must determine whether the need for the evidence overrides the government's need to maintain confidentiality of the documents.  *Id*.

The OMC's counsel repeatedly instructed Chairman Waller not to answer questions on deliberative process grounds, without adequate foundation that the communications at issue were predecisional and deliberative.  For example:

---

[5]  It is unclear to what extent, if at all, the OMC intended to assert "executive privilege" as a separate and independent grounds for instructing Chairman Waller not to answer certain questions. To the extent the OMC purports to assert such a privilege independently from deliberative process privilege, Defendants incorporate by reference their arguments explaining why the OMC cannot invoke such privilege from Defendants' First Motion to Compel Against the Osage Minerals Council, Dkt. # 179 at 18-24.

**Q:**  All right. And what do you recall Mr. Cheshewalla saying to you either at this [August 19, 2015] Osage Minerals Council meeting or at any other time with regard the prospect of potentially addressing the consequence of wind farms being here to stay?

**Mr. Pipestem:**   Objection.  Those communications were part of deliberation between Minerals Council and legal counsel in the midst of litigation in federal court. I'm instructing the witness not to answer.  Tr. 179:7-15.

The OMC's counsel did not assert that the communications at issue regarding wind energy in Osage County influenced any particular decision that the OMC made.  Nor could he.  There was no foundation in the record even suggesting as much.  But even where the government *has* alleged a specific decision arose from certain communications, this has been found insufficient to establish the predecisional prong of the deliberative-process test.  *See Cherokee Nation*, 986 F. Supp. 2d at 1246 (finding that the government did not meet its burden to show emails containing a rough draft briefing paper were predecisional where it was possible that the decision had already been made, but the format and wording were being revised); *MacNamara v. City of New York*, No. 04 Civ. 9612(KMK)(JCF) 2007 WL 755401, at *11 (S.D.N.Y. Mar. 14, 2007) (allowing deposition questions over invocation of deliberative privilege because "the deliberative process privilege does not apply to evaluations of actions already taken unless those evaluations are pre-decisional", *adhered to on reconsideration*, 2007 WL 3196295 (S.D.N.Y. Oct. 30, 2007).  To allow objections such as those asserted by the OMC's counsel here would be to expand the deliberative process privilege to bar discovery of nearly every statement made by a member of a deliberative body at any time.

Moreover, the OMC's counsel improperly invoked deliberative process privilege to instruct Chairman Waller not to answer even basic factual questions, the answers to which would not reveal any purportedly privileged information.  *See S.E.C. v. Kovzan*, No. 11-2017-JWL, 2013 WL 647300 (D. Kan. Feb. 21, 2013) (overruling SEC's deliberative process objections where SEC failed to define or limit their scope, and where defendant's requests on their face did not seek

government deliberations).  For example, the OMC's counsel instructed Chairman Waller not to answer questions asking whether a conversation concerning a particular subject matter had ever occurred:

> **Q:**  I'm not talking about anything having to do with Enel case.  I'm talking specifically about whether at any point in time, Mr. Waller, you recall having a conversation with Mr. Cheshewalla or Mr. Redcorn with regard to the generalized topic of whether or not renewable energy should be something that the Osage Minerals Council should look into as a prospect for future consideration or development?
>
> **Mr. Pipestem:**  Objection.  I'm instructing the witness not to answer that question.  It calls for issues associated directly with this litigation, so that's covered by attorney-client privilege and deliberation of an elected body.  Tr. 181:18-182:6.

It is not proper to instruct a witness not to answer such factual questions on deliberative-process grounds (or otherwise).  *See, e.g., Saunders v. City of Chicago*, No. 12 C 9158, 2015 WL 4765424, at *19 (N.D. Ill. Aug. 12, 2015) ("To the extent that [the deponent] is asked only to reveal factual information from the reinvestigation or about his own knowledge of factual information, he may not invoke the deliberative process privilege.").

Therefore, because the OMC's counsel made no showing of the necessary elements to invoke deliberative process privilege, the Court should re-open the deposition and order the witness be allowed to answer in accordance with the Court's opinion.

### CONCLUSION AND REQUESTED RELIEF

For the reasons explained above, Defendants respectfully ask the Court to (i) compel the OMC to allow for a deposition of Everett Waller for a period of three hours at a date later to be determined by the parties, (ii) direct the OMC's counsel not to give instructions not to answer questions on the basis that those questions allegedly are irrelevant or concern conduct pre-dating the filing of the Complaint on November 21, 2014, and (iii) direct the OMC's counsel not to give instructions not to answer on the grounds of any privilege without substantiating that there is a proper basis for such instruction.

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**, *pro hac vice*
**Sarah M. Stevenson**, *pro hac vice*
**Dominic A. Martinez**, *pro hac vice*
**MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.**
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**Thomas J. McCormack**, *pro hac vice*
**Robert Kirby**, *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
**Robin D. Ball** (Los Angeles Office), *pro hac vice*
**Robert D. Comer** (Denver Office), *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**

**ATTORNEYS FOR DEFENDANTS,
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2021, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Stuart P. Ashworth
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
David McCullough
Jeffrey S. Rasmussen
The following non-ECF registrants have been served by email:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


*/s/ Ryan A. Ray*
Ryan A. Ray