# EXHIBIT B

```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF OKLAHOMA
```

UNITED STATES OF AMERICA,

    Plaintiff,
and
OSAGE MINERALS COUNCIL,
    Intervenor-Plaintiff,
vs.                                  No. 14-cv-704-GKF-JFJ
OSAGE WIND, LLC,
ENEL KANSAS, LLC;
and ENEL GREEN POWER
NORTH AMERICA, INC.,

    Defendants.

```
       ZOOM/VIDEOTAPED DEPOSITION OF JOAN HEREDIA
     TAKEN ON BEHALF OF THE INTERVENOR-PLAINTIFF
       ON JULY 30, 2021, BEGINNING AT 10:31 A.M.
            ALL PARTIES APPEARING VIA ZOOM
```

APPEARANCES
On behalf of the PLAINTIFF:
Stuart Ashworth
Cathryn McClanahan
UNITED STATES ATTORNEY'S OFFICE
NORTHERN DISTRICT OF OKLAHOMA
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2772
stuart.ashworth@sol.doi.gov

Charles R. Babst, Jr.
UNITED STATE DEPARTMENT OF THE INTERIOR
OFFICE OF THE SOLICITOR
7906 East 33rd Street
Tulsa, Oklahoma 74145
(918) 669-7730
charles.babst@sol.doi.gov

(Appearances continued on next page.)

VIDEOTAPED BY:  Sean Shell
REPORTED BY:  Jane McConnell, CSR RPR RMR CRR

## Page 2

(Appearances continued)
On behalf of the INTERVENOR-PLAINTIFF:
Wilson Pipestem
Jennifer Baker
PIPESTEM & NAGLE
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 407-0591
wkpipestem@pipestemlaw.com

On behalf of the INTERVENOR-PLAINTIFF and DEFENDANT OSAGE WIND, LLC, ENEL KANSAS, LLC and ENEL GREEN POWER NORTH AMERICA, INC.:
Ryan A. Ray
NORMAN, WOHLGEMUTH
401 S. Boston, Suite 2900
Mid-Continent Tower
Tulsa, Oklahoma 74103
(918) 583-7571
rar@nwcdlaw.com

Lynn H. Slade
MODRALL, SPERLING, ROEHL, SISKA, P.A.
Post Office Box 2168
Albuquerque, New Mexico 87103-2168
(505) 848-1800
lynn.slade@modrall.com

On behalf the DEFENDANTS AND WITNESS JOAN HEREDIA:
Robin Ball
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
(213) 892 9366
robin.ball@nortonrosefulbright.com

ALSO PRESENT: Francesca Boewe, Nolan Fields
Christina Watson, Michelle Hammock

## Page 3

### INDEX

| | Page |
|---|---|
| Direct Examination by Mr. Pipestem | 7 |
| Cross-Examination by Mr. Ashworth | 194 |

### EXHIBITS

| Exhibit | Description | Page |
|---|---|---|
| (Exhibits previously marked:) | | |
| 36 | 10-31-13 Memo from Sarah Stevenson | 58 |
| 37 | Email String Re: Osage Wind | 79 |
| 38 | 10-9-14 Letter to Francesco Venturini from Robin Phillips | 180 |
| 42 | Organizational Procedure No. 80 | 204 |
| 52 | Amended and Restated Balance of Plant Engineering, Procurement and Construction Contract | 51 |
| 63 | Email String Re: Material Estimates | 202 |
| 68 | Email String Re: Osage - Bureau of Indian Affairs | 162 |
| 70 | Project Short Views - Update 10/17/14 | 182 |
| 81 | Defendant's Response to Plaintiff's Motion for Preliminary Injunction | 121 |
| 82 | Email String Re: Burbank Materials Rock Quarry | 137 |
| 84 | Email String Re: Osage BIA Discussion Attorney Client Privilege | 173 |
| 91 | Email String Re: Attorney Client Privileged | 134 |

(Exhibits continued on next page.)

## Page 4

### EXHIBITS (Continued)

| Exhibit | Description | Page |
|---|---|---|
| 93 | Procedures of Obtaining Sand Soil and Rock Mining Permits for Osage County | 137 |
| 98 | Email String Re: Osage Unfolding Events | 129 |
| 99 | Email String Re: Osage - Bureau of Indian Affairs | 198 |
| 131 | 10-30-14 Letter to Alan Woodcock from Robin Phillips | 172 |

(Exhibits marked in Ms. Heredia's deposition:)

| Exhibit | Description | Page |
|---|---|---|
| 146 | Construction Management Agreement Between Enel Green Power North America, Inc. and Osage Wind, LLC Dated August 19, 2014 | 70 |
| 147 | Memo from Joan Heredia to Matt Gilhousen Re: BIA | 90 |
| 148 | Declaration of Joan Heredia | 111 |
| 149 | Email String Re: Lease (Permit) Information | 175 |
| 150 | Deposition of Bill Moskaluk | 176 |
| 151 | Email String Re: BIA Sandy Soil Permit | 187 |
| 152 | Email String Re: Osage Wind Construction Activities | 190 |
| 153 | Email String Re: Usage, Use of Soil Materials | 150 |
| 153 | Email | 213 |
| 154 | 10-10-14 Letter to Ray Whitehead | 234 |

## Page 5

### STIPULATIONS

It is hereby stipulated and agreed by and between the parties hereto, through their respective attorneys, that the deposition of JOAN HEREDIA may be taken pursuant to notice and in accordance with the Federal Rules of Civil Procedure on July 30, 2021, before Jane McConnell, CSR RPR RMR CRR.

```
 1   GE?  Maybe be more specific, sir.
 2      Q   (BY MR. PIPESTEM)  Yes.  So let's start
 3   with GE.
 4      A   Okay.
 5      Q   So with regard to communications about
 6   compliance with federal Osage Nation laws, did you
 7   communicate with General Electric about those
 8   issues?
 9          MR. BALL:  Objection to form.
10      A   I don't recall.  Like I said, I'm sure
11   there would have been some general questions that
12   would have been posed to me, but I was not the
13   primary contact with GE nor did I manage that
14   relationship.
15      Q   (BY MR. PIPESTEM)  Have you ever worked on
16   a project where a governmental authority notified
17   the project proponent that a license or permit was
18   required and the project proponent refused to seek
19   or obtain that license or permit?
20      A   I don't know what you mean by "refuse."
21   Generally we would evaluate requirements; and if
22   they were applicable, we would proceed and comply.
23      Q   Are you aware that the Bureau of Indian
24   Affairs and Osage Nation indicated in this project
25   that Osage Wind was required to get a lease from the
                               42
```

```
 1   Osage Minerals Council that was approved by the
 2   Bureau of Indian Affairs?
 3          MR. BALL:  Objection to form.
 4      A   I am not aware of a requirement for a
 5   lease.  I can say that they claimed that a sandy
 6   soil permit could be required.
 7      Q   (BY MR. PIPESTEM)  So your understanding
 8   is that a sandy soil permit and a lease for minerals
 9   are different things?
10      A   I don't want to portray myself as a real
11   estate expert, which would be more in the realm of a
12   lease, but I am aware of the assertion that a permit
13   could have been required.
14      Q   So in the circumstance of the Osage Wind
15   project, are you aware that the Bureau of Indian
16   Affairs and the Osage Nation alleged that a permit
17   was required or a lease was required for the taking
18   of minerals?
19      A   I am aware that the Bureau of Indian
20   Affairs alleged as such.
21      Q   Okay.  Have you ever worked on a project
22   where an agency alleged that a permit was required
23   and the company refused to get that permit?
24      A   Not if it was ultimately required.
25      Q   Well, tell me about that.  Any
                               43
```

```
 1   circumstances you can say on a project you were
 2   working on where an agency said you need a permit
 3   here and the company just said we don't think we
 4   need one, so, no, our answer to that is, no, we're
 5   not going to get that permit?
 6      A   During the time that I worked with Enel
 7   Green Power, there would have been occasion when we
 8   would have talked to regulators to discuss permit
 9   requirements and our activities.  But to the best
10   of my knowledge, Enel Green Power never refused to
11   obtain an applicable permit based upon the specific
12   site activities.
13      Q   Okay.  ==So was there ever a project for==
14   ==Enel where the governmental authority said a lease==
15   ==or permit is necessary where the company disagreed==
16   ==and said we are not going to seek that permit?==
17      A   I believe that would be the case in hand
18   that we're discussing, that there was some question
19   as to whether or not Enel really felt that the
20   permit was required.
21      Q   Are there any other circumstances where
22   Enel was told by a government agency a permit is
23   required and it decided we are not going to seek
24   that permit?
25      A   It would be subject to legal review and
                               44
```

```
 1   analysis of the requirements.  And then based upon
 2   the legal review and the outcome of that, there
 3   would be the decision to move forward as to
 4   appropriate and comply with rules and regs.
 5      Q   But are you aware of any circumstance
 6   where Enel was told by a governmental agency that
 7   you're required to get a permit or a lease and the
 8   answer from the company after that review was we
 9   disagree, so we're not going to do it?
10      A   In the case of the Osage Nation and the
11   sandy soil permit, my understanding is there was
12   disagreement about the need to obtain that permit
13   based upon our specific site activities.
14      Q   But are you aware of any other
15   circumstances where that happened with Enel on any
16   other project?
17      A   No, because generally we would have
18   thorough and diligent discussions with the counter
19   parties in order to be able to come to a mutual
20   understanding and cooperative approach on how we
21   would address those issues.  So I would say, in
22   general, we worked through the issues with the
23   agencies.
24          MR. BALL:  We've been going a little over
25   an hour.  If you get to a good stopping point, a
                               45
```