# EXHIBIT E

```
 1                  UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF OKLAHOMA
 2
     UNITED STATES OF AMERICA,
 3
                 Plaintiff,
 4
     and
 5
     OSAGE MINERAL COUNCIL,
 6
          Intervenor-Plaintiff,
 7
     vs.                          Case No. 14-CV-704-GFK-JFJ
 8
     OSAGE WIND, LLC;
 9   ENEL KANSAS, LLC; and
     ENEL GREEN POWER NORTH
10   AMERICA, INC.,
11               Defendants.
12   _____
13                DEPOSITION OF AARON WEIGEL
           TAKEN ON BEHALF OF THE INTERVENOR-PLAINTIFF
14           ON JUNE 29, 2021, BEGINNING AT 9:07 A.M.
              ALL PRESENT ATTENDED REMOTELY VIA ZOOM
15         REPORTED BY KARLI DANIELS, CSR, RPR, CCR
16                      APPEARANCES:
17   On behalf of the Plaintiff:
18           Nolan Fields
             Catherine McClanahan
19           UNITED STATES ATTORNEY'S OFFICE
             110 West 7th Street, Suite 300
20           Tulsa, Oklahoma 74119
             (918)382-2700
21           nolan.fields@usdoj.gov
             cathy.mcclanahan@usdoj.gov
22
23
24
25
```

**Professional Reporters**
800.376.1006
www.proreporters.com

Page 2

```
1              APPEARANCES CONTINUED:
2   On behalf of the Intervenor-Plaintiff:
3        Mary Katherine Nagle
         Shoney Blake
4        PIPESTEM & NAGLE, P.C.
         401 South Boston Avenue, Suite 2200
5        Tulsa, Oklahoma 74103
         mknagle@pipestemlaw.com
6
7   On behalf of the Defendants:
8        Ryan Ray
         NORMAN, WOHLGEMUTH, CHANDLER, JETER, BARNETT &
9        RAY, P.C.
         401 South Boston Avenue, Suite 2900
10       Tulsa, Oklahoma 74103
         (918)583-7571
11       rar@nwcjlaw.com
12       Lynn Slade
         Sarah Stevenson
13       MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.
         500 Fourth Street NW, Suite 1000
14       Albuquerque, New Mexico 87103
         (505) 848-1800
15       lynn.slade@modrall.com
16       Bob Comer
         NORTON, ROSE, FULBRIGHT, LLP
17       1225 17th Street, Suite 3050
         Denver, Colorado 80202
18       (303)801-2728
         bob.comer@nortonrosefulbright.com
19
20  Also present:  Michelle Hammock, Christina Watson
21  Videographers:  Gabe Pack, CJ Shelton
22
23
24
25
```

Page 3

```
1                    INDEX
2                                      Page
3  Direct Examination by Ms. Nagle          4
4  Cross-Examination by Mr. Fields        111
5              EXHIBITS
6  Number  Description              Page
7  89    Osage Wind Priv 000299-000302     21
8  90    Osage Wind Priv 000427-000429     56
9  91    Osage Wind Priv 000357-000358     70
10 92    Osage Wind Priv 000359-0003660    74
11 93    Osage Wind Priv 000361       75
12 94    Osage Wind Priv 000165-000167     79
13 95    IEA 00226838            80
14 96    IEA 00239657-00239658       98
15 97    Osage Wind 019006-019009    103
16 98    Osage Wind Priv 000128-000144    142
17 99    Osage Wind Priv 000092-000093    152
18 100   Osage Wind Priv 000090-000091    152
19 101   Osage Wind Priv 000233-000238    180
20            STIPULATIONS
21       It is stipulated that the deposition of Aaron
22  Weigel may be taken pursuant to agreement and in
23  accordance with the Federal Rules of Civil Procedure on
24  June 29, 2021, before Karli Daniels, CSR, RPR, CCR.
25
```

Page 4

```
1         THE VIDEOGRAPHER:  This is the videotaped
2   deposition of Aaron Weigel, in the matter of United States
3   and Osage Minerals Council versus Osage Wind, on June 29,
4   2021.  We are on the record at 9:07 a.m.
5         Will counsel please state your appearances for
6   the record.
7         MS. NAGLE:  Good morning.  Mary Katherine Nagle
8   of Pipestem & Nagle Law representing the
9   Intervenor-Plaintiff, the Osage Minerals Council.  With me
10  here today I have my colleague, Shoney Blake.
11        MR. FIELDS:  United States of America,
12  Plaintiff.  My name's Nolan Fields, and I have Cathy
13  McClanahan, Charles Babst with the Department of Interior
14  Solicitors Office, Michelle Hammock and Chris Watson with
15  our office.
16        MR. RAY:  Ryan Ray for the Defendants.
17  Co-counsel Lynn Slade is also on the remote line.  We are
18  here for all defendants.
19        THE VIDEOGRAPHER:  The court reporter will now
20  swear in the witness.
21  WHEREUPON,
22            AARON WEIGEL,
23  after having been first duly sworn, deposes and says in
24  reply to the questions propounded as follows, to-wit:
25            DIRECT EXAMINATION
```

Page 5

```
1  BY MS. NAGLE:
2      Q   Great.  Good morning.  My name is Mary
3  Katherine, and I'm a partner at Pipestem & Nagle Law, and
4  we represent the Osage Minerals Council, and so I will be
5  asking you some questions here at the front end.  I will
6  try to make it as efficient as possible because I know my
7  colleague, Nolan, over at the United States Attorney's
8  Office is going to have questions as well.
9         Just so I -- just so I know, is it -- your last
10  name, is it Weigel?  Is that how you pronounce it?
11     A   That's correct.
12     Q   Okay.  Thank you.  So, Mr. Weigel, good morning.
13        MS. NAGLE:  I'm sorry, did you say something,
14  Nolan?
15        MR. FIELDS:  Yeah.  I'm sorry for the feedback.
16  I think that there's another attorney on the call, but he
17  didn't announce himself for the record.  I think that
18  might want to happen, especially because he hasn't
19  formally entered on behalf of the case yet.
20        MS. NAGLE:  Yes.  I see -- and I think he was
21  here with us yesterday.
22        Ryan, is that one of --
23        MR. RAY:  Yes.  I believe that's probably Bob
24  Comer that's joined, and he will be appearing in short
25  order for the defendants.  That process is underway.
```

Professional Reporters
800.376.1006
www.proreporters.com

Page 66

1    A  I do not.

2    Q   Okay.  So another interesting issue, if we look
3    at Saddle Mountain Minerals, the Washington Supreme Court
4    case, there's this block quote here over the second part,
5    beginning with "however", as we discussed before, here in
6    Exhibit 36, it mentions, "Even if a surface owner can
7    burden a mineral owner's right, it does not mean the
8    surface owner can export minerals without the compensation
9    to the mineral owner."  I will note for the record that in
10   Exhibit 81, the 2014 version, that "however" language here
11   has been deleted.  It's just -- it's just gone.  Do you
12   know why that -- that part of the quote from Saddle
13   Mountain Minerals was deleted?

14       MR. RAY:  Object to form.

15   A   I do not.  I will say, by 2014, we had
16   determined there was no materials to be exported.

17   Q   (BY MS. NAGLE) So that may have been the reason,
18   just because the minerals were not being exported off the
19   wind farm?

20   A   It's purely speculative because I did not
21   prepare it, so --

22   Q   Well, I hate for you to speculate.  So do you
23   have any idea who would know why that language was
24   deleted?

25   A   The person who prepared the memo would be the

Page 67

1    person to ask.

2    Q   Fair enough.  On page 5, going back up just a
3    little bit here, I will note, you know, this language here
4    says "the reservation of the mineral rights reserved under
5    the SRHA", which I think we looked earlier was the
6    Stock-Raising Homestead Act, I might be getting that
7    wrong, but that act that we were talking about, SRHA, is
8    similar to that of the Osage Allotment Act, "although the
9    contemplated surface uses under the SRHA are perhaps
10   narrower than the general grant of surface rights for
11   patentees under the Osage Allotment Act."  Do you have an
12   understanding of what that sentence means?

13   A   I do not.

14   Q   I'm sorry.  What was your answer?

15   A   You're asking me to describe SRHA and how it's
16   different from the Osage Allotment Act?

17   Q   Or do you have an understanding of what the
18   significance is of the fact that here the attorneys are
19   saying that the contemplated surface uses under the SRHA
20   are narrower than the Osage Allotment Act?  Do you have
21   any understanding of what the significance of that is?

22   A   Yeah.  I take that to mean that you shouldn't --
23   you should not assume it's directly applicable.

24   Q   But the SRHA is directly applicable?

25   A   Not assume that it's directly applicable because

Page 68

1    it's a different scope.

2    Q   Okay.  Let's see here.  And so, you know, at
3    this point, we're looking at this memo being sent to -- of
4    course, first of all, the memo, this is dated October 20,
5    2014.  At that point do you recall whether or not the
6    United States had asked or had demanded that Enel and
7    EGPNA stop construction at the Osage Wind Farm?

8    A   I do not recall if at this point that had
9    happened.  I know that did happen around this time.

10   Q   Okay.  And when that did happen, whether it was
11   before or after this memo was sent, did defendants in this
12   case, Osage Wind, EGPNA, Enel Kansas, did defendants stop
13   construction at the Osage Wind Farm?

14   A   My job was in Kansas City in an office, and so I
15   can't tell you if the field crew did or did not actively
16   stop, but I assume there's someone else who you can talk
17   to who did.

18   Q   Do you know who at Enel or EGPNA would have been
19   in charge and made the decision to not stop construction
20   in October of 2014?

21   A   I don't know.  It could have been possibly maybe
22   Nick Lincon would be someone who may know that answer.

23   Q   Okay.  Do you know whether or not the memo that
24   we just reviewed, Exhibit 81, the October 2014 version of
25   the memo, was that relied on in making the determination

Page 69

1    to not stop construction?

2        MR. RAY:  Object to form.

3    A   My recollection is that memo was relied on from
4    the beginning as the de facto evidence that what we were
5    doing was not mining.  Anything to the contrary was a
6    misunderstanding.

7    Q   (BY MS. NAGLE) And before you -- let me rephrase
8    that.

9        So -- okay.  Okay.  When did you personally
10   reach the conclusion that the construction activities and
11   excavation at the Osage Mineral -- of the Osage mineral
12   estate did not constitute mining?

13       MR. RAY:  Object to form.

14   A   I think the solicitation of expert input was the
15   correct action, and so in late 2013, going to our direct
16   law representatives and having them find an expert, which
17   was Modrall Sperling, who had experience with, you know,
18   tribal interaction such as this, after reviewing that
19   information, I felt confident that the answer we had
20   received and the answer we had discussed was the correct
21   one.

22   Q   (BY MS. NAGLE) Was there ever a time when you
23   were uncertain as to whether or not a permit would be
24   required from Osage Nation?

25   A   I have never been uncertain that a permit was