**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC, | ) | |
| ENEL KANSAS, LLC, and | ) | |
| ENEL GREEN POWER | ) | |
| NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter comes before the court on the Motion to Reconsider Opinion and Order

Granting Osage Minerals Council's Motion for Judgment on the Pleadings and Opinion and Order

Denying Defendants' Objections to Magistrate Judge's Opinions and Orders [Doc. 229] of

defendants Osage Wind, LLC; Enel Kansas, LLC; and Enel Green Power North America, Inc.[1]

For the reasons set forth below, the motion is denied.

### Background and Procedural History

This case, filed in 2014, presented the question of whether a large-scale excavation project

undertaken by Osage Wind during the installation of eighty-four (84) wind turbines in Osage

---

[1] For ease of reference, the court refers to defendants Osage Wind, LLC; Enel Kansas, LLC; and
Enel Green Power North America, Inc., collectively, as "Osage Wind."

County, Oklahoma constituted "mining" under regulations governing development of minerals in the Osage Mineral Estate and therefore required a lease approved by the Secretary of Interior. [Doc. 2; Doc. 20].  United States District Judge James H. Payne said "no," and, on September 30, 2015, entered Judgment in favor of Osage Wind.  [Doc. 44; Doc. 45].  The United States, as trustee of the Osage Mineral Estate, did not appeal the district court's Judgment, but the Osage Minerals Council (OMC), acting on behalf of the Osage Nation, appealed.

In a September 18, 2017 decision, the Tenth Circuit reversed the district court, and held that, pursuant to 25 C.F.R. § 214, defendants' "extraction, sorting, crushing, and use of minerals as part of its excavation work constituted 'mineral development,' thereby requiring a federally approved lease which Osage Wind failed to obtain."  [Doc. 78, p. 3; *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1081-82 (10th Cir. 2017)].  The Circuit remanded the case to the district court for further proceedings consistent with the decision.  [Doc. 78, pp. 26-27].  On October 24, 2019, the Court Clerk randomly reassigned the case to the undersigned.  [Doc. 89].  The court then permitted OMC to intervene in the remanded proceedings.  [Doc. 136].

On July 1, 2020, this court issued an Opinion and Order limiting the United States and OMC to the relief requested in the Amended Complaint filed by the United States on December 12, 2014.  [Doc. 161]; *see also* [Doc. 20].  Thereafter, OMC filed an Amended Complaint in Intervention.  [Doc. 164].  In the Answer to OMC's Amended Complaint in Intervention, Osage Wind asserted seventeen separate defenses.  [Doc. 174].

On August 12, 2020, Osage Wind filed a motion to compel against the United States, seeking answers to three interrogatories (Interrogatories 5, 6, and 7) and responses to three requests for production (Requests for Production 4, 5, and 6) included in Osage Wind's First Interrogatories and Requests for Production.  [Doc. 177].  The interrogatories and requests for production at issue

generally sought information and documents regarding the United States' and/or Bureau of Indian Affairs' communications with the OMC, Osage Nation, and other agencies regarding the wind turbine project. *See generally* [Doc. 177-4]. The United States asserted relevancy objections to the discovery requests. *See generally* [Doc. 187-1].

Osage Wind then filed a motion to compel against the Osage Minerals Council. [Doc. 179]. The motion sought, among other things, communications between the OMC and the Osage Nation concerning this litigation. [*Id.* at p. 12].

The parties fully briefed the motions to compel, and U.S. Magistrate Judge Jodi F. Jayne held a hearing on the motions, as well as two other pending discovery motions, on October 7, 2020. [Doc. 197]. At the conclusion of the hearing, the Magistrate Judge took the motions under advisement.

While the discovery motions were pending, on November 13, 2020, the OMC sought judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) relative to five of Osage Wind's affirmative defenses: (1) estoppel, (2) laches, (3) waiver, (4) unclean hands, and (5) *in pari delicto*. [Doc. 204]. On January 11, 2021, the court granted the OMC's motion by written order ("Affirmative Defense Order"). [Doc. 207].

Thereafter, on January 16, 2021, the Magistrate Judge issued an Opinion and Order regarding the pending discovery motions, including Osage Wind's First Motion to Compel Against the United States, as well as against the OMC ("Discovery Order"). [Doc. 210]. The Magistrate Judge stated that the "discovery rulings reflect the district judge's recent preclusion" of the estoppel, laches, waiver, unclean hands, and *in pari delicto* affirmative defenses. [Doc. 210, p. 3]. In light of the preclusion of the equitable defenses, the Magistrate Judge framed the dispositive

3

issue as "whether the requested discovery is relevant to the potential remedies of ejectment of, and a permanent injunction against, the existence and operation of the Project."  [Doc. 210, p. 22].

Looking first to the applicable test, the Magistrate Judge observed that, in the Affirmative Defense Order, this court indicated it would apply the "balancing of equities" test articulated by the Tenth Circuit in *Davilla v. Enable Midstream Partners, L.P.*, 913 F.3d 959 (10th Cir. 2019), to the claims for permanent injunction and easement, and opined that such test "does not include any backward-looking considerations of past conduct or knowledge."  [Doc. 210, p. 23].  Rather, the Magistrate Judge characterized the *Davilla* test as "focus[ing] on the present balance of harms to the parties and the public."  [*Id.*].  Because the requested discovery related to Osage Wind's activities prior to the litigation and defendants "[did] not attempt to link their discovery requests to any present equitable concerns," Magistrate Judge Jayne concluded the requested discovery was irrelevant to the issues remaining in this litigation.  [Doc. 210, pp. 21-25].  Thus, the Magistrate Judge denied Osage Wind's motions to compel.  [*Id.*].[2]

Pursuant to Fed. R. Civ. P. 72(a), Osage Wind sought review of the Discovery Order as to the rulings on its motions to compel against the United States [Doc. 177] and the OMC [Doc. 179], respectively.  On May 21, 2021, the undersigned issued an Opinion and Order ("Objection Order") overruling Osage Wind's objections to Magistrate Judge Jayne's discovery rulings and denying defendants' request that this court reverse portions of Judge Jayne's Opinion and Order.  [Doc. 226].

On June 14, 2021, Osage Wind filed the motion to reconsider.  [Doc. 229].  Therein, defendants ask the court to reconsider its Affirmative Defense Order and Objection Order and rule

---

[2] On March 9, 2021, the court amended the Affirmative Defense Order solely to correct a typographical error therein.  *See* [Doc. 219].  Therefore, further references to the "Affirmative Defense Order" are to the amended Opinion and Order of March 9, 2021.

that:  (1) Osage Wind's affirmative defenses of estoppel, laches, waiver, unclean hands, and *in pari delicto* are not subject to dismissal at the pleadings stage based on either the law of the case doctrine or federal common law; (2) even if such defenses may properly be dismissed, the equitable considerations reflected in such defenses may be considered in determining appropriate remedies in this case, in addition to the prospective balance of harms the Court's Orders recognize is appropriate, and (3) the Magistrate Judge erred in ruling all "backward-looking" evidence of the conduct of the United States and OMC is not material and therefore no discovery regarding any such conduct is appropriate.  [Doc. 229, p. 23].  Both OMC and the United States responded in opposition.  [Doc. 234; Doc. 235].  Osage Wind filed a separate reply directed to each response. [Doc. 244; Doc. 245].  Thus, the motion to reconsider is ripe for the court's determination.[3]

### Standard

The Tenth Circuit has recognized that "every order short of a final decree is subject to reopening at the discretion of the district judge."  *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 12 (1983); Fed. R. Civ. P. 54(b)); *see also Been v. O.K. Indus., Inc.,* 495 F.3d 1217, 1225 (10th Cir. 2007) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders.").  Because Osage Wind seeks reconsideration of an interlocutory order, this court adopts the three-factor approach endorsed by Judge Browning in *SFF-TIR, LLC v. Stephenson*, 264 F. Supp. 3d 1148, 1219 (N.D. Okla. 2017) ("The best approach, in the Court's eyes, is to analyze motions to reconsider differently depending on three factors.").  "First, the Court should restrict its review of

---

[3] On June 21, 2021, the court entered a Fifth Amended Scheduling Order pursuant to which discovery in this matter is scheduled to close on August 30, 2021, and the dispositive motions deadline is October 12, 2021.  [Doc. 231].  Prior to that, the Fourth Amended Scheduling Order included a July 16, 2021 discovery deadline and a dispositive motion deadline of August 27, 2021. [Doc. 221].

a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges." *Id.* As Judge Browning explained:

> How "thoroughly" a point was addressed depends both on the amount of time and energy the Court spent on it, and on the amount of time and energy the parties spent on it—in briefing and orally arguing the issue, but especially if they developed evidence on the issue. A movant for reconsideration thus faces a steeper uphill challenge when the prior ruling was on a criminal suppression motion, class certification motion, or preliminary injunction, than when the prior ruling is, *e.g.*, a short discovery ruling. The Court should also look, not to the overall thoroughness of the prior ruling, but to the thoroughness with which the Court addressed the exact point or points that the motion to reconsider challenges.

*Id.* at 1219-20 (internal footnote omitted).

"Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence that the parties may produce, and use those factors to assess the degree of reasonable reliance the opposing party has placed in the Court's prior ruling." *Id.* at 1220.

Third, the court should consider the grounds for reconsideration under Fed. R. Civ. P. 59 as articulated by the Tenth Circuit in *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Those grounds are: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete*, 204 F.3d at 1012. The presence of a Rule 59 ground should weigh in favor of reconsideration. *SFF-TIR, LLC,* 264 F. Supp. 3d at 1220. However, "[u]nlike the motion that produced the prior ruling, a motion to reconsider is not—and is not supposed to be—a fair fight procedurally. The deck is stacked against a movant for reconsideration." *Id.* at 1221. Further, a motion for reconsideration is not "an appropriate vehicle to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were

available at the time of the original motion." *Id.* at 1214 (formatting altered from original) (quoting *Servants of Paraclete*, 204 F.3d at 1012).

## Analysis

Applying Judge Browning's three-factor approach, reconsideration is not warranted.

### A.    *Thoroughness of Prior Briefing*

As stated above, the court first considers how thoroughly the earlier rulings addressed the specific findings or conclusions that the motion to reconsider challenges. The court concurs with Judge Browning's observation of this factor that

> [a] movant for reconsideration . . . faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.

*SFF-TIR, LLC*, 264. F. Supp. 3d at 1220.

Looking first to the Affirmative Defense Order, OMC filed a seventeen (17) page brief in support of its request for judgment on the pleadings as to Osage Wind's affirmative defenses of estoppel, laches, waiver, unclean hands, and *in pari delicto*. [Doc. 204]. OMC argued that laches was foreclosed by the Tenth Circuit's earlier decision in this case and, further, that the affirmative defenses conflicted with federal law and policy. [*Id.*]. Osage Wind filed a twenty-three page response. [Doc. 205]. Therein, Osage Wind first addressed application of law of the case with respect to laches and argued:

> The OMC suggests "the Tenth Circuit has already considered, and dismissed, Defendants' equitable affirmative defense of laches." Motion at 13 n.2. In truth, the Tenth Circuit did not paint with such a broad brush. The Tenth Circuit "decline[d] to dispose of the case on the equitable doctrine of laches," *Osage Wind,* 871 F.3d at 1087 n.6—meaning the doctrine did not prevent declaratory relief on whether the Defendants' activities as described violated the applicable regulations—but it did not rule out laches as a defense on remedies questions. In

fact, the Tenth Circuit could not have reached the applicability of laches as a remedies defense because the parties' summary judgment motions only presented issues of applicability of regulations governing the mineral estate to the construction of the Project.

[Doc. 205, p. 10].  Because it contended the Tenth Circuit had not decided the issue, Osage Wind took the position that the equitable defenses were viable for three reasons:  (1) Oklahoma law applied to the affirmative defenses; (2) the affirmative defenses apply to determine the appropriate remedy, even if the defenses are inapplicable to determine liability; and (3) even if precluded by Oklahoma state law, the defenses are viable under federal law and this court's equitable jurisdiction.  On December 18, 2020, OMC filed a ten-page reply in support of the motion.  [Doc. 206].

Contrary to Osage Wind's assertions, the court addressed each of defendants' arguments in the eleven-page Affirmative Defense Order.  *See generally* [Doc. 219].  The court first analyzed the procedural posture of the appeal, as well as the Tenth Circuit's statement regarding laches, and concluded that the Tenth Circuit had disposed of the defense, even though Judge Payne had not reached the issue.  [Doc. 219, pp. 4-5].  Then, the court engaged in an exhaustive discussion of case law recognizing that tribes are not subject to state delay-based defenses.  [*Id.* at pp. 5-8].  And the court discussed the relevance of the equitable defenses to damages.  [*Id.* at pp. 8-10].

In the motion to reconsider, Osage Wind argues that the court's Affirmative Defense Order "overlooks that Defendants asserted the affirmative defenses are appropriate to inform decisions as to remedy *either* by incorporation of state law *or* independently under the federal courts' traditional equity jurisprudence."  [Doc. 229 at p. 17 (emphasis in original)].  However, in the Affirmative Defense Order, the court specifically addressed whether the defenses remain viable solely under federal law and discussed at length *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982), the case on which Osage Wind primarily relies in the motion to reconsider.  [Doc.

219 at pp. 10-11]. Osage Wind also directs the court to the U.S. Supreme Court's decision in *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005) and the U.S. Court of Appeals for the Second Circuit's decision in *Cayuga Indian Nation of New York v. Pataki*, 413 F.3d 266, 274 (2d Cir. 2005), with respect to the court's equitable jurisdiction. [Doc. 229, pp. 18-19]. But, in the Affirmative Defense Order, the court explicitly concluded that *City of Sherrill* and *Pataki* were distinguishable and the defenses were therefore foreclosed under the court's equitable jurisdiction. [Doc. 219, p. 11]. Thus, both the court and parties have thoroughly analyzed the viability of the equitable affirmative defenses.

Turning next to the Objection Order, Osage Wind filed an eighteen-page Objection to the Magistrate Judge's Discovery Order. *See generally* [Doc. 218]. Osage Wind principally argued the Magistrate Judge had erred in her interpretation of the Tenth Circuit's decision in *Davilla*, in light of *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531 (1987), and *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982). Further, defendants contend that evidence of delay is relevant to the equitable remedies at issue in this case, including under federal equitable principles. [Doc. 218]. With respect to its last contention, Osage Wind directed the court to *Cayuga Indian Nation of New York v. Cuomo*, Nos. 80-CV-930, 80-CV-960, 1999 WL 509442 (N.D.N.Y. July 1, 1999) (*Cayuga X*) and *Andrus*. [*Id.* at pp. 21-22]. The United States and OMC filed separate response briefs in opposition to the Objection. OMC's brief totaled thirty pages and included an exhaustive ten-page discussion of *Davilla* and cases related thereto cited by defendants. *See* [Doc. 223]. The United States' brief totaled nine pages, including an argument that "[d]efendants' equity arguments are a thinly veiled attempt to reassert the equitable defenses that were stricken." [Doc. 224, p. 7]. Osage Wind filed a combined reply of ten pages. [Doc. 225].

On May 21, 2021, the court issued a fourteen-page Opinion and Order overruling Osage Wind's Objection to the Magistrate Judge's Discovery Order. [Doc. 226]. Therein, the court discussed *Davilla* and other cited authorities at length. *See* [*Id.* at pp. 6-11]. The undersigned ultimately concurred with the Magistrate Judge's interpretation of *Davilla* and distinguished the non-Indian law cases cited by Osage Wind, including *eBay, Amoco Production Co.*, and *Weinberger*. [*Id.* at pp. 6-11]. Further, the court clarified that *Cayuga X* did not require the requested discovery. [*Id.* at p. 8 n.5]. Again, the parties and court conducted thorough analyses.

Despite the lengthy analysis conducted both by the parties and the court, as discussed above, in the motion to reconsider, Osage Wind again argues that the Tenth Circuit did not foreclose laches and other delay-based defenses to remedies. [Doc. 229, pp. 10-13]. Osage Wind contends that the undersigned and the Magistrate Judge erred in interpreting *Davilla,* again relying on *Amoco Production, Weinberger, eBay, Inc.*, and other cases previously cited by defendants. [*Id.* at pp. 13-16]. Osage Wind again asserts that the affirmative defenses are viable under traditional federal equity jurisprudence, citing *Cayuga X, Pataki, City of Sherrill*, and *Andrus*, among others. [*Id.* at pp. 17-20]. Finally, Osage Wind reiterates that the affirmative defenses are pertinent to the determination of remedies. [*Id*. at pp. 20-23]. Accordingly, the motion to reconsider "rehashes the same arguments from the first motion[s]," which were thoroughly briefed, considered, and determined in the first instance. *SFF-TIR, LLC,* 264 F. Supp. 3d at 1220. For this reason, the first factor weighs against reconsideration.

B.    *Case's Overall Progress and Posture*

As previously stated, this factor requires the court to consider, among other things, the case's overall progress and posture, the motion's timeliness relative to the rulings it challenges,

and the degree of reasonable reliance the opposing party has placed in the court's prior ruling. *SFF-TIR, LLC,* 264 F. Supp. 3d at 1220.

As previously stated, the court issued the Affirmative Defense Order on Monday, January 11, 2021.  [Doc. 207].  Two days later, on January 13, 2021, the United States filed a Notice suggesting that the Affirmative Defense Order rendered the then-pending discovery motions moot. [Doc. 208].   The next day, Osage Wind filed a response to the Notice, conceding that the Affirmative Defense Order was "relevant to the pending motions to compel," but asserting that the requested discovery remained relevant to the balancing of equities required by *Davilla*.   [Doc. 209].  Magistrate Judge Jayne issued the Discovery Order on January 16, 2021, which relied on the Affirmative Defense Order, and a related order on February 13, 2021.  [Doc. 210; Doc. 214]. At the time, the discovery deadline was April 16, 2021.  [Doc. 203].

Although Osage Wind understood Magistrate Judge's reliance on the Affirmative Defense Order and its effect of the scope of discovery as early as January 16, 2021, it did not seek reconsideration of the Affirmative Defense Order at that time.  This is so despite Osage Wind apparently having contemplated a motion to reconsider, *see* [Doc. 218, filed March 8, 2021, p. 16 ("Defendants do not seek reconsideration of [the Affirmative Defense Order] at this juncture.")], as well as the impending discovery deadline.  Instead, Osage Wind filed the Objection.  Even after the court issued the Objection Order, the motion to reconsider was not filed until over three weeks later and over five months after the Affirmative Defense Order.  Under the circumstances, the motion is not timely.

Further, at the time defendants filed the motion to reconsider, the discovery deadline was July 16, 2021—less than a month away.  *See* [Doc. 221].  Based on the pendency of the motion, the court granted OMC's motion to extend Scheduling Order deadlines, but, even with the

requested extension, the discovery deadline is August 30, 2021—less than a week away.  The United States and OMC have reasonably relied on the Affirmative Defense Order and Objection Order.  Reconsideration would necessarily require the court to extend the discovery deadline and further delay this seven-year-old case.  Thus, this second factor weighs against reconsideration.

### C.     Rule 59 Ground for Reconsideration

Finally, as previously stated, the court should consider the grounds for reconsideration under Fed. R. Civ. P. 59 as articulated by the Tenth Circuit in *Servants of the Paraclete v. Does*, 204 F.3d 1005 (10th Cir. 2000), which are "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete*, 204 F.3d at 1012.  Osage Wind argues that reconsideration is necessary to correct clear error or prevent manifest injustice.  Specifically, Osage Wind argues that the court erred in the following ways.  First, by misapplying the law of the case doctrine in the Affirmative Defense Order.  Second, by misreading *Davilla* in both the Affirmative Defense Order and Objection Order.  Third, by concluding that the government and OMC's prelitigation conduct is irrelevant to remedies and not discoverable.  In this regard, Osage Wind contends that the court erred in striking the five equitable affirmative defenses and prohibiting consideration of backward-looking factors to determine remedies.

As an initial matter, the court observes that a motion to reconsider "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete*, 204 F.3d at 1012.  Based on the court's review, Osage Wind's motion is little more than a rehash of arguments raised and rejected in prior briefing.  Thus, reconsideration could be denied for this reason alone.  Nevertheless, in an abundance of caution, the court separately considers each allegation of error by Osage Wind.

1.      Application of the Law of the Case Doctrine

In its decision remanding this case for further proceedings, the Tenth Circuit concluded, in

a footnote, as follows:

> Osage Wind also invites us to affirm on the ground that OMC's instant claim is
> barred by the laches doctrine—which gives courts discretion to reject stale claims
> brought after unreasonable delay.  *See Jicarilla Apache Tribe v. Andrus*, 687 F.2d
> 1324, 1337 (10th Cir. 1982) (explaining that the laches doctrine is "vigorously
> enforced in cases involving mineral properties").  We decline to dispose of the case
> on the equitable doctrine of laches.   The United States commenced this action
> within three months after turbine excavation work began, which is not an
> unreasonable amount of time to wait before filing suit.

*United States v. Osage Wind, LLC*, 871 F.3d 1078, 1087 n.6 (10th Cir. 2017).  In the Affirmative

Defense Order, the undersigned concluded that the Tenth Circuit had decided the issue of laches

in footnote six and that the law of the case doctrine should apply to that determination.  [Doc. 207,

pp. 4-5; Doc. 219, pp. 4-5].  Osage Wind contends that this court erred in applying the law of the

case doctrine to preclude laches as a defense both to the merits of the claims and the appropriate

remedy, "even though the Tenth Circuit was not considering remedies, as evidenced by the need

for remand to consider remedies."  [Doc. 229, p. 11].  Further, even if the law of the case doctrine

would generally apply, Osage Wind asks the court to exercise its discretion to depart from the rule.

"[T]he law of the case doctrine posits that when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages in the same case."

*McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 (10th Cir. 2000) (quoting *United States

v. Monsisvais,* 946 F.2d 114, 115 (10th Cir. 1991)).  "[W]hen a case is appealed and remanded,

the decision of the appellate court establishes the law of the case and ordinarily will be followed

by . . . the trial court on remand."  *McIlravy*, 204 F.3d at 1034 (quoting *Rohrbaugh v. Celotex

Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)).  The doctrine is intended to "maintain consistency

and avoid reconsideration of matters once decided during the course of a single continuing

lawsuit." *Kennedy v. Lubar*, 273 F.3d 1293, 1298 (10th Cir. 2001) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4478 (1981)).

Osage Wind first suggests that the Tenth Circuit did not actually decide the issue of laches because (1) the issue was not determined by Judge Payne, and (2) the Circuit addressed the issue in a footnote. The court has previously addressed and rejected these contentions. But, to reiterate:

First, although Judge Payne declined to address laches, Osage Wind clearly submitted the issue to the Tenth Circuit for decision. First, as previously recognized by this court, in briefing to the Tenth Circuit, Osage Wind stated "[t]he record would permit this Court to affirm on the basis of laches." Brief of the Appellees, *United States v. Osage Wind, LLC*, No. 15-5121 (10th Cir. June 16, 2016), Doc. 01019639458, at p. 32 n.11. Additionally, prior to the Tenth Circuit issuing its decision, on May 5, 2017, Osage Wind filed a Notice of Supplemental Authority attaching the Oklahoma Supreme Court's decision in *Osage Nation v. Board of Commissioners of Osage County,* 2017 OK 34, 394 P.3d 1224, which affirmed the state district court's dismissal on the basis of laches two cases brought by the Osage Nation challenging the same wind energy project at issue in this case. Notice of Supplemental Authority, *United States v. Osage Wind, LLC*, No. 15-5121 (10th Cir. May 5, 2017), Doc. 01019805266. In the Notice, Osage Wind argued the Oklahoma Supreme Court's decision was pertinent, in part, because "laches should similarly bar relief in the OMC's favor here." [*Id.* at p. 2]. And although Osage Wind contends that the Tenth Circuit erred in considered the beginning of turbine excavation as the relevant timeframe for laches, rather than judging the defense from when OMC learned of plans detailing the excavation, defendants raised this issue in their petition for rehearing to the Circuit, which was denied.

Appellees' Petition for Panel Rehearing and/or Request for *En Banc* Determination, *United States v. Osage Wind, LLC*, No. 15-5121 (10th Cir. Oct. 2, 2017), Doc. 01019880078, at pp. 14-15.

Insofar as Osage Wind suggests that application of the law of the case doctrine is inappropriate because the Tenth Circuit dealt with laches summarily in a footnote, an abbreviated discussion may nevertheless consider and decide an issue. *See Fed. Dep. Ins. Corp. v. Ramirez-Rivera,* 869 F.2d 624, 627 (1st Cir. 1989); *see also* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4478 (Apr. 2021 update) ("[A] terse decision is even more clearly the law of the case because it does not require a determination whether actual decision can be inferred."). Although a brief discussion, the Tenth Circuit concluded that the United States commenced this action within a reasonable amount of time and therefore declined to apply the laches doctrine. This is a sufficient final determination to require application of the law of the case doctrine. The court next considers whether it should exercise its discretion to depart from the rule.

Where a higher court has issued the original ruling, "a district court should depart from the ruling only in exceptionally narrow circumstances." *Been,* 495 F.3d at 1225. Three exceptions warrant departure, all of which are "exceptionally narrow": "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *McIlravy*, 204 F.3d at 1035 (quoting *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998)). Generally, district courts apply the law of the case "unless one of the exceptions specifically and unquestionably applies." *United States v. Nichols*, 38 F. App'x 534, 541 (10th Cir. 2002) (unpublished).[4]

---

[4] "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

Osage Wind argues for the first time on reconsideration that the evidence is "substantially different" from the evidence presented to the Tenth Circuit because, on remand, this case involves remedies. However, as discussed above, Osage Wind submitted the issue of laches to the Tenth Circuit. That Osage Wind now seeks to introduce *additional* evidence or reframe the argument does not render the evidence "substantially different." Rather, previously available evidence generally "cannot be used to unsettle the law of the case." *Bishop v. Smith*, 760 F.3d 1070, 1087 (10th Cir. 2014). Further, the Tenth Circuit did not remand the case to this court "for consideration of remedies," but instead, "for further proceedings *consistent with [its] opinion*." *Osage Wind, LLC*, 871 F.3d at 1093 (emphasis added). It would be inconsistent with the Tenth Circuit's opinion to conclude that laches may apply when the Tenth Circuit has decided the doctrine is inapplicable.

Osage Wind also argues that the Tenth Circuit's decision was clearly erroneous and that application of the law of the case would work a manifest injustice because equitable affirmative defenses should apply to determine the appropriate remedy.[5] In this regard, defendants incorporate portions of their response to OMC's motion for judgment on the pleadings and reply in support of the objection to the Discovery Order. [Doc. 229, p. 12]. The court has plainly considered and rejected Osage Wind's arguments. "A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). Regardless, Osage Wind raises this same argument as a separate *Servant of Paraclete* ground, and the court will consider Osage Wind's argument in that context.

---

[5] Osage Wind does not invoke the second exception—change in the law.

Based on the arguments specific to the issue, application of the law of case doctrine as to the Tenth Circuit's resolution of laches was neither clear error nor manifest injustice. Reconsideration is not warranted on this basis.[6]

### 2.   Interpretation of *Davilla*

Osage Wind next argues that the court erred in interpreting *Davilla* to foreclose discovery into, and consideration of, pre-suit evidence to determine equitable relief.  Again, Osage Wind's motion largely restates arguments previously made and rejected by this court, which generally do not warrant reconsideration.  However, bearing in mind that Osage Wind asserts that the court misapprehended the law, which necessarily requires re-examination of the law, the court will consider defendants' argument.

In *Davilla,* the Tenth Circuit "conclude[d] that the district court erred in failing to apply the federal permanent-injunction standard even though it properly applied Oklahoma trespass law." *Davilla*, 913 F.3d at 972.[7]  The court observed that "the federal judiciary already has a well-

---

[6] Moreover, even if the court had not applied the law of the case doctrine to laches, the court declined to incorporate state delay-based defenses, including laches.  [Doc. 219, pp. 5-8].  Thus, pursuant to the Affirmative Defense Order, judgment on the pleadings would have been warranted as to defendants' laches affirmative defense, regardless of application of the law of the case.  And for the reasons discussed below, reconsideration of the court's decision against incorporating delay-based defenses is not warranted.

[7] Osage Wind argues that "*Davilla* expressly observed no [backward-looking] evidence was before it, quoting and referencing the district court below:  'Though it observed 'some courts have declined to enter an injunction when the trespass was unintentional and when the landowner' delays objection, it did not think such issues at play in this case." [Doc. 229, p. 13].  Osage Wind interprets the Tenth Circuit's recitation of the district court's decision to suggest that backward-looking evidence is generally relevant, but was not presented to the district court.  Defendants' interpretation is undercut by the Tenth Circuit's refutation of a similar argument offered by defendants in that case:  "The Allottees' attempts to escape this conclusion [that the district court legally erred by ordering the defendant to remove a pipeline on the basis of liability alone] do not persuade us.  First, they argue the district court did not, in fact, apply a simplified rule.  Instead, they claim the court merely applied the usual rule to simplified facts.  But we see little support for this reading. *The court below made no mention of the appropriate equitable considerations*. Indeed, it went to great lengths to justify its analysis as legally, rather than just factually,

developed body of law regarding equitable remedies to guide judicial discretion" and "[t]he Supreme Court has repeatedly weighed in on the standard federal courts apply when granting or denying a permanent injunction."  *Id.* at 973.  In this regard, the court cited the U.S. Supreme Court's decisions in *eBay Inc.*, *Amoco Production Co.,* and *Weinberger*.  Of these decisions, the Circuit stated:

> In each case the Supreme Court set out the proper standard for granting a permanent injunction and chastised the circuit court for granting equitable relief based solely on success on the merits.  *See Weinberger*, 456 U.S. at 311-312, 102 S. Ct. 1798 ("It goes without saying that an injunction is an equitable remedy [that] . . . 'is not a remedy which issues as of course.'") (citation omitted).  We may therefore apply a well-developed federal common law standard for issuing a permanent injunction that will fulfill the "distinct need for nationwide legal standards" called for in this case.  [*Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 98 (1991)].

*Id.*

> The Circuit went on to conclude

> Thus, a federal district court's decision to permanently enjoin a continuing trespass on allotted land should take into account (1) whether an injunction is necessary to prevent "irreparable harm," (2) whether "the threatened injury outweighs the harm that the injunction may cause" to the enjoined party, and (3) whether the injunction would "adversely affect the public interest."  *Kitchen v. Herbert,* 755 F.3d 1193, 1208 (10th Cir. 2014) (quoting *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009)).

*Id.*  The court "acknowledge[d]" that its articulation "differ[ed] slightly from that of the Supreme Court in *eBay*," but stated "the subtle differences are not at issue, and we think the two articulations capture the same considerations in any event."  *Id.* at 973 n.9

Osage Wind argues that the court should apply general principles of equity primarily articulated in the patent context, stating "[a]ny suggestion patent precedent is unpersuasive here is

---

appropriate."  *Davilla,* 913 F.3d at 973-74 (internal citations omitted) (emphasis added).  In light of the Circuit's categorical rejection of the district court's analysis as having anything to do with equitable considerations, the court is not persuaded that the Circuit intended to draw any conclusions regarding the relevance of backward-looking evidence.

discounted by *Davilla*'s citation with approval of the decision in *eBay, Inc.*, 547 U.S. at 391."

[Doc. 229, p. 14].   However, *Davilla* cited *eBay, Inc.* (as well as *Amoco Production* and

*Weinberger* on which Osage Wind also relies) for the general proposition that federal courts have

articulated a permanent injunction standard to apply and equitable relief should not be granted

"based solely on success on the merits," as the district court had done.  *Davilla*, 913 F.3d at 973.

The Tenth Circuit went on to articulate the specific considerations for a district court to

"permanently enjoin a continuing trespass on allotted land."  *Id.*  The standard was intended to

"fulfill the 'distinct need for nationwide legal standards' called for" in the case based on a statutory

grant of authority to the Secretary of Interior to approve easements over land held in trust by the

United States for individual Indians or Indian tribes.  *Id.* (citing *Kamen*, 500 U.S. 90).

Significantly, the Circuit did not cite the four-factor standard articulated by *eBay Inc*.,

which was as follows:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that
> remedies available at law, such as monetary damages, are inadequate to compensate
> for that injury; (3) that, considering the balance of hardships between the plaintiff
> and defendant, a remedy in equity is warranted; and (4) that the public interest
> would not be disserved by a permanent injunction.

*eBay Inc.*, 547 U.S. at 391.  Rather, given the "distinct need for nationwide legal standards called

for in th[e] case," the court articulated the standard to determine the propriety of injunctive relief

for continuing trespass on allotted land as follows:  "(1) whether an injunction is necessary to

prevent irreparable harm, (2) whether the threatened injury outweighs the harm that the injunction

may cause to the enjoined party, and (3) whether the injunction would adversely affect the public

interest."  *Davilla*, 913 F.3d at 973 (internal quotations omitted).  As this court has previously

concluded "[t]he factors reflect the prospective nature of injunctive relief, *see generally Estate of*

*Schultz v. Brown,* 846 F. App'x 689, 693 (10th Cir. 2021), and focus on the future effect of the requested relief."  [Doc. 226, p. 8 (citation altered from original)].

Further, Osage Wind asserts that there exist "statutory and federal policy parallels between federal patent and Indian law statutes and policies," because "[f]ederal statutes and policies protect asserted rights of patentees of federal patents, just as they protect certain rights of the Osage Nation."  [Doc. 229, p. 15].  Defendants cite no authority for this proposition, nor has the court identified any.  Rather, federal law expresses a strong interest in the vindication of Indian land claims.  *See generally Oneida Cnty. v. Oneida Indian Nation of New York State*, 470 U.S. 226 (1985).

In this case, OMC seeks equitable relief for continuing trespass to Indian land.  *Davilla* provides the standard to determine the propriety of a permanent injunction in such cases.  *Davilla* is a published decision of the Tenth Circuit and therefore binding upon this court.[8]  Thus, *Davilla* is dispositive.

Regardless, for the first time in the motion to reconsider, defendants assert that backward-looking evidence is relevant to the "public interest" consideration of the preliminary injunction

---

[8] As previously stated, in *Davilla*, the Tenth Circuit articulated the federal equitable principles in light of the "distinct need for nationwide legal standards called for in th[e] case."  *Davilla*, 913 F.3d at 972.  No similar need for nationwide uniformity exists in this case.  However, to determine whether to incorporate state law or look to federal standards, district courts should also consider "'whether application of state law would frustrate specific' federal interests."  *Id*.  The Tenth Circuit has recognized that, "without question, the regulations at issue here are designed to protect Indian mineral resources and 'maximize [Indians]' best economic interests.'"  *Osage Wind, LLC,* 871 F.3d at 1090 (quoting 25 C.F.R. § 211.1).  Further, as this court has previously recognized, federal law recognizes a strong interest in the vindication of Indian land claims and therefore state-delay based defenses are generally inapplicable to Indian land claims.  *See* [Doc. 219, pp. 5-8].  Under Oklahoma law regarding permanent injunctions, however, laches and other delay-based defenses may preclude injunctive relief, even when sought by a tribe.  *See Osage Nation v. Bd. of Comm'rs of Osage Cnty*., 394 P.3d 1224, 1239-40 (Okla. 2017).  Thus, incorporation of Oklahoma law would frustrate the specific federal interest in Indian land claims and maximizing Indians' economic interest.  The court must therefore look to federal law.

analysis. This argument is foreclosed for two reasons. First, in *Davilla*, the Circuit described the public interest inquiry as requiring consideration of "the relative costs and benefits of [defendant] removing the pipeline, either as they pertain to these parties or the public at large." *Davilla*, 913 F.3d at 974. Such inquiry is plainly forward-looking as it focuses on the costs and benefits to the general public of a *potential* removal. Second, in support of its argument, Osage Wind directs the court only to the U.S. District Court for the Eastern District of Virginia's interpretation of the *eBay* factors on remand from the Supreme Court. [Doc. 229, pp. 14-15 (citing *MercExchange, L.L.C. v.eBay, Inc*., 500 F. Supp. 2d 556, 561 (E.D. Va. 2007)]. That case is not precedential. Nor is it persuasive, as the discussion on which Osage Wind relies is couched in terms of the "public's interest in maintaining the integrity of the *patent system*." *MercExchange, L.L.C*., 500 F. Supp. 2d at 586 (emphasis added). As previously stated, federal law recognizes a unique interest in the vindication of Indian law claims.

For the reasons discussed above, the court's application of *Davilla* was not a misapprehension of controlling law sufficient to rise to the level of clear error. Thus, reconsideration is not warranted on this basis.

### 3. Application of Affirmative Defenses to Remedies

Osage Wind's argument in this regard is two-fold. First, defendants contend that the court erred in striking the five affirmative defenses. Second, they argue, even if the equitable defenses are not available as to the merits, the defense remains applicable to remedies and therefore the Objection Order erred in prohibiting the requested discovery.

Looking first to the Affirmative Defense Order and its holding striking the affirmative defenses, as previously stated, Osage Wind criticizes the court for "overlook[ing]" the remedy issues, but Osage Wind fails to account for the last section of the Affirmative Defense Order, which

addressed this specific issue. [Doc. 219, pp. 10-12]. As previously stated, a motion to reconsider "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete*, 204 F.3d at 1012.

However, insofar as Osage Wind asserts that the court incorrectly applied the relevant law, the court will examine the cited authorities. Osage Wind again directs the court to the Tenth Circuit's decision in *Andrus* for the proposition that the affirmative defenses are cognizable under federal law. However, in that case, the district court had declined to apply equitable defenses to the tribe's claim of violation of the regulation on notice procedures and therefore the court had no occasion to consider whether the tribe was properly subject to laches and other equitable defenses as a matter of law.[9] *Id.* at 1337. Although the court affirmed the application of laches to the tribe's claim under the National Environmental Policy Act, the court recognized that "the concerns addressed by NEPA do not relate to rights of Indians *per se*, and NEPA instead advances substantive goals for the nation as a whole by 'essentially procedural' requirements." *Id.* at 1339-40 n.11.

In footnote 11 of its motion, Osage Wind argues that the Tenth Circuit's decision not to dispose of this case on the equitable doctrine of laches "did not discount the applicability of *Andrus* to remedial issues." However, as Osage Wind recognizes, the Circuit cited *Andrus* in declining to apply laches in this case, and, in *Andrus*, the Tenth Circuit recognized that

> the issue of laches depends on whether "**equitable relief** cannot be afforded without doing injustice." *Penn Mut. Life Ins. Co. v. Austin*, 168 U.S. 685, 698, 18 S. Ct. 223, 228, 42 L.Ed. 626. Laches will bar relief "only where the enforcement of the asserted right would work injustice." *Hoehn v. Crews,* 144 F.2d 665, 671 (10th Cir.), *aff'd on other grounds,* 324 U.S. 200, 65 S. Ct. 600, 89 L.Ed. 870.

---

[9] Likewise, because the Tenth Circuit concluded in this case that three months was not an unreasonable time to wait before filing suit, the Circuit did not contend with the issues now presented to this court. *Osage Wind, LLC,* 871 F.3d at 1087 n.6.

*Andrus,* 687 F.2d at 1337 (emphasis added).  Accordingly, laches necessarily relates to remedy, and *Andrus* makes no distinction with respect to the application of laches as a complete bar to a claim versus laches as a defense to remedial issues.

Nor is the Tenth Circuit's recognition of general equitable principles in *Andrus* inconsistent with the Affirmative Defense Order.  *See* [Doc. 229, pp. 17-18 (citing *Andrus,* 687 F.2d at 1333-34)].  In some circumstances, equitable defenses may apply to Indian land claims.  *See City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197, 214, 217 (2005) ("It is well established that laches, a doctrine focused on one side's inaction and the other's legitimate reliance, may bar long-dormant claims for equitable relief.").  However, courts have interpreted those equitable principles to apply to Indian land claims only in circumstances similar to *City of Sherrill.* That is, when there exists (1) "longstanding, distinctly non-Indian character of the [disputed land] and its inhabitants"; (2) "regulatory authority constantly exercised by [the] State and its counties and towns"; and (3) a "long delay," usually of decades or more, in seeking relief.  *Oneida Indian Nation v. Phillips*, 981 F.3d 157, 168 (2d Cir. 2020) (quoting *City of Sherrill*, 544 U.S. at 202); *see also United States v. Washington*, 853 F.3d 946, 967-68 (9th Cir. 2017); *Oneida Indian Nation of New York v. County of Oneida*, 617 F.3d 114, 127 (2d Cir. 2010) ("[T]he equitable defense recognized in *Sherrill* and applied in *Cayuga* does not focus on the elements of traditional laches but rather more generally on the length of time at issue between an historical injustice and the present day, on the disruptive nature of claims long delayed, and on the degree to which these claims upset the justifiable expectations of individuals and entities far removed from the events giving rise to the plaintiffs' injury.").

The principles articulated in *City of Sherrill* do not apply in this case.  Here, the Osage Nation has consistently exercised sovereignty over the Osage Mineral Estate having never lost

possession of it.  Nor is any asserted delay comparable as Osage Wind alleges a three-year delay in bringing suit, rather than the two-hundred-year delay asserted in *City of Sherrill*.  Thus, the Affirmative Defense Order did not err or misconstrue the law in concluding that the affirmative defenses were not properly asserted under the federal courts' traditional equity jurisprudence.

Turning to the Objection Order, Osage Wind contends that principles related to the equitable affirmative defenses remain relevant to the requested remedies.  Osage Wind argues that "the Court may have misperceived Defendants' arguments with respect to consideration of equitable factors on remedy *even if an affirmative defense has been rejected on the merits*."  [Doc. 229, p. 22 (emphasis in original)].  But the court previously explicitly "decline[d] to adopt the liability versus remedy distinction" urged by the defendants.  [Doc. 219, p. 10].  Clearly, the court understood the argument being made.  Regardless, the cases cited by Osage Wind in the motion to reconsider do not persuade the court of the existence of clear error or manifest injustice.

As an initial matter, the court reiterates that, pursuant to binding Tenth Circuit authority, the court must consider prospective factors that contemplate the future effect of the requested relief.[10]  *Davilla*, 913 F.3d at 973.  Therefore, the requested discovery is irrelevant.

The remaining cases cited by Osage Wind are not persuasive.  The court discussed *Andrus* above.  The court previously declined to adopt the liability versus remedy distinction of *Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York*, 278 F. Supp. 2d 313, 342 (N.D.N.Y. 2003).  And, even if the court adopted the reasoning, the case does not suggest that broad discovery should be permitted.  *See id.* at 340.  Osage Wind characterizes *Cayuga X* as "particularly pertinent" to the need for discovery but, in that case, the court applied the

---

[10] OMC also seeks an ejectment remedy, but it appears to be uncontested that, in the context of an alleged trespass on Indian land, ejectment is a form of injunctive relief.  *See* [Doc. 191, p. 5 n.3; Doc. 209, p. 2 n.1].

RESTATEMENT (SECOND) OF TORTS to determine the ejectment and permanent injunction remedy. *Cayuga Indian Nation of New York v. Cuomo*, No. 80-CV-930, 80-CV-960, 1999 WL 509442, at *19 (N.D.N.Y. 1999). The court will not apply the RESTATEMENT factors in this case in favor of the *Davilla* factors.[11] Likewise, *Brooks* is not persuasive as, in that case, the court indicated that the government's lack of diligence could be considered because the government's inaction increased the damages. *Brooks v. Nez Perce Cnty.*, 670 F.2d 835, 836 (9th Cir. 1982). Osage Wind offers no explanation as to how any alleged delay has increased OMC's damages. Further, in that case, the court considered a 54-year delay. *Id.* at 837.

Osage Wind objects that "[w]hile defendants have been barred from obtaining discovery relevant to the 2013 and 2014 assertions the United States and OMC were making, the Plaintiffs are free to discover Defendants' actions . . . at that same time." [Doc. 229, pp. 21-22]. The court previously characterized defendants' argument in this regard is "vague and unmoored to any specific factual or legal context," and the motion to reconsider does little to clarify the issue. [Doc. 226, p. 13]. The court will deal with more specific objections in due course.

Finally, for the first time, defendants contend that the requested discovery may be relevant to other remedies, apart from the equitable remedies of injunction and ejectment. The other remedies at issue in this matter are limited to damages and an accounting. Osage Wind makes no effort to tie the requested discovery to those remedies, nor did they do so before Magistrate Judge Jayne. A motion to reconsider "is designed to permit relief in extraordinary circumstances and not to offer a second bite at the proverbial apple." *Syntroleum Corp. v. Fletcher Int'l, Ltd.*, No. 08-CV-384-JHP-FHM, 2009 WL 761322, at *1 (N.D. Okla. Mar. 19, 2009) (quoting *Maul v. Logan*

---

[11] In the Objection Order, the court clarified that, in the Affirmative Defense Order, it did not signal that it would apply the Restatement test. [Doc. 226, p, 8 n.5].

*Cnty. Bd. of Cnty. Comm'rs*, No. CIV-05-605-C, 2006 WL 3447629, at *1 (W.D. Okla. Nov. 29, 2006)).

    4.    <u>Summary</u>

For all these reasons, Osage Wind fails to demonstrate that this court committed clear error or that reconsideration of the Affirmative Defense Order and Objection Order is necessary to prevent manifest injustice. Thus, defendants fail to demonstrate a grounds for reconsideration under Fed. R. Civ. P. 59 as articulated by the Tenth Circuit in *Servants of the Paraclete.* This third factor weighs against reconsideration.

Because all of the three factors weigh against reconsideration, defendants' motion must be denied.

### Conclusion

WHEREFORE, the Motion to Reconsider Opinion and Order Granting Osage Minerals Council's Motion for Judgment on the Pleadings and Opinion and Order Denying Defendants' Objections to Magistrate Judge's Opinions and Orders [Doc. 229] of defendants Osage Wind, LLC; Enel Kansas, LLC; and Enel Green Power North America, Inc. is denied.

IT IS SO ORDERED this 25th day of August, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE