# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

     Plaintiff,

     And

OSAGE MINERALS COUNCIL,

     Intervenor-Plaintiff,

v.

OSAGE WIND, LLC;
ENEL KANSAS, LLC; and
ENEL GREEN POWER NORTH
AMERICA, INC.,

     Defendants.

Case No. 14-CV-704-GKF-JFJ

**Plaintiff the United States' Response to Defendants'
Second Motion to Compel Against the United States (Dkt. 262)**

## Table of Contents

A.      The United States' burdensomeness and harassment claims stem from
        Defendants seeking the same discovery sought last year to revive a stale
        dispute……………………………………………………………...……......1

B.      As Defendants well know, the United States has produced broad discovery in
        response to Defendants' many discovery requests……………………………..6

C.      Defendants' have persistently and willfully ignored the impact of the Court's
        rulings, which directly address the discovery here……………………………..7

D.      The Court should be particularly disturbed that Defendants misconstrue the
        very limited relevance of the "innocent trespasser" issue………………………11

E.      The information sought by Defendants is not relevant to any remaining issue
        in the limited remand from the Tenth Circuit…………………………………...13

F.      Defendants have conceded that the relevant inquiry here is subjective, not
        objective………………………………………………………………………....15

# Table of Authorities

## Cases

*Cont'l Indus., Inc. v. Integrated Logistics Sols., LLC.*, 211 F.R.D. 442 (N.D. Okla. 2002)………………………………………………………….…… 6

*Dilworth v. Fortier,* 405 P.2d 38 (Okla. 1964)………………………………………..13

*Edwards v. Lachman*, 534 P.2d 670 (Okla. 1974)…………………………...… 13-14

*Estrada v. Texas Roadhouse Holdings, LLC*, No. 18-CV-02937, 2020 WL 869857 (D. Colo. Feb. 21, 2020) ……………………………………………………….….......  18

*Freddie v. Marten Transport, Ltd.*, 428 F. App'x 801 (10th Cir. 2011)……………….……… 6

*In re A.C. Rentals, Inc.*, 310 B.R. 663, 2004 WL 1182254 (Bankr. App. 10th Cir. May 28, 2004)……………………………………………………………………….... 17-18

*Inv. Co. of S.W., Inc. v. United States*, No. 10-CV-587, 2010 WL 11618916 (D. N.M. Dec. 13, 2010) …………………….……………………………….……………… 18

*Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177 (10th Cir. 1999)...................................... 6

*Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136 (10th Cir. 1994)…………... 6

*Oppenheimer Fund, Inc. v. Sanders*, 98 S.Ct. 2380 (1978)………………….…….......... 9

*Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219 (10th Cir. 2015)…………...................... 6

## Court Rules

Fed. R. Civ. P. 26(b)(1)………………………………..……………………………. 9

Plaintiff, the United States of America, responds to Defendants' Second Motion to Compel Against the United States (Dkt. 262), as follows, and requests that the Court deny the motion on the grounds that (1) Defendants are improperly re-asking very stale discovery to create a discovery issue after discovery cut-off; (2) the issue of "bad faith" relates only to the ability of a trespasser to deduct certain costs and is not a defense to any of the United States' claims; and (3) Defendants steadfastly seek second and third bites at the same apple, refusing to acknowledge the Court's orders setting out the limited "innocent trespasser" issue and rejecting the types of equitable defenses Defendants unashamedly still try to advance.

## A. The United States' burdensomeness and harassment claims stem from Defendants seeking the same discovery sought last year to revive a stale dispute.

Defendants' Motion to Compel noted that a Motion to Reconsider was pending. Dkt. 262 at 8. The United States filed a response (Dkt. 235) to this late-in-the-day Motion to Reconsider, noting that discovery had proceeded according to the Court's ruling for more than seven months. Defendants' stale presentation of a request to reconsider the Court's pivotal ruling (Dkt. 207) and the subsequent discovery rulings (Dkt. 210, 214) proposed to further lay waste to the Plaintiffs' resources in this seven year-long dispute. The Court well-knows the history of this case. *See* Dkt. 264 at 1-5 ("Background and Procedural History"). While Defendant's Motion to Reconsider has now been denied (Dkt. 264), it is predictable from the case history that Defendants will refuse to acknowledge that this 26-page Opinion and Order has any bearing on the contours of discovery, much less the pending motions to compel.

1

Since filing the Motion to Reconsider, Defendants have waged a campaign of renewing requests and interrogatories long answered and settled. For instance, the instant Motion to Compel directs the Court to Enel Kansas Interrogatory 21 and Request for Production (RFP) 24. Dkt. 262 at 9-10, 13. Generally, Defendants seek correspondence and communication ("whether oral or via any document") between the plaintiffs regarding the decision to appeal – a decision made in 2015 in the context of this litigation. *Id.* at 9. Defendants have already sought this information. Defendant Osage Wind, LLCs' January 2, 2020, "First Interrogatories and Requests for Production to Plaintiff the United States of America" requested that the United States "[p]rovide all correspondence between and among you and/or the Bureau of Indian Affairs and the Osage Nation and/or the Osage Minerals Counsel concerning the current litigation." Exhibit 1 at 8, RFP 15. Defendant also asked for *all* communications between the United States and the Osage Minerals Council (OMC), generally, at Interrogatories 5-7 and Requests 4-6. *Id.* at 5-7.

The parties communicated for six months regarding those requests, and, after modified requests and amended responses, the United States gave a final response on June 18, 2020.[1] Exhibit 2. Defendant then moved to compel responses to certain of the requests – excluding RFP 15 – which led to Judge Jayne's decision that Defendants' "requested discovery of the United States and OMC's communications is not relevant to the remaining issues." Dkt. 210 at 22.

---

[1] For a detailed timeline of events evincing the United States' good faith efforts to comply with its discovery obligations, see the United States' June 18, 2020, letter. Exhibit 3 at 2.

Now, more than a year after the United States' final response to the request, by narrowing it to "communication" about a particular part of the litigation (the appeal) as opposed to "litigation" as a whole (Dkt. 262 at 9-10, 13), Defendants seek to revive a discovery dispute they let go stale. This gamesmanship by counsel should not be allowed. The parties should be turning their attention to the soon-due dispositive motions; instead, Defendants are engaging in a scorched-Earth campaign to consume the resources and attention of the Court and the plaintiffs.

Defendants' first discovery requests to the United States sought "complete files for all applications for leases, permits, or any other authorization issued under 25 CFR § 214 to any surface right owner of lessee, including but not limited to applications, correspondence, issued permits, denials of permits." Exhibit 1 at 7, RFP 8. The United States' February of 2020 responses repeatedly noted that "The Tenth Circuit Court of Appeals has found that Defendants were required to 'secure a federally approved lease from OMC under § 214.7.'" Exhibit 4 at 6, 14-16. The United States specifically pointed out that the requests were "designed to reach information irrelevant to the matters to be decided in this court at this stage of litigation." *Id*. at 14-15. Defendants did not object to these responses or bring them before the Court. Defendants now raise an issue they let govern over a year of discovery. *See* Dkt. 262 at 10-11 (Interrogatory Nos. 23-24) and 12 (RFP Nos. 21-22).

Similarly, Defendants' January of 2020 requests to the United States sought "all documents concerning any investigation by the Bureau of Indian Affairs with respect to the need for lease or permit at any other construction/excavation site in Osage

County in the last 15 years." Exhibit 1 at 7, RFP 9. The United States' response noted that "Defendants were required to 'secure a federally approved lease from OMC under § 214.7.' Dkt. 78 at p. 24-25. With that matter now established law of the case, 'investigations' into other 'construction/excavation' sites is simply irrelevant." Exhibit 4 at 16. The law of the case (especially the Tenth Circuit's ruling) rendered this subject matter irrelevant. For over a year, Defendants raised no objection to these responses, and the United States proceeded to assert the same objection, as appropriate, in future responses. As discovery drew to a close and new counsel appeared for them, Defendants suddenly sought to raise this very stale discovery matter. Through Interrogatories 11 and 12 (Dkt. 262 at 8-9) now before the Court, Defendants ask for a subset of the documents sought nineteen months ago. The answer given by the United States more than a year ago still stands.

In a footnote, Defendants admit the *ultimate goal* of the instant motion to compel is to *revisit* Interrogatories 5-7 and RFPs 4-6. Dkt. 262 at 18, fn. 2. Defendants make no bones about it – discovery matters subject to robust conferences, modifications and compromises were then brought to the Court in last year's motion to compel. The Magistrate roundly rejected the relevance of this discovery (now raised again in Defendants' current brief), and the Court affirmed the Magistrate's Order. Defendants moved for reconsideration, and, again, the Court affirmed the decision. Defendants are purposefully seeking discovery on grounds repeatedly considered and rejected to bring the dispute to the Court for an unbelievable fourth bite at the apple.

Defendants have already unnecessarily and unfairly consumed the limited resources of the Court and the plaintiffs on this issue. Defendants required re-meet and re-confer regarding the exact same Interrogatories (5-7) and RFPs (4-6) that were previously the subject of months of discussion in 2020, a Motion to Compel in 2020, and Judge Jayne's January 2021 Order. During the renewed August 13, 2021, meet and confer, when confronted with this fact, Defendants' counsel simply stated that they would be happy to consider any case law the United States wished to bring to their attention that held that a party cannot re-visit a year-old, previously adjudicated discovery issue. For this reason alone, Defendants' motion should be denied.

Likewise, Enel Kansas Interrogatory 23 (Dkt. 262 at 10) and RFP 16 (*Id.* at 11) ask for a class of leases from 2000 to the present, issued pursuant to 25 C.F.R. § 214. Defendants previously asked for **all** Part 214 leases. *See* Exhibit 5 at 3 (Plaintiff United States of America's March 6, 2020, First Supplemental Responses to Defendant, Osage Wind, LLCs' First Set of Interrogatories and Requests for Production at Interrogatory 8: "List all leases, permits, or any other authorization issued to any surface right owner or lessee in Osage County under 25 CFR Part 214."). The United States then produced all Part 214 leases, under a more reasonable time limit. *Id.* at 4. The United States most recently supplemented its responses on August 17, 2021, to ensure Defendants have all new Part 214 leases issued in Osage County. The universe of Part 214 leases is now less than 20.

Defendants never requested a meet and confer regarding this item in 2020. The current discovery iteration asks for leases related to construction, but Defendants

have *all* Part 214 leases since January 1, 2010. It is unclear what is the true purpose behind the recently issued duplicative discovery, discovery-related correspondence, meet and confer, and, now, the instant motion to compel.

This Court has recognized that "[a]lthough Fed. R. Civ. P. 37 does not specify any time limit within which a Motion to Compel must be brought, courts have made it clear that a party seeking to compel discovery must do so in timely fashion." *Cont'l Indus., Inc. v. Integrated Logistics Sols., LLC.*, 211 F.R.D. 442, 444 (N.D. Okla. 2002) (citations omitted). Defendants were aware a year ago of the United States' position regarding this discovery. Trying to rebirth the same requests and interrogatories to avoid the argument that the motion to compel is stale, is improper.[2] At the close of discovery, when the parties should be focusing on dispositive motions, Defendants are intent on re-raising previously adjudicated disputes to waste time.

## B. As Defendants well know, the United States has produced broad discovery in response to Defendants' many discovery requests.

Defendants' claim that the United States tried "to broadly curtail discovery" is false. Dkt. 262 at 14. Only a few questions in one response are now at issue.

---

[2] In some instances, Courts have found a party's tactics should be addressed with sanctions. "Discovery-related sanctions are generally permissible to protect the integrity of the judicial process." *Freddie v. Marten Transport, Ltd.*, 428 F. App'x 801, 803 (10th Cir. 2011) (citing *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995)); *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015) ("A court's inherent power gives it the authority to impose 'a sanction for abuse of the judicial process, or, in other words, for bad faith conduct in litigation.'") (quoting *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015)). Sanctions are imposed by considering a totality of the circumstances. *See Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1182 (10th Cir. 1999); *Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 139 (10th Cir. 1994).

Defendants know the United States has provided discovery responses over 10 times, including thousands of pages of documents. Unable to receive full discovery from Defendants, the United States served several third-party subpoenas and turned over the *hundreds of thousands* of pages received to Defendants and the OMC. Defendants have also deposed the Osage Agency Superintendent (as the United States' 30(b)(6) representative), the former Deputy Superintendent, a former Petroleum Engineer Technician and the Bureau of Indian Affairs' Regional Director.

### C. Defendants' have persistently and willfully ignored the impact of the Court's rulings, which directly address the discovery here.

This Court has previously summarized the law of this case: "In a September 18, 2017 Decision, the Tenth Circuit [] held that, pursuant to 25 C.F.R. § 214, defendants' 'extraction, sorting, crushing, and use of minerals as part of its excavation work constituted 'mineral development,' thereby requiring a federally approved lease which Osage Wind failed to obtain." Dkt. 207 at 2 (quoting Dkt. 78 at 3). Granting the OMC's Motion for Judgment on the Pleadings, the Court found that (1) the United States, serving as an Indian tribe trustee, is not subject to defenses such as laches, estoppel and waiver and (2) Indian land claims are not subject to "affirmative defenses" such as waiver and unclean hands. Dkt. 207 at 5-6.

The reason why these defenses are ineffectual is vital. As the Court noted, Congress, more than 100 years ago, reserved the minerals in the Osage Mineral Estate (OME) for the Osage Nation and provided that the OME was inalienable, save for leases approved by the Secretary of Interior. *Id*. at 7. Citing the Tenth Circuit

7

discussion, this Court found that "Osage Wind's excavation work required it 'to secure a federally approved lease from OMC under § 214.7.' *Osage Wind, LLC*, 871 F.3d at 1092. Permitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy." *Id.* at 7-8. And, as this Court recently affirmed, "federal law expresses a strong interest in the vindication of Indian land claims." Dkt. 264 at 20.

Further, as noted, Defendants' previously motion to compel was based on requested production of (1) "all correspondence between [the United States] and/or the Bureau of Indian Affairs and the [OMC] regarding the wind farm" and (2) "all correspondence between [the United States] and/or the Bureau of Indian Affairs and the Osage Nation regarding the wind farm[.]" Dkt. 177 at 16-17. Judge Jayne – specifically considering these broad requests for communications between the plaintiffs – held that "*the requested discovery of the United States and OMC's communications is not relevant to the remaining issues*." Dkt. 210 at 22 (emphasis added). In their appeal of the order, Defendants fully acknowledged the Magistrate's bounds of relevancy when they summarized her holding as a conclusion that "any communications made prior to the determination of whether a permanent injunction or ejectment are not relevant[.]" Dkt. 218 at 10. This Court upheld this holding on the motion to compel. Dkt. 226. More recently, the Court declined Defendants' invitation to reconsider that position. Dkt. 264. Still, Defendants admit they designed the instant Motion to Compel as a litigation tactic to revisit the same discovery requests already ruled on (and re-affirmed) by this Court. Dkt. 262 at 18, fn. 2.

Defendants contend that the Fed. R. Civ. P. 26(b)(1) rule regarding relevancy governs, unaffected by this Court's orders, and that liberal discovery should be allowed. Dkt. 262 at 14. The Supreme Court says otherwise: "[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken[.]" *Oppenheimer Fund, Inc. v. Sanders*, 98 S.Ct. 2380, 2390 (1978). In other words, where the Court has spoken as to the contours of a claim or the viability of a defense, the parties are bound to conform their conduct to the Court's orders.

In this case, both the Tenth Circuit and this Court have held that, pursuant to 25 C.F.R. § 214, "defendants' 'extraction, sorting, crushing, and use of minerals as part of its excavation work constituted 'mineral development''" and that Defendants were required to secure a federally approved lease, which they have not obtained. Dkt. 207 at 2. In addition, this Court has held that:

- Defendants' alleged bad faith remains at issue in this lawsuit to the extent tied to Osage Wind's alleged status as an "innocent trespasser" (Dkt. 171 at 3)
- Defendants may not avoid the stringent leasing requirements by pointing to conduct of the plaintiffs because that would frustrate Congressional will and federal Indian land policy (Dkt. 207 at 7-8)
- the Tenth Circuit and case law foreclose delay-based defenses (*Id.* at 4-7)
- affirmative defenses, e.g. waiver or unclean hands, are generally inapplicable to Indian land claims and specifically do not apply here to any issue, including damages (*Id.* at 5-8)
- relevant inquiry in this case does not extend to communications showing the plaintiffs' knowledge of potential claims prior to this litigation (Dkt. 226 at 12)
- given the strong Indian land policy, the plaintiffs' communications are not relevant to the remaining issues (Dkt. 210 at 22-23)

These holdings are not hard to understand or advisory; the parties must adhere to the contours of relevant inquiry hewn by the Court. Despite these clear parameters,

Defendants have consistently sought information well beyond the bounds of relevancy long established by the Court. Defendants' instant motion only slightly disguises the real aim of discovery: revival of some sort of unclean hands defense.

For instance, Enel Kansas RFP 24 (Dkt. 262 at 13) seeks correspondence between the United States Attorney's Office (or BIA) and the OMC (or Osage Nation) regarding this case. Besides the fact that Defendants sought the same information early in litigation, the request is improper because it seeks irrelevant information, as determined by the Court months ago. RFP 24 clearly seeks communication between the plaintiffs. If "communications between and among the United States and OMC and/or the Osage Nation related to the Project" are not relevant, as held by the Court (Dkt. 210 at 21), that reasoning extends to the "correspondence" sought by RFP 24. The same is true of the "communications" between the United States Attorney's Office (or the BIA) and the OMC (or the Osage Nation) sought to be identified in Enel Kansas's Interrogatory 21. Dkt. 262 at 9.

Moreover, as noted, the Court has held that waiver or estoppel defenses will not apply in this matter and that Defendants cannot point to the conduct of the United States to escape the stringent leasing requirements. No matter what, a lease is required. *See* Dkt. 207. Still, Defendants want to discover conduct in unrelated matters in Interrogatories 11-12 (all instances where the United States asserted some other party mined without a lease); Interrogatory 24 and RFPs 17, 22 (all inquiries received regarding "road or building" construction); and RFP 21 (inquiries and requests for wind, solar, battery or other renewable energy leases). Dkt. 262 at 4-5, 7-

8. Defendants want to know how the United States (and OMC) conducted itself with respect to other types of projects, other potential leases and other scofflaws. As to the measure of damages – the last remaining issue here – these items are irrelevant.[3]

### D. The Court should be particularly disturbed that Defendants misconstrue the very limited relevance of the "innocent trespasser" issue.

Defendants now contend that discovery as to information, communications and documents not known to them during the critical period (and to this day), "may be material to whether Defendants' actions were taken in good or in bad faith." Dkt. 262 at 18. Notably, Defendants are, yet again, urging the Court's consideration of a barred defense and do not confine the inquiry to the narrow innocent trespass test.

Indeed, at the outset of their motion, Defendants state they are asking the Court to determine whether they may have discovery to present "a *full defense* to the remedial claims asserted in this case." Dkt. 262 at 14 (emphasis added). The firm answer should be – for a third time – "No." When Defendants claim their discovery requests are relevant "*to the United States' claims and Defendants' defenses to them*," (*Id.* at 19, emphasis added) the Court should soundly reject the notion that Defendants' good faith has any bearing on the viability of the United States' "claims."

---

[3] Clearly, Defendants want to compare their unsanctioned project to other mining or road, building or solar project construction carried out without a lease. Any such other parties and business conducted before the Osage Agency was unknown to Defendants and so would be irrelevant to their state of mind – i.e. good or bad faith. Comparing treatment of other lessees, potential lessees (Interrogatory 24; RFPs 17, 21, 22) or scofflaws (Interrogatories 11-12) in Osage County can only be in the context of urging some sort of estoppel or waiver. The Court has made clear that Defendants were required to get a lease and that the United States' "conduct" is irrelevant to this litigation. Dkt. 207. Estoppel and waiver defenses cannot apply in this Indian land claim.

First, it is important to note that the good faith of the trespasser (here, Defendants) is relevant only to the issue of "innocent trespass" and the measure of damages, as this Court has made very clear:

> The **measure** of damages for the trespass claim included in the First Amended Complaint necessarily **requires consideration of defendants' alleged knowledge or "bad faith."** *See* [Doc. 20]; *see also Dilworth v. Fortier*, 405 P.2d 38, 45 (Okla. 1964). Moreover, the United States preserved the issue of whether Osage Wind qualified as an **"innocent trespasser" by alleging that "[d]efendants knew or should have known** that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214." [Doc. 20, ¶¶ 49, 56, 63].

Dkt. 171 at 3 (emphasis added).

This Court has not sanctioned any sort of "defense" based on the parties' relative good or bad faith. When Defendants state this motion to compel concerns evidence relevant "to the United States' claims and Defendants' defenses to them," (Dkt. 262 at 19), they underhandedly (and wrongly) seek to broaden the remaining issues in this case. But the Court has been clear that the relative state of the parties' good or bad faith ("unclean hands") is not a subject of inquiry. Dkt. 207 at 6.[4]

In fact, the very case cited by the Court (Dkt. 171 at 3) explains the inquiry relevant to the so-called innocent trespasser:

> Good faith, *as the term is used in the rule of law that a trespasser on the land of another who takes property therefrom shall be liable only for the actual damages if the property taken was taken in good faith*, means that the taking is without

---

[4] This Court has held: "As recognized by the Tenth Circuit, Osage Wind's excavation work required it 'to secure a federally approved lease from OMC under § 214.7.' *Osage Wind, LLC*, 871 F.3d at 1092. Permitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy." Dkt. 207 at 7-8.

culpable negligence or a willful disregard of the rights of others and in the honest and reasonable belief that it was rightful.

*Dilworth v. Fortier,* 405 P.2d 38, 46 (Okla. 1964) (emphasis added). Good faith is only relevant to determine if the trespasser may deduct certain costs.[5] Good faith, in this context, is no defense to trespass. This Court has repeatedly reminded the parties of the "strong interest in the vindication of Indian land claims." Dkt. 264 at 20.

### E. The information sought by Defendants is not relevant to any remaining issue in the limited remand from the Tenth Circuit.

Regarding the limited inquiry of "innocent trespass," the test, as one may expect, centers on *the trespasser's state of mind*. Almost by definition, the *only* relevant evidence to this inquiry is what was in *Defendants' state of knowledge and what Defendant did to educate himself*. In *Dilworth*, an oil and gas lessee's title stemmed from a tax sale, which turned out not to include mineral rights. The oil and gas operator's actions and knowledge, including advice of counsel obtained by the operator, were the subject of the Court's scrutiny. The Court confined its discussion to what the lessee knew and when he knew it. The trespass victim's theories, or actions taken to address *other* trespasses, were beside the point and not discussed. *Dilworth,* 405 P.2d 38.

Later, *Edwards v. Lachman*, 534 P.2d 670, 673 (Okla. 1974), paraphrased *Dilworth*, stating that "bad faith" would be constituted by "fraud, malice or oppression" or that the trespasser's actions must be "the result of gross negligence – such disregard of another's rights – as is deemed equivalent of such intent." In *Lachman*, much like the

---

[5] However, proof of Defendants' bad faith may be used to multiply the amount of actual damages ultimately awarded.

First Amended Complaint in this matter, the plaintiffs placed "defendants' 'good faith' in issue" by alleging "defendants knew or should have known" that a well being drilled was in trespass. *Id.* The Court specifically found that proof of bad faith would involve the *trespasser's* actions and intent. In fact, the Court scrupulously confined its inquiry to what the intruders knew: they may have been in "good faith," before a directional survey was run, but they were certainly not in "good faith" "after they acquired knowledge" by a directional survey. *Id.* at 677. The *landowner's* unspoken advice or position on other intrusions or leases just was not relevant. What information or documents a good faith inquiry *might* have uncovered here if Defendants had asked (but did not) in 2014, is plainly not relevant.

Defendants also allege the Court must allow evidence about "what was knowable" near the end of 2014, when Defendants were excavating. Dkt. 262 at 19. Defendants contend that "if 25 C.F.R. Part 214 leases were never issued, requested, or sought for construction projects similar to the Project, that would lend credence to Defendants' argument that they believed in good faith that they did not need to obtain a lease." *Id*. Defendants fail to explain how something they did not know in 2014 "would lend credence" to their argument that they "*believed* in good faith that *they did not need to obtain a lease*." *Id*. There *were* other leases issued under 25 C.F.R. § 214 in late 2014, but that fact does not establish bad faith (or good faith) for Defendants. The existence (or nonexistence) of those leases with other parties – then unknown to Defendants – is irrelevant. Information and evidence obtained in 2021 cannot bolster or destroy a belief Defendants contend they *actually held* in 2014.

14

Of course, Defendants' argument here sounds just like an argument for unclean hands, waiver or estoppel. Defendants contend that if they can only bring to light other trespassers who did not obtain a lease, it would absolve them. Dkt. 262 at 19 (if Part 214 leases "were never issued, requested, or sought" for "similar" Osage County projects, it would "lend credence" to Defendants' "good faith"). Further, they contend that if they can examine the good or bad faith of the United States, it would bear upon their own good or bad faith. *Id*. (contending that the notice "or lack thereof" received from the United States regarding Part 214 leases is relevant). This Court, as the United States has repeatedly reminded Defendants, clearly held that they may not avoid "these stringent leasing requirements" by pointing to the plaintiffs' conduct because that would frustrate Congressional will and federal Indian land policy. Dkt. 207 at 7-8. Yet, that is precisely what they – once again – propose.

### F. Defendants have conceded that the relevant inquiry here is subjective, not objective.

Defendants already explained their basis for contending they proceeded in good faith, when Defendants' counsel explained:

> We're different here, Your Honor, in that we're not relying on a privileged and confidential discussion. It is more so, Your Honor, that we articulated a position in this memorandum that was shared and has been in the court record for a number of years and that there wasn't – *that that was the only document prior to the suit being filed that set out a [sic] analysis of the issues that – and it wasn't timely responded to. It's that situation, Your Honor, that forms the basis of our good faith defense* and not, "My lawyer told me in confidence that I could do this." That's a distinction and an important one.

15

Dkt. 210 at 7 (emphasis added). Based upon counsel's representation, the Court held that Defendants' contentions were based "entirely on their *subjective* belief in the 'legality' of their conduct." *Id*. at 11 (emphasis added). Once again, the relevant issue is not an objective measure of good faith, but a subjective one. The relevant knowledge and conduct was captured in 2014, when Defendants violently trespassed and disrupted massive amounts of the OME.[6] And, as outlined above, there is no defense to the action of trespass, continuing trespass or conversion – only the relevant inquiry of a damages offset that may be given to the "innocent trespasser."

Defendants complain they have been subjected to discovery regarding what they "knew or should have known" and want to discover what the plaintiffs knew or should have known at a certain time. Dkt. 262 at 20. But, of course, Defendants have properly been subjected to discovery that goes to their *subjective* good or bad faith – exactly as they admitted was a relevant issue. Dkt. 210 at 6-10.

Now, they contend their knowledge could be discovered by inspecting the United States' conduct, communication and activities unrelated to and unknown by any defendant here. If the United States communicated with other entities regarding Part 214 leases in 2014, unbeknownst to Defendants, it would have no possible relevance to the issue at hand – the "innocent" trespasser doctrine as it relates to damages

---

[6] Indeed, Defendants are free to try to make the case that their knowledge was scanty and their inquiry reasonable. The United States Department of the Interior's position, however, was clearly known. *See* Exhibit 6, Oct. 9, 2014, Letter from Superintendent Phillips. This is the type of information that will go to Defendants' status as "innocent trespasser[s]" – what information they *actually* knew and the inquiry they *actually* undertook.

owed to the OMC. If, unknown to Defendants, no enforcement action was brought against other trespassers, it would be irrelevant to the "innocent" trespasser doctrine.

The Court has clearly determined that the relevant inquiry in this case does not extend to communications illustrating the United States and OMC's knowledge of potential claims prior to this litigation. Dkt. 226 at 12. If the United States' knowledge of potential claims against Defendants is not relevant (for the reasons set out by the Court), the United States' knowledge of potential (or actual claims) against other entities is certainly not relevant.

Finally, the First Amended Complaint allegation is not as Defendants portray it. The United States alleged that "Defendants knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214." Dkt. 20 at 10-12. Defendants place undue emphasis on the words "should have known" and contend they must be armed with the universe of knowledge that existed in 2014 to answer this allegation. The concept of constructive knowledge is common in land dispute issues and is not nearly so complex as Defendants' claim.

Under Oklahoma law, "[c]onstructive notice is notice imputed by the law to a person not having actual notice." *In re A.C. Rentals, Inc.*, 310 B.R. 663, 2004 WL 1182254, at *3 (Bankr. App. 10th Cir. May 28, 2004) (internal citation omitted). The Tenth Circuit further explained that a "person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice" of the fact. *Id.* "[C]onstructive notice exists under Oklahoma

17

law when a reasonably prudent person would inquire into the rights of others in property." *Id*.

Defendants cite no case law requiring vast discovery into what may have happened if "a reasonably prudent person" had talked to a certain person or if the "reasonably prudent person" had undertaken complete inquiry as to other trespassers, other lessees, or the way trespass is often dealt with. The regulations are public record as is the fact that all minerals in Osage County are perpetually reserved for the benefit of the Osage headright holders. Without a doubt, the United States made their position known, and whether Defendants acted as a "reasonably prudent person" will be determined by this Court. *See* Exhibit 6.

Often, one party contends the other "should have known" of a claim or deed if it was discoverable in the exercise of ordinary diligence. *Inv. Co. of S.W., Inc. v. United States*, No. 10-CV-587, 2010 WL 11618916, at *5 (D. N.M. Dec. 13, 2010) (examining the "reasonable title search" conducted by the party). A party may also contend a landowner "knew or should have known" about a danger on his property. *Estrada v. Texas Roadhouse Holdings, LLC*, No. 18-CV-02937, 2020 WL 869857, at *3 (D. Colo. Feb. 21, 2020) ("Constructive knowledge is the knowledge that one exercising reasonable diligence should have.").

In other words, it is the reasonableness of Defendants' inquiry and search that is at issue, not the position or information held by the United States, but unknown by Defendants. Courts do not engage in "what-if" speculation, such as Defendants' propose. Defendants propose to reconstruct what would likely have been the result if

18

they had asked for certain information. But, not having obtained that information in 2014, it can hardly be relevant to the limited issue of "innocent trespass."

For the foregoing reasons, the United States respectfully requests that the Court deny Defendants' Second Motion to Compel Against the United States (Dkt. 262) in its entirety.

Respectfully submitted,

United States of America

Clinton J. Johnson
Acting United States Attorney

s/Cathryn D. McClanahan
Cathryn D. McClanahan, OBA No. 14853
Nolan M. Fields IV, OBA No. 31550
Assistant United States Attorneys
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
T: 918-382-2700
cathy.mcclanahan@usdoj.gov
nolan.fields@usdoj.gov

Stuart P. Ashworth, OBA #31468
Special Assistant United States Attorney
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor's Office
7906 East 33rd Street, Suite 100
Tulsa, Oklahoma 74145
T: 918-669-7905
stuart.ashworth@sol.doi.gov

Of Counsel:
Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor's Office
7906 East 33rd Street
Tulsa, Oklahoma 74145
T: 918-669-7902
[charles.babst@sol.doi.gov](mailto:charles.babst@sol.doi.gov)