# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| (2) OSAGE MINERALS COUNCIL, | ) | Case No. l4-CV-704-GKF-JFJ |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (1) OSAGE WIND, LLC; | ) | |
| (2) ENEL KANSAS, LLC; and | ) | |
| (3) ENEL GREEN POWER | ) | |
| NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## INTERVENOR-PLAINTIFF OSAGE MINERALS COUNCIL'S
## BRIEF IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO COMPEL
## AGAINST THE OSAGE MINERALS COUNCIL

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION .......................................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND ........................................................1

    a.  The OMC's Complaint in Intervention and the Court's July 1, 2020 Opinion and Order..2

    b.  The Court's January 11, 2021 Opinion and Order ("Affirmative Defenses Order") ..........3

    c.  The Court's May 21, 2021 Opinion and Order ("Objections Order")................................4

    d.  Defendants' Motion for Reconsideration and the Court's August 25, 2021 Opinion and Order........................................................................................................................6

STANDARD OF REVIEW ............................................................................................8

ARGUMENT...............................................................................................................9

    a.  The Discovery Defendants Seek Bears No Relevance to Their "Good Faith" Defense .....9

    b.  Defendants Are, Once Again, Attempting to Re-litigate Issues They Have Already Lost ...............................................................................................................................14

    c.  Discovery And Relevance Is Broad—But That Does Not Permit Defendants to Dip Into Discovery That This Court Has Previously Denied ........................................................18

    d.  The Deposition Discovery Taken of Defendants Does Not Entitle Defendants to Take Discovery This Court Has Declared Irrelevant ..............................................................20

    e.  The OMC Has More Than Satisfied Its Discovery Obligations........................................23

CONCLUSION ..........................................................................................................25

TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alaska Place Co. v. Lee*
 553 P.2d 54 (Alaska 1976) ............................................................................11

*Bailey v. Texas Pacific Coal & Oil Co.*
 32 P.2d 709 (Okla. 1934)...............................................................................10

*Barton v. Tomacek*
 No. 11-CV-0619-CVE-TLW, 2012 WL 4735927 (N.D. Okla. Oct. 3, 2012)....................9

*Champlin Refining Co. v. Aladdin Petroleum Corp.*
 238 P.2d 827 (Okla. 1951)...............................................................................10

*Chinowth & Cohen v. Cornerstone Home Lending*
 No. 15-CV-555-JED-PJC, 2016 U.S. Dist. LEXIS 200537 (N.D. Okla. Aug. 5, 2016).............................................................................................................8

*City of Sherrill v. Oneida Indian Nation of New York*
 544 U.S. 197 (2005) ........................................................................................7

*Davilla v. Enable Midstream Partners L.P.*
 913 F.3d 959 (10th Cir. 2019) .........................................3–4, 6–ß7, 10, 15, 19

*Delta Drilling Co. v. Arnett*
 186 F.2d 481 (6th Cir. 1950) ...........................................................................11

*Dilworth v. Fortier*
 1964 OK 112, 405 P.2d 38 (1964).............................................................10, 21

*eBay Inc. v. MercExchange, L.L.C.*
 547 U.S. 388 (2006) ........................................................................................6

*Edwards v. Lachman*
 1974 OK 58, 534 P.2d 670 (Okla. 1974)..........................................................10

*FragranceNet.com, Inc. v. FragranceX.com, Inc.*
 No. CV062225JFBAKT, 2007 WL 9710244 (E.D.N.Y. Aug. 28, 2007) ........................23

*In re Cooper Tire & Rubber Co.*
 568 F.3d 1180 (10th Cir. 2009) .......................................................................19

*Jicarilla Apache Tribe v. Andrus*
 687 F.2d 1324 (10th Cir. 1982) ........................................................................4

*Johnson v. Kraft Foods N. Am., Inc.*
    238 F.R.D. 648 (D. Kan. 2006) ........................................................25

*Koch v. Koch Indus., Inc.*
    203 F.3d 1202 (10th Cir. 2000) ........................................................8

*Kunneman Props. LLC v. Marathon Oil Co.*
    No. 17-CV-456-GKF-JFJ, 2019 WL 5188355 (N.D. Okla. Oct. 15, 2019)......................8

*Miller v. Tidal Oil Co.*
    17 P. 2d 967 (Okla. 1933)..............................................................10

*Murphy v. Deloitte & Touche Grp. Ins. Plan*
    619 F.3d 1151 (10th Cir. 2010) ........................................................18

*Oneida Indian Nation of N.Y. v. New York*
    691 F.2d 1070 (2d Cir. 1982) ..........................................................4

*Oppenheimer Fund, Inc. v. Sanders*
    437 U.S. 340 (1978) ................................................................18, 20

*Reibert v. CSAA Fire & Cas. Ins. Co*
    17-CV-350-CVE-JFJ, 2018 WL 279348 (N.D. Okla. Jan. 3, 2018) ...........................8

*Sapulpa Petroleum Co. v. McCray*
    277 P. 589 (Okla. 1929)...........................................................10, 12

*SEC v. Melchior*
    No. 90–C–1024J, 1993 WL 89141 (D. Utah 1993)..........................................11

*Smith v. St. Paul Fire and Marine Ins. Co.*
    905 F. Supp. 909 (D. Kans. 1995) .....................................................11

*Tottenham v. Trans World Gaming Corp.*
    No. CIV 00-7697 WK, 2002 WL 1967923 (S.D.N.Y. June 21, 2002) ..........................8

*United States v. Gentry*
    119 F. 70 (8th Cir. 1902) ............................................................12

*United States v. Gonzalez*
    58 F.3d 506 (10th Cir. 1995) .........................................................11

*United States v. Osage Wind, LLC*
    871 F.3d 1078 (10th Cir. 2017) ...........................................16–17, 19, 21, 25

*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*
    No. 05-2192-JWL-DJW, 2007 WL 1531846 (D. Kans. 2007) ...................................22–23

*United States v. Trujillo,*
    853 F.2d 800, 804 (10th Cir. 1988) ...................................................................................10

*White v. Conoco, Inc.*
    710 F.2d 1442 (10th Cir. 1983) ........................................................................................10

*Witt v. GC Services LP*
    307 F.R.D. 554, 559 (D. Colo. 2014) ...............................................................................20

## Court Rules

Fed. R. Civ. P. 26................................................................................................................8

Fed. R. Civ. P. 26(b)(1) ...............................................................................................8, 18

Fed. R. Civ. P. 26(b)(2)(C)(i) ...........................................................................................25

## I.   INTRODUCTION

Intervenor-Plaintiff Osage Minerals Council ("OMC") jointly files this brief in opposition to Defendants Osage Wind, LLC; Enel Kansas, LLC; and Enel Green Power North America, Inc.'s (collectively, "Defendants") Second Motion to Compel Against the Osage Minerals Council, Dkt. 261 ("Motion"). Once again, Defendants ask this Court to ignore the decisions of the Tenth Circuit and this Court and seek to relitigate issues that the courts have already deemed irrelevant to this case. The discovery Defendants seek in their Motion is not relevant to either the weighing of the equities analysis under *Davilla* or a calculation of monetary damages. Throughout this litigation, Defendants have repeatedly asserted they are not liable for their trespass on the Osage Mineral Estate because they acted in good faith and relied on the advice of their counsel. Now, in an attempt to obtain discovery from the OMC that has nothing to do with this affirmative defense, they assert that this is not an affirmative defense brought by Defendants, but is instead, some sort of affirmative allegation brought by the OMC in its Amended Complaint. This is absurd. As Defendants well know, all of the OMC's allegations that Defendants acted in bad faith were stricken from the OMC's Complaint—at Defendants' request—over a year ago. The only reason Defendants' "good" or "bad" faith remains on trial is that Defendants continue to insist they are not liable because they acted in good faith reliance on the advice of their counsel that they could mine the Osage Mineral Estate without a mining permit. And whether or not Defendants truly believed this legal advice, in good faith, is determined by Defendants' state of mind—not the OMC's. Defendants' attempt to twist their own affirmative defense into some sort of OMC allegation that justifies discovery of the OMC's past conduct fails, and Defendants' Motion should be denied.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### a. The OMC's Complaint in Intervention and the Court's July 1, 2020 and July 15, 2020 Opinions and Orders

The OMC's Complaint in Intervention (filed April 15, 2020) contained allegations that Defendants "willfully and intentionally, and in bad faith, enter[ed] and disrupt[ed] the Osage Mineral Estate, despite clear orders to cease activities until an appropriate permit or lease was approved by the OMC and BIA," warranting injunctive and legal relief. Dkt. 140, 21. Defendants then filed a partial motion to dismiss the OMC's Complaint in Intervention (Dkt. 150), and a motion to strike certain allegations in the Complaint in Intervention (Dkt. 151). In its July 1, 2020 Opinion and Order, the Court granted in part Defendants' Motion to Dismiss, dismissing all of the OMC's allegations and claims related to Defendants' bad faith, as well as certain forms of relief. Specifically, the Court noted that it would "restrict[] OMC's remedies to those sought by the United States in the First Amended Complaint. . . ." Dkt 161, 15. The Court also granted in part Defendants' Motion to Strike, striking the OMC's allegations of "bad faith conduct" from the OMC's Complaint in Intervention. Dkt. 162, 4-5.

Although the OMC's allegations that Defendants acted intentionally, with bad faith, have been dismissed from this action, whether Defendants acted in good or bad faith remains a relevant inquiry in this case. Following the Court's decision to strike the OMC's allegations of "bad faith" from the Complaint in Intervention, in its July 15, 2020 Order, the Court held that "Defendants' alleged bad faith remains at issue in this lawsuit *to the extent tied to Osage Wind's alleged status as an '"innocent trespasser.'"* Dkt. 171, 3 (emphasis added). This is because, in their Answer to the OMC's Amended Complaint in Intervention, Defendants asserted numerous affirmative defenses, including an affirmative defense that Defendants "believed in good faith that [their] conduct was not illegal and there was not clear law to the contrary prior to the Tenth Circuit's decision in this case." Dkt 174, 16. Furthermore, Defendants have repeatedly argued

that their "good faith" defense stems from reliance on a legal memorandum authored by Modrall Sperling. *See, e.g.,* Dkt. 28, 19-20 (asserting that "Osage Wind is not at fault," in part, because "Osage Wind [had] provided [a] detailed legal memorandum articulating why it concluded no lease or permit is required . . ."); Dkt. 116, 11 (asserting that "Osage Wind believed, in good faith, based upon a detailed legal analysis, that neither a lease nor permit were required. . . ."); Dkt. 150, 10-11 ("Osage Wind believed, in good faith, based upon a detailed legal analysis, that neither a lease nor a permit were required.").

### b.  The Court's January 11, 2021 Opinion and Order ("Affirmative Defenses Order")

On January 11, 2021, this Court granted the OMC's Motion for Judgment on the Pleadings. *See* Dkt. 219. In granting the OMC's Motion, the Court ruled that, as a matter of law, Defendants could not raise certain affirmative defenses against Plaintiffs' claims that Defendants trespassed on the Osage Mineral Estate when they illegally mined the Estate without the required lease. *See generally* Dkt. 219. As a result, Defendants' affirmative defenses of estoppel, laches, waiver, unclean hands, and *in pari delicto* have been dismissed. *See id.* at 11.

In granting the OMC's Motion for Judgment on the Pleadings, the Court's Affirmative Defenses Order held the "OMC [was] entitled to judgement on the pleadings *as to laches*," adopting the Tenth Circuit's view "that the United States commenced this action within a reasonable time and therefore declined to dispose of this action based on laches." *Id.* at 4-5 (emphasis added). With regards to the remaining affirmative defenses of estoppel, waiver, unclean hands, and *in pari delicto*, the Court looked to the Tenth Circuit's decision in *Davilla v. Enable Midstream Partners L.P.*, and held that "[p]ermitting third-parties to avoid [] stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy," since it was "Congress [that] dictated the prerequisites" for mining the Osage Mineral

Estate. *Id.* at 7–8; *see Davilla*, 913 F.3d 959, 967-68 (10th Cir. 2019). Accordingly, under the Tenth Circuit's analysis in *Davilla*, Defendants' delay-based affirmative defenses could not be asserted against the OMC's claims that Defendants trespassed on the Osage Mineral Estate. *See id*; *see also id.* at 5 (noting that "courts have consistently recognized that tribes, as well as the United States while acting as a trustee on behalf of Indian tribes, are not subject to 'state delay-based defenses.'") (quoting *Oneida Indian Nation of N.Y. v. New York*, 691 F.2d 1070, 1084 (2d Cir. 1982)).

Finally, this Court rejected Defendants' argument that their state-based affirmative defenses were also viable under federal law pursuant to the Tenth Circuit's decision in *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982). Dkt. 219, 10-11.

### c. The Court's May 21, 2021 Opinion and Order ("Objections Order")

Following this Court's January 11, 2021 decision, the Magistrate Judge issued rulings on four separate motions to compel. *See* Dkt. 210. On January 16, 2021, the Magistrate Judge issued an Order granting Plaintiffs' motions to compel Defendants' production of documents related to the "detailed legal analysis" that Defendants had put at issue by arguing that Defendants' trespass on the Osage Mineral Estate was committed in good faith reliance on a particular "detailed legal analysis" generated by Defendants' counsel. *See* Dkt. 175; Dkt. 183. The Magistrate Judge concluded that "Defendants have injected the 'detailed legal analysis,' as a whole, into the litigation for the factfinder's consideration by relying on the attorneys' conclusions and analysis to prove an innocent state of mind," Dkt. 210, 13, and as a result, the Magistrate Judge ordered production of documents concerning the same. *See id.* at 25–26.

In the same Order, the Magistrate Judge denied Defendants' motions to compel Plaintiffs' production of documents that Defendants claimed were relevant to their affirmative

defenses of estoppel, laches, waiver, etc. *See* Dkt. 177; Dkt. 179. Specifically, Defendants sought the production of internal communications from the OMC and United States from 2011 to 2014 for the purpose of demonstrating that both had failed to timely notify Defendants of the legal requirement to obtain a lease. *See* Dkt. 177, ¶¶ 23–24; Dkt. 179, 18. Defendants noted they had "asserted the following defenses . . . . [e]stoppel; [l]aches; and [w]aiver" against the United States, *id.* at ¶ 23 (citing Dkt. 99, 12), and explained that "[t]he essential factual basis of these defenses is that . . . . the United States (including, but not limited to, the BIA and Interior) failed to clearly and timely articulate the theories now at issue." *Id.* at ¶ 24.

To analyze Defendants' motions to compel, the Magistrate Judge considered "whether the requested discovery is relevant to the potential remedies of ejectment of, and a permanent injunction against, the existence and operation of the Project" under the three-factor *Davilla* test that this Court has indicated governs claims for equitable relief in this case. Dkt. 210, 22. The Magistrate Judge concluded that the requested discovery concerning the United States' and the OMC's past conduct was *not* relevant to the *Davilla* factors, as those factors "focus[] on the present balance of harms to the parties and the public." *Id.* at 23. Accordingly, the Magistrate Judge determined that the backward-looking communications Defendants sought were irrelevant to the issues remaining in the litigation.

On March 8, Defendants filed their Partial Objection to the Magistrate Judge's Discovery Order—and not this Court's January 11, 2021 Affirmative Defenses Order—challenging the portions of the Magistrate Judge's Order that denied discovery of "backward-looking" evidence under the balancing of equities articulated in *Davilla*. Dkt. 218 ("Partial Objection"). The OMC filed a brief in opposition. Dkt. 223.

On May 21, 2021, this Court issued its Opinion and Order rejecting the arguments

Defendants asserted in their Partial Objection to the Magistrate Judge's Discovery Order. Dkt.

226 (the "Objections Order"). First, this Court clarified that Defendants' analysis of *Davilla*

mischaracterized the holding in the case. Dkt. 226, 7. Instead, this Court noted that:

> [T]he Tenth Circuit explicitly required consideration of the following factors in
> cases of continuing trespass to Indian land: (1) whether an injunction is necessary
> to prevent "irreparable harm," (2) whether "the threatened injury outweighs the
> harm that the injunction may cause" to the enjoined party, and (3) whether the
> injunction would "adversely affect the public interest."

*Id.* at 8 (quoting *Davilla,* 913 F.3d at 973). This Court further found that these "factors reflect the

prospective nature of injunctive relief." *Id*. at 8 (citations omitted).

This Court also rejected Defendants' contention that the Magistrate Judge had erred when

she failed to interpret *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), as supporting

Defendants' argument that backward-looking evidence regarding the OMC's and the United

States' alleged delay would be relevant to the balancing of the equities test under *Davilla*.[1]

### d. Defendants' Motion for Reconsideration and the Court's August 25, 2021 Opinion and Order

On June 14, 2021, Defendants, requested this Court to reconsider (Dkt. 229) its order

granting the OMC's Motion for Judgment on the Pleadings (the "Affirmative Defenses Order"),

Dkt. 219, as well as this Court's Opinion and Order that denied Defendants' Objections to the

Magistrate Judge's Opinions and Orders (the "Objections Order"). Dkt. 226. The OMC and the

United States filed motions in opposition. Dkt. 234; Dkt. 235. Defendants then filed replies to

both the OMC and the United States. Dkt. 244; Dkt 245.

---

[1] This Court noted that Defendants' reliance on *eBay* and other patent law cases was misplaced, "as they do not relate to Indian land claims." *Id.* at 9–10.

On August 25, 2021, this Court denied reconsideration, finding Defendants' "motion is little more than a rehash of arguments raised and rejected in prior briefing." Dkt. 264, 12. Defendants had requested that the Court reverse its decision denying Defendants' affirmative defense of laches, and in response, the Court declined to do so, reasoning that the "application of the law of the case doctrine as to the Tenth Circuit's resolution of laches was neither clear error nor manifest injustice."[2] *Id*. at 17. Second, the Court considered Defendants' argument that the Court had interpreted the Tenth Circuit's decision in *Davilla* and concluded that "the court's application of *Davilla* was not a misapprehension of controlling law sufficient to rise to the level of clear error." *Id*. at 21. Third, the Court affirmed its prior Affirmative Defense Order dismissing Defendants' delay based affirmative defenses, concluding that "the Affirmative Defense Order did not err or misconstrue the law in concluding that the affirmative defenses were not properly asserted under the federal courts' traditional equity jurisprudence." *Id*. at 24. Fourth, the Court held Defendants failed to "tie" the "requested discovery . . . . to other remedies, apart from the equitable remedies of injunction and ejectment," including "damages and an accounting," before this Court and the Magistrate Judge. *Id*. at 25. And finally, the Court disposed of Defendants' arguments that the Supreme Court's decision in *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005), somehow requires this Court to reinstate Defendants' dismissed delay-based defenses. Notably, the Court held that:

> Here, the Osage Nation has consistently exercised sovereignty over the Osage Mineral Estate having never lost possession of it. Nor is any asserted delay comparable as Osage Wind alleges a three-year delay in bringing suit, rather than the two-hundred-year delay asserted in *City of Sherrill*. Thus, the Affirmative Defense Order did not err or misconstrue the law in concluding that the affirmative

---

[2] The Court went even further, noting that "although Osage Wind contends that the Tenth Circuit erred in consider[ing] the beginning of turbine excavation as the relevant timeframe for laches, rather than judging the defense from when OMC learned of plans detailing the excavation, defendants raised this issue in their petition for rehearing to the Circuit, which was denied." Dkt. 264, 14.

defenses were not properly asserted under the federal courts' traditional equity jurisprudence.

*Id.* at 23-24.

### III.   STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure permits a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 provides six proportionality factors for the court to consider:

> (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Kunneman Props. LLC v. Marathon Oil Co.*, No. 17-CV-456-GKF-JFJ, 2019 WL 5188355, at *2 (N.D. Okla. Oct. 15, 2019) (citing Fed. R. Civ. P. 26). In weighing these factors, courts will not permit a party to engage in a "speculative 'fishing expedition[]'" which ventures far beyond the scope of relevant information. *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 WL 279348, at *4 (N.D. Okla. Jan. 3, 2018) (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000)).

Further, a party is not permitted to "flesh out allegations" through discovery if they do not have "at least a modicum of objective support" for those allegations. *Chinowth & Cohen v. Cornerstone Home Lending*, No. 15-CV-555-JED-PJC, 2016 U.S. Dist. LEXIS 200537, at *1 (N.D. Okla. Aug. 5, 2016) (quoting *Tottenham v. Trans World Gaming Corp.*, No. CIV 00-7697 WK, 2002 WL 1967923, at *2 (S.D.N.Y. June 21, 2002)). Indeed, the fact that a party has a "'broad theory of the case' does not automatically justify broad discovery." *Reibert*, No. 17-CV-

350-CVE-JFJ, at *4 (quoting *Barton v. Tomacek*, No. 11-CV-0619-CVE-TLW, 2012 WL 4735927, at *4 (N.D. Okla. Oct. 3, 2012)). Defendants' Motion to Compel is a fishing expedition for previously dismissed, irrelevant information which is not proportional to the needs of this case. For these reasons, and the reasons described in greater detail below, Defendants' Motion should be dismissed.

## IV.   ARGUMENT
### a.   The Discovery Defendants Seek Bears No Relevance to Their "Good Faith" Defense

Defendants preface their Motion to Compel by stating that the information their Motion seeks is relevant to Defendants' good faith reliance on the advice of counsel affirmative defense, specifically, "whether Osage Wind qualified as an 'innocent trespasser' in its construction and excavation activities for the Osage Wind [] energy project (the 'Project'), including whether Defendants 'knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214.'" Defs.' Mot. 1 (quoting Dkt. 171). Although it is true that the issue of whether Defendants qualify as an "innocent trespasser" remains a live issue in this case, none of the discovery sought in this Motion to Compel is at all relevant to the Court's consideration of whether Defendants qualify as an "innocent trespasser."

The Oklahoma Supreme Court has articulated the standard that applies to determine whether a trespasser did so in "good faith," noting that:

> Good faith, as the term is used in the rule of law that a trespasser on the land of another who takes property therefrom shall be liable only for the actual damages if the property taken was taken in good faith, means that the taking is without culpable negligence or a willful disregard of the rights of others and *in the honest and reasonable belief that it was rightful*. The term has been employed in the authorities on this subject to characterize the acts of one who, while legally a wrongdoer, *acted in the honest belief that his conduct was lawful.*

*Dilworth v. Fortier*, 1964 OK 112, 405 P.2d 38, 46 (emphasis added); *see also White v. Conoco, Inc.*, 710 F.2d 1442, 1448-49 (10th Cir. 1983) (concluding that under Oklahoma law, a good faith trespasser is "one who acts without culpable negligence or willful disregard of the rights of others and in an honest, reasonable belief that his action is proper.").[3] Thus, the factual inquiry the factfinder in this case must undertake is whether Defendants had an "honest" belief that their conduct was lawful. *See id.*

Here, Defendants have repeatedly claimed that their honest, "good faith" belief is based on the advice they received from their counsel; that is, Defendants have asserted that they "believed, in good faith, *based upon a detailed legal analysis*, that a lease or permit were not required." Dkt. 101, 10-11 (emphasis added); *see also* Dkt. 116, 11 (Defendants, again, claiming that Defendants "believed, in good faith, based upon a detailed legal analysis, that neither a lease

---

[3] Defendants' assertion that they constitute a good faith/innocent trespasser is not a defense to liability. Instead, the general rule is that if a defendant acted in good faith, that defendant is entitled to a reduction of damages in an amount equal to the defendant's expenditures in producing the mineral. *See, e.g., Champlin Refining Co. v. Aladdin Petroleum Corp.*, 238 P.2d 827 (Okla. 1951); *Bailey v. Texas Pacific Coal & Oil Co.*, 32 P.2d 709 (Okla. 1934); *Miller v. Tidal Oil Co.*, 17 P. 2d 967 (Okla. 1933); *Sapulpa Petroleum Co. v. McCray*, 277 P. 589 (Okla. 1929). The OMC maintains, however, that even if the factfinder were to conclude that Defendants act in good faith—it is clear they did not, but even then— Defendants are not entitled to such a reduction in damages because the OMC and Osage headright holders have not received any benefit or gain from Defendants' trespass. *Edwards v. Lachman*, 1974 OK 58, 534 P.2d 670, 673 (Okla. 1974) (concluding defendants are not entitled to a reduction in damages where the trespass committed "by defendants conferred no benefits upon plaintiffs or their property."). The OMC also reserves its right to challenge Defendants' reliance on this "good faith" argument to the extent the Oklahoma "good faith" trespasser exception violates *Davilla*'s proscription that state law cannot be incorporated into federal law claims where doing so would violate Congress's policy mandates for the management of the Osage Mineral Estate as an Indian trust asset. *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 967 (10th Cir. 2019) (opining that "even if Oklahoma would say that this evidence could defeat any trespass claim, we would not incorporate such a rule into the Allottees' federal right of action. As we explained above, federal courts should only incorporate state rules of decision into federal claims to the extent those rules are consistent with federal law and policy."); *see also* Dkt. 219, 8 ("Permitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy."); *United States v. Trujillo*, 853 F.2d 800, 804 (10th Cir. 1988) (affirming the district court's order that innocent trespassers must vacate and restore the land and pay nominal damages because "it is the result required by the Pueblo Lands Act and the policy underlying it.").

nor permit were required."); Dkt. 150, 10-11 (Defendants, again, claiming that Defendants are not liable for their unlawful mining because they "believed, in good faith, based upon a detailed legal analysis, that neither a lease nor a permit were required."). Thus, based on Defendants' repeated iterations of their own affirmative defense, it is clear that Defendants' "good faith" defense is, first and foremost, predicated on the allegation that they relied, in good faith, on the advice of their counsel. *See* Dkt. 17, ¶ 17 (asserting an advice of counsel affirmative defense); *see also* Dkt. 210, 10 (concluding that "Defendants placed their counsel's advice directly at issue by relying on a 'detailed legal analysis' of outside counsel to prove their subjective good faith belief in the legality of their conduct.").

Because Defendants themselves predicate their reasonable "good faith" belief on their own reliance on their counsel, the relevant question before the Court, ultimately, is whether their reliance on counsel was itself, in fact, undertaken in "good faith." To reach such a determination, courts will consider and determine the following:

- Whether all of the relevant facts underlying the legal analysis were "fairly submitted to their attorneys" and "completely disclosed." *See, e.g., Delta Drilling Co. v. Arnett*, 186 F.2d 481, 486 (6th Cir. 1950); *United States v. Gonzalez*, 58 F.3d 506, 512 (10th Cir. 1995); *SEC v. Melchior*, No. 90–C–1024J, 1993 WL 89141, at *20 (D. Utah 1993); *Smith v. St. Paul Fire and Marine Ins. Co.*, 905 F. Supp. 909, 920 (D. Kans. 1995).
- Whether the defendant requested advice of counsel on the legality of its proposed action. *Melchior*, 1993 WL 89141 at *20.
- Whether the defendant received "advice from counsel that the action to be taken will be legal." *Id.*
- "[W]hether advice of counsel is being furnished for tactical reasons and whether there has been a good faith reliance on the advice." *Alaska Place Co. v. Lee*, 553 P.2d 54, 59 (Alaska 1976).
- Whether the defendant "had reason to believe [its counsel] was capable of giving competent advice about the case." *Smith*, 905 F. Supp. at 920.
- Whether the defendant "honestly pursued" its counsel's advice. *Id.*

None of Defendants' requested discovery bears any relation to any of these considerations. This is because "[g]ood faith consists in an *honest intention* to abstain from taking any unconscientious advantage of another, even though forms or technicalities of the law, together with an absence of all information or belief of facts which would render the transaction unconscientious." *Sapulpa Petroleum Co. v. McCray*, 1929 OK 129, 277 P. 589, 590 (Okla. 1929) (emphasis added) (citation omitted). Any determination of good faith, or innocent trespasser status, must consider *Defendants'* intent and knowledge at the time the decision was made to engage in their unlawful conduct—not Plaintiffs'. And certainly not the actions of third parties not before the Court.

Thus, whether the OMC has asserted that someone else, aside from Defendants, violated the law (Interrogatory No. 16), whether other leases were lawfully entered into and calculated based on the amount of minerals "sold" (Interrogatory No. 20), or whether the OMC can identify other leases "identical or substantially similar to the compensation terms of any surface leases" (Interrogatory No. 21) have no bearing on the factfinder's determination as to whether Defendants themselves had an *honest* belief (devoid of tactical strategy and predicated on a full sharing of the facts) that their attorneys were correct and that they did not need a lease. Evidence of past events and the conduct of the OMC is simply not probative of Defendants' alleged good faith. *See United States v. Gentry*, 119 F. 70, 73 (8th Cir. 1902) ("[W]hen the good faith or the intent of a party in a given affair is in issue, his acts and sayings in relation to it at about the time of the transaction generally constitute the best evidence of the fact."). (emphasis added). Instead, the "acts and sayings" of Defendants, in relation to the time of the transaction, are relevant to the Court's consideration of the innocent trespasser exception. *See id.*

Interrogatory No. 17 is similarly untethered to Defendants' assertions that they trespassed in "good faith." Whether the OMC received ten dollars or ten billion dollars in royalty income is irrelevant to the question of Defendants' intent at the time of construction and development of the Osage Wind farm. The same holds true for Interrogatory Nos. 20 and 21, in which Defendants asked the OMC to identify mineral leases it has approved that defined compensation in a certain manner, and Interrogatory No. 24, in which Defendants asked the OMC to identify leases for excavation related to a road or building construction project. The identity or even existence of any such mineral leases did not affect Defendants' good or bad faith when they chose not to seek the required permit and are, thus, irrelevant. Lastly, the evidence sought in Request for Production No. 41, "all inquiries, correspondence, requests, or applications [the OMC] received for a lease under 25 C.F.R. Part 214 for excavation related to a road or building project," Defs.' Mot. 7, is likewise irrelevant. Such information has no bearing on Defendants' state of mind and intent with respect to their trespass. Leases and requests between the OMC and third parties did not inform Defendants' decision to proceed with activities that constitute a trespass, so they are irrelevant as to Defendants' intent at the time. Only Defendants' conduct, not the OMC's conduct, is relevant to a determination of Defendants' good faith.

Still, Defendants attempt to transform their own defense into some sort of affirmative allegation that the OMC is apparently pursuing, as Defendants assert, that the denial of their Motion to Compel will "deprive Defendants of the opportunity to present a complete defense to Plaintiffs' allegation that it committed trespass against the Osage Minerals Estate in bad faith." Defs.' Mot. 14. As discussed above, *any* allegations that Defendants acted in bad faith have been stricken from the OMC's Complaint—by Court order, at the request of Defendants. *See* Dkt. 162, 4-5. The *only* reason Defendants' bad faith is on trial is because Defendants have placed it

13

front and center stage. On repeated occasions, since losing in the Tenth Circuit, Defendants have continued to claim they cannot be held liable because they relied, in good faith, on the advice of their counsel that they could mine the Osage Mineral Estate without a mining permit. *See, e.g.,* Dkt. 101, 11; Dkt. 116, 11; Dkt. 150, 10-11; Dkt. 210, 10-11. This is *not* an allegation that the OMC is pursuing. This is an affirmative defense Defendants have asserted, and if Defendants no longer want the OMC to seek discovery concerning their affirmative defense, they should agree to formally dismiss it. Unless and until Defendants are willing to do this, it is not unfair to permit the OMC to take discovery concerning Defendants' good (or as the case may be, bad) faith, and it is not unfair that, under the governing standards of law, evidence relevant to Defendants' state of mind at the time they trespassed on the Osage Mineral Estate lies exclusively with Defendants and not the OMC. If Defendants truly seek information to support their good faith, Defendants, as the trespassers, should know and have all the information they need regarding their own efforts at investigating the leasing requirement under 25 C.F.R. Parts 211 and 214, what information they used to make their decision, and why.

### b. Defendants Are, Once Again, Attempting to Re-litigate Issues They Have Already Lost

Defendants' requested discovery, as well as this Motion to Compel, both constitute efforts to resurrect issues, arguments, and claims that this Court, and/or the Tenth Circuit, have previously dismissed. Defendants claim that Interrogatory Nos. 16, 17, 20, 21, and 24 and Request for Production No. 41 "directly pertain to Defendants' alleged bad faith." Defs.' Mot. 13. They do not.

First of all, Interrogatory Nos. 16, 17, 20, 21, and 24 and Request for Production No. 41 all relate to what the OMC (or arguably other irrelevant third parties) may or may not have done in the past—i.e., "Identify all instances since 2010 in which You [the OMC] asserted in formal

litigation . . ." (Interrogatory No. 16); "Identify the amount of royalty income You [the OMC] have received pursuant to leases issued . . . from November 24, 2014" to the present date (Interrogatory No. 17). This Court has repeatedly determined that what the OMC did or did not do in the past has no bearing on the Court's adjudication of the proper remedy for Defendants' illegal mining of the Osage Mineral Estate. Dkt. 264, 5 (once again affirming the "Magistrate Judge erred['s] . . . ruling [that] all 'backward-looking' evidence of the conduct of the United States and OMC is not material and therefore no discovery regarding any such conduct is appropriate.").

Still, Defendants maintain that their requested discovery is relevant to determine "whether Defendants knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214." Defs.' Mot. 1 (citation and quotation marks omitted). As discussed above, however, the standard is not whether Defendants "should have known" their conduct was unlawful, but instead, courts look to factors such as whether Defendants honestly pursued the advice of their counsel, whether Defendants fully disclosed all of the facts regarding the methods of construction that Defendants planned to use for construction, whether Defendants had an honest and good faith belief that their attorneys' advice was correct, etc. *See supra*, 11. None of these factors relate to what an entirely separate party knew, thought, or understood at the time that the party at issue decided to rely on attorney advice. Defendants have not cited a single case that supports their assertion that whether another party unlawfully extracted minerals from the Osage Mineral Estate without the OMC's authorization in the past (Interrogatory No. 16), or whether the OMC may have approved a lease in the past for another party that was "not based on the value or volume of minerals mined and sold" (Interrogatory No. 20) have any bearing on whether Defendants reasonably believed, in

good faith, their attorneys' advice that they did not need a lease to mine the Osage Mineral Estate.

Furthermore, this Court has held repeatedly that "[p]ermitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy." *E.g.*, Dkt. 219, 8 (citing *Davilla*, 913 F.3d at 967-68). In other words, it is Defendants' conduct that is at issue here, not the OMC's. As the Court has recognized, the Osage Nation has consistently exercised sovereignty over the Osage Mineral Estate. Dkt. 264, 23. And it is up to the OMC, as the representative body of the Osage Nation and as trust beneficiary of the Osage Mineral Estate, not Defendants, to determine what actions are in the best interests of the Osage Mineral Estate and headright holders. Thus, the question is not: Did the OMC enter enough leases of a similar type to the ones Defendants should have obtained to justify the law's application to Defendants? The relevant question is whether Defendants' decision to mine the Osage Mineral Estate without a permit was made in good faith, with an honest belief their attorneys' advice was correct.

Moreover, Interrogatory Nos. 16, 17, 20, 21, and 24 and Request for Production No. 41 all focus on arguments Defendants have previously made and lost. For instance, Defendants have already argued that they did not engage in "mining" because the minerals they extracted were not sold. *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1089 (10th Cir. 2017). Specifically, the Tenth Circuit concluded that "the text of § 211.3 does not indicate that mining is confined to commercializing extracted minerals or relocating them off site." *Id.* That is, the Tenth Circuit considered Defendants' "reference to other provisions that contemplate the sale of minerals," and ultimately, were "not persuaded" that § 211 only applies when minerals have been "sold." *Id.* Interrogatory No. 20 is nothing more than an attempt to breathe life into an irrelevant distinction

the Tenth Circuit previously dismissed. *See* Defs.' Mot. 6 (requesting discovery related to OMC "lease terms defining compensation for the OMC . . . not based on the value or volume of minerals mined *and sold*.") (quoting Interrogatory No. 20) (emphasis added); *see also Osage Wind, LLC*, 871 F.3d at 1091 (dismissing "Osage Wind['s argument] which sets as the definitional boundary [of the governing regulations] the commercialization of the minerals.").

The same is true with Defendants' fixation on construction. Just as Interrogatory No. 20 is designed to distract from the relevant issues remaining in this case, Interrogatory No. 24 targets information the Tenth Circuit has concluded is entirely irrelevant to the litigation. *See* Defs.' Mot. 7 (seeking discovery "related to a road or building construction project, from 2011 to the present, in which minerals excavated were not sold or moved to locations other than the site of the original excavation.") (quoting Interrogatory No. 24). When the Tenth Circuit concluded that Defendants' conduct constituted mining, the Court explicitly rejected the notion that any surface construction on the Osage Mineral Estate requires a mining lease. Specifically, the Court held:

> Admittedly, surface construction activities may often implicate and disrupt the mineral estate—building a basement or swimming pool necessarily involves digging a hole in the ground, displacing rock and soil in the process. But as we have held, merely encountering or disrupting the mineral estate does not trigger the definition of "mining" under 25 C.F.R. § 211.3. If the minerals are not being shipped offsite or commercialized, *then they must be acted upon for the purpose of exploiting the minerals themselves*.

*Osage Wind, LLC*, 871 F.3d at 1092 (emphasis added). Here, Defendants "acted upon" the minerals in the Osage Mineral Estate for purposes of exploiting the minerals themselves, and thus, they engaged in mining that requires a lease. *See id.* This case, however, does *not* involve or concern surface construction (or road construction) or any construction where the party engaging in digging does not act upon the minerals to exploit the minerals themselves for some

express purpose, as the Tenth Circuit concluded Defendants did. Therefore, discovery "related to a road or building construction project, from 2011 to the present, in which minerals excavated were not sold or moved to locations other than the site of the original excavation[,]" has no bearing on the relevant issues remaining in this case.

Interrogatory Nos. 16, 17, 20, 21, and 24 and Request for Production No. 41 do not relate to whether Defendants relied on their attorneys' advice that they did not need a mining permit in good faith. Instead, these Requests relate to arguments Defendants have previously made, and lost, and consequently, these Requests are not relevant to the issues currently remaining in the case.

### c. Discovery and Relevance Is Broad—But That Does Not Permit Defendants to Dip into Discovery That This Court Has Previously Denied

Defendants are correct that discovery is broad (*see* Defs.' Mot. 9-12), however, discovery can only be had for "relevant" claims or defenses, and Defendants do not have a right to conduct discovery on issues that have already been decided and dismissed in this case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). As discussed above, Defendants' requested discovery relates to matters that this Court and/or the Tenth Circuit have concluded are irrelevant, and/or in some limited matters, relates to discovery that the United States and/or the OMC have already provided. None of the requested discovery warrants the granting of Defendants' Motion to Compel.

Rule 26(b)(1) governs the scope of discovery. It provides that parties "may obtain discovery regarding any nonprivileged matter *that is relevant to any party's claim or defense* and proportional to the needs of the case . . . ." (emphasis added). While discovery is broad, "Rule 26(b) will not permit unlimited discovery," and "Rule 26(b)(1) permits discovery only of '[r]elevant information.'" *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163

(10th Cir. 2010). Moreover, the Tenth Circuit highlights that discovery must be "relevant to the plaintiff's *actual* claims or defenses." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1193 (10th Cir. 2009) (emphasis added).

None of Defendants' proffered statements support the conclusion that the OMC's "responses to Osage Wind's Second Interrogatories and Requests for Production at issue are deficient." Defs.' Mot. 12. Defendants claim that the OMC improperly objected on relevance grounds to Interrogatory Nos. 16 and No. 24. Defs.' Mot. 11. As discussed above (*see supra* 17), Interrogatory No. 24 is *not* relevant as it relates to 25 C.F.R. Part 214 leases for road and surface construction on the Osage Mineral Estate, and the Tenth Circuit has explicitly rejected Defendants' argument that this distinction is relevant to the present case. *See Osage Wind, LLC*, 871 F.3d at 1092.

Interrogatory No. 16 is likewise irrelevant. This Interrogatory asks the OMC to:

Identify all instances since 2010 in which You asserted in formal litigation or in correspondence that a Person had extracted or used limestone or other hard minerals in Osage County without the proper lease or permit authorizing such extraction or use.

Defs.' Mot. 4 (quoting Interrogatory No. 16). Defendants present no authority, let alone a logical explanation, as to how the illegal actions of third parties, not in this case, bears any relevance to the issues remaining in the case. Whether or not anyone else ever broke the law and illegally mined the Osage Mineral Estate has no bearing on whether this Court should issue monetary damages and/or order removal of the Osage Wind Farm from the Osage Mineral Estate in this case.

Even less clear is why Defendants think they can put the OMC's past conduct on trial in this case. Interrogatory No. 16 specifically inquires as to OMC's past conduct in relation to the hypothetical illegal actions of others, despite the fact that this Court has determined that

19

"[p]ermitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy." *E.g.*, Dkt. 219, 8 (citing *Davilla*, 913 F.3d at 967-68). The actions the OMC may or may not have taken in response to the hypothetical illegal actions of others in the past are in no way relevant to this Court's determination of the proper remedy for Defendants' trespass on an Indian trust asset, the Osage Mineral Estate.

Furthermore, this Court has repeatedly tailored the issues remaining for trial, and Defendants' requested discovery falls outside the scope of issues the Court has, repeatedly, set. *See, e.g.,* Dkt. 226, 6 (affirming "the Magistrate Judge['s] reason[ing] that the 'balancing of equities' inquiry articulated in *Davilla* 'does not include any backward-looking considerations of past conduct or knowledge'" as to what the OMC did or did not do in the past) (quoting Dkt. 210, 23); Dkt. 264, 5 (considering and, once again, affirming "the Magistrate Judge['s] . . . ruling [that] all 'backward-looking' evidence of the conduct of the United States and OMC is not material and therefore no discovery regarding any such conduct is appropriate."); Dkt. 264, 24 (noting that the Defendants' "requested discovery is irrelevant" for past events because the court is now considering "prospective factors that contemplate the future effect of the requested relief."). In these orders, the Court "tailor[ed] discovery to the circumstances of the case at hand," *Witt v. GC Services LP*, 307 F.R.D. 554, 559 (D. Colo. 2014), and foreclosed discovery to Defendants for "claims or defenses that have been stricken." *Oppenheimer Fund*, 437 U.S. at 352. The OMC properly objected to these Requests.

### d.  The Deposition Discovery Taken of Defendants Does Not Entitle Defendants to Take Discovery This Court Has Declared Irrelevant

Next, Defendants argue "[t]he OMC's extensive discovery efforts regarding Defendants' alleged bad faith, while simultaneously stymieing Defendants' discovery on the same topics

supports compelling Defendants' discovery." Defs.' Mot. 14. The fact that certain categories of discovery are relevant as to Defendants' witnesses, and not the OMC's, is not surprising given that: (1) the Tenth Circuit has already concluded that Defendants' conduct constituted unlawful mining without the required permit, *see Osage Wind, LLC*, 871 F.3d at 1092; (2) the only issue for the Court to determine is the question of remedy, Dkt. 171, 3; (3) the OMC's past conduct and/or knowledge is not relevant to the *Davilla* analysis the Court will apply to determine whether equitable relief is appropriate for Defendants' unlawful mining, *see* Dkt. 264, 21; and (4) to the extent that monetary damages are found to be the appropriate form of relief, what the OMC may have known or done in the past is not at all probative to determine whether Defendants had an "honest belief that [their] conduct was lawful" and thus constitute an "innocent trespasser." *Dilworth*, 405 P.2d at 46.

Defendants, however, assert that their requested discovery will be relevant to establish whether Defendants "knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214," Defs.' Mot. 15, and that somehow this will be relevant to the Court's consideration of whether Defendants qualify as an innocent trespasser. As discussed in greater detail above, this is not the governing standard of law. And in making this assertion (further into their Motion, in connection to deposition testimony Plaintiffs have taken), Defendants do not cite a *single* authority, precedent, or court decision to demonstrate that whether Defendants "should have known" mining the Osage Mineral Estate without a mining lease was unlawful constitutes the applicable standard to determine Defendants' good faith as an innocent trespasser. *See* Defs.' Mot. 15. Defendants also claim that they must be able to "conduct discovery on the same topics explored by Plaintiffs," *see id.*, and then Defendants quote an excerpt from the deposition of Craig Mazurowski wherein he was

asked questions related to whether Defendants honestly believed it was acceptable to use dynamite and a rock crusher on Osage minerals without a mining permit, after Defendants undertook a legal analysis concluding that in fact, it was. *See* Defs.' Mot. 15; *see also* Ex. 1 (Deposition Transcript of Craig Mazurowski ("Mazurowski Tr.")), at Tr. 134:7–23. Plaintiffs have done nothing to prevent Defendants from taking discovery on this topic. They are free to ask questions of any and all individuals who worked for Defendants during the construction of the wind farm to determine whether or not they honestly believed they could mine the Osage Mineral Estate in the manner they did, without a permit. They cannot, however, ask questions of OMC witnesses who have no knowledge of whether Defendants "honestly" believed the analysis Defendants' attorneys provided them.

Furthermore, none of the unpublished cases Defendants cite, *see* Defs.' Mot. 15, discuss or even contemplate this amorphous "known or should have known" standard that Defendants argue should suddenly govern this case, nor do they support the substitution of this standard for the clear guidelines provided in Oklahoma law. For instance, Defendants cite a District Court in Kansas for the proposition that "[b]y raising a defense, a party opens the door to the discovery concerning that defense." Defs.' Mot. 15 (quoting *U.S. Fire Ins. Co. v. Bunge North America, Inc.*, No. 05-2192-JWL-DJW, 2007 WL 1531846, at *5 (D. Kan. 2007)) (quotations omitted). The OMC, however, has not raised any defense in relation to Defendants' "good faith" reliance on the advice of counsel and their asserted status as an innocent trespasser. Instead, Defendants have repeatedly raised this defense. *See* Dkt. 174, 16 (in their Answer, Defendants assert an affirmative defense that "the OMC's claims are barred because any Defendant found to have engaged in unlawful conduct *believed in good faith* that its conduct was not illegal . . .") (emphasis added); Dkt. 210, 10-11 (concluding that "Defendants placed their counsel's advice

22

directly at issue by relying on a 'detailed legal analysis' of outside counsel to prove their subjective good faith belief in the legality of their conduct."). The suggestion that the OMC is the party asserting Defendants' own affirmative defenses is absurd and deserves no further consideration.[4]

Finally, Defendants argue that there was "a dispute between two opposing mining engineering experts," and somehow, the discovery Defendants have requested will be relevant to settling this dispute. *See* Defs.' Mot. 16. The "dispute" that Defendants suggest is nothing other than a dispute as to the proper methodology used to calculate royalty rates. *See id.* (noting that Defendants' expert relied "on royalty rate provided in mineral lease of quarry," whereas the United States' expert relied on "purchase order values"). All of the documents the experts used to render their calculations, however, have already been produced in this litigation (including prior leases of the Osage Mineral Estate). The experts' use of different data to determine the royalty rate for Defendants' unlawful mining is completely irrelevant to the current discovery dispute, as no additional discovery will change the methodology employed by either expert in coming to their conclusions, and the underlying data used by each expert has already been produced and provided.

### e.  The OMC Has More Than Satisfied Its Discovery Obligations

Finally, Defendants claim that the OMC's responses to "Osage Wind's Interrogatory Nos. 17, 20, and 21, and Osage Wind's Requests for Production No. 41," merely "refer[] Osage Wind to documents previously produced in response to various discovery requests[,] . . . leaving Defendants to guess as to which documents may be responsive." Defs.' Mot. 16. There is no

---

[4] The OMC distinguishes both *FragranceNet.com, Inc. v. FragranceX.com, Inc.* and *U.S. Fire Ins. Co. v. Bunge N. Am., Inc* in the OMC's Response to Defendants' Third Motion to Compel Against the Osage Minerals Council and incorporates that distinction herein. *See* OMC's Response to Defendants' Third Motion to Compel Against the Osage Minerals Council, 17.

need, however, for Defendants to "guess." Contrary to Defendants' assertion, the OMC did specifically identify the documents that have already been produced by the OMC and the United States that respond to the Defendants' Requests. Indeed, the OMC detailed exactly where the prior productions could be found, as shown below:

- Interrogatory No. 17 asked the OMC to "[i]dentify the amount of royalty income You have received pursuant to leases issued pursuant to 25 C.F.R. Part 214 and/or 'Sandy Soil Permits' from November 24, 2014 to the date of Your response to this Interrogatory." The OMC properly objected that this Interrogatory was duplicative of prior Requests and then referred Defendants to "its responses to Enel Green Power North America, Inc.'s Interrogatory No. 12 and Request for Production No. 12." Defs.' Mot. 6. The OMC's Response to EGPNA's Interrogatory No. 12 and Request for Production No. 12 provides Defendants with a bates number, specifically: OMC-000736-741. Ex. 2 (OMC's Objections and Responses to EGNPA's First Interrogatories and Requests for Production), 14, 20. In responding to Interrogatory No. 17, the OMC also referred Defendants "to responsive documents related to Part 214 permits or leases identified and produced through Plaintiff United States of America's Supplemental Responses to Defendant, Osage Wind, LLC's First Set of Interrogatories and Requests for Production at Interrogatory No. 8, Request Nos. 7 & 8." Defs.' Mot. 5-6. A simple review of the United States' Response to Osage Wind's Interrogatory No. 8 reveals that the following responsive bates numbers have been made known and provided to Defendants: "Osage Wind-1793-1795, 1799, 1921-1929, 1933-1934, 1937, 1980-1984, 1986, 1990, 1995-1999, 2020-2024, 2027-2030, 2034-2037, 2126-2129, 2134-2137, 2139-2140, 2142-2143, 2179." Ex. 3 (United States First Supplemental Responses to Defendant, Osage Wind, LLC's First Set of Interrogatories and Requests for Production), Response to Interrogatory No. 8, 3-4. Additionally, the OMC referred Defendants to the following bates numbers that are responsive to Request No. 7, specifically: "Osage-Wind-1898-1900, 1927-1929, 1982-1984, 1986-1990, 1995-1999, 2020-2024, 2027-2030, 2034-2037, 2126-2129, 2134-2137." Id., Response to Request No. 7, 4-5. The OMC also referred Defendants to the bates numbers of documents responsive to Request No. 8, specifically: "Osage Wind-1768-1888, 1897-1926, 1930-1994, 2001-2020, 2025-2026, 2031-2033, 2038-2125, 2130-2133, 2138-2180, 2182-2681, 2683-2943." Id., Response to Request No. 8, 5. The fact that responsive information is located in several different documents is a complication entirely of Defendants' own making, as they continue to ask for duplicative information in their poorly formed discovery requests.

- Interrogatory No. 20 asked the OMC to "[i]dentify all proposed mineral leases under 25 C.F.R. Part 214 the OMC has approved the lease terms defining compensation for the OMC were not based on the value or volume of minerals mined and sold." The OMC objected that this "interrogatory is duplicative of information already sought from the OMC" and referred Defendants to "its Responses to Enel Green Power North America, Inc.'s Interrogatory Nos. 13-15 and Request for Production Nos. 13-15." Defs.' Mot. 6-7. A simple review of the OMC's Responses to EGPNA's Interrogatory Nos 13-15 reveals

the following bates numbers have been provided to Defendants: OMC-000203-000208, OMC-000213-000217, OMC000220-000222. Ex. 4 (OMC's Responses and Objections to Enel Green Power North America, Inc's Second Requests for Admission, Interrogatories, and Requests for Production), Response to Interrogatory No. 15, 7-8. Defendants' contention that the OMC has not provided bates numbers responsive to Interrogatory No. 20 is as meritless as their attempt to resurrect their argument that they could not have engaged in mining because the minerals themselves were not "sold." *See Osage Wind, LLC.*, 871 F.3d at 1089.

- Interrogatory No. 21 asked the OMC to "[i]dentify all proposed or approved mineral leases under 25 C.F.R. Part 214 when the mineral lease contained terms defining compensation for the OMC identical or substantially similar to the compensation terms of any surface leases issued to the same lease applicant for the same geographic area." For this response, the OMC referred Defendants "to its Responses to Enel Green Power North America, Inc.'s Nos. 13-15 and Request for Production Nos. 13-15." Defs.' Mot. 7. As previously stated, these Responses to EPGNA's Request for Production Nos. 13-15 provides Defendants with the following bates stamped documents: OMC-000203-000208, OMC-000213-000217, OMC-000220-000222. Ex. 4 (OMC's Responses and Objections to Enel Green Power North America, Inc's Second Requests for Admission, Interrogatories, and Requests for Production), Response to Interrogatory No. 15, 7-8.

- Defendants' Request for Production No. 41 asked the OMC to "[p]roduce, or identify by Bates numbers if already produced, all inquiries, correspondence, requests, or applications you have received for a lease under 25 C.F.R. Part 214 for excavation related to a road or building construction project, from 2011 to the present." Defs.' Mot. 7. For this Response, the OMC referred Defendants "to Plaintiff United States of America's Supplemental Responses to Defendant, Osage Wind, LLC's First Set of Interrogatories and Requests for Production and Interrogatory No. 8, Request Nos. 7 & 8." *Id*. at 7-8. The OMC further produced, and identified by bates number, the following: "OMC-000776-782 OMC-000787-794 OMC-000796-800 OMC-000806-807 OMC-000808-810 OMC-000811-815 OMC-000816-819 OMC-000820-821 OMC-000822-824 OMC-000825-830 OMC-000831-836 OMC-000837 OMC-000838." *Id*. at 8.

To the extent that any responsive information exists in relation to these Requests, it has been produced and provided to Defendants. *See Johnson v. Kraft Foods N. Am., Inc.,* 238 F.R.D. 648, 654 n. 21 (D. Kan. 2006) (noting the "the Court will not require Defendants to produce documents and information already produced to Plaintiff Johnson in this lawsuit, as such a production would be duplicative."). The OMC properly objected to Defendants' discovery Requests.

### V.   CONCLUSION

For the reasons stated above, Intervenor-Plaintiff respectfully requests that the Court

deny Defendants' Second Motion to Compel Against the OMC.

Respectfully submitted,

s/ Mary Kathryn Nagle

Mary Kathryn Nagle, OBA No. 33712
Wilson Pipestem, OBA No. 16877
Abi Fain, OBA No. 31370
Jennifer Baker, OBA No. 21938
Shoney Blake, Cal. Bar No. 264981
Pipestem and Nagle Law, P.C.
401 S. Boston Ave., #2200
Tulsa, Oklahoma 74103
918-936-4705 (Office)
wkpipestem@pipestemlaw.com
mknagle@pipestemlaw.com
afain@pipestemlaw.com
jbaker@pipestemlaw.com
sblake@pipestemlaw.com
*Counsel for Intervenor-Plaintiff*
*Osage Minerals Council*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2021, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ryan A. Ray
Joel L. Wohlgemuth
rar@nwcjlaw.com
jlw@nwcjlaw.com

-and-

Lynn H. Slade
Sarah S. Stevenson
Deana M. Bennett
Spencer L. Edelman
lynn.slade@modrall.com
sarah.stevenson@modrall.com
deana.bennett@modrall.com
spencer.edelman@modrall.com
*Counsel for Defendants*

David McCullough
dmccullough@dsda.com

Jeffrey S. Rasmussen
jrasmussen@ndnlaw.com

-and-

Mary Kathryn Nagle
Wilson Pipestem
Abi L. Fain
wkpipestem@pipestemlaw.com
mknagle@pipestemlaw.com
afain@pipestemlaw.com
jbaker@pipestemlaw.com
sblake@pipestemlaw.com
*Counsel for Intervenor-Plaintiff,
Osage Minerals Council*

-and-

Thomas J. McCormack
Robin D. Ball
Robert Comer
Robert Kirby thomas.mccormack@nortonrosefullbright.com
robin.ball@nortonrosefullbright.com bob.comer@nortonrosefullbright.com
robert.kirby@nortonrosefullbright.com
*Counsel for Defendants*

Cathryn Dawn McClanahan
cathy.mcclanahan@usdoj.gov

*Counsel for Plaintiff, United States*

27

<u>/s/ Mary Kathryn Nagle</u>