IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    And<br><br>OSAGE MINERALS COUNCIL,<br><br>    Intervenor-Plaintiff,<br><br>v.<br><br>OSAGE WIND, LLC;<br>ENEL KANSAS, LLC; and<br>ENEL GREEN POWER NORTH AMERICA, INC.,<br><br>    Defendants. | Case No. 14-CV-704-GKF-JFJ |

**Plaintiff the United States' Response to Defendants'
Motion to Compel the United States of America and the Osage Minerals Council
to Designate Persons to Testify Pursuant to Rule 30(b)(6) (Dkt. 266)**

Plaintiff, the United States of America, responds to Defendants' Motion to Compel the United States of America and the Osage Minerals Council to Designate Persons to Testify Pursuant to Rule 30(b)(6) (Dkt. 266), as follows, and requests that the Court deny the motion.

The Court well-knows the history of this case. *See* Dkt. 264 at 1-5 ("Background and Procedural History"). This history presages the ongoing time-wasting, harassing strategies Defendants have, once more, evinced in their most recent Motion to Compel. As seen by comparison of the "Notice[s] of Rule 30(b)(6) Deposition" (Dkt. 266-1, 266-2), the notices are identical. They were, moreover, sent after hours on the same day the parties had a hearing on a contentious motion to allow the plaintiffs to conduct additional depositions. *See* Dkt. 252. Despite vigorous protest, the Magistrate Judge allowed all the specific depositions sought to be set. *Id.* Busying the plaintiffs, at the eleventh hour of discovery, with issues Defendants knew would draw an objection, and which had not been the subject of any motion for relief to the Court, smacks of retaliation. The United States has repeatedly noted the law of the case forecloses this type of discovery. Defendants' Motion to Reconsider makes clear they full-well understood the reach of the United States' objections and the impact of the Court's previous orders. *See* Dkt. 229 at 7-9. As the Court noted in the Opinion and Order denying the Motion to Reconsider, these issues have been fully and repeatedly briefed. *See* Dkt. 264 at 7-10. Defendant knows exactly what the law of the case is as to the topics in their Rule 30(b)(6) Deposition Notices.

1

I. **No Protective Order was required; the United States' 30(b)(6) witness was available to Defendants, and instructions not to answer were appropriate under the Federal Rules of Civil Procedure, as given in every other deposition taken by Defendants in this case.**

Oddly, Defendants first contend that "[m]erely serving letters containing objections" to the Notice "did not relieve Plaintiffs from their obligations to produce 30(b)(6) witness." Dkt. 266 at 12. Plaintiff did not consider itself so "relieve[d]." On August 26, 2021, Eddie Streater, the Eastern Oklahoma Regional Director of the Bureau of Indian Affairs, did sit for deposition as a 30(b)(6) witness. *Id.* at fn. 2.

Defendants then contend the United States was required to seek a protective order from the Court. *Id.* at 13. The United States did not seek a protective order from the Court, as it fully complied with the Rule's letter and spirit. Rule 30(b)(6) requires that "[b]efore or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." Defendants readily admit the United States provided all parties a pre-conference courtesy letter outlining objections to certain topics and their basis. Dkt. 266-3. The most significant objection raised was based on Defendants' incessant propounding of discovery in contravention of this Court and the Tenth Circuit's extensive rulings in this case. *Id.* at 3-5.

At the August 16, 2021, teleconference, following the United States' letter, the Notice and extensive rulings-based objections, among other issues, were discussed. The United States committed to make a witness available but warned Defendants an

instruction to the witness not to respond would likely be lodged to several questions, consistent with Plaintiff's approach to discovery for well over a year.

Rule 30(c)(2) speaks to objections that may be made in any deposition, including one convened under Rule 30(b)(6). Therein, it is held that counsel may "instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." The United States has clearly and consistently instructed their deponents in this matter to not answer, when appropriate, citing the limitations to defenses and relevance ordered by the Tenth Circuit and this Court. Likewise, the United States has clearly and consistently refused to answer Defendants' (numerous) objectionable interrogatories or other discovery requests, citing the same limitations and law of the case. Dkt. 270 at 4-9. Rule 30(b)(6) does not allow the questioner to obtain all answers, when the inquiry was previously addressed by various court orders, and fair objection and instruction under Rule 30(c)(2) is made.[1]

Knowing full well which matters the United States considered subject to previously entered Orders, Defendants elected to proceed. Defendants set the course of the 30(b)(6) deposition, asking some questions that were (arguably) *not* fully addressed by previous Orders and some that were. In the latter instance, the United

---

[1] Defendants do not give the Court any clear sense of Mr. Streater's 30(b)(6) deposition (and, in fact, did not wait for the transcript to be prepared before filing their motion). Mr. Streater was presented and prepared to discuss all Part 214 leases entered on or after January 1, 2010. While his preparation was confined to the four corners of those documents – as he informed defense counsel – actual instructions not to answer were few.

3

States, as has been its practice through months of deposition discovery, instructed the witness not to respond where it fairly believed that "a limitation ordered by the court" applied to the question asked. Defendants apparently avoided other topics altogether and did not require either an answer or objection on the record.[2] Nor have Defendants presented to the Court a transcript of the specific questions asked or the responses given, as required by Local Civil Rule 37-2(d).

## II. The hastily prepared "Notice" does not meet the Federal Rules' particularity legal standard.

As to the 30(b)(6) "reasonable particularity" notice requirement, as Defendants know, the plaintiffs both noted the slapdash, carbon-copy Notice sent to both. Dkts. 266-3, 266-4. Predictably, this led to topics being included in both Notices that were not appropriate. For instance, Topic 4 calls for "[a]ll C.F.R. Part 214 leases" even contemplated by the "OMC from 2008," a topic not fairly addressed to the United States. *Id*. at 3. Likewise, Topic 7 asked the United States to answer for "[a]ll instances" in which the "OMC sought, endorsed, imposed, or opposed ejectment or removal" of certain structures. *Id*. at 4. Topic 9 also sought testimony about "[a]ny analyses undertaken or conducted" by the OMC. *Id*. During the meet and confer, Defendants conceded that the hastily drawn 30(b)(6) Notice topics must be adjusted to limit the plaintiffs to each "answer for" their own action or information.

---

[2] Counsel for the United States made Defendants fully aware that it would be Plaintiff's position that the deposition would not be "held open," despite Defendants' self-serving, concluding speech to the contrary at deposition.

4

The parties also discussed the utter lack of any (or unreasonable) time limitations in a number of topics, including Topics 6 and 7. Congress has reserved the Osage Mineral Estate (OME) for more than a century; yet, Defendants sought "[a]ll instances" where mining may have occurred with no lease. Dkt. 266-1 at 4. Defendants agreed in the meet and confer that some temporal limit would be appropriate but would not yield regarding the "[a]ll instances" language. Even so, Defendants never issued an Amended Notice to reflect the concerns addressed at the meet and confer and never committed to any limitation in writing.

As this Court has held, "Rule 30(b)(6) notices may not be overly broad or subject the Rule 30(b)(6) deponent to an 'impossible task' in preparing for the deposition." *Feltz v. Bd. of County Commissioners of County of Tulsa*, No. 18-CV-298-CVE-JFJ, 2020 WL 2039250, at * 4 (N. D. Okla. April 28, 2020). Defendants' Rule 30(b)(6) Notice was both overly broad and subjected the deponent to an impossible task. The Notice asked the United States to answer for all instances of mining with *no lease*. In other words, it tasked the United States to investigate over 100 years of activity to see if others had flouted the lease requirement. Further, the Notice asked the United States to testify about "processes or procedures" for leasing "including without limitation" "information" available to the public in 2013 and 2014 and "in what manner" the information "was made known" to the public. Dkt. 266-1 at 3. The words "including without limitation" are the hallmark of an improper 30(b)(6) Notice. *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) (where "the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible."); *Bristow*

5

*First Assembly of God v. BP p.l.c.*, No. 15-CV-524-TCK-FHM, 2019 WL 5783729, at * 5 (N.D. Okla. Nov. 6, 2019) (considering the "reasonable particularity" standard of Rule 30(b)(6), the phrase "including but not limited to" was improper).

### III. Defendants have not attached or cited "Plaintiffs' specific objections" to relevance; this motion is improper.

Defendants seem to contend the courtesy letter they received before the meet and confer, well before any question was asked of the 30(b)(6) witness, should be treated as objections on the record. Dkt. 266 at 15-22. Defendants refer to Plaintiff's "specific objections" but cite only the courtesy letters provided before the meet and confer and prior to the deposition. *Id*. at 17, 20. As Defendants know, the meet and confer – had after receipt of the courtesy letter their motion quotes at length – was a vigorous discussion about the law of the case, relevancy, reasonable time constraints, differences between the plaintiffs, and a host of other issues.

To contend the deposition of Mr. Streater (as the United States' Rule 30(b)(6) representative) was somehow improper, Defendants must cite specific questions asked and instructions not to answer *at the deposition*. Defendants did not even wait for the deposition transcript to arrive before filing. The courtesy letter (offered, but not required, as a reference or starting point for a meet and confer) is not the final word. Defendants set up the letter as a straw man to avoid complying with the rules.

Significantly, the United States *did* produce Mr. Streater, primarily prepared to respond to Topic 4 of Defendant's Notice, with limitations based on the same objections regarding relevancy and law of the case. As this Motion to Compel does

6

not concern this topic, it seems Defendants were content with Mr. Streater's answers. As well, other Topics (Nos. 2, 3, 5, 8, 9) were discussed in the United States' courtesy letter and at the vigorous meet and confer and were then, it seems, dropped.

IV. **The subject areas advanced in Defendants' Motion are a tired rehash of the same discovery they have repeatedly sought through discovery, letter requests, depositions, and subpoenas, all of which were met with the United States' insistence that this Court and the Tenth Circuit should be taken at their word.**

As set out in the United States' response to their second Motion to Compel, Defendants are reviving stale discovery disputes – never brought to the United States' attention, much less to the Court – since early last year. Dkt. 270 at 4-9. Defendants let more than a year of discovery pass without addressing those disputes. In those instances, the United States denied the relevance and did not produce discovery for the same reason noted here – to enforce the Court's orders. Now, as discovery has closed and new defense counsel has appeared, regret over Defendants' litigation strategy for the last year apparently fueled a desire to revive discovery disputes and divert the parties' attention from closing discovery and beginning dispositive briefing. This tactic is against Rule 30's letter and spirit, which requires (for good reason) discovery disputes to be timely brought to the Court.

The parties have engaged in extensive paper and deposition discovery – starting in December 2019 and only recently concluding. From the very first responses to Defendants' discovery requests, the United States has, when appropriate, reminded Defendants of this Court and the Tenth Circuit's rulings and refused to answer irrelevant questions, given the law of the case. *See* Dkt. 270-2, 270-4 and 270-5. For

7

18 months of discovery, Defendants raised no objection and brought no discovery dispute to the Court, save for the six discreet items addressed in their ill-conceived first Motion to Compel. Dkt. 177 at 15. Defendants now want a do-over, claiming the law of the case cannot prevent discovery as to Plaintiff's actions or inactions.

Defendants as much as admitted they are willfully refusing to acknowledge the Court's holding by arguing "both the United States and the OMC also took actions, or failed to act, while Project was under construction that may be material to whether Defendants' actions were taken in good or bad faith." Dkt. 262 at 18. Here, they contend they should discover "what information was publicly available" in "2013 or 2014." Dkt. 266 at 19. In other words, Defendants are determined to delve into information not known to them but held by the United States in 2013 or 2014. Of course, inquiry regarding the "innocent trespasser" limit on recovery of damages looks to the state of mind of the *trespasser* and whether the *trespasser* acted and inquired in a reasonable way. *See* Dkt. 270 at 14 -16.

In any event, this Court could not have been clearer in rejecting the notion that the plaintiffs' actions are relevant:

> As in [*Davilla*], "Congress has dictated the prerequisites of a right to enter [for mining work] by statute." *Davilla*, 913 F.3d at 967. As recognized by the Tenth Circuit, Osage Wind's excavation work required it "to secure a federally approved lease from OMC under § 214.7." *Osage Wind, LLC*, 871 F.3d at 1092. Permitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy.

Dkt. 207 at 7-8. Days later, the Magistrate Judge, considering Defendants' first Motion to Compel enforced that conclusion:

8

> [The District Court] indicated that delay or misconduct of the Osage Nation, including the United States as trustee for the Osage minerals estate, will play no role in the equitable analysis. Based on *Davilla* and the January 11 order, the requested discovery items are not relevant to remaining issues in the case.

Dkt. 210 at 24. As this Court is aware, Defendants then sought review of the Magistrate's ruling and even reconsideration of the resulting order. On reconsideration, this Court held that, "Finally, for the first time, defendants contend that the requested discovery may be relevant to other remedies, apart from the equitable remedies of injunction and ejectment." Dkt. 264 at 25.

Topic 1 of the Notice asks for "processes or procedures for issuing a lease" pursuant to Part 214, including the "documents or information available to the public," the "method" such documents were available and the "manner" in which availability of the information was made known to the public. Dkt. 266-1 at 3. According to the Tenth Circuit, "Osage Wind was required to procure a lease under 25 C.F.R. § 214.7." Dkt. 78 at 26. This Court has made clear it will not allow any defense forgiving this requirement, when it found that permitting Osage Wind to avoid the regulations' "stringent leasing requirement" by pointing to Plaintiffs' conduct "would frustrate federal Indian land policy." Dkt. 207 at 7-8. The law of the case is that a lease was required, and discovery about leases that existed for other third parties in other situations, correspondence or information made available to others, and the universe of information Defendants might have found (had they asked) is irrelevant to this litigation.

9

Topic 6 of the Notice asks about "instances" in which a party engaged in mining without securing a lease and how the United States responded. Dkt. 266-1 at 4. Topic 7 puts a finer point on the prior topic, seeking information about "instances" where a party mined without securing a lease and whether the United States did or did not seek ejectment or removal of structures, specifically, in those instances. *Id*. These "topics" are only another way to get at the same information already requested and under the Court's consideration in Defendants' second Motion to Compel against the United States. As the United States noted in its Response to another of Defendants' motions:

> If the United States communicated with other entities regarding Part 214 leases in 2014, unbeknownst to Defendants, it would have no possible relevance to the issue at hand – the "innocent" trespasser doctrine as it relates to damages owed to the OMC. If, unknown to Defendants, no enforcement action was brought against other trespassers, it would be irrelevant to the "innocent" trespasser doctrine.

Dkt. 270 at 19-20.

Even more improper is the fact that this discovery was sought more than a year ago, and Defendants never asked for a meet and confer, much less presented the issue to the Court. Instead, they allowed discovery to continue, with multiple rounds of document exchanges, depositions, and a robust motion practice. *See Id*. at 6-7. (In January of 2020, Defendants sought "all documents concerning any investigation by the Bureau of Indian Affairs with respect to the need for lease or permit at any other construction/excavation site in Osage County in the last 15 years."). In its February 2020 response to this original request, the United States noted that "Defendants were

required to 'secure a federally approved lease from OMC under § 214.7.' Dkt. 78 at p. 24-25. With that matter now established law of the case, 'investigations' into other 'construction/excavation' sites is simply irrelevant." *Id*. at 7. "The law of the case (especially the Tenth Circuit's ruling) rendered this subject matter irrelevant." *Id*.

No objection by Defendants was ever raised, and, for over a year, the United States proceeded to repeatedly assert that objection as appropriate. As discovery ended and new defense counsel appeared, Defendants hoped to revive this very stale discovery matter by re-asking for the information in the form of 30(b)(6) topics.

V.     **Defendants sorely misrepresent the posture of this case in another tired rehash of arguments previously made before this Court.**

Defendants contend that the Tenth Circuit "law of the case" in this matter cannot possibly reach to the issues of trespass, conversion and continuing trespass because the United States only sought summary judgment on the "central legal issue" before the District Court in 2014. Dkt. 266 at 17 ("When the case was before the Tenth Circuit, the United States (then the only plaintiff) had not sought summary judgment on the narrow issue of whether 25 C.F.R. Part 214 required a lease for the Project.") Defendants previously (and unsuccessfully) made this argument in their response to the OMC's successful Motion for Judgment on the Pleadings. Dkt. 205 at 9-10. It reveals a total - and perhaps, willful - misunderstanding of the history of this case and, worse, a confusion regarding simple civil procedure.

After this case was filed, the United States did, in fact, move for *partial* summary judgment, in an effort to present the legal issue of Part 214 to the Court. Dkt. 24.

11

That motion was denied. Dkt. 44. A denied motion for partial summary judgment would not be appealable, as the case would usually proceed after partial summary judgment was not granted. *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) ("The jurisdiction of a Court of Appeals under 28 U.S.C. § 1291 extends only to 'appeals from . . . final decisions of the district courts.' Ordinarily, orders denying summary judgment do not qualify as 'final decisions' subject to appeal.").

On the other hand, Defendants did not act in accord with Plaintiff's "narrow" issue approach. Instead, they filed a motion to dismiss or for summary judgment on *all* claims, including trespass: "Defendants are entitled to *summary judgment on all claims* set forth in the United States' First Amended Complaint for Declaratory Judgment and Damages [Doc. 20] ("Amended Complaint")." Dkt. 26 at 7 (emphasis added). Defendants asked the Court to "enter an order of dismissal or an order entering *summary judgment in favor of Defendants*, dismissing all claims in the Amended Complaint, awarding Osage Wind its costs incurred, and such other and further relief as the Court may deem just and proper." *Id*. at 31 (emphasis added). Judge Payne's opinion denying the United States partial judgment also fully granted Defendants summary judgment, deciding all claims, as specifically requested by Defendants. Dkt. 44 ("For the reasons outlined above, the Court concludes that Plaintiff's claims fail as a matter of law. Accordingly, *Defendants' Motion for Summary Judgment [Doc. No. 26] is* **GRANTED** and Plaintiff's Motion for Partial Summary Judgment [Doc. No. 24] is **DENIED**.") (italics added).

12

Of course, the full grant of summary judgment disposed of all counts and claims and *was* an appealable order. On appeal, no party teased out the separate five claims and argued that some should be reversed, and others not. The Tenth Circuit left no doubt about which order of the District Court it was considering: "Accordingly, we REVERSE the *award of summary judgment for Osage Wind* [] and REMAND for further proceedings consistent with this opinion." Dkt. 78 at 3. (emphasis added).

Not long ago, Defendants vigorously argued that "the Tenth Circuit clearly expressed that it was considering a complaint '*for damages*'[.]" Dkt. 101 at 25 (emphasis by Defendant). Of course, Amended Complaint Counts 1 and 2 – which Defendants *now* contend were the only items before the Tenth Circuit – seek not damages but declarations only. Dkt. 20 at 7-9. For Defendants now to say the Tenth Circuit never considered Counts 3, 4 and 5 (for trespass, continuing trespass and conversion, *see id.* at 9-12) is directly opposite to their earlier contention that the Tenth Circuit considered a complaint "for damages." Dkt. 101 at 25.

It appears Defendants are unhappy about their decision to put all five counts of the Amended Complaint at issue before the Tenth Circuit. By doing so, they placed the issue of trespass, continuing trespass and conversion before the Tenth Circuit and invited a ruling. The Tenth Circuit obliged. At this late date, however, more than eighteen months of robust discovery and motion practice has occurred. The parties should be turning their attention to dispositive motions on the issue of damages owed to the OME. Defendants' attempt to narrow the Tenth Circuit's decision in a way not at all consistent with the actual procedural posture of the case (much less the

13

holding of the Court) should be denied. Initially, Defendants were happy to accept summary judgment on all claims, when granted. Now they are unhappy with the implication of the Tenth Circuit's decision and reversal of summary judgment on all five claims. Defendants' legal slight-of-hand argument unquestionably requires the Court to ignore the words of the Tenth Circuit: Defendants were required to "secure a federally approved lease from OMC under § 214.7." Dkt. 78 at 24-25.

For the foregoing reasons, the United States respectfully requests that the Court wholly deny Defendants' Motion to Compel the United States of America and the Osage Minerals Council to Designate Persons to Testify Pursuant to Rule 30(B)(6) (Dkt. 266).

Respectfully submitted,

United States of America

Clinton J. Johnson
Acting United States Attorney

s/Cathryn D. McClanahan
Cathryn D. McClanahan, OBA No. 14853
Nolan M. Fields IV, OBA No. 31550
Assistant United States Attorneys
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
T: 918-382-2700
cathy.mcclanahan@usdoj.gov
nolan.fields@usdoj.gov

        Stuart P. Ashworth, OBA #31468
        Special Assistant United States Attorney
        United States Department of the Interior
        Office of the Solicitor
        Tulsa Field Solicitor's Office
        7906 East 33rd Street, Suite 100
        Tulsa, Oklahoma 74145
        T: 918-669-7905
        stuart.ashworth@sol.doi.gov

        Of Counsel:
        Charles R. Babst, Jr.
        Attorney-Advisor
        United States Department of the Interior
        Office of the Solicitor
        Tulsa Field Solicitor's Office
        7906 East 33rd Street
        Tulsa, Oklahoma 74145
        T: 918-669-7902
        charles.babst@sol.doi.gov