**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| (2) OSAGE MINERALS COUNCIL, | ) | Case No. l4-CV-704-GKF-JFJ |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (1) OSAGE WIND, LLC; | ) | |
| (2) ENEL KANSAS, LLC; and | ) | |
| (3) ENEL GREEN POWER | ) | |
| NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**INTERVENOR-PLAINTIFF OSAGE MINERALS COUNCIL'S
BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL THE UNITED
STATES AND OSAGE MINERALS COUNCIL TO DESIGNATE PERSONS TO
TESTIFY PURSUANT TO RULE 30(b)(6)**

i

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

I.   INTRODUCTION ............................................................................................. 1

II.  PROCEDURAL AND FACTUAL BACKGROUND ................................................ 2

    A.  Procedural Background Incorporated Herein ................................................ 2

    B.  The Court's July 15, 2020 Order .................................................................. 2

    C.  The Court's Orders Regarding Defendants' Purported Good Faith
        Affirmative Defense ....................................................................................... 4

III. STANDARD OF REVIEW .................................................................................. 5

IV.  ARGUMENT .................................................................................................... 7

    A.  The Standard Governing Whether Defendants Qualify As Innocent Trespassers
        Does Not Invite Analysis of What Defendants "Should Have Known" ...................... 7

    B.  Topic 1 Does Not Relate to Whether Defendants Mined the Osage Mineral Estate
        Without a Permit in Good Faith .................................................................. 11

    C.  Topics 6 and 7 Are Not Relevant to Any Monetary Calculation of Damages ............ 14

    D.  Topics 6 and 7 Are Not Relevant to the Weighing of the Equities Under *Davilla* ..... 16

    E.  Even If Topics 1, 6, and 7 Did Relate to Relevant Issues—They Do Not—These
        Topics Are Not Described with Sufficient Particularity ............................................. 19

    F.  The OMC's Objections Are Not Procedurally Improper ............................................. 22

V.   CONCLUSION ............................................................................................... 25

### TABLE OF AUTHORITIES

<u>**Cases**</u>

*Bailey v. Texas Pac. Coal & Oil Co.*
    1934 OK 243,  32 P.2d 709 ........................................................................9

*Bristow First Assembly of God v. BP p.l.c.*,
    No. 15-CV-523-TCK-FHM, 2019 WL 5783729 (N.D. Okla. Nov. 6, 2019) ................21

*Burke v. Glanz*,
    No. 11-CV-720-JED-PJC, 2013 WL 4521172 (N.D. Okla. Aug. 26, 2013) ..6, 21, 22, 23

*Burlington N. & Santa Fe Ry. Co. v. Han*,
    No. 14-CV-69-CVE-PJC, 2015 WL 401744 (N.D. Okla. Jan. 28, 2015) .....................13

*Champlin Ref. Co. v. Aladdin Petrol. Corp.*,
    1951 OK 207, 238 P.2d 827 .......................................................................9

*Davilla v. Enable Midstream Partners L.P.*,
    913 F.3d 959 (10th Cir. 2019) ...............................................................9, 18

*Dilworth v. Fortier*,
    1964 OK 112, 405 P.2d 38 ........................................................7, 8, 9, 11, 16

*Edelen v. Campbell Soup Co.*,
    265 F.R.D. 676 (N.D. Ga. 2010) ................................................................16

*Edwards v. Lachman*,
    1974 OK 58, 534 P.2d 670 ...................................................................8, 9, 10

*Feltz v. Bd. of Cty. Comm'rs of Cty. of Tulsa*,
    No. 18-CV-298-CVE-JFJ, 2020 WL 2039250 (N.D. Okla. Apr. 28, 2020) ................5, 6

*Gordon v. T.G.R. Logistics, Inc.*,
    321 F.R.D. 401 (D. Wyo. 2017) ..................................................................6

*Hartford Fire Ins. Co. v. P & H Cattle Co.*,
    No. CIV.A. 05-2001-DJW, 2009 WL 2951120 (D. Kan. Sept. 10, 2009) ...............20, 21

*Johnson v. Charps Welding & Fabricating, Inc.*,
    No. 14-CV-2081 (RHK/LIB), 2016 WL 11268315 (D. Minn. Apr. 19, 2016) .............21

*McBride v. Medicalodges, Inc.*,
    250 F.R.D. 581 (D. Kan. 2008) ..................................................................23

*Miller v. Tidal Oil Co.*,
    1932 OK 861, 17 P.2d 967 .........................................................................9

*Murphy v. Kmart Corp.*,
    255 F.R.D. 497 (D.S.D. 2009) ........................................................................................19

*Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc*.,
    No. 11-CV-02007-MSK-KLM, 2013 WL 627149 (D. Colo. Feb. 19, 2013),
    *order amended on reconsideration*, No. 11-CV-02007-MSK-KLM, 2013 WL
    12246941 (D. Colo. Sept. 12, 2013) ..............................................................................25

*Oppenheimer Fund Inc. v. Sanders*,
    437 U.S. 340 (1978) ................................................................................................18, 19

*Palzer v. Cox Oklahoma Telcom, LLC*,
    No. 15-CV-00564-GKF-JFJ, 2019 WL 11585346 (N.D. Okla. Apr. 26, 2019),
    *aff'd sub nom. Palzer v. CoxCom, LLC*, 833 F. App'x 192 (10th Cir. 2020) ...................6

*Pipeline Prods., Inc. v. Madison Companies LLC*,
    No. CV 15-4890-KHV, 2019 WL 1940282 (D. Kan. May 1, 2019) ................................5

*Reed v. Bennett*,
    193 F.R.D. 689 (D. Kan. 2000) ...............................................................................19, 20

*Reibert v. CSAA Fire & Cas. Ins. Co.*,
    17-CV-350-CVE-JFJ, 2018 WL 279348 (N.D. Okla. Jan. 3, 2018) ...............................6

*Saevik v. Swedish Med. Ctr.*,
    No. C19-1992-JCC, 2021 WL 2411612 (W.D. Wash. June 14, 2021) ..........................20

*Sapulpa Petrol. Co. v. McCray*,
    1929 OK 129, 277 P. 589 .........................................................................................9, 10

*Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*,
    236 F.R.D. 524 (D. Kan. 2006) .....................................................................................19

*Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.*,
    No. 05-2433-JWL-DJW, 2007 WL 2333356 (D. Kan. Aug. 15, 2007).............22, 23, 25

*Starlight Int'l Inc. v. Herlihy*,
    186 F.R.D. 626 (D. Kan. 1999) .....................................................................................24

*United States v. Trujillo*,
    853 F.2d 800 (10th Cir. 1988).........................................................................................9

*White v. Conoco, Inc.*,
    710 F.2d 1442 (10th Cir. 1983).......................................................................................9

**<u>Court Rules</u>**

Fed. R. Civ P. 26(b)(1) ...................................................................................................6

Fed. R. Civ. P. 30(b)(6) ..........................................................................................*passim*

**<u>Federal Regulations</u>**

25 C.F.R. § 211..........................................................................................................3, 11

25 C.F.R. § 214 ......................................................................................................*passim*

25 C.F.R. Part 214 ................................................................................................*passim*

## I.    INTRODUCTION

Intervenor-Plaintiff Osage Minerals Council ("OMC") files this brief in opposition to Defendants Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc.'s (collectively, "Defendants") Motion to Compel the United States and Osage Minerals Council to Designate Persons to Testify Pursuant to Rule 30(b)(6), Dkt. 266 ("Defs.' Mot."). Defendants trot out their familiar, well-worn argument that evidence related to what the OMC did in the past to prevent Defendants' unlawful conduct is somehow relevant to determining the proper remedy in this case, this time making the argument that the evidence would be relevant to this Court's weighing of the equities under *Davilla*. As the Court has repeatedly stated, it is not. And this motion should be denied.

Defendants now also argue that evidence regarding what the OMC did or did not do in the past is relevant to this Court's determination of whether Defendants trespassed on the Osage Mineral Estate in good faith. This is also wrong. This Court has repeatedly set out the standard under Oklahoma law, noting that the Oklahoma Supreme Court has repeatedly held this involves a question of whether Defendants had an "honest belief" that their conduct was lawful. Ultimately, whether Defendants honestly believed their attorneys' advice that they did not need a permit to mine the Osage Mineral Estate has nothing to do with what the OMC did or did not do in 2013 and 2014.

The Topics Defendants have identified for the Rule 30(b)(6) deposition they seek to take have no connection to any relevant issues that remain in this case. Instead, if allowed to proceed, such a deposition would only require the OMC to waste additional resources, time, and expense to litigate issues that remain irrelevant to determining what relief the OMC is entitled to for

Defendants' unlawful continuing trespass on the Osage Mineral Estate. Defendants' Motion should be denied.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.  Procedural Background Incorporated Herein

The OMC adopts and incorporates herein the Procedural Background section and any accompanying exhibits of Intervenor-Plaintiff Osage Minerals Council's Brief in Opposition to Defendants' Second Motion to Compel Against the Osage Minerals Council, Dkt. 271, 1–7, as well as the Procedural Background section and any accompanying exhibits of Intervenor-Plaintiff Osage Minerals Council's Brief in Opposition to Defendants' Third Motion to Compel Against the Osage Minerals Council Dkt. 272, 1–7. The OMC sets out additional facts and background information not previously or thoroughly discussed in the OMC's Oppositions to Defendants' Second and Third Motions to Compel.

### B.  The Court's July 15, 2020 Order

On July 15, 2020, the Court issued a three-page Order providing "clarification" on previous orders: (1) the April 13, 2020 Minute Order denying the United States' Motion to Strike Defendants' Answer to the First Amended Complaint (Dkt. 135); (2) the April 13, 2020 Minute Order denying Defendants' Motion for Judgment on the Pleadings (Dkt. 138); (3) the July 1, 2020 Opinion and Order denying the United States' Motion for Leave to File a Second Amended Complaint (Dkt. 161); and (4) the July 1, 2020 Order related to Defendants' Motion to Strike Allegations in Osage Minerals Council's Complaint in Intervention (Dkt. 162). *See* July 15, 2020 Order 1, Dkt. 171. Importantly, the Court's July 15, 2020 Order clarified whether the "innocent trespasser" issue was preserved in this case, concluding that it in fact remained a live issue. *See id.* at 3.

2

As Defendants point out in their Motion, the Court's July 15, 2020 Order quoted the United States' First Amended Complaint ("United States' FAC") as having alleged that "Defendants knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214." *See* Defs.' Mot. 14, Dkt. 266 (quoting July 15, 2020 Order 3, Dkt. 171). However, the July 15, 2020 Order's citation to the United States' FAC by no means declared—as Defendants mistakenly argue—the United States' FAC as the governing precedent that determines whether Defendants constitute an innocent trespasser on the Osage Mineral Estate. Instead, the Court's July 15, 2020 Order merely responded to Defendants' argument that "the court's July 1 Orders [] dispos[ed] of the issue of whether Osage Wind constituted an 'innocent trespasser' for the purpose of calculating damages for the mineral trespass under Oklahoma law." July 15, 2020 Order 3, Dkt. 171. That is, in July 2020, Defendants were arguing that the question of whether they constitute an "innocent trespasser" had been dismissed entirely from this case, and in response, the Court noted it had not been dismissed because "[t]he court's July 1 Orders were intended to frame the claims and relief at issue by limiting the United States and the OMC to the allegations and demands of the First Amended Complaint." *Id.*

Accordingly, in the July 15, 2020 Order, the Court quoted the "[d]efendants knew or should have known" language from the United States' FAC *not* to espouse the standard of law governing the Court's adjudication of Defendants' status as an innocent trespasser, but rather, to note that "the United States preserved the issue of whether Osage Wind qualified as an 'innocent trespasser.'" *Id*. It is clear that the Court's ruling only held Defendants were wrong to claim the issue had been dismissed from the case, not that the United States' FAC set forth the governing innocent trespasser standard under Oklahoma law. *Id*.

3

### C.  The Court's Orders Regarding Defendants' Purported Good Faith Affirmative Defense

In addition to their mischaracterization of the Court's citation to the "knew or should have known" language in the United States' FAC, Defendants mischaracterize the overall posture of the good faith/bad faith issues in this case. *See* Defs.' Mot. 14 (asserting the good faith/bad faith issue is alleged affirmatively by Plaintiffs because "Plaintiffs are treating the good faith of Defendants as a relevant and important issue."). As an initial matter, the OMC's allegations that Defendants acted intentionally and with bad faith have been dismissed from this action. *See* July 1, 2020 Order 15 re: Defs.' Partial Mot. to Dismiss, Dkt. 161 (granting in part Defendants' Motion to Dismiss and dismissing all of the OMC's allegations and claims related to Defendants' bad faith); *see also* July 1, 2020 Order re: Defs.' Mot. to Strike 3–5, Dkt. 162 (granting in part Defendants' Motion to Strike, striking the OMC's allegations of "bad faith conduct" from the OMC's Complaint in Intervention).

However, whether Defendants acted in good or bad faith remains a relevant inquiry in this case—and the OMC has treated it so—because *Defendants* have raised good faith as an affirmative defense. Following the Court's decision to strike the OMC's allegations of "bad faith" from the Complaint in Intervention, in its July 15, 2020 Order, the Court held that "defendants' alleged bad faith remains at issue in this lawsuit to the extent tied to Osage Wind's alleged status as an 'innocent trespasser.'" July 15, 2020 Order 3, Dkt. 171 (emphasis added). This is because, in their Answer to the OMC's Amended Complaint in Intervention, Defendants asserted numerous affirmative defenses, including a dubious affirmative defense that Defendants "believed in good faith that [their] conduct was not illegal and there was not clear law to the contrary prior to the Tenth Circuit's decision in this case." Defs.' Answer to OMC's Am. Compl. 16, Dkt. 174. Furthermore, Defendants have repeatedly argued that their "good faith" defense

stems from reliance on a legal memorandum authored by their law firm Modrall Sperling. *See, e.g.*, Defs.' Resp. in Opp'n to Pl.'s Mot. for Partial Summ. J, 19–20, Dkt. 28 (asserting that "Osage Wind is not at fault," in part, because "Osage Wind [had] provided [a] detailed legal memorandum articulating why it concluded no lease or permit is required . . . ."); Defs.' Resp. in Opp'n to Pl.'s Mot. for Leave 11, Dkt. 116 (asserting that "Osage Wind believed, in good faith, based upon a detailed legal analysis, that neither a lease nor permit were required. . . . ."); Defs.' Partial Mot. to Dismiss 10–11, Dkt. 150 ("Osage Wind believed, in good faith, based upon a detailed legal analysis, that neither a lease nor a permit were required."); *see also* July 16, 2021 Order 10–11, Dkt. 210 (concluding that "Defendants placed their counsel's advice directly at issue by relying on a 'detailed legal analysis' of outside counsel to prove their subjective good faith belief in the legality of their conduct.").

So long as Defendants maintain their affirmative good faith defense stemming from their repeated claims that they are an innocent trespasser because they relied in good faith on their attorneys' advice, the OMC has the right to discover information and evidence to defend against their affirmative defense. If Defendants truly desire to render the good faith/bad faith nature of their trespass irrelevant in this litigation, then they must formally dismiss and deny any and all claims that they constitute an innocent trespasser who relied in good faith on the advice of their counsel. To date, they have chosen not to.

### III. STANDARD OF REVIEW

Fed. R. Civ. P. 30(b)(6) "permits a party to 'notice a corporation as a deponent so long as the notice describes with reasonable particularity the matters for examination.'" *Feltz v. Bd. of Cty. Comm'rs of Cty. of Tulsa*, No. 18-CV-298-CVE-JFJ, 2020 WL 2039250, at *4 (N.D. Okla. Apr. 28, 2020) (quoting *Pipeline Prods., Inc. v. Madison Companies, LLC*, No. CV 15-4890-KHV, 2019 WL 1940282, at *4 (D. Kan. May 1, 2019)). Even though "document production

alone does not satisfy a corporate entity's Rule 30(b)(6) obligations, discovery must be

'proportional to the needs of the case,' considering, among other things, the parties' relative

access to relevant information." *Palzer v. Cox Oklahoma Telcom, LLC*, No. 15-CV-00564-GKF-

JFJ, 2019 WL 11585346, at \*15-16 (N.D. Okla. Apr. 26, 2019), *aff'd sub nom. Palzer v.

CoxCom, LLC*, 833 F. App'x 192 (10th Cir. 2020) (citing Fed. R. Civ P. 26(b)(1)). In its notice,

the "discovering party must 'describe with reasonable particularity the matters for examination'"

and is prohibited from using "omnibus descriptions" which are "unacceptably vague or

overbroad." *Burke v. Glanz*, No. 11-CV-720-JED-PJC, 2013 WL 4521172, at \*1 (N.D. Okla.

Aug. 26, 2013) (quoting Fed. R. Civ. P. 30(b)(6)) (citations omitted).

As this Court has recognized, "[o]f course, discovery under Rule 30(b)(6) must comport

with the general principles outlined in Rule 26(b)." *Id.* at \*2; *see also Feltz*, No. 18-CV-298-

CVE-JFJ at \*4 (the party seeking the deposition must "describe[] with reasonable particularity

the matters for examination and compl[y] with Rule 26(b)(1)" in the notice). Under Rule 26 of

the Federal Rules of Civil Procedure, parties may obtain discovery "regarding any nonprivileged

matter that is relevant to any party's claim or defense and proportional to the needs of the case."

Fed. R. Civ. P. 26(b)(1). When considering a motion to compel, reviewing courts must inquire:

"(1) is the information privileged; (2) is it relevant to a claim or defense; and (3) is it

proportional to the needs of the case." *Reibert v. CSAA Fire & Cas. Ins. Co.*, 17-CV-350-CVE-

JFJ, 2018 WL 279348, at \*2 (N.D. Okla. Jan. 3, 2018) (quoting *Gordon v. T.G.R. Logistics, Inc.*,

321 F.R.D. 401, 402 (D. Wyo. 2017)).

Although the concept of relevance under Rule 26 remains fairly broad, courts should

prevent speculative "fishing expeditions." *Id.* at \*4. To inquire whether requested discovery is

sufficiently "proportional" to the needs of the case, courts consider "(1) the importance of the

issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* In this instance, Defendants have failed to establish that the testimony sought has been requested with Topics described with reasonable particularity, and furthermore, because the Topics bear no relation to any issue this Court considers relevant in the case, it is clear Defendants are engaging in a "fishing expedition" for irrelevant discovery. Accordingly, their Motion to Compel must be denied.

IV.   **ARGUMENT**

A. **The Standard Governing Whether Defendants Qualify As Innocent Trespassers Does Not Invite Analysis of What Defendants "Should Have Known"**

Defendants claim that 30(b)(6) testimony regarding Topics 1, 6, and 7 is relevant because it relates to whether "Defendants' 'should have known' they were required to obtain a mining lease under 25 C.F.R. Part 214." Defs.' Mot. 1. This "should have known" language, however, appears nowhere in the applicable caselaw that governs whether ejectment and/or equitable relief should be awarded to remedy a trespass on Indian trust property. Notably, Defendants do not cite a single authority that supports their assertion that the governing standard is whether Defendants "should have known" their conduct was illegal. It is not.

Defendants draw this "should have known" language from the Court's July 15, 2020 Court Order, *see* Defs.' Mot. 14 (quoting July 15, 2020 Order 3, Dkt. 171), but the Court, in that particular Order, was merely noting that the question of whether Defendants could claim to have been an innocent trespasser remained a live issue in this case. *See* July 15, 2020 Order 3, Dkt. 171. And, in quoting the standard that governs that legal issue, this Court quoted the Oklahoma Supreme Court's decision in *Dilworth v. Fortier*, a decision wherein the Oklahoma Supreme

Court concluded that the Oklahoma innocent trespasser standard requires inquiry into whether Defendants "acted in the honest belief that [their] conduct was lawful," *Dilworth v. Fortier*, 1964 OK 112, ¶ 30, 405 P.2d 38, 46, and *not* whether Defendants "should have known" their actions were unlawful.

The words the Court itself used to express the standard governing whether Defendants qualify as innocent trespassers vitiates Defendants' argument that the governing standard is somehow whether Defendants "should have known." At the July 15, 2020 hearing, the Court explained the governing standard from the Oklahoma Supreme Court as follows:

> [T]he issue of innocent trespasser versus bad faith trespasser . . . is an issue of the measure of damages for trespass; in other words, whether the defendants, while legally wrongdoers, *acted in the honest belief that their conduct was lawful*; or on the other hand, whether the defendant[s] acted with culpable negligence or a willful disregard of the rights of others.

Tr. of Telephonic Status Conf. 4:1-7, Dkt. 173 (the Court discussing the standard set forth in *Dilworth*, 1964 OK 112, 405 P.2d 38). In that same hearing the Court referenced *Dilworth* and *Edwards v. Lachman*, 1974 OK 58, 534 P.2d 670, as precedent under Oklahoma law for determining "the measure of damages for trespass when a party comes in and takes mineral interests" and outlined some of the concepts discussed in those cases, including whether a trespass confers a benefit on the rightful owner and whether denying recoupment of mining costs is equivalent to punitive damages. *Id.* at 14:17–15:19. None of that discussion transformed the Court's paraphrased *Dilworth* standard into the Defendants' "should have known" standard.

Moreover, a closer look at *Dilworth* reveals that the Oklahoma innocent trespasser standard is more stringent than paraphrased by the Court in the July 15, 2020 hearing. In order to qualify as an innocent trespasser, *Dilworth* requires that "the taking is without culpable negligence or a willful disregard of the rights of others and in the honest and reasonable belief

that it was rightful." 1964 OK 112, ¶ 30, 405 P.2d at 46; *Edwards*, 1974 OK 58, ¶¶ 11–12, 534

P.2d at 673 (citing *Dilworth*); *see White v. Conoco, Inc.*, 710 F.2d 1442, 1448-49 (10th Cir.

1983) (concluding that under Oklahoma law, a good faith trespasser is "one who acts without

culpable negligence or willful disregard of the rights of others and in an honest, reasonable belief

that his action is proper.").[1] This is not a "should have known" standard. Nor is it a standard

judged by the actions of others, or as Defendants posit: the actions of the sovereign Tribal Nation

who owns the Indian trust property that Defendants trespassed upon. No language in the

Oklahoma Supreme Court's applicable rulings supports Defendants' argument that whether they

"should have known" it was illegal to mine the Osage Mineral Estate without a lease is at all

relevant.

---

[1] It is important to note that Defendants' assertion that they constitute a good faith/innocent trespasser is not a defense to liability. Instead, the general rule is that if a defendant acted in good faith, that defendant is entitled to a reduction of damages in an amount equal to the defendant's expenditures in producing the mineral. *See, e.g., Champlin Ref. Co. v. Aladdin Petrol. Corp.*, 1951 OK 207, 238 P.2d 827; *Bailey v. Texas Pac. Coal & Oil Co.*, 1934 OK 243, 32 P.2d 709; *Miller v. Tidal Oil Co.*, 1932 OK 861, 17 P.2d 967; *Sapulpa Petrol. Co. v. McCray*, 1929 OK 129, 277 P. 589. The OMC maintains, however, that even if the factfinder were to conclude that Defendants acted in good faith—it is clear they did not, but even then—Defendants are not entitled to a reduction in damages because the OMC and Osage headright holders have not received any benefit or gain from Defendants' trespass. *Edwards*, 1974 OK 58, ¶ 13, 534 P.2d at 673 (concluding defendants are not entitled to a reduction in damages where the trespass committed "by defendants conferred no benefits upon plaintiffs or their property."). The OMC also reserves its right to challenge Defendants' reliance on this "good faith" argument to the extent the Oklahoma "good faith" trespasser exception violates *Davilla*'s proscription that state law cannot be incorporated into federal law claims where doing so would violate Congress's policy mandates for the management of the Osage Mineral Estate as an Indian trust asset. *See Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 967 (10th Cir. 2019) (opining that "even if Oklahoma would say that this evidence could defeat any trespass claim, we would not incorporate such a rule into the Allottees' *federal* right of action. As we explained above, federal courts should only incorporate state rules of decision into federal claims to the extent those rules are consistent with federal law and policy."); *see also* March 9, 2021 Am. Op. and Order 8, Dkt. 219 ("Permitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy."); *United States v. Trujillo*, 853 F.2d 800, 804 (10th Cir. 1988) (affirming the district court's order that innocent trespassers must vacate and restore the land and pay nominal damages because "it is the result required by the Pueblo Lands Act and the policy underlying it.").

The *Edwards* Court further declined to employ a negligence standard similar to the "should have known" standard Defendants advocate for here. In recognizing that the *Edwards* plaintiffs alleged that "defendants . . . *should have known* that [their] well was being drilled so that it would trespass upon plaintiffs' land," the *Edwards* Court reiterated the standard articulated in *Dilworth*, repeating that good faith is not whether the defendants *should have known*, but rather, is judged by whether "the taking is without culpable negligence or willful disregard for the rights of others and in the honest and reasonable belief that it was rightful." *Edwards*, 1974 OK 58, ¶ 11, 534 P.2d at 673 (emphasis added). As a result, although the *Edwards* Court noted that the *Edwards* defendants may have engaged in "negligent, imprudent and improper drilling," the *Edwards* Court based its holding regarding damages on whether the *Edwards* defendants had a reasonable belief that their actions were rightful. *Id.*, 1974 OK 58, ¶¶ 10–11, 534 P.2d at 673534 P.2d at 673; *see id*., 1974 OK 58, ¶ 39, 534 P.2d at 677 (concluding there was a lack of good faith because defendants "did nothing to rectify the subsurface trespass nor did they attempt to make any arrangements for further operations that would be compatible with, or for the protection of, plaintiffs' rights.").

Despite their protestations otherwise, and as discussed in greater detail below, none of Defendants' challenged Topics bear any relevance to their status as an innocent trespasser. This is because "[g]ood faith consists in an *honest intention* to abstain from taking any unconscientious advantage of another, even though forms or technicalities of the law, together with an absence of all information or belief of facts which would render the transaction unconscientious." *Sapulpa Petrol. Co. v. McCray*, 1929 OK 129, 277 P. 589, 590 (emphasis added) (citation omitted). Any determination of good faith, or innocent trespasser status, must consider *Defendants'* intent and knowledge at the time the decision was made to engage in their

10

unlawful conduct. Whether sufficient information regarding 25 C.F.R. Part 214 lease was publicly available (Topic 1), whether the OMC has asserted that someone else, aside from Defendants, violated the law (Topics 6 and 7), or what remedies the OMC may have sought in cases where someone else, aside from Defendants, violated the law (Topics 6 and 7) have no bearing on the determination as to whether Defendants themselves had an *honest* belief that they did not need a lease.

### B. Topic 1 Does Not Relate to Whether Defendants Mined the Osage Mineral Estate Without a Permit in Good Faith

Defendants argue that Topic 1 "is directly relevant to whether Defendants acted in good faith when excavating minerals to construct the [Osage Wind] Project." Defs.' Mot. 14. To support this argument, Defendants claim that "Judge Frizzell has held that the 'measure of damages for the trespass claim included in the First Amended Complaint necessarily requires'" consideration of "whether '[d]efendants knew or should have known that they were required to comply with the express provisions of 25 C.F.R. § 211 or 25 C.F.R. § 214.'" *Id.* (quoting July 15, 200 Order 3, Dkt. 171). However, as discussed in greater detail above, Judge Frizzell has never held that the "should have known" standard governs the Court's consideration of whether Defendants trespassed in good faith. Instead, Judge Frizzell has routinely referred to the Oklahoma Supreme Court's decision in *Dilworth v. Fortier*, a standard that asks whether Defendants "acted in the honest belief that their conduct was lawful," *see, e.g.,* Tr. of Telephonic Status Conf. 4:1-7, Dkt. 173 (discussing the standard set forth in *Dilworth v. Fortier*, 1964 OK 112, 405 P.2d 38), and not whether Defendants "should have known" it was unlawful based on information the OMC made known to the public at the time.

Aside from misconstruing the applicable standard of law, Defendants offer no connection between OMC's publication of its leasing procedures and what Defendants knew, or what they

honestly believed. Specifically, for Topic 1, Defendants ask the OMC to designate an individual to testify about:

> Topic 1: The processes or procedures for issuing a lease pursuant to 25 C.F.R. Part 214 in 2013 and 2014, including, without limitation (i) the process or procedure by which the OMC claims Defendants should have obtained a lease, (ii) the documents or information available to the public during 2013 or 2014, if any, concerning such process or procedure, (iii) where and through what method such documents or information were available to public during 2013 or 2014, and (iv) how and in what manner the availability of such documents or information was made known to the public during 2013 or 2014.

Defs.' Mot. 4–5. In this case, there is no conceivable way that this Topic will lead to any information relevant to Defendants' good faith defense. Defendants' own documents, produced in this litigation, demonstrate that more than four months prior to the commencement of their excavation on the Osage Mineral Estate, Defendants were in possession of the "policies and procedures" they ask the OMC to testify about in Topic 1. *See* Ex. A (OSAGE WIND PRIV-000357). On April 25, 2014, Defendants' attorney Steve Willman emailed the attorney performing Defendants' "detailed legal analysis," as well as other individuals working on the decision of whether or not to obtain a permit from the BIA and the OMC, stating "Attached are documents . . . regarding BIA permitting." *Id.*

Mr. Willman attached two documents to his April 25, 2014 email. First, he attached a document that outlines the standards for the "Osage Nation Mineral Reservation Sandy Soil Mining Permit." Ex. B (OSAGE WINDPRIV-000359) (explaining that the process for obtaining a permit as follows: "Apply for a Sandy Soil Mining Permit through the Bureau of Indian."). Mr. Willman's second attachment is labeled as "Procedures for Obtaining Sandy Soil and Rock Mining Permits Osage County, Oklahoma." Ex. C (OSAGE WINDPRIV-000361). This second attachment informs the reader that "Permits are processed through the Branch of Minerals at the Osage Indian Agency." *Id.* The attachment

then continues and lists the entire process necessary for obtaining such a permit, including sending a "[l]etter to the Superintendent, Osage Indian Agency, P.O. Box 1539, Pawhuska, OK 74056 . . . ." *Id.*

This email and its two attachments demonstrate that Defendants had, as of April of 2014, the policies and procedures related to obtaining a permit to mine on the Osage Nation Mineral Reservation. Now, whether Defendants honestly believed they were not required to follow those policies and procedures remains a question in factual dispute. However, what the OMC did in 2013 and 2014 to publicize these policies and procedures is entirely irrelevant. Whether the OMC maintains these documents online on a website, in hard copy at the Osage Minerals Council Building located in the Osage Nation, or in a lockbox inside the Pioneer Woman Lodge has no bearing on whether Defendants honestly believed their attorneys' advice that these policies and procedures did not apply to them. Allowing Defendants to depose the OMC with regards to Topic 1 would amount to nothing more than a complete waste of the OMC's resources and time, and ultimately, permit Defendants to do what they have been trying to do all along: blame the OMC for Defendants' decision to mine without the permit they were required to obtain under the law.

Topic 1 is not relevant, and therefore, Defendants' motion should be denied. *See Burlington N. & Santa Fe Ry. Co. v. Han*, No. 14-CV-69-CVE-PJC, 2015 WL 401744, at *3 (N.D. Okla. Jan. 28, 2015) ("while the concept of relevance for discovery purposes is broad, it is not unlimited. . . . The mere fact that a plaintiff offers a 'broad theory of the case' does not automatically justify equally broad discovery, 'unless the discovery is relevant to the plaintiff's actual claims or defenses.'") (citations omitted).

### C.  Topics 6 and 7 Are Not Relevant to Any Monetary Calculation of Damages

Next, Defendants assert that Topics 6 and 7 "concern relevant issues regarding the 'future effect of requested relief' and damages." Defs.' Mot. 17 (quoting August 25, 2021 Order 20, Dkt. 264). Defendants also assert that this Court's prior orders "do not foreclose[] discovery relating to the 'other remedies at issue in this matter,' which 'are limited to damages and an accounting.'" *Id.* (quoting August 25, 2021 Order 25, Dkt. 264). Defendants offer no explanation, however, as to *how* Topics 6 and 7 might inform a calculation of monetary damages or an accounting.

For Topics 6 and 7, Defendants ask the OMC to designate an individual to testify about:

Topic 6: All instances in which a person or entity engaged in mining for which a lease was required under 25 C.F.R. Part 214 without first obtaining such a lease, and how, if at all, the OMC or the BIA, Office of the Osage Agency resolved or addressed such instances, including whether by order, agreement, consent, a lawsuit filed or threatened to be filed by or on behalf of the BIA and/or OMC, or otherwise.

Topic 7: All instances in which the BIA, Office of the Osage Agency and/or OMC sought, endorsed, imposed, or opposed ejectment or removal of any structures or materials placed or constructed by any person or entity without first obtaining a lease required under 25 C.F.R. Part 214.

The only support Defendants offer to show how Topics 6 and 7 relate to the remedies of damages and accounting is their statement that both topics "concern relevant issues regarding the 'future effect of requested relief' and damages." Defs.' Mot. 17 (quoting August 25, 2021 Order 20, Dkt. 264). However, this actually undercuts Defendants' argument, as the "future effect of requested relief" goes directly to "the prospective nature of injunctive relief" under the *Davilla* factors, and does not, as Defendants characterize, relate to accounting and damages. *See* August 25, 2021 Order 19-20, Dkt. 264. Thus, Defendants' argument once again fails because Defendants have not "tie[d] the requested discovery to th[e] remedies" of accounting and damages. *Id.* at 25.

14

To be sure, Defendants have articulated their theory of monetary damages as relying on data, facts, discovery, and other information already in the record, including the Expert Report of John Pfahl ("Pfahl Report")[2] which states the following:

- "A calculated total volume of 132,678 tons of limestone was Mined during the installation of the Project." Ex. D, 4 (Pfahl Report).
- "The value of the limestone Mined is readily derived from a standard royalty rate paid to the Osage Mineral Council ("OMC") on limestone production. At the time the limestone was Mined, the royalty rate was $0.52/ton which results in a total value of mineral Mined of $68,993." *Id.*
- "Applying the Current Value of Funds Rate (CVFR) as an annual interest rate from the time the mineral was Mined to the valuation date in this report results in additional interest charges of $4,970. Adding this to the value of the mineral Mined results in a total value owed to the OMC of $73,962." *Id.*

It is unclear how information related to lawsuits the OMC may have filed, instances where the BIA insisted that ejectment was the proper remedy for unlawful mining of the Osage Mineral Estate, whether anyone has unlawfully mined the Osage Mineral Estate, or any other information possibly encapsulated by Topics 6 and 7 would inform Defendants' calculation of monetary damages or Pfahl's analysis. It simply will not, as Topics 6 and 7 have nothing to do with a calculation of monetary damages.

Moreover, Topics 6 and 7 are entirely irrelevant to this Court's consideration of Defendants' argument that they constitute an "innocent trespasser" and should be entitled to deductions from monetary damages under Oklahoma law. How, if at all, the OMC has "resolved or addressed" whether a party, aside from Defendants, violated the law (Topic 6), or whether the OMC has "sought, endorsed, imposed, or opposed ejectment or removal" when another party, aside from Defendants, violated the law (Topic 7), has no bearing on whether Defendants

---

[2] The OMC maintains its position that Pfahl's calculation of monetary damages for Defendants' unlawful mining of the Osage Mineral Estate is not the proper measure of damages in this case. The OMC's objections aside, Pfahl's report and calculations constitute the only theory Defendants have advanced to explain their position on monetary damages.

themselves had an *honest* belief that their attorneys were correct and that they did not need a permit to mine the Osage Mineral Estate. Defs.' Mot. 5–7. And, in the event that monetary damages are found to be the appropriate form of relief, what the OMC may have known or done in the past is not at all probative to determine whether Defendants had an "honest belief that [their] conduct was lawful" and thus constitute an "innocent trespasser." *Dilworth*, 1964 OK 112, ¶ 30, 405 P.2d 38, 46. For these reasons, Topics 6 and 7 do not relate to Defendants' good faith belief that they did not need a permit, and the Court should therefore deny Defendants' attempt to take a Rule 30(b)(6) that fails to identify a single subject of relevant inquiry. *See Edelen v. Campbell Soup Co.*, 265 F.R.D. 676, 701 (N.D. Ga. 2010) (upholding the objection to the Rule 30(b)(6) deposition topic because the topic does not concern "factual issues that will either prove [the plaintiff's] claims and/or disprove the Defendants' defenses.").

### D.  Topics 6 and 7 Are Not Relevant to the Weighing of the Equities Under *Davilla*

Nor would Topics 6 or 7 contribute anything relevant to this Court's weighing of the equities under *Davilla*. Defendants, however, assert that Topics 6 and 7 are relevant because "the Court has also noted that, in *Davilla*, the Tenth Circuit emphasized the importance of 'knowing the relative costs and benefits of [defendant] removing the pipeline, either as they pertain to these parties or the public at large.'" Defs.' Mot. 16 (quoting May 21, 2021 Order 8, Dkt. 226). While it is true that both this Court and the *Davilla* Court have concluded courts must weigh the "relative costs and benefits" to determine whether injunctive relief in the form of ejectment is appropriate to remedy trespass on Indian trust property, it is not true that identifying "[a]ll instances in which a person or entity engaged in mining for which a lease was required under 25 C.F.R. Part 214" (Topic 6) will relate in any shape or form to this Court's evaluation of the actual relative costs and benefits were the Osage Wind Farm to be permanently removed. *Id.* at

16

5. Nor will the identification of all instances where the BIA or OMC has historically requested ejectment (Topic 7) aid the Court in weighing the actual costs or benefits when it comes to the permanent removal of the Osage Wind Farm. *Id*. at 6.

Most notably, Topics 6 and 7 bear no relevance to this Court's weighing of the equities under *Davilla* because they relate exclusively to what the OMC (and the United States) may or may not have done in the past in response to the actions of third parties, which is not before the Court. This Court has repeatedly concluded that the Tenth Circuit's decision in *Davilla* "does not include any backward-looking considerations of past conduct or knowledge" on the part of the OMC or the United States. January 16, 2021 Order 23, Dkt. 210; *see also* May 21, 2021 Order 8–10, Dkt. 226; August 25, 2021 Order 5, 24, Dkt. 264. This is because the "*Davilla* test focuses on the present balance of harms to the parties and the public." January 16, 2021 Order 23, Dkt. 210. In her opinion, Magistrate Judge Jayne specifically recognized that "[r]egardless of what test the district judge applies, he indicated that delay or misconduct of the Osage Nation, including the United States as trustee for the Osage minerals estate, will play no role in the equitable analysis." *Id.* at 24; *see also, e.g.* August 25, 2021 Order 5, Dkt. 264 (considering and, once again, affirming "the Magistrate Judge['s] . . . ruling [that] all 'backward-looking' evidence of the conduct of the United States and OMC is not material and therefore no discovery regarding any such conduct is appropriate."); August 25, 2021 Order 24, Dkt. 264 (noting that the Defendants' "requested discovery is irrelevant" for past events because the court is now considering "prospective factors that contemplate the future effect of the requested relief.").

Thus, even if Defendants could somehow make the argument that this discovery would demonstrate that the OMC or the United States, in the past, failed to request ejectment or other similar relief when others illegally mined the Osage Mineral Estate, such arguments and

evidence would be irrelevant to this Court's consideration of the equities under *Davilla*. Whether the OMC did enough to prosecute the hypothetical bad actions of parties not before the Court bears no relevance to the question of whether the permanent removal of the Osage Wind Farm will serve the public interest. Again, Defendants are trying to sidestep this Court's prior orders limiting the scope of relevant discovery under *Davilla* by arguing that what the OMC may or may not have done in the past is somehow relevant to whether injunctive relief is appropriate going forward. But as this Court has previously held, "[p]ermitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy." March 9, 2021 Am. Op. and Order 8, Dkt. 219 (citing *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 967–68 (10th Cir. 2019). Per this Court's prior orders and *Davilla*, the weighing of the equities analysis concerns only present harms to the parties and the public that could arguably result from the granting, or failure to grant, permanent injunctive relief.[3]

Because Topics 6 and 7 seek discovery on non-relevant matters in this case—past conduct and events by the OMC—the OMC properly objected to these requests and should not have to designate an individual to testify about these topics. *See Oppenheimer Fund, Inc. v.*

---

[3] Defendants baldly assert that discovery related to whether the OMC has taken actions in the past to correct the unlawful actions of other unlawful miners of the Osage Mineral Estate will demonstrate whether "'the harm [in this case] is 'irreparable.'" Defs.' Mot. 16. Putting aside that Defendants do not cite a single case or authority to support their theory that such evidence would be at all relevant to the Court's irreparable harm analysis—it would not—but even without any authority to support this sort of an inquiry, it is clear that Defendants want to somehow argue that if the OMC has not taken stringent enough actions against others in the past, clearly Defendants' unlawful conduct cannot cause irreparable harm now, in the present. Once again, this is a bold attempt to "avoid the[] stringent leasing requirements by pointing to the Nation's own conduct. . . ." March 9, 2021 Am. Op. and Order 8, Dkt. 219 (citations and quotation marks omitted). Such avoidance is not permitted since "Congress [] dictated the prerequisites" for mining the Osage Mineral Estate (an Indian trust asset), *id.* at 7 (internal quotations omitted), and Congress has never predicated the protection of the Osage Mineral Estate on an evaluation of whether the OMC did enough, historically, to protect the Estate. The imposition of injunctive relief, in this instance, in no way hinges upon the sufficiency of the OMC's actions, historically, vis a vis other hypothetical bad actors.

*Sanders,* 437 U.S. 340, 352 (1978) ("[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken . . . ."). And, because the burden is on Defendants to demonstrate the relevance of their identified topics, and Defendants have not, their Motion to Compel a Rule 30(b)(6) deposition of the OMC should be denied. *See, e.g., Murphy v. Kmart Corp.*, 255 F.R.D. 497, 502 (D.S.D. 2009) (noting that "the initial burden is on [the party seeking the deposition] to show how the information sought through the Rule 30(b)(6) deposition is relevant to the subject matter of his case").

### E.  Even If Topics 1, 6, and 7 Did Relate to Relevant Issues—They Do Not— These Topics Are Not Described with Sufficient Particularity

Even if Topics 1, 6, and 7 did relate to relevant issues, these topics remain improper because they are not described with the "reasonable particularity" that Rule 30(b)(6) requires. Rule 30(b)(6) provides that "[i]n its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity *and must describe with reasonable particularity the matters for examination*." (emphasis added). To abide by this particularity requirement, "the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006). Indeed, an "overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000). And where a party "cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Id.*

Here, Topics 1, 6, and 7 violate the particularity requirement because the Topics amount to a fishing expedition regarding the actions of third parties, not even before the Court, asking

19

the OMC to designate a representative to testify as to the activities others may or may not have taken in the past with regards to the Osage Mineral Estate. For instance, Topic 6 asks for:

> All instances in which a person or entity engaged in mining for which a lease was required under 25 C.F.R. Part 214 without first obtaining such a lease, and how, if at all, the OMC or the BIA, Office of the Osage Agency resolved or addressed such instances, including whether by order, agreement, consent, a lawsuit filed or threatened to be filed by or on behalf of the BIA and/or OMC, or otherwise.

Defs.' Mot. 5. Topic 6 contains no information particular to a specific instance when a third party may have illegally mined the Osage Mineral Estate, and therefore, if permitted to proceed, this Topic would require the OMC to undertake an incredible research effort to uncover if and when others may have sought to unlawfully mine the Osage Mineral Estate. *See Reed*, 193 F.R.D. at 692 (concluding a Rule 30(b)(6) topic fails the particularity requirement where the party "cannot identify the outer limits of the areas of inquiry noticed . . . ."). Furthermore, there is no temporal limitation for this topic, so an OMC deponent would be forced to recall information for an indefinite time. Federal courts hold that topics with no temporal limitation fail to satisfy Rule 30(b)(6)'s "particularity requirement" and are "substantively overbroad and unduly burdensome." *See Hartford Fire Ins. Co. v. P & H Cattle Co.*, No. CIV.A. 05-2001-DJW, 2009 WL 2951120, at *10 (D. Kan. Sept. 10, 2009); *Saevik v. Swedish Med. Ctr.*, No. C19-1992-JCC, 2021 WL 2411612, at *2 (W.D. Wash. June 14, 2021) (holding that the 30(b)(6) topic was "substantively overbroad and unduly burdensome" because the plaintiffs did not provide a "temporal limitation or specificity regarding which compliance policies or underlying facts Plaintiff seeks information on").

Next, Topic 1 seeks information that, as discussed above, is entirely irrelevant to a weighing of the equities analysis under *Davilla*, and also lacks any relevance in terms of a

calculation of monetary damages, should those be awarded in this case. Regardless, this Topic also lacks particularity. Topic 1 asks for:

> The processes or procedures for issuing a lease pursuant to 25 C.F.R. Part 214 in 2013 and 2014, including without limitation (i) the process or procedure by which the OMC claims Defendants should have obtained a lease, (ii) the documents or information available to the public during 2013 or 2014, if any, concerning such process or procedure, (iii) where and through what method such documents or information were available to the public during 2013 or 2014, and (iv) how and in what manner the availability of such documents or information was made known to the public during 2013 or 2014.

Defs.' Mot. 4–5. This Topic is overly broad in its designation of information because it uses the phrase "including without limitation" in referencing the items identified in parts (i)-(iv). This Court has made clear that this type of "including without limitation" language is too broad and should be stricken. *See Burke v. Glanz*, No. 11-CV-720-JED-PJC, 2013 WL 4521172, at *1 (N.D. Okla. Aug. 26, 2013) (noting the "[u]se of a phrase such as 'including but not limited to' in a Rule 30(b)(6) notice may cause the notice to be stricken for lack of definiteness."); *Bristow First Assembly of God v. BP p.l.c.*, No. 15-CV-523-TCK-FHM, 2019 WL 5783729, at *5 (N.D. Okla. Nov. 6, 2019) (same). And, of course, asking an OMC deponent to prepare to answer questions about what documents or information was "made known to the public during 2013 or 2014" is so incredibly broad that it cannot be construed to comply with Rule 30(b)(6)'s requirement that topics "must describe with reasonable particularity the matters for examination."

Finally, Defendants' Topic 7 asks for:

> All instances in which the BIA, Office of the Osage Agency and/or OMC sought, endorsed, imposed, or opposed ejectment or removal of any structures or materials placed or constructed by any person or entity without first obtaining a lease required under 25 C.F.R. Part 214.

21

Defs.' Mot. 6. Like Topic 6, this Topic is overly broad and unduly burdensome because it asks for "all instances" in which the OMC "sought, endorsed, imposed, or opposed ejectment or removal of any structures or materials," and thus the Topic must "be stricken for lack of definiteness." *Burke*, 2013 WL 4521172, at \*1. Likewise, the Topic lacks particularity because there is no temporal limitation. *See Hartford Fire Ins. Co.*, No. CIV.A. 05-2001-DJW at \*10; *Johnson v. Charps Welding & Fabricating, Inc.*, No. 14-CV-2081 (RHK/LIB), 2016 WL 11268315, at \*8 (D. Minn. Apr. 19, 2016) (granting protective order against topic eight because this topic has "no temporal limitation identified in the [t]opic" therefore the topic is "not described with reasonable particularity."). And beyond these two issues, this Topic lacks particularity because it asks the OMC to prepare a deponent to speak to any instance where any "any structures or materials" were removed from the Osage Mineral Estate. This Topic is not limited to wind farms, which is of course the issue in this case, nor is it limited to instances where the OMC exclusively sought or requested removal. The amount of research the OMC would have to undertake to truthfully answer this Topic—a Topic that is not cabined by the issues that remain relevant in this case—would impose an undue burden on the OMC, and therefore, violates Rule 30(b)(6)'s requirement that topics be described with particularity.

Because Topics 1, 6, and 7 all fail to satisfy Rule 30(b)(6)'s particularity requirement, the OMC acted properly objecting to these Topics and should not have to designate a deponent to testify on these Topics.

### F.   The OMC's Objections Are Not Procedurally Improper

 The OMC's formal objections embodied in its August 11, 2021 letter to Defendants' counsel, Defs.' Mot., Ex. D, Dkt. 266-4, properly asserted the OMC's challenges to Defendants' deficient Rule 30(b)(6) notice, and the Federal Rules of Civil Procedure did not require the OMC to immediately seek a protective order from the Court. *See Sprint Commc'ns Co., L.P. v. Vonage*

*Holdings Corp.*, No. 05-2433-JWL-DJW, 2007 WL 2333356, at *2 (D. Kan. Aug. 15, 2007)

(rejecting the notion "that a request for protective order pursuant to Rule 26(c) provides the sole

remedy for challenging a Rule 30(b)(6) deposition notice."). Because the OMC provided

Defendants with notice that the proposed Topics "lack[] the particularity required by the Rule

[30(b)(6)]," Defs.' Mot, Ex. D at 1, Dkt. 266-4, Defendants had an obligation to re-notice the

OMC with a proper notice that described the topics with "reasonable particularity" and

"painstaking specificity." *See* Fed. R. Civ. P. 30(b)(6); *McBride v. Medicalodges, Inc*., 250

F.R.D. 581, 584 (D. Kan. 2008); *Burke v. Glanz*, No. 11–CV–720–JED–PJC 2013, WL 4521172,

at *1 (N.D. Okla. Aug. 26, 2013).

Notably, federal courts have found that "Rule 26(c) does not provide for any type of

order to protect a party from having to provide discovery on topics merely because those topics

are overly broad or irrelevant, or because the requested discovery is not reasonably calculated to

lead to the discovery of admissible evidence." *Sprint Commc'ns Co., L.P.*, 2007 WL 2333356 at

*2. Here, the OMC's objections to Topics 1, 6, and 7 are that these Topics are overly broad and

irrelevant. *See* Defs.' Mot, Ex. D at 2–4, Dkt. 266-4 (objecting that the Topics are "overly broad"

and not relevant).[4] And furthermore, "if a party objects to providing discovery on the basis that

the request is overly broad, irrelevant or not calculated to lead to the discovery of admissible

evidence, this Court has held that the validity of such an objection should be considered in the

context of a motion to compel." *Sprint Commc'ns Co., L.P.*, 2007 WL 2333356 at *2.

Accordingly, in this instance, the OMC acted properly in informing Defendants of its objections

---

[4] Two of the OMC's objections, regarding Topics 6 and 8, assert that the Topics are "unduly burdensome." Defs.' Mot, Ex. D at 5, Dkt. 266-4. However, the OMC also objected to these Topics on other grounds that do not fall within the scope of Rule 26(c), rendering the fact that the Topics are unduly burdensome irrelevant as to the propriety of the OMC's decision not to seek a protective order.

based on relevance, and the OMC is not at fault for not having filed a motion for protective order.

Still, Defendants assert that "Plaintiffs have not properly brought their objections before the Court . . . ." Defs.' Mot. 9 (citing *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999)). The authorities Defendants cite in support of this assertion, however, are not persuasive. It is true that the District Court in *Starlight Int'l Inc.* concluded that entities "have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." Defs.' Mot. 8 (quoting *Starlight Int'l Inc.*, 186 F.R.D. at 639). But in *Starlight Int'l Inc.*, the party designated a witness that made no effort to prepare for the Rule 30(b)(6) deposition, *see Starlight Int'l Inc.*, 186 F.R.D. at 639 (noting the deponent "made no effort to review his own files" prior to the deposition), and as a result, the party presenting the deponent "allowed plaintiff to travel to London, England, to depose a poorly prepared party representative." *See id.*

This is not the case here. The OMC has not failed to prepare a witness to be deposed on relevant topics, nor has the OMC made Defendants expend resources to travel to a deposition for which an OMC witness has not been prepared. In this case, Defendants have failed to present the OMC with a Rule 30(b)(6) notice that properly identifies any *relevant* topics with *reasonable particularity* and *painstaking specificity*, and accordingly, the OMC's August 11, 2021 letter, Defs.' Mot, Ex. D, Dkt. 266-4, and the OMC's participation in the Meet and Confer are more than procedurally sufficient to communicate the OMC's objections to Defendants. Defendants could have revised their Rule 30(b)(6) notice, but they chose not to, and instead filed this instant

Motion to Compel.[5] The OMC, in this case, has done nothing wrong. *See Sprint Commc'ns Co., L.P.,* 2007 WL 2333356, at *3 ("Upon consideration of the formal objection lodged, the refusal to designate, and the subsequent motion to compel designation, the Court [should] find[] that, from a procedural standpoint, the dispute at issue has been properly presented to the Court for determination.").[6]

## V.   CONCLUSION

For the reasons stated above, the OMC respectfully requests that the Court deny Defendants' Motion to Compel.

Respectfully submitted,

s/ Mary Kathryn Nagle
Mary Kathryn Nagle, OBA No. 33712
Wilson Pipestem, OBA No. 16877
Abi Fain, OBA No. 31370

---

[5] Defendants' reliance on *Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, is likewise unhelpful to their position that the OMC has somehow procedurally erred. *See* Defs.' Mot. 8 (citing No. 11-CV-02007-MSK-KLM, 2013 WL 627149, at *7 (D. Colo. Feb. 19, 2013), *order amended on reconsideration*, No. 11-CV-02007-MSK-KLM, 2013 WL 12246941 (D. Colo. Sept. 12, 2013)). Like *Starlight Int'l Inc.*, *Int'l Bhd. Of Teamsters* also involves a deposition that was taken where one party "failed to adequately prepare" the witness, leading to a deposition that wasted the party's resources. 2013 WL 627149, at *2. And, in contrast to the circumstances leading to the present Motion to Compel, in *Int'l Bhd. of Teamsters*, the party opposing the topics in the Rule 30(b)(6) deposition had merely had a conversation with counsel noticing the deposition, but had not lodged formal objections in writing outlining how and why the noticed topics were irrelevant. Here, the OMC did not "[m]erely forewarn[] opposing counsel that the information sought is not relevant," *id.* at *7, but rather, the OMC provided Defendants with an incredibly thorough letter explaining how, under this Court's previous orders, the noticed topics were irrelevant. Defs.' Mot, Ex. D, Dkt. 266-4. The OMC also participated in a meet and confer in good faith. The OMC has done more than "merely forewarn," and the Defendants have had every opportunity to notice a Rule 30(b)(6) deposition that contains relevant topics. They have chosen not to.

[6] Furthermore, even if a motion for a protective order was the proper vehicle for the OMC to challenge Defendants' Rule 30(b)(6) deposition notice (which it was not), the OMC's actions were reasonable because Defendants' proposed Topics for the deposition were predicated on Defendants prevailing on their motion for reconsideration, Dkt. 229, which has since been denied. *See* August 25, 2021 Order, Dkt. 264. Defendants' proposed Topics unabashedly defy the law of this case. Had a motion for a protective order been appropriate, it would still have been reasonable for the OMC to rest on its formal objections because it is irrational for Defendants to continue to pursue the requested testimony in light of this Court's previous orders. To frivolously proceed further down this road, as Defendants have now chosen to do, results in nothing more than a drain on the Court's and the OMC's resources.

Jennifer Baker, OBA No. 21938
Shoney Blake, Cal. Bar No. 264981
Pipestem and Nagle Law, P.C.
401 S. Boston Ave., #2200
Tulsa, Oklahoma 74103
918-936-4705 (Office)
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
afain@pipestemlaw.com
jbaker@pipestemlaw.com
 sblake@pipestemlaw.com
*Counsel for Intervenor-Plaintiff*
*Osage Minerals Council*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ryan A. Ray
Joel L. Wohlgemuth
rar@nwcjlaw.com
jlw@nwcjlaw.com

-and-

Lynn H. Slade
Sarah S. Stevenson
Deana M. Bennett
Spencer L. Edelman
lynn.slade@modrall.com
sarah.stevenson@modrall.com
deana.bennett@modrall.com
spencer.edelman@modrall.com
*Counsel for Defendants*

David McCullough
dmccullough@dsda.com

Jeffrey S. Rasmussen
jrasmussen@ndnlaw.com

-and-

Wilson Pipestem
Mary Kathryn Nagle
Abi L. Fain
Jennifer Baker
Shoney Blake
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
afain@pipestemlaw.com
*jbaker@pipestemlaw.com*
*sblake@pipestemlaw.com*
*Counsel for Intervenor-Plaintiff,*
*Osage Minerals Council*

-and-

Thomas J. McCormack
Robin D. Ball
Robert Comer
Robert Kirby thomas.mccormack@nortonrosefullbright.com
robin.ball@nortonrosefullbright.com bob.comer@nortonrosefullbright.com
robert.kirby@nortonrosefullbright.com
*Counsel for Defendants*

Cathryn Dawn McClanahan
cathy.mcclanahan@usdoj.gov

*Counsel for Plaintiff, United States*

/s/ Mary Kathryn Nagle