# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE OSAGE MINERALS COUNCIL, ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Case No. 14-CV-704-GKF-JFJ |
| OSAGE WIND, LLC; ENEL KANSAS, LLC; and ENEL GREEN POWER NORTH AMERICA, INC., ) ) ) ) ) ) | |
| Defendants. ) | |

## REPLY IN FURTHER SUPPORT OF DEFENDANTS'
## MOTION TO COMPEL PLAINTIFFS TO DESIGNATE PERSONS TO TESTIFY
## PURSUANT TO RULE 30(B)(6) [Dkt. # 266]

Ryan A. Ray, OBA #22281
NORMAN WOHLGEMUTH, LLP
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

Lynn H. Slade, *pro hac vice*
Sarah M. Stevenson, *pro hac vice*
Dominic A. Martinez, *pro hac vice*
MODRALL, SPERLING, ROEHL,
HARRIS & SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

Thomas J. McCormack, *pro hac vice*
Robert Kirby, *pro hac vice*
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
Robin D. Ball (Los Angeles Office), *pro hac vice*
Robert D. Comer (Denver Office), *pro hac vice*
NORTON ROSE FULBRIGHT US LLP

**ATTORNEYS FOR DEFENDANTS, OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

**Dated: October 4, 2021**

Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively, "Defendants") submit this reply in further support of their Motion to Compel the United States of America ("United States") and the Osage Mineral Council ("OMC") (collectively, "Plaintiffs") to Designate Persons to Testify Pursuant to Rule 30(b)(6) (Dkt. # 266) (the "Motion").

## INTRODUCTION

The responses to the Motion filed by the United States (Dkt. # 277) (the "U.S. Response") and the OMC (Dkt. # 278) (the "OMC Response" and, together with the U.S. Response, the "Responses") fail to justify Plaintiffs' near total refusal to designate witnesses under Rule 30(b)(6). Plaintiffs seek to foreclose Defendants from taking practically any discovery authorized by Rule 30(b)(6), despite Plaintiffs' failure to comply with the requirement that they affirmatively raise their objections in a motion for a protective order. The single district court decision on which Plaintiffs rely to excuse this failure is unpersuasive and against the weight of authority. The Court need proceed no further before granting this Motion. Plaintiffs' objections fare no better on the merits. Contrary to Plaintiffs' assertions that the topics at issue are irrelevant, they seek important discovery relevant to any permanent injunction analysis under *Davilla v. Enable Midstream Partners, L.P.*, 913 F.3d 959 (10th Cir. 2019), and to the measure of damages for Plaintiffs' trespass claim.

## ARGUMENT AND AUTHORITIES

I. **PLAINTIFFS' OBJECTIONS TO DEFENDANTS' 30(B)(6) NOTICES WERE PROCEDURALLY IMPROPER IN THE ABSENCE OF A MOTION FOR A PROTECTIVE ORDER**

The United States refused to prepare a 30(b)(6) witness for all but part of one of the topics identified by Plaintiffs. The OMC simply refused to produce a witness at all. Neither Plaintiff moved for a protective order, forcing Defendants to make a motion to compel. By failing to move for a protective order, Plaintiffs remain obligated "to make a conscientious, good-faith effort to

designate knowledgeable persons for Rule 30(b)(6) depositions." *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999).

The OMC suggests that not only were Plaintiffs not required to seek a protective order, but that Defendants were somehow required to bring a motion to compel. OMC Resp. at 23. This overlooks that "[i]f a party receiving [a Rule 30(b)(6) deposition] notice believes that the notice is improper for some reason, that party does not have the right to refuse to obey the deposition notice on any ground." *Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, No. 11-CV-02007-MSK-KLM, 2013 WL 627149, at *6 (D. Colo. Feb. 19, 2013), *order amended on reconsideration*, No. 11-CV-02007-MSK-KLM, 2013 WL 12246941 (D. Colo. Sept. 12, 2013); *see also Robinson v. Quicken Loans, Inc.*, No. 3:12-cv-00981, 2013 WL 1776100, at *3 (S.D. W.Va. Apr. 25, 2013) ("[T]he corporation bears the burden of demonstrating to the court that the notice is objectionable or insufficient."). The OMC solely relies on *Sprint Communications Co., L.P. v. Vonage Holdings Corp.*, No. 05-2433-JWL-DJW, 2007 WL 2333356, at *2 (D. Kan. Aug. 15, 2007). That case is an outlier and against the weight of authority in this Circuit. The more recent decision in the same district in *Espy v. Mformation Techs., Inc.,* reached the opposite conclusion, citing numerous decisions agreeing that it is the duty of the objecting party to move for a protective order or waive such objections. No. 08-2211-EFM-DWB, 2010 WL 1488555, at *3 (D. Kan. Apr. 13, 2010) (collecting cases).

The United States asserts that it should be excused from this duty, because it produced a witness regarding part of Topic 4. U.S. Resp. at 6-7. The United States misses the point. At the August 13 meet and confer, the United States flatly refused to do anything beyond producing a witness for (less than) one topic. This does nothing to excuse the United States from complying with the requirements of Rule 30(b)(6) as to all other topics. *See Int'l Bhd. of Teamsters*, 2013

WL 627149 at *7 ("Merely forewarning opposing counsel that the information sought is not relevant or could be privileged" is "equally applicable" to failing to produce a witness at all). To the contrary, "[t]he proper method for bringing to the Court's attention any deficiencies in the identification of topics is to file a motion for a protective order." *Espy*, 2010 WL 1488555, at *3.

Defendants were not, as the United States asserts, required to object on the record during the deposition (though they did so), or furnish the transcript of that deposition to the Court, as a prerequisite to bringing this Motion. U.S. Resp. at 2-3. The subject of this motion is the United States' objection to designating any witness for Topic Nos. 1, 6 and 7 and its failure to move for a protective order; not the (improper) instructions not to answer that counsel for the United States made during the deposition of the witness produced regarding part of Topic 4.[1] Courts have ordered depositions reopened when deponents are not properly prepared on all of the requested topics. *See Espy*, 2010 WL 1488555, at *4 (reopening 30(b)(6) deposition where deponent was not "adequately prepared to testify" on topics the objecting party wrongly felt were not "identified with 'painstaking specificity'"); *Arkema Inc. v. Asarco, Inc.*, No. C05-5087 RBL, 2007 WL 641847, at *1-*2 (W.D. Wash. Feb. 23, 2007) (ordering additional 30(b)(6) deposition testimony after previous 30(b)(6) deposition did not cover disputed topic).

## II. DEFENDANTS' 30(B)(6) NOTICES WERE PARTICULARIZED

Plaintiffs still are unable to provide any authority suggesting that a Rule 30(b)(6) notice lacks reasonable particularity because it seeks to depose two plaintiffs concerning matters that are

---

[1] Defendants were not, as the United States suggests, "content" with Mr. Streater's deposition regarding part of Topic No. 4, U.S. Resp. at 7, and expressly reserved their rights regarding other noticed topics at the August 26 deposition. Dep. of Eddie Streater, attached as Ex. A, at 55:13-56:19 ("We view the deposition as still open because of those other issues and because it was not adequately prepared . . . ."). And contrary to the United States' insinuations, U.S. Resp. at 7, the fact that Defendants brought the Motion for only three topics does not signify anything other than the fact Defendants are seeking to limit the scope of the Motion to the extent possible.

3

relevant to the claims of both. Defendants are aware of none. *See Doe v. Trump,* 329 F.R.D. 262, 269-70 (W.D. Wash. 2018) (permitting "identical" 30(b)(6) notices on two distinct federal agencies).

Plaintiffs' other objections regarding the use of the phrase "including without limitation" in certain topics and lack of temporal restrictions also remain unpersuasive. OMC Resp. at 21; U.S. Resp. at 5. The Notice satisfied the reasonable particularity standard insofar as it states in plain language "the subject matter of the testimony sought." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1054279, at *3 (D. Kan. Apr. 9, 2007). Further, such objections are not appropriate grounds for a blanket refusal to produce a witness for the noticed topics. *See Bristow First Assembly of God v. BP p.l.c.*, No. 15-CV-523-TCK-FHM, 2019 WL 5783729, at *5 (N.D. Okla. Nov. 6, 2019) (allowing Rule 30(b)(6) deposition and only granting Protective Order as to the phrase "including but not limited to"). Finally, Defendants had already resolved Plaintiffs' objections to the time period of certain topics during the meet and confer process. The United States essentially concedes as much, and this objection is no excuse to refuse to produce a witness on the topics at issue. *See* U.S. Resp. at 5 ("Defendants agreed in the meet and confer that some temporal limit would be appropriate").

III. **THE TOPICS ARE RELEVANT AND NOT PRECLUDED BY THE COURT'S ORDERS**

Both the United States and the OMC yet again argue that the Court's prior orders preclude relevant discovery. This is wrong. The Court's previous decisions regarding discovery were limited to the specific discovery requests then at issue. Those decisions expressly did not consider the potential relevance of such discovery to the calculation of trespass damages and Defendants' good faith, as those issues were not before the Court at that time. *See* Dkt. # 264 at 24-25 (declining to decide whether the at-issue discovery was relevant "beyond the equitable remedies of injunction and ejectment," because those issues had not been raised); Dkt. # 226 at n. 9 (stating the Court did

"not consider the potential relevance of the requested discovery to Osage Wind's good faith in proceeding without a lease"). Further, the Court explained that in any permanent injunction analysis under *Davilla*, the Court would be required to consider factors including the relative costs and benefits of [defendant] removing the pipeline, either as they pertain to these parties or the public at large," and whether there would be "irreparable harm" absent such an injunction. Dkt. # 226 at 8 (quoting *Davilla*, 913 F.3d at 974). Topics 1, 6, and 7 are relevant to those subject matters including Defendants' good faith, the quantum of harm, the existence of "irreparable harm," and the costs and benefits of any injunction to the parties.

  **A. *Topic 1 (Publicly Available Information Regarding 25 C.F.R. Part 214 Leases)***

Topic 1 seeks testimony concerning "processes or procedures for issuing a lease pursuant to 25 C.F.R. Part 214 in 2013 and 2014" and whether, where, and in what manner documents or information regarding those processes and procedures were made available to the public (if at all). This topic seeks testimony relevant to Defendants' good faith and, therefore, to an analysis of trespass damages. As Defendants intend to show at trial, they made significant efforts to obtain information from the United States, the OMC, and other available sources concerning the leasing requirements of 25 C.F.R. Part 214, and were unable to identify any contemporaneous guidance or precedent for the application of those requirements to comparable construction activities. The testimony sought by Topic 1 is relevant to the reasonableness and credibility of the evidence Defendants' intend to present concerning those subject matters, among other things. Plaintiffs' attempts to dispute the relevance of Topic 1 fail.

The OMC asserts that, contrary to the allegations in the Amended Complaint, the test for good faith is not what Defendants "should have known," but rather whether Defendants "acted in the honest belief that their conduct was lawful." OMC Resp. at 7-11 (quoting *Dilworth v. Fortier*, 405 P.2d 38, 46 (Okla. 1964)). Regardless, testimony from Defendants confirming (as appears to

5

be the case) that processes and procedures for obtaining a lease under 25 C.F.R. Part 214 were not made available to the public would be equally relevant to whether Defendants "should have known" that a lease was required, or whether they "acted in the honest belief" that the lease was not required.

The OMC next asserts that Defendants already possessed "the policies and procedures related to obtaining a permit to mine on the Osage Nation Mineral Reservation." OMC Resp. at 12-13. As outside counsel Steve Willman then wrote in the email correspondence appended to the OMC's Response, however, so-called "sandy soil mining permit" documentation appeared on its face to apply only to "highway construction." Dkt. # 278-1 at 2. Nowhere in such documents was there any assertion that crushing rock for backfill incident to surface construction activities required such a permit or a lease. Moreover, BIA Superintendent Robin Phillips admitted in her deposition that 25 C.F.R. Part 214 nowhere provides for "sandy soil permits" and that there was not "anything . . . published . . . that referenced sandy soil permits." *See* Dep. of Robin Phillips, attached hereto as Exhibit B, at 99:4-101:4. If anything, the OMC's attempt to dispute Defendants' contention that they were never provided with notice of processes and procedures purportedly indicating that the contemplated construction activities for the Project required a lease under 25 C.F.R. Part 214 is another reason why the discovery Defendants seek is relevant.

The OMC then reverses course yet again and argues that the documents it chose to attach as exhibits to the Response are in fact "irrelevant" to good faith because they have "no bearing on whether Defendants honestly believed their attorneys' advice that these policies and procedures did not apply to them." OMC Resp. at 13. Defendants cite no cases however, for the proposition that Defendants' reliance on the advice of their counsel that no lease was required somehow precludes Defendants from submitting additional evidence of their good faith. Indeed, *Dilworth*

6

*v. Fortier* stands for the opposite conclusion. There, the defendant relied on an attorney's advice and the Oklahoma Supreme Court considered other factors such as whether the attorney was on sufficient notice regarding recent oil production on the land at issue, the "orderly manner" in which the defendants developed the land, and the "divergent views" in the opinions of courts considering whether defendants had title to the mineral interest. *Dilworth*, 405 P.2d at 47. Equally unconvincing are the United States' conclusory arguments that Topic 1 is irrelevant because it is the "law of the case" that the Court "will not allow any defense forgiving" the requirement for a mineral lease. U.S. Resp. at 9. Topic 1 does not seek testimony to "forgive" the leasing requirement, but instead evidence relevant to Defendants' good faith.

### B.     *Topics 6 and 7 (Remedies and Damages for violations of 25 C.F.R. Part 214 Leases)*

Topics 6 and 7 both seek testimony regarding other instances of "mining" without first obtaining a lease required under 25 C.F.R. Part 214, and remedies sought or imposed in such instances.[2] Both the OMC and the United States contend that Topics 6 and 7 are improper attempts to revive affirmative defenses dismissed from the case. U.S. Resp. at 10; OMC Resp. at 16-18. Not so. Such testimony is relevant to Defendants' good faith, the calculation of money damages, and "knowing the relative costs and benefits" of proposed equitable relief under *Davilla*.[3] Dkt. #

---

[2] Topic 6 seeks testimony concerning "how, if at all, the OMC or the BIA, Office of the Osage Agency resolved or addressed such instances, including whether by order, agreement, consent, a lawsuit filed or threatened to be filed by or on behalf of the BIA and/or OMC, or otherwise." Topic 7 seeks testimony concerning "instances in which the BIA, Office of the Osage Agency and/or OMC sought, endorsed, imposed, or opposed ejectment or removal of any structures or materials placed or constructed by any person or entity without first obtaining a lease required under 25 C.F.R. Part 214."

[3] The OMC continues to argue that discovery on these issues only constitutes "backward-looking" evidence. OMC Resp. at 17-18. While these topics involve events of the past, Defendants' purpose for requesting them is plainly prospective under *Davilla*, because it "focus[es] on the future effect of the requested relief." Order on Motion to Reconsider, Dkt. 264, at 19-20.

226 at 8 (quoting *Davilla*, 913 F.3d at 974).  For example, if the OMC or United States signed leases or reached monetary settlements in such instances, the terms of those leases or settlements could be relevant to assessing damages in this case.  Likewise, testimony regarding a lack of precedent for enforcing 25 C.F.R. Part 214 in other comparable instances of "mining" without a lease under 25 C.F.R. Part 214 would bolster the reasonableness and credibility of Defendants' intended testimony that they searched for but failed to identify such precedent.

The testimony is also relevant to show whether the harm is "irreparable" under a *Davilla* analysis.  The OMC contends that Topics 6 and 7 bearing on whether the harm is irreparable makes it "clear that Defendants want to somehow argue that if the OMC has not taken stringent enough actions against others in the past, clearly Defendants' unlawful conduct cannot cause irreparable harm now, in the present."  OMC Resp. at n.3.  But Defendants make no such attempt to litigate the OMC's conduct.  Instead, discovery regarding whether in similar instances the parties quantified the harms is further evidence that the harms can be quantified in this case and therefore injunctive relief is not appropriate.  A useful analogue is *CRST Expedited, Inc. v. Swift Transp. Co. of Ariz.* No. 17-CV-25-CJW, 2018 WL 4561745 (N.D. Iowa Sept. 21, 2018).  In that case, the defendant sought discovery concerning "all lawsuits, proceedings and other legal actions initiated by [plaintiff]" regarding the at-issue contract. *Id.* at *3.  The court found the sought-after discovery relevant under Rule 26, in part, because the court was "not presently in a position to determine whether plaintiff is entitled to a permanent injunction" under the federal injunction test and "[i]f defendant is able to prove that such financial recuperation is adequate to compensate for the alleged damages, plaintiff will not be entitled to injunctive relief." *Id.* (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010)).

The OMC also argues that because no such comparisons to other cases are discussed in the Pfahl Expert Report, testimony concerning them could not be relevant to damages. OMC Resp. at 15. But just because expert reports—completed long before discovery was concluded—do not discuss such instances does not mean that such discovery cannot be relevant to damages (or otherwise)—only that it has not yet been discovered. The testimony Defendants seek easily fits within the broad scope of discovery contemplated by Rule 26(b)(1). *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 WL 279348, at *6 (N.D. Okla. Jan. 3, 2018) ("Relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." (internal quotation omitted)). In order to evade the clear relevance of this testimony, both the OMC and the United States argue without support that Topics 6 and 7 are instead attempts to seek out the OMC's conduct to argue affirmative defenses dismissed from the case. U.S. Resp. at 10; OMC Resp. at 16-18. But simply because the evidence *could* be used for an impermissible purpose does not mean that it cannot be used for a relevant one. *See Osage Tribe of Indians of Oklahoma v. United States,* 84 Fed. Cl. 495, 498-99 (2008) ("Plaintiff cannot object that 'the request does not seek information reasonably calculated to lead to the discovery of admissible evidence' solely on the basis of plaintiff's speculation as to the 'primary purpose' for defendant's discovery requests.").

The United States contends that the Motion should be denied because Defendants' discovery requests are somehow "stale" and not "timely." U.S. Resp. at 7. There is nothing untimely about this Motion, which Defendants filed 17 days after the meet and confer with the United States and 14 days after the meet and confer with the OMC, at which both Plaintiffs made clear that they would not produce witnesses for the at-issue topics. Nor is there anything untoward about serving Rule 30(b)(6) deposition notices after completing other document discovery and

9

depositions; Plaintiffs did the same thing. Indeed, the OMC served a Motion to Compel further interrogatory and document discovery as late as September 29. Dkt. # 285. And that Plaintiffs objected to certain document requests or interrogatories served by Defendants is no barrier to Defendants serving Rule 30(b)(6) notices on any appropriate subject matters.

Finally, it is the United States that "misrepresent[s] the posture of this case" when they suggest that the Tenth Circuit granted summary judgment to Plaintiffs on trespass, conversion and continuing trespass. U.S. Resp. at 11. The Tenth Circuit did no such thing. It reversed this Court's entry of summary judgment in favor of Defendants (based solely on the regulations' meaning, *not* on any other element of any of the United States' claims, which have not been considered by any court to date) and remanded for further proceedings consistent with its opinion. *United States v. Osage Wind*, *LLC*, 871 F.3d 1078, 1082 (10th Cir. 2017). No judgment has been entered in favor of Plaintiffs on any claim, and multiple critical issues remain in the case including (but not limited to) remedies. Defendants are entitled to appropriate discovery to defend themselves against such claims and against Plaintiffs' demands for tens of millions of dollars in damages and an injunction ordering removal of the Project. *See* Dkt. #161 at 15 (directing parties to brief at a later date "continuing trespass claim and request for removal of materials and structures").

## CONCLUSION

For the reasons explained above, Defendants respectfully ask the Court to grant the relief requested in the Motion.

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**, *pro hac vice*
**Sarah M. Stevenson**, *pro hac vice*
**Dominic A. Martinez**, *pro hac vice*
**MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.**
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

**Thomas J. McCormack**, *pro hac vice*
**Robert Kirby**, *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
**Robin D. Ball** (Los Angeles Office), *pro hac vice*
**Robert D. Comer** (Denver Office), *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**

**ATTORNEYS FOR DEFENDANTS, OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 4, 2021, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Stuart P. Ashworth
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
David McCullough
Jeffrey S. Rasmussen


The following non-ECF registrants have been served by email:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


*/s/ Ryan A. Ray*
Ryan A. Ray