IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>And<br><br>OSAGE MINERALS COUNCIL,<br><br>    Intervenor-Plaintiff,<br><br>v.<br><br>OSAGE WIND, LLC;<br>ENEL KANSAS, LLC; and<br>ENEL GREEN POWER NORTH AMERICA, INC.,<br><br>    Defendants. | Case No. 14-CV-704-GKF-JFJ |

**Plaintiff the United States' Motion to Strike
the Testimony of Defendants' Expert Witness Kimberlee Centera**

Plaintiff, the United States of America, moves the Court, as follows, to strike one of Defendants' expert witnesses, Kimberlee Centera, as a testifying expert in this matter.

## Introduction

Federal Rule of Evidence 702, which governs the admissibility of testimony by experts, provides that if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," a witness qualified as an "expert by knowledge, skill, experience, training or education, may testify [thereto] in the form of an opinion or otherwise, if" (1) "the testimony is

based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods, and" (3) the witness "has reliably applied the principles and methods to the facts of the case." Ms. Centera's report and deposition testimony revealed many problems. Fundamentally, Rule 702(a) allows only expert testimony that will "help the trier of fact to understand the evidence or to determine a fact in issue;" however, Ms. Centera's report reveals only two issues for which she was engaged to provide expert assessment and testimony, and neither issue is relevant to the remaining issues in this matter. "A trial court must look at the *logical relationship* between the *evidence proffered* and the *material issue that evidence is supposed to support* to determine if it advances the purpose of aiding the trier of fact." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005) (emphasis added). There is no such logical nexus here.

The United States recognizes Ms. Centera's report was generated well before this Court's Orders striking equitable defenses (Dkt. 207), affirming the Magistrate Judge's application of the Order striking equitable defenses (Dkt. 210) and declining Defendants' invitation to reconsider the Order striking equitable defenses (Dkt. 264). Defendants seem determined to bring irrelevant evidence and defy the Court's repeated and clear orders on this matter. Importantly, "[t]he proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)).

In her report, Ms. Centera represented that she was asked to "provide expert opinion and response to two questions[:]"

1) First, whether a knowledgeable and experienced wind developer would have reasonably anticipated that a lease from the mineral owner would be required prior to construction of the project?

2) Second, if a wind energy developer was clearly apprised prior to construction commencing that a mining lease was required to engage in ordinary turbine foundation excavation for a wind energy project, would the developer have practical and effective alternative to using minerals so "mined" from the mineral estate in the construction of foundations for the Project?

Dkt. 200-1 at 4. Because these questions have no bearing on the remaining issues in this case, Plaintiff requests Ms. Centera be struck as a testifying expert in this matter. Ms. Centera is an accomplished businesswoman specializing in curative title matters, but the limited topics on which Defendants asked her to opine in this matter are simply irrelevant, warranting her testimony as an expert be stricken.

## Argument

### I. Whether a wind developer without knowledge of any details of a proposed wind turbine site would have reasonably anticipated a "lease from the mineral owner would be required prior to construction," is not relevant.

As this Court is well-aware:

> In a September 18, 2017 Decision, the Tenth Circuit reversed the district court, and held that, pursuant to 25 C.F.R. § 214, defendants' "extraction, sorting, crushing, and use of minerals as part of its excavation work constituted 'mineral development,' thereby requiring a federally approved lease which Osage Wind failed to obtain." [Doc. 78, p. 3; *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1081-82 (10th Cir. 2017)]. The Circuit remanded the case to the district court for further proceedings consistent with the Decision. [Doc. 78, pp. 26-27].

Dkt. 207 at 2.

Defendants admitted they never "provided expert witness Kimberlee Centera with copies of *any* documents" related to Defendants' legal analysis of Part 214, leasing requirements or mining. Dkt. 201 at 1 (emphasis in original). Defendants specifically deny that Ms. Centera will have any opinion whatsoever regarding their subjective knowledge. Yet, the knowledge of these Defendants – and not a theoretical wind developer – is the only kind of information that remains relevant. The Court specifically held: "The measure of damages for the trespass claim included in the First Amended Complaint necessarily requires consideration of *defendants' alleged knowledge* or 'bad faith.' *See* [Doc. 20]; *see also Dilworth v. Fortier*, 405 P.2d 38, 45 (Okla. 1964)." Dkt. 171 at 3 (emphasis added).

Ms. Centera conceded she neither knew nor investigated Defendants' due diligence. Exhibit 1, Deposition of Ms. Centera, at 40 (157) - 41 (158). She also admitted she could not speak to what Defendants knew at the time of excavation and construction. *Id.* at 41 (158-59). She would not comment on Defendants' review of permitting and jurisdiction issues prior to construction and whether that review was sufficient. *Id.* at 41 (159-160). Asked about Defendant's review of regulations prior to construction, she admitted she "wasn't really asked to comment on that" and admitted "I don't know what Enel would have done back then." *Id.* at 41 (161).

The question put to Ms. Centera regarding the anticipation of a theoretical wind developer is not a question a trier of fact will even consider in this advanced stage of

4

litigation. In fact, this Court has held that equitable defense to wrongs committed here (which seem to be what Ms. Centera considered) would frustrate federal policy:

> As recognized by the Tenth Circuit, Osage Wind's excavation work required it "to secure a federally approved lease from OMC under § 214.7." *Osage Wind, LLC*, 871 F.3d at 1092. Permitting third-parties to avoid these stringent leasing requirements by pointing to the Nation's own conduct would frustrate federal Indian land policy. *Davilla*, 913 F.3d at 967-68; *see also Grondal*, 471 F. Supp. 3d at 1129 (quoting Felix S. Cohen, *Cohen's Handbook of Federal Indian Law*, § 15.08[4], at 1049 (Nell Jessup Newton et al. eds. 2012)) ("Because Indian land claims are 'exclusively a matter of federal law,' state property laws are preempted."); *Schafer*, 2018 WL 10140171, at *8.

Dkt. 207 at 7-8. Simply put, there is no remaining issue before the Court requiring expert testimony about whether a "reasonable" developer – not one having benefit of the information these Defendants had – would have "anticipated" the need for a mineral lease before construction. Ms. Centera's opinions and conclusions regarding a theoretical "reasonable" developer[1] would not assist the trier of fact and are inadmissible under Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) ("'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'") (citation omitted).

## II. Whether a wind energy developer, clearly apprised of the need for a lease prior to construction, would have had "alternative[s]" is also irrelevant.

If the first question Defendants asked Ms. Centera to consider was irrelevant, the second – which indulges in a "what-if"/"if-only" fantasy – is a total waste of time.

---

[1] One is lead to question how "reasonable" Ms. Centera's theoretical wind developer is when it never read its own counsel's advice, refused to look at directly applicable regulations and would not read written communications from the Osage Nation and a Federal agency.

5

This question seems a poor attempt to bootstrap support for the first question's premise. Surely, it implies, if a "reasonable" wind developer knew they would have to pay for the minerals they were excavating on a massive scale, they would have purchased minerals elsewhere. Surely, had they known a lease was required, they would have sought alternative mineral sources.[2] But Defendants did not.

Interestingly, Defendants did examine the use of minerals from off-site, and Defendants' Director of Compliance forcefully endorsed the use of off-site minerals. Dkt. 239-12 (e-mail stressing that it was "very important" that on-site personnel not "use site materials" in certain instances, specifically to avoid "mining"). For some reason, Defendants simply decided to disregard this directive, excavate the Osage Mineral Estate (OME), manipulate and use it, as needed, and install the turbine foundations and ancillary infrastructure. To be fair, Defendants intentionally kept this information from Ms. Centera, and she would be unable to give any opinion or testimony concerning the decision to ignore the Director's advice.

As noted, before Ms. Centera's retention, this matter had already advanced to the stage of determining appropriate remedies for the wrongs Defendants indisputably committed. In no event is any alternative course of action Defendants *might* have taken relevant to any remaining question.

---

[2] The mere fact that Defendants (or any wind developer) used the mineral estate without paying does not support the conclusion they did not know they needed to pay. Nor does it square with the facts in the matter.

6

### III. Ms. Centera's disagreement with FTI is an insufficient basis for expert testimony.

In Ms. Centera's "report," she includes a lengthy preface before acknowledging her limited scope of engagement in this case. She states she was "asked to comment specifically on the contents of" the United States' expert's report. Dkt. 200-1 at 2. She does not couch these items as her expert opinion but as "comments" and concludes that she simply "do[es] not agree with FTI's premise" and does not agree with the "damages valuation stemming from that premise." *Id*. But, at deposition, Ms. Centera specifically testified she is "not an expert as to the valuation of mineral resources," nor in "calculation of damages" (Exh. 1 at 35 (135-137)):

> **A: [By Ms. Centera] So if I'm thinking about the value -- and I think I talked about the fact of different parameters in a project, so understanding -- if that's a question as part of the negotiations, what is the -- what is the extent of the mineral estate, you know, what is the makeup of the mineral estate, what could be the potential value of the mineral estate, then I'm not --** *I'm not an expert in trying to value a mineral estate* **or determine -- you know, taking a look at, you know, geology and making a determination on what is the compositive minerals and all that. So I don't try to opine on that. I'm not a min- -- I'm not an expert in that area.**
>
> Q: Sure. *Do you hold yourself out to be an expert in regards to the calculation of damages in relations to when Indian minerals are taken without permission*?
>
> Ms. Stevenson: Object to form.
>
> **The Witness:** *I don't*, **because it hasn't really come up. It hasn't come up. I mean, that's -- that's not something that comes up in our business, so I wouldn't hold myself out as a -- as an expert in that.**
>
> Q: (By Mr. Ashworth) Sure. *Would you hold yourself out as being an expert in regards to calculation of damages in general that involves the taking of mineral resources without permission?*

>Ms. Stevenson: Object to form.
>
>**The Witness: I think that's a very unique aspect that is the subject of this case, so it -- you know, damages doesn't come up, per se. It doesn't come up in the negotiations. I think I mentioned the types of agreements that I'm accustomed to negotiating, surface use agreements and other accommodation agreements, but in terms of damages,** *that's not normally something that I'm going to try to opine on, per se.* **I think what I look at is -- and what I did here is to look at what's customary in terms of compensation. And so I think that's -- and maybe that's a real finer point, but that's really what I looked at is, what is compensation in the ordinary course of these negotiations.** *And I think that's what we're looking at here, what would have been a negotiation for a -- for a mineral lease.* **And that's what I'm accustomed to negotiating is that kind of compensation, or maybe it's a matter of semantics, but I don't think of it in terms of damages.**
>
>Q: (By Mr. Ashworth) Sure. And I'll get to compensation as a separate issue, because I think compensation is before the taking, at least in my opinion. Damages is in regards to the taking without permission. So it's my understanding, just from your long answer, was that you are not -- *you don't consider yourself to be an expert in regards to the calculation of damages as to when minerals are taken without permission*?
>
>Ms. Stevenson: Object to form.
>
>Q: (By Mr. Ashworth) Is that -- is that correct?
>
>Ms. Stevenson: Object to form.
>
>**The Witness:** *Correct.*

Exh. 1 at 35 (135-137) - 36 (138) (emphasis added). Ms. Centera struggled to find any area in which she could offer relevant expertise but readily admitted not being an expert in mineral valuation or calculation of damages. She also admitted she had no experience in negotiations where a "mineral lease was required prior to beginning a wind development project." *Id*. at 38 (149). Ms. Centera described herself as a "risk

8

expert," which entails acting as a "finance expert[]" helping clients obtain funding for each project with its associated "risk profile." *Id*. at 5 (16 - 17). Ms. Centera has never given expert testimony by deposition or in court proceedings. *Id*. at 3 (7 - 8). In fact, she has never been retained as an expert in any case. *Id*. at 4 (10).

    A witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The trial court has a gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co.*, 526 U.S. at 141 (citation omitted). Among the factors to consider is whether the "'expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Daubert*, 509 U.S. at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)).

    As discussed and made apparent by Defendants' own statements (*See* Dkt. 201), Ms. Centera's comments regarding the valuation advanced by FTI's Steven Hazel is not based on sufficient facts or data. For some reason, Defendants refused to provide her with the detailed legal analysis they claim to have relied on or even letters they received from federal or tribal officials. Fantastically, Ms. Centera admitted she did not "really" review 25 C.F.R. § 214:

> Q: Okay. Did you review any federal regulations in preparing your report?
>
> **A: No, no, I did not, other than whatever is in this report, no.**
>
> Q: Okay. So did you review 25 CFR Part 214 in preparing your report?
>
> **A: Not really in preparing my report, no.**

Exh. 1 at 11 (38) (emphasis added). By no stretch are Ms. Centera's comments of disagreement with Mr. Hazel a fair application of reliable principles and methods. While Mr. Hazel methodically calculated a fair valuation, Ms. Centera proposed to "sit down and think about" a fair valuation for the mining of the OME in the specific circumstances of this case:

> Q: In your expert opinion, what would be a reasonable compensation if the Osage Minerals Council said, no, we're not -- we're not granting a lease, you do not have permission to mine on the Osage mineral estate?
>
> **A: I would have to sit down and think about that. I can't necessarily tell you that right off the top of my head.**

Exh. 1 at 14 (51) (emphasis added). The time to "sit down and think about" reasonable compensation was before writing the required report, which must contain "a complete statement of all opinions the witness will express and the basis and reasons for" those opinions. Fed. R. Civ. P. 26(a)(2)(B)(i).

Tellingly, when asked what standards she would employ to decide the amount of damages in this case, she responded that she (as have Defendants and all of their witnesses who were deposed) was "struggling" and had a "disconnect" with the Tenth Circuit's findings as to mining here. *Id*. at 12 (44). Federal Rule of Evidence 702 requires Ms. Centera's testimony be based upon "reliable principles and

10

methods." That mining occurred here is beyond dispute at this point. Dkt. 78.

Defendants and Ms. Centera remain in denial:

> Q: (By Ms. Nagle) In your expert opinion, what standards would you employ to decide what amount of money defendants must pay to the Osage Minerals Council for the -- for the lease that the Tenth Circuit has stated they're required to obtain?
>
> **A: I think what I would expect is that it would be based on -- on the market conditions, and I think, from what I can understand about Osage County, there's a lot of information out there on limestone being sold. There's a -- there's a quarry that's very close to this project site. So I think that would be my expectation, is that the compensation would be based upon what's typically paid. I think the problem or part of the disconnect that I have that I still, honestly, am struggling with here is, again, you know, my idea of mining is -- in my experience, if I'm working with a client on mining is that there's an extraction that's taking place, it's being taken off site, it's being sold. And none of that, you know, we know has happened here. But irregardless of that, I think if you were to agree that there needs to be a lease and that there needs to be compensation, then I think I would expect that it would be based on those market conditions. So, you know, I think we have some permits and those kinds of things where there's some kind of a, you know, payment that's made upon execution of the agreement. It looks like there's a -- there's some kind of a payment that's made during kind of the development or assessment period, and then there's some kind of percentage that's applied to that.**

Exh. 1 at 12 (44-45) (emphasis added). This testimony (and the report required by Rule 26) is devoid of any application of facts to Ms. Centera's stream of consciousness ideas about valuation. Ms. Centera never bothers to apply the principles and methods reliably to the facts of the case, as required by *Daubert* and Federal Rule of Evidence 702. She just vaguely believes "some kind of a payment"

that would be "based on [] market conditions" and "some kind of a percentage" would be more appropriate than the applied methodology espoused by Mr. Hazel.[3]

Mere disagreement with an expert is generally not a reason to strike an expert. *North v. Ford Motor Co.*, 505 F. Supp. 2d 1113, 1118 (D. Utah 2007) ("disagreement with the expert's conclusion is not grounds for exclusion."). Here, however, it is important to note that Ms. Centera not only disagrees with Mr. Hazel's expert report, she admits she has no expertise in damages valuation and has done no work to arrive at a valuation of damages in this matter. Defendants seem only to want Ms. Centera to register undefined, unspecified favor of an approach other than Mr. Hazel's.

As a matter of fact, despite the Tenth Circuit decision that a lease is required (Dkt. 78 at 26), Ms. Centera – contrary to other testimony cited above – testified she would not negotiate a mineral lease. Exh. 1 at 30 (117) - 31 (118). Rather, she would negotiate something more "curative" that would appear more "customary" to lenders. *Id.* at 31 (118).[4] In this case, no curative document to satisfy lenders is at issue. The state of the title is not in dispute. The United States holds title to the mineral estate in trust, by authority of Congressional action. It is hardly surprising that Ms. Centera will not concede a lease is necessary given that Defendants' counsel

---

[3] Of course, Mr. Hazel's approach clearly does capture 'market conditions,' as his valuation is based on other negotiated leases and what Defendants were willing to pay under them.
[4] The Tenth Circuit left no doubt as to the instrument to be considered on remand: "On the merits, we hold that Osage Wind's extraction, sorting, crushing, and use of minerals as part of its excavation work constituted 'mineral development,' thereby requiring a federally approved lease which Osage Wind failed to obtain." Dkt. 78 at 3.

12

explained the Tenth Circuit decision to her, focused her attention on only certain parts of it and told her to skip the "legalese." *Id*. at 9 (32-33) to 10 (34). As mentioned, Ms. Centera did not consider the applicable regulations in reaching her decision either.

For the foregoing reasons, the United States respectfully requests that the Court strike Defendants' expert witness, Kimberlee Centera, as a testifying expert in this matter.

                Respectfully submitted,

                United States of America

                Clinton J. Johnson
                Acting United States Attorney

                s/Cathryn D. McClanahan
                Cathryn D. McClanahan, OBA No. 14853
                Nolan M. Fields IV, OBA No. 31550
                Assistant United States Attorneys
                110 West 7th Street, Suite 300
                Tulsa, Oklahoma 74119
                T: 918-382-2700
                cathy.mcclanahan@usdoj.gov
                nolan.fields@usdoj.gov

                Stuart P. Ashworth, OBA #31468
                Special Assistant United States Attorney
                United States Department of the Interior
                Office of the Solicitor
                Tulsa Field Solicitor's Office
                7906 East 33rd Street, Suite 100
                Tulsa, Oklahoma 74145
                T: 918-669-7905
                stuart.ashworth@sol.doi.gov

Of Counsel:
Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor's Office
7906 East 33rd Street
Tulsa, Oklahoma 74145
T: 918-669-7902
charles.babst@sol.doi.gov