**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| THE OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND OPENING BRIEF IN SUPPORT**

Ryan A. Ray, OBA #22281
NORMAN WOHLGEMUTH, LLP
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

Lynn H. Slade, *pro hac vice*
Sarah M. Stevenson, *pro hac vice*
Dominic A. Martinez, *pro hac vice*
MODRALL, SPERLING, ROEHL,
HARRIS & SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

Thomas J. McCormack, *pro hac vice*
Robert Kirby, *pro hac vice*
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
Robin D. Ball (Los Angeles Office), *pro hac vice*
Robert D. Comer (Denver Office), *pro hac vice*
NORTON ROSE FULBRIGHT US LLP

**ATTORNEYS FOR DEFENDANTS
OSAGE WIND, LLC, ENEL KANSAS,
LLC AND ENEL GREEN POWER
NORTH AMERICA, INC.**

**Dated: October 12, 2021**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................. 1

RELEVANT PROCEDURAL HISTORY ............................................................................. 4

A.      The First Amended Complaint .................................................................................. 4

B.      Judge Payne's Ruling ............................................................................................... 5

C.      The Tenth Circuit's Ruling ...................................................................................... 6

D.      Subsequent Proceedings .......................................................................................... 8

STATEMENT OF UNDISPUTED MATERIAL FACTS .................................................... 9

APPLICABLE LEGAL STANDARDS ............................................................................... 11

ARGUMENT AND AUTHORITIES ................................................................................... 11

I.      Plaintiffs' Demand for Removal of the Wind Turbine Foundations and the
        "Continuing Trespass" Claim on which it Is Predicated Should Be Dismissed. .............. 11

        A.      The Wind Turbine Foundations Never Trespassed on the Mineral Estate ........... 12

        B.      Crushing Rock for Backfill Is Not a "Continuing Trespass." .............................. 15

                1.      Crushing Rock for Backfill Is Not Ongoing. ........................................... 15

                2.      Crushing Rock for Backfill Is Not Abatable ............................................ 17

                3.      Crushing Rock for Backfill Is a Permanent Physical Change to Land ...... 17

II.     Plaintiffs' Demand for Removal of the Wind Turbine Foundations also Fails
        Because Plaintiffs Cannot Show Irreparable Harm Absent such Injunctive Relief. ......... 18

        A.      Plaintiffs Cannot Show any Harm from the Wind Turbine Foundations .............. 19

        B.      Plaintiffs Have an Adequate Remedy at Law for Harm from Crushing Rock. ...... 20

        C.      Removal of Wind Turbine Foundations Would Not Remedy Harm
                from Crushing Rock ................................................................................................ 24

III.    Any Other Demand for a Permanent Injunction Against the Project Should
        be Dismissed Because No such Demand Was Pleaded in the Complaint. ........................ 24

CONCLUSION AND REQUESTED RELIEF ....................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998)....................................11

*B. Willis, C.P.A., Inc. v. BNSF Railway Co.*,
2009 WL 10727998 (N.D. Okla. May 26, 2009), *report and recommendation adopted*, 2009 WL 10727997 (N.D. Okla. Sept. 11, 2009)............................. 15, 16

*Bennet v. Windstream Commc'ns, Inc.*, 30 F. Supp. 3d 1243 (N.D. Okla. 2014) ........................11

*Black Anvil Operating LLC v. Benchmark Energy, LLC*,
2021 WL 3711206 (W.D. Okla. Aug. 20, 2021) ....................................18

*Bradley v. Renfrow*, 84 P.2d 430 (Okla. 1938)........................................................15

*Cayuga Indian Nation of New York v. Vill. of Union Springs*,
293 F. Supp. 2d 183 (N.D.N.Y. 2003) ....................................................23

*Davilla v. Enable Midstream Partners L.P.*,
913 F.3d 959 (10th Cir. 2019) ....................................................3, 12, 15, 18, 19, 23

*Dilworth v. Fortier*, 405 P.2d 38 (Okla. 1964)........................................................20

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
356 F.3d 1256 (10th Cir. 2004)........................................................19

*Edwards v. Lachman*, 534 P.2d 670 (Okla. 1974) ........................................................20

*Ellis v. Ark. La. Gas Co.*, 450 F. Supp. 412 (E.D. Okla. 1978)............................. 13, 14

*Frank v. Mayberry*, 985 P.2d 773 (Okla. 1999) ........................................................18

*Garrison v. Baker Hughes Oilfield Operations, Inc.*,
287 F.3d 955 (10th Cir. 2002) ....................................................24

*Holly Sugar Corp. v. Goshen Co. Coop. Beet Growers Ass'n*,
725 F.2d 564 (10th Cir. 1984) ....................................................20

*Hughes v. Harden*, 151 P.2d 425 (Okla. 1944) ................................................. 15, 17

*Jaquez v. Lawton Corr. Facility*, 2013 WL 2645589 (W.D. Okla. June 12, 2013).....................24

*Max Oil Co. Inc. v. Range Prod. Co. LLC*, 681 Fed. App'x 710 (10th Cir. 2017).......................17

*Nichols v. Mid-Continent Pipe Line Co.*, 933 P.2d 272 (Okla. 1996) ........................................18

*O'Brien Oil, LLC v. Norman*, 233 P.3d 413 (Okla. Civ. App. 2010) ...........................................14

*Osage Nation ex rel. Osage Mins. Council v. Wind Cap. Grp., LLC*,
    2011 WL 6371384 (N.D. Okla. Dec. 20, 2011)...............................................................20, 21

*Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234 (10th Cir. 2001)..................22, 23

*Quarles v. Little River Energy Co.*, 2008 WL 185715 (N.D. Okla. 2008) ..................................21

*Russell v. Williams*, 964 P.2d 231 (Okla. Civ. App. 1998) ........................................................18

*Schafer, Tr. of Wayne Penn Schafer Separate Prop. Trust v. Centerpoint Energy
    Okla. Gas*, 2018 WL 10140171 (N.D. Okla. May 21, 2018) ..........................................12, 20

*Schrier v. Univ. of Colo.*, 427 F.3d 1253 (10th Cir. 2005)..........................................................19

*Seneca-Cayuga Tribe of Okla. v. State of Okla. ex rel. Thompson*,
    874 F.2d 709 (10th Cir. 1989) .................................................................................................22

*Snyder v. Am. Kennel Club*, 575 F. Supp. 2d 1236 (D. Kan. 2008) ....................................21, 22

*Sunray Oil Co. v. Cortez Oil Co.*, 112 P.2d 792 (Okla. 1941) ....................................................14

*Taylor v. Gilmartin*, 434 F. Supp. 909 (W.D. Okla. 1977) .........................................................24

*Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*,
    874 F.2d 1346 (10th Cir. 1989)........................................................................................20, 21

*Thournir v. Buchanan*, 710 F.2d 1461 (10th Cir. 1983) .............................................................24

*United States v. Hess*, 194 F.3d 1164 (10th Cir. 1999)...............................................................16

*United States v. Osage Wind, LLC*,
    2015 WL 5775378 (N.D. Okla. Sept. 30, 2015) ..................................................................5, 6

*United States v. Osage Wind, LLC*, 2020 WL 3578351 (N.D. Okla. July 1, 2020) ...........9, 24, 25

*United States v. Osage Wind, LLC*,
    871 F.3d 1078 (10th Cir. 2017)....................................................................................*passim*

*United States v. Sturdevant*, 2009 WL 10689852 (D. Kan. Dec. 11, 2009)................................24

*Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*,
    497 F.3d 1096 (10th Cir. 2007)................................................................................................18

*Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858 (Okla. 1998) .................................................12

*Wyandotte Nation v. Sebelius*, 443 F.3d 1247 (10th Cir. 2006) ..................................................22

iv

**Rules, Statutes, Regulations, and Other Authorities**

Fed. R. Civ. P. 56 ................................................................................................................ 1, 11

LCvR56 ...................................................................................................................................... 1

Osage Allotment Act of 1906, ch. 3572, 34 Stat. 539 ................................................. 7, 13, 14, 19

25 C.F.R. Part 211 ............................................................................................................ 1, 4, 5

25 C.F.R. Part 214 ...................................................................................................... *passim*

25 C.F.R. § 211.3 ............................................................................................. 4, 6, 7, 8, 12

Restatement (Second) of Torts § 162 .................................................................... 17, 18

Pursuant to Fed. R. Civ. P. 56, LCvR56, and the Fifth Amended Scheduling Order (Dkt. # 231), defendants Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. (together, "Defendants")[1] move for partial summary judgment against plaintiff the United States and intervenor-plaintiff the Osage Minerals Council (the "OMC" and, together, "Plaintiffs"), and respectfully request entry of an Order dismissing Plaintiffs' claims for continuing trespass and their demand for removal of "structures or materials placed . . . in the mineral estate."

## INTRODUCTION

Defendants own and operate an 84-turbine, 150 MW wind generation facility dispersed across 8,400 acres leased from landowners in Osage County, Oklahoma (the "Project"). In the fall of 2014, Defendants excavated the holes in which they would pour the foundations for each wind turbine. After each hole was excavated and foundations poured and cured, some of the excavated rock was crushed before being returned as backfill to the hole from which it was excavated. A dispute arose between the parties as to whether Defendants were engaged in "mining" within the definition of that term in 25 C.F.R. Part 211 and required a lease under 25 C.F.R. Part 214. The United States asserted that shovels in the ground alone was "mining." Defendants disagreed, contending that all of their activities were incidental to surface construction, did not involve any sale or commercialization of minerals, and did not constitute "mining."

After the United States filed suit, the District Court (the Hon. James H. Payne, presiding) agreed with Defendants and dismissed the complaint in its entirety. The OMC intervened after the United States declined to appeal. When the Tenth Circuit settled this question of first impression and reversed, it recognized that it "might be reasonable" to adopt Defendants' interpretation of the

---

[1] Use of the defined term "Defendants" is for convenience only and not a concession that any defendant other than Osage Wind, LLC is properly named as a defendant in this action.

regulations, and that "surface construction for a wind farm is a far cry from a typical mining operation." *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1091-92 (10th Cir. 2017).

The Tenth Circuit rejected the extreme view advocated by Plaintiffs that Defendants were required to obtain a mining lease to excavate a hole for a turbine foundation.  Instead, the Tenth Circuit held that surface owners retain "expansive authority . . . to use and develop their land," including "digging a hole in the ground, displacing rock and soil in the process," and then "building" in the hole.  *Id*. at 1092.  The Tenth Circuit disagreed with Defendants and Judge Payne, however, on whether crushing rocks to return them to the hole as backfill met the definition of "mining."  Finding ambiguity in that definition and resolving it by resort to the Indian canon of interpretation, the Tenth Circuit held that minerals are "mined" if they are "acted upon for the purpose of exploiting the minerals themselves." *Id*. at 1091-92.  Crushing rock for backfill met this definition because "it acted upon the minerals by altering their natural size and shape in order to take advantage of them for a structural purpose." *Id*.

Notwithstanding that the Tenth Circuit rejected Plaintiffs' theory that excavating holes, pouring concrete foundations into them, and placing wind turbines required a lease, Plaintiffs persist in seeking a judgment that the "place[ment]" of the wind turbine foundations "in the mineral estate" is a "continuing trespass" compelling their removal.  Defendants unequivocally reject the assertion that the forced removal of the Project at a cost of nearly $260,000,000 to Defendants, and at the expense of clean power for tens of thousands of homes, tax revenue for the county government and local school districts, and jobs for citizens of Osage County, could ever be an appropriate equitable remedy for crushing into smaller pieces at most $250,000 worth of rock (according to the United States).  Defendants are prepared to present evidence at trial of "the relative costs and benefits of . . . removing the [Project]," both "as they pertain to these parties

2

[and to] the public at large," as the Tenth Circuit has cautioned must be carefully weighed before ordering valuable energy infrastructure removed for "continuing trespass." *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 974 (10th Cir. 2019). But that is not necessary. Plaintiffs' demand for removal of turbine foundations—and hence, the Project—and the continuing trespass claim on which it depends should be dismissed now as a matter of law for several discrete reasons.

*First*, the Tenth Circuit's ruling in this case controls; placement of turbine foundations into holes from which rock and soil had been removed did not require a lease under 25 C.F.R. Part 214 and was never a trespass of any kind, let alone a continuing trespass. That some of the rock removed from the holes was then crushed for backfill adjacent to the foundations does not transform other, permissible surface construction activities into unauthorized "mining" or trespass.

*Second*, crushing rock for backfill is not a continuing trespass. The conduct that caused the injury—crushing rock—is not ongoing and ended once and for all nearly seven years ago. Nor is it abatable now, as is required to qualify as a continuing trespass. Once pieces of rock were run through the rock crusher, no manner of abatement could restore them to their original size and shape. And longstanding common law principles reflected in the *Restatement (Second) of Torts* confirm that a permanent physical change to land such as crushed rock is not a continuing trespass even though it persists after the conduct that caused it—rock crushing—has ceased.

*Third*, Plaintiffs cannot show that a permanent injunction requiring removal of the wind turbines would prevent any irreparable harm. The placement of the wind turbine foundations into holes from which rock and soil had been removed caused no cognizable injury of any kind to the mineral estate. Any harm from the crushing of rock for backfill, however, is compensable in money damages and not irreparable. Indeed, the United States has proffered an expert who testified to the alleged value to the OMC of the minerals "mined," down to the penny—

$247,979.42. A permanent injunction ordering that the wind turbines be removed also would be improper because it would not remedy the crushing of rock into different shapes and sizes. Requests for injunctions must be narrowly tailored to remedy the actual harm shown; not wholly unmoored from that harm and capable only of exacting extreme punishment.

The Court should grant Defendants' motion for partial summary judgment to appropriately streamline this case for a trial regarding Plaintiffs' claims for damages and other remaining issues.

## RELEVANT PROCEDURAL HISTORY

### A.    The First Amended Complaint

The United States commenced this action on November 21, 2014, and, after withdrawing its motion for a preliminary injunction, filed the operative First Amended Complaint (the "Complaint" or "FAC") on December 12, 2014.  Dkt. # 20.  The Complaint alleges that merely excavating holes for turbine foundations triggers the lease requirement.  *See*, *e.g.*, FAC ¶¶ 38 ("Defendants have extracted more than 5,000 cubic yards . . . .  Therefore, they are engaged in 'mining' under the definition set forth in [25 C.F.R. § 211.3]."), 47 ("Defendants were prohibited from extracting and excavating minerals . . . .").  The Complaint pleads five causes of action and seeks declaratory judgment that Defendants violated 25 C.F.R. Parts 211 and 214, damages "for unlawful or unauthorized mining, excavation or other work" and "resulting from the trespass and conversion," and injunctive relief (described below).  FAC at 12-13.

Count IV alleges that Defendants pouring concrete for turbine foundations into the bottom of holes from which rock and soil had been displaced is a continuing trespass:

> By placement of the turbine foundation and other materials, Defendants trespassed on the Osage mineral estate, in violation of law and, in doing so, caused damage to the estate.  The insertion and placement of materials or structures in the mineral estate is a continuing trespass and diminishes the estate or diminishes the use and enjoyment of the mineral estate.

FAC ¶ 57; *see also id.* ¶ 18. Count IV is the sole predicate for the Complaint's demand for an order that the wind turbines be removed:

> Enter a judgment finding Defendants are responsible for an ongoing and continuing trespass and an order that structures or materials placed, without authorization, in the mineral estate must be removed.

FAC at 12. The only other demand for injunctive relief pleaded in the Complaint requests an order enjoining further "excavation, mining, and other work." FAC at 13.

### B. Judge Payne's Ruling

In December 2014, Defendants filed a motion to dismiss the Complaint or, in the alternative, for summary judgment, arguing that "25 C.F.R. Parts 214 and 211, by their own terms, apply only to entities engaged [in] 'mining,' defined as the business of developing mineral resources, not to an entity that incidentally encounters minerals in connection with surface construction activities." Dkt. # 26 at 7. The United States filed a motion for partial summary judgment on Counts I and II of the Complaint seeking declaratory judgment. Dkt. # 24, 28. The United States argued that the lease requirement was triggered by displacement of rock alone. Dkt. # 24 at 10 ("excavating limestone and other non-hydrocarbon minerals constitutes mining within the meaning of Part 211 and is subject to the leasing requirements of Part 214"), 12 (Defendants were "mining" when they "extracted far more than 5,000 cubic yards"). It further argued that Defendants' "handling, sorting, crushing, and utilization of minerals" required a lease. *Id.* at 9.

This Court denied the United States' motion and granted summary judgment in favor of Defendants. *United States v. Osage Wind, LLC*, 2015 WL 5775378, at *11 (N.D. Okla. Sept. 30, 2015) (Payne, J.). Judge Payne rejected the United States' theory that merely displacing rock and soil required a lease, concluding that such a reading would "mean that every proposed construction project in Osage County that requires digging and backfilling, including building a single-family home, multi-family apartment building, commercial building, or septic tank, would be subject to

approval by the Osage Nation." *Id.* at *7.  Judge Payne further held that no aspect of Defendants' alleged "extraction, handling, sorting, crushing and utilization of minerals" required a lease, because "it is clear to the Court that 'mineral development' covers the activities of an entity engaged in the science, technique, and business of *developing minerals,* not those of an entity that incidentally encounters minerals in connection with surface construction activities." *Id.* at *6. Judge Payne acknowledged "the general rule that 'statutes passed for the benefit of dependent Indian tribes are to be liberally construed with doubtful expression being resolved in favor of the Indians,'" but found no "such 'doubtful expression' in the regulatory text at issue." *Id.* at *11.

C.     **The Tenth Circuit's Ruling**

While the United States declined to appeal Judge Payne's ruling, the OMC filed notice of appeal on the last day.  Dkt. # 72.  The OMC argued that displacing rock and soil required a lease: "If more than 5,000 cubic yards of OMC's common minerals have been extracted, mining has occurred and OMC's approval via a lease approved by the Secretary is required." *See* Appellant's Opening Brief filed May 2, 2016, at 45, *United States, et al. v. Osage Wind, LLC, et al.*, Case No. 15-5121 (10th Cir.); *see also id.* at 3 ("Statement of the Issues" included "Does Wind Farm's extraction of 60,840 cubic yards of hard common minerals, regardless of use and/or Wind Farm's crushing/use of 45,630 cubic yards of hard common minerals for Wind Farm's commercial purposes, constitute mining under 25 CFR § 211.3's *de minimus* exception?").

On September 18, 2017, the Tenth Circuit reversed Judge Payne and remanded "for further proceedings consistent with this opinion." *Osage Wind, LLC*, 871 F.3d at 1093.  The Tenth Circuit *expressly rejected* Plaintiffs' theory that Defendants were required to obtain a lease to displace rock and soil in connection with wind turbine construction:

> [S]urface construction activities may often implicate and disrupt the mineral
> estate—building a basement or swimming pool necessarily involves digging a hole

> in the ground, displacing rock and soil in the process. But as we have held, merely encountering or disrupting the mineral estate does not trigger the definition of "mining" under 25 C.F.R. § 211.3. If the minerals are not being shipped offsite or commercialized, then they must be acted upon for the purpose of exploiting the minerals themselves.

*Id*. at 1092; *see also id*. at 1089 (rejecting as "plainly wrong" the OMC's contention that "any extraction of such minerals exceeding 5,000 cubic yards constitutes mining"), 1091-92 ("***After Osage Wind removed the rock materials from each hole***, it acted upon the minerals by altering their natural size and shape in order to take advantage of them for a structural purpose.") (emphasis added). The Tenth Circuit emphasized "[t]he expansive authority granted to surface-estate owners to use and develop their land," *id*., set forth in the Osage Allotment Act of 1906, ch. 3572, 34 Stat. 539 (the "Osage Act"):

> [T]he Osage Act provides that surface lands overlying the mineral estate should be freely usable for activities such as 'farming, grazing, or any other purpose not otherwise' prohibited by the Act. Osage Act, § 7. It goes further to say that surface fee owners 'shall have the right to manage, control, and dispose of his or her lands the same as any citizen of the United States.' *Id*. § 2.

*Osage Wind, LLC*, 871 F.3d at 1092. Accordingly, "owners of the surface estate retain virtually uninhibited use of their lands, unless of course they seek to *develop* more than 5,000 cubic yards of common-variety minerals." *Id*.

The Tenth Circuit concluded "the phrase 'mineral development' is ambiguous in this regulation," and acknowledged "[i]t might be reasonable to adopt the construction favored by Osage Wind, which sets as the definitional boundary the commercialization of the minerals." *Id*. at 1091. The Tenth Circuit recognized that "surface construction for a wind farm is a far cry from a typical mining operation," and "sorting and crushing of rocks to provide structural support does not fit nicely with traditional notions of 'mining.'" *Id*. at 1092. In light of the perceived textual ambiguity, however, the Tenth Circuit concluded "the Indian canon of interpretation tilts our hand toward a construction more favorable to Osage Nation, so we adopt the broader definition of

7

'mineral development' when construing § 211.3: 'mineral development' includes acting upon the minerals to exploit the minerals themselves." *Id*. at 1091.  Applying this definition, the Tenth Circuit held that "crushing of minerals for the purpose of backfilling and stabilization" constituted "mining" requiring a lease. *Id*. at 1092.  It was when Defendants crushed rock for backfill, the Tenth Circuit explained, that they "acted upon the minerals by altering their natural size and shape in order to take advantage of them for a structural purpose." *Id*. at 1091-92.

### D.  Subsequent Proceedings

Following remand, on December 16, 2019, the United States moved for leave to file a proposed Second Amended Complaint.  Dkt. # 98.  It therein sought to supplement the "Prayer for Relief" with additional demands including an "accounting for any revenue attributable to the . . . wind farm," "disgorging all revenues," "unjust enrichment," and "permanent injunctive relief, including enjoining . . . continuing trespass . . . and including ejectment."  Dkt. # 103 at 12-13.  On April 13, 2020, the Court permitted the OMC to intervene.  Dkt. # 136.  The OMC filed a complaint in intervention that asserted the same numbered Counts I through V pleaded by the United States in its Complaint, and set forth in the OMC's "Prayer for Relief" demands substantially similar to those set forth in the proposed Second Amended Complaint.  Dkt. # 140.  Despite the Tenth Circuit's rejection of their position, Plaintiffs continued to allege that merely excavating holes required a lease under 25 C.F.R Part 214.  *See*, *e.g.*, Dkt. # 98 ¶¶ 37, 42; Dkt. # 140 ¶¶ 54, 80.[2]

Defendants opposed the United States' request for leave to amend and filed a partial motion to dismiss the OMC's complaint in intervention.  Dkt. # 116, 150.  Among other arguments, Defendants moved to dismiss the OMC's Count IV (Continuing Trespass) for failure to state a

---

[2] Plaintiffs continue to assert that position to this day.  For example, BIA Supervisor Robin Phillips testified that her belief is and always has been that "excavating and leaving the rock or sand or gravel . . . on the ground, that would still require a permit."  Ex. 1 (Phillips Dep. Tr.) at 68:3-9.

claim.  Dkt. # 150 at 24-25.  The Court denied the United States' request for leave to amend, and granted in part and denied in part Defendants' partial motion to dismiss the OMC's complaint. *United States v. Osage Wind, LLC*, 2020 WL 3578351, at *1 (N.D. Okla. July 1, 2020) (Frizzell, J.).  The Court held that the proposed Second Amended Complaint was untimely and would prejudice Defendants:  "[T]he United States seeks leave to make its 'prayer for relief' a 'moving target' by adding a litany of additional forms of relief and substantially increasing the potential liability of Osage Wind.  Under the circumstances, the court cannot conclude that justice requires the requested amendments."  *Id.* at *7.  The Court further held that the OMC must be limited to the relief in the First Amended Complaint:  "[A]lthough the court has granted OMC's motion to intervene, the intervention is restricted to seek only those remedies sought by the United States in the First Amended Complaint."  *Id.* at *8.  As to the "continuing trespass claim and request for removal of materials and structures placed," the Court directed that they should be briefed by the parties at a later date.  *Id.*  On July 10, 2020, the OMC filed its operative First Amended Complaint in Intervention (the "Intervenor Complaint" or "Intervenor Compl.").  Dkt. # 164.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Defendants leased privately owned fee surface estate lands consisting of 8,400 acres in Osage County, Oklahoma.  FAC ¶ 2; Dkt. # 29 at 2; Intervenor Compl. ¶ 40; Ex. 2 (Hazel Dep. Tr.) at 150:7-21; Ex. 3 (lease); Ex. 4 (Pike Dep. Tr.) at 167:22-168:1.

2.      Defendants placed 84 wind turbines on those 8,400 acres.  FAC ¶ 2; Intervenor Compl. ¶ 4; Ex. 5 (Price Dep. Tr.) at 65:7-14; Ex. 6 (Mazurowski Dep. Tr.) at 61:20-22; Ex. 7 (Declaration of William Price) ("Price Decl.") at ¶ 3.

3.      For each such wind turbine, Defendants excavated a hole measuring approximately 10 feet deep and 60 feet in diameter.  FAC ¶ 2; Dkt. # 29 at 3; Intervenor Compl. ¶¶ 4, 50; Ex. 8

(Declaration of Stephen D. Pike) ("Pike Decl.") at ¶¶ 3-4; Ex. 5 (Price Dep. Tr.) at 201:13-24; Ex. 6 (Mazurowski Dep. Tr.) at 151:23-152:22.

4.      By excavating those holes, Defendants excavated sand, soil, and rock in pieces of various sizes and shapes.  FAC ¶¶ 2, 19; Dkt. # 29 at 3; Intervenor Compl. ¶ 4.

5.      Defendants poured concrete turbine foundations into each such hole.  FAC ¶¶ 18, 21; Dkt. # 29 at 3; Intervenor Compl. ¶¶ 50, 53; Ex. 5 (Price Dep. Tr.) at 201:13-202:14.

6.      No excavated sand, soil, or rock was used in mixing or preparing the concrete for any foundation.  Ex. 6 (Mazurowski Dep. Tr.) at 151:4-13.

7.      Some of the excavated rock pieces were crushed into pieces of smaller size.  FAC ¶ 20; Dkt. # 29 at 3; Intervenor Compl. ¶ 53; Ex. 9 (Moskaluk Dep. Tr.) at 165:1-14.

8.      After each turbine foundation was poured and had cured, crushed rock, sand, and soil from the excavation were pushed back into the hole as backfill.  FAC ¶ 21; Dkt. # 29 at 3; Intervenor Compl. ¶ 53; Ex. 9 (Moskaluk Dep. Tr.) at 59:22-25.

9.      No excavated sand, soil, or rock was sold.  Ex. 9 (Moskaluk Dep. Tr.) at 70:14-19.

10.     No excavated sand, soil, or rock was moved to, or used in any way at, any location other than the turbine site at which it had been excavated.  Dkt. # 29 at 3; Ex. 9 (Moskaluk Dep. Tr.) at 67:21-69:7, 138:17-24, 141:18-22, 142:17-143:9, 145:16-22, 148:13-22.

11.     All crushing of excavated rock was completed in 2014.  Ex. 10 (Declaration of Peyton Herfurth) ("Herfurth Decl.") at ¶¶ 6-7 & Ex. B at 1-2.

12.     The Project achieved final completion of construction in 2015.  Ex. 10 (Herfurth Decl.) at ¶ 5 & Ex. A; Ex. 7 (Price Decl.) ¶ 3; Ex. 5 (Price Dep. Tr.) at 27:7-28:11.

13.     The Project entered commercial operation in 2015.  Ex. 7 (Price Decl.) ¶ 3; Ex. 5 (Price Dep. Tr.) at 27:7-28:11.

14.     Robert C. Freas, who was retained to testify as an expert witness for the United States, testified that the total value to the OMC of the minerals "mined" by Defendants was $247,979.42.  Ex. 11 (Freas Dep. Tr.) at 71:18-21.

15.     John Pfahl, who was retained to testify as an expert witness for Defendants, testified that the total value to the OMC of the minerals "mined" by Defendants was $68,993.  Ex. 12 (Pfahl Dep. Tr.) at 27:11-16.

## APPLICABLE LEGAL STANDARDS

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  For an issue of fact to be "genuine," the evidence must be such "that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  An issue of fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Id*.  Neither "a scintilla of evidence in support of the plaintiff's position" nor showing "some metaphysical doubt as to the material facts" will defeat summary judgment.  *Bennet v. Windstream Commc'ns, Inc.*, 30 F. Supp. 3d 1243, 1252-53 (N.D. Okla. 2014) (Frizzell, J.) (quotation marks omitted).

## ARGUMENT AND AUTHORITIES

I.     **Plaintiffs' Demand for Removal of the Wind Turbine Foundations and the "Continuing Trespass" Claim on which it Is Predicated Should Be Dismissed.**

The sole basis pleaded by Plaintiffs to demand a judgment of "continuing trespass" and "an order that structures or materials placed . . . be removed" is the "placement of the turbine foundations and other materials."  FAC at 12 & ¶ 57; Intervenor Compl. ¶ 93.  Plaintiffs' demand for such relief and Count IV of the operative complaints should be dismissed because placement of wind turbine foundations did not require a lease under 25 C.F.R. Part 214 and was not a trespass

of any kind, let alone a continuing trespass.  Plaintiffs did not plead crushing rock for backfill—the conduct the Tenth Circuit held required a lease—as a basis for a judgment of continuing trespass and removal of turbine foundations.  Even if they had, crushing rock for backfill is not a continuing trespass: it is not ongoing (it ended in 2014) or abatable (crushed rock cannot be returned to its original shape and size), and is a permanent physical change to land.

### A.     The Wind Turbine Foundations Never Trespassed on the Mineral Estate.

Placement of the wind turbine foundations was not a trespass.  Any claim of trespass requires that "one person 'actually physically invades the real estate of another without the permission of the person lawfully entitled to possession.'"  *Davilla*, 913 F.3d at 966 (quoting with alterations *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862 (Okla. 1998)).[3]  The Tenth Circuit's decision in this case is dispositive that the turbine foundations did not "physically invade" the mineral estate and their placement was not a trespass.  It expressly held that "digging a hole in the ground, displacing rock and soil in the process," or otherwise "merely encountering or disrupting the mineral estate," was not "mining" under 25 C.F.R. § 211.3 and did not require a lease.  *See Osage Wind, LLC*, 871 F.3d at 1092.  To the contrary, "[i]f the minerals are not being shipped offsite or commercialized, then they must be acted upon for the purpose of exploiting the minerals themselves."  *Id*.  Apart from that specific conduct, "owners of the surface estate retain

---

[3] The Tenth Circuit held that Oklahoma law governs the "elements constituting the Allottees' federal trespass claims," and analyzed "'continuing trespass' under Oklahoma law."  *Davilla*, 913 F.3d at 966, 971 n.8.  Lacking "a federal body of trespass law," the Tenth Circuit explained, "we must borrow state law to the extent it comports with federal policy."  *Id*. at 965.  Even before *Davilla*, this Court similarly had held as to restricted allottees' trespass claims that "where federal common law governs a cause of action for trespass on Indian land, state law may be borrowed and applied as the federal rule for deciding the substantive legal issue at hand."  *Schafer, Tr. of Wayne Penn Schafer Separate Prop. Trust v. Centerpoint Energy Okla. Gas*, 2018 WL 10140171, at *3, 5 (N.D. Okla. May 21, 2018) (Frizzell, J.).  While this Court held that incorporation of certain state law defenses as to remedies "would frustrate Indian land policy," *Davilla* and *Schafer* settle that borrowing Oklahoma's substantive law of trespass does not.  Dkt. # 207 at 8.

virtually uninhibited use of their lands" in keeping with "[t]he expansive authority granted to [them under the Osage Act] to use and develop their land." *Id.*

Accordingly, Defendants did not trespass on the mineral estate when they excavated holes into the surface estate in which wind turbine foundations could be placed, and thereby displaced rock and soil. *Id.* at 1091-92. Given that such excavation was not "mining" and did not require a lease, then *a fortiori* the pouring of concrete onto the exposed surface estate of the holes left behind by that excavation could not be "mining," either. Any argument to the contrary is precluded by the Tenth Circuit's conclusion that "surface construction activities" such as "building a basement or swimming pool" do not require a lease merely because they "involve[] digging a hole in the ground, displacing rock and soil in the process." *Id.* at 1092. No principled distinction can be made between pouring concrete into an empty hole for a swimming pool or the basement of a building, which the Tenth Circuit recognized did not require a lease, and pouring concrete into an empty hole for a wind turbine foundation. Neither requires a lease under 25 C.F.R. Part 214.

Plaintiffs do not allege that any excavated sand or rock was used to mix or prepare the concrete for the wind turbine foundations. Nor could they. Ex. 6 (Mazurowski Dep. Tr.) at 151:4-13. It simply cannot be said that excavated minerals were "acted upon for the purpose of exploiting the minerals themselves" to place the foundations. *Osage Wind, LLC*, 871 F.3d at 1092. And it is the "placement of the turbine foundation," not crushing rock for backfill, that Plaintiffs plead as the basis for a judgment of "continuing trespass" and an "order that structures or materials placed . . . in the mineral estate must be removed." FAC at 12 & ¶ 57; Intervenor Compl. ¶ 93.

The Tenth Circuit's holding is consistent with the common law rule that the surface owner, not the mineral estate, owns empty holes and surfaces exposed by excavation. *See Ellis v. Ark. La. Gas Co.*, 450 F. Supp. 412, 421 (E.D. Okla. 1978) (holding that surface owner owns "depleted

gas storage reservoir"); *O'Brien Oil, LLC v. Norman*, 233 P.3d 413, 417 (Okla. Civ. App. 2010) (holding that surface owners "own the plugged and abandoned wellbore of the Theodore No. 1 well"). This has been referred to as "the American rule," pursuant to which any "cavern is owned by surface owners." *Ellis*, 450 F. Supp. at 421. This comports with Section 3 of the Osage Act which reserves to the Osage Nation "the oil gas, coal, or other minerals covered by the lands," but not the empty space left behind once minerals have been displaced. And here the wind turbines were not placed deep underground in "caverns," but on the exposed surface of 10 foot holes. Plaintiffs' allegations that the wind turbine foundations were "placed . . . in the mineral estate," therefore, are defective as a matter of law because the holes left behind when rock and soil were displaced by Defendants' excavation are *not* part of the mineral estate. FAC at 12 & ¶ 57.

In *Sunray Oil Co. v. Cortez Oil Co.*, for example, the Oklahoma Supreme Court reversed a preliminary injunction that had been entered in favor of a mineral rights holder enjoining the surface owner's lessee from using a dry well drilled for oil and gas exploration "for the disposal of salt water." 112 P.2d 792, 793 (Okla. 1941). The court held the surface owner had "the right to so use the surface and substrata of her land as she sees fit, or permit others so to do, so long as such use does not injure or damage other persons." *Id.* at 795. The same result obtains here: The Project's surface lessors owned each hole left behind by Defendants' excavation, and it was no trespass for Defendants, their lessee, to pour a foundation onto the exposed surface of such holes.

Any speculation by Plaintiffs that there may have been other "structures or materials placed, without authorization, in the mineral estate," would not warrant denial of this motion. FAC at 12. The only such "structures or materials" identified in the Complaint are the turbine foundations. FAC ¶¶ 2, 18, 57; *see also* Intervenor Compl. ¶ 93. Plaintiffs' bare allegation regarding "placement of . . . other materials" is conclusory. FAC ¶ 57. Even had it been properly

14

preserved in the Complaint, any such claim regarding "other materials" would fail as a matter of law for the same reasons as the claim regarding the turbine foundations:  Placing materials in a hole or on a surface exposed by excavation does not require a mining lease under 25 C.F.R. Part 214 or constitute a "trespass" on the mineral estate.  *See Osage Wind, LLC*, 871 F.3d at 1092.

### B.     Crushing Rock for Backfill Is Not a "Continuing Trespass."

The doctrine of "continuing trespass" recognizes that "the ongoing, unabating nature of certain trespasses *continuously* gives rise to causes of action that the victim can sue on, and eventually can support equitable relief."  *Davilla*, 913 F.3d at 971 n.8 (citing *Hughes v. Harden*, 151 P.2d 425 (Okla. 1944), and *Bradley v. Renfrow*, 84 P.2d 430 (Okla. 1938)).  Defendants' crushing of rock for backfill is not a continuing trespass because it is (1) not ongoing, (2) not abatable, and (3) a permanent physical change to land.

#### 1.     Crushing Rock for Backfill Is Not Ongoing.

To be deemed "continuing trespass" a trespass must be ongoing.  In *Bradley v. Renfrow*, for example, the Oklahoma Supreme Court held that a complaint pleaded continuing trespass where the plaintiff homeowner alleged that the defendants, her neighbors, would repeatedly intrude on her property and had done so "for a period of more than a year," were "continuing to do so," and "will continue unless restrained."  84 P.2d at 431.  By contrast, here the crushing of rock for backfill was completed once and for all in 2014.  Ex. 10 (Herfurth Decl.) at ¶¶ 6-7 & Ex. B at 1-2.  This is not a case where the conduct complained of is ongoing and will continue absent an injunction.  As such, it is not a continuing trespass.  *See B. Willis, C.P.A., Inc. v. BNSF Railway Co.*, 2009 WL 10727998, at *14 (N.D. Okla. May 26, 2009) (holding trespass claim for "removed coal and limestone" was barred by 2-year statute of limitations, rather than continuing, where plaintiff "has known since 1994 that [defendant] . . . made the subsurface cut," and "does not

contend that any additional damage occurred after construction was completed"), *report and recommendation adopted*, 2009 WL 10727997, at *1 (N.D. Okla. Sept. 11, 2009).

That some courts have found continuing trespass when unauthorized "extraction of minerals" is ongoing and will continue absent an injunction does not, as the OMC has previously suggested, mean that every trespass against mineral rights—even one that ended years ago—is a continuing trespass. Dkt. # 158 at 22-23. The OMC's argument mischaracterized *United States v. Hess*, 194 F.3d 1164 (10th Cir. 1999), which held that the defendants were engaged in "continuing trespass" by their "continuing series of gravel extractions and sales." *Id.* at 1176 n.12. At the time of suit, the defendants had been operating a gravel business under the name "Sunnyside Gravel" for at least thirteen years, mining gravel for "sales to local ranchers" and "to the Colorado Department of Transportation," and for personal use. *Id.* at 1169. The United States sought to "quiet title to the sand and gravel in the name of the United States" and "enjoin further mining." *Id.* By contrast, here crushing rock for backfill permanently ended nearly seven years ago.

Contrary to the OMC's characterization, *Hess* did not hold the trespass became a continuing trespass "because the gravel, at the time of removal, was legally 'titled in the government,' the United States." Dkt. # 158 at 23. The Tenth Circuit stated: "[W]e agree that *if the gravel is titled in the government*, the Hess family's gravel extractions over the years constitute a continuing trespass." *Hess*, 194 F.3d at 1176 (emphasis added). The quoted text from the Tenth Circuit's decision merely explained that there would be no trespass, continuing or otherwise, if on remand the district court were to find that the defendants, not the United States, owned the gravel. *See id.* at 1176, 1178 (vacating "summary judgment in favor of the United States in its action to quiet title"). That the United States holds title to the Osage mineral estate in trust is irrelevant to whether the long-since ended rock crushing is a "continuing" trespass.

### 2.   Crushing Rock for Backfill Is Not Abatable.

To be a "continuing trespass" a trespass also must be abatable.  In *Hughes v. Harden*, the Oklahoma Supreme Court held that there was a "continuing trespass" because "the presence of the additional bodies [of strangers in plaintiff's cemetery plot] was a continuing wrong that could have been abated," namely by "removal of bodies wrongfully interred in another's lot."  151 P.2d at 426.  According to *Hughes*:  "Where the cause of injury may be abated by the expenditure of labor or money the same is said to be a temporary one, and successive actions may be maintained for damages resulting therefrom."  *Id*.  Here the alleged "cause of the injury," *id*., 151 P.2d at 426, occurred when Defendants crushed rocks for backfill, "altering their natural size and shape." *Osage Wind, LLC*, 871 F.3d at 1091-92.  Once completed, rock crushing cannot be abated; nor can the rocks be returned to their original size and shape.  And there is no rational sense in which removal of wind turbine foundations—the sole injunctive relief for "continuing trespass" demanded in the Complaint—could abate the crushing of rock.  Accordingly, crushing rock for backfill is not a continuing trespass.  *See Hughes*, 151 P.2d at 426; *Max Oil Co. Inc. v. Range Prod. Co. LLC*, 681 Fed. App'x 710, 717 (10th Cir. 2017) (affirming dismissal of trespass and nuisance claims where plaintiff failed to "allege that the nuisance and the damages arising therefrom are temporary/abatable," because the completed "hydraulic fracture treatment encroachment into the [oil] producing formations" had "permanently damaged said wells").

### 3.   Crushing Rock for Backfill Is a Permanent Physical Change to Land.

That crushing rock for backfill caused a permanent physical change to the rock crushed is a further reason it should not be deemed a "continuing trespass."  The Restatement (Second) of Torts (the "Restatement") provides that "[a] continuing trespass ***must*** be distinguished from a trespass which permanently changes the physical condition of the land."  Restatement § 162 cmt. e (emphasis added).  The Restatement explains:

17

> Thus, if one, without a privilege to do so, enters land of which another is in possession and destroys or removes a structure standing upon the land, or digs a well or makes some other excavation, or removes earth or some other substance from the land, the fact that the harm thus occasioned on the land is a continuing harm does not subject the actor to liability for a continuing trespass. Since his conduct has once for all produced a permanent injury to the land, the possessor's right is to full redress in a single action for the trespass . . . . *Id.*

That rock crushed in 2014 remains altered in size and shape, therefore, is not a continuing trespass.

The Oklahoma Court of Appeals has relied on Section 162 of the Restatement to define continuing trespass. *Russell v. Williams*, 964 P.2d 231, 235 (Okla. Civ. App. 1998) (citing Restatement § 162 cmt. c). In a trespass case, the Oklahoma Supreme Court "quoted with approval" a different section of the Restatement. *See Frank v. Mayberry*, 985 P.2d 773, 776 (Okla. 1999); *see also Nichols v. Mid-Continent Pipe Line Co.*, 933 P.2d 272, 277 (Okla. 1996) ("adopt[ing]" Restatement section regarding private nuisance). Even assuming that the Oklahoma Supreme Court has not formally adopted Section 162 of the Restatement, therefore, it is at minimum persuasive authority as to Oklahoma law. *See Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1107 n.17 (10th Cir. 2007) (citing Section 162 of the Restatement for "element of a trespass claim" under Oklahoma law); *Black Anvil Operating LLC v. Benchmark Energy, LLC*, 2021 WL 3711206, at *2 (W.D. Okla. Aug. 20, 2021) (same); *see also Davilla*, 913 F.3d at 969 (not deciding whether "Oklahoma follows the Restatement").[4]

## II.     Plaintiffs' Demand for Removal of the Wind Turbine Foundations also Fails Because Plaintiffs Cannot Show Irreparable Harm Absent such Injunctive Relief.

Plaintiffs' demand for removal of the wind turbine foundations also should be dismissed as a matter of law for failure to demonstrate that such "an injunction is necessary to prevent

---

[4] This Court previously "note[d] that it is not clear at this stage of the litigation that [the Court] would be obligated to apply [Section 936's] Restatement of Torts factors to determine the propriety of injunctive relief." Dkt. # 207 at 9 n.5. Section 162 of the Restatement, however, has been relied on as a source of Oklahoma law both by the Tenth Circuit and the Oklahoma Court of Appeals.

'irreparable harm.'" *Davilla*, 913 F.3d at 973.  Plaintiffs cannot show (a) irreparable (or any) harm from the turbine foundations (or the turbines or associated infrastructure), (b) that money damages are inadequate to compensate Plaintiffs for any harm from crushing rock for backfill, or (c) that removal of turbine foundations would remedy any harm caused by crushing rock for backfill.

### A.      Plaintiffs Cannot Show any Harm from the Wind Turbine Foundations.

Plaintiffs' burden to show irreparable harm unless the injunction is issued is not "an easy burden to fulfill." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004).  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical.  Merely serious or substantial harm is not irreparable harm." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (internal citations omitted).  Harm is not irreparable when the "losses are compensable by monetary damages." *Id*.  And *Davilla* rejected the theory that a continuing trespass (which is not present here) relieves the plaintiff of its burden to prove that it will suffer irreparable harm absent an injunction. *See Davilla*, 913 F.3d at 974 (rejecting request to affirm permanent injunction of pipeline on basis of "the sheer right to exclude," where "the Allottees do not explain how the pipeline's presence works 'irreparable harm' otherwise").

Plaintiffs cannot show ***any*** harm—let alone harm that is certain, great, actual, and not compensable by money damages—from the wind turbine foundations themselves.  The Tenth Circuit's ruling settled that excavating holes and pouring concrete turbine foundations into those holes did not constitute "mining," and did not require a lease under 25 C.F.R. Part 214. *See* Argument Part I.A., *supra*.  To the contrary, the Tenth Circuit held that surface owners and their lessees retain "expansive authority granted to [them under the Osage Act] to use and develop their land," including "digging a hole in the ground, displacing rock and soil in the process," and then "building" in the empty hole. *See Osage Wind, LLC*, 871 F.3d at 1092.  These permissible surface construction activities are not transformed into unauthorized "mining" because some of the rock

removed from the holes was then crushed for backfill adjacent to the turbine foundations. No injunction may issue against turbine foundations (or the turbines themselves or associated infrastructure) that required no mining lease and caused no cognizable harm.

### B. Plaintiffs Have an Adequate Remedy at Law for Harm from Crushing Rock.

Harm is not irreparable when—like the alleged harm from crushing rock for backfill without a mining lease—it can be compensated by money damages. *See Holly Sugar Corp. v. Goshen Co. Coop. Beet Growers Ass'n*, 725 F.2d 564, 570 (10th Cir. 1984) ("If damages can compensate a plaintiff an injunction will not lie."); *Osage Nation ex rel. Osage Mins. Council v. Wind Cap. Grp., LLC*, 2011 WL 6371384, at *10 (N.D. Okla. Dec. 20, 2011) (Frizzell, J.) ("no irreparable harm may be found as a matter of law" where "the injury . . . may be compensated by an award of monetary damages"); *Schafer, Tr. of Wayne Penn Schafer Separate Prop. Trust*, 2018 WL 10140171, at *5 (granting summary judgment dismissing unjust enrichment claim where "trespass and nuisance claims provide an adequate remedy at law"). Plaintiffs assert multiple causes of action seeking money damages. FAC ¶¶ 51, 65. And Oklahoma courts, for example, have adopted a straightforward measure of damages when minerals have been mined without authorization: market value of the minerals less expenses of extraction. *See Dilworth v. Fortier*, 405 P.2d 38, 45 (Okla. 1964); *Edwards v. Lachman*, 534 P.2d 670, 674 (Okla. 1974).

This is not a case where alleged damages "cannot be calculated with a reasonable degree of accuracy or . . . the estimation of damages is so speculative that any award would be inadequate." *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1362 (10th Cir. 1989). The United States itself proffered an expert witness in mining engineering, Robert C. Freas, who opined that the total value to the OMC of the minerals "mined" by Defendants was $247,979.42. Ex. 11 (Freas Dep. Tr.) at 71:18-21. Mr. Freas testified that he calculated that total using engineering drawings of the dimensions of the holes excavated for each

turbine foundation, the mineral composition of the rock at the excavation sites derived from pre-construction drill borings, and prices at a quarry located in Osage County. *Id.* at 38:11-23, 43:17-47:6, 65:9-66:8. Defendants' expert witness in mining engineering, John Pfahl, testified that the total value to the OMC of the minerals "mined" was $68,993. Ex. 12 (Pfahl Dep. Tr.) at 27:11-16. While Mr. Pfahl believes Mr. Freas overstated both the quantity of minerals "mined" and the value of those minerals (among other errors), Mr. Pfahl and Mr. Freas agree on overall methodology. *Id.* at 23:18-29:9, 31:20-32:2, 127:4-15, 166:15-167:1, 203:6-204:4; Ex. 11 (Freas Dep. Tr.) at 44:21-45:15, 55:11-56:4, 89:15-24, 101:22-102:10.

In other words, here it is not only possible to calculate the quantum of the alleged damages with a reasonable degree of accuracy, ***they already have been calculated*** by the parties' experts. *See Tri-State*, 874 F.2d at 1362 (affirming denial of permanent injunction where the plaintiff's "own expert witness, Dr. George F. Rhodes, testified that a reasonable estimate could be made, even though it would be difficult to determine Tri–State's exact loss over the term of Shoshone's all-requirements contract"); *Osage Nation ex rel. Osage Mins. Council*, 2011 WL 6371384, at *10 (concluding that "had the Tribe established an injury, the injury could be compensated by an award of monetary damages," where "Plaintiff's and Defendants' experts presented calculations of the amount of royalties projected"). The OMC's strategic litigation decision not to retain a damages expert is of no moment. Damages more challenging to calculate than these are routinely held to provide an adequate remedy at law. *See Quarles v. Little River Energy Co.*, 2008 WL 185715, at *1-2 (N.D. Okla. 2008) (Frizzell, J.) (dismissing unjust enrichment claim and holding that "plaintiffs have an adequate remedy at law" in damages for "pollution" and "releases of saltwater and deleterious substances causing salt scarring and erosion"); *Snyder v. Am. Kennel Club*, 575 F. Supp. 2d 1236, 1242 (D. Kan. 2008) (holding that lack of "mathematical formula by which a

jury can calculate [reputational] damages" did not demonstrate irreparable harm, and explaining that "juries routinely award monetary damages . . . despite the absence of a precise formula").

Nor can the OMC demonstrate, as they have previously asserted, that "Defendants' invasion of the OMC's sovereignty and right to self-govern the Osage Mineral Estate constitutes an irreparable harm."  Dkt. # 158 at 17.  The long-since ended crushing of rock for backfill was, at most, an ordinary trespass (albeit in good faith) for which Plaintiffs may seek to prove damages. By contrast, in each of the decisions on which the OMC has relied, state governments were alleged to be interfering on an ongoing basis with the force and effect of laws passed by Indian tribal governments.  For example, in *Prairie Band of Potawatomi Indians v. Pierce*, plaintiff Indian tribe filed suit against "various Kansas state officials" seeking "to have its motor vehicle registrations and titles recognized by the state of Kansas."  253 F.3d 1234, 1237 (10th Cir. 2001).  Plaintiff alleged that "the tribe enacted its own motor vehicle code," and then "tribal member[s]" were "cited for using a tribal registration and title outside the reservation, a purported violation of [a Kansas statute]."  *Id.* at 1237-38.  The Tenth Circuit affirmed the entry of a preliminary injunction in part on the ground that "the threat of continued citation by the state created the prospect of significant interference with tribal self-government."  *Id.* at 1250.  Such cases are nothing like a private company allegedly crushing rock for backfill without a mining lease, and they do not excuse Plaintiffs from showing they lack an adequate remedy at law.[5]

---

[5] Other cases on which the OMC has previously relied are similarly inapposite.  *See Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1248 (10th Cir. 2006) (preliminary injunction issued against "the Governor of Kansas, and various other Kansas officials," enjoining "them from enforcing Kansas's gaming laws on the Shriner Tract and ordering them to return money and property seized when Kansas raided a casino"); *Seneca-Cayuga Tribe of Okla. v. State of Okla. ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989) (preliminary injunction issued to enjoin Oklahoma from pursuing "separate actions in state court seeking to enjoin the operation of Tribal bingo games"). No ongoing state interference with laws passed by Indian tribal governments exists here.

Moreover, in such cases, and unlike here, it was impossible for money damages to provide the plaintiff with an adequate remedy "because of the state's sovereign immunity." *Prairie Band of Potawatomi Indians*, 253 F.3d at 1251. Without an assertion of sovereign immunity, even alleged ongoing state interference with the "sovereignty" of Indian tribal governments (which has never occurred here) has been held inadequate to establish irreparable harm. *See Cayuga Indian Nation of New York v. Vill. of Union Springs*, 293 F. Supp. 2d 183, 197 (N.D.N.Y. 2003) (denying preliminary injunction where municipal government defendants "would not claim immunity to defend against any future action by the Nation to recover monetary damages").

The OMC's suggestion that it suffered irreparable harm when it was deprived of the asserted right to "say no to any entity that seeks to mine Osage minerals" is equally unpersuasive. Dkt. # 158 at 1, 15, 17. By definition, every plaintiff with a trespass claim must have been deprived of the right to "say no" to that offense. *See Davilla*, 913 F.3d at 967 (explaining that "the defendant's *lack of a right to enter* is an *element of the claim*"). Indeed, the same must be true of every garden variety tort claim or breach of contract claim compensable in money damages; had the plaintiff been permitted to "say no" to the offensive conduct, there would be no claim. Plaintiffs have not cited a single decision by any court adopting the novel theory that an alleged loss of the right "to say no," without more, is irreparable harm. We are aware of none. Finally, it bears repeating that Plaintiffs did ***not*** have a right to "say no" to the Project. The Tenth Circuit rejected Plaintiffs' theory that displacing rock and soil and then pouring concrete turbine foundations into the empty hole constituted "mining" and required a lease under 25 C.F.R. Part 214. *See* Argument Part I.A, *supra*. The conduct that caused alleged harm to Plaintiffs—the crushing of rock—has ended, and money damages can compensate Plaintiffs for that harm.

23

### C.   Removal of Wind Turbine Foundations Would Not Remedy Harm from Crushing Rock.

Even assuming *arguendo* that crushing rock for backfill caused irreparable harm (it did not), an order that the turbine foundations be removed would not remedy that harm.  Instead, rocks crushed in 2014 would remain "alter[ed from] their natural size and shape."  *See Osage Wind, LLC*, 871 F.3d at 1091-92.  "It is well settled an injunction must be narrowly tailored to remedy the harm shown." *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir. 2002).  Courts may not grant an injunction such as this that "cannot provide a remedy." *Thournir v. Buchanan*, 710 F.2d 1461, 1463 n.2 (10th Cir. 1983); *see also Jaquez v. Lawton Corr. Facility*, 2013 WL 2645589, at *19 (W.D. Okla. June 12, 2013) (dismissing injunction claims not "narrowly tailored to remedy the alleged [harm]"); *United States v. Sturdevant*, 2009 WL 10689852, at *4 (D. Kan. Dec. 11, 2009) (dismissing demand for injunction where "[p]laintiff does not explain how the injunctive relief which it seeks is necessary to protect it from the injury about which it complains").  Instead of preventing any harm from the long ago crushing of rock, such an injunction would serve only to impose an outrageous nearly $260 million punishment on Defendants.  Ex. 4 (Pike Dep. Tr.) at 151:14-169:9; Ex. 13 (net financial impact chart).  Injunctive relief is "designed to prevent future wrongs, not to punish past acts," and Plaintiffs' demand should be dismissed.  *Taylor v. Gilmartin*, 434 F. Supp. 909, 911 n.2 (W.D. Okla. 1977).

### III.   Any Other Demand for a Permanent Injunction Against the Project Should be Dismissed Because No such Demand Was Pleaded in the Complaint.

Plaintiffs' demand for "an order that structures or materials placed . . . be removed" is solely predicated on "continuing trespass."  FAC at 12.  To the extent Plaintiffs purport to assert any other basis for a permanent injunction against the Project, it should be dismissed because it is not pleaded in the operative complaints.  This Court held that last year was too late for Plaintiffs to assert new theories of relief not set forth in the First Amended Complaint.  *Osage Wind, LLC*,

2020 WL 3578351, at *6-8.  More than a year later and with discovery closed (excepting motions to compel), Plaintiffs should not now be permitted to assert new theories to enjoin the Project.  The Court has already rejected the suggestion that the request for "permanent injunctive relief" in the Complaint's "Prayer for Relief" somehow preserved its right to assert any theory of injunctive relief it might devise.  *Id*. at *6 n.4.  The Court explained that this request had been "explicitly limited" to an injunction against "'excavation, mining, and other work.'"  *Id*.  The Court further held that the OMC was "restricted to seek only those remedies sought by the United States in the First Amended Complaint."  *Id*. at *8.  Plaintiffs may not "make [their] 'prayer for relief' a 'moving target.'"  *Id*. at *7.  Their demand for removal of the Project should fall with their continuing trespass claims.  Regardless, any other demand for an injunction against the Project would also fail as a matter of law for lack of irreparable harm.  *See* Argument Part II, *supra*.

### CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, Defendants respectfully request the Court grant this motion; enter an order dismissing (i) Count IV (Continuing Trespass) of the Complaint, (ii) Count IV (Continuing Trespass) of the Intervenor Complaint, (iii) Plaintiffs' demand for "judgment finding Defendants are responsible for an ongoing and continuing trespass and an order that structures or materials placed, without authorization, in the mineral estate must be removed," and (iv) any other purported claim or demand by Plaintiffs for a permanent injunction against the Project; and grant Defendants such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Ryan A. Ray*

**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**, *pro hac vice*
**Sarah M. Stevenson**, *pro hac vice*
**Dominic A. Martinez**, *pro hac vice*
**MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.**
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

-and-

**Thomas J. McCormack**, *pro hac vice*
**Robert Kirby**, *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
**Robin D. Ball** (Los Angeles Office), *pro hac vice*
**Robert D. Comer** (Denver Office), *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**

**ATTORNEYS FOR DEFENDANTS
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2021, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing.  Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Stuart P. Ashworth
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
David McCullough
Jeffrey S. Rasmussen
The following non-ECF registrants have been served by email:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


*/s/ Ryan A. Ray*
Ryan A. Ray