## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| THE OSAGE MINERALS COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-704-GKF-JFJ |
| | ) | |
| OSAGE WIND, LLC; | ) | |
| ENEL KANSAS, LLC; and | ) | |
| ENEL GREEN POWER NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO INTERVENOR-PLAINTIFF OSAGE MINERALS COUNCIL'S MOTION TO COMPEL DEFENDANT ENEL GREEN POWER NORTH AMERICA, INC. TO RESPOND TO THE OMC'S THIRD SET OF DISCOVERY REQUESTS INCLUDING INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS [DKT. # 285]**

Ryan A. Ray, OBA #22281
NORMAN WOHLGEMUTH, LLP
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

Thomas J. McCormack, *pro hac vice*
Robert Kirby, *pro hac vice*
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

Lynn H. Slade, *pro hac vice*
Sarah M. Stevenson, *pro hac vice*
Dominic A. Martinez, *pro hac vice*
MODRALL, SPERLING, ROEHL,
HARRIS & SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)
*Of Counsel:*
Robin D. Ball (Los Angeles Office), *pro hac vice*
Robert D. Comer (Denver Office), *pro hac vice*
NORTON ROSE FULBRIGHT US LLP

**ATTORNEYS FOR DEFENDANTS OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

**Dated: October 20, 2021**

Defendants Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. ("EGPNA" and together, "Defendants") respond in opposition to Intervenor-Plaintiff Osage Minerals Council's ("OMC") Motion to Compel Defendant Enel Green Power North America, Inc. to Respond to the OMC's Third Set of Discovery Requests, Including Interrogatories and Requests for Production of Documents (Sept. 29, 2021) [Dkt. # 285] ("Motion"). The Motion fails to establish the discovery requests directed to EGPNA seek information that is relevant to the claims in the OMC's First Amended Complaint in Intervention [Dkt. # 164] or the United States' First Amended Complaint [Dkt. # 20]. The Motion should be denied in full.

## I.   INTRODUCTION

Defendants have responded to dozens of interrogatories and hundreds of requests for production, produced tens of thousands of pages of documents, and produced witnesses for sixteen (16) depositions, including two Rule 30(b)(6) corporate representative depositions. Throughout the discovery process, Defendants have provided information about the financial harm to Osage Wind, LLC, were the Court to order a permanent injunction and ejectment of the Osage Wind energy project ("Project"), and contracts and agreements demonstrating the financial obligations and consequences that will inure to Osage Wind, LLC. Defendants have not, and will not, assert separate injury to EGPNA nor Enel Kansas as a basis for avoiding permanent injunctive relief, including ejectment. Nor does the financial condition of a defendant or its affiliates weigh into the balancing of the harms. Thus, this Court does not require additional financial information from EGPNA or Enel Kansas to provide "context" to the financial consequences that will be imposed on Osage Wind, LLC, and the discovery the OMC seeks is not relevant.

Furthermore, while the OMC's Motion to Compel is expressly limited to two Interrogatories it served on EGPNA concerning EGPNA's finances, the OMC inexplicably asks

1

the Court to rule on the discoverability of Enel Kansas's financial information. *See* Motion at 3 n.2. Enel Kansas has no obligation to respond to Interrogatories served on its co-defendants, and there consequently is no basis for any relief against it, or for any relief concerning its financial information.

Controlling authority does not require the Court to consider the financial status of a party in order to balance the harm between the parties. The authority cited in the Motion does not disprove, and in fact supports, Defendants' argument that the financial information the OMC seeks from EGPNA is not relevant. In addition, the Motion should be denied in its entirety because the Court has previously rejected Plaintiffs' attempts to inject irrelevant and far-reaching financial information from Defendants into this litigation. When the Court cabined Plaintiffs' claims for relief to those sought in the United States' First Amended Complaint and struck allegations in the OMC's Complaint in Intervention, the Court noted that its rulings were based (in part) on a motivation to avoid the type of overly broad, far-reaching financial discovery at issue in the OMC's Motion to Compel.

Defendants have already produced all of the financial information necessary to weigh the financial harm if ejectment of the Project is ordered. The OMC's request for additional, irrelevant information is unjustified, and its Motion should be denied in full.

## II.   STANDARD OF REVIEW

The Motion seeks to compel EGPNA to supplement its responses to Interrogatories 6 and 14. Only in a footnote does the Motion attempt to incorporate Request for Production 62, which seeks documents relied on in developing responses to Interrogatories. *See* Motion 3 n.2. The Motion, however, recites the standard related to requests for production and not interrogatories. Motion at 9. Whether seeking to compel responses to requests for production or answers to

interrogatories, if the discovery sought is not "relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), the motion should be denied.

### III.   ARGUMENT

#### A. The Discovery At Issue Seeks Information From EGPNA, Not Enel Kansas.

A preliminary flaw in the OMC's Motion is that it seeks to compel discovery responses from Enel Kansas, but the discovery requests raised in its Motion are directed only to EGPNA. Interrogatory No. 6 asks EGPNA to "state the amount of profits you have earned form the Project in absolute dollar amounts and as a percentage of [EGPNA's] total profits," and Interrogatory No. 14 asks EGPNA to "state the total dollar amount [EGPNA] has invested in the Project to date." *See* Exhibit 1 to Motion, at 5-6. Thus, the Interrogatories were not only served solely on EGPNA, their plain language also clearly calls specifically for EGPNA's profits and investment related to the Project. *See id.*; *see also* Motion at 3 n.2 (acknowledging that the discovery requests at issue "were served on EGPNA and refer to EGPNA"). Nevertheless, the OMC's Motion purports to seek information from both EGPNA and Enel Kansas. *See, e.g.*, Motion at 10 ("Enel KS's and EGPNA's profits from the wind farm are relevant").

A plaintiff cannot serve interrogatories on a defendant and require its co-defendants to answer the interrogatories. *See* Fed. R. Civ. P. 33(b)(1) (interrogatories must be answered by the party to whom they are directed based on information "available to that party"). The Federal Rules of Civil Procedure limit parties to twenty-five (25) interrogatories to "any other party." Fed. R. Civ. P. 33(a)(1). If Enel Kansas were required to respond to interrogatories served upon its co-defendants, then the United States and OMC could circumvent Rule 33's limit on interrogatories. In *IPOC International Growth Fund Ltd. v. Diligence, LLC*, the Court held that a party did not have to respond to an interrogatory seeking information relating to its co-defendant. No. 06-1109

PLF/AK, 2007 WL 9812840, at *2 (D. D.C. Apr. 24, 2017); *see id*. (noting that the interrogatory "requests information that relates to a co-defendant, which should be directed to that co-defendant"). Accordingly, the OMC's Motion should be denied to the extent it seeks an Order compelling Enel Kansas to respond to interrogatories served on its co-defendant, EGPNA.[1]

### B. The Court Has Previously Denied The OMC's Attempt To Inject Irrelevant Financial Information Into This Litigation.

The OMC's Motion also should be denied because it represents an attempt to circumvent the Court's prior rulings—Dkt. # 161 and 162—on irrelevant financial information. Specifically, in its Order at Dkt. # 161, the Court denied the United States' Motion for Leave to File a Second Amended Complaint, which sought to modify its Prayer for Relief to seek "an accounting of revenue attributable to the wind farm, disgorgement, or unjust enrichment." Dkt. # 161 at 11. In denying the United States' Motion, the Court noted that the United States' "new theories of relief" were aimed at "the revenues generated by the wind farm operation *as a whole*," which had not been previously raised by the United States. *Id*. at 12 (emphasis in original). Due to the United States' delay in seeking relief related to the revenues generated by the Project as a whole, which would "raise significant new legal and factual issues," the Court denied the United States' attempt to amend its complaint in a manner that would "substantially increase[e] the potential liability of Osage Wind." *Id*. at 13. In addition, in its Order at Dkt. # 162, the Court struck allegations in the OMC's Complaint in Intervention relating to irrelevant financial information of Defendants and their related corporate entities. Pertinent here, the Court struck the OMC's allegations regarding "investment by [EGPNA] in Oklahoma wind farms" and "revenue increases received by The Enel

---

[1] In the event the OMC attempts to claim that it sought Enel Kansas's financial information in other discovery requests, the OMC did not move on those requests and did not comply with the local rules requiring inclusion of "a verbatim recitation of each interrogatory, request, answer, response and objection which is the subject of the motion." LCvR37-2(d).

Group as a whole as a result of an increase in wind generation in the United States and Canada[.]" Dkt. # 162 at 5. The Court's striking of these allegations was based in part on the "risk [of] prejudice to Osage Wind through overly broad discovery." *Id.*

The discovery requests raised in the OMC's Motion fulfill the Court's prophecy about overly broad discovery. The OMC seeks EGPNA's and Enel Kansas's investments in the Project and their profits from the Project (in absolute terms *and* relative to their other projects). Motion at 3. The OMC's requests ignore the Court's previous denial of the United States' delayed attempt to tie its requested relief to "the revenues generated by the wind farm operation *as a whole*," Dkt # 161 (emphasis in original), at the Court's previous striking of irrelevant allegations regarding Defendants' investment and revenue, Dkt. # 162 at 5. While the OMC claims that this information is relevant to its request for permanent injunctive relief, *see* Motion at 23, Defendants have already produced all of the financial information pertinent to that claim: (1) the financial impact to Osage Wind if ejectment of the Project is ordered, and (2) Osage Wind's relevant financial information. *See infra* Section III.C. In accordance with its reasoning in prior rulings, the Court should deny the OMC's motion to compel responses to its irrelevant, overly broad Interrogatory Nos. 6 and 14 to EGPNA.[2]

### C. The Project Is Owned And Operated By Osage Wind, LLC, And It Will Incur The Financial Consequences of Ejectment Defendants Rely Upon Under *Davilla.*

The OMC's chief contention in the Motion is that "the information requested in ROG Nos. 6 and 14 will be relevant to the Court's consideration of the weighing of the equities under *Davilla* [*v. Enable Midstream Partners L.P.*, 913 F.3d 959 (10th Cir. 2019)]. . . ." Motion at 13. However,

---

[2] If the Court orders EGPNA (or Enel Kansas) to disclose financial information—which it should not—such order should be narrowly tailored to avoid the disclosure of any investment or income information related to projects other than Osage Wind. *See* Dkt. # 161, # 162.

the financial harm of Plaintiffs' requested removal of the Project that Defendants assert should be considered in that analysis are those that will be incurred by Osage Wind; again, Defendants have not and will not rely upon financial harm to Enel Kansas or EGPNA as part of the *Davilla* analysis. To balance the equities the Court will consider the financial harm of removal to Osage Wind, along with harm to the public and third parties. The OMC's far-reaching requests for financial information of EGPNA and Enel Kansas are not relevant to the *Davilla* analysis or otherwise, and the OMC's Motion should be denied.

1.   **The Financial Consequences Of Ejectment Defendants Have Identified And Rely Upon Are The Impact On Osage Wind LLC.**

Defendants have informed the OMC, in both discovery responses and corporate representative deposition testimony, that Defendants are relying on financial harm to Osage Wind, LLC if the Court orders ejectment—*not* harm to EGPNA (or Enel Kansas). The OMC's Motion repeatedly states that removal of the Project will cost Defendants $300,000,000, and that discovery of EGPNA's and Enel Kansas's financial information is required to contextualize that figure. *See* Motion at 1, 11, 13, 24. However, this cost of removal is taken from Osage Wind's response to the United States' Interrogatory No. 10 to Osage Wind, which asked for:

> Any costs known or anticipated by you if a permanent injunction, including the remedy of ejectment, is subsequently issued against you in this litigation, including, but not limited to, contractual obligations or payments for which you will be responsible, costs of decommissioning the Project and any other costs you may present as a hardship to the Court in its duty to balance the equities between the parties.

*See* Osage Wind's Amended Responses and Objections to United States' Fourth Set of Interrogatories and Requests for Production of Documents, attached hereto as **Exhibit 1**. Osage Wind has updated its initial response (which identified almost $300 million in impact) to state the

net financial impact **to Osage Wind** as \$258,729,611.70.[3] *See id*. This is the *only* financial impact that has been claimed by any of the Defendants in this action, and will be presented to the Court in Defendants' *Davilla* analysis (if such an analysis proves necessary). Neither Enel Kansas nor EGPNA has claimed financial consequences if ejectment of the Project is ordered; the claimed financial impact of nearly \$260 million would be borne by Osage Wind, LLC. *See* Fed. R. Civ. P. 30(b)(6) Deposition of Defendants (Stephen Pike), Vol 1., relevant portions attached hereto as **Exhibit 2**, at 161:21-162:2; Vol. 2, relevant portions attached hereto as **Exhibit 3**, at 72:9-13, 74:6-11. Accordingly, to the extent the OMC argues that the Court needs "context" to evaluate the \$260 million figure claimed by Osage Wind, the proper context is Osage Wind's financial information, which has already been produced to Plaintiffs. Injecting the financial information of Enel Kansas and/or EGPNA into the Court's *Davilla* analysis would only serve to confuse and distort the analysis.[4]

Contrary to the OMC's assertions, this Court is not required to conduct an accounting of the assets and liabilities of the parties and all of their affiliates in order to weigh the equities present on a claim for injunctive relief. In *Sierra Club, Inc. v. Bostick*, the Tenth Circuit Court of Appeals considered whether a request for preliminary injunctive relief to halt construction on a pipeline was properly denied. 539 F. App'x 885 (10th Cir. 2013). The district court concluded the balance of harm favored the pipeline developers (multinational conglomerate TransCanada Corporation and its affiliated project company), who had spent over hundreds of millions to date and delay

---

[3] Osage Wind initially identified the net financial impact it would suffer as \$290,229,611.70, but amended its Answer to Interrogatory No. 10 upon discovery of a calculation error.

[4] Enel Kansas, LLC is not the sole owner of Osage Wind, LLC; the other owner is not a party to this litigation.  *See* Ex. 3, Pike Tr. 37:15-23.

would cost them hundreds of thousands of dollars per day. *Id.* at 890. The court weighed the financial investment and delay cost, not against the size of the company and whether it could, in some sense, absorb such loss, but against the alleged environmental harms that the injunction purportedly would prevent. *Id.*[5] The Tenth Circuit held the district court did not abuse its discretion by denying a motion for preliminary injunctive relief where the balance of harm did not favor such relief. *Id.* at 896. Under *Sierra Club*, the OMC's argument that it must weigh the economic impact of an injunction against the financial condition of a company (let alone its affiliates) fails.

The authority cited in the Motion (which include no opinions of any court in this Circuit) does not assist the OMC's argument that discovery of EGPNA's (or Enel Kansas's) financial information is relevant or discoverable.[6] In *United States v. Ameren Missouri*, the court's legal conclusion that the equities weigh in favor of an injunction is based on the defendant's admission that it (and *not* its parent) "'can afford anything this Court orders.'" 421 F. Supp. 3d 729, 815 (E.D. Mo. 2019), *aff'd in part,* 9 F.4th 989 (8th Cir. 2021).[7] (Not only is *Ameren* thus inapposite, but the Eighth Circuit Court of Appeals reversed the district court's issuance of an injunction for lack of

---

[5] In *Sierra Club*, less than one acre of wetland would be harmed over the length of the 485 mile pipeline. 539 Fed. App'x at 888, 896. Here, the Project infrastructure occupies approximately 1.5% of the leased surface land. *See United States v. Osage Wind, LLC*, 871 F.3d 1078, 1083 (10th Cir. 2017).

[6] Ironically, despite objecting to patent infringement cases are irrelevant to this matter involving Indian trust property when Defendants asserted such cases, three of the five cases relied upon by the OMC are patent infringement cases. *See* Dkt. # 223 at 14 n.8; Motion at 11-13 (citing *Commonwealth Sci. & Indus. Rsch. Organization v. Buffalo Tech, Inc.*, 492 F.Supp.2d 600, 606 (E.D. Tex. 2007), *Callaway Golf Co. v. Acushnet Co.*, 585 F. Supp. 2d 600, 622 (D. Del. 2008), and *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-CV-02061-H-BGS, 2018 WL 9903323, at *10 (S.D. Cal. Aug. 13, 2018)).

[7] Elsewhere in the *Ameren* court's lengthy opinion it discusses the finances of the defendant's parent corporation, 421 F. Supp. 3d at 798-99, but the court's analysis of the balance of hardships relies solely upon the defendant's admission concerning its financial wherewithal. *Id.* at 815.

jurisdiction. *See United States v. Ameren Missouri*, 9 F.4th 989, 1010 (8th Cir. 2021).) *Ameren* simply does not compel the outcome the Motion urges.

Similarly, and contrary to the OMC's characterization, the decisions of "other courts" on which the OMC relies likewise have not concluded financial information (of a party or a parent company) is relevant to *Davilla* weighing of the harm an injunction would impose on the defendant against the harm that would be prevented by the injunction, much less approved discovery into such matters. In *Commonwealth Scientific & Industrial Research Organisation v. Buffalo Technology Inc.*, 492 F. Supp. 2d 600 (E.D. Tex. 2007), and *Idaho Conservation League v. Magar*, No. 3:12-CV-00337-CWD, 2015 WL 632367 (D. Idaho Feb. 13, 2015), parent company finances were not addressed at all. In *Presidio Components, Inc. v. American Technical Ceramics Corp.*, as in *Ameren*, the defendant did not dispute that it was larger than the plaintiff, and the finances of the parent company were mentioned only in passing. No. 14-CV-02061-H-BGS, 2018 WL 9903323, at *10 (S.D. Cal. Aug. 13, 2018), *aff'd*, 784 F. App'x 786 (Fed. Cir. 2019), and *order dissolved*, No. 14-CV-02061-H-BGS, 2020 WL 6561431 (S.D. Cal. Nov. 9, 2020). Similarly, in *Callaway Golf Co. v. Acushnet Co.*, the ruling that the equities favored the plaintiff based on the failure of the defendant to submit sufficient evidence of the "admittedly subtle" harm the defendant would suffer; the parent company's financial situation is mentioned only in passing. 585 F. Supp. 2d 600, 622 (D. Del. 2008), *aff'd in part, vacated in part*, 576 F.3d 1331 (Fed. Cir. 2009). (Further, in *Callaway Golf*, as in *Ameren*, the injunction was vacated on appeal. *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1348 (Fed. Cir. 2009).) Thus, the OMC's cited authority does not justify the discovery sought from EGPNA in Interrogatory Nos. 6 and 14.

9

**2.      The OMC's Motion improperly invites the Court to disregard that EGPNA, Enel Kansas, and Osage Wind are separate corporate entities.**

"[I]t is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2087 (2020). "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Despite these well-established principles, the OMC asks the court to measure EGPNA's and Enel Kansas's financial information against the financial consequences of removal of the Project, which would be borne by a separate corporate entity, Osage Wind. Adopting the OMC's rationale would require a departure from the Supreme Court's edict on corporate law that "[l]imited liability is the rule, not the exception." *Anderson v. Abbott*, 321 U.S. 349, 362 (1944).

To bolster its attempt to discover EGPNA's and Enel Kansas's financial information, the OMC claims that Osage Wind is "nothing more than a corporate shell." Motion at 15. This is simply false. A "corporate shell" is an entity without assets or operations. *See United States v. Sneed*, 34 F.3d 1570, 1574 n.2 (10th Cir. 1994) ("A 'shell' company is an inactive or defunct corporation with little or no assets which carries on no business activity."); 17 C.F.R. § 240.12b-2 (defining a "shell company" as a company with "(1) No or nominal operations; and (2) Either: (i) No or nominal assets; (ii) Assets consisting solely of cash and cash equivalents; or (iii) Assets consisting of any amount of cash and cash equivalents and nominal other assets."). Osage Wind, however, owns and operates the Osage Wind Project, and is the contracting party on the related commercial contracts. *See* OMC Motion for Summary Judgment, Dkt. # 294, Statement of Fact 21 ("Osage Wind owned the assets that constituted the Osage Wind Farm . . . ."); *see, e.g.*, Wind

Generation Purchase Agreement between Associated Electric Cooperative, Inc. and Osage Wind, LLC for the Osage County, Oklahoma Wind Powered Electric Generating Facility Wind Generation Purchase Agreement, attached hereto as **Exhibit 4**, Amended and Restated Surface Lease, Exhibit 4 to Defendants' Motion for Partial Summary Judgment [Dkt. #297]; Construction Management Agreement, Motion Ex. 19.

Nor can the OMC legitimately complain that Osage Wind was created for the purpose of owning and operating the Wind Farm Project. Indeed, Tenth Circuit authority goes so far as to expressly "permit[] the incorporation of businesses for the very purpose of isolating liabilities among separate entities." *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1576 (10th Cir. 1990); *see also Anderson*, 321 U.S. at 361 ("The fact that incorporation was desired in order to obtain limited liability does not defeat that purpose.").

EGPNA, Enel Kansas, and Osage Wind have separate corporate existences and must be treated separately, despite their parent-subsidiary relationships. *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1018 (10th Cir. 2011); *Bestfoods*, 524 U.S. at 61. To the extent the OMC now seeks to show that Defendants are alter egos or agents of each other, the Court has ruled that the Plaintiffs are limited to the legal theories set forth in the United States' First Amended Complaint. Dkt. #161 at 12-15. Under Delaware law, which controls because it is the place of formation for each of the Defendants, Dkt. # 20 FAC ¶¶ 5-7, "[t]o proceed on an alter-ego theory, a *plaintiff* must *plead and prove"* facts supporting the factors used to analyze such claims. *Wagner, Trustee v. Gulfport Energy Corp.*, 2020 WL 8339211, at *3 & n.2, *4 (W.D. Okla. Sept. 30, 2020) (emphasis added) (citations omitted); *see also Chieftain Royalty Co. v. Dominion Okla. Tex. Expl. & Prod., Inc.,* 2011 WL 9527717, at *2 (W.D. Okla. July 14, 2011). Similarly, specific facts must be pled to assert an agency relationship. *See British Telecommunications PLC v. IAC/Interactive*

11

*Corp*, 356 F. Supp. 3d 405, 408 (D. Del. 2019). The OMC cannot now resurrect claims the Court has dismissed, or amend, via motion to compel, its First Amended Complaint in Intervention to assert new theories of liability against EGPNA and Enel Kansas.

Moreover, the OMC has not come remotely close to meeting the requirements to establish that the entities are alter egos. There is no evidence that Osage Wind does not have assets or is undercapitalized, that Osage Wind failed to observe corporate formalities, that Osage Wind did not pay dividends, that Osage Wind was insolvent at the time of the events at issue, that Osage Wind's corporate parents have improperly "siphoned" funds from the company, or that there is an "absence of corporate records." *Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd.*, 420 B.R. 112, 134 (Bankr. S.D.N.Y 2009) (DE law). Nor has the OMC demonstrated an "overall element of injustice or unfairness" from use of the corporate form. *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008); *see also NetJets Aviation, Inc. v. LHC Communic'ns, LLC*, 537 F.3d 168, 177 (2d. Cir. 2008) (DE law) (same).[8]

*Bestfoods* further demonstrates the irrelevance of the OMC's argument that "all of Osage Wind's officerships [are] filled by EGPNA employees" and that "Osage Wind had no employees at that time or any relevant time after." Motion at 20-21. In *Bestfoods*, the Supreme Court remarked that it is "entirely appropriate" for employees of a parent company to serve as directors of a subsidiary, and that such persons "can and do 'change hats' to represent the two corporations separately, despite their common ownership." 524 U.S. at 69 (citations omitted); H. Henn & J. Alexander, Laws of Corporations 355 (3d ed. 1983) (noting that it is "normal" for a parent and subsidiary to "have identical directors and officers"). Despite the OMC's emphasis on Osage Wind's lack of employees, *see, e.g.*, Motion at 23, controlling authority dictates that subsidiaries

12

without their own employees do not relinquish their separate corporate existence.[9] Osage Wind and EGPNA are separate entities and discovery of EGPNA's financial information is unnecessary to "contextualize" the financial consequences Osage Wind will incur.

### D. The OMC Relies On Substantial Backward-Looking Evidence, Which It Has Strenuously Contended Is Irrelevant To The *Davilla* Analysis.

The OMC devotes a substantial portion of its Motion to a discussion of EGPNA's and Enel Kansas's "involvement in and direction of the Project," in the several years before construction and excavation occurred, and to EGPNA's and Enel Kansas's supposed culpability in the activities which the Tenth Circuit determined constituted mining. *See* Motion at 2, 16-23.[10] The OMC claims that this backward-looking information "points to the fact that Enel [Kansas's] and EGPNA's profits are not just relevant but crucial to the weighing of the equities under *Davilla*[.]" Motion at 22. However, the Court has ruled that the *Davilla* analysis does not consider backward-looking evidence. *See, e.g.*, Dkt. # 264 at 4, 21. Accordingly, to the extent the OMC argues that its extensive discussion of EGPNA's and Enel Kansas's **past** "involvement and direction of the Project," and investment in and profits from the Project, is pertinent under *Davilla*, the Court has already foreclosed such an argument, and it cannot justify the discovery requests at issue here.[11]

---

[9] The Court's overruling of a "corporate separateness" objection, *see* Dkt. # 210, does not apply to Defendants' arguments presented here, as that ruling related to whether any of the Defendants could withhold documents related to excavation or operations related to the Project. *Id*. at 20.

[10] The "evidence" OMC cites for this proposition relates solely to EGPNA's role and actions, not Enel Kansas.

[11] Given the irrelevance of the OMC's claims about EGPNA's and Enel Kansas's past actions to the *Davilla* analysis, Defendants will not attempt to catalogue here all of the many inaccuracies in the OMC's account of those actions, but note the following examples: The OMC claims that Exhibit 19, the Construction Management Agreement ("CMA") between Osage Wind and EGPNA "demonstrates that Osage Wind contractually transferred *all authority and control* over the Osage Wind Farm to EGPNA." Motion at 14. On the contrary, the CMA relates only to construction, and assigns EGPNA, as Construction Manager, specified duties only with respect to construction,

## IV.     Conclusion

For the reasons explained herein, Defendants respectfully request that the Court deny the

OMC's Motion in its entirety.

Respectfully submitted,

*/s/ Ryan A. Ray*
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**, *pro hac vice*
**Sarah M. Stevenson**, *pro hac vice*
**Dominic A. Martinez**, *pro hac vice*
**MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.**
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

-and-

**Thomas J. McCormack**, *pro hac vice*
**Robert Kirby**, *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*

---

Motion Ex. 19 at EGPNA-000009 to 011 (Section 2.2). Moreover, even then, the CMA expressly required Osage Wind's further approval for specified major matters. Motion Ex. 19 at EGPNA-000015 to -000016. Similarly, OMC cites portions of a Letter Agreement among TradeWind, Enel Kansas and EGPNA concerning EGPNA's role and responsibilities, but fails to mention the Letter Agreement's provision that "Osage [Wind] will make all final decisions on construction related matters[.]" Motion Ex. 28 at OSAGE WIND-021241.

14

**Robin D. Ball** (Los Angeles Office), *pro hac vice*
**Robert D. Comer** (Denver Office), *pro hac vice*
NORTON ROSE FULBRIGHT US LLP

**ATTORNEYS FOR DEFENDANTS
OSAGE WIND, LLC, ENEL KANSAS, LLC
AND ENEL GREEN POWER NORTH
AMERICA, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2021, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Stuart P. Ashworth
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
Shoney Blake
Jennifer Baker

The following non-ECF registrants have been served by email:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


*/s/ Ryan A. Ray*
Ryan A. Ray