IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, and<br>THE OSAGE MINERALS COUNCIL,<br><br>    Plaintiffs,<br><br>vs.<br><br>OSAGE WIND, LLC;<br>ENEL KANSAS, LLC; and<br>ENEL GREEN POWER NORTH<br>AMERICA, INC.,<br><br>    Defendants. | Case No. 14-CV-704-GKF-JFJ |

**DEFENDANTS' RESPONSE TO PLAINTIFF THE UNITED STATES' MOTION TO STRIKE THE TESTIMONY OF DEFENDANTS' EXPERT WITNESS KIMBERLEE CENTERA [Dkt. # 290]**

Defendants Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. ("Defendants") respond in opposition to Plaintiff the United States' Motion to Strike the Testimony of Defendants' Expert Witness Kimberlee Centera (Oct. 5, 2021) [Dkt. # 290] ("Motion"). Ms. Centera's expert testimony will help the Court, as the trier of fact, "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The Motion is yet another effort by the United States to obtain a ruling from the Court, untethered from the full evidentiary record, that Defendants acted in bad faith as a matter of law when they engaged in activities the Tenth Circuit Court of Appeals later determined required a lease under 25 C.F.R. Part 214. At most, the Motion is premature when the Court does not have before it all evidence Defendants may present at trial on the question of damages for which they may be liable. Ms. Centera's expert testimony will assist the Court in determining the measure and amount of damages owed to the United States and intervenor plaintiff the Osage Minerals Council ("OMC," and with the United States,

"Plaintiffs"), including, to the extent the Court deems relevant, whether Defendants acted in good faith.[1] The Motion should be denied in full.

## I. Background and the Centera Report

In its Second Amended Scheduling Order (July 15, 2020) [Dkt. # 172], the Court established deadlines for parties to exchange expert reports. The parties exchanged a total of four expert reports, each directed to the measure and amount of damages the Court may award Plaintiffs for "the sorting and crushing of minerals for the purpose of backfilling and stabilization" in the absence of a lease issued by the United States under 25 C.F.R. Part 214. *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1092 (10th Cir. 2017). The United States produced an expert report by Robert C. Freas, who computed damages, based on a royalty payment of materials excavated for construction of the Project, in the amount of $247,979.42, and FTI Consulting, Inc., by Steven J. Hazel, who advocated for damages to be based on the maximum amount of payments defendant Osage Wind, LLC may be required to pay to surface lease holders over the potential lifetime of the Project, with interest, in the amount of $24,247,449.00.[2] *See* Defendants' Motion for Partial Summary Judgment, Undisputed Material Fact ¶ 11 [Dkt. # 297]; FTI Consulting Report, Exhibit 8 (sealed) to United States Motion for Summary Judgment [Dkt. # 303]. The OMC did not produce a separate expert report, but adopted the report of FTI Consulting. *See* Osage Minerals Council Brief in Support of Motion for Summary Judgment at 21-22 [Dkt. # 294-1]. Defendants produced two reports. John Pfahl computed damages for mining as defined by the Tenth Circuit, with

---

[1] As set forth in Defendants' Motion for Partial Summary Judgment (Oct. 12, 2021) [Dkt. # 297], the Court should dismiss the claim for continuing trespass and the related request for permanent injunctive relief, leaving the question of money damages to be addressed at trial.

[2] Defendants reserve the right and intend to challenge the testimony of FTI Consulting (Mr. Hazel) and/or Mr. Freas under Fed. R. Evid. 702 at or before any deadline established by the Court for motions pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

interest, in the amount of $73,962.00, and opined on the methodology and conclusions of Mr. Freas and FTI Consulting. *See* Pfahl Report, Exhibit 5 (sealed) to United States Motion to Determine Sanctions for Spoliation of Evidence [Dkt. # 293]. Ms. Centera's report "respond[ed] to the FTI Consulting Report" and provided an opinion on two questions: (1) "whether a knowledgeable and experienced wind developer would have reasonably anticipated that a lease from the mineral owner would be required prior to construction of the [P]roject," and (2) "if a wind energy developer was clearly apprised prior to construction commencing that a mining lease was required to engage in ordinary turbine foundation excavation for a wind energy project, would the developer [a] have practical and effective alternative to using minerals so 'mined' from the mineral estate in the construction of foundations for the Project." *See* Declaration of Kimberlee Centera, attached hereto as **Exhibit A**, and Ms. Centera's report, Exhibit 1 thereto. Mr. Freas, Mr. Hazel, Mr. Pfahl, and Ms. Centera were each deposed by the parties to this litigation.

The Motion did not attach a copy of Ms. Centera's expert report, and misrepresented to the Court the topics on which Ms. Centera opined as well as the content of her opinion. Ms. Centera's report sets out her background and expertise, and provides her "detailed expert opinion" in response to the FTI Consulting report and to provide an "expert opinion and response to two questions." Centera Report at 1, 2, 4. With respect to the FTI Consulting report, Ms. Centera opines that the FTI Consulting measure of damages "is not customary or reasonable within the renewable energy market," is contrary to the Tenth Circuit's definition of mining, and relies on surface lease payment terms that "are wholly inapplicable when valuing the underlying mineral estate." *Id.* at 2. Ms. Centera further opines that the FTI Consulting report failed to consider mineral leases and permits issued by the Plaintiffs, and that contemporaneous mineral leases were the "appropriate proxy" to determine damages. *Id.* at 4. With respect to the specific questions on which Ms. Centera

3

offered an opinion, she offered an opinion as to the expectations of a "knowledgeable and experienced wind developer" regarding whether a lease or permit would be required, not about specific actions taken by Defendants. *Id.* at 5-6. Ms. Centera's testimony at trial will present her opinions as stated in her report. Centera Decl. ¶ 4.

During her deposition, Ms. Centera testified that the focus of her report was the methodology and conclusion of the FTI Consulting Report. Excerpts of Transcript of Deposition of Kimberlee Centera, May 14, 2021, 32:13-17, 140:12-18, attached hereto as **Exhibit B**. Ms. Centera's report does not offer any opinions on due diligence, or whether Defendants adequately performed due diligence. *Id.* 82:12-15, 83:9-12. Ms. Centera's report does not assign a value to the mineral materials excavated during construction. *Id.* 144:20-25. Ms. Centera's report and deposition testimony are discussed in further detail below.

## II. Legal Standard

Federal Rule of Evidence 702 provides a qualified expert may provide opinion testimony if, among other factors, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). An expert may be qualified based on her "knowledge, skill, experience, training or education." *Id.* To perform its gatekeeping function under Rule 702 and *Daubert*, the Court conducts a two-step analysis. "First, the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (quotation marks and citations omitted). And, the expert opinion must be relevant to the issues that will be

decided by the trier of fact. *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232–33 (10th Cir. 2005).

### III. Argument

The Motion does not challenge Ms. Centera's qualifications as an expert, nor the methods she applied in her expert report. The United States devotes the bulk of its Motion to arguing Ms. Centera's testimony will not be helpful to the Court, and implies her opinion is not based on sufficient facts. This response explains that Ms. Centera's testimony satisfies each element of Rule 702.

#### A. Ms. Centera is qualified as an expert.

An expert must be qualified by her "knowledge, skill, experience, training, or education." Rule 702. "[A]ny one of the five bases listed in the Rule may be sufficient to qualify a witness as an expert . . . ." *Denton v. Nationstar Mortg. LLC*, No. 18-CV-241-GKF-JFJ, 2020 WL 3261008, at *1 (N.D. Okla. May 1, 2020). The expert does not need to satisfy all five bases. "The focus is on whether the witness has sufficient expertise to assist the finder of fact." *Id.* (quotation marks and citations omitted). Ms. Centera's knowledge, skill, and experience qualify her as an expert witness in this matter.

Ms. Centera is the president and CEO of TerraPro Solutions, and has over 25 years of experience "in the development, financing, construction and operations of wind and solar renewable energy projects across the United States, Canada, and South America." Centera Report at 1. This includes specialization in the documents necessary for the financing of renewable energy projects, including "curative work associated with the negotiation and resolution of mineral agreements pertaining to surface and mineral rights." *Id.* Ms. Centera, one of few women in her field of expertise, and her company "represent . . . many of the major renewable energy companies

5

in the world" in development of renewable energy projects, the majority of which are wind energy projects. Centera Dep. 109:9-25. Ms. Centera's experience is set forth in her updated resume. *See* Centera Decl., Ex. 2.

Ms. Centera has worked on a number of renewable energy projects in which Native American tribes have held an interest in the surface or the minerals. This includes negotiating leases with the Bureau of Indian Affairs ("BIA"). Centera Dep. 22:10-16, 134:3-15. During her deposition, Ms. Centera identified a number of projects she had worked on in recent years involving tribal lands. *Id.* 175:23-176:2 (Mountain View 1 and 2 projects, Riverside County, California), 177:17-25 (Foote Creek projects, Wyoming), 178:7-22 (Kern County, California), 179:5 (Storm Lake, Iowa), 180:23-181:9 (projects in Arizona, New Mexico, Nevada, Utah). The United States complains that Ms. Centera has no experience "where a mineral leases was required prior to beginning a wind development project." Motion at 8. But the Motion ignores the following question and response from Ms. Centera's deposition:

> Q: . . . But you've not had any experience where a mineral lease was required prior to beginning a wind development project; correct?
> A: Typically, no, no because there's not going to be—there's no mining that takes place. So normally a mineral lease is not going to come up, because you're not –
> Q: Okay.
> A: . . . you're not going to be mining, so you're not going to lease.

Centera Dep. 149:17-150:3. As Ms. Centera noted, the United States' expert, Mr. Hazel, similarly does not have experience in a case with facts identical to those here. *Id.* 150:12-151:9 ("I think across the board, as far as the experts, we both agree that there's no precedent for the calculation of these—of this compensation."); *see* Excerpts of Transcript of Deposition of Steven Hazel, April 29, 2021, 24:25-25:13, attached hereto as **Exhibit C** (testifying he has never consulted or testified on a dispute involving the amount of damages owed to a mineral rights owner by a wind farm developer).

6

Ms. Centera's knowledge, skill, and experience in wind energy project development, including the negotiation of mineral leases when necessary and working with Tribes and the BIA, establish her as an expert with specialized knowledge to assist the Court in this case. Prior experience as an expert witness is not required. *See United States v. Duran*, 941 F.3d 435, 452 (10th Cir. 2019); *Wood v. Cendant Corp.*, No. 03-CV-298-TCK-FHM, 2006 WL 6862723, at *2 (N.D. Okla. Mar. 28, 2006).

### B. Ms. Centera's specialized knowledge will help the Court understand the evidence and determine the facts at issue.

Once the expert is qualified, the Court must consider "whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Bitler*, 400 F.3d at 1232-33 (quoting *Daubert*, 400 U.S. at 597). The Motion argues Ms. Centera's report is not relevant for two reasons: (1) because the Court has dismissed five of Defendants' equitable defenses [Dkt. # 207], and (2) because Ms. Centera's report responds to opinions offered by the United States in the FTI Consulting report. The United States is wrong on both points. Ms. Centera's report is relevant to the question of whether Defendants acted in good faith in excavating and constructing the wind turbine foundations—put in issue by Plaintiffs' complaints and on which the United States now seeks summary judgment, *see* Dkt. # 300 at 16—and as rebuttal to the FTI Consulting report. If, as Ms. Centera's report states, a knowledgeable and experienced wind energy developer would *not* expect a mining lease to be required for wind turbine foundation excavations, that expectation would be material to whether a wind developer "should have" been on notice of the need for a mining lease. United States's First Amended Complaint [Dkt. # 20], *e.g.*, ¶ 56 (stating Defendants "should have known" a minerals lease was required for construction of the Project). Along with other evidence Defendants will present at trial demonstrating their good faith, Ms. Centera's report and related testimony would reinforce the Tenth Circuit's acknowledgment that Defendants' pre-litigation

7

understanding of "mining" was "reasonable." *Osage Wind, LLC*, 871 F.3d at 1091. As the Centera report has not yet been proffered as a trial exhibit by Defendants, the Court may reserve relevancy objections for trial. *See Weiser v. Pathway Servs., Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 1488736, at *2 (N.D. Okla. Apr. 4, 2019).

Ms. Centera's opinion and report bears on whether Defendants "knew or should have known" a lease was required—an allegation made by both Plaintiffs—and specifically *only* whether they "should have known" of such requirement.[3] Ms. Centera's industry experience will help the Court evaluate whether Defendants "should have known" a mining lease was required for the construction of the wind turbines for the Project. The United States is unreasonably attempting to use this Rule 702 Motion to limit the evidence Defendants may present on this point, and their motion should be denied for that reason.

The Affirmative Defense Order dismissed certain of Defendants' affirmative defenses, but did not limit the type of evidence the Court may consider when determining damages or if Defendants acted in good or bad faith when excavating for and constructing the wind turbines without a Part 214 lease. "Generally, courts permit expert testimony regarding the customs, standards, and practices in a particular industry or profession." *Denton*, 2020 WL 3261008, at *2. Ms. Centera's testimony will assist the Court's determination of whether Defendants acted in good faith.

---

[3] While the United States exaggerates the limitations on materials Ms. Centera reviewed, Defendants do not dispute that Ms. Centera was not provided a complete record regarding Defendants' investigation into whether a Part 214 lease was required. Ms. Centera was aware, however, of communications from the United States to Defendants before this litigation was initiated. *See* Centera Dep. 85:6-15.

The United States argues Ms. Centera's "disagreement" with the FTI Consulting report is not enough to make her expert testimony relevant. Motion at 7. But Fed. R. Civ. P. 26(b)(2)(D)(ii) specifically contemplates that experts may be identified "solely to contradict or rebut evidence on the same subject matter identified by another party." If Plaintiffs determine not to present Mr. Hazel as a witness to testify to the opinions contained in the FTI Consulting report, Ms. Centera's testimony rebutting the FTI Consulting report will not be necessary. But Defendants have the right to rebut expert testimony proffered by Plaintiffs.

To no effect, the United States takes issue with the wording Ms. Centera uses in her report to describe her opinions. The Motion complains Ms. Centera provides "comments" on the FTI Consulting report, *see* Motion at 7—but the term "comment" is directly beneath the heading "DETAILED EXPERT OPINION." *See* Centera Report at 2. And Ms. Centera is not offering an opinion "as to the valuation of mineral resources" or the "calculation of damages," as stated in the Motion, at 7. With respect to the FTI Consulting report, Ms. Centera challenges the methods and conclusions. *See* Centera Report at 2. She does not offer an opinion on the amount of damages. Defendants have provided the opinion of Mr. Pfahl on these questions.[4] Rather, Ms. Centera relies on her years of experience in the renewable energy field to opine on "the methodology that was used in connection with [the] proposed compensation" in the FTI Consulting report, and to find this methodology, and thus the result, lacking. Centera Dep. 32:13-16.

Ms. Centera's report will be helpful to the Court's determination of whether Defendants acted in good faith, and in analyzing the methodology employed by the expert advanced by both

---

[4] Why the United States says "Defendants and all of their witnesses who were deposed" could not "decide the amount of damages in this case," Motion at 10, is not clear. The United States deposed Mr. Pfahl, who testified about the amount of damages the Court should award Plaintiffs. Ms. Centera was not retained for this question.

Plaintiffs, Mr. Hazel. The United States' disagreement with Ms. Centera's opinions do not make those opinions inadmissible. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking . . . admissible evidence.").

### C. Ms. Centera's testimony is based on sufficient facts.

Because the Motion misrepresents Ms. Centera's opinion, its challenge to whether she relied on sufficient facts must fail. The Motion states Ms. Centera did not testify about Defendants' knowledge "at the time of excavation and construction," including "Defendants' review of permitting and jurisdiction issues . . . ." Motion at 4. But this was not the purpose for which Defendants retained Ms. Centera. And the United States has no basis for contending Defendants "intentionally kept" a specific email from Ms. Centera to induce her to present a false opinion. *See* Motion at 6. As discussed above, Ms. Centera will not be testifying about Defendants' *actual knowledge*. What Defendants specifically knew is not relevant to Ms. Centera's opinion, which rebuts Plaintiffs' expert report and offers her opinions as to what Defendants "should have" known.

To opine on the FTI Consulting report, Defendants provided Ms. Centera with the FTI Consulting report, its appendices, and the FTI Consulting research file produced by the United States. *See* Centera Report App'x A. They also provided Ms. Centera with a number of documents produced by the United States, the OMC, and Defendants in this litigation. *See id.* Ms. Centera considered the FTI Consulting report in full, and Ms. Centera's report adopts the background section of the FTI Consulting report—which includes a quotation of 25 C.F.R. § 214.7. Ms. Centera was provided with a copy of the Tenth Circuit's opinion, and testified that she reviewed "Page 18 through . . . Page 27." Centera Dep. 34:7. These are the pages in which the Tenth Circuit analyzed whether, under 25 C.F.R. § 211.3 and § 214.7, Defendants were required to obtain a

10

minerals lease for the sorting and crushing of excavated materials. *See* Tenth Circuit Opinion [Dkt. # 78]. And Ms. Centera reviewed communications from the United States to Defendants prior to the litigation. *See* Centera Dep. 85:6-15. Each of the United States' challenges to the facts on which Ms. Centera did or did not rely are disproven by the record.

        **D. Ms. Centera's testimony is the product of reliable methods that have been reasonably applied to the facts of this case.**

Finally, Ms. Centera's testimony will be based on her experience and knowledge about the types of agreements wind energy developers enter into with mineral rights owners, and the fact that there is no precedent for equating the compensation to which a surface owner may be entitled under leases for a wind energy project with the compensation to which the mineral rights owner is entitled for minerals mined. Indeed, Plaintiffs' expert Mr. Hazel testified that he has never before seen a lease, promulgated by the BIA or otherwise, that establishes payment terms to the mineral owner identical to the maximum amount of payment that may be due to a surface owner. *See* Hazel Dep. 90:13-91:9.

Ms. Centera's report in response to the FTI Consulting Report is in the style of a rebuttal report. A rebuttal witness "does not apply any principles or methodology; he simply attacks the data, assumptions, and adjustments underlying principles and methodology that [the witness he is rebutting used]. Such testimony is admissible." *Advance Rsch. Chemicals, Inc. v. Praxair, Inc.*, No. 03-CV-0867-CVE-PJC, 2005 WL 8175037, at *2 (N.D. Okla. Apr. 19, 2005); *see Sinclair Wyoming Ref. Co. v. Infrassure Ltd*, No. 15-CV-194-F, 2017 WL 11094221, at *3 (D. Wyo. May 19, 2017) ("Rebuttal experts are not required to generate independent conclusions, based on data, which arrive at a different outcome than the experts they are rebutting. Instead, questioning methodology, and opining on methods and facts plaintiffs' experts did not consider are precisely the type of rebuttal testimony the court would expect.") (quotation marks and citations omitted);

11

*Pinterest, Inc. v. Pintrips, Inc.*, No. 13-CV-04608-HSG, 2015 WL 2268498, at *1 (N.D. Cal. May 14, 2015) ("Of course, challenging the assumptions of an expert witness' report is a permissible topic of rebuttal testimony."). The Motion's challenge to Ms. Centera's methodology must fail.

### IV.     Conclusion

The Motion should be denied in full.

Respectfully submitted,

*/s/ Ryan A. Ray*
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**, *pro hac vice*
**Sarah M. Stevenson**, *pro hac vice*
**Dominic A. Martinez**, *pro hac vice*
**MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.**
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

-and-

**Thomas J. McCormack**, *pro hac vice*
**Robert Kirby**, *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

12

*Of Counsel:*
**Robin D. Ball** (Los Angeles Office), *pro hac vice*
**Robert D. Comer** (Denver Office), *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**

**ATTORNEYS FOR DEFENDANTS OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2021, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Stuart P. Ashworth
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
Shoney Blake
Jennifer Baker

The following non-ECF registrants have been served by email:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*

*/s/ Ryan A. Ray*
Ryan A. Ray