# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| (2) OSAGE MINERALS COUNCIL, | ) | Case No. l4-CV-704-GKF-JFJ |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (1) OSAGE WIND, LLC; | ) | |
| (2) ENEL KANSAS, LLC; and | ) | |
| (3) ENEL GREEN POWER | ) | |
| NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**INTERVENOR-PLAINTIFF OSAGE MINERALS COUNCIL'S
REPLY IN SUPPORT OF THE OMC'S MOTION TO COMPEL DEFENDANT ENEL
GREEN POWER NORTH AMERICA, INC. TO RESPOND TO THE OMC'S THIRD
SET OF DISCOVERY REQUESTS, INCLUDING INTERROGATORIES AND
REQUESTS FOR PRODUCTION AND DOCUMENTS**

i

## I. INTRODUCTION

Intervenor-Plaintiff Osage Minerals Council ("OMC") files this reply brief in further support of the OMC's Motion to Compel, Dkt. 285 ("OMC Mot."). None of the arguments offered in Defendants' Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC ("Enel KS"), and Enel Green Power North America, Inc. ("EGNPA" and collectively, "Defendants") Brief in Opposition supports the denial of the OMC's Motion. *See* Dkt. 306 ("Defs.' Opp'n"). In weighing the equities under *Davilla*, Defendants would like for the Court to only consider the financial impacts on Osage Wind's balance sheet, as injunctive relief is unlikely to harm the viability of Enel KS's and EGPNA's overall book of business. The fact that this evidence will be unhelpful to Defendants in their opposition to the OMC's request for injunctive relief does not render the evidence irrelevant. The requested discovery is clearly relevant, and Defendants have failed to provide any sound reason for their refusal to disclose it.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 33(a)(2) provides that interrogatories "may relate to any matter that may be inquired into under Rule 26(b)." Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." "When discovery sought appears relevant on its face, the party resisting discovery has the burden to establish the lack of relevance by demonstrating that the discovery (1) does not come within the broad scope of relevance as defined by under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the ordinary presumption in favor broad disclosure." *In re Waldrop*, 560 B.R. 806, 812 (Bankr. W.D. Okla. 2016) (citing *Gassaway v. Jarden Corp.*, 292 F.R.D. 676, 684 (D. Kan. 2013)). "The scope of examination by interrogatories should not be curtailed unless the information sought is clearly irrelevant," *Buffington v. Gillette Co.*, 101 F.R.D. 400, 402 (W.D. Okla. 1980), and the "burden

1

is on the objecting party to show why an interrogatory is improper." *Flour Mills of Am., Inc. v. Pace*, 75 F.R.D. 676, 680 (E.D. Okla. 1977).

### III. ARGUMENT

#### A. Enel KS's and EGPNA's Profits Are Relevant to a *Davilla* Weighing of the Equities Analysis

Defendants argue that the OMC's motion should be denied because Defendants "will not rely upon financial harm to Enel Kansas or EGPNA as part of the *Davilla* analysis." Defs.' Opp'n 6. Of course Defendants do not want to rely on the overall profits of EGPNA and Enel KS. Defendants have now identified $258,729,611.70 as the cost of removal, Defs.' Opp'n 7, and Defendants would prefer that the Court consider this number against Osage Wind's book of business, *alone*. This is because if the Court is able to consider the $258,729,611.70 cost of removal within the context of EGPNA's international multi-billion dollar book of business, it will be much harder for Defendants to demonstrate that the harm they will suffer from injunctive relief is greater than the irreparable harm the OMC continues to suffer absent such relief.

But Defendants do not get to cherry pick the evidence the Court will consider in conducting a weighing of the equities based on what Defendants deem most favorable to them. Nor can Defendants escape the fact that federal courts routinely consider the financial impacts injunctive relief will have on *all* defendants in a litigation, as well as non-party parent corporations, to determine whether injunctive relief is appropriate. *See* OMC Mot. 12-13 (listing authorities).[1] Defendants quibble that several of the cases cited in the OMC's Motion relate "to patent infringement" and "are irrelevant to this matter," Defs.' Opp'n 8, n.6, but the

---

[1] Such a weighing is especially important here where the defendant asserting harm has the benefit of indemnification obligations covering the conduct at issue from the two defendants who are not asserting harm. Dkt. 239-7 (Construction Management Agreement), Art. VI, § 6.3 at EGPNA-000018; Ex. 1 (Fourth Amended and Restated LLC Agreement), Art. XI, § 11.1(a).

2

consideration of the financial viability of all defendants (and non-party parent corporations) is decidedly not unique to the law governing injunctive relief in patent infringement cases. *See e.g., Idaho Conservation League v. Magar*, No. 3:12-CV-00337-CWD, 2015 WL 632367, at *7-8 (D. Idaho Feb. 13, 2015) ("the equities of this case [under the Clean Water Act] weigh decisively in favor of an injunction" where the defendant corporation "has substantial income and unencumbered assets," and injunctive relief will not "lead [defendant] to financial ruin.").[2]

Defendants next argue that *United States v. Ameren Missouri* is inapplicable because, in that case, the District Court granted injunctive relief based on defendant's admission that it "'can afford anything this Court orders.'" Defs.' Opp'n 8 (quoting 421 F. Supp. 3d 729, 815 (E.D. Mo. 2019), *aff'd in part*, 9 F.4th 989 (8th Cir. 2021)).[3] It is true that, in this case, Defendants are not stating they "can afford anything this Court orders." If they were to state that, of course, then it would be clear that the balance of equities weighs in the OMC's favor, as the irreparable harm caused by Defendants' ongoing trespass would clearly outweigh the harm of effectuating a removal that Defendants "can afford." Instead, Defendants are stating that the cost of injunctive relief will be $258,729,611.70. *Id.* at 7. But notably, the OMC has requested injunctive relief to

---

[2] Defendants also quibble that in two of the cases the OMC has cited, "parent company finances were not addressed at all." Defs.' Opp'n 9. This, however, is beside the point. The OMC need not establish the relevance of financials from non-party parent corporations since, in this case, the OMC is asking for financials from entities who are (1) parties to the litigation and (2) jointly and severally liable for the unlawful conduct the OMC is seeking to remedy by asking for injunctive relief. Of course, the fact that courts will also consider the finances of non-party parent corporations, *see, e.g., Callaway Golf Co. v. Acushnet Co.*, 585 F. Supp. 2d 600, 622 (D. Del. 2008), *aff'd in part, vacated in part*, 576 F.3d 1331 (Fed. Cir. 2009), merely demonstrates the absurdity in Defendants' position that the Court should only consider Osage Wind's financials, and not the financials of other named defendants simply because they are parent corporations.

[3] On appeal, the Eighth Circuit did not find fault with the District Court's consideration of Ameren Corporation's financial information. *United States v. Ameren Missouri*, 9 F.4th 989 (8th Cir. 2021). Rather, the Court reversed the injunction against one of the plants because no violation of the Clean Air Act had been alleged at that plant. *Id.* at 1009-10. In all other respects, the Eighth Circuit affirmed. *Id.* at 1010.

remedy the ongoing trespass committed by *all three* Defendants on the Osage Mineral Estate.[4] Thus, unless and until Defendants concede that the balancing of harms weighs in the OMC's favor, the OMC is entitled to all relevant discovery regarding how *all three* Defendants will be impacted by the imposition of injunctive relief, as opposed to the *one* Defendant whose financial status Defendants deem most helpful to them in their opposition to injunctive relief.

### B. The Court's July 1 Order Does Not Preclude the OMC From Seeking Discovery Related to the OMC's Request for Ejectment

Defendants provocatively claim that "[t]he OMC's Motion [] should be denied because it represents an attempt to circumvent the Court's prior rulings—Dkt. # 161 and 162—on irrelevant financial information." Defs.' Opp'n 4. A review of the Court's rulings, however, reveals that the OMC's Motion in no way constitutes an attempt to circumvent this Court's previous orders, but rather, the Motion is narrowly tailored to discovery concerning the harm that Defendants—the enjoined parties—will suffer from the imposition of injunctive relief. *See Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 973 (10th Cir. 2019) (in considering whether to impose injunctive relief to trespass on Indian trust property, federal courts consider whether "the threatened injury outweighs the harm that the injunction may cause to the enjoined party.").

Defendants are mistaken to claim that this Court's July 1 Orders prohibit the OMC from seeking financial information relevant to a weighing of the equities under *Davilla*. While the Court did deny the United States' attempt to seek three *new* forms of relief, specifically an

---

[4] Defendants' invocation of *Sierra Club, Inc. v. Bostick* likewise only emphasizes why the OMC is entitled to the discovery the OMC seeks. Defs.' Opp'n 7-8 (citing 539 F. App'x 885 (10th Cir. 2013)). In *Bostick*, the Tenth Circuit considered whether the District Court abused its discretion in "conclud[ing] that the threatened environmental injuries were outweighed by the financial harm that the injunction would cause TransCanada [Corp. and TransCanada Keystone Pipeline, LP]," the intervenor-defendant owners of the pipeline to whom the Court referred collectively. *Bostick*, 539 F. App'x 889; *see id.* at 887, n.1. Ultimately, the Tenth Circuit found that based on the "undisputed evidence" "[a]ppellee's put into the record" the district court's balancing of harms was not an abuse of discretion "outside the zone of permissible choice." *Id.* at 895-96.

4

accounting, disgorgement, and unjust enrichment, Dkt. 161 (July 2, 2020 Order and Op.), 11, the Court did *not* deny the United States and the OMC the remedy of injunctive relief in the form of ejectment. In fact, the Court rejected Defendants' arguments that the OMC was limited to money damages by noting that "the law of the case doctrine does not limit the United States/OMC to money damages," and accordingly, the OMC may continue to seek permanent injunctive relief in the form of ejectment. Dkt. 161 (July 2, 2020 Order and Op.), 9.

Furthermore, the Court's Order granting, in part, Defendants' Motion Strike in no way precludes the OMC from seeking discovery relevant to the OMC's claim for permanent injunctive relief. It is notable that the Court struck particular allegations in the OMC's Complaint out of concern for the undue prejudice Defendants would suffer from the burden of additional discovery. *See* Dkt. 162 (July 7, 2020 Order), 5 (striking allegations in the OMC's Complaint that "risk prejudice to Osage Wind through overly broad discovery."). The Court did not express this concern in relation to Plaintiffs' request for permanent injunctive relief in the form of ejectment, and in this case, Interrogatory Nos. 6 and 14 do not constitute "overly broad discovery." In fact, these two Interrogatories are exceedingly narrow, focused only on placing the profits all Defendants have received from the Osage Wind Farm within the context of their collective book of business such that the Court will be able to adequately balance the harms for both sides in considering whether to award injunctive relief. Defendants have failed to demonstrate that their own financial information is not readily at their fingertips, and thus the burden of producing this information will clearly be minimal.

### C. The OMC is Entitled to Discovery on Enel KS's Profits

Defendants further aver that "[a] plaintiff cannot serve interrogatories on a defendant and require its co-defendants to answer the interrogatories" because the Federal Rules of Civil Procedure only require each individual Defendant to respond with what is "'available to that

party.'" Defs.' Opp'n 3 (quoting Fed. R. Civ. P. 33(b)(1)). Putting aside the fact that Defendants never raised this issue during the August 31 Meet and Confer—or in the parties' back and forth correspondence[5]—this issue, now, constitutes nothing more than a red herring since information on Enel KS's profits is clearly "available" to EGPNA and the Interrogatories that the OMC served on EGPNA in no way require Enel KS to respond. Enel KS is a holding company wholly-owned and controlled by EGPNA such that any profits Enel KS makes from the Project are directed by EGPNA and EGPNA's executives and/or employees since Enel KS has zero employees. Dkt. 189-2 (Sept. 10, 2020 Beauregard Decl.) ¶ 9. Defendants' objection along these lines is all the more ludicrous given that, to date, EGPNA's legal department has handled the "production efforts of all three named Defendants in this litigation." *Id.* ¶ 11. EGPNA has control and possession over information related to Enel KS's financial information, and EPGNA can and should produce that information.[6]

### D. Defendants Have Not Yet Produced Sufficient Discovery to Allow the OMC to Determine Enel KS's and EGPNA's Profits

Although Defendants claim to have "supplement[ed their] responses to Interrogatories 6 and 14 in the supplemental responses" that they served on the OMC in mid-September, *see* Dkt. 285-16 (Sept. 22, 2021 Email from Sarah Stevenson), the documents and information that Defendants have produced, to date, do not provide sufficient information to ascertain how

---

[5] Defendants did not raise this objection in their August 30, 2021 letter, Dkt. 285-8 (Letter from Lynn Slade), nor did they raise it during the August 31, 2021 Meet and Confer. *See* Dkt. 285-7 (Sept. 29, 2021 Nagle Decl.) ¶¶ 5-13. Defendants' failure to raise this undermines the "purpose of the meet and confer requirement [which] is to promote discussion of *specific issues* and the exchange of additional information." *Palzer v. Cox Oklahoma Telcom, LLC*, No. 15-CV-00564-GKF-JFJ, 2019 WL 11585346, at *3 (N.D. Okla. Apr. 26, 2019), *aff'd sub nom. Palzer v. CoxCom, LLC*, 833 F. App'x 192 (10th Cir. 2020) (emphasis in original) (citations omitted).

[6] Defendants are also wrong to suggest that the OMC has attempted to circumvent Rule 33(a)(1)'s twenty-five interrogatory limitation for interrogatories as the OMC has only served twenty-two Interrogatories on Enel KS.

injunctive relief will impact the balance sheets of EGPNA and Enel KS. Repeatedly, Defendants have insisted that financial information related to Osage Wind's income is sufficient to allow Plaintiffs to determine to what extent Enel KS and EGPNA might be harmed—or *not* harmed—by injunctive relief. *See* Dkt. 285-7 (Sept. 29, 2021 Nagle Decl.) ¶¶ 6-8. Defendants appear to have deserted this argument now—after making it repeatedly during the Meet and Confer process[7]—but nonetheless, it is clear that Defendants have yet to produce responsive information to ascertain what impacts, if any, Enel KS and EGPNA will experience as a result of an ejectment of the Wind Farm. *See* Dkt. 285-9 (Sept. 8, 2021 Letter from Mary Kathryn Nagle) 2; Dkt. 285-7 (Sept. 29, 2021 Nagle Decl.) ¶ 18.

### E. Defendants Are Jointly and Severally Liable for Their Collective, Continuing Trespass

Defendants wax rhapsodically about the "well-established principles" of corporate law, and, to be sure, their byzantine network of holding companies and special purpose vehicles is a testament to their ability to capitalize on these principles. But their recitation of these principles in no way demonstrates that the discovery the OMC seeks is not relevant to this Court's weighing of the equities under *Davilla*. Defendants claim the OMC is trying to "assert new theories of liability against EGPNA and Enel Kansas," Defs.' Opp'n 12, but the entire issue of "corporate separateness" was introduced to this litigation by *Defendants*, not the OMC. For quite some time now, Defendants have argued that "neither Enel Kansas or EGPNA are liable for any alleged acts or wrongs of Osage Wind, LLC, of which it is manager pursuant to 18 O.S. § 2022."

---

[7] Although Defendants repeatedly insisted that information related to Enel KS's and EGPNA's profits were produced in documents related to Osage Wind's financials during the Meet and Confer process, *see, e.g.,* Dkt. 285-8 (Aug. 30, 2021 Letter from Lynn Slade) 2 ("Defendants have already produced exhaustive information regarding Osage Wind, LLC's investments . . . and financial information from defendant Osage Wind, LLC."), Defendants do not make this argument in their Opposition to the OMC's Motion, *see* Defs.' Opp'n, and thus it appears Defendants have abandoned this position.

7

Dkt. 183-3 (Jul. 22, 2020 Letter from Mary Kathryn Nagle) 79 (internal quotation marks omitted). Defendants initially raised this awkward "corporate separateness" argument in response to Plaintiffs' discovery requests (*see id.*), and then subsequently waived it, but only for purposes of deciding the parties' motions to compel discovery. *See* Dkt. 198 (Oct. 7, 2020 Mot. Hr'g Tr.) 74:19-23 (The Court: "You're not withholding documents based on a corporate separateness objection but you're not willing to strike that defense . . . ?" Mr. Slade: "That is correct, Your Honor."). The point is, this is not the OMC's "theory of liability," but rather, these corporate separateness arguments are nothing more than Defendants' failed attempts to preclude the production of relevant discovery.

And thus these flawed arguments have no place here, with regards to the Court's consideration of the present Motion. The OMC is not attempting to pierce a corporate veil or hold accountable some distant corporate parent who did not actively participate in Defendants' trespass on the Osage Mineral Estate. Instead, the OMC has pled and argued joint and several liability against all three Defendants for their "tortious trespass, continuing trespass, and unlawful mining of the Osage Mineral Estate." Dkt. 294-1 (OMC Summ. J. Br.) 19. Defendants are jointly and severally liable for their collective trespass because it is clear that the tortious conduct of each Defendant is the "legal cause of harm" and their contributions to the harm "cannot be apportioned." *Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 76 (2d Cir. 2001).[8] All three Defendants engaged in "joint enterprise and a mutual agency" such that divisibility of causation is not possible. *Cayuga Indian Nation of New York v. Pataki*, 79 F. Supp. 2d 66, 72-73

---

[8] As such, there is no need to debate the proper definition of a "shell company." *See* Defs.' Opp'n 10. All that matters is that "a fair allocation of liability cannot be made" among them. *Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 76 (2d Cir. 2001).

(N.D.N.Y. 1999) (citation omitted)); *see* Dkt. 294-1 (OMC Summ. J. Br.) Statement of Undisputed Facts ("SUF") ¶¶ 10, 15-17, 19-27, 29-37, 39, 41-43, 47-48.

Take, as just one example, the decision to *not* to apply for a lease after Superintendent Phillips issued her stop work letter. According to the agreements in place, EGPNA was required under one agreement to "obtain[] . . . all necessary Permits in connection with the construction of the Project." Ex. 2 (Construction Management Agreement), § 2.2(i) at EGPNA-000036. Additionally, Osage Wind's LLC Agreement required Enel KS to "supervis[e] the performance of [EGPNA] under the Management Services Agreement [and] of [EGPNA] under the Construction Management Agreement . . . ." Ex. 1 (Amended and Restated LLC Agreement), Art. VIII, §§ 8.1, 8.2(a) at OSAGE WIND-041339. It was Bill Price, EGPNA's Vice President of Engineering and Construction for EGPNA, who made the decision to continue exploiting and using Osage minerals in October of 2014 *without* the lease required by law. *See* Dkt. 294-1 (OMC Summ. J. Br.) SUF ¶ 30. And even if Osage Wind had decided it would obtain the lease required by law, Osage Wind could not have done so without the consent of Enel KS, which Enel KS never gave. Dkt. 294-1 (OMC Summ. J. Br.) SUF ¶¶ 23-24. It is impossible to apportion blame to only one or two of these Defendants, as they all three collectively contributed to the unlawful trespass on the Osage Mineral Estate.

And while "a parent corporation is not liable for the acts of its subsidiaries" it is surely liable for acts of its own. Defs.' Opp'n 10. The OMC does not dispute that it is "entirely appropriate" under certain circumstances "for employees of a parent company to serve as directors of a subsidiary" or that "such persons can and do change hats to represent the two corporations separately." Defs.' Opp'n 12. But the fact that Defendants shared employees, and the Board members of all Defendants worked together collectively to commit Defendants'

9

trespass merely demonstrates that this a case where "two or more-tort feasors [have] act[ed] concurrently or in concert to produce a single injury." *Cayuga Indian Nation of New York v. Pataki*, 79 F. Supp. 2d 66, 72 (N.D.N.Y. 1999) (citation omitted)). Defendants' representation that they will only claim harm against Osage Wind is a self-serving attempt to "simplify" this litigation for themselves. *Id.* This attempt, however, fails, and none of Defendants' corporate doublespeak changes the simple fact that, in a weighing of the equities analysis, the Court can and should consider the financial impacts injunctive relief will impose on all three tortfeasors—and not just the one Defendants self-select for strategic purposes.

### F. Defendants Cannot Rely on the Court's Prohibition on Backward Looking Evidence to Prevent the Production of Forward-Looking Evidence Relevant under *Davilla*

Defendants are correct that this Court has ruled that the *Davilla* analysis does not consider backward-looking evidence, but they miss the mark when they try to frame the evidence the OMC seeks as such. *See* Defs.' Opp'n 13. Quite to the contrary, the evidence at issue is necessarily forward-looking—how else can Defendants' future profits be projected, if not by analyzing their profits to date? This Court has made clear *Davilla* applies, and *Davilla* makes clear that the *future impacts* of injunctive relief play a key role in balancing the equities. Evidence of the financial impacts Defendants *will bear in the future* as a result of injunctive relief is therefore relevant and necessary to such analysis. And because neither Defendants nor the OMC has a crystal ball, the best predictor of Defendants' future profits in the absence of an injunction is Defendants' past profits. Such evidence is not backward looking; rather, it is the best—if not the only—means of looking *forward* to project the financial impacts of an injunction on Defendants. Simply put, the Court cannot balance the future impacts of injunctive relief without the evidence the OMC seeks.

## IV. CONCLUSION

For the reasons stated above, the OMC respectfully requests that the Court grant the OMC's Motion to Compel.

Respectfully submitted,

s/ Mary Kathryn Nagle
Mary Kathryn Nagle, OBA No. 33712
Wilson Pipestem, OBA No. 16877
Abi Fain, OBA No. 31370
Jennifer S. Baker, OBA No. 21938
Shoney Blake, Cal. Bar No. 264981
Pipestem and Nagle Law, P.C.
401 S. Boston Ave., #2200
Tulsa, Oklahoma 74103
918-936-4705 (Office)
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
afain@pipestemlaw.com
jbaker@pipestemlaw.com
sblake@pipestemlaw.com
*Counsel for Intervenor-Plaintiff*
*Osage Minerals Council*

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2021, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ryan A. Ray
Joel L. Wohlgemuth
rar@nwcjlaw.com
jlw@nwcjlaw.com

-and-

Lynn H. Slade Sarah S.
Stevenson Deana M.
Bennett Spencer L. Edelman
lynn.slade@modrall.com
sarah.stevenson@modrall.com
deana.bennett@modrall.com
spencer.edelman@modrall.com

-and-

Thomas J. McCormack
Robin D. Ball
Robert Comer
Robert Kirby
thomas.mccormack@nortonrosefullbright.com
robin.ball@nortonrosefullbright.com
bob.comer@nortonrosefullbright.com
robert.kirby@nortonrosefullbright.com
*Counsel for Defendants*

Cathryn Dawn McClanahan
cathy.mcclanahan@usdoj.gov
Nolan Fields
Nolan.Fields@usdoj.gov
Stuart P. Ashworth
stuart.ashworth@sol.doi.gov
*Counsel for Plaintiff, United States*

David McCullough
dmccullough@dsda.com

Jeffrey S. Rasmussen
jrasmussen@ndnlaw.com

-and-

Wilson Pipestem
Mary Kathryn Nagle
Abi L. Fain
Jennifer S. Baker
Shoney Blake
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
afain@pipestemlaw.com
jbaker@pipestemlaw.com
sblake@pipestemlaw.com
*Counsel for Intervenor-Plaintiff,*
*Osage Minerals Council*

/s/ Mary Kathryn Nagle