IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| And | |
| OSAGE MINERALS COUNCIL, | |
| Intervenor-Plaintiff, | |
| v. | Case No. 14-CV-704-GKF-JFJ |
| OSAGE WIND, LLC;<br>ENEL KANSAS, LLC; and<br>ENEL GREEN POWER NORTH AMERICA, INC., | |
| Defendants. | |

**The United States' Reply in Objection to Defendants' Response (Dkt. 306)
to the Osage Minerals Council's Motion to Compel Discovery Responses from
Defendant Enel Green Power North America, Inc. (Dkt. 285)**

Plaintiff, the United States of America, files its reply in objection to Defendants' Response in Opposition to Intervenor-Plaintiff Osage Minerals Council's Motion to Compel discovery responses from Defendant Enel Green Power North America, Inc. (EGPNA) (Response). The United States supports the Osage Minerals Council (OMC) in its underlying Motion (Dkt. 285) and limits its reply to objecting to Section III (C)[1] of Defendants' Response to fulfill a duty of candor to the Court:

---

[1] "The Project is owned and operated by Osage Wind, LLC, and it will incur the financial consequences of ejectment Defendants rely upon under *Davilla*." Dkt. 306 at 6.

specifically, controlling contractual agreements make clear that Osage Wind, LLC is **not obligated to bear alone *all* financial consequences in this case**.

Under that heading Defendants state that "the financial harm of Plaintiffs' requested removal of the Project that Defendants assert should be considered in that analysis are those that will be incurred by Osage Wind[.]" *Id.* at 7. While Defendants are careful to state that liability will be "incurred" by Osage Wind, LLC (Osage Wind), that statement is misleading.

At the time Defendants committed their primary excavation and mining of the Osage Mineral Estate (September through November of 2014), the Fourth Amended and Restated Limited Liability Company Agreement of Osage Wind, LLC, dated October 1, 2014 (Agreement), was in effect.[2] *See* Exhibit 1, as filed under seal. Under that Agreement's General Indemnity provision, both Enel Kansas, LLC (Enel Kansas) and GE's EFS Osage Wind, LLC agreed to indemnify Osage Wind (as the Project Company) for certain inaccuracies or failures made by either Enel Kansas or GE's Osage Wind, LLC or any affiliate of those parties. *Id.* at 68-72. The indemnity

---

[2] A Fifth Amended and Restated Limited Liability Company Agreement of Osage Wind, LLC was entered on June 10, 2015. On the same date, the Amended and Restated Limited Liability Company Agreement of Osage Wind *Holdings*, LLC (a related entity) was entered, contemporaneous with the project commencing commercial operations, including additional investors JPM Capital Corporation, Dortmund, LLC (Northwestern Mutual Life Insurance Company) and Antrim Corporation. *See* Exhibit 2, as filed under seal. Notably, this Osage Wind *Holdings*, LLC agreement also contains identical provisions concerning indemnity (59-63), the Guaranty (73-87), "Obligations" (74), and various put options available to shift liability between Defendants and up to their multination parent company. *Id.*

arrangement specifically extends to third person claims, including commencement of any "action, proceeding, demand, or claim by a Third Person[.]" *Id.* at 69.

Moreover, the Agreement's Guaranty involves Enel Green Power S.p.A. (the Italian multinational parent of the Enel family of affiliates) as the Guarantor and identifies Osage Wind as a Guaranteed Party. *Id.* at 82-97; *see also, Id.* at 84 (defining "Obligations" and outlining and limiting the extent of Enel Green Power S.p.A.'s obligations by this definition). Notably, this Guaranty outlines the complicated web of Indemnity Put Options involving Defendants and their related affiliates. Specifically, at part (vii), the Obligations refer to payment of and performance by EGPNA of its obligations "under the Osage Indemnity Agreement and the payment of the Osage Indemnity Put Option Price." *Id.* at 84. Other put options referenced within the "Obligations" definition include a Tax Equity Put Option at part (ii) and a Project Company Bankruptcy Put Option at part (ix). *Id.*

In a recent Rule 30(b)(6) deposition, Defendants' Corporate Representative, Stephen Pike, was questioned about the operation and purpose of these put options:

Q: (By Mr. Fields) But you're aware what the put options are; correct?

A: To my -- yes.

Q: And -- and what are the put options, if you had to describe them in your own words?

A: It would be -- it would be the, the right, **a triggering point for the right for, for the investor to, to -- to get out and -- and make us -- or have us be responsible for certain actions.**

Q: And so to clarify, on behalf of the defendants, are you just not aware if they've occurred, or you could confirm that they have not occurred?

3

> A: I am not aware that they have occurred.
>
> \* \* \*
>
> Q: (By Mr. Fields) But I guess generally, you are aware of how put options work based on your previous confirmation that **they would shift liability from some of the corporate defendants in this matter that are affiliates?**
>
> MR. BALL: Objection to form. Mischaracterizes the witness' testimony. You can answer if you know.
>
> THE WITNESS: Again, I -- I -- I would say that -- **that it's my understanding**, I do not claim to be an expert on that on behalf of our company.

Exhibit 3, Deposition of Pike (Vol. II) at 41:9-22, 45:24-46:9 (emphases added).

Surely, Defendants did not mean to give the Court the impression that Osage Wind would bear the burden of payment for any and all financial impact stemming from an adverse damages award or order of injunctive relief *alone*. When Defendants now identify the $258,729,611.70, which they allege will result when the Court orders ejectment, they conveniently cabin such "financial impact" as follows:

> Defendants are relying on financial harm to Osage Wind, LLC if the Court orders ejectment—*not* harm to EGPNA (or Enel Kansas) . . .
>
> \* \* \*
>
> [The $259 million from Osage Wind, LLC] is the *only* financial impact that has been claimed by any of the Defendants in this action . . .
>
> \* \* \*
>
> Neither Enel Kansas nor EGPNA has claimed financial consequences if ejectment of the Project is ordered; the claimed financial impact of nearly $260 million would be borne by Osage Wind, LLC.

Dkt. 306 at 7-8 (emphases in original).

Defendants represent to this Court that *they* are relying on and claiming *only* Osage Wind – not Enel Kansas or EGPNA – will suffer any resulting financial harm ordered by this Court as relief. However, the discovery Defendants *have* allowed, as outlined above and in the attached exhibits, makes clear that there are several avenues by which Osage Wind, Enel Kansas, EGPNA, and their affiliates can shift any resulting liabilities to a much larger, financially secure, multinational parent company. Accordingly, the United States respectfully requests that Intervenor-Plaintiff OMC's Motion to Compel discovery requests from Defendant EGPNA (Dkt. 285) be granted.

Respectfully submitted,

United States of America

Clinton J. Johnson
Acting United States Attorney

s/Nolan M. Fields IV
Cathryn D. McClanahan, OBA No. 14853
Nolan M. Fields IV, OBA No. 31550
Assistant United States Attorneys
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
T: 918-382-2700
cathy.mcclanahan@usdoj.gov
nolan.fields@usdoj.gov

Stuart P. Ashworth, OBA #31468
Special Assistant United States Attorney
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor's Office
7906 East 33rd Street, Suite 100
Tulsa, Oklahoma 74145
T: 918-669-7905
stuart.ashworth@sol.doi.gov

Of Counsel:
Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor's Office
7906 East 33rd Street
Tulsa, Oklahoma 74145
T: 918-669-7902
charles.babst@sol.doi.gov