# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA, and )
THE OSAGE MINERALS COUNCIL, )
                                          )
       Plaintiffs, )
                                            )
vs. )     Case No. 14-CV-704-GKF-JFJ
                                            )
OSAGE WIND, LLC; )
ENEL KANSAS, LLC; and )
ENEL GREEN POWER NORTH )
AMERICA, INC., )
                                            )
       Defendants. )

## DEFENDANTS' REPLY TO INTERVENOR-PLAINTIFF THE OSAGE MINERALS COUNCIL'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [Dkt. # 316]

Ryan A. Ray, OBA #22281
NORMAN WOHLGEMUTH, LLP
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

Lynn H. Slade, *pro hac vice*
Sarah M. Stevenson, *pro hac vice*
Dominic A. Martinez, *pro hac vice*
MODRALL, SPERLING, ROEHL,
HARRIS & SISK, P.A.
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

Thomas J. McCormack, *pro hac vice*
Robert Kirby, *pro hac vice*
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
Robin D. Ball (Los Angeles Office), *pro hac vice*
Robert D. Comer (Denver Office), *pro hac vice*
NORTON ROSE FULBRIGHT US LLP

**ATTORNEYS FOR DEFENDANTS OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

**Dated: November 16, 2021**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT AND AUTHORITIES ..........................................................................2

I.   The OMC's "Continuing Trespass" Claim Fails as a Matter of Law.................................2

     A.   The OMC Did Not Plead A "Continuing Trespass" Claim Based on
          "Support" from Adjacent Rock and Soil..............................................................2

     B.   "Support" from Adjacent Rock and Soil Is Not a Trespass. ..................................3

II.  The OMC's Demand for Removal of the Project Fails as a Matter of Law. ......................6

CONCLUSION AND REQUESTED RELIEF ..........................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beal v. W. Farmers Elec. Coop.*, 228 P.3d 538 (Okla. Civ. App. 2009) ........................................3

*Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959 (10th Cir. 2019)............... 3, 6, 7, 9, 10

*First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136 (10th Cir. 2017)........................................9

*Kiowa Tribe of Oklahoma v. Hoover*, 150 F.3d 1163 (10th Cir. 1998)....................................7, 8

*Millsap v. Andrus*, 717 F.2d 1326 (10th Cir. 1983).......................................................................4

*Osage Nation ex rel. Osage Mins. Council v. Wind Cap. Grp., LLC*,
     2011 WL 6371384 (N.D. Okla. Dec. 20, 2011)...................................................................8, 9

*Tennessee Valley Authority v. Jones*, 199 F. Supp. 3d 1198 (E.D. Tenn. 2016)...........................9

*Pater v. Casper*, 646 F.3d 1290 (10th Cir. 2011) ......................................................................2, 3

*Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*,
     874 F.2d 1346 (10th Cir. 1989)..............................................................................................9

*United States v. Osage Wind, LLC*, 871 F.3d 1078 (10th Cir. 2017) ............................... 2, 3, 4, 5

**Rules, Regulations, Statutes, and Other Authorities**

25 C.F.R. Part 214.......................................................................................................................9

25 C.F.R. § 214.7.....................................................................................................................2, 5

25 C.F.R. § 214.14.......................................................................................................................4

60 Okla. Stat. Ann. § 66..............................................................................................................3

Fed. R. Civ. 54(c)......................................................................................................................10

Restatement (Second) of Torts § 819......................................................................................3

Restatement (Second) of Torts § 821......................................................................................4

Restatement (Second) of Torts § 162......................................................................................6

Defendants Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC, and Enel Green Power North America, Inc. (together, "Defendants") hereby reply to intervenor-plaintiff the Osage Minerals Council's (the "OMC") response to Defendants' motion (the "Motion" or "Mot.") for partial summary judgment (Dkt. # 316) ("OMC's Br.").

## INTRODUCTION

The OMC does not argue any genuine dispute of material fact precludes summary judgment on its claim for continuing trespass. Nor could it. The OMC concedes "Defendants are no longer engaged in the act of crushing Osage minerals," which is the activity the Tenth Circuit held required a mining lease. OMC's Br. 17. The OMC's argument Defendants "are still using the Osage minerals" that, in the fall of 2014, were crushed and returned as backfill to the holes from which they were excavated, fails to save its continuing trespass claim from dismissal. *Id.* Continuing trespass requires ongoing, actual physical invasion; not the passive "support" wind turbine foundations—and every other building and structure in Osage County—receive from adjacent rock and soil by virtue of the laws of physics. *Id.* at 3. In any event, the OMC may not defeat summary judgment with a "support" claim it did not plead.

The OMC's demand for removal of the turbine foundations is predicated on continuing trespass and fails with it. The OMC also fails even to create a factual question that the injunction it seeks would prevent irreparable harm. Its bare assertion the presence of the wind turbines somehow harms its "sovereignty" and "self-government" ignores this is a case of private trespass that ended years ago; not ongoing and prospective state interference with Tribal government, as in the decisions on which the OMC relies. The OMC's remedy is damages for the royalty value of the rock crushed for backfill, not a senseless, punitive order that the Project be dismantled and removed at tremendous cost to Osage Wind and the public. The Motion should be granted.

## ARGUMENT AND AUTHORITIES

I.   **The OMC's "Continuing Trespass" Claim Fails as a Matter of Law.**

   A.   **The OMC Did Not Plead A "Continuing Trespass" Claim Based on "Support" from Adjacent Rock and Soil.**

Count IV (Continuing Trespass) of the OMC's complaint is premised on the "placement of the turbine foundation . . . on the Osage Mineral Estate."  Dkt. # 164 ("OMC's FAC") ¶ 93. While protesting that "[o]f course, the OMC is not divorcing itself from the allegations in ¶ 93," it effectively does just that by relegating them to two sentences in a footnote.  OMC's Br. 13 n.3. With good reason: The Tenth Circuit ruled that "digging a hole in the ground, displacing rock and soil in the process," then "building" in the hole, did not require a lease under 25 C.F.R. § 214.7. *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1092 (10th Cir. 2017).  This is not a case where the presence of "a permanent structure effects the invasion of real property."  OMC's Br. 13 n.3.[1]

Recognizing this, the OMC instead asserts Defendants are "using Osage minerals as structural support."  OMC's Br. 14.  But the OMC cannot defeat summary judgment with a claim it did not plead.  *See Pater v. Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011) (holding there was "no error" in district court's "refusal to address" plaintiff's assertion at summary judgment of a "claim [that] did not appear in the initial complaint").  Neither Count IV nor anywhere else in the OMC's complaint alleges the "support" turbine foundations receive from adjacent rock and soil is a continuing trespass.  The stray allegations in the body of that complaint that "Defendants did not have to purchase backfill elsewhere" because they "used the minerals they excavated . . . as backfill," and that Defendants "used [crushed rock] to reinforce the concrete turbine foundations," are a far cry from pleading a continuing trespass claim on the basis of the support surface structures

---

[1] Defendants incorporate by reference Part I.A-B of their accompanying reply to the United States.

2

receive from adjacent rock and soil.  OMC's FAC ¶¶ 4, 54.  The OMC filed its operative complaint nearly a year after the Tenth Circuit's ruling and can "give [no] reason for [its] delay in setting forth the claim."  *Pater*, 646 F.3d at 1299.  This alone is reason to grant Defendants' Motion.

### B.    "Support" from Adjacent Rock and Soil Is Not a Trespass.

The OMC's purported claim that "crushed minerals are still . . . being used as structural support" fails as a matter of law to demonstrate any trespass, much less continuing trespass. OMC's Br. 13.  There can be no trespass except when "one person actually physically invades the real estate of another."  *Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 966 (10th Cir. 2019).  That, by the laws of physics, wind turbines (like every structure in the world) receive "support" from rock and soil beneath the surface, does not mean Defendants are actually physically invading the mineral estate.  *See id.*; *Beal v. W. Farmers Elec. Coop.*, 228 P.3d 538, 541 (Okla. Civ. App. 2009) ("[T]he emission of an [electromagnetic field] or stray electricity from an electrical transmission line is insufficient to support a claim of trespass.").  The OMC does not cite a single decision by any court holding that a surface estate owner trespasses on the mineral estate by virtue of "structural support" from adjacent rock and soil.  Defendants are aware of none.  Were the rule otherwise, every home, swimming pool, housing subdivision, apartment building, ranch, office building, shopping center, and courthouse in Osage County would be guilty of continuing trespass on the Osage mineral estate.  To the contrary, the Tenth Circuit emphasized "building a basement or swimming pool" does not require a mining lease, and recognized surface owners' "expansive authority . . . to use and develop their land."  *Osage Wind*, 871 F.3d at 1092.

The OMC's claim that "structural support" is trespass also runs roughshod over the surface estate owner's well-developed ***right*** to such support.  *See* 60 Okla. Stat. Ann. § 66 (surface owner is "entitled to the lateral and subjacent support which his land receives"); RESTATEMENT (SECOND) OF TORTS (the "Restatement") §§ 819 ("One who negligently withdraws lateral support of land in

3

another's possession, or of artificial additions to it, is subject to liability for harm resulting to the other's land and to the artificial additions on it."), 821 (same regarding "subjacent support"). Indeed, 25 C.F.R. § 214.14 specifically protects the surface owner from injury caused by a mineral lessee, whether by loss of structural support or otherwise.  Mineral lessees may only "use so much of the surface of the leased land as shall be reasonably necessary," and even then "only under condition of least injury and inconvenience to the . . . owner of the land." *Id.*  And mineral lessees "shall pay all reasonable damages . . . to improvements on said land, or any damage that during the life of the lease may be occasioned in any manner whatsoever by the use of the surface." *Id.*; *see also Millsap v. Andrus*, 717 F.2d 1326, 1329 (10th Cir. 1983) ("surface owner [has] a right to damages from the licensee").  These critical protections of the surface estate owner would be rendered illusory by the OMC's theory that "structural support" is a trespass on the mineral estate.

The OMC purports to find a basis for its continuing trespass claim in a "close reading of the Tenth Circuit's decision" it says "support[s] the inevitable conclusion" that Defendants "continue to [trespass] today."  OMC's Br. 1-2.  Not so.  The Tenth Circuit did not hold that the act of returning crushed rock and soil to the hole from which it was excavated required a mining lease, let alone constitutes continuing trespass.  Rather, under the heading "Sorting and Crushing for Backfill Constitutes 'Mineral Development,'" the Tenth Circuit held that "sorting and crushing of minerals for the purpose of backfilling and stabilization" constituted "mineral development." *Osage Wind*, 871 F.3d at 1091-92.  In particular, when Osage Wind "acted upon the minerals by altering their natural size and shape" it "'developed' the removed rock." *Id.*

The OMC seeks to obscure the Tenth Circuit's precise statement of its holding with partial, selective quotations that are not to the contrary.  For example, the OMC asserts the Tenth Circuit "not[ed] Defendants engaged in mining because they 'sorted and then crushed the minerals and

*used them* as backfill *to support its wind turbine structures.*'"  OMC's Br. 1 (quoting *Osage Wind*, 871 F.3d at 1090) (emphases added by the OMC).  The quoted text was not, however, part of the Tenth Circuit's holding, but rather its posing of "[t]he question . . . whether these excavation activities can be characterized as 'mineral development,'" in the "Textual Analysis of § 211.3" section of the opinion.  *Osage Wind*, 871 F.3d at 1090.  The Court answered:  It was "sorting and crushing of minerals for the purpose of backfilling and stabilization" that constituted "mineral development."  *Id*. at 1092.  Similarly, the OMC ignores that the Tenth Circuit's statement that Osage Wind "*sorted* the rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as structural support," immediately precedes the section of the opinion that explains in detail why, and in what respect, the Court answers, "it does," to the "question . . . whether this operation constitutes 'mineral development.'"  *Id*. at 1091.  The "sorting and crushing of minerals," the Tenth Circuit next explains, was the "mineral development."  *Id*. at 1091-92.

Even assuming *arguendo* the act of returning crushed rock to the hole from which it was excavated constituted "mineral development," that still would not mean Defendants "continue to [trespass] today," years later.  OMC's Br. 2.  The Tenth Circuit never held that support the wind turbine foundations receive from backfilled rock and soil itself requires a mining lease.  Instead, the Tenth Circuit stressed no "mineral development" occurs when surface structures or activities "encounter," "implicate," "disrupt," or "displace" minerals.  *Id*. at 1091-92.  At most, this is "encountering" the mineral estate which requires no mining lease.  *Id*. at 1092.  Nor is there any truth in the OMC's contention the Tenth Circuit ordered Osage Wind "to obtain a lease for the minerals they continue to use."  OMC's Br. 13.  Instead, the Tenth Circuit summarized that "because Osage Wind *was* required to procure a lease under 25 C.F.R. § 214.7, we REVERSE," and remanded "for further proceedings consistent with this opinion."  *Osage Wind*, 871 F.3d

at 1093 (emphasis added).  Nowhere did the Tenth Circuit suggest Osage Wind must negotiate a prospective mining lease for the decades-long life of the Project as a consequence of rock crushing and backfilling completed years earlier.  The Tenth Circuit's ruling does not aid the OMC's continuing trespass claim.

At bottom, despite the OMC's liberal use of present tense and adjectives like "ongoing" and "continuing" (e.g., OMC's Br. 13), it cannot change the dispositive fact that all crushing and backfilling ended nearly seven years ago.  *See* OMC's Response to Statement of Undisputed Facts ("RSUF") ¶ 11.  That long ago conduct cannot give rise to a continuing trespass claim because it is neither ongoing nor abatable.  *See Davilla*, 913 F.3d at 971 n.8 (only "certain trespasses" of "ongoing, unabating nature" constitute "continuing trespass"); Mot. 15-17.  "[C]hanges [to] the physical condition of the land" such as these are precisely what the Restatement provides "***must*** be distinguished" from "continuing trespass."  Restatement § 162 cmt. e (emphasis added).  Any claim for continuing trespass fails as a matter of law, however packaged.[2]

## II.    The OMC's Demand for Removal of the Project Fails as a Matter of Law.

The OMC's demand for "an order that structures or materials placed . . . be removed" is solely predicated on "continuing trespass."  Dkt. # 20 at 12; *see also* Opinion and Order, Dkt. # 161 at 15 (holding OMC is "restricted to seek only those remedies sought by the United States in the First Amended Complaint").  Accordingly, that demand should be dismissed along with the

---

[2] The OMC's assertion that "this Court has already determined *Davilla* sets the governing standard of law in this case, not the Restatement," mixes apples and oranges.  OMC's Br. 16.  This Court decided it "will not apply the Restatement factors [for injunctive relief] in this case in favor of the *Davilla* factors."  Dkt. # 264 at 25.  This Court did not, however, have occasion to consider the application of Section 162 of the Restatement to Oklahoma trespass law.  The OMC overlooks that Section 162 has been relied on as a source of Oklahoma trespass law both by the Tenth Circuit and the Oklahoma Court of Appeals.  Mot. 18 & n.4.  Nor has the OMC (or the United States) hesitated to cite the Restatement in support of its own motion for summary judgment.  Dkt. # 294-1 at 19-21 (citing Restatement § 879); Dkt. # 300 at 6-7 (citing Restatement §§ 158, 161).

OMC's continuing trespass claim, as well as on the independent ground that the OMC has not demonstrated irreparable harm. Once again, the OMC's argument that forced removal of the Project "is necessary to prevent 'irreparable harm,'" *Davilla*, 913 F.3d at 973, rests on the assertion "Defendants' unlawful trespass . . . significantly interferes with the self-government of the OMC." OMC's Br. 18. But the OMC remains unable to cite even one decision by any court holding that a Tribe's ownership of real property makes a private trespass on that property an irreparable injury to "self-government." The OMC is wrong that *Kiowa Tribe of Oklahoma v. Hoover*, 150 F.3d 1163 (10th Cir. 1998), is such a case. OMC's Br. 20 n.13. Instead, like each of the other such decisions on which the OMC relies, *Kiowa* concerned a request for a preliminary injunction against ongoing and prospective state interference with the functioning of a Tribal government.

In *Kiowa*, the Tribe brought suit in federal court against Oklahoma state judges and state-court judgment creditors, and "sought a preliminary injunction barring further prosecution of state contract claims against the Tribe and use of certain post-judgment remedies directed against the Tribe, including seizure of a variety of tribal assets, on the basis that these procedures violated the Tribe's sovereign immunity and, hence, exceeded state jurisdiction." 150 F.3d at 1165. The post-judgment remedies the Tribe sought to enjoin included "the ongoing seizure of Kiowa's tax revenues by garnishment and creditor's bill, and the enjoining of Kiowa from enforcing its tribal laws." *Id.* at 1170. The Tribe contended "creditors were seizing assets necessary to run the tribal government, thus interfering with the Tribe's ability to engage in self-government, and threatening a partial shutdown." *Id.* The Tenth Circuit held this "seizure of tribal assets, including severance taxes owed to the Tribe, and the concomitant prohibition against full enforcement of tribal laws, significantly interferes with the Tribe's self-government." *Id.* at 1171-72. For this reason, and because "[t]he Tribe's full enjoyment of its sovereign immunity is irrevocably lost once the Tribe

is compelled to endure the burdens of litigation," the Tenth Circuit found "sufficient showing of irreparable harm," and remanded for consideration "of the other three conditions . . . [for] preliminary injunction." *Id.* Nothing like the facts of *Kiowa* exist here. That not all the defendants in *Kiowa* were state officials does not change that what the Tribe sought to enjoin was ongoing and prospective state interference in Tribal government, not a concluded private trespass. The OMC cannot satisfy its burden to prove irreparable harm by mere recitation of "self-government."

Nor has the OMC proffered ***any evidence*** of actual injury (let alone irreparable injury) that would be prevented by the requested injunction, as it must to defeat summary judgment. The OMC asserts "operation of wind turbines effectively blocks access to Osage minerals" within a 90-foot radius. RSUF ¶ 12. But the OMC makes no showing any putative mineral lessee has been prevented from mining within that 90 feet or would mine there were the Project removed, or that such an injury would not be calculable in money damages. The silence of OMC Chairman Waller's declaration on this subject is telling. Dkt. # 294-2. While he states the OMC "must balance various interests, including whether a lease for one mineral, such as rock, can impact access to other minerals, such as oil and gas," he does not claim any loss of mineral royalties resulting from the continued presence of the Project. *Id.* ¶ 43. And the OMC (like the United States) declined to designate an expert to rebut Mr. Pfahl's testimony that the OMC will not suffer any lost revenue due to the presence of the Project. Dkt. # 321-29 (Pfahl Dec.) at Ex. 1 ¶¶ 93-95.

Nearly a decade ago, this Court denied the OMC's request for a permanent injunction against the Project in part because "the Tribe has failed to establish irreparable harm." *Osage Nation ex rel. Osage Mins. Council v. Wind Cap. Grp., LLC*, 2011 WL 6371384, at *10 (N.D. Okla. Dec. 20, 2011) (Frizzell, J.). The Court found inadequate the OMC's "speculative concern that unreasonable interference [with oil and gas production] *may* occur." *Id.* Further, the Court

8

held such "injury could be remedied by an award of money damages." *Id*.  Despite having had almost 10 years since then to collect any evidence of any harm caused by the presence of the Project, the OMC has not pleaded or proven such harm in this case.  None exists.

Unable to demonstrate irreparable injury, the OMC asserts "failure to comply with Congress's dictates for the Osage Mineral Estate constitutes grounds sufficient to impose permanent, injunctive relief."  OMC's Br. 21.  Not so.  "[A] federal district court's decision to permanently enjoin a continuing trespass on allotted land" must follow the "well-developed federal common law standard for issuing a permanent injunction."  *Davilla*, 913 F.3d at 973.  Thus, the "sheer right to exclude" is no substitute for irreparable harm, even where a continuing trespass allegedly contravenes federal law requiring a BIA-approved agreement.  *Id*. at 964, 974.  *Davilla*, not the out-of-Circuit decision cited by the OMC, controls here.[3]  This is not a case where "a statute *clearly mandates* injunctive relief."  *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017).  No such mandate is found in the Osage Act.

As for the harm from crushing rock for backfill, the OMC fails to show damages "cannot be calculated with a reasonable degree of accuracy."  *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1362 (10th Cir. 1989); *see also* Mot. 21-22.  The OMC's assertion "Defendants kept no records of the amount of minerals they excavated" is not supported by the only evidence it cites, i.e., the expert report of Defendants' mining engineering expert John Pfahl.  RSUF ¶ 3.  Mr. Pfahl explains therein that engineering drawings

---

[3] *Tennessee Valley Authority v. Jones* is inapposite because the presence of the Project is not a continuing trespass.  199 F. Supp. 3d 1198, 1204-05 (E.D. Tenn. 2016) (entering injunction ordering removal of boathouse, dock, and retaining wall that were "continuing trespasses" insofar as they were "outside the scope of Defendants' easement").  And the Tennessee Valley Authority Act, unlike the Osage Act and 25 C.F.R. Part 214, "specifically empowered [courts] to issue injunctive relief ordering the removal of unpermitted structures."  *Id*. at 1203.

specified the dimensions of each turbine excavation and that "[a]vailable documentation states that the 'foundations were built to the BARR drawings and no changes noted.'" OMC's Ex. 2 ¶ 47. Both Mr. Pfahl and John C. Freas, the mining engineering expert retained by the United States (i.e., the trustee of the Osage mineral estate), estimated the volume of minerals "mined" and calculated the value to the OMC of those minerals. Mot. Ex. 11 (Freas Tr.) at 71:18-21; Mot. Ex. 12 (Pfahl Tr.) at 27:11-16. The OMC overlooks that the very next page of its response asserts the total volume of excavated minerals crushed for backfill was "approximately . . . 45,630 cubic yards." RSUF ¶ 5 (citing OMC's FAC ¶ 53). Its strategic decision not to retain an expert to opine as to the value of that volume of crushed rock does not prevent summary judgment. The OMC's assertion that "damages are not an adequate remedy" because "both experts assumed a transaction with a willing buyer and seller" fares no better. OMC's Br. 19 n.12. It is *always* the case the plaintiff is not "a willing . . . seller" in a trespass action. *Davilla*, 913 F.3d at 967 (explaining that "the defendant's *lack of a right to enter* is an *element of the claim*"). That does not prevent this Court from awarding damages, or entitle the OMC to a punitive injunction simply because it is unsatisfied with the amount of damages it may recover.[4]

## CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons and those set forth in their opening brief, Defendants respectfully request the Court grant the Motion and the relief requested therein.

---

[4] The OMC's purported alternative demand to "enjoin the operations of the Osage Wind Farm" unless Osage Wind obtains a mining lease should also be dismissed. OMC's Br. 23. The OMC's assertion that such demand was "clearly pled" in the OMC's "request for injunctive relief" is both inaccurate (it requests no such relief) and irrelevant (this Court held the OMC "restricted to seek only those remedies sought by the United States in the First Amended Complaint"). Dkt. # 161 at 15. Fed. R. Civ. 54(c) does not require a different result as this Court already found that permitting the OMC to pursue new theories of relief at this late stage would result in "prejudice and inefficiencies." Dkt. # 161 at 15. Regardless, the OMC proffers no evidence such an injunction would prevent irreparable harm.

Respectfully submitted,

/s/ Ryan A. Ray
**Ryan A. Ray**, OBA # 22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103
918-583-7571
918-584-7846 (facsimile)

-and-

**Lynn H. Slade**, *pro hac vice*
**Sarah M. Stevenson**, *pro hac vice*
**Dominic A. Martinez**, *pro hac vice*
**MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.**
Post Office Box 2168
Albuquerque, NM 87103-2168
505-848-1800
505-848-9710 (facsimile)

-and-

**Thomas J. McCormack**, *pro hac vice*
**Robert Kirby**, *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, NY 10019
212-318-3000
212-318-3400 (facsimile)

*Of Counsel:*
**Robin D. Ball** (Los Angeles Office), *pro hac vice*
**Robert D. Comer** (Denver Office), *pro hac vice*
**NORTON ROSE FULBRIGHT US LLP**

**ATTORNEYS FOR DEFENDANTS OSAGE WIND, LLC, ENEL KANSAS, LLC AND ENEL GREEN POWER NORTH AMERICA, INC.**

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2021, I electronically transmitted the attached Document to the Clerk of the Court using the ECF System for filing.  Based on the electronic records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Cathryn D. McClanahan
Nolan Fields IV
Stuart P. Ashworth
Mary Kathryn Nagle
Wilson Kirk Pipestem
Abi Laura Fain
David McCullough
Jeffrey S. Rasmussen
The following non-ECF registrants have been served by email:

Charles R. Babst, Jr.
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Tulsa Field Solicitor Office
7906 East 33rd Street
Tulsa, OK 74145
(918) 669-7730
Charles.babst@sol.doi.gov
*Attorney for the United States of America*


*/s/ Ryan A. Ray*
Ryan A. Ray