**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| (2) OSAGE MINERALS COUNCIL, | ) | Case No. l4-CV-704-GKF-JFJ |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (1) OSAGE WIND, LLC; | ) | |
| (2) ENEL KANSAS, LLC; and | ) | |
| (3) ENEL GREEN POWER | ) | |
| NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**INTERVENOR-PLAINTIFF OSAGE MINERALS COUNCIL'S**
**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE**
**TESTIMONY OF EXPERT WITNESS STEVEN J. HAZEL, DKT. 337**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.   INTRODUCTION .................................................................................................1

II.  SUMMARY OF MR. HAZEL'S FINDINGS .............................................................2

III. STANDARD OF REVIEW .....................................................................................8

IV.  ARGUMENT......................................................................................................10

   A.  Defendants, Once Again, Mischaracterize the Tenth Circuit's Decision.........10

   B.  Mr. Hazel's Report is Both Relevant and Reliable .........................................12

      i.   Mr. Hazel's Opinion is Relevant.................................................................12

      ii.  Mr. Hazel's Opinion is Reliable .................................................................13

      iii. Center City Periodontists, P.C. v. Dentsply International, Inc. is Irrelevant.................17

   C.  Mr. Hazel is Qualified to Serve as an Expert in This Litigation .......................17

V.   CONCLUSION ..................................................................................................20

TABLE OF AUTHORITIES

**Cases**

*Atl. Richfield Co. v. Farm Credit Bank of Wichita*,
  226 F.3d 1138 (10th Cir. 2000) ....................................................................................13

*Begay v. Albers*,
  721 F.2d 1274 (10th Cir. 1983) ......................................................................................1

*Bright v. Ohio Nat'l Life Assur. Corp.*,
  No. 11-CV-475-GKF-FHM, 2012 WL 12888316 (N.D. Okla. Nov. 29, 2012) .............15

*Bright v. Ohio Nat'l Life Ass. Corp.*,
  No. 11-CV-475-GKF-FHM, 2013 WL 121479 (N.D. Okla. Jan. 9, 2013) ....................19

*Center City Periodontists, P.C. v. Dentsply International, Inc.*,
  321 F.R.D. 193 (E.D. Pa. 2017) ...................................................................................17

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ....................................................................................................8, 9

*Dean v. Thermwood Corp.*,
  No. 10-CV-433-CVE-PJC, 2012 WL 90442 (N.D. Okla. Jan. 11, 2012) .....................15

*Dillon Cos. v. Hussmann Corp.*,
  163 F. App'x 749 (10th Cir. 2006) ...........................................................................17, 19

*Fish v. Schwab*,
  957 F.3d 1105 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 965, 208 L. Ed. 2d 499 (2020)
  .......................................................................................................................................20

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) .......................................................................................................14

*Gomez v. Martin Marietta Corp.*,
  50 F.3d 1511 (10th Cir. 1995) .........................................................................................9

*Graham v. Wyeth Labs.*,
  906 F.2d 1399 (10th Cir. 1990) ......................................................................................17

*Graves v. Mazda Motor Corp.*,
  405 Fed. App'x 296 (10th Cir. 2010) .............................................................................15

*Hellard v. Mid Century Ins. Co.*,
No. 19-CV-00043-GKF-CDL, 2021 WL 429917 (N.D. Okla. Feb. 8, 2021)................15

*Jones v. Otis Elevator Co.*,
861 F.2d 655 (11th Cir. 1988).......................................................................................9

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .....................................................................................................9

*Mathis v. Huff & Puff Trucking, Inc.*,
787 F.3d 1297 (10th Cir. 2015)....................................................................................8

*Mitchell v. Gencorp Inc.*,
165 F.3d 778 (10th Cir. 1999).......................................................................................9

*Moore v. Ashland Chemical, Inc.*,
151 F.3d 269 (5th Cir. 1998) (*en banc*) .....................................................................9

*Palmer v. Asarco Inc.*,
510 F. Supp. 2d 519 (N.D. Okla. 2007) ......................................................................15

*Ralston v. Smith & Nephew Richards, Inc.*,
275 F.3d 965 (10th Cir. 2001).......................................................................................8

*Richmond v. Embry*,
122 F.3d 866 (10th Cir. 1997)......................................................................................10

*S. Star Cent. Gas Pipeline, Inc. v. 120 Acres Located in Rice Cty., Kan.*,
No. 09-2435-EFM-GLR, 2012 WL 984271 (D. Kan. Mar. 22, 2012).....................15, 16

*Schulze v. United States*,
No. 18-CV-00130-GKF-JFJ, 2019 WL 1440306 (N.D. Okla. Apr. 1, 2019)..............15

*Tennessee Valley Auth. v. Jones*,
199 F. Supp. 3d 1198 (E.D. Tenn. 2016), *aff'd*,
692 F. App'x 224 (6th Cir. 2017) ....................................................................7, 12, 16

*United States v. Avitia-Guillen*,
680 F.3d 1253 (10th Cir. 2012).....................................................................................20

*United States v. Garza*,
566 F.3d 1194 (10th Cir. 2009).......................................................................................8

*United States v. Jicarilla Apache Nation*,
564 U.S. 162 (2011) ........................................................................................................1

*United States v. Johnson*,
   732 F. App'x 638 (10th Cir. 2018) ...........................................................10

*United States v. Medina-Copete*,
   757 F.3d 1092 (10th Cir. 2014)................................................................8

*United States v. Nacchio*,
   555 F.3d 1234 (10th Cir. 2009)................................................................8

*United States v. Osage Wind, LLC*,
   871 F.3d 1078 (10th Cir. 2017) ....................................................... *passim*

*United States v. Osterlund*,
   671 F.2d 1267 (10th Cir. 1982)................................................................1

*United States v. Pend Oreille Public Utility Dist. No. 1*,
   28 F.3d 1544 (9th Cir. 1994).................................................................16

*United States v. Rodriguez-Felix*,
   450 F.3d 1117 (10th Cir. 2006)...............................................................15

*United States v. State of California*,
   332 U.S. 19 (1947).................................................................................1

*Utah Power & Light Co. v. United States*,
   243 U.S. 389 (1917)...............................................................................1

## Statutes

Act of June 24, 1938, ch. 654, § 3, 52 Stat. 1035..........................................13

## Federal Rules

Fed. R. Evid. 702 .......................................................................................8

## Federal Regulations

25 C.F.R. § 211.3.................................................................................3, 6, 19

25 C.F.R. § 214.13(a) ...................................................................................13

25 C.F.R. § 214.13(b) ...................................................................................13

25 C.F.R. § 214.7......................................................................3, 11, 12, 19

**<u>Osage Law</u>**

Osage Nation Const. art. XV, § 4 ................................................................................................13

## I.    INTRODUCTION

Intervenor-Plaintiff Osage Minerals Council ("OMC") files this response brief in opposition to Defendants' Motion to Exclude the Testimony of Plaintiff the United States' Expert Witness Steven J. Hazel, Dkt. 337 ("Defs.' Mot." and "Defendants' Motion to Exclude"). None of the arguments offered in Defendants Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC ("Enel KS"), and Enel Green Power North America, Inc.'s ("EGNPA" and collectively, "Defendants") Motion to Exclude supports the dismissal of Mr. Hazel's expert opinion and report in this matter.

Of the damages valuations presented in this case, Mr. Hazel's is the *only* valuation that accounts for Congress's intent in preserving the Osage Mineral Estate in trust for the Osage Nation and the OMC's sovereign right to administer the Estate. Defendants' Motion to Exclude Mr. Hazel's testimony, like so many of their other motions in this litigation and their own experts' testimony, fails to recognize that the Osage Mineral Estate is an Indian trust asset held in trust by the United States, owned by a sovereign nation, and administered by a sovereign agency; and thus, also ignores that it is well-settled law that "ordinary court rules designed particularly for private disputes over individually owned pieces of property" do not apply. *Begay v. Albers*, 721 F.2d 1274, 1280-81  (10th Cir. 1983) (quoting *United States v. State of California*, 332 U.S. 19, 39 (1947)); *see United States v. Jicarilla Apache Nation*, 564 U.S. 162, 178 (2011) ("[T]he Government exercises its carefully delimited trust responsibilities in a sovereign capacity to implement national policy respecting the Indian tribes."); *United States v. Osterlund*, 671 F.2d 1267, 1268 ("Congress has 'the power to control (the) occupancy and use (of federal lands), to protect them from trespass and injury, and to prescribe the conditions upon which others may obtain rights in them'") (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 405 (1917)). In other words, while there may be instances in which a simple royalty valuation would

be sufficient to compensate for a trespass, this is not one. *See Osterlund*, 671 F.2d at 1268 (granting trespasser's damages request "would have forced the government to sell part of the national forest and . . . prescribed conditions for appellant's continued occupancy.").

Defendants' attacks on the relevance and reliability of Mr. Hazel's report stem largely from their ongoing refusal to accept the Tenth Circuit's conclusion that they must obtain a lease for their use of Osage minerals. The fact that Defendants wish to re-write the Tenth Circuit's decision in order to limit it to rock crushing alone, however, does not render Mr. Hazel's expert opinion and report unreliable or irrelevant. Instead, it is clear that Mr. Hazel's opinion will aid the trier of fact in determining the proper measure of damages necessary to compensate the OMC for Defendants' ongoing trespass on the Osage Mineral Estate. Defendants' Motion to Exclude, therefore, should be denied.

## II.   SUMMARY OF MR. HAZEL'S FINDINGS

Mr. Hazel's expert report examines the damages:

> [C]aused by the Defendants' failure to obtain the requisite federal regulatory approvals and appropriate leases ("Subsurface Leases" or "Mineral Leases") approved by the Secretary of the Interior, in order to conduct extraction, sorting, crushing and the use of minerals ("Mineral Development") as part of its excavation work on the mineral estate of an Indian reservation established by Congress for the Osage Nation in 1872.

Ex. 1 (Hazel Report), 1; *see United States v. Osage Wind, LLC*, 871 F.3d 1078, 1091 (holding that Defendants' "sort[ing] the rocks, crush[ing] the rocks into smaller pieces, and then exploiting' the crushed rocks as structural support for each wind turbine . . . constitutes 'mineral development'"). First and foremost, it is pivotal that Mr. Hazel's expert opinion considers both that "[t]he Osage Nation is a federally recognized tribe," and that Congress "reserved" the Osage Mineral Estate "for the benefit of the Osage Nation." Ex. 1 (Hazel Report), 1. In contrast, Defendants' expert John Pfahl "did not specifically contemplate [] the sovereign status of the

2

OMC," Dkt. 293-6 (Pfahl Dep.) at 153:7-17, and he does not know whether the OMC actually owns the Osage Mineral Estate. *Id.* at 117:9-10.

Furthermore, Mr. Hazel's expert opinion considers and fully accepts the Tenth Circuit's 2017 ruling, noting that "[t]he 10th Circuit Court of Appeals determined that Osage Wind's excavation activities did in fact constitute mining under 25 C.F.R. § 211.3, and therefore, a federally approved lease was required by the Plaintiff under 25 C.F.R. § 214.7." Ex. 1 (Hazel Report), 3. In contrast, Defendants' expert Kimberlee Centera did not even read the entire Tenth Circuit opinion because Defendants' counsel told her it was not relevant to her opinion. Ex. 2 (Centera Dep.) at 32:23-33:18 ("[W]here there's all the legalese . . . they suggested I didn't have to read all of that, so . . . I didn't, because it didn't really have bearing on my report.").

Thus, Mr. Hazel's expert opinion "assess[es] economic damages suffered by the Osage Nation, based on the above-described facts and the ruling by the 10th Circuit Court of Appeals." Ex. 1 (Hazel Report), 3. That is, Mr. Hazel predicates his assessment on three basic realities:

- The [] ruling by the 10th Circuit Court of Appeals that Osage Wind's excavation activities constituted mining under 25 C.F.R. § 211.3, and therefore, a federally approved lease was required by the Plaintiff under 25 C.F.R. § 214.7.
- Osage Wind's failure to obtain the above-referenced federally approved lease granting the right to mine the Mineral Estate.
- Evidence that Osage Wind entered into agreements to lease the rights to at least 8,190 acres of the Surface Estate for the purpose of constructing its Wind Farm ("Six Surface Leases").

Ex. 1 (Hazel Report), 4.

And in contrast to Mr. Pfahl and Ms. Centera, Mr. Hazel does not wrongfully assume that Defendants' trespass and continuing use of Osage minerals constitute a routine, arms-length market transaction with two willing parties who both had the option to negotiate and without the sovereign authority to regulate. Dkt. 342-3 (Hazel Dep.), 153:12-16, 169:22-23. As Mr. Hazel

noted in his deposition, "[y]ou have to negotiate with the mineral estate owners to get th[e] right"
to mine the Mineral Estate. Dkt. 342-3 (Hazel Dep.), 169:22-23; *see also id.* at 153:12-16
(stating his report and conclusions are based on the reality that "the Osage Nation has to have
some say into whether or not there is a lease at all").

      Accordingly, Mr. Hazel reasoned that because the Tenth Circuit concluded that
Defendants' use of Osage minerals requires them to obtain a lease from the OMC, *see* Ex. 1
(Hazel Report), 4, the amount in damages that the OMC has suffered will be equivalent to what
Defendants would most likely have agreed to pay, *and* what the OMC would have agreed to
accept, in an actual arms-length transaction and negotiation. *See* Ex. 1 (Hazel Report), 6-7.
Inherent to this calculation is the Tenth Circuit's reasoning that the governing federal regulations
"are designed to 'protect Indian mineral resources and 'maximize [Indians'] best economic
interests.'" *Id.* (quoting *Osage Wind, LLC*, 871 F.3d at 1090). Accordingly, Mr. Hazel concluded
that the amount Defendants agreed to pay "the Surface Owners [constitutes] a reasonable
measure of damages and it is consistent with the 10th Circuit Court of Appeals' summary
judgment award which contemplates *the Osage Nation's best economic interests.*" *Id.* at 7
(emphasis added).

      To reach this conclusion, Mr. Hazel observed that the "[s]urface leases represent . . . the
most directly comparable proxy for amounts that Osage Wind itself was willing and able to pay"
to be able to construct, own, and operate the Osage Wind Farm using minerals extracted and
altered from the Osage Mineral Estate. Ex. 1 (Hazel Report), 7. As for what the OMC would
most likely be willing to receive in payment, Mr. Hazel concluded it would not be reasonable to
assume that the OMC "would [] negotiate something less than what the surface owners got . . . ."
Dkt. 342-3 (Hazel Dep.), 153:12-16. This rests on sound logic since, "[i]n general, the mineral

estate is more valuable than the surface estate." Dkt. 342-3 (Hazel Dep.), 153:22-23. Thus, the Hazel Report concludes that the total damages the OMC is entitled to in order to remedy Defendants' ongoing, illegal trespass amounts to $25,969,607.00. Ex. 1 (Hazel Report), 8.

Defendants dramatically mischaracterize Mr. Hazel's assumptions and conclusions. For instance, Defendants assert that "in Mr. Hazel's view, the OMC could have demanded, and *Osage Wind would have had no choice but to pay*, an amount at least equal to the present value of all payments under the surface leases." Defs.' Mot. 4 (emphasis added). Of course, this language appears nowhere in Mr. Hazel's report, nor does it appear in Mr. Hazel's deposition. Mr. Hazel has never claimed that "Osage Wind would have no choice but to pay." As Mr. Hazel has repeatedly reiterated, he opined that what Defendants were willing to pay the Surface Owners constitutes the best evidence of what they were willing to pay for the rights necessary to lawfully construct and operate their wind farm using Osage minerals extracted on-site from the Mineral Estate. Ex. 1 (Hazel Report), 7.

Of course, *no one*—not Mr. Hazel, not the OMC, and not the United States—is claiming that Defendants had "no choice" but to use on-site Osage minerals. Instead, Defendants could have purchased offsite backfill materials to use as structural support for their wind tower turbines. Ex. 3 (Moskaluk Dep.), 105:9-15; Ex. 4 (Enel Green Power Direct Assignment/Change Orders Form dated December 9, 2014), OSAGE WIND-019013; Dkt. 300-5 (10/16/14 Email from Bill Price to Bill Moskaluk). Defendants, however, chose not to based on advice they received from EGPNA's legal department that importing backfill "would have given credit to Osage Nation's theory on the commercial use of soil," and ultimately, would have supported the conclusion that Defendants must obtain a permit to mine the Osage Mineral Estate. Ex. 4 (Enel

Green Power Direct Assignment/Change Orders Form dated December 9, 2014), OSAGE WIND-019013.

Defendants exercised their free choice and elected to use on-site Osage minerals as backfill for their wind power turbines. They further elected to do so without obtaining the lease that federal and Osage laws require. Having exercised this free choice, they cannot claim that Mr. Hazel's valuation of the damages Defendants have caused the OMC as leaving Defendants "no choice but to pay." No one forced Defendants to take and use Osage minerals. No one forced Defendants to refuse to obtain the lease the law requires. Mr. Hazel's expert opinion does not leave Defendants with "no choice but to pay." Instead, Mr. Hazel's expert opinion opines on the amount Defendants should be required to pay precisely because of the choices they freely made.

Defendants further complain that Mr. Hazel's opinion is erroneously "premised on the assumption the Project could not have lawfully been constructed or operated without a mining lease." Defs.' Mot. 4. This argument is merely a reformulation of the one discussed above, and once again, these words appear nowhere in Mr. Hazel's report or in his deposition. The assumption on which Mr. Hazel relied—and which is key to any damages assessment in this case— is that the Project cannot lawfully take and use Osage minerals as structural support for the Project's wind tower turbines without a lease from the OMC. *See* Ex. 1 (Hazel Report), 3 (noting that the Tenth "Circuit Court of Appeals determined that Osage Wind's excavation activities did in fact constitute mining under 25 C.F.R. § 211.3."). This "assumption" constitutes an application from the Tenth Circuit's clear holding and is not erroneous. *See, e.g., Osage Wind, LLC* 871 F.3d at 1092 (noting that Defendants engaged in mining that required a lease because they took "*advantage* of [the minerals] for a *structural purpose*.") (emphasis added). Neither Mr.

6

Hazel nor the Tenth Circuit has concluded that merely operating a wind farm requires a mining lease. But, the Tenth Circuit *did* conclude that Defendants' taking and use of Osage minerals requires a mining lease, and Mr. Hazel correctly relied on the Tenth Circuit's conclusion.

Next, Defendants assert that "Mr. Hazel's damages opinions do not consider the value of the rock crushed for backfill by Osage Wind at the turbine sites, or the fact that such activity ended years ago." Defs.' Mot. 5. First, Mr. Hazel is correct not to consider the "market value" for the "rock crushed for backfill by Osage Wind at the turbine sites" since a valuation based on that alone "would be tantamount to a forced sale of [the OMC's] statutory permitting discretion." *Tennessee Valley Auth. v. Jones*, 199 F. Supp. 3d 1198, 1205-06 (E.D. Tenn. 2016), *aff'd,* 692 F. App'x 224 (6th Cir. 2017); *see also* Dkt. 342-3 (Hazel Dep.) 81:6-9 (explaining that he does not address the market value of the minerals themselves, but rather, the "mineral estate's rights and ownership and the damages related to it."); *see also id.* 83:10-22 (Mr. Hazel explaining that Mr. Pfahl's market valuation "misses the point. The point here in this particular situation is negotiation of a lease.").

Finally, that Mr. Hazel did not consider "the fact that [rock crushing] ended years ago" is of no moment. Defs.' Mot. 5. Defendants' unlawful interference with the Osage Nation's laws and sovereignty did not begin and end with rock crushing. As the Tenth Circuit concluded, and as discussed in further detail below in IV. A, Defendants violated federal and Osage laws because they used Osage minerals, without a lease, to "add structural support to the large wind turbines installed deep in the ground." *Osage Wind, LLC,* 871 F.3d at 1087. To date, Defendants have made *no* attempts to secure the lease the Tenth Circuit concluded Defendants' exploitation of Osage minerals requires, Dkt. 294-1 (Intervenor Plaintiff's Motion for Summary Judgment), Statement of Undisputed Facts ("OMC MSJ SUF") ¶ 6, and continue to use the Osage minerals

they extracted as structural support for their wind turbines. OMC MSJ SUF ¶¶ 47-48. So long as

Defendants continue to "use[] them as backfill to support its wind turbine structures," *Osage*

*Wind, LLC*, 871 F.3d at 1090, Defendants are required to obtain a lease for their use.

**III.   STANDARD OF REVIEW**

The Federal Rules of Evidence, Rule 702, provides that the expert testimony of an

opinion expert is admissible if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the
> case.

Fed. R. Evid. 702. Rule 702 "imposes upon the trial judge an important 'gate-keeping' function

with regard to the admissibility of expert opinions." *Mathis v. Huff & Puff Trucking, Inc.*, 787

F.3d 1297, 1307 (10th Cir. 2015) (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d

965, 969 (10th Cir. 2001)). "To determine whether an expert's opinion is admissible, the district

court must undertake a two-step analysis." *Id.* (citing *United States v. Nacchio,* 555 F.3d 1234,

1241 (10th Cir. 2009) (en banc)). "First, the court must determine whether the expert is

'qualified "by knowledge, skill, experience, training, or education" to render an

opinion.'" *Id.* (quoting *United States v. Nacchio*, 555 F.3d at 1241). "Second, the court must

determine whether the expert's opinion is reliable by assessing the underlying reasoning and

methodology, as set forth in *Daubert*." *Id.*

In *Daubert*, the Supreme Court noted that a court may consider whether (1) the opinion

or theory "has been[] tested," (2) whether "the theory or technique has been subjected to peer

review and publication," (3) whether there is a "known or potential rate of error," and (4)

whether the opinion or theory has "general acceptance" in the relevant scientific community.

8

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993) (citation omitted). The Supreme Court makes clear that the "inquiry envisioned by Rule 702 is . . . a flexible one," and the "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594-95; *see also United States v. Medina-Copete*, 757 F.3d 1092, 1103 (10th Cir. 2014) (noting "*Daubert* makes clear that the factors it mentions do not constitute a definitive checklist or test."); *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) ("the reliability criteria enunciated in *Daubert* are not to be applied woodenly in all circumstances."). Indeed, the Supreme Court states that "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (citation omitted).

While expert opinions "must be based on 'facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation, . . . absolute certainty is not required.'" *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). "The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (quoting *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). "Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.*

The Supreme Court highlights that the Federal Rules of Evidence have a "liberal thrust" and employ a "general approach of relaxing the traditional barriers to 'opinion' testimony."

*Daubert,* 509 U.S. at 588; *see also United States v. Johnson*, 732 F. App'x 638, 656 (10th Cir.

2018) (noting there is a "strong and undeniable preference for admitting any evidence having

some potential for assisting the trier of fact"); *Richmond v. Embry*, 122 F.3d 866, 878 (10th Cir.

1997) ("the standard of relevance under the Federal Rules of Evidence 'is a liberal one.'"

(quoting *Daubert*, 509 U.S. at 587)).

    **IV.**   **ARGUMENT**

        **A.  Defendants, Once Again, Mischaracterize the Tenth Circuit's Decision**

      A significant flaw with Defendants' Motion is that it mischaracterizes the Tenth Circuit's

decision. Defendants assert that Mr. Hazel "ignores" the Tenth Circuit's ruling that "it was

crushing rock for backfill, *not construction or operation of the Project,* that required a mining

lease." Defs.' Mot. 1 (citing *Osage Wind, LLC*, 871 F.3d at 1091-92) (emphasis added). The

Tenth Circuit did not make such a distinction. While it is true that the Court considered

Defendants' rock crushing to be a critical factor, the Tenth Circuit ultimately concluded

Defendants' conduct required a mining lease because Defendants *used*, *exploited*, and *took*

*advantage* of the minerals they took from the Osage Mineral Estate, specifically so they could be

used for a "structural purpose" supporting Defendants' wind turbines. *Id*. (noting that Defendants

took "*advantage* of [the minerals] for a *structural purpose*.") (emphasis added); *id.* at 1091

(noting Defendants "*sorted* the rocks, *crushed* the rocks into smaller pieces, and *exploited* the

crushed rocks as structural support for each wind turbine.") (emphasis in original).

      Of course Defendants want to limit the Tenth Circuit's decision to a determination that a

lease is only required if and when Defendants undertake rock crushing, *see e.g.,* Defs.' Mot. 7

(claiming "[it] was the crushing of excavated rock for use as backfill at the turbine sites that

required a mining lease"), but this is not what the Tenth Circuit held. Instead, the Tenth Circuit

concluded that Defendants engaged in mining because they "sorted and then crushed the

minerals and *used them* as backfill *to support its wind turbine structures*." *Osage Wind, LLC*, 871 F.3d at 1090 (emphasis added). Rock crushing, therefore, is just one component of the activity the Tenth Circuit found to constitute mining: the *use* of Osage minerals to support the wind tower turbines. *See id.* at 1081 (stating that Defendants engaged in mining because they "extracted minerals for the purpose of exploiting the minerals themselves on site."); *see also id.* at 1091 (concluding Defendants engaged in mining because they "*act[ed] upon the minerals in order to exploit the minerals themselves*.") (emphasis in original).

In fact, the Tenth Circuit was acutely focused on the fact that Defendants *used* the Osage minerals they excavated *as structural support* for Defendants' wind turbines. Defendants are correct that the Court considered rock crushing to be a critical component of the activity that gave rise to "mining," but the Court also reasoned that the sorting and rock crushing "was done to add structural support to the large wind turbines installed deep in the ground." *Id.* at 1087. The Tenth Circuit highlighted the fact that Defendants "needed to stabilize these tall wind turbines, and 'develop[ed]' the removed rock in such a way that would accomplish that goal." *Id.* at 1092. That is, Defendants took "*advantage* of [the minerals] for a structural purpose." *Id.* (emphasis added). Defendants are simply wrong that the Tenth Circuit concluded "rock crushing" is the only activity Defendants engaged in that necessitates a lease under 25 C.F.R. § 214.7. There is no question that the Tenth Circuit's analysis hinged on Defendants' *use* of Osage minerals to structurally support their wind turbines, and accordingly, it is clear that Defendants cannot continue to use these same minerals without obtaining the lease the Tenth Circuit concluded is required.

Mr. Hazel, in offering his expert opinion, did not "ignore" the Tenth Circuit's actual decision, as Defendants encourage this Court to do. The Tenth Circuit concluded that

Defendants' exploitation of Osage minerals requires a lease, and Mr. Hazel's analysis accurately builds on the Court's conclusion that Defendants cannot continue to take advantage of minerals from the Osage Mineral Estate without obtaining a lease from the OMC.

### B.  Mr. Hazel's Report is Both Relevant and Reliable

Defendants also assert that Mr. Hazel's Report is neither relevant nor reliable. Defendants are wrong. Mr. Hazel's valuation is the only valuation that considers the damage resulting from Defendants' violation of the OMC's sovereign rights and federal law. Accordingly, his testimony is both relevant and reliable and Defendants' motion should be denied.

### i.  Mr. Hazel's Opinion is Relevant

Defendants' relevance argument, while relatively brief, is dizzying. Defendants complain that Mr. Hazel's valuation is based on a "hypothetical scenario where Osage Wind was 'required to get a lease' before it could 'have a wind farm.'" Defs.' Mot. 7. As discussed above, the Tenth Circuit *did* conclude that "Osage Wind was required to procure a lease under 25 C.F.R. § 214.7." *Osage Wind, LLC*, 871 F.3d at 1093. Mr. Hazel is to be credited, not faulted, for accepting the Tenth Circuit's decision at face value and assuming the Tenth Circuit meant what it said when the Court concluded that "Osage Wind was required to procure a lease under 25 C.F.R. § 214.7." *Osage Wind, LLC*, 871 F.3d at 1093.

Next, Defendants assert that Mr. Hazel should have based his opinion on a hypothetical scenario in which Defendants decided to act lawfully by purchasing Osage minerals from a quarry with an approved lease.[1] Unfortunately for Defendants, they made the *business* decision

---

[1] Notably in this particular hypothetical, Defendants do not offer to negotiate with the OMC, but rather offer the price their expert opines that a quarry with an approved lease would have paid to the OMC. *See* Defs.' Mot. 8. This, of course, amounts to nothing more than "a forced sale of [the OMC's] statutory permitting discretion." *Tennessee Valley Auth. v. Jones*, 199 F. Supp. 3d 1198, 1205–06 (E.D. Tenn. 2016), *aff'd*, 692 F. App'x 224 (6th Cir. 2017).

in 2014 that their hypothetical scenario was too expensive and would imply recognition of the very same Osage mineral rights that the Tenth Circuit ultimately confirmed. *See, e.g.,* Ex. 4, Enel Green Power Direct Assignment/Change Orders Form dated December 9, 2014, OSAGE WIND-019013 (stating "import of back filling material from outside the County was a more expensive solution" and "[i]mporting material . . . would have given credit to Osage Nation's theory on the commercial use of soil"). Having made the business decision *not* to import purchased backfill material to support their wind turbines, Defendants cannot fault Mr. Hazel for deciding not to adopt a hypothetical scenario that Defendants themselves considered, and ultimately, dismissed.[2]

Concluding that Mr. Hazel's testimony is not relevant requires (1) ignoring the plain meaning of the Tenth Circuit's decision in this case and (2) ignoring the business decisions Defendants themselves made. Defendants' motion, therefore, should be denied.

### ii.  Mr. Hazel's Opinion is Reliable

Defendants next assert that Mr. Hazel's opinion is not reliable because "his opinions are litigation-driven and based on nothing more than his 'say so.'" Defs'. Mot. 13. While catchy, Defendants' turn-of-phrase attacks lack substance. In opining that the proper measure of

---

[2] Even assuming the royalty rate for producing quarries in 25 C.F.R. § 214 leases is properly a component of the relief due to the OMC, Defendants ask this Court to divorce the royalty provision from all the other provisions in the lease that the OMC has negotiated as part of its sovereign "obligation to ensure the preservation of the Osage Mineral Estate," Osage Nation Const. art. XV, § 4, as well as the regulations applicable to lessees that the United States has enacted "for the best interest of the Osage Tribe of Indians," Act of June 24, 1938, ch. 654, § 3, 52 Stat. 1035. For example, lessees are required to "keep an accurate account of all mining operations" including "the amount mined," Ex. 5 (Candy Creek Crusher, LLC Limestone/Dolomite Lease) at OMC-000623, 25 C.F.R. § 214.13(b), "exercise diligence in the conduct of mining operations" subject to cancellation of the lease for non-production, Ex. 5 at OMC-000624, 25 C.F.R. § 214.13(a), and "abide by all environmental and archaeological regulations currently promulgated by . . . the United States of America," Ex. 5 at OMC-000624*. Defendants' approach is even contradictory to the Tenth Circuit's analysis in case law Defendants cite approvingly. Defs.' Mot. 13 (citing *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138 (10th Cir. 2000)) (provisions in the parties' existing and prior leases and tax considerations used to determine the proper damages calculation). Moreover, Defendants' continued attempts to conflate obtaining a lease from the OMC with a purely business or economical transaction fail as a matter of law.

damages to the OMC is at least the value Defendants were willing to pay the Surface Owners for their use of the subservient surface estate, Mr. Hazel analyzed (1) surface leases of the surface estate properties, Ex. 1 (Hazel Report), 4; (2) agreements with mineral rights holders for other projects, *id.* at 20-21; and (3) existing 25 C.F.R § 214 leases, *id*. at 21-22. He also considered that his valuation was occurring after Defendants had already violated the law, *id.* at 4, and that the federal regulations governing the Osage Mineral Estate are designed to "protect Indian mineral resources and maximize Indians'[] best economic interests," *id.* at 6-7 (quoting *Osage Wind, LLC*, 871 F.3d at 1090) (internal quotation marks omitted). He further provided his reasoning why, in his professional opinion as a Certified Public Accountant and Accredited Senior Appraiser and Valuation Analyst certified in financial forensics, among other designations, *id.* at 1, the leases Defendants actually entered into are the best approximation of the present value of the lease the Tenth Circuit held that Defendants are required to obtain. *See id.* at 3-7. Defendants are entitled to disagree with Mr. Hazel's conclusions, but they cannot legitimately claim his opinion is simply his "say so." In contrast to Defendants and their experts, Mr. Hazel's opinion actually accepts—and does not attempt to refute—the Tenth Circuit's decision in this case.

Defendants' supposed attacks on Mr. Hazel's methodology do not actually challenge his methodology at all. For example, Defendants do not argue that present value is an inappropriate measure of valuation. Neither do they find fault with the mathematics in Mr. Hazel's report. Likewise, none of Defendants' caselaw indicates that Mr. Hazel's valuation analysis was improper, use of Latin phraseology notwithstanding. Indeed, Defendants overwhelmingly cite to inapposite challenges of opinions lacking a proper scientific evidentiary basis. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (studies showing PCBs cause cancer in infant mice

14

insufficient to establish opinion regarding carcinogenic effects in adult humans); *Palmer v. Asarco Inc.*, 510 F. Supp. 2d 519, 531 (N.D. Okla. 2007) (no scientific support for link between ADHD and lead exposure); *Dean v. Thermwood Corp.*, No. 10-CV-433-CVE-PJC, 2012 WL 90442, at *7 (N.D. Okla. Jan. 11, 2012) (no testing of the machinery at issue); *Schulze v. United States*, No. 18-CV-00130-GKF-JFJ, 2019 WL 1440306, at *3 (N.D. Okla. Apr. 1, 2019) (no studies, research, or standards offered to support opinions regarding proper treatment of suicidal ideation); *Graves v. Mazda Motor Corp.*, 405 Fed. App'x 296 (10th Cir. 2010) (no evidence offered to support opinion regarding defective gear shift design); *Bright v. Ohio Nat'l Life Assur. Corp.*, No. 11-CV-475-GKF-FHM, 2012 WL 12888316, at *2 (N.D. Okla. Nov. 29, 2012) (expert testimony a duplicative evaluation of medical condition rather than helpful evaluation of diagnosis method); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1126 (10th Cir. 2006) ("casual mention of a few scientific studies" insufficient to support expert opinion evaluating eyewitness testimony). Defendants' other cases turn on the inadequacy of the experts' opinions to address the facts of the case. *Hellard v. Mid Century Ins. Co.*, No. 19-CV-00043-GKF-CDL, 2021 WL 429917, at *5 (N.D. Okla. Feb. 8, 2021) (expert "offers no discussion of the guidelines, standards, or training materials actually adopted and offered by [the defendant]".); *S. Star Central Gas Pipeline, Inc. v. 120 Acres Located in Rice Co., Kan.*, No. 09-2435-EFM-GLR, 2012 WL 984271, at *4 (D. Kan. Mar. 22, 2012)  (expert excluded in part because property values in Alaska not relevant to property in Kansas); *see also Dean*, 2012 WL 90442, at *7.

Mr. Hazel is not opining on the science of wind farms or technicalities of construction. Nor did he fail to consider the specific facts of this case in his analysis. In fact, Defendants' caselaw supports Mr. Hazel's use of real property in close proximity to the Osage Mineral Estate as a comparable. Defs.' Mot. 11 (citing *S. Star Cent. Gas Pipeline, Inc.*, 2012 WL 984271, at *4

15

(lease for Alaska property "too remote" to support valuation of Kansas property)).[3] In the end, Defendants' issue with Mr. Hazel's analysis is not that it is irrelevant or that he employed improper methodology, but that he did not apply their incorrect definition of "mining," *see, e.g.,* Defs.' Mot. 10, which would require this Court to allow Defendants to continue using illegally acquired Osage minerals without obtaining a lease from the OMC so long as they do not crush the minerals they continue to use. And to be clear, Defendants' argument that Mr. Hazel's valuation should be supplanted with that of their expert, Mr. Pfahl, would only encourage other bad actors to trespass on the Osage Mineral Estate first, and litigate the requirement to obtain a lease later, as Defendants have done here. Such damages calculations severely undermine the ability of Tribal Nations to protect and preserve the property that has been left to them, in trust, by Congressional statute. *See United States v. Pend Oreille Public Utility Dist. No. 1*, 28 F.3d 1544, 1551 (9th Cir. 1994) ("The damage calculation urged by the Utility would encourage others to use Indian reservation lands for power production without complying with the Power Act," which in turn would "deprive the Indians of their right, granted [by statute] to influence the terms upon which the licensee uses reservation land."); *Tennessee Valley Authority*, 199 F. Supp. 3d at 1205-06.

None of Defendants' attacks on Mr. Hazel's Report survive the scrutiny of law. Defendants observed and respected the surface owner's ownership of the surface estate, and Defendants were willing to pay those owners handsomely for the right to use their property. As Mr. Hazel noted, the surface estate is subservient to the Mineral Estate, which according to

---

[3] Defendants' grasp on property law unrelated to Indian trust property appears tenuous as well. The OMC does not dispute that a car and a home are not "comparable" for many reasons, the most obvious being that a car is personal property, while homes are generally real property. *See* Defs.' Mot. 11. Mr. Hazel has compared the Osage Mineral Estate to the surface estate overlying it, and both are real property as Mr. Hazel noted in his report. Ex. 1 (Hazel Report), 2.

Congressional statute, is held in trust for the benefit of the Osage Nation. The price Defendants were willing to pay the owners of the subservient estate, therefore, is certainly a reliable comparison when deciding how much Defendants should be required to pay for their illegal and continued use of the dominant Mineral Estate, held in trust by the United States, for the benefit of the Osage Nation.

### iii.  Center City Periodontists, P.C. v. Dentsply International, Inc. is Irrelevant

Defendants' implication that disqualification of Mr. Hazel's opinions in a previous case somehow should inform the Court's analysis of his opinions in this case is disingenuous at best. In *Center City Periodontists, P.C. v. Dentsply International, Inc.*, Mr. Hazel's opinion was disqualified because he was not given complete facts and because certain claims were dismissed from the case. 321 F.R.D. 193, 204 (E.D. Pa. 2017). None of these defects are at issue here and Defendants have not alleged otherwise.

### C.  Mr. Hazel is Qualified to Serve as an Expert in This Litigation

Finally, Defendants erroneously suggest that Mr. Hazel is unqualified to testify as an expert as to the amount of damages Defendants owe the OMC. *See* Defs.' Mot. 14-15. The Tenth Circuit recognizes that an expert "is qualified when he possesses 'such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for the truth.'" *Dillon Cos. v. Hussmann Corp.*, 163 F. App'x 749, 756 (10th Cir. 2006) (quoting *Graham v. Wyeth Labs.*, 906 F.2d 1399, 1408 (10th Cir. 1990)). Here, there is no question that Mr. Hazel's expert opinion rests on a substantial foundation and, if allowed, will aid the trier of fact in the search for the truth.

As the OMC has already discussed, Mr. Hazel did not offer his opinion based upon a theoretical imagining of how a wind energy developer would negotiate in a routine arms-length transaction with a non-sovereign commercial entity, but rather, his opinion was based upon what Defendants would most likely have agreed to pay, *and* what the OMC would have agreed to accept, as a sovereign with the authority to regulate the Osage Mineral Estate. *See* Ex. 1 (Hazel Report), 6-7. In contrast to Defendants' experts, Mr. Hazel's opinion is the only opinion that incorporates the statutory reality that the Osage Nation is the owner of the Mineral Estate and anyone seeking to mine the Estate must first negotiate a lease with the OMC. *See* Dkt. 342-3 (Hazel Dep.), 153:12-16, 169:22-23; *see id*. at 81:7-9 ("I'm a damage expert valuing the mineral estate's rights and ownership and the damages related to it."). Ultimately, Mr. Hazel concluded that the amount Defendants agreed to pay "the Surface Owners [constitutes] a reasonable measure of damages and it is consistent with the 10th Circuit Court of Appeals' summary judgment award which contemplates *the Osage Nation's best economic interests*." Ex. 1 (Hazel Report), 7 (emphasis added).

In this case, Mr. Hazel is more than qualified to serve as an expert as to the amount of damages the OMC has suffered as a result of Defendants' unlawful mining of the Osage Mineral Estate. Mr. Hazel has over thirty-five years of experience testifying before state and federal courts, arbitrations, and administrative hearings, in a variety of cases, quantifying economic damages and valuing assets based upon his public accounting and management background and extensive experience with financial analysis for lost profits and opportunities, reasonable royalties, tax issues and more. Ex. 1, (Hazel Report, curriculum vitae), 62. He has several publications on forensic accounting and is a Certified Public Accountant certified in Financial Forensics, a Certified Valuation Analyst, an Accredited Senior Appraiser, and Accredited in

Business Valuation and Senior Managing Director for FTI Consulting, a global consulting and corporate finance advisory firm. *Id*.

It is clear Mr. Hazel has "such skill, experience or knowledge in [his] particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for the truth" in this case. *Dillon Cos.*, 163 F. App'x at 756 (quotation omitted). Mr. Hazel testified that he has served as an expert in other cases where payment might be due to mineral owners, Dkt. 342-3 (Hazel Dep.), 24:25-25-7, which routinely includes other cases where aggregate is being valued as it is here, *id.* at 48:20-49:10, and he is highly qualified in renewable energy matters, broadly, mineral matters, broadly, and damages. *See id*. at 98:21-24, 99:1-3. As further proof that Mr. Hazel is more than qualified to testify as to the measure of damages in this case, Defendants' own expert, Kimberlee Centera, noted after Mr. Hazel's deposition that Mr. Hazel is "highly qualified in these areas." Ex. 6, OSAGE WIND-040073.

Finally, this Court has held that whether an expert is "qualified depends heavily on the characterization of the issue being discussed." *Bright*, 2013 WL 121479, at *4-5. Defendants mischaracterize Mr. Hazel's testimony as opining on whether "a wind energy developer would have entered into with [sic] a mineral rights holder were such an agreement (as Mr. Hazel wrongly assumes) necessary to have a wind farm." Defs' Mot. 14 (internal citations and quotation marks omitted). But this is not at all what Mr. Hazel opined on or even relevant to this case. As discussed throughout this brief, Mr. Hazel's analysis assumes that Defendants are required to obtain a lease from the OMC. *See* Ex. 1 (Hazel Report), 3 ("[t]he 10th Circuit Court of Appeals determined that Osage Wind's excavation activities did in fact constitute mining under 25 C.F.R. § 211.3, and therefore, a federally approved lease was required by the Plaintiff under 25 C.F.R. § 214.7."). That is not some assumption conjured by Mr. Hazel: it is the Tenth

Circuit's ruling and law of the case. *See Fish v. Schwab*, 957 F.3d 1105, 1139 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 965, 208 L. Ed. 2d 499 (2020) (noting that under the law of the case doctrine, "the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal.").

In sum, Mr. Hazel's thirty-five years of experience in forensic accounting and asset valuation demonstrate his sufficient qualification by "knowledge, skill, experience, training, or education to render an opinion" as to the measure of damages in this case. *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012). Accordingly, Defendants' Motion to Exclude must be denied.

## V.    CONCLUSION

For the reasons stated above, the OMC respectfully requests that the Court deny Defendants' Motion to Exclude the Expert Testimony of Steve J. Hazel.

Respectfully submitted,

s/ Mary Kathryn Nagle
Mary Kathryn Nagle, OBA No. 33712
Wilson Pipestem, OBA No. 16877
Abi Fain, OBA No. 31370
Jennifer S. Baker, OBA No. 21938
Shoney Blake, Cal. Bar No. 264981
Pipestem and Nagle Law, P.C.
401 S. Boston Ave., #2200
Tulsa, Oklahoma 74103
918-936-4705 (Office)
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
afain@pipestemlaw.com
jbaker@pipestemlaw.com
sblake@pipestemlaw.com
*Counsel for Intervenor-Plaintiff*
*Osage Minerals Council*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2021, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ryan A. Ray
Joel L. Wohlgemuth
rar@nwcjlaw.com
jlw@nwcjlaw.com

-and-

Lynn H. Slade Sarah S.
Stevenson Deana M.
Bennett Spencer L. Edelman
lynn.slade@modrall.com
sarah.stevenson@modrall.com
deana.bennett@modrall.com
spencer.edelman@modrall.com

-and-

Thomas J. McCormack
Robin D. Ball
Robert Comer
Robert Kirby
thomas.mccormack@nortonrosefullbright.com
robin.ball@nortonrosefullbright.com
bob.comer@nortonrosefullbright.com
robert.kirby@nortonrosefullbright.com
*Counsel for Defendants*

Cathryn Dawn McClanahan
cathy.mcclanahan@usdoj.gov
Nolan Fields
Nolan.Fields@usdoj.gov
Stuart P. Ashworth
stuart.ashworth@sol.doi.gov
*Counsel for Plaintiff, United States*

David McCullough
dmccullough@dsda.com

Jeffrey S. Rasmussen
jrasmussen@ndnlaw.com

-and-

Wilson Pipestem
Mary Kathryn Nagle
Abi L. Fain
Jennifer S. Baker
Shoney Blake
mknagle@pipestemlaw.com
wkpipestem@pipestemlaw.com
afain@pipestemlaw.com
jbaker@pipestemlaw.com
sblake@pipestemlaw.com
*Counsel for Intervenor-Plaintiff,*
*Osage Minerals Council*

/s/ Mary Kathryn Nagle