## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**and**

**OSAGE MINERALS COUNCIL,**

      **Plaintiff-Intervenor,**      **Court No. 4:14-cv-00704-JCG-JFJ**

**v.**

**OSAGE WIND, LLC, ENEL
KANSAS, LLC, AND ENEL
GREEN POWER NORTH
AMERICA, INC.,**

      **Defendants.**

## OPINION AND ORDER

The United States and the Osage Nation have litigated against the private developers of a wind turbine farm in Osage County, Oklahoma for more than ten years. For the reasons discussed below, the Court will award permanent injunctive relief to the Osage Nation and the United States in the form of ejectment of the wind turbine farm for continuing trespass. The Court will hold a damages trial to assess the amount of monetary damages for trespass and conversion.

The U.S. Court of Appeals for the Tenth Circuit ("Tenth Circuit Court of Appeals") determined that construction of the wind farm project constituted mining and required a lease under 25 C.F.R. §§ 211 and 214.  United States v. Osage Wind, LLC, 871 F.3d 1078 (10th Cir. 2017).  The developers failed to acquire a mining lease during or after construction, as well as after issuance of the Tenth Circuit Court of Appeals' decision holding that a mining lease was required.  This case presents questions of whether the wind farm developers' continued lack of a lease and presence of the wind farm constitute continuing trespass and whether permanent injunctive relief and damages are appropriate.

Plaintiff United States ("Plaintiff") asserts five counts in its Amended Complaint: (1) violation of 25 C.F.R. § 211; (2) violation of 25 C.F.R. § 214; (3) trespass; (4) continuing trespass; and (5) conversion.  Pl.'s Am. Compl. [Doc. 20].  Plaintiff-Intervenor Osage Mineral Council ("Plaintiff-Intervenor") alleges the same first four counts but does not raise a claim for conversion in its Amended Complaint in Intervention.  Pl.-Interv.'s Am. Compl. Interv. ("Pl.-Interv.'s Am. Compl.") [Doc. 164].

Before the Court are motions for summary judgment filed by Plaintiff, Plaintiff-Intervenor, and Defendants Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively, "Defendants").  Pl.-Interv.'s Mot. Summary J. [Doc. 294]; Defs.' Mot. Part. Summary J. Opening Br. ("Defs.'

Br.") [Doc. 297]; Pl.'s Mot. Summary J. ("Pl.'s Br.") [Doc. 300].  Plaintiff and

Plaintiff-Intervenor ask the Court to declare that Defendants violated 25 C.F.R.

§§ 211 and 214; find Defendants jointly and severally liable for damages for

tortious trespass and conversion; award permanent injunctive relief in the form of

ejectment of Defendants' wind turbines, or alternatively, monetary damages, for

Defendants' continuing trespass; find that Defendants did not reasonably rely on

the advice of counsel in good faith to mitigate damages; and award attorneys' fees.

Pl.-Interv.'s Mot. Summary J.; Pl.-Interv.'s Br. Supp. Pl.-Interv.'s Mot. Summary

J. ("Pl.-Interv.'s Br.") [Doc. 294-1]; Pl.'s Br.  Defendants' Motion for Partial

Summary Judgment asks the Court to deny the claim of continuing trespass and not

order removal of the wind turbines.  Defs.' Br.

Also before the Court are Plaintiff's Motion to Strike the Testimony of

Defendants' Expert Witness Kimberlee Centera ("Plaintiff's Motion to Strike" or

"Pl.'s Mot. Strike") and Defendants' Motion to Exclude the Testimony of

Plaintiff's Expert Witness Steven J. Hazel and Opening Brief in Support

("Defendants' Motion to Exclude" or "Defs.' Mot. Exclude").  Pl.'s Mot. Strike

[Doc. 290]; Defs.' Mot. Exclude [Doc. 337].

Oral argument was held on September 20, 2023.  Min. Proceeding (Sept. 20,

2023) [Doc. 379].  For the following reasons, the Court grants in part and denies in

part Plaintiff's Motion for Summary Judgment and Plaintiff-Intervenor's Motion

for Summary Judgment and concludes that Defendants have violated 25 C.F.R. §§ 211 and 214 and committed trespass, conversion, and continuing trespass.  The Court concludes that declaratory relief, monetary damages, and injunctive relief are appropriate.  The Court denies Defendants' Motion for Partial Summary Judgment and defers judgment on Plaintiff's Motion to Strike and Defendants' Motion to Exclude.

## BACKGROUND

### I.    Legal Background

Osage County incorporates the area designated by Congress as the Indian reservation for the Osage Nation.  Okla. Const. art. XVII, § 8; Act of June 5, 1872, ch. 310, 17 Stat. 228 (1872).  Congress severed the surface estate from the mineral estate in Osage County in 1906.  Act of June 28, 1906 ("Osage Act") §§ 2–3, ch. 3572, 34 Stat. 539, 540–44 (1906).  Under the Osage Act, the surface estate was allotted to members of the Osage Nation.  Id. § 2, 34 Stat. at 540–43.  The mineral estate was not allotted to individuals but was reserved for the benefit of the Osage Nation.  Id. § 3, 34 Stat. at 543–44.  The Osage Act authorized the Osage Nation, with the approval of the Secretary of the Interior, to issue "leases for all oil, gas, and other minerals" in the mineral estate.  Id.

25 C.F.R. Part 214 regulates the leasing of resources other than oil and gas in the mineral estate.  25 C.F.R. § 214.  Section 214.7 provides that "[n]o mining

or work of any nature will be permitted upon any tract of land until a lease

covering such tract shall have been approved by the Secretary of the Interior and

delivered to the lessee." Id. § 214.7.  The term "mining" is defined under 25

C.F.R. § 211.3 as:

> the science, technique, and business of mineral development including,
> but not limited to: opencast work, underground work, and in-situ
> leaching directed to severance and treatment of minerals; Provided,
> when sand, gravel, pumice, cinders, granite, building stone, limestone,
> clay or silt is the subject mineral, an enterprise is considered "mining"
> only if the extraction of such a mineral exceeds 5,000 cubic yards in
> any given year.

Id. § 211.3.  The Tenth Circuit Court of Appeals held that altering the natural size

and shape of rocks in order to use the rocks for structural purposes in the

construction of wind turbines constituted mineral development and mining under

sections 211.3 and 214.7, requiring a lease.  Osage Wind, 871 F.3d at 1091–92.

## II.    Factual Background

Beginning in 2010, Defendants leased approximately 8,400 acres of surface

rights in Osage County, Oklahoma on which to construct a commercial wind farm.

Id. at 1083.  The wind farm involved the construction of 84 wind turbines,

underground electrical lines, an overhead transmission line, meteorological towers,

and access roads.  Id.  The wind towers were secured into the ground with

reinforced concrete foundations.  Id.  In 2011, Plaintiff and Plaintiff-Intervenor

5

expressed concern that the project would block access to the mineral estate and interfere with oil and gas production.  Id. at 1083.

The Osage Nation filed a lawsuit in October 2011 to halt the construction of the proposed wind farm, alleging that the project unlawfully deprived the Osage Nation of access to and the right to develop the mineral estate.  Compl. [Doc. 2], Osage Nation v. Wind Capital Grp., LLC, Case No. 11-00643.  The Osage Nation's claims were denied and the case was dismissed on its merits.  Osage Nation v. Wind Capital Grp., LLC ("Wind Capital Grp."), 2011 U.S. Dist. LEXIS 146407 (N.D. Okla. Dec. 20, 2011).

Defendants' construction on the wind towers began in October 2013 with site preparation, and excavation work began in September 2014.  Osage Wind, 871 F.3d at 1083.  Defendants excavated holes to accommodate cement foundations measuring 10 feet by 60 feet for each tower.  Id.  Smaller excavated rocks were crushed and used as backfill for the cement foundations.  Id.  Larger rocks were positioned near the holes from which they were removed.  Id.

Plaintiff United States commenced this action on November 21, 2014, seeking a declaratory judgment that Defendants engaged in unauthorized mining and excavation in the Osage Mineral Estate without first obtaining a lease, permanent injunctive relief requiring the cessation of Defendants' activities, and monetary damages.  Pl.'s Compl. [Doc. 2]; Pl.'s Summons [Doc. 3].  Plaintiff later

amended its Complaint to add claims of trespass, continuing trespass, and conversion based on Defendants' extraction of minerals during the construction of the wind tower project. Pl.'s Am. Compl. Plaintiff moved for partial summary judgment on its claims for declaratory relief, asking the Court to rule that Defendants' excavation of minerals during the construction of the wind towers required a lease for mining activities under 25 C.F.R. §§ 211 and 214. Pl.'s Mot. Part. Summary J. Counts I and II Am. Compl. Request Expedited Consideration [Doc. 24]. Defendants also moved for summary judgment on Plaintiff's claims. Defs.' Mot. Dismiss Summary J. Opening Br. Supp. [Doc. 26]. The Court granted Defendants' summary judgment motion, holding that Defendants' activities did not constitute mining under 25 C.F.R. § 214 and that a lease was not required. United States v. Osage Wind, LLC, 2015 U.S. Dist. LEXIS 132480 (N.D. Okla. Sept. 30, 2015), rev'd, 871 F.3d 1078 (10th Cir. 2017).

Plaintiff-Intervenor Osage Mineral Council appealed the District Court's opinion dismissing Plaintiff's claims. Pl.-Interv.'s Notice Appeal [Doc. 49]. The Tenth Circuit Court of Appeals reversed the District Court's order, finding that Defendants' activities constituted mining and that a lease was required under 25 C.F.R. § 214.7. Osage Wind, 871 F.3d at 1093.

On remand, Plaintiff-Intervenor filed Plaintiff-Intervenor's Motion for Summary Judgment. Pl.-Interv.'s Mot. Summary J. Defendants filed Defendants'

Motion for Partial Summary Judgment and Opening Brief.  Defs.' Br.  Plaintiff

filed Plaintiff's Motion for Summary Judgment.  Pl.'s Br.  Each of the three

motions for summary judgment included a statement of undisputed facts.  Pl.-

Interv.'s Br. at 1–10; Defs.' Br. at 9–11; Pl.'s Br. at 1–3.

Upon review of the Parties' statements of material facts and supporting

exhibits, the Court finds the following undisputed material facts:

The Osage Nation is a federally recognized tribal nation.  Pl.-Interv.'s Br. at

1; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 1 [Doc. 324].  Plaintiff-Intervenor

Osage Mineral Council is an independent agency within the government of the

Osage Nation "established for the sole purpose of continuing its previous duties to

administer and develop the Osage Mineral Estate in accordance with the [Osage

Act], as amended, with no legislative authority for the Osage Nation government."

Pl.-Interv.'s Br. at 1; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 1; Osage

Nation Const. art. XV, § 4.  Plaintiff United States acts as trustee for the Osage

Mineral Estate and holds the Osage Mineral Estate in trust for the benefit of the

Osage Nation.  Pl.'s Br. at 1; Defs.' Resp. Pl.'s Mot Summary J. at 2 [Doc. 321];

Pl.-Interv.'s Br. at 1; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 1; Osage Act

§ 3, 34 Stat. at 543–44.  Defendant Enel Kansas is a holding company, wholly-

owned and controlled by Defendant Enel Green Power North America, Inc.  Pl.-

Interv.'s Br. at 4; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 5.

Pursuant to six lease agreements, Defendants leased 8,400 acres from surface estate owners in Osage County, Oklahoma.  Defs.' Resp. Pl.'s Mot. Summary J. at 6; Pl.-Interv.'s Reply Mot. Summary J. at 4 [Doc. 342].  Defendants leased only surface rights in 2010 for the construction of the wind farm.  Pl.'s Br. at 1; Defs.' Resp. Pl.'s Mot. Summary J. at 2.  No lease was obtained under 25 C.F.R. § 214.7 for mining activities.  Pl.-Interv.'s Br. at 2–3; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 2–5.

Defendants owned the assets that constituted the wind farm in 2013 and 2014.  Pl.-Interv.'s Br. at 4–5; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 6.  TradeWind Energy purchased Wind Capital Group's ownership interest in Osage Wind, LLC in August 2013.  Pl.-Interv.'s Br. at 4; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 5.  The 2013 Membership Interest Purchase Agreement between TradeWind Energy and Wind Capital Group included a provision that excluded "Native American Tribes" from the definition of "Governmental Authorities."  Pl.-Interv.'s Br. at 6; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 8.  Enel Kansas purchased TradeWind Energy's ownership interest in Osage Wind in September 2014.  Pl.-Interv.'s Br. at 5; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 7.

Defendants constructed 84 wind turbines on the leased surface estate.  See Defs.' Br. at 9; Pl.'s Resp. Defs.' Mot. Summary J. at 1 [Doc. 319]; Pl.-Interv.'s Resp. Defs.' Mot. Summary J. at 4 [Doc. 316].  When constructing the wind

9

turbines, Defendants excavated sand, soil, and rock while digging holes for wind turbine foundations.  Defs.' Br. at 10; Pl.'s Resp. Defs.' Mot. Summary J. at 2; Pl.-Interv.'s Resp. Defs.' Mot. Summary J. at 4.  Pieces of excavated rock were crushed into smaller sizes and used as backfill to support the wind turbines.  Defs.' Br. at 10; Pl.'s Resp. Defs.' Mot. Summary J. at 4; Pl.-Interv.'s Resp. Defs.' Mot. Summary J. at 5.  None of the soil, sand, or rock excavated by Defendants during construction was sold.  Defs.' Br. at 10; Defs.' Resp. Pl.'s Mot. Summary J. at 4; Defs.' Resp. Pl-Interv.'s Mot. Summary J. at 13; Pl.'s Reply Mot. Summary J. at 4 [Doc. 345]; Pl.-Interv.'s Reply Mot. Summary J. at 3; Pl.'s Resp. Defs.' Mot. Summary J. at 3; Pl.-Interv.'s Resp. Defs.' Mot. Summary J. at 5.  Defendants did not purchase other minerals for use as backfill from offsite sellers.  Pl.'s Br. at 2; Defs.' Resp. Pl.'s Mot Summary J. at 3–4; Pl.-Interv.'s Br. at 9; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 10.  Defendants completed all excavation work and rock crushing in 2014.  Defs.' Br. at 10; Pl.-Interv.'s Resp. Defs.' Mot. Summary J. at 6; Defs.' Resp. Pl.'s Mot. Summary J. at 5; Pl.'s Reply Mot. Summary J. at 4; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 13; Pl.-Interv.'s Reply Mot. Summary J. at 3.

In October 2014, Robin Phillips, Superintendent of the Osage Agency, notified Enel Green Power North America that a permit was required for excavation activities related to the wind farm project and requested that excavation

of minerals should cease until a permit was obtained.  Pl.-Interv.'s Br. at 5–6;

Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 7; see also Pl.-Interv.'s Mot.

Summary J. at Ex. 15 [Doc. 294-10].

The wind farm entered commercial operation in 2015.  Defs.' Br. at 10; Pl.'s

Resp. Defs.' Mot. Summary J. at 3; Pl.-Interv.'s Resp. Defs.' Mot. Summary J. at

6; Defs.' Resp. Pl.'s Mot. Summary J. at 5; Defs.' Resp. Pl.-Interv.'s Mot.

Summary J. at 13; Pl.'s Reply Mot. Summary J. at 4; Pl.-Interv.'s Reply Mot.

Summary J. at 3.  The wind farm employs 10 people full-time as engineers and

technicians.  Defs.' Resp. Pl.'s Mot. Summary J. at 6; Pl.-Interv.'s Reply. Mot.

Summary. J. at 4; see Pl.'s Reply Mot. Summary J. at 6.  Two Osage County

schools receive tax revenue from the wind farm project.  Defs.' Resp. Pl.-Interv.'s

Mot. Summary J. at 14; Pl.-Interv.'s Reply at 4; Defs.' Resp. Pl.'s Mot. Summary

J. at 6; Pl.'s Reply Mot. Summary J. at 5.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  In determining whether a genuine issue of material fact exists, the

Court considers "the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made

for purposes of the motion only), admissions, interrogatory answers, or other

materials." Fed. R. Civ. P. 56(c).  The essential inquiry for the Court in ruling on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The Court views all evidence and draws all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus., Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

### I.    Dismissal of Enel Kansas

Defendants concede liability on the claims of trespass and conversion as to Defendants Osage Wind and Enel Green Power North America, but not for Enel Kansas.  Defs.' Resp. Pl.'s Mot. Summary J. at 1; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 1, 25.  Defendants argue that Enel Kansas is a separate holding company that neither owned nor constructed the wind farm project, and that liability for Enel Kansas has not been established.  Defs.' Resp. Pl.'s Mot. Summary J. at 1; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 1, 25.  Although Defendants have not filed a motion to dismiss Enel Kansas from this suit, they asserted at oral argument that the Court could dismiss Enel Kansas from this case sua sponte.  See Transcript of Oral Argument ("Tr.") at. 162–63 [Doc. 380].  The only attempt made by Defendants to challenge Enel Kansas' involvement in this

case was a footnote in Defendants' response to Plaintiff's Motion for Summary Judgment and a single paragraph in Defendants' Response to Plaintiff-Intervenor's Motion for Summary Judgment.  Defs.' Resp. Pl.'s Mot. Summary J. at 2 n.1 ("Defendants incorporate by reference Part V of their response to [Plaintiff-Intervenor's] summary judgment motion[], to further explain why the Motion should be denied as to Enel [Kansas].");  Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 25.

The Court observes that Enel Kansas was named as a defendant when this case was initially filed in 2014.  See Pl.'s Compl.  Over the life of this case, a multitude of filings were made by the Parties in the District Court, the Tenth Circuit Court of Appeals, and the U.S. Supreme Court.  The three Defendants have shared the same counsel during all phases of this case.  At no time during nearly ten years of litigation did Defendants file a motion to dismiss Enel Kansas.

Defendants did not formally challenge Enel Kansas' status as a party to the litigation before the District Court issued its earlier opinion.  Nor did they formally challenge Enel Kansas' status on appeal.  The Tenth Circuit Court of Appeals considered the activities of Osage Wind, LLC, Enel Kansas, LLC, and Green Power North America, Inc. together as one entity, noting that "Osage Wind, LLC is wholly owned by Defendant Enel Kansas, LLC, which is wholly owned by Defendant Enel Green Power North America, Inc."  Osage Wind, 871 F.3d at 1081

13

n.1.  The appellate court described Defendants' activities as one entity and never

discussed Enel Kansas taking actions independently from the other Defendants.

Enel Kansas has participated in every stage of this case for almost a decade,

including filing pleadings and responding to and issuing discovery requests

seeking evidence.  Notably, Plaintiff Osage Mineral Council argued that:

> The clearest binding admission [that Defendants acted as one] was in
> their own petition for a writ of certiorari to the United States Supreme
> Court: "Petitioners [Osage Wind, LLC, *Enel Kansas, LLC* and Enel
> Green Power North American, Inc.] are business entities that have
> built and are operating a wind energy project in Osage County,
> Oklahoma."  This is a binding admission.

Pl.-Interv.'s Supp. Resp. Br. at 4 [Doc. 384] (alteration and emphasis in original)

(citing Pet. for a Writ of Certiorari ("Cert. Pet."), Osage Wind, LLC v. United

States, Case No. 17-1237 (S. Ct. 2017).  In addition, the Court takes judicial notice

of another statement in Defendants' petition for a writ of certiorari, when

Defendants informed the U.S. Supreme Court that, "[b]y 2014, [P]etitioners had

initiated excavation work for the planned wind turbines."  Cert. Pet. at 1 (in which

"Petitioners" were identified as Osage Wind, LLC, Enel Kansas, LLC, and Enel

Green Power North America, LLC).  The Court agrees with Plaintiff-Intervenor's

argument that statements made in briefs are to be taken as binding admissions.  See

Pl.-Interv.'s Supp. Resp. Br. at 4 (citing 10A CHARLES ALAN WRIGHT & ARTHUR

R. MILLER, FEDERAL PRACTICE & PROCEDURE CIVIL § 2723 (4th ed. 1990); 4

FRANCIS C. AMENDOLA ET AL., C.J.S. APPEAL AND ERROR § 746 (2023)).  In

14

Defendants' pleadings filed with the U.S. Supreme Court, Enel Kansas was never identified as an inappropriate party to the case, and in fact was described as a business entity that had built and operated the subject wind farm and had initiated excavation work for the planned wind turbines.  Cert. Pet. at 3.

In summary, the Court concludes that it would be improper and unfair to the opposing Parties if the Court were to sever and dismiss Enel Kansas after nearly ten years of litigation based on nothing more than an unsupported argument raised in a footnote and one paragraph in Defendants' response briefs at summary judgment.  An important function of summary judgment is to eliminate factually unsupported claims.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986). Unsupported conclusory allegations, however, do not create an issue of fact. Salehpoor v. Shahinpoor, 358 F.3d 782, 789 (10th Cir. 2004).

Enel Kansas' allegation that it never made decisions regarding the construction of the wind farm is unsupported by evidence, and is simply inconsistent with the admissions that it made to the U.S. Supreme Court in its petition for a writ of certiorari that it built and operates a wind farm, and that it engaged in excavation work for the wind turbines.  The unsupported allegations, when compared to Enel Kansas' contrary statements in pleadings filed with the U.S. Supreme Court, do not rise to the level of a genuine dispute of material fact.

15

In light of the admissions in Defendants' petition for a writ of certiorari to the U.S. Supreme Court that Petitioners Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. are business entities that have built and are operating a wind energy project in Osage County; Defendants' engagement in excavation work for the wind farm; and Defendants' failure to file any motions to dismiss Enel Kansas from the case, weighed against the mere allegation at this late stage of litigation that Enel Kansas should not be held liable as a defendant in this case, the Court finds that the facts support the conclusion that all three Defendants acted as one.

Plaintiff-Intervenor argues that Defendants are jointly and severally liable for all damages in this case.  Pl.-Interv.'s Am. Compl. at 15–19.  Liability is joint and several when the harm suffered is indivisible amongst multiple tortfeasors. The state of Oklahoma has abolished joint and several liability in favor of several liability.  23 Okla. St. § 15.  Before the federal courts, "state law is preempted if it stands as an obstacle to the accomplishment of the full purposes and objectives of Congress."  Pac. Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 220–21 (1983) (internal quotation and citations omitted). The Tenth Circuit Court of Appeals has recognized the "paramount federal policy that Indians develop independent sources of income and strong self-government." Seneca-Cayuga Tribe of Okla. v. Okla., 874 F.2d 709, 716 (10th Cir. 1989).

16

Sections 211 and 214 reflect this policy and the Congressional objective to ensure the Osage Nation's authority over the mineral estate.  See 25 C.F.R. §§ 211, 214. Defendants acted in concert in the performance of all relevant actions and may be held jointly and severally liable for any resulting damages.  Enel Kansas shall remain a defendant in this case and the Court will consider the activities of Defendants as one entity for the purposes of deciding the pending motions for summary judgment.

## II.    Declaratory Relief on Counts I and II

Counts I and II of both Plaintiff's Amended Complaint and Plaintiff-Intervenor's Amended Complaint seek declarations from the Court regarding the applicability and violation of 25 C.F.R. §§ 211 and 214.  Pl.'s Am. Compl. at 7–9; Pl.-Interv.'s Am. Compl. at 14–15.  Section 211 contains regulatory provisions that "govern leases and permits for the development of Indian tribal oil and gas, geothermal, and solid mineral resources."  25 C.F.R. § 211.1.  Section 214 specifically governs the leasing of lands held by the Osage Nation for mining.  Id. § 214.  In Osage Wind, the Tenth Circuit Court of Appeals considered: (1) whether Defendants' "excavation, modification, and use of rock and soil during the installation of wind turbines" constituted "mining" under 25 C.F.R. § 211 and (2) whether Defendants were required to obtain a lease for their activities.  Osage Wind, 871 F.3d 1078.  The Tenth Circuit Court of Appeals answered both

17

questions in the affirmative.  Id. at 1089–93.  The Court is bound by the Tenth Circuit Court of Appeals' ruling in Osage Wind and now enters declaratory judgment that Defendants were subject to and are in violation of 25 C.F.R. §§ 211 and 214.

### III.    Trespass and Conversion

Plaintiff and Plaintiff-Intervenor move for summary judgment on the claims of trespass and conversion.  Pl.'s Br. at 3–6; Pl.-Interv.'s Br. at 5–6; Pl.'s Am. Compl. at 9–10, 11–12; Pl.-Interv.'s Am. Compl. at 16–17.  Defendants do not oppose summary judgment as to liability for Osage Wind and Enel Green Power North America on the trespass and conversion claims.  Defs.' Resp. Pl.'s Mot. Summary J. at 1; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 1.  Defendants do contest liability for Enel Kansas.  Defs.' Resp. Pl.'s Mot. Summary J. at 1; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 1.

Because no federal statute addresses the torts of trespass and conversion against the property interests of Native American tribes, the Court looks to state law in defining the offenses.  See Davilla v. Enable Midstream Partners, L.P., 913 F.3d 959, 965 (10th Cir. 2019).  Under Oklahoma law, a right of action in trespass exists when a person "actual[ly] physical[ly] inva[des] . . . the real estate of another without the permission of the person lawfully entitled to possession."  Id. at 966 (quoting Williamson v. Fowler Toyota, Inc., 956 P.2d 858, 862 (Okla. 1998)).  The

18

court has recognized three elements to a trespass claim: (1) "the [plaintiff] must prove an entitlement to possession of the [property];" (2) "[the plaintiff] must prove [that the defendant] physically entered or remained on the [property];" and (3) the defendant must "lack[] a legal right—express or implied—to enter or remain." Id.  Conversion is an "act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Welty v. Martinaire of Okla., Inc., 867 P.2d 1273, 1275 (Okla. 1994).  The elements of civil conversion are: "(1) that the plaintiff owns certain property at the time of its conversion; (2) that defendant converted plaintiff's property by a wrongful act of disposition of the property; and (3) that damages are suffered by the plaintiff." See Tri-State Floors, Inc. v. Old Rule Servs., LLC, 2022 U.S. Dist. LEXIS 178361, at *39 (N.D. Okla. Sept. 30, 2022).

Plaintiff's and Plaintiff-Intervenor's ownership and entitlement to the Osage Mineral Estate under the first elements of trespass and conversion are undisputed. The mineral estate was severed from the surface estate by the Osage Act and held in trust for the collective benefit of the Osage Nation.  Osage Act § 3, 34 Stat. at 543–44.  The Parties agree that Plaintiff acts as the trustee for the mineral estate. Pl.'s Br. at 1; Defs.' Resp. Pl.'s Mot Summary J. at 2; Pl.-Interv.'s Br. at 1; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 1; see also Osage Act, 34 Stat. at 543–44.

As to all three Defendants Osage Wind, Enel Kansas, and Enel Green Power North America, the remaining elements of trespass and conversion were decided by the Tenth Circuit Court of Appeals' opinion in <u>Osage Wind</u>.  The appellate court held that Defendants' extraction, sorting, and crushing of rocks that were then used as backfill for support constituted mineral development and triggered the leasing requirement of 25 C.F.R. § 214.7.  <u>Osage Wind</u>, 871 F.3d at 1091–92. Based on the Tenth Circuit Court of Appeals' opinion in <u>Osage Wind</u>, there is no genuine dispute of material fact that the construction of the wind towers involved entering the mineral estate, extracting minerals, and using the extracted minerals without first obtaining the necessary lease, and the Court concludes that the second and third elements of trespass and conversion are satisfied.

As noted earlier, although the Defendants attempt in their briefs to raise questions about Enel Kansas' role in the wind project, the Court finds dispositive the Defendants' admission in their petition for a writ of certiorari to the U.S. Supreme Court that Defendants Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. are business entities that have built and are operating a wind energy project in Osage County, weighed against the mere allegation that Enel Kansas should not be held liable as a defendant in this case. The Court finds that the facts support the conclusion that all three Defendants acted as one in their building and operating of the wind farm at issue in this litigation.

20

The Court grants summary judgment and holds that all three Defendants are liable for the claims of trespass and conversion.

## IV.    Continuing Trespass

Plaintiff and Plaintiff-Intervenor assert claims of continuing trespass, despite the fact that no physical digging or mineral extraction has occurred for almost a decade.  Pl.'s Am. Compl. at 10–11; Pl.-Interv.'s Am. Compl. at 18–19.  Plaintiff proffers three theories in support of its continuing trespass claim.  First, Plaintiff argues that the physical presence of the wind towers, transmission lines, and collector system within the mineral estate constitutes a continuing trespass.  Pl.'s Br. at 6.  Second, Plaintiff asserts that each wind tower creates a mining setback that inhibits use and development of the mineral estate within a certain proximity of the structure.  Id. at 7–8.  Third, Plaintiff argues that the support provided by the surrounding mineral estate and improperly extracted rocks used as backfill for support amounts to a continuing trespass.  Id. at 8–9.  Defendants contend that only the first theory was pled in the Amended Complaints and is properly before the Court.  Defs.' Resp. Pl.'s Mot. Summary J. at 6; Defs.' Reply Pl.'s Resp. Defs.' Mot. Summary J. at 7, 8 [Doc. 346]; Defs.' Reply Pl.-Interv.'s Resp. Defs.' Mot. Summary J. at 2–3 [Doc. 347].

### A.    Legal Standard

Because no federal body of law governs trespass against Indian property, the

Court must rely on Oklahoma state law to define the elements of continuing

trespass, to the extent that the state law comports with federal policy.  See Davilla,

913 F.3d at 965–66.  Trespass under Oklahoma law requires three elements: (1) the

plaintiff must be entitled to possession of the property, (2) the defendant must have

physically entered or remained on the property; and (3) the defendant must have

lacked a legal right to enter or remain on the property.  Id. at 966.  Continuing

trespass occurs when "the ongoing, unabating nature of certain trespasses

continuously gives rise to causes of action that the victim can sue on, and

eventually can support equitable relief."  Id. at 971 n.8 (citing Hughes v. Harden,

151 P.2d 425, 427 (Okla. 1944); Bradley v. Renfrow, 84 P.2d 430, 431 (Okla.

1938)); see also Fairlawn Cemetery Ass'n v. First Presbyterian Church, U.S.A. of

Okla., 496 P.2d 1185, 1187 (Okla. 1972) (holding that an unauthorized

encroachment upon property that had continued for several years and was likely to

continue unless enjoined constituted a continuing trespass).  Defendants assert that

the case law discussing the elements of continuing trespass should be read to

impose an additional requirement that the cause of the alleged injury be abatable.

Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 16; see also Def.'s Supp. Br. at 4

[Doc. 374].  In support of this argument, Defendants rely on Hughes v. Harden,

151 P.2d 425 (Okla. 1944), in which the Oklahoma Supreme Court stated, in discussing continuing trespass in the context of nuisance law, "[w]here the cause of injury may be abated by the expenditure of labor or money the same is said to be a temporary one, and successive actions may be maintained for damages resulting therefrom." Id. at 427 (citation omitted).

The Court does not read Hughes to impose the additional requirement that Defendants suggest. In Davilla v. Enable Midstream Partners L.P., 913 F.3d 959 (10th Cir. 2019), the Tenth Circuit Court of Appeals observed that under Oklahoma law, "'[c]ontinuing trespass' is not a distinct legal wrong." Id. at 971 n.8. The Court is aware of no case subsequent to Hughes that has required that the injury resulting from a continuing trespass be abatable. The relevant distinction between a temporary and continuing trespass is that the ongoing nature of a continuing trespass necessitates the need for equitable relief.

### B.    Theories Before the Court

As an initial step, the Court must determine what arguments have been properly presented for consideration. Defendants contend that the only theory of continuing trespass presented in the Amended Complaints relates to the placement of the wind tower foundations within the mineral estate. Defs.' Resp. Pl.'s Mot. Summary J. at 9; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 14–15. In general, a party is not precluded from asserting a theory of recovery that was not set forth in

the initial complaint as long as the theory is not first presented so late as to

prejudice the opposing party.  See Evans v. McDonald's Corp., 936 F.2d 1087,

1090–91 (10th Cir. 1991) (citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE & PROCEDURE CIVIL § 1219 at 194 (4th ed.1990)).  The Federal

Rules of Civil Procedure require only that the pleadings articulate (1) a basis for

the court's jurisdiction, (2) "a short and plain statement of the claim showing that

the pleader is entitled to relief;" and (3) "a demand for the relief sought."  Fed. R.

Civ. P. 8(a).  This rule ensures that defendants have fair notice of the claims

alleged, but it does not require that all facts be developed and theories identified

before the time of filing.

    The continuing trespass claims alleged by both Plaintiff and Plaintiff-

Intervenor read in almost identical language:

> By placement of the turbine foundation and other materials, Defendants
> trespassed on the Osage [M]ineral [E]state, in violation of law and, in
> doing so, caused damage to the estate.  The insertion and placement of
> materials or structures in the mineral estate is a continuing trespass and
> diminishes the estate or diminishes the use and enjoyment of the
> mineral estate.

Pl.'s Am. Compl. at 11; see Pl.-Interv.'s Am. Compl. at 18.  Both continuing

trespass claims also reallege and incorporate by reference the preceding paragraphs

of their respective Amended Complaints.  Pl.'s Am. Compl. at 10; Pl.-Interv.'s

Am. Compl. at 18.  Plaintiff's Amended Complaint describes Defendants'

offending actions as:

> Defendants conducted unauthorized mineral excavation activities in connection with the construction of a wind energy project on 8,400 acres in Osage County, Oklahoma.  The project consists of between 84 and 94 wind turbines and associated infrastructure.  Defendants excavated and constructed foundations for the wind turbines, as well as trenches for cables.  Defendants excavated numerous pits measuring more than 50 feet wide and more than 10 feet deep.  As part of this process, Defendants excavated sand, soil of various types, and rock encountered in place.  Defendants crushed some of these extracted materials and used them to reinforce the concrete turbine foundations.  Defendants invaded, and irreparably altered, the mineral estate by virtue of placement of turbine foundations in these pits.

Pl.'s Am. Compl. at 1–2.  Similarly, Plaintiff-Intervenor's Amended Complaint includes a paragraph stating:

> The project consists of 84 wind turbines and associated infrastructure. Defendants excavated and constructed foundations for the wind turbines, as well as trenches for underground electrical lines. Defendants excavated numerous pits measuring approximately 60 feet in diameter and 10 feet deep.  As part of this process, Defendants excavated soil, sand, and rock of varying sizes encountered during Defendants' excavation.  Defendants crushed some of these extracted materials and used them to reinforce the concrete turbine foundations and for associated infrastructure.

Pl.-Interv.'s Am. Compl. at 2.  These statements make clear that Plaintiff's and Plaintiff-Intervenor's allegations involved activities encompassing the entire wind farm project, not only the foundations for the wind towers.  After nearly ten years of litigation, it cannot be said that Plaintiffs are asserting new theories or facts at the eleventh hour to the detriment of Defendants in this case.  Accordingly, the Court will consider all of Plaintiff's theories of continuing trespass.

### C.    Wind Tower Foundations

Plaintiff's first theory of continuing trespass argues that the continued presence of the wind towers and ancillary structures constitutes a continuing trespass. Pl.'s Br. at 6. Defendants argue that Plaintiff's theory is inconsistent with the Tenth Circuit Court of Appeals' discussion in Osage Wind and is contrary to the rights of the surface estate owners to use and develop their land. Defs.' Resp. Pl.'s Mot. Summary J. at 7–8 (citing Osage Wind, 871 F.3d at 1092). As the Tenth Circuit Court of Appeals observed, construction activities such as the building of a swimming pool or basement necessarily involve a degree of disruption to the mineral estate. Osage Wind, 871 F.3d at 1092. Such incidental encroachment into the mineral estate by the surface estate owner does not involve the commercialization of the mineral estate or the exploitation of the minerals contained therein. Id. Deeming the presence of construction extending below the ground's surface to be a continuing trespass into the mineral estate would result in an unreasonable limitation on the "expansive authority" of surface owners to develop and use their land. See id. The Court concludes that the physical presence of foundations for the wind turbines and other structures below ground level does not constitute a continuing trespass against the mineral estate.

### D.    Mining Setback

Plaintiff's second theory of continuing trespass is that the presence of the wind towers creates a mining setback and inhibits the development of the mineral estate within a certain radius around the structures.  Pl.'s Br. at 7–9.  The Court notes that this argument appears to be a redressing of arguments raised and resolved in the predecessor litigation involving the wind farm.  See Wind Capital Grp., 2011 U.S. Dist. LEXIS 146407.  In that case, the Osage Nation sought to enjoin the construction of the wind farm, in part because it might have interfered with oil and gas development of the mineral estate.  Under Oklahoma law, the right of a mineral estate owner to use the surface is limited to what is reasonably necessary for the development of the mineral estate and must be exercised with due regard to the surface owners' competing rights.  Id. at *23 (citing Roye Realty Dev. Inc. v. Watson, 791 P.2d 821, 824 (Okla. Ct. App. 1990) and Thompson v. Andover Oil Co., 691 P.2d 77, 82 (Okla. Ct. App. 1984)).  The Court held that:

> [I]n general, the Wind Farm's planned surface use is lawful and reasonable.  Its facilities will take up less than 1.5% of the surface of the 8,500 acres in the Wind Farm lease.  The underground infrastructure of collection lines and the access roads are typical of the type of surface restrictions mineral lessees regularly encounter.  The Tribe has not shown this court the presence of a specific impediment that unreasonably interferes with its use of the surface for oil and gas operations and marketing.  The mere possibility that a dispute might arise in the future is insufficient to merit an injunction of the Wind Farm's construction and operation.

Id. at *25–26.

The Court is aware of no new facts that require a different conclusion at this time.  The Parties disagree as to the size of the mining setback for each of the wind towers in which new construction would be inhibited.[1]  Even accepting the Plaintiff's most generous figure of a 500-foot mining setback for each tower, the total encumbered area would be a relatively small percentage of the leased surface estate.[2]  Plaintiffs have also shown no evidence that any action has been taken toward developing the relevant portions of the mineral estate.  The Court concludes that the mining setback created by the mere presence of the wind towers does not constitute a continuing trespass.

### E.  Support Provided by Backfill

Plaintiff and Plaintiff-Intervenor argue that the support provided for each wind tower by the surrounding mineral estate and the backfill created from extracted rocks is a continuing trespass.  Pl.'s Br. at 8–9; Pl.-Interv.'s Resp. Defs.'

---

[1]  The Parties disagree as to whether the mining setback encompasses a 90-foot radius or 500-foot radius for each tower.  The 90-foot radius relates to the area in which the wind towers receive structural support from the surrounding mineral estate.  The 500-foot radius relates to the area in which mineral development would be potentially unsafe.

[2]  Assuming a 500-foot mining setback and that the foundation for each tower is 10 feet by 60 feet, the area affected for each tower would be 1,070,600 square feet ($1,010 \text{ ft}^2$ x $1,060 \text{ ft}^2$).  For 84 wind towers, presuming that the setback areas do not overlap, the maximum area affected would be 89,930,400 square feet ($1,070,600 \text{ ft}^2$ x 84), which equates to approximately 2,064.52 acres ($89,930,400 \text{ ft}^2$ / $43,560 \text{ ft}^2$).  Less than 25 percent of the leased 8,400 acres of surface estate would be restricted.

Mot. Summary J. at 12–15.  Defendants counter that Plaintiff and Plaintiff-Intervenor over-extend the Tenth Circuit Court of Appeals' holding in Osage Wind.  Defs.' Resp. Pl.'s Mot. Summary J. at 9–10; Defs.' Reply Pl.-Interv.'s Resp. Defs.' Mot. Summary J. at 3–6.  Defendants argue that Osage Wind held that the only conduct that required a lease was the crushing of rocks for backfill, and because the use of the backfill to provide passive support for the wind turbines does not involve acting upon to the minerals, it is not mining.  Id. at 9–10.  Defendants also contend that surface owners have a right to support for structures under Oklahoma law and federal regulations.  Id. at 9–10.

In Osage Wind, the Tenth Circuit Court of Appeals adopted a broad meaning of the terms "mining" and "mineral development" under the applicable regulations.  Section 211.3 defines "mining" as the "science, technique, and business of mineral development[.]"  25 C.F.R. § 211.3.  The court concluded that mining encompasses more than just the commercialization and relocation of minerals.  Osage Wind, 871 F.3d at1089–90.  The Osage Wind court explained that the definition of § 211.3 "contemplates an activity that is aimed at *developing* minerals."  Id. at 1090 (emphasis in original).  The court acknowledged that the Osage Act and regulations leave ambiguous what is meant by "develop" minerals, but found the examples provided in § 211.3 informative.  Id. at 1090–91.  The regulation provides that mining "include[s], but [is] not limited to: opencast work,

29

underground work, and in-situ leaching directed to severance and treatment of minerals."  25 C.F.R. § 211.3.  Considering all elements of the list, the court held that:

> "mineral development" involves some action upon the minerals to take advantage of them for some purpose.  Because it is natural to construe a definition in light of its examples, this suggests at the very least that "mineral development" includes, but is not limited to, action upon the minerals in order to exploit the minerals themselves.

Osage Wind, 871 F.3d at 1091.  Based on this reading of the regulation, the Tenth Circuit Court of Appeals concluded that Defendants "*sorted* the rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as structural support for each wind turbine" and that these acts constituted mineral development.  Id. at 1091–92 (emphasis in original).

Defendants suggest that the Court should interpret the holding of Osage Wind narrowly.  Defs.' Resp. Pl.'s Mot. Summary J. at 7, 9–10; Defs.' Reply Pl.-Interv.'s Resp. Defs.' Mot. Summary J. at 3–6.  Defendants argue that the Tenth Circuit Court of Appeals never held that passive support constituted mining, but rather held that only the sorting and crushing of rocks were acts of mineral development.  Defs.' Reply Pl.-Interv.'s Resp. Defs.' Mot. Summary J. at 3–6; Defs.' Reply Pl.'s Resp. Defs.' Mot. Summary J. at 7.  Under this interpretation, Defendants contend that there can be no continuing trespass because the relevant acts of sorting and crushing of rocks ceased in 2014.

It appears that Defendants conflate the support provided by the surrounding mineral estate and the support provided by the crushed rocks used as backfill.  As discussed above, the Court agrees that passive support provided by the surrounding mineral estate is not an act of mineral development and cannot be the basis for continuing trespass.  As the Tenth Circuit Court of Appeals noted, "surface construction activities may often implicate and disrupt the mineral estate—building a basement or swimming pool necessarily involves digging a hole in the ground, displacing rock and soil in the process" and "merely encountering or disrupting the mineral estate does not trigger the definition of 'mining' under 25 C.F.R. § 211.3." Osage Wind, 871 F.3d at 1092.  Oklahoma law also recognizes a right of surface owners to lateral and subjacent support provided by neighboring land.  See 60 Okla. St. § 66.  The Court agrees that to hold that passive support provided to a structure by the surrounding ground constituted mineral development requiring a lease would be an unreasonable restriction on the rights of surface estate owners to develop their property.

The Court does not agree with Defendants' contention that the support provided by backfill consisting of unlawfully mined minerals is equally innocuous. The Tenth Circuit Court of Appeals held that mineral development "includes, but is not limited to, action upon the minerals in order to exploit the minerals themselves."  Osage Wind, 871 F.3d at 1091.  Defendants' argument attempts to

draw a distinction between those actions that involved some force altering the natural shape and size of the rocks and the subsequent use of the altered materials. See Tr. at. 27.  In Osage Wind, the Tenth Circuit Court of Appeals described Defendants' actions in multiple ways.  At times, the court described the project as involving excavation, modification, and use of the minerals.  See Osage Wind at 1081, 1091.  At other points in the opinion, the court only referenced the sorting and crushing of the rocks.  See id. at 1091–92.  Defendants contend that the Court should look to the common denominator between all of the descriptions—sorting and crushing—and conclude that the only activities deemed mining by the Tenth Circuit Court of Appeals were those that altered the rocks.  Tr. at 20–31, 57–60.

The Court does not read Osage Wind so narrowly to draw a distinction between actively altering the minerals and subsequently using the minerals. Defendants are correct that the Tenth Circuit Court of Appeals did not always explicitly include the use of crushed rocks as backfill to support the wind towers in its description of Defendants' conduct.  For example, the section of the Osage Wind opinion considering whether Defendants' actions constituted mining is titled "Sorting and Crushing for Backfill Constitutes 'Mineral Development.'"  Osage Wind, 871 F.3d at 1091.  A reading of the opinion in its entirety, however, makes clear that the court viewed Defendants' actions in the totality.  The final paragraph of the preceding section describes Osage Wind's mining actions as: "[i]t *sorted* the

32

rocks, *crushed* the rocks into smaller pieces, and then *exploited* the crushed rocks as structural support for each wind turbine." Id. (emphasis in original).  The Tenth Circuit Court of Appeals also observed specifically that the sorting and crushing of rocks were done with the purpose of providing structural support for the wind towers.  Id. ("Osage Wind needed to stabilize these tall wind turbines, and 'develop[ed]' the removed rock in such a way that would accomplish that goal.  This constitutes "mining" as defined by § 211.3.").

The Tenth Circuit Court of Appeals observed that, "*at the very least*[,] 'mineral development' *includes, but is not limited to*, action upon the minerals in order to exploit the minerals themselves." Id. at 1091 (emphasis added).  The court did not limit the exploitation of minerals to only the instance in which an outside force is acting upon them.  In this case, exploitation of the minerals did not end with the crushing of rocks.  It is undisputed that the minerals were pushed back into the holes and actively incorporated into the construction of the wind turbines as backfill.  The structures continue to receive the benefit of that backfill support today.

In their response to the Court's request for additional information, Defendants raise for the first time the argument that the continued use of the extracted minerals as backfill falls under the exception to 25 C.F.R. § 211.3.  Defs.' Resp. Pl.-Interv.'s Supp. Br. at 6–7 [Doc. 382].  25 C.F.R. § 211.3 provides

33

that "when sand, gravel, pumice, cinders, granite, building stone, limestone, clay or silt is the subject mineral, an enterprise is considered "mining" only if the extraction of such a mineral exceeds 5,000 cubic yards in any given year."

25 C.F.R. § 211.3.  Defendants argue that because no extraction has occurred since 2014 and continued use is distinct from extraction, the use of the backfill since 2014 is not mining.  Defs.' Resp. Pl.-Interv.'s Supp. Br. at 6–7.  The intent of the exception is to exclude from the scope of mining small scale projects that displace common minerals from the ground, such as the construction of a basement or swimming pool.  The exception does not operate to excuse mining activities in which the exploitation of the extracted mineral persists longer than one year.

Before the Tenth Circuit Court of Appeals, the Parties agreed that the total volume of minerals extracted from the mineral estate exceeded 5,000 cubic yards.  Osage Wind, 871 F.3d at 1089 n.9.  At the time of their extraction, the minerals did not fall under the exception, and the extraction was deemed by the Tenth Circuit Court of Appeals to be mining under 25 C.F.R. § 211.3.  The continued exploitation of the extracted minerals beyond one year does not create a situation in which Defendants can claim that their conduct became excluded under the exception merely through the passage of time, and this Court rejects Defendants' argument accordingly.

As further support for a broad interpretation of "mineral development" that includes the use of minerals as backfill for support, the Court recognizes the Indian canon of interpretation that requires the Court to liberally construe ambiguity in laws intended to benefit Indians in favor of Indians.  See Milsap v. Andrus, 717 F.2d 1326, 1329 (10th Cir. 1983).  As the Tenth Circuit Court of Appeals observed, "[w]ithout question, the regulations at issue here are designed to protect Indian mineral resources and 'maximize [Indians]' best economic interests.'" Osage Wind, 871 F.3d at 1090 (second alteration in original).  If ambiguity remains in the scope of the meaning of "mineral development" under 25 C.F.R. § 211.3 and Osage Wind, the Indian canon of interpretation requires the Court to balance its decision in favor of the Osage Nation's interests.  The Court concludes, therefore, that Defendants' use of crushed rocks as backfill for support falls within the definition of "mining" and required a lease under 25 C.F.R. §§ 211 and 214. The Court holds that Defendants are liable for continuing trespass because of the continuing use of the minerals as backfill for support.

## V.    Relief

Plaintiff claims that it is entitled to monetary damages resulting from Defendants' trespass for fair rental value, an accounting of any and all excavation and mining work performed, and equitable relief in the form of ejectment of the wind turbines.  Pl.'s Br. at 9–15.  Plaintiff-Intervenor asserts that the Court should

35

order the ejectment of the wind towers, but monetary damages are appropriate as an alternative form of relief.  Pl.-Interv.'s Br. at 13–18, 21–22.  Defendants contend that Plaintiff and Plaintiff-Intervenor have failed to demonstrate that they are entitled to injunctive relief and that the calculation of damages must await a trial.  Defs.' Br. at 18–25; Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 14–25; Defs.' Resp. Pl.'s Mot. Summary J. at 12–25.  For the reasons discussed below, the Court will grant Plaintiff's and Plaintiff-Intervenor's request for damages and injunctive relief.  The Court orders that ejectment of the wind turbine farm is an appropriate equitable remedy for continuing trespass.  The Court orders that a damages trial will be held to assess the amount of damages to be awarded for trespass and conversion.  The Court denies Plaintiff's claim for an accounting.

### A.    Damages

The Court concludes that Plaintiff and Plaintiff-Intervenor are entitled to damages on their claims for trespass and conversion.  The Parties disagree as to the proper method of calculating damages.  Plaintiff and Plaintiff-Intervenor urge the Court to adopt the figure calculated by Steven Hazel in the amount of $25,969,607.00.  Pl.-Interv.'s Br. at 21–22; Pl.'s Br. at 9–13.  Defendants ask the Court to reject Hazel's calculation and to instead adopt the calculations of either Robert Freas or John Pfahl as the total value of the extracted minerals, which are $247,979.42 and $68,993.00, respectively.  Defs.' Br. at 20–22; Defs.' Resp. Pl.-

Interv.'s Mot. Summary J. at 18; Defs.' Resp. Pl.'s Mot. Summary J. at 22–23.

Defendants also argue that the calculation of damages must take into consideration

Defendants' alleged good faith reliance on the advice of counsel.  Def.'s Resp. Pl.-

Interv.'s Mot. Summary J. at 19–24; Defs.' Resp. Pl.'s Mot. Summary J. at 24–25.

Plaintiff challenges Defendants' claim that they sought and relied on the advice of

counsel in deciding not to obtain the lease.  Pl.'s Br. at 15–19.  Specifically,

Plaintiff calls into question whether Defendants, or another party, solicited the

relevant advice and the scope of the question presented for counsel's opinion.  Id.

at 17–19.  Because disputes of material fact exist regarding a monetary award,

summary judgment cannot be granted and a trial shall be set to determine damages.

## B.      Accounting of Excavation and Mining Work

Plaintiff argues that it is entitled to an accounting from Defendants for the

profits derived from Defendants' trespass.  Pl.'s Br. at 13–14.  Plaintiff previously

sought to file a Second Amended Complaint to modify its Prayer for Relief to seek

an accounting of revenues attributable to the wind farm, disgorgement, and unjust

enrichment.  Pl.'s Mot. Leave File Second Am. Compl. [Doc. 98].  The Court

denied Plaintiff's motion for leave to amend and concluded that the newly

requested relief did not relate to the mining, excavation, and other work that was

the subject of Plaintiff's Amended Complaint and that permitting the amendment

would prejudice Defendants.  Order and Opinion (Jul. 1, 2020) at 12–13 [Doc. 161].

Though Plaintiff's renewed demand for an accounting of profits is arguably more narrowly tailored to the trespass into the mineral estate, rather than the entirety of the wind farm project, it suffers from the same defects as Plaintiff's earlier attempt to amend.  Plaintiff's Amended Complaint includes no reference to claims against Defendants' profits and Plaintiff has offered no explanation for why an accounting was not previously sought.  To allow Plaintiff to seek an accounting now when it was not demanded in the Amended Complaint would unjustly prejudice Defendants.  Plaintiff's claim for an accounting is denied.

### C.    Permanent Injunction and Ejectment

Plaintiff and Plaintiff-Intervenor seek permanent injunctive relief in the form of ejectment of the wind turbines.  Pl.-Interv.'s Br. at 13–18; Pl.'s Br. at 14–15. Defendants contend that Plaintiff and Plaintiff-Intervenor have not established that a permanent injunction is appropriate in this case.  Defs.' Resp. Pl.-Interv.'s Mot. Summary J. at 15–18; Defs.' Resp. Pl.'s Mot. Summary J. at 13–19.

The Court may grant equitable relief against a party that is found liable for a continuing trespass.  See Fairlawn Cemetery Ass'n, 496 P.2d at 1187.  Federal case law has established a standard for courts to apply when considering equitable relief.  See Davilla, 913 F.3d at 973.  It is not enough for a party to simply succeed

38

on the merits of their claim.  Id.  A court's decision to enjoin a continuing trespass must take into consideration: (1) whether the injunction is necessary to prevent "irreparable harm;" (2) whether the harm caused by the continuing trespass outweighs the harm that might be suffered by the enjoined party; and (3) whether the injunction would adversely affect the public interest.  Kitchen v. Herbert, 755 F.3d 1193, 1208 (10th Cir. 2014).

### 1.    Irreparable Harm

Plaintiff-Intervenor contends that permitting the wind turbines to remain in place will cause the Osage Nation to suffer irreparable harm to its sovereignty and its authority to manage the mineral estate.  Pl.-Interv.'s Br. at 13–16.  Plaintiff-Intervenor contends that this harm cannot be remedied by a payment of money damages.  Id. at 15–16.  Defendants contend that the only injury suffered by Plaintiff was the loss of royalties that Plaintiff-Intervenor would have received if Defendants had purchased backfill from one of the local quarries operating under a lease.  Defs.' Resp. Pl.'s Mot. Summary J. at 14.

Irreparable harm is the type of injury that is:

certain, great, actual and not theoretical.  Merely serious or substantial harm is not irreparable harm.  The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. It is also well settled that simple economic loss usually does not in and of itself, constitute irreparable harm; such losses are compensable by monetary damages.

Schrier v. Univ. of Co., 427 F.3d 1253, 1267 (10th Cir. 2005) (citations and quotations omitted).  Economic harms that can be compensated through an award for monetary damages are not irreparable harms.  Id.

Defendants contend that the crushing of rocks for backfill without a lease is compensable through monetary damages and point to expert testimony offered by Plaintiff quantifying damages in this case.  Defs.' Br. at 20–23.  The Oklahoma courts have adopted a method of damage calculation for compensating the unauthorized extraction of minerals: market value of the minerals less the cost of extraction.  See Dilworth v. Fortier, 405 P.2d 38, 45 (Okla. 1964); Edwards v. Lachman, 534 P.2d 670, 674 (Okla. 1974).  Though this approach might be appropriate in an ordinary commercial case, the Osage Mineral Council is not a normal actor in the marketplace.  The Osage Mineral Council is an extension of the Osage Nation's government and the Court must consider the non-economic impacts of Defendants' unlawful conduct on the Osage Nation's tribal rights.

Plaintiff-Intervenor cites to multiple cases in support of its contention that injury to an Indian tribe's sovereignty can amount to irreparable harm.  Pl.-Interv.'s Br. at 13–16; see Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234 (10th Cir. 2001); Seneca-Cayuga Tribe of Okla., 874 F.2d 709; Winnebago Tribe of Neb. v. Stovall, 216 F. Supp. 2d 1226 (D. Kan. 2002), aff'd, 341 F.3d 1202 (10th Cir. 2003); Sac and Fox Nation of Mo. v. LaFaver, 905 F. Supp. 904

(D. Kan. 1995).  These cases are distinguishable from the facts before the Court in that each involved a conflict between the authority of an Indian tribe and a state government.  Defendants are private actors and did not act under state authority or in the furtherance of state policy.

The question left for the Court is whether the actions of private entities can rise to the level of contesting the sovereignty of an Indian tribe.  Courts have recognized the Federal Government's persistent policy of promoting self-government by Indian tribes.  See Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 14 (1987).  "Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty."  Id. at 17.  This includes the power of the tribal government to exclude outsiders.  See Norton v. Ute Indian Tribe of the Uintah and Ouray Rsrv., 862 F.3d 1236, 1244–45 (10th Cir. 2017).  "The tribe's 'traditional and undisputed power to exclude persons' from tribal land, for example, gives it the power to set conditions on entry to that land via licensing requirements and hunting regulations."  Plains Commerce Bank v. Long Family Land and Cattle Co., 554 U.S. 316, 335 (2008) (quoting Duro v. Reina, 495 U.S. 676, 696 (1990)).

Defendants were advised by the Bureau of Indian Affairs and the Osage Mineral Council on multiple occasions that the wind farm project required a lease related to the mineral estate.  Pl.'s Br. at Ex. 20 ("BIA Letter of Oct. 9, 2014");

41

Pl.'s Br. at Ex. 21 ("OMC Letter"); Pl.'s Br. at Ex. 22 ("BIA Letter of Jul. 19,

2012").  Defendants failed to obtain the required lease.  The Tenth Circuit Court of

Appeals held in 2017 that a lease was required.  Osage Wind, 871 F.3d at 1087–93.

Even following the appellate court's ruling, Defendants have taken no steps to

obtain a lease during the years following the appellate court's opinion.  On the

record before the Court, it is clear that Defendants are actively avoiding the leasing

requirement.  Permitting such behavior would create the prospect for future

interference with the Osage Mineral Council's authority by Defendants or others

wishing to develop the mineral estate.  The Court concludes that Defendants' past

and continued refusal to obtain a lease constitutes interference with the sovereignty

of the Osage Nation and is sufficient to constitute irreparable injury.

### 2.    Balance of Harms

In order for the Court to grant a permanent injunction, the harms suffered by

Plaintiff as a result of Defendants' trespass must outweigh the harms that would be

suffered by Defendants if the relief were to be granted.  On Plaintiff's side of the

scale weighs the "paramount federal policy that Indians develop independent

sources of income and strong self-government."  See Seneca-Cayuga Tribe of

Okla., 874 F.2d at 716.  This is balanced against Defendants' claim that Osage

Wind would suffer the inevitable loss of hundreds of millions of dollars if the wind

towers were removed.  Def.'s Resp. Pl.'s Mot. Summary J. at 15–17.  Though the

significant loss of money might be sufficient to outweigh a property owner's interests in a more common case of trespass, this case involves an infringement on the self-governance of Indian lands.  The Court is also cognizant of Defendants' continuing trespass even after the Tenth Circuit Court of Appeals issued the Osage Wind opinion, and the fact that Defendants have ignored opportunities to address the failure to procure a lease over the last decade.  Notably, the Tenth Circuit Court of Appeals held in 2017 that Defendants were required to obtain a mining lease, and the Supreme Court denied the appeal of the Tenth Circuit Court of Appeals' decision in 2019, so for at least four years between 2019 and 2023, Defendants have failed to obtain a lease in contravention of the court's order.  Based on these considerations, the Court concludes that the balance of harms weighs in favor of Plaintiff.

### 3.      Impact on the Public Interest

Plaintiff-Intervenor contends that ejectment would serve the public interest by protecting the sovereignty of the Osage Nation.  Pl.-Interv.'s Br. at 17–19.  Defendants argue that the removal of the wind turbines would result in the loss of revenue for two local schools, jobs, income for the surface estate owners, and renewable energy for 50,000 homes.  Defs.' Br. at 17–18.

The Court is not persuaded by Defendants' argument.  Because construction of the wind farm has concluded, the only jobs that would be impacted by the

removal of the wind towers are the 10 permanent employees of the wind farm.
Defs.' Resp. Pl.'s Mot. Summary J. at 6; Pl.-Interv.'s Reply. Mot. Summary J. at 4;
see Pl.'s Reply Mot. Summary J. at 6; Wind Capital Grp., 2011 U.S. Dist. LEXIS
146407, at *16.  The benefit to the local schools appears to be related to
Defendants' tax obligations.  Wind Capital Grp., 2011 U.S. Dist. LEXIS 146407,
at *16.  There is no guarantee that such funding would continue or remain at
consistent levels in the future or that it would not be eclipsed by offsets or tax
benefits to Defendants.  See Pl.'s Resp. Defs.' Mot. Summary J. at 5.  Similarly, it
is possible that the income that surface owners would derive from surface leases
could be replaced by leases with other parties wishing to develop the area if the
wind towers were removed.

Even if negative effects were to result, including the significant monetary
impact of hundreds of millions of dollars, such effects would not negate the public
interest in private entities abiding by the law and respecting government
sovereignty and the decisions of courts.  Nor would those negative effects
overshadow the public interest in preserving the Osage Nation's tribal sovereignty.

### 4.    Injunctive Relief

For the foregoing reasons, the Court orders injunctive relief in the form of
ejectment of the wind towers.  The Court concludes that a permanent injunction is
appropriate relief for Defendants' continuing trespass and failure to obtain a lease

but the Court will allow input from the Parties as to timing of ejectment of the wind farm.  A trial on damages will be held forthwith to determine a monetary award for trespass and conversion.

### VI.    Motion to Strike and Motion to Exclude

Plaintiff has filed Plaintiff's Motion to Strike, arguing that Centera's opinions are not relevant to the remaining issues in this case.  Pl.'s Mot. Strike. Defendants have filed Defendants' Motion to Exclude, seeking to exclude Hazel's testimony as irrelevant and unreliable.  Defs.' Mot. Exclude.

The Federal Rules of Evidence provide that a qualified expert may provide testimony that "will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  Hazel was retained by Plaintiff to provide an assessment of damages suffered by the Osage Nation.  Expert Report Steven Hazel [Doc. 338-1].  Centera was retained by Defendants to respond to the report prepared by Hazel on the calculation of damages.  Expert Report Kimberlee Centera [Doc. 200-1].  Her report addressed two questions: (1) "whether a knowledgeable and experienced wind developer would have reasonably anticipated that a lease from the mineral owner would be required prior to construction of the project" and (2) "if a wind energy developer was clearly apprised prior to construction commencing that a mining lease was required to engage in ordinary turbine foundation excavation for a wind energy project, would the developer have

[a] practical and effective alternative to using minerals so 'mined' from the mineral estate in the construction of foundations for the Project." Id. at 4.

Damages remain a live issue in this case. As the Parties have not yet presented their evidence on damages at trial, Plaintiff's Motion to Strike and Defendants' Motion to Exclude are premature. Both motions are deferred until the damages trial.

## CONCLUSION

The Court holds that no genuine issues of material fact exist for Plaintiff's and Plaintiff-Intervenor's claims for declaratory relief regarding Defendants' violation of 25 C.F.R. §§ 211 and 214. The Court also holds that no issues of material fact exist as to the liability of Defendants Osage Wind, LLC, Enel Kansas, LLC, and Enel Green Power North America, Inc. for the torts of trespass, continuing trespass, and conversion. Summary judgment is appropriate on these claims, monetary damages shall be awarded on the claims of trespass and conversion after a damages trial, and equitable relief shall be awarded on the claim of continuing trespass. The Court defers Defendants' Motion to Exclude and Plaintiff's Motion to Strike until the damages trial.

**ORDER**

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

(1)     Plaintiff-Intervenor's Motion for Summary Judgment [Doc. 294] is

        granted in part as it pertains to the granting of declaratory, monetary,

        and equitable relief against Defendants Osage Wind, LLC, Enel

        Kansas, LLC, and Enel Green Power North America, Inc. and denied

        in part as it pertains to the calculation of damages and fees.

(2)     Defendants' Motion for Partial Summary Judgment [Doc. 297] is

        denied.

(3)     Plaintiff United States' Motion for Summary Judgment [Doc. 300] is

        granted as it pertains to the granting of declaratory, monetary, and

        equitable relief against Defendants Osage Wind, LLC, Enel Kansas,

        LLC, and Enel Green Power North America, Inc. and denied in part as

        it pertains to the calculation of damages and fees and an accounting.

(4)     Plaintiff United States' Motion to Strike the Testimony of

        Defendants' Expert Witness Kimberlee Centera [Doc. 290] is

        deferred.

(5)     Defendants' Motion to Exclude the Testimony of Plaintiff United

        States' Expert Witness Steven J. Hazel [Doc. 337] is deferred.

(6)     Trial will be scheduled on the issue of damages.  The Court will

contact the Parties to arrange a status conference to discuss trial

scheduling and pre-trial matters.

IT IS SO ORDERED this 20th day of December, 2023.


    /s/ Jennifer Choe-Groves    
Jennifer Choe-Groves
U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.