IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, and<br>THE OSAGE MINERALS COUNCIL,<br><br>    Plaintiffs,<br><br>vs.<br><br>OSAGE WIND, LLC;<br>ENEL KANSAS, LLC; and<br>ENEL GREEN POWER NORTH<br>AMERICA, INC.,<br><br>    Defendants. | Case No. 14-CV-704-GKF-JFJ |

**OSAGE MINERALS COUNCIL RESPONSE TO MOTION FOR STAY**

The Osage Minerals Council ("OMC"):

I. Opposes the motion for stay unless Defendants provide a bond which is sufficient to cover attorney fees on appeal.

II. Opposes the motion for stay of the portion of the monetary judgment for damages, because Defendants have not met their burden to show that they are appealing from that portion of the judgment.

III. Does not contest a supersedeas bond in the amount proposed for stay of the attorney fees and costs incurred as of the date of the judgment, as long as that bond clearly covers any attorney fees that will be added if Defendants' appeal is unsuccessful.

IV. Opposes the motion for stay of the injunctive order.

V. If this Court were to stay the injunction order over OMC's objection, OMC requests a performance bond of at least $50,000,000 for that portion of the order.

## SUMMARY OF RELEVANT FACT

On December 20, 2023, the Court issued an Order awarding "permanent injunctive relief to the Osage Nation and the United States in the form of ejectment of the wind turbine farm for

continuing trespass." ECF 386 at 1. This Court issued a judgment containing permanent injunctive relief and a monetary judgment with three components: 1) conversion monetary damages; 2) trespass monetary damages; and 3) attorney fees and costs. ECF 515.

On January 10, 2025, Defendants filed a Notice of Appeal, ECF 519 and a Motion to Stay Judgment pending appeal under Federal Rule of Civil Procedure (FRCP) 62. Defendants propose a supersedeas bond for the judgment. In their docketing statement on appeal, Defendants state they are going to argue that the ejectment order was erroneous and that they should not have to pay attorney fees and costs. They do not state that they are going to challenge the conversion or trespass damages.[1]

## DISCUSSION OF LAW

I. **THE COURT SHOULD NOT STAY THE MONETARY AWARD FOR TRESPASS AND CONVERSION DAMAGES BECAUSE IT APPEARS THAT DEFENDANTS ARE NOT APPEALING THAT PORTION OF THIS COURT'S MONETARY JUDGMENT.**

Federal Rule of Civil Procedure 62(b) states that, "At any time after a judgment is entered, a party may obtain a stay by providing a bond or security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." FRCP 62(b).

Here, Defendants are apparently not appealing from this Court's judgment on conversion or trespass damages. Those portions of the judgement therefore should not be stayed pending appeal. When Defendants filed their motion for stay, they had not definitively determined whether they would be appealing from the damages award. On January 27, 2025, Defendants filed their

---

[1] In footnote 3 of their motion to stay, Defendants appear to claim that even though they are not going to appeal from the damages award, that order should be stayed unless the OMC concedes some ill-defined issues on appeal. Defendants' footnote is legally improper. As discussed below, the issue is whether or not Defendants are going to seek reversal of the damages order on appeal. If they are not, then that portion of the order should not be stayed. Defendants do not get to dictate to the OMC that the OMC has to concede anything on appeal in order to collect on an unappealed part of the judgment.

docketing statement with the Court of Appeals. In that docketing statement Defendants listed the issues they may present. As expected, they did not include conversion or trespass damages within the scope of issued listed in their docketing statement. App. Doc. 11153607.

Where "the portions [of a judgment] are separate and divisible," appeal of one of those portions does not require a stay of other portions. *Allen F. Johnson, LLC v. Port Sec. Int'l, LLC*, 642 F. Supp. 2d 533, 536 (E.D. Va. 2009).

Granting a stay of a portion of an order that Defendants are not appealing would be contrary to the general purpose of the purpose of a stay. *E.g., id.* at 536-537. The stay on a monetary judgment is only designed to provide a judicially supervised mechanism for ensuring prompt payment on *challenged* portions of an order if that order is affirmed on appeal. It is not designed to delay compliance with portions of the judgment which are not challenged on appeal.

Here, Defendants are requesting a stay of unchallenged separate parts of the judgment for conversion and trespass damages. Those unchallenged parts should not be stayed, and instead Defendants should promptly pay those portions. If they do not promptly pay, the OMC should be permitted to begin collection efforts for those unchallenged portions.

## II. THE COURT SHOULD NOT GRANT A STAY UNLESS DEFENDANTS POST A BOND WHICH IS SUFFICIENT TO COVER PLAINTIFFS' ATTORNEY FEES AND COSTS ON APPEAL.

In the appealed order, this Court held that Plaintiffs were entitled to their attorney fees in this case. Unless that decision were to be reversed on appeal, Plaintiffs would assert that the right to recover attorney fees and costs includes attorney fees and costs on appeal for the exact same reason they are entitled to those fees in the District Court.

Defendant's currently proposed bond failed to factor in attorney fees on appeal. The OMC's understanding is that a bond for those attorney fees could be

included within the supersedeas bond (as long as that bond provides clarity that it covers those costs), though it fits more easily as a separate bond under FRAP 7. Defendants' currently proposed supersedeas and their current motion in support of stay should be denied unless they agree to increase the bond or post a separate bond to cover attorney fees on appeal.

Under Federal Rule of Appellate Procedure 7, this Court determines the amount of the cost bond. FRAP 7 states, in whole: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal.

> [A] 'supersedeas bond' is retrospective covering sums related to the merits of the underlying judgment (and stay of its execution), whereas a [Rule 7 appeal or] 'cost bond' is prospective relating to the potential expenses of litigating an appeal.

*Adsani v. Miller*, 139 F.3d 67, 70 (2d Cir. 1998)

The purpose of a Rule 7 appeal bond is to ensure that the appellant, if he is unsuccessful on appeal, can pay the "costs on appeal" incurred by his opponent. *Tennille v. West Union Co.*, 774 F.3d 1249, 1254 (10th Cir. 2014). "Though similar to a supersedeas bond, which a court can impose to preserve a money judgment pending an appeal, a Rule 7 cost bond relates to the potential expenses of litigating an appeal." *Frey v. Wyoming*, No. 19-CV-50-F, 2020 WL 13644778, at *7 (D. Wyo. June 11, 2020).

A cost bond should be sufficient to cover attorney fees on appeal. *Tennille*, 774 F.3d at 1255.

> Rule 7 provides in pertinent part that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount *necessary to ensure payment of costs on appeal.*" (Emphasis added). The purpose of a Rule 7 appeal bond is to ensure that the appellant, if he is unsuccessful on appeal, can pay the "costs on appeal" incurred by his opponent. *See* 16A Wright et

4

> al., *Federal Practice & Procedure* § 3953.[2] Thus, "[c]osts for which a Rule 7 bond can be required include only costs relating to the appeal," *id.;* that is, costs which "the appellee stands to have reimbursed" should he prevail on appeal. *Adsani v. Miller,* 139 F.3d 67, 75 (2d Cir.1998).
>
> Although an issue of first impression in the Tenth Circuit, other circuit courts addressing the meaning of "costs on appeal" have consistently linked that phrase to costs that a successful appellate litigant can recover pursuant to a specific rule or statute.

*Tennille v. W. Union Co.*, 774 F.3d 1249, 1254 (10th Cir. 2014). Here, because this Court has already held that the Plaintiffs' attorney fees can be "recovered pursuant to a specific rule or statute," the Court should ensure that the cost bond is sufficient to recover those fees on appeal.

The Tenth Circuit's decision in *Tennile* is a correct application and paraphrasing of the Supreme Court's decision in *Marek v. Chesny*, 473 U.S. 1, 9 (1985). In *Marek*, the Supreme Court noted that Federal Rule of Civil Procedure 68 does not define recoverable "costs." It held the lack of definition of "costs" was "intended to refer to all costs properly awardable under the relevant substantive statute or other authority." Like FRCP 68, FRAP 7 does not define costs, and therefore, it requires the Court to include costs, including attorney fees, which can be recovered under a statute or other authority. *Tennille, supra.*

Because this Court has already determined that attorney fees are costs that can be recovered under statute or other authority, it should include an amount sufficient to cover the United States and the OMC's attorney fees on appeal. Although it is difficult to estimate attorney fees and costs

---

[2] Wright and Miller contains an outdated statement that "There is a very lopsided circuit split on the question of whether the costs for which a bond may be required under Rule 7 can include attorney fees, with only the D.C. Circuit and the 3rd circuit (in an unreported third circuit decision) holding that a district court bond decision under FRAP cannot include potential attorney fees on appeal. It is doubtful either circuit was an outlier as applied to the facts of this case—where the appeal is from a district court order awarding attorney fees. If there was a split, it is now gone. *E.g. Montgomery & Assoc. Inc v. Commodity Futures Trading Comm'n*, 816 F.2d 783, 784 (D.C. Cir. 1987); *Cobell v. Salzar*, 816 F. Supp. 2d 10 (D.D.C. 2011); *FCS Capital LLC. V. Thomas*, 2022 WL 18585317 (E.D. Penn. 2022). Even if there is a split, the Tenth Circuit is in the lopsided majority.

5

for an appeal at the start of the appeal, the OMC estimates that the Plaintiff/Appellees total attorney fees on appeal could easily be around $300,000. The Supersedeas bond or separate cost bond should include that additional amount.

### III. THE NET EFFECT OF THE LAW DISCUSSED IN SECTIONS I AND II IS A BOND IN THE AMOUNT PROPOSED BY DEFENDANTS, WITHOUT A STAY OF THE MONETARY TRESPASS AND CONVERSION SECTIONS OF THE JUDGMENT.

If this Court agrees with the OMC on its arguments in sections I and II, the net result would be a decrease of about $375,000[3] under section I, and an increase of about $375,000 under Section II. For this reason, and to save Defendants from having to go to additional work procuring a bond, the OMC would accept a bond as proposed by Defendants, solely for the attorney fees and costs as of the judgment date and to cover any further fees and costs that this Court or the Court of Appeals could award for the appeal.

If this Court were to stay the unchallenged portions of the monetary judgment, the OMC's position is that the Court should require at least $375,000 more for a supersedeas bond or should require a separate cost bond of $375,000

### IV. STAY OF THE EJECTMENT ORDER PENDING APPEAL MUST BE DENIED.

A stay of a non-monetary judgment is an exception to the general rule that a court order must be complied with pending appeal. A stay of a non-monetary judgment is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009).

---

[3] While the unchallenged portion of the monetary judgment and the estimated attorney fees are about $300,000, this paragraph references $375,000 because bonds typically have an overage to account for uncertainties. Particularly for attorney fees that would be incurred during the appeal, there is substantial uncertainty.

It is an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case. *Id*. The party requesting a stay "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*. at 433-34 (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)); *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). To prevail, the movant "must show that: (1) he is likely to prevail on the merits on appeal; (2) he will be irreparably harmed in the absence of a stay; (3) other parties will not be substantially harmed by the entry of a stay; and (4) the public interest favors a stay." *United States v. Various Tracts of Land in Muskogee & Cherokee Cntys.*, 74 F.3d 197, 198 (10th Cir. 1996) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The district court applies the same standard when the petition is presented in district court. *E.g., United States v. Austin*, 614 F. Supp. 1208, 1219 n.79 (D.N.M. 1985).

The first two factors of the traditional standard are the most critical in determining whether to grant a stay pending appeal. *Holder*, 556 U.S. at 434. It is not enough that the chance of success on the merits be "better than negligible." *Id*. "A stay is an intrusion into the ordinary processes of administration and judicial review that is justified only if there is a substantial indication of probable success." *Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1140 (D.N.M. 2017); *See also Holder*, 556 U.S. at 427. Indeed, a robust showing of the other three stay factors does not diminish this required showing. *Id*. at 438. At the same time, the Tenth Circuit has explained that "with respect to the four stay factors, where the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is somewhat relaxed." *In re Broiler Chicken Grower Antitrust Litig. No. II*, No. 6:20-md-2977-RJS-CMR, 2024 U.S. Dist. LEXIS 116104 at *17 (E.D. Okla. June 7, 2024); citing *F.T.C. v. Mainstream Mktg. Serv., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003). If this more lenient standard applies, "probability of success is demonstrated when the petitioner seeking the stay has raised questions going to the

merits so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Id*.

Likewise, "simply showing some 'possibility of irreparable injury' fails to satisfy the second factor." *Holder*, 556 U.S. at 434 citing *Abbassi v. I.N.S.*, 143 F.3d 513, 514 (9th Cir. 1998). An applicant for a stay pending appeal "must meet a heavy burden of showing not only that the judgment of the lower court was erroneous on the merits, but also that the applicant will suffer irreparable injury if the judgment is not stayed pending his appeal." *Pueblo of Pojoaque*, 233 F. Supp. 3d at 1140–4 (quoting *Holder*, 556 U.S. at 439, (Kennedy, J., concurring) (citations omitted)). The Supreme Court of the United States has stated that "simply showing some possibility of irreparable injury, fails to satisfy the second factor." *Holder*, 556 U.S. at 434–35. "[I]rreparable injury, rather, must be 'likely,'" *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) (emphasis removed) (citations omitted), and "must be likely to occur before the matter is resolved on appeal." *Pueblo of Pojoaque v. State*, 233 F. Supp. 3d at 1143 (emphasis removed). "Stays pending appeal are disfavored, even if the movant may be irreparably harmed." *Turtle Mountain Band of Chippewa Indians v. Howe*, No. 3:22-CV-22, 2023, WL 8602898, at *2 (D.N.D. Dec. 12, 2023). Courts routinely find that "mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *In re Broiler Chicken Grower Antitrust Litig. No. II*, 2024 U.S. Dist. LEXIS 116104 at *19.

Once an applicant satisfied the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. *Holder*, 556 U.S. at 435. "The last two factors, the harm to the opposing party and weighing the public interest merge when the Government is the opposing party." *M.M.V. v. Barr*, 459 F. Supp.3d 1, 4 (D.D.C. 2020) (internal citations and ellipsis omitted); *Holder*, 556 U.S. at 435. With respect to the third factor—

whether other parties will be substantially harmed by the entry of a stay—courts in this Circuit have looked to how much delay the parties have already endured through the pendency of the case and will continue to endure if a stay is granted. *E.g.*, *Kane Cnty., Utah v. United States*, No. 2:10-CV-01073, 2022 WL 4365991, at *1 (D. Utah Sept. 21, 2022); *In re Sunflower Racing, Inc.*, 225 B.R. 225, 228 (D. Kan. July 31, 1998) (analyzing same factors under bankruptcy laws). Courts consider the practical realities of further delay, such as whether the absence of that enforcement will cause confusion, and leave parties and third parties unclear as to what the rules are, or will cause further monetary harm to the party in whose favor the order is issued. *See id*. As to the last factor, public interest, the question is how a stay decision has consequences beyond the immediate parties. *In re Stewart*, 600 B.R. 900, 909 (Bankr. W.D. Okla., Aug. 28, 2019) (citing *Revel AC, Inc. v. IDEA Boardwalk LLC*, 802 F.3d 558, 569 (3d Cir. 2015)). While there is public interest in a timely resolution of a matter to avoid the wasting of judicial resources, the "public interest really is rooted in the *proper* resolution of the matter." *Sherman v. Trinity Teen Sols., Inc.*, No. 2:20-CV-215-SWS, 2022 WL 19039113 (D. Wyo. Dec. 6, 2022) at *11-12. The Tenth Circuit confirmed that tribal sovereignty is a legitimate public interest. *Winnebago v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003).

"There is a strong public interest in the ability of property owners to preserve and maintain their right to control the use of their lands and in the protection of tribal sovereignty." *Davilla v. Enable Midstream, LLP*, No. CIV-15-1262-M, 2018 WL 1415630 (W. D. Okla. Mar. 21, 2018). Even if there is a strong interest in the protection of appeal rights, at most these interests would be equal and the court should not rule in favor of Enel. *Id*.

    A.    **DEFENDANTS ARE HIGHLY UNLIKELY TO PREVAIL ON APPEAL.**

Defendants are represented by highly skilled attorneys, but not even they are able to dress this case up as presenting formidable issues on appeal. In their brief to this Court, they present

three arguments that they claim they are likely to prevail upon on appeal. None of the three has merit and two of the three are not even preserved for appeal.

> **1. Defendants are unlikely to prevail on their belated argument for overturning the summary judgment decision based upon a "replacement option" that Defendants did not even raise until after summary judgment was issued.**

Defendants assert that this Court's injunction order is not narrowly tailored because "Defendants previously proposed a more narrowly tailored for of relief—the 'Replacement Option.'" ECF 520 at 23. Defendants' hutzpah—chastising this Court for not adopting the "replacement option"—is stunning and offensive. In actuality, this Court "proposed" the replacement option in its request for supplemental briefing and as an issue for argument on summary judgment. In paragraph 5 of this Court's letter order dated August 30, 2023, the Court expressly asked Defendants "Would it be possible to remove and replace the backfill without completely removing the wind towers?" Defendants, as has been their MO throughout this matter, chose to go for the home run instead. In response to this Court raising that possibility, Defendants eschewed the argument. They affirmatively responded that there was not a factual record to support the "replacement option," and they again asserted that the Court's choice was an all or nothing choice. Instead, they strategically gambled that if they stuck to their position that this Court had to choose between denying any injunction or an ejectment order, the Court would deny injunctive relief altogether. They argued irreparable harm, the balance of harms, and other equities based upon that all or nothing strategy.

It was only **<u>after</u>** the Court rejected their home run option—when the Court issued its summary judgment decision that removal was required under the injunctive standard and the arguments and options presented to the Court, that the defendant "proposed" the replacement option. ECF 396 (Feb. 22, 2024). Defendants now claim the Appellate Court will likely reverse

10

this Court because this Court's summary judgment decision was not based upon the "replacement option" that Defendants made a strategy choice not to create a record for and not to raise on summary judgment. The Appellate Court will almost assuredly reject their argument for vacating the summary judgment order as unpreserved.

The belatedly raised "replacement option" also is without merit because, as none other than the Defendants stated to this Court, there is not a sufficient or competent factual record in support of that "option." As noted, Defendants only raised it after the Court issued its summary judgment order. They did so based upon an affidavit from Mr. Pike, drafted after the summary judgment order was issued, in which he made assertions that were not based upon prior discovery or deposition. That after-the-fact, self-serving, untested affidavit would not have been admissible in support of summary judgment even if Defendants had raised that issue in their summary judgment motion. It is not competent evidence to vacate this Court' summary judgment decision.

On appeal, OMC could also argue (though it seems like it would not be necessary because the "replacement option" was neither supported by the record nor preserved) that the Court of Appeals should affirm for reasons alternative to those that this Court adopted. Specifically, the OMC and United States have a strong argument on appeal that Defendants' blasting of the OME and additional manipulation of the OME (facts not known to the Court of Appeals at the time of its prior decision) were also mining and also require a lease and lease payments to the OMC.

    **2.    Defendants are unlikely to prevail on their belated argument that they are not "using" the OME.**

Defendants' argument that they do not need a lease is also extremely unlikely to prevail for a very similar reason. In the prior appeal, Defendants acknowledged to the Tenth Circuit that they are using the OME, and Defendants went for the home run. They asserted that the Tenth Circuit should hold that their admitted ongoing "use" is permissible and that therefore they do not

11

need a lease. In their motion for stay, Defendants now have the audacity to assert that this Court is likely to be reversed on appeal because, in one part of its decision, this Court stated that Defendants are "using" the OME. They are not going to prevail on that argument in the Tenth Circuit. In fact, one would expect the Tenth Circuit would chastise them for even making the argument.

Moreover, the argument is without merit. Defendants' prior acknowledgment to the Tenth Circuit that they are using the OMC's minerals is both the law of the case and factually undeniable.

> **3. The Court of Appeals is unlikely to overturn the summary judgment decision based upon Defendants' assertion that a monetary judgment is an adequate remedy for Defendants' continuing violation of OMC's sovereign rights and property rights.**

Defendants remaining primary argument is that the Court of Appeals is likely to hold that the United States and the Tribe are not entitled to injunctive relief because the OMC and United States sought and obtained monetary damages for past events. As the OMC has repeatedly discussed, *e.g.*, ECF 503, and as this Court correctly decided, that argument is meritless. It is commonplace for a court to grant monetary relief as a partial remedy for past injuries and injunctive relief to prevent irreparable injury in the future. It is similarly commonplace to provide injunctive relief to prevent future harms to interests in land and to prevent a Defendant from violating a tribe's sovereign rights. Defendants apparently believe that their higher-level sophistry will defeat these commonplace rules that an injunction against trespass is proper. They are unlikely to prevail on that argument.

In continuing trespass cases and other property law cases, courts regularly provide injunctive relief to end the trespass AND monetary relief as the only available, albeit incomplete, remedy for the past trespass. *E.g., Husky Ventures, Inc.* 911 F.3d 1000, 1012 (10th Cir. 2018)*; Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation v. Enbridge Energy Co., Inc,* W.D. Wisc. Case no. 3:19-cv-602; Dkt. 684 at 52 (issuing an injunction which requires Enbridge to remove its trespassing pipeline and also issuing a monetary judgment for past trespass); *Wiggins v. City of Burton*, 805 N.W. 2d 517 (Mich. App. 2011); *Restatement (Second) of Torts* §951 ("the court is not put into the dilemma of choosing between injunction alone and damages alone, but can properly grant an injunction supplemented by damages. This is true … of an injunction against the future commission of a tort and damages for past commission."); *Restatement (Second) of Torts* § 943 ("The most familiar application of these rules is found in cases in which a repeated or continuing tort is enjoined for the future and compensated in damages for the past."); Restatement (Second) of Torts § 945 ("a judgment for the recovery of the possession of land, under modern practice, carries damages for injuries up to the time of judgment.")

In *Wiggins*, two individual defendants held storm detention easements over plaintiff's abutting land. The defendants built and owned a storm drainage line on plaintiff's property, based upon their contention that construction of the drainage

line was within the scope of their easements.  The Court held that the drainage line exceeded the scope of the easement, and the Court therefore held defendants, via the drainage line, were in continuing trespass.  The Court provided both prospective injunctive relief (to end the trespass by ordering removal of the pipeline and restoration of the land) **and** monetary judgment for the past trespass.

Orders such as this are also issued in innumerable eviction cases every day.  *E.g.*, *1700 Mkt. St. Assocs., L.P. v. Common Grounds 1700 Mkt. St., LLC*, 314 A.3d 855, 860 (Penn. Sup. 2024); *Grand Traverse Band of Ottawa & Chippewa Indians Hous. Dep't v. Crowley*, No. 04-10-665-CV, 2005 WL 6300968, at *2 (Grand Traverse Tribal Ct. Oct. 5, 2005).

In *1700 Market Street Associates*, the trial court issued the commonplace monetary judgment for past due rent and damages, and the order for eviction.  No one appealed from those orders, but the *landlord* appealed, arguing that the monetary judgment should have also included "benefit of the bargain" monetary damages for the period of time after the eviction, i.e. the landlord sought net profit it would have obtained during the full rental term.  The appellate court rejected the landlord's argument, noting that for nearly 100 years, Pennsylvania Courts had held that injunctive relief—eviction—was the full remedy for the future, while monetary damages—past due rent and damages, were the remedy for the time before the eviction.

Defendants also assert they are likely to prevail by returning to the exact same theme that formed the basis for their prior unsuccessful argument on appeal—that for some reason tribes lack the power and right which non-Indians have to prevent unconsented use of tribal property.[4]  Unfortunately for Defendants, the Tenth Circuit already correctly rejected Defendants' offense Nineteenth Century argument, and in fact the Non-Intercourse Act, 25 U.S.C. § 177 and other federal regulations and statutes that Enel continues mandate ejectment.

Because Defendants are unlikely to prevail on appeal, their motion to stay must be denied.

### B. DEFENDANTS' ALLEGED MONETARY LOSSES ARE NOT IRREPARABLE INJURY.

Although Defendants do not have any argument on which they are likely to prevail on appeal, they assert (based upon their ever-changing "affidavits" that they will suffer various claimed economic injuries if they are required to comply.

First, they will not suffer any cognizable economic injuries.  Instead, they will simply not be able to continue to profit from their illegal windfarm.  Defendants

---

[4] E.g. Dkt. 520 at 20 (Defendants overly bluntly assert that Enel will prevail on appeal because the OMC does not have the right to injunctive relief for wrongful occupation of tribal property). Defendants stunningly claim that the OMC only has the right to bring suit for monetary payment for the unconsented use of OMC property.  Their arrogant Nineteenth Century assertion is contrary to the prior Tenth Circuit decision, basic American property law, the Non-Intercourse Act, and other laws.

15

merely seek to irreparably harm the OMC while Defendants continue to profit, for as long as the courts let Defendants profit. Because Defendants do not have any meritorious issues on appeal, the time has, at long last, come, to stop the profits for ENEL on the back of irreparable harm to the OMC

Second, as Defendants themselves note, economic injuries are not irreparable injuries.

C. **BALANCE OF THE HARMS AND PUBLIC INTERESTS WEIGH AGAINST A STAY.**

In contrast to Enel's claim that it will suffer economic harm if it is not able to continue to profit from the windfarm, the United States and the OMC are suffering and have been suffering *irreparable harm*. This Court's prior summary judgment order well captured that irreparable injury. Land itself is unique and invading someone else's land and using the land without a required lease or consent of the landowner is nearly always "irreparable injury."

That is double so here, because Enel has violated tribal land, rights in land, and sovereign control over land since 2014 were violated, and Enel has chosen to continue to violate those rights even after its stay of the Tenth Circuit decision was lifted in 2019. Enel asks this Court to ignore Enel's violations since that stay was lifted in 2019 and to grant a new stay.

Enel's willingness to litigate for as long as it can, to get as much profit as it can from its illegal windfarm before that windfarm is removed is understandable

from Enel's self-centered economic lens. But on the other side, the right of property owners, including Indian Tribes, to recover their property rights after over a decade of illegal violations of basic American property law more than offsets Enel's desire to profit from illegal activities.

V.  **IF THIS COURT ISSUES AN ORDER STAYING THE INJUNCTION ORDER, THE COURT MUST IMPOSE A BOND OF NO LESS THAN $50,000,000 TO ENSURE COMPLIANCE WITH THE INJUNCTION ORDER IF THAT ORDER IS AFFIRMED ON APPEAL AND DEFENDANTS SHOULD BE REQUIRED TO DEPOSIT PROFITS INTO ESCROW FOR EQUITABLE DIVISION AFTER THE APPEAL IS DECIDED.**

Under Federal Rule of Civil Procedure 62, this Court has the authority to suspend or modify that order "on terms for bond or other terms that secure the opposing party's rights."

Here, this Court has ruled that the Plaintiffs have the right to have the land restored to its original condition by December 1, 2024, and that the Defendants have the duty to complete that restoration by December 1, 2024. Defendants state to this Court that in order to meet that due date, they would continue to fully use and profit from the illegal windfarm until June 1, 2025, and would then begin "ramping down" power generation after June 1. ECF 521 at 3.

Defendants seek both a stay of the order for removal and, at least implicitly, an extension of their operation of the illegal windfarm while the appeal is pending and for an additional period of time after the appeal is concluded. They are required to post an appropriate bond for that stay of the removal order and for the related request to continue to defy the Tenth Circuit's prior order that they need a lease and their request to continue to operate the unpermitted windfarm in violation of federal law.

For their request for stay of the removal order, the Court should determine the amount of a bond to secure the performance of that order when that order is affirmed on appeal. That would be a "performance bond," where the surety would guarantee the full cost for the work to remove

17

the illegal windfarm. Defendants estimate that it will cost $36,045,618 to comply with the removal order. Defendants have a well documented history of submitting "affidavits" in contexts which are not subject to cross-examination, which are dubious at best, and which the OMC views as partially perjurious. The Tribe's understanding is that the United States will discuss Defendants' lack of candor in detail, and the OMC therefore will not repeat that discussion.

The OMC's position is that if this Court were to grant a stay over the OMC's objection, the amount of the performance bond should be at least $50,000,000. An appellate bond of 125% is common, and here that would come to $45,057,023. The OMC' position is that a larger cushion should be required here based upon Defendant's history of playing fast and loose with their various cost estimates.

The OMC further requests that the Court condition the stay upon Defendants being required to place all gross profits from the windfarm, less lease payments to landowners, into escrow with the Court, so that those profits can be equitably divided by this Court if the order of removal is affirmed on appeal. As noted, Defendants are not solely seeking a stay: they are also seeking to continue to operate the windfarm for some unknown time after the current date for removal of December 1, 2024.

The OMC's view is that the Tenth Circuit will reiterate its prior holding—that Defendants have been required to obtain a lease for over a decade now, and that Defendants have no excuse for their failure to comply since 2019. Instead, Defendants have made clear that their strategy is to delay, delay, delay, all the while profiting from their own violation of the OMC's property rights—including openly and knowingly violating those rights since 2019.

## CONCLUSION

Enel's current motion for stay of the injunctive order must be denied, and the Court must require a sufficient bond for stay of the portions of the monetary judgment which Enel appeals. The Court must deny a stay of all separable portions of the monetary judgment which Enel is either not appealing or for which Enel lacks a good faith basis to appeal.

Respectfully submitted this 3rd day of February 2025.

*/s/ Jeffrey S. Rasmussen*
Jeffrey S. Rasmussen (Attorney of Record)
Rollie E. Wilson
Patterson Earnhart Real Bird and Wilson
1900 Plaza Drive
Louisville, Colorado 80027
Telephone: 303-926-5292
Facsimile: 303-926-5293
Email: jrasmussen@nativelawgroup.com

*Counsel for the Osage Minerals Council*
