## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**and**

**OSAGE MINERALS COUNCIL,**

    **Plaintiff-Intervenor,**

**v.**

**OSAGE WIND, LLC, ENEL KANSAS, LLC, AND ENEL GREEN POWER NORTH AMERICA, INC.,**

    **Defendants.**

**Court No. 4:14-cv-00704-JCG-JFJ**

## OPINION AND ORDER

This Court found Defendants Osage Wind, LLC ("Osage Wind"), Enel Kansas, LLC, and Enel Green Power North America, Inc. (collectively, "Defendants") liable for conversion, trespass, and continuing trespass related to the construction of a wind farm in Osage County, Oklahoma and ordered declaratory relief, monetary damages, and injunctive relief in the form of ejection of the wind farm. United States v. Osage Wind, LLC ("Osage Wind II"), 710 F. Supp. 3d 1018, 1042–43 (N.D. Okla. 2023); United States v. Osage Wind, LLC ("Osage

Wind III") 2024 WL 5158188, at *32 (N.D. Okla. Dec. 18, 2024); see also United States v. Osage Wind, LLC ("Osage Wind I"), 871 F.3d 1078 (10th Cir. 2017). Now before the Court is Defendants' Motion to Stay Judgment Pending Appeal and Brief in Support, seeking a stay of the monetary and injunctive relief awarded by the Court. Defs.' Mot. Stay J. Pending Appeal Br. Supp. ("Defs.' Br.") [Doc. 520]. Plaintiff United States ("Plaintiff") and Plaintiff-Intervenor Osage Minerals Council ("Plaintiff-Intervenor") filed responses. Pl.'s Resp. Defs.' Mot. Stay J. Pending Appeal Br. Supp. ("Pl.'s Resp.") [Doc. 529]; Pl.-Interv.'s Resp. Mot. Stay ("Pl.-Interv.'s Resp.") [Doc. 530]. Defendants filed Defendants' Reply in Support of Motion to Stay Judgment Pending Appeal. Defs.' Reply Supp. Mot. Stay J. Pending Appeal ("Defs.' Reply") [Doc. 531]. For the following reasons, Defendants' motion is granted and the Court orders that Defendants shall post a bond in the amount of $10,036,500.00.

## BACKGROUND

The Court presumes familiarity with the underlying facts and procedural history of this case and recites the facts relevant to the Court's consideration of the pending motion. Osage Wind III, 2024 WL 5158188, at *1–3; Osage Wind II, 710 F. Supp. 3d at 1025–29; Osage Wind I, 871 F.3d at 1082–84.

Following remand of this case by the U.S. Court of Appeals for the Tenth Circuit ("Tenth Circuit Court of Appeals"), Plaintiff and Plaintiff-Intervenor filed

motions for summary judgment and Defendants filed a motion for partial summary judgment.  Pl.-Interv.'s Mot. Summ. J. [Doc. 294]; Defs.' Mot. Part. Summ. J. Opening Br. Supp. [Doc. 297]; Pl.'s Mot. Summ. J. [Doc. 300].  This Court granted summary judgment as to liability on Plaintiff's and Plaintiff-Intervenor's claims of conversion, trespass, and continuing trespass and held that Plaintiff and Plaintiff-Intervenor are entitled to monetary damages on their conversion and trespass claims and equitable relief in the form of ejectment on their continuing trespass claims.  Osage Wind II, 710 F. Supp. 3d at 1042.

A damages bench trial began on May 21, 2024.  Min. Orders [Docs. 456–64].  Closing arguments took place on July 9, 2024.  Min. Order [Doc. 491].  The Parties submitted post-trial briefs.  Pl.'s Resp. Defs.' Br. Resp. July 10, 2024 Order Concerning Trespass Damages [Doc. 501]; Pl.-Interv.'s Resp. Defs.' Br. Resp. July 10, 2024 Order [Doc. 503]; Defs.' Reply Supp. Br. Resp. July 10, 2024 Order [Doc. 505]; see also Order (July 31, 2024) [Doc. 500].  The Parties filed additional briefs addressing the availability of awarding fees and costs.  Pl.'s Br. Entitlement Att'ys' Fees Cost [Doc. 495]; Defs.' Br. Resp. July 10, 2024 Order [Doc. 496]; Pl.-Intervs.' Br. Supp. Att'y Fees Costs [Doc. 498]; Defs.' Resp. Pl.'s Br. Entitlement Att'ys' Fees Costs [Doc. 502]; Pl.'s Reply Br. Entitlement Att'ys' Fees Costs [Doc. 504]; Pl.-Interv.'s Reply Entitlement Att'y Fees Costs [Doc. 506]; see also Order (July 10, 2024) [Doc. 492].  At the request of the Court, the Parties filed

additional briefing on the quantum of fees and costs that Plaintiff and Plaintiff-Intervenor sought to recover.  Letter (Dec. 4, 2024) [Doc. 511]; Pl.'s Quantum Att'ys' Fees, Costs, & Expenses [Doc. 513]; Defs.' Resp. Pls.' Br. Quantum Att'ys' Fees & Costs [Doc. 514].

Upon consideration of the testimony at trial and the Parties' supplemental briefing, this Court awarded Plaintiff and Plaintiff-Intervenor $242,652.28 in damages on the claims of conversion and $66,780.00 in damages on the claims of trespass.  Osage Wind III, 2024 WL 5158188, at *32.  Defendants were ordered to remove the wind farm from the Osage Mineral Estate and return the Osage Mineral Estate to its pre-trespass condition.  Id.  Plaintiff was awarded $1,943,666.17 for attorneys' fees and $32,554.08 for costs incurred during the case.  Id.  Plaintiff-Intervenor was awarded $1,822,575.85 in attorneys' fees and $88,891.78 in costs incurred during the case.  Id.  Defendants timely filed an appeal of the Court's judgment.

## DISCUSSION

Defendants contend that the Court should stay execution of the monetary award because Defendants are willing to post a supersedeas bond sufficient to cover the amount awarded by the Court on the claims of conversion and trespass and for Plaintiff's and Plaintiff-Intervenor's costs and attorneys' fees to date.

Defs.' Br. at 5–6.  Defendants further argue that the Court should stay enforcement of its award of injunctive relief pending appeal.  Id. at 7–22.

## I.    Monetary Damages

Defendants have advised the Court that they have entered into an agreement with Federal Insurance Company to post a supersedeas bond in the amount of $5,036,500.00.  Defs.' Br. at 6.  Defendants contend that the $5,036,500.00 bond "is more than sufficient to secure payment of the Monetary Award, as well as any additional costs, expenses or interest that might be owed, should that Award be affirmed."[1]  Id.  Plaintiff and Plaintiff-Intervenor argue that the amount proposed by Defendants is insufficient.  Pl.'s Resp. at 1–3; Pl.-Interv.'s Resp. at 3–6.

Federal Rule of Civil Procedure 62(a) provides that execution on a monetary award is automatically stayed for 30 days after entry, unless the court orders otherwise.  Fed. R. Civ. P. 62(a).  A further stay may be granted if the party against whom the award was made provides an appropriate bond or other security.  Fed. R. Civ. P. 62(b).

---

[1]  Defendants further represent that they are prepared to remit the $242,652.28 awarded on the conversion claim if Plaintiff and Plaintiff-Intervenor are willing to "agree that such payment is without prejudice to Defendants' rights to appeal the trespass claims and the related damages and injunctive relief awarded."  Defs.' Br. at 6 n.3.  Plaintiff and Plaintiff-Intervenor have not indicated that they agree to this condition.

As an initial matter, Plaintiff-Intervenor argues that a stay of the monetary award is not appropriate because Defendants do not appear to be appealing the Court's judgment on the claims of trespass and conversion.  Pl.-Interv.'s Resp. at 2–3.  The only case Plaintiff-Intervenor offers in support of its argument is <u>Allen F. Johnson, LLC v. Port Security International, LLC</u>, 642 F. Supp. 2d 533, 536 (E.D. Va. 2009).  Pl.-Interv.'s Resp. at 3.  In <u>Allen F. Johnson</u>, the court awarded the plaintiff $230,400.00 on a breach of contract claim but held that the plaintiff was not entitled to certain declaratory relief.  <u>Allen F. Johnson</u>, 642 F. Supp. 2d at 535.  The plaintiff filed a motion to amend the court's judgment, which was denied.  <u>Id.</u>  The plaintiff then appealed the denial of its motion to amend.  <u>Id.</u>  Subsequent to filing its appeal, the plaintiff sought to enforce the monetary judgment.  <u>Id.</u>  The <u>Allen F. Johnson</u> court held that "[a] prevailing party should not ordinarily be allowed simultaneously to enforce and appeal an indivisible judgment for the obvious reason that the appeal result may well alter the judgment's terms or amount," but "where an appeal of a portion of a divisible judgment has no potential to alter or affect in any way the unappealed divisible portions of the judgment, there is no bar to a prevailing party seeking to enforce or collect the divisible unappealed judgment parts."  <u>Id.</u> at 537.

The Court observes that the <u>Allen F. Johnson</u> opinion predates the 2018 Amendments to Federal Rule of Civil Procedure 62(b).  The advisory comments to

the 2018 Amendments include as an example that "a party may wish to secure a stay pending disposition of post-judgment proceedings after expiration of the automatic stay, *not yet knowing whether it will want to appeal*."  Advisory Comment, Fed. R. Civ. P. 62 (amended 2018).  This comment suggests that a stay may be sought and granted even if the grounds for appeal are not fully articulated or finalized.  Allen F. Johnson is also distinguishable from the instant case in that Defendants are not seeking to simultaneously enforce and appeal distinct parts of the Court's judgment.  As the Court observed in awarding attorneys' fees and costs in this case, the trespass, conversion, and declaratory judgment claims are "intrinsically connected to the remaining claims in this case based on their common facts and allegations."  Osage Wind III, 2024 WL 5158188, at *27. Because there is the potential for the appellate court's determination to impact the monetary award, the Court cannot treat the monetary award as divisible from the pending appeal.

Plaintiff argues that the amount of the supersedeas bond proposed by Defendants is insufficient because it does not account for the trespass damages and attorneys' fees and costs that will continue to accrue during the pendency of an appeal.  Pl.'s Resp. at 1–3.  Based on the duration of the prior appeal in this case (December 2015–January 2019), Plaintiff estimates that an additional $1,163,472.61 should be added to the bond amount.  Id. at 3.  This amount consists

of two components.  First, the Court's opinion provides that additional trespass damages will continue to accrue in the amount of $8,400.00 on the first day of September each year until the wind towers are removed from the Osage Mineral Estate and the mineral estate is returned to Plaintiff.  Osage Wind III, 2024 WL 5158188, at *17.  Plaintiff contends that an additional $33,600.00 in damages is likely to accrue before the appeal is resolved.  Pl.'s Resp. at 2–3.  Second, Plaintiff contends that attorneys' fees and costs will continue to accrue during the pendency of the appeal.  Id. at 3.  Plaintiff argues that it accumulated $3,766,242.02 in attorneys' fees during the prior ten years of this case, amounting to an annualized sum of $376,624.20.  Id.  Based on this figure, Plaintiff calculates that it is likely to incur an additional $1,129,872.61 in appellate attorneys' fees during a three-year appeal.  Id.

Plaintiff's calculation of additional damages and attorneys' fees are too speculative to be considered for purposes of assessing a bond.  The purpose of the supersedeas bond is to "secure[] the judgment against insolvency of the judgment debtor and is usually for the full amount of the judgment."  Strong v. Laubach, 443 F.3d 1297, 1299 (10th Cir. 2006).  To date, only the $8,400.00 that accrued on September 1, 2024 has become payable as part of the judgment.  Osage Wind III, 2024 WL 5158188, at *17.  All future damages are speculative and the Court is unwilling to speculate as to how long the appellate court will take to resolve the

appeal.  Similarly, Plaintiff's estimate of attorneys' fees that might accrue over the pendency of the appeal is based on the unreasonable assumption that costs will be incurred at the same rate as they were at the trial level.  The amount of attorney work required to prepare a case for trial, including the discovery process, is not always proportionate to the amount of work required to defend a case on appeal and the Court cannot assume that Plaintiff's costs will continue to accumulate at the same rate as they have to date.

Plaintiff-Intervenor also seeks a bond covering the potential litigation costs of an appeal.  Pl.-Interv.'s Resp. at 3–6.  Unlike Plaintiff's argument that future attorneys' fees should be included in the supersedeas bond, Plaintiff-Intervenor contends that a separate bond should be ordered under Federal Rule of Appellate Procedure 7.  Id.  Federal Rule of Appellate Procedure 7 provides that "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7.  "The purpose of a Rule 7 appeal bond is to ensure that the appellant, if he is unsuccessful on appeal, can pay the 'costs on appeal' incurred by his opponent."  Tennille v. Western Union Co., 774 F.3d 1249, 1254 (10th Cir. 2014).  The Tenth Circuit Court of Appeals has recognized that "cost on appeal" is limited to costs expressly provided for by rule or statute.  Id. at 1255.  Plaintiff-Intervenor estimates its potential attorneys' fees and costs on appeal to be

approximately $300,000.00.  Pl.-Interv.'s Resp. at 5–6.  Pl.-Intervenor has not

suggested that Defendants would be unable to pay the amount of $300,000.00 if

the award is sustained on appeal.  This amount is also less than the amount in

excess to the monetary award included in the proposed supersedeas bond.  The

Court concludes that an additional bond under Federal Rule of Appellate Procedure

7 is not necessary to ensure that Defendants can cover Plaintiff-Intervenor's "costs

on appeal."

The Court has "inherent discretionary authority in setting supersedeas

bonds."  Miami Int'l Realty Co. v. Paynter, 807 F.2d 871, 873 (10th Cir. 1986).

The Court awarded $309,432.28 in damages and $3,887,687.88 in attorneys' fees

and costs.  Osage Wind III, 2024 WL 5158188, at *32.  Defendants' proposed

bond of $5,036,500.00 is approximately 120 percent of the total monetary award.

The Court finds that this amount provides reasonable security for the full monetary

award of the judgment.  Defendants' motion as it pertains to the monetary award is

granted and execution of the monetary award shall be stayed upon the posting of a

supersedeas bond in the amount of $5,036,500.00.

## II.    Injunctive Relief

The Court held Defendants liable for continuing trespass and ordered

ejectment of the wind towers.  Osage Wind III, 2024 WL 5158188, at *23–24, *32;

Osage Wind II, 710 F. Supp. 3d at 1038, 1039–42.  Defendants move for the Court

to stay enforcement of the injunction pending resolution of the appeal.  Defs.' Br. at 7–22; Defs.' Reply at 3–10.  Plaintiff and Plaintiff-Intervenor oppose the requested stay.  Pl.'s Resp. at 3–17; Pl.-Interv.'s Resp. at 6–17.

Federal Rule of Civil Procedure 62(d) provides that while an appeal of a final judgment granting injunctive relief is pending, "the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Fed. R. Civ. P. 62(d).  A request to stay injunctive relief is evaluated under a four-factor framework:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Nken v. Holder, 556 U.S. 418, 434 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).  The U.S. Supreme Court has observed that the first two factors are the most critical.  Nken, 556 U.S. at 434.

## A.    Success on the Merits

A strong showing of a likelihood of success on the merits requires "more than the mere possibility of relief."  Id.  Defendants assert three arguments in support of their contention that they are likely to prevail on appeal.  Defs.' Br. at 7–17.  First, Defendants argue that the Court erred in finding that the continued use of excavated minerals as backfill for the wind towers is a continuing trespass.  Id.

at 8–11.  Second, Defendants contend that the required elements for an injunction were not met because Plaintiff did not make a showing of irreparable harm.  Id. at 11–16.  Third, Defendants contend that the ordered removal is not narrowly-tailored because removal of the offending backfill might be possible.  Id. at 16–17.

The Court will address each of these theories in turn, beginning with Defendants' contention that the Court's finding of a continuing trespass was in error.  Defendants take the position that the only conduct that qualified as mining under the Tenth Circuit Court of Appeals' opinion in Osage Wind I was the sorting and crushing of the extracted minerals.  Id. at 8–9.  They argue that the removal and continued use of the extracted minerals might have constituted trespass or conversion, but not a continuing trespass.  Id. at 9–10.

Defendants' argument regarding continuing trespass was considered by the Court prior to ordering the injunction.  As the Court explained in Osage Wind II, "[c]ontinuing trespass occurs when 'the ongoing, unabating nature of certain trespasses continuously gives rise to causes of action that the victim can sue on, and eventually can support equitable relief.'"  Osage Wind II, 710 F. Supp. 3d at 1032 (quoting Davilla v. Enable Midstream Partners L.P., 913 F.3d 959, 971 n.8 (10th Cir. 2019)).  The Court further observed that the Tenth Circuit Court of Appeals adopted a broad meaning of the terms "mining" and "mineral development" in Osage Wind I, including "exploit[ing] the crushed rocks as

structural support for each wind turbine." Id. at 1035–36 (quoting Osage Wind I, 871 F.3d at 1091–92); see also Osage Wind I, 871 F.3d at 1091 ("[A]t the very least that 'mineral development' includes, but is not limited to, action upon the minerals in order to exploit the minerals themselves.").  The Court further expressed that if ambiguity exists in whether use of the extracted materials qualifies as mining under the applicable regulations, the Indian canon of interpretation requires the Court to adopt an interpretation favoring the Osage Nation's interests.  Osage Wind II, 710 F. Supp. 3d at 1038.

In Osage Wind III, this Court addressed Defendants' contention that the use of the backfill could not be a continuing trespass because it was a trespass or conversion.  Osage Wind III, 2024 WL 5158188, at *24.  Though sharing common facts, each of the three claims—conversion, trespass, and continuing trespass—was a distinct offense that resulted in a distinct injury.  See id. at *16.  The injury caused by Defendants' continuing trespass was an interference to the sovereignty of the Osage Nation, which cannot be cured through the same monetary damages available for trespass or conversion claims.  Id. at *24; Osage Wind II, 710 F. Supp. 3d at 1041.  For these reasons and others discussed in the Court's prior opinions, Defendants have not made a strong showing that they are likely to succeed on the merits of their challenge to the Court's holding that the continued use of backfill constituted a continuing trespass.

The Court next turns to Defendants' contention that the required elements of an injunction have not been satisfied in this case because Plaintiff and Plaintiff-Intervenor did not make a showing of irreparable harm. Defs.' Br. at 11–16. The crux of Defendants' argument is that irreparable harm does not exist because the injury caused by Defendants' failure to secure the required lease can be cured through an award of monetary damages. Id. at 13. Defendants support this argument with the fact that Plaintiff and Defendants provided experts at trial on the issue of damages. Id. at 13–14.

As the Court explained in its prior opinions, there is a distinction between the claims of trespass and conversion that resulted in a monetary injury and the claim of continuing trespass that resulted in an injury to the sovereignty of the Osage Nation. Osage Wind III, 2024 WL 5158188, at *24; Osage Wind II, 710 F. Supp. 3d at 1041. Defendants contend that no injury to the Osage Nations' sovereignty could have occurred because the Osage Minerals Council did not have the power to exclude the wind farm, only the power to require leases. Defs.' Br. at 14. Defendants are correct that they could have sourced backfill from a third-party provider and likely not triggered the lease requirement, but they did not do so. Instead, Defendants chose to extract and exploit minerals from the Osage Mineral Estate, despite receiving a cease-and-desist letter and other communications from the Osage Minerals Council advising that a lease was required. Defendants never

tried to satisfy the lease requirement or remit the associated royalties to the Osage Minerals Council, despite continuing to benefit from the use of the wrongfully extracted minerals.  Unlike the monetary damages suffered from Defendants' trespass and conversion, the injury to the Osage Nations' sovereignty over the last decade cannot be easily cured through an exchange of money.  For these reasons and others discussed in the Court's prior opinions, Defendants have not made a strong showing that they are likely to succeed on the merits of their challenge to the elements for injunctive relief.  See Osage Wind II, 710 F. Supp. 3d at 1035–38.

Defendants' final argument regarding their likelihood of success on the merits of the appeal concerns the potential for the backfill used in the construction of the wind towers to be removed and replaced with backfill not composed of minerals wrongfully extracted from the mineral estate.  Defs.' Br. at 16–17. Defendants contend that removal and replacement is a more narrowly-tailored approach than complete ejection of the wind farm.  Id.  In August 2023, the Court invited Defendants to discuss during oral argument whether it would "be possible to remove and replace the backfill without completely removing the wind towers." Letter (Aug. 30, 2023) at 2 [Doc. 373].  Only after the Court ruled in Osage Wind II that the wind towers must be removed, more than five months after the Court's invitation to address the question, did Defendants first propose replacement of the backfill.  Defs.' Br. Resp. Feb. 8, 2024 Order at 2–3, 7–10 [Doc. 396].  The only

support offered by Defendants for the potential removal and replacement of the backfill was a declaration prepared by Defendants' President and CEO, Stephen Pike. Decl. Stephen Pike [Doc. 396-1]. The declaration provided only a general description of the timeline and process of removal and replacement. See id. at 7–11. It did not discuss the feasibility of the option or seemingly rely on any data or evidence. See id.

An injunction must be narrowly-tailored to remedy the harm shown. Garrison v. Baker Hughes Oilfield Operations, Inc., 287 F.3d 955, 962 (10th Cir. 2002). As the Court explained in its prior opinions, "the harm resulting from Defendants' continuing trespass is not only the continued use of the wrongfully obtained backfill, but also the interference with the Osage Nation's sovereignty." Osage Wind III, 2024 WL 5158188, at *23; Osage Wind II, 710 F. Supp. at 1041–42. The Court disagrees that the removal and replacement of the backfill at this stage would remedy this harm. Furthermore, Defendants have not demonstrated that removal and replacement is a viable option. For these reasons and others discussed in the Court's prior opinions, Defendants have not made a strong showing that they are likely to succeed on the merits of their argument that the removal and replacement of the backfill is a more narrowly-tailored form of relief.

### B.      Irreparable Injury to Defendants

Defendants contend that they will suffer significant monetary losses if a stay is not granted.  Defs.' Br. at 18–20.  Purely economic loss alone usually cannot constitute irreparable harm.  Schrier v. Univ. of Co., 427 F.3d 1253, 1267 (10th Cir. 2005).  Irreparable harm may exist when later recovery of the economic loss is not feasible.  Chamber of Commerce v. Edmondson, 594 F.3d 742, 770–71 (10th Cir. 2010); see also Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1157–58 (10th Cir. 2011) (recovery of attorneys' fees was not likely from a tribal government that would be immune from suit).

Defendants estimate that dismantling the 84 wind towers will cost $36 million.  Defs.' Br. at 18.  They also claim that they will suffer losses related to the inability to satisfy tax equity partners, damages and expenses related to the termination of the surface leases and other agreements, and the loss of cash flow generated by the project.  Id.  Defendants suggest that the total impact of the ordered removal would be more than $163.5 million. Id. at 17.  Defendants further assert that if the wind farm is dismantled, it will be nearly impossible to rebuild. Id. at 18–19.

Plaintiff argues that the cost of dismantling that wind towers is not overly burdensome because Oklahoma law would require Defendants to submit the same amount in a surety bond to the Oklahoma Corporation Commission if the wind

farm remains in operation for 15 years.  Pl.'s Resp. at 10 (citing 17 Okla. St.

§ 160.15(A)).  Plaintiff further challenges Defendants' assertions regarding future

lost cash flow and the inability to rebuild as vague and conclusory.  Id. at 11.

Plaintiff-Intervenor argues that all of Defendants' claimed economic injuries are

nothing more than the inability to profit from the wind farm.  Pl.-Interv.'s Resp. at

15–16.

The Court agrees that at least a portion of the potential economic harm

asserted by Defendants is speculative and based on future cash flows that might

never be realized.  The Court does not agree with Plaintiff-Intervenor's argument

that no cognizable economic injury would be suffered by the removal of the wind

towers.  Removal of the wind towers would involve costs associated with

dismantling the structures and concluding surface leases and other contractual

arrangements.  The Court also notes that neither Plaintiff nor Plaintiff-Intervenor

address the issue of whether Defendants would be able to recoup their losses if

successful on appeal.  As Plaintiff is the United States Government and Plaintiff-

Intervenor is an instrumentality of the sovereign Osage Nation, it is reasonable to

assume that sovereign immunity would present an obstacle against Defendants

seeking to recover economic losses through litigation.  See Crowe & Dunlevy, 640

F.3d at 1157–58.  For these reasons, the Court concludes that the likelihood that

Defendants will suffer irreparable harm weighs in favor of granting the requested stay.

### C.    Substantial Injury to Plaintiff and Plaintiff-Intervenor

Defendants contend that granting the requested stay would not substantially injure Plaintiff or Plaintiff-Intervenor and would preserve the status quo.  Defs.' Br. at 20–21.  Plaintiff and Plaintiff-Intervenor counter that the injury to the Osage Nation's sovereignty is ongoing and will continue to be suffered until the wind towers are removed.  Pl.'s Resp. at 13–15; Pl.-Interv.'s Resp. at 16–17.

Defendants contend that granting the appeal will temporarily preserve the status quo.  Defs.' Br. at 20 (citing McClendon v. City of Albuquerque, 79 F.3d 1014, 1024 (10th Cir. 1996)).  As the Court previously noted, the ability of a tribe to assert authority over the activities of non-tribe members on its land is a part of tribal sovereignty.  Osage Wind II, 710 F. Supp. 3d at 1040 (citing Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 17 (1987)).  "The tribe's 'traditional and undisputed power to exclude persons' from tribal land, . . . gives it the power to set conditions on entry to that land via licensing requirements and hunting regulations." Plains Commerce Bank v. Long Family Land and Cattle Co., 554 U.S. 316, 335 (2008) (quoting Duro v. Reina, 495 U.S. 676, 696 (1990)).  The status quo in this case is that the Osage Nation has continuously suffered injury to its sovereignty over the course of the prior decade and will continue to do so until the wind towers are

removed.  For these reasons, the Court finds that Plaintiff and Plaintiff-Intervenor will suffer substantial injury if the stay is granted.

### D.    Public Interest

Defendants contend that the public interest weighs in favor of granting the stay because removal of the wind farm would have adverse impacts on Osage county, two school districts, surface rights owners, and employees.  Defs.' Br. at 21–22.  Defendants also contend that removal of the wind tower will generate a considerable amount of waste, negatively impacting the environment, and deprive the community of a source of clean energy.  Id. at 21.  Many of these arguments were previously considered by the Court in granting the injunction.  Osage Wind II, 710 F. Supp. 3d at 1041.  In Osage Wind II, the Court stated:

> [t]he benefit to the local schools appears to be related to Defendants' tax obligations.  There is no guarantee that such funding would continue or remain at consistent levels in the future or that it would not be eclipsed by offsets or tax benefits to Defendants.  Similarly, it is possible that the income that surface owners would derive from surface leases could be replaced by leases with other parties wishing to develop the area if the wind towers were removed.

Id.

The Court has not previously considered the environmental impact of removal, but notes that the wind farm is not a permanent fixture and that the waste related to removal will eventually be created regardless whether the wind towers are decommissioned now or years in the future.  Defendants also contend that the

stay is in the public interest because the wind farm provides energy for more than

50,000 households.  Defs.' Br. at 21.  Though ensuring reliable electricity to the

community is in the public interest, it has not been suggested that alternative

energy sources are unavailable to replace the energy provided by the wind farm.

See Utah Env't Congress v. Bureau of Land Mgmt., 119 Fed. App'x 218, 220

(10th Cir. 2004) (affirming the denial of a permanent injunction that "would

prevent the mining of enough coal to provide electricity to nearly a half million

households for an entire year.").  Similarly, Defendants argue that nine people are

employed by the wind farm and would lose their jobs if the stay is not granted, but

have not asserted that those employees would be unable to find other comparable

employment.  See id. at 21–22.

Balancing against the arguments raised by Defendants is the federal public

policy that "Indians develop independent sources of income and strong self-

government."  Seneca-Cayuga Tribe of Okla. v. Okla., 874 F.2d 709, 716 (10th

Cir. 1989); Iowa Mut. Ins. Co., 480 U.S. at 17.  Considering these factors, the

Court finds that public interest does not weigh in favor of granting the stay.

### E.    Balancing the Factors

Whether to grant a stay is a fact-specific "exercise of judicial discretion."

Nken, 556 U.S. at 433.  As discussed above, three of the four factors—likelihood

of success on the merits, the risk of substantial injury to Plaintiff and Plaintiff-

Intervenor, and the public interest—weigh against granting the requested stay. Only the likelihood of irreparable harm to Defendants weighs in favor of granting the stay. The factors, however, are not equal in the Court's analysis with the likelihood of success on the merits and the risk of irreparable injury being viewed as the most critical. Id. at 434. In this case, the Court is cognizant of the scale of the wind farm removal and the likelihood that the appeal is unlikely to be fully resolved before the deadlines imposed by the Court's opinion. If the stay is not granted, Defendants would be required to complete the costly and potentially irreversible process of deconstructing the wind farm before the appellate court has an opportunity to consider the case. The Court holds that granting a stay of the injunction is appropriate in this case.

### F.    Performance Bond

Plaintiff and Plaintiff-Intervenor urge the Court to require Defendants to post a bond in the amount of $50,000,000.00 to secure their rights if the injunctive relief is stayed. Pl.'s Resp. at 18–21; Pl.-Interv.'s Resp. at 17–18. Federal Rule of Civil Procedure 62(d) provides: [w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction *on terms for bond or other terms that secure the opposing party's rights*." Fed. R. Civ. P. 62(d) (emphasis added). The amount of

$50,000,000.00 proposed by Plaintiff and Plaintiff-Intervenor represents the estimated amount required to physically remove the wind towers. Pl.'s Resp. at 18–21. Though a bond is appropriate to secure Plaintiff's and Plaintiff-Intervenor's interests while the injunction is stayed, the Court is not convinced that the full amount of $50,000,000.00 is necessary in this case. The Court's judgment also serves as a form of security to ensure that the wind farm will be removed if the appeal is unsuccessful and there has been no showing that Defendants would be unable to comply with the Court's judgment. The Court finds that a bond of $5,000,000.00, ten percent of the estimated value of removal, is appropriate. See Order (Apr. 24, 2018) [Doc. 85], Davilla v. Enable Midstream Partners LP, Court No. 17-6088 (10th Cir.) (ordering a bond of ten percent of the estimated value of removing an oil pipeline).

Plaintiff-Intervenor also requests that the Court condition a stay of the injunction on Defendants being required to place gross profits earned from the wind farm during the appeal into escrow. Pl.-Interv.'s Resp. at 18. Plaintiff-Intervenor has provided no support for this request. See id. The Court's judgment did not include disgorgement of Defendants' profits and there is no reason that Plaintiff or Plaintiff-Intervenor would be entitled under the Court's judgment to those profits if the appeal is unsuccessful. The Court will not order such additional security. Defendants' motion as it pertains to the injunctive award is granted and

execution of the injunction shall be stayed upon the posting of a bond in the amount of $5,000,000.00.

## ORDER

ACCORDINGLY, IT IS HEREBY:

**ORDERED** that Defendants' Motion to Stay Judgment Pending Appeal and Brief in Support [Doc. 520] is granted; and it is further

**ORDERED** that execution of the Court's Judgement [Doc. 516] is stayed pending resolution of Defendants' appeal in <u>United States v. Osage Wind, LLC</u>, Court No. 25-5020 (10th Cir.); and it is further

**ORDERED** that Defendants shall post a bond under Federal Rule of Civil Procedure 62(b) and (d) in the amount of $10,036,500.00 with the Court within 14 days of this Opinion and Order.

IT IS SO ORDERED this 3rd day of March, 2025.

  /s/ Jennifer Choe-Groves      
Jennifer Choe-Groves
U.S. District Court Judge[*]

---

[*] Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.